Charles S. LiMandri, SBN 110841
 cslimandri@limandri.com
Paul M. Jonna, SBN 265389
 pjonna@limandri.com
Jeffrey M. Trissell, SBN 292480
 jtrissell@limandri.com
Joshua A. Youngkin, SBN 332226
 jyoungkin@limandri.com
LiMANDRI & JONNA LLP
P.O. Box 9120
Rancho Santa Fe, CA 92067
Telephone: (858) 759-9930
Facsimile: (858) 759-9938

Thomas Brejcha, *pro hac vice*\*
 tbrejcha@thomasmoresociety.org
Peter Breen, *pro hac vice*\*
 pbreen@thomasmorsociety.org
THOMAS MORE SOCIETY
309 W. Washington St., Ste. 1250
Chicago, IL 60606
Telephone: (312) 782-1680
\*Application forthcoming

*Attorneys for Plaintiff*
*Captain Jeffrey Little*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAPTAIN JEFFREY LITTLE, an individual,<br><br>          Plaintiff,<br><br>     v.<br><br>LOS ANGELES COUNTY FIRE DEPARTMENT, a public entity; FERNANDO BOITEUX, both in his personal capacity and in his official capacity as Lifeguard Division Chief; ADAM UEHARA, both in his personal capacity and in his official capacity as Assistant Lifeguard Chief; ARTHUR LESTER, both in his personal capacity and in his official capacity as Section Chief;<br><br>          Defendants. | **Case No.:**<br><br>**VERIFIED COMPLAINT FOR:**<br><br>**1. Religious Creed Discrimination / Failure to Accommodate in Violation of Title VII of the Civil Rights Act of 1964**<br><br>**2. Religious Creed Discrimination / Failure to Accommodate in Violation of FEHA**<br><br>**3. Retaliation in Violation of Title VII of the Civil Rights Act of 1964**<br><br>**4. Retaliation in Violation of FEHA**<br><br>**5. Failure to Prevent Discrimination, Harassment, and Retaliation in Violation of FEHA** |

1
2
3
4

**6. Violation of Free Exercise Clause of First Amendment to U.S. Constitution: Not Generally Applicable due to Comparable, Categorical Exemptions**

5
6

**7. Violation of Free Exercise Clause of First Article of California Constitution**

7
8
9
10

**8. Violation of Free Exercise Clause of First Amendment to U.S. Constitution: Not Neutral Due to Animus and Hostility Against Religion**

11
12
13

**9. Violation of Free Speech Clause of First Amendment to U.S. Constitution: Compelled Speech & Viewpoint Discrimination**

14
15

**JURY TRIAL DEMANDED**

16
17
18
19
20
21
22
23
24
25
26
27
28

VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

**INTRODUCTION**

1.     Flags have meanings. Nearly one hundred years ago, the U.S. Supreme Court struck down California's attempt to criminalize the display of a "Red Flag"—a symbol of support for Communism. *Stromberg v. California*, 283 U.S. 359, 361 (1931). A decade later, the U.S. Supreme Court struck down West Virginia's effort to require students to salute the American Flag as a condition of attending public school. *W. Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 625 (1943). And flowing naturally from this, a few decades later, the Second Circuit struck down a requirement to salute the American Flag as a condition of government employment. *Russo v. Central Sch. Dist. No. 1*, 469 F.2d 623, 633 (2d Cir. 1972).

2.     Promoting the lofty goal of patriotism was widely popular at the time of these cases—the threat of both Communism and Nazism directed the national mood. Thus, when the same issue arose in California courts, the courts dismissed an objection to saluting the American Flag, stating that "[i]t is indeed repugnant to every idea and every consideration of the loyalty and love for our government and political institutions so essential to the maintenance thereof." *Hardwick v. Bd. of Sch. Trustees of Fruitridge Sch. Dist.*, 54 Cal. App. 696, 711 (1921).

3.     This case presents a debate over a flag—one whose similarity to issues raised a hundred years ago is striking. In March 2023, the Los Angeles County Board of Supervisors passed a resolution requiring that all county-operated facilities fly the Progress Pride Flag during the month of June. Captain Jeffrey Little is a devout Christian who has worked for the Los Angeles County Fire Department as a lifeguard for over 22 years. He eventually rose through the ranks to become a Captain, and is responsible for overseeing his own lifeguard stations and patrols.

4.     When this resolution passed, Captain Little raised a simple objection: he would like another government employee to be responsible for raising the Progress Pride Flag. In his view, raising that flag would be "to confess by word or act [his] faith therein." *Barnette*, 319 U.S. at 642. Los Angeles said no. Under both statutory

1  employment law and constitutional law, this was wrong.

2      5.      "Anti-discrimination laws undeniably serve valuable interests rooted in

3  equality, justice, and fairness. And in a pluralistic society, these laws foster worthy

4  goals such as inclusion and belonging." *Fellowship of Christian Athletes v. San Jose*

5  *Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 671 (9th Cir. 2023) (en banc). But

6  forcing Captain Little to raise and fly the Progress Pride Flag "is petty tyranny

7  unworthy of the spirit of this Republic." *Barnette v. W. Virginia State Bd. of Educ.*, 47

8  F. Supp. 251, 255 (S.D.W. Va. 1942), *aff'd*, *Barnette*, 319 U.S. at 642. The

9  government cannot impose a "blanket requirement" that all employees "mouth

10  support for views they find objectionable." *Janus v. AFSCME, Council 31*, 585 U.S.

11  878, 892, 907 (2018).

12      6.      Thus, Plaintiff Captain Jeffrey Little brings this Verified Complaint

13  against Defendant Los Angeles County Fire Department and three of its personnel,

14  seeking both injunctive relief and damages.

15                          **JURISDICTION AND VENUE**

16      7.      This court has original jurisdiction of this action pursuant to 28 U.S.C.

17  §§ 1331 and 1343 because Plaintiff's claims against Defendant arise under Title VII

18  of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et. seq*., and 29 C.F.R. §1605 *et.*

19  *seq.*; and under 42 U.S.C. § 1983 in relation to Defendants' deprivation of Plaintiff's

20  constitutional rights to freedom of speech and free exercise of religion under the First

21  Amendment to the U.S. Constitution.

22      8.      This court has supplemental jurisdiction over all state law claims because

23  they are so related to claims in the action within such original jurisdiction that they

24  form part of the same case or controversy under Article III of the United States

25  Constitution. 28 U.S.C. § 1367(a).

26      9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c)

27  because Defendant may be found in this District, Defendant employs Plaintiff to work

28

in this District, and a substantial part of the events giving rise to claims presented in this Complaint occurred in this District.

## THE PARTIES

10.    Plaintiff CAPTAIN JEFFREY LITTLE is an individual who at all relevant times was and continues to be employed by Defendant Los Angeles County Fire Department, and who at all relevant times worked in and continues to work in the County of Los Angeles, California. Captain Jeffrey Little is a devout Evangelical Christian who adheres to traditional Christian beliefs regarding the moral illicitness of same-sex activity, the immutability of sex regardless of gender identity, and the view that all people are children of God regardless of their skin color.

11.    Defendant LOS ANGELES COUNTY FIRE DEPARTMENT is an executive department of the County of Los Angeles, a municipal and legal entity defined and authorized under the California Constitution, California law, and the Charter of the County of Los Angeles.

12.    Defendant FERNANDO BOITEUX, at all relevant times, was the Lifeguard Division Chief for the Los Angeles County Fire Department acting under color of state law. Defendant Boiteux is responsible for implementing Fire Department policies, practices, customs, and acts, including the challenged policies, practices, and procedures set forth in this Complaint. Defendant Boiteux is sued in both his official and personal capacities, alternatively, for his role both in interpreting and implementing the challenged policies, retaliating against Captain Little, and refusing to extend a religious accommodation to Captain Little.

13.    Defendant ADAM UEHARA, at all relevant times, was the Assistant Lifeguard Chief for the Los Angeles County Fire Department acting under color of state law. Defendant Uehara is responsible for implementing Fire Department policies, practices, customs, and acts, including the challenged policies, practices, and procedures set forth in this Complaint. Defendant Uehara is sued in both his official and personal capacities, alternatively, for his role both in interpreting and

implementing the challenged policies, retaliating against Captain Little, and refusing to extend a religious accommodation to Captain Little.

14.    Defendant ARTHUR LESTER, at all relevant times, was a Section Chief for the Los Angeles County Fire Department, Lifeguard Division, acting under color of state law. Defendant Lester is responsible for implementing Fire Department policies, practices, customs, and acts, including the challenged policies, practices, and procedures set forth in this Complaint. Defendant Lester is sued in both his official and personal capacities, alternatively, for his role both in interpreting and implementing the challenged policies, retaliating against Captain Little, and refusing to extend a religious accommodation to Captain Little.

## GENERAL FACTUAL ALLEGATIONS

**A.    The County decides to fly the Progress Pride Flag at all County facilities during Pride Month**

15.    Defendant Los Angeles County Fire Department provides firefighting and emergency medical services for the unincorporated parts of Los Angeles County, as well as through contracting with other cities. The Department has three main divisions: (1) Fire Fighting; (2) Emergency Medical Services (Paramedics); and (3) Lifeguards. The Department is the fourth busiest Fire Department in the country—responsible for protecting the lives and property of over 4 million residents living in 1.25 million housing units across 60 cities and all unincorporated areas of Los Angeles County.[1]

16.    The Lifeguard Division is similarly exceptional in scope. It is the largest professional lifeguard service in the world, protecting 72 miles of coastline, 31 miles of sandy beaches, operating 24 lifeguard stations, 159 lifeguard towers, 8 rescue boats, and employing 174 full-time lifeguards and 614 recurrent lifeguards. In 2021,

---

[1] 2021 County of Los Angeles Fire Department Annual Report, https://fire.lacounty.gov/wp-content/uploads/2022/07/LACoFD-2020-Annual-Report_072222_Final.pdf.

the Lifeguard Division watched over 51 million beach attendees, and made over 9,000 ocean rescues.[2]

17.    Plaintiff Captain Little has been a proud Los Angeles County lifeguard, saving countless lives, for over 22 years. But, on March 7, 2023, the Board of Supervisors of Los Angeles County passed a motion titled *Raising the Progress Pride Flag at Los Angeles County Facilities*, attached as **Exhibit A**. Under that motion, the Board of Supervisors "Direct[ed] the Chief Executive Officer to work with all County Departments to explore ways the Progress Pride Flag can be flown at all county facilities."

18.    As explained in that motion, "The original Pride flag contained eight stripes, each a separate color of the rainbow plus hot pink. They colored [sic] represented sex, life, healing, sunlight, nature, magic and art, serenity, and spirit. While there have been several variations of the Pride flag. [sic] in 2019, a version was debuted that included the iconic six rainbow stripes: red, orange, yellow, green, blue and violet, as well as the colors from the Transgender Pride Flag, light blue, pink and white stripes, to embrace the transgender community."

19.    In implementation of that motion, on May 25, 2023, the Fire Department issued a memorandum titled EA-231, to all employees, attached as **Exhibit B**. As stated in the memo, "On March 7, 2023, the Board of Supervisors passed a motion requiring the Progress Pride flag ('PPF') to be flown at County facilities during the month of June, which will now be recognized as LGBTQ+ Pride month moving forward. With the exception of Flag Day, June 14th, when the Prisoner of War/Missing in Action flag is flown, the PFF [sic] shall be flown…" It continued, stating that Captains must "[e]nsure flags are received and flown throughout the month of June."

20.    The Department also provided a flow chart to employees to assist in the interpretation and application of EA-231, as the Progress Pride Flag could only be

---

[2] *Id*. at p.10.

flown if there were adequate flagpoles and flag clasps available. A copy of that flowchart is below and attached as **Exhibit C**



21. By its terms, EA-231 requires Lifeguard Captains and other Site Supervisors, including Captain Little, to ensure that the Progress Pride Flag is appropriately flown (*i.e.*, appropriately handled, raised, lowered, and stored, etc.) every June at all of the Department's lifeguard facilities in the County with flag poles and sufficient clasps for mounting the flag.

22. As acknowledged in the Board of Supervisors' motion, the Progress Pride Flag symbolizes and advances a range of disputed viewpoints, both religious and moral, regarding the family, the nature of marriage and human sexuality, the promotion of certain sexual practices, and the identity, nature, and purpose of the human person. Additionally, particular aspects of the Progress Pride Flag were originally intended by its creators, and echoed by the Board in its motion, to signify "sex," "magic," and "spirit", among other ideological and spiritual notions.

23.     The views commonly associated with the Progress Pride Flag on marriage, sex, and family are in direct conflict with Captain Little's bona fide and sincerely held religious beliefs on the same subjects. His bona fide and sincerely held religious beliefs require him to reject those views.

**B.     Captain Little requests a religious accommodation, which is immediately denied, and for which he receives angry retaliation**

24.     As stated above, Captain Little is a devout Christian with bona fide religious beliefs on marriage, sex, and family that conflict with both the intended meaning and public meaning of the Progress Pride Flag on those same subjects. His work performance has been exemplary, as is his reputation at work, neither of which were challenged prior to his request for accommodation of his good-faith, sincerely held Christian beliefs about marriage, human sexuality, and family.

25.     Although the original Pride Flag had eight colors (adding hot pink to represent "sex" and turquoise to represent "magic"), the version that became most popular among the LGBT rights movement in the 1970s and 1980s was limited to six colors—dropping the indigo color that is present in a seven-color, naturally occurring rainbow.[3] In 1999, the Transgender Pride Flag was created—also with six stripes—but with alternating colors of baby blue, baby pink, and white.[4] Lastly, In 2016, the City of Philadelphia added black and brown stripes to the Pride Flag flown in front of its city hall to represent "Black and Latino communities."[5]

26.     In 2018, a designer unveiled the Progress Pride Flag, combining elements from these three Pride Flags. He separated the colors of the Transgender Pride Flag and

---

[3] *Beyond the Rainbow*, University of Central Lancashire Students' Union (June 9, 2022), https://www.uclansu.co.uk/news/article/6013/Beyond-The-Rainbow/.

[4] The History of the Transgender Flag, Point of Pride (Apr. 23, 2015), https://www.pointofpride.org/blog/the-history-of-the-transgender-flag.

[5] Ben Deane, *The Philly Pride flag, explained*, The Philadelphia Inquirer (June 12, 2021), https://www.inquirer.com/philly-tips/philadelphia-pride-flag-20210612.html.

the Philadelphia Pride Flag and placed them in a chevron on the left side of the flag. As he explained "[t]he arrow points to the right to show forward movement, while being along the left edge shows that progress still needs to be made."[6]

27.    The specific flag at issue—the Progress Pride Flag—is pictured below:



28.    None of the above ideas are ones that Captain Little can espouse. As mentioned above, Captain Little is a Christian. Specifically, he is an evangelical Christian with beliefs on marriage, family, sexual behavior and identity that align with the traditional and orthodox biblical-social teachings.

29.    These include the view that: (1) any form of sexual immorality is sinful and offensive to God; (2) that same-sex sexual activity is morally wrong for the individual to engage in and equally wrong for any human society to celebrate; (3) that gender and sex are inherently intertwined, and cannot be separated (any more than sex and sexual orientation), and that attempts to do so or to change one's sex are morally wrong; (4) that the traditional and only morally acceptable definition of marriage is the complete union of one man and one woman, and that it is not licit to recognize same-sex marriages; and (5) that while Christians, laity and clergy alike,

---

[6] Daniel Quasar, *"Progress" A PRIDE Flag Reboot*, Kickstarter (June 2018), https://www.kickstarter.com/projects/danielquasar/progress-a-pride-flag-reboot

VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

are as a matter of Christian ethics to express and show compassion and love toward all individuals, including those who identify as LGBTQ+, they are nonetheless required to maintain biblical truths. *See, e.g.,* Lev. 18:1-30; Matt. 5:28; Rom. 1:26-29; 1 Cor. 5:1, 6:9; 1 Thess. 4:1-8; Heb. 13:4.

30.     While Captain Little understands that the government can speak its own messages, and thus may promote Pride Month, he believes that he cannot personally do so by raising the Progress Pride Flag. Doing so would be to personally participate in, espouse, and promote messages contrary to his sincerely held religious beliefs, similar to how many courts have recognized that Jehovah's Witnesses may not salute or pledge allegiance to the flag of any nation or state. *See, e.g., Lawson v. Washington*, 296 F.3d 799, 803 (9th Cir. 2002).

31.     On June 18, 2023, Captain Little requested a religious accommodation and requested "to be exempt [from] adhering to EA-231." *See* **Exhibit D**. Later that day, he had an interactive process meeting (IPM) with Ms. Renée Nuanes-Delgadillo of the Fire Department's Risk Management and Disability Management and Compliance, Leadership and Professional Standards Bureau, in which he explained that his religious beliefs did not allow him to raise the Progress Pride Flag or ensure that it is raised and properly flown.

32.     On June 19, 2023, the Fire Department initially agreed to Captain Little's request by promising: (1) movement to a site not flying the Progress Pride Flag; (2) no requirement to raise the Progress Pride Flag; and (3) no requirement to ensure raising of the Progress Pride Flag. As a result, Plaintiff Captain Little believed he would be able to work in the Dockweiler Area, North and South, and El Segundo Lifeguard stations without either violating his religious beliefs or running afoul of EA-231, as there were then no flagpoles subject to the terms of EA-231.

33.     The grant of an accommodation made perfect sense as it required no substantial increase of expenditures and the Fire Department has many employees it

already pays who could substitute for any Progress Pride Flag-related duties in June. It would be simple to make basic rearrangements of shifts and schedules.

34.     However, on June 21, 2023, before Captain Little's shift, Section Chief Arthur Lester visited the Dockweiler Area, modified the flagpoles to attempt to bring them within the ambit of EA-231, and then ordered the lifeguards at each subarea to raise Progress Pride Flags.

35.     At 10:30 a.m. on June 21, 2023, Captain Little arrived at work. With the permission of the Ocean Lifeguard Specialists then stationed at Dockweiler, he took down the flags due to the prior grant of accommodation and the inconsistency with EA-231. That was between 11:30 a.m. and 2:30 p.m. Later that day, at about 2:45 p.m., the Department informed Captain Little by Microsoft Teams that his religious accommodation had been revoked.

36.     On June 21, 2023, after revocation of the accommodation, Section Chief Lester directly ordered Captain Little to raise the Progress Pride Flag that he had lowered. In his words, demeanor, and tone, Section Chief Lester's conduct toward Captain Little in the circumstance was abusive, inappropriate, harassing, and discriminatory. Further, Section Chief Lester's conduct was motivated by animus toward Captain Little's religious beliefs. He acted this way toward Captain Little because of Captain Little's religious beliefs and in retaliation for Captain Little seeking a religious accommodation.

37.     Thus, on June 21, 2023, without justification or notice, the Department abruptly ended the interactive process and refused Captain Little any accommodation, less than two days after granting an accommodation. This was a violation of Title VII and FEHA. The Department could easily grant Captain Little a religious accommodation to EA-231 without undue burden to itself because other Captains or Site Supervisors who do not have any religious objection could have complied with EA-231 on his behalf.

38.     At the end of the day on June 21, 2023, Assistant Lifeguard Chief Adam Uehara confirmed the denial of any religious accommodation for Captain Little and denied his right to use his already earned employment benefits, including paid leave, as a means for him to avoid the conflict that would be caused by compelled compliance with EA-231 and violation of his bona fide and sincerely held religious beliefs.

39.     On June 22, 2023, Lifeguard Division Chief Fernando Boiteux issued a Direct Order to Captain Little to fly the Progress Pride Flag and ensure that the Progress Pride Flag is flown as instructed in EA-231, which is attached as **Exhibit E**. The written Direct Order was hand-delivered by Lifeguard Chief Boiteux to Captain Little. When doing so, he told Captain Little that "You need to stop what you are doing," "You are an LA County employee; that's the only thing that matters," and "Your religious beliefs do not matter; you are an LA County employee." He repeated multiple times, "You are an LA County employee" and "Your religious beliefs do not matter" in an instance of religious discrimination combined with physical intimidation.

40.     Lifeguard Chief Boiteux is 6'4" tall and weighs 220 pounds. Captain Little is aware that Chief Boiteux is also trained in martial arts. He delivered his message to Captain Little in a violent and angry manner while standing over Captain Little—who is only 5'9" tall and weighs 150 pounds. Captain Little believes that the specific intent of Chief Boiteux's demeanor was to be physically intimidating.

**C.     Captain Little files a religious discrimination complaint with the Fire Department, and is retaliated against**

41.     On June 22, 2023, at 11:58 a.m., Captain Little filed a County Policy of Equity "CPOE" administrative complaint with the Fire Department for religious discrimination and harassment, which is attached as **Exhibit F**. As stated in that administrative complaint, Captain Little's "shift on 6/21 was changed to accommodate my religious beliefs so I would not have to work an area that flew the

pride flag." But, as stated above, Section Chief Lester went to that area to order the Progress Pride Flag flown. So Captain Little said, "I felt like I was being targeted or entrapped by Chief Lester and my religious beliefs were not being taken seriously," and "I believe that the actions by Chief Lester are retaliatory in nature." The Fire Department later notified Captain Little that it had received his County Policy of Equity (CPOE) complaint, and was investigating it. The notice is attached as **Exhibit G**.

42.     On that same day, June 22, 2023, Chief Boiteux informed Captain Little that he was the subject of an internal administrative investigation for lowering the Progress Pride Flag during his shift the day prior. The notice of that investigation is attached as **Exhibit H**. On June 22, 2023, Chief Boiteux also delivered Captain Little a "Notice of Instruction," attached as **Exhibit I**, which stated that: "All Department employees, *irrespective of personal beliefs*, are expected to comply with EA-231, which includes raising the flag as instructed." (Emphasis added.)

43.     Since June 22, 2023, the Fire Department has refused to engage in the interactive process with Captain Little to negotiate a reasonable religious accommodation. This violates both Title VII and FEHA. The Department is legally obliged to engage in the interactive process with Captain Little concerning his requested religious accommodation.

44.     Further, upon information and belief, the Fire Department breached Captain Little's right to employment-related privacy. The Department, through the persons discussed above, disclosed to unauthorized recipients that Captain Little requested a religious accommodation to not raise the Progress Pride Flag. This breach of privacy led to the following incidents:

A.     On June 23, 2023, Captain Little was suspended from his role on the background investigation unit, which conducts investigations of emergency incidents, resulting in a significant loss of overtime, income, and prestige.

B.    On June 28, 2023, Captain Little received via the U.S. Mail a death threat against him and his children, attached as **Exhibit J**. The death threat was printed by hand in letters that alternate in color and said: "Jeff F*** you and your Jesus. Your hate won't be tolerated. We know where you live and work. You better pay respect to our pride flag or we will f*** you up. We know about your cute little girls and aren't afraid to rape the s*** out of them if you don't honor us. You are a fascist pig and deserve to die."

C.    On June 30, 2023, the Fire Department notified Captain Little that it received second and third County Policy of Equity (CPOE) complaints against him, which it was investigating. The notices are attached as **Exhibit K** and **Exhibit L**. These alleged complaints, ICMS #2023-120504 and ICMS #2023-120591, are pretextual and retaliatory.

45.    On or about July 20, 2023, at 2:00 p.m., Captain Little spoke with investigator Justa Lopez of the County's CPOE Investigative Unit regarding his own complaint. During the investigative call, Captain Little added to his CPOE complaint the June 22, 2023, Direct Order, the June 22, 2023, Notice of Instruction, the June 22, 2023, Notice of Investigation, the June 22, 2023, actions of Chief Boiteux, and the receipt of the June 28, 2023, death threat. He asked Ms. Lopez whether he had to supplement his June 22, 2023, CPOE complaint in writing. She told him that was not necessary, and she deemed the additional facts part of his CPOE complaint.

46.    However, on July 28, 2023, the Fire Department informed Captain Little that the conduct he had complained about did not violate the CPOE. The notice is attached as **Exhibit M**. The Department did not take any actions to protect Captain Little from previous and future religious discrimination, harassment, and retaliation.

47.    On September 14, 2023, with respect to the Department's investigation into Captain Little's lowering of the Progress Pride Flag, the Department notified him that an administrative interview of him would occur on September 21, 2023. That notice is attached as **Exhibit N**.

48.     Then, on February 7, 2024, the Fire Department notified Captain Little that he violated the County Policy of Equity, and that administrative action may follow—a retaliatory outcome of the pretextual investigation launched in June 2023. The notice is attached as **Exhibit O**.

**D.     Exhaustion of administrative remedies**

49.     Captain Little filed an administrative complaint against Defendant the Los Angeles County Fire Department with the EEOC within the applicable statutory period concerning his claims arising under Title VII of the Civil Rights Act of 1964, as amended ("Title VII").

50.     Specifically, on March 11, 2024, Captain Little filed a charge with the EEOC against the Fire Department based on discrimination and retaliation in violation of Title VII, which the EEOC designated as Charge No. 480-2024-02766.

51.     On March 26, 2024, the United States Department of Justice (DOJ) issued to Captain Little a Determination of Charge and Notice of Your Right to Sue on EEOC Charge No. 480-2024-02766. This complaint is filed within ninety days of Plaintiff receiving the right-to-sue letter from DOJ.

52.     Captain Little also timely filed an administrative complaint against Defendant the Los Angeles County Fire Department with the California Civil Rights Department ("CRD") for religious discrimination and retaliation in employment in violation of California's anti-discrimination laws.

53.     Specifically, on February 29, 2024, Captain Little filed a complaint of discrimination with the CRD against the Fire Department based on religious discrimination and retaliation under Cal. Gov. Code § 12926 *et seq*, which the CRD designated as CRD Matter Number 202403-23805101.

54.     On February 29, 2024, the CRD issued to Captain Little a Notice of Case Closure and Right to Sue on the CRD complaint.

///

///

### E.   Pre-litigation attempts at resolution

55.   On March 15, 2024, Ms. Ashley Hudson from Defendant's County Equity Oversight Panel notified Captain Little by email that the Panel was "in receipt of a County Policy of Equity complaint that was either filed by you or filed on your behalf," which email is attached as **Exhibit P**. Ms. Hudson further requested that Captain Little contact her "within five (5) business days of the date of this letter so we can schedule a clarifying interview."

56.   On March 21, 2024, Captain Little responded to Ms. Hudson via letter from counsel, which is attached as **Exhibit Q**, with redundant exhibits omitted. In the letter, Captain Little clarified that he had filed charges with the EEOC and the CRD, and asked her to forward the letter to the County's legal counsel. Captain Little further requested that Ms. Hudson confirm that the letter had been forwarded to legal counsel for further engagement with the County's appropriate agent for resolution of his claims.

57.   Nobody from the County responded to Captain Little's letter dated March 21, 2024. So, on April 19, 2024, Captain Little replied again to Ms. Hudson, via letter from counsel, which is attached as **Exhibit R**, again with redundant exhibits omitted. In this comprehensive, 11-page letter, Captain Little explained in detail and with documentary support the basis for his claims against the Fire Department and his request for a religious accommodation and other remedies.

58.   Captain Little further advised Ms. Hudson that the EEOC and CRD had each provided him with a Right to Sue letter, that she had never acknowledged his letter dated March 21, 2024, and that he would timely file a complaint by June 24, 2024, at the absolute latest should the County and the Fire Department fail to engage in good faith negotiation of claims. Captain Little also requested acknowledgment of receipt of the letter, and further requested that the letter be forwarded to legal counsel for the County and Fire Department. In the interest of avoiding litigation, Captain Little requested a substantive response no later than May 3, 2024.

59.    In his April 19, 2024 letter, Captain Little also stated that he was willing to mediate the dispute before June 1 (the start of Pride Month). That is the date by which Captain Little would again be put at risk of violation of his religious beliefs because he would again become subject to compliance with EA-231 via the Fire Department's Direct Order, which had not been withdrawn or rescinded.

60.    By May 8, 2024, neither the County nor the Fire Department had responded to Captain Little's letters from counsel. So, instead, Captain Little directly emailed Ms. Renée Nuanes-Delgadillo—the human resources officer that he had spoken and emailed with in June through August 2023. *See* **Exhibit S**. His discussions with her had stalled in August 2023 because she could not confirm whether the Progress Pride Flag would be flown every June, and stated that Captain Little should renew his request next year.

61.    So, in accordance with Ms. Nuanes-Delgadillo's instruction, in his May 8, 2024, email, Captain Little renewed his request for a religious accommodation from having to raise the Progress Pride Flag during June 2024. To ensure a timely discussion, Captain Little requested that the religious accommodation process resume by no later than the end of the following week, or May 17, 2024.

62.    The Fire Department has, to the present, ignored counsel's letters dated March 21 and April 19, 2024, requesting engagement on the request for a standing exemption from compliance with EA-231. And, even though Captain Little did exactly as the Fire Department requested, the Department ignored Captain Little's May 8 email until May 23, when the Department suggested holding another meeting. This uncertain response came too late; Captain Little has no choice but to seek judicial relief. To date, the Fire Department has not substantively engaged at all with Captain Little on any of the concerns raised in his communications, nor has the Fire Department even expressed an openness to mediate in the interest of avoiding litigation and preserving judicial resources.

63.    As a result of the Fire Department's religiously discriminatory and retaliatory conduct followed by a period of game-like recalcitrance, Captain Little has no choice but to seek relief from this Court. Thus, he is filing this complaint with an accompanying application for a temporary restraining order seeking to enjoin the Fire Department from further violating his statutory and constitutional rights via enforcement of EA-231 against him this June.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**Religious Creed Discrimination / Failure to Accommodate**

**in Violation of Title VII of the Civil Rights Act of 1964**

**(By Captain Little Against the Fire Department)**

64.    Plaintiff Little incorporates by reference all allegations contained in the preceding paragraphs as though fully set forth herein.

65.    Title VII prohibits an employer from discriminating against an employee "because of such individual's … religion." 42 U.S.C. § 2000e-2(a)(1). This "includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate an employee's … religious observance or practice without undue hardship on the conduct of the employer's business." *Id*. at § 2000e(j).

66.    In other words, it is "unlawful 'for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees and prospective employees.'" *Opuku-Boateng v. California*, 95 F.3d 1461, 1467 (9th Cir. 1996) (quoting *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977)).

67.    To establish a prima facie claim for failure to accommodate a plaintiff must present evidence that: "(1) [he] had a bona fide religious belief, the practice of which conflicted with an employment duty; (2) [he] informed [his] employer of the belief and conflict; and (3) the employer threatened [him] with or subjected [him] to discriminatory treatment, including discharge, because of [his] inability to fulfill the

19

job requirements." *Heller v. EBB Auto Co.*, 8 F.3d 1433, 1438 (9th Cir. 1993); *see also EEOC v. Townley Eng'g & Mfg. Co.*, 859 F.2d 610, 614 n.5 (9th Cir. 1988) ("*Townley*") (threat of adverse action is sufficient).

68.     With respect to threatened or actual adverse action, "[t]o make out a Title VII discrimination claim, [an employee] must show some harm respecting an identifiable term or condition of employment. What the transferee does not have to show, according to the relevant text, is that the harm incurred was 'significant.'" *Muldrow v. City of St. Louis*, 144 S. Ct. 967, 974 (2024); *see also Dahlia v. Rodriguez*, 735 F.3d 1060, 1078 (9th Cir. 2013) ("[P]lacement on administrative leave can constitute an adverse employment action.").

69.     Once the plaintiff has made out a *prima facie* case for discrimination, the burden then shifts to the employer to show that it could not have reasonably accommodated the plaintiff's religious beliefs without undue hardship. *Groff v. DeJoy*, 600 U.S. 447, 468 (2023). Not only does the burden of *proving* an undue hardship fall on Defendant here, "at a minimum, the employer was required to negotiate with the employee[s] in an effort reasonably to accommodate [their] religious beliefs." *EEOC v. Hacienda Hotel*, 881 F.2d 1504, 1513 (9th Cir. 1989), *overruled on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998).

70.     Here, as stated above, Plaintiff Little adheres to traditional Christian beliefs regarding the moral illicitness of same-sex sexual activity, the immutability of sex regardless of gender identity, and the view that all people are children of God regardless of their skin color. As a result, he has a sincerely held religious belief, based on deeply and sincerely held religious, moral, and ethical convictions, that he cannot raise the Progress Pride Flag.

71.     Also as a result of his faith, Plaintiff Little fully supports efforts to ensure that all homosexual, transgender, or people of color are treated kindly, with respect, and are not discriminated against. But, his religious beliefs preclude him from

affirming the ideological or philosophical premises espoused by the Progress Pride Flag.

72.    The Fire Department knew of the conflict between Plaintiff Little's religious beliefs and his job's requirement of raising the Progress Pride Flag because Plaintiff Little requested a religious accommodation from doing so on June 19, 2023. In initially granting that request for a reasonable accommodation, the Fire Department acceded to the sincerity of Plaintiff Little's religious beliefs.

73.    Yet the Fire Department has provided no reasonable accommodation options for Plaintiff Little and confirmed that he will be subject to discipline and eventual termination for failure to raise the Progress Pride Flag. The Fire Department would not even negotiate on the issue. The Department informed Plaintiff Little that it would not provide him with a religious accommodation and that he had no choice but to comply with EA-231. The Fire Department did not explore reasonable alternatives for accommodating Plaintiff Little.

74.    To establish the defense of "undue hardship," the Fire Department must demonstrate that any of the accommodations proposed by Plaintiff Little would impose a burden that is "substantial in the overall context of an employer's business." *Groff*, 600 U.S. at 468. "[A] coworker's dislike of 'religious practice and expression in the workplace' or [dislike of] 'the mere fact [of] an accommodation' is not 'cognizable to factor into the undue hardship inquiry.'" *Id*. at 472.

75.    Further, "a hardship that is attributable to employee animosity [or 'adverse customer reaction'] to a particular religion, to religion in general, or to the very notion of accommodating religious practice cannot be considered 'undue.' If bias or hostility to a religious practice or a religious accommodation provided a defense to a reasonable accommodation claim, Title VII would be at war with itself." *Id*.

76.    In addition, any "undue hardship" must be "on the conduct of the employer's business." *Townley*, 859 F.2d at 615 (citing 42 U.S.C. § 2000e(j)). As the Fire Department has operated without flying the Progress Pride Flag for years, and

currently excuses locations without flagpoles or flag clasps from flying one, accommodating Plaintiff Little cannot be said to be an "undue hardship *on the conduct of the employer's business*." *Id.* (emphasis added).

77. As a direct and proximate result of the Fire Department's discriminatory actions against Plaintiff Little, as alleged herein, Plaintiff Little has suffered harm in the form of special damages, including but not limited to, back pay, front pay, pre-judgment and post-judgment interest, punitive damages, and compensatory damages and other affirmative relief necessary to eradicate the effects of the Fire Department's unlawful employment practices.

78. As a further direct and proximate result of the Fire Department's discriminatory actions against Plaintiff Little, as alleged herein, Plaintiff Little has suffered harm in the form of general damages including, but not limited to, emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, and loss of civil rights, in an amount to be determined at trial.

79. Plaintiff Little further seeks a declaration that the Fire Department has discriminated against him and has violated his legal rights by failing to provide a reasonable accommodation of his religious beliefs.

80. Plaintiff Little found it necessary to engage the services of private counsel to vindicate his rights under the law. Plaintiff Little is therefore entitled to an award of attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k).

## SECOND CLAIM FOR RELIEF

### Religious Creed Discrimination / Failure to Accommodate

### in Violation of FEHA, Cal. Gov. Code § 12940(a)

### (By Captain Little Against the Fire Department)

81. Plaintiff Little incorporates by reference all allegations contained in the preceding paragraphs as though fully set forth herein.

82. The Fair Employment and Housing Act prohibits an employer from discriminating against an employee "because of the … religious creed" of such

22

individual. Cal. Gov. Code § 12940(a). This includes accommodating an employee's "religious belief or observance," if there are "reasonable alternative means" of achieving the employer's needs. *Id*. at subd. (l).

83.    For the exact same reasons as stated in the preceding allegations regarding the First Claim for Relief, the Fire Department has discriminated against Plaintiff Little by refusing to accommodate his religious beliefs.

84.    As a direct and proximate result of the Fire Department's discriminatory actions against Plaintiff Little, Plaintiff Little has suffered harm in the form of special damages, including but not limited to, back pay, front pay, pre-judgment and post-judgment interest, punitive damages, and compensatory damages and other affirmative relief necessary to eradicate the effects of the Fire Department's unlawful employment practices.

85.    As a further direct and proximate result of the Fire Department's discriminatory actions against Plaintiff Little, Plaintiff Little has suffered harm in the form of general damages including, but not limited to, emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, and loss of civil rights, in an amount to be determined at trial.

86.    Plaintiff Little further seeks a declaration that the Fire Department has discriminated against him and has violated his legal rights by failing to provide a reasonable accommodation of his religious beliefs.

87.    Plaintiff Little found it necessary to engage the services of private counsel to vindicate his rights under the law. Plaintiff Little is therefore entitled to an award of attorneys' fees and costs pursuant to Cal. Gov. Code § 12965(c)(6).

### THIRD CLAIM FOR RELIEF

### Retaliation in Violation of Title VII of the Civil Rights Act of 1964

### (By Captain Little Against the Fire Department)

88.    Plaintiff Little incorporates by reference all allegations contained in the preceding paragraphs as though fully set forth herein.

89.    Title VII prohibits an employer from retaliating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

90.    Here, in his employment with the Fire Department, Plaintiff Little engaged in protected activity by requesting a religious accommodation and exemption from being forced to raise the Progress Pride Flag.

91.    Plaintiff Little's request for a religious accommodation was protected under Title VII of the Civil Rights Act. As stated above, Plaintiff Little requested a religious accommodation on June 19, 2023, which was granted but then immediately rescinded the next day.

92.    Almost immediately after, various Fire Department personnel retaliated against Plaintiff Little, by angrily confronting him and ordering him to raise the Progress Pride Flag, by removing him from his role on the background investigation unit, by filing pretextual complaints against him, and informing third-parties of his religious accommodation request—leading to a death threat being mailed to his home.

93.    Plaintiff Little's protected activities were a substantial motivating reason for the Fire Department's retaliation against him.

94.    The Fire Department's retaliatory conduct was a substantial factor in causing harm to Plaintiff Little.

95.    The above-described retaliatory harassment of Plaintiff Little was performed by, or ratified by, a managing agent or officer of the Fire Department, including without limitation, Lifeguard Division Chief Fernando Boiteux, Assistant Lifeguard Chief Adam Uehara, and Section Chief Arthur Lester.

96.    These acts were done with malice, fraud, oppression, and reckless disregard of Plaintiff Little's rights. Further, said actions were despicable in character

and warrant the imposition of punitive damages in a sum sufficient to punish and deter the Fire Department's future conduct.

97.    As a direct and proximate result of the Fire Department's retaliatory actions against Plaintiff Little, as alleged herein, Plaintiff Little has suffered harm in the form of special damages, including but not limited to, back pay, front pay, pre-judgment and post-judgment interest, punitive damages, and compensatory damages and other affirmative relief necessary to eradicate the effects of the Fire Department's unlawful employment practices.

98.    As a further direct and proximate result of the Fire Department's retaliatory actions against Plaintiff Little, as alleged herein, Plaintiff Little has suffered harm in the form of general damages including, but not limited to, emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, and loss of civil rights, in an amount to be determined at trial.

99.    Plaintiff Little further seeks a declaration that the Fire Department has retaliated against him and has violated his legal rights.

100.    Plaintiff Little found it necessary to engage the services of private counsel to vindicate his rights under the law. Plaintiff Little is therefore entitled to an award of attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k).

**FOURTH CLAIM FOR RELIEF**

**Retaliation in Violation of FEHA, Cal. Gov. § 12940(h), 12940(l)(4)**

**(By Captain Little Against the Fire Department)**

101.    Plaintiff Little incorporates by reference all allegations contained in the preceding paragraphs as though fully set forth herein.

102.    The Fair Employment and Housing Act prohibits an employer from "discriminat[ing] against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." Cal. Gov. Code § 12940(h). This includes a specific prohibition on an employer "retaliat[ing] or otherwise discriminat[ing]

against a person for requesting [a religious] accommodation under this subdivision, regardless of whether the request was granted." *Id*. at subd. (l)(4).

103.  For the exact same reasons as stated in the preceding allegations regarding the Third Claim for Relief, the Fire Department has retaliated against Plaintiff Little for requesting an accommodation for his religious beliefs.

104.  As a direct and proximate result of the Fire Department's retaliatory actions against Plaintiff Little, Plaintiff Little has suffered harm in the form of special damages, including but not limited to, back pay, front pay, pre-judgment and post-judgment interest, punitive damages, and compensatory damages and other affirmative relief necessary to eradicate the effects of the Fire Department's unlawful employment practices.

105.  As a further direct and proximate result of the Fire Department's retaliatory actions against Plaintiff Little, Plaintiff Little has suffered harm in the form of general damages including, but not limited to, emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, and loss of civil rights, in an amount to be determined at trial.

106.  Plaintiff Little further seeks a declaration that the Fire Department has retaliated against him and has violated his legal rights.

107.  Plaintiff Little found it necessary to engage the services of private counsel to vindicate his rights under the law. Plaintiff Little is therefore entitled to an award of attorneys' fees and costs pursuant to Cal. Gov. Code § 12965(c)(6).

### FIFTH CLAIM FOR RELIEF

### Failure to Prevent Discrimination, Harassment, and Retaliation

### in Violation of FEHA, Cal. Gov. § 12940(k)

### (By Captain Little Against the Fire Department)

108.  Plaintiff Little incorporates by reference all allegations contained in the preceding paragraphs as though fully set forth herein.

109.  The Fair Employment and Housing Act prohibits an employer from "fail[ing] to take all reasonable steps necessary to prevent discrimination and harassment from occurring." Cal. Gov. Code § 12940(k).

110.  For the exact same reasons as stated in the preceding allegations regarding the Third Claim for Relief, the Fire Department has failed to take all reasonable steps to prevent employees from discriminating against and harassing Plaintiff Little due to his religious beliefs.

111.  As a direct and proximate result of the Fire Department's failure to take reasonable actions, Plaintiff Little has suffered harm in the form of special damages, including but not limited to, back pay, front pay, pre-judgment and post-judgment interest, punitive damages, and compensatory damages and other affirmative relief necessary to eradicate the effects of the Fire Department's unlawful employment practices.

112.  As a further direct and proximate result of the Fire Department's failure to take reasonable actions, Plaintiff Little has suffered harm in the form of general damages including, but not limited to, emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, and loss of civil rights, in an amount to be determined at trial.

113.  Plaintiff Little further seeks a declaration that the Fire Department failed to take reasonable actions to protect him and has violated his legal rights.

114.  Plaintiff Little found it necessary to engage the services of private counsel to vindicate his rights under the law. Plaintiff Little is therefore entitled to an award of attorneys' fees and costs pursuant to Cal. Gov. Code § 12965(c)(6).

///

///

///

///

///

**SIXTH CLAIM FOR RELIEF**

**Violation of Free Exercise Clause of U.S. Constitution (42 U.S.C. § 1983):**

**Not Generally Applicable due to Comparable, Categorical Exemptions**

**(By Captain Little Against All Defendants)**

115.   Plaintiff Little incorporates by reference all allegations contained in the preceding paragraphs as though fully set forth herein.

116.   The First Amendment to the U.S. Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof[.]" U.S. Const. amend. I. This Free Exercise clause applies to the states through the Due Process Clause of the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296 (1940).

117.   The Free Exercise Clause "protects not only the right to harbor religious beliefs inwardly and secretly. It does perhaps its most important work by protecting the ability of those who hold religious beliefs of all kinds to live out their faiths in daily life through 'the performance of (or abstention from) physical acts.'" *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 524 (2022) (quoting *Employment Div. v. Smith*, 494 U.S. 872, 877 (1990)).

118.   Under the Free Exercise clause, if "challenged restrictions are not 'neutral' and of 'general applicability,' they must satisfy 'strict scrutiny,' and this means that they must be 'narrowly tailored' to serve a 'compelling' state interest." *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 18 (2020).

119.   "A government policy will fail the general applicability requirement if it 'prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way.'" *Kennedy*, 597 U.S. at 526 (quoting *Fulton v. City of Philadelphia*, 593 U.S. 522, 534 (2021)).

120.   Government "regulations are not neutral and generally applicable ... whenever they treat *any* comparable secular activity more favorably than religious exercise." *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist.*, 82 F.4th

664, 688 (9th Cir. 2023) (en banc) (quoting *Tandon v. Newsom*, 593 U.S. 61, 62 (2021)) (original emphasis).

121.   Here, Plaintiff Little's religious beliefs preclude him from raising the Progress Pride Flag.

122.   Compelling Plaintiff Little to raise the Progress Pride Flag or leave his employment with the Fire Department is a substantial burden on Plaintiff Little's Free Exercise of Religion.

123.   The Fire Department's policies are not generally applicable due to their comparable, categorical exemptions.

124.   As outlined above, not every facility operated by the County of Los Angeles or the Fire Department is required to fly the Progress Pride Flag and not every employee is required to raise it. As shown in the flowchart: (1) if the location does not have any flagpole, it does not have to fly the Progress Pride Flag; (2) if the location has only one flagpole with one flag clasp, then it does not have to fly the Progress Pride Flag.

125.   Further, as shown in EA-231 itself, only Lifeguard Captains and Site Supervisors are required to raise the Progress Pride Flag—no other employees are required to perform this act.

126.   Each of these exemptions presents similar purported harm to the Fire Department's claimed interest in requiring Plaintiff Little to raise the Progress Pride Flag as would also exempting Plaintiff Little from having to do so.

127.   As a result, the Fire Department's EA-231 is not generally applicable, and the Fire Department must meet strict scrutiny. But the Fire Department has no compelling interest in requiring Plaintiff Little to raise the Progress Pride Flag, and requiring him to do so is not the least restrictive means of achieving any such interest.

128.   The Fire Department's policies, and its enforcement of those policies, violates Plaintiff Little's right to free exercise of religion as guaranteed by the First Amendment to the United States Constitution. Plaintiff Little has no adequate remedy

at law and will suffer serious and irreparable harm to his constitutional rights unless Defendants are enjoined from implementing and enforcing the Fire Department's policies.

129.   Pursuant to 42 U.S.C. § 1983, Plaintiff Little is entitled to nominal and actual damages, declaratory relief, and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Fire Department's policies.

130.   Plaintiff Little found it necessary to engage the services of private counsel to vindicate his rights under the law. Plaintiff Little is therefore entitled to an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

### SEVENTH CLAIM FOR RELIEF

### Violation of Free Exercise Clause of First Article to California Constitution

### (By Captain Little Against All Defendants)

131.   Plaintiff Little incorporates by reference all allegations contained in the preceding paragraphs as though fully set forth herein.

132.   The First Article of the California Constitution provides that "[f]ree exercise and enjoyment of religion without discrimination or preference are guaranteed." Cal. Const. art. I, § 4. This Free Exercise Clause is interpreting using a pre-1990 federal test. *Smith v. Fair Emp. & Hous. Comm'n*, 12 Cal. 4th 1143, 1179 (1996) (plurality); *Valov v. Dep't of Motor Vehicles*, 132 Cal. App. 4th 1113, 1126 & n.7 (2005).

133.   Under this standard, there is a simple, "two-fold analysis which calls for a determination of, first, whether the application of the statute imposes any burden upon the free exercise of the defendant's religion, and second, if it does, whether some compelling state interest justifies the infringement." *Montgomery v. Bd. of Ret.*, 33 Cal. App. 3d 447, 451 (1973) (quoting *People v. Woody*, 61 Cal. 2d 716, 719 (1964)).

134.   Here, Plaintiff Little's religious beliefs preclude him from raising the Progress Pride Flag.

135.   Compelling Plaintiff Little to raise the Progress Pride Flag or leave his employment with the Fire Department is a substantial burden on Plaintiff Little's Free Exercise of Religion.

136.   As a result, the Fire Department's EA-231 must meet strict scrutiny. But the Fire Department has no compelling interest in requiring Plaintiff Little to raise the Progress Pride Flag, and requiring him to do so is not the least restrictive means of achieving any such interest.

137.   The Fire Department's policies, and its enforcement of those policies, violates Plaintiff Little's right to free exercise of religion as guaranteed by the First Article of the California Constitution. Plaintiff Little has no adequate remedy at law and will suffer serious and irreparable harm to his constitutional rights unless Defendants are enjoined from implementing and enforcing the Fire Department's policies.

138.   Plaintiff Little is entitled to nominal and actual damages, declaratory relief, and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Fire Department's policies.

139.   Plaintiff Little found it necessary to engage the services of private counsel to vindicate his rights under the law. Plaintiff Little is therefore entitled to an award of attorneys' fees pursuant to Cal. Civ. Proc. Code § 1021.5.

**EIGHTH CLAIM FOR RELIEF**

**Violation of Free Exercise Clause of U.S. Constitution (42 U.S.C. § 1983):**

**Not Neutral Due to Animus and Hostility Against Religion**

**(By Captain Little Against All Defendants)**

140.   Plaintiff Little incorporates by reference all allegations contained in the preceding paragraphs as though fully set forth herein.

141.   Under the Free Exercise clause, "government actions coupled with 'official expressions of hostility to religion ... [are] inconsistent with what the Free Exercise Clause requires ... [and] must be set aside.'" *Fellowship of Christian Athletes*

*v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 690 (9th Cir. 2023) (en banc) (original alteration) (quoting *Masterpiece Cakeshop, Ltd. v. Colorado C. R. Comm'n*, 584 U.S. 617, 639 (2018)). "[I]n cases like that [courts] 'set aside' such policies without further inquiry." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 525 n.1 (2022).

142. "The constitutional benchmark is 'government *neutrality*,' not 'governmental avoidance of bigotry.'" *Roberts v. Neace*, 958 F.3d 409, 415 (6th Cir. 2020). Thus, it is inappropriate for government officials to describe religious beliefs as a pretextual justification for discrimination, or akin to "slavery" and "the holocaust." *See Masterpiece Cakeshop*, 584 U.S. at 635-36; *accord Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 541 (1993) (describing religious practice as "an abomination").

143. And viewing "neutrality" as secularism, and thereby "disqualify[ing]" recipients from a public benefit "solely because they are religious" is also unconstitutional. *Carson v. Makin*, 596 U.S. 767, 785 (2022). The government acts with hostility, not neutrality, when it "endorse[s] the impermissible view 'that religious beliefs cannot legitimately be carried into the public sphere or commercial domain, implying that religious beliefs and persons are less than fully welcome." *New Hope Family Services, Inc. v. Poole*, 966 F.3d 145, 168, n.22 (2d Cir. 2020) (quoting *Masterpiece Cakeshop*, 584 U.S. at 634).

144. Here, Plaintiff Little's religious beliefs preclude him from raising the Progress Pride Flag.

145. Compelling Plaintiff Little to raise the Progress Pride Flag or leave his employment with the Fire Department is a substantial burden on Plaintiff Little's Free Exercise of Religion.

146. As stated above, on June 21, 2023, after Captain Little's religious accommodation was revoked, Section Chief Lester directly ordered Captain Little to raise the Progress Pride Flag that he had lowered. In his words, demeanor, and tone,

Section Chief Lester's conduct toward Captain Little in the circumstance was abusive, inappropriate, harassing, and discriminatory. Further, Section Chief Lester's conduct was motivated by animus toward Captain Little's religious beliefs. He acted this way toward Captain Little because of Captain Little's religious beliefs and in retaliation for Captain Little seeking a religious accommodation.

147.   At the end of the day on June 21, 2023, Assistant Lifeguard Chief Adam Uehara confirmed the denial of any religious accommodation for Captain Little and denied his right to use his already earned employment benefits, including paid leave, as a means for him to avoid the conflict that would be caused by compelled compliance with EA-231 and violation of his bona fide and sincerely held religious beliefs.

148.   In June 22, 2023, Lifeguard Division Chief Fernando Boiteux issued a Direct Order to Captain Little to fly the Progress Pride Flag and ensure that the Progress Pride Flag is flown as instructed in EA-231. When doing so, he told Captain Little that "You need to stop what you are doing," "You are an LA County employee; that's the only thing that matters," and "Your religious beliefs do not matter; you are an LA County employee." He repeated multiple times, "You are an LA County employee" and "Your religious beliefs do not matter" in an instance of religious discrimination combined with physical intimidation.

149.   Lifeguard Chief Boiteux is 6'4" tall and weighs 220 pounds. Captain Little is aware that Chief Boiteux is also trained in martial arts. He delivered his message to Captain Little in a violent and angry manner while standing over Captain Little—who is only 5'9" tall and weighs 150 pounds. Captain Little believes that the specific intent of Chief Boiteux's demeanor was to be physically intimidating.

150.   As a result, the Fire Department's EA-231 must be set aside without further inquiry and not applied to Captain Little.

151.   The Fire Department's policies, and its enforcement of those policies, violates Plaintiff Little's right to free exercise of religion as guaranteed by the First

Amendment to the United States Constitution. Plaintiff Little has no adequate remedy at law and will suffer serious and irreparable harm to his constitutional rights unless Defendants are enjoined from implementing and enforcing the Fire Department's policies.

152.    Pursuant to 42 U.S.C. § 1983, Plaintiff Little is entitled to nominal and actual damages, declaratory relief, and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Fire Department's policies.

153.    Plaintiff Little found it necessary to engage the services of private counsel to vindicate his rights under the law. Plaintiff Little is therefore entitled to an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

### NINTH CLAIM FOR RELIEF

**Violation of Free Speech Clause of U.S. Constitution (42 U.S.C. § 1983):**

**Compelled Speech & Viewpoint Discrimination**

**(By Captain Little Against All Defendants)**

154.    Plaintiff Little incorporates by reference all allegations contained in the preceding paragraphs as though fully set forth herein.

155.    The First Amendment to the U.S. Constitution provides that "Congress shall make no law … abridging the freedom of speech[.]" U.S. Const. amend. I. This Free Speech clause applies to the states through the Due Process Clause of the Fourteenth Amendment. *Gitlow v. New York*, 268 U.S. 652, 666 (1925).

156.    "The Free Speech Clause of the First Amendment … protect[s] the 'freedom to think as you will and to speak as you think.'" *303 Creative LLC v. Elenis*, 600 U.S. 570, 584 (2023) (quoting *Boy Scouts of Am. v. Dale*, 530 U. S. 640, 660-61 (2000)). "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein." *W. Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943).

157.    Thus, "[a] system which secures the right to proselytize religious, political, and ideological causes must also guarantee the concomitant right to decline to foster such concepts." *Vlaming v. W. Point Sch. Bd.*, 895 S.E.2d 705, 738 (Va. 2023) (quoting *Wooley v. Maynard*, 430 U.S. 705, 714 (1977)).

158.    A compelled speech claim has three elements. A party must establish (1) speech, (2) that is compelled by governmental action, and (3) to which the speaker objects. If the three elements are satisfied, strict scrutiny is triggered. *See Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 572-73 (1995). However, in the context of a government employment relationship, additional elements are (4) whether the topic is a matter of public concern, (5) whether the plaintiff is speaking as a private citizen or public employee, and (6) whether the government has an adequate justification for restricting its employee's speech. *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009).

159.    (1) With respect to speech, the Supreme Court has long recognized that flying a flag is pure expression entitled to First Amendment protection. *Stromberg v. California*, 283 U.S. 359, 361 (1931); *W. Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 625 (1943).

160.    (2) As stated above, the Fire Department and its personnel have informed Plaintiff Little that raising the Progress Pride Flag is a condition of employment. Thus, the Fire Department is compelling Plaintiff Little's speech by requiring him to affirm the Progress Pride Flag.

161.    (3) As stated above, Plaintiff Little objects to raising the Progress Pride Flag on both moral and religious grounds.

162.    (4) "Speech involves a matter of public concern when it can fairly be considered to relate to 'any matter of political, social, or other concern to the community.'" *Demers v. Austin*, 746 F.3d 402, 415 (9th Cir. 2014) (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)). This test is met if the speech concerns an ideological subject such as "gender identity." *Riley's Am. Heritage Farms v. Elsasser*,

1    32 F.4th 707, 723 (9th Cir. 2022) (school district's cancelling of field trips based on

2    farm owner's tweets about gender identity issues in high schools was retaliation for

3    speaking on a matter of public concern). Here, the meaning of the Progress Pride Flag

4    relates to sexual orientation and gender identity—issues of public concern.

5        163.    (5) Plaintiff Little's speech is not government speech for two primary

6    reasons. *See Garcetti v. Ceballos*, 547 U.S. 410, 425 (2006).

7        a.    *First*, the First Amendment "freedom to think as you will," *303 Creative*,

8            600 U.S. at 584, prohibits the government from imposing a "blanket

9            requirement" that all employees "mouth support for views they find

10           objectionable." *Janus v. AFSCME, Council 31*, 585 U.S. 878, 892, 907

11           (2018). For example, because "no official, high or petty, can prescribe

12           what shall be orthodox in politics, nationalism, religion, or other matters

13           of opinion," *Barnette*, 319 U.S. at 642, the government cannot require an

14           employee, as a condition of employment, to join a government union,

15           *Babb v. California Tchrs. Ass'n*, 378 F. Supp. 3d 857 (C.D. Cal. 2019)

16           (citing *Janus*, 585 U.S. 878), or to recite the pledge of allegiance, *Russo

17           v. Cent. Sch. Dist. No. 1*, 469 F.2d 623, 633-34 (2d Cir. 1972); *State v.

18           Lundquist*, 262 Md. 534, 554 (1971); *Hanover v. Northrup*, 325 F. Supp.

19           170, 173 (D. Conn. 1970), or to participate in a Pride Parade, *Ghiotto v.

20           City of San Diego*, No. D055029, 2010 WL 4018644, at *1-4, 27-29 &

21           n.28 (Cal. Ct. App. Oct. 14, 2010). Here, as explained above, the

22           Progress Pride Flag has clear ideological meanings whose affirmation

23           cannot be made a regular job duty of every government employee.

24       b.    *Second*, under the *Garcetti* analysis, "[t]he proper inquiry is a practical

25           one," such that "the listing of a given task in an employee's written job

26           description is neither necessary nor sufficient to demonstrate that

27           conducting the task is within the scope of the employee's professional

28           duties for First Amendment purposes." *Garcetti v. Ceballos*, 547 U.S.

36

410, 425 (2006). The government may not "posit an excessively broad job description" and thereby "treat[] everything teachers and coaches say in the workplace as government speech subject to government control." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 531 (2022). Thus, "[m]ath teachers must teach math, science teachers must teach science, history teachers must teach history, and so on. But none of them can be compelled into the service of controversial religious, political, or ideological causes," and "the government has no inherent power to declare by ipse dixit that controversial ideas are now uncontroversial." *Vlaming*, 895 S.E.2d at 739-40. Thus, the Ninth Circuit has made clear that "disagreement with a disfavored political stance or controversial viewpoint … is not a valid reason to curtail expression of that viewpoint"—so much so that qualified immunity for government actors is not available. *Dodge v. Evergreen Sch. Dist. #114*, 56 F.4th 767, 786-87 & n.6 (9th Cir. 2022). Here, Plaintiff Little's job duties involve serving as a lifeguard, *see* **Exhibit T**—not affirming by word or deed ideological views that he does not espouse.

164.   (6) The Fire Department has no adequate justification for treating Plaintiff Little differently from members of the general public, who need not raise a Progress Pride Flag. This is because Plaintiff Little's preferred speech contrary to the Fire Department's policies has not and will not materially and substantially interfere with the efficient operation of the Lifeguard Division, or prevent the Fire Department from efficiently providing services to the public.

165.   Defendants adopted their policies "under color of state law" within the meaning of Section 1983.

166.   The Fire Department's policies and its enforcement of those policies violates Plaintiff Little's right to free speech as guaranteed by the First Amendment to the United States Constitution. Plaintiff Little has no adequate remedy at law and

will suffer serious and irreparable harm to his constitutional rights unless Defendants are enjoined from implementing and enforcing the policies.

167. Pursuant to 42 U.S.C. § 1983, Plaintiff Little is entitled to nominal and actual damages, declaratory relief, and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Fire Department's policies.

168. Plaintiff Little found it necessary to engage the services of private counsel to vindicate his rights under the law. Plaintiff Little is therefore entitled to an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Captain Jeffrey Little prays for the following relief, as allowed by each of the above-stated causes of action:

1. For an award of compensatory damages proximately caused by Defendants' discriminatory and retaliatory conduct, including for past pecuniary loss, future pecuniary loss, and nonpecuniary loss. Compensatory damages should include, but not be limited to:

    A. An award of damages of back pay, including all forms of compensation (wages and benefits) that Plaintiff would have earned from Defendant from June 20, 2023, until the date of trial.

    B. An award of damages for future salary (if reinstatement is not ordered), benefits and bonuses, and other forms of compensation that Defendants would have paid to Plaintiff but for the wrongful conduct of Defendants, in an amount according to proof at trial.

    C. For an award of damages for Plaintiff's severe emotional distress, in an amount according to proof at trial.

2. For an order that Defendants are to reinstate Plaintiff to his background investigation role, with any raises and promotions that Plaintiff should have received but for Defendants' discrimination and retaliation against Plaintiff.

3.     For an order that Defendants are to grant Plaintiff a standing exemption from raising or flying the Progress Pride Flag from any work site, or ordering others to do so, no renewal required, whether in the month of June or in another month, for the entirety of his employment by Defendants.

4.     For an order that Defendants are to withdraw from Plaintiff's personnel file all negative material that might impact performance reviews, promotions, career progression, or the like.

5.     For an award of punitive damages or other penalties recoverable by law.

6.     For an order and judgment declaring that Defendants' policies, as applied to Plaintiff, violate the First Amendment to the U.S. Constitution and First Article of the California Constitution.

7.     For an order temporarily, preliminarily, and permanently enjoining and prohibiting Defendants from enforcing their unlawful policies against Plaintiff, and from engaging in any practices or conduct that chills Plaintiff's free exercise of religion.

8.     For an award of reasonable attorneys' fees and costs pursuant to all applicable statutes or legal principles, including 42 U.S.C. § 2000e-5(k), Cal. Gov. Code § 12965(c)(6), and Cal. Civ. Proc. Code § 1021.5.

9.     For orders requiring senior management of the Department, including but not limited to Fernando Boiteux, Adam Uehara, and Arthur Lester, to enroll in and complete certain EEOC and Fair Treatment classes, including the following: SHRM: US Employment Law and Compliance, a 5-week live online program; SHRM: Creating an Inclusive Workplace, eLearning; Harassment and Diversity: Respecting Differences, Managers Version, DVD Learning; SHRM: Employee Relations: Creating a Positive Work Environment, two-week Live Online Program; SHRM: Employment Laws: What Supervisors Need to Know - Corporate, eLearning.

10.     For any other relief that is just and proper.

VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

# DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all triable issues.

LiMANDRI & JONNA LLP

Dated: May 24, 2024             By: _____

Charles S. LiMandri
Paul M. Jonna
Jeffrey M. Trissell
Joshua A. Youngkin
*Attorneys for Plaintiff*
*Captain Jeffrey Little*

VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

## VERIFICATION OF CAPTAIN JEFFREY LITTLE

I, Jeffrey Little, am a plaintiff in this action. I have read the above Verified Complaint and know its contents. The information supplied in the foregoing is based on my own personal knowledge or has been supplied by my attorneys or other agents or compiled from available documents. The information in the foregoing document is true to the extent of my personal knowledge. As to the information provided by my attorneys or other agents or compiled from available documents, including all contentions and opinions, I do not have personal knowledge but made a reasonable and good faith effort to obtain the information by inquiry to other natural persons or organizations, and believe it is true.

Thus, I am informed and believe that the matters stated in the foregoing document are true and on that ground certify or declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed this 24th day of May 2024, at Los Angeles County, California.


Jeffrey Little

VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

**EXHIBIT A**

AGN. NO._____

MOTION BY SUPERVISORS JANICE HAHN                    March 7, 2023
AND SUPERVISOR LINDSEY HORVATH
**Raising the Progress Pride Flag at Los Angeles County Facilities**

The first known Pride flag debuted at the San Francisco Gay Freedom Day Parade in June 1978. At the encouragement of gay activist Harvey Milk, Gilbert Baker sewed the flag to symbolize the value and dignity of the gay community.

The original Pride flag contained eight stripes, each a separate color of the rainbow plus hot pink. They colored represented sex, life, healing, sunlight, nature, magic and art, serenity, and spirit.   While there have been several variations of the Pride flag.  in 2019, a version was debuted that included the iconic six rainbow stripes: red, orange, yellow, green, blue and violet, as well as the colors from the Transgender Pride Flag, light blue, pink and white stripes, to embrace the transgender community.

Most recently, the Progress Pride Flag was created by artist Daniel Quasar as a combination and reimaging of the original Pride Flag. The Progress Pride Flag's black and brown stripes represent marginalized LBGTQ+ communities of color, community members lost to HIV/AIDS, and those currently living with HIV/AIDS.  The new flag colors are in a chevron shape to represent a need for forward movement.

In 2015, the White House lit up with rainbow colors following the Supreme Court's landmark Obergefell v. Hodges ruling in 2015 that guarantees a constitutional right to

MOTION

SOLIS            _____

MITCHELL        _____

HORVATH         _____

BARGER          _____

HAHN            _____

same-sex marriage. In June 2019, Governor Gavin Newsom requested that the Pride flag be flown on the main flagpole at the State Capitol building in commemoration of LGBTQ Pride Month, marking the first time in state history that occurred. On December 13, 2022, President Joseph R. Biden signed the Respect for Marriage Act, which provides federal protections for same-sex marriage.

While much progress and inclusion has occurred over the decades, some governing bodies have voted to ban displays of the Pride flag. Despite a unanimous vote two years ago to allow the Pride flag to be flown at city Hall, the City of Huntington Beach recently overturned the vote and will now only allow city, state and national flags to regularly be flown at City Hall.

Flying the Progress Pride Flag at the Kenneth Hahn Hall of Administration will show LA County's support for LGBTQ+ communities. In addition to the several ways our communities celebrate LGBTQ+ Pride Month.

**WE, THEREFORE, MOVE** that the Board of Supervisors:

1) Direct the Internal Services Department to raise the Progress Pride Flag at the Kenneth Hahn Hall of Administration, and Los Angeles County facilities where the American and California Flags are displayed during the month of June, while we celebrate LGBTQ+ Pride Month this year and every year moving forward.

2) Direct the Chief Executive Officer to work with all County Departments to explore ways the Progress Pride Flag can be flown at all county facilities

3) Direct the Executive Officer of the Board to update the County's flag policy and notify departments of the above directive and provide guidance to ensure that proper flag etiquette is followed.

#     #     #

JH:mj/dg

**EXHIBIT B**

May 25, 2023
EA – 231

TO:         ALL CHIEF OFFICERS
            ALL ADMINISTRATIVE SITES

FROM:       ACTING CHIEF DEPUTY JON O'BRIEN
            ACTING CHIEF DEPUTY THERESA R. BARRERA

SUBJECT:    **RAISING THE PROGRESS PRIDE FLAG**

On March 7, 2023, the Board of Supervisors passed a motion requiring the Progress Pride flag ("PPF") to be flown at County facilities during the month of June, which will now be recognized as LGBTQ+ Pride month moving forward.

With the exception of Flag Day, June 14th, when the Prisoner of War/Missing in Action flag is flown, the PFF shall be flown as follows:

**Single Flagpole**

- Clasps for one flag:  Fly the United States (U.S.) flag alone.

- Clasps for two flags:  Fly the U.S. flag at peak and the PPF directly below.

- Clasps for three flags:  Fly the U.S. flag at peak, State, and then PPF.

**Two Flagpoles**

- Fly the U.S. flag on the leftmost pole and the State flag over the PPF flag on the right pole.

- If the right pole only has one set of clasps, the PPF flag shall be flown in place of the State flag.

**RESPONSIBILITIES**

**The Construction and Maintenance Division shall:**

- Contact each battalion utility driver to coordinate the pick-up and delivery of the flags for their corresponding facilities during the last week of May 2023.

**County of Los Angeles Fire Department**
*"Proud Protectors of Life, Property, and the Environment"*

All Chief Officers
All Administrative Sites
May 25, 2023
Page 2

**Captains/Site Supervisors shall:**

- Ensure flags are received and flown throughout the month of June, as noted above.

- At the end of June, ensure the PFF flag is folded and stored for use the following year.

If you have any questions, please contact your jurisdictional deputy fire chief.

JOB:TRB:tob

Attachment

**County of Los Angeles Fire Department**
*"Proud Protectors of Life, Property, and the Environment"*

**EXHIBIT C**



# Los Angeles County Fire Department
## Progress Pride Flag
## Flow Chart



**Does the building fly both the U.S. and State flags?**

**YES**

**NO**

The Board Motion does not apply at this location

**Is there more than one flagpole?**

**YES** (two flagpoles)

**NO** (single flagpole)

**Can each flagpole fly more than one flag?**

**Can the flagpole fly more than two flags?**

**YES**

**NO**

**YES**

**NO**

**Clasp sets for three flags**
Fly the U.S. flag at peak on the left pole and State flag over the PPF on the right pole

**Clasp sets for two flags**
Fly the U.S. flag at peak on the left pole and the PPF on the right pole

**Clasp sets for one flag**
Fly the U.S. flag at peak

**Clasps for one flag**
Fly the U.S. flag at peak

**Clasp sets for two flags**
Fly the U.S. flag at peak and PPF directly below

**Clasp sets for three flags**
Fly the U.S. flag at peak, State, and then PPF

**EXHIBIT D**

**RE: Accommodation Request**

Fernando Boiteux <      **REDACTED** @fire.lacounty.gov>
Mon 6/19/2023 10:50 AM
To:Jeffrey Little < **REDACTED** @fire.lacounty.gov>
Cc:Kyle Power < **REDACTED** @fire.lacounty.gov>;Danielle Mcmillon <      **REDACTED** @fire.lacounty.gov>;Gregory Crum
<    **REDACTED** @fire.lacounty.gov>

Good morning Captain Little,

I am confirming Ms. Nuanes-Delgadillo will conduct an IPM today at 2:00 pm.

Let me know if you have questions.

Thank you

Fernando Boiteux, Chief Lifeguard
County Los Angeles Fire Department
Office

-----Original Message-----
From: Jeffrey Little < **REDACTED** @fire.lacounty.gov>
Sent: Sunday, June 18, 2023 10:58 AM
To: Fernando Boiteux <      **REDACTED** @fire.lacounty.gov>
Cc: Kyle Power < **REDACTED** @fire.lacounty.gov>; Danielle Mcmillon <      **REDACTED** @fire.lacounty.gov>; Gregory
Crum <    **REDACTED** @fire.lacounty.gov>
Subject: Accommodation Request

Chief Boiteux-

I am requesting to be exempt to adhering to EA-231 and am requesting a religious accommodation on grounds that it infringes on my sincere religious beliefs. I have always made it a priority to carry out the mission of the department, serve the community, and be an exemplary employee, but this board motion and the responsibilities accompanying it is in conflict with my deep religious faith.


Respectfully,


Jeff Little – Lifeguard Captain
Los Angeles County Fire Dept.
Will Rogers Beach
Background Investigation Unit
     **REDACTED** Mobile
     **REDACTED**
**REDACTED** @fire.lacounty.gov

**EXHIBIT E**

**COUNTY OF LOS ANGELES FIRE DEPARTMENT**
**CENTRAL REGIONAL OPERATIONS BUREAU**
**LIFEGUARD DIVISION**
**(310) 939-7200**

June 22, 2023

*I hereby acknowledge receipt of this document*

_____

*Employee's Signature*

TO:      CAPTAIN JEFFREY LITTLE
          WILL ROGERS BEACH

_____

*Date*

FROM:    CHIEF FERNANDO BOITEUX
         LIFEGUARD DIVISION

*Hand-delivered by:*

_____
*Signature*

FERNANDO Boiteux - 6/22/23
*Print Name*          *Date*

**DIRECT ORDER**

You are hereby ordered to:

    (1) Fly the Progress Pride Flag (PPF) as instructed in Executive Action–231 (EA–231) during the month of June;

       OR

    (2) Ensure that the PPF is flown as instructed in EA–231 during the month of June.

This assignment is to be performed immediately and shall remain effective for the entire month of June, with the exception of Flag Day (June 14th), each year going forward.

The order is in accordance with EA–231 and the Board of Supervisors motion of March 7, 2023 requiring that the PPF be flown at County facilities during the month of June.

Failure to comply with this order will be considered insubordination and subject to disciplinary action, which could include suspension and/or discharge from County service.

FB:as

 c:    Employee Relations Division

Attachment

**EXHIBIT F**

For CISU Use:

(Method of Receipt)

☐ Telephone
☐ In-Person
■ Online
☐ Paper Complaint

Reference
#REF23-0002442

# COUNTY POLICY OF EQUITY

**REPORT/NOTIFICATION FORM**

**Methods of Reporting Potential County Policy of Equity (CPOE) Violations:**

1) You may use this form to report a potential violation of the CPOE;

2) File an online complaint at https://ceop.bos.lacounty.gov (strongly encouraged);

3) Call the County Intake Specialist Unit (CISU) at (855) 999-CEOP (2367); or

4) Visit the CISU office at the Kenneth Hahn Hall of Administration building located at 500 West Temple Street, Suite B-28, Los Angeles, CA 90012.

---

**1. Do you wish to file this complaint anonymously?**

 No

**2. Are you filing this complaint for:**

 Yourself

---

(**Note to Supervisors/Managers:** As a County Manager/Supervisor, it is the County's expectation that the CPOE complaint notification be submitted online at https://ceop.lacounty.gov).

<u>Section A:</u> **Reporting Party Information**          **Today's Date:** 6/22/2023

**Name:** Jeff Little                                    **Emp. #:** e482745
**Title:** Captain, Lifeguard Services                   **Email:** REDACTED
**Work #:** REDACTED      **Mobile #:** REDACTED          **Work Hrs.:** 1000-2000       **RDO:** Monday
2790
**Reporting Party's Department:** FIRE DEPARTMENT         **Dept. Head:** Anthony Marrone
**Reporting Party's Other Department:**
**Reporting Party's Unit of Assignment:** Lifeguard Division
**Reporting Party's Immediate Supervisor:** Kyle Power
**Date & Time Form Completed:** 2023-06-22 11:23:40

**Did the complainant notify a supervisor/manager of this complaint prior to now?**
No

**Name of Supervisor/Manager Notified:**
**Date:**                          **How:**

---

**Section B: Complainant(s) Information**

**1.**
**Name:** Jeff Little                                    **Emp. #:** e482745
**Title:** Captain, Lifeguard Services
**Work #:** REDACTED          **Mobile #:** REDACTED          **Work Hrs.:** 1000-2000          **RDO:** Monday
2790
**Complainant's Department:** FIRE DEPARTMENT          **Dept. Head:** Anthony Marrone
**Complainant's Other Department:**
**Complainant's Unit of Assignment:** Lifeguard Division
**Complainant's Immediate Supervisor:** Kyle Power

---

**Section C: Alleged Involved Party(ies) Information**

**1.**
**Name:** Arthur Lester                                    **Emp. #:** e494549
**Title:** Section Chief
**Work #:** REDACTED          **Mobile #:** REDACTED          **Work Hrs.:**                          **RDO:**
**Involved Party's Department:** FIRE DEPARTMENT          **Dept. Head:** Anthony Marrone
**Involved Party's Other Department:**
**Involved Party's Unit of Assignment:**
**Involved Party's Immediate Supervisor:** Adam Uehara

---

**Section D: Alleged Witness(es) Information (if they can be identified)**

---

**Section E: Nature of Complaint or Issue(s)**

**1. What is the date of the alleged potential violation(s)?** 06/21/2023

**2. Please provide a detailed summary of the alleged potential violation(s):**
My shift on 6/21 was changed to accommodate my religious beliefs so I would not have to work an area that flew the pride flag. This was agreed upon between HR, Lifeguard Management, and myself on Monday 6/19 in an IPM. When I began my shift at 1030, I was greeted with three flags being flown on my beach at Dockweiler South Tower, Dockweiler North Tower, and the El Segundo Lifeguard back station. I was informed by my subordinates that Chief Lester had dropped off the flags and he ordered the Lifeguard personnel to fly them on the flag poles. I was confused to why they where flying as I was under the impression that I would not have to deal with working in these conditions as previously agreed upon. I felt like I was being targeted or entrapped by Chief Lester and my religious beliefs were not being taken seriously. He did not notify me of this change and gave me no heads up that the flags would be flying. I took down the flags since they were not in accordance to the current flag policy that was published on 5/25/23. Later that day I had a follow-up IPM that was initiated by HR. I was informed that my request had now been denied and they had changed their mind to granting me an accommodation. Two hours later Chief Lester stopped by my work location and demanded that I put up the flag at Dockweiler South Tower. I stated to him that it violated my deeply held religious beliefs and that I could not in good conscience work under that flag. He told me I don't have a choice in it and that he was ordered to have the flags up. I asked for him to cite the policy and to review the current policy and he refused to answer. He proceeded to put the pride flag on the flag pole that was 10 feet away from my work desk and said he expected the flag to be flown at all the locations in my area and he stormed out of the building.

**3. Why does the Complainant(s) believe the treatment occurred/is occurring?**
I believe I am being targeted for my religious beliefs and that Chief Lester is attempting to intimidate me into flying the pride flag despite my religious convictions. Due to the timing of the events, I believe that the actions by Chief Lester

are retaliatory in nature since I was the first employee in the department to request an accommodation and voice my dissent to flying the pride flag at my work location. His actions brought mental and emotional distress to me and I felt like I couldn't work in that type of hostile environment created by Chief Lester. I completed the shift not wanting to jeopardize public safety.

**Section F:** **TO BE COMPLETED BY SUPERVISORS/MANAGERS ONLY**

**Date supervisor/manager observed and/or was notified of the alleged potential violation(s):**

**How was supervisor/manager made aware of the alleged potential violation(s)? (Explain in detail):**

**What action(s), if any, did the supervisor/manager take? (Explain in detail):**

**Did the supervisor/manager ascertain whether Complainant(s) is/are in need of any of the following?**

**Medical Attention:**

**Protection:**

**Separation from Alleged Involved Party(ies):**

**Other Assistance:**

**Did the supervisor/manager advise the Complainant(s) that they:**

**May seek confidential counseling or assistance from the County's Employee Assistance Program (EAP) at (213) 738-4200:**

**May contact the County Intake Specialist Unit (CISU) directly at (855) 999-2367, or via email at ceop@bos.lacounty.gov:**

**EXHIBIT G**



# COUNTY OF LOS ANGELES
# FIRE DEPARTMENT

1320 NORTH EASTERN AVENUE
LOS ANGELES, CALIFORNIA 90063-3294
(323) 881-2401
www.fire.lacounty.gov



**ANTHONY C. MARRONE**
FIRE CHIEF
FORESTER & FIRE WARDEN

*"Proud Protectors of Life,
the Environment, and Property"*

**BOARD OF SUPERVISORS**
JANICE HAHN, CHAIR
FOURTH DISTRICT

HILDA L. SOLIS
FIRST DISTRICT

HOLLY J. MITCHELL
SECOND DISTRICT

LINDSEY P. HORVATH
THIRD DISTRICT

KATHRYN BARGER
FIFTH DISTRICT

June 27, 2023

Captain Jeffrey Little, Lifeguard Services
**REDACTED**

Dear Captain Jeffrey Little:

## NOTICE TO COMPLAINING PARTY

Please be advised that the County Intake Specialist Unit (CISU) is in receipt of a County
Policy of Equity (CPOE) complaint filed by you or on your behalf, which was assigned
ICMS# 2023-120516. The complaint is being initially investigated and assessed by the CISU
for appropriate designation under the CPOE. You may be contacted by the CISU regarding
the complaint.

During the pendency of this investigation, please do not discuss these allegations with
anyone other than the assigned investigator or your representative to ensure accurate
collection of information from individuals potentially involved, to safeguard against the
destruction of evidence, and/or to protect against a cover up.

Should you have any questions about this process, please feel free to contact the
Employee Relations Division at (323) 267-7207.

Sincerely,

*Verzhine Maslakyan*
VERZHINE MASLAKYAN, CIVIL RIGHTS LIAISON
EMPLOYEE RELATIONS DIVISION

VM

c:    Employee Relations Division

SERVING THE UNINCORPORATED AREAS OF LOS ANGELES COUNTY AND THE CITIES OF:

| | | | | | |
|---|---|---|---|---|---|
| AGOURA HILLS | CARSON | EL MONTE | INGLEWOOD | LAWNDALE | PICO RIVERA | SIGNAL HILL |
| ARTESIA | CERRITOS | GARDENA | IRWINDALE | LOMITA | POMONA | SOUTH EL MONTE |
| AZUSA | CLAREMONT | GLENDORA | LA CANADA-FLINTRIDGE | LYNWOOD | RANCHO PALOS VERDES | SOUTH GATE |
| BALDWIN PARK | COMMERCE | HAWAIIAN GARDENS | LA HABRA | MALIBU | ROLLING HILLS | TEMPLE CITY |
| BELL | COVINA | HAWTHORNE | LA MIRADA | MAYWOOD | ROLLING HILLS ESTATES | VERNON |
| BELL GARDENS | CUDAHY | HERMOSA BEACH | LA PUENTE | NORWALK | ROSEMEAD | WALNUT |
| BELLFLOWER | DIAMOND BAR | HIDDEN HILLS | LAKEWOOD | PALMDALE | SAN DIMAS | WEST HOLLYWOOD |
| BRADBURY | DUARTE | HUNTINGTON PARK | LANCASTER | PALOS VERDES ESTATES | SANTA CLARITA | WESTLAKE VILLAGE |
| CALABASAS | | INDUSTRY | | PARAMOUNT | | WHITTIER |

**EXHIBIT H**



ANTHONY C. MARRONE
FIRE CHIEF
FORESTER & FIRE WARDEN

*"Proud Protectors of Life,
the Environment, and Property"*

# COUNTY OF LOS ANGELES
# FIRE DEPARTMENT



1320 NORTH EASTERN AVENUE
LOS ANGELES, CALIFORNIA 90063-3294
(323) 267-7208
www.fire.lacounty.gov



**BOARD OF SUPERVISORS**
JANICE HAHN, CHAIR
FOURTH DISTRICT

HILDA L. SOLIS          HOLLY J. MITCHELL
FIRST DISTRICT          SECOND DISTRICT

LINDSEY P. HORVATH      KATHRYN BARGER
THIRD DISTRICT          FIFTH DISTRICT

June 22, 2023

*I hereby acknowledge receipt of this document*

_____
*Employee's Signature*

TO:      CAPTAIN JEFFREY LITTLE
         WILL ROGERS BEACH

_____
*Date*

*Hand-delivered by:*

FROM:    ACTING DEPUTY CHIEF WILLIAM MAYFIELD
         CENTRAL REGIONAL OPERATIONS BUREAU

Semures Estros  FERNANDBO HELK
*Signature*              *Print Name*

6/22/23
*Date*

## INTERNAL INVESTIGATION

You are hereby notified that you are the subject of a Fire Department Administrative
Investigation. The investigation will focus on alleged misconduct generally concerning the
removal of the Progress Pride Flag from County facilities on June 21, 2023. Your behavior
may involve actions that could be considered in violation of the Department's Standards of
Behavior.

Your interview will be scheduled at a future date by personnel at the Professional
Performance Section.

You are being advised that it is against County and Fire Department policy, as well as State
and Federal law to retaliate against any individual who participates in this investigation as a
witness or complainant. Any act of retaliation can result in a separate administrative action
against you, which could result in disciplinary action up to and including termination. This
admonition applies to any and all persons who you should reasonably know or suspect would
be involved as a witness, complainant, or subject in this investigation. This is a confidential
matter and you must not discuss this matter with any person or County employee who does
not have a legitimate business reason to know.

SERVING THE UNINCORPORATED AREAS OF LOS ANGELES COUNTY AND THE CITIES OF:

| | | | | | | |
|---|---|---|---|---|---|---|
| AGOURA HILLS | CARSON | EL MONTE | INGLEWOOD | LAWNDALE | PICO RIVERA | SIGNAL HILL |
| ARTESIA | CERRITOS | GARDENA | IRWINDALE | LOMITA | POMONA | SOUTH EL MONTE |
| AZUSA | CLAREMONT | GLENDORA | LA CANADA-FLINTRIDGE | LYNWOOD | RANCHO PALOS VERDES | SOUTH GATE |
| BALDWIN PARK | COMMERCE | HAWAIIAN GARDENS | LA HABRA | MALIBU | ROLLING HILLS | TEMPLE CITY |
| BELL | COVINA | HAWTHORNE | LA MIRADA | MAYWOOD | ROLLING HILLS ESTATES | VERNON |
| BELL GARDENS | CUDAHY | HERMOSA BEACH | LA PUENTE | NORWALK | ROSEMEAD | WALNUT |
| BELLFLOWER | DIAMOND BAR | HIDDEN HILLS | LAKEWOOD | PALMDALE | SAN DIMAS | WEST HOLLYWOOD |
| BRADBURY | DUARTE | HUNTINGTON PARK | LANCASTER | PALOS VERDES ESTATES | SANTA CLARITA | WESTLAKE VILLAGE |
| CALABASAS | | INDUSTRY | | PARAMOUNT | | WHITTIER |

The person in charge of this investigation is Joanne Schaeffer.  As a subject of this investigation, you are entitled to representation during this interview.  If you intend to be represented in this matter, please contact your representative immediately.  Your interview will be audio recorded and you may also audio record the interview if you wish.  If you wish to also audio record your interview, please bring your own audio recording equipment (i.e., recorder and batteries).

If you have any questions, please contact Ms. Schaeffer at 323-267-7208.

WLM:js

cc:    Professional Performance Section

**EXHIBIT I**



**ANTHONY C. MARRONE**
FIRE CHIEF
FORESTER & FIRE WARDEN

*"Proud Protectors of Life,
the Environment, and Property"*

June 22, 2023

# COUNTY OF LOS ANGELES
# FIRE DEPARTMENT

1320 NORTH EASTERN AVENUE
LOS ANGELES, CALIFORNIA 90063-3294
(323) 267-7208
www.fire.lacounty.gov



**BOARD OF SUPERVISORS**
JANICE HAHN, CHAIR
FOURTH DISTRICT

HILDA L. SOLIS          HOLLY J. MITCHELL
FIRST DISTRICT          SECOND DISTRICT

LINDSEY P. HORVATH      KATHRYN BARGER
THIRD DISTRICT          FIFTH DISTRICT

I hereby acknowledge receipt of this document

_____
Employee's Signature

TO:     CAPTAIN JEFFREY LITTLE
        WILL ROGERS BEACH

_____
Date

FROM:   CHIEF FERNANDO BOITEUX
        LIFEGUARD DIVISION

Hand-delivered by:

FERNANDO BOITEUX
Print Name

*Fernando Boiteux* 6/22/23
Signature                      Date

## NOTICE OF INSTRUCTION

This Notice of Instruction is being issued to reiterate the Department's expectations regarding compliance with the Board of Supervisors' March 7, 2023 motion to fly the Progress Pride Flag (PPF) at County facilities:

On June 21, 2023, Ocean Lifeguard Specialist Gottschalk and Ocean Lifeguard Graner informed you that Chief Lester had ordered them to raise the PPF. Despite Chief Lester's instruction, you removed the PPF from three lifeguard facilities. When you removed the PPF from the El Segundo facility, you did so in front of junior lifeguards.

On May 25, 2023, the Department sent out Executive Action–231 (EA-231), which outlines how the PPF shall be flown at Department facilities for the entire month of June, with the exception of Flag Day (June 14th). All Department employees, irrespective of personal beliefs, are expected to comply with EA–231, which includes raising the flag as instructed, refraining from taking the flag down, and ensuring compliance from subordinate staff. As a Captain, you are expected to lead by example, exercise good judgment by refraining from conduct that could discredit the Department and carry out lawful orders from management.

You are expected to comply with the Standards of Behavior, including but not limited to the following:

SERVING THE UNINCORPORATED AREAS OF LOS ANGELES COUNTY AND THE CITIES OF:

| | | | | | |
|---|---|---|---|---|---|
| AGOURA HILLS | CARSON | EL MONTE | INGLEWOOD | LAWNDALE | PICO RIVERA | SIGNAL HILL |
| ARTESIA | CERRITOS | GARDENA | IRWINDALE | LOMITA | POMONA | SOUTH EL MONTE |
| AZUSA | CLAREMONT | GLENDORA | LA CANADA-FLINTRIDGE | LYNWOOD | RANCHO PALOS VERDES | SOUTH GATE |
| BALDWIN PARK | COMMERCE | HAWAIIAN GARDENS | LA HABRA | MALIBU | ROLLING HILLS | TEMPLE CITY |
| BELL | COVINA | HAWTHORNE | LA MIRADA | MAYWOOD | ROLLING HILLS ESTATES | VERNON |
| BELL GARDENS | CUDAHY | HERMOSA BEACH | LA PUENTE | NORWALK | ROSEMEAD | WALNUT |
| BELLFLOWER | DIAMOND BAR | HIDDEN HILLS | LAKEWOOD | PALMDALE | SAN DIMAS | WEST HOLLYWOOD |
| BRADBURY | DUARTE | HUNTINGTON PARK | LANCASTER | PALOS VERDES ESTATES | SANTA CLARITA | WESTLAKE VILLAGE |
| CALABASAS | | INDUSTRY | | PARAMOUNT | | WHITTIER |

Captain Jeffrey Little
June 22, 2023
Page 2 of 2

| A. | | In carrying out their official duties and responsibilities, all employees shall: |
|---|---|---|
| | 1. | Abide by and conform to the County's and Department's rules, regulations, policies, and procedures. |
| | 3. | Perform all assigned duties and responsibilities. |
| | | b. Exercise good judgment. |
| | 5. | Carry out any lawful order issued by a supervisor. |
| | 11. | Treat all persons in a respectful and courteous manner while on duty. |
| | | a. Not use coarse, profane, or insulting language. |
| | | b. Not threaten, defame, or demean any individual. |
| | | c. Not subject any person to any kind of harassing behavior. |
| | 14. | Not engage in political campaigning while on-duty or in uniform. |
| | 15. | Not make public statements or provide information to citizens, community groups or the press regarding Department matters, other than those affecting public policy, without specific authorization. |
| | 22. | Not bring discredit or embarrassment upon the Department through on- or off-duty behavior. |
| B. | | When in an off-duty or non-Department capacity, employees shall not engage in conduct which impairs, or potentially impairs, their performance of Department duties or which brings discredit to the Department. |
| | 2. | Off-duty conduct by other employees may similarly be deemed contrary to this standard dependent upon their duties and responsibilities. |

The Department's Standards of Behavior are found in their entirety in Volume 2, Chapter 1, Subject 4.

You are also expected to comply with the County Policy of Equity, which may be found at https://file.lacounty.gov/SDSInter/dhr/163786_PPG812.pdf.

Your attention and compliance with these instructions is important.

FB:js

**EXHIBIT J**

Jeff-

Fuck you and your vesus

Your hate won't be tolerated.

We know where you live

and work. You better pay respect

to our pride flag or we will

Fuck you up. We know about

your cute little girls and am't

afraid to rape the shit out of

them if you don't honor us. You

are a fiasits pig and deserve

to die



LOS ANGELES CA 900

26 JUN 2023  PM 4  L

Jeff Little

**REDACTED**

93012-517034



**Camarillo
Police Department**

RB#___23-82629___

3701 E. Las Posas Road
Camarillo, CA 93010
T: (805) 388-5100
F: (805) 388-5111
E: camarillo.police@ventura.org

**venturasheriff.org**

Ventura County
**SHERIFF'S OFFICE**
OFFICE OF JIM FRYHOFF, SHERIFF



**Mitchell Peterson
Senior Deputy**
Detective
Camarillo Investigations Bureau

3701 E. Las Posas Road
Camarillo, CA 93010
O: (805) 388-5120
E: Mitchell.Peterson@ventura.org

**venturasheriff.org**

Ventura County
**SHERIFF'S OFFICE**
OFFICE OF JIM FRYHOFF, SHERIFF

**EXHIBIT K**



ANTHONY C. MARRONE
FIRE CHIEF
FORESTER & FIRE WARDEN

*"Proud Protectors of Life,
the Environment, and Property"*

# COUNTY OF LOS ANGELES
# FIRE DEPARTMENT

1320 NORTH EASTERN AVENUE
LOS ANGELES, CALIFORNIA 90063-3294
(323) 881-2401
www.fire.lacounty.gov



**BOARD OF SUPERVISORS**
JANICE HAHN, CHAIR
FOURTH DISTRICT

HILDA L. SOLIS
FIRST DISTRICT

HOLLY J. MITCHELL
SECOND DISTRICT

LINDSEY P. HORVATH
THIRD DISTRICT

KATHRYN BARGER
FIFTH DISTRICT

June 30, 2023

Captain Jeffrey Little, Lifeguard Services
**REDACTED**

Dear Captain Jeffrey Little:

## NOTICE TO INVOLVED PARTY

Please be advised that the County Intake Specialist Unit (CISU) is in receipt of a County Policy of Equity (CPOE) complaint filed against you, which was assigned ICMS # 2023-120504.  The complaint is being initially investigated and assessed by the CISU for appropriate designation under the CPOE.

During the pendency of this investigation, please do not discuss these allegations with anyone other than the assigned investigator or your representative to ensure accurate collection of information from individuals potentially involved, to safeguard against the destruction of evidence, and/or to protect against a cover up.

Notice Regarding Retaliation

Please also be reminded that as to this matter and any other matters where you are identified as an Involved Party or Subject of Investigation, retaliation is prohibited under the CPOE.

Should you have any questions about this process, please feel free to contact the Employee Relations Division at (323) 267-7207.

Sincerely,

*Verzhine Maslakyan*
VERZHINE MASLAKYAN, CIVIL RIGHTS LIAISON
EMPLOYEE RELATIONS DIVISION

VM

c:     Employee Relations Division

SERVING THE UNINCORPORATED AREAS OF LOS ANGELES COUNTY AND THE CITIES OF:

AGOURA HILLS
ARTESIA
AZUSA
BALDWIN PARK
BELL
BELL GARDENS
BELLFLOWER
BRADBURY
CALABASAS

CARSON
CERRITOS
CLAREMONT
COMMERCE
COVINA
CUDAHY
DIAMOND BAR
DUARTE

EL MONTE
GARDENA
GLENDORA
HAWAIIAN GARDENS
HAWTHORNE
HERMOSA BEACH
HIDDEN HILLS
HUNTINGTON PARK
INDUSTRY

INGLEWOOD
IRWINDALE
LA CANADA-FLINTRIDGE
LA HABRA
LA MIRADA
LA PUENTE
LAKEWOOD
LANCASTER

LAWNDALE
LOMITA
LYNWOOD
MALIBU
MAYWOOD
NORWALK
PALMDALE
PALOS VERDES ESTATES
PARAMOUNT

PICO RIVERA
POMONA
RANCHO PALOS VERDES
ROLLING HILLS
ROLLING HILLS ESTATES
ROSEMEAD
SAN DIMAS
SANTA CLARITA

SIGNAL HILL
SOUTH EL MONTE
SOUTH GATE
TEMPLE CITY
VERNON
WALNUT
WEST HOLLYWOOD
WESTLAKE VILLAGE
WHITTIER

**EXHIBIT L**



ANTHONY C. MARRONE
FIRE CHIEF
FORESTER & FIRE WARDEN

*"Proud Protectors of Life,
the Environment, and Property"*

# COUNTY OF LOS ANGELES
# FIRE DEPARTMENT

1320 NORTH EASTERN AVENUE
LOS ANGELES, CALIFORNIA 90063-3294
(323) 881-2401
www.fire.lacounty.gov



**BOARD OF SUPERVISORS**
JANICE HAHN, CHAIR
FOURTH DISTRICT

HILDA L. SOLIS
FIRST DISTRICT

HOLLY J. MITCHELL
SECOND DISTRICT

LINDSEY P. HORVATH
THIRD DISTRICT

KATHRYN BARGER
FIFTH DISTRICT

June 30, 2023

Captain Jeffrey Little, Lifeguard Services
**REDACTED**

Dear Captain Jeffrey Little:

## NOTICE TO INVOLVED PARTY

Please be advised that the County Intake Specialist Unit (CISU) is in receipt of a
County Policy of Equity (CPOE) complaint filed against you, which was assigned
ICMS # 2023-120591. The complaint is being initially investigated and assessed by the
CISU for appropriate designation under the CPOE.

During the pendency of this investigation, please do not discuss these allegations with
anyone other than the assigned investigator or your representative to ensure accurate
collection of information from individuals potentially involved, to safeguard against the
destruction of evidence, and/or to protect against a cover up.

### Notice Regarding Retaliation

Please also be reminded that as to this matter and any other matters where you are
identified as an Involved Party or Subject of Investigation, retaliation is prohibited under
the CPOE.

Should you have any questions about this process, please feel free to contact the
Employee Relations Division at (323) 267-7207.

Sincerely,

*Verzhine Maslakyan*
VERZHINE MASLAKYÁN, CIVIL RIGHTS LIAISON
EMPLOYEE RELATIONS DIVISION

VM

c:     Employee Relations Division

SERVING THE UNINCORPORATED AREAS OF LOS ANGELES COUNTY AND THE CITIES OF:

| | | | | | |
|---|---|---|---|---|---|
| AGOURA HILLS | CARSON | EL MONTE | INGLEWOOD | LAWNDALE | PICO RIVERA | SIGNAL HILL |
| ARTESIA | CERRITOS | GARDENA | IRWINDALE | LOMITA | POMONA | SOUTH EL MONTE |
| AZUSA | CLAREMONT | GLENDORA | LA CANADA-FLINTRIDGE | LYNWOOD | RANCHO PALOS VERDES | SOUTH GATE |
| BALDWIN PARK | COMMERCE | HAWAIIAN GARDENS | LA HABRA | MALIBU | ROLLING HILLS | TEMPLE CITY |
| BELL | COVINA | HAWTHORNE | LA MIRADA | MAYWOOD | ROLLING HILLS ESTATES | VERNON |
| BELL GARDENS | CUDAHY | HERMOSA BEACH | LA PUENTE | NORWALK | ROSEMEAD | WALNUT |
| BELLFLOWER | DIAMOND BAR | HIDDEN HILLS | LAKEWOOD | PALMDALE | SAN DIMAS | WEST HOLLYWOOD |
| BRADBURY | DUARTE | HUNTINGTON PARK | LANCASTER | PALOS VERDES ESTATES | SANTA CLARITA | WESTLAKE VILLAGE |
| CALABASAS | | INDUSTRY | | PARAMOUNT | | WHITTIER |



**ANTHONY C. MARRONE**
**FIRE CHIEF**
**FORESTER & FIRE WARDEN**

*"Proud Protectors of Life,*
*the Environment, and Property"*

# COUNTY OF LOS ANGELES
# FIRE DEPARTMENT

1320 NORTH EASTERN AVENUE
LOS ANGELES, CALIFORNIA 90063-3294
(323) 881-2401
www.fire.lacounty.gov



**BOARD OF SUPERVISORS**
JANICE HAHN, CHAIR
FOURTH DISTRICT

| | |
|---|---|
| HILDA L. SOLIS | HOLLY J. MITCHELL |
| FIRST DISTRICT | SECOND DISTRICT |
| LINDSEY P. HORVATH | KATHRYN BARGER |
| THIRD DISTRICT | FIFTH DISTRICT |

June 30, 2023

Captain Jeffrey Little, Lifeguard Services
**REDACTED**

Dear Captain Jeffrey Little:

## DESIGNATION

A County Policy of Equity (CPOE) complaint was filed against you, which was assigned ICMS # 2023-120591 by the County Intake Specialist Unit (CISU).

The CISU has informed us that the complaint has been initially assessed for appropriate designation in accordance with the CPOE. The initial investigation and assessment resulted in your complaint being designated a "C."

## "C" Designation

CISU has concluded that the facts alleged, even if taken as true, are not jurisdictional to the CPOE. This concludes the CPOE investigation.

Notice Regarding Retaliation

If, at any time, you believe you have been retaliated against for having participated in the CPOE process, please report it to the CISU immediately. You may file a complaint with the CISU as follows:

- By phone:    1-855-999-CEOP (2367) or 213-974-9868
- Online at:    https://ceop.bos.lacounty.gov
- In person:    Kenneth Hahn Hall of Administration
                500 W. Temple Street, Room B-26
                Los Angeles, CA 90012

SERVING THE UNINCORPORATED AREAS OF LOS ANGELES COUNTY AND THE CITIES OF:

| | | | | | | |
|---|---|---|---|---|---|---|
| AGOURA HILLS | CARSON | EL MONTE | INGLEWOOD | LAWNDALE | PICO RIVERA | SIGNAL HILL |
| ARTESIA | CERRITOS | GARDENA | IRWINDALE | LOMITA | POMONA | SOUTH EL MONTE |
| AZUSA | CLAREMONT | GLENDORA | LA CANADA-FLINTRIDGE | LYNWOOD | RANCHO PALOS VERDES | SOUTH GATE |
| BALDWIN PARK | COMMERCE | HAWAIIAN GARDENS | LA HABRA | MALIBU | ROLLING HILLS | TEMPLE CITY |
| BELL | COVINA | HAWTHORNE | LA MIRADA | MAYWOOD | ROLLING HILLS ESTATES | VERNON |
| BELL GARDENS | CUDAHY | HERMOSA BEACH | LA PUENTE | NORWALK | ROSEMEAD | WALNUT |
| BELLFLOWER | DIAMOND BAR | HIDDEN HILLS | LAKEWOOD | PALMDALE | SAN DIMAS | WEST HOLLYWOOD |
| BRADBURY | DUARTE | HUNTINGTON PARK | LANCASTER | PALOS VERDES ESTATES | SANTA CLARITA | WESTLAKE VILLAGE |
| CALABASAS | | INDUSTRY | | PARAMOUNT | | WHITTIER |

Captain Jeffrey Little, Lifeguard Services
June 30, 2023
Page 2

The records associated with this matter will be treated as confidential records.  Please do not discuss this matter with anyone other than the assigned investigator, your representative or the Employee Relations Division, Leadership and Professional Standards Bureau to ensure accurate collection of information from individuals potentially involved, to safeguard against the destruction of evidence and/or to protect against a cover up.

If you are dissatisfied with this outcome, you have the right to file your complaint with the U.S. Equal Employment Opportunity Commission (EEOC) or the California State Department of Fair Employment and Housing (DFEH).

Note:  The standards of proof and the rules that govern administrative investigatory processes are different from those used in legal proceedings in courts of law. Consequently, no legal conclusions can or should be drawn from decisions associated with this administrative process.

If you have any questions regarding this matter, you may contact me at (323) 267-7207

Sincerely,

*Verzhine Maslakyan*

VERZHINE MASLAKYAN, CIVIL RIGHTS LIAISON
EMPLOYEE RELATIONS DIVISION

VM

c:      Employee Relations Division

**EXHIBIT M**



ANTHONY C. MARRONE
FIRE CHIEF
FORESTER & FIRE WARDEN

*"Proud Protectors of Life,
the Environment, and Property"*

# COUNTY OF LOS ANGELES
# FIRE DEPARTMENT

1320 NORTH EASTERN AVENUE
LOS ANGELES, CALIFORNIA 90063-3294
(323) 267-7207
www.fire.lacounty.gov



**BOARD OF SUPERVISORS**
JANICE HAHN, CHAIR
FOURTH DISTRICT

HILDA L. SOLIS                    HOLLY J. MITCHELL
FIRST DISTRICT                    SECOND DISTRICT

LINDSEY P. HORVATH              KATHRYN BARGER
THIRD DISTRICT                   FIFTH DISTRICT

July 28, 2023

Captain Jeffrey Little, Lifeguard Services
**REDACTED**

Dear Captain Jeffrey Little:

## DESIGNATION

Please be advised that the County Intake Specialist Unit (CISU) is in receipt of your County Policy of Equity (CPOE) complaint [a County Policy of Equity complaint filed on your behalf], which was assigned ICMS # 2023-120516.

The CISU has informed us that the complaint has been initially assessed for appropriate designation in accordance with the CPOE. The initial investigation and assessment resulted in your complaint being designated a "B."

## "B" Designation

CISU has concluded that although the situation may involve, or appear to involve, an equity issue, the situation does not rise to the level of a potential violation of the CPOE. This concludes the CPOE investigation.

### Notice Regarding Retaliation

If, at any time, you believe you have been retaliated against for having participated in the CPOE process, please report it to the CISU immediately. You may file a complaint with the CISU as follows:

- By phone:    1-855-999-CEOP (2367) or 213-974-9868
- Online at:   https://ceop.bos.lacounty.gov
- In person:   Kenneth Hahn Hall of Administration
               500 Temple Street, Room B-26
               Los Angeles, CA 90012

SERVING THE UNINCORPORATED AREAS OF LOS ANGELES COUNTY AND THE CITIES OF:

| | | | | | | |
|---|---|---|---|---|---|---|
| AGOURA HILLS | CARSON | EL MONTE | INGLEWOOD | LAWNDALE | PICO RIVERA | SIGNAL HILL |
| ARTESIA | CERRITOS | GARDENA | IRWINDALE | LOMITA | POMONA | SOUTH EL MONTE |
| AZUSA | CLAREMONT | GLENDORA | LA CANADA-FLINTRIDGE | LYNWOOD | RANCHO PALOS VERDES | SOUTH GATE |
| BALDWIN PARK | COMMERCE | HAWAIIAN GARDENS | LA HABRA | MALIBU | ROLLING HILLS | TEMPLE CITY |
| BELL | COVINA | HAWTHORNE | LA MIRADA | MAYWOOD | ROLLING HILLS ESTATES | VERNON |
| BELL GARDENS | CUDAHY | HERMOSA BEACH | LA PUENTE | NORWALK | ROSEMEAD | WALNUT |
| BELLFLOWER | DIAMOND BAR | HIDDEN HILLS | LAKEWOOD | PALMDALE | SAN DIMAS | WEST HOLLYWOOD |
| BRADBURY | DUARTE | HUNTINGTON PARK | LANCASTER | PALOS VERDES ESTATES | SANTA CLARITA | WESTLAKE VILLAGE |
| CALABASAS | | INDUSTRY | | PARAMOUNT | | WHITTIER |

Captain Jeffrey Little, Lifeguard Services
July 28, 2023
Page 2

The records associated with this matter will be treated as confidential records. Please do not discuss this matter with anyone other than the assigned investigator, your representative or the Employee Relations Division, Leadership and Professional Standards Bureau to ensure accurate collection of information from individuals potentially involved, to safeguard against the destruction of evidence and/or to protect against a cover up.

If you are dissatisfied with this outcome, you have the right to file your complaint with the U.S. Equal Employment Opportunity Commission (EEOC) or the California State Department of Fair Employment and Housing (DFEH).

Note: The standards of proof and the rules that govern administrative investigatory processes are different from those used in legal proceedings in courts of law. Consequently, no legal conclusions can or should be drawn from decisions associated with this administrative process.

If you have any questions regarding this matter, you may contact me at (323) 267-7207.

Sincerely,

*Verzhine Maslakyan*

VERZHINE MASLAKYAN, CIVIL RIGHTS LIAISON
EMPLOYEE RELATIONS DIVISION

VM

c:    Employee Relations Division

**EXHIBIT N**



ANTHONY C. MARRONE
FIRE CHIEF
FORESTER & FIRE WARDEN

*"Proud Protectors of Life,
the Environment, and Property"*

# COUNTY OF LOS ANGELES
# FIRE DEPARTMENT

1320 NORTH EASTERN AVENUE
LOS ANGELES, CALIFORNIA 90063-3294
(323) 881-2401
www.fire.lacounty.gov



**BOARD OF SUPERVISORS**
JANICE HAHN, CHAIR
FOURTH DISTRICT

HILDA L. SOLIS            HOLLY J. MITCHELL
FIRST DISTRICT           SECOND DISTRICT

LINDSEY P. HORVATH       KATHRYN BARGER
THIRD DISTRICT           FIFTH DISTRICT

*I hereby acknowledge receipt of this document*

*Employee's Signature*

9/15/23
Date

September 14, 2023

TO:      CAPTAIN JEFFREY LITTLE, LIFEGUARD SERVICES
         LIFEGUARD DIVISION

FROM:    ACTING DEPUTY FIRE CHIEF WILLIAM L. MAYFIELD JR.
         CENTRAL REGIONAL OPERATIONS BUREAU

*Hand-delivered by:*

*Signature*

Kyle Power                    9/15/23
*Print Name*                      Date

## INTERNAL INVESTIGATION

You are hereby notified that you are the subject of a formal County investigation. The investigation will focus on alleged misconduct that occurred approximately June 2023 with a subordinate, coworker, and/or the public which could be considered a possible violation(s) of the County's Policy of Equity, County's Non-Discrimination Policy, County/Department Policies and Procedures, and/or the Department's Standards of Behavior.

Your interview has been scheduled to take place as follows:

### September 21, 2023 at 1:00 PM

### Via Teams and/or Telephone

The individual in charge of this investigation and interrogating officer is Susan R. Kudo-Lee, Deputy Compliance Officer (DCO), Department of Human Resources.

As a subject of this investigation, you are entitled to representation during this interview. If you intend to be represented in this matter, please contact your representative immediately. Your interview will be audio recorded and you may also audio record the interview if you wish. If you wish to audio record your interview, please bring your own audio recording equipment (i.e., tape recorder and tapes).

If you have any questions, please contact DCO Susan R. Kudo-Lee at (213) 364-5214.

WLM:vm

c: Employee Relations Division

SERVING THE UNINCORPORATED AREAS OF LOS ANGELES COUNTY AND THE CITIES OF:

| | | | | | | |
|---|---|---|---|---|---|---|
| AGOURA HILLS | CARSON | EL MONTE | INGLEWOOD | LAWNDALE | PICO RIVERA | SIGNAL HILL |
| ARTESIA | CERRITOS | GARDENA | IRWINDALE | LOMITA | POMONA | SOUTH EL MONTE |
| AZUSA | CLAREMONT | GLENDORA | LA CANADA-FLINTRIDGE | LYNWOOD | RANCHO PALOS VERDES | SOUTH GATE |
| BALDWIN PARK | COMMERCE | HAWAIIAN GARDENS | LA HABRA | MALIBU | ROLLING HILLS | TEMPLE CITY |
| BELL | COVINA | HAWTHORNE | LA MIRADA | MAYWOOD | ROLLING HILLS ESTATES | VERNON |
| BELL GARDENS | CUDAHY | HERMOSA BEACH | LA PUENTE | NORWALK | ROSEMEAD | WALNUT |
| BELLFLOWER | DIAMOND BAR | HIDDEN HILLS | LAKEWOOD | PALMDALE | SAN DIMAS | WEST HOLLYWOOD |
| BRADBURY | DUARTE | HUNTINGTON PARK | LANCASTER | PALOS VERDES ESTATES | SANTA CLARITA | WESTLAKE VILLAGE |
| CALABASAS | | INDUSTRY | | PARAMOUNT | | WHITTIER |

**EXHIBIT O**



ANTHONY C. MARRONE
FIRE CHIEF
FORESTER & FIRE WARDEN

*"Proud Protectors of Life,
the Environment, and Property"*

# COUNTY OF LOS ANGELES
# FIRE DEPARTMENT

1320 NORTH EASTERN AVENUE
LOS ANGELES, CALIFORNIA 90063-3294
(323) 881-2401
www.fire.lacounty.gov



**BOARD OF SUPERVISORS**
LINDSEY P. HORVATH, CHAIR
THIRD DISTRICT

HILDA L. SOLIS          HOLLY J. MITCHELL
FIRST DISTRICT          SECOND DISTRICT

JANICE HAHN             KATHRYN BARGER
FOURTH DISTRICT         FIFTH DISTRICT

February 7, 2024

Captain Jeffrey Little, Lifeguard Services
**REDACTED**

Dear Captain Little:

## BRIEFING FINDINGS

This is to notify you that the County Policy of Equity (CPOE) complaint filed against you on or about June 2023 and assigned ICMS # 2023-120504 has been investigated by the Department of Human Resources' County Equity Investigations Unit (CEIU) and has undergone a briefing by the County Equity Oversight Panel (CEOP).

Based thereon, the Department has concluded that the facts in support of the allegations contained in the CPOE complaint were sufficient to substantiate concerning a violation of the CPOE. You will be notified shortly of any administrative action to be taken.

If, at any time, you believe you have been retaliated against for having participated in the CPOE process, please report it to the CISU immediately at:

- By phone:     1-855-999-CEOP (2367), or (213) 974-9868
- By website:   https://CEOP.bos.lacounty.gov or
- By mail:      Kenneth Hahn Hall of Administration
                500 West Temple Street, Room #B-26
                Los Angeles, CA 90012

The records associated with this matter will be treated as confidential records. Please do not discuss this matter with anyone other than the assigned investigator or your representative to ensure accurate collection of information from individuals potentially involved, to safeguard against the destruction of evidence, and/or to protect against a cover up.

If you are dissatisfied with the outcome, you have the right to file your complaint with the U.S. Equal Employment Opportunity Commission (EEOC) or the California State Department of Fair Employment and Housing (DFEH).

SERVING THE UNINCORPORATED AREAS OF LOS ANGELES COUNTY AND THE CITIES OF:

| | | | | | | |
|---|---|---|---|---|---|---|
| AGOURA HILLS | CARSON | EL MONTE | INGLEWOOD | LAWNDALE | PICO RIVERA | SIGNAL HILL |
| ARTESIA | CERRITOS | GARDENA | IRWINDALE | LOMITA | POMONA | SOUTH EL MONTE |
| AZUSA | CLAREMONT | GLENDORA | LA CANADA-FLINTRIDGE | LYNWOOD | RANCHO PALOS VERDES | SOUTH GATE |
| BALDWIN PARK | COMMERCE | HAWAIIAN GARDENS | LA HABRA | MALIBU | ROLLING HILLS | TEMPLE CITY |
| BELL | COVINA | HAWTHORNE | LA MIRADA | MAYWOOD | ROLLING HILLS ESTATES | VERNON |
| BELL GARDENS | CUDAHY | HERMOSA BEACH | LA PUENTE | NORWALK | ROSEMEAD | WALNUT |
| BELLFLOWER | DIAMOND BAR | HIDDEN HILLS | LAKEWOOD | PALMDALE | SAN DIMAS | WEST HOLLYWOOD |
| BRADBURY | DUARTE | HUNTINGTON PARK | LANCASTER | PALOS VERDES ESTATES | SANTA CLARITA | WESTLAKE VILLAGE |
| CALABASAS | | INDUSTRY | | PARAMOUNT | | WHITTIER |

Captain Jeffrey Little, Lifeguard Services
February 7, 2024
Page 2

Note: The standards of proof and rules that govern administrative investigatory and
disciplinary processes are different from those used in the legal proceedings in courts of law.
Consequently, no legal conclusions can or should be drawn from the recommendations
and/or decisions associated with this administrative process.

If you have any questions regarding this matter, you may contact me at (323) 267-7207.

Sincerely,

*Verzhine Maslakyan*
VERZHINE MASLAKYAN, CIVIL RIGHTS LIAISON
EMPLOYEE RELATIONS DIVISION

VM

c:   Employee Relations Division

**EXHIBIT P**

| | |
|---|---|
| **From:** | Joshua Youngkin |
| **To:** | AHudson@bos.lacounty.gov |
| **Cc:** | Paul Jonna |
| **Subject:** | RE: Request to Contact: ICMS No. 2024-125365 |
| **Date:** | Thursday, March 21, 2024 5:07:12 PM |
| **Attachments:** | LA County.001 - Ltr Rep - 03-21-24.pdf |

Dear Ms. Hudson:

Please see attached for Captain Little's response to your email.

**Joshua Youngkin** | Associate
**LiMANDRI & JONNA LLP** | P.O. Box 9120 | Rancho Santa Fe, CA 92067
Tel: (858) 759-9930 |Direct: (858) 832-8722 |Fax: (858) 759-9938
jyoungkin@limandri.com | www.limandri.com

This communication (including any attachments) contains confidential information protected by the attorney-client privilege and/or attorney work-product privilege intended only for a specific person(s) or entity(ies) named as the recipient(s).  If you are not the intended recipient(s), you should delete this communication and/or shred the materials and any attachments and are hereby notified that any disclosure, copying, use or distribution of this communication, or the taking of any action based in it, is strictly prohibited by law.  If you receive this transmission by error, please notify us by telephone immediately.  Thank you.

_____

From: Hudson, Ashley <AHudson@bos.lacounty.gov>
Sent: Friday, March 15, 2024 12:48 PM
To: Jeffrey Little
Subject: Request to Contact: ICMS No. 2024-125365

Dear Jeffrey Little,

The County Intake Specialist Unit (CISU) is in receipt of a County Policy of Equity complaint that was either filed by you or filed on your behalf.  I would like to speak with you regarding this complaint.

Your participation would assist in the assessment of the complaint.  Please contact me, using the contact information listed below within five (5) business days of the date of this letter so we can schedule a clarifying interview.

If I do not hear from you by that date, I will conclude that you have decided to not participate further, and I will complete the assessment of the complaint absent your participation. Please keep in mind that your decision to not participate at this time does not prevent you from choosing to participate at a later date while this matter remains open or from filing a future complaint

regarding this or another matter.


I can be reached directly at ahudson@bos.lacounty.gov<mailto:ahudson@bos.lacounty.gov> from
7:00 am through 4:00 pm Monday through Friday.


Ashley Victoria Hudson (She/Her)
Assessor
County Equity Oversight Panel
County Intake Specialist Unit
Kenneth Hahn Hall of Administration
500 West Temple Street, Suite B-28
Los Angeles, CA 90012
ahudson@bos.lacounty.gov<mailto:ahudson@bos.lacounty.gov>

[cid:image001.jpg@01DA76D6.4DE91210]      [cid:image002.png@01DA76D6.4DE91210]

**EXHIBIT Q**



# LiMANDRI & JONNA LLP

CHARLES S. LiMANDRI\*†
PAUL M. JONNA†

MARK D. MYERS
JEFFREY M. TRISSELL†
ROBERT WEISENBURGER
JOSHUA A. YOUNGKIN
MILAN L. BRANDON II
JOHANNA DELEISSEGUES

RICHARD SALPIETRA
BRIAN D. MILLER
  Of Counsel

**\*BOARD CERTIFIED CIVIL TRIAL ADVOCATE**
   **ADMITTED TO THE DISTRICT OF COLUMBIA BAR**
   **ADMITTED TO THE NEW YORK BAR**
**†ADMITTED TO THE U.S. SUPREME COURT**

**MAILING ADDRESS:**

POST OFFICE BOX 9120
RANCHO SANTA FE, CALIFORNIA  92067
TELEPHONE:  (858) 759-9930
FACSIMILE:   (858) 759-9938

WEBSITE:  www.limandri.com

PHYSICAL ADDRESS:

16236 SAN DIEGUITO ROAD
BUILDING 3, SUITE 3-15
RANCHO SANTA FE, CA  92091

KATHY DENWORTH
Office Manager

March 21, 2024

**Via E-Mail Only:  AHudson@bos.lacounty.gov**

Ms. Ashley Victoria Hudson, Assessor
County Equity Oversight Panel
County Intake Specialist Unit
COUNTY OF LOS ANGELES
Kenneth Hahn Hall of Administration
500 West Temple Street, Suite B-28
Los Angeles, CA 90012

**Re:    Request to Contact:  ICMS No. 2024-125365**

Dear Ms. Hudson:

Please be advised that this office has been retained to represent Captain Jeffrey Little of the Los Angeles County Fire Department, Lifeguard Division, in connection with EEOC Charge No: 480-2024-02766, attached hereto as **Exhibit A**, and CRD Matter Number: 202403-23805101, attached hereto as **Exhibit B**. As to the latter, please note that CRD has issued a Right to Sue on state claims. As to the former, EEOC has forwarded the charge to DOJ for processing of a Right to Sue on federal claims. See **Exhibit C** to this letter, attached. In support of the claims and assertions in the EEOC charge, please see **Exhibits D - P** attached hereto, previously included as addenda to the CRD charge.

We are in receipt of your email dated Friday, March 15, subject Request to Contact: ICMS No. 2024-125365, in which the County Intake Specialist Unit (CISU) has requested of Captain Little his participation in assessment of a County Policy of Equity complaint you claim in your email has been filed by Captain Little or filed by another on Captain Little's behalf. If you would, please forward this letter to legal counsel for Los Angeles County and consider this

Ms. Ashley Victoria Hudson, Assessor
County of Los Angeles, County Equity Oversight Panel
County Intake Specialist Unit
**Re: Request to Contact: ICMS No. 2024-125365**
March 21, 2024
Page 2

_____

letter Captain Little's response to your email. Additionally, please confirm by email response to jyoungkin@limandri.com your receipt of this letter and that you have forwarded this letter to legal counsel for Los Angeles County as requested.

Sincerely,

LiMANDRI & JONNA LLP

Paul M. Jonna

PMJ/jy
Enclosures

**EXHIBIT A**

EEOC Form 5 (11/09)

<table>
<tr>
<td colspan="2" align="center"><h2>CHARGE OF DISCRIMINATION</h2></td>
<td>Charge Presented To:</td>
<td>Agency(ies) Charge No(s):</td>
</tr>
<tr>
<td colspan="2" align="center">This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.</td>
<td align="center">EEOC</td>
<td align="center">480-2024-02766</td>
</tr>
<tr>
<td colspan="3"></td>
<td>and EEOC</td>
</tr>
<tr>
<td colspan="4" align="center"><i>State or local Agency, if any</i></td>
</tr>
</table>

<table>
<tr>
<td>I Name <i>(indicate Mr., Ms., Mrs., Miss, Mx., Dr., Hon., Rev.)</i><br>Mr. Jeffrey Little</td>
<td>Home Phone</td>
<td>Year of Birth</td>
</tr>
<tr>
<td>Street Address<br><br><span style="color:red">**REDACTED**</span></td>
<td colspan="2"></td>
</tr>
</table>

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

<table>
<tr>
<td>Name<br>Los Angeles County Fire Department</td>
<td>No. Employees, Members<br>501+ Employees</td>
<td>Phone No.<br>323-881-2411</td>
</tr>
<tr>
<td colspan="3">Street Address<br>1320 N. Eastern Ave<br><br>Los Angeles, CA 90063</td>
</tr>
<tr>
<td>Name</td>
<td>No. Employees, Members</td>
<td>Phone No.</td>
</tr>
<tr>
<td>Street Address                    City, State and ZIP Code</td>
<td colspan="2"></td>
</tr>
</table>

<table>
<tr>
<td>DISCRIMINATION BASED ON</td>
<td colspan="2">DATE(S) DISCRIMINATION TOOK PLACE</td>
</tr>
<tr>
<td rowspan="2">Religion, Retaliation</td>
<td>Earliest</td>
<td>Latest</td>
</tr>
<tr>
<td>03/11/2024</td>
<td>03/11/2024</td>
</tr>
<tr>
<td></td>
<td colspan="2" align="center">Continuing Action</td>
</tr>
</table>

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

Claimant Cpt. Jeff Little (Cpt. Little) alleges that LA County Lifeguards violated Title VII of the Civil Rights Act of 1964 as follows:

Cpt. Little is a Christian. His religious beliefs are sincere and bear on his views on marriage, sexual relations, and family, among other topics. His religious beliefs inform his work performance, too, which has been excellent. He received uniformly positive performance reviews. He has never been disciplined. Until the incidents described in this complaint, he never received any complaints. He passed the Captain's test on his first attempt. He was promoted to Captain the first time he was eligible for promotion and applied. He had a positive reputation among his peers and those he supervised.

However, on March 7, 2023, the LA County Board of Supervisors unanimously approved Board Motion "AGN. No._____" concerning the Pride Flag. CEO Davenport then directed County Dept.s and Agencies, including the Fire Department ("Dept."), of which LA County Lifeguards is a

<table>
<tr>
<td>I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.</td>
<td colspan="2">NOTARY – <i>When necessary for State and Local Agency Requirements</i></td>
</tr>
<tr>
<td>I declare under penalty of perjury that the above is true and correct.</td>
<td colspan="2">I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT</td>
</tr>
<tr>
<td><b>Digitally Signed By: Mr. Jeffrey Little</b><br><br>03/11/2024<br><br><br><i>Charging Party Signature</i></td>
<td colspan="2">SUBSCRIBED   AND   SWORN   TO   BEFORE   ME   THIS   DATE <i>(month, day, year)</i></td>
</tr>
</table>

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | EEOC | 480-2024-02766 |
| | | and EEOC |

*State or local Agency, if any*

division, to implement the March 2023 Board Motion. On May 25, 2023, the Dept. issued Dept. Policy EA 231 to carry out the March 2023 Board Motion directives.

EA231 was issued by the Dept. through Acting Chiefs Jon O'Brien and Theresa R. Barrera. EA-231 required "Captains/Site Supervisors" to "ensure flags are received and flown throughout June." Pursuant to EA-231 and EA-231a, the Pride Flag would be flown in areas and sub-areas depending on whether the area had a flagpole, the number of flag poles at site, and the number of clasps (for attaching flags) on each pole. Accordingly, the Pride Flag would not be flown in some areas or sub-areas.

The County Policy of Equity (CPOE) prohibits religious discrimination and harassment based on religion. The pride-related belief statement of "sex, life, healing, sunlight, nature, magic and art, serenity, and spirit" documented in the March 2023 Board Motion is a religious statement and amounts to religious doctrine. Cpt. Little is a Christian whose sincere religious beliefs conflict with and require him to reject the doctrine of "sex, life, healing, sunlight, nature, magic and art, serenity, and spirit." Further, the Pride Flag symbolizes and advances a range of controversial religious and moral views, including about the family, the nature of marriage and human sexuality including the promotion of certain sexual practices, and the identity, nature and purpose of the human person, all of which are in direct conflict with Cpt. Little's bona fide and sincerely held religious beliefs. Cpt. Little's bona fide and sincerely held religious beliefs require him to reject those views.

Thus, on June 18, 2023, Cpt. Little requested a religious accommodation concerning EA-231 because his bona fide and sincerely held religious beliefs prevented him from raising the Pride Flag or ensuring that it was raised. On June 19, 2023, the Dept. initially granted Cpt. Little's request as follows: (1) movement to a site not flying the Pride Flag; (2) no requirement to raise the Pride Flag; and 3) no requirement to ensure raising of the Pride Flag. So, he would be allowed to work the Dockweiler Area, North and South, and El Segundo Lifeguard stations.

On June 21, 2023, before Cpt. Little's shift, Section Chief Lester visited the Dockweiler Area and ordered the lifeguards at each subarea to raise the Pride Flags; they were then raised. This violated EA-231 and EA-231a. At 10:30 a.m. on June 21, 2023, Cpt. Little arrived at work. With the permission of the OLSs, took down the flags because of the prior grant of accommodation because of the violation of EA-231 and EA-231a. That was between 11:30 a.m. and 2:30 p.m. Later that day, at about 2:45 p.m., the Dept. informed Cpt. Little by Microsoft Teams that his accommodation had been revoked. Cpt. Little again informed the Dept. that raising the flag would conflict with his bona fide and sincerely held religious beliefs.

On June 21, 2023, after revocation of the accommodation, Section Chief Lester ordered Cpt. Little to raise the Pride Flag. In his words, language, and tone, Lester's conduct toward Cpt. Little was abusive, inappropriate, harassing, and discriminatory. Section Chief Lester's conduct was motivated by animus toward Cpt. Little's religious beliefs, and his conduct toward Cpt. Little was based on Cpt. Little's religious beliefs and was in retaliation for Cpt. Little seeking a religious accommodation.

On June 21, 2023, Assistant Lifeguard Chief Uehara affirmed the denial of any religious accommodation for Cpt. Little and denied Cpt. Little's right to use work-related benefits, including time off benefits, as a means for Cpt. Little to avoid the conflict between EA-231 and his bona fide and sincerely held religious beliefs.

On June 22, 2023, without justification or notice, the Dept. abruptly ended the interactive process and refused Cpt. Little any religious accommodation, less than two days after granting him an accommodation. This was a violation of FEHA and Title VII: The Dept. could grant Cpt.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>**Digitally Signed By: Mr. Jeffrey Little**<br><br>**03/11/2024**<br><br>*Charging Party Signature* | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | EEOC | 480-2024-02766 |
| | | and EEOC |

_State or local Agency, if any_

Little a religious accommodation to EA-231 without undue burden to itself, including because other Dept. employees were at each area and subarea who could be responsible for raising the Pride Flag or ensuring the Pride Flag is raised.

Since June 22, 2023, the Dept. has refused to engage in the interactive process with Cpt. Little. This violates FEHA and Title VII: The Dept. is legally obliged to engage in the interactive process with Cpt. Little concerning his requested religious accommodation.

On June 22, 2023 Cpt. Little was placed under Direct Order to fly the Pride Flag and ensure that the Pride Flag is flown as instructed in EA-231. The written Direct Order was served on Cpt. Little by Lifeguard Chief Boiteux. Lifeguard Chief Boiteux told Cpt. Little, "You need to stop what you are doing," "You are an LA County employee; that's the only thing that matters," and "Your religious beliefs do not matter; you are an LA County employee." He repeated multiple times, "You are an LA County employee. Your religious beliefs do not matter." Lifeguard Chief Boiteux is 6'5" and 240 lbs. and he delivered this message in a violent and angry manner while standing over Cpt. Little.

On June 22, 2023, Cpt. Little was placed under a Notice of Investigation on pretextual charges. On June 22, 2023, Cpt. Little was placed under a Notice of Instruction: "All Dept. employees, irrespective of personal beliefs, are expected to comply with EA-231, which includes raising the flag as instructed." On June 23, 2023, Cpt. Little was terminated from the background investigation unit for the Dept., resulting in a significant loss of overtime, income and prestige.

On June 27, 2023, the Dept. alleges it received a CPOE complaint against Cpt. Little. This alleged complaint is also pretextual.

On June 28, 2023, Cpt. Little received a death threat against him and his children. The death threat was printed by hand in letters that alternate in color and said: "Jeff Fuck you and your Jesus. Your hate won't be tolerated. We know where you live and work. You better pay respect to our pride flag or we will fuck you up. We know about you cute little girls and aren't afraid to rape the shit out of them if you don't honor us. You are a fascist pig and deserve to die."

Upon information and belief, the Dept. breached Cpt. Little's right to employment-related privacy rights. The Dept., through the persons identified herein, disclosed to unauthorized recipients that Cpt. Little requested religious accommodation to not raise the Pride Flag. This breach of privacy led to (1) his termination from investigative work for the Dept.; (2) a complaint against him on or about June 27, 2023; and, 3) the death threat against him and his family.

On June 30, 2023, the Dept. launched a retaliatory investigation of Cpt. Little, which amounted to retaliation, religious discrimination, and harassment. The Dept.'s investigation of him is pretextual and meant to punish, harass and discriminate against him for (1) requesting religious accommodation; (2) noncompliance with EA-231 because of conflict with his religious beliefs; and (3) filing his own CPOE complaint.

On September 14, 2023, the Dept. notified Cpt. Little that he was under another formal County investigation. This investigation is pretextual and meant to punish, harass and discriminate against Cpt. Little for (1) requesting religious accommodation; (2) noncompliance with EA-231 because of conflict with his religious beliefs; and (3) filing his own CPOE complaint.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – _When necessary for State and Local Agency Requirements_ |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| **Digitally Signed By: Mr. Jeffrey Little**<br><br>**03/11/2024** | SUBSCRIBED  AND  SWORN  TO  BEFORE  ME  THIS  DATE<br>(month, day, year) |
| _Charging Party Signature_ | |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | EEOC | 480-2024-02766 |

| | and EEOC |
|---|---|
| *State or local Agency, if any* | |

On February 7, 2024, the Dept. notified Cpt. Little that he violated the CPOE and that administrative action may follow, a retaliatory outcome of the pretextual investigation launched in June 2023.

On June 22, 2023, at 11:58 a.m., Cpt. Little filed a CPOE complaint with the Dept. for religious discrimination and harassment.

On or about July 20, 2023 at 2 p.m., Cpt. Little spoke with investigator Juesta Lopez of the County's CPOE Investigative Unit. During the investigative call, Cpt. Little added to his CPOE complaint the June 22, 2023 Direct Order, the June 22, 2023 Notice of Instruction, the June 22, 2023 Notice of Investigation, the June 22, 2023 actions of Chief Boiteux, and the receipt of the June 28, 2023 death threat. He asked Ms. Lopez whether he was had to supplement his June 22, 2023 CPOE complaint in writing. She told him that was not necessary and she deemed the additional facts part of his CPOE complaint.

On July 28, 2023, the Dept. informed Cpt. Little that the conduct Cpt. Little complained about did not violate the CPOE. The Dept. did not act to protect Cpt. Little from the previous and future religious discrimination, harassment and retaliation.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| **Digitally Signed By: Mr. Jeffrey Little** **03/11/2024** | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |
| *Charging Party Signature* | |

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:**  Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

2. **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3. **PRINCIPAL PURPOSES.**  The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. **ROUTINE USES.**  This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws).  Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination.  This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions.  A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.**  Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of.  Without a written charge, EEOC will ordinarily not act on the complaint.  Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed.  Charges may be clarified or amplified later by amendment.  It is not mandatory that this form be used to make a charge.

**NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW**

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA.  Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements.  You will be told which agency will handle your charge.  When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter.  Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings.  Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

**NOTICE OF NON-RETALIATION REQUIREMENTS**

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment, of, rights under the Act.

**EXHIBIT B**



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR
KEVIN KISH, DIRECTOR

## Civil Rights Department

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 (voice) | 800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

February 29, 2024

Paul Jonna
PO BOX 9120
Rancho Santa Fe, CA 92067

RE:    **Notice to Complainant's Attorney**
CRD Matter Number: 202403-23805101
Right to Sue: Little / Los Angeles County Fire Dept

Dear Paul Jonna:

Attached is a copy of your complaint of discrimination filed with the Civil Rights Department (CRD) pursuant to the California Fair Employment and Housing Act, Government Code section 12900 et seq. Also attached is a copy of your Notice of Case Closure and Right to Sue.

**Pursuant to Government Code section 12962, CRD will not serve these documents on the employer.** You must serve the complaint separately, to all named respondents. Please refer to the attached Notice of Case Closure and Right to Sue for information regarding filing a private lawsuit in the State of California. A courtesy "Notice of Filing of Discrimination Complaint" is attached for your convenience.

Be advised that the CRD does not review or edit the complaint form to ensure that it meets procedural or statutory requirements.

Sincerely,

Civil Rights Department

STATE OF CALIFORNIA  |  Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

## Civil Rights Department

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 (voice) | 800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

February 29, 2024

RE:  **Notice of Filing of Discrimination Complaint**
CRD Matter Number: 202403-23805101
Right to Sue: Little / Los Angeles County Fire Dept

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the Civil Rights Department (CRD) in accordance with Government Code section 12960. This constitutes service of the complaint pursuant to Government Code section 12962. The complainant has requested an authorization to file a lawsuit. A copy of the Notice of Case Closure and Right to Sue is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their contact information.

No response to CRD is requested or required.

Sincerely,

Civil Rights Department



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency          GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

## Civil Rights Department

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 (voice) | 800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

February 29, 2024

Jeffrey Little
**REDACTED**

RE:     **Notice of Case Closure and Right to Sue**
        CRD Matter Number: 202403-23805101
        Right to Sue: Little / Los Angeles County Fire Dept

Dear Jeffrey Little:

This letter informs you that the above-referenced complaint filed with the Civil Rights Department (CRD) has been closed effective February 29, 2024 because an immediate Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this CRD Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,

Civil Rights Department

CRD - ENF 80 RS (Revised 02/23)

## COMPLAINT OF EMPLOYMENT DISCRIMINATION
## BEFORE THE STATE OF CALIFORNIA
**Civil Rights Department**
**Under the California Fair Employment and Housing Act**
**(Gov. Code, § 12900 et seq.)**

**In the Matter of the Complaint of**

Jeffrey Little

CRD No. 202403-23805101

Complainant,

vs.

Los Angeles County Fire Dept
1320 N Eastern Ave
Los Angeles, CA 90063

Respondents

---

**1.** Respondent **Los Angeles County Fire Dept** is an **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

**2**. Complainant **Jeffrey Little**, resides

**3**. Complainant alleges that on or about **February 29, 2024**, respondent took the following adverse actions:

**Complainant was harassed** because of complainant's religious creed - includes dress and grooming practices.

**Complainant was discriminated against** because of complainant's religious creed - includes dress and grooming practices and as a result of the discrimination was denied any employment benefit or privilege, denied accommodation for religious beliefs, other, denied work opportunities or assignments.

**Complainant experienced retaliation** because complainant requested or used a religious accommodation and as a result was denied any employment benefit or privilege, denied accommodation for religious beliefs, other, denied work opportunities or assignments.

-1-

*Complaint – CRD No. 202403-23805101*

Date Filed: February 29, 2024

1 | **Additional Complaint Details:** I will upload addendum detailing actions under file name
2 | 24.02.28 Addendum for Admin Claims FINAL4FILING
3 |
4 |
5 |
6 |
7 |
8 |
9 |
10 |
11 |
12 |
13 |
14 |
15 |
16 |
17 |
18 |
19 |
20 |
21 |
22 |
23 |
24 |
25 |
26 |

-2-
*Complaint – CRD No. 202403-23805101*

Date Filed: February 29, 2024

CRD-ENF 80 RS (Revised 12/22)

VERIFICATION

I, **Jeffrey Little**, am the **Complainant** in the above-entitled complaint.  I have read the foregoing complaint and know the contents thereof.  The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true.

On February 29, 2024, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date Filed: February 29, 2024

CRD-ENF 80 RS (Revised 12/22)

**EXHIBIT C**



## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### Los Angeles District Office

255 E. Temple Street, 4th Floor
Los Angeles, CA 90012
Intake Information Group: (800) 669-4000
Intake Information Group TTY: (800) 669-6820
Los Angeles Direct Dial: (213) 785-3090
FAX (213) 894-1118
Website: www.eeoc.gov

Mr. Jeffrey Little
**REDACTED**

Joshua Younkin
LIMANDRI & JONNA LLP
P.O. Box 9120
Rancho Santa Fe, CA 92067

Letitia Ellison-Cooper, Principal Analyst County Equity Investigations
Los Angeles County Fire Department
County Equity Investigations Unit 500 West Temple Street, Suite 588
Los Angeles, CA 90012

RE:     Charge No: 480-2024-02766

Dear Mr. Jeffrey Little:

The Commission has received your request for a Notice of Right to Sue in the above-referenced charge. Your request has been forwarded to the U. S. Department of Justice for action. That agency will act on your request as soon as possible and issue the Notice directly to you.

If you have any questions, please write:

> Karen L. Ferguson, Supervisory Civil Rights Analyst
> USDOJ, CRT, Employment Litigation Section
> 4 Constitution Square
> 150 M Street, NE, Rm. 9.514
> Washington, DC 20530

Your charge alleged discrimination based on violation of one or more of the following laws:

> Title VII of the Civil Rights Act of 1964 (Title VII)

If your charge includes an ADEA basis, please note the following: While Title VII and the ADA bases require the issuance of a Right to Sue before you can bring suit under the law, you obtained the right to sue under the ADEA when you filed your charge, subject to a 60-day waiting period. ADEA suits must be brought **within 90 days** of the date of your receipt of this notice. Otherwise, your right to sue on the above-numbered charge will be lost. Individuals filing EPA claims may proceed directly into court. EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible**.
With the issuance of this letter, the Commission is terminating its process with respect to these charges.

On Behalf of the Commission:

Digitally Signed By:Christine Park-Gonzalez

03/13/2024

_____
Christine Park-Gonzalez, District Director
Los Angeles District Office

**EXHIBIT R**



# LiMANDRI & JONNA LLP

CHARLES S. LiMANDRI\*†
PAUL M. JONNA†

MARK D. MYERS
JEFFREY M. TRISSELL†
ROBERT WEISENBURGER
JOSHUA A. YOUNGKIN
MILAN L. BRANDON II
JOHANNA DELEISSEGUES

RICHARD SALPIETRA
BRIAN D. MILLER
    Of Counsel

**\*BOARD CERTIFIED CIVIL TRIAL ADVOCATE**
    **ADMITTED TO THE DISTRICT OF COLUMBIA BAR**
    **ADMITTED TO THE NEW YORK BAR**
**†ADMITTED TO THE U.S. SUPREME COURT**

**MAILING ADDRESS**:

POST OFFICE BOX 9120
RANCHO SANTA FE, CALIFORNIA  92067
TELEPHONE:  (858) 759-9930
FACSIMILE:   (858) 759-9938

WEBSITE:  www.limandri.com

PHYSICAL ADDRESS:

16236 SAN DIEGUITO ROAD
BUILDING 3, SUITE 3-15
RANCHO SANTA FE, CA  92091

KATHY DENWORTH
Office Manager

April 19, 2024

**Via E-Mail Only:  AHudson@bos.lacounty.gov**

Ms. Ashley Victoria Hudson, Assessor
County Equity Oversight Panel
County Intake Specialist Unit
COUNTY OF LOS ANGELES
Kenneth Hahn Hall of Administration
500 West Temple Street, Suite B-28
Los Angeles, CA 90012

> **Re:**    *Demand for Religious Accommodation and Other Remedies with Factual and Legal Basis for Alleging Violations of State and Federal Discrimination Law*

Dear Ms. Hudson:

We previously informed you and the County of Los Angeles by letter dated March 21, 2024, that we represent Captain Jeffrey Little of the Los Angeles County Fire Department in connection with EEOC Charge No: 480-2024-02766 and CRD Matter Number: 202403-23805101, attached hereto as **Exhibit A**.

We had requested that you confirm receipt of the letter by email and that you forward the letter to counsel for the County of Los Angeles. We have not yet received any response, nor any confirmation that you forwarded the letter to counsel for the County of Los Angeles, nor has counsel for the County of Los Angeles engaged with this office. Thus, we ask that you acknowledge receipt of this most recent letter and confirm that you have forwarded it to counsel for the County of Los Angeles.

Further, please be advised that US DOJ has in the interim issued to Captain Little a Right to Sue letter dated March 26, 2024, attached hereto as **Exhibit B**. Per that letter, the deadline for Captain Little to file a civil action against the County under Title VII of the Civil Rights Act of

Ms. Ashley Victoria Hudson, Assessor, County of Los Angeles
County Equity Oversight Panel, County Intake Specialist Unit
**Re:** *Demand for Religious Accommodation and Other Remedies*
April 19, 2024
Page 2

_____

1964, as amended, 42 U.S.C. 2000e, et seq., is 90 days from receipt of the letter, which is Monday, June 24, 2024. On February 29, 2024, Captain Little received a Right to Sue letter from CRD, attached hereto as **Exhibit C**. The deadline to file claims in state court by the terms of that letter under FEHA is one year from the date of the letter, which post-dates the federal discrimination lawsuit deadline of June 24, 2024. Because the deadline to file federal claims predates the deadline to file state claims, Captain Little will act according to the federal deadline, which is fast approaching.

I.      **Demand for Religious Accommodation and Other Remedies.**

In view of the above, and to avoid the inception of litigation prior to the June 24, 2024 deadline, Captain Little hereby demands that the County of Los Angeles ("County") effectively restore him to his pre-discrimination position and that the County accommodate his religious beliefs going forward; this demand may be implemented more particularly as follows:

   A.      **Demand for Religious Accommodation.**

   1. A standing exemption from raising or lowering the Pride Flag or Progress Pride Flag from any work site, or ordering others to do so, no renewal required, whether in the month of June or in another month.

   2. Resume the interactive process with Captain Little, *in good faith*, to discuss, detail, memorialize, and effectuate the religious accommodation demand above.

   B.      **Demand for Other Remedies.**

   1. Remove the notice of instruction and notice of investigation from Captain Little's personnel file;
   2. Terminate disciplinary proceedings, whether under the Memorandum of Understanding or under the County Policy of Equity (CPOE), against Captain Little;
   3. Reinstate Captain Little to his background investigation role with back pay for work missed (including overtime) in that role on account of discrimination and retaliation by the County, inclusive of any pay raise and/or promotion that Captain Little would have received but for same;
   4. Reimburse Captain Little in the amount of $23,046.46, for the value of benefit time Captain Little used during the period of unpaid leave in 2023, vacation hours, sick leave hours, and hours worked at reduced rate, because of discrimination and retaliation by the County, and for out-of-pocket costs of medical care incurred during this period, including mental health care;
   5. Provide back pay to Captain Little in the amount of $37,931.04 to account for the value Captain Little would have received by working approximately 336 overtime hours on background investigation unit (BIU) cases paid at overtime

Ms. Ashley Victoria Hudson, Assessor, County of Los Angeles
County Equity Oversight Panel, County Intake Specialist Unit
**Re:** *Demand for Religious Accommodation and Other Remedies*
April 19, 2024
Page 3

_____

    rate over the course of one year (28 hours on average per month multiplied by 12 months), *but for* the discrimination and retaliation by the County;

6. Rescind the Direct Order to Captain Little by Lifeguard Chief Fernando Boiteux implementing EA-231 personally and specifically against Captain Little;

7. Require senior management of the Fire Department, including but not limited to Fernando Boiteux, Adam Uehara, Danielle McMillon, and Arthur Lester, to enroll in and complete certain EEOC and Fair Treatment training programs[1];

8. Issue memoranda clarifying that EA-231 does and cannot not authorize senior management of the Department to require Department employees to violate their religious beliefs; **and**

9. Provide $433,142.50 as reasonable compensation for emotional distress suffered as a direct and proximate result of the County's violations of state and federal employment law and state tort law, which combined with the above monetary demands amounts to $495,020.

## II.    <u>Factual Basis for Demand for Religious Accommodation and Other Remedies</u>.

    As detailed in the EEOC Charge of Discrimination attached as **Exhibit A** to the March 21, 2024 letter, the record already indicates that the County discriminated and/or retaliated against Captain Little because of religion in violation of Title VII and FEHA. Key facts from this record include the following:

1. Captain Little is a devout Christian.

2. Captain Little's Christian beliefs about marriage, human sexuality, and family are sincere and held in good faith (bona fide).

3. Captain Little's work performance has been exemplary, as is his reputation at work, neither of which were challenged prior to his request for accommodation of his good faith, sincerely held Christian beliefs about marriage, human sexuality, and family in June of 2023.

4. By its terms, the Fire Department's EA-231 requires the Progress Pride Flag to be flown at sites to which Captain Little has been assigned, was assigned in June 2023, and likely would be assigned in the future.

5. By its terms, the Fire Department's ("Department") EA-231 requires Captain Little as a Captain/Site Supervisor to ensure that the Progress Pride Flag will be flown (i.e., handled, raised, lowered, and stored, etc.) at sites at which he is or would be assigned.

_____

[1] These programs should include the following: SHRM: US Employment Law and Compliance, a 5-week live online program; SHRM: Creating an Inclusive Workplace, eLearning; Harassment and Diversity: Respecting Differences, Managers Version, DVD Learning; SHRM: Employee Relations: Creating a Positive Work Environment, two-week Live Online Program; SHRM: Employment Laws: What Supervisors Need to Know- Corporate, eLearning.

Ms. Ashley Victoria Hudson, Assessor, County of Los Angeles
County Equity Oversight Panel, County Intake Specialist Unit
**Re: *Demand for Religious Accommodation and Other Remedies***
April 19, 2024
Page 4

_____

6. The Progress Pride Flag (PPF or "Pride Flag") symbolizes and advances a range of controversial religious and moral views, including about the family, the nature of marriage and human sexuality, including the promotion of certain sexual practices, and the identity, nature, and purpose of the human person. Additionally, aspects of the Pride Flag represent "sex," "magic," and "spirit", among other notions, according to the County Board of Supervisors' motion that prompted the promulgation of EA-231. The Pride Flag and its public meaning has featured prominently during instances of Drag Queen Story Hour, during which drag queens read books to young children. The Pride Flag and its public meaning has featured prominently during Gay Pride parades around the world, including those at which adults wear little to no clothing while in the presence of children. The views associated with the Pride Flag, and as indicated in the uses above, are in direct conflict with Captain Little's bona fide and sincerely held religious beliefs on the same subjects. Captain Little's bona fide and sincerely held religious beliefs require him to reject those views.

7. On June 18, 2023, Captain Little requested a religious accommodation concerning EA-231 because his bona fide and sincerely held religious beliefs prevented him from raising the Progress Pride Flag or ensuring that it was raised.

8. On June 19, 2023, the Department initially granted Captain Little's request as follows: (1) movement to a site not flying the Pride Flag; (2) no requirement to raise the Pride Flag; and (3) no requirement to ensure raising of the Pride Flag. So, he would be allowed to work in the Dockweiler Area, North and South, and El Segundo Lifeguard stations.

9. On June 21, 2023, before Captain Little's shift, Section Chief Lester visited the Dockweiler Area and ordered the lifeguards at each subarea to raise the Pride Flags; they were then raised. This violated EA-231 and EA-231a. At 10:30 a.m. on June 21, 2023, Captain Little arrived at work. With the permission of the Ocean Lifeguard Specialists then stationed at Dockweiler, Captain Little took down the flags due to the prior grant of accommodation and the violation of EA-231 and EA-231a. That was between 11:30 a.m. and 2:30 p.m. Later that day, at about 2:45 p.m., the Department informed Captain Little by Microsoft Teams that his accommodation had been revoked. Captain Little again informed the Department that raising the flag would conflict with his bona fide and sincerely held religious beliefs.

10. On June 21, 2023, after revocation of the accommodation, Section Chief Lester ordered Captain Little to raise the Pride Flag. In his words, language, and tone, Lester's conduct toward Captain Little was abusive, inappropriate, harassing, and discriminatory. Section Chief Lester's conduct was motivated by animus toward Captain Little's religious beliefs, and his conduct toward Captain Little was based on Captain Little's religious beliefs and was in retaliation for Captain Little seeking a religious accommodation.

11. On June 21, 2023, without justification or notice, the Department abruptly ended the interactive process and refused Captain Little any accommodation, less than two days after granting accommodation. This was a violation of FEHA and Title VII. The

Ms. Ashley Victoria Hudson, Assessor, County of Los Angeles
County Equity Oversight Panel, County Intake Specialist Unit
**Re: *Demand for Religious Accommodation and Other Remedies***
April 19, 2024
Page 5

_____

Department could grant Captain Little a religious accommodation to EA-231 without undue burden to itself, including because other Department employees were at each area and sub-area who could be responsible for raising the Pride Flag or ensuring the Pride Flag is raised.

12. On June 21, 2023, Assistant Lifeguard Chief Uehara affirmed the denial of any religious accommodation for Captain Little and denied Captain Little's right to use work-related benefits, including time off benefits, as a means for Captain Little to avoid the conflict between EA-231 and his bona fide and sincerely held religious beliefs.

13. On June 22, 2023, Captain Little was placed under Direct Order to fly the Pride Flag and ensure that the Pride Flag is flown as instructed in EA-231. The written Direct Order was served on Captain Little by Lifeguard Chief Boiteux. Lifeguard Chief Boiteux told Captain Little, "You need to stop what you are doing," "You are an LA County employee; that's the only thing that matters," and "Your religious beliefs do not matter; you are an LA County employee." He repeated multiple times, "You are an LA County employee. Your religious beliefs do not matter." Lifeguard Chief Boiteux is 6'5 and 240 pounds; he delivered this message in a violent and angry manner while standing over Captain Little.

14. On June 22, 2023, Captain Little was placed under a Notice of Investigation on pretextual charges. On June 22, 2023, Captain Little was placed under a Notice of Instruction: "All Department employees, irrespective of personal beliefs, are expected to comply with EA-231, which includes raising the flag as instructed." On June 23, 2023, Captain Little was suspended from the background investigation unit for the Department, resulting in a significant loss of overtime, income, and prestige. On June 27, 2023, the Department alleges it received a CPOE complaint against Captain Little. This alleged complaint is also pretextual.

15. On June 22, 2023, at 11:58 a.m., Captain Little filed a CPOE complaint with the Department for religious discrimination and harassment.

16. Since June 22, 2023, the Department has refused to engage in the interactive process with Captain Little. This violates FEHA and Title VII. The Department is legally obliged to engage in the interactive process with Captain Little concerning his requested religious accommodation.

17. On June 28, 2023, Captain Little received a death threat against him and his children. The death threat was printed by hand in letters that alternate in color and said: "Jeff Fuck you and your Jesus. Your hate won't be tolerated. We know where you live and work. You better pay respect to our pride flag or we will fuck you up. We know about your cute little girls and aren't afraid to rape the shit out of them if you don't honor us. You are a fascist pig and deserve to die."

18. Upon information and belief, the Department breached Captain Little's right to employment-related privacy rights. The Department, through the persons identified herein, disclosed to unauthorized recipients that Captain Little requested a religious accommodation to not raise the Pride Flag. This breach of privacy led to (1) his

Ms. Ashley Victoria Hudson, Assessor, County of Los Angeles
County Equity Oversight Panel, County Intake Specialist Unit
**Re:** *Demand for Religious Accommodation and Other Remedies*
April 19, 2024
Page 6

_____

suspension from investigative work for the Department; (2) a complaint against him
on or about June 27, 2023; and (3) the death threat against him and his family.

19. On June 30, 2023, the Department launched a retaliatory investigation of Captain
Little, which amounted to retaliation, religious discrimination, and harassment. The
Department's investigation of him is pretextual and meant to punish, harass, and
discriminate against him for (1) requesting a religious accommodation; (2) non-
compliance with EA-231 because of the conflict with his religious beliefs; and (3)
filing his own CPOE complaint. On September 14, 2023, the Department notified
Captain Little that he was under another formal County investigation. This
investigation is pretextual and meant to punish, harass, and discriminate against
Captain Little for (1) requesting a religious accommodation; (2) noncompliance with
EA-231 because of the conflict with his religious beliefs; and (3) filing his own CPOE
complaint.

20. On or about July 20, 2023, at 2:00 p.m., Captain Little spoke with investigator Justa
Lopez of the County's CPOE Investigative Unit. During the investigative call,
Captain Little added to his CPOE complaint the June 22, 2023, Direct Order, the June
22, 2023, Notice of Instruction, the June 22, 2023, Notice of Investigation, the June
22, 2023, actions of Chief Boiteux, and the receipt of the June 28, 2023, death threat.
He asked Ms. Lopez whether he had to supplement his June 22, 2023 CPOE
complaint in writing. She told him that was not necessary, and she deemed the
additional facts part of his CPOE complaint.

21. On July 28, 2023, the Department informed Captain Little that the conduct Captain
Little complained about did not violate the CPOE. The Department did not act to
protect Captain Little from previous and future religious discrimination, harassment,
and retaliation.

22. On February 7, 2024, the Department notified Captain Little that he violated the
CPOE, and that administrative action may follow, a retaliatory outcome of the
pretextual investigation launched in June 2023.

### III.    Legal Basis for Demand for Religious Accommodation and Other Remedies.

#### A.    Captain Little Can Make Out a *Prima Facie* Case for Discrimination and Retaliation under Title VII and FEHA.

Per the Court in *Burcham v. City of Los Angeles* (C.D. Cal. 2022) 562 F.Supp.3d 694,
708, "Title VII and FEHA make it unlawful for an employer to discriminate against an employee
based on their religion." (Citations omitted.) "To plead a prima facie case of religious
discrimination, a plaintiff must allege facts that plausibly demonstrate: (1) he holds a 'bona fide
religious belief, the practice of which conflicted with an employment duty; (2) he informed the
employer of that belief and conflict; and (3) the employer threatened the employee with or
subjected him to discriminatory treatment, including discharge, because of an inability to fulfill
the job requirements.'" *Id*. (citation omitted). Once a plaintiff has made a *prima facie* showing,

Ms. Ashley Victoria Hudson, Assessor, County of Los Angeles
County Equity Oversight Panel, County Intake Specialist Unit
**Re:** *Demand for Religious Accommodation and Other Remedies*
April 19, 2024
Page 7

_____

the burden shifts to the defendant to show that "… it initiated good faith efforts to accommodate reasonably the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship." *Schmidt v. City of Pasadena* (C.D. Cal., Mar. 8, 2023, No. LA CV21-8769) 2023 WL 4291440, at *7 (citation omitted).

As a threshold matter, to make out a claim for violation of Title VII's bar to religious discrimination or retaliation, there must be allegations of a conflict between the work requirement at issue and the bona fide, sincerely held religious belief (and related religious practice) of the employee that is said to be in conflict with the work requirement. The work requirement here as expressed by EA-231 and applied to Captain Little personally and directly by Mr. Boiteux's Direct Order is that Captain Little is to fly the Pride Flag at any station to which he may be assigned and to which EA-231 may apply, because, per Boiteux, Captain Little's religious beliefs on the issue of conflict simply "don't matter," that, more specifically, being an LA County employee means prioritizing County-dictated beliefs and values over against the religious beliefs and values of the employee in the event of conflict between the two. But this position is not the law; quite the opposite.

In *Lawson v. Washington* (9th Cir. 2002) 296 F.3d 799, 804, the United States Court of Appeals for the Ninth Circuit stated that "[i]t is undisputed in this case that as a Jehovah's Witness, Lawson's bona fide religious beliefs conflict with the WSP requirements that he salute the flag and undertake the obligation of a commissioned law enforcement officer before he assumes his office to swear his allegiance to the United States and the State of Washington." (Citation omitted.) In so finding, the Court cited from the earlier United States Supreme Court case of *West Virginia State Bd. of Educ. v. Barnette* (1943) 319 U.S. 624, 643, Justices Black and Douglas' concurrence, for the proposition that "[t]he Jehovah's Witnesses, without any desire to show disrespect for either the flag or the country, interpret the Bible as commanding, at the risk of God's displeasure, that they not go through the form of a pledge of allegiance to any flag." Captain Little's religious beliefs conflict with the public meaning of the Pride Flag in a manner similar to the conflicts at issue in *Lawson* and *Barnette*.

As mentioned above, Captain Little is a Christian. Specifically, he is an evangelical Christian with beliefs on marriage, family, sexual behavior and identity that align with traditional biblical-social teachings on those topics. The sum and substance of these beliefs, and the conflict with these beliefs that would arise as a result of the County's demand for compliance with the work requirements of EA-231, were communicated clearly to the County during the interactive process.[2] This communication led subsequently and directly to discriminatory and retaliatory treatment by the County, as detailed above. (Indeed, for the purpose of satisfaction of pleading requirements, it should not be controversial to say Captain Little informed the County of his religious beliefs and the conflict between same and compliance with EA-231 and that the County

_____

[2] Captain Little provided the County during the interactive process the various detailed biblical teachings relevant to the issue of conflict between religious belief of the employee and the work requirement of the employer, to which Captain Little also adheres.

Ms. Ashley Victoria Hudson, Assessor, County of Los Angeles
County Equity Oversight Panel, County Intake Specialist Unit
**Re:** *Demand for Religious Accommodation and Other Remedies*
April 19, 2024
Page 8

_____

through its employees, like Mr. Boiteux, for one, subjected Captain Little to discriminatory treatment specifically targeting Captain Little's religious belief as supposed justification for that treatment.) Further, while the County initiated the interactive process as required by law, contrary to law it also terminated that same process prior to explanation of how the accommodation of religious belief that Captain Little requested would amount to an undue hardship for the County.

It is not yet clear why exactly the County terminated the interactive process with Captain Little without granting his demanded religious accommodation, and without offering any explanation for same, but it is clear that the Christian beliefs that Captain Little expressed to the County during the interactive process are sincerely held and genuinely religious in nature. They are not social or political in nature, though there may be social or political implications flowing from Captain Little's religious beliefs and or from his religious worldview in general. However, whatever the implications, and however disagreeable his religious beliefs may be to the County, in view of the authority below, Captain Little's religious beliefs are subject to the full protection of state and federal discrimination law.

Well-established precedent makes clear that religious beliefs need only be sincerely held. They do not need to be understandable to others. They can even be personal to the employee and not recognized by any organization. Further, an employee need not be able to articulate his religious beliefs in a way the employer accepts. See *Thomas v. Review Bd. of Indiana Employment Security Division* (1981) 450 U.S. 707, 714 ("[R]eligious beliefs need not be acceptable, logical, consistent, or comprehensible to others . . . ."); *Philbrook v. Ansonia Bd. of Educ*. (2d Cir. 1985) 757 F.2d 476, 481-488 (courts use same standard for sincerity under Title VII as in free exercise cases). See also *Davis v. Fort Bend County* (5th Cir. 2014) 765 F.3d 480, 485 (a court's task is to decide whether an individual's beliefs "… are, in his own scheme of things, religious"). An employer is directed to use a "light touch" when making this inquiry. *Id.* at 486. See also *Adeyeye v. Heartland Sweeteners, LLC* (7th Cir. 2013) 721 F.3d 444, 452 (emphasizing that Title VII has a "broad and intentionally hands-off definition of religion"); *Cooper v. General Dynamics, Convair Aerospace Division* (5th Cir. 1976) 533 F.2d 163, 168 ("all forms and aspects of religion, however eccentric, are protected").

These and other cases are broadly surveyed and described in detailed guidance published on the EEOC's web page. See https://www.eeoc.gov/laws/guidance/section-12-religious-discrimination (accessed April 19, 2024). "[A] coincidence of religious and secular claims in no way extinguishes the weight appropriately accorded the religious one." *Callahan v. Woods* (9th Cir. 1981) 658 F.2d 679, 684. In short, there is "little room" for an employer to challenge the religious nature of an employee's professed beliefs. *EEOC v. Union Independiente de la Autoridad de Acueductos* (1st Cir. 2002) 279 F.3d 49, 56. Although Captain Little's sincerely held and genuinely religious beliefs have clearly met with the County's disagreement, or with the disagreement of key County employees, such beliefs do not need to be *agreeable* to the County or any of its employees in order to be protected at law. This is the teaching of the authority above.

Ms. Ashley Victoria Hudson, Assessor, County of Los Angeles
County Equity Oversight Panel, County Intake Specialist Unit
**Re:** *Demand for Religious Accommodation and Other Remedies*
April 19, 2024
Page 9

_____

On June 19, 2023, the Department acknowledged that Captain Little's religious beliefs were sincerely held and further acknowledged the existence of a conflict between his religious beliefs and his job duties. The Department, therefore, granted his accommodation request. For reasons that are as unclear as they are unsupportable, the Department subsequently revoked his accommodation. It did so based on an obvious mischaracterization of Captain Little's request. From the beginning, Captain Little requested that the Department not require him to raise the pride flag. The Department mischaracterized his request as solely not wanting to work at locations where the pride flag was flown. The Department not only revoked his accommodation but refused to engage in the interactive process further. Both actions by the Department violated Title VII.

> **B.**     **To Properly Deny Captain Little's Demand for Accommodation, the County Must but Cannot Demonstrate that the Accommodation Would Constitute an "Undue Hardship" under *Groff v. Dejoy*.**

In view of the above, the factual record would, at a minimum, allow Captain Little to plead a *prima facie* case of religious discrimination and/or retaliation in view of the County's failure to reasonably accommodate Captain Little's religious beliefs, which accommodation would not amount to an "undue hardship" for the County or Department, as explained below.

In *Groff v. DeJoy* (2023) 600 U.S. 447, the United States Supreme Court clarified what constitutes an "undue hardship" under Title VII. The facts of *Groff* are similar in key respects to the facts of Captain Little's case. As the Court related in its syllabus for the case, Petitioner Gerald Groff, an Evangelical Christian, believed that Sunday should be devoted to worship and rest for religious reasons. In 2012, Groff worked as a mail delivery employee with the United States Postal Service (USPS), a government employer like the County of Los Angeles. Initially, his position did not involve Sunday work, but when USPS began facilitating Sunday deliveries for Amazon, Groff's schedule changed. To avoid Sunday work, Groff transferred to a rural USPS station that did not make Sunday deliveries. However, when Amazon deliveries started at that station too, Groff remained unwilling to work Sundays. USPS redistributed Groff's Sunday deliveries to other staff, and Groff faced "progressive discipline" for not working on Sundays. Eventually, he resigned and sued under Title VII, asserting that USPS could have accommodated his Sunday Sabbath practice *without undue hardship* on its business.

Generally, Title VII prohibits employers from discriminating against employees based on religion and requires reasonable accommodations for religious practices. The Court agreed to review the decision of the lower court in *Groff* to determine whether USPS's denial of Groff's religious accommodation violated Title VII. It determined that Title VII requires an employer denying a religious accommodation to demonstrate that the burden of granting the accommodation would result in *substantial increased costs* relative to the conduct of its specific business. In so deciding, the Court rejected the Third Circuit's interpretation of *Trans World Airlines, Inc. v. Hardison* (1977) 432 U.S. 63, which had set a *de minimis* cost standard for religious accommodations. The Court clarified that employers must, again, show *substantial*

Ms. Ashley Victoria Hudson, Assessor, County of Los Angeles
County Equity Oversight Panel, County Intake Specialist Unit
**Re:** *Demand for Religious Accommodation and Other Remedies*
April 19, 2024
Page 10

_____

*increased costs*, not merely minimal ones, to justify denying a religious accommodation. As a result of *Groff*, employers cannot rely on minor inconveniences or minimal costs to deny religious accommodations. Further, the burden is *on the employer* to demonstrate substantial hardship.

As for the factors that count toward a determination of undue hardship, the Court clarified that "[w]hat matters more than a favored synonym for 'undue hardship' (which is the actual text) is that courts must apply the test in a manner that takes into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, 'size and operating cost of [an] employer.'" *Groff v. DeJoy* (2023) 600 U.S. 447, 470-471 (citation omitted). As *Groff* makes clear, the number of employees employed by the Department and its annual budget are both key factors in determination of whether Captain Little's accommodation request would genuinely result in substantially increased expenditure for the Department. Both of these factors support the position of Captain Little on the issue of reasonable accommodation over that of the County.

The Court further clarified that co-worker hostility to the sought after religious accommodation does not count as an undue hardship for the employer, nor can it factor into a finding of undue hardship; the exclusion of coworker animus toward religion is absolute. "[A] coworker's dislike of 'religious practice and expression in the workplace' or 'the mere fact [of] an accommodation' is not 'cognizable to factor into the undue hardship inquiry.'" *Id.* at 472. "An employer who fails to provide an accommodation has a defense only if the hardship is 'undue,' and a hardship that is attributable to employee animosity to a particular religion, to religion in general, or to the very notion of accommodating religious practice cannot be considered 'undue.'" *Id.* Indeed, "[i]f bias or hostility to a religious practice or a religious accommodation provided a defense to a reasonable accommodation claim, Title VII would be at war with itself. *Id.* Moreover, "… it would not be enough for an employer to conclude that forcing other employees to work overtime would constitute an undue hardship," as "[c]onsideration of other options, such as voluntary shift swapping, would also be necessary." *Id.* at 473.

> **C.    Request for Response to Demand for Religious Accommodation and Other Remedies.**

In view of the overbearing insistence by Mr. Boiteux that Captain Little's sincerely held religious beliefs simply "do not matter," religious animus is clearly at work at the Department and thus at the County. See *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Com.* (2018) 584 U.S. 617, 634 (hostility was shown when "commissioners endorsed the view that religious beliefs cannot legitimately be carried into the public sphere"). This is especially the case in light of the long line of cases holding that the government cannot force an employee to salute a flag. See, e.g., *Russo v. Central School Dist. No. 1* (2d Cir. 1972) 469 F.2d 623, 633.

Ms. Ashley Victoria Hudson, Assessor, County of Los Angeles
County Equity Oversight Panel, County Intake Specialist Unit
**Re:** *Demand for Religious Accommodation and Other Remedies*
April 19, 2024
Page 11

_____

However, in light of *Groff,* such animus is an improper basis for asserting an undue hardship to support denial of Captain Little's request for religious accommodation. Nor could a substantial increase of expenditure support denial, as no such increase would actually occur if the accommodation were granted. Even so, please provide a detailed response to this letter by no later than May 3, 2024. Failure to reply by this date will result in preparation of a complaint against the County that will be timely filed by Captain Little.

Upon filing the complaint, we will be very motivated to fully protect Captain Little's rights. This firm has an extensive practice litigating religious liberty claims and recovering our fees. As the County knows, following a prosecution by the County against a church for refusing to abide by the Public Health Officer's orders, the County and State *each* paid our client $400,000 in attorneys' fees[3]—after we prevailed in another case at the United States Supreme Court. *South Bay United Pentecostal Church v. Newsom* (2021) 141 S.Ct. 716. In another case— a FEHA action—the court awarded our firm a 1.7 multiplier, increasing the fees to $3.6 million. See *Dept. of Fair Employment and Housing v. Cathy's Creations, Inc.* (Cal. Super. Ct., Kern County., No. BCV-18-102633) 2023 WL 4147473.

The County and Department know that the risk of Title VII and FEHA litigation is not limited to an award of compensatory damages to plaintiffs harmed by illegal discrimination, relation, and harassment. Often, in such cases the greater exposure is to an award of attorneys' fees. See *Cash v. Cnty. of Los Angeles* (2023) WL 4492201. Even so, we are open to pre-litigation mediation subject to a tolling agreement, provided that mediation occur before June 1, 2024. However, if we cannot reach a satisfactory pre-litigation resolution, we are prepared to fully litigate this case, as is our client.

Sincerely,

LiMANDRI & JONNA LLP

Paul M. Jonna

PMJ/jy
Enclosures

_____

[3] *See, e.g.,* Jaclyn Cosgrove, *Why L.A. County paid $400,000 to a church that violated coronavirus rules*, L.A. Times (Sep. 2, 2021), https://www.latimes.com/california/story/2021-09-02/why-l-a-county-paid-400-000-to-a-church-that-violated-coronavirus-rules.

**EXHIBIT B**

U.S. Department of Justice

Civil Rights Division

NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

VIA EMAIL

*150 M Street, N.E.*
*Karen Ferguson , EMP, 4CON, Room 9.514*
*Washington, DC 20530*

March 26, 2024

Mr. Jeffrey Little
c/o Joshua Youngkin, Esquire
Law Offices of Limandri & Jonna
PO Box 9120
Rancho Sante Fe, CA  92067

Re:  EEOC Charge Against Los Angeles County Fire Department, et al.
   No. 480202402766

Dear Mr. Little:

   Because you filed the above charge with the Equal Employment Opportunity Commission, and the Commission has determined that it will not be able to investigate and conciliate that charge within 180 days of the date the Commission assumed jurisdiction over the charge and the Department has determined that it will not file any lawsuit(s) based thereon within that time, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

   If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

   The investigative file pertaining to your case is located in the EEOC Los Angeles District Office, Los Angeles, CA.

   This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

             Sincerely,


             Kristen Clarke
          Assistant Attorney General
           Civil Rights Division


      by     /s/ Karen L. Ferguson
           Karen L. Ferguson
       Supervisory Civil Rights Analyst
       Employment Litigation Section


cc: Los Angeles District Office, EEOC
  Los Angeles County Fire Department, et al.

**EXHIBIT S**

| From: | Jeff Little |
|---|---|
| To: | Renee Nuanes-Delgadillo; Power, Kyle |
| Cc: | Rachel Lara; Adam Uehara; Gregory Crum; Greg Crum |
| Subject: | Re: IPM reply |
| Date: | Wednesday, May 8, 2024 3:10:10 PM |

Adding Chief Kyle Power, my immediate supervisor.

On Wed, May 8, 2024 at 3:06 PM Jeff Little          **REDACTED**          wrote:

Ms. Nuanes-Delgadillo & Lifeguard Chain-of-Command -

As you requested of me in the email below, I hereby make my request to the Department and County of Los Angeles for an accommodation of my religious belief, the grant of which would be applied to my work conditions and assignments this June, deemed by the County of Los Angeles to be Pride Month.

Specifically, to accommodate my religious beliefs concerning marriage, sex, and family that conflict with views on these subjects publicly associated with Pride Month (June) and its various symbols, including the Pride Flag and Progress Pride Flag, I hereby request that:

(1) I be exempt this June from the EA-231 requirement of captains/site supervisors to handle, raise, and lower the Pride Flag or Progress Pride Flag at stations/sites to which they've been assigned or otherwise stationed;

(2) I be exempt this June from the Direct Order directing my specific compliance with this requirement of EA-231; and that;

(3) I be exempt this June from any requirement to order, command, or supervise any other person, including any subordinate, colleague, or coworker, to raise, lower, or otherwise handle the Pride Flag or Progress Pride Flag.

To the extent continuation of the IPM from last year is required to negotiate the details of this request for accommodation, I ask that this process start again as soon as possible, but no later than by next week.

Thank you.

Jeff Little

On Mon, Aug 21, 2023 at 3:45 PM Renee Nuanes-Delgadillo <**REDATED REDATED** @fire.lacounty.gov> wrote:

Good Afternoon Captain,

Yes, I did receive your email and apologize for not getting back to you sooner. I have noted the responses you provided on your email dated August 6th. I cannot speak on if there will be a board motion, along with an EA, to have the PPF flown every year moving forward; however, as stated during the IPM and my response on July 31st, if you feel that you need a religious accommodation every year, you can request one

through your chain of command and they will being the process.

Thank you,


*Renée Nuanes-Delgadillo*

*She/Her*

*Risk Management (RM) and Disability Management and Compliance (DMC)*

*Leadership & Professional Standards Bureau*

*County of Los Angeles Fire Department*

**REDATED** Phone

---

**From:** Jeff Little
**Sent:** Monday, August 21, 2023 10:51 AM
**To:** Renee Nuanes-Delgadillo <    **REDATED** @fire.lacounty.gov>
**Cc:** Rachel Lara < **REDATED** @fire.lacounty.gov>; Adam Uehara
<    **REDATED** @fire.lacounty.gov>; Gregory Crum <    **REDATED** fire.lacounty.gov>;
Danielle McMillon <    **REDATED** @fire.lacounty.gov>
**Subject:** Re: IPM reply


CAUTION: External Email. Proceed Responsibly.

Dear Ms. Nuanes-Delgadillo:

I write to follow up on my email to you dated August 6, below. If you would, please acknowledge by Wednesday, August 23 your receipt of the August 6 email and advise as to when the County intends to reply. Please provide a specific date by which I may expect a response from the County.


Thank you.

Captain Jeff Little

On Sun, Aug 6, 2023 at 9:28 PM Jeff Little    **REDATED**    wrote:

Thank you for the reply, Ms. Nuanes-Delgadillo. If you would, please clarify the following statement from your July 31 email.

"In regards to your request to have a religious accommodation moving forward every June, and/or, the month that the PPF is flown, you would need to request this through your chain of command the month prior to your need of the accommodation."

This seems to be a rejection of my religious accommodation request for a standing exemption (1) from EA-231 and (2) from Chief Boiteux's direct order dated June 22 (see attachment "Direct Order") that I either fly the PPF myself or ensure it is flown in accordance with EA-231 in the month of June "each year going forward." This is a standing order, thus the request for a standing exemption, meaning an exemption that would not need to be renewed each May, as you direct, since the every-June-going-forward order it applies to is also not in need of renewal each May or at any other point in time.

To be clear, are you saying that this order has been rescinded by virtue of your July 31 email (or by other means) and that is why the requested religious accommodation would need to be requested each May (or otherwise the month prior to the month of accommodation) going forward? If the direct order and its standing directives are not rescinded, and the request for a standing exemption from the same has been denied, then please provide the legal authority the County relies upon for the denial and any related factual basis in support of the denial. That is, please explain in detail why a standing exemption to the standing direct order has not been granted, if indeed it has not been granted.

If you would, please clarify the following statement.

"However, during the IPM it was noted that you would not be required to put up/take down the PPF flag."

I received the standing direct order from Chief Boiteux after the IPM at which the County said I would not be required to personally, directly raise or lower the PPF. This IPM statement and the standing direct order seem to be inconsistent with one another on the issue of whether I am to be exempt from personally, directly raising/lowering the PPF whenever EA-231 would apply to a site to which I have been assigned. Please clarify whether the two are inconsistent with one another and, if so, which of the two is to be followed, if the County's position is that one or the other must be followed. If the County's position is that the two are not inconsistent with one another, and that they are both to be followed, please explain how this can be so.

Also, unlike the standing direct order, the IPM did not cover the issue of whether I would be required to ensure (e.g., by commanding a subordinate) that the PPF is raised/lowered whenever EA-231 would apply to a site to which I have been assigned. The direct order covered the topic and states that there I am not exempt from the responsibility of ensuring that the PPF is flown whenever EA-231 would apply to a site at which I have been assigned. Is it the County's position that I am exempt or not exempt from the responsibility of ensuring that the PPF is flown whenever EA-231 would apply to a site at which I have been assigned?

In view of the above, please clarify the County's position on my request for religious accommodation in the form of a standing exemption from (1) compliance with EA-231 and (2) compliance with Chief Boiteux's standing direct order. Further, please note that my request for accommodation of my religious beliefs includes a request to be exempt from working at a site at which EA-231 applies (i.e., PPF sites) unless the County can demonstrate how assignment to a non-PPF site each June would amount to an undue hardship for the County under the law. Note that this particular request for exemption is also a request for a standing exemption, since EA-231 is by its terms applicable to every June going forward.

In answering the requests for clarification of position above, please also consider the statements below.

In your letter dated July 13, you state that our second IPM meeting involved a "... discussion on Thursday,

June 22, 2023." My records indicate that the second IPM meeting occurred on June 21, 2022. Would you please confirm the date of the second IPM?

Now, regarding this statement from the July 13 letter:

You stated that you do not agree to this because it is against your will.

To be clear, my will is to do the will of God, to comply with my religious beliefs and my religious duties to God, even when that means I am unable to fly the PPF, whether directly or indirectly, or work under it. Any reference to "my will" in the context of discussion of religious accommodation should be understood in this sense.

Regarding this statement from the July 13 letter:

"You stated that your major issue is that it is the captain's responsibility to ensure that the crew is flying the PPF flag. You were asked to clarify your concern; is it working in a location where the PPF is flown, or the responsibility of ensuring that the PPF is flown. You replied that your main issue is working in a building where the PPF is flown since it goes against your religious beliefs."

To be clear, the issue of raising the PPF and or working under/near a PPF site is one of association with or even the appearance of endorsement of a message contrary to my religious beliefs, as discussed in a prior email. Raising the PPF through another by command of another is no different from raising it myself. What I cannot do directly without violation of my duty to God I cannot do indirectly by command of another. Any exemption that still requires me to ensure the PPF is flown while exempting me from personally, directly raising the PPF would still present a conflict between my duty to God and this new condition of employment/employment practice.

Thank you.

Captain Jeffrey Little

On Mon, Jul 31, 2023 at 10:50 AM Renee Nuanes-Delgadillo < **REDATED REDATED**@fire.lacounty.gov> wrote:

> Good Morning Captain,
>
> Thank you for your email response below.  I will attach your email to the follow up discussion document that I sent you.  In regards to your request to have a religious accommodation moving forward every June, and/or, the month that the PPF is flown, you would need to request this through your chain of command the month prior to your need of the accommodation. However, during the IPM it was noted that you would not be required to put up/take down the PPF flag.
>
>
> Please note that I am including Rachel Lara, Chief Uehara, Chief McMillon, and Captain Crum in this response.
>
>
> Thank you,

*Renée Nuanes-Delgadillo*

*She/Her*

*Risk Management (RM) and Disability Management and Compliance (DMC)*

*Leadership & Professional Standards Bureau*

*County of Los Angeles Fire Department*

**REDATED** Phone

---

**From:** Jeff Little
**Sent:** Sunday, July 23, 2023 6:11 PM
**To:** Renee Nuanes-Delgadillo <              **REDATED** @fire.lacounty.gov>
**Subject:** IPM reply

CAUTION: External Email. Proceed Responsibly.

| IPM_6-19-2023_6-21-2023_DiscussionForm.pdf

| EA-231.pdf

| EA-231a.pdf

| 386_07.21.23.pdf

Dear Ms. Renée Nuanes-Delgadillo:

I write in response to the attached correspondence dated July 13, 2023. In your correspondence, you state there is a "... right to respond in writing regarding the information provided in this letter," and that the response should be supplied to you "... no later than 10-calendar days from the date of this correspondence."  Please accept this email as the timely exercise of the right of response.

My primary purposes in writing this initial response to your July 13 correspondence is to (1) request an extension of the 10 day response period referred to in your correspondence to 24 days, which if granted would change the deadline for response from today, July 23, 2023, to August 6, 2023, and to (2) provide an initial clarifying response to the content of certain statements/descriptions of our prior exchanges in your July 13 correspondence.

The request for extension of the response period is based on the facts that (a) I have been on leave since June 25 with very limited access to work

communications, including your correspondence, which, as a result, I received only on Friday, July 21, and that (b) I have been ordered by Dr. Musher against any return to work prior to September 10, 2023, because of his finding of temporary total disability. See attached Patient Status Report.

In your July 13 correspondence, you describe the following exchange:

> You were informed that although you are not the Area 33 Headquarters Captain, it is every captain's responsibility to ensure that the appropriate flags are flown at locations; therefore, there may be extenuating circumstances when you may have to put up or take down the PPF flag. You stated that you do not agree to this because it is against your will. You stated that your major issue is that it is the captain's responsibility to ensure that the crew is flying the PPF flag. You were asked to clarify your concern; is it working in a location where the PPF is flown, or the responsibility of ensuring that the PPF is flown. You replied that your main issue is working in a building where the PPF is flown since it goes against your religious beliefs.

In response to the above, I hereby offer the following additional clarification: the religious beliefs implicated by working in a building or station near the Progress Pride Flag (or any form of the Pride flag), by raising the PPF, or requiring others to raise the PPF at my command may be partly summarized as follows:

> God intends sexual intimacy to occur only between a man and a woman who are married to each other. God has commanded that no intimate sexual activity be engaged in outside of a marriage between a man and a woman (Heb. 13:4).

> Any form of sexual immorality, such as adultery, fornication, homosexuality, bisexual conduct, bestiality, incest, pedophilia, pornography, any attempt to change one's sex or disagreement with one's biological sex, is sinful and offensive to God (Lev. 18:1–30; Matt. 5:28; Rom. 1:26–29; 1 Cor. 5:1, 6:9; 1 Thess. 4:1–8).

Homosexuality, in particular, is subject to God's wrath of abandonment; it is a matter of choice and not inherited status, and it epitomizes man's ungrateful rebellion against God (Rom. 1:18–28)

The above statements are excerpted from a church website with doctrinal/religious views very similar to those of the church I regularly attend with my family. The statements above at least generally express my sincerely held religious beliefs on social and behavioral matters implicated by the PPF. That is, these same matters are also addressed by and in conflict with the beliefs of the Pride movement and with the messages communicated by the movement's various symbols, slogans and insignia, including but not limited to the PPF and various other Pride flags.

In your July 13 correspondence, you describe the following exchange:

"What is it about your religious beliefs that directly impacts your ability to work in a location where the PPF is flown and having to put up and take down the PPF?" You responded that you do not feel comfortable working at a location where the PPF is displayed and that you are not ready to compromise your religious beliefs.

In response to the above, I hereby offer the following additional clarification: I would feel uncomfortable raising and lowering the PPF because of the appearance from the standpoint of the reasonable observer of my endorsement and or celebration of the messages on various sexual behaviors (among other topics) associated with the PPF and similar, which as discussed above conflicts directly with my religious beliefs on the same set of topics.

Further, I would be uncomfortable raising and lowering the PPF because of my sincerely held religious belief that, as a matter of honesty before God and man, I am to avoid even apparent public endorsement of viewpoints on important topics such as sexual morality and identification that I do not in fact endorse, even under threat and duress; raising and lowering the PPF would require my violation of this related but separate additional religious belief. See Acts 5:17-29.

Additionally, my religious accommodation request should not be understood as merely applying to the month of June, 2022, but to every June to which EA-231 may apply. By its terms, and specifically in view of EA-231's omission of any duration term, EA-231 would seemingly apply to every June until it is repealed entirely or is modified to include a duration term. Thus, in determining whether to grant or deny my religious accommodation request, I ask that the County consider the request to apply to June of 2023 *and every June thereafter*. See attached for EA-231.

Due to the short notice of actual receipt of the request to respond to your July 13 correspondence, the above is offered only as illustration of the matters in the correspondence to which I intend to respond. If the request for additional time to respond is granted, I intend to offer additional clarification and elaboration along the lines offered above.

If you would, and as soon as you are able, please let me know of your reply to my requests above by email reply to this email address.

Thank you.

Cpt. Jeff Little

**EXHIBIT T**



**County of Los Angeles**

# CAPTAIN, LIFEGUARD SERVICES, FIRE

| | | | |
|---|---|---|---|
| **CLASS CODE** | 2925 | **SALARY** | $8,109.28 - $10,928.28 Monthly |
| **ESTABLISHED DATE** | September 23, 1997 | **REVISION DATE** | June 09, 2006 |

## DEFINITION/STANDARDS

DEFINITION:
Supervises all ocean lifeguard personnel assigned to one area of a beach or to a section's headquarters on a day and/or night shift.

## CLASSIFICATION STANDARDS:

Positions allocable to this class work under the administrative and technical direction of a Section Chief, Lifeguard Services, Fire with responsibility for one of the major areas of the coastline. Incumbents provide first level technical and administrative supervision to Ocean Lifeguards and Ocean Lifeguard Specialists assigned to a one to three mile area within that section. Each incumbent is responsible for properly staffing the area according to anticipated weather and ocean conditions and expected crowds, for ensuring the enforcement of all rules and ordinances, and for maintaining staff proficiency levels in conformance with departmental standards. In addition to possessing the knowledge and skills required of lower level classes within the series, positions in this class must exercise advanced knowledge of personnel practices, supervisory principles, departmental policies, procedures, and services to ensure the effective performance of subordinates.

## EXAMPLES OF DUTIES

Evaluates the effectiveness of staff and services by inspecting beach areas and equipment, and monitoring the performance of personnel on duty; reviews reports and logs; notes deficiencies and ensures corrective action.

Evaluates subordinate staff; prepares performance evaluations and submits them for review by superiors; counsels staff regarding their levels of performance; resolves first level employee grievances.

Determines training needs; directs Ocean Lifeguard Specialists to conduct on-the-job training in specific areas; may conduct training in areas such as ordinance interpretation, crowd management, or cliff rescues.

Meets with representatives of news media to present factual information on emergencies or special events, with citizen groups to plan or coordinate special events, and/or with school personnel to plan for safety presentations.

Determines area personnel and equipment needs and submits requests to section headquarters for approval; hires and assigns lifeguard staff to sub-areas on a weekly and/or daily basis according to anticipated weather conditions, ocean and crowd projections; monitors expenditures to stay within allocated resources.

Responds to major emergencies within the area on a 24-hour recall basis and assumes command from the Ocean Lifeguard Specialist; directs and participates in ocean rescues and in the administration of first aid; directs crowd control measures pending the arrival of higher level departmental staff or law enforcement officers.

Inspects assigned area of beach in a four-wheel drive vehicle equipped for major rescues.

Engages in the physical fitness program established by the department in order to maintain sufficient capability to perform ocean lifesaving duties.

**REQUIREMENTS**

**MINIMUM REQUIREMENTS:**

**TRAINING AND EXPERIENCE:**

Two years of experience at the level of Ocean Lifeguard Specialist in the service of Los Angeles County.

**LICENSE:**

A valid California Class C Driver License is required to perform job-related essential functions.

**PHYSICAL CLASS:**

4 - Arduous.

**OTHER REQUIREMENTS:**

**Ability:**

Positions assigned to this class must be able to swim 500 meters within ten minutes.

**Certification:**

(1) County Beach Lifeguard Training Certificate, (2) Emergency Medical Technician I Certificate, (3) SCUBA Certificate.

**SPECIALTY REQUIREMENTS:**

**COMMENTS:**