1   Charles S. LiMandri, SBN 110841
2    cslimandri@limandri.com
    Paul M. Jonna, SBN 265389
3    pjonna@limandri.com
    Jeffrey M. Trissell, SBN 292480
4    jtrissell@limandri.com
    Joshua A. Youngkin, SBN 332226
5    jyoungkin@limandri.com
    LiMANDRI & JONNA LLP
6   P.O. Box 9120
7   Rancho Santa Fe, CA 92067
    Telephone: (858) 759-9930
8   Facsimile: (858) 759-9938
9

Thomas Brejcha, *pro hac vice*\*
 tbrejcha@thomasmoresociety.org
Peter Breen, *pro hac vice*\*
 pbreen@thomasmorsociety.org
THOMAS MORE SOCIETY
309 W. Washington St., Ste. 1250
Chicago, IL 60606
Tel: (312) 782-1680
\*Application forthcoming

10  *Attorneys for Plaintiff*
    *Captain Jeffrey Little*
11

12

13                  UNITED STATES DISTRICT COURT

14                  CENTRAL DISTRICT OF CALIFORNIA

15

16  CAPTAIN JEFFREY LITTLE, an
    individual,                          **Case No.:  2:24-cv-4353**
17
                 Plaintiff,              **Memorandum of Points &**
18                                       **Authorities in Support of Plaintiff's**
         v.                              **Ex Parte Application for a**
19                                       **Temporary Restraining Order and**
    LOS ANGELES COUNTY FIRE             **OSC re: Preliminary Injunction**
20  DEPARTMENT, a public entity, et al.
                                         Judge:       Hon. Josephine L. Staton
21               Defendant.              Courtroom:   8A
22
                                         Action filed:  May 24, 2024
23

24

25

26

27

28

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................8

FACTUAL & PROCEDURAL BACKGROUND.....................................................9

    A.    The County decides to fly the Progress Pride Flag at all County facilities during Pride Month .....................................9

    B.    Captain Little requests a religious accommodation, which is granted and then revoked, and for which he receives angry retaliation ...........................................................10

    C.    Captain Little files a religious discrimination complaint with the Fire Department, and is retaliated against ...........11

    D.    Pre-litigation attempts at resolution ...........................................13

LEGAL STANDARD ...........................................................................................13

ARGUMENT .......................................................................................................14

    I.    Plaintiff Little Is Likely to Succeed on the Merits ..............................14

        A.    Captain Little is likely to succeed on his religious discrimination claim for failure to accommodate under Title VII and FEHA............................................14

            1.    Captain Little can establish his prima facie claim. ...............................................................14

            2.    The Fire Department cannot establish the undue hardship defense ...............................................17

        B.    Captain Little is likely to succeed on his constitutional Free Exercise of Religion claims......................19

        C.    Captain Little is likely to succeed on his constitutional Freedom of Speech claim. ...............................22

    II.    The Other Injunction Factors Favor Captain Little ..............................27

        A.    Captain Little is suffering irreparable harm due to the loss of his constitutional rights ..........................27

        B.    The public interest and the balance of harms favors Plaintiff: similarly situated Department employees will benefit from preservation of Captain Little's constitutional rights..............................................28

    III.    The Court Should Dispense with a Bond Requirement ........................29

CONCLUSION ...................................................................................................30

2

MEMO. OF POINTS & AUTHORITIES ISO
PLAINTIFF'S EX PARTE APPL. FOR A TRO & OSC RE: PRELIM. INJ.

# TABLE OF AUTHORITIES

**Cases**

*303 Creative LLC v. Elenis* .................................................................................... 9, 24
  600 U.S. 570 (2023)

*Am. Beverage Ass'n v. City & County of San Francisco* ......................................... 28
  916 F.3d 749 (9th Cir. 2019)

*Babb v. California Tchrs. Ass'n* ............................................................................... 24
  378 F. Supp. 3d 857 (C.D. Cal. 2019)

*Bible Club v. Placentia-Yorba Linda Sch. Dist.* ....................................................... 29
  573 F. Supp. 2d 1291 (C.D. Cal. 2008)

*Boardman v. Pac. Seafood Grp.* ............................................................................ 28
  822 F.3d 1011 (9th Cir. 2016)

*Burlington Indus., Inc. v. Ellerth* ........................................................................... 17
  524 U.S. 742 (1998)

*California v. Azar* .................................................................................................. 28
  911 F.3d 558 (9th Cir. 2018)

*Callahan v. Woods* ............................................................................................... 15
  658 F.2d 679 (9th Cir. 1981)

*Chalk v. U.S. Dist. Ct.* ........................................................................................... 29
  840 F.2d 701 (9th Cir. 1988)

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah* ........................................... 20
  508 U.S. 520 (1993)

*Connick v. Myers* .................................................................................................. 22
  461 U.S. 138 (1983)

*Dahlia v. Rodriguez* .............................................................................................. 16
  735 F.3d 1060 (9th Cir. 2013)

*Diamontiney v. Borg* ............................................................................................. 28
  918 F.2d 793 (9th Cir. 1990)

*Doctor John's, Inc. v. Sioux City* ........................................................................... 29
  305 F. Supp. 2d 1022 (N.D. Iowa 2004)

*Dodge v. Evergreen Sch. Dist. #114* .............................................................. 23, 25, 26
  56 F.4th 767 (9th Cir. 2022)

# TABLE OF AUTHORITIES

**Cases**

*Does 1-11 v. Bd. of Regents of Univ. of Colorado* ..................................................... 14
    __ F.4th __, No. 21-1414, 2024 WL 2012317 (10th Cir. May 7, 2024)

*EEOC v. Hacienda Hotel* ........................................................................................ 11
    881 F.2d 1504 (9th Cir. 1989)

*Eng v. Cooley* ...................................................................................... 22, 23, 27
    552 F.3d 1062 (9th Cir. 2009)

*Enyart v. Nat'l Conf. of Bar Exam'rs, Inc.* .............................................................. 29
    630 F.3d 1153 (9th Cir. 2011)

*Fellowship of Christian Athletes v.*
    *San Jose Unified Sch. Dist. Bd. of Educ.* .................................................. *passim*
    82 F.4th 664 (9th Cir. 2023)

*Garcetti v. Ceballos* .............................................................................................. 24
    547 U.S. 410 (2006)

*Ghiotto v. City of San Diego* ................................................................................. 24
    No. D055029, 2010 WL 4018644 (Cal. Ct. App. Oct. 14, 2010)

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal* ................................ 14
    546 U.S. 418 (2006)

*Green v. Miss United States of Am. LLC* ................................................................. 25
    52 F.4th 773 (9th Cir. 2022)

*Groff v. DeJoy* .......................................................................................... 17, 18, 19
    600 U.S. 447 (2023)

*Hanover v. Northrup* ............................................................................................... 9
    325 F. Supp. 170 (D. Conn. 1970)

*Heller v. EBB Auto Co.* ......................................................................................... 15
    8 F.3d 1433 (9th Cir. 1993)

*Iancu v. Brunetti* ................................................................................................... 27
    588 U.S. 388 (2019)

*Janus v. AFSCME, Council 31* ....................................................................... 24, 25
    585 U.S. 878 (2018)

*Jorgensen v. Cassiday* ........................................................................................... 29
    320 F.3d 906 (9th Cir. 2003)

4

# TABLE OF AUTHORITIES

**Cases**

*Keene v. City & Cnty. of San Francisco* ........................................................ 15, 27, 28
    No. 22-16567, 2023 WL 3451687 (9th Cir. May 15, 2023)

*Kennedy v. Bremerton Sch. Dist.* ........................................................ 20, 23, 24, 26
    597 U.S. 507 (2022)

*Masterpiece Cakeshop, Ltd. v. Colorado C. R. Comm'n* ................................... 19, 20
    584 U.S. 617 (2018)

*McGinnis v. U.S. Postal Serv.* ............................................................................ 19
    512 F. Supp. 517 (N.D. Cal. 1980)

*Melzer v. Bd. of Educ. of City Sch. Dist. of City of New York* ................................ 26
    336 F.3d 185 (2d Cir. 2003)

*Meriwether v. Hartop* ................................................................................ 21, 23
    992 F.3d 492 (6th Cir. 2021)

*Mirabelli v. Olson* ............................................................................................. 27
    No. 3:23-cv-768, 2023 WL 5976992 (S.D. Cal. Sept. 14, 2023)

*Montgomery v. Bd. of Ret.* ........................................................................... 19, 20
    33 Cal. App. 3d 447 (1973)

*Muldrow v. City of St. Louis* ............................................................................ 16
    144 S. Ct. 967 (2024)

*Nat'l Fed'n of Indep. Bus. v. Dep't of Lab.* ........................................................ 28
    595 U.S. 109 (2022)

*Nken v. Holder* ................................................................................................. 28
    556 U.S. 418 (2009)

*Opuku-Boateng v. California* ............................................................................ 15
    95 F.3d 1461 (9th Cir. 1996)

*People v. Woody* ............................................................................................... 20
    61 Cal. 2d 716 (1964)

*Philbrook v. Ansonia Bd. of Educ.* ..................................................................... 15
    757 F.2d 476 (2d Cir. 1985)

*Pickering v. Board of Education* ........................................................................ 22
    391 U.S. 563 (1968)

5

MEMO. OF POINTS & AUTHORITIES ISO
PLAINTIFF'S EX PARTE APPL. FOR A TRO & OSC RE: PRELIM. INJ.

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*Publius v. Boyer-Vine* ............................................................................. 12

4
   321 F.R.D. 358 (E.D. Cal. 2017)

*Riley v. Bendix Corp.* ............................................................................. 15

5
   464 F.2d 1113 (5th Cir. 1972)

6

*Riley's Am. Heritage Farms v. Elsasser* ............................................... 23, 26

7
   32 F.4th 707 (9th Cir. 2022)

8

*Rodriguez v. Maricopa Cnty. Cmty. Coll. Dist.* ......................................... 26

9
   605 F.3d 703 (9th Cir. 2010)

*Roman Cath. Diocese of Brooklyn v. Cuomo* ............................................ 27

10
   592 U.S. 14 (2020)

11

*Russo v. Cent. Sch. Dist. No. 1* ............................................................ 9, 24

12
   469 F.2d 623 (2d Cir. 1972)

13

*Sambrano v. United Airlines, Inc.* ........................................................... 27

14
   No. 21-11159, 2022 WL 486610 (5th Cir. Feb. 17, 2022)

*Save Our Sonoran, Inc. v. Flowers* .......................................................... 29

15
   408 F.3d 1113 (9th Cir. 2005)

16

*Settlegoode v. Portland Pub. Sch.* ........................................................... 20

17
   371 F.3d 503 (9th Cir. 2004)

18

*Shelton v. Tucker* ................................................................................... 24

19
   364 U.S. 479 (1960)

20

*State v. Lundquist* ..................................................................................... 9

   262 Md. 534 (1971)

21

*Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.* .................... 13

22
   240 F.3d 832 (9th Cir. 2001).

23

*Tandon v. Newsom* ............................................................................. 20, 22

24
   593 U.S. 61 (2021)

25

*Thomas v. Review Bd. of Indiana.* ............................................ 9 15, 19, 20

   450 U.S. 707 (1981)

26

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.* ........................................ 26

27
   393 U.S. 503 (1969)

28

6

# TABLE OF AUTHORITIES

**Cases**

*Trans World Airlines, Inc. v. Hardison* ................................................................. 18
   432 U.S. 63 (1977)

*United States v. Ward* ................................................................................. 15
   989 F.2d 1015 (9th Cir. 1992)

*Valov v. Dep't of Motor Vehicles* ............................................................. 20, 21
   132 Cal. App. 4th 1113 (2005)

*Vernon v. City of Los Angeles* .................................................................. 20, 21
   27 F.3d 1385 (9th Cir. 1994)

*Vlaming v. W. Point Sch. Bd.* ......................................................................... 24
   895 S.E.2d 705 (Va. 2023)

*W. Virginia State Bd. of Educ. v. Barnette* ...................................................... 9
   319 U.S. 624 (1943)

*Waln v. Dysart Sch. Dist.* ............................................................................... 21
   54 F.4th 1152 (9th Cir. 2022)

*Weiman v. Updegraff* ...................................................................................... 24
   344 U.S. 183 (1952)

*Winter v. Natural Res. Def. Council* .............................................................. 14
   555 U.S. 7 (2008)

**Statutes & Rules**

42 U.S.C. §§ 2000e(j) ...................................................................................... 14

42 U.S.C. §§ 2000e-2(a)(1) ............................................................................. 14

Cal. Gov. Code § 12940(a) ........................................................................ 14, 15

Cal. Gov. Code § 12940(l) .......................................................................... 14, 15

Fed. R. Civ. P. 65(c) ........................................................................................ 29

**Constitutional Provisions**

Cal. Const. art. I, § 4 ...................................................................................... 19

U.S. Const. amend. I ........................................................................................ 19

7

MEMO. OF POINTS & AUTHORITIES ISO
PLAINTIFF'S EX PARTE APPL. FOR A TRO & OSC RE: PRELIM. INJ.

# INTRODUCTION

Plaintiff Captain Jeffrey Little has served as a lifeguard with the Los Angeles County Fire Department: Lifeguard Division—the largest professional lifeguard service in the world—for over 22 years. Verif. Compl., ¶¶15-17. In those 22 years, his work performance and reputation have been exemplary, and he has risen through the ranks to eventually become a Captain. Compl., ¶¶3, 24. But everything changed in February 2023. In that month, the city council of Huntington Beach voted to amend its Municipal Code to allow only governmental flags to fly at city properties. The vote was a decision to stop flying a Rainbow Pride Flag at city properties, and was later affirmed via an amendment to the City Charter approved by 58% of Huntington Beach voters.[1]

In response, in March 2023, the Los Angeles County Board of Supervisors voted to "Direct the Chief Executive Officer to work with all County Departments to explore ways the Progress Pride Flag can be flown at all county facilities." Compl., ¶17 & Ex.A. As stated in that resolution, because "the City of Huntington Beach … will now only allow city, state and national flags to regularly be flown at City Hall," Los Angeles County would now fly the Progress Pride Flag to "show LA County's support for LGBTQ+ communities." *Id.*

The Los Angeles County resolution, however, put Captain Little in a bind. As a result of the resolution, he was ordered to directly raise the Progress Pride Flag at his lifeguard stations. *See* Compl., ¶¶19-21 & Exs.B-C. This he cannot do. Captain Little is a devout Christian who objects to the ideas and views that the Progress Pride Flag represents. Compl., ¶¶24-29. He does not object to the County or Fire Department doing what they will, but he cannot be *personally responsible* for raising the Progress Pride Flag. Compl., ¶30. So he requested a religious accommodation. The Fire Department initially granted the request, but quickly reversed itself, and

---

[1] Angelina Hicks, *Primary Election Night Results*, Voice of OC (Mar. 5, 2024), https://bit.ly/3R3SAMv.

then subjected Captain Little to hostile retaliation, pretextual investigations, and a death threat. Compl., ¶¶31-48 & Exs.D-O. These actions violated Captain Little's statutory employment rights and constitutional rights.

Arising in the context of teachers leading students in recitation of the Pledge of Allegiance, for fifty years, courts have upheld the rule that the government cannot force its citizens, as a condition of public employment, to salute the American Flag. *Russo v. Cent. Sch. Dist. No. 1*, 469 F.2d 623, 633-34 (2d Cir. 1972); *State v. Lundquist*, 262 Md. 534, 554 (1971); *Hanover v. Northrup*, 325 F. Supp. 170, 173 (D. Conn. 1970). The reason is simple. The government cannot "force an individual to 'utter what is not in [her] mind' *about a question of political and religious significance*." *303 Creative LLC v. Elenis*, 600 U.S. 570, 596 (2023) (emphasis added) (quoting *W. Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 634 (1943)).

After the debacle of last year's Pride Month (June 2023), in April and May 2024, Captain Little attempted to renew his request for a religious accommodation, but received no relief. *See* Compl., ¶¶55-63 & Exs.P-S. Thus, being forced to seek judicial relief in advance of this year's Pride Month (June 2024), Captain Little seeks a narrow temporary restraining order and OSC re: preliminary injunction precluding the County of Los Angeles Fire Department from taking any adverse action against him for his refusal to personally participate in the raising of the Progress Pride Flag.

## FACTUAL & PROCEDURAL BACKGROUND

### A. The County decides to fly the Progress Pride Flag at all County facilities during Pride Month.

Defendant Los Angeles County Fire Department provides firefighting and emergency medical services for over 4 million residents across 60 cities and all unincorporated areas of Los Angeles County. Its Lifeguard Division is the largest professional lifeguard service in the world. In 2021, the Lifeguard Division watched

over 51 million beach attendees, and made over 9,000 ocean rescues. Compl., ¶¶15-16; Jonna Decl., Ex.V.

Plaintiff Captain Little has been a proud Los Angeles County lifeguard, saving countless lives over the course of 22 years. But, on March 7, 2023, the Board of Supervisors of Los Angeles County passed a motion titled *Raising the Progress Pride Flag at Los Angeles County Facilities*. By that motion, the Board "Direct[ed] the Chief Executive Officer to work with all County Departments to explore ways the Progress Pride Flag can be flown at all county facilities." Compl., ¶¶17-18 & Ex.A. In implementation of the motion, on May 25, 2023, the Fire Department issued a memorandum (EA-231) stating that the Progress Pride Flag will be flown at all lifeguard stations, and that Captains must "[e]nsure flags are received and flown throughout the month of June." Compl., ¶19 & Ex.B. In practice, not all lifeguard properties have either flag poles or adequate flag clasps, so the Fire Department also provided a flow chart to explain when the Progress Pride Flag must be flown, and when it would not need to be flown. Compl., ¶20 & Ex.C.

**B.**     **Captain Little requests a religious accommodation, which is granted and then revoked, and for which he receives angry retaliation.**

The Progress Pride Flag is a specific version of the Rainbow Pride Flag. Compl., ¶¶25-28. All versions of a Rainbow Pride Flag, however, represent ideas that Captain Little cannot espouse. Captain Little is an evangelical Christian with beliefs on marriage, family, sexual behavior and identity that align with the traditional and orthodox biblical-social teachings. *See* Compl., ¶¶24, 28-29 (citing Bible verses).

On June 18, 2023, Captain Little requested a religious accommodation exempting him from "adhering to EA-231." Later that day, he had an interactive process meeting (IPM) with a human resources officer. The next day, the Fire Department granted his request. Specifically, the Department agreed: (1) to move Captain Little to a site not flying the Progress Pride Flag (Dockweiler Area, North

10

MEMO. OF POINTS & AUTHORITIES ISO
PLAINTIFF'S EX PARTE APPL. FOR A TRO & OSC RE: PRELIM. INJ.

and South, and El Segundo Lifeguard stations); (2) that he need not ever raise the Progress Pride Flag; and (3) that he need not ensure raising of the Progress Pride Flag. However, on June 21, 2023, before Captain Little's shift, Section Chief Arthur Lester visited the Dockweiler Area and added additional flag clasps to the flagpoles so that they could fly the Progress Pride Flag. Section Chief Lester then ordered the lifeguards at each subarea to raise Progress Pride Flags. Compl., ¶¶31-34 & Ex.D.

When Captain Little arrived on site for his shift on June 21, 2023, he saw the Progress Pride Flag flying and lowered it—in accordance with his religious accommodation. But later that day, the Fire Department informed him that his accommodation had been revoked. Further, Section Chief Lester, in an aggressive and abusive tone, ordered Captain Little to re-raise the Progress Pride Flag. At the end of that day, Assistant Lifeguard Chief Adam Uehara confirmed the revocation of the accommodation and informed Captain Little that he could not use his accrued paid leave time to avoid violating his religious beliefs. Compl., ¶¶35-38.

The next day, June 22, 2023, Lifeguard Division Chief Fernando Boiteux issued a written Direct Order to Captain Little to fly the Progress Pride Flag and ensure that the Progress Pride Flag is flown as instructed in EA-231. When Chief Boiteux hand-delivered the Direct Order, he told Captain Little that "You need to stop what you are doing," "You are an LA County employee; that's the only thing that matters," and "Your religious beliefs do not matter; you are an LA County employee." Lifeguard Chief Boiteux is 6'4" tall and weighs 220 pounds and is trained in martial arts. He delivered his message to Captain Little in a violent and angry manner while standing over Captain Little—who is only 5'9" tall and weighs 150 pounds. Compl., ¶¶39-40 & Ex.E.

### C.   Captain Little files a religious discrimination complaint with the Fire Department, and is retaliated against.

On June 22, 2023, Captain Little filed a County Policy of Equity ("CPOE") administrative complaint with the Fire Department for religious discrimination and

harassment. As stated by Captain Little in that complaint, "I felt like I was being targeted or entrapped by Chief Lester and my religious beliefs were not being taken seriously," and "I believe that the actions by Chief Lester are retaliatory in nature." Compl., ¶41 & Exs.F-G. On that same day, Chief Boiteux informed Captain Little that he was the subject of an internal investigation for lowering the Progress Pride Flag during his shift the day prior, and hand-delivered to him a "Notice of Instruction," which stated that: "All Department employees, *irrespective of personal beliefs*, are expected to comply with EA-231, which includes raising the flag as instructed." Compl., ¶¶42 & Exs.H-I.

In addition, Captain Little's request for a religious accommodation was somehow leaked—in violation of his right to privacy. *See Publius v. Boyer-Vine*, 321 F.R.D. 358, 363 (E.D. Cal. 2017) (discussing "the private and sensitive nature of religious beliefs"). This led, on June 23, 2023, to Captain Little being suspended from a prestigious role, with significant overtime pay, to retaliatory and pretextual complaints being filed against him, and a death threat being mailed to his house. That death threat said: "Jeff F*** you and your Jesus. Your hate won't be tolerated. We know where you live and work. You better pay respect to our pride flag or we will f*** you up. We know about your cute little girls and aren't afraid to rape the s*** out of them if you don't honor us. You are a fascist pig and deserve to die." Compl., ¶44 & Exs.J-L.

Despite adding these matters to his complaint, Captain Little's complaint was eventually closed on the basis that, per the County's Employment Relations Division, nothing of which he had complained violated the CPOE. The Department refused to take any actions to protect him from previous and future religious discrimination, harassment, and retaliation. Compl., ¶¶45-46 & Ex.M. Instead, on February 7, 2024, the Fire Department notified Captain Little that he had violated the CPOE and that administrative action might follow. Compl., ¶¶47-48 & Exs.N-O.

///

### D.   Pre-litigation attempts at resolution.

On March 15, 2024, a County employee emailed Captain Little about the complaint that he had filed against the Fire Department and requested an opportunity to interview him. Compl., ¶55 & Ex.P. Captain Little's undersigned counsel then responded to that employee with a letter, stating that Captain Little had filed charges with the Equal Employment Opportunity Commission ("EEOC") and California Civil Rights Department ("CRD") and was planning to seek relief in court before June 2024. The letter asked for the employee to forward it to the County's legal counsel for further discussion going forward. When no response was received a month later, undersigned counsel sent a second letter—which was also ignored. Compl., ¶¶56-59 & Exs.Q-R.

On May 8, 2024, Captain Little then emailed a human resources officer with the Fire Department. He asked to renew that accommodation request for this year (even though it had been denied last year), and he asked for a response no later than Friday, May 17, 2024. Compl., ¶¶60-61 & Ex.S. When no response was received by May 17, counsel prepared the underlying lawsuit and planned to file it on Friday, May 24, 2024. The Complaint and ex parte application for a temporary restraining order will be served on the Fire Department and County Counsel. Jonna Decl., ¶¶2-10. Captain Little now seeks preliminary injunctive relief to protect his statutory employment rights and constitutional rights.

### LEGAL STANDARD

The standards for issuing a temporary restraining order and a preliminary injunction are the same. *See, e.g., Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A plaintiff must establish (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm without injunctive relief, (3) that the balance of harms tips in his favor, and (4) that a preliminary injunction is in the public interest. *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 683-84 (9th Cir. 2023)

13

MEMO. OF POINTS & AUTHORITIES ISO
PLAINTIFF'S EX PARTE APPL. FOR A TRO & OSC RE: PRELIM. INJ.

("*FCA*") (en banc) (citing *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008)). The Ninth Circuit applies a "sliding scale" approach such that "[w]hen the balance of equities tips sharply in the plaintiff's favor, the plaintiff must raise only serious questions on the merits—a lesser showing than likelihood of success." *Id*. (cleaned up).

## ARGUMENT

### I.  Plaintiff Little Is Likely to Succeed on the Merits.

"When evaluating likelihood of success on the merits, … [i]f the moving party is likely to succeed on each of several theories, the party's argument for preliminary relief is stronger than if the party has only one claim that is likely to be viable." *Does 1-11 v. Bd. of Regents of Univ. of Colorado*, __ F.4th __, No. 21-1414, 2024 WL 2012317, at *11 (10th Cir. May 7, 2024). Thus, the court may "consider all of a moving party's potential paths to success on the merits." *Id*.; *cf. FCA*, 82 F.4th at 686 (addressing "all three" arguments). In evaluating likelihood of success on the merits, "the burdens at the preliminary injunction stage track the burdens at trial." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006) (statutory protection for religion).

Here, Captain Little's Complaint raises five employment claims under both Title VII and FEHA, and four constitutional claims for violation of the rights to Freedom of Speech and Free Exercise of Religion. For purposes of this ex parte application, Captain Little groups these claims into: (1) Failure to Accommodate; (2) Free Exercise of Religion; and (3) Freedom of Speech.

### A.  Captain Little is likely to succeed on his religious discrimination claim for failure to accommodate under Title VII and FEHA.

#### 1.  *Captain Little can establish his prima facie claim.*

Both Title VII and FEHA prohibit an employer from discriminating against an employee by failing to reasonably accommodate the employee's religious practices or observances. 42 U.S.C. §§2000e(j), 2000e-2(a)(1); Cal. Gov. Code

§12940(a), (l).[2] In other words, it is "unlawful for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees and prospective employees." *Opuku-Boateng v. California*, 95 F.3d 1461, 1467 (9th Cir. 1996) (cleaned up).

To establish a prima facie claim for failure to accommodate, a plaintiff must present evidence that: "(1) [he] had a bona fide religious belief, the practice of which conflicted with an employment duty; (2) [he] informed [his] employer of the belief and conflict; and (3) the employer threatened [him] with or subjected [him] to discriminatory treatment, including discharge, because of [his] inability to fulfill the job requirements." *Heller v. EBB Auto Co.*, 8 F.3d 1433, 1438 (9th Cir. 1993).

Religious beliefs need only be sincerely held. They do not need to be understandable to others, recognized by any organization, or articulable in a way the employer accepts. *Thomas v. Review Bd. of Indiana*, 450 U.S. 707, 714 (1981) ("religious beliefs need not be acceptable, logical, consistent, or comprehensible to others").[3] Religious beliefs are broadly understood to include a person's "moral, ethical, or religious beliefs about what is right and wrong." *United States v. Ward*, 989 F.2d 1015, 1018 (9th Cir. 1992). As such, "a coincidence of religious and secular claims in no way extinguishes the weight appropriately accorded the religious one." *Callahan v. Woods*, 658 F.2d 679, 684 (9th Cir. 1981).

With respect to threatened or actual adverse action, "[t]o make out a Title VII discrimination claim, [an employee] must show some harm respecting an identifiable term or condition of employment. What the transferee does not have to

---

[2] *See Keene v. City & Cnty. of San Francisco*, No. 22-16567, 2023 WL 3451687, at *1 (9th Cir. May 15, 2023) (FEHA and Title VII use the same framework).

[3] *Riley v. Bendix Corp.*, 464 F.2d 1113, 1116-17 (5th Cir. 1972) (Title VII's legislative history shows that it was "intended to protect the same rights in private employment as the Constitution protects"); *Philbrook v. Ansonia Bd. of Educ.*, 757 F.2d 476, 481-88 (2d Cir. 1985) (courts use same standard for religious sincerity under Title VII as in free exercise cases).

1  show, according to the relevant text, is that the harm incurred was 'significant.'"
2  *Muldrow v. City of St. Louis*, 144 S. Ct. 967, 974 (2024); *see also Dahlia v.*
3  *Rodriguez*, 735 F.3d 1060, 1078 (9th Cir. 2013) ("[P]lacement on administrative
4  leave can constitute an adverse employment action.").

5  Here, the Verified Complaint and the materials attached to it establish Captain
6  Little's prima facie case. As mentioned above, Captain Little is an evangelical
7  Christian with religious beliefs on marriage, family, sexual behavior and identity that
8  align with traditional biblical-social teachings on those topics. Those religious beliefs
9  preclude Captain Little from raising the Progress Pride Flag. *See* Compl., ¶¶3, 10,
10 24-30. On June 19, 2023, the Fire Department acknowledged that Captain Little's
11 religious beliefs were sincerely held and initially granted his accommodation request.
12 *See* Compl., ¶¶31-32.

13 Next, to make out a prima facie claim, there must be a conflict between the
14 work requirement at issue and the bona fide, sincerely held religious belief (and
15 related religious practice) of the employee. The work requirement here as expressed
16 by EA-231 and the Direct Order is that Captain Little must raise the Progress Pride
17 Flag at any station to which he may be assigned. As explained by Chief Boiteux,
18 Captain Little's religious beliefs on the issue simply "don't matter" and, more
19 specifically, being a Los Angeles County employee means prioritizing County-
20 dictated beliefs and values over and against the religious beliefs and values of the
21 employee in the event of conflict between the two. *See* Compl., ¶¶34-39 & Ex.E. The
22 sum and substance of Captain Little's religious beliefs, and the conflict with these
23 beliefs that would arise as a result of the Fire Department's demand for compliance
24 with the work requirements of EA-231, were also communicated clearly to the
25 Department during the interactive process. *See* Compl., ¶¶31, 60 & Exs.D, S.

26 Finally, for reasons that are as unclear as they are unsupportable, the
27 Department initially granted but then revoked Captain Little's accommodation and
28 then illegally refused to further engage in the interactive process. *See* Compl., ¶¶35-

37. Both actions by Defendants violated Title VII. *EEOC v. Hacienda Hotel*, 881 F.2d 1504, 1513 (9th Cir. 1989) ("at a minimum, the employer was required to negotiate with the employee in an effort reasonably to accommodate [their] religious beliefs."), *overruled on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998). The revocation of Captain Little's request for a religious accommodation also directly led to discriminatory and retaliatory treatment by the Fire Department, including removal from a desirable position, pretextual investigations, a death threat, verbal abuse and physical intimidation, and the threat of discipline and eventual termination. *See* Compl., ¶44. This satisfies Captain Little's prima facie case.

### 2. *The Fire Department cannot establish the undue hardship defense.*

Once the plaintiff has made out his prima facie case, the burden shifts to the employer to show that it could not have reasonably accommodated the plaintiff's religious beliefs without undue hardship. *Groff v. DeJoy*, 600 U.S. 447, 468 (2023). To establish the defense of "undue hardship," the Fire Department must demonstrate that any of the accommodations proposed by Plaintiff Little would impose a burden that is "substantial in the overall context of an employer's business." *Id*.

In *Groff v. DeJoy*, the U.S. Supreme Court clarified what constitutes an "undue hardship" under Title VII in a manner that helps illustrate the lack of an undue hardship here. There, Mr. Gerald Groff, an Evangelical Christian, believed that Sunday should be devoted to worship and rest for religious reasons. He worked as a mail delivery employee with the United States Postal Service (USPS). Initially, his position did not involve Sunday work, but when USPS began facilitating Sunday deliveries for Amazon, Groff's schedule changed. *Id*. at 454. To avoid Sunday work, Groff transferred to a rural USPS station that did not make Sunday deliveries. However, when Amazon deliveries started at that station too, Groff remained unwilling to work Sundays. USPS redistributed Groff's Sunday deliveries to other staff, and he faced "progressive discipline" for not working on Sundays. Eventually, he resigned and sued under Title VII, asserting that USPS could have accommodated

1  his Sunday Sabbath practice *without undue hardship* on its business. *Id*. at 455.

2  The Supreme Court ultimately held that Title VII requires an employer

3  denying a religious accommodation to demonstrate that the burden of granting the

4  accommodation would result in *substantial increased costs* relative to the conduct of

5  its specific business. *Id*. at 468. In so deciding, the Court rejected various lower

6  courts' interpretation of *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1977),

7  which had set a *de minimis* cost standard for religious accommodations. Thus, as a

8  result of *Groff*, employers cannot rely on minor inconveniences or minimal costs to

9  deny religious accommodations.

10  As for the factors that count toward a determination of undue hardship, the

11  Supreme Court clarified that "[w]hat matters more than a favored synonym for

12  'undue hardship' (which is the actual text) is that courts must apply the test in a

13  manner that takes into account all relevant factors in the case at hand, including the

14  particular accommodations at issue and their practical impact in light of the nature,

15  'size and operating cost of [an] employer.'" *Groff*, 600 U.S. at 470-71 (citation

16  omitted). As *Groff* makes clear, the number of employees employed by the defendant

17  and its annual budget are both key factors in determining whether a specific religious

18  accommodation request would genuinely result in substantially increased costs. *Id*.

19  The Supreme Court further clarified that co-worker hostility cannot factor at

20  all into a finding of undue hardship. "[A] coworker's dislike of 'religious practice

21  and expression in the workplace' or 'the mere fact [of] an accommodation' is not

22  'cognizable to factor into the undue hardship inquiry.'" *Id.* at 472. "An employer

23  who fails to provide an accommodation has a defense only if the hardship is 'undue,'

24  and a hardship that is attributable to employee animosity to a particular religion, to

25  religion in general, or to the very notion of accommodating religious practice cannot

26  be considered 'undue.'" *Id*. Indeed, "[i]f bias or hostility to a religious practice or a

27  religious accommodation provided a defense to a reasonable accommodation claim,

28  Title VII would be at war with itself. *Id*.

As applied here, the Fire Department cannot possibly demonstrate an undue hardship to its provision of Lifeguard Services. *See McGinnis v. U.S. Postal Serv.*, 512 F. Supp. 517, 523-24 (N.D. Cal. 1980) (granting preliminary injunction because government failed to meet its burden of demonstrating undue hardship). In light of Chief Boiteux's overbearing insistence that Captain Little's sincerely held religious beliefs simply "do not matter," *see* Compl., ¶39, religious animus is clearly present at the County and the Fire Department. *Masterpiece Cakeshop, Ltd. v. Colorado C. R. Comm'n*, 584 U.S. 617, 634 (2018) (governmental animus shown by espousing "the view that religious beliefs cannot legitimately be carried into the public sphere"); *accord FCA*, 82 F.4th at 690. But, in light of *Groff,* such animus is an improper basis for asserting an undue hardship to support denial of Captain Little's request for a religious accommodation.

Moreover, granting Captain Little's requested religious accommodation could not possibly impose an undue economic hardship on the Fire Department. It is one of the largest Fire Department's in the nation with a budget of $1.4 billion, and has the largest Lifeguard service in the world—with over 174 full-time lifeguards and 614 recurrent lifeguards. Compl., ¶¶15-16; Jonna Decl., Ex.V. The Fire Department has many employees it already pays who could—at no or low additional cost to the Department—substitute for Captain Little in performance of any Progress Pride Flag-related duties in June. It should be fairly simple and inexpensive relative to the Department's size and resources to make basic rearrangements of shifts and schedules in June. Compl., ¶33.

**B.     Captain Little is likely to succeed on his constitutional Free Exercise of Religion claims.**

Both the U.S. Constitution and the California Constitution include protections for the free exercise of religion. U.S. Const. amend. I; Cal. Const. art. I, §4. For both, the initial requirement is that the government regulation burden a sincerely held religious belief. *Thomas*, 450 U.S. at 714; *Montgomery v. Bd. of Ret.*,

33 Cal. App. 3d 447, 451 (1973).

If so, for the California Constitution, the next immediate inquiry is whether the government regulation satisfies strict scrutiny. *Valov v. Dep't of Motor Vehicles*, 132 Cal. App. 4th 1113, 1126 & n.7 (2005); *Vernon v. City of Los Angeles*, 27 F.3d 1385, 1392-93 (9th Cir. 1994). Thus, under the California Constitution, there is a simple, "two-fold analysis which calls for a determination of, first, whether the application of the statute imposes any burden upon the free exercise of the defendant's religion, and second, if it does, whether some compelling state interest justifies the infringement." *Montgomery*, 33 Cal. App. 3d at 451 (quoting *People v. Woody*, 61 Cal. 2d 716, 719 (1964)).

For the U.S. Constitution, in contrast, "Supreme Court authority sets forth three bedrock requirements of the Free Exercise Clause that the government may not transgress." *FCA*, 82 F.4th at 686 (en banc). However, only two of those three principles are relevant here. First, "the government may not 'treat ... comparable secular activity more favorably than religious exercise.'" *Id.* (quoting *Tandon v. Newsom*, 593 U.S. 61, 62 (2021)). If so, the government action must satisfy strict scrutiny. *Id.* Second, "the government may not act in a manner 'hostile to ... religious beliefs' or inconsistent with the Free Exercise Clause's bar on even 'subtle departures from neutrality.'" *Id.* (quoting *Masterpiece Cakeshop*, 584 U.S. at 638; *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 534 (1993)). If the government so acts, its action must be "set aside" "without further inquiry." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 525 n.1 (2022).

Here, the burden on Captain Little's religious beliefs is plain. *See Thomas*, 450 U.S. at 717-19 (losing job is severe burden). Moreover, the manner with which his prior statutory religious accommodation was revoked is highly indicative of religious hostility. As stated in the Verified Complaint, the Fire Department granted Captain Little a religious accommodation on June 19, 2023. However, on June 21, the Fire Department revoked that accommodation and Section Chief Lester ordered

1  Captain Little to raise the Progress Pride Flag using an abusive, harassing, and
2  discriminatory tone and demeanor. Compl., ¶36.

3      At the end of the day, Assistant Lifeguard Chief Uehara further told Captain
4  Little that he could not use in June his accrued paid leave time to avoid the
5  religious conflict. And the next day, Lifeguard Division Chief Boiteux handed
6  Captain Little a written Direct Order to raise the Progress Pride Flag, while
7  physically intimidating him and verbally berating him. As stated by Chief Boiteux,
8  Captain Little's religious beliefs "do not matter." Compl., ¶¶38-39 & Ex.E. This
9  religious hostility requires setting aside EA-231 as applied to Captain Little without
10 further inquiry. *See FCA*, 82 F.4th at 692 (hostility shown when "Students were
11 told—in front of their peers—that the views embodied in their Statement of Faith
12 were objectionable and hurtful and had no rightful place on campus."); *Meriwether*
13 *v. Hartop*, 992 F.3d 492, 513 (6th Cir. 2021) (hostility shown through interruptions,
14 interference, laughter; generally hostile demeanor).

15     In any event, the Fire Department's burden on Captain Little's free exercise
16 of religion must at least satisfy strict scrutiny. This is necessarily required with
17 respect to the California Constitution. *Valov*, 132 Cal. App. 4th at 1126 & n.7;
18 *Vernon*, 27 F.3d at 1392-93. And it is required by the U.S. Constitution because
19 there are numerous comparable exceptions. Here, the purpose of flying the Progress
20 Pride Flag is to "show LA County's support for LGBTQ+ communities." Compl.,
21 ¶17 & Ex.A; *Waln v. Dysart Sch. Dist.*, 54 F.4th 1152, 1159 (9th Cir. 2022)
22 ("whether two activities are comparable for purposes of the Free Exercise Clause
23 must be judged against the asserted government interest that justifies the regulation
24 at issue.").

25     Yet, not every facility operated by the Fire Department is required to fly the
26 Progress Pride Flag and not every employee is required to raise or lower it. If the
27 location does not have any flagpole, it does not have to fly the Progress Pride Flag,
28 and if the location has only one flagpole with one flag clasp, then it does not have

to fly the Progress Pride Flag. Compl., ¶¶19-20 & Ex.C. Only a small number of Fire Department employees are actually required to raise and lower the Progress Pride Flags—Captains and Site Supervisors. Compl., ¶¶19, 21 & Ex.B. All of these comparable exceptions trigger strict scrutiny with respect to the Fire Department's refusal to grant an exception to Captain Little. *See Tandon*, 593 U.S. at 62 ("government regulations are not neutral and generally applicable, and therefore trigger strict scrutiny under the Free Exercise Clause, whenever they treat any comparable secular activity more favorably than religious exercise"). Further, because of these comparable exceptions, the Fire Department necessarily cannot show that denying Captain Little an exception is absolutely necessary to achieve a compelling government interest. *See id.* at 63.

## C. Captain Little is likely to succeed on his constitutional Freedom of Speech claim.

In light of the Free Speech clause, "a state cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." *Connick v. Myers*, 461 U.S. 138, 142 (1983). Under this rule, the court must "arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968). In making this determination, the Ninth Circuit reviews five questions which merge First Amendment and employment law analyses. *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009).

In this context, however, only the First Amendment questions are relevant.[4] Those Questions Nos. 1, 2, and 4 are: "(1) whether the plaintiff spoke on a matter of

---

[4] The employment law Questions Nos. 3 and 5 are only relevant after the government takes adverse action against an employee. Here, because Plaintiff Little seeks injunctive relief to avoid adverse action, these questions are not relevant.

public concern; (2) whether the plaintiff spoke as a private citizen or public employee; [and] (4) whether the state had an adequate justification for treating the employee differently from other members of the general public." *Eng*, 552 F.3d at 1070; *accord Dodge v. Evergreen Sch. Dist. #114*, 56 F.4th 767, 776 (9th Cir. 2022). It is the plaintiff's burden to establish the first two questions in their favor, and the defendant's burden as to the last question. *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 721 (9th Cir. 2022).

*First*, "[s]peech addresses an issue of public concern when it can 'be fairly considered as relating to any matter of political, social, or other concern to the community,' or when it 'is a subject of legitimate news interest.'" *Dodge*, 56 F.4th at 777 (some quotations omitted). Thus, the first *Eng* question is whether the "content" of the speech is a matter of public concern. *Id*. Here, issues of sexual orientation and gender identity obviously are. *See Riley's*, 32 F.4th at 723 (school district's cancelling of field trips based on farm owner's tweets about gender identity issues in high schools was retaliation for speaking on a matter of public concern); *Dodge*, 56 F.4th at 777 (wearing MAGA hat is commenting on a matter of public concern).

Importantly, the employee need not be explicitly advocating a viewpoint through his speech. For example, in *Kennedy*, the Supreme Court held that Coach Kennedy's private prayer was speech implicating a matter of public concern even though he was privately praying by himself. 597 U.S. at 528. And in *Meriwether*, the refusal to use preferred pronouns was found to satisfy the first *Eng* question because the issue is whether the "speech relates" in any way to a "topic" being debated. 992 F.3d at 508-09. Here, the Progress Pride Flag self-evidently has a clear meaning and comments on matters of public concern.

*Second*, Captain Little's raising of the Progress Pride Flag is not speech performed pursuant to his official duties—and indeed, for this analysis, *cannot* be speech performed pursuant to his official duties. Under this analysis, "[t]he proper

inquiry is a practical one," such that "the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes." *Garcetti v. Ceballos*, 547 U.S. 410, 425 (2006). The government may not "posit an excessively broad job description" and thereby "treat[] everything teachers and coaches say in the workplace as government speech subject to government control." *Kennedy*, 597 U.S. at 531. Thus, "[m]ath teachers must teach math, science teachers must teach science, history teachers must teach history, and so on. But none of them can be compelled into the service of controversial religious, political, or ideological causes." *Vlaming v. W. Point Sch. Bd.*, 895 S.E.2d 705, 739-40 (Va. 2023). Here, Plaintiff Little's job duties involve serving as a lifeguard—not affirming by word or deed ideological views that he does not espouse. *See* Compl., ¶¶15-17, 163 & Ex.T.

Further, when the government touches ideological "matter[s] of major significance," *Vlaming*, 895 S.E.2d at 740, it completely loses the ability to enforce compliance—even among employees. The First Amendment "freedom to think as you will," *303 Creative*, 600 U.S. at 584, prohibits the government from imposing a "blanket requirement" that all employees "mouth support for views they find objectionable." *Janus v. AFSCME, Council 31*, 585 U.S. 878, 892, 907 (2018). Thus, the government *cannot* require an employee, as a condition of employment, to join a government union, *Babb v. California Tchrs. Ass'n*, 378 F. Supp. 3d 857 (C.D. Cal. 2019) (citing *Janus*, 585 U.S. 878), or to recite the pledge of allegiance, *Russo*, 469 F.2d at 633-34, or to participate in a Pride Parade, *Ghiotto v. City of San Diego*, No. D055029, 2010 WL 4018644, at *1-4, 27-29 & n.28 (Cal. Ct. App. Oct. 14, 2010).[5] Here, the Progress Pride Flag has clear ideological meanings whose

---

[5] *See also, e.g., Weiman v. Updegraff*, 344 U.S. 183, 190-91 (1952) (government may not compel prospective employees to swear loyalty oaths as a condition of employment); *Shelton v. Tucker*, 364 U.S. 479, 489-90 (1960) (government may not

affirmation *cannot* be made a regular job duty of every government employee (or even *any* government employee hired for an executive/administrative departmental purpose—like policing, firefighting, lifeguarding, etc.—rather than for an expressive purpose, like public relations) over their objection.

**Lastly**, the final question is—in balancing the legitimate interests of the Fire Department *as employer* and Captain Little's First Amendment rights *as a citizen*— does the Fire Department have a sufficiently compelling interest to make restrictions on Captain Little's constitutional rights a condition of employment?

On the Fire Department's side, the inquiry is limited to a "*legitimate administrative interest.*" *See Dodge*, 56 F.4th at 781 (emphasis added). Thus, the Fire Department—like all employers—has an interest in preventing the disruption of its provision of service. *See id.* at 781-82. But it does *not* have an interest in enforcing ideological conformity among its employees. *Janus*, 585 U.S. at 908-09. Further, "[a]s compelling as the interest in preventing discriminatory conduct may be, speech is treated differently under the First Amendment." *Green v. Miss United States of Am., LLC*, 52 F.4th 773, 792 (9th Cir. 2022) (preventing discrimination not a valid basis for compelling speech).

The disruption analysis proceeds on a sliding scale: "The government's burden in proving disruption varies with the content of the speech. The more tightly the First Amendment embraces the speech the more vigorous a showing of disruption must be made." *Dodge*, 56 F.4th at 782. Under this analysis, "[s]peech is disruptive only when there is an *actual, material and substantial disruption*, or there are reasonable predictions of disruption in the workplace." *Id.* "Speech that outrages or upsets" but "without evidence of 'any actual injury' to … operations does not constitute a

---

compel teachers to disclose all of their recent associations in order to be hired at a public school).

disruption." *Id*. (quoting *Settlegoode v. Portland Pub. Sch.*, 371 F.3d 503, 514 & n.8 (9th Cir. 2004)).[6]

On Captain Little's side, "the First Amendment affords the broadest protection to political expression." *Dodge*, 56 F.4th at 782, Because "[p]olitical speech is the quintessential example of protected speech, and it is inherently controversial," the government must show more than "the disruption that necessarily accompanies controversial speech." *Id.* at 782-83. Indeed, for purposes of qualified immunity, many cases "clearly establish that disagreement with a disfavored political stance or controversial viewpoint, by itself, is not a valid reason to curtail expression of that viewpoint." *Id*. at 786-87 & n.6 (collecting cases).[7]

Here, as stated above, the purpose of flying the Progress Pride Flag is to "show LA County's support for LGBTQ+ communities." Compl., ¶17 & Ex.A. But

---

[6] With respect to "actual injury," "where hundreds of parents threatened to remove their children from school," due to "a public school teacher who was active in a pedophile association," the school district's legitimate interests in running a school could prevail over the teacher's right to freedom of association. *See Riley's*, 32 F.4th at 726-27 (citing *Melzer v. Bd. of Educ. of City Sch. Dist. of City of New York*, 336 F.3d 185, 199 (2d Cir. 2003)). But the focus must be on actual "substantial disruption" itself—not merely finding a viewpoint offensive—and that finding of actual disruption cannot be based on "rank speculation or bald allegation." *Id*. at 725-27 (a few complaints from parents was insufficient).

[7] *Accord, e.g., Kennedy*, 597 U.S. at 514 ("The Constitution and the best of our traditions counsel mutual respect and tolerance, not censorship and suppression," for "learning how to tolerate speech … of all kinds is part of learning how to live in a pluralistic society, a trait of character essential to a tolerant citizenry."); *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 508 (1969) ("Any word spoken … that deviates from the views of another person may start an argument or cause a disturbance. But our Constitution says we must take this risk"); *Rodriguez v. Maricopa Cnty. Cmty. Coll. Dist.*, 605 F.3d 703, 710 (9th Cir. 2010) (failure to reprimand professor who sent "racially charged" emails against Dia de la Raza and in favor of Columbus Day could not create hostile educational environment because "emails were pure speech; they were the effective equivalent of standing on a soap box in a campus quadrangle and speaking to all within earshot. Their offensive quality was based entirely on their meaning").

exempting Captain Little from raising the Progress Pride Flag—and having another employee do so—will not undermine this interest at all. The only thing that will be undermined is enforcement of ideological conformity, which is not a legitimate government interest. *See Iancu v. Brunetti*, 588 U.S. 388, 399 (2019) (government policy "'aim[ed] at the suppression' of views" is flatly prohibited).

Thus, with Captain Little's interests entitled to heightened protection, and the Fire Department's interests not actually undermined, the question of which side's interests are paramount is answered squarely in Captain Little's favor. All of the *Eng* questions are rightly resolved in favor of Captain Little. The Court should therefore enter an injunction protecting his Free Speech rights.

## II.   The Other Injunction Factors Favor Captain Little.

The remaining preliminary injunction factors are irreparable harm, balance of harms, and the public interest. All three factors tilt strongly in Captain Little's favor.

### A.   Captain Little is suffering irreparable harm due to the loss of his constitutional rights.

With respect to irreparable harm, Captain Little is currently suffering "[t]he loss of First Amendment freedoms [which], for even minimal periods of time, unquestionably constitutes irreparable injury." *FCA*, 82 F.4th at 694 (quoting *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020)). Even in the Title VII context, placing "pressure on [plaintiffs] to violate their faith," through a "Hobson's choice: lose your faith and keep your job, or keep your faith and lose your job," is irreparable harm. *Keene*, 2023 WL 3451687, at *2 (9th Cir. May 15, 2023); *see also, e.g., Sambrano v. United Airlines, Inc.*, No. 21-11159, 2022 WL 486610, at *8 (5th Cir. Feb. 17, 2022); *Mirabelli v. Olson*, No. 3:23-cv-768, 2023 WL 5976992, at *15 (S.D. Cal. Sept. 14, 2023).[8]

---

[8] With respect to Captain Little's request that the Court issue an OSC re: preliminary injunction, the irreparable harm need not be ongoing at the time of the motion. That is the key difference between an application for a temporary restraining order and a

**B.    The public interest and the balance of harms favors Plaintiff: similarly situated Department employees will benefit from preservation of Captain Little's constitutional rights.**

When a party seeks a preliminary injunction against the government, the balance of harms and public interest factors merge, because the government's interest is the public interest. *FCA*, 82 F.4th at 695 (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). On the Fire Department's side, alleged adverse consequences are irrelevant because it is always in the public interest to make sure that the government is following the law. *Nat'l Fed'n of Indep. Bus. v. Dep't of Lab.*, 595 U.S. 109, 120 (2022) (refusing to weigh allegation that OSHA vaccine mandate "will save over 6,500 lives" because "[i]n our system of government, that is the responsibility of those chosen by the people through the democratic process"). But, in any event, Captain Little does not seek to harass or discriminate against any LGBT individual— simply to be exempted from actively violating his religious beliefs.

On Captain Little's side, in a case where the plaintiff has "'raised serious First Amendment questions,' that alone 'compels a finding that the balance of hardships tips sharply in [his] favor.'" *FCA*, 82 F.4th at 695 (quoting *Am. Beverage Ass'n v. City & County of San Francisco*, 916 F.3d 749, 758 (9th Cir. 2019) (en banc)). This is because "it is always in the public interest to prevent the violation of a party's constitutional rights." *Id.*; *see also, e.g., California v. Azar*, 911 F.3d 558, 582 (9th Cir. 2018) ("Protecting religious liberty and conscience is obviously in the public interest"). Further, the Ninth Circuit has recognized "los[ing] the opportunity to pursue [a] 'chosen profession'" as irreparable harm. *Keene*, 2023 WL 3451687, at *2

---

motion for a preliminary injunction. In the latter, "the injury need not have been inflicted when application is made;" rather, a showing of "irreparable injury *before trial* is an adequate basis." *Diamontiney v. Borg*, 918 F.2d 793, 795 (9th Cir. 1990). Thus, the analysis is not whether there "is *immediate* danger," but whether the plaintiff may suffer irreparable harm before trial and a permanent injunction can be entered. *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1023 (9th Cir. 2016) (original emphasis).

28

MEMO. OF POINTS & AUTHORITIES ISO
PLAINTIFF'S EX PARTE APPL. FOR A TRO & OSC RE: PRELIM. INJ.

(9th Cir. May 15, 2023) (citing *Chalk v. U.S. Dist. Ct.*, 840 F.2d 701, 710 (9th Cir. 1988); *Enyart v. Nat'l Conf. of Bar Exam'rs, Inc.*, 630 F.3d 1153, 1156, 1165-66 (9th Cir. 2011)).

In sum, because Captain Little is suffering severe irreparable injury in the form having to abandon his constitutional rights to keep his job, in the absence of any actual harm that will be suffered by the Fire Department, the other injunction factors clearly favor Captain Little.

## III.    The Court Should Dispense with a Bond Requirement.

Finally, the federal rules provide that a preliminary injunction may be issued only if the plaintiff posts an appropriate bond. Fed. R. Civ. P. 65(c). Even so, this Court has discretion over whether any security is required and, if so, the amount. *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003). There is "long-standing precedent that requiring nominal bonds is perfectly proper in public interest litigation," especially "where requiring security would effectively deny access to judicial review." *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1126 (9th Cir. 2005) (collecting cases).

Here, Captain Little requests that the Court waive any bond requirement because enjoining the Fire Department from illegally enforcing its policy in the face of Title VII and constitutional objections will not financially affect the Fire Department. A bond would, however, be burdensome on an already burdened Plaintiff under these circumstances. *See, e.g.*, *Bible Club v. Placentia-Yorba Linda Sch. Dist.*, 573 F. Supp. 2d 1291, 1302 n.6 (C.D. Cal. 2008) (waiving requirement of student group to post a bond where case involved "the probable violation of [the club's] First Amendment rights" and minimal damages to the District of issuing injunction); *Doctor John's, Inc. v. Sioux City*, 305 F. Supp. 2d 1022, 1043-44 (N.D. Iowa 2004) ("[R]equiring a bond to issue before enjoining potentially unconstitutional conduct by a governmental entity simply seems inappropriate, because the rights potentially impinged by the governmental entity's actions are of

such gravity that protection of those rights should not be contingent upon an ability to pay.").

## CONCLUSION

For the foregoing reasons, Plaintiff Captain Little respectfully requests that this Court grant his ex parte application for a temporary restraining order and an OSC re: preliminary injunction in full and dispense with a bond requirement.

Respectfully submitted,

LiMANDRI & JONNA LLP

Dated: May 28, 2024          By: _____
                                 Charles S. LiMandri
                                 Paul M. Jonna
                                 Jeffrey M. Trissell
                                 Joshua A. Youngkin
                                 Attorneys for Plaintiff
                                 Captain Jeffrey Little

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff Captain Little, certifies that this brief contains 6,997 words, which complies with the word limit of L.R. 11-6.1.

Dated: May 28, 2024          By: _____
                                 Paul M. Jonna

30

MEMO. OF POINTS & AUTHORITIES ISO
PLAINTIFF'S EX PARTE APPL. FOR A TRO & OSC RE: PRELIM. INJ.