DIMITRI D. PORTNOI (S.B. # 282871)
dportnoi@omm.com
KYLE M. GROSSMAN (S.B. # 313952)
kgrossman@omm.com
MARNI B. ROBINOW (S.B. # 313412)
mrobinow@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street, Suite 1900
Los Angeles, California 90071
Telephone:  (213) 430 6000
Facsimile:    (213) 430 6407

*Attorneys for Defendants County of*
*Los Angeles, Fernando Boiteux,*
*Arthur Lester, and Adam Uehara*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| Jeffrey Little,<br><br>          Plaintiff,<br><br>   v.<br><br>Los Angeles County Fire Department, et al.,<br><br>          Defendants. | Case No. 2:24-cv-04353-JLS-PD<br><br>**DEFENDANTS' MOTION TO DISMISS**<br><br>*[Filed concurrently with Notice of Motion and Motion to Dismiss and [Proposed] Order]*<br><br>Hearing Date: August 9, 2024<br>Time: 10:30 a.m.<br>Judge:  Hon. Josephine L. Staton<br>Courtroom:  8A<br><br>Complaint Filed:  May 24, 2024<br>Trial Date:  None set |

1

**TABLE OF CONTENTS**

2
**Page**

I.      INTRODUCTION ..................................................................................7

II.     BACKGROUND ....................................................................................8

        A.     EA-231 ........................................................................................8

        B.     Plaintiff's Requests To Be Exempt from EA-231 .......................9

        C.     Plaintiff Unlawfully Removes PPF Flags .................................10

III.    LEGAL STANDARD ..........................................................................11

IV.     ARGUMENT .......................................................................................11

        A.     All of Plaintiff's Claims Fail Because EA-231 Does Not
               Conflict with His Religious Beliefs ........................................12

        B.     Plaintiff's Compelled-Speech Claim Fails Because Raising the
               PPF Is Not Protected First Amendment Activity ....................13

        C.     Plaintiff's Remaining Claims Fail Because EA-231 Does Not
               Conflict with Plaintiff's Practice of His Religious Beliefs ......17

               1.     EA-231 Does Not Conflict with Plaintiff's Religious
                      Beliefs Because It Authorizes Only Government Speech ......18

               2.     Plaintiff's Free Exercise Rights Were Not Violated by
                      Either EA-231 or Defendants' Statements ...............18

               3.     Plaintiff Is Not Entitled To Be Exempt from EA-231 ........22

               4.     Plaintiff Alleges No Retaliatory Conduct ...................26

        D.     The Individual Defendants Are Immune from Suit for Money
               Damages in Their Personal Capacity ......................................27

V.      CONCLUSION ...................................................................................28

# TABLE OF AUTHORITIES

**Page**

## <u>CASES</u>

*303 Creative LLC v. Elenis*,
600 U.S. 570 (2023) ................................................................15

*Anderson v. Davis Polk & Wardwell LLP*,
850 F. Supp. 2d 392 (S.D.N.Y. 2012), *overruled on other grounds
by Zarda v. Altitude Express, Inc.*, 883 F.3d 100 (2d Cir. 2018) ......................26

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................11, 26

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................11, 22

*Berry v. Dep't of Soc. Servs.*,
447 F.3d 642 (9th Cir. 2006) ................................................................23

*Bolden-Hardge v. Off. of Cal. State Controller*,
63 F.4th 1215 (9th Cir. 2023) ................................................................23, 25

*Capitol Square Rev. & Advisory Bd. v. Pinette*,
515 U.S. 753 (1995) ................................................................18

*Cath. Charities of Sacramento, Inc. v. Superior Ct.*,
32 Cal. 4th 527 (2004) ................................................................22

*Christian Legal Soc'y v. Martinez*,
561 U.S. 661 (2010) ................................................................19

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*,
508 U.S. 520 (1993) ................................................................19, 20

*Coleman v. Miller*,
117 F.3d 527 (11th Cir. 1997) ................................................................16, 17

*Conner v. Raver*,
2023 WL 5498728 (N.D. Cal. 2023) ................................................................27

*Daniels v. Donahoe*,
901 F. Supp. 2d 1238 (D. Haw. 2012) ................................................................26

*Eclectic Properties E., LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014) ................................................................21

*EEOC v. Abercrombie & Fitch*,
966 F. Supp. 2d 949 (N.D. Cal. 2013) ................................................................23

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Emp. Div. v. Smith*,
    494 U.S. 872 (1990) ...................................................................................19

*Eng v. Cooley*,
    552 F.3d 1062 (9th Cir. 2009).............................................................16, 26

*Fields v. City of Tulsa*,
    2012 WL 6214578 (N.D. Okla. 2012)........................................................17

*Fulton v. City of Philadelphia*,
    593 U.S. 522 (2021) ......................................................................19, 21, 22

*Garcetti v. Ceballos*,
    547 U.S. 410 (2006) ...................................................................................14

*Johanns v. Livestock Mktg. Ass'n*,
    544 U.S. 550 (2005) ...................................................................................14

*Kennedy v. Bremerton Sch. Dist.*,
    597 U.S. 507 (2022) .............................................................................15, 18

*Lacey v. Maricopa County*,
    693 F.3d 896 (9th Cir. 2012) .....................................................................27

*Lawson v. Washington*,
    296 F.3d 799 (9th Cir. 2002) .....................................................................18

*Lazy Y Ranch Ltd. v. Behrens*,
    546 F.3d 580 (9th Cir. 2008) ...............................................................11, 13

*Lichtenstein v. Hargett*,
    83 F.4th 575 (6th Cir. 2023) ......................................................................17

*Malek v. Green*,
    2018 WL 2431437 (N.D. Cal. 2018)..........................................................28

*Maner v. Dignity Health*,
    9 F.4th 1114 (9th Cir. 2021)......................................................................25

*Masterpiece Cakeshop, Ltd. v. Colo. C.R. Comm'n*,
    584 U.S. 617 (2018) .............................................................................19, 20

*Matal v. Tam*,
    582 U.S. 218 (2017) ...................................................................................14

*Muldrow v. City of St. Louis*,
    144 S. Ct. 967 (2024) ...........................................................................23, 25

### TABLE OF AUTHORITIES
#### (continued)

Page

*N. Coast Women's Care Med. Grp., Inc. v. Superior Ct.*,
  44 Cal. 4th 1145 (2008) .................................................................. 22

*Nat'l Rifle Ass'n of Am. v. Vullo*,
  144 S. Ct. 1316 (2024) ................................................................... 13

*People v. Rubin*,
  168 Cal. App. 4th 1144 (2008) ...................................................... 22

*Pinero v. Specialty Rests. Corp.*,
  130 Cal. App. 4th 635 (2005) ........................................................ 26

*Pleasant Grove City v. Summum*,
  555 U.S. 460 (2009) ................................................................. 13, 14

*Posey v. Lake Pend Orielle Sch. Dist.*,
  546 F.3d 1121 (9th Cir. 2008) ....................................................... 16

*Rivas-Villegas v. Cortesluna*,
  595 U.S. 1 (2021) ....................................................................... 27, 28

*Rumsfeld v. Forum for Acad. & Institutional Rts., Inc.*,
  547 U.S. 47 (2006) .......................................................................... 17

*Shurtleff v. City of Boston*,
  596 U.S. 243 (2022) ................................................................. 14, 15

*Taylor v. Hartley*,
  488 F. Supp. 3d 517 (S.D. Tex. 2020) ........................................... 26

*Thompson v. Donahoe*,
  961 F. Supp. 2d 1017 (N.D. Cal. 2013) ........................................ 26

*Ting v. Adams & Assocs., Inc.*,
  823 F. App'x 519 (9th Cir. 2020) ................................................... 26

*Tolle v. Rockwell Collins Control Techs., Inc.*,
  2020 WL 3316984 (E.D. Va. 2020) .......................................... 24, 25

*Troster v. Pa. State Dep't of Corr.*,
  65 F.3d 1086 (3d Cir. 1995) ..................................................... 16, 17

*W. Va. State Bd. of Educ. v. Barnette*,
  319 U.S. 624 (1943) ................................................................. 16, 17

*Walker v. Tex. Div.*,
  576 U.S. 200 (2015) ........................................................................ 15

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*We The Patriots USA, Inc. v. Conn. Off. of Early Childhood Dev.*,
    76 F.4th 130 (2d Cir. 2023) ................................................................................. 20

*We The Patriots USA, Inc. v. Hochul*,
    17 F.4th 266 (2d Cir. 2021) ................................................................................. 22

*Wooley v. Maynard*,
    430 U.S. 705 (1977) ......................................................................................... 16

**<u>STATUTES</u>**

Cal. Gov't Code § 820.4 .......................................................................................... 28

**<u>RULES</u>**

Fed. R. Civ. P. 12(b)(6) ........................................................................................... 11

I.    **INTRODUCTION**[1]

On June 21, 2023, Plaintiff Jeffrey Little, a lifeguard and Fire Department captain, arrived at Dockweiler Beach, where the Progress Pride Flag ("PPF") flew at three locations under a County of Los Angeles policy celebrating Pride Month. He alleges that he had previously asked to be exempt from raising the PPF or ordering others to raise it.  Before Plaintiff's shift, other lifeguards had raised the PPF under another officer's order.  Nonetheless, Plaintiff removed the flag from his workplace, then traveled to two other locations and removed the flag there as well. Plaintiff now asserts various claims resulting from the events that followed.

A few facts bear emphasis at the start.  First, Plaintiff does not allege he has *ever* raised the PPF.  When ordered to raise one of the flags he had lowered, he expressed his religious belief against doing so, and his superior officer raised the flag instead.  Second, Plaintiff has *never*, except for that one time, been ordered to raise the flag.  The "Direct Order" Plaintiff was given the next day required him to fly the flag "OR" ensure it is flown.  Third, Plaintiff does not allege any other way he has been ordered to affirm—through salute, words, or ceremony—any values associated with the PPF.

Plaintiff seeks to set aside the Fire Department policy requiring the flag be flown at Fire Department facilities.  His First Amendment claims fail because he alleges no compelled speech or prohibited religious practice.  His employment claims fail because he does not allege discrimination or retaliation for his request of a religious accommodation.  Finally, Plaintiff's claims for money damages against the individual Fire Department Chiefs are barred by qualified and statutory immunity.  The Court should dismiss the full Complaint with prejudice.

---

[1] All emphasis is added to, and citations, alterations, and internal quotation marks omitted from, quoted passages unless otherwise noted.  All paragraph and exhibit references are to Plaintiff's Complaint, unless otherwise noted.

## II.    **BACKGROUND**

### A.    **EA-231**

By flying the PPF, the County shows its "support for LGBTQ+ communities." Ex. A. The PPF, like the Gilbert Baker Pride flag before it, symbolizes the value and dignity of the LGBTQ+ community.



¶27. On March 7, 2023, the County Board of Supervisors ("Board") passed a motion to fly the PPF at "all county facilities" during June, LGBTQ+ Pride Month. Ex. A. That May, the County Fire Department issued a policy memorandum, EA-231, implementing the motion. Ex. B. EA-231 requires all captains and site supervisors to "[e]nsure flags are received and flown" and that, at the end of June, the PPF is "folded and stored for use the following year." *Id.* EA-231 also mandates where the PPF will be flown. Recognizing the primacy of the U.S. flag, where a facility can accommodate only one flag, the U.S. flag will be flown. Ex. C. Where a facility can accommodate another flag, the PPF will be flown. *Id.*

EA-231 does not require Department captains to raise the PPF.  ¶¶19-21; Ex. B.  Plaintiff's job responsibilities include "ensuring the enforcement of all rules and ordinances."  Ex. T.  The Direct Order later issued to Plaintiff instructs him to either

(1) Fly the Progress Pride Flag (PPF) as instructed in Executive Action–231 (EA–231) during the month of June;

OR

(2) Ensure that the PPF is flown as instructed in EA–231 during the month of June.

Ex. E.

## B.    Plaintiff's Requests To Be Exempt from EA-231

On June 18, 2023, Plaintiff sent an email requesting "to be exempt from adhering to EA-231" because "it infringes on [his] sincere religious beliefs."  ¶31; Ex. D.  Plaintiff's email included no further detail on his requested accommodation or his religious objection.

Subsequently, Plaintiff attended an interactive process meeting with a County human resources officer.  Ex. D.  Plaintiff alleges that, in that meeting, he explained that his religious beliefs "did not allow him to raise the [PPF] or ensure that it is raised and properly flown."  ¶31.  He alleges that the County agreed not to require him to raise the PPF or "ensure raising" of it.  ¶32.

The County also allegedly decided to move Plaintiff "to a site not flying" the PPF.  *Id.*  Plaintiff does not allege why the County did so, nor does he attach to the Complaint the religious accommodation he alleges was issued at that time.  It is at least likely that he was moved to a site not then flying the PPF as a matter of convenience to the County; it would be easier for the County to accommodate his request not to raise the flag or ensure it was flown.  Plaintiff makes no allegation that the County agreed not to equip flagpoles capable of flying the PPF at any County location; in fact, he attaches the Board motion which requires the County's

DEFS.' MOT. TO DISMISS
2:24-CV-04353-JLS-PD

1  chief executive officer to "explore ways the [PPF] can be flown at ***all county***

2  ***facilities***."  Ex. A.

3      **C.**    **Plaintiff Unlawfully Removes PPF Flags**

4      On June 21, 2023, Chief Lester allegedly "modified" the flagpoles at

5  Dockweiler Beach so that they could fly the PPF.  ¶34.  Plaintiff does not allege

6  how the flagpoles were modified or that Chief Lester knew anything about

7  Plaintiff's requested accommodation.  Chief Lester directed the lifeguards there, not

8  Plaintiff, to raise the PPF.  ¶34; Ex. I.  These events occurred before the start of

9  Plaintiff's scheduled shift.  Plaintiff does not allege that he ***ever*** works a shift where

10  the flags would be raised.  When Plaintiff arrived at work, he took down the PPF

11  from his worksite, then traveled to ***other locations*** to remove the flags there.  ¶¶32,

12  34-35; Ex. I.  Plaintiff's alleged accommodation did not permit him to take down

13  the PPF when it was already flying.  Ex. I.[2]  Indeed, Plaintiff has requested that he

14  not lower or even handle the PPF.  Exs. R, S.

15      Chief Lester later directed Plaintiff to raise one of the flags he had taken

16  down.  *Id.* ¶36; Ex. I.  Plaintiff explained that doing so "violated [his] deeply held

17  religious beliefs," so Chief Lester re-raised the PPF himself.  Exs. F, S.  The next

18  day, Plaintiff was provided with a Direct Order and Notice of Instruction specifying

19  that he is responsible for ***either*** flying the PPF as instructed in EA-231 ***or*** ensuring

20  that it is flown.  ¶¶39, 42; Ex. E.  It did not require Plaintiff to raise the flag or

21  specify any method for ensuring the flag be flown.  *Id.*

22  

23  [2] At times, Plaintiff alleges without explanation that the PPF flying at Dockweiler Beach violated EA-231.  *See, e.g.*, ¶34; Exs. Q(A), R.  The only apparent way that

24  flying the PPF could ***violate*** EA-231 would be if the U.S. flag were not also flying. No such allegation is made, and his threadbare allegation of illegality is not

25  presumed true.  Plaintiff also alleges that flying the PPF violated his

26  accommodation, but the accommodation he requested was to not raise the flag or ensure it be raised and flown.  Other times, Plaintiff alleges that he was "confused"

27  by why the PPF was flying.  Ex. F.  Yet Plaintiff ***never*** sought guidance from the Department or from superior officers; instead, he removed the PPF.

28  

DEFS.' MOT. TO DISMISS
2:24-CV-04353-JLS-PD

The County continued to communicate with Plaintiff about his religious accommodation request through August 2023.  ¶¶37, 60; Ex. S.  It ultimately informed Plaintiff that he could request religious accommodations every June, which temporarily ended the discussion.  *Id.*  Plaintiff submitted a new religious accommodation request on May 8, 2024.  ¶61; Ex. S.  After several meetings, Plaintiff now has an "effective accommodation" that results in his working where the PPF is not flown.  ECF 22, Paul M. Jonna Declaration ("Jonna Decl.") ¶18.[3]

## III.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint for "failure to state a claim upon which relief can be granted."  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This standard requires more than "labels and conclusions": a "formulaic recitation of the elements of a cause of action will not do."  *Id.*  Courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Nor should courts "accept as true allegations contradicting documents that are referenced in the complaint."  *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).  Rather, the allegations "must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

## IV.  ARGUMENT

All of Plaintiff's claims fail for two reasons: ***First***, EA-231 does not require Plaintiff to raise the PPF—the conduct that he alleges would violate his religious beliefs.  ***Second***, ensuring the PPF is properly flown (or even raising it oneself) is not privately expressive conduct that affirms any message.

---

[3] On May 30, 2024, the Fire Department issued EA-232, which continues the policy of raising the PPF for June 2024.  EA-232, like EA-231, requires captains and site supervisors to "[e]nsure PPFs are flown."  ECF 22, Jonna Decl. Ex. 1.

Plaintiff's Free Exercise, accommodation, and retaliation claims fail for additional reasons. EA-231 is a neutral policy of general applicability that poses no significant burdens on religious exercise, so it does not violate the Free Exercise Clause. With respect to his Title VII and FEHA claims, Plaintiff fails to allege an actual conflict between his religious beliefs and his job responsibilities. And to the extent Plaintiff suffered any adverse employment action, it was not caused by his religious practice or accommodation request but by his flagrant violation of EA-231 when he lowered the PPF.

Finally, Plaintiff's claims for money damages against the individual Defendants in their personal capacity are barred by qualified and statutory immunity.

## A.    All of Plaintiff's Claims Fail Because EA-231 Does Not Conflict with His Religious Beliefs

Plaintiff premised his initial request for an accommodation "to be exempt from adhering to EA-231" on the faulty assertion that EA-231 would require him to raise the PPF himself—an action that he alleges would violate his religious beliefs. ¶¶31, 70; Ex. D. Every claim is premised on this same fallacy. ¶¶72, 83, 90-93, 103, 110, 121-22, 134-35, 144-45, 160. But EA-231 requires no such thing, so there is no conflict between EA-231 and Plaintiff's religious beliefs. The Court should dismiss the Complaint in full.

Plaintiff repeatedly asserts that his religious beliefs preclude him from *raising* the PPF. He alleges that he believes in the "moral illicitness of same-sex sexual activity" and "the immutability of sex regardless of gender identity," so "he cannot personally" convey the PPF's message "*by raising the* [*PPF*]." ¶¶30, 70, 121, 134. He asserts that Defendants cannot compel him to *raise* the PPF or discipline him for failing to do so. ¶¶122, 135, 145.

But Plaintiff misstates EA-231, which requires only that he "[e]nsure" the PPF is flown. ¶¶19, 21; Ex. B. Nowhere does EA-231—or the County motion that

1    it implements, Ex. A—require Plaintiff to personally "raise" the PPF.[4]  Plaintiff

2    also misrepresents the June 22, 2023 Direct Order, which he alleges required him

3    "to fly the [PPF] **and** ensure that the [PPF] is flown as instructed in EA-231."  ¶39.

4    The actual order gave Plaintiff the choice between flying the PPF "***OR***" ensuring

5    the PPF "is flown."  Ex. E.  The documents speak for themselves: Plaintiff was not

6    required to raise the PPF.  *Lazy Y Ranch*, 546 F.3d at 588.

7        Because EA-231 does not require Plaintiff to engage in the only conduct that

8    he alleges would violate his religious beliefs—raising the PPF—he fails to identify

9    any actual conflict with his religious beliefs.  This deficiency is fatal to every claim.

10    **B.    Plaintiff's Compelled-Speech Claim Fails Because Raising the PPF**

11        **Is Not Protected First Amendment Activity**

12        Plaintiff alleges that "the Fire Department is compelling [his] speech by

13    requiring him to affirm the [PPF]" in violation of the Free Speech Clause of the

14    First Amendment.  ¶160.  This claim fails because the speech at issue—flying the

15    PPF or ensuring it is flown—is government speech, not Plaintiff's own speech.

16    The County requires only that the PPF is flown; it does not require Plaintiff to

17    engage in privately expressive conduct.

18        "The Free Speech Clause restricts government regulation of private speech; it

19    does not regulate government speech."  *Pleasant Grove City v. Summum*, 555 U.S.

20    460, 467 (2009).  "That makes sense; the government could barely function

21    otherwise."  *Nat'l Rifle Ass'n of Am. v. Vullo*, 144 S. Ct. 1316, 1326 (2024).  The

22    Supreme Court has provided the example of posters produced during World War II

23    to promote the war effort, explaining that the First Amendment "did not demand the

24    Government balance the message of those posters" by producing anti-war posters.

---

25    [4] Plaintiff alleges that on June 21, 2023, the PPF was raised prior to the start of his
26    shift.  ¶34.  Plaintiff does not allege that he ***ever*** worked during the morning hour
27    when the flag is raised.  Plaintiff seems to allege that even when the flag is raised
      while he is ***not at work***, the act of the flag being raised somehow compels his
28    speech or violates his personal religious beliefs.

DEFS.' MOT. TO DISMISS
2:24-CV-04353-JLS-PD

*Matal v. Tam*, 582 U.S. 218, 234-35 (2017). Nor would the First Amendment demand that pacifist postal employees be exempted from delivering those posters through the mail or that anti-war printing office employees be excused from manufacturing such posters. Political checks, not litigation, are how citizens who disagree with government speech make their voices heard. *Shurtleff v. City of Boston*, 596 U.S. 243, 252 (2022) ("The Constitution [] relies first and foremost on the ballot box, not on rules against viewpoint discrimination, to check the government when it speaks.").

Of course, the government "can only communicate through human agents who have been given the power to speak for the government." *Id.* at 268 (Alito, J., concurring). That does not change the First Amendment principle that "the Free Speech Clause has no application when a government is engaging in its own expressive conduct." *Id.* "Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen," because when public employees act "pursuant to their official duties," they "are not speaking as citizens for First Amendment purposes." *Garcetti v. Ceballos*, 547 U.S. 410, 421-22 (2006).

The PPF is government speech. ***First***, the County set the message, passing a motion requiring County buildings to fly the PPF in order to convey the County's "support for LGBTQ+ communities." Ex. A. This means the County can "rely[] on the government-speech doctrine." *Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550, 562 (2005). ***Second***, the motion reflects government control suggestive of government speech. *Summum*, 555 U.S. at 473 (city "effectively controlled" the messages sent by selecting monuments for a park). ***Third***, the County exercises total control over what flags are flown at its buildings, as well as how and when they are flown. Board Policy 3.100 ("Provides County departments with clear protocols for flying the National, State, County and other flags at County facilities."), *available at* https://tinyurl.com/26z46ud2; *see Walker v. Tex. Div.*, 576

U.S. 200, 213 (2015) (state's "active[]" control over license plate designs meant they conveyed government speech).  **Fourth**, the public is "likely to see" the PPF flying at a **government** facility as conveying a message "**on the government's behalf**," not Plaintiff's.  *Shurtleff*, 596 U.S. at 253-55.

Not only is flying the PPF under EA-231 government speech, but requiring a captain to ensure compliance with a County mandate is not compelled speech.  The compelled-speech doctrine prevents the government from forcing private citizens "to speak its own preferred messages." *303 Creative LLC v. Elenis*, 600 U.S. 570, 586 (2023).  EA-231 requires no speech at all from Plaintiff.  It requires Plaintiff "[e]nsure flags are received and flown" and that the PPF "is folded and stored for use the following year." Ex. B.  Unlike the cases cited by Plaintiff, EA-231 does not require any salute to the PPF, *compare* ¶¶1-2, 4-5, 30; any pledge of allegiance to the PPF, *compare* ¶¶30, 163; any contribution of private funds toward the PPF, *compare* ¶¶5, 163; or any employee to join a group or march in a parade promoting the PPF, *compare* ¶163.  EA-231 requires no ceremony whatsoever to the raising or lowering of the PPF, and the Complaint alleges none. EA-231 does not require that captains participate **at all** in the raising of the flag. And the Complaint does not allege that Plaintiff's schedule ever requires him to be present when flags are raised.

Even if EA-231 did require Plaintiff to raise the flag, EA-231 would still do no more than require Plaintiff to "convey a government-created message" "pursuant to government policy" that the County "paid him to produce." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 529-30 (2022).  Ensuring that flags are properly flown is "ordinarily within the scope" of Plaintiff's duties as a captain. *Id.*; Ex. T (lifeguard captains must "ensur[e] the enforcement of all rules and ordinances").[5]  And Plaintiff nowhere alleges that ensuring flags are raised—or

---

[5] To be sure, if there were a genuine dispute over the nature of a public employee's job responsibilities, that would be unsuitable for resolution at the pleading stage.

raising and lowering flags himself—was not part of his job duties before June 2023.

Plaintiff repeatedly compares his situation to that of the plaintiffs in *West Virginia State Board of Education v. Barnette*, 319 U.S. 624 (1943). ¶¶1, 5, 156, 159, 163. But his reliance on that canonical case is misplaced. In *Barnette*, the Supreme Court rejected a West Virginia law requiring schoolchildren to salute and pledge allegiance to the U.S. flag or face expulsion. 319 U.S. at 627-29. In invalidating the law, the Court observed that "the compulsory flag salute and pledge requires ***affirmation of a belief and an attitude of mind***." *Id.* at 633. The schoolchildren were "required … to participate in daily public ***ceremonies*** by honoring the flag ***both with words and traditional salute gestures***." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977).

Courts have since emphasized how far West Virginia's law went in compelling speech. In *Coleman v. Miller*, a Black Georgia resident challenged Georgia's flying of its state flag (which included Confederate symbols) on a compelled-speech theory. 117 F.3d 527, 531 (11th Cir. 1997) (per curiam). He argued that the flag "violates his First Amendment rights by compelling him to endorse a message that he finds morally objectionable." *Id.* But unlike the salute and pledge in *Barnette*, the mere flying of the flag involved "no government action that 'requires affirmation of a belief and an attitude of mind.'" *Id.* (quoting 319 U.S. at 633). Entering buildings that fly a flag "does not manifest any particular attitude or belief and does not associate appellant with the flag's message." *Id.* Similarly, in *Troster v. Pennsylvania State Department of Corrections*, a court found an administrative requirement that correctional officers wear a U.S. flag patch on their uniform non-expressive. 65 F.3d 1086, 1091 (3d Cir. 1995).

*See Eng v. Cooley*, 552 F.3d 1062, 1073 (9th Cir. 2009) (genuine dispute over district attorney's responsibilities on specialized task force); *Posey v. Lake Pend Orielle Sch. Dist.*, 546 F.3d 1121, 1126-27 (9th Cir. 2008) (similar). But there is no dispute: Plaintiff's role requires him to "ensur[e] the enforcement of all rules and ordinances," including EA-231. Ex. T.

Wearing a flag patch on a uniform does not require an officer "to profess any statement of belief or to engage in any ceremony of assent to one." *Id.*

Plaintiff's job responsibilities are not privately expressive conduct. Plaintiff's job is to ensure that the PPF flies properly under County policy. Compl. Exs. B, T. That responsibility does not "require[] affirmation of a belief and an attitude of mind." *Barnette*, 319 U.S. at 633. Nor does it "manifest any particular attitude or belief" or "associate [Plaintiff] with the flag's message." *Coleman*, 117 F.3d at 531. And Plaintiff is not required to affirm the message of inclusivity of the PPF through his own speech—or even his own actions, other than to ensure that **someone else** raises the flag. *See Lichtenstein v. Hargett*, 83 F.4th 575, 594-95 (6th Cir. 2023).[6] As Chief Justice Roberts wrote for a unanimous Court in *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*:

> Compelling a law school that sends scheduling e-mails for other recruiters to send one for a military recruiter is simply not the same as forcing a student to pledge allegiance, or forcing a Jehovah's Witness to display the motto "Live Free or Die," and it trivializes the freedom protected in *Barnette* and *Wooley* to suggest that it is.

547 U.S. 47, 62 (2006). Likewise, requiring a Fire Department captain to enforce County policy by ensuring that flags are flown properly—especially when that captain is already charged with enforcing other laws, policies, and directives, including ensuring the proper flying and handling of other flags—is no First Amendment violation.

### C.     Plaintiff's Remaining Claims Fail Because EA-231 Does Not Conflict with Plaintiff's Practice of His Religious Beliefs

All of Plaintiff's remaining claims—his accommodation and retaliation

---

[6] There is no compelled-speech issue with requiring a supervisor to instruct other employees to do their job. *See Fields v. City of Tulsa*, 2012 WL 6214578, at *5-6 (N.D. Okla. 2012) (requirement that a police captain instruct his subordinates to attend a law-enforcement appreciation event at the Islamic Society of Tulsa did not implicate the First Amendment).

1  claims under Title VII and FEHA, as well as his Free Exercise claims under the
2  U.S. and California constitutions—fail for this very same reason: Defendants have
3  never required Plaintiff to express a viewpoint at odds with his religious beliefs.
4  Each of these claims fails for additional, separate reasons as well.

### 1.    EA-231 Does Not Conflict with Plaintiff's Religious Beliefs Because It Authorizes Only Government Speech

7      Plaintiff's core objection through all of his claims is that EA-231 requires
8  him to affirm an expressive message that conflicts with his religious beliefs.  ¶4.
9  For the reasons just discussed, EA-231 does not require Plaintiff to convey any
10 privately expressive message, so it cannot conflict with his stated religious beliefs.

11     Because Plaintiff bases his claims on this expressive-conduct theory, they all
12 fail.  The Free Exercise and Free Speech clauses "work in tandem" to protect
13 "expressive religious activities."  *Kennedy*, 597 U.S. at 523; *see Capitol Square*
14 *Rev. & Advisory Bd. v. Pinette*, 515 U.S. 753, 760 (1995) ("private religious speech
15 … is as fully protected under the Free Speech Clause as secular private
16 expression").  Expressive religious conduct is likewise protected under Title VII
17 and FEHA where it would "conflict" with job requirements.  *Lawson v.*
18 *Washington*, 296 F.3d 799, 804 (9th Cir. 2002) (state trooper could not be
19 discharged for refusing on religious grounds to salute the U.S. flag and swear his
20 allegiance to the United States and Washington State).  Because Plaintiff conveys
21 no personal message when he fulfills his job duties under EA-231, however, his
22 claims under the Free Exercise Clause, Title VII, and FEHA all fail.

### 2.    Plaintiff's Free Exercise Rights Were Not Violated by Either EA-231 or Defendants' Statements

25     Plaintiff raises two challenges to EA-231 under the Free Exercise Clause.
26 First, he contends that EA-231 is not neutral because of alleged religious animus.
27 Second, he asserts that it is not generally applicable because it does not apply to all
28 workstations or all County employees.  Neither of these claims is valid.

18

Laws that incidentally burden religion "are ordinarily not subject to strict scrutiny under the Free Exercise Clause so long as they are neutral and generally applicable." *Fulton v. City of Philadelphia*, 593 U.S. 522, 533 (2021) (citing *Emp. Div. v. Smith*, 494 U.S. 872 (1990)).  The Board motion and EA-231 are neutral and generally applicable: They apply to all County employees without regard to religion, and neither evinces intolerance of religious beliefs or restricts religious practice.

**EA-231 is neutral.**  "Government fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature." *Id.* at 533.  When the government objects to conduct "because it is undertaken for religious reasons," it does not act neutrally toward religion. *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 532 (1993).  A plaintiff must establish that the government has prohibited a practice "because of," not merely in spite of, the practice's religious motivation. *Id.* at 533; *see Christian Legal Soc'y v. Martinez*, 561 U.S. 661, 700 (2010) (Stevens, J., concurring) ("[I]t is a basic tenet of First Amendment law that disparate impact does not, in itself, constitute viewpoint discrimination.").  The plaintiff must show that the government expressed "hostility to a religion or religious viewpoint." *Masterpiece Cakeshop, Ltd. v. Colo. C.R. Comm'n*, 584 U.S. 617, 638 (2018).  Relevant factors "include the historical background of the decision under challenge, the specific series of events leading to the enactment or official policy in question, and the legislative or administrative history, including contemporaneous statements made by members of the decisionmaking body." *Id.* at 639.

*Church of Lukumi* and *Masterpiece Cakeshop* are instructive.  In *Church of Lukumi*, the city did not prohibit "cruelty to animals," or even "slaughter" of animals, across the board.  508 U.S. at 538.  Instead, it prohibited killings "for religious reasons" but allowed for "almost all killings of animals except for religious sacrifice," including by contorting the definition to permit kosher

1    slaughter.  *Id.* at 536.  Moreover, the city council expressed "significant hostility"

2    toward the Santeria religion—asking, for example, "What can we do to prevent the

3    Church from opening?"  *Id.* at 541.  The city councilmembers thus "had as their

4    object the suppression of" Santeria.  *Id.* at 542.  And in *Masterpiece Cakeshop*, the

5    state body that issued the challenged order "disparaged [the plaintiff's] religion …

6    by describing it as despicable, and also by characterizing it as merely rhetorical—

7    something insubstantial and even insincere."  584 U.S. at 635.

8        Both cases involved "contemporaneous statements made by members of the

9    decisionmaking body" and a "historical background" that demonstrated anti-

10   religious animus.  508 U.S. at 540; 584 U.S. at 639.  Plaintiff alleges no such facts

11   here: He does not allege that the Board or the Acting Chief Deputies who issued

12   EA-231 made ***any*** statement respecting—or disrespecting—religion or any

13   religious practice.

14       Instead of focusing on statements preceding or contemporaneous with

15   EA-231—the order Plaintiff seeks to "set aside," ¶150—Plaintiff describes

16   statements and actions of three County employees that occurred shortly ***after***

17   Plaintiff violated EA-231 by removing the PPF from multiple subareas.  But these

18   three employees are not members of any decisionmaking body, and their statements

19   and actions do not retroactively color EA-231.  While Plaintiff alleges that he

20   perceived the conduct as "abusive, inappropriate, harassing, and discriminatory,"

21   ¶146, he must allege something more than vague mistreatment or hostility to claim

22   religious animus.  *We The Patriots USA, Inc. v. Conn. Off. of Early Childhood

23   Dev.*, 76 F.4th 130, 148 (2d Cir. 2023) ("acknowledg[ing] the impact" a law might

24   have on religious beliefs is not evidence of animus).  The few statements he

25   identifies—Chief Boiteux's statements that Plaintiff is "an LA County Employee"

26   and that his "religious beliefs do not matter," ¶148—are far from the hostile

27   sentiment at issue in *Church of Lukumi* and *Masterpiece Cakeshop*.  Critically, they

28   do not convey that a secular reason for removing the PPF would have been

DEFS.' MOT. TO DISMISS
2:24-CV-04353-JLS-PD

1    condoned, as opposed to Plaintiff's religious reason.

2       Finally, the Court need not credit Plaintiff's characterizations that these three

3 individuals acted in a "discriminatory" manner, especially when an innocent

4 alternative is so readily obvious. "When considering plausibility, courts must also

5 consider an obvious alternative explanation for defendant's behavior." *Eclectic*

6 *Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014).

7 Plaintiff alleges, and his exhibits support, that he removed the PPF without

8 permission, without consulting his superior officers, and in the presence of

9 subordinates. ¶¶37-40; Ex. I. He did so even though he knew at the time that a

10 superior officer had ordered that the flags be flown. Ex. F. He then traveled to two

11 different locations to remove the PPF. Ex. I. The obvious explanation is that

12 Plaintiff's superior officers, confronted with Plaintiff's rank insubordination in the

13 presence of his own subordinates, ordered that he replace property that he had

14 unlawfully removed. When he did not, Plaintiff's superior officer raised the flag

15 instead. *Id.* Plaintiff's allegations do nothing to dispel this obvious explanation.

16    **EA-231 is generally applicable.** "A law is not generally applicable if it

17 invites the government to consider the ***particular reasons*** for a person's conduct by

18 providing a mechanism for ***individualized exemptions***." *Fulton*, 593 U.S. at 533.

19 In *Fulton*, for example, a city required foster-care services to place children with

20 same-sex parents unless the city granted a discretionary exception. *Id.* at 535. The

21 Court held that "a formal system of entirely discretionary exceptions" rendered the

22 "requirement not generally applicable." *Id.* at 536.

23       Plaintiff's allegations are nothing like the facts of *Fulton*. Plaintiff contends

24 that EA-231 is not "generally applicable" because it does not apply to County

25 facilities without infrastructure to fly the PPF and requires only captains and site

26 supervisors to ensure the PPF is flying. ¶¶124-25. These arguments miss the point.

27 The general-applicability requirement ensures that the government cannot, through

28 the guise of individualized assessments, "decide which reasons for not complying

with the policy are worthy of solicitude." *Fulton*, 593 U.S. at 537.  But a government policy "is not individualized simply because it contains express exceptions for ***objectively*** defined categories." *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 288 (2d Cir. 2021).

EA-231 contains no exemptions for individual employees.  While it recognizes physical limitations (such as the lack of a viable flagpole), those limitations reflect the Board's prioritization of flying the U.S. flag—not a system of discretionary and individualized exemptions or religious animus or endorsement. Nor is EA-231 not generally applicable because it relies on captains and site supervisors, along with the construction and maintenance division, for implementation.  These are objectively defined categories of employees who, as officers, are logical choices to ensure that the Board's policy is implemented.

Because EA-231 is neutral and generally applicable, it does not violate the Free Exercise Clause.  Plaintiff's challenge under the California Constitution fares no better.  The California Constitution is coextensive with the Free Exercise Clause: it "protects the free exercise of religion, not peripheral activities" like ensuring that flags are properly flown.  *People v. Rubin*, 168 Cal. App. 4th 1144, 1150-51 (2008) (citing *Cath. Charities of Sacramento, Inc. v. Superior Ct.*, 32 Cal. 4th 527 (2004), and *N. Coast Women's Care Med. Grp., Inc. v. Superior Ct.*, 44 Cal. 4th 1145 (2008)) (possession of marijuana not protected free exercise).[7]

### 3.    Plaintiff Is Not Entitled To Be Exempt from EA-231

Plaintiff brings two statutory claims alleging that Defendants failed to accommodate his religious beliefs by not altering or vacating EA-231 with respect to him.  ¶¶31; Ex. D.  But neither Title VII nor FEHA requires Defendants to grant

---

[7] Plaintiff asserts—citing outdated case law that, in fact, applies federal case law that predates important precedents like *Fulton* and *Smith*—that the California Constitution sweeps broader than the U.S. Constitution.  ¶133.  The Court need not accept this legal conclusion.  *Twombly*, 550 U.S. at 555.  Regardless, as *Rubin* illustrates, the outcome would be the same.

Plaintiff this accommodation.

To state an accommodation claim under Title VII or FEHA, a plaintiff must allege that "(1) he had a bona fide religious belief, the ***practice*** of which conflicts with an employment duty; (2) he informed his employer of the belief and conflict; and (3) the employer … subjected him to an adverse employment action because of his inability to fulfill the job requirement." *Berry v. Dep't of Soc. Servs.*, 447 F.3d 642, 655 (9th Cir. 2006).[8]  Under the first prong, a plaintiff must allege that an employment requirement ***actually conflicted*** with his beliefs. *Bolden-Hardge v. Off. of Cal. State Controller*, 63 F.4th 1215, 1223 (9th Cir. 2023).  And under the third, an employment action must cause "some harm" to the plaintiff and "respect[] an identifiable term or condition of employment" to be adverse. *Muldrow v. City of St. Louis*, 144 S. Ct. 967, 974 (2024).  Plaintiff does not allege facts sufficient to meet either of these prongs.

Plaintiff's shifting requests and allegations make this claim difficult to understand, but that lack of clarity should not allow the claim to survive.  He alleges that his initial request was simply to be exempt from EA-231 writ large. ¶31.  Elsewhere, Plaintiff, in his own words, objected to "working under/near a PPF site," Ex. S (August 21, 2023 email), or "working in a building or station near the [PPF] (or any form of the Pride Flag)," *id.* (July 23, 2023 email).  At times, Plaintiff has objected to "personally, directly" lowering the PPF, *id.*, or "handl[ing]" it, ¶21; Ex. R (April 19, 2024 letter), Ex. S (May 8, 2024 email)—although Plaintiff ***voluntarily lowered and handled*** the PPF on June 21, 2023.  He alleges that in an oral conversation, he stated that his only conflict was "to raise the [PPF] or ensure that it is raised and properly flown."  ¶31.  But then he alleges that his accommodation was violated when ***another*** officer ordered ***another*** lifeguard to raise the PPF before Plaintiff's shift even began.  ¶35.  As Plaintiff put it in the

---

[8] The analysis is the same under FEHA and Title VII. *EEOC v. Abercrombie & Fitch*, 966 F. Supp. 2d 949, 961 (N.D. Cal. 2013).

1    report he filed the next morning, he stated that he "could not in good conscience

2    work under that flag" and that the PPF was "10 feet from [his] work desk."  Ex. F.

3         Plaintiff's shifting statements and allegations provide a constantly moving

4    target.  He alleges that he asked a human resources officer on June 18, 2023 to be

5    exempt from raising the PPF and ensuring that it is flown.  ¶31.  Yet he alleges that

6    it is a violation of that accommodation that a senior officer ordered subordinates to

7    raise the PPF—such that Plaintiff did not need to raise the PPF or order his

8    subordinates to do so.  ¶34.  And when Plaintiff told that senior officer, for the first

9    time, that Plaintiff objected to raising the flag, the senior officer raised the flag

10   instead—yet Plaintiff still filed a complaint because working near the PPF

11   apparently violated his accommodation.  Ex. S.  Plaintiff's counsel later asserted

12   that the County had mischaracterized Plaintiff's request—that it was not "solely"

13   about "not wanting to work at locations where the pride flag was flown" and that

14   Plaintiff's only request was in fact "that the Department not require him to raise the

15   pride flag."  Ex. R.

16        **No conflict with an employment duty.**  Regardless of how Plaintiff frames

17   his job responsibilities, or how he frames his conflict, he does not plausibly allege

18   that any of his responsibilities conflict with his religious beliefs.  It does not pose a

19   conflict to require an employee to work at a location that flies a Pride flag.  *See*

20   *Tolle v. Rockwell Collins Control Techs., Inc.*, 2020 WL 3316984, at *5 (E.D. Va.

21   2020) ("merely expecting Plaintiff to attend work in the same location that a Gay

22   Pride flag is generally displayed for one month does not amount to asking him to

23   adhere to a conflicting employment requirement").  If raising the PPF is the

24   problem, EA-231 *never* required Plaintiff to raise the PPF, and Plaintiff alleges that

25   he was told to raise the PPF only once—immediately after he *lowered the PPF* that

26   was *already flying*.  ¶36.  Plaintiff's exhibits reveal that when Plaintiff objected

27   orally to raising the PPF, a superior officer raised it for him.  Ex. F.  To allow

28   Plaintiff to lower the PPF at his workstation would effectively grant him an

accommodation to not work near the PPF and to affirmatively violate County policy, neither of which Title VII or FEHA requires. *Tolle*, 2020 WL 3316984, at *5; *Bolden-Hardge*, 63 F.4th at 1225 (no requirement to grant accommodation that would violate the law unless "there is no indication of an actual threat of enforcement").

**No adverse employment action caused by failure to accommodate.** To start, Plaintiff alleges only one potentially actionable adverse employment action—his suspension from the background investigation unit ("BIU"). ¶44(A).

To be sure, Plaintiff identifies interactions he had that he asserts were retaliatory: he alleges that Chief Lester's "words, demeanor, and tone" on June 21, 2023 were "abusive, inappropriate, harassing, and discriminatory," and that Chief Boiteux's "demeanor" on June 22, 2023 was "physically intimidating." ¶¶36, 40; *see* Ex. F. But "Title VII is not a 'general civility code,'" and conduct is not unlawful simply because it "more than likely harms morale." *Maner v. Dignity Health*, 9 F.4th 1114, 1127 (9th Cir. 2021). In any event, these interactions do not "respect[] an identifiable term or condition of employment"—as compared with, say, a demotion. *Muldrow*, 144 S. Ct. at 974.

Plaintiff fails to adequately allege that Defendants' failure to accommodate his religious beliefs ***caused*** his BIU suspension—the only employment action that could potentially be considered adverse. Plaintiff's allegations related to the BIU are sparse. In one sentence, Plaintiff alleges that he was "suspended from his role on the [BIU]." ¶44(A). He does not allege what "his role" was, whether it was permanent or temporary, what reason he was given for his suspension, or who informed him of it. He seems to disclaim that any of the individual defendants were involved, because he attributes the suspension to an unexplained "breach of privacy," ¶44, not to retaliatory intent of the person who suspended him.

Without an allegation of ***who*** suspended Plaintiff, and whether that person knew Plaintiff had requested a religious accommodation, Plaintiff cannot establish

the necessary causal link.  *See Thompson v. Donahoe*, 961 F. Supp. 2d 1017, 1031 (N.D. Cal. 2013) ("speculative and conclusory" causation allegations do not overcome lack of knowledge); *Taylor v. Hartley*, 488 F. Supp. 3d 517, 544 (S.D. Tex. 2020) (dismissing disability discrimination claim where no allegation individual accused of discrimination knew about disability).  Where, as here, "a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678; *see Ting v. Adams & Assocs., Inc.*, 823 F. App'x 519, 522 (9th Cir. 2020) (affirming dismissal where plaintiff failed to allege facts supporting an inference of causation); *Anderson v. Davis Polk & Wardwell LLP*, 850 F. Supp. 2d 392, 412 (S.D.N.Y. 2012) (allegations that plaintiff "was discriminated against because [he is] heterosexual" were "conclusory" and insufficient), *overruled on other grounds by Zarda v. Altitude Express, Inc.*, 883 F.3d 100 (2d Cir. 2018) (en banc).  At most, Plaintiff suggests a non-discriminatory reason for his suspension— his lowering of the PPF on June 21.  *See* ¶47;Exs. H, I; *Anderson*, 850 F. Supp. 2d at 412 (dismissing claim when plaintiff's allegations "affirmatively provide[d] a non-discriminatory reason for his termination").[9]

### 4.    Plaintiff Alleges No Retaliatory Conduct

Plaintiff also brings claims of retaliation and failure to prevent retaliation under Title VII and FEHA.  ¶¶90-93, 103, 110.  To state a retaliation claim, Plaintiff must allege "(1) a protected activity; (2) an adverse employment action; and (3) a causal link between the protected activity and the adverse employment action." *Daniels v. Donahoe*, 901 F. Supp. 2d 1238, 1251 (D. Haw. 2012) (Title VII); *see Pinero v. Specialty Rests. Corp.*, 130 Cal. App. 4th 635, 639 (2005)

---

[9] Plaintiff cites *Eng*, ¶158, a case where the plaintiff made specific factual allegations to support his retaliation claims.  552 F.3d at 1073-74 (allegation that defendant "discuss[ed] 'a method of forcing [plaintiff] out of the District Attorney's Office'" showed genuine dispute of fact).  Yet Plaintiff makes no such specific allegations here.

1  (sustaining demurrer to FEHA claim).

2       Plaintiff's claims fail because he does not sufficiently allege a causal link.

3  Plaintiff's Complaint and attached exhibits "refute Plaintiff's assertion that []he was

4  [subjected to adverse employment action] because []he sought religious

5  accommodations." *Conner v. Raver*, 2023 WL 5498728, at *6 (N.D. Cal. 2023).  In

6  *Conner*, for example, the plaintiff sought, but was not granted, a religious

7  exemption from her employer's COVID-19 vaccine and testing requirements.  *Id.*

8  She was then fired for noncompliance.  *Id.*  The court granted the employer's

9  motion to dismiss the retaliation claim because the plaintiff's own exhibits made

10  clear she was terminated for noncompliance, and her allegations that she was

11  terminated for requesting an accommodation were conclusory.  *Id.*

12       As in *Conner*, Plaintiff's allegations "refute" his claim that he was

13  disciplined for seeking an accommodation rather than for admitted noncompliance

14  with County policy.  At most, he was disciplined for lowering the PPF: he concedes

15  that he did and attaches exhibits showing that he was investigated for doing so.  *See*

16  ¶¶35-36; Exs. H, I.  "In the absence of nonconclusory allegations to the contrary, …

17  Plaintiff has failed to state a retaliation claim." *Conner*, 2023 WL 5498728, at *6.

18      **D.**    <u>**The Individual Defendants Are Immune from Suit for Money**</u>

19            <u>**Damages in Their Personal Capacity**</u>

20       Plaintiff asserts his state and federal constitutional claims for monetary

21  damages against three individual Defendants: Chiefs Boiteux, Uehara, and Lester.

22  To the extent the claims seek civil damages, they are barred by qualified immunity

23  and must be dismissed.  "Qualified immunity attaches when an official's conduct

24  does not violate clearly established statutory or constitutional rights of which a

25  reasonable person would have known." *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5

26  (2021).  Because EA-231 and its enforcement did not violate Plaintiff's

27  constitutional rights, the individual Defendants are entitled to qualified immunity.

28  *Lacey v. Maricopa County*, 693 F.3d 896, 915 (9th Cir. 2012) (en banc).  Even if

DEFS.' MOT. TO DISMISS
2:24-CV-04353-JLS-PD

there were a constitutional violation, "existing precedent" did not "place[] the statutory or constitutional question beyond debate," as the above case law shows. *Rivas-Villegas*, 595 U.S. at 5.

Plaintiff's state constitutional claim for damages also fails against the individual Defendants for their actions enforcing EA-231.  Cal. Gov't Code § 820.4; *Malek v. Green*, 2018 WL 2431437, at *20 (N.D. Cal. 2018) (statutory immunity under § 820.4 is "coextensive" with "reasonableness" inquiry of federal qualified immunity).

## V.   <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss the Complaint with prejudice.


Dated: July 1, 2024                    /s/ *Dimitri D. Portnoi*
                                       Dimitri D. Portnoi
                                       Kyle M. Grossman
                                       Marni B. Robinow
                                       O'MELVENY & MYERS LLP

                                       *Attorneys for Defendants County of*
                                       *Los Angeles, Fernando Boiteux,*
                                       *Adam Uehara, and Arthur Lester*

1

## **CERTIFICATE OF COMPLIANCE**

2      The undersigned, counsel of record for Defendants County of Los Angeles,

3  Fernando Boiteux, Adam Uehara, and Arthur Lester, certifies that this brief

4  contains 6,979 words, which complies with the word limit of Local Rule 11-6.1.

5

6   Dated:  July 1, 2024                    O'MELVENY & MYERS LLP

7                                           By:    */s/ Dimitri D. Portnoi*

8                                                  Dimitri D. Portnoi

9                                           *Attorneys for Defendants County of*
                                            *Los Angeles, Fernando Boiteux,*
10                                          *Adam Uehara, and Arthur Lester*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFS.' MOT. TO DISMISS
2:24-CV-04353-JLS-PD