DIMITRI D. PORTNOI (S.B. # 282871)
dportnoi@omm.com
KYLE M. GROSSMAN (S.B. # 313952)
kgrossman@omm.com
MARNI B. ROBINOW (S.B. # 313412)
mrobinow@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street, Suite 1900
Los Angeles, California 90071
Telephone:   (213) 430 6000
Facsimile:   (213) 430 6407

*Attorneys for Defendants County of
Los Angeles, Fernando Boiteux,
Arthur Lester, and Adam Uehara*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| Jeffrey Little,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>Los Angeles County Fire Department, et al.,<br><br>　　　　　　Defendants. | Case No. 2:24-cv-04353-JLS-PD<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>*[Filed concurrently with Notice of Motion and Motion to Dismiss First Amended Complaint and [Proposed] Order]*<br><br>Hearing Date: August 30, 2024<br>Time: 10:30 a.m.<br>Judge:  Hon. Josephine L. Staton<br>Courtroom:  8A<br><br>Am. Compl. Filed:  July 19, 2024<br>Trial Date:  None set |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................1

II.    BACKGROUND ....................................................................................2

    A.     EA-231 ........................................................................................2

    B.     Plaintiff's Requests To Be Exempt from EA-231 ......................3

    C.     Plaintiff Unlawfully Removes PPF Flags...................................4

III.   LEGAL STANDARD .............................................................................5

IV.    ARGUMENT ..........................................................................................6

    A.     Plaintiff's Compelled-Speech Claim Fails Because Ensuring the PPF Is Flown Is Not Protected First Amendment Activity ...................7

    B.     Plaintiff's Remaining Claims Fail Because EA-231 Does Not Conflict with Plaintiff's Practice of His Religious Beliefs...................11

        1.     EA-231 Does Not Conflict with Plaintiff's Religious Beliefs Because It Authorizes Only Government Speech.........11

        2.     Plaintiff's Free Exercise Rights Were Not Violated by Either EA-231 or Defendants' Statements .................................12

        3.     Plaintiff Is Not Entitled To Be Exempt from EA-231...............16

        4.     Plaintiff Alleges No Retaliatory Conduct....................................21

    C.     The Individual Defendants Are Immune from Suit for Money Damages in Their Personal Capacity ...................................................22

V.     CONCLUSION .........................................................................................22

1

# TABLE OF AUTHORITIES

2

**Page**

3

## CASES

4

*Anderson v. Davis Polk & Wardwell LLP*,
   850 F. Supp. 2d 392 (S.D.N.Y. 2012), *abrogated on other grounds*
   *by Bostock v. Clayton County*, 590 U.S. 644 (2020)...........................................20

6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...........................................................................5, 19, 20

7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .........................................................................................6

9

*Berry v. Dep't of Soc. Servs.*,
   447 F.3d 642 (9th Cir. 2006) .........................................................................17

11

*Bolden-Hardge v. Off. of Cal. State Controller*,
   63 F.4th 1215 (9th Cir. 2023)...................................................................17, 19

12

*Brown v. GSA*,
   425 U.S. 820 (1976) .........................................................................................5

14

*Capitol Square Rev. & Advisory Bd. v. Pinette*,
   515 U.S. 753 (1995) .......................................................................................12

15

*Cath. Charities of Sacramento, Inc. v. Superior Ct.*,
   32 Cal. 4th 527 (2004) ...................................................................................16

17

*Christian Legal Soc'y v. Martinez*,
   561 U.S. 661 (2010) .......................................................................................13

19

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*,
   508 U.S. 520 (1993) .......................................................................................13

20

*Coleman v. Miller*,
   117 F.3d 527 (11th Cir. 1997) .......................................................................10

22

*Conner v. Raver*,
   2023 WL 5498728 (N.D. Cal. Aug. 24, 2023).........................................21, 22

23

*Daniels v. Donahoe*,
   901 F. Supp. 2d 1238 (D. Haw. 2012) ...........................................................21

25

*Eclectic Properties E., LLC v. Marcus & Millichap Co.*,
   751 F.3d 990 (9th Cir. 2014)..........................................................................15

26

*EEOC v. Abercrombie & Fitch*,
   966 F. Supp. 2d 949 (N.D. Cal. 2013)............................................................17

28

1

2

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

3

4

*Emilee Carpenter, LLC v. James,*
    107 F.4th 92 (2d Cir. 2024) ....................................................................8

5

*Emp. Div. v. Smith,*
    494 U.S. 872 (1990) ..............................................................................12

6

7

*Eng v. Cooley,*
    552 F.3d 1062 (9th Cir. 2009) ..............................................................21

8

9

*Fields v. City of Tulsa,*
    2012 WL 6214578 (N.D. Okla. 2012) ..................................................18

10

*Fulton v. City of Philadelphia,*
    593 U.S. 522 (2021) ........................................................................12, 15

11

12

*Garcetti v. Ceballos,*
    547 U.S. 410 (2006) ........................................................................7, 11

13

*Janus v. AFSCME, Council 31,*
    585 U.S. 878 (2018) ................................................................................9

14

15

*Johanns v. Livestock Mktg. Ass'n,*
    544 U.S. 550 (2005) ................................................................................8

16

17

*Kennedy v. Bremerton Sch. Dist.,*
    597 U.S. 507 (2022) ..........................................................................9, 12

18

*Lacey v. Maricopa County,*
    693 F.3d 896 (9th Cir. 2012) ................................................................22

19

20

*Lawson v. Washington,*
    296 F.3d 799 (9th Cir. 2002) ................................................................12

21

*Lazy Y Ranch Ltd. v. Behrens,*
    546 F.3d 580 (9th Cir. 2008) ..............................................................6, 9

22

23

*Lichtenstein v. Hargett,*
    83 F.4th 575 (6th Cir. 2023) ................................................................10

24

25

*Malek v. Green,*
    2018 WL 2431437 (N.D. Cal. May 30, 2018) ....................................22

26

*Mandel v. Hafermann,*
    503 F. Supp. 3d 946 (N.D. Cal. 2020) ................................................14

27

28

*Maner v. Dignity Health,*
    9 F.4th 1114 (9th Cir. 2021) ................................................................19

iii

1

# TABLE OF AUTHORITIES
**(continued)**

2

**Page**

3

*Masterpiece Cakeshop, Ltd. v. Colo. C.R. Comm'n,*
4      584 U.S. 617 (2018) ...................................................................................13

5 *Matal v. Tam,*
     582 U.S. 218 (2017) .....................................................................................7
6

*Moody v. NetChoice, LLC,*
7      144 S. Ct. 2383 (2024) .................................................................................8

8 *Muldrow v. City of St. Louis,*
     144 S. Ct. 967 (2024) ...........................................................................17, 19
9

*N. Coast Women's Care Med. Grp., Inc. v. Superior Ct.,*
10      44 Cal. 4th 1145 (2008)..............................................................................16

11 *NRA v. Vullo,*
     144 S. Ct. 1316 (2024) .................................................................................7
12

13 *People v. Rubin,*
     168 Cal. App. 4th 1144 (2008).....................................................................16
14

*Pinero v. Specialty Rests. Corp.,*
15      130 Cal. App. 4th 635 (2005).......................................................................21

16 *Pleasant Grove City v. Summum,*
     555 U.S. 460 (2009) .................................................................................7, 8
17

18 *Rivas-Villegas v. Cortesluna,*
     595 U.S. 1 (2021) .......................................................................................22

19

*Romano v. Rockwell Int'l, Inc.,*
20      14 Cal. 4th 479 (1996).................................................................................5

21 *Rumsfeld v. FAIR, Inc.,*
     547 U.S. 47 (2006) .....................................................................................11
22

23 *Shurtleff v. City of Boston,*
     596 U.S. 243 (2022) .................................................................................7, 8

24 *Taylor v. Hartley,*
     488 F. Supp. 3d 517 (S.D. Tex. 2020)..........................................................20
25

*Thompson v. Donahoe,*
26      961 F. Supp. 2d 1017 (N.D. Cal. 2013)........................................................20

27 *Ting v. Adams & Assocs., Inc.,*
     823 F. App'x 519 (9th Cir. 2020)..................................................................20
28

iv

# TABLE OF AUTHORITIES
**(continued)**

**Page**

*Tolle v. Rockwell Collins Control Techs., Inc.,*
    2020 WL 3316984 (E.D. Va. 2020) .................................................. 18

*Troster v. Pa. State Dep't of Corr.,*
    65 F.3d 1086 (3d Cir. 1995) .............................................................. 10

*W. Va. State Bd. of Educ. v. Barnette,*
    319 U.S. 624 (1943) ....................................................................... 9, 10

*Walker v. Tex. Div.,*
    576 U.S. 200 (2015) ............................................................................ 8

*We The Patriots USA, Inc. v. Conn. Off. of Early Childhood Dev.,*
    76 F.4th 130 (2d Cir. 2023) .............................................................. 14

*We The Patriots USA, Inc. v. Hochul,*
    17 F.4th 266 (2d Cir. 2021) .............................................................. 16

*Wooley v. Maynard,*
    430 U.S. 705 (1977) ............................................................................ 9

## STATUTES

Cal. Gov't Code § 820.4 .......................................................................22

DEFS.' MEM. ISO
MOT. TO DISMISS FAC
2:24-CV-04353-JLS-PD

## I.    **INTRODUCTION**[1]

On June 21, 2023, Plaintiff Jeffrey Little, a lifeguard and Fire Department captain, arrived at work at Dockweiler Beach, where the Progress Pride Flag ("PPF") flew at three locations pursuant to a County of Los Angeles policy celebrating Pride Month.  Before Plaintiff's shift, other lifeguards had raised the PPF under another officer's order.  Yet Plaintiff, who had asked to be exempt from raising the PPF or ordering others to raise it, removed the flag from all three locations.  Plaintiff now asserts various claims resulting from the events that followed.

One simple fact bears emphasis at the start: Plaintiff does not allege he ***ever*** raised, maintained, affirmed, or attended a ceremony involving the PPF.  Instead, he alleges only one instance where he was told to raise the PPF—immediately after he lowered it—but concedes that after he expressed his religious belief against doing so, his superior officer raised the flag instead.  And Plaintiff admits that the policy he challenges requires only that the PPF be flown at Fire Department facilities and that he, as a captain, simply ensure that the flag is flown.

Plaintiff seeks to set aside this Fire Department policy.  But his First Amendment claims fail because he alleges no compelled speech or interference with his religious practice or beliefs.  His employment claims fail because he does not allege discrimination or retaliation for his request for a religious accommodation.  Finally, his claims for money damages against the individual Fire Department Chiefs are barred by qualified and statutory immunity.  The Court should dismiss the First Amended Complaint ("FAC") with prejudice.

---

[1] All emphasis is added to, and citations, alterations, and internal quotation marks omitted from, quoted passages unless otherwise noted.  All paragraph and exhibit references are to Plaintiff's First Amended Complaint unless otherwise noted.

## II.    **BACKGROUND**

### A.    **EA-231**

By flying the PPF, the County shows its "support for LGBTQ+ communities." Ex. 3. The PPF, like the Gilbert Baker Pride flag before it, symbolizes the value and dignity of the LGBTQ+ community.



¶33; Ex. 3. On March 7, 2023, the County Board of Supervisors passed a motion to fly the PPF at "all county facilities" during June, LGBTQ+ Pride Month. Ex. 3. That May, the County Fire Department issued a policy memorandum, EA-231, implementing the motion. Ex. 4. EA-231 requires all captains and site supervisors to "[e]nsure flags are received and flown." *Id.* EA-231 also mandates where the PPF is flown. Recognizing the primacy of the U.S. flag, where a facility can accommodate only one flag, the U.S. flag is flown. Ex. 5. Where a facility can accommodate multiple flags, the PPF is flown. *Id.*

Plaintiff's job responsibilities include "ensuring the enforcement of all rules and ordinances." Ex. 2. EA-231 does not require Department captains to raise, maintain, or attend to the PPF. ¶22; Ex. 4. The Direct Order later issued to Plaintiff instructed him to either

(1) Fly the Progress Pride Flag (PPF) as instructed in Executive Action–231 (EA–231) during the month of June;

OR

(2) Ensure that the PPF is flown as instructed in EA–231 during the month of June.

Ex. 7.

## B.    Plaintiff's Requests To Be Exempt from EA-231

On June 18, 2023, Plaintiff sent an email requesting "to be exempt from adhering to EA-231" because "it infringes on [his] sincere religious beliefs." ¶¶39-40; Ex. 6. While Plaintiff's email did not explain how EA-231 conflicts with his religious beliefs, he now alleges that "personally raising, ensuring raising, maintaining, or otherwise affirming" the PPF violates those beliefs. ¶¶128, 146, 177-79, 183-84, 191-92, 202-03, 219-20. For the first time in the FAC, he also objects to being "redirect[ed]" from his "official lifeguard duties in order to attend to the [PPF] in any manner that would … associate [him] with the public message of" the PPF, including by "being required" "to be physically present for and in the vicinity of any [PPF] raising ceremony." ¶¶112-13. Plaintiff never alleges that he was required to perform any of these actions.

Plaintiff attended an interactive process meeting with a County human resources officer to discuss his religious objection. ¶41. Plaintiff alleges that, in that meeting, he explained that his religious beliefs "did not allow him to raise the [PPF] or ensure that it is raised and properly flown." *Id.* He states that the County agreed not to require him to raise the PPF or "ensure raising" of it. *Id.* Plaintiff alleges that, as a result of the meeting, he "believed he would be able to work in Area 17 [at Dockweiler Beach] … without either violating his religious beliefs or

running afoul of EA-231" because "none of these sites [in Area 17] were then flying the [PPF] or were even capable of doing so."  ¶43.  Yet Plaintiff concedes that the Board motion that EA-231 implemented requires the County's chief executive officer to "explore ways the [PPF] can be flown at *all county facilities*." ¶19; Ex. 3.

### C.    Plaintiff Unlawfully Removes PPF Flags

After the interactive process meeting, on June 21, 2023, Chief Lester allegedly modified the flagpoles in Area 17 so that they could fly the PPF. ¶¶55-57.  Before the start of Plaintiff's scheduled shift, Chief Lester directed the lifeguards at Dockweiler Beach—not Plaintiff—to raise the PPF.  ¶57; Ex. 11. Plaintiff concedes his work shift "starts after the [PPF] needs to be raised … and ends before it needs to be lowered."  ¶99.[2]

When Plaintiff arrived at work, he took down the PPF from his initial worksite, then *traveled to other locations* to remove flags there.  ¶¶61-62; Exs. 11, 18.  Plaintiff's alleged accommodation did not permit him to take down the PPF when it was already flying.[3]  ¶41.  Indeed, Plaintiff has requested that he not lower or even handle the PPF.  Exs. 21, 22.

Chief Lester later directed Plaintiff to raise one of the flags he had taken down.  ¶63; Ex. 11.  Plaintiff declined because it would "violate[] [his] deeply held religious beliefs," so Chief Lester re-raised the PPF himself.  ¶65; Ex. 8.  The next day, Plaintiff was provided with a Direct Order specifying that he is responsible for *either* flying the PPF as instructed in EA-231 *or* ensuring that it is flown.  ¶¶68;

---

[2] While Plaintiff alleges that his "work schedule is not fixed, nor is it permanent," ¶39, he does not allege he *ever* works a shift during which the PPF is raised.

[3] Plaintiff admits as much.  In his FAC, Plaintiff states that his accommodation "*impliedly* granted him the right to conform the flags … to the terms of his accommodation."  ¶60.  In short, Plaintiff's accommodation did not *actually* permit him to lower the PPF; at most, it excused him from needing to raise the PPF or ensure that it was raised.  ¶41.

Ex. 7.  It did not require Plaintiff to raise, maintain, or attend to the flag or specify any method for ensuring the flag be flown.  *Id.*

On June 23, 2023, Plaintiff "was suspended from his role on the background investigation unit" ("BIU").  ¶75(A).

The County continued to discuss with Plaintiff his requested accommodation, and ultimately informed him that he could request accommodations every June.  ¶102.  On May 8, 2024, Plaintiff submitted a new religious accommodation request.  ¶90; Ex. 22.  Plaintiff "secured an effective accommodation" this year, which resulted in his working where the PPF is not flown.  ¶104.  But Plaintiff alleges that this is not a "workable and complete religious accommodation" because the County intends to expand the number of sites where the PPF can be flown.  ¶¶106-10.

On July 16, 2024, the County provided Plaintiff with a Notice of Intent to Suspend for his "unauthorized removal of the [PPF] from three lifeguard stations, which constituted inappropriate conduct towards others and discrimination based on sexual orientation."  ¶80; Ex. 18.  Plaintiff alleges that "[i]f and when this suspension occurs, it will be because the [County] seeks to retaliate against" him.  ¶¶80-83.[4]

## III.   **LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This standard requires more than "labels and conclusions": a "formulaic recitation of the elements of a cause of action will not do."  *Id.*  Nor should courts "accept as true allegations contradicting documents that are referenced in the complaint."  *Lazy Y Ranch Ltd. v. Behrens*,

---

[4] Plaintiff does not allege that the notice constitutes retaliation.  ¶¶80-83, 144-63.  This Court need not reach that question—indeed, such a claim would not be properly before a court until Plaintiff exhausts the administrative remedies available to him.  *See Brown v. GSA*, 425 U.S. 820, 832 (1976) (Title VII); *Romano v. Rockwell Int'l, Inc.*, 14 Cal. 4th 479, 492 (1996) (FEHA).

546 F.3d 580, 588 (9th Cir. 2008). Rather, the allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## IV.  ARGUMENT

Plaintiff's claims fail for one primary reason: ensuring a flag is flown is not privately expressive conduct and does not affirm any message. His Free Exercise, accommodation, and retaliation claims fail for additional reasons: (1) EA-231 is a neutral policy of general applicability that poses no burdens on free exercise of religion; (2) Plaintiff alleges no conflict between his religious beliefs and his job responsibilities, as required by Title VII and FEHA; and (3) any adverse employment action against Plaintiff resulted from his lowering of the PPF in flagrant violation of EA-231. Finally, Plaintiff's claims for money damages against the individual Defendants in their personal capacity are barred by qualified and statutory immunity.

Importantly, EA-231 does ***not*** require Plaintiff to "maintain[]," "attend to," or "otherwise affirm[]" the PPF, or attend PPF "raising ceremon[ies]." ¶¶112-13, 128, 146, 177-79, 183-84, 191-92, 202-03, 219-20. After Defendants moved to dismiss because the original complaint failed to identify what objectionable ***action*** EA-231 requires, Plaintiff amended and added this litany of vague and non-descriptive verbs that are ***not*** included in EA-231 or the Direct Order. *See* Exs. 3-5, 7. After working two Pride Months since EA-231 was issued, Plaintiff alleges no ***facts*** about what EA-231 required him to ***do*** with the PPF. What EA-231 actually requires is that Plaintiff "[e]nsure" the PPF is flown. Ex. 4. Plaintiff's conclusory statements do not change the text of EA-231. *See Lazy Y Ranch*, 546 F.3d at 588 (factual material attached to complaint trumps inconsistent allegations). EA-231 does not compel speech, violate Free Exercise rights, or run afoul of Title VII or FEHA.

A.    **Plaintiff's Compelled-Speech Claim Fails Because Ensuring the PPF Is Flown Is Not Protected First Amendment Activity**

Plaintiff alleges that "the Fire Department is compelling [his] speech by requiring him to affirm the [PPF]" in violation of the Free Speech Clause of the First Amendment. ¶219. This claim fails because the PPF is government speech, not Plaintiff's own speech. The County requires the PPF to be flown; it does not require Plaintiff to engage in privately expressive conduct.

"The Free Speech Clause restricts government regulation of private speech; it does not regulate government speech." *Pleasant Grove City v. Summum*, 555 U.S. 460, 467 (2009). "That makes sense; the government could barely function otherwise." *NRA v. Vullo*, 144 S. Ct. 1316, 1326 (2024). The government can select its own message, as it did with posters during World War II that promoted the war effort; the First Amendment does "not demand the Government balance the message of those posters" by also producing anti-war posters. *Matal v. Tam*, 582 U.S. 218, 234-35 (2017). Nor would the First Amendment demand that pacifist postal employees be exempted from delivering those posters through the mail or that anti-war printers be excused from printing such posters. Political checks, not litigation, are how citizens who disagree with government speech make their voices heard. *Shurtleff v. City of Boston*, 596 U.S. 243, 252 (2022).

Of course, the government "can only communicate through human agents." *Id.* at 268 (Alito, J., concurring). That does not change the principle that "the Free Speech Clause has no application when a government is engaging in its own expressive conduct." *Id.* "Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen," because when public employees act "pursuant to their official duties," they "are not speaking as citizens for First Amendment purposes." *Garcetti v. Ceballos*, 547 U.S. 410, 421-22 (2006).

The PPF is government speech. ***First***, the County set the message, passing a

motion requiring County facilities to fly the PPF in order to convey the County's "support for LGBTQ+ communities." Ex. 3. This means the County can "rely[] on the government-speech doctrine." *Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550, 562 (2005). ***Second***, the motion reflects government control suggestive of government speech. *Summum*, 555 U.S. at 473 (city "effectively controlled" the messages sent by selecting monuments for a park). ***Third***, the County exercises total control over what flags are flown at its buildings, as well as how and when they are flown. Board Policy 3.100 ("Provides County departments with clear protocols for flying the National, State, County and other flags at County facilities."), *available at* https://tinyurl.com/26z46ud2; *see Walker v. Tex. Div.*, 576 U.S. 200, 213 (2015) (state's "active[]" control over license plate designs meant they conveyed government speech). ***Fourth***, the public is "likely to see" the PPF flying at a ***government*** facility as conveying a message "***on the government's behalf***," not Plaintiff's. *Shurtleff*, 596 U.S. at 253-55.

Not only is flying the PPF under EA-231 government speech, but requiring a captain to ensure compliance with a County mandate is not compelled speech. Plaintiff explains at length in his FAC that flags communicate speech, ¶¶23-36, but that is beside the point. "To state a compelled speech claim, it is not enough for a plaintiff to show that the service at issue involves a medium of expression. The plaintiff must also demonstrate that the expressive activity is [his] own—that is, [he] created the expressive conduct [himself] or, by compiling or curating third-party content in some forum, [he] is also engaged in [his] own expressive activity." *Emilee Carpenter, LLC v. James*, 107 F.4th 92, 104 (2d Cir. 2024) (citing *Moody v. NetChoice, LLC*, 144 S. Ct. 2383, 2399-400 (2024)).

EA-231 requires no expressive activity from Plaintiff—only that he "[e]nsure flags are received and flown" and that the PPF "is folded and stored for use the following year." Ex. 4. EA-231 does not require any salute to the PPF, *compare* ¶¶1-2, 4-5, 38; any pledge or affirmation, *compare* ¶¶38, 222(a); any contribution

of funds, *compare* ¶¶5, 222(a); or any parade or group activity, *compare* ¶222(a). Although the FAC hypothesizes about flag-raising ceremonies, EA-231 requires no ceremony whatsoever. ¶113.

Even if EA-231 required Plaintiff to raise, maintain, or attend to the flag, EA-231 would still do no more than require Plaintiff to "convey a government-created message" "pursuant to government policy" that the County "paid him to produce." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 529-30 (2022). Ensuring that flags are properly flown is "ordinarily within the scope" of Plaintiff's duties as a captain. *Id.*; Ex. 2 (lifeguard captains must "ensur[e] the enforcement of all rules and ordinances").[5] And Plaintiff nowhere alleges that ensuring flags are raised—or raising and lowering flags himself—was not part of his job duties before June 2023.

Plaintiff repeatedly compares his situation to that of the plaintiffs in *West Virginia State Board of Education v. Barnette*, 319 U.S. 624 (1943). ¶¶1, 5, 215, 218, 222(a). But his reliance on that canonical case is misplaced. In *Barnette*, the Supreme Court rejected a law requiring schoolchildren to salute and pledge allegiance to the U.S. flag or face expulsion. 319 U.S. at 627-29. In invalidating the law, the Court observed that "the compulsory flag salute and pledge requires ***affirmation of a belief and an attitude of mind***." *Id.* at 633. The schoolchildren were "required … to participate in daily public ***ceremonies*** by honoring the flag ***both with words and traditional salute gestures***." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977).

---

[5] Plaintiff cannot manufacture a factual dispute by making conclusory allegations that "[t]he role of Lifeguard Captain is a public safety position"—especially not when these non-factual allegations contradict the County's own description of the job of lifeguard captain, which entails "ensuring the enforcement of ***all rules and ordinances***," and has since 2006. ¶¶48, 51-53; Ex. 2; *see Lazy Y Ranch*, 546 F.3d at 588. Plaintiff's citations to *Kennedy* and *Janus v. AFSCME, Council 31*, 585 U.S. 878 (2018), are thus inapposite. ¶49.

DEFS.' MEM. ISO
MOT. TO DISMISS FAC
2:24-CV-04353-JLS-PD

1    Courts have since emphasized how far West Virginia's law went in

2    compelling speech.  In *Coleman v. Miller*, a Black Georgia resident challenged

3    Georgia's flying of its state flag (which included Confederate symbols) on a

4    compelled-speech theory.  117 F.3d 527, 531 (11th Cir. 1997) (per curiam).  He

5    argued that the flag "violates his First Amendment rights by compelling him to

6    endorse a message that he finds morally objectionable."  *Id.*  But unlike the salute

7    and pledge in *Barnette*, the mere flying of the flag involved "no government action

8    that 'requires affirmation of a belief and an attitude of mind.'"  *Id.* (quoting 319

9    U.S. at 633).  Entering buildings that fly a flag "does not manifest any particular

10   attitude or belief and does not associate appellant with the flag's message."  *Id.*

11   Similarly, in *Troster v. Pennsylvania State Department of Corrections*, a court

12   found an administrative requirement that correctional officers wear a U.S. flag

13   patch on their uniform non-expressive.  65 F.3d 1086, 1091 (3d Cir. 1995).

14   Wearing a flag patch on a uniform does not require an officer "to profess any

15   statement of belief or to engage in any ceremony of assent to one."  *Id.*

16   Plaintiff's job responsibilities are not privately expressive conduct.

17   Plaintiff's job is to ensure that the PPF flies properly under County policy.  Exs. 2,

18   4.  That responsibility does not "require[] affirmation of a belief and an attitude of

19   mind."  *Barnette*, 319 U.S. at 633.  Nor does it "manifest any particular attitude or

20   belief" or "associate [Plaintiff] with the flag's message."  *Coleman*, 117 F.3d at

21   531.  And Plaintiff is not required to affirm the message of inclusivity of the PPF

22   through his own speech or his own actions.  *See Lichtenstein v. Hargett*, 83 F.4th

23   575, 594-95 (6th Cir. 2023).  Plaintiff seeks to compare himself to the plaintiffs in

24   *Barnette* and other historic compelled-speech cases, but his relation to the PPF is

25   less like the students in *Barnette* and more like the Georgia citizen in *Coleman*.

26   Peppering his FAC with conclusory buzzwords like "affirm" and "ceremonies"

27   does not transform his job duties into privately expressive conduct in the absence of

28

more specific factual allegations.[6]

Chief Justice Roberts wrote for a unanimous Court that

[c]ompelling a law school that sends scheduling e-mails for other recruiters to send one for a military recruiter is simply not the same as forcing a student to pledge allegiance, or forcing a Jehovah's Witness to display the motto "Live Free or Die," and it trivializes the freedom protected in *Barnette* and *Wooley* to suggest that it is.

*Rumsfeld v. FAIR, Inc.*, 547 U.S. 47, 62 (2006).  Likewise, requiring a Fire Department captain to enforce County policy by ensuring that the PPF is flown alongside the U.S. flag—especially when that captain is already charged with enforcing other laws, policies, and directives—is no First Amendment violation.

## B.    **Plaintiff's Remaining Claims Fail Because EA-231 Does Not Conflict with Plaintiff's Practice of His Religious Beliefs**

All of Plaintiff's remaining claims—his accommodation and retaliation claims under Title VII and FEHA, as well as his Free Exercise claims under the U.S. and California constitutions—fail for this same reason: Defendants have never required Plaintiff to express a viewpoint at odds with his religious beliefs.  Each of these claims fails for additional, separate reasons as well.

### 1.    **EA-231 Does Not Conflict with Plaintiff's Religious Beliefs Because It Authorizes Only Government Speech**

Plaintiff's core objection through all of his claims is that EA-231 requires him to affirm an expressive message that conflicts with his religious beliefs.  ¶4. For the reasons just discussed, EA-231 does not require Plaintiff to convey any privately expressive message, so it cannot conflict with his stated religious beliefs.

---

[6] Nor do Plaintiff's allegations about the PPF constituting a "matter of public concern" automatically transform his job duty into expressive conduct.  ¶¶221-22. *Garcetti* establishes that "[w]hen a public employee speaks pursuant to employment responsibilities," whether or not they speak on a matter of public concern, "there is no relevant analogue to speech by citizens who are not government employees," and the First Amendment is not implicated.  547 U.S. at 423-24.

DEFS.' MEM. ISO
MOT. TO DISMISS FAC
2:24-CV-04353-JLS-PD

Because Plaintiff bases his claims on this expressive-conduct theory, they all fail. The Free Exercise and Free Speech clauses "work in tandem" to protect "expressive religious activities." *Kennedy*, 597 U.S. at 523; *see Capitol Square Rev. & Advisory Bd. v. Pinette*, 515 U.S. 753, 760 (1995) ("private religious speech … is as fully protected under the Free Speech Clause as secular private expression"). Expressive religious conduct is likewise protected under Title VII and FEHA where it would "conflict" with job requirements. *Lawson v. Washington*, 296 F.3d 799, 804 (9th Cir. 2002) (state trooper could not be discharged for refusing on religious grounds to salute the U.S. flag and swear his allegiance to the United States and Washington State). Because Plaintiff conveys no personal message when he fulfills his job duties under EA-231, however, his claims under the Free Exercise Clause, Title VII, and FEHA all fail.

### 2. Plaintiff's Free Exercise Rights Were Not Violated by Either EA-231 or Defendants' Statements

Plaintiff raises two challenges to EA-231 under the Free Exercise Clause. First, he contends that EA-231 is not neutral because of alleged religious animus. Second, he asserts that it is not generally applicable because it does not apply to all workstations or all County employees. Neither of these claims is valid.

Laws that incidentally burden religion "are ordinarily not subject to strict scrutiny under the Free Exercise Clause so long as they are neutral and generally applicable." *Fulton v. City of Philadelphia*, 593 U.S. 522, 533 (2021) (citing *Emp. Div. v. Smith*, 494 U.S. 872 (1990)). The Board motion and EA-231 are neutral and generally applicable: They apply to all County employees without regard to religion, and neither evinces intolerance of religious beliefs or restricts religious practice.

**EA-231 is neutral.** "Government fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature." *Id.* at 533. When the government objects to conduct "because it is

DEFS.' MEM. ISO
MOT. TO DISMISS FAC
2:24-CV-04353-JLS-PD

undertaken for religious reasons," it does not act neutrally toward religion. *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 532 (1993). A plaintiff must establish that the government has prohibited a practice "because of," not merely in spite of, the practice's religious motivation. *Id.* at 533; *see Christian Legal Soc'y v. Martinez*, 561 U.S. 661, 700 (2010) (Stevens, J., concurring) ("[I]t is a basic tenet of First Amendment law that disparate impact does not, in itself, constitute viewpoint discrimination."). The plaintiff must show that the government expressed "hostility to a religion or religious viewpoint." *Masterpiece Cakeshop, Ltd. v. Colo. C.R. Comm'n*, 584 U.S. 617, 638 (2018). Relevant factors "include the historical background of the decision under challenge, the specific series of events leading to the enactment or official policy in question, and the legislative or administrative history, including contemporaneous statements made by members of the decisionmaking body." *Id.* at 639.

Church of Lukumi and *Masterpiece Cakeshop* are instructive. In *Church of Lukumi*, the city did not prohibit "cruelty to animals," or even "slaughter" of animals, across the board. 508 U.S. at 538. Instead, it prohibited killings "for religious reasons" but allowed for "almost all killings of animals except for religious sacrifice" (even as it contorted the definition to permit kosher slaughter). *Id.* at 536. Moreover, the city council expressed "significant hostility" toward the Santeria religion—asking, for example, "What can we do to prevent the Church from opening?" *Id*. at 541. The city councilmembers thus "had as their object the suppression of" Santeria. *Id.* at 542. And in *Masterpiece Cakeshop*, the state body that issued the challenged order "disparaged [the plaintiff's] religion … by describing it as despicable, and also by characterizing it as merely rhetorical— something insubstantial and even insincere." 584 U.S. at 635.

Both cases involved "contemporaneous statements made by members of the decisionmaking body" and a "historical background" that demonstrated anti-religious animus. 508 U.S. at 540; 584 U.S. at 639. Plaintiff alleges no such facts

DEFS.' MEM. ISO
MOT. TO DISMISS FAC
2:24-CV-04353-JLS-PD

here: He does not allege that the Board or the Acting Chief Deputies who issued EA-231 made *any* statement respecting—or disrespecting—religion or any religious practice.

Instead of focusing on statements preceding or contemporaneous with EA-231—the order Plaintiff seeks to "set aside," ¶209—Plaintiff describes statements and actions of three County employees that occurred shortly *after* Plaintiff violated EA-231 by removing the PPF from multiple subareas.  But these employees are not members of any decisionmaking body, and their statements and actions do not retroactively color EA-231.  While Plaintiff alleges that he perceived the conduct as "abusive, inappropriate, harassing, and discriminatory," ¶205, he must allege something more than vague mistreatment or hostility to claim religious animus.  *We The Patriots USA, Inc. v. Conn. Off. of Early Childhood Dev.*, 76 F.4th 130, 148 (2d Cir. 2023) ("acknowledg[ing] the impact" a law might have on religious beliefs is not evidence of animus).  The few statements he identifies— Chief Boiteux's statements that Plaintiff is "an LA County Employee" and that his "religious beliefs do not matter," ¶207—are far from the hostile sentiment at issue in *Church of Lukumi* and *Masterpiece Cakeshop*.  Critically, they do not convey that a secular reason for violating EA-231 by removing the PPF would have been condoned, as opposed to Plaintiff's religious reason.[7]

Finally, the Court need not credit Plaintiff's characterizations that these three

---

[7] The FAC adds an allegation that Chief Boiteux told Chief Lester that "he believed no religious accommodation should be extended to" Plaintiff "because of" Chief Boiteux's "animus against [Plaintiff's] religious beliefs."  ¶55.  Plaintiff further alleges that Chief Boiteux and Chief Lester "conspired to practically defeat [Plaintiff's] religious accommodation by modifying the flagpoles at the Area 17 sites so that they could fly [PPFs.]"  ¶204.  These statements do not affect EA-231's neutrality for the reasons explained above; they are also conclusory and devoid of context.  *See Mandel v. Hafermann*, 503 F. Supp. 3d 946, 985 (N.D. Cal. 2020) ("conclusory allegations that are not supported by any factual allegations … fail to state a claim").

individuals acted in a "discriminatory" manner, especially when an innocent alternative is so readily obvious. "When considering plausibility, courts must also consider an obvious alternative explanation for defendant's behavior." *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014). Plaintiff alleges, and his exhibits support, that he removed the PPF without permission, without consulting his superior officers, and in the presence of subordinates. ¶¶60-62; Exs. 11, 18. He did so even though he knew at the time that a superior officer had ordered that the flags be flown. Ex. 18. He then traveled to two different locations to remove the PPF. *Id.* The obvious explanation is that Plaintiff's superior officers, confronted with Plaintiff's rank insubordination in the presence of his own subordinates, ordered that he replace property that he had unlawfully removed. When he did not, Plaintiff's superior officer raised the flag instead. Ex. 8. Plaintiff's allegations do nothing to dispel this obvious explanation.

   **EA-231 is generally applicable.** "A law is not generally applicable if it invites the government to consider the ***particular reasons*** for a person's conduct by providing a mechanism for ***individualized exemptions***." *Fulton*, 593 U.S. at 533. In *Fulton*, for example, a city required foster-care services to place children with same-sex parents unless the city granted a discretionary exception. *Id.* at 535. The Court held that "a formal system of entirely discretionary exceptions" rendered the "requirement not generally applicable." *Id.* at 536.

   Plaintiff's allegations are nothing like the facts of *Fulton*. Plaintiff contends that EA-231 is not "generally applicable" because it does not apply to County facilities without infrastructure to fly the PPF and requires only captains and site supervisors to ensure the PPF is flying. ¶¶179-82. These arguments miss the point. The general-applicability requirement ensures that the government cannot, through the guise of individualized assessments, "decide which reasons for not complying with the policy are worthy of solicitude." *Fulton*, 593 U.S. at 537. But a government policy "is not individualized simply because it contains express

15

exceptions for *objectively* defined categories." *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 288 (2d Cir. 2021).

Despite Plaintiff's oblique references to "discretionary, ad hoc exemptions," ¶181, EA-231 provides no exemptions for individual employees. While it recognizes physical limitations (such as the lack of a viable flagpole), those limitations reflect the Board's prioritization of flying the U.S. flag—not a system of discretionary and individualized exemptions or religious animus or endorsement. Nor is EA-231 not generally applicable because it relies on captains and site supervisors, along with the construction and maintenance division, for implementation. These are objectively defined categories of employees who, as officers in a hierarchical agency, are logical choices to ensure that the Board's policy is implemented.

Because EA-231 is neutral and generally applicable, it does not violate the Free Exercise Clause. Plaintiff's challenge under the California Constitution fares no better. The California Constitution is coextensive with the Free Exercise Clause: it "protects the free exercise of religion, not peripheral activities" like ensuring that flags are properly flown. *People v. Rubin*, 168 Cal. App. 4th 1144, 1150-51 (2008) (citing *Cath. Charities of Sacramento, Inc. v. Superior Ct.*, 32 Cal. 4th 527 (2004), and *N. Coast Women's Care Med. Grp., Inc. v. Superior Ct.*, 44 Cal. 4th 1145 (2008)).[8]

### 3.    Plaintiff Is Not Entitled To Be Exempt from EA-231

Plaintiff brings two statutory claims alleging that Defendants failed to accommodate his religious beliefs by not altering or vacating EA-231 with respect to him. ¶41; Ex. 6. But neither Title VII nor FEHA requires Defendants to grant

---

[8] Plaintiff asserts—citing outdated case law that applies federal case law predating important precedents like *Fulton* and *Smith*—that the California Constitution sweeps broader than the U.S. Constitution. ¶190. The Court need not accept this legal conclusion. Regardless, as *Rubin* illustrates, the outcome would be the same.

1    Plaintiff this accommodation.

2        To state an accommodation claim under Title VII or FEHA, a plaintiff must

3    allege that "(1) he had a bona fide religious belief, the ***practice*** of which conflicts

4    with an employment duty; (2) he informed his employer of the belief and conflict;

5    and (3) the employer … subjected him to an adverse employment action because of

6    his inability to fulfill the job requirement." *Berry v. Dep't of Soc. Servs.*, 447 F.3d

7    642, 655 (9th Cir. 2006).[9]  Under the first prong, a plaintiff must allege that an

8    employment requirement ***actually conflicted*** with his beliefs.  *Bolden-Hardge v.*

9    *Off. of Cal. State Controller*, 63 F.4th 1215, 1223 (9th Cir. 2023).  And under the

10   third, an employment action must cause "some harm" to the plaintiff and "respect[]

11   an identifiable term or condition of employment" to be adverse.  *Muldrow v. City of*

12   *St. Louis*, 144 S. Ct. 967, 974 (2024).  Plaintiff does not allege facts sufficient to

13   meet either of these prongs.

14       Plaintiff's shifting requests and allegations make this claim difficult to

15   understand, but that lack of clarity should not work as a smokescreen to allow his

16   inadequate claim to survive.  He alleges that his initial request was simply to be

17   exempt from EA-231 writ large.  ¶40.  Elsewhere, Plaintiff, in his own words,

18   objected to "working under/near a PPF site," Ex. 22 (August 21, 2023 email), or

19   "working in a building or station near the [PPF] (or any form of the Pride Flag)," *id.*

20   (July 23, 2023 email).  At times, Plaintiff has objected to "personally, directly"

21   lowering the PPF, *id.*, or "handl[ing]" it, ¶22; Ex. 21 (April 19, 2024 letter), Ex. 22

22   (May 8, 2024 email)—although Plaintiff ***voluntarily lowered and handled*** the PPF

23   on June 21, 2023.  He alleges that in an oral conversation, he stated that his only

24   conflict was "to raise the [PPF] or ensure that it is raised and properly flown."  ¶41.

25   But then he alleges that his accommodation was violated when ***another*** officer

26   ordered ***another*** lifeguard to raise the PPF before Plaintiff's shift even began.  ¶59.

27   [9] The analysis is the same under FEHA and Title VII.  *EEOC v. Abercrombie &*

28   *Fitch*, 966 F. Supp. 2d 949, 961 (N.D. Cal. 2013).

DEFS.' MEM. ISO
MOT. TO DISMISS FAC
2:24-CV-04353-JLS-PD

As Plaintiff put it in the report he filed the next morning, he stated that he "could not in good conscience work under that flag" and that the PPF was "10 feet from [his] work desk." Ex. 8.

Plaintiff's shifting statements and allegations provide a constantly moving target. He alleges that he asked a human resources officer on June 18, 2023 to be exempt from raising the PPF and ensuring that it is flown. ¶40. Yet he alleges that it is a violation of that accommodation that a senior officer ordered subordinates to raise the PPF—such that Plaintiff did not need to raise the PPF or order his subordinates to do so. ¶59. And when Plaintiff told that senior officer, for the first time, that Plaintiff objected to raising the flag, the senior officer raised the flag instead—yet Plaintiff still filed a complaint because working near the PPF apparently violated his accommodation. Ex. 22. Plaintiff's counsel later asserted that the County had mischaracterized Plaintiff's request—that it was not "solely" about "not wanting to work at locations where the pride flag was flown" and that Plaintiff's only request was in fact "that the Department not require him to raise the pride flag." Ex. 21.

**No conflict with an employment duty.** Regardless of how Plaintiff frames his job responsibilities, or how he frames his conflict, he does not plausibly allege that any of his responsibilities conflict with his religious beliefs. In spite of Plaintiff's allegations about raising, maintaining, and attending to the PPF, all EA-231 requires is that he ensure that it is flown. Ex. 4. Yet it does not pose a conflict to require an employee to work at a location that flies a Pride flag. *See Tolle v. Rockwell Collins Control Techs., Inc.*, 2020 WL 3316984, at *5 (E.D. Va. 2020) ("merely expecting Plaintiff to attend work in the same location that a Gay Pride flag is generally displayed for one month does not amount to asking him to adhere to a conflicting employment requirement"). Nor is there any religious conflict with Plaintiff needing to instruct other employees to do their job. *See Fields v. City of Tulsa*, 2012 WL 6214578, at *5-6 (N.D. Okla. 2012) (requirement

DEFS.' MEM. ISO
MOT. TO DISMISS FAC
2:24-CV-04353-JLS-PD

that a police captain instruct his subordinates to attend a law-enforcement appreciation event at the Islamic Society of Tulsa did not implicate the First Amendment).  Ultimately, the County need not allow Plaintiff to violate County policy by lowering the PPF.  *Bolden-Hardge*, 63 F.4th at 1225 (no requirement to grant accommodation that would violate the law unless "there is no indication of an actual threat of enforcement").

**No adverse employment action caused by failure to accommodate.**  To start, Plaintiff alleges only one potentially actionable adverse employment action— his suspension from the BIU.  ¶75(A).

To be sure, Plaintiff identifies interactions he had that he asserts were retaliatory: he alleges that Chief Lester's "words, demeanor, and tone" on June 21, 2023 were "abusive, inappropriate, harassing, and discriminatory," and that Chief Boiteux's "demeanor" on June 22, 2023 was "physically intimidating."  ¶¶64, 70; *see* Ex. 8.  But "Title VII is not a 'general civility code,'" and conduct is not unlawful simply because it "more than likely harms morale."  *Maner v. Dignity Health*, 9 F.4th 1114, 1127 (9th Cir. 2021).  In any event, these interactions do not "respect[] an identifiable term or condition of employment"—as compared with, say, a demotion.  *Muldrow*, 144 S. Ct. at 974.[10]

Plaintiff fails to adequately allege that Defendants' failure to accommodate his religious beliefs ***caused*** his BIU suspension—the only employment action that could potentially be considered adverse.  Plaintiff's allegations related to the BIU are sparse.  Plaintiff alleges obliquely that the person who informed him of the

---

[10] Nor is the fact that Chief Boiteux allegedly ordered Chief Lester to modify the flagpoles at Dockweiler Beach to fly the PPF an adverse employment action.  Thus, even if this Court credits Plaintiff's wholly conclusory allegation that Chief Boiteux ordered this modification out of "animus against [Plaintiff's] religious beliefs," ¶55, that does not state a claim under Title VII or FEHA.  That said, bare allegations of animus are the quintessential conclusory allegations that this Court need not accept, and this Court should disregard them accordingly.  *Iqbal*, 556 U.S. at 682.

DEFS.' MEM. ISO
MOT. TO DISMISS FAC
2:24-CV-04353-JLS-PD

suspension said something "*to the effect of*: 'I'm just following orders, don't shoot the messenger.'" ¶75(A).  Plaintiff also alleges "that individual's *demeanor was indicating* that he knew or suspected that the suspension was retaliatory"—though Plaintiff does not specify any *facts* about his interaction with this unidentified individual that would support his characterization of his demeanor.  And, in any event, Plaintiff seems to disclaim that any of the individual defendants were involved, because he attributes the suspension to an unexplained "breach of privacy," ¶75, not to any retaliatory intent.

Without an allegation of *who* suspended Plaintiff, and whether that person knew Plaintiff had requested a religious accommodation, Plaintiff cannot establish the necessary causal link—and Plaintiff's newly added conclusory allegations about the "demeanor" and "effect" of an unidentified non-party, who is *not* alleged to be the decisionmaker for his suspension, do not help him.  *See Thompson v. Donahoe*, 961 F. Supp. 2d 1017, 1031 (N.D. Cal. 2013) ("speculative and conclusory" causation allegations do not overcome lack of knowledge of the decisionmaker); *Taylor v. Hartley*, 488 F. Supp. 3d 517, 544 (S.D. Tex. 2020) (dismissing disability discrimination claim where no allegation individual accused of discrimination knew about disability).  Where, as here, "a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678; *see Ting v. Adams & Assocs., Inc.*, 823 F. App'x 519, 522 (9th Cir. 2020) (affirming dismissal where plaintiff failed to allege facts supporting an inference of causation); *Anderson v. Davis Polk & Wardwell LLP*, 850 F. Supp. 2d 392, 412 (S.D.N.Y. 2012) (allegations that plaintiff "was discriminated against because [he is] heterosexual" were "conclusory" and insufficient), *abrogated on other grounds by Bostock v. Clayton County*, 590 U.S. 644 (2020).  At most, Plaintiff suggests a non-discriminatory reason for his suspension—his lowering of the PPF on June 21.  *See* ¶78; Exs. 10, 11, 18; *Anderson*, 850 F. Supp. 2d at 412 (dismissing claim when

DEFS.' MEM. ISO
MOT. TO DISMISS FAC
2:24-CV-04353-JLS-PD

plaintiff's allegations "affirmatively provide[d] a non-discriminatory reason for his termination").[11]

### 4.    Plaintiff Alleges No Retaliatory Conduct

Plaintiff also brings claims of retaliation and failure to prevent retaliation under Title VII and FEHA.  ¶¶146-50, 159, 166.  To state a retaliation claim, Plaintiff must allege "(1) a protected activity; (2) an adverse employment action; and (3) a causal link between the protected activity and the adverse employment action." *Daniels v. Donahoe*, 901 F. Supp. 2d 1238, 1251 (D. Haw. 2012) (Title VII); *see Pinero v. Specialty Rests. Corp.*, 130 Cal. App. 4th 635, 639 (2005) (sustaining demurrer to FEHA claim).

Plaintiff's claims fail because he does not sufficiently allege a causal link. Plaintiff's FAC and exhibits "refute Plaintiff's assertion that [he] was [subjected to adverse employment action] because [he] sought religious accommodations." *Conner v. Raver*, 2023 WL 5498728, at *6 (N.D. Cal. 2023).  In *Conner*, for example, the plaintiff sought, but was not granted, a religious exemption from her employer's COVID-19 vaccine and testing requirements.  *Id.*  She was then fired for noncompliance.  *Id.*  The court granted the employer's motion to dismiss the retaliation claim because the plaintiff's own exhibits made clear she was terminated for noncompliance, and her allegations that she was terminated for requesting an accommodation were conclusory.  *Id.*

As in *Conner*, Plaintiff's allegations "refute" his claim that he was disciplined for seeking an accommodation rather than for admitted noncompliance with County policy.  At most, he was disciplined for lowering the PPF: he concedes that he did and attaches exhibits showing that he was investigated for doing so.  *See*

---

[11] Plaintiff cites *Eng v. Cooley*, ¶217, a case where the plaintiff made specific factual allegations to support his retaliation claims.  552 F.3d 1062, 1073-74 (9th Cir. 2009) (allegation that defendant "discuss[ed] 'a method of forcing [plaintiff] out of the District Attorney's Office'" showed genuine dispute of fact).  Plaintiff makes no such specific allegations here.

¶¶78-79; Exs. 10, 11, 18.  "In the absence of nonconclusory allegations to the contrary, … Plaintiff has failed to state a retaliation claim."  *Conner*, 2023 WL 5498728, at *6.

## C.    The Individual Defendants Are Immune from Suit for Money Damages in Their Personal Capacity

Plaintiff asserts his state and federal constitutional claims for monetary damages against three individual Defendants: Chiefs Boiteux, Uehara, and Lester.  To the extent the claims seek civil damages, they are barred by qualified immunity and must be dismissed.  "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021).  Because EA-231 and its enforcement did not violate Plaintiff's constitutional rights, the individual Defendants are entitled to qualified immunity.  *Lacey v. Maricopa County*, 693 F.3d 896, 915 (9th Cir. 2012) (en banc).  Even if there were a constitutional violation, "existing precedent" did not "place[] the statutory or constitutional question beyond debate," as the above case law shows.  *Rivas-Villegas*, 595 U.S. at 5.

Plaintiff's state constitutional claim for damages also fails against the individual Defendants for their actions enforcing EA-231.  Cal. Gov't Code § 820.4; *Malek v. Green*, 2018 WL 2431437, at *20 (N.D. Cal. 2018) (statutory immunity under § 820.4 is "coextensive" with "reasonableness" inquiry of federal qualified immunity).

## V.    CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint with prejudice.

Dated: August 2, 2024

/s/ *Dimitri D. Portnoi*
Dimitri D. Portnoi
Kyle M. Grossman
Marni B. Robinow
O'MELVENY & MYERS LLP

*Attorneys for Defendants County of Los Angeles, Fernando Boiteux, Adam Uehara, and Arthur Lester*

DEFS.' MEM. ISO
MOT. TO DISMISS FAC
2:24-CV-04353-JLS-PD

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants County of Los Angeles, Fernando Boiteux, Adam Uehara, and Arthur Lester, certifies that this brief contains 6,995 words, which complies with the word limit of Local Rule 11-6.1.

Dated: August 2, 2024                    O'MELVENY & MYERS LLP

                                                    By:   */s/ Dimitri D. Portnoi*
                                                            Dimitri D. Portnoi

                                                    *Attorneys for Defendants County of
                                                    Los Angeles, Fernando Boiteux,
                                                    Adam Uehara, and Arthur Lester*

DEFS.' MEM. ISO
MOT. TO DISMISS FAC
2:24-CV-04353-JLS-PD