Charles S. LiMandri, SBN 110841
 cslimandri@limandri.com
Paul M. Jonna, SBN 265389
 pjonna@limandri.com
Jeffrey M. Trissell, SBN 292480
 jtrissell@limandri.com
Joshua A. Youngkin, SBN 332226
 jyoungkin@limandri.com
LiMANDRI & JONNA LLP
 *as Special Counsel to*
 THOMAS MORE SOCIETY
P.O. Box 9120
Rancho Santa Fe, CA 92067
Telephone: (858) 759-9930
Facsimile: (858) 759-9938

*Attorneys for Plaintiff*
*Captain Jeffrey Little*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAPTAIN JEFFREY LITTLE, an individual,<br><br>                Plaintiff,<br><br>        v.<br><br>LOS ANGELES COUNTY FIRE DEPARTMENT, a public entity, et al.<br><br>                Defendant. | **Case No.: 2:24-cv-4353-JLS-PD**<br><br>**Memorandum of Points & Authorities in Support of Plaintiff's Opposition to Defendants' Motion to Dismiss the First Amended Complaint**<br><br>Judge:          Hon. Josephine L. Staton<br>Courtroom:    8A<br>Hearing Date:  August 30, 2024<br>Hearing Time: 10:30 a.m.<br><br>Action Filed:  May 24, 2024 |

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................9

FACTUAL & PROCEDURAL BACKGROUND.....................................................10

    A.    The County decides to fly the Pride Flag at all County facilities during Pride Month .................................................................10

    B.    Captain Little requests a religious accommodation, which is granted and then revoked, and for which he receives angry retaliation .......................................................................11

    C.    Captain Little files a religious discrimination complaint with the Fire Department, and suffers retaliation ...............................12

    D.    Developments During Pride Month 2024 ...........................................13

LEGAL STANDARD.............................................................................................13

ARGUMENT.......................................................................................................14

    I.    Claims 1 & 2: Plaintiff's Failure to Accommodate Claims Are Adequately Pleaded.........................................................................14

    II.    Claims 3, 4 & 5: Plaintiff's Retaliation Claims Are Adequately Pleaded.........................................................................15

    III.    Plaintiff Little's Free Exercise Claims are Adequately Pleaded ...............................................................................................16

        A.    Claim 6: The Fire Department's Application of its Pride Flag Policy to Captain Little is Not Generally Applicable...................................................................................16

            1.    Legal Background on General Applicability .................16

            2.    Application: Plaintiff Has Adequately Pleaded the Existence of Categorical and Discretionary Exemptions ....................................................................18

        B.    Claim 7: The Department's Application of its Pride Flag Policy to Captain Little Violates the California Constitution......................................................................................19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

    C.    Claim 8: The Fire Department's Application of its Pride Flag Policy to Captain Little is Not Neutral ...................20

        1.    Legal Background on Neutrality ....................................20

        2.    Application: Plaintiff Has Adequately Pleaded Non-Neutrality............................................................21

IV.   Claim 9: Plaintiff's Free Speech Claim is Adequately Pleaded .............................................................................22

    A.    All Speech Relating to LGBTQ Issues is of Public Concern ......................................................................22

    B.    When Plaintiff Little Flies the Pride Flag, that is Not Government Speech Because it is Not A Necessary Aspect of His Providing Lifeguard Services ............................23

    C.    There Is No Legitimate Administrative Interest Requiring Plaintiff Little to Fly the Pride Flag ........................26

V.    The Determination of Qualified Immunity Is Not Ripe .....................27

    A.    Legal Background on Qualified Immunity...............................27

    B.    Adjudication of Qualified Immunity is Not Ripe.....................29

CONCLUSION..............................................................................30

CERTIFICATE OF COMPLIANCE......................................................30

# TABLE OF AUTHORITIES

## Cases

*303 Creative LLC v. Elenis* ................................................................................. 10, 24
   600 U.S. 570 (2023)

*Aguayo v. U.S. Bank* ............................................................................................. 14
   653 F.3d 912 (9th Cir. 2011)

*Anderson v. Hermosa Beach* ................................................................................. 25
   621 F.3d 1051 (9th Cir. 2010)

*Ashaheed v. Currington* ........................................................................................ 29
   7 F.4th 1236 (10th Cir. 2021)

*Ashcroft v. Iqbal* .................................................................................................. 13
   556 U.S. 662 (2009)

*Axson-Flynn v. Johnson* ........................................................................................ 28
   356 F.3d 1277 (10th Cir. 2004)

*Bacon v. Woodward* .............................................................................................. 17
   104 F.4th 744 (9th Cir. 2024)

*Beard v. Falkenrath* .............................................................................................. 26
   97 F.4th 1109 (8th Cir. 2024)

*Beaver v. Federal Way* .......................................................................................... 27
   301 F. App'x 704 (9th Cir. 2008)

*Bell Atl. Corp. v. Twombly* .................................................................................... 13
   550 U.S. 544 (2007)

*Blackhawk v. Penn.* ............................................................................................... 17
   381 F.3d 202 (3d Cir. 2004)

*Bowen v. Roy* ........................................................................................................ 20
   476 U.S. 693 (1986)

*Brown v. Calif. Dep't of Transp.* ........................................................................... 25
   260 F. Supp. 2d 959 (N.D. Cal. 2003)

*Carson v. Makin* ................................................................................................... 21
   596 U.S. 767 (2022)

*Cath. Charities of Sacramento, Inc. v. Superior Ct.* ......................................... 19, 20
   32 Cal. 4th 527 (2004)

*Church of Lukumi Babalu Aye, Inc. v. Hialeah* ................................................. 17, 20
   508 U.S. 520 (1993)

*Connick v. Myers* .................................................................................................. 22
   461 U.S. 138 (1983)

# TABLE OF AUTHORITIES - CONT'D

*Dahl v. W. Mich. Univ.* ........................................................................................... 17
    15 F.4th 728 (6th Cir. 2021)

*Dahlia v. Rodriguez* ................................................................................................ 25
    735 F.3d 1060 (9th Cir. 2013)

*Dawson v. Entek Int'l* ............................................................................................. 15
    630 F.3d 928 (9th Cir. 2011)

*Demers v. Austin* ..................................................................................................... 24
    746 F.3d 402 (9th Cir. 2014)

*Dimmitt v. Clearwater* ............................................................................................ 24
    985 F.2d 1565 (11th Cir. 1993)

*Dodge v. Evergreen Sch. Dist. #114* ...................................................... 22, 24, 26, 28
    56 F.4th 767 (9th Cir. 2022)

*Does 1-11 v. Univ. of Colo.* .............................................................................. 14, 17
    100 F.4th 1251 (10th Cir. 2024)

*Donahoe v. Arpaio* .................................................................................................. 29
    869 F. Supp. 2d 1020 (D. Ariz. 2012)

*EEOC v. Townley Eng'g & Mfg. Co.* ..................................................................... 15
    859 F.2d 610 (9th Cir. 1988)

*Empl't Div. v. Smith* ................................................................................................ 20
    494 U.S. 872 (1990)

*Eng v. Cooley* .......................................................................................................... 25
    552 F.3d 1062 (9th Cir. 2009)

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.* ........... 18
    46 F.4th 1075 (9th Cir. 2022)

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.* ... *passim*
    82 F.4th 664 (9th Cir. 2023)

*Fulton v. Philadelphia* ..................................................................................... 17, 18, 20
    593 U.S. 522 (2021)

*Garcetti v. Ceballos* ................................................................................................ 24
    547 U.S. 410 (2006)

*Ghiotto v. San Diego* ............................................................................................... 24
    2010 WL 4018644 (Cal. Ct. App. Oct. 14, 2010)

*Gutiérrez v. Mun. Ct., Los Angeles Cnty.* .............................................................. 28
    838 F.2d 1031 (9th Cir. 1988)

*Harlow v. Fitzgerald* ............................................................................................... 27
    457 U.S. 800 (1982)

# TABLE OF AUTHORITIES - CONT'D

*Hernandez v. Phoenix* ...................................................................................23
    43 F.4th 966 (9th Cir. 2022)

*Hope v. Pelzer* ......................................................................................27, 28
    536 U.S. 730 (2002)

*Janus v. AFSCME, Council 31* ....................................................................23, 24
    585 U.S. 878 (2018)

*Jones v. Williams* ...................................................................................27, 28
    791 F.3d 1023 (9th Cir. 2015)

*Kane v. De Blasio* .............................................................................17, 18, 19
    19 F.4th 152 (2d Cir. 2021)

*Keates v. Koile* ..........................................................................................29
    883 F.3d 1228 (9th Cir. 2018)

*Kennedy v. Bremerton Sch. Dist.* ...............................................................20, 24
    597 U.S. 507 (2022)

*Khoja v. Orexigen Therapeutics, Inc.* ..............................................................15
    899 F.3d 988 (9th Cir. 2018)

*Kiryas Joel Vill. Sch. Dist. v. Grumet* ..............................................................20
    512 U.S. 687 (1994)

*Lowe v. Mills* .............................................................................................17
    68 F.4th 706 (1st Cir. 2023)

*M.A. v. Rockland Cnty. Dep't of Health* .............................................................21
    53 F.4th 29 (2d Cir. 2022)

*Manzarek v. St. Paul Fire & Marine Ins. Co.* ........................................................14
    519 F.3d 1025 (9th Cir. 2008)

*Masterpiece Cakeshop v. Colo. C.R. Comm'n* .................................................20, 21
    584 U.S. 617 (2018)

*McGinest v. GTE Serv. Corp.* .........................................................................15
    360 F.3d 1103 (9th Cir. 2004)

*Meriwether v. Hartop* ..............................................................................21, 23
    992 F.3d 492 (6th Cir. 2021)

*Moody v. NetChoice, LLC* ..........................................................................25, 26
    144 S. Ct. 2383 (2024)

*Mun. Ct., Los Angeles Cnty. v. Gutiérrez* ...........................................................28
    490 U.S. 1016 (1989)

*NAACP of San Jose/Silicon Valley v. San Jose* ......................................................29
    562 F. Supp. 3d 382 (N.D. Cal. 2021)

6

# TABLE OF AUTHORITIES - CONT'D

*New Hope Fam. Servs., Inc. v. Poole*................................................20, 21, 22
    966 F.3d 145 (2d Cir. 2020)

*Oliver v. Arnold*.........................................................................................28
    19 F.4th 843 (5th Cir. 2021)

*Pickering v. Twp. High Sch. Dist. 205* ...........................................22, 23
    391 U.S. 563 (1968)

*Posey v. Lake Pend Oreille Sch. Dist. No. 84* .......................................25
    546 F.3d 1121 (9th Cir. 2008)

*Publius v. Boyer-Vine* ...............................................................................12
    321 F.R.D. 358 (E.D. Cal. 2017)

*Riley's Am. Heritage Farms v. Elsasser*............................................23, 26
    32 F.4th 707 (9th Cir. 2022)

*Rodriguez v. Maricopa Cnty. Cmty. Coll. Dist.* ......................................26
    605 F.3d 703 (9th Cir. 2010)

*Roe v. San Jose Unified Sch. Dist. Bd.* .............................................28, 29
    2021 WL 292035 (N.D. Cal. Jan. 28, 2021)

*Russo v. Cent. Sch. Dist. No. 1* .........................................................10, 24
    469 F.2d 623 (2d Cir. 1972)

*San Diego Minutemen v. Calif. Bus. Transp. & Hous. Agency* ...............29
    570 F. Supp. 2d 1229 (S.D. Cal. 2008)

*San Diego v. Roe* ......................................................................................23
    543 U.S. 77 (2004)

*Saucier v. Katz* .........................................................................................27
    533 U.S. 194 (2001)

*Sherbert v. Verner*...............................................................................17, 20
    374 U.S. 398 (1963)

*Shurtleff v. Boston* ...................................................................................24
    596 U.S. 243 (2022)

*Smith v. Fair Emp. & Hous. Comm'n* .....................................................20
    12 Cal. 4th 1143 (1996)

*Snyder v. Phelps* ................................................................................22, 23
    562 U.S. 443 (2011)

*Spivack v. Philadelphia*.......................................................................20, 21
    __ F.4th __, 2024 WL 3561365 (3d Cir. July 29, 2024)

*Stormans, Inc. v. Wiesman* .....................................................................17
    794 F.3d 1064 (9th Cir. 2015)

7

# TABLE OF AUTHORITIES - CONT'D

*Stromberg v. Calif.* ...............................................................................24
    283 U.S. 359 (1931)

*Sughrim v. New York* .............................................................................29
    503 F. Supp. 3d 68 (S.D.N.Y. 2020)

*Tandon v. Newsom* ...............................................................................17, 18, 19
    593 U.S. 61 (2021)

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.* ........................................26
    393 U.S. 503 (1969)

*Valov v. Dep't of Motor Vehicle* ...........................................................19
    132 Cal. App. 4th 1113 (2005)

*Vlaming v. W. Point Sch. Bd.* ...............................................................24
    302 Va. 504 (2023)

*W. Virginia State Bd. of Educ. v. Barnette* ............................................10
    319 U.S. 624 (1943)

*Waln v. Dysart Sch. Dist.* .....................................................................17, 22
    54 F.4th 1152 (9th Cir. 2022)

*Willson v. Bel-Nor* ................................................................................24
    924 F.3d 995 (8th Cir. 2019)

*Words of Faith Fellowship, Inc. v. Rutherford Cnty.* ..............................29
    329 F. Supp. 2d 675 (W.D.N.C. 2004)


**Statutes & Rules**

Fed. R. Civ. P. 12(b)(6) .........................................................................13

Huntington Beach Mun. Code § 13.07.010 .............................................9

L.R. 11-6.1 ...........................................................................................30

**INTRODUCTION**

Plaintiff Captain Jeffrey Little has served as a lifeguard with the Los Angeles County Fire Department: Lifeguard Division for over 22 years. (First Amend. Compl., ¶¶15-17 & Exs.1-2, Doc.31.) His work performance and reputation have been exemplary, and he was eventually promoted to Captain. (FAC, ¶¶ 3, 17.) But everything changed in February 2023, when Huntington Beach voted to amend its Municipal Code to allow only governmental flags to fly at city properties. *See* Huntington Beach Mun. Code § 13.07.010.

In response, in March 2023, the Los Angeles County Board of Supervisors voted to "[d]irect the Chief Executive Officer to work with all County Departments to explore ways the Progress Pride Flag can be flown at all county facilities." (FAC, ¶19 & Ex.3.) As stated in that resolution, because "the City of Huntington Beach … will now only allow city, state and national flags to regularly be flown at City Hall," Los Angeles County would now fly the Pride Flag to "show LA County's support for LGBTQ+ communities." (FAC, ¶19 & Ex.3.)

The Los Angeles County resolution, however, put Captain Little in a bind. Due to it, he was ordered to directly participate in raising the Pride Flag at his lifeguard stations. (FAC, ¶¶20-22 & Exs.4-5.) This he cannot do. Captain Little is a devout Christian who objects to the ideas and views that the Pride Flag represents. (FAC, ¶¶17-18; FAC, ¶¶23-36.) He does not object to the County or Fire Department doing what they will, but he cannot be *personally responsible* for raising the Pride Flag. (FAC, ¶¶37-38.) So, he requested a religious accommodation. The Department initially granted the request but quickly reversed itself, and then subjected him to hostile retaliation, pretextual investigations, and a death threat. (FAC, ¶¶39-83 & Exs.5-18.) These actions violated Captain Little's statutory employment rights as well as his constitutional rights.

Arising in the context of teachers leading students in recitation of the Pledge of Allegiance, for fifty years, courts have upheld the rule that the government cannot

9

force its citizens, as a condition of public employment, to salute the American Flag. *See, e.g.*, *Russo v. Cent. Sch. Dist. No. 1*, 469 F.2d 623, 633-34 (2d Cir. 1972). The reason is simple. The government cannot "force an individual to 'utter what is not in [her] mind' *about a question of political and religious significance*." *303 Creative LLC v. Elenis*, 600 U.S. 570, 596 (2023) (emphasis added) (quoting *W. Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 634 (1943)). "[A]llowing a government to coerce an individual to speak contrary to her beliefs *on a significant issue of personal conviction*, all in order to eliminate ideas that differ from its own," is anathema to the First Amendment. *Id*. at 598 (emphasis added).

After the debacle of last year's Pride Month (June 2023), in April and May 2024, Captain Little attempted to renew his request for a religious accommodation, but received no relief. (FAC, ¶¶84-91 & Exs.19-22.) Thus, he was forced to seek judicial relief in advance of this year's Pride Month (June 2024), and initiated this action seeking both retrospective relief (damages) and prospective relief (injunctive and declaratory relief). (Compl., Doc.1.) After Pride Month 2024, Captain Little filed an Amended Complaint (FAC, Doc.31), which the Fire Department now moves to dismiss. (MTD, Doc.33.) As stated below, the Court should deny the motion in full.

## FACTUAL & PROCEDURAL BACKGROUND

### A.    The County decides to fly the Pride Flag at all County facilities during Pride Month

Defendant Los Angeles County Fire Department provides emergency services for over 4 million residents. Its Lifeguard Division is the largest professional lifeguard service in the world, protecting 72 miles of coastline and employing 174 full-time lifeguards and 614 recurrent lifeguards. (FAC, ¶¶15-16 & Ex.1.) Plaintiff Captain Little has been a proud Los Angeles County lifeguard, saving countless lives over the course of 22 years, and rising to the rank of Captain. (FAC, ¶¶3, 17 & Ex.2.)

But, on March 7, 2023, the Los Angeles County Board of Supervisors passed a motion "Direct[ing] the Chief Executive Officer to work with all County

Departments to explore ways the Progress Pride Flag can be flown at all county facilities." (FAC, ¶19 & Ex.3.) In implementation of the motion, on May 25, 2023, the Fire Department issued a memorandum (EA-231) stating that the Pride Flag will be flown at all lifeguard stations, and that supervisors must "[e]nsure flags are received and flown throughout the month of June." (FAC, ¶20 & Ex.4.) In practice, not all lifeguard properties have either flag poles or adequate flag clasps, so the Fire Department also provided a flow chart to explain when the Pride Flag must be flown, and when it need not be flown. (FAC ¶21 & Ex.5.)

### B. Captain Little requests a religious accommodation, which is granted and then revoked, and for which he receives angry retaliation

All versions of the Pride Flag represent ideas that Captain Little cannot espouse. Captain Little is an evangelical Christian with traditional and orthodox, biblical-social beliefs on marriage, family, sexual behavior and identity. (FAC, ¶¶18, 36-38.) Thus, on June 18, 2023, Captain Little requested a religious accommodation exempting him from "adhering to EA-231." The next day, he had a meeting with a human resources officer, among others, and was granted his accommodation. Specifically, the Fire Department agreed: (1) to move Captain Little to a site not flying the Pride Flag; (2) that he need not ever raise the Pride Flag; and (3) that he need not ensure raising of the Pride Flag because, if he were ever working at headquarters, he would not serve as Headquarters Captain. (FAC, ¶¶40-45 & Ex.6.)

However, on June 21, 2023, various personnel from management—Lifeguard Division Chief Boiteux and Section Chief Lester—conspired to defeat the religious accommodation provided to Captain Little. Before his shift on that day, Section Chief Lester visited the Dockweiler Area and added additional flag clasps to the flagpoles so that they could fly the Pride Flag. Section Chief Lester then ordered the lifeguards at each area to raise Pride Flags. (FAC, ¶¶54-59.) When Captain Little arrived on site for his shift, he saw the Pride Flag flying and lowered it—in accordance with his religious accommodation—after ensuring that his subordinates

had no objection to him doing so. But later that day, the Fire Department informed him that his accommodation had been revoked. Further, Section Chief Lester, in an aggressive and abusive tone, ordered Captain Little to re-raise the Pride Flag. At the end of that day, Assistant Lifeguard Chief Adam Uehara confirmed the revocation of the accommodation and also informed Captain Little that he could not use his accrued paid leave time to avoid violating his religious beliefs. (FAC, ¶¶60-66.) The next day, June 22, 2023, Chief Boiteux also issued a written Direct Order to Captain Little to fly the Pride Flag and ensure that the Pride Flag is flown. When Chief Boiteux—who is much larger than Captain Little—hand-delivered the Direct Order, he also verbally berated Captain Little, telling him that "Your religious beliefs do not matter," in a manner clearly intended to intimidate. (FAC, ¶¶68-70 & Ex.7.)

### C. Captain Little files a religious discrimination complaint with the Fire Department, and suffers retaliation

On June 22, 2023, Captain Little filed a County Policy of Equity ("CPOE") administrative complaint with the Fire Department for religious discrimination and harassment. As stated in that complaint, "I felt like I was being targeted or entrapped by Section Chief Lester and my religious beliefs were not being taken seriously," and "I believe that the actions by Section Chief Lester are retaliatory in nature." (FAC, ¶71- & Exs.8-9.) On that same day, Chief Boiteux informed Captain Little that he was the subject of an internal investigation for lowering the Pride Flag during his shift the day prior, and hand-delivered to him a "Notice of Instruction," which stated that: "All Department employees, *irrespective of personal beliefs*, are expected to comply with EA-231." (FAC, ¶¶72-73 & Exs.10-11.)

In addition, Captain Little's request for a religious accommodation was somehow leaked—in violation of his right to privacy. *See Publius v. Boyer-Vine*, 321 F.R.D. 358, 363 (E.D. Cal. 2017) (discussing "the private and sensitive nature of religious beliefs"). This led, on June 23, 2023, to Captain Little being suspended from a prestigious role, with significant overtime pay, to retaliatory and pretextual

complaints being filed against him, and a death threat being mailed to his house. (FAC, ¶75 & Exs.12-14.) Despite adding these matters to his complaint, Captain Little's complaint was eventually closed on the basis that nothing of which he had complained violated the CPOE. The Department refused to take any actions to protect Captain Little from previous and future religious discrimination, harassment, and retaliation. (FAC, ¶¶76-77 & Ex.15.) Instead, the Fire Department eventually notified Captain Little that he had violated the CPOE, and would suffer a three-week suspension as a result. (FAC, ¶¶78-83 & Exs.16-18.)

### D.    Developments During Pride Month 2024

On May 8, 2024, Captain Little emailed the Fire Department's Human Resources department to renew his request for a religious accommodation (even though it had been denied last year). The Human Resources department eventually responded, and Captain Little had two meetings with them to discuss a religious accommodation. At the same time, the Fire Department issued a new EA-232 Pride Flag Policy, which lowered the number of locations at which the Pride Flag would be flown for Pride Month 2024. (FAC, ¶¶89-98 & Ex.23.) The Department agreed to offer Captain Little a partial accommodation, such that he need not personally raise the Pride Flag, but refused to exempt him from overseeing and ensuring its raising. (FAC, ¶¶99-105.) Via his Complaint, Captain Little raises both statutory employment claims and constitutional claims, against the Fire Department and Chiefs Boiteux, Lester, and Uehara.

### LEGAL STANDARD

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. "A complaint must

1  not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of

2  facts in support of the claim that would entitle the plaintiff to relief." *Aguayo v. U.S.*

3  *Bank*, 653 F.3d 912, 917 (9th Cir. 2011). The court "accept[s] factual allegations in

4  the complaint as true and construe[s] the pleadings in the light most favorable to the

5  nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025,

6  1031 (9th Cir. 2008).

7  **ARGUMENT**

8  In their motion to dismiss, Defendants attack each of Plaintiff's nine claims (in

9  reverse order), and argue that Chiefs Boiteux, Lester, and Uehara are protected by

10  qualified immunity. Each argument fails.

11
12  ### I.    Claims 1 & 2: Plaintiff's Failure to Accommodate Claims Are Adequately Pleaded

13  Defendants first argue that Plaintiff failed to plead an actual conflict between

14  his religion and being responsible for the Pride Flag. (MTD, pp.24:17-25:6.[1]) Of

15  note, when the government purports to tell someone that he misunderstands the

16  requirements of his own faith, it engages in unconstitutional religious hostility. *See,*

17  *e.g.*, *Does 1-11 v. Univ. of Colo.*, 100 F.4th 1251, 1257-58, 1269-72 (10th Cir. 2024).

18  In any event, this argument completely misconstrues the well-pleaded allegations.

19  (FAC, ¶¶18, 37-41, 69, 71, 99-102, 112-13, 126-28, 177 & Exs.6, 8.)

20  Defendants next argue that Plaintiff failed to plead an adverse employment

21  action because the only "actionable" adverse action is being suspended from his role

22  on the Background Investigation Unit, but he failed to adequately plead a causal

23  connection. (MTD, pp.25:7-27:2.) This misunderstands the complaint. The

24  suspension is related to his retaliation claims (discussed below). The relevant

25  "adverse action" is that Captain Little will be fired if he fails to comply with the

26  Pride Flag policy. *Compare* FAC, ¶72 & Ex.11; *with EEOC v. Townley Eng'g & Mfg.*

27

28  [1] Page citations are to the ECF page number.

*Co.*, 859 F.2d 610, 614 n.5 (9th Cir. 1988) (threat of future adverse action for failure to comply is sufficient).

## II. Claims 3, 4 & 5: Plaintiff's Retaliation Claims Are Adequately Pleaded

With respect to Plaintiff's retaliation claims, Defendants argue: (1) that Plaintiff failed to plausibly plead a causal link between his request for a religious accommodation and the retaliatory conduct; and (2) the majority of the retaliatory conduct is non-actionable because Title VII is not a "general civility code." (MTD, pp.27:3-28:3 (citing MTD, pp.25:10-27:2).)

On the first point, Defendants argue that they had a "legitimate" reason for the retaliatory action—Plaintiff's lowering of the Pride Flag. (MTD, p.27:23-24.) But the Ninth Circuit has held that the causal link between requesting an accommodation and retaliation can be inferred *solely* from temporal proximity. *Dawson v. Entek Int'l*, 630 F.3d 928, 937 (9th Cir. 2011). And although it is Plaintiff's burden to show pretext, "very little evidence is necessary to raise a genuine issue of fact regarding an employer's motive; any indication of discriminatory motive may suffice." *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1124 (9th Cir. 2004) (cleaned up). Here, the fact that Plaintiff's religious accommodation was revoked after one day (FAC, ¶66); that Section Chief Lester knew that Captain Little had been given a religious accommodation, and intentionally undermined it (FAC, ¶58); and the fact that Chief Boiteux directly told Captain Little that "Your religious beliefs do not matter" (FAC, ¶69), is adequate as *some* indication of retaliation. The standard, after all, requires only a reasonable inference.

Lastly, Defendants argue that the exhibits to the Complaint "refute" Plaintiff's claim that the investigations into him are pretextual. (MTD, pp.27:11-28:3; FAC, ¶¶75(c), 78-83.) But when Plaintiff pleads that the investigations were pretextual, the Court cannot accept as true the conclusions of those investigations. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1014 (9th Cir. 2018). Furthermore, at this

15

stage the Court is not called on to make its own factual determination.

### III.   Plaintiff Little's Free Exercise Claims are Adequately Pleaded

As recently explained by the Ninth Circuit, "[d]istilled, Supreme Court authority sets forth three bedrock requirements of the Free Exercise Clause that the government may not transgress, absent a showing that satisfies strict scrutiny." *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 686 (9th Cir. 2023) ("*FCA*") (en banc). "First, a purportedly neutral 'generally applicable' policy may not have 'a mechanism for individualized exemptions.'" *Id*. "Second, the government may not 'treat ... comparable secular activity more favorably than religious exercise.'" *Id*. "Third, the government may not act in a manner 'hostile to ... religious beliefs' or inconsistent with the Free Exercise Clause's bar on even 'subtle departures from neutrality.'" *Id*.

Here, Plaintiff has alleged that the Fire Department's application of its Pride Flag policy to him violated all three restrictions. He has also alleged that the Fire Department's actions violated the analogous free exercise guarantee of the California Constitution. As explained below, all claims are adequately pleaded.[2]

### A.   Claim 6: The Fire Department's Application of its Pride Flag Policy to Captain Little is Not Generally Applicable

#### 1.   Legal Background on General Applicability

As stated above, a government policy is not "generally applicable" if it: (1) categorically exempts comparable activity; or (2) allows for individualized exemptions. On the first point, secular exemptions trigger strict scrutiny if they undermine the government's interests "in a similar or greater degree" than a religious exemption would. *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 542-

---

[2] Like with the employment claims, Defendants begin by arguing that Plaintiff Little failed to plead an actual conflict between his religion and being responsible for the Pride Flag. (MTD, pp.17:18-18:12; citing FAC, ¶4.) For the same reason as stated above, this argument fails.

43 (1993); *accord Fulton v. Philadelphia*, 593 U.S. 522, 534 (2021). This rule applies to "*any* comparable secular" exemption. *Tandon v. Newsom*, 593 U.S. 61, 62 (2021). The existence of exemptions can be shown through laws not being "enforced evenhandedly." *Waln v. Dysart Sch. Dist.*, 54 F.4th 1152, 1159 (9th Cir. 2022).

"[W]hether two activities are comparable … must be judged against the asserted government interest that justifies the regulation at issue." *Waln*, 54 F.4th at 1159. Thus, if the government's interest in a vaccine mandate is "health and safety," then medical exemptions and religious exemptions are *not* comparable; but administrative convenience exemptions and religious exemptions *are* comparable. *Bacon v. Woodward*, 104 F.4th 744, 752 (9th Cir. 2024). At the pleadings stage, the question is whether the complaint's assertion of comparability is plausible. *Lowe v. Mills*, 68 F.4th 706, 716 (1st Cir. 2023).

On the second point, "[w]hat makes a system of individualized exemptions suspicious is *the possibility* that certain violations may be condoned when they occur for secular reasons but not when they occur for religious reasons." *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1082 (9th Cir. 2015) (emphasis added). The paradigmatic example is a "good cause" standard. *Fulton*, 593 U.S. at 533 ("good cause"); *Lukumi*, 508 U.S. at 537 ("unnecessary"); *Sherbert v. Verner*, 374 U.S. 398, 401 (1963) ("good cause"). But this type of "unfettered" discretion is not necessary. *FCA*, 82 F.4th at 687; *accord Blackhawk v. Penn.*, 381 F.3d 202, 210 (3d Cir. 2004) (Alito, J.) ("consistent with sound game or wildlife management activities"). What matters is the individualized nature of the granting or denial of exemptions. *Does 1-11*, 100 F.4th at 1273 (asking "why" exemption was needed); *Dahl v. W. Mich. Univ.*, 15 F.4th 728, 733 (6th Cir. 2021) (decisions being made on an "individual basis" without explaining standard); *Kane v. De Blasio*, 19 F.4th 152, 169 (2d Cir. 2021) (similar).

Like with comparable exemptions, the existence of discretionary exemptions can be shown through "ad hoc" non-enforcement. *FCA*, 82 F.4th at 687. "If anything,

… [an] unspoken and ad hoc exemption practice poses a more insidious and severe danger to the Free Exercise right than the formalized exemptions in *Fulton*: It provides the [government] almost unfettered and silent discretion to make exceptions." *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 46 F.4th 1075, 1096 (9th Cir. 2022), *vacated on reh'g en banc*, 82 F.4th 664 (9th Cir. 2023)); *Kane*, 19 F.4th at 169 (inconsistent application of standards).

### 2. Application: Plaintiff Has Adequately Pleaded the Existence of Categorical and Discretionary Exemptions

Here, Plaintiff's sixth claim alleges that the Fire Department's Pride Flag policy is not generally applicable because (1) it has comparable, categorical exemptions in that not every facility and not every employee is required to be responsible for the raising of the Pride Flag (FAC, ¶¶179-80; FAC, ¶¶20-21 & Exs.4-5; FAC, ¶¶95-96 & Ex.23); and (2) in practice, the policy has "discretionary, ad hoc exemptions" related to the County's "own administrative convenience." (FAC, ¶181.)

Further, the Complaint pleads that the exemptions are comparable to an exemption for him, because the purpose of flying the Pride Flag is to "show LA County's support for LGBTQ+ communities" (FAC, Ex.3), but accommodating Plaintiff's faith will not undermine the County's show of support for the LGBTQ community. (FAC, ¶183.) Thus, the Department's refusal to grant an exemption to Plaintiff is subject to strict scrutiny review. *Tandon*, 593 U.S. at 62. Further, because of these comparable exceptions, the Fire Department necessarily cannot show that denying Plaintiff an exception is absolutely necessary to achieve a compelling government interest. *Id.* at 63.

Oddly, in their motion to dismiss, Defendants did not address the comparable exemptions at all—except implicitly through noting that the County's resolution requires the "chief executive officer to 'explore ways the [PPF] can be flown at all county facilities.'" (MTD, p.10:3-4 (emphasis omitted); quoting FAC, Ex.3.) Instead, Defendants contend that noting "EA-231 … does not apply to County

18

facilities without infrastructure to fly the PPF … miss[es] the point." (MTD, p.21:21-24.) This is wrong; as stated in *Tandon* and *FCA*, that "point" triggers strict scrutiny.

Defendants only meaningfully address Plaintiff's argument regarding discretionary exemptions. (MTD, pp.21:14-22:12.) In that respect, Plaintiff pleaded that the existence of an ad hoc discretionary exemption practice—by which management can add or remove flag clasps at will from flagpoles (thus changing flag-raising requirements for each lifeguard station, at will)—made the Pride Flag policy not generally applicable. (FAC, ¶181; FAC, ¶¶55-59.) In response, Defendants argue that because "EA-231 provides no exemptions for individual employees," any practice of "discretionary, ad hoc exemptions" is irrelevant. (MTD, p.22:3-4.) As stated above, in *FCA* and *Kane*, such a practice makes the legal violation *worse*—not better.

### B. Claim 7: The Department's Application of its Pride Flag Policy to Captain Little Violates the California Constitution

The California Free Exercise Guarantee requires the Court to apply the pre-1990 federal test of simply determining whether there is a burden on religion, and if so, applying strict scrutiny. *Valov v. Dep't of Motor Vehicles*, 132 Cal. App. 4th 1113, 1126 & n.7 (2005) (citing *Cath. Charities of Sacramento, Inc. v. Superior Ct.*, 32 Cal. 4th 527, 562 (2004)). Thus, Plaintiff pleaded a religious burden and the inability of the Fire Department to satisfy strict scrutiny. (FAC, ¶¶190-94.) In response, Defendants argue that an objection to the Pride Flag is only "peripherally" related to Plaintiff's faith, and so is not protected. (MTD, p.22:13-20.)

This concept of "peripherality" found its origin in a fractured California Supreme Court opinion trying to define the concept of a "substantial burden" on religion. In that opinion, the plurality looked to the centrality of the practice to the religion to determine whether the burden was substantial. Justice Mosk, concurring in everything except that, explained that the plurality's analysis unconstitutionally

required courts to pass on religious questions. *Smith v. Fair Emp. & Hous. Comm'n*, 12 Cal. 4th 1143, 1189-92 (1996) (Mosk, J., concurring). Eight years later, the majority recognized that Justice Mosk was right. *Cath. Charities*, 32 Cal. 4th at 563. The Court cannot weigh the centrality of Plaintiff's objections to the Pride Flag to his faith.

### C.  Claim 8: The Fire Department's Application of its Pride Flag Policy to Captain Little is Not Neutral

#### 1.  Legal Background on Neutrality

"A proper respect for … the Free Exercise … Clause[] compels the State to pursue a course of 'neutrality' toward religion." *Kiryas Joel Vill. Sch. Dist. v. Grumet*, 512 U.S. 687, 696 (1994). A government policy is not neutral if it "restricts practices because of their religious nature" or evinces "intoleran[ce] of religious beliefs." *Fulton*, 593 U.S. at 533. "[T]he Free Exercise Clause 'forbids subtle departures from neutrality,' and 'covert suppression of particular religious beliefs.'" *FCA*, 82 F.4th at 690 (quoting *Lukumi*, 508 U.S. at 546; *Bowen v. Roy*, 476 U.S. 693, 703 (1986)). A mere "'slight suspicion' of religious animosity" can show non-neutrality. *New Hope Fam. Servs., Inc. v. Poole*, 966 F.3d 145, 165 (2d Cir. 2020) (quoting *Masterpiece Cakeshop v. Colo. C.R. Comm'n*, 584 U.S. 617, 638 (2018)).

"[T]he First Amendment obviously excludes all 'governmental regulation of religious *beliefs* as such.'" *Empl't Div. v. Smith*, 494 U.S. 872, 877 (1990) (quoting *Sherbert*, 374 U.S. at 402). Thus, government action "targeting religious beliefs as such is never permissible." *Lukumi*, 508 U.S. at 533. In cases of non-neutrality, courts "have 'set aside' such policies without further inquiry." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 525 n.1 (2022) (quoting *Masterpiece*, 584 U.S. at 639).

While neutrality means more than merely avoiding animus, expressions of animus are sufficient evidence. *Masterpiece*, 584 U.S. at 635 (religion is pretextual justification for discrimination; justified "slavery" and "the Holocaust"); *Lukumi*, 508 U.S. at 541 (practice was "an abomination"); *FCA*, 82 F.4th at 692 (beliefs were "of a discriminatory nature"); *Spivack v. Philadelphia*, __ F.4th __, 2024 WL

3561365, at *9 (3d Cir. July 29, 2024) (characterizing anti-vaxxers as "selfish"); *M.A. v. Rockland Cnty. Dep't of Health*, 53 F.4th 29, 37 (2d Cir. 2022) (same: "ignorant"); *Meriwether v. Hartop*, 992 F.3d 492, 512-13 (6th Cir. 2021) (religion "oppresses" and "Christian doctrines … should not be taught").

Viewing "neutrality" as secularism, and thereby "disqualify[ing]" recipients from a public benefit "solely because they are religious" is also unconstitutional. *Carson v. Makin*, 596 U.S. 767, 780 (2022). Where government conduct "endorse[s] the impermissible view 'that religious beliefs cannot legitimately be carried into the public sphere or commercial domain, implying that religious beliefs and persons are less than fully welcome" that is hostility to religion—not neutrality. *New Hope*, 966 F.3d at 168 n.22 (quoting *Masterpiece*, 584 U.S. at 634).

## 2. Application: Plaintiff Has Adequately Pleaded Non-Neutrality

Here, Plaintiff's eighth claim alleges that the Fire Department's Pride Flag policy has not been applied neutrally. (FAC, ¶¶197-212.) Specifically, Plaintiff Little pleads that Chiefs Boiteux, Lester, and Uehara conspired to maliciously cause his statutory religious accommodation to be revoked, and to create a religious conflict for him. (FAC, ¶¶204-208; FAC, ¶¶54-70.)

In response, Defendants argue that Chiefs Boiteux, Lester, and Uehara's actions are simply inadequate to establish hostility. (MTD, p.20:14-17.) Under the above case law, this is simply not true. *See, e.g.*, *New Hope*, 966 F.3d at 163-70 ("the pleadings … do not permit a court to conclude as a matter of law that [the policy], as … enforced … was neutral and not based on some hostility"); *Meriwether*, 992 F.3d at 512-13 ("Neutral and non-hostile? As alleged, no."). Defendants also argue that Plaintiff failed to plead that the Board of Supervisors, the Fire Chief, or a Chief Deputy were acting out of anti-religious animus in enacting the Pride Flag policies. (MTD, pp.19:28-20:3.) But Plaintiff is complaining about Chiefs Boiteux, Lester, and Uehara's conspiracy to preclude him from receiving a religious accommodation—not the initial passage of the policy. (FAC, ¶¶204-09.)

Finally, Defendants argue that the only plausible reading of the evidence is that Chiefs Boiteux, Lester, and Uehara's animus was inspired by Plaintiff's "rank insubordination" in lowering the Pride Flag after a superior officer had just raised it. (MTD, pp.20:20-21:13.) But Plaintiff pleaded that they maliciously raised the flag in the first place, and that his conduct was compliant with an accommodation that had not yet been revoked. (FAC, ¶¶54-59.) Regardless, a "complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is implausible." *Waln*, 54 F.4th at 1159-60. In light of Plaintiff's low burden of raising a "slight suspicion" of non-neutrality, *New Hope*, 966 F.3d at 165, his explanation of the facts is at least as plausible as Defendants'.

## IV.    Claim 9: Plaintiff's Free Speech Claim is Adequately Pleaded

"[A] state cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." *Connick v. Myers*, 461 U.S. 138, 142 (1983). Thus, the court must "arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Twp. High Sch. Dist. 205*, 391 U.S. 563, 568 (1968). Under this balance, the government cannot force employees to engage in speech (1) about an issue of legitimate public concern, (2) that is not critical to the performance on their actual job duties, (3) unless doing so is necessary for the effective operation of the government. *Dodge v. Evergreen Sch. Dist. #114*, 56 F.4th 767, 776-77 (9th Cir. 2022). Here, Plaintiff has plausibly pleaded that these questions are properly answered in his favor.

### A.    All Speech Relating to LGBTQ Issues is of Public Concern

According to the Supreme Court, "the boundaries of what constitutes speech on matters of public concern are not well defined." *Snyder v. Phelps*, 562 U.S. 443, 452 (2011). The analysis requires an examination of "the content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147-48.

However, as a guidepost, the Court explained that "[s]peech deals with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community." *Snyder*, 562 U.S. at 453 (cleaned up). The Ninth Circuit has similarly explained that the test "remains somewhat hazy." *Hernandez v. Phoenix*, 43 F.4th 966, 977 (9th Cir. 2022). However, in general, "controversial subjects such as climate change, the Confederacy, sexual orientation and gender identity, evolution, and minority religions" are all matters of public concern. *Janus v. AFSCME, Council 31*, 585 U.S. 878, 913-14 (2018).

Further, because "the standard for determining whether expression is of public concern is the same standard used to determine whether a common-law action for invasion of privacy is present," *San Diego v. Roe*, 543 U.S. 77, 83 (2004) (per curiam), "[m]ost speech falling outside that purely private realm will warrant *at least some* First Amendment protection … [under] the *Pickering* balancing test." *Hernandez*, 43 F.4th at 977 (emphasis added). The test is "useful primarily to draw a contrast with speech that is not entitled to constitutional protection in this context—namely, speech on 'matters only of personal interest.'" *Id.*,

Here, the specific speech at issue is the flying of the Pride Flag. The general topic to which this speech "relates" is sexuality and gender—a matter of public concern. *See, e.g.*, *Janus*, 585 U.S. at 913-14; *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 723 (9th Cir. 2022); *Meriwether*, 992 F.3d at 508-09. Thus, Plaintiff's free speech rights "warrant *at least some* First Amendment protection." *Hernandez*, 43 F.4th at 977. Notably, Defendants' motion does not address this issue at all, apparently conceding it.

### B. When Plaintiff Little Flies the Pride Flag, that is Not Government Speech Because it is Not A Necessary Aspect of His Providing Lifeguard Services

The next question is whether the speech at issue is an employee's personal speech, or government speech, "for First Amendment purposes." *Demers v. Austin*,

746 F.3d 402, 411 (9th Cir. 2014) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 425 (2006)). Under this inquiry, at a high level, the question is whether the speech was "required to perform [the employee's] job." *Dodge*, 56 F.4th at 778. But the answer must avoid "the error of positing an 'excessively broad job description by treating everything [that employees] … say in the workplace as government speech subject to government control." *Kennedy*, 597 U.S. at 530-31.

Further, when the government touches an area of "special concern of the First Amendment," *Demers*, 746 F.3d at 411, or an ideological "matter of major significance," *Vlaming v. W. Point Sch. Bd.*, 302 Va. 504, 568 (2023) (quoting *303 Creative*, 600 U.S. at 602-03), it completely loses the ability to enforce compliance—even among employees. The First Amendment prohibits the government from imposing a "blanket requirement" that all employees "mouth support for views they find objectionable." *Janus*, 585 U.S. at 892, 907. Thus, the government *cannot* require an employee to relinquish control over the academic content of his courses, *Demers*, 746 F.3d at 411-13, to join a government union, *Janus*, 585 U.S. 878, to recite the pledge of allegiance, *Russo*, 469 F.2d at 633-34, or to participate in a Pride Parade. *Ghiotto v. San Diego*, 2010 WL 4018644, at *1-4, 27-29 & n.28 (Cal. Ct. App. Oct. 14, 2010).

Here, Defendants' motion to dismiss argues, initially, that the government has the right to speak by flying the Pride Flag. (MTD, pp.13:8-14:14.) But Defendants then pivot to arguing that: (1) "speech" is not implicated at all through requiring Plaintiff to participate in the flying of the Pride Flag (MTD, pp.14:15-15:3); and (2) that flying the Pride Flag is part of Plaintiff's official job duties. (MTD, pp.15:4-12 & n.5.) Neither of these arguments are appropriate for resolution on the pleadings.

First, of course flying a flag is speech. *See, e.g.*, *Shurtleff v. Boston*, 596 U.S. 243, 251 (2022); *Stromberg v. Calif.*, 283 U.S. 359, 361 (1931); *Willson v. Bel-Nor*, 924 F.3d 995, 1001 (8th Cir. 2019); *Dimmitt v. Clearwater*, 985 F.2d 1565, 1569 (11th Cir. 1993); *Brown v. Calif. Dep't of Transp.*, 260 F. Supp. 2d 959, 966 (N.D.

Cal. 2003). Perhaps Defendants meant that flying the Pride Flag is *solely* government speech, and so does not implicate Plaintiff's speech at all. That is incorrect. Ghostwriters retain First Amendment rights. Thus, in an analogous context, the Ninth Circuit has explained "it makes *no difference* whether or not … 'the customer has [the] *ultimate control* over which design she wants tattooed on her skin.'" *Anderson v. Hermosa Beach*, 621 F.3d 1051, 1062 (9th Cir. 2010) (emphasis added). Nor does Captain Little "lose [his] First Amendment protection just because no one will wrongly attribute to [him] the views" represented by the Pride Flag. *Moody v. NetChoice, LLC*, 144 S. Ct. 2383, 2406 (2024).

Second, the Complaint unequivocally pleads that flying the Pride Flag is *not* part of Plaintiff's official job duties. (FAC, ¶¶48-53, 222(b) & Ex.2.) Nevertheless, Defendants argue that flying the Pride Flag is part of Plaintiff's job duties of "ensur[ing] the enforcement of all rules and ordinances." (MTD, p.15:8-10 & n.5; citing FAC, Ex.2.) Courts have long rejected this type of reasoning:

> The proper inquiry is a practical one. Formal job descriptions often bear little resemblance to the duties an employee actually is expected to perform, and the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes.

*Dahlia v. Rodriguez*, 735 F.3d 1060, 1069 (9th Cir. 2013) (quoting *Garcetti*, 547 U.S. at 424-25). Here, because the Complaint pleads that flying the Pride Flag is not part of Plaintiff's job duties (FAC, ¶¶47-53, 222(b) & Ex.2), that is dispositive. *See, e.g., Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1129 (9th Cir. 2008) ("[W]hether the plaintiff spoke as a public employee or a private citizen—is a mixed question of fact and law"); *Eng v. Cooley*, 552 F.3d 1062, 1073 (9th Cir. 2009).

///

///

///

## C.    There Is No Legitimate Administrative Interest Requiring Plaintiff Little to Fly the Pride Flag

The final question is whether the government has a "legitimate administrative interest" in its rule. *Dodge*, 56 F.4th at 781. As *employer*, the government's primary relevant interest is preventing "disruption" of its provision of services. *Id*. at 781-82. On the flip side, as *the government*, if its interest is "related to the suppression of free expression," "it is not valid, let alone substantial." *Moody*, 144 S. Ct. at 2407.

The disruption analysis proceeds on a sliding scale: "The more tightly the First Amendment embraces the speech the more vigorous a showing of disruption must be made." *Dodge*, 56 F.4th at 782 (cleaned up). Because "[p]olitical speech is … inherently controversial," the government must show more than "the disruption that necessarily accompanies controversial speech." *Id*. at 782-83; *accord Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 508 (1969) ("Any word spoken … that deviates from the views of another person may start an argument or cause a disturbance. But our Constitution says we must take this risk"). Even "vulgar" speech is protected—but the vulgarity must be incorporated into the sliding scale. *Beard v. Falkenrath*, 97 F.4th 1109, 1117 (8th Cir. 2024) ("If the Constitution offers no protection [to the offended individual] against an insult or vulgar language, then how can it extend to the misuse of a pronoun?").

With respect to actual disruption, "where hundreds of parents threatened to remove their children from school," due to "a public school teacher who was active in a pedophile association," the school district's legitimate interests in running a school could prevail over the teacher's right to freedom of association. *Riley's*, 32 F.4th at 726-27. But the focus must be on actual "substantial disruption" itself—not merely finding a viewpoint offensive. *Id*. at 725-27 (a few complaints from parents was insufficient); *accord Rodriguez v. Maricopa Cnty. Cmty. Coll. Dist.*, 605 F.3d 703, 710 (9th Cir. 2010) (college rightly refused to reprimand professor because his "emails were pure speech; they were the effective equivalent of standing on a soap

1    box in a campus quadrangle and speaking to all within earshot. Their offensive

2    quality was based entirely on their meaning").

3        Here, as stated above, the purpose of flying the Pride Flag is to "show LA

4    County's support for LGBTQ+ communities." (FAC, Ex.3.) But, the Complaint

5    pleads, exempting Captain Little from being responsible for flying the Pride Flag—

6    and having another employee do so—will not undermine this interest at all. Plaintiff

7    does not object to the Fire Department speaking as it will, and is eager to make

8    arrangements to swap shifts with other lifeguards so as not to interfere with the Fire

9    Department's goals. (FAC, ¶¶38, 43-47, 54, 104-05, 112, 223.) The only thing that

10   will be undermined is enforcement of ideological conformity, which is not a

11   legitimate government interest.

12       **V.    The Determination of Qualified Immunity Is Not Ripe**

13       Lastly, Chiefs Boiteux, Uehara, and Lester argue that they are protected by

14   qualified immunity. (MTD, p.22:4-22.) As explained below, this issue is not ripe for

15   determination at this stage.

16       **A.    Legal Background on Qualified Immunity**

17       Under the doctrine of qualified immunity, "government officials performing

18   discretionary functions generally are shielded from liability for civil damages insofar

19   as their conduct does not violate clearly established statutory or constitutional rights

20   of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S.

21   800, 818 (1982). The essence of the defense turns on whether the official had "fair

22   notice" that his conduct was illegal. *Hope v. Pelzer*, 536 U.S. 730, 742 (2002);

23   *Saucier v. Katz*, 533 U.S. 194, 206 (2001). The defense can be overcome "in two

24   ways: (1) by showing that there is clearly established law putting [officials] on notice

25   that their conduct is unlawful; or (2) by showing that the [official's] conduct was a

26   patently offensive violation of an existing right." *Beaver v. Federal Way*, 301

27   F. App'x 704, 705 (9th Cir. 2008) (cleaned up). A right can be clearly established by

28   "the law of other circuits." *Jones v. Williams*, 791 F.3d 1023, 1034 (9th Cir. 2015).

To establish that the "right" was clearly established, "a plaintiff need not produce a case directly on point." *Dodge*, 56 F.4th at 784 (cleaned up). Rather, "a general constitutional rule … may apply with obvious clarity to the specific conduct in question." *Id.* at 784 (cleaned up). But in the absence of "closely analogous" case law, liability can only attach "if the claimed right is defined at an appropriately low 'level of generality.'" *Roe v. San Jose Unified Sch. Dist. Bd.*, 2021 WL 292035, at *17 (N.D. Cal. Jan. 28, 2021) (quoting *Hope*, 536 U.S. at 741).

In reviewing whether the "right" was "clearly established," courts "must define the rights … at a level commensurate with the specific factual and legal context of the case." *Dodge*, 56 F.4th at 783-84. Framing the right as "the general right to be free from retaliation for one's speech," is too vague. *Id.* at 784. But an appropriate Free Speech framing is that it was "unreasonable for [the official] to believe that she could restrict [the plaintiff's] speech to quell … nothing more than the natural effect that disfavored political speech often has on those with different viewpoints." *Id.* at 784. A similar appropriate framing is that it is clearly established that "no legitimate pedagogical interest is served by forcing [individuals] to agree with a particular political viewpoint." *Oliver v. Arnold*, 19 F.4th 843, 845-46 (5th Cir. 2021) (Ho, J., concurring in denial of reh'g en banc) (collecting cases).

An appropriate Free Exercise framing is that it is clearly established that "a system of individualized exemptions" triggers strict scrutiny. *Axson-Flynn v. Johnson*, 356 F.3d 1277, 1300-01 (10th Cir. 2004). Another appropriate framing is that a party has "a right to abstain from conduct directly violative of his religious beliefs" because "[r]equiring a believer to defile himself by doing something that is completely forbidden by his religion is different from (and more serious than)" other restrictions on religion. *Jones v. Williams*, 791 F.3d 1023, 1033 (9th Cir. 2015).

Most frequently, qualified immunity is overcome when the government official intentionally discriminates. *See, e.g.*, *Gutiérrez v. Mun. Ct., Los Angeles Cnty.*, 838 F.2d 1031, 1051 n.29 (9th Cir. 1988), *vacated*, 490 U.S. 1016 (1989). This principle

applies fully in the contexts of freedom of speech and religion. *See, e.g.*, *Ashaheed v. Currington*, 7 F.4th 1236, 1248 (10th Cir. 2021); *Roe*, 2021 WL 292035, at *17; *Sughrim v. New York*, 503 F. Supp. 3d 68, 93-94 (S.D.N.Y. 2020); *Words of Faith Fellowship, Inc. v. Rutherford Cnty.*, 329 F. Supp. 2d 675, 690 (W.D.N.C. 2004).

## B.    Adjudication of Qualified Immunity is Not Ripe

When a complaint adequately pleads a constitutional violation, it is inadvisable to adjudicate qualified immunity on the pleadings. *San Diego Minutemen v. Calif. Bus. Transp. & Hous. Agency*, 570 F. Supp. 2d 1229, 1242 (S.D. Cal. 2008). "While courts may consider qualified immunity at the pleadings stage, the Ninth Circuit has noted that '[d]etermining claims of qualified immunity at the motion-to-dismiss stage raises special problems for legal decision making.'" *NAACP of San Jose/Silicon Valley v. San Jose*, 562 F. Supp. 3d 382, 395 (N.D. Cal. 2021) (quoting *Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018)).).

Here, Defendants' qualified immunity argument is a single sentence: "'existing precedent' did not 'place[] the statutory or constitutional question beyond debate,' as the above case law shows." (MTD, p.28:15-16.) This single sentence is inadequate. At the very least, it is clearly established that government officials may not *intentionally* discriminate—and that is well-pleaded (FAC, ¶¶54-70.) But it is equally clearly established that Plaintiff has the right—under the free speech and free exercise clauses—to bring his disfavored religious views into the public sphere. Since deferring on this issue "does not prejudge whether some of Plaintiffs' claims may ultimately fail under a qualified immunity analysis after discovery in this matter," *Donahoe v. Arpaio*, 869 F. Supp. 2d 1020, 1068 (D. Ariz. 2012), the Court should do so.

///
///
///
///

1

## CONCLUSION

2      For the foregoing reasons, Plaintiff Captain Little respectfully requests that

3   this Court deny Defendants' motion to dismiss in full.

4

5                                      Respectfully submitted,

6                                      LiMANDRI & JONNA LLP

7

8   Dated: August 9, 2024          By: _____

9                                      Charles S. LiMandri
                                       Paul M. Jonna
10                                     Jeffrey M. Trissell
                                       Joshua A. Youngkin
11                                     Attorneys for Plaintiff
                                       Captain Jeffrey Little
12

13

14

15

16

17                   ## CERTIFICATE OF COMPLIANCE

18      The undersigned, counsel of record for Plaintiff Captain Little, certifies that

19   this brief contains 6,995 words, which complies with the word limit of L.R. 11-6.1.

20

21   Dated: August 9, 2024          By: _____

                                       Paul M. Jonna
22

23

24

25

26

27

28

# CERTIFICATE OF SERVICE

*Captain Jeffrey Little v. Los Angeles County Fire Department, et al.*
U.S. Dist. Ct., C.D. Cal., W. Div. Case No.: 2:24-cv-4353-JLS-PD

I, the undersigned, declare under penalty of perjury that I am over the age of eighteen years and not a party to this action; my business address is P.O. Box 9120, Rancho Santa Fe, California 92067, and that I served the following document(s):

• **Memorandum of Points & Authorities in Support of Plaintiff's Opposition to Defendants' Motion to Dismiss the First Amended Complaint.**

on the interested parties in this action by placing a true copy in a sealed envelope, addressed as follows:

Dimitri D. Portnoi, Esq.
Kyle M. Grossman, Esq.
Marni B. Robinow, Esq.
O'MELVENY & MYERS LLP
400 South Hope Street, Suite 1900
Los Angeles, CA 90071
Tel: (213) 430 6000
Fax: (213) 430 6407
E-Mail:  dportnoi@omm.com
E-Mail:  kgrossman@omm.com
E-Mail:  mrobinow@omm.com
**Attorneys for Defendants County of Los Angeles, Fernando Boiteux, Arthur Lester, and Adam Uehara**

_____ **(BY MAIL)** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Rancho Santa Fe, California in the ordinary course of business.  The envelope was sealed and placed for collection and mailing on this date following our ordinary practices.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

__X__ **(BY ELECTRONIC MAIL)** I served a true copy, electronically on designated recipients via electronic transmission of said documents.

__X__ **(BY ELECTRONIC FILING/SERVICE)** I caused such document(s) to be Electronically Filed and/or Service using the ECF/CM System for filing and transmittal of the above documents to the above-referenced ECF/CM registrants.

I declare under penalty of perjury, under the laws of the United States and the State of California, that the above is true and correct.

Executed on August 9, 2024, at Rancho Santa Fe, California.

_____
Kathy Denworth