DIMITRI D. PORTNOI (S.B. # 282871)
dportnoi@omm.com
KYLE M. GROSSMAN (S.B. # 313952)
kgrossman@omm.com
MARNI B. ROBINOW (S.B. # 313412)
mrobinow@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street, Suite 1900
Los Angeles, California 90071
Telephone: (213) 430 6000
Facsimile: (213) 430 6407

*Attorneys for Defendants County of
Los Angeles, Fernando Boiteux,
Arthur Lester, and Adam Uehara*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| Jeffrey Little,<br><br>        Plaintiff,<br><br>   v.<br><br>Los Angeles County Fire Department, et al.,<br><br>        Defendants. | Case No. 2:24-cv-04353-JLS-PD<br><br>**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Hearing Date: August 30, 2024<br>Time: 10:30 a.m.<br>Judge: Hon. Josephine L. Staton<br>Courtroom: 8A<br><br>Am. Compl. Filed: July 19, 2024<br>Trial Date: None set |

# TABLE OF CONTENTS

                                                                                              **Page**

I. INTRODUCTION ...................................................................................................1

II. ARGUMENT ..........................................................................................................1

    A. Plaintiff's Compelled-Speech Claim Fails Because EA-231 Requires No Privately Expressive Conduct ..........................................2

        1. Whether the PPF Conveys a Message of Public Concern Does Not Matter ...........................................................................3

        2. The County's Flying of the PPF Is Its Own Speech ....................3

        3. The County Has a Valid Administrative Interest in Speaking Its Own Message ..........................................................5

    B. Plaintiff Fails to Identify Any Conflict Between EA-231 and His Religious Beliefs, So His Remaining Claims Fail .................................6

        1. EA-231 Is Neutral and Generally Applicable, So It Does Not Violate Plaintiff's Free Exercise Rights ...............................7

        2. Plaintiff Still Fails to Identify Any Adverse Action Underlying His Failure-to-Accommodate Claims .....................10

        3. Plaintiff Identifies No Facts to Make Out His Retaliation Claims ........................................................................................11

    C. This Court Can and Should Grant Qualified Immunity to the Individual Defendants on the Pleadings .............................................12

III. CONCLUSION .....................................................................................................13

# TABLE OF AUTHORITIES

Page

**CASES**

*Abdul-Haqq v. Permanente Med. Grp., Inc.*,
  2024 WL 1155449 (9th Cir. 2024) ............................................................... 12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................. 8, 13

*Catholic Charities v. Superior Ct.*,
  32 Cal.4th 527 (2004) .................................................................................. 10

*Demers v. Austin*,
  746 F.3d 402 (9th Cir. 2014) ......................................................................... 4

*Dodge v. Evergreen Sch. Dist. #114*,
  56 F.4th 767 (9th Cir. 2022) ...................................................................... 2, 5

*EEOC v. Townley Eng'g & Mfg. Co.*,
  859 F.2d 610 (9th Cir. 1988) ....................................................................... 11

*Ellington v. Cal. Dep't of Corr. & Rehab.*,
  2022 WL 2167461 (C.D. Cal. 2022) ............................................................ 12

*Elrawi v. Burgess*,
  2018 WL 6133416 (C.D. Cal. 2018) ............................................................ 12

*Emilee Carpenter, LLC v. James*,
  107 F.4th 92 (2d Cir. 2024) ........................................................................... 4

*Garcetti v. Ceballos*,
  547 U.S. 410 (2006) ......................................................................... 3, 4, 5, 6

*Gordon v. Cnty. of Orange*,
  6 F.4th 961 (9th Cir. 2021) .......................................................................... 13

*Jones v. Williams*,
  791 F.3d 1023 (9th Cir. 2015) ..................................................................... 13

*Kennedy v. Bremerton Sch. Dist.*,
  597 U.S. 507 (2022) ....................................................................................... 5

*Lazy Y Ranch Ltd. v. Behrens*,
  546 F.3d 580 (9th Cir. 2008) ..................................................................... 1, 4

*Mandel v. Hafermann*,
  503 F. Supp. 3d 946 (N.D. Cal. 2020) ........................................................... 8

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Maner v. Dignity Health*,
 9 F.4th 1114 (9th Cir. 2021) ..................................................................................... 11

*Masterpiece Cakeshop, Ltd. v. Colo. C.R. Comm'n*,
 584 U.S. 617 (2018) ............................................................................................. 7, 8

*Meriwether v. Hartop*,
 992 F.3d 492 (6th Cir. 2021) ................................................................................ 7, 8

*Moody v. NetChoice, LLC*,
 144 S.Ct. 2383 (2024) ................................................................................................ 4

*Muir v. City of Placentia*,
 2019 WL 8195237 (C.D. Cal. 2019) ........................................................................ 12

*Mujica v. AirScan Inc.*,
 771 F.3d 580 (2014) ................................................................................................ 12

*New Hope Family Servs., Inc. v. Poole*,
 966 F.3d 145 (2d Cir. 2020) ....................................................................................... 7

*North Coast Women's Care Med. Grp., Inc. v. Superior Ct.*,
 44 Cal.4th 1145 (2008) ............................................................................................. 10

*People v. Rubin*,
 168 Cal.App.4th 1144 (2008) ................................................................................... 10

*Riley's American Heritage Farms v. Elsasser*,
 32 F.4th 707 (9th Cir. 2022) ....................................................................................... 2

*Rodriguez v. Maricopa County Cmty. Coll. Dist.*,
 605 F.3d 703 (9th Cir. 2010) ...................................................................................... 2

*Rumsfeld v. FAIR, Inc.*,
 547 U.S. 47 (2006) ...................................................................................................... 3

*Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*,
 44 F.4th 867 (9th Cir. 2022) ..................................................................................... 13

*Tandon v. Newsom*,
 593 U.S. 61 (2021) ....................................................................................................... 9

*Temple of 1001 Buddhas v. City of Fremont*,
 2022 WL 1570480 (N.D. Cal. 2022) ....................................................................... 10

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*,
 393 U.S. 503 (1969) ..................................................................................................... 2

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Vlaming v. West Point School Bd.*,
  302 Va. 504 (2023) ..................................................................................................4

*Waite v. Gonzaga Univ.*,
  2019 WL 544947 (E.D. Wash. 2019) .....................................................................11

*We The Patriots USA, Inc. v. Conn. Off. of Early Childhood Dev.*,
  76 F.4th 130 (2d Cir. 2023) ......................................................................................8

*We The Patriots USA, Inc. v. Hochul*,
  17 F.4th 266 (2d Cir. 2021) ......................................................................................9

*Wolfe v. Logan*,
  2023 WL 2239062 (C.D. Cal. 2023) ......................................................................11

## I. INTRODUCTION[1]

Plaintiff has *never* raised the Progress Pride Flag ("PPF"). Plaintiff does not allege he has *ever* worked a shift when the PPF was raised. Plaintiff has likewise *never* maintained, attended to, affirmed, or saluted the PPF. And he has *never* "directly participate[d]" in raising the PPF, Opp. 9, whatever that means. Plaintiff's only interaction with the PPF has been to sabotage and silence the County's speech by lowering the flag three times on a public beach.

Plaintiff disregards most of Defendants' arguments, and in so doing concedes them. He all but abandons his compelled-speech claim; indeed, he avoids the term "compelled speech" and misdirects with out-of-circuit and inapplicable caselaw, proposing a new "administrative interest" test inapplicable to this case. He concedes that EA-231 is facially neutral and offers no individualized, discretionary exceptions to the policy. He admits no adverse employment action has yet occurred for his failure-to-accommodate claims and fails to identify any facts regarding his suspension for his retaliation claim. The Court should dismiss the FAC in full.

## II. ARGUMENT

Plaintiff's Opposition continues his repeated mischaracterization of what EA-231 actually requires. Despite Plaintiff's unsubstantiated assertions to the contrary, *see* Mot. 6; Opp. 9-12, EA-231 requires Plaintiff only to "[e]nsure" the PPF is flown. This Court must accept EA-231 at face value, not Plaintiff's haphazard allegations with no basis in the text of the policy. *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

This is fatal to Plaintiff's claims. EA-231 does not compel Plaintiff to engage in any speech or expressive conduct, let alone privately expressive conduct.

---

[1] "Motion" refers to Defendants' Motion to Dismiss First Amended Complaint. "Opp." or "Opposition" refers to Plaintiff's Opposition to Defendants' Motion. All paragraph and exhibit references are to Plaintiff's First Amended Complaint unless otherwise noted. All emphasis is added to, and citations, alterations, and internal quotation marks omitted from, quoted passages unless otherwise noted.

It neither infringes on Plaintiff's religious beliefs nor forces him to violate them, so Plaintiff is not entitled to a religious accommodation. And Plaintiff's own allegations show that any actions taken against him were due to his flagrant, unjustified violations of EA-231—not his religious beliefs.

### A. Plaintiff's Compelled-Speech Claim Fails Because EA-231 Requires No Privately Expressive Conduct

The FAC asserts a compelled-speech claim. ¶217. Defendants explained that compelled speech requires privately expressive conduct by Plaintiff. Mot. 7-11. Plaintiff does not defend his compelled-speech claim; he does not even use the words "compelled speech." He does not argue that he engaged in, wished to engage in, or was compelled to engage in privately expressive conduct (he does not use that term either), and he never argues that privately expressive conduct is the wrong standard. He simply ignores the core arguments in the Motion.

His pivot is to discuss inapposite cases, **none of which** are compelled-speech cases. In *Dodge v. Evergreen School District #114*, for example, a teacher wore a MAGA hat to training and was disciplined. 56 F.4th 767, 772-73 (9th Cir. 2022).[2] Different principles, and different tests, apply when government silences expression than when government compels expression.[3] EA-231 compels no privately expressive conduct, and Plaintiff does not dispute this. The remainder of his

---

[2] Plaintiff's other cases are similar: *Riley's American Heritage Farms v. Elsasser* concerned a teacher's social media posts. 32 F.4th 707, 724-28 (9th Cir. 2022). *Rodriguez v. Maricopa County Community College District*, involved emails that a professor sent to a campuswide faculty distribution list. 605 F.3d 703, 710 (9th Cir. 2010). And *Tinker v. Des Moines Independent Community School District* addressed armbands worn by students—not even school employees—in protest of the Vietnam War. 393 U.S. 503, 508 (1969).

[3] Notably, though, *Dodge* points out that the teacher, who wore his hat only to training, could have been suspended had he worn the hat in school with students, because such speech could "reasonably [be] viewed by students and parents as officially promoted by the school." *Id.* at 778. Plaintiff removed the PPF from three locations in full view of subordinates and the public. Ex. 18.

arguments miss the point.

### 1. Whether the PPF Conveys a Message of Public Concern Does Not Matter

Plaintiff asserts that "all speech relating to LGBTQ issues is of public concern." Opp. 22. As Defendants already explained, "[w]hen a public employee speaks pursuant to employment responsibilities," even on matters of public concern, the First Amendment is not implicated. Mot. 11 n.6 (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 423-24 (2006)). In any event, Plaintiff has identified no message about LGBTQ issues that he was asked to convey. He may need to direct subordinates to follow County rules, but "it has never been deemed an abridgment of freedom of speech … to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed." *Rumsfeld v. FAIR, Inc.*, 547 U.S. 47, 62 (2006).[4]

### 2. The County's Flying of the PPF Is Its Own Speech

In response to Defendants' argument that EA-231 provides for only the County's speech, Plaintiff makes three arguments: (1) that the First Amendment prohibits the County from enforcing "compliance" on issues of special concern or ideological significance; (2) that it does not matter whether no one will attribute the PPF to Plaintiff personally; and (3) that Plaintiff's allegation that flying the PPF is not part of his job duties is "dispositive." Opp. 23-25. Plaintiff is wrong on all counts.

**Issues of special concern.** Plaintiff contends that governments "completely lose[] the ability to enforce compliance—even among employees"—whenever they wish to speak on "an area of 'special concern of the First Amendment' or an

---

[4] The law-school plaintiffs in *FAIR* objected to using speech to notify students that military recruiters were on campus because doing so might associate the schools with the government's policy on gay enlistees in the military. 547 U.S. at 51. The Court rejected the claim: "nothing in this case approach[es] a Government-mandated pledge or motto." *Id.* at 62.

ideological 'matter of major significance.'" Opp. 24. Plaintiff relies on two cases for this premise—*Demers v. Austin*, 746 F.3d 402 (9th Cir. 2014), and *Vlaming v. West Point School Board*, 302 Va. 504 (2023), a nonbinding Virginia state court case. Both involve academic speech.

The Supreme Court carved out academic speech from *Garcetti*, stating that "expression related to academic scholarship … implicates additional constitutional interests that are not fully accounted for by [the] customary employee-speech jurisprudence." 547 U.S. at 425. Plaintiff offers no justification for the analogy between academic scholarship and flags.

**Attribution to Plaintiff.** Plaintiff contends the First Amendment applies even when "'no one will wrongly attribute to [Plaintiff] the views' represented by the [PPF]." Opp. 25 (quoting *Moody v. NetChoice, LLC*, 144 S.Ct. 2383, 2406 (2024)). His reliance on *Moody* is misplaced. There, the Court was concerned with the misattribution of speech to a ***compiler*** of other speakers' messages—not with a government employee performing their job duties. 144 S.Ct. at 2406. Under *Moody*, Plaintiff must still "demonstrate that the expressive activity is [his] own—that is, [he] created the expressive content [himself] or, by compiling or curating third-party content in some forum, [he] is also engaged in [his] own expressive activity." *Emilee Carpenter, LLC v. James*, 107 F.4th 92, 104 (2d Cir. 2024) (citing 144 S.Ct. at 2399-400).

**Official job duties.** Last, Plaintiff asserts that his bare-bones allegation that flying the PPF is not part of his official job duties somehow resolves the case. But Plaintiff's assertion contradicts both the County's job description (requiring lifeguard captains to "ensur[e] the enforcement of ***all rules and ordinances***"), Ex. 2, and his own FAC (suggesting that lifeguard captains were already responsible for ensuring the flying of the California state flag), ¶¶22, 96. *Lazy Y Ranch*, 546 F.3d at 588.

The warning in *Garcetti* that "[f]ormal job descriptions often bear little

resemblance to the duties an employee actually is expected to perform," and that "the listing of a given task … is neither necessary nor sufficient," 547 U.S. at 424-25, is merely a warning that job descriptions may be over- and under-inclusive. Here, the job description requires Plaintiff to ensure enforcement of rules and ordinances, and Plaintiff does not allege facts to suggest this description is overinclusive. He also does not allege that ensuring flags are flown has not been part of his year-round job duties as a lifeguard captain for his decades in the Department.

The *Kennedy v. Bremerton School District* Court explained what it means for a government employee to speak within the scope of his job duties: to "speak pursuant to government policy"; "to convey a government-created message"; and to "engage[] in any other speech the [government] paid him to produce." 597 U.S. 507, 529-30 (2022). Flying the PPF on a government flagpole is speech pursuant to government policy, created by government, and paid for by the government.

### 3. The County Has a Valid Administrative Interest in Speaking Its Own Message

Plaintiff also argues that the County has "no legitimate administrative interest" in requiring him to fly the PPF. Opp. 26. This test derives from *Dodge*, and asks whether government had a "legitimate administrative interest in **suppressing** the speech." 56 F.4th at 776. No government-speech case has **ever** required government to satisfy an administrative-interest test before it may speak on an issue (by flying a flag or otherwise). Plaintiff proposes a breathtaking prior restraint on government speech.

Far from imposing a balancing test, the *Garcetti* Court held that when government employers speak through their employees, they must have "sufficient discretion to manage their operations." 547 U.S. at 422. "Employers have heightened interests in controlling speech made by an employee in his or her professional capacity. Official communications have official consequences,

creating a need for substantive consistency and clarity." *Id.* at 422-23.  If an employee's speech "was inflammatory or misguided," government must have "the authority to take proper corrective action." *Id.* at 423.

So too here.  The County has a legitimate interest in conveying its message, and in relying on employees with leadership roles (like captains) to "[e]nsure" that message is conveyed.  Ex. 4.  Plaintiff raises a straw man in arguing that "exempting [Plaintiff] from being responsible for flying the [PPF]—and having another employee do so—will not undermine this interest at all."  Opp. 27.  Oddly, that is exactly what happened on June 21, 2023, before Plaintiff lowered three flags that were already flying.  The County can surely take proper corrective action based on Plaintiff's conduct in sabotaging government speech.[5]

### B. Plaintiff Fails to Identify Any Conflict Between EA-231 and His Religious Beliefs, So His Remaining Claims Fail

Plaintiff mischaracterizes Defendants as arguing that "he misunderstands the requirements of his own faith." Opp. 14.  Not so.  Plaintiff repeatedly misconstrues his job requirements in an attempt to manufacture a conflict with his religious beliefs.[6]  *Supra* 1-2.  No such conflict exists, which is fatal to all of his claims.  Mot. 11-12.

---

[5] Flags fly in public places.  By lowering the flag on a public beach, in view of subordinates and the public, Plaintiff defeated the "consistency and clarity" of the County's speech, and the County had the "authority to take corrective action." *Garcetti*, 547 U.S. at 422-23; *cf.* Ex. 18 at 4 (lowering the flag "made staff uncomfortable and prompted beach patrons to question why the PPF was taken down").

[6] For instance, in the paragraph where Plaintiff accuses Defendants of misunderstanding his religious beliefs, Plaintiff cites to the portion of the Motion where Defendants explain that he had no right to lower the PPF.  Opp. 14 (citing Mot. 24-25).  Plaintiff never alleged that his religious beliefs require him to lower a PPF wherever he sees one.  In fact, he requested that he ***never*** be required to lower the flag.  Ex. 21 § I.A.1.

Additionally, Plaintiff offers no response to Defendants' argument that EA-231 cannot conflict with Plaintiff's religious beliefs because it authorizes only government speech. *Id.* Nothing about EA-231 requires Plaintiff to engage in personal, privately expressive conduct. And whether the government's expressive message conflicts with Plaintiff's religious beliefs does not matter for purposes of the First Amendment, California Constitution, Title VII, or FEHA.

### 1. EA-231 Is Neutral and Generally Applicable, So It Does Not Violate Plaintiff's Free Exercise Rights

Plaintiff appears to concede that he does not challenge whether EA-231 is neutral on its face. Opp. 21 (he does not challenge "the initial passage of the policy"). Rather, he challenges whether EA-231 was applied neutrally and whether it is generally applicable. His arguments still fail.

**EA-231 was applied neutrally.** Plaintiff was entitled to, and received, a "neutral decisionmaker who would give full and fair consideration to his religious objection." *Masterpiece Cakeshop, Ltd. v. Colo. C.R. Comm'n*, 584 U.S. 617, 640 (2018). The facts as alleged, and the out-of-circuit cases cited in the Opposition, do not plausibly establish non-neutrality.

Plaintiff's collection of out-of-circuit authority demonstrates the inadequacy of his pleading. In *Meriwether v. Hartop*, a professor's department chair, who was charged with adjudicating the professor's accommodation request, told him that religion "oppresses students," that its "presence" is "counterproductive," and that "Christian professors should be banned from teaching courses on Christianity." 992 F.3d 492, 512-13 (6th Cir. 2021); *see New Hope Family Servs., Inc. v. Poole*, 966 F.3d 145, 167-68 (2d Cir. 2020) (an "unexplained" and "abrupt" change in policy that would require "a 50-year adoption ministry" to shut down). Plaintiff's allegations regarding the course of his interactive process meeting ("IPM") reveals no hostile statements or bias from decisionmakers. ¶¶39-45. They reached agreement on an accommodation that contemplated circumstances "when he

[would] serve[] at any headquarters subarea, where the [PPF] was being flown." ¶44. He does not allege that any decisionmaker in his initial IPM expressed hostility to his beliefs. The same is true for his 2024 IPM, through which he received an effective accommodation. ¶¶90-104.

    Plaintiff's allegations that Chiefs Lester and Boiteux were non-neutral decisionmakers fail both because their language and demeanor do not betray non-neutrality and because they were not decisionmakers. Plaintiff is "entitled to a neutral decisionmaker." *Meriweather*, 992 F.3d at 512 (quoting *Masterpiece*, 584 U.S. at 640). Plaintiff does not allege that Chiefs Lester or Boiteux were decisionmakers at his IPM; he does not allege they were involved *at all*. They made no comments to Plaintiff prior to June 21, 2023. Plaintiff alleges that Chief Lester added flag clasps at Dockweiler Beach, and ordered the PPF raised there, but Plaintiff's accommodation already contemplated that Plaintiff would work in subareas where the PPF was being flown.[7] ¶¶44, 57. Chief Uehara is alleged to have participated in the IPM, and to have revoked the accommodation, ¶¶42, 66— assuming that makes him a decisionmaker, no allegations challenge his neutrality. And even if Chiefs Lester or Boiteux were decisionmakers, Plaintiff has no response to the fact that "acknowledg[ing] the impact" a policy (like EA-231) might have on religious beliefs is not evidence of animus. *We The Patriots USA, Inc. v. Conn. Off. of Early Childhood Dev.*, 76 F.4th 130, 148 (2d Cir. 2023).

    Plaintiff makes much ado about the difference between neutrality and secularism. Opp. 20-21. The two terms are not synonymous, but that makes no

---

[7] Plaintiff alleges that the Individual Defendants "maliciously raised the [PPF] in the first place." Opp. 22. These are legal conclusions entitled to no weight. *Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009) (allegations of "purposeful, invidious discrimination" not "plausible" given an "obvious alternative explanation"). Plaintiff alleges no facts that would support his bare assertion of the Individual Defendants' anti-religious animus. *Mandel v. Hafermann*, 503 F. Supp. 3d 946, 985 (N.D. Cal. 2020). More fundamentally, Plaintiff never explains how ***someone else*** raising the PPF violates his religious beliefs.

difference. Plaintiff never alleges or suggests that the County or any of the Individual Defendants would have applied EA-231 any differently to someone with a secular reason for not wanting to comply with EA-231 (such as political, non-religious animus toward the LGBTQ community). *See Tandon v. Newsom*, 593 U.S. 61, 62 (2021) (per curiam) (regulations are not neutral "whenever they treat any comparable secular activity more favorably than religious exercise").

**EA-231 is generally applicable.** EA-231 contains no individualized, discretionary exceptions that would invite anti-religious discrimination. Plaintiff tries to construe the logistical limits on EA-231—namely, that it cannot be applied where the flagpoles are not equipped to fly the PPF—as an individualized exception. But that distorts the meaning of an individualized, discretionary exception, and is not supported by the case law.

Plaintiff focuses on *Tandon*, a per curiam decision that has no applicability here. During the pandemic, California's "Blueprint System" for restrictions on private gatherings permitted more than three families to gather at salons, stores, and theaters, but not for home religious exercise. The Court applied strict scrutiny because the Blueprint System contained "myriad exceptions and accommodations for comparable activity." 593 U.S. at 64.

*Tandon* involved a state order that **banned** religious exercise. EA-231 does no such thing. Plaintiff posits that flying the PPF at one County facility but not another violates the First Amendment. This argument fails because flying a flag, unlike prohibiting home Bible study, has no effect on religious practice. So too, flying the PPF at a beach but not at a park with no flagpole has no impact on religion. *Cf. We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 288 (2d Cir. 2021) (policy "is not individualized simply because it contains express exceptions for objectively defined categories"). The County does not "treat *any* comparable secular activity more favorably than religious exercise," 593 U.S. at 62, because flying the PPF is not religious exercise, anywhere.

**California Constitution.** Plaintiff asserts that California's Free Exercise clause implicates the "pre-1990 federal test of simply determining whether there is a burden on religion, and if so, applying strict scrutiny." Opp. 19. That is false.

The California Supreme Court has repeatedly—most recently in *North Coast Women's Care Medical Group, Inc. v. Superior Court*—declined to identify the test that applies under the California Constitution. 44 Cal.4th 1145, 1158 (2008). In *North Coast*, the Court denied the Free Exercise claim of physicians who argued that providing fertility treatments to same-sex couples violated their religious beliefs. The Court relied on federal cases to dispose of the federal Free Exercise claim and then held that the physicians' claims failed under any other conceivable state test. *Id.* at 1154-58, 1158-60; *cf. Wolfe v. Logan*, 2023 WL 2239062, at *4 (C.D. Cal. 2023) (Staton, J.).

Further, California courts make clear that the California Constitution "protects the free exercise of religion, **not peripheral activities**." *People v. Rubin*, 168 Cal.App.4th 1144, 1150-51 (2008) (the sale of marijuana is not protected under California's Free Exercise Clause, even if marijuana has a sacramental use in some religions); *see Temple of 1001 Buddhas v. City of Fremont*, 2022 WL 1570480, at *11 (N.D. Cal. 2022) (land-use order prohibiting worship in three buildings not a substantial burden).[8]

### 2. Plaintiff Still Fails to Identify Any Adverse Action Underlying His Failure-to-Accommodate Claims

Plaintiff now asserts that his BIU suspension is not the basis for his failure-to-accommodate claims. Opp. 14. Instead, he asserts that "the relevant adverse

---

[8] Plaintiff curiously suggests that the California Supreme Court adopted, in *Catholic Charities v. Superior Court*, 32 Cal.4th 527 (2004), a prior concurrence as the rule for Free Exercise challenges. Opp. 19-20. *Catholic Charities* noted that prior concurrence "did not address the state Constitution." 32 Cal.4th at 560. *Rubin* relies on *Catholic Charities* and *North Coast* in holding that the state constitution does not protect peripheral activities. 168 Cal.App.4th at 1150.

action is that [he] will be fired if he fails to comply." *Id.*

A failure-to-accommodate claim can be based on a plaintiff's compliance with a policy that conflicts with his religion out of fear of termination. *EEOC v. Townley Eng'g & Mfg. Co.*, 859 F.2d 610, 614 n.5 (9th Cir. 1988). But Plaintiff cites only the investigation into his ***lowering*** of the PPF, ¶72, and the County's Notice of Instruction reiterating that Plaintiff must comply with EA-231, Ex. 11. That Notice says nothing about potential termination.[9]

Plaintiff never alleges that he violated his religious beliefs to keep his job—or that he was threatened with termination. Plaintiff concedes that he refused to comply with Chief Lester's order to re-raise the PPF that Plaintiff had lowered. ¶65. He was not suspended for failing to re-raise the PPF; in fact, Chief Lester re-raised the flag instead.

### 3. Plaintiff Identifies No Facts to Make Out His Retaliation Claims

Plaintiff appears to concede that most of the alleged conduct in his complaint (for instance, statements made by Individual Defendants) is not actionable because Title VII is not a "general civility code." *Maner v. Dignity Health*, 9 F.4th 1114, 1127 (9th Cir. 2021); Opp. 15. Retaliation is at issue only for Plaintiff's suspension from the BIU.[10]

---

[9] Plaintiff's suggestion that he might be terminated for failure to comply with EA-231 is implausible given that the Defendants have worked with him for over a year to find an accommodation. ¶¶39-45, 92-105.

[10] A retaliation claim cannot lie where the alleged protected activity was an accommodation request and the alleged retaliation was the denial or revocation of that same accommodation. *Waite v. Gonzaga Univ.*, 2019 WL 544947, at *5 (E.D. Wash. 2019). Otherwise, it "would convert all … failure-to-accommodate claims" into retaliation claims. *Id.*

Plaintiff also makes two veiled, but serious, allegations against the County in his Opposition: that the County "subjected him to … a death threat" and "violat[ed][] his right to privacy." Opp. 9, 12. Plaintiff cites no allegations in his FAC in

Plaintiff points to a handful of allegations that, he asserts, support his retaliation claim: "that Plaintiff's religious accommodation was revoked after one day; that Section Chief Lester knew that [Plaintiff] had been given a religious accommodation, and intentionally undermined it; and … that Chief Boiteux directly told [Plaintiff] that 'Your religious beliefs do not matter.'" Opp. 15. But Plaintiff links **none** of these allegations to his suspension from the BIU. Plaintiff "must satisfy the pleading requirements of Rule 8 ***before*** the discovery stage." *Mujica v. AirScan Inc.*, 771 F.3d 580, 593 (2014). By not alleging who suspended him, Plaintiff fails entirely to allege that "at least one of the persons responsible" for suspending him from the BIU "had knowledge that Plaintiff had engaged in protected activity." *Muir v. City of Placentia*, 2019 WL 8195237, at *4 (C.D. Cal. 2019). Offering "only temporal proximity" is insufficient. *Id.*[11]

### C. This Court Can and Should Grant Qualified Immunity to the Individual Defendants on the Pleadings

The Individual Defendants are immune from Plaintiff's claims for civil damages because EA-231 did not violate Plaintiff's rights and because any potential constitutional violation was not clearly established.[12] Plaintiff responds that "it is inadvisable to adjudicate qualified immunity on the pleadings" and that "it is

---

support of either allegation—because there are none. These accusations have no factual support and are purely inflammatory.

[11] Plaintiff's assertion that the investigations into his actions were pretextual, Opp. 15, does nothing to save his retaliation claim because he alleges no ***facts*** that indicate any decisionmaker disciplined him for reasons other than his lowering of the PPF. Rather, "mere allegations are insufficient to show pretext when [plaintiff] engaged in a pattern of policy violations." *Abdul-Haqq v. Permanente Med. Grp., Inc.*, 2024 WL 1155449, at *1 (9th Cir. 2024).

[12] This argument applies to both federal and state claims. Mot. 22. Additionally, "California courts have repeatedly found that violations of fundamental rights guaranteed under the state constitution do not give rise to a private cause of action for damages." *Elrawi v. Burgess*, 2018 WL 6133416, at *6 (C.D. Cal. 2018) (collecting cases); *accord Ellington v. Cal. Dep't of Corr. & Rehab.*, 2022 WL 2167461, at *9 (C.D. Cal. 2022).

clearly established that government officials may not intentionally discriminate." Opp. 29.

But "[t]he Supreme Court has repeatedly ... stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th 867, 892 (9th Cir. 2022). Qualified immunity "is both a defense to liability and a limited entitlement not to stand trial or otherwise face the other burdens of litigation." 556 U.S. at 672.

As for Plaintiff's intentional-discrimination argument, it is beside the point. Plaintiff "bears the burden of showing that the rights allegedly violated were clearly established." *Gordon v. Cnty. of Orange*, 6 F.4th 961, 969 (9th Cir. 2021). "Qualified immunity is not meant to be analyzed in terms of a general constitutional guarantee, but rather the application of general constitutional principles in a particular context." *Id.* The factual allegations are the oral statements made by Chief Boiteux. ¶69. Plaintiff fails to identify *any* prior controlling precedent establishing a reasonable officer would know such statements were unlawful.

The Department (through EA-231), not the Individual Defendants, set out where and when the PPF would fly. Exs. 3-5. And Plaintiff concedes that the Individual Defendants never forced him to raise the PPF, ¶65, or in any other way "defile himself by doing something that is completely forbidden by his religion." *Jones v. Williams*, 791 F.3d 1023, 1033 (9th Cir. 2015).

### III. CONCLUSION

The Court should dismiss the FAC with prejudice.

Dated: August 16, 2024

/s/ *Dimitri D. Portnoi*
Dimitri D. Portnoi
Kyle M. Grossman
Marni B. Robinow
O'MELVENY & MYERS LLP

*Attorneys for Defendants County of Los Angeles, Fernando Boiteux, Adam Uehara, and Arthur Lester*

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants County of Los Angeles, Fernando Boiteux, Adam Uehara, and Arthur Lester, certifies that this brief contains 4,199 words, which complies with the word limit of Local Rule 11-6.1 and ¶7 of this Court's procedures.

Dated:  August 16, 2024         O'MELVENY & MYERS LLP

                                By:   */s/ Dimitri D. Portnoi*
                                      Dimitri D. Portnoi

                                *Attorneys for Defendants County of Los Angeles, Fernando Boiteux, Adam Uehara, and Arthur Lester*