DIMITRI D. PORTNOI (S.B. # 282871)
dportnoi@omm.com
KYLE M. GROSSMAN (S.B. # 313952)
kgrossman@omm.com
MARNI B. ROBINOW (S.B. # 313412)
mrobinow@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street, Suite 1900
Los Angeles, California 90071
Telephone: (213) 430 6000
Facsimile: (213) 430 6407

*Attorneys for Defendants County of Los Angeles, Fernando Boiteux, Arthur Lester, and Adam Uehara*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

Jeffrey Little,

Plaintiff,

v.

Los Angeles County Fire Department, et al.,

Defendants.

Case No. 2:24-cv-04353-JLS-PD

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT**

*[Filed concurrently with Notice of Motion and Motion to Dismiss Second Amended Complaint and [Proposed] Order]*

Hearing Date: April 25, 2025
Time: 10:30 a.m.
Judge: Hon. Josephine L. Staton
Courtroom: 8A

SAC Filed: Feb. 10, 2025
Trial Date: None set

## TABLE OF CONTENTS

Page

I. INTRODUCTION .......... 1

II. BACKGROUND .......... 1

A. First Amended Complaint .......... 1

B. Second Amended Complaint .......... 3

III. LEGAL STANDARD .......... 5

IV. ARGUMENT .......... 6

A. The SAC Alleges a Non-Discriminatory Reason for Plaintiff's Suspension .......... 6

B. Plaintiff's Claims Remain Implausible Because the SAC Alleges Good-Faith Efforts to Accommodate His Religious Beliefs .......... 7

V. CONCLUSION .......... 10

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Am. Postal Workers Union, San Francisco Loc. v. Postmaster Gen.*, 781 F.2d 772 (9th Cir. 1986) .......... 9

*Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60 (1986) .......... 9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 5

*Barrington v. United Airlines, Inc.*, 566 F. Supp. 3d 1102 (D. Colo. 2021) .......... 9

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 5

*Bolden-Hardge v. Office of California State Controller*, 63 F.4th 1215 (9th Cir. 2023) .......... 6

*Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644 (2020) .......... 6

*Dawson v. Entek Int'l*, 630 F.3d 928 (9th Cir. 2011) .......... 7

*EEOC v. Townley Eng. & Mfg. Co.*, 859 F.2d 610 (9th Cir. 1988) .......... 6

*Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580 (9th Cir. 2008) .......... 5

*Peterson v. Hewlett-Packard Co.*, 358 F.3d 599 (9th Cir. 2004) .......... 6, 8, 9

# I. INTRODUCTION[1]

Plaintiff Jeffrey Little's Second Amended Complaint ("SAC") revisits his failure-to-accommodate claims under Title VII of the Civil Rights Act of 1964 and the California Fair Employment and Housing Act ("FEHA"), which the Court previously dismissed, but adds nothing of substance. Relying chiefly on alleged facts and exhibits that he cited in his earlier complaints, Plaintiff adds allegations about purported "prospective" and "retrospective" adverse actions that he suffered or will suffer as a result of the County's actions. Notwithstanding his efforts to save these claims, they still fail. First, Plaintiff does not allege that he was in any way penalized "because of" his purported religious beliefs. Rather, the SAC confirms that, to the extent Plaintiff does allege an adverse employment action, any action the County took was because he lowered the Progress Pride Flag ("PPF") in violation of County policy. Second, even if Plaintiff could establish a prima facie case under Title VII and FEHA, his SAC confirms good-faith attempts by the County—spanning each successive Pride Month—to provide Plaintiff with a religious accommodation. Having failed to remedy the defects the Court observed in the First Amended Complaint ("FAC"), the County requests that the Court now dismiss Plaintiff's failure-to-accommodate claims with prejudice.

# II. BACKGROUND

## A. First Amended Complaint

Because the County has previously recited the factual background leading to Plaintiff's SAC in its Motion to Dismiss Little's FAC (Dkt. No. 35), it recites only the relevant portions to the instant Motion here.

On June 18, 2023, Plaintiff sent an email requesting "to be exempt from adhering to EA-231" because "it infringes on [his] sincere religious beliefs." FAC

---

[1] All emphasis is added to, and citations, alterations, and internal quotation marks omitted from, quoted passages unless otherwise noted.

¶¶ 39-40; Ex. 6. Plaintiff attended an interactive process meeting ("IPM") with a County human resources officer to discuss his religious objection. FAC ¶ 41. Plaintiff alleges that, in that meeting, he explained that his religious beliefs "did not allow him to raise the [PPF] or ensure that it is raised and properly flown." *Id.* He states that the County agreed not to require him to raise the PPF or "ensure raising" it. *Id.* Plaintiff alleges that, as a result of the meeting, the "Fire Department agreed to Captain Little's request by promising: (1) movement to a site not flying the Progress Pride Flag; (2) no requirement to raise the Progress Pride Flag; and (3) no requirement to ensure raising of the Progress Pride Flag." FAC ¶ 41.[2]

After the IPM, on June 21, 2023, Chief Arthur Lester allegedly modified the flagpoles in Area 17 so that they could fly the PPF. FAC ¶¶ 55-57. Before the start of Plaintiff's scheduled shift, Chief Lester directed the lifeguards at Dockweiler Beach—not Plaintiff—to raise the PPF. FAC ¶ 57; Ex. 11. Plaintiff concedes his work shift "starts after the [PPF] needs to be raised … and ends before it needs to be lowered." FAC ¶ 99.

When Plaintiff arrived at work, he took down the PPF from his initial worksite, then traveled to other locations to remove flags there. FAC ¶¶ 61-62; Exs. 11, 18. Plaintiff's alleged accommodation did not permit him to take down the PPF when it was already flying. FAC ¶ 41. Indeed, Plaintiff has requested that he not lower or even handle the PPF. *Id.*, Exs. 21, 22. On June 23, 2023, Plaintiff "was suspended from his role on the background investigation unit" ("BIU"). FAC ¶ 75(A). The same day, Plaintiff was informed that he was the subject of an investigation because he lowered the PPF several days prior. FAC ¶ 72. Also that

[2] Plaintiff attempted to clarify the purported accommodation. In the SAC, Plaintiff alleges that, as a result of the meeting, the County agreed to his request by promising "(1) to move him to a site not flying the [PPF]; (2) that he need not personally raise the flag; and (3) that he need not ensure/oversee raising or flying of the flag because, if he were assigned to headquarters, he would not serve as a supervisor." SAC ¶ 46.

day, Plaintiff also received a "Notice of Instruction," which required that "[a]ll [Fire] Department employees, irrespective of personal beliefs, are expected to comply with EA-231, which includes raising the flag as instructed." *Id.*, Ex. 11. Plaintiff also received a Direct Order the same day, requiring him to comply with EA-231. FAC, Ex. 7.

Following Plaintiff's suspension and the County's efforts to accommodate him, the County continued to discuss with Plaintiff his requested accommodation, and ultimately informed him that he could request accommodations every June. FAC ¶ 102. On May 8, 2024, Plaintiff submitted a new religious accommodation request. *Id.* ¶ 89, Ex. 22. Following his request, the County and Plaintiff held an IPM on May 29, 2024. FAC ¶ 93. During that meeting, Plaintiff "explained the nature of his religious beliefs" and "his need for a religious accommodation." *Id.* ¶ 94. On May 31, 2024, the County held a second IPM. *Id.* ¶ 99. During that meeting, the County confirmed that "it would offer [Plaintiff] a partial religious accommodation," *i.e.*, that Plaintiff "would not be personally responsible for raising or lowering the [PPF]." *Id.* ¶ 99. Plaintiff "secured an effective accommodation" that year, which resulted in his working where the PPF is not flown. *Id.* ¶ 104. But Plaintiff alleges that this is not a "workable and complete religious accommodation" because the County intends to expand the number of sites where the PPF can be flown. *Id.* ¶¶ 106-10.

**B. Second Amended Complaint**

Defendants previously moved to dismiss Plaintiff's FAC. As relevant here, the Court granted that motion in part, holding that Plaintiff "failed to plausibly allege an adverse action supporting his failure-to-accommodate claims." Dkt. No. 50 at 8. The Court held that Plaintiff "offer[ed] no factual support for his allegation that Defendants 'confirmed that he will be subject to … termination for failure to personally raise, ensure raising, maintain or otherwise affirm the Progress Pride

Flag.'" *Id*. (citing FAC ¶ 129). Because Plaintiff identified "only [the] investigation into his conduct of lowering the Progress Pride Flags and the June 22, 2023 Notice of Instruction" to all Fire Department employees to comply with EA-231, there were insufficient allegations to establish an adverse employment action. *Id.* Moreover, because Plaintiff had received an accommodation from complying with EA-232 in June 2024, the Court found "his allegation that he will be terminated for failure to comply with EA-232, or any similar directives in the future, to be implausible." *Id.* at 9.

Plaintiff's SAC adds virtually no new factual allegations, relying heavily on exhibits cited in the FAC.[3] He now contends that he suffered both "retrospective[]" and "prospective" adverse employment actions. As to the alleged retrospective adverse actions, the SAC alleges that Defendants "subjected Captain Little to an investigation, placed him on unpaid administrative leave, subjected him to hostile personal attacks, and removed him from the Background Investigation Unit." SAC ¶ 137. However, each of these underlying factual allegations was present in the FAC. *See* FAC ¶ 72 (investigation); FAC ¶ 80 (suspension); FAC ¶¶ 69, 75(b) (hostile attacks); FAC ¶ 75(a) (suspension from BIU).

Plaintiff raises nothing new as to his purported prospective adverse employment actions either. Citing an exhibit that appeared in the FAC—and the original Complaint before that—the SAC also notes that the Direct Order observed that his failure to comply "will be considered insubordination and subject to

[3] The SAC adds three new paragraphs concerning the implementation of EA-231 and Plaintiff's vacation plans and return to work (SAC ¶¶ 39-41), additional detail concerning his requested accommodation (*id.* ¶ 45), three new paragraphs concerning the "practical[ity]" of his requested accommodation (*id.* ¶¶ 47-49), three additional paragraphs concerning his October 24, 2024 suspension, as well as the Notice of Suspension (*id.* ¶ 87, Ex. 19), a summary memorandum from his 2024 IPM meetings (SAC ¶¶ 107, 110, Ex. 25), as well as additional citations to caselaw and minor edits to other factual allegations present in the FAC.

disciplinary action, which could include suspension and/or discharge from County service." *See id.* (quoting Exhibit 7). Plaintiff then quotes from two new exhibits: the October 24, 2024 Notice of Suspension letter and a summary memorandum by the Fire Department from Plaintiff's May 2024 IPMs, although these exhibits and quotations add nothing to Plaintiff's allegations. SAC, Exs. 19, 25. The October 24, 2024 letter confirms what was already said in the Direct Order, which this Court has already considered—*i.e.*, that Plaintiff could be subject to "disciplinary action, including discharge" for any further violation of the County's policies. SAC, Ex. 9; *see* also FAC, Ex. 7 (noting that he could be subject to "disciplinary action, which could include suspension and/or discharge"). Plaintiff also alleges that, in the latest IPM, the Fire Department stated that it would not accommodate his request to be exempt from "ensuring that staff comply with policies, procedures, and directives, which include EAs." *See id.* (quoting Exhibit 25). But this allegation does nothing more than rehash what the Notice of Instruction—which Plaintiff attached to his FAC—said: "All department employees, irrespective of personal beliefs, are expected to comply with EA-231, which includes raising the flag as instructed, refraining from taking the flag down, and ensuring compliance from subordinate staff." *See* FAC, Ex. 11; SAC, Ex. 11.

## III. <u>LEGAL STANDARD</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard requires more than "labels and conclusions": a "formulaic recitation of the elements of a cause of action will not do." *Id.* Nor should courts "accept as true allegations contradicting documents that are referenced in the complaint." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). Rather, the allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555 (2007).

## IV. ARGUMENT

Claims for religious discrimination under Title VII and FEHA are analyzed under a two-step framework. *Bolden-Hardge v. Office of California State Controller*, 63 F.4th 1215, 1222 (9th Cir. 2023). Under the first step, a plaintiff must establish a prima facie case of a failure to accommodate religion, which requires showing that "(1) a bona fide religious belief of the employee conflicted with an employment policy; (2) the employee informed the employer of the conflict; and (3) the employee was penalized in some way because of the conflict." *EEOC v. Townley Eng. & Mfg. Co*., 859 F.2d 610, 614 n.5 (9th Cir. 1988). Under the second step, should the plaintiff establish the prima facie case, the burden shifts to the employer to demonstrate that it "initiated good faith efforts to accommodate reasonably the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship." *Peterson v. Hewlett-Packard Co*., 358 F.3d 599, 606 (9th Cir. 2004).

Plaintiff's failure-to-accommodate claims should be dismissed for two independent reasons. First, he still fails to identify an adverse action taken "because of" a conflict between his religious belief and an employment policy. Second, on its face the SAC demonstrates that the County "initiated good faith efforts to accommodate" Plaintiff's religious beliefs, making his failure-to-accommodate claims just as implausible as they were in his FAC.

### A. The SAC Alleges a Non-Discriminatory Reason for Plaintiff's Suspension

Plaintiff has again failed to establish that he was "penalized in some way ***because of*** the conflict" between his bona fide religious belief and the employment policy. *Townley Eng. & Mfg. Co*., 859 F.2d at 614 n.5. A claim under Title VII, Section 2000e-2(a)(1) requires establishing but-for causation between the allegedly

retaliatory action and a plaintiff's religious beliefs. *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 657 (2020). Plaintiff's SAC confirms that the County had a non-discriminatory reason for his suspension—particularly, his lowering of the PPF on June 21, 2023 in direct violation of County policy. *See* SAC ¶¶ 79-80; Ex. 10. The letter informing him of the suspension confirmed that he was the "subject of a Fire Department Administrative Investigation [focusing] on ***alleged misconduct generally concerning the removal of the Progress Pride Flag from County facilities on June 21, 2023***." SAC, Ex. 10.

Plaintiff's assertions that a causal link "between requesting an accommodation and retaliation can be inferred *solely* from temporal proximity" also lack merit. Dkt. No. 35 at 15 (citing *Dawson v. Entek Int'l*, 630 F.3d 928, 937 (9th Cir. 2011)). While Plaintiff has cited *Dawson* to support this argument, the case is inapposite. There, the plaintiff was subject to derogatory comments about his sexual orientation, including being labeled a "worthless queer," a "homo," and "Tinker Bell," as well as other offensive commentary. *Dawson v. Entek Int'l*, 630 F.3d 928, 933 (9th Cir. 2011). The plaintiff subsequently contacted human resources to file a complaint and was terminated two days later. *Id.* at 933-934. Unlike Plaintiff's situation here, in *Dawson*, the plaintiff did nothing to violate the company's policies (or warrant termination) that would break the chain of causation between the plaintiff's termination and his efforts to file a complaint. Moreover, unlike here, *Dawson* was replete with evidence of animus. Here, however, Plaintiff's SAC clearly establishes that following the County's grant of an accommodation, Plaintiff violated County rules by lowering the PPF, something which his accommodation did not permit him to do.

### B. Plaintiff's Claims Remain Implausible Because the SAC Alleges Good-Faith Efforts to Accommodate His Religious Beliefs

In any event, the Court should dismiss Plaintiff's failure-to-accommodate

claims because, as before, they remain implausible in light of the County's "good faith effort[] to accommodate reasonably" Plaintiff's religious practices. *Peterson*, 358 F.3d at 606; *see* Dkt. No. 50 at 8-9.

The SAC is replete with allegations that the County engaged in consistent, good-faith efforts in 2023 and 2024 to provide Plaintiff with an accommodation. In 2023, the County held several IPMs with Plaintiff to devise a proper accommodation. SAC ¶¶ 45-46. The County then told Plaintiff that he could "negotiate arrangements with others assigned to various sites to avoid a conflict between his religious beliefs and compliance with EA-231." *Id.* ¶ 53. In August 2023, the County told Plaintiff that, while he could be eligible for subsequent accommodations, he should renew his request the following year because the County "could not confirm whether the [PPF] would be flown every June…." *Id.* ¶ 97.

The following year, prior to Pride Month, Plaintiff contacted the County to determine whether he could obtain an accommodation for that year's Pride Month, per the County's prior instructions. *Id.* ¶ 98. The County contacted him to schedule an IPM, which was held May 29, 2024. *Id.* ¶¶ 100-101. A second IPM was held on May 31, 2024. *Id.* ¶ 107. A human resources officer explained to Plaintiff "that the Fire Department had determined that it would offer [him] a partial religious accommodation" as well, which would ensure that "[he] would not be personally responsible for raising or lowering the Progress Pride Flag." *Id.* ¶ 107. The County has also represented to Plaintiff and this Court that it would work with Plaintiff "to achieve a practical accommodation" for June 2025. Dkt. No. 48 at 9.

Plaintiff's arguments to the contrary are unavailing. First, Plaintiff's assertion that the County "refused to engage" in the IPM process from June 22, 2023 to May 23, 2024 is contradicted by his own complaint, as demonstrated

above.[4] The County confirmed to Plaintiff that it could not grant him an accommodation in perpetuity, instructed him to contact the County prior to the June 2024 Pride Month, and then responded to him once he did. SAC ¶¶ 97-101. As soon as Plaintiff contacted the County to request an accommodation for the June 2024 Pride Month, it worked with him to determine the appropriate accommodation. *Id.* ¶¶ 98-102; 107-113. These allegations demonstrate that the County engaged with Plaintiff in a meaningful IPM process, and in fact exceeded what *Peterson* requires by actually providing Plaintiff with an accommodation in 2023 and 2024.

Second, Plaintiff's contention that the accommodations were unsatisfactory are not dispositive here. *Id.* ¶¶ 115-120. Title VII, by its very terms, "directs that any reasonable accommodation by the employer is sufficient to meet its accommodation obligation." *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68 (1986). An employer is not obligated to "accept any accommodation, short of 'undue hardship,' proposed by an employee." *Am. Postal Workers Union, San Francisco Loc. v. Postmaster Gen.*, 781 F.2d 772, 776 (9th Cir. 1986). Rather, an employer need only offer an accommodation that would "effectively eliminate" any conflict between the employee's sincerely held religious beliefs and the employer's work requirements while "preserv[ing] the affected employee's employment status." *Id.* at 776-777. Plaintiff's belief that the County's efforts did not result in a satisfactory accommodation does not detract from the fact that the County "initiated good faith efforts to accommodate reasonably the employee's religious practices." *Peterson*, 358 F.3d at 606; *Barrington v. United Airlines, Inc.*, 566 F. Supp. 3d 1102, 1108 (D. Colo. 2021) (noting that "[c]ourts have found that employers are not

---

[4] Moreover, Plaintiff's complaint demonstrates that his first IPM for the June 2024 Pride Month took place on May 29, 2024, one day **before** the Fire Department issued EA-232, the new directive related to the PPF for the June 2024 Pride Month. SAC ¶¶ 101, 103.

obligated to create a position to accommodate an employee's religious beliefs").

## V. **CONCLUSION**

For the foregoing reasons, the Court should dismiss the SAC's failure-to-accommodate claims with prejudice.

Dated: February 24, 2025

/s/ *Dimitri D. Portnoi*
Dimitri D. Portnoi
Kyle M. Grossman
Marni B. Robinow
O'MELVENY & MYERS LLP

*Attorneys for Defendants County of Los Angeles, Fernando Boiteux, Adam Uehara, and Arthur Lester*

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants County of Los Angeles, Fernando Boiteux, Adam Uehara, and Arthur Lester, certifies that this brief contains 2,935 words, which complies with the word limit of Local Rule 11-6.1.

Dated: February 24, 2025

O'MELVENY & MYERS LLP

By: */s/ Dimitri D. Portnoi*
Dimitri D. Portnoi

*Attorneys for Defendants County of Los Angeles, Fernando Boiteux, Adam Uehara, and Arthur Lester*