Charles S. LiMandri, SBN 110841
 cslimandri@limandri.com
Paul M. Jonna, SBN 265389
 pjonna@limandri.com
Jeffrey M. Trissell, SBN 292480
 jtrissell@limandri.com
Joshua A. Youngkin, SBN 332226
 jyoungkin@limandri.com
LiMANDRI & JONNA LLP
 *as Special Counsel to*
 THOMAS MORE SOCIETY
P.O. Box 9120
Rancho Santa Fe, CA 92067
Telephone: (858) 759-9930
Facsimile: (858) 759-9938

*Attorneys for Plaintiff*
*Captain Jeffrey Little*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAPTAIN JEFFREY LITTLE, an individual,<br><br>Plaintiff,<br><br>v.<br><br>LOS ANGELES COUNTY FIRE DEPARTMENT, a public entity, et al.<br><br>Defendant. | **Case No.: 2:24-cv-4353-JLS-PD**<br><br>**Memorandum of Points & Authorities in Support of Plaintiff's Opposition to Defendants' Motion to Dismiss the Second Amended Complaint**<br><br>Judge:       Hon. Josephine L. Staton<br>Courtroom:  8A<br>Hearing Date: April 25, 2025<br>Hearing Time: 10:30 a.m.<br><br>Action Filed:  May 24, 2024 |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................3

INTRODUCTION .............................................................................................6

FACTUAL & PROCEDURAL BACKGROUND...................................................8

    A.    Los Angeles County Decides to Fly the Pride Flag During Pride Month, and Captain Little Requests a Religious Accommodation ...................................................................8

    B.    Captain Little's Religious Accommodation is Maliciously Undermined and then Wrongly Revoked. ...........................10

    C.    Captain Little Requests a Religious Accommodation for Future Pride Months, Which is Wrongly Denied in Part...................12

LEGAL STANDARD.......................................................................................14

ARGUMENT .................................................................................................14

    I.    Plaintiff Captain Little Has Plausibly Alleged that His Failure to Comply with EA-231 in June 2023 was Religiously Motivated ...........................................................16

    II.    Plaintiff Captain Little Has Plausibly Alleged the Fire Department's Refusal to Provide a Reasonable Accommodation for EA-232........................................................20

        A.    Defendant Fire Department's novel "good faith" defense has no basis in law, and is factually unsupported................................................................20

        B.    Plaintiff Captain Little's experience in 2024 shows that more is needed from Defendant Fire Department going forward........................................................23

CONCLUSION...............................................................................................27

CERTIFICATE OF COMPLIANCE...................................................................28

# TABLE OF AUTHORITIES

**Cases**

*Aguayo v. U.S. Bank*
    653 F.3d 912 (9th Cir. 2011)...............................................................14

*Am. Postal Workers Union, San Francisco Loc. v. Postmaster Gen.*
    781 F.2d 772 (9th Cir. 1986) ...............................................20, 25, 27

*Anderson v. Gen. Dynamics*
    589 F.2d 397 (9th Cir. 1978) .......................................................21, 22

*Ansonia Bd. of Educ. v. Philbrook*
    479 U.S. 60 (1986) ..........................................................................25

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) .........................................................................14

*Baker v. The Home Depot*
    445 F.3d 541 (2d Cir. 2006) ............................................................24

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007) .........................................................................14

*Berry v. Dep't of Soc. Servs.*
    447 F.3d 642 (9th Cir. 2006) ...........................................................18

*Bingham v. City of San Jose*
    No. H051386, 2024 WL 4615360 (Cal. Ct. App. Oct. 30, 2024)................25

*Bodett v. CoxCom, Inc.*
    366 F.3d 736 (9th Cir. 2004) ...........................................................18

*Bolden-Hardge v. Off. of Cal. State Controller*
    63 F.4th 1215 (9th Cir. 2023) ..........................................................15

*Brown v. Polk Cnty., Iowa*
    61 F.3d 650 (8th Cir. 1995) .............................................................18

*Carter v. Transp. Workers Union of Am. Loc. 556*
    353 F. Supp. 3d 556 (N.D. Tex. 2019).............................................18

*Cooper v. Gen. Dynamics*
    533 F.2d 163 (5th Cir. 1976) ...........................................................18

3

**Cases (Cont.)**

*Cooper v. Oak Rubber Co.*
    15 F.3d 1375 (6th Cir. 1994) ............................................................. 24

*Crawford v. Trader Joe's Co.*
    No. 5:21-cv-1519, 2023 WL 3559331 (C.D. Cal. May 4, 2023)................15

*De Martin v. La Jolla Pharm. Co.*
    No. D075026, 2020 WL 4745127 (Cal. Ct. App. Aug. 17, 2020) ................ 15

*EEOC v. Abercrombie & Fitch Stores, Inc.*
    575 U.S. 768 (2015) ...................................................14, 15, 17, 18

*EEOC v. Arlington Transit Mix, Inc.*
    957 F.2d 219 (6th Cir. 1991) ...................................................... 22, 27

*EEOC v. Hacienda Hotel*
    881 F.2d 1504 (9th Cir. 1989) ..................................................... 21, 22

*EEOC v. Robert Bosch Corp.*
    169 F. App'x 942 (6th Cir. 2006)...................................................... 22

*EEOC v. Townley Eng'g & Mfg. Co.*
    859 F.2d 610 (9th Cir. 1988).......................................................... 19

*EEOC v. Triangle Catering, LLC*
    No. 5:15-cv-16, 2017 WL 818261 (E.D.N.C. Mar. 1, 2017) ......................... 18

*FEHC v. Gemini Aluminum Corp.*
    122 Cal. App. 4th 1004 (2004)...................................................15, 22

*Grabowski v. Ariz. Bd. of Regents*
    69 F.4th 1110 (9th Cir. 2023)..........................................................15

*Hebrew v. Texas Dep't of Crim. Just.*
    80 F.4th 717 (5th Cir. 2023) .......................................................... 17

*Heller v. EBB Auto Co.*
    8 F.3d 1433 (9th Cir. 1993) ................................. 14, 15, 18, 21, 22

*Keene v. City & Cnty. of San Francisco*
    No. 22-16567, 2023 WL 3451687 (9th Cir. May 15, 2023) ........................19

*Keene v. City & Cnty. of San Francisco*
    No. 24-1574, 2025 WL 341831 (9th Cir. Jan. 30, 2025).................................. 23

4

**Cases (Cont.)**

*Lawson v. Washington*
    296 F.3d 799 (9th Cir. 2002) ............................................................. 21

*Malik v. Brown*
    16 F.3d 330 (9th Cir. 1994) ...............................................................19

*Manzarek v. St. Paul Fire & Marine Ins. Co.*
    519 F.3d 1025 (9th Cir. 2008) ...........................................................14

*McGuire v. Gen. Motors Corp.*
    956 F.2d 607 (6th Cir. 1992) ............................................................. 26

*Opuku-Boateng v. State of Cal.*
    95 F.3d 1461 (9th Cir. 1996) ...................................................... 25, 26

*Peterson v. Hewlett-Packard Co.*
    358 F.3d 599 (9th Cir. 2004) ................................................ 20, 21, 22

*Redmond v. GAF Corp.*
    574 F.2d 897 (7th Cir. 1978) ............................................................. 18

*Rivera v. NIBCO, Inc.*
    364 F.3d 1057 (9th Cir. 2004).............................................................22

*Smith v. Pyro Min. Co.*
    827 F.2d 1081 (6th Cir. 1987) ..................................................... 24, 27

*Tabura v. Kellogg USA*
    880 F.3d 544 (10th Cir. 2018) ........................................................... 26

*Tiano v. Dillard Dep't Stores, Inc.*
    139 F.3d 679 (9th Cir. 1998) ............................................................. 21

**Statutes, Regulations & Rules**

42 U.S.C. § 2000e(j)................................................................................ 14

42 U.S.C. § 2000e-2(a)(1)........................................................................ 14

Cal. Code Regs. tit. 2, § 11062(a) ........................................................... 25

5

Memo. of Points & Authorities ISO Plaintiff's Opp. to
Defendants' Motion to Dismiss the Second Amend. Complaint

**INTRODUCTION**

On January 25, 2025, this Court ruled on Defendants' motion to dismiss. *See* ECF No. 50 (hereafter "Order"). The Court granted the motion with prejudice with respect to Plaintiff Captain Little's sixth and seventh claims (Free Exercise general applicability under federal and state law) and the ninth claim (Free Speech). *Id.*, pp.11-16. This left the first and second claims (Title VII/FEHA failure to accommodate), the third and fourth claims (Title VII/FEHA retaliation), the fifth claim (FEHA failure to prevent harassment), and the eighth claim (Free Exercise neutrality). *Id.*, pp.6-14. However, with respect to the failure to accommodate claims, the Court ordered Plaintiff to amend his complaint because of inadequate pleading of adverse action. *Id.*, pp.8-9.[1]

Specifically, retrospectively, the Court held that Plaintiff failed to plead already incurred "adverse action as the basis for this claim." And prospectively, the Court held that Plaintiff Little "offers no factual support for his allegation that Defendants 'confirmed that he will be subject to … termination for failure to personally raise, ensure raising, maintain or otherwise affirm the Progress Pride Flag[,]' (FAC ¶129)," and thus "the Court finds his allegation that he will be terminated for failure to comply with EA-232, or any similar directives in the future, to be implausible." *Id.*, pp.8-9.

On February 10, Plaintiff Little filed his Second Amended Complaint to omit the claims dismissed with prejudice and to cure the defects in the failure to accommodate claims. *See* ECF No. 51 (hereafter "SAC"). Therein, Plaintiff specified that he was pleading both already incurred adverse action related to EA-231 and June 2023, and the threat of future adverse action related to EA-232. *See* SAC ¶¶137-38. Thus, Plaintiff tied the investigations, unpaid suspension, and suspension from the Background Investigation Unit to his failure to accommodate claims. *Id.*, ¶137. And,

---

[1] Page citations are to the ECF page stamp.

looking forward, he explained why Defendant Fire Department's unwillingness to provide a full and practically workable religious accommodation would lead to adverse action in the future. *Id.*, ¶138; *see also id.*, ¶¶75, 87.

On February 24, Defendant Fire Department filed a renewed motion to dismiss the failure to accommodate claims. ECF No. 53. Notably, Defendant pivots away from the concerns primarily raised in the Court's Order, and instead raises distinct arguments. ***First***, with respect to the retrospective allegations, Defendant argues that the complaint only plausibly pleads that Plaintiff Little suffered adverse action for a non-discriminatory reason, namely, his lowering of the Pride Flag. This claim fails for the simple reason that Plaintiff lowered the Pride Flag for religious reasons. *See* ECF No. 53-1, Def. Memo. ISO Mtn. to Dismiss, pp.9:22-10:24 (hereafter "Mtn.")

***Second***, Defendant argues that it has engaged in good faith efforts to reasonably accommodate Plaintiff Little's religious beliefs. But Defendant's case citations merely show that it fails to understand that a good faith attempt to negotiate a reasonable accommodation is generally necessary, but not sufficient, when the employer fails to offer a full accommodation. *See* Mtn., pp.10:25-12:9.

As part of this argument, Defendant then pivots to suggesting that its refusal to offer a full accommodation is justified because Plaintiff Little's religious needs are unreasonable. This actually confirms Plaintiff's fears that he will suffer adverse action (and satisfies the Court's concern) because Defendant is confirming that it will not accommodate Plaintiff's religious beliefs. This argument fails because once Defendant confirms that an accommodation will not be provided, it has the burden to establish an affirmative defense that is not ripe on a pleadings challenge. Moreover, as explained below, Plaintiff's requests for shift-swapping and/or assigning responsibility to another employee are perfectly reasonable. *See* Mtn., pp.12:10-13:1.

The reality of this case is that the parties are here because of Defendant's intransigence and unwillingness to negotiate a religious accommodation in good faith. Plaintiff Captain Jeffrey Little has no desire to be a party to this case. He just

wants to be on the beach every summer saving lives—not worrying about how he can negotiate the conflicting duties that he owes to God and the Fire Department.

## FACTUAL & PROCEDURAL BACKGROUND

### A.    Los Angeles County Decides to Fly the Pride Flag During Pride Month, and Captain Little Requests a Religious Accommodation

On March 7, 2023, the County of Los Angeles Board of Supervisors passed a resolution regarding flying the Pride Flag at county facilities during Pride Month— June of each year. SAC ¶19 & Ex.3.[2] In implementation of that resolution, on May 25, the Fire Department issued memorandum EA-231 stating that the Pride Flag will be flown at various lifeguard stations, and that supervisors must "[e]nsure flags are received and flown throughout the month of June." SAC ¶20 & Ex.4. In practice, not all lifeguard locations have either flagpoles or adequate flag clasps, so the Fire Department also provided a flow chart to explain when the Pride Flag should be flown. SAC ¶21 & Ex.5.

Captain Jeffrey Little is a lifeguard captain with the lifeguard division of the Fire Department. SAC ¶¶17-18. Newly added to the Second Amended Complaint, Captain Little explained that during this time—the first half of 2023—his regular assignment was Area 27. SAC ¶40. For June 1-3, Captain Little worked Area 27 and no Pride Flag had been delivered by management to be flown. Further, based on the instructions of EA-231, it appeared that the Pride Flag would not be flown at Area 27. However, Captain Little would often work extra shifts at other locations in the form of "Overtime" (volunteer extra shifts), "Recall" (mandatory extra shifts), or "Relief" (prescheduled shifts on straight-time). SAC ¶40.

From June 4-17, Captain Little was taking a pre-scheduled vacation and considered how he can protect his religious beliefs. He discussed the issue with a few

---

[2] Like Defendant, *see* Mtn., p.4:21-23, Plaintiff will not repeat all of the factual background, but only the relevant background from the Second Amended Complaint that is new or relates to the failure to accommodate claims.

colleagues and they expressed fear that raising objections would tarnish their promotability/eligibility for special assignments. As a result, Captain Little was conflicted. He had always been a low maintenance employee, but his faith was very important to him. After conducting research and praying about it, he decided that he should ask for an exemption on his first day back at work. SAC ¶41.

On June 18, 2023, Captain Little requested a religious accommodation. His work schedule is not fixed, nor is it permanent. It changes and is changeable within limits, as governed by documents like the memorandum of understanding between the lifeguard's union (LACOLA) and the Fire Department, among others. SAC ¶42. In his written request, Captain Little made the broad and open-ended ask "to be exempt [from] adhering to EA-231" because compliance with it could violate his religious beliefs in myriad ways. For example, flying the Pride Flag in his own workspace could be interpreted as his personal endorsement of it. SAC ¶43 & Ex.6. Later that day, Section Chief Danielle McMillon informed Captain Little that they could schedule an Interactive Process Meeting (IPM) for the next day. SAC ¶44.

On June 19, 2023, Captain Little participated in the IPM Meeting. He explained that, under EA-231, the Pride Flag should not be flown at Area 27 and he requested confirmation that it would not be flown. In the alternative, he requested to be moved to a site not flying the Pride Flag. He explained that his religious beliefs did not allow him to raise the Progress Pride Flag or ensure that it is raised and properly flown. SAC ¶45. At the conclusion of the meeting, the Fire Department agreed to Captain Little's request for an accommodation by promising: (1) to move him to a site not flying the Pride Flag; (2) that he need not personally raise the flag; and (3) that he need not ensure/oversee raising or flying of the flag because, if he were assigned to headquarters, he would not serve as supervisor. SAC ¶46.

This accommodation appeared to be a practical solution because there were several sites that had not flown the Pride Flag for the first two-thirds of June. Working with his supervisors, Captain Little negotiated a move to Area 17 and Area

33 for the remaining days in June. SAC ¶47. At Area 17, Captain Little would be the supervisor overseeing the entire Area, which included three sub-areas manned by lifeguards. The Fire Department agreed that the Pride Flag would not be flown at Area 17. SAC ¶48. Captain Little agreed to this move even though he had to extend his commute by a full hour. SAC ¶49. At Area 33, Captain Little would not be responsible for the Pride Flag being flown at Zuma Lifeguard Headquarters, since that was the responsibility of the Headquarters Captain. Thus, although the Pride Flag would be flown, Captain Little would not be the site supervisor in charge of ensuring it is flown and would be far from it in the field. SAC ¶49.

**B.    Captain Little's Religious Accommodation is Maliciously Undermined and then Wrongly Revoked.**

Two days later, on June 21, 2023, Captain Little planned to show up for his Recall Shift (mandatory overtime) at Area 17. He had been assigned to work the shift at a location where the Pride Flag was being flown. But, as stated above, because of the accommodation, was able to negotiate a shift-swap. SAC ¶62. However, prior to June 21, Lifeguard Division Chief Fernando Boiteux communicated to others in management that no accommodation should be extended to Captain Little. This was because of his animus against Captain Little's religious beliefs. Chief Boiteux communicated to Section Chief Arthur Lester that the flagpoles at the Area 17 sites should be modified so that they could fly Pride Flags. SAC ¶63. Due to this conversation, on the morning of June 21, Section Chief Lester brought flag clasps and Pride Flags to each of the three sub-area sites of Area 17. SAC ¶64. In the early hours of June 21, he added clasps to the halyards of the flagpoles and raised Pride Flags by ordering lifeguards who were present to do so. SAC ¶65.

At 10:30 a.m. on June 21, 2023, Captain Little arrived at work. As stated above, the granted accommodation was to move Captain Little to a site not flying the Pride Flag. Thus, upon arriving at Area 17, and understanding that he was transferred to this workplace as a site not supposed to be flying the Pride Flag, Captain Little

applied the terms of his accommodation by lowering the Pride Flags. SAC ¶68.

Later that day, at 2:45 p.m., the Fire Department informed Captain Little that his religious accommodation had been revoked. Then at 5:45 p.m., Section Chief Lester also verbally ordered Captain Little to re-raise the Pride Flags that he had lowered. SAC ¶¶71-70. Captain Little refused Section Chief Lester's order to personally re-raise the Pride Flags. He refused to do so, in part, because that would have made the Area 17 sites noncompliant with the religious accommodation, and he was confused and flustered over its sudden revocation. SAC ¶72. At the end of the day on June 21, Assistant Lifeguard Chief Adam Uehara also confirmed the denial of any religious accommodation for Captain Little. Assistant Lifeguard Chief Uehara also denied Captain Little's request to use employment benefits, including paid leave, as a means to avoid a religious conflict. SAC ¶73.

On June 22, 2023, Lifeguard Division Chief Boiteux issued a written Direct Order to Captain Little to fly the Pride Flag or ensure that the Pride Flag is flown as instructed in EA-231. The written Direct Order was hand-delivered by Chief Boiteux to Captain Little. It further states that "[f]ailure to comply with this order will be considered insubordination and subject to disciplinary action, which could include suspension and/or discharge from County service." SAC ¶75 & Ex.7. On that same day, Captain Little filed a County Policy of Equity "CPOE" administrative complaint with the Fire Department for religious discrimination and harassment and, on that same day, Chief Boiteux informed Captain Little that he was also the subject of an administrative investigation for lowering the Pride Flag. SAC ¶¶78-79 & Exs.9-10. When doing so, Chief Boiteux also delivered Captain Little a "Notice of Instruction" which stated that "[a]ll Department employees, *irrespective of personal beliefs*, are expected to comply with EA-231, which includes raising the flag as instructed." SAC ¶¶79-80 & Ex.11 (emphasis added).

Ultimately, the Fire Department subjected Captain Little to adverse employment action for non-compliance with EA-231, in the form of a specious and

pretextual investigation, placement on unpaid administrative leave, subjection to hostile personal attacks (including an anonymous death threat), and removal from the Background Investigation Unit with its significant prestige and overtime pay. SAC ¶¶82-91 & Exs.12-19.

### C.    Captain Little Requests a Religious Accommodation for Future Pride Months, Which is Wrongly Denied in Part

In August 2023, the Fire Department told Captain Little that he would need to re-request a religious accommodation in advance of June 2024. SAC ¶¶81, 97 & Ex.23. Thus, on March 21, 2024, Captain Little forwarded a letter from his counsel to Los Angeles County stating that he had filed charges with the EEOC and California Civil Rights Department. SAC ¶¶92-93 & Exs.20-21. On April 19, 2024, he forwarded a second letter from counsel explicitly requesting a religious accommodation. SAC ¶¶94-96 & Ex.22. And on May 8, 2024, Captain Little sent a third inquiry, this time via email, again attempting to renew his request for a religious accommodation. SAC ¶¶97-98 & Ex.23.

The County ignored Captain Little's three inquiries until the eve of Pride Month, thus forcing him to initiate this action. SAC ¶¶98-99. On May 29 and May 31, 2024, the County held two IPM Meetings with Captain Little. SAC ¶¶100-01. The first meeting focused entirely on gathering information. Captain Little explained his religious beliefs, his need for an accommodation, and proposed practical means of achieving that. The County employee present took this information down to present it to more senior officials with the Fire Department. SAC ¶102.

On May 30, 2024, the Fire Department issued a new directive relating to Pride Month, titled "EA-232." It states: "Fire Captains/Unit Supervisors shall … [e]nsure PPFs [Progress Pride Flags] are flown throughout the month of June at Department facilities within their respective jurisdiction per Attachment A." EA-232 also includes a FAQ to explain that not all Fire Department facilities will be flying the Pride Flag, depending on whether it is practical to do so. SAC ¶103 & Ex.24. The

12

most practical effect of EA-232 is to lower the number of locations at which the Pride Flag will be flying because it will now only fly at locations that can fly *three* flags, instead of just *two*. SAC ¶104.

On May 31, 2024, Captain Little attended the second IPM Meeting. At that meeting, the County explained that it would offer Captain Little a partial religious accommodation. Specifically, because of his regular work shift—which starts after the Pride Flag needs to be raised (at approximately 7:00 a.m.), and ends before it needs to be lowered—Captain Little would not be personally responsible for raising or lowering it. This was not an affirmative accommodation per se, but a confirmation that the Fire Department would not seek to change the status quo in a way that would create an unnecessary religious conflict for Captain Little. SAC ¶107 & Ex.25.

However, the County explained that Captain Little would still be personally responsible for ensuring compliance with EA-232. For example, if Captain Little arrived and found that the Pride Flag had not been raised, or had been positioned incorrectly, he would be responsible for ensuring its correction. SAC ¶108 & Ex.25. Captain Little responded by explaining that this was not satisfactory as it would violate his religious beliefs to enforce compliance. Further, his shift could change such that he would need to be present when the flag needs to be raised or lowered. SAC ¶109. But the County simply responded that it would not allow another employee to oversee flying of the Pride Flag. SAC ¶110 & Ex.25. The County also explained that it would not offer Captain Little a standing religious accommodation, but that he would have to renew his request in advance of every June. SAC ¶111.

Because the Fire Department refused to grant Captain Little a workable and complete religious accommodation for both past and future Pride Months, and because accommodating him would not actually be an undue burden, Captain Little is continuing to prosecute his failure to accommodate claims. SAC ¶¶115, 129-53.

///

///

## LEGAL STANDARD

To survive a Rule 12(b)(6) "motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. "A complaint must not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *Aguayo v. U.S. Bank*, 653 F.3d 912, 917 (9th Cir. 2011). The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

## ARGUMENT

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's … religion[.]" 42 U.S.C. § 2000e-2(a)(1). To discriminate "because of … religion" includes discrimination because of "all aspects of religious observance and practice, as well as belief." *Id*. at § 2000e(j). Thus, an employer has a duty to "accommodate" an employee's religious practice, "which means … allowing the plaintiff to engage in her religious practice despite the employer's normal rules to the contrary." *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 772 n.2 (2015).

To establish a prima facie claim for religious discrimination through non-accommodation, a plaintiff must plead that: (1) "[he] had a bona fide religious belief, the practice of which conflicted with an employment duty"; and (2) "the employer threatened [him] with or subjected [him] to discriminatory treatment … because of [his religious] inability to fulfill the job requirements." *Heller v. EBB Auto Co.*, 8 F.3d

1433, 1438 (9th Cir. 1993). Title VII "does not impose a knowledge requirement." *Abercrombie*, 575 U.S. at 773. Thus, a specific "request for accommodation … is not a necessary condition of liability," so long as religious practice "was a motivating factor in the employer's decision." *Id*. at 772, 774.

*Heller* and other older Ninth Circuit cases "require that an employee 'inform[] his employer of the belief and conduct' to plead a failure to accommodate claim." *Crawford v. Trader Joe's Co.*, No. 5:21-cv-1519, 2023 WL 3559331, *9 n.4 (C.D. Cal. May 4, 2023). But these cases were abrogated by *Abercrombie* on this point. *See id.*; *see also Grabowski v. Ariz. Bd. of Regents*, 69 F.4th 1110, 1118 (9th Cir. 2023). Thus, more recent Ninth Circuit case law omits a reference to a specific notice to the employer. *See Bolden-Hardge v. Off. of Cal. State Controller*, 63 F.4th 1215, 1222 (9th Cir. 2023). What matters is that the employer act with the requisite intent, which could be shown by the employee submitting a religious accommodation request, or could be shown via the obvious facts that the conduct (wearing a hijab, yarmulke, or cross) is inherently religious. *See Abercrombie*, 575 U.S. at 772-74 & n.3.[3]

Here, as stated above, Defendant's pending motion is targeted solely at Plaintiff Little's Title VII and FEHA failure to accommodate claims. Those claims, in turn, each have two aspects: a retrospective aspect seeking reinstatement and back-pay relating to Captain Little's failure to comply with EA-231, and a prospective aspect seeking injunctive relief with respect to EA-232. *See* SAC ¶¶137-38, 149. Defendant attacks each aspect in turn, on separate grounds, but each argument fails.

---

[3] Under FEHA, the element requiring that an employee specifically "inform" his employer has been more correctly formulated as "the employer was aware" of the religious belief. *See FEHC v. Gemini Aluminum Corp.*, 122 Cal. App. 4th 1004, 1011 (2004). Other California courts have also explicitly applied the *Abercrombie* reasoning to FEHA. *See De Martin v. La Jolla Pharm. Co.*, No. D075026, 2020 WL 4745127, *5 (Cal. Ct. App. Aug. 17, 2020). This makes sense because Title VII and FEHA are generally interpreted identically. *See Bolden-Hardge v. Off. of Cal. State Controller*, 63 F.4th 1215, 1222 & n.3 (9th Cir. 2023).

## I. Plaintiff Captain Little Has Plausibly Alleged that His Failure to Comply with EA-231 in June 2023 was Religiously Motivated

Regarding EA-231 and Plaintiff Captain Little's retrospective request for reinstatement to the Background Investigation Unit and back-pay damages, the complaint pleads: "Plaintiff Little … has a sincerely held religious belief, based on deeply and sincerely held religious, moral, and ethical convictions, that he cannot personally raise, ensure raising, maintain, or fly the Progress Pride Flag." SAC ¶133. The complaint continues, stating: "because Plaintiff Little failed to fly the Progress Pride Flag at his worksite, and instead lowered the flag, as stated above, the Fire Department subjected Captain Little to an investigation, placed him on unpaid administrative leave, subjected him to hostile personal attacks, and removed him from the Background Investigation Unit." SAC ¶137.[4]

In attacking this claim, Defendant argues: "A claim under Title VII, Section 2000e-2(a)(1) requires establishing but-for causation between the allegedly retaliatory action and a plaintiff's religious beliefs." Mtn., pp.9:26-10:1. But "Plaintiff's SAC confirms that the County had a non-discriminatory reason for his suspension—particularly, his lowering of the [Pride Flag] on June 21, 2023 in direct violation of County policy." *Id*., p.10:2-4 (citing SAC ¶¶79-80 & Ex.10). According to Defendant, this was a "non-discriminatory reason" because "Plaintiff's alleged accommodation did not permit him to take down the [Pride Flag] when it was already flying." *Id*., p.5:18-19 (citing FAC ¶41); *see* SAC ¶46.

This argument from causation fails for two related reasons. ***First***, it is a particularly miserly reading of the complaint to state that Plaintiff Little's alleged

---

[4] The Court's Order states that Plaintiff Little's briefing contended that the failure to accommodate claims were not seeking retrospective relief. *See* Order, p.8 n.4 (citing ECF No. 35, Opp. to Mtn. Dismiss FAC, p.14:20-15:2). This attempt to emphasize the need for prospective relief inadvertently downplayed the retrospective need for reinstatement and back-pay damages. Thus, Plaintiff clarified this in the Second Amended Complaint.

religious accommodation did not permit him to lower the Pride Flag. The Second
Amended Complaint pleads that Plaintiff "made the broad and open-ended ask 'to be
exempt [from] adhering to EA-231'," SAC ¶43 (quoting SAC Ex.6), and that "[t]he
Fire Department agreed to Captain Little's request by promising … to move him to a
site not flying the Progress Pride Flag … [and] that he need not ensure/oversee …
flying of the flag.…" SAC ¶46. Yet, when he arrived at his assigned location, he found
the Pride Flag flying in violation of this agreement, so he cured that. SAC ¶68.

     **Second**, and more importantly, whether lowering the Pride Flag was within the
granted religious accommodation is irrelevant. What matters is whether Plaintiff
Little's lowering of the Pride Flag was religiously motivated. All that Plaintiff has to
plead is that he suffered adverse action as a result of taking an action that his employer
believed or suspected was religiously motivated. *Abercrombie*, 575 U.S. at 773-75 &
n.3. This is *not* traditional "but-for causation"; rather "Title VII relaxes this standard
… to prohibit even making a protected characteristic a 'motivating factor' in an
employment decision." *Id*. at 772-73. This standard "is especially easy to infer where
an employee has submitted a request for an accommodation or where the employer
knows of the employee's religious practice." *Hebrew v. Texas Dep't of Crim. Just.*, 80
F.4th 717, 724 (5th Cir. 2023) (citing *Abercrombie*, 575 U.S. at 774).

     Here, the complaint contains ample evidence that Defendant knew of Plaintiff
Little's religious objection to having to "personally raise, ensure raising, *maintain, or
fly* the Progress Pride Flag," SAC ¶133 (emphasis added); in fact, he requested just
such a religious accommodation. SAC ¶¶43-46. Thus, Defendant knew that Plaintiff
lowered the Pride Flag in accordance with his religious beliefs. And, indeed, after he
lowered the Pride Flag, Chief Boiteux told Plaintiff Little "Your religious beliefs do
not matter; you are an LA County employee." SAC ¶76.

     In *Abercrombie*, the issue was whether a potential employer could refuse to hire
a prospective employee for wearing a hijab in violation of the company dress code.
The Supreme Court held that a *specific* religious accommodation request is not

needed; nor indeed is *certainty* on behalf of the employer that the hijab is worn for religious reasons. *Abercrombie*, 575 U.S. at 773-75. What matters is if the employee's conduct is *actually* religiously motivated, and the employer fails to accommodate it after (at least) suspecting it is. *See id.*; *accord EEOC v. Triangle Catering, LLC*, No. 5:15-cv-16, 2017 WL 818261, *9 (E.D.N.C. Mar. 1, 2017) (similar as to "crown").

Thus, in *Abercrombie*, the Supreme Court affirmed the proper test is: "If the employee's conduct is religiously motivated, his employer must tolerate it unless doing so would cause undue hardship to the conduct of his business." *Cooper v. Gen. Dynamics*, 533 F.2d 163, 168 (5th Cir. 1976); *accord Redmond v. GAF Corp.*, 574 F.2d 897, 900 (7th Cir. 1978) ("conduct which is 'religiously motivated,' … is protected"). Or, as stated by the en banc Eighth Circuit quoting the Ninth Circuit: "[W]e reject the defendants' argument that because Mr. Brown never explicitly asked for accommodation for his religious activities, he may not claim the protections of Title VII. An employer need have 'only enough information about an employee's religious needs to permit the employer to understand the existence of a conflict between the employee's religious practices and the employer's job requirements.'" *Brown v. Polk Cnty., Iowa*, 61 F.3d 650, 654 (8th Cir. 1995) (quoting *Heller*, 8 F.3d at 1439). As stated succinctly by the Ninth Circuit in *Heller*, the issue of knowledge and intent came down entirely to the fact that "[Defendant] Bowman knew [Plaintiff] Heller was Jewish." *Heller*, 8 F.3d at 1439.

Here, Defendant Fire Department knew Plaintiff was Christian and why he lowered the Pride Flag. Thus, to penalize him for doing so, Defendant must show an undue hardship. *See id.*; *Berry v. Dep't of Soc. Servs.*, 447 F.3d 642, 655 (9th Cir. 2006) (prima facie case established where plaintiff religiously "believe[d] in sharing his faith with others" and was reprimanded for doing so); *Bodett v. CoxCom, Inc.*, 366 F.3d 736, 745 n.9 (9th Cir. 2004) (termination for ad hoc harassing religious statements "would have been better suited to a failure to accommodate claim"); *see also Carter v. Transp. Workers Union of Am. Loc. 556*, 353 F. Supp. 3d 556, 563-66,

18

577-78 (N.D. Tex. 2019) (prima facie case established where plaintiff sent messages to her union boss protesting union's pro-choice activities, and explained the religious motivation afterwards in a pre-disciplinary meeting).

Defendant Fire Department also implies that Plaintiff Little's lowering of the Pride Flag was not part of his original accommodations and/or not religiously motivated because "Plaintiff has requested that he not lower or even handle the PPF." Mtn., p.5:19-21 (citing FAC Exs.21, 22). Indeed, Defendant affirmatively states that "Plaintiff does not allege that he was in any way penalized 'because of' his purported religious beliefs. Rather, the SAC confirms that, to the extent Plaintiff does allege an adverse employment action, any action the County took was because he lowered the Progress Pride Flag[.]" *Id.*, p.4:9-13.

This argument does not logically follow. Yes, Plaintiff Little requested that he not be required "to raise, lower, or otherwise handle the Pride Flag or Progress Pride Flag." *See* SAC Ex.23 (ECF No. 51, p.178). Yet, when push came to shove, he prioritized his religious request (that had been granted) to be assigned to a location not flying the Pride Flag. *See* SAC ¶¶68-69. Plaintiff did not know how to reconcile these conflicting issues when they suddenly presented themselves, but that is irrelevant: "[R]eligious claims that have developed over time are protected to the same extent as those that occur in a moment." *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994). Further, if Defendant believes that Plaintiff's lowering of the Pride Flag was inconsistent with his desire to not handle it, that is also irrelevant. "A religious belief need not be consistent or rational to be protected under Title VII," *Keene v. City & Cnty. of San Francisco*, No. 22-16567, 2023 WL 3451687, *2 (9th Cir. May 15, 2023) ("*Keene I*"), and "[a]n employee does not cease to be discriminated against because he temporarily gives up his religious practice and submits to the employment policy." *EEOC v. Townley Eng'g & Mfg. Co.*, 859 F.2d 610, 614 n.5

(9th Cir. 1988).[5]

## II.    Plaintiff Captain Little Has Plausibly Alleged the Fire Department's Refusal to Provide a Reasonable Accommodation for EA-232.

Defendant Fire Department's second argument is that "the Court should dismiss Plaintiff's failure-to-accommodate claims because … of the County's 'good faith effort[] to accommodate reasonably' Plaintiff's religious practices," and because "an employer need only offer an accommodation that would 'effectively eliminate' any conflict between the employee's sincerely held religious beliefs and the employer's work requirements." Mtn., pp.10:27-11:3, 12:16-20 (quoting first *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 606 (9th Cir. 2004), and then *Am. Postal Workers Union, San Francisco Loc. v. Postmaster Gen.*, 781 F.2d 772, 776 (9th Cir. 1986)).

In quoting *Peterson*, Defendant appears to take it as definitive defense without understanding its rationale or attempting to explain the same. But, as explained below, "good faith" is generally necessary but not sufficient; a full religious accommodation is actually required (and the evidence here of "good faith" is sorely lacking). And in quoting *Postal Workers Union*, Defendant appears to argue both that it did all that was required of it, and that taking any more action would be unreasonable. But Defendant did not actually "eliminate" the conflict, which is why the parties are still here.

### A.    Defendant Fire Department's novel "good faith" defense has no basis in law, and is factually unsupported.

Twenty years ago, in *Peterson v. Hewlett-Packard, Co.*, the Ninth Circuit wrote that the employer has the burden of showing that it "initiated good faith efforts to accommodate reasonably the employee's religious practices *or* that it could not

---

[5] Because Defendant's "Pride Flag policy is open ended, ill defined, subject to change at any moment, … [and] highly discretionary in application," and Captain Little was surprised and flustered when he found the flag flying at his worksite, he added a few additional allegations to the complaint about hypothetical situations to which he would object *See* SAC ¶¶119-22.

reasonably accommodate the employee without undue hardship." 358 F.3d at 606 (emphasis added). As it appears in *Peterson*, the sentence is dicta because the case actually turned on undue hardship. *See id.* But *Peterson* was quoting two earlier cases that both also say that the defendant has the burden to show that it initiated good faith efforts to reasonably accommodate the employee's religion "or" doing so would be an undue hardship. *Id.* (quoting *Tiano v. Dillard Dep't Stores, Inc.*, 139 F.3d 679, 681 (9th Cir. 1998); *Lawson v. Washington*, 296 F.3d 799, 804 (9th Cir. 2002)). In both *Tiano* and *Lawson* the quote is again dicta and irrelevant to the ultimate determination. But both of those cases, in turn, were quoting *Heller v. EBB Auto Co.*, 8 F.3d 1433, 1438 (9th Cir. 1993), which used the quote to summarize the holdings of *EEOC v. Hacienda Hotel*, 881 F.2d 1504, 1512 (9th Cir. 1989), and *Anderson v. Gen. Dynamics*, 589 F.2d 397, 401 (9th Cir. 1978).

Those cases, finally, explain that an employer's failure to engage in the religious accommodations process is a necessary pre-requite to establishing the "undue hardship" defense. It is necessary but not sufficient. As stated in *Anderson*:

> The burden was thereafter upon [the employers] to prove that they made good faith efforts to accommodate Anderson's religious beliefs *and*, if those efforts were unsuccessful, to demonstrate that they were unable reasonably to accommodate his beliefs without undue hardship. [citation] … The burden was upon the [employers], not Anderson, to undertake initial steps toward accommodation. They cannot excuse their failure to accommodate by pointing to deficiencies, if any there were, in Anderson's suggested accommodation.

*Anderson*, 589 F.2d at 401 (emphasis added).

And as stated in *Hacienda Hotel*:

> [Defendant] admitted that she never asked any maid if they would volunteer to work nor did she make any effort to rearrange the schedule of the maids according to the religious needs of the employees within the housekeeping department…. Hacienda argues, however, that it could not accommodate the women's religious beliefs because any attempt at accommodation would have caused undue hardship on its business…. [However,] *at a minimum*, the employer was required to negotiate with

the employee in an effort reasonably to accommodate the employee's religious beliefs.

*Hacienda Hotel*, 881 F.2d at 1513 (emphasis added); *overruled on other grounds as stated in Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1064 n.4 (9th Cir. 2004).

However, under Title VII (and presumably FEHA[6] as well), the employer need not engage in the interactive process if it can show that "any accommodation would impose undue hardship." *Heller*, 8 F.3d at 1440. This is the origin of the change from the word "and" in *Anderson*, 589 F.2d at 401, to "or" in *Peterson*, 358 F.3d at 606. But, of course, this defense cannot be adjudicated now. "Undue hardship is an affirmative defense, and accordingly dismissal on that ground is proper only if the defendant shows some obvious bar to securing relief on the face of the complaint or in any judicially noticeable materials." *See Bolden-Hardge*, 63 F.4th at 1224 (cleaned up). And, of course, the evidence supporting the undue hardship defense must be known to the employer at the time it foregoes the interactive process. It cannot refuse to negotiate an accommodation on the speculation that it may later be able to establish an undue hardship. *See Heller*, 8 F.3d at 1440.

In any event, even taking Defendant Fire Department's argument at face value, its IPM Meetings to date have not been undertaken in good faith. Take for example, *EEOC v. Arlington Transit Mix, Inc.*, 957 F.2d 219 (6th Cir. 1991). There:

> the company adopted a week-to-week, wait-and-see posture that amounted to no accommodation at all. All that was in place was an ad hoc arrangement contemplating that the inevitable collision between Taylor's religious beliefs and the company's new work schedule would be dealt with when it arose. More was required of Arlington. Once the new schedule was implemented, the company should have made a reasonable attempt to accommodate his sincere religious needs.

*Id.* at 222; *accord EEOC v. Robert Bosch Corp.*, 169 F. App'x 942, 945 (6th Cir. 2006)

---

[6] FEHA also provides liability if an employer fails to engage in the interactive process in good faith. *See Gemini*, 122 Cal. App. 4th at 1017.

("'a week-to-week, wait-and-see posture' amounts to no accommodation at all").

Thus, even assuming that "good-faith" were an appropriate defense that could be raised on a pleadings challenge, Defendant Fire Department's decision to shut down the religious accommodation process in August 2023 with instructions to come back next year, then ignore Plaintiff Little's request for a religious accommodation for over two months (from March 21, 2024 until May 23, 2024), then on May 23 ask to schedule a religious accommodation meeting on May 28 or 29 (a few days before Pride Month), and then not make any decision until May 31, is hardly "good faith." SAC ¶¶81, 93-107 & Ex.23. Making Captain Little sweat until *the day before* Pride Month is unjustifiable.[7]

### B. Plaintiff Captain Little's experience in 2024 shows that more is needed from Defendant Fire Department going forward.

As above, the Court's Order states that "[g]iven Little's own allegations that Defendants granted him an accommodation exempting him from complying with EA-232 in June 2024, (*see* FAC ¶¶92-105), the Court finds his allegation that he will be terminated for failure to comply with EA-232, or any similar directives in the future, to be implausible." Order, pp.8-9. The Second Amended Complaint responds to this conclusion with two primary edits. Paragraph 87 and new Exhibit 19 discuss the Notice of Suspension letter delivered to Plaintiff Little which states that further violations could result in discharge. Paragraphs 107-112 and new Exhibit 25 discuss the IPM Meetings which Defendant held with Plaintiff on May 29 and May 31, 2024. During those IPM Meetings, Defendant stated "Captain Little would not be personally responsible for raising or lowering the Progress Pride Flag," but that—over Plaintiff's

---

[7] This is particularly true under FEHA, which has a more generous standard regarding irreparable harm. *See Keene v. City & Cnty. of San Francisco*, No. 24-1574, 2025 WL 341831, *2 (9th Cir. Jan. 30, 2025) ("*Keene II*") (citing case concerning irreparable "loss of two paid days off").

objection—he "would still be personally responsible for enforcing compliance with EA-232 and ensuring that his subordinates comply." SAC ¶¶107-09 & Ex.25.

This was simply an inadequate accommodation. It should be uncontroversial that "[a]n employer does not fulfill its obligation to reasonably accommodate a religious belief when it is confronted with two religious objections and offers an accommodation which completely ignores one." *Baker v. The Home Depot*, 445 F.3d 541, 547 (2d Cir. 2006) (quoting *Cooper v. Oak Rubber Co.*, 15 F.3d 1375, 1379 (6th Cir. 1994)); *accord Smith v. Pyro Min. Co.*, 827 F.2d 1081, 1088 (6th Cir. 1987) ("[W]here an employee sincerely believes that [performing certain work] is morally wrong and that it is a sin to try to induce another to work in his stead, then an employer's attempt at accommodation that requires the employee to seek his own replacement is not reasonable.").

Because this partial accommodation was inadequate, Plaintiff Little offered potential solutions. He asked whether he could be moved to a different location, but Defendant responded simply that "the locations where the [Pride Flag] would not be flown has not been confirmed," and that "there are no current vacant locations where [he] could be moved, and the department cannot displace another employee." SAC Ex.25, p.2. Defendant also remained steadfast in its view that it could not allow another employee to be responsible for the Pride Flag when Plaintiff was the assigned site supervisor. SAC Ex.25, p.2.

At the conclusion of the meeting, Plaintiff Little asked whether Defendant would stand in his way if *he* was able to negotiate shift swaps, and Defendant agreed that "You can request a mutual transfer on your own and submit the request through the appropriate channels." SAC Ex.25, p.3. So, entirely on his own, Plaintiff figured out a practical accommodation for June 2024 by finding one captain to swap shifts with him, SAC ¶¶113-14, but "not a long-term solution," SAC Ex.25, p.3, and not one that would be "workable" going forward. SAC ¶115.

///

What these facts show is that a full accommodation is *actually possible*, primarily through shift-swapping, and so Defendant's refusal to offer a full accommodation is necessarily improper. It is not proper to put the burden of shift-swapping entirely on Plaintiff. Rather, Defendant has "an obligation to investigate whether voluntary trading of shifts [i]s feasible." *Opuku-Boateng v. State of Cal.*, 95 F.3d 1461, 1471 (9th Cir. 1996). Apparently in response (this portion of Defendant's brief is ambiguous), Defendant states that it is only required to offer "an accommodation that would 'effectively eliminate' any conflict between the employee's sincerely held religious beliefs and the employer's work requirements," and is "not obligated to 'accept any accommodation, short of 'undue hardship,' proposed by an employee.'" Mtn., p.12:16-20 (quoting *Am. Postal Workers Union*, 781 F.2d at 776-77). Despite Defendant's citation to *Postal Workers Union*, Defendant fails to identify what accommodation it actually offered that "eliminate[d] the affected employee's religious conflict." *See* Mtn., pp.12:10-13:1 (lacking any record citation). Thus, presumably, Defendant means that because Plaintiff found an "effective" workaround for June 2024, everything is fine. *See* SAC ¶113.[8]

///

---

[8] Defendant also appears to misunderstand the phrase "accommodate reasonably." See Mtn., p.12:22-24. "Reasonably" in this context does not mean that unreasonable religious beliefs should not be accommodated. Rather, a "reasonable accommodation" is one that eliminates the religious conflict, and reasonably "preserve[s] that employee's employment status, *i.e.*, compensation, terms, conditions, or privileges of employment." *Am. Postal Workers Union*, 781 F.2d at 776-77; *accord Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 71 (1986) (accommodation that discriminated against religion was not reasonable); Cal. Code Regs. tit. 2, § 11062(a) (similar under FEHA). And Defendant's reference to an "essential job function" during the IPM Meetings is similarly confused. *See* SAC ¶108-10 & Ex.25. In the disability context, the employer need not offer an accommodation that excuses the employee from performing "an essential job function"—such an accommodation is "unreasonable." But "[i]n the religion context, ability to perform job functions is instead addressed by the employer's undue hardship defense." *Bingham v. City of San Jose*, No. H051386, 2024 WL 4615360, *6 n.2 (Cal. Ct. App. Oct. 30, 2024).

But this is not a "workable" or "long-term solution." SAC ¶115 & Ex.25, p.3. When the defendant creates practical difficulties for shift-swapping—such as refusing to identify where the Pride Flag will be flown, not publishing the EAs until a few days before Pride Month, and ignoring religious accommodation requests for months, *see* SAC ¶¶116-19—courts have not hesitated to hold that merely *allowing* shift-swapping is not a reasonable accommodation. *See Tabura v. Kellogg USA*, 880 F.3d 544, 555-57 (10th Cir. 2018); *McGuire v. Gen. Motors Corp.*, 956 F.2d 607, 608-10 (6th Cir. 1992). Rather, courts insist that the defendant create a "schedule in advance" to facilitate shift-swapping. *Opuku-Boateng*, 95 F.3d at 1471.

Perhaps most importantly, merely allowing shift-swapping does not address the inevitable clash when Plaintiff Little cannot find, on his own, a replacement. As stated above, Defendant remains steadfast in its view that it cannot allow another employee to monitor the Pride Flag when Plaintiff is the assigned site supervisor. SAC Ex.25, p.2. But why this is the case is unclear. Perhaps Defendant believes that exempting Plaintiff from having to oversee/ensure raising and flying of the Pride Flag is definitionally and per se an undue hardship. *See* Mtn., pp.12:23-13:1 (citing a summary judgment case and a preliminary injunction case where the courts found that the requested accommodation would impose too great of a burden on the employer).

But this makes no practical sense. As stated in the complaint, "[b]ecause the beaches are so large and lifeguards are spaced far from each other, they regularly communicate with each other using their cell phones, radios, or other devices." SAC ¶110. Thus, if Plaintiff Little were exempted from having to oversee/ensure raising and flying of the Pride Flag, "[a]nother captain would just need to call or text the lifeguards at Captain Little's beaches periodically to check in with them" and ensure it is flying. SAC ¶110. If Defendant would just *not hamper* shift-swapping by identifying where the Pride Flag will be flown, and allow another employee to supervise the Pride Flag when Plaintiff cannot swap shifts, the parties would not be here.

///

In sum, the analysis of Plaintiff Little's prospective failure to accommodate claims comes down to the rule that, "where the accommodation proposed by an employer fails to eliminate the affected employee's religious conflict, the employer must implement an alternate accommodation proposed by the employee." *Am. Postal Workers Union*, 781 F.2d at 776. "If the employer's efforts fail to eliminate the employee's religious conflict, the burden remains on the employer to establish that it is unable to reasonably accommodate the employee's religious beliefs without incurring undue hardship." *Smith*, 827 F.2d at 1085.

Here, to date, Defendant has not offered an accommodation that actually "eliminate[s] the affected employee's religious conflict." *Am. Postal Workers Union*, 781 F.2d at 776, but merely one that puts Plaintiff Little into "a week-to-week, wait-and-see posture that amount[s] to no accommodation at all." *Arlington Transit Mix*, 957 F.2d at 222. If Defendant is willing to offer a full and practically workable accommodation, Plaintiff will take it and his need for prospective relief will be satisfied—leaving only his claims for reinstatement to the Background Investigation Unit and damages. But if Defendant continues to insist that it has done all that it can, then Plaintiff must insist that Defendant meet its evidentiary burden in court to show how his proposed accommodations are an "undue hardship."

## CONCLUSION

For the foregoing reasons, Plaintiff Captain Little respectfully requests that this Court deny Defendant's motion to dismiss.

Respectfully submitted,

LiMANDRI & JONNA LLP

Dated: April 4, 2025          By:

Charles S. LiMandri
Paul M. Jonna
Jeffrey M. Trissell
Joshua A. Youngkin
Attorneys for Plaintiff Captain Jeffrey Little

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff Captain Little, certifies that this brief contains 6,998 words, which complies with the word limit of L.R. 11-6.1.

Dated: April 4, 2025                    By: _____
                                            Paul M. Jonna

# CERTIFICATE OF SERVICE

*Captain Jeffrey Little v. Los Angeles County Fire Department, et al.*
USDC Court - Central District - Case No.: 2:24-cv-04353-JLS-PD

I, the undersigned, declare under penalty of perjury that I am over the age of eighteen years and not a party to this action; my business address is P.O. Box 9120, Rancho Santa Fe, California 92067, and that I served the following document(s):

•   **Memorandum of Points & Authorities in Support of Plaintiff's Opposition to Defendants' Motion to Dismiss the Second Amended Complaint.**

on the interested parties in this action by placing a true copy in a sealed envelope, addressed as follows:

Dimitri D. Portnoi, Esq.
Kyle M. Grossman, Esq.
Marni B. Robinow, Esq.
O'MELVENY & MYERS LLP
400 South Hope Street, Suite 1900
Los Angeles, CA 90071
Tel: (213) 430 6000
Fax: (213) 430 6407
E-Mail:  dportnoi@omm.com
E-Mail:  kgrossman@omm.com
E-Mail:  mrobinow@omm.com
**Attorneys for Defendants County of Los Angeles, Fernando Boiteux, Arthur Lester, and Adam Uehara**

____   **(BY MAIL)** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Rancho Santa Fe, California in the ordinary course of business.  The envelope was sealed and placed for collection and mailing on this date following our ordinary practices.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

_X_   **(BY ELECTRONIC MAIL)** I served a true copy, electronically on designated recipients via electronic transmission of said documents.

_X_   (**BY ELECTRONIC FILING/SERVICE)** I caused such document(s) to be Electronically Filed and/or Service using the ECF/CM System for filing and transmittal of the above documents to the above-referenced ECF/CM registrants.

I declare under penalty of perjury, under the laws of the United States and the State of California, that the above is true and correct.

Executed on April 4, 2025, at Rancho Santa Fe, California.

_____
Kathy Denworth