DIMITRI D. PORTNOI (S.B. # 282871)
dportnoi@omm.com
KYLE M. GROSSMAN (S.B. # 313952)
kgrossman@omm.com
MARNI B. ROBINOW (S.B. # 313412)
mrobinow@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street, Suite 1900
Los Angeles, California 90071
Telephone:  (213) 430 6000
Facsimile:   (213) 430 6407

*Attorneys for Defendants County of Los Angeles, Fernando Boiteux, Arthur Lester, and Adam Uehara*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| Jeffrey Little,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>Los Angeles County Fire Department, et al.,<br><br>　　　　Defendants. | Case No. 2:24-cv-04353-JLS-PD<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Hearing Date: April 25, 2025<br>Time: 10:30 a.m.<br>Judge:  Hon. Josephine L. Staton<br>Courtroom:  8A<br><br>SAC Filed:  Feb. 10, 2025<br>Trial Date:  None set |

## I. INTRODUCTION[1]

The Court previously dismissed Plaintiff Jeffrey Little's failure-to-accommodate claims on the grounds that he failed to allege an adverse action. He simply pointed to a threat of discharge, which his complaint did not plausibly allege given the County's good-faith efforts to accommodate him. Plaintiff has now amended his operative complaint to replead his failure-to-accommodate claims. He adds virtually no new facts, but now also points to "retrospective" adverse actions he claims to have suffered, all of which were already mentioned in his prior First Amended Complaint ("FAC"). Repackaging already pleaded allegations cannot save Plaintiff's failure-to-accommodate claims, and the Court should dismiss those claims with prejudice.

Plaintiff's Opposition should not persuade the Court otherwise. Defendants' Motion argues that Plaintiff's new allegations fail to assert that any adverse action resulted "because of" the alleged conflict between his religious practice and EA-231 and EA-232. Rather than grapple with this argument, Plaintiff instead devotes significant time in his Opposition to discussing the County's "motive," asserting that pleading a "motive" obviates the need to also plead some causation, which is not responsive to Defendants' argument. In addition, Plaintiff's argument that Defendants misapply the law in asserting that the Second Amended Complaint ("SAC") pleads Defendants' "good faith" also fails. As Defendants' Motion makes clear, however, they are not asserting a "good faith defense" as Plaintiff suggests, but rather applying the two-step framework used to assess failure-to-accommodate claims that the Court applied when it dismissed these claims previously. For the foregoing reasons, Plaintiff's failure-to-accommodate claims should be dismissed.

---

[1] All emphasis is added to, and citations, alterations, and internal quotation marks omitted from, quoted passages unless otherwise noted.

## II. ARGUMENT

Plaintiff's Opposition (Dkt. No. 57, "Opp.") does little, if anything, to clarify how it responds to the issues raised in this Court's Order (Dkt. No. 50) granting Defendant's Motion to Dismiss Plaintiff's FAC (Dkt. No. 33) in part, or how Plaintiff has addressed and solved the pleading deficiencies in his FAC (Dkt. No. 31). Plaintiff asserts that his SAC (Dkt. No. 51) responds to the Court's Order "with two primary edits. Paragraph 87 and new Exhibit 19 discuss the Notice of Suspension letter delivered to Plaintiff which states that further violations could result in discharge. Paragraphs 107-112 and new Exhibit 25 discuss the IPM Meetings which Defendant held with Plaintiff on May 29 and May 31, 2024." Opp. at 23. But Plaintiff's SAC adds no new substantive factual allegations—his suspension and interactive process meetings ("IPMs") were discussed at length in the FAC and corresponding exhibits. *Compare* SAC ¶ 137 (asserting that Defendants "subjected Captain Little to an investigation, placed him on unpaid administrative leave, subjected him to hostile personal attacks, and removed him from the Background Investigation Unit."), *with* FAC ¶¶ 72 (investigation); 80 (suspension); 69, 75(b) (hostile attacks); and 75(a) (suspension from the BIU).

What's more, Plaintiff does not rebut Defendants' additional arguments. Claims for religious discrimination are analyzed under a two-step framework, in which under the first step, a Plaintiff must show that "(1) a bona fide religious belief of the employee conflicted with an employment policy; (2) the employee informed the employer of the conflict; and (3) the employee was penalized in some way because of the conflict." *E.E.O.C. v. Townley Eng'g & Mfg. Co.*, 859 F.2d 610, 614 n.5 (9th Cir. 1988). However, Plaintiff's SAC confirms that he was not "penalized in some way because of the conflict" between his religious beliefs and the purported adverse employment actions. *Id.* Further, Plaintiff's assertion that Defendants have misapplied the "good faith" standard under the two-step

framework used to evaluate failure-to-accommodate claims is wrong.

### A. Plaintiff has not pleaded that he was penalized in some way "because of" the alleged conflict.

Plaintiff has failed to adequately plead that he was subject to or threatened with adverse action "***because of***" his religious beliefs. *See Townley,* 859 F.2d at 614 n.5; *Heller v. EBB Auto Co.*, 8 F.3d 1433, 1438 (9th Cir. 1993) (emphasis added). Indeed, as in his FAC, Plaintiff still has not identified even any adverse action that will result from the exercise of his religious beliefs. Plaintiff again alleges that he may be subject to future discipline, including termination. *See* SAC ¶ 137. That allegation—substantively unchanged from the FAC—does nothing to move the needle on his deficient failure-to-accommodate claims for all the reasons explained already by the Court. *See* Order at 8-9.

Plaintiff now further contends that his suspension and removal from the Background Investigation Unit constitute adverse actions, after denying that they did previously (*see id.* at 8 n.4). Like Plaintiff's allegations regarding his "prospective" adverse employment actions, these "retrospective" adverse employment actions also do little to support his claim. Plaintiff previously asserted that Defendants "misunderst[ood] the complaint" when they asserted that "the only 'actionable' adverse action [was] being suspended from his role on the Background Investigations Unit," and that the relevant "'adverse action is that [he] will be fired if he fails to comply with the Pride Flag policy.'" Dkt. No. 35 at 14. While Plaintiff now specifically names the purported retrospective adverse employment actions, nothing has changed between the allegations in the FAC to the allegations in the SAC concerning those retrospective adverse employment actions. Moreover, Plaintiff still does not link them to his religious beliefs. Plaintiff asserts that all he must do to withstand dismissal is plead "that he suffered adverse action as a result of taking an action that his employer believed or suspected was religiously

1 motivated." Opp. at 17.  Plaintiff goes to great lengths to argue that Defendants
2 knew of his religious objection to the Progress Pride Flag, which alone is sufficient
3 to withstand dismissal.  Opp. at 17-19.  This argument goes too far.  It dilutes the
4 legal standards required to assert a failure-to-accommodate claim.  And it would
5 permit Plaintiff to, in effect, manufacture a claim after his own actions created the
6 conflict.

7      To start, Plaintiff cannot evade the well-established requirement that his SAC
8 allege causation to support his failure-to-accommodate claims.  Plaintiff suggests
9 that all he must demonstrate is intent on Defendants' part to discriminate against
10 him. *See* Opp. at 15 ("What matters is that the employer act with the requisite
11 intent, which could be shown by the employee submitting a religious
12 accommodation request, or could be shown via the obvious facts that the conduct
13 (wearing a hijab, yarmulke, or cross) is inherently religious.").  Contrary to
14 Plaintiff's assertion that Defendants misconstrued binding caselaw in *Heller*, that
15 case underscores the quintessential role that causation plays: "Heller demonstrated
16 that his employment duties conflicted with a bona fide religious practice, notified
17 EBB of that conflict, and was discharged *because of* his refusal to comply with the
18 employment requirements." *Id.* at 1439.

19      Even the cases on which Plaintiff relies support Defendants' position.
20 Plaintiff chiefly cites *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, for the
21 proposition that "[w]hat matters is if the employee's conduct is *actually* religiously
22 motivated, and if the employer fails to accommodate it after (at least) suspecting it
23 is." (Opp. at 18 (citing *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S.
24 768, 773-75 (2015)).  But Plaintiff glosses over the language in *Abercrombie* which
25 still requires a connection between the adverse action, the penalty, and the conflict.
26 *See Abercrombie,* 575 U.S. at 773-75; *Townley,* 859 F.2d at 614 n.5.  *Abercrombie*
27 itself confirms that the two-step framework still requires causation:  "'Because of'
28

in § 2000e–2(a)(1) links the forbidden consideration to each of the verbs preceding it; an individual's actual religious practice may not be a motivating factor in failing to hire, in refusing to hire, and so on." *Abercrombie*, 575 U.S. at 773. As *Abercrombie* establishes, "An employer may not make an applicant's religious practice, confirmed or otherwise, a factor in employment decisions." *Id.*

Here, even assuming the facts alleged in the SAC are true, Defendants did not make Captain Little's "religious practice … a factor in employment decisions." *See id.* The SAC demonstrates that the County worked with Plaintiff on a reasonable accommodation. Within the same day that Plaintiff contacted the County to request an accommodation, the County contacted him to schedule an IPM. SAC ¶¶ 43-44; *see also id.*, Ex. 6. During that meeting, which included not only personnel from human resources, but also his colleagues, Assistant Lifeguard Chief Uehara and Section Chief McMillon, the parties purportedly agree to an accommodation. *Id.* ¶¶ 44-53. Only after Plaintiff violated County policy by removing Progress Pride Flags, did Defendants take what he alleges to be adverse actions.

In addition, Plaintiff incorrectly argues that "[w]hat matters" is whether *his* "lowering the Progress Pride Flag was religiously motivated." Opp. at 17. Plaintiff's position goes too far. It essentially amounts to an assertion that an employee can take any action at work in accordance with their religious beliefs, even if that action blatantly violates their employer's job requirements. But, "[a]n employee has a concomitant duty to cooperate in the search for an acceptable reconciliation of the needs of the employee's religion and the exigencies of the employer's business." *Heller*, 8 F.3d at 1440 (citations and quotations omitted). To that end, Plaintiff claims that "whether lowering the Pride Flag was within the granted religious accommodation is irrelevant." Opp. at 17. In effect, Plaintiff claims that he can manufacture a dispute by (1) obtaining a reasonable

accommodation through the IPM process, (2) violating County policy, and then (3) asserting that he was retaliated against "because of his religion." *See Townley,* 859 F.2d at 614 n.5. To be clear, Plaintiff's own SAC pleads—via the allegations themselves and exhibits attached to the SAC—that the purported adverse employment actions were the result of his lowering the Progress Pride Flag, which was not permitted by his alleged accommodation and which also constituted a violation of County policy. SAC, Ex. 25 at 1 (Little's 2024 request that he "be exempt this June from the EA-231 requirement of captains/site supervisors to handle, raise, and lower the Pride Flag or Progress Pride Flag at stations/sites to which they've been assigned or otherwise stationed").

Plaintiff's remaining arguments fare no better. For example, Plaintiff's other assertion that Defendants offer a "particularly miserly reading of the complaint to state that Plaintiff Little's alleged religious accommodation did not permit him to lower the Pride Flag" does little to save his claims. Opp. at 16-17. At no point in the SAC, *see* SAC ¶ 46, does Plaintiff allege that he was permitted to lower the Progress Pride Flag. Nor do any of the voluminous exhibits attached to the SAC support that contention either.

### B. Plaintiff Misconstrues Defendants' "Good-Faith" Argument and Misapplies the Law

Unable to rebut Defendants' argument that Plaintiff's own SAC pleads that Defendants engaged in a good-faith process to provide Plaintiff with a reasonable accommodation, Plaintiff instead parses through almost five decades of caselaw to suggest that Defendants have incorrectly applied the law. Plaintiff is wrong. Under binding Ninth Circuit precedent, religious discrimination claims must satisfy a two-step test. Here, Plaintiff's own allegations in his SAC necessarily rebut that second part, requiring dismissal of the failure-to-accommodate claims.

Plaintiff suggests that, from the Ninth Circuit's decisions in *Heller* to

*Peterson v. Hewlett-Packard, Co.* 358 F.3d 599 (9th Cir. 2004), the standard used to assess the second part of the framework transitioned from a conjunctive "and" to a disjunctive "or," and that regardless, the underlying caselaw in each of those cases demonstrates that "an employer's failure to engage in the religious accommodations process is a necessary pre-requite [sic] to establishing the 'undue hardship' defense," and that it is "necessary but not sufficient." Opp. at 20-21. This nesting-doll type of argument, which requires reviewing caselaw approaching almost one-half century old (*Anderson v. Gen. Dynamics Convair Aerospace Div.*, 589 F.2d 397 (9th Cir. 1978)) should be rejected.

      First, it is unclear why (or even how) Plaintiff asserts that older Ninth Circuit decisions take precedence over newer ones. Several other cases from the same period as the Ninth Circuit's *Peterson* decision demonstrate the applicability of this standard. *See, e.g., Bolden-Hardge v. Off. of California State Controller*, 63 F.4th 1215, 1224 (9th Cir. 2023); *Kelly v. Cnty. of Orange*, 101 F. App'x 206, 206 (9th Cir. 2004). And these cases all confirm that, as part of the second part of the two-step failure-to-accommodate framework, an employer may show "either that it initiated good faith efforts to accommodate reasonably the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship." *Bolden-Hardge*, 63 F.4th at 1224. While these cases also make clear that while "[u]ndue hardship is an affirmative defense," contrary to Plaintiff's implications in his Opposition, they are silent as to whether an employer's good-faith effort to provide an accommodation is one as well.[2] *Id.* But, regardless, that would not matter: dismissal can still be proper provided Defendants show "some obvious bar to securing relief on the face of the complaint," which is the case here.

---

[2] To be clear, though, Defendants are not asserting a "good faith" defense in the Motion, but rather acknowledging that under the binding two-step framework used to assess Plaintiff's claims, Plaintiff's SAC demonstrates that Defendants thoughtfully engaged in the IPM process to establish a reasonable accommodation.

*Id.* For example, here, the SAC alleges that Plaintiff "enforced the terms of his religious accommodation by lowering the Progress Pride Flags, so that he would be working in a site not flying the Progress Pride Flag," SAC ¶ 68, while simultaneously alleging that his purported religious accommodation included that he "need not personally raise the flag" or "ensure/oversee raising or flying of the flag." *Id.* ¶ 46. That Plaintiff alleges that he "enforced the terms of his religious accommodation" through actions which are not supported by that purported accommodation, as pled in the SAC, underscores that Plaintiff's claims here lack merit. *See* Order at 8-9.

Second, Plaintiff's efforts to merge this two-step framework with an undue-hardship affirmative defense is erroneous. Defendants' position is yet again supported by the caselaw Plaintiff cites. For example, in *Peterson*, the Ninth Circuit explained the standard in *Heller*, which Plaintiff cites at length in its brief, accordingly: "If [Plaintiff] makes out a prima facie failure-to-accommodate case, the burden then shifts to [Defendant] to show that it 'initiated good faith efforts to accommodate reasonably the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship.'" 358 F.3d at 606 (9th Cir. 2004) (citations omitted). In fact, the "good faith" language even appears in *Heller* (*see* 8. F.3d at 1438), so it is unclear why Plaintiff goes to great lengths to claim that the standard is irrelevant to the Court's inquiry here, when its own citations establish otherwise.

Third, Plaintiff's assertion that Defendants' efforts to provide an accommodation "have not been undertaken in good faith" is incorrect. Opp. at 22. In support of that claim, Plaintiff cites *E.E.O.C. v. Arlington Transit Mix, Inc.*, for the proposition that "week-to-week" and "wait-and-see" accommodations do not satisfy the standard under the two-step framework. Opp. at 22 (citing 957 F.2d 219, 222 (6th Cir. 1991)). But of course, the accommodation the County offered, as

pleaded in the SAC, does not remotely resemble the purported accommodations in *Arlington*. *See* 957 F.2d at 220. Here, to be clear, Plaintiff received (and then violated) an accommodation, which applied for the entire Pride Month. Plaintiff's SAC does not remotely suggest that he was required to resubmit a request on a recurring basis (beyond each year, because each Executive Action applied solely to that specific year).

### III. CONCLUSION

For the foregoing reasons, the Court should dismiss the SAC's failure-to-accommodate claims with prejudice.

Dated: April 11, 2025

/s/ *Dimitri D. Portnoi*
Dimitri D. Portnoi
Kyle M. Grossman
Marni B. Robinow
O'MELVENY & MYERS LLP

*Attorneys for Defendants County of Los Angeles, Fernando Boiteux, Adam Uehara, and Arthur Lester*

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants County of Los Angeles, Fernando Boiteux, Adam Uehara, and Arthur Lester, certifies that this brief contains 2,590 words, which complies with the word limit of Local Rule 11-6.1.

Dated: April 11, 2025           O'MELVENY & MYERS LLP

                                By:  */s/ Dimitri D. Portnoi*
                                     Dimitri D. Portnoi

                                *Attorneys for Defendants County of Los Angeles, Fernando Boiteux, Adam Uehara, and Arthur Lester*