Charles S. LiMandri, SBN 110841
 cslimandri@limandri.com
Paul M. Jonna, SBN 265389
 pjonna@limandri.com
Jeffrey M. Trissell, SBN 292480
 jtrissell@limandri.com
Robert E. Weisenburger, SBN 305682
 rweisenburger@limandri.com
Joshua A. Youngkin, SBN 332226
 jyoungkin@limandri.com
LiMANDRI & JONNA LLP
 *as Special Counsel to*
 THOMAS MORE SOCIETY
P.O. Box 9120
Rancho Santa Fe, CA 92067
Telephone: (858) 759-9930
Facsimile: (858) 759-9938

Attorneys for Plaintiff
*Captain Jeffrey Little*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAPTAIN JEFFREY LITTLE, an individual,<br><br>Plaintiff,<br><br>v.<br><br>LOS ANGELES COUNTY , a public entity; FERNANDO BOITEUX, both in his personal capacity and in his official capacity as Lifeguard Division Chief; ADAM UEHARA, both in his personal capacity and in his official capacity as Assistant Lifeguard Chief; ARTHUR LESTER, both in his personal capacity and in his official capacity as Section Chief;<br><br>Defendants. | Case No.: 2:24-cv-04353-JLS-PD<br><br>**VERIFIED THIRD AMENDED COMPLAINT FOR:**<br><br>**1. Religious Creed Discrimination / Failure to Accommodate in Violation of Title VII of the Civil Rights Act of 1964**<br><br>**2. Religious Creed Discrimination / Failure to Accommodate in Violation of FEHA**<br><br>**3. Retaliation in Violation of Title VII of the Civil Rights Act of 1964**<br><br>**4. Retaliation in Violation of FEHA**<br><br>**5. Failure to Prevent Discrimination,** |

1

**Harassment, and Retaliation in Violation of FEHA**

**6. Violation of Free Exercise Clause of First Amendment to U.S. Constitution: Not Neutral Due to Animus and Hostility Against Religion**

**7. Violation of Free Exercise Clause of First Article of California Constitution**

**JURY TRIAL DEMANDED**

## INTRODUCTION

1.     Flags have meanings. Nearly one hundred years ago, the U.S. Supreme Court struck down California's attempt to criminalize the display of a "Red Flag"—a symbol of support for Communism. *Stromberg v. California*, 283 U.S. 359, 361 (1931). A decade later, the U.S. Supreme Court struck down West Virginia's effort to require students to salute the American Flag as a condition of attending public school. *W. Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 625 (1943). And flowing naturally from this, a few decades later, various courts struck down a requirement to salute the American Flag as a condition of government employment. *Russo v. Central Sch. Dist. No. 1*, 469 F.2d 623, 633 (2d Cir. 1972); *State v. Lundquist*, 262 Md. 534, 554 (1971); *Hanover v. Northrup*, 325 F. Supp. 170, 173 (D. Conn. 1970).

2.     Promoting the lofty goal of patriotism was widely popular at the time of these cases—the threat of both Communism and Nazism directed the national mood. Thus, when the same issue arose in California courts, the courts dismissed an objection to saluting the American Flag, stating that "[i]t is indeed repugnant to every idea and every consideration of the loyalty and love for our government and political institutions so essential to the maintenance thereof." *Hardwick v. Bd. of Sch. Trustees of Fruitridge Sch. Dist.*, 54 Cal. App. 696, 711 (1921).

/ / /

VERIFIED THIRD AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

3.      This case presents a debate over a flag—one whose similarity to issues raised a hundred years ago is striking. In March 2023, the Los Angeles County Board of Supervisors passed a resolution requiring that all county-operated facilities fly the Progress Pride Flag during the month of June. Captain Jeffrey Little is a devout Christian who has worked for the Los Angeles County Fire Department as a lifeguard for over 22 years. He eventually rose through the ranks to become a Captain, and is responsible for overseeing his own lifeguard stations and patrols.

4.      When this resolution passed, Captain Little raised a simple objection: he would like another government employee to be responsible for maintaining the Progress Pride Flag. In his view, doing so would be "to confess by word or act [his] faith therein." *Barnette*, 319 U.S. at 642. Los Angeles said no. Under both statutory employment law and constitutional law, this was wrong.

5.      "Anti-discrimination laws undeniably serve valuable interests rooted in equality, justice, and fairness. And in a pluralistic society, these laws foster worthy goals such as inclusion and belonging." *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 671 (9th Cir. 2023) (en banc). But forcing Captain Little to raise and fly the Progress Pride Flag "is petty tyranny unworthy of the spirit of this Republic." *Barnette v. W. Virginia State Bd. of Educ.*, 47 F. Supp. 251, 255 (S.D.W. Va. 1942), *aff'd*, *Barnette*, 319 U.S. at 642. The government cannot impose a "blanket requirement" that all employees "mouth support for views they find objectionable." *Janus v. AFSCME, Council 31*, 585 U.S. 878, 892, 907 (2018). Indeed, when the government's interest is ideological conformity through "the suppression of free expression," "it is not valid, let alone substantial." *Moody v. NetChoice, LLC*, 603 U.S. 707, 740 (2024).

6.      Thus, Plaintiff Captain Jeffrey Little brings this Verified Complaint against Defendant Los Angeles County Fire Department and three of its personnel, seeking both injunctive relief and damages.

/ / /

3

VERIFIED THIRD AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

## JURISDICTION AND VENUE

7. This court has original jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343 because Plaintiff's claims arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et. seq.*, and 29 C.F.R. § 1605 *et. seq.*; and under 42 U.S.C. § 1983 in relation to Defendants' deprivation of Plaintiff's constitutional rights to free exercise of religion under the First Amendment to the U.S. Constitution.

8. This court has supplemental jurisdiction over all state law claims because they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. 28 U.S.C. § 1367(a).

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because Defendants may be found in this District, Defendants employ Plaintiff to work in this District, and a substantial part of the events giving rise to claims presented in this Complaint occurred in this District.

## THE PARTIES

10. Plaintiff CAPTAIN JEFFREY LITTLE is an individual who, at all relevant times, was and continues to be employed by Defendant Los Angeles County Fire Department, and who at all relevant times worked in and continues to work in the County of Los Angeles, California. Captain Jeffrey Little is a devout Evangelical Christian who adheres to traditional Christian beliefs regarding the moral illicitness of same-sex sexual activity, the immutability of sex regardless of gender identity, and the view that all people are children of God regardless of their skin color.

11. Defendant LOS ANGELES COUNTY is an a municipal and legal entity defined and authorized under the California Constitution, California law, and the Charter of the County of Los Angeles. The Los Angeles County Fire Department is an executive department of Defendant LOS ANGELES COUNTY that has no separate or distinct legal existence from the Defendant LOS ANGELES COUNTY for liability purposes in this litigation. For all purposes relevant to this litigation, the

VERIFIED THIRD AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

conduct of the Fire Department as alleged herein is the conduct of the Defendant LOS ANGELES COUNTY.

12. Defendant FERNANDO BOITEUX, at all relevant times, was the Lifeguard Division Chief for the Los Angeles County Fire Department acting under color of state law. Defendant Boiteux is responsible for implementing Fire Department policies, practices, customs, and acts, including the challenged policies, practices, and procedures set forth in this Complaint. Defendant Boiteux is sued in both his official and personal capacities, alternatively, for his role both in interpreting and implementing the challenged policies, retaliating against Captain Little, and refusing to extend a religious accommodation to Captain Little.

13. Defendant ADAM UEHARA, at all relevant times, was the Assistant Lifeguard Chief for the Los Angeles County Fire Department acting under color of state law. Defendant Uehara is responsible for implementing Fire Department policies, practices, customs, and acts, including the challenged policies, practices, and procedures set forth in this Complaint. Defendant Uehara is sued in both his official and personal capacities, alternatively, for his role both in interpreting and implementing the challenged policies, retaliating against Captain Little, and refusing to extend a religious accommodation to Captain Little.

14. Defendant ARTHUR LESTER, at all relevant times, was a Section Chief for the Los Angeles County Fire Department, Lifeguard Division, acting under color of state law. Defendant Lester is responsible for implementing Fire Department policies, practices, customs, and acts, including the challenged policies, practices, and procedures set forth in this Complaint. Defendant Lester is sued in both his official and personal capacities, alternatively, for his role both in interpreting and implementing the challenged policies, retaliating against Captain Little, and refusing to extend a religious accommodation to Captain Little.

/ / /

/ / /

VERIFIED THIRD AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

## GENERAL FACTUAL ALLEGATIONS

**A.    The Parties: Government Agency Los Angeles County Fire Department and Devout Christian Lifeguard Jeffrey Little.**

15.    Defendant Los Angeles County Fire Department provides firefighting and emergency medical services for the unincorporated parts of Los Angeles County, as well as through contracting with various cities. The Department has three main divisions: (1) Fire Fighting; (2) Emergency Medical Services (Paramedics); and (3) Lifeguards. According to its most recent annual report, the Department is the fourth busiest Fire Department in the country—responsible for protecting the lives and property of over 4 million residents living in 1.25 million housing units across 60 cities and all unincorporated areas of Los Angeles County. *See* **Exhibit 1**.

16.    The Lifeguard Division is similarly exceptional in scope. It is the largest professional lifeguard service in the world, protecting 72 miles of coastline, 31 miles of sandy beaches, operating 24 lifeguard stations, 159 lifeguard towers, 8 rescue boats, and employing 174 full-time lifeguards and 614 recurrent lifeguards. In 2021, the Lifeguard Division watched over 51 million beach attendees, and made over 9,000 ocean rescues. *See* Exhibit 1, p.10.

17.    Plaintiff Captain Little has been a proud Los Angeles County lifeguard, saving countless lives, for over 22 years. Captain Little's work performance has been exemplary, as is his reputation at work. He eventually rose through the ranks to become a Captain, and is responsible for overseeing his own lifeguard stations and patrols, as explained in the official job description for Lifeguard Captain. **Exhibit 2**.

18.    Captain Little is also a Christian. Specifically, he is an Evangelical Christian with traditional and orthodox beliefs on marriage, family, and sexual behavior and identity. *See, e.g.*, Lev. 18:1-30; Matt. 5:28; Rom. 1:26-29; 1 Cor. 5:1, 6:9; 1 Thess. 4:1-8; Heb. 13:4. These include the traditional Christian views that:

(1)    any form of sexual immorality is sinful and offensive to God;

/ / /

VERIFIED THIRD AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

(2)   that same-sex sexual activity is morally wrong for the individual to engage in and equally wrong for any human society to celebrate;

(3)   that gender and sex are inherently intertwined, and cannot be separated (any more than sex and sexual orientation), and that attempts to do so or to change one's sex are morally wrong;

(4)   that the traditional and only morally acceptable definition of marriage is the complete union of one man and one woman, and that it is not licit to recognize same-sex marriages; and

(5)   that Christians are required to express and show compassion and love toward all individuals, including those who identify as LGBT, while at the same time manifesting their adherence to biblical truths.

**B.    The County decides to fly the Progress Pride Flag at all County facilities during Pride Month 2023.**

19.   On March 7, 2023, the Los Angeles County Board of Supervisors passed a motion titled *Raising the Progress Pride Flag at Los Angeles County Facilities*, attached as **Exhibit 3**. Under that motion, the Board of Supervisors "[d]irect[ed] the Chief Executive Officer to work with all County Departments to explore ways the Progress Pride Flag can be flown at all county facilities."

20.   In implementation of that Board motion, on May 25, 2023, the Fire Department issued a memorandum titled EA-231, to all employees, attached as **Exhibit 4**. As stated in the memo, "On March 7, 2023, the Board of Supervisors passed a motion requiring the Progress Pride flag ('PPF') to be flown at County facilities during the month of June, which will now be recognized as LGBTQ+ Pride month moving forward. With the exception of Flag Day, June 14th, when the Prisoner of War/Missing in Action flag is flown, the PFF [sic] shall be flown…" It continued, stating that Captains and Site Supervisors must "[e]nsure flags are received and flown throughout the month of June."

/ / /

7

VERIFIED THIRD AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

21.     The Fire Department also provided a flow chart to employees to assist in the interpretation and application of EA-231, as the Progress Pride Flag could only be flown if there were adequate flagpoles and flag clasps available. In most relevant part, EA-231 provided that where only two flags are flown, the U.S. Flag and the Progress Pride Flag would be flown—replacing the California State Flag. A copy of that flowchart is attached as **Exhibit 5.**

22.     By its terms, EA-231 required Lifeguard Captains and other Site Supervisors, including Captain Little, to ensure that the Progress Pride Flag is appropriately flown (i.e., appropriately handled, raised, lowered, and stored), either personally or through subordinates, every June at all of the Department's lifeguard facilities in the County with flagpoles and sufficient clasps for mounting the flag.

**C.     The inherent expressiveness of flags.**

23.     Flags are inherently symbolic and universally expressive of ideological content. As explained by the Supreme Court, "nearly every society has taken a piece of cloth and 'endow[ed] it, through the circumstances of its display, with a condensed power' to speak for the community." *Shurtleff v. City of Boston*, 596 U.S. 243, 253 (2022) (quoting Whitney Smith, Flags Through the Ages and Across the World 1-2, 32, 34 (1975)). Indeed, "[t]he Court for decades has recognized the communicative connotations of the use of flags." *Spence v. Washington*, 418 U.S. 405, 410 (1974); *see, e.g.*, *Willson v. Bel-Nor*, 924 F.3d 995, 1001 (8th Cir. 2019); *Dimmitt v. Clearwater*, 985 F.2d 1565, 1569 (11th Cir. 1993); *Brown v. Calif. Dep't of Transp.*, 260 F. Supp. 2d 959, 966 (N.D. Cal. 2003).

24.     The primary, if not exclusive, purpose of flags is to express one or more ideas to the public at large—both through their presentation in a public setting, and through the ceremonial rites relating to proper handling, raising, folding, and presenting of a flag. Such expression is most often made ceremonially via raising the flag on its pole in proper fashion so that the flag can then be seen by the public. This is a precondition to public awareness of the ideas being expressed by those who have

VERIFIED THIRD AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

personally raised it or required it to be raised.

25. Thus, the act of raising a flag, especially in a ceremonial context, is a deliberate action intended to communicate specific messages or ideas to the public. One such aspect of the ceremonial handling of a flag—but not the only one—is the flag salute, which the Supreme Court has described as "a form of utterance," where symbolism serves as a "shortcut from mind to mind," symbolizing systems, ideas, institutions, or personalities. *Texas v. Johnson*, 491 U.S. 397, 405 (1989).

26. For example, six U.S. servicemen raised the American Flag on February 23, 1945, on Mount Suribachi on the island of Iwo Jima. However, the order to raise the flag was given by Marine Corps Lt. Col. Chandler Johnson. This iconic moment, captured in the famous photograph by Joe Rosenthal, became a symbol of hope and perseverance for U.S. forces during World War II, and for the American public, too. The symbolic expression of these ideas via raising of the flag was that of the six servicemen, but also that of Lt. Col. Johnson, who gave the order to raise the flag.

**D. The symbolic meaning of the Progress Pride Flag.**

27. According to the creator of the original Pride Flag, each colored stripe has a specific meaning. The Pride Flag had its origin during the bicentennial celebrations of 1976. "I thought of the original American flag with its thirteen stripes and thirteen stars, the colonies breaking away from England to form the United States. I thought of the vertical red, white, and blue tricolor from the French Revolution, and how both flags owed their beginnings to a riot, a rebellion, or a revolution. I thought a gay nation should have a flag too, to proclaim its own idea of power."[1]

28. Thus, when designing the Pride Flag, its creator assigned a meaning to each stripe. "Pink is for sex. Red is for life. Orange is for healing. Yellow is for the sun. Green is for nature. Turquoise is for magic. Blue is for serenity. Purple is for the spirit. Every color has a meaning just like the American flag—symbolism all the

---

[1] Gilbert Baker, Rainbow Warrior: My Life in Color 35-36 (2019).

VERIFIED THIRD AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

way."[2] The whole point of the flag is that "[w]e knew that flags were political statements."[3]

29.    Further, as explained by the creator of the Pride Flag, a rainbow was chosen specifically because of its connection to traditional Christian imagery:

> The idea for the Rainbow Flag had come to me in a dance to a tribal beat, on the wings of angels. Infused with the colors of God's covenant with humanity, the Rainbow Flag was more than mere cloth; it was a visual metaphor and an active proclamation of power, created and dedicated to gay and lesbian liberation. It declared that sexuality is a beautiful expression of nature, a human right.[4]…
>
> A Rainbow Flag was a conscious choice, natural and necessary. The rainbow came from earliest recorded history as a symbol of hope. In the book of Genesis, it appeared as proof of a covenant between God and all living creatures.[5]

30.    Although the original Pride Flag had eight colors, the version that became most popular among the LGBT rights movement in the 1970s and 1980s was limited to six colors. It dropped the artificial hot pink and turquoise, and omitted the indigo color that is present in a seven-color, naturally occurring rainbow. This was done for practical reasons regarding availability of dye and not as a rejection of the symbolism underlying any of the stripes.[6]

31.    Twenty years after the original Pride Flag debuted, in 1999, the Transgender Pride Flag was created. It also had six stripes, but with alternating colors of baby blue, baby pink, and white. Like the original Pride Flag, both the colors and the ordering of the stripes in the Transgender Pride Flag envisioned specific

---

[2] *Id.* at p.40.
[3] *Id.* at p.44.
[4] *Id.* at p.1.
[5] *Id.* at p.37.
[6] *Beyond the Rainbow*, University of Central Lancashire Students' Union (June 9, 2022), https://www.uclansu.co.uk/news/article/6013/Beyond-The-Rainbow/.

VERIFIED THIRD AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

symbolism.[7] Lastly, in 2016, the City of Philadelphia added black and brown stripes to the Pride Flag flown in front of its city hall to represent "Black and Latino communities."[8]

32.    In 2018, a designer unveiled the Progress Pride Flag, combining elements from these three Pride Flags. He separated the colors of the Transgender Pride Flag and the Philadelphia Pride Flag and placed them in a chevron on the left side of the flag. As he explained "[t]he arrow points to the right to show forward movement, while being along the left edge shows that progress still needs to be made."[9]

33.    The specific flag at issue—the Progress Pride Flag—is pictured below:



34.    When the Los Angeles County Board of Supervisors passed its motion relating to the Progress Pride Flag, it noted all of the above symbolism, stating: "The original Pride flag contained eight stripes, each a separate color of the rainbow plus hot pink. They colored [sic] represented sex, life, healing, sunlight, nature, magic and art, serenity, and spirit." *See* Exhibit 3.

35.    The Board motion continued: "While there have been several variations of the Pride flag. [sic] in 2019, a version was debuted that included the iconic six

[7] *The History of the Transgender Flag*, Point of Pride (Apr. 23, 2015), https://www.pointofpride.org/blog/the-history-of-the-transgender-flag.
[8] Ben Deane, *The Philly Pride flag, explained*, The Philadelphia Inquirer (June 12, 2021), https://www.inquirer.com/philly-tips/philadelphia-pride-flag-20210612.html.
[9] Daniel Quasar, *"Progress" A PRIDE Flag Reboot*, Kickstarter (June 2018), https://www.kickstarter.com/projects/danielquasar/progress-a-pride-flag-reboot.

VERIFIED THIRD AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

rainbow stripes: red, orange, yellow, green, blue and violet, as well as the colors from the Transgender Pride Flag, light blue, pink and white stripes, to embrace the transgender community." **Exhibit 3**.

36.     Thus, as acknowledged in the Board of Supervisors' motion, the Progress Pride Flag symbolizes and advances a range of controversial viewpoints, both religious and moral, regarding the family, the nature of marriage and human sexuality, certain sexual practices, and the identity, nature, and purpose of the human person. Particular aspects of the Progress Pride Flag were also originally intended by its creators, and echoed by the Board in its motion, to signify "sex," "magic," and "spirit," among other ideological and spiritual notions.

**E.      Due to the controversial symbolism of the Progress Pride Flag, Captain Little requests and receives a religious accommodation.**

37.     As stated above, Captain Little is a devout Christian with bona fide religious beliefs on marriage, sex, and family that conflict with both the intended meaning and public meaning of the Progress Pride Flag—or any Pride Flag—on those same subjects. The views commonly associated with the Progress Pride Flag regarding marriage, sex, and family are in direct conflict with Captain Little's bona fide and sincerely held religious beliefs on the same subjects. His bona fide and sincerely held religious beliefs require him to reject those views.

38.     While Captain Little understands that the government can speak its own messages, and thus may promote Pride Month, he believes that he cannot personally do so by raising or maintaining the Progress Pride Flag. Doing so would be to personally participate in, espouse, and promote messages contrary to his sincerely held religious beliefs, similar to how many courts have recognized that Jehovah's Witnesses may not salute or pledge allegiance to the flag of any nation or state. *See, e.g.*, *Lawson v. Washington*, 296 F.3d 799, 803 (9th Cir. 2002).

39.     As stated above, in implementation of the Board motion, the Fire Department issued a memorandum titled EA-231 to all employees on May 25, 2023,

VERIFIED THIRD AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

requiring the flying of the Progress Pride Flag at locations that were physically able to accommodate it. In practice, not all lifeguard properties have either flag poles or adequate flag clasps, so flying the Pride Flag was not possible at all locations. *See* Exhibits 4-5.

40. During this time—the first half of 2023—Captain Little's regular assignment was Area 27 (Will Rogers Beach). For June 1-3, 2023, Captain Little worked Area 27 and no Progress Pride Flag had been delivered by management to be flown. Further, based on the instructions of EA-231, it appeared that the Progress Pride Flag would not be flown at Area 27. However, Captain Little would often work extra shifts at other work locations in the form of "Overtime" (volunteer for extra shifts), "Recall" (forced to work extra shifts), or "Relief" (prescheduled shifts on straight-time).

41. For the first two full weeks of June 2023 (June 4-17), Captain Little was taking a pre-scheduled vacation and used this time to consider how he can protect his religious beliefs. At the time, he did not know his options regarding how to respond when EA-231 was first issued. He discussed the issue with a few colleagues and they all expressed fear as they believed raising any objections would tarnish their promotability and eligibility for special assignments. As a result, Captain Little was conflicted. He had always been a low maintenance employee, but his faith was very important to him. However, after conducting some research and praying about it, he decided that he should ask for an exemption on his first day back at work.

42. As a result, on June 18, 2023, Captain Little's first day back, he requested a religious accommodation. Captain Little's work schedule is not fixed, nor is it permanent. It changes and is changeable within certain limits, as governed by documents like the memorandum of understanding between the lifeguard's union (LACOLA) and the Fire Department, among others.

43. In his written request, Captain Little made the broad and open-ended ask "to be exempt [from] adhering to EA-231" because compliance with it could violate

VERIFIED THIRD AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

his religious beliefs in myriad ways. *See* **Exhibit 6**. For example, the flying of the Progress Pride Flag in his own workspace could be interpreted as a personal endorsement of its message. *See Brown v. Polk Cnty., Iowa*, 61 F.3d 650, 659 (8th Cir. 1995) (government wrongly ordered employee to remove religious poster from his office and Bible from his desk); *Swanson v. Flores*, No. 3:23-cv-2021, 2025 WL 97601, at *8 (S.D. Cal. Jan. 14, 2025) (similar).

44. Later that day, he was informed by Fire Department Section Chief Danielle McMillon that they could schedule an Interactive Process Meeting (IPM) with Ms. Renée Nuanes-Delgadillo of the Fire Department's Risk Management and Disability Management and Compliance, Leadership and Professional Standards Bureau, for the next day.

45. On June 19, 2023, Captain Little participated in the Interactive Process Meeting involving both lifeguards from the Fire Department and personnel from human resources. During that meeting, he explained that, under EA-231, the Progress Pride Flag should not be flown at Area 27 and he requested that it not be flown. In the alternative, he requested to be moved to a site not flying the Pride Flag. He explained that his religious beliefs did not allow him to raise the Progress Pride Flag or ensure that it is raised and properly flown.

46. At the conclusion of the meeting, the Fire Department agreed to Captain Little's request for a religious accommodation. The Fire Department agreed to Captain Little's request by promising: (1) to move him to a site not flying the Progress Pride Flag; (2) that he need not personally raise the flag; and (3) that he need not ensure/oversee raising or flying of the flag because, if he were assigned to headquarters, he would not serve as supervisor.

47. This accommodation appeared to be a practical solution because there were several sites that had not flown the Progress Pride Flag during the entire month of June. Working with his immediate supervisors, Captain Little negotiated a move to Area 17 and Area 33 for the remaining days in June.

14

VERIFIED THIRD AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

48.    At Area 17, Captain Little would be the supervisor overseeing the entire Area, which included three sub-areas manned by Lifeguards: Dockweiler North, Dockweiler South, and El Segundo. The Fire Department agreed that that Progress Pride Flag would not be flown at Area 17 and they had not mandated it be flown at any time in June leading up to the day of the IPM on June 18.

49.    At Area 33 (Malibu Beach), Captain Little would not be responsible for the Progress Pride Flag being flown at Zuma Lifeguard Headquarters, since that was the responsibility of the Headquarters Captain working at Area 30. Thus, although the Progress Pride Flag would be flown, Captain Little would not be the site supervisor in charge of ensuring it is raised and would be far from it in the field. Even though Captain Little had to extend his commute by a full hour to move to the alternate beach of Area 17, protecting his religious beliefs while accomplishing his job duties was important to him.

50.    On behalf of the Fire Department, Assistant Lifeguard Chief Adam Uehara was present for and participated in the Interactive Process Meeting. Chief Uehara agreed on behalf of the Fire Department to the above terms. Section Chief McMillon was also present for and participated in the Interactive Process Meeting. Shortly after the terms of the accommodation were finalized, Assistant Lifeguard Chief Uehara communicated with Lifeguard Division Chief Fernando Boiteux about the meeting, the accommodation, and its terms.

51.    As stated above, a result of the accommodation, Captain Little believed he would be able to work in Area 17—which includes the subareas of the Dockweiler North, Dockweiler South, and El Segundo lifeguard stations—without either violating his religious beliefs or running afoul of EA-231. As of June 19, 2023, none of these sites were then flying the Progress Pride Flag or were even capable of doing so, due to insufficient flag clasps on the halyards of the flagpoles at the sites, and a lack of Progress Pride Flags at any of the sites. Further, none of these Area 17 sites had ever before flown the Progress Pride Flag.

VERIFIED THIRD AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

52.     During the Interactive Process Meeting, Captain Little agreed with the Fire Department to be assigned to Area 33 for the month of June for his base schedule. They also agreed that for his upcoming recall day of June 21, 2023, he would be assigned to Area 17. They agreed that when he served at any headquarters subarea, where the Progress Pride Flag was being flown, that he would not serve as Headquarters Captain. By another lifeguard filling that role, that individual would assume responsibility for ensuring that the Progress Pride Flag is flown.

53.     Going forward, per the accommodation, Captain Little was to negotiate arrangements with others assigned to various sites to avoid a conflict between his religious beliefs and compliance with EA-231. Those arrangements could include shift swapping, use of recall exemption, and use of leave benefit time as a last resort.

**F.      The practical reasonableness of granting Captain Little a religious accommodation.**

54.     The Fire Department's decision to grant Captain Little a religious accommodation made perfect sense as it required no substantial increase of expenditures. It would be simple to make basic rearrangements of shifts and schedules and the Fire Department has many employees it already pays who could substitute for any Progress Pride Flag-related duties in June. Indeed, in an analogous situation, the San Diego City Fire Department adopted "an all-volunteer parade" policy after losing in litigation when it ordered personnel to participate in a Gay Pride Parade. *See Ghiotto v. City of San Diego*, No. D055029, 2010 WL 4018644, at *27 (Cal. Ct. App. Oct. 14, 2010).

55.     There was also no real likelihood that requiring another supervisor to monitor and ensure proper flying of the Progress Pride Flag would be an impact that goes on to affect the conduct of the Fire Department, Lifeguard Division, in its core function of providing lifeguard services to beachgoers. Because the Fire Department is a government employer, Captain Little's rights are doubly protected: "a government employer … must …provide religious accommodations under Title VII, and 'must

VERIFIED THIRD AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

abide by the First Amendment' in doing so." *Does 1-11 v. Univ. of Colorado*, 100 F.4th 1251, 1280 (10th Cir. 2024).

56.    Here, the accommodation complied with the First Amendment. Captain Little's job duties involve serving as a lifeguard, not affirming by word or deed ideological views that he does not espouse. Thus, his job requirement—as laid out in the lifeguard job description—to "ensur[e] the enforcement of all rules and ordinances," cannot be read in the abstract, but must be tethered to lifeguard duties. *See* Exhibit 2.

57.    As explained by the Supreme Court, the government may not "posit an excessively broad job description" and thereby "treat[] everything teachers and coaches say in the workplace as government speech subject to government control." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 531 (2022). Nor may the government impose a "blanket requirement" that all employees "mouth support for views they find objectionable." *Janus v. AFSCME, Council 31*, 585 U.S. 878, 892, 907 (2018).

58.    As concisely explained by the Virginia Supreme Court, "[m]ath teachers must teach math, science teachers must teach science, history teachers must teach history, and so on. But none of them can be compelled into the service of controversial 'religious, political, [or] ideological causes.'" *Vlaming v. W. Point Sch. Bd.*, 895 S.E.2d 705, 739 (Va. 2023) (quoting *Wooley v. Maynard*, 430 U.S. 705, 714 (1977)).

59.    The role of Lifeguard Captain is a public safety position. It cannot be transformed from a public safety role into the role of spokesperson for elected County officials, over the objection of the employee. Conveyance of the County Supervisors' message via flag raising, whether directly or indirectly, about "sex, life, healing, sunlight, nature, magic and art, serenity, and spirit" would not—from the standpoint of the reasonable public safety employee—be an expected part of compliance with the job requirement to "ensure the enforcement of all [public safety] rules and ordinances." *See Geraghty v. Jackson Loc. Sch. Dist. Bd. of Educ.*, No. 5:22-cv-2237, 2024 WL 3758499, at *11 (N.D. Ohio Aug. 12, 2024).

60. Directly or indirectly raising the Progress Pride Flag is government speech *only when* done pursuant to official duties of the governmental employee. Thus, an order from a superior to a subordinate to fly the Progress Pride Flag would reasonably appear to the subordinate as an affirmation by the superior of the message, values, or ideas commonly associated with the Progress Pride Flag.

61. Whenever a Lifeguard Captain raises a flag, directly or indirectly, to communicate a message that has no relationship at all to public safety (and that is not a government flag), that speech does not become government speech merely because it occurs on government property. Whether by raising the Progress Pride Flag oneself or by ordering another to do so, flying the Progress Pride Flag is pure expression. Public messaging, ideological or otherwise, is not and has never been among the official duties of the Lifeguard Captain in the Lifeguard Division of the Fire Department of the County of Los Angeles.

**G.    Captain Little's religious accommodation is suddenly and maliciously revoked.**

62. On June 21, 2023, Captain Little was assigned by recall to work at Redondo Beach, where the Progress Pride Flag was being flown. Because of the accommodation, he arranged with Section Chief McMillon to change the assignment from Redondo Beach to Area 17. Specifically, Captain Little found a willing colleague to trade the shift so that Captain Little could work at Area 17 and Section Chief McMillon approved and coordinated the shift trade. Section Chief McMillon understood then that the reassignment to Area 17 was made in order to comply with the terms of the religious accommodation as it then existed.

63. However, prior to June 21, 2023, Lifeguard Division Chief Boiteux had communicated to others in Lifeguard Division management, including Section Chief Lester, that he believed no religious accommodation should be extended to Captain Little, contrary to the accommodation negotiated between Captain Little, other Fire Department management, and human resources personnel. This was because of

18

Lifeguard Chief Boiteux's animus against Captain Little's religious beliefs. Chief Boiteux communicated to Section Chief Lester that the flagpoles at the Area 17 sites should be modified so that they could fly Progress Pride Flags, despite the assignment of Captain Little to that station.

64.    Due to this conversation between Lifeguard Chief Boiteux and Section Chief Lester, on the morning of June 21, 2023, Section Chief Lester brought additional flag clasps and Progress Pride Flags to each of the three sub-area sites of Area 17. As stated above, before he did so there had not been sufficient clasps at any site of Area 17 to fly the Progress Pride Flag, and as such the sites also did not have any of the flags stored there.

65.    In the early hours of June 21, 2023, Section Chief Lester added clasps to the halyards of the flagpoles of the Area 17 sites by ordering lifeguards who were present to do so. Section Chief Lester did this so that the sites of Area 17 would from then on become subject to the terms of EA-231, imposing flag-related duties on the Captain or Site Supervisor assigned to any of the Area 17 sites. Section Chief Lester knew this would be Captain Little as of approximately 10:30 a.m. on June 21, 2023.

66.    Section Chief Lester knew Captain Little had an accommodation negotiated with and through the human resources department. Nonetheless, Section Chief Lester sought to defeat that religious accommodation due to his animus against Captain Little's religious beliefs.

67.    Prior to June 21, 2023, Section Chief Lester knew of Captain Little's traditional Christian religious beliefs on marriage, sex, and family as a result of prior communication with Captain Little on those subjects. He also knew that by adding flag clasps and raising Progress Pride Flags at the Area 17 sites, he would be creating a conflict with Captain Little's religious beliefs and religious accommodation. Section Chief Lester acted as he did out of animus toward the religious beliefs of Captain Little, and with the specific intent to cause a religious conflict for him.

/ / /

VERIFIED THIRD AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

68.    Nevertheless, Captain Little's religious accommodation was transfer to a site not flying the Progress Pride Flag. At 10:30 a.m. on June 21, 2023, Captain Little arrived at work. Upon arriving at Area 17 on June 21, 2023, Captain Little enforced the terms of his religious accommodation by lowering the Progress Pride Flags, so that he would be working in a site not flying the Progress Pride Flag, as mutually agreed.

69.    Prior to lowering the Progress Pride Flags at Area 17, Captain Little asked the lifeguards assigned to each sub-area that he was supervising whether they objected to his doing so; no staff objected. Thus, with the permission of the Ocean Lifeguard Specialists then stationed at Dockweiler, he took down the flags in specific reliance on his religious accommodation. That was between 11:30 a.m. and 2:30 p.m.

70.    Later that day, at about 2:45 p.m., the Fire Department informed Captain Little by Microsoft Teams that his religious accommodation had been revoked. Later that day, at around 5:45 p.m., Section Chief Lester also verbally directly ordered Captain Little to re-raise the Progress Pride Flags that he had lowered.

71.    In his words, demeanor, and tone, Section Chief Lester's conduct toward Captain Little in the circumstance was abusive, inappropriate, harassing, and discriminatory. Further, Section Chief Lester's conduct was motivated by animus toward Captain Little's religious beliefs. He acted this way toward Captain Little because of Captain Little's religious beliefs and in retaliation for Captain Little seeking a religious accommodation.

72.    Captain Little refused Section Chief Lester's verbal order to personally re-raise the Progress Pride Flags after lowering them. He refused to do so, in part, because that would have made the Area 17 sites noncompliant with the religious accommodation, and he was confused and flustered over its sudden revocation.

73.    At the end of the day on June 21, 2023, Assistant Lifeguard Chief Uehara confirmed the denial of any religious accommodation for Captain Little. Assistant Lifeguard Chief Uehara also denied Captain Little his right to use already earned

VERIFIED THIRD AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

employment benefits, including paid leave, as a means to avoid the conflict between his religious beliefs and compliance with EA-231.

74.     Thus, on June 21, 2023, without justification or notice, the Fire Department abruptly ended the interactive process and refused Captain Little any accommodation, less than two days after granting an accommodation. This was a violation of Title VII and FEHA. The Department could easily grant Captain Little a religious accommodation to EA-231 without undue burden to itself because other Captains or Site Supervisors who do not have any religious objection could have complied with EA-231 on his behalf.

75.     On June 22, 2023, Lifeguard Division Chief Fernando Boiteux issued a written Direct Order to Captain Little to fly the Progress Pride Flag or ensure that the Progress Pride Flag is flown as instructed in EA-231, which is attached as **Exhibit 7**. The written Direct Order was hand-delivered by Chief Boiteux to Captain Little. It states: "You are hereby ordered to: (1) Fly the Progress Pride Flag (PPF) as instructed in Executive Action-231 (EA-231) during the month of June; OR (2) Ensure that the PPF is flown as instructed in EA-231 during the month of June," and "Failure to comply with this order will be considered insubordination and subject to disciplinary action, which could include suspension and/or discharge from County service."

76.     When doing so, Chief Boiteux told Captain Little that "You need to stop what you are doing," "You are an LA County employee; that's the only thing that matters," and "Your religious beliefs do not matter; you are an LA County employee." He repeated multiple times, "You are an LA County employee" and "Your religious beliefs do not matter" in an instance of religious discrimination combined with physical intimidation.

77.     Lifeguard Chief Boiteux is 6'4" tall and weighs 220 pounds. Captain Little is aware that Chief Boiteux is also trained in martial arts. He delivered his message to Captain Little in a violent and angry manner while standing over Captain

VERIFIED THIRD AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Little—who is only 5'9" tall and weighs 150 pounds. Captain Little believes that the specific intent of Chief Boiteux's demeanor was to be physically intimidating.

**H.      Captain Little files a religious discrimination complaint with the Fire Department, and is retaliated against.**

78.      On June 22, 2023, at 11:58 a.m., Captain Little filed a County Policy of Equity "CPOE" administrative complaint with the Fire Department for religious discrimination and harassment, which is attached as **Exhibit 8**. As stated in that administrative complaint, Captain Little's "shift on 6/21 was changed to accommodate my religious beliefs so I would not have to work an area that flew the pride flag." But, as stated above, Section Chief Lester went to that area to order the Progress Pride Flag flown. So, Captain Little said, "I felt like I was being targeted or entrapped by Chief Lester and my religious beliefs were not being taken seriously," and "I believe that the actions by Chief Lester are retaliatory in nature." The Fire Department later notified Captain Little that it had received his County Policy of Equity (CPOE) complaint, and was investigating it. The notice is attached as **Exhibit 9**.

79.      On that same day, June 22, 2023, Chief Boiteux informed Captain Little that he was the subject of an internal administrative investigation for lowering the Progress Pride Flag during his shift the day prior. The notice of that investigation is attached as **Exhibit 10**. On June 22, 2023, Chief Boiteux also delivered Captain Little a "Notice of Instruction," attached as **Exhibit 11**, which stated that: "All Department employees, *irrespective of personal beliefs*, are expected to comply with EA-231, which includes raising the flag as instructed." (Emphasis added.)

80.      The Direct Order and Notice of Instruction specified that Captain Little is responsible for either flying the Progress Pride Flag as instructed in EA-231 or ensuring that it is flown. As such, whenever assigned to a site at which the Progress Pride Flag must be flown, and at which Captain Little could not ensure through another employee that the Progress Pride Flag is flown, by the terms of these

VERIFIED THIRD AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

documents Captain Little would be personally responsible for flying the Progress Pride Flag as instructed in EA-231.

81. Between June 22, 2023, and May 23, 2024, the Fire Department refused to engage in the interactive process with Captain Little to negotiate a reasonable religious accommodation. This violated both Title VII and FEHA. The Department is legally obliged to engage in the interactive process with Captain Little concerning his requested religious accommodation.

82. Further, upon information and belief, the Fire Department breached Captain Little's right to employment-related privacy. The Department, through the persons discussed above, disclosed to unauthorized recipients that Captain Little requested a religious accommodation to not raise the Progress Pride Flag. This breach of privacy led to the following incidents:

A. On June 23, 2023, Captain Little was suspended from his role on the background investigation unit, which conducts investigations of emergency incidents, resulting in a significant loss of overtime, income, and prestige. When this happened, Captain Little asked the individual informing him why it was happening. The tenor and cadence of the individual's response indicated to Captain Little that he was uncomfortable with Captain Little's questions and he responded with words to the effect of: "I'm just following orders, don't shoot the messenger." On information and belief, that individual's demeanor was indicating that he knew or suspected that the suspension was retaliatory.

B. On June 28, 2023, Captain Little received via the U.S. Mail a death threat against him and his children, attached as **Exhibit 12**. The death threat was printed by hand in letters that alternate in color and said: "Jeff F*** you and your Jesus. Your hate won't be tolerated. We know where you live and work. You better pay respect to our pride flag or we will f*** you up. We know about your cute little girls and aren't afraid to rape the s*** out of

VERIFIED THIRD AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

them if you don't honor us. You are a fascist pig and deserve to die."

C. On June 30, 2023, the Fire Department notified Captain Little that it received second and third County Policy of Equity (CPOE) complaints against him, which it was investigating. The notices are attached as **Exhibit 13** and **Exhibit 14**. These alleged complaints, ICMS #2023-120504 and ICMS #2023-120591, are pretextual and retaliatory.

83. On or about July 20, 2023, at 2:00 p.m., Captain Little spoke with investigator Justa Lopez of the County's CPOE Investigative Unit regarding his own complaint. During the investigative call, Captain Little added to his CPOE complaint the June 22, 2023, Direct Order, the June 22, 2023, Notice of Instruction, the June 22, 2023, Notice of Investigation, the June 22, 2023, actions of Chief Boiteux, and the receipt of the June 28, 2023, death threat. He asked Ms. Lopez whether he had to supplement his June 22, 2023, CPOE complaint in writing. She told him that was not necessary, and she deemed the additional facts part of his CPOE complaint.

84. However, on July 28, 2023, the Fire Department informed Captain Little that the conduct he had complained about did not violate the CPOE. The notice is attached as **Exhibit 15**. The Department did not take any actions to protect Captain Little from previous and future religious discrimination, harassment, and retaliation.

85. On September 14, 2023, with respect to the Department's investigation into Captain Little's lowering of the Progress Pride Flag, the Department notified him that an administrative interview of him would occur on September 21, 2023. That notice is attached as **Exhibit 16**. Then, on February 7, 2024, the Fire Department notified Captain Little that he had violated the County Policy of Equity, and that administrative action may follow—a retaliatory outcome of the pretextual investigation launched in June 2023. The notice is attached as **Exhibit 17**.

86. On July 16, 2024, the Fire Department presented Captain Little with an intent to suspend letter, authored by Deputy Fire Chief Robert Harris of Central Regional Operations Bureau, and which was issued earlier (but not delivered) on July

VERIFIED THIRD AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

12, 2024. The intended and proposed suspension is for 15 eight-hour days without pay, or three work weeks. The suspension letter is attached as **Exhibit 18** (with exhibits omitted).

87.     On October 24, 2024, the Fire Department presented Captain Little with a notice of suspension letter. That letter informed Captain Little that he would serve his suspension in November 2024, which he did. The suspension letter is attached as **Exhibit 19**. It states: "You are hereby advised that any further violation of the County's policies and procedures, or the Department's Standards of Behavior, may be grounds for more serious disciplinary action, including discharge."

88.     The suspension was ordered because the Department sought to retaliate against Captain Little for failing to comply with EA-231 and instead conforming the flags at Area 17 to the agreed to accommodation on June 21, 2023, and for holding the religious beliefs that prompted Captain Little to seek the accommodation in the first place.

89.     Both letters indicate that Captain Little had to seek approval from the Fire Department before lowering the Progress Pride Flags in Area 17 to conform the flagpoles to the religious accommodation. But nowhere does either letter cite to any authority for this proposition.

90.     The letters also indicate that conforming the flagpoles in Area 17 to the religious accommodation failed to show support for and inclusivity of the LGBT community. The letters conclude that discipline lies primarily for the act of lowering the Progress Pride Flags without prior authorization to do so, but nowhere do letters address or even mention the then-existing religious accommodation, even though the accommodation is referenced 57 times in the Investigation Reports.

91.     The omission of the critical subject of the religious accommodation from the analysis of the facts and applicable standards is not accidental. It is deliberate. The grounds stated in the analysis for the intended and proposed discipline are utterly pretextual.

VERIFIED THIRD AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

## I. Developments in advance of and during Pride Month 2024.

92. On March 15, 2024, Ms. Ashley Hudson from the County Equity Oversight Panel notified Captain Little by email that the Panel was "in receipt of a County Policy of Equity complaint that was either filed by you or filed on your behalf," which email is attached as **Exhibit 20**. Ms. Hudson further requested that Captain Little contact her "within five (5) business days of the date of this letter so we can schedule a clarifying interview."

93. On March 21, 2024, Captain Little responded to Ms. Hudson via letter from counsel, which is attached as **Exhibit 21**, with redundant exhibits omitted. In the letter, Captain Little clarified that he had filed charges with the Equal Employment Opportunity Commission ("EEOC") and the California Civil Rights Department ("CRD"), and asked her to forward the letter to the County's legal counsel. Captain Little further requested that Ms. Hudson confirm that the letter had been forwarded to legal counsel for further engagement and resolution of his claims.

94. Nobody from the County responded to Captain Little's letter dated March 21, 2024. So, on April 19, 2024, Captain Little replied again to Ms. Hudson, via letter from counsel, attached as **Exhibit 22** (again with redundant exhibits omitted). In this comprehensive, 11-page letter, Captain Little explained in detail and with documentary support the basis for his claims against the Fire Department and his request for a religious accommodation and other remedies.

95. Captain Little further advised Ms. Hudson that the EEOC and CRD had each provided him with a Right to Sue letter, that she had never acknowledged his letter dated March 21, 2024, and that he would timely file a complaint by June 24, 2024, at the absolute latest should the County and the Fire Department fail to engage in a good faith negotiation of his claims. Captain Little also requested acknowledgment of receipt of the letter, and further requested that the letter be forwarded to legal counsel for the County and the Fire Department. In the interest of

VERIFIED THIRD AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

avoiding litigation, Captain Little requested a substantive response no later than May 3, 2024.

96. In his April 19, 2024 letter, Captain Little also stated that he was willing to mediate the dispute before June 1 (the start of Pride Month). That is the date by which Captain Little would again be put at risk of violation of his religious beliefs because he would again become subject to compliance with EA-231 via the Fire Department's Direct Order, which had not been withdrawn or rescinded.

97. By May 8, 2024, neither the County nor the Fire Department had responded to Captain Little's letters from counsel. So, instead, Captain Little directly emailed Ms. Renée Nuanes-Delgadillo—the human resources officer that he had spoken and emailed with in June through August 2023. *See* **Exhibit 23**. His discussions with her had stalled in August 2023 because she could not confirm whether the Progress Pride Flag would be flown every June, and stated that Captain Little should renew his request the next year.

98. So, in accordance with Ms. Nuanes-Delgadillo's instruction, in his May 8, 2024, email, Captain Little renewed his request for a religious accommodation from having to raise the Progress Pride Flag during June 2024. To ensure a timely discussion, Captain Little requested that the religious accommodation process resume by no later than the end of the following week, or May 17, 2024.

99. The Fire Department ignored counsel's letters dated March 21 and April 19, 2024, requesting engagement on the request for a standing exemption from compliance with EA-231. And, even though Captain Little did exactly as the Fire Department requested, the Department ignored his May 8 email until May 23, when the Fire Department suggested holding another meeting. This uncertain response came too late; Captain Little had no choice but to seek judicial relief.

100. On Friday, May 24, 2024, Captain Little initiated this action. As stated above, Captain Little had been attempting to seek a religious accommodation for a full year—since June 2023. But he received no response from anyone at the County

until May 23, when Risk Management Officer Renée Nuanes-Delgadillo sought an Interactive Process Meeting with Captain Little on either May 28 or May 29, 2024.

101.   Captain Little responded via email later on May 23, accepting the May 29 meeting date. On Wednesday, May 29, 2024, Captain Little attended the Interactive Process Meeting. That meeting was conducted by Ms. Nuanes-Delgadillo as well as Captain Little's direct report, Chief Kyle Power, and a union representative, Gregory Crum.

102.   The meeting was entirely informational. Captain Little explained the nature of his religious beliefs, his need for a religious accommodation, and proposed practical means of achieving that accommodation. Ms. Nuanes-Delgadillo took this information down to present it to more senior officials with the Fire Department. No decision was made at the meeting, but a follow-up meeting was scheduled for Friday, May 31, 2024.

103.   On Thursday, May 30, 2024, the Fire Department issued a new directive relating to Pride Month, titled "EA-232." The prior directive, issued for Pride Month 2023, was titled "EA-231." A true and correct copy of EA-232 is attached as **Exhibit 24**. In relevant part, EA-232 states: "Fire Captains/Unit Supervisors shall … [e]nsure PPFs [Progress Pride Flags] are flown throughout the month of June at Department facilities within their respective jurisdiction per Attachment A." EA-232 also includes a FAQ to explain that not all Fire Department facilities will be flying the Progress Pride Flag, depending on whether it is practical to do so.

104.   EA-232 is a significant change of position by the Fire Department from June 2023's EA-231, which required that, at locations only able to fly two flags, the Progress Pride Flag must replace the California State Flag. The May 30, 2024 policy, EA-232, restores the California State Flag to its place of honor, behind only the Flag of the United States of America. *See* Cal. Gov. Code § 431.

105.   However, EA-232 also states that "Department members are also encouraged to reflect on and celebrate LGBTQ+ history and community," that "[l]ast

28

year we faced challenges with compliance at several Department facilities," and that "compliance is not optional," as though no religious accommodation could be provided at all, no matter the circumstances or costs. Thus, EA-232 continues the County's goal of ideological conformity.

106. The Fire Department does not say in EA-231 nor in EA-232 why compliance is "not optional" for those with a sincere religious objection, nor does it say why a religious accommodation could not apply, nor does it specify how or why non-compliance due to religious accommodation would burden the Fire Department, nor to what extent there would be such a burden.

107. On Friday, May 31, 2024, Captain Little attended the second Interactive Process Meeting, for which a summary memo by the Fire Department is attached as **Exhibit 25**. At that meeting, Ms. Nuanes-Delgadillo explained that the Fire Department had determined that it would offer Captain Little a partial religious accommodation. Specifically, because of his work shift—which starts after the Progress Pride Flag needs to be raised (at approximately 7:00 a.m.), and ends before it needs to be lowered—Ms. Nuanes-Delgadillo explained that the Fire Department could agree that Captain Little would not be personally responsible for raising or lowering the Progress Pride Flag.

108. However, Ms. Nuanes-Delgadillo explained that Captain Little would still be personally responsible for enforcing compliance with EA-232 and ensuring that his subordinates comply. Thus, for example, if Captain Little arrived on site and found that the Progress Pride Flag had not been raised, or had been positioned incorrectly, he would still be responsible for ensuring its correction. Ms. Nuanes-Delgadillo "explained that an essential job duty of a lifeguard captain is to supervise, which includes ensuring that staff comply with policies, procedures, and directives, which include EAs, and this essential job function cannot be removed as it would be an undue hardship." *See* Exhibit 25, p.2.

109. Captain Little responded by explaining that this was not satisfactory as

VERIFIED THIRD AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

it would still violate his sincere religious beliefs to enforce compliance and ensure his subordinates were properly flying the Progress Pride Flag. Captain Little also indicated that it was foreseeable that the Progress Pride Flag might not be raised because he believes and is informed that other Fire Department personnel have similar religious objections to his. His shift could also change such that he would need to be present when the flag is raised or lowered.

110.    But Ms. Nuanes-Delgadillo simply responded that Captain Little would need to follow regular protocol if an employee is being insubordinate. She insisted "that to remove this essential job function would result in another lifeguard captain having to supervise the staff at Area 33 by having someone come in on their day off or having a lifeguard captain from another area to come to that location." *See* Exhibit 25, p.2. But this was not true. Because the beaches are so large and lifeguards are spaced far from each other, they regularly communicate with each other using their cell phones, radios, or other devices. Another captain would just need to call or text the lifeguards at Captain Little's beaches periodically to check in with them.

111.    Ms. Nuanes-Delgadillo also explained that the Fire Department would not offer Captain Little a standing religious accommodation. Instead, he would have to renew his request in advance of every June—and go through new rounds of Interactive Process Meetings.

112.    Captain Little also raised the issue of the Direct Order which mandates Captain Little's specific, personal compliance with EA-231 under threat of discipline for noncompliance. Ms. Nuanes-Delgadillo denied Captain Little's request for suspension of that Direct Order and denied Captain Little's request to remove the Direct Order from his personnel file. This is significant in part because the Department has yet to clarify: (1) whether the Direct Order applies to EA-232 (or only EA-231); and (2) the relationship between EA-231 and EA-232 (whether the later supersedes or simply amends the prior). It is also significant because the Direct Order says that Captain Little's failure to ensure raising of the Progress Pride Flag could

VERIFIED THIRD AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

lead to his discharge.

113.    Over the weekend of June 1-2, 2024, Captain Little secured an effective accommodation by working with his direct report, Chief Kyle Power. For the month of June, Captain Little was assigned to two locations: three days per week at Area 33 (comprising Nicholas Beach, Point Dume Beach, and Malibu Beach), and one day per week at Zuma Headquarters. After walking the beach, Captain Little and Chief Power thy were able to confirm that—under the terms of the new EA-232—none of the lifeguard stations in Area 33 would be flying the Progress Pride Flag, because at each location, "The flagpole is … not able to accommodate *three* flags." *See* Exhibit 24, attch. B, p.1 (emphasis added).

114.    With respect to Captain Little's one day per week posting at Zuma Headquarters, where the Progress Pride Flag would be flown during the month of June, Captain Little was able to find another Captain who was willing to trade shifts for a location where the Progress Pride Flag would not be flying—and Chief Power approved the requested shift change.

115.    However, because the Fire Department refused to grant Captain Little a workable and complete religious accommodation for both past and future threats, including refusing him a standing accommodation for future Pride Months, Captain Little will need to prosecute this action and seek both a preliminary and permanent injunction.

**J.    Captain Little's need for a declaration of his constitutional rights.**

116.    Although Captain Little was very pleased that he was able to secure a practical accommodation of his religious beliefs in June 2024, he still needs prospective relief from this court. The absence of a clear process for requesting and obtaining a religious accommodation—as shown through the tangle of emails and meetings discussed above—leaves the issue of whether Captain Little's constitutional rights in the future will be violated completely uncertain.

117.    This risk is made worse by the fact that there is no list of sites to which

the Progress Pride Flag policy currently applies or is expected to apply within any time. And, as this case reveals, an accommodation can be granted by the Fire Department one day, *de facto* rescinded the following day without notice to the employee, and then become a basis for discipline when the employee still believes in good faith that the accommodation has not been rescinded, and acts accordingly.

118.   Further, the Fire Department can change the applicability of its Progress Pride Flag policy by adding or removing flag clasps as it likes, or by altering flagpoles as it likes, which it may decide to do just to undermine the ability of an employee to know how to seek an accommodation. It can also change at will and without notice or input to whom or to which positions the policy will apply. That is, *who* an applicant for accommodation might be from day to day, or *whether* an applicant could receive an accommodation under any iteration of the Progress Pride Flag policy, therefore depends on variables outside the applicant's knowledge and control.

119.   Because the Fire Department's Progress Pride Flag policy is open ended, ill defined, subject to change at any moment, silent on the accommodation process, highly discretionary in application, and believed by current Fire Department management to be free of any religion-based exemption, Captain Little's accommodation requests have naturally changed over time as more of the practical details of the policy have come to light at different times.

120.   Any changes in Captain Little's accommodation request during the negotiation process have been made in response to changes to the Progress Pride Flag policy, as written and as applied. As a result, any changes to the request for accommodation over time and in response to the Fire Department's changed positions should be understood as clarifications, not abrupt changes.

121.   Captain Little does not have a religious objection to temporarily or incidentally passing by a Progress Pride Flag while performing his official duties. His religious objection arises when the Fire Department redirects him away from his official lifeguard duties in order to attend to the Progress Pride Flag in any manner

VERIFIED THIRD AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

that would, in the mind of a reasonable observer, associate Captain Little with the public message of the flag.

122.   Thus, for example, to the extent that the Progress Pride Flag policy, as applied by Fire Department management to Captain Little, requires him to be physically present for and in the vicinity of any Progress Pride Flag raising ceremony for no reason other than to be present, Captain Little would raise a religious objection to being required to participate.

**K.      Exhaustion of administrative remedies.**

123.   Captain Little filed an administrative complaint against Defendant the Los Angeles County Fire Department with the EEOC within the applicable statutory period concerning his claims arising under Title VII of the Civil Rights Act of 1964, as amended ("Title VII").

124.   Specifically, on March 11, 2024, Captain Little filed a charge with the EEOC against the Fire Department based on discrimination and retaliation in violation of Title VII, which the EEOC designated as Charge No. 480-2024-02766.

125.   On March 26, 2024, the United States Department of Justice (DOJ) issued to Captain Little a Determination of Charge and Notice of Your Right to Sue on EEOC Charge No. 480-2024-02766. This complaint was filed within ninety days of Plaintiff receiving the right-to-sue letter from DOJ.

126.   Captain Little also timely filed an administrative complaint against Defendant the Los Angeles County Fire Department with the California Civil Rights Department ("CRD") for religious discrimination and retaliation in employment in violation of California's anti-discrimination laws.

127.   Specifically, on February 29, 2024, Captain Little filed a complaint of discrimination with the CRD against the Fire Department based on religious discrimination and retaliation under Cal. Gov. Code § 12926 *et seq*, which the CRD designated as CRD Matter Number 202403-23805101.

128.   On February 29, 2024, the CRD issued to Captain Little a Notice of Case

VERIFIED THIRD AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Closure and Right to Sue on the CRD complaint.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### Religious Creed Discrimination / Failure to Accommodate

### in Violation of Title VII of the Civil Rights Act of 1964

### (By Captain Little Against Los Angeles County)

129.    Plaintiff Little incorporates by reference all allegations contained in the preceding paragraphs as though fully set forth herein.

130.    Title VII prohibits an employer from discriminating against an employee "because of such individual's … religion." 42 U.S.C. § 2000e-2(a)(1). This "includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate an employee's … religious observance or practice without undue hardship on the conduct of the employer's business." *Id.* at § 2000e(j).

131.    In other words, it is "unlawful 'for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees and prospective employees.'" *Opuku-Boateng v. California*, 95 F.3d 1461, 1467 (9th Cir. 1996) (quoting *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977)).

132.    To establish a *prima facie* claim for failure to accommodate a plaintiff must present evidence that: "(1) [he] had a bona fide religious belief, the practice of which conflicted with an employment duty; (2) [he] informed [his] employer of the belief and conflict; and (3) the employer threatened [him] with or subjected [him] to discriminatory treatment, including discharge, because of [his] inability to fulfill the job requirements." *Heller v. EBB Auto Co.*, 8 F.3d 1433, 1438 (9th Cir. 1993); *see also EEOC v. Townley Eng'g & Mfg. Co.*, 859 F.2d 610, 614 n.5 (9th Cir. 1988) ("*Townley*") (threat of adverse action is sufficient).

133.    Here, (1) Plaintiff Little adheres to traditional Christian beliefs regarding the moral illicitness of same-sex sexual activity, the immutability of sex regardless of

gender identity, and the view that all people are children of God regardless of their skin color. As a result, he has a sincerely held religious belief, based on deeply and sincerely held religious, moral, and ethical convictions, that he cannot personally raise, ensure raising, maintain, or fly the Progress Pride Flag.

134. Also, as a result of his faith, Plaintiff Little fully supports efforts to ensure that all homosexual, transgender, or people of color are treated kindly, with respect, and are not discriminated against. But his religious beliefs preclude him from affirming in any manner the ideological or philosophical premises espoused by the Progress Pride Flag.

135. (2) The Fire Department also knew of the conflict between Plaintiff Little's religious beliefs and his job's requirement of personally raising, ensuring raising, maintaining or otherwise affirming the Progress Pride Flag because Plaintiff Little requested a religious accommodation from doing so on June 19, 2023. In initially granting that request for a reasonable accommodation, the Fire Department acceded to the sincerity of Plaintiff Little's religious beliefs.

136. Yet the Fire Department has provided no reasonable accommodation options for Plaintiff Little and confirmed that he will be subject to discipline and eventual termination for failure to personally raise, ensure raising, maintain or otherwise affirm the Progress Pride Flag. The Fire Department would not even negotiate on the issue. The Department informed Plaintiff Little that it would not provide him with a religious accommodation and that he had no choice but to comply with EA-231. The Fire Department did not explore reasonable alternatives for accommodating Plaintiff Little.

137. Lastly, (3) the Fire Department has both subjected Plaintiff Little to adverse employment action for non-compliance with EA-231, and has threatened to subject him to adverse employment action in the future for non-compliance with EA-232. Retrospectively, because Plaintiff Little failed to fly the Progress Pride Flag at his worksite, and instead lowered the flag, as stated above, the Fire Department

VERIFIED THIRD AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

subjected Captain Little to an investigation, placed him on unpaid administrative leave, subjected him to hostile personal attacks, and removed him from the Background Investigation Unit.

138.   Prospectively, as stated above, the Direct Order which was issued to Plaintiff Little stated that "[f]ailure to comply with this order will be considered insubordination and subject to disciplinary action, which could include suspension and/or discharge from County service." *See* Exhibit 7. Further, the notice of suspension letter stated that "any further violation of the County's policies and procedures, or the Department's Standards of Behavior, may be grounds for more serious disciplinary action, including discharge." *See* Exhibit 19. And in the latest religious accommodation meeting, the Fire Department that it will not accommodate Captain Little's request to be exempt from "ensuring that staff comply with policies, procedures, and directives, which include EAs." *See* Exhibit 25.

139.   Once the plaintiff has made out a *prima facie* case for discrimination, the burden then shifts to the employer to show that it could not have reasonably accommodated the plaintiff's religious beliefs without undue hardship. *Groff v. DeJoy*, 600 U.S. 447, 468 (2023). Not only does the burden of *proving* an undue hardship fall on Defendant here, "at a minimum, the employer was required to negotiate with the employee in an effort reasonably to accommodate [his] religious beliefs." *EEOC v. Hacienda Hotel*, 881 F.2d 1504, 1513 (9th Cir. 1989), *overruled on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998).

140.   To establish the defense of "undue hardship," the Fire Department must demonstrate that any of the accommodations proposed by Plaintiff Little would impose a burden that is "substantial in the overall context of an employer's business." *Groff*, 600 U.S. at 468. "[A] coworker's dislike of 'religious practice and expression in the workplace' or [dislike of] 'the mere fact [of] an accommodation' is not 'cognizable to factor into the undue hardship inquiry.'" *Id*. at 472.

141.   Further, "a hardship that is attributable to employee animosity [or

'adverse customer reaction'] to a particular religion, to religion in general, or to the very notion of accommodating religious practice cannot be considered 'undue.' If bias or hostility to a religious practice or a religious accommodation provided a defense to a reasonable accommodation claim, Title VII would be at war with itself." *Id*.

142.   In addition, any "undue hardship" must be "on the conduct of the employer's business." *Townley*, 859 F.2d at 615 (citing 42 U.S.C. § 2000e(j)). As the Fire Department has operated without flying the Progress Pride Flag for years, and currently excuses locations without flagpoles or flag clasps from flying one, accommodating Plaintiff Little cannot be said to be an "undue hardship *on the conduct of the employer's business*." *Id.* (emphasis added).

143.   As a direct and proximate result of the Fire Department's discriminatory actions against Plaintiff Little, as alleged herein, Plaintiff Little has suffered harm in the form of special damages, including but not limited to, back pay, front pay, pre-judgment and post-judgment interest, punitive damages, and compensatory damages and other affirmative relief necessary to eradicate the effects of the Fire Department's unlawful employment practices.

144.   As a further direct and proximate result of the Fire Department's discriminatory actions against Plaintiff Little, as alleged herein, Plaintiff Little has suffered harm in the form of general damages including, but not limited to, emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, and loss of civil rights, in an amount to be determined at trial.

145.   Plaintiff Little further seeks a declaration that the Fire Department has discriminated against him and has violated his legal rights by failing to provide a reasonable accommodation of his religious beliefs.

146.   Plaintiff Little found it necessary to engage the services of private counsel to vindicate his rights under the law. Plaintiff Little is therefore entitled to an award of attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k).

/ / /

VERIFIED THIRD AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

## SECOND CLAIM FOR RELIEF

**Religious Creed Discrimination / Failure to Accommodate**

**in Violation of FEHA, Cal. Gov. Code § 12940(a)**

**(By Captain Little Against Los Angeles County)**

147.   Plaintiff Little incorporates by reference all allegations contained in the preceding paragraphs as though fully set forth herein.

148.   The Fair Employment and Housing Act prohibits an employer from discriminating against an employee "because of the … religious creed" of such individual. Cal. Gov. Code § 12940(a). This includes accommodating an employee's "religious belief or observance," if there are "reasonable alternative means" of achieving the employer's needs. *Id.* at subd. (l). The only difference is that, under FEHA, it is easier for a plaintiff to show irreparable harm. *Keene v. City and Cnty. of San Francisco*, No. 24-1574, 2025 WL 341831, at *2 (9th Cir. Jan. 30, 2025)

149.   For the exact same reasons as stated in the preceding allegations regarding the First Claim for Relief, the Fire Department has discriminated against Plaintiff Little by refusing to accommodate his religious beliefs.

150.   As a direct and proximate result of the Fire Department's discriminatory actions against Plaintiff Little, Plaintiff Little has suffered harm in the form of special damages, including but not limited to, back pay, front pay, pre-judgment and post-judgment interest, punitive damages, and compensatory damages and other affirmative relief necessary to eradicate the effects of the Fire Department's unlawful employment practices.

151.   As a further direct and proximate result of the Fire Department's discriminatory actions against Plaintiff Little, Plaintiff Little has suffered harm in the form of general damages including, but not limited to, emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, and loss of civil rights, in an amount to be determined at trial.

152.   Plaintiff Little further seeks a declaration that the Fire Department has

38

discriminated against him and has violated his legal rights by failing to provide a reasonable accommodation of his religious beliefs.

153.    Plaintiff Little found it necessary to engage the services of private counsel to vindicate his rights under the law. Plaintiff Little is therefore entitled to an award of attorneys' fees and costs pursuant to Cal. Gov. Code § 12965(c)(6) and Cal. Civ. Proc. Code § 1021.5.

### THIRD CLAIM FOR RELIEF

### Retaliation in Violation of Title VII of the Civil Rights Act of 1964

### (By Captain Little Against Los Angeles County)

154.    Plaintiff Little incorporates by reference all allegations contained in the preceding paragraphs as though fully set forth herein.

155.    Title VII prohibits an employer from retaliating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

156.    Here, in his employment with the Fire Department, Plaintiff Little engaged in protected activity by requesting a religious accommodation and exemption from being forced to personally raise, ensure raising, maintain or otherwise affirm the Progress Pride Flag.

157.    Plaintiff Little's request for a religious accommodation was protected under Title VII of the Civil Rights Act. As stated above, Plaintiff Little requested a religious accommodation on June 19, 2023, which was granted but then immediately rescinded the next day.

158.    Almost immediately after, various Fire Department personnel retaliated against Plaintiff Little, by angrily confronting him and ordering him to raise the Progress Pride Flag, by removing him from his role on the background investigation unit, by filing pretextual complaints against him, and informing third-parties of his

39

religious accommodation request—leading to a death threat being mailed to his home.

159. Plaintiff Little's protected activities were a substantial motivating reason for the Fire Department's retaliation against him.

160. The Fire Department's retaliatory conduct was a substantial factor in causing harm to Plaintiff Little.

161. The above-described retaliatory harassment of Plaintiff Little was performed by, or ratified by, a managing agent or officer of the Fire Department, including without limitation, Lifeguard Division Chief Fernando Boiteux, Assistant Lifeguard Chief Adam Uehara, and Section Chief Arthur Lester.

162. These acts were done with malice, fraud, oppression, and reckless disregard of Plaintiff Little's rights. Further, said actions were despicable in character and warrant the imposition of punitive damages in a sum sufficient to punish and deter the Fire Department's future conduct.

163. As a direct and proximate result of the Fire Department's retaliatory actions against Plaintiff Little, as alleged herein, Plaintiff Little has suffered harm in the form of special damages, including but not limited to, back pay, front pay, pre-judgment and post-judgment interest, punitive damages, and compensatory damages and other affirmative relief necessary to eradicate the effects of the Fire Department's unlawful employment practices.

164. As a further direct and proximate result of the Fire Department's retaliatory actions against Plaintiff Little, as alleged herein, Plaintiff Little has suffered harm in the form of general damages including, but not limited to, emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, and loss of civil rights, in an amount to be determined at trial.

165. Plaintiff Little further seeks a declaration that the Fire Department has retaliated against him and has violated his legal rights.

166. Plaintiff Little found it necessary to engage the services of private counsel to vindicate his rights under the law. Plaintiff Little is therefore entitled to an

award of attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k).

## FOURTH CLAIM FOR RELIEF

### Retaliation in Violation of FEHA, Cal. Gov. Code §§ 12940(h), 12940(l)(4)

### (By Captain Little Against Los Angeles County)

167. Plaintiff Little incorporates by reference all allegations contained in the preceding paragraphs as though fully set forth herein.

168. The Fair Employment and Housing Act prohibits an employer from "discriminat[ing] against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." Cal. Gov. Code § 12940(h). This includes a specific prohibition on an employer "retaliat[ing] or otherwise discriminat[ing] against a person for requesting [a religious] accommodation under this subdivision, regardless of whether the request was granted." *Id.* at subd. (l)(4).

169. For the exact same reasons as stated in the preceding allegations regarding the Third Claim for Relief, the Fire Department has retaliated against Plaintiff Little for requesting an accommodation for his religious beliefs.

170. As a direct and proximate result of the Fire Department's retaliatory actions against Plaintiff Little, Plaintiff Little has suffered harm in the form of special damages, including but not limited to, back pay, front pay, pre-judgment and post-judgment interest, punitive damages, and compensatory damages and other affirmative relief necessary to eradicate the effects of the Fire Department's unlawful employment practices.

171. As a further direct and proximate result of the Fire Department's retaliatory actions against Plaintiff Little, Plaintiff Little has suffered harm in the form of general damages including, but not limited to, emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, and loss of civil rights, in an amount to be determined at trial.

172. Plaintiff Little further seeks a declaration that the Fire Department has

41

retaliated against him and has violated his legal rights.

173.    Plaintiff Little found it necessary to engage the services of private counsel to vindicate his rights under the law. Plaintiff Little is therefore entitled to an award of attorneys' fees and costs pursuant to Cal. Gov. Code § 12965(c)(6) and Cal. Civ. Proc. Code § 1021.5.

**FIFTH CLAIM FOR RELIEF**

**Failure to Prevent Discrimination, Harassment, and Retaliation**

**in Violation of FEHA, Cal. Gov. Code § 12940(k)**

**(By Captain Little Against Los Angeles County)**

174.    Plaintiff Little incorporates by reference all allegations contained in the preceding paragraphs as though fully set forth herein.

175.    The Fair Employment and Housing Act prohibits an employer from "fail[ing] to take all reasonable steps necessary to prevent discrimination and harassment from occurring." Cal. Gov. Code § 12940(k).

176.    For the exact same reasons as stated in the preceding allegations regarding the Third Claim for Relief, the Fire Department has failed to take all reasonable steps to prevent employees from discriminating against and harassing Plaintiff Little due to his religious beliefs.

177.    As a direct and proximate result of the Fire Department's failure to take reasonable actions, Plaintiff Little has suffered harm in the form of special damages, including but not limited to, back pay, front pay, pre-judgment and post-judgment interest, punitive damages, and compensatory damages and other affirmative relief necessary to eradicate the effects of the Fire Department's unlawful employment practices.

178.    As a further direct and proximate result of the Fire Department's failure to take reasonable actions, Plaintiff Little has suffered harm in the form of general damages including, but not limited to, emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, and loss of civil rights, in an amount to be

42

determined at trial.

179. Plaintiff Little further seeks a declaration that the Fire Department failed to take reasonable actions to protect him and has violated his legal rights.

180. Plaintiff Little found it necessary to engage the services of private counsel to vindicate his rights under the law. Plaintiff Little is therefore entitled to an award of attorneys' fees and costs pursuant to Cal. Gov. Code § 12965(c)(6).

**SIXTH CLAIM FOR RELIEF**

**Violation of Free Exercise Clause of U.S. Constitution (42 U.S.C. § 1983):**

**Not Neutral Due to Animus and Hostility Against Religion**

**(By Captain Little Against All Defendants)**

181. Plaintiff Little incorporates by reference all allegations contained in the preceding paragraphs as though fully set forth herein.

182. The First Amendment to the U.S. Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof[.]" U.S. Const. amend. I. This Free Exercise Clause applies to the states through the Due Process Clause of the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296 (1940).

183. The Free Exercise Clause "protects not only the right to harbor religious beliefs inwardly and secretly. It does perhaps its most important work by protecting the ability of those who hold religious beliefs of all kinds to live out their faiths in daily life through 'the performance of (or abstention from) physical acts.'" *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 524 (2022) (quoting *Employment Div. v. Smith*, 494 U.S. 872, 877 (1990)).

184. Under the Free Exercise Clause, "government actions coupled with 'official expressions of hostility to religion ... [are] inconsistent with what the Free Exercise Clause requires ... [and] must be set aside.'" *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 690 (9th Cir. 2023) (en banc) (original alteration) (quoting *Masterpiece Cakeshop, Ltd. v. Colorado C. R.*

43

*Comm'n*, 584 U.S. 617, 639 (2018)).

185.  "[I]n cases like that [courts] 'set aside' such policies without further inquiry." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 525 n.1 (2022). "That is because government action motivated by religious animus cannot be narrowly tailored to advance a compelling governmental interest." *Does 1-11 v. Univ. of Colorado*, 100 F.4th 1251, 1269 (10th Cir. 2024) (quotations omitted).

186.  "The constitutional benchmark is 'government *neutrality*,' not 'governmental avoidance of bigotry.'" *Roberts v. Neace*, 958 F.3d 409, 415 (6th Cir. 2020). Thus, it is inappropriate for government officials to describe religious beliefs as a pretextual justification for discrimination, or akin to "slavery" and "the Holocaust." *See Masterpiece Cakeshop*, 584 U.S. at 635-36; *accord Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 541 (1993) (describing religious practice as "an abomination").

187.  And viewing "neutrality" as secularism, and thereby "disqualify[ing]" recipients from a public benefit "solely because they are religious" is also unconstitutional. *Carson v. Makin*, 596 U.S. 767, 785 (2022). The government acts with hostility, not neutrality, when it "endorse[s] the impermissible view 'that religious beliefs cannot legitimately be carried into the public sphere or commercial domain, implying that religious beliefs and persons are less than fully welcome…'" *New Hope Family Services, Inc. v. Poole*, 966 F.3d 145, 168, n.22 (2d Cir. 2020) (quoting *Masterpiece Cakeshop*, 584 U.S. at 634).

188.  Here, Plaintiff Little's religious beliefs preclude him from raising the Progress Pride Flag—either personally or through an agent. They further preclude him from honoring or otherwise expressing support for the Progress Pride Flag, either verbally, through physical gesture, or through physical proximity that would be reasonably understood as endorsement.

189.  Compelling Plaintiff Little to personally raise, ensure raising, maintain, or otherwise affirm the Progress Pride Flag or leave his employment with the Fire

VERIFIED THIRD AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Department is a substantial burden on Plaintiff Little's free exercise of religion.

190. As stated above, after Captain Little was granted a religious accommodation, but prior to June 21, 2023, Lifeguard Division Chief Boiteux and Section Chief Lester conspired to practically defeat Captain Little's religious accommodation by modifying the flagpoles at the Area 17 sites so that they could fly Progress Pride Flags, despite the assignment of Captain Little to that station. This was done out of religious animus.

191. In addition, on June 21, 2023, after Captain Little's religious accommodation was revoked, Section Chief Lester directly ordered Captain Little to raise the Progress Pride Flag that he had lowered. In his words, demeanor, and tone, Section Chief Lester's conduct toward Captain Little in the circumstance was abusive, inappropriate, harassing, and discriminatory. Further, Section Chief Lester's conduct was motivated by animus toward Captain Little's religious beliefs. He acted this way toward Captain Little because of Captain Little's religious beliefs and in retaliation for Captain Little seeking a religious accommodation.

192. At the end of the day on June 21, 2023, Assistant Lifeguard Chief Adam Uehara confirmed the denial of any religious accommodation for Captain Little and denied his right to use his already earned employment benefits, including paid leave, as a means for him to avoid the conflict that would be caused by compelled compliance with EA-231 and violation of his bona fide and sincerely held religious beliefs.

193. In June 22, 2023, Lifeguard Division Chief Fernando Boiteux issued a Direct Order to Captain Little to fly the Progress Pride Flag and ensure that the Progress Pride Flag is flown as instructed in EA-231. When doing so, he told Captain Little that "You need to stop what you are doing," "You are an LA County employee; that's the only thing that matters," and "Your religious beliefs do not matter; you are an LA County employee." He repeated multiple times, "You are an LA County employee" and "Your religious beliefs do not matter" in an instance of religious

45

discrimination combined with physical intimidation.

194.    Lifeguard Chief Boiteux is 6'4" tall and weighs 220 pounds. Captain Little is aware that Chief Boiteux is also trained in martial arts. He delivered his message to Captain Little in a violent and angry manner while standing over Captain Little—who is only 5'9" tall and weighs 150 pounds. Captain Little believes that the specific intent of Chief Boiteux's demeanor was to be physically intimidating.

195.    As a result, the Fire Department's policies must be set aside without further inquiry and not applied to Captain Little.

196.    The Fire Department's policies, and its enforcement of those policies, violates Plaintiff Little's right to free exercise of religion as guaranteed by the First Amendment to the United States Constitution. Plaintiff Little has no adequate remedy at law and will suffer serious and irreparable harm to his constitutional rights unless Defendants are enjoined from implementing and enforcing the Fire Department's policies.

197.    Pursuant to 42 U.S.C. § 1983, Plaintiff Little is entitled to nominal and actual damages, declaratory relief, and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Fire Department's policies.

198.    Plaintiff Little found it necessary to engage the services of private counsel to vindicate his rights under the law. Plaintiff Little is therefore entitled to an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

### SEVENTH CLAIM FOR RELIEF

**Violation of Free Exercise Clause of First Article to California Constitution**

**(By Captain Little Against All Defendants)**

199.    Plaintiff Little incorporates by reference all allegations contained in the preceding paragraphs as though fully set forth herein.

200.    The First Article of the California Constitution provides that "[f]ree exercise and enjoyment of religion without discrimination or preference are

46

guaranteed." Cal. Const. art. I, § 4. This Free Exercise Clause is interpreted using a pre-1990 federal test. *Smith v. Fair Emp. & Hous. Comm'n*, 12 Cal. 4th 1143, 1179 (1996) (plurality); *Valov v. Dep't of Motor Vehicles*, 132 Cal. App. 4th 1113, 1126 & n.7 (2005).

201. Under this standard, there is a simple, "two-fold analysis which calls for a determination of, first, whether the application of the statute imposes any burden upon the free exercise of the defendant's religion, and second, if it does, whether some compelling state interest justifies the infringement." *Montgomery v. Bd. of Ret.*, 33 Cal. App. 3d 447, 451 (1973) (quoting *People v. Woody*, 61 Cal. 2d 716, 719 (1964)).

202. Alternatively, "California case law suggests that analysis of a claim of the constitutional right to the free exercise of religion is generally similar under both federal and state constitutional law." *Vernon v. City of Los Angeles*, 27 F.3d 1385, 1392 (9th Cir. 1994).

203. Here, Plaintiff Little's religious beliefs preclude him from raising the Progress Pride Flag—either personally or through an agent. They further preclude him from honoring or otherwise expressing support for the Progress Pride Flag, either verbally, through physical gesture, or through physical proximity that would be reasonably understood as endorsement.

204. Compelling Plaintiff Little to personally raise, ensure raising, maintain, or otherwise affirm the Progress Pride Flag or leave his employment with the Fire Department is a substantial burden on Plaintiff Little's free exercise of religion.

205. For the exact same reasons as stated in the preceding allegations regarding the Sixth Claim for Relief, the Fire Department has discriminated against Plaintiff Little.

206. As a result, the Fire Department's policies must meet strict scrutiny and/or should be set aside without further inquiry. But the Fire Department has no compelling interest in requiring Plaintiff Little to raise the Progress Pride Flag, and requiring him to do so is not the least restrictive means of achieving any such interest.

VERIFIED THIRD AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

207.   The Fire Department's policies, and its enforcement of those policies, violates Plaintiff Little's right to free exercise of religion as guaranteed by the First Article of the California Constitution. Plaintiff Little has no adequate remedy at law and will suffer serious and irreparable harm to his constitutional rights unless Defendants are enjoined from implementing and enforcing the Fire Department's policies.

208.   Plaintiff Little is entitled to nominal and actual damages, declaratory relief, and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Fire Department's policies.

209.   Plaintiff Little found it necessary to engage the services of private counsel to vindicate his rights under the law. Plaintiff Little is therefore entitled to an award of attorneys' fees pursuant to Cal. Civ. Proc. Code § 1021.5.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Captain Jeffrey Little prays for the following relief, as allowed by each of the above-stated causes of action:

1.   For an award of compensatory damages proximately caused by Defendants' discriminatory and retaliatory conduct, including for past pecuniary loss, future pecuniary loss, and nonpecuniary loss. Compensatory damages should include, but not be limited to:

 A.   An award of damages of back pay, including all forms of compensation (wages and benefits) that Plaintiff would have earned from Defendants from June 20, 2023, until the date of trial.

 B.   An award of damages for future salary (if reinstatement is not ordered), benefits and bonuses, and other forms of compensation that Defendants would have paid to Plaintiff but for the wrongful conduct of Defendants, in an amount according to proof at trial.

 C.   For an award of damages for Plaintiff's severe emotional distress, in an amount according to proof at trial.

VERIFIED THIRD AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

2.     For an order that Defendants are to reinstate Plaintiff to his background investigation role, with any raises and promotions that Plaintiff should have received but for Defendants' discrimination and retaliation against Plaintiff.

3.     For an order that Defendants are to grant Plaintiff a standing exemption from raising or flying the Progress Pride Flag from any work site, or ordering others to do so, or otherwise maintain the flag, no renewal required, whether in the month of June or in another month, for the entirety of his employment by Defendants.

4.     For an order that Defendants are to withdraw from Plaintiff's personnel file all negative material that might impact performance reviews, promotions, career progression, or the like.

5.     For an award of punitive damages or other penalties recoverable by law.

6.     For an order and judgment declaring that Defendants' policies, as applied to Plaintiff, violate the First Amendment to the U.S. Constitution and First Article of the California Constitution.

7.     For an order temporarily, preliminarily, and permanently enjoining and prohibiting Defendants from enforcing their unlawful policies against Plaintiff, and from engaging in any practices or conduct that chills Plaintiff's free exercise of religion.

8.     For an award of reasonable attorneys' fees and costs pursuant to all applicable statutes or legal principles, including 42 U.S.C. § 2000e-5(k), Cal. Gov. Code § 12965(c)(6), and Cal. Civ. Proc. Code § 1021.5.

9.     For orders requiring senior management of the Department, including but not limited to Fernando Boiteux, Adam Uehara, and Arthur Lester, to enroll in and complete certain EEOC and Fair Treatment classes, including the following: SHRM: US Employment Law and Compliance, a 5-week live online program; SHRM: Creating an Inclusive Workplace, eLearning; Harassment and Diversity: Respecting Differences, Managers Version, DVD Learning; SHRM: Employee Relations: Creating a Positive Work Environment, two-week Live Online Program; SHRM:

VERIFIED THIRD AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Employment Laws: What Supervisors Need to Know - Corporate, eLearning.

10.   For any other relief that is just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all triable issues.

LiMANDRI & JONNA LLP

Dated: October 21, 2025          By: _____

Charles S. LiMandri
Paul M. Jonna
Jeffrey M. Trissell
Robert E. Weisenburger
Joshua A. Youngkin
Attorneys for Plaintiff
*Captain Jeffrey Little*

VERIFIED THIRD AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

## VERIFICATION OF CAPTAIN JEFFREY LITTLE

I, Jeffrey Little, am a plaintiff in this action. I have read the above Verified Third Amended Complaint and know its contents. The information supplied in the foregoing is based on my own personal knowledge or has been supplied by my attorneys or other agents or compiled from available documents. The information in the foregoing document is true to the extent of my personal knowledge. As to the information provided by my attorneys or other agents or compiled from available documents, including all contentions and opinions, I do not have personal knowledge but made a reasonable and good faith effort to obtain the information by inquiry to other natural persons or organizations, and believe it is true.

Thus, I am informed and believe that the matters stated in the foregoing document are true and on that ground certify or declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed this 21st day of October 2025, at Los Angeles County, California.

_____
Jeffrey Little

---

51

**EXHIBIT 1**



# 2021

# County of Los Angeles Fire Department
# ANNUAL REPORT





**CARING • COMMITMENT • COMMUNITY • COURAGE • INTEGRITY • TEAMWORK**

# MESSAGE FROM FIRE CHIEF DARYL L. OSBY



The Los Angeles County Fire Department (Fire Department) takes pride in providing fire protection and life safety services 24/7 to over four million residents within our jurisdiction of 60 cities and all unincorporated areas of the County of Los Angeles (County).

As the communities we serve grow and diversify, our County continues to keep up and adjust with changing demands and needs. Together, with the Board of Supervisors, Chief Executive Office, and other County Departments, we partner and collaborate on the many challenging issues confronting our communities (i.e., epidemics, homelessness, mental health, youth programs, etc.).

This Annual Report reflects the many accomplishments, incidents, and programs our Fire Department and its team members have initiated, responded to, or been actively involved with in 2021. This Annual Report documents not only our achievements and successes but also showcases the short and long-term challenges we have overcome and continue to work through.

As you review this Annual Report, I hope you consider the critical role our team members play in the success of our Fire Department and how valuable they are in completing our daily mission. Our Fire Department is built upon our core values and the people who exemplify them every day.

Daryl L. Osby
Los Angeles County Fire Chief



## COUNTY OF LOS ANGELES BOARD OF SUPERVISORS
### Kenneth Hahn Hall of Administration



**HOLLY J. MITCHELL**
*Chair, Second District*



**HILDA L. SOLIS**
*Supervisor, First District*



**SHEILA KUEHL**
*Supervisor, Third District*



**JANICE HAHN**
*Supervisor, Fourth District*



**KATHRYN BARGER**
*Supervisor, Fifth District*

# TABLE OF CONTENTS

About Us . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Organizational Chart . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Highlights and Accomplishments . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

COVID-19 Response . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Resources and Service Area . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Call Volume . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Budget . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Strategic Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Emergency Operations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

2021 Emergency Operations Incidents . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

Executive Office, Leadership & Professional Standards Bureau, and Business Operations . . . 14, 15

Public Education Programs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Career Pathways Programs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Investing in Our Future . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

Informing Our Community . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

# ABOUT THE LOS ANGELES COUNTY FIRE DEPARTMENT

**HISTORY & ABOUT US**

## HISTORY

In 1949, the Consolidated Fire Protection District was established by the Board of Supervisors through the consolidation of numerous fire districts which existed since the 1920s. From 1967 to 1986, there existed four fire protection districts within the Los Angeles County, all of which were governed by the Board of Supervisors: the Consolidated Fire Protection District (CFPD), Universal Fire Protection District, Dominguez Fire Protection District, and Wrightwood Fire Protection District. In addition, there was the Forester and Fire Warden (F&FW) which is a chartered office of the County and was funded by the General Fund. The property tax rate for each district was considerably different.

With the property tax limitations and standardization of tax rates established by Proposition 13 in 1978, there was no longer a need to maintain the separate districts. From 1986 to 1992, the F&FW and the CFPD were the two remaining legal entities that made up what is commonly known as the Los Angeles County Fire Department. In 1992, the CFPD annexed all the remaining unincorporated area in with a corresponding property tax transfer to fulfill the chartered responsibilities of the F&FW.

The Los Angeles County Fire Department has a very rich and unique history, which is full of innovation, and daring accomplishments. From designing the 9-1-1 system and initiating a paramedic program in the 1970's to the current day Urban Search and Rescue and Homeland Security Sections, our Fire Department is a leader and model to fire departments around the world. Our Department's ability to develop new techniques and tactics to fight fires of all kinds has benefited not only the residents we serve, but the fire service in general, both nationally and internationally.

## ABOUT US

The Los Angeles County Fire Department (Fire Department) is responsible for protecting the lives and property of 4.0 plus million residents living in 1.25 million housing units in 60 cities and the unincorporated areas of the County, along with the City of La Habra located in Orange County. The Fire Department's service area includes suburban neighborhoods, city centers, commercial districts, sandy beaches, mountain ranges, and more.

There are 5,000 personnel working within the Fire Department's emergency and business operations bureaus, including firefighters, dispatchers, lifeguards, nurses, and administrative support.

## OUR MISSION

To protect lives, the environment and property by providing prompt, skillful, and cost-effective fire protection and life safety services.

## OUR VISION

The Los Angeles County Fire Department will be an exemplary organization acclaimed for our national reputation, our regional strength, and our hometown attentiveness as we provide fire protection and life safety services.

## OUR CORE VALUES

CARING · COMMITMENT · COMMUNITY · COURAGE · INTEGRITY · TEAMWORK

2 | LOS ANGELES COUNTY FIRE DEPARTMENT

# ORGANIZATIONAL CHART



# 2021 HIGHLIGHTS & ACCOMPLISHMENTS

## ADVANCED PROVIDER RESPONSE UNIT

The Fire Department's Advanced Provider Response Unit (APRU) program was launched in 2019 to streamline and enhance emergency medical services (EMS) in the community.

Comprised of a nurse practitioner and a firefighter/paramedic, the APRU responds to 9-1-1 calls for low-to-medium acuity patients (e.g., prescription assistance, pain management, wound care, nausea, etc.), so paramedic units remain available to attend to more severe cases that require specialty skills and ambulance transport to the hospital emergency room (ER).



Since 2019, APRU teams have successfully cared for more than 2,000 patients.  Currently, the APRU program operates every day in the Antelope Valley (AP-11) from 8:00 a.m. – 6:00 p.m.  Through the American Rescue Plan Act, the Fire Department plans to continue the program for another three years and implement two additional units.  The Fire Department is working with the Los Angeles County (County) Chief Executive Office to determine the best locations to base the expansion units.



## SIRENS OF SILENCE

For some children with autism spectrum disorder (ASD), lights and sirens become sensory overload and overwhelming. Individuals with ASD are each unique and have a range of challenges, including communication and social skills. Some may be limited in verbal communication or nonverbal which accounts for nearly one-third of people with autism.

To help familiarize and expose individuals with ASD to first responders, the Fire Department's Sirens of Silence program works with local organizations, so children with ASD and their parents/caregivers can meet firefighters and lifeguards and see/touch the equipment and apparatus in a quiet, less stimulating setting.

## BOEING CH-47/QRF PROGRAM



Millions of residents in Southern Californina are among the most vulnerable living within wildfire-prone areas.  Extreme drought conditions and dry vegetation, along with predictions of a dire wildfire season ahead, led to the annual 180-day lease of a Boeing Chinook helicopter in June of 2021 with funding from Southern California Edison assembled. Considered the world's largest fire suppression, retardant-dropping helicopter, the Boeing Chinook helitanker (CH-47), housed at the Van Nuys Tanker base, the capacity to carry 3,000 gallons and can fly not only during the day but also for night-time operations.

The CH-47 enhances the Fire Department's current air operations fleet which includes five Sikorsky S70 Firehawks, five Bell 412 helicopters, and a seasonal exclusive contract with the Government of Quebec for the 90-day lease of two CL-415 SuperScoopers which arrive annually in late summer.

# COVID-19 RESPONSE



Without a doubt, 2020 and 2021 were unprecedented years and the Fire Department adapted and navigated through the COVID-19 pandemic. At the start of the pandemic, the Fire Department took a lead role and remained in constant communication, monitoring COVID-19 with our County partners, including the Departments of Public Health and Health Services. While the world faced a global health emergency, the Fire Department continued to serve the communities and residents in its care without skipping a beat.

## PERSONAL PROTECTIVE EQUIPMENT

Immediately, as the Countywide lead, Fire Department team members were responsible for sourcing personal protective equipment (PPE). It was a major undertaking to secure PPE from the State and national stockpile, house, and distribute over 15 million pieces of PPE to the entire County workforce.

## MEGA TESTING & VACCINATION SITES

The Fire Department served as the lead in standing up and running the County's more than 30 mega-testing testing sites during March through May of 2020. In January 2021, the Fire Department partnered with the Department of Public Health to run five mega pods and two walk-up sites for vaccine administration. In total, we administered more than 1.1 million vaccinations by the time we concluded our involvement in May 2021.



### HEALTH PROGRAMS OFFICE

More than 2,600 Fire Department personnel have been diagnosed with COVID-19 since the beginning of the pandemic. Dozens have been hospitalized and, thankfully, there are no deaths among our personnel.

Our Health Programs Office, which once comprised of one nurse who made sure that all of our personnel had their vaccinations, was built out in March 2020 to handle the predicted surge of cases within the Fire Department. To date, the Health Programs Office has triaged thousands of COVID-19 exposures, performed more than 15,000 COVID-19 tests for our personnel, and vaccinated our personnel.

## PROJECT ROOM KEY

The Fire Department also lent assistance to the Los Angeles Homeless Services Authority with Project Room Key. We assisted in the placement of more than 2,300 individuals in over 30 hotel sites Countywide.

## QUARANTINE AND ISOLATION SHELTER PROJECT

The Fire Department also lent assistance to Health Services with the Quarantine and Isolation (QI) Shelter Project. We assisted in the establishment of five QI shelters throughout the County along with the demobilization process to combine sites and preplan for three additional QI sites on County property.



## OPERATIONS MULTI-AGENCY COORDINATION SYSTEM

The Operations Multi-Agency Coordination System (OPMACS) is a collaborative of the Region 1 Fire Departments in the Los Angeles area with local health agencies and partners to put together tools and assist agencies in strategically planning the COVID-19 pandemic response. Weekly meetings and daily data collections from the respective agencies provided real-time information for decisions to be made that ensured emergency services were not impacted.

RESOURCES & SERVICE AREA

## FIRE & RESCUE RESOURCES

- Nearly 3,000 fire series personnel
- 177 fire stations
- 228 engine companies
- 112 paramedic units

- 61 engines
- 33 truck companies
- 22 battalions
- 10 helicopters



## SPECIALIZED RESOURCES

- 4 hazardous materials squads
- 2 urban search and rescue squads

- 6 swift water rescue units
- 2 fire boats
- Additional specialized equipment

The Fire Department is also the home of California Task Force 2 (also known as USA Task Force 2), an urban search and rescue team that is qualified to respond to local, national, and international disasters.

## TODAY'S SERVICE AREA

Today, the Fire Department serves all the 140 unincorporated areas within th County, as well as the following 60 incorporated cities, 59 of which are in Los Angeles County and one in Orange County.

| | | |
|---|---|---|
| Agoura Hills | Hawaiian Gardens | Palmdale |
| Artesia | Hawthorne | Palos Verdes Estates |
| Azusa | Hermosa Beach | Paramount |
| Baldwin Park | Hidden Hills | Pico Rivera |
| Bell | Huntington Park | Pomona |
| Bellflower | Industry | Rancho Palos Verdes |
| Bell Gardens | Inglewood | Rolling Hills |
| Bradbury | Irwindale | Rolling Hills Estates |
| Calabasas | La Cañada Flintridge | Rosemead |
| Carson | La Habra | San Dimas |
| Cerritos | La Mirada | Santa Clarita |
| Claremont | La Puente | Signal Hill |
| Commerce | Lakewood | South El Monte |
| Covina | Lancaster | South Gate |
| Cudahy | Lawndale | Temple City |
| Diamond Bar | Lomita | Vernon |
| Duarte | Lynwood | Walnut |
| El Monte | Malibu | West Hollywood |
| Gardena | Maywood | Westlake Village |
| Glendora | Norwalk | Whittier |

# 2021 CALL VOLUME



**EMS**
**312,550 calls**
77%

**Fire**
**11,373 calls**
3%

**Miscellaneous**
**63,702 calls**
16%

**False Alarms**
**13,478 calls**
3.3%

**Mutual Aid**
**2,144 calls**
0.5%

**Hazardous Materials**
**677 calls**
0.2%

**2021 TOTAL**
**403,924**
**INCIDENTS**

## 2021 BUSIEST UNITS

- Engine 18 (Lennox) responded to 3,977 incidents.
- Engine 33 (Lancaster) responded to 3,015 incidents.
- Engine and Squad 14 (Los Angeles) responded to 1,936 incidents.
- Engine and Squad 41 (Los Angeles) responded to 1,927 incidents.
- Engine and Squad 37 (Palmdale) responded to 1,708 Incidents.

## RESPONSE TOTALS

|  | 2019 | 2020 | 2021 |
|---|---|---|---|
| EMS | 333,973 | 307,025 | 312,550 |
| Fire | 7,114 | 9,813 | 11,373 |
| Mutual Aid | 2,164 | 2,066 | 2,144 |
| Miscellaneous | 22,119 | 39,747 | 63,702 |
| Hazardous Materials | 662 | 629 | 677 |
| False Alarms | 26,954 | 20,237 | 13,478 |
| **Totals** | **392,986** | **379,517** | **403,924** |

# BUDGET

The Fire Department is a special district.
Revenue streams are separate and distinct from the County General Fund.
*Adopted Budget for 2020–21: $1.413 Billion*

## EXPENDITURES



Overtime
**$202.72 million**
**14.07%**

Other Charges
**$30.13 million**
**2.09%**

Appropriation for Contingencies
**$22.02 million**
**1.53%**

Salaries & Employee Benefits
**$998.90 million**
**69.35%**

Capital Assets
**$3.33 million**
**0.23%**

Services & Supplies
**170.99 million**
**11.87%**

TOTAL EXPENDITURES
**$1.440 BILLION**

Other Financing Uses
**$12.32 million**
**0.86%**

## REVENUES

Property Taxes
**$929.05 million**
**6 .50%**

Prop. E Tax
**$89.45 million**
**0.2 %**

Fee-For-Service Cities
**$173.01 million**
**12.01%**

Other*
**$201.57 million**
**13.99%**

TOTAL REVENUES
**$1.379 BILLION**

Prop. E Tax
**$47.33 million**
**3.29%**

*Other (Description/Millions):
Lifeguards $40.6
Measure B $3.87
CDCR $4.85
AB109 $4.58
Federal Grants $21.36
Advanced Life Support $18.94
Assistance by Hire $17.17
SRA/Graybook $28.82
HHMD $27.39
Prevention $7.99
Miscellaneous $25.99

# 2016-2021 LOS ANGELES COUNTY STRATEGIC PLAN

In April 2016, the Chief Executive Office issued a report called *(Driving Transformative Change in Los Angeles County)*.  This report traced the path of Board Priorities and identified certain critical steps to continue moving forward in addressing some of the County's most critical challenges.

In that report, the CEO pointed out the following:

- As the Board continues to drive policy focused on addressing our most challenging social problems, and the Departments work to meet their respective and diverse missions, the CEO needs a mechanism to ensure that the efforts of County Departments are aligned with Board priorities in a way that increases the County's chances of successfully impacting the lives of children, adults, families and business of Los Angeles County.

- That mechanism is a strategic plan - a plan that provides direction to Departments and their partners and a measurement plan to track both performance and outcomes.

| **GOAL I**<br>Make Investments that<br>Transform Lives | **GOAL II**<br>Foster Vibrant and<br>Resilient Communities | **GOAL III**<br>Realize Tomorrow's<br>Government Today |
|---|---|---|

# 2017-2021 FIRE DEPARTMENT STRATEGIC PLAN

The Fire Department's Strategic Plan is the result of a collaborative effort between my Executive Team and over 40 managers from throughout the Fire Department.  It closely aligns with the 2016-2021 County of Los Angeles Strategic Plan, *Creating Connections: People, Communities, and Government*, and the Board's priorities.

The Strategic Plan serves as our road map with a focus on the most important challenges and opportunities before us.  The Strategic Plan is reviewed regularly to ensure our goals and priorities lead to measurable action and results.





ACT.
ACTION.
ACCOMPLISH.

**GOAL I**
**EMERGENCY OPERATIONS**
*Address Societal Challenges Through Non-Traditional Service Delivery*

**GOAL II**
**PUBLIC SERVICE**
*Catastrophic Preparedness and Community Initiatives*

**GOAL III**
**ORGANIZATIONAL EFFECTIVENESS**
*Building Tomorrow's Fire Department*

COUNTY & FIRE DEPARTMENT STRATEGIC PLAN

## EMERGENCY OPERATIONS

The Emergency Operations Bureau includes the Training and EMS Bureau (TEMSB), nine major firefighting divisions, Air and Wildland Division, and Homeland Security Section. The Fire Department's service area includes suburban neighborhoods, city centers, commercial district, sandy beaches, mountain ranges, and more.  The region's varying terrain causes unique emergency incident challenges, including increased EMS calls and variety of fires that can take place on a single day (i.e., wildland, structure, railroad, aircraft, vehicle, etc.) as well as ocean rescues and medical calls across 72 miles of coastline.

## TRAINING AND EMERGENCY MEDICAL SERVICES BUREAU

The TEMSB consists of medical professionals and the Training Services Division.  EMS personnel are responsible for paramedic training, certification, equipment, quality improvement, and legal aspects for all basic and advanced emergency medical services provided by the Fire Department.  Training Services is responsible for training all new firefighters and conducting ongoing in-service training sessions for all members. Training Services develops training materials, and organizes classes and training programs for recruits and refresher courses for other Fire Departmental personnel.

  

### *LIFEGUARD DIVISION*

The Lifeguard Division protects 72 miles of coastline, including 31 miles of sandy beaches and Catalina Island.  Lifeguard resources include, 174 full-time ocean lifeguards, 614 recurrent ocean lifeguards, 24 lifeguard stations, 159 lifeguard tower, and 8 rescue boats.

### 2020-2021 Lifeguard Division Activity

| | |
|---|---:|
| Ocean rescues | 9,286 |
| Medical calls | 13,303 |
| Boat rescues (distress) | 435 |
| Missing persons | 634 |
| Therapy | 112 |
| Drownings | 3 |
| Beach attendance | 51,869,968 |

### *HOMELAND SECURITY SECTION*

The Fire Department has a very engaged Homeland Security team that works with numerous local, State, and federal agencies and governments to ensure the safety, security, and resilience of the County against terrorism and other all-risk hazards.

**EMERGENCY OPERATIONS**

## AIR & WILDLAND DIVISION: AIR OPS, TECH OPS, AND FIRE CAMPS

### AIR OPERATIONS SECTION

The Fire Department maintains a fleet of ten helicopters for paramedic transport, hoist rescues, and wildland firefighting. Contract aircraft are also available during wildfire season.

- 5 Sikorsky S-70 Firehawks
- 5 Bell 412 helicopters

- 2 Bombardier CL-415 SuperScoopers (seasonal lease)

- Chinook Helicopter CH-47 (Helitanker 55) Type 1 (seasonal lease)

### TECHNICAL OPERATIONS SECTION

The Technical Operations Section is a functional division within the Fire Department that focuses on technical rescue disaster response and urban search and rescue training. Additionally, the Fire Department has a cooperative agreement with the Federal Emergency Management Agency (FEMA) where our team is designated as California Task Force 2. CA-TF2 has the responsibility to respond to domestic disasters, providing search and rescue capabilities when called upon.



The Fire Department also has a cooperative agreement with the United States Agency of International Development (USAID) where our team is designated as USA-2. USA-2 has the responsibility to respond to all international disasters with search and rescue capabilities when called upon. The national and international USAR deployments are performed in addition to the Fire Department's state and regional responsibilities for providing search and rescue services.

Locally, in the County, we have Fire Station 103 and Fire Station 136 that are dedicated urban search and rescue stations for response and mitigation of all technical rescues.

### FIRE SUPPRESSION CAMPS

Nine camps are staffed year-round for fire suppression, fire road maintenance, fuel modification, and miscellaneous projects.

EMERGENCY OPERATIONS

2021 EMERGENCY OPERATIONS INCIDENTS



# 2021 EMERGENCY OPERATIONS

## HOOPER INCIDENT (2/6/21)

Firefighters responded to a two-story commercial structure fire on East Slauson Avenue in the community of Florence. Second and third alarm resources were requested for defensive fire attack. The fire was knocked down with no injuries.

## DUNCAN INCIDENT (3/11/2021)

Firefighters responded to a vacant one-story commercial structure fire on East Olympic Blvd in East Los Angeles. Firefighters initiated a defensive fire attack and knocked down the fire with no reported injuries.

## ALAMEDA INCIDENT (3/31/21)

At the request of the Compton Fire Department, firefighters were dispatched to an industrial complex fire on North Rose Avenue in the City of Compton. The large pallet yard fire extended to nearby homes, destroying three and causing damage to a fourth home. There were no reported injuries.

## NORTH INCIDENT (4/28/21)

Firefighters responded to a brush fire near The Old Road in Castaic and initiated fire attack from the air and ground. The wildfire burned for four days and consumed 650 acres, prompting voluntary evacuations for nearby residents. There was no damage to structures and no reported injuries.

## DELTA INCIDENT (5/2/21)

Firefighters responded to a second-alarm wildfire burning in medium brush near West Avenue D in the City of Lancaster. The wildfire burned approximately 400 acres and prompted the evacuation of 16 homes. There was no damage to structures and no reported injuries.

## PALISADES FIRE (5/14/2021)

At the request of the Los Angeles Fire Department (LAFD), firefighters responded to a wildfire in Pacific Palisades. On May 15th, we entered into unified command with the LAFD when the wildfire crossed the County line. Mandatory evacuations affected over 1,000 residents. The wildfire burned approximately 1,200 acres. One firefighter sustained a minor injury.

# 2021 EMERGENCY OPERATIONS

## SALT INCIDENT (5/31/21)

Firefighters responded to a one-story commercial structure fire located on East Gage Avenue in the City of Huntington Park with heavy smoke and fire showing. Second and third alarm resources were requested by the incident commander for defensive fire attack. One firefighter sustained a minor injury.

## WILLOW INCIDENT (7/16/21)

Firefighters responded to a report of a hazardous materials incident with a fire, involving a truck carrying approximately 7,500 pounds of chlorine tablets and liquid. Residents and businesses were evacuated within a two-block radius of the incident on East Willow Street in the City of Signal Hill. There were no reported injuries.

## NORTHERN CALIFORNIA WILDFIRES (AUGUST 2021)

In mid-August, firefighters were deployed to multiple wildfires ravaging Northern California and the Pacific Northwest. Engine strike teams as well as numerous aerial assets, overhead, and hand crews responded to aid in the crisis. Our 9-1-1 dispatchers also staffed Region I to fulfill mutual aid requests.

## AVALON INCIDENT (9/30/21)

Firefighters responded to a one-story commercial structure fire with heavy smoke billowing into the sky on South Avalon Boulevard in the City of Carson. Second and third alarm resources were requested for a coordinated defensive fire attack. There were no reported injuries.

## IBBETSON INCIDENT (11/9/21)

Firefighters responded to a two-story commercial structure fire with heavy smoke and flames on Ibbetson Avenue in the City of Bellflower. The incident commander called for second and third alarm resources to assist with a defensive fire attack. The fire was knocked down with no reported injuries.

## DALEWOOD INCIDENT (11/9/21)

Firefighters responded to a commercial structure fire on Dalewood Street in the City of Baldwin Park. The incident commander called for a second and third alarm resource assignment to assist with defensive fire attack. The fire was knocked down with no reported injuries.



# EXECUTIVE OFFICE AND LEADERSHIP & PROFESSIONAL STANDARDS BUREAU

The Executive Office and Leadership and Professional Standards Bureau oversight includes public information and community outreach, risk management, organizational development, internal and external communications, strategic planning, leadership and career development, employee wellness, succession planning, compliance, and employee relations.

## BUSINESS OPERATIONS



Business Operations oversight includes 9-1-1 dispatch and field communications, recruitment, information management, fleet maintenance, construction and maintenance, procurement, finance, and human resources. Prevention services encompass hazards mitigation and specialized inspections, including plan check reviews, fire code and brush clearance enforcement, health hazardous materials, fire investigations, vegetation management, and natural resources protection.

### CORDI SECTION

Known as the Community Outreach, Recruitment, Diversity, and Inclusion Section, CORDI supports the Fire Department's mission to cultivate a workforce that represents the diverse communities we serve and creates a more inclusive environment for all of our members.

## ADMINISTRATIVE SERVICES BUREAU



The Administrative Services Bureau oversees the Fire Department's $1.4 billion budget and provides executive oversight of the Financial Management, Human Resources, Information Management, and Materials Management Divisions.  Together they work closely with internal and external stakeholders to improve standard business practices, ensure administrative and fiscal compliance, and provide purchasing and contracting services.

## SPECIAL SERVICES BUREAU

### COMMAND AND CONTROL DIVISION

Nearly 100 dispatchers answer hundreds of thousands of 9-1-1 calls and dispatch units to approximately 400,000 incidents annually.

### FLEET SERVICES DIVISION

Over 50 mechanics and administrative staff maintain and repair about 2,000 fleet assets.

### CONSTRUCTION & MAINTENANCE DIVISION

The Construction and Maintenance Division employs a variety of staff — including project managers, building trades, general maintenance workers, and administrative team members — who are responsible for new construction, repair work, and alterations to fire stations, administrative locations, fire suppression camps, training centers, and lifeguard facilities.  In total, the Construction and Maintenance Division maintains more than 245 sites, amounting to nearly two million square feet.

# PREVENTION SERVICES BUREAU

## FORESTRY DIVISION

The Forestry Division is comprised of environmental professionals who deliver high quality fire prevention services to homeowners and public agency stakeholders, and assists Emergency Operations with logistical support.  As the Fire Department's leader on environmental issues, it researches and develops solutions to emerging environmental problems, using innovative information technology.  Made up of three sections, the Forestry Division's overall responsibilities, as defined in the County Charter, include forest and natural resource management, fire prevention, environmental review, pre-fire planning, and public education.

## HEALTH HAZARDOUS MATERIALS DIVISION

The Certified Unified Program Agency (CUPA) is a fee offset program that protects public health and the environment from improper handling, storage, and disposal of hazardous materials.  Under state law, the Health Hazardous Materials Division (HHMD)/CUPA consolidates, coordinates, and maintains consistency of administrative requirements, permits, inspections, and enforcement activities for six environmental regulatory programs.  These six programs are Hazardous Waste Generators, Hazardous Materials Handlers, Uniform Fire Code Hazardous Materials Management Plans, California Accidental Release Prevention, Aboveground Petroleum Storage Act, and Underground Storage Tanks.

## FIRE PREVENTION DIVISION

The mission of the Fire Prevention Division is to educate the community about the benefits of proper safety practices and to identify and eliminate all types of hazardous conditions that pose a threat to life, property, and the environment.  The Division is comprised of a mix of civilian and sworn personnel.  The Fire Prevention Division completes a wide variety of inspections.  These include land entitlement, new construction, commercial and industrial facilities, schools and institutions, and specialized inspections related to film permits.   Specialized functions include: land development services; Inspection of schools, institutions, high-rise buildings, County facilities; and arson investigations.

## ARSON UNIT 2021 YEAR IN REVIEW

| Month | Call-Outs |
|-------|-----------|
| JAN | 23 |
| FEB | 17 |
| MAR | 30 |
| APR | 21 |
| MAY | 34 |
| JUN | 23 |
| JUL | 23 |
| AUG | 28 |
| SEP | 25 |
| OCT | 31 |
| NOV | 29 |
| DEC | 15 |

# PUBLIC EDUCATION PROGRAMS

## READY! SET! GO!

The Fire Department, along with our partnering agencies, stand ready to respond to contain wildfires, utilizing our firefighting resources from the air and ground to help protect residents and property from wildfires.



The Ready! Set! Go! program is designed to provide residents with critical information on creating defensible space around their home, retrofitting their home with fire-resistant materials, and preparing residents to safely evacuate well ahead of a wildfire. We encourage residents to protect their families, and property from a devastating wildfire by taking the time to learn about Ready! Set! Go!



## FAMILY INSTRUCTIONS FOR RAPID ESCAPE (F.I.R.E.) GUIDE & COLORING BOOK

If there was a fire in your home, would you know the best way to escape? In most house or apartment fires, a properly prepared or maintained window can provide the quickest, safest, and most immediate way out.

We encourage families to review the (F.I.R.E) guide and coloring book to help you make your home fire ready, and learn how to safely escape.

## COMMUNITY EMERGENCY RESPONSE TRAINING (CERT)



The Fire Department offers free CERT classes taught by trained and certified firefighters. Learn from the experts about how to prepare for a major disaster.  Once the CERT course is completed, individuals will have the skills and tools necessary to take care of themselves, their families, neighbors, and co-workers in the event of a disaster.



## SIRENS OF SILENCE

For some children with autism spectrum disorder (ASD), lights and sirens become sensory overload and overwhelming. Individuals with ASD are each unique and have a range of challenges, including communication and social skills. Some may be limited in verbal communication or nonverbal which accounts for nearly one-third of people with autism.  To help familiarize and expose individuals with ASD to first responders, the Fire Department created the Sirens of Silence program to partner with local organizations, so children with ASD and their parents/caregivers can meet firefighters and lifeguards and see/touch equipment and apparatus in a quiet, less stimulating setting.

Sirens of Silence consists of three components: education and awareness for the Fire Department's first responders; special needs-friendly events; and safety-related items.

# CAREER PATHWAYS PROGRAMS



## EXPLORER PROGRAM

The Fire Department's Explorer Program introduces the youth of the County to today's fire and emergency medical services, emphasizing community service and civic involvement through positive mentoring, training, education, and career development.

## WOMEN'S FIRE PREP ACADEMY

The Women's Fire Prep Academy (WFPA) was developed in collaboration with the Los Angeles County Women's Fire League, to expose adults 18 years and older to the duties and detailed responsibilities of the firefighter position and what to expect in the Fire Department's Recruit Academy.





## GIRLS' FIRE CAMP

The Girls' Fire Camp was created to introduce youth, between the ages of 10 to 17 years old, to the career opportunities available within the Fire Department. This one-day camp allows participants to learn the basics of firefighting and gain valuable hands-on experience.

## JUNIOR LIFEGUARD PROGRAM

Open to children (ages 9 to 17), the mission of the Fire Department's Junior Lifeguard Program is to educate participants about ocean and beach safety, physical conditioning, basic first aid, and environmental awareness while developing the next generation of lifeguards and future leaders.





## BOOTS-TO-BADGES

The Fire Department's Boots-to-Badges Program is designed for active duty military, reservists, and veterans who wish to explore and/or pursue a career in the fire service. This program provides participants with a potential career and the essential knowledge, skills and abilities to help prepare them for the Fire Department.

# INVESTING IN OUR FUTURE

The Fire Department consistently aims to recruit, train, and hire individuals that uphold the standards of excellence in the fire service and exemplify our core values (caring, commitment, community, courage, integrity, and teamwork), while reflecting the vast and varied communities in our care.  Although COVID-19 presented significant challenges for training, the Fire Department was able to overcome these challenges and provided employees with the tools, training, and processes needed to fulfill its life-saving mission.

## RECRUIT TRAINING

Through the demonstrated use of technology, innovative strategies, and fostering of workforce inclusivity and diversity, the Fire Department successfully graduated five recruit training classes in 2021.  These newly hired firefighters continually step up, demonstrating grit, resilience, and self-mastery of their skill set.

### 2021 RECRUIT CLASSES

| | |
|---|---|
| Recruit Class 161 | 46 |
| Recruit Class 162 | 44 |
| Recruit Class 163 | 43 |
| Recruit Class 164 | 37 |
| Recruit Class 165 | 39 |
| **TOTAL:** | **209** |

## FIRE CAMPS TRAINING

In 2021, the Fire Department graduated three fire suppression aid academies.  A total of 80 fire suppression aids successfully completed their respective four-week academies, well-prepared for fire suppression, fire road maintenance, and miscellaneous projects.

Within the Fire Camps, weekly and monthly training took place, including wildland power saws, fine fuel line construction, heavy fuel line construction, mop-u standards, EMS training, tree falling certification, EVOC driver training, power equipment training, and ignitions training.

### 2021 FIRE SUPPRESSION AID ACADEMIES

| | |
|---|---|
| Fire Suppression Aid Academy 82 | 27 |
| Fire Suppression Aid Academy 83 | 23 |
| Fire Suppression Aid Academy 84 | 30 |
| **TOTAL:** | **80** |

## LIFEGUARD TRAINING

Two Fire Department lifeguard academies took place in 2021.  Each 140-hour training academy was held over seven consecutive weekends during the COVID-19 pandemic.  A total of 33 lifeguards completed and graduated from the academies, ready to begin their assignments as ocean lifeguard recurrents.

In addition to the two Fire Department lifeguard academies, permanent lifeguards also participated in winter EMS and ocean rescue certification training, and marine firefighting and rescue boat operations training in the fall.

  

## IN-SERVICE TRAINING

Throughout 2021, newly promoted firefighters specialists, fire captains, battalion chiefs, and assistant fire chiefs completed their respective week-long, 40-hour academy. The academies provide newly promoted fire series personnel with leadership training; classroom lectures on wildland incident operations, and other fundamental skills needed in their new roles.

## ADDITIONAL IN-SERVICE TRAINING:

- Specialized dive rescue training with the Lifeguard Division and USAR team (25 participants from across the U.S.)

- Basement firefighting (80 participants from across the U.S.)

- Nozzle forward class (80 participants from across the U.S.)

- Regional hazardous materials and USAR training, along with multi-disciplinary training with law enforcement, the National Guard, and U.S. Army

### 2021 ACADEMIES

| | |
|---|---|
| Fire fighter Specialist Academy | 98 |
| Fire Captain Academy | 81 |
| Battalion Chief Academy | 7 |
| Assistant Fire Chief Academy | 9 |
| **TOTAL:** | **195** |















INVESTING IN OUR FUTURE

# INFORMING OUR COMMUNITY

With the COVID-19 pandemic continuing into 2021, many of the Fire Department's public education and community outreach activities were temporarily paused and successfully transitioned to web and social media outreach. Through the Public Information Office and Communications Section team, the Fire Department held many events throughout 2021 to share important information with the media, residents and communities in our care.



**Love to Nippon:** In March 2021, the Fire Department joined with the Love to Nippon project and Japan House LA to commemorate the 10th anniversary of the 2011 Great East Japan earthquake and tsunami through its webinar, "Be Prepared! Lessons Learned in Readiness and Resilience."



**Wildfire Preparedness Week:** In May 2021, Fire Chief Daryl L. Osby was joined by federal, state, and local partners to remind residents to do their part to prepare for wildfires and help protect their communities.

**Fire Season Outlook News Conference:** In June 2021, Fire Chief Daryl L. Osby was joined by Region I fire service peers to share their outlook on the fire season and extreme drought conditions throughout California.





**Fourth of July News Conference:** In July 2021, Fire Chief Daryl L. Osby joined First District Supervisor Hilda Solis and Fifth District Supervisor Kathryn Barger to discuss the dangers of fireworks.

**Valor Awards Ceremony:** In July 2021, the Los Angeles County Fire Foundation sponsored the Fire Department's virtual Valor Awards Ceremony to recognize Fire Department members and Good Samaritans for going above and beyond in the performance of their duties.





**Contract Aircraft News Conference:** In August 2021, SuperScoopers Quebec 1 and 2 safely arrived in Los Angeles County to join the Fire Department's arsenal of aerial firefighting resources, including the Boeing Chinook CH-47, known as Helitanker 55. These aircraft provided critical resources to augment the Fire Department's response during wildfire season.

**Spark of Love Campaign:** In November 2021, the Fire Department joined with ABC7, Toys for Tots, and Southern California firefighters to celebrate the 29th year of the Spark of Love toy drive. Over 25,000 toys were donated and distributed to underserved children and teens throughout Los Angeles County.



# PUBLIC INFORMATION OFFICE

The Public Information Office provides timely information to the communities in our care. Here is how you can contact us:

 fire.lacounty.gov • ✉ info@fire.lacounty.gov • 📞 323-881-2411

## SOCIAL MEDIA

 **92K**
Facebook followers
facebook.com LACoFD

 **103K**
Instagram followers
@LACountyFD

 **9.72K**
You tube followers
@LosAngelesCountyFD

 **107.9K**
Twitter followers
@LACoFD

 **133.2K**
Twitter followers
@LACoFDPIO

## REMEMBERING OUR FALLEN



### Active Duty Death of Fire Captain Brian Levasseur:

On March 26, 2021, Fire Captain Brian Levasseur died unexpectedly. A proud protector of life and property with over 30 years of service, Captain Levasseur is survived by his daughter, parents, fiancé, siblings, extended family, colleagues, and friends.



### Line of Duty Death of Fire Fighter Specialist Tory Carlon:

On June 1, 2021, Fire Fighter Specialist Tory Carlon was killed in the line of duty. With more than 20 years of fire service, he exemplified what a true hero is – caring, selfless, and brave. Fire Fighter Specialist Carlon is survived by his wife, three daughters, parents, siblings, extended family, colleagues, and friends.

### Firefighters' Memorial Ceremony:

On May 12, 2021, the Fire Department remembered all firefighters who died in the line of duty in a hybrid ceremony at the Memorial Wall. Two fallen members were added to the Memorial Wall:

- Battalion Chief Mark Tolbert

- Fire Fighter Paramedic Randall Duarte.

 


www.SupportLACountyFire.org

The Los Angeles County Fire Department Foundation was formed to turn your donations into equipment and educational programs that can save lives like:

- F.I.R.E.
- Ready! Set! Go!
- Sirens of Silence
- Peer Support

- Explorer Program
- Junior Lifeguard Program
- Life-saving Equipment
- Station Equipment

- Wildland Support
- And More

SCAN ME

Learn more on our website: www.SupportLACountyFire.org.

**INFORMING OUR COMMUNITY**

# LOS ANGELES COUNTY FIRE DEPARTMENT

**Fire Chief Daryl L. Osby**

1320 N. Eastern Ave., Los Angeles, CA  90063

fire.lacounty.gov




SCAN ME

 @LACountyFD    facebook.com/LACoFD    @LACoFD    youtube.com/user/LosAngelesCountyFD

*Produced and edited by the Communications Section of the Executive Support Division. • July 2022*

**EXHIBIT 2**

Case 2:24-cv-04353-JLS-BFM    Document 78    Filed 11/24/25    Page 78 of 198   Page ID #:2138



**County of Los Angeles**

# CAPTAIN, LIFEGUARD SERVICES, FIRE

| | | | |
|---|---|---|---|
| **CLASS CODE** | 2925 | **SALARY** | $8,109.28 - $10,928.28 Monthly |
| **ESTABLISHED DATE** | September 23, 1997 | **REVISION DATE** | June 09, 2006 |

## DEFINITION/STANDARDS

DEFINITION:
Supervises all ocean lifeguard personnel assigned to one area of a beach or to a section's headquarters on a day and/or night shift.

## CLASSIFICATION STANDARDS:

Positions allocable to this class work under the administrative and technical direction of a Section Chief, Lifeguard Services, Fire with responsibility for one of the major areas of the coastline. Incumbents provide first level technical and administrative supervision to Ocean Lifeguards and Ocean Lifeguard Specialists assigned to a one to three mile area within that section. Each incumbent is responsible for properly staffing the area according to anticipated weather and ocean conditions and expected crowds, for ensuring the enforcement of all rules and ordinances, and for maintaining staff proficiency levels in conformance with departmental standards. In addition to possessing the knowledge and skills required of lower level classes within the series, positions in this class must exercise advanced knowledge of personnel practices, supervisory principles, departmental policies, procedures, and services to ensure the effective performance of subordinates.

## EXAMPLES OF DUTIES

Evaluates the effectiveness of staff and services by inspecting beach areas and equipment, and monitoring the performance of personnel on duty; reviews reports and logs; notes deficiencies and ensures corrective action.

Evaluates subordinate staff; prepares performance evaluations and submits them for review by superiors; counsels staff regarding their levels of performance; resolves first level employee grievances.

Determines training needs; directs Ocean Lifeguard Specialists to conduct on-the-job training in specific areas; may conduct training in areas such as ordinance interpretation, crowd management, or cliff rescues.

Meets with representatives of news media to present factual information on emergencies or special events, with citizen groups to plan or coordinate special events, and/or with school personnel to plan for safety presentations.

Determines area personnel and equipment needs and submits requests to section headquarters for approval; hires and assigns lifeguard staff to sub-areas on a weekly and/or daily basis according to anticipated weather conditions, ocean and crowd projections; monitors expenditures to stay within allocated resources.

Responds to major emergencies within the area on a 24-hour recall basis and assumes command from the Ocean Lifeguard Specialist; directs and participates in ocean rescues and  in the administration of first aid; directs crowd control measures pending the arrival of higher level departmental staff or law enforcement officers.

Inspects assigned area of beach in a four-wheel drive vehicle equipped for major rescues.

Engages in the physical fitness program established by the department in order to maintain sufficient capability to perform ocean lifesaving duties.

## REQUIREMENTS

**MINIMUM REQUIREMENTS:**

**TRAINING AND EXPERIENCE:**

Two years of experience at the level of Ocean Lifeguard Specialist in the service of Los Angeles County.

**LICENSE:**

A valid California Class C Driver License is required to perform job-related essential functions.

**PHYSICAL CLASS:**

4 - Arduous.

**OTHER REQUIREMENTS:**

**Ability:**

Positions assigned to this class must be able to swim 500 meters within ten minutes.

**Certification:**

(1) County Beach Lifeguard Training Certificate, (2) Emergency Medical Technician I Certificate, (3) SCUBA Certificate.

**SPECIALTY REQUIREMENTS:**

**COMMENTS:**

**EXHIBIT 3**

AGN. NO._____

MOTION BY SUPERVISORS JANICE HAHN                    March 7, 2023
AND SUPERVISOR LINDSEY HORVATH
**Raising the Progress Pride Flag at Los Angeles County Facilities**

The first known Pride flag debuted at the San Francisco Gay Freedom Day Parade in June 1978. At the encouragement of gay activist Harvey Milk, Gilbert Baker sewed the flag to symbolize the value and dignity of the gay community.

The original Pride flag contained eight stripes, each a separate color of the rainbow plus hot pink. They colored represented sex, life, healing, sunlight, nature, magic and art, serenity, and spirit.   While there have been several variations of the Pride flag.  in 2019, a version was debuted that included the iconic six rainbow stripes: red, orange, yellow, green, blue and violet, as well as the colors from the Transgender Pride Flag, light blue, pink and white stripes, to embrace the transgender community.

Most recently, the Progress Pride Flag was created by artist Daniel Quasar as a combination and reimaging of the original Pride Flag. The Progress Pride Flag's black and brown stripes represent marginalized LBGTQ+ communities of color, community members lost to HIV/AIDS, and those currently living with HIV/AIDS.  The new flag colors are in a chevron shape to represent a need for forward movement.

In 2015, the White House lit up with rainbow colors following the Supreme Court's landmark Obergefell v. Hodges ruling in 2015 that guarantees a constitutional right to

<u>MOTION</u>

SOLIS          _____

MITCHELL       _____

HORVATH        _____

BARGER         _____

HAHN           _____

same-sex marriage. In June 2019, Governor Gavin Newsom requested that the Pride flag be flown on the main flagpole at the State Capitol building in commemoration of LGBTQ Pride Month, marking the first time in state history that occurred. On December 13, 2022, President Joseph R. Biden signed the Respect for Marriage Act, which provides federal protections for same-sex marriage.

While much progress and inclusion has occurred over the decades, some governing bodies have voted to ban displays of the Pride flag. Despite a unanimous vote two years ago to allow the Pride flag to be flown at city Hall, the City of Huntington Beach recently overturned the vote and will now only allow city, state and national flags to regularly be flown at City Hall.

Flying the Progress Pride Flag at the Kenneth Hahn Hall of Administration will show LA County's support for LGBTQ+ communities. In addition to the several ways our communities celebrate LGBTQ+ Pride Month.

**WE, THEREFORE, MOVE** that the Board of Supervisors:

1) Direct the Internal Services Department to raise the Progress Pride Flag at the Kenneth Hahn Hall of Administration, and Los Angeles County facilities where the American and California Flags are displayed during the month of June, while we celebrate LGBTQ+ Pride Month this year and every year moving forward.

2) Direct the Chief Executive Officer to work with all County Departments to explore ways the Progress Pride Flag can be flown at all county facilities

3) Direct the Executive Officer of the Board to update the County's flag policy and notify departments of the above directive and provide guidance to ensure that proper flag etiquette is followed.

#      #      #

JH:mj/dg

**EXHIBIT 4**

May 25, 2023
EA – 231

TO:                 ALL CHIEF OFFICERS
                       ALL ADMINISTRATIVE SITES

FROM:          ACTING CHIEF DEPUTY JON O'BRIEN
                       ACTING CHIEF DEPUTY THERESA R. BARRERA

SUBJECT:       **RAISING THE PROGRESS PRIDE FLAG**

On March 7, 2023, the Board of Supervisors passed a motion requiring the Progress Pride flag ("PPF") to be flown at County facilities during the month of June, which will now be recognized as LGBTQ+ Pride month moving forward.

With the exception of Flag Day, June 14th, when the Prisoner of War/Missing in Action flag is flown, the PFF shall be flown as follows:

**Single Flagpole**

- Clasps for one flag:  Fly the United States (U.S.) flag alone.

- Clasps for two flags:  Fly the U.S. flag at peak and the PPF directly below.

- Clasps for three flags:  Fly the U.S. flag at peak, State, and then PPF.

**Two Flagpoles**

- Fly the U.S. flag on the leftmost pole and the State flag over the PPF flag on the right pole.

- If the right pole only has one set of clasps, the PPF flag shall be flown in place of the State flag.

**RESPONSIBILITIES**

**The Construction and Maintenance Division shall:**

- Contact each battalion utility driver to coordinate the pick-up and delivery of the flags for their corresponding facilities during the last week of May 2023.

**County of Los Angeles Fire Department**
*"Proud Protectors of Life, Property, and the Environment"*

All Chief Officers
All Administrative Sites
May 25, 2023
Page 2

**Captains/Site Supervisors shall:**

- Ensure flags are received and flown throughout the month of June, as noted above.

- At the end of June, ensure the PFF flag is folded and stored for use the following year.

If you have any questions, please contact your jurisdictional deputy fire chief.

JOB:TRB:tob

Attachment

**County of Los Angeles Fire Department**
*"Proud Protectors of Life, Property, and the Environment"*

**EXHIBIT 5**



# Los Angeles County Fire Department
## Progress Pride Flag
## Flow Chart

Case 2:24-cv-04353-JLS-BFM   Document 78   Filed 11/24/25   Page 87 of 198   Page ID #:2147

Does the building fly both the U.S. and State flags?

**YES**

**NO**

Is there more than one flagpole?

The Board Motion does not apply at this location

**YES** (two flagpoles)

**NO** (single flagpole)

Can each flagpole fly more than one flag?

Can the flagpole fly more than two flags?

**YES**

**NO**

**YES**

**NO**

**Clasp sets for three flags**
Fly the U.S. flag at peak on the left pole and State flag over the PPF on the right pole

**Clasp sets for two flags**
Fly the U.S. flag at peak on the left pole and the PPF on the right pole

**Clasp sets for one flag**
Fly the U.S. flag at peak

**Clasps for one flag**
Fly the U.S. flag at peak

**Clasp sets for two flags**
Fly the U.S. flag at peak and PPF directly below

**Clasp sets for three flags**
Fly the U.S. flag at peak, State, and then PPF

**EXHIBIT 6**

## RE: Accommodation Request

Fernando Boiteux < **REDACTED**@fire.lacounty.gov>
Mon 6/19/2023 10:50 AM

To:Jeffrey Little <**REDACTED**@fire.lacounty.gov>

Cc:Kyle Power < **REDACTED**@fire.lacounty.gov>;Danielle Mcmillon < **REDACTED** @fire.lacounty.gov>;Gregory Crum < **REDACTED**@fire.lacounty.gov>

Good morning Captain Little,

I am confirming Ms. Nuanes-Delgadillo will conduct an IPM today at 2:00 pm.

Let me know if you have questions.

Thank you

Fernando Boiteux, Chief Lifeguard
County Los Angeles Fire Department
Office

-----Original Message-----
From: Jeffrey Little <**REDACTED**@fire.lacounty.gov>
Sent: Sunday, June 18, 2023 10:58 AM
To: Fernando Boiteux < **REDACTED** @fire.lacounty.gov>
Cc: Kyle Power < **REDACTED** @fire.lacounty.gov>; Danielle Mcmillon < **REDACTED**@fire.lacounty.gov>; Gregory Crum < **REDACTED** @fire.lacounty.gov>
Subject: Accommodation Request

Chief Boiteux-

I am requesting to be exempt to adhering to EA-231 and am requesting a religious accommodation on grounds that it infringes on my sincere religious beliefs. I have always made it a priority to carry out the mission of the department, serve the community, and be an exemplary employee, but this board motion and the responsibilities accompanying it is in conflict with my deep religious faith.

Respectfully,

Jeff Little – Lifeguard Captain
Los Angeles County Fire Dept.
Will Rogers Beach
Background Investigation Unit
**REDACTED** Mobile
**REDACTED**
**REDACTED**@fire.lacounty.gov

**EXHIBIT 7**

**COUNTY OF LOS ANGELES FIRE DEPARTMENT**
**CENTRAL REGIONAL OPERATIONS BUREAU**
**LIFEGUARD DIVISION**
**(310) 939-7200**

June 22, 2023

*I hereby acknowledge receipt of this document*

_____
*Employee's Signature*

TO:      CAPTAIN JEFFREY LITTLE
         WILL ROGERS BEACH

_____
*Date*

*Hand-delivered by:*

FROM:    CHIEF FERNANDO BOITEUX *FB*
         LIFEGUARD DIVISION

~Fernando Boiteux~
*Signature*

FERNANDO Bojteur 6/22/23
*Print Name*          *Date*

**DIRECT ORDER**

You are hereby ordered to:

   (1) Fly the Progress Pride Flag (PPF) as instructed in Executive Action–231 (EA–231) during the month of June;

      OR

   (2) Ensure that the PPF is flown as instructed in EA–231 during the month of June.

This assignment is to be performed immediately and shall remain effective for the entire month of June, with the exception of Flag Day (June 14th), each year going forward.

The order is in accordance with EA–231 and the Board of Supervisors motion of March 7, 2023 requiring that the PPF be flown at County facilities during the month of June.

Failure to comply with this order will be considered insubordination and subject to disciplinary action, which could include suspension and/or discharge from County service.

FB:as

c:    Employee Relations Division

Attachment

**EXHIBIT 8**

For CISU Use:

(Method of Receipt)

☐ Telephone
☐ In-Person
☑ Online
☐ Paper Complaint

Reference
#REF23-0002442

# COUNTY POLICY OF EQUITY

**REPORT/NOTIFICATION FORM**

**Methods of Reporting Potential County Policy of Equity (CPOE) Violations:**

1) You may use this form to report a potential violation of the CPOE;

2) File an online complaint at https://ceop.bos.lacounty.gov (strongly encouraged);

3) Call the County Intake Specialist Unit (CISU) at (855) 999-CEOP (2367); or

4) Visit the CISU office at the Kenneth Hahn Hall of Administration building located at 500 West Temple Street, Suite B-28, Los Angeles, CA 90012.

---

**1. Do you wish to file this complaint anonymously?**

No

**2. Are you filing this complaint for:**

Yourself

---

(**Note to Supervisors/Managers:** As a County Manager/Supervisor, it is the County's expectation that the CPOE complaint notification be submitted online at https://ceop.lacounty.gov).

**Section A: Reporting Party Information**          **Today's Date:** 6/22/2023

**Name:** Jeff Little                                          **Emp. #:** e482745
**Title:** Captain, Lifeguard Services              **Email:** REDACTED
**Work #:** REDACTED        **Mobile #:** REDACTED        **Work Hrs.:** 1000-2000        **RDO:** Monday
2790
**Reporting Party's Department:** FIRE DEPARTMENT        **Dept. Head:** Anthony Marrone
**Reporting Party's Other Department:**
**Reporting Party's Unit of Assignment:** Lifeguard Division
**Reporting Party's Immediate Supervisor:** Kyle Power
**Date & Time Form Completed:** 2023-06-22 11:23:40

**Did the complainant notify a supervisor/manager of this complaint prior to now?**
No

**Name of Supervisor/Manager Notified:**
**Date:**                                      **How:**

---

## Section B: Complainant(s) Information

**1.**
**Name:** Jeff Little                                                          **Emp. #:** e482745
**Title:** Captain, Lifeguard Services
**Work #:** REDACTED            **Mobile #:** REDACTED            **Work Hrs.:** 1000-2000        **RDO:** Monday
2790
**Complainant's Department:** FIRE DEPARTMENT                **Dept. Head:** Anthony Marrone
**Complainant's Other Department:**
**Complainant's Unit of Assignment:** Lifeguard Division
**Complainant's Immediate Supervisor:** Kyle Power

---

## Section C: Alleged Involved Party(ies) Information

**1.**
**Name:** Arthur Lester                                                      **Emp. #:** e494549
**Title:** Section Chief
**Work #:** REDACTED            **Mobile #:** REDACTED            **Work Hrs.:**                        **RDO:**
**Involved Party's Department:** FIRE DEPARTMENT          **Dept. Head:** Anthony Marrone
**Involved Party's Other Department:**
**Involved Party's Unit of Assignment:**
**Involved Party's Immediate Supervisor:** Adam Uehara

---

## Section D: Alleged Witness(es) Information (if they can be identified)

---

## Section E: Nature of Complaint or Issue(s)

**1. What is the date of the alleged potential violation(s)?** 06/21/2023

**2. Please provide a detailed summary of the alleged potential violation(s):**
My shift on 6/21 was changed to accommodate my religious beliefs so I would not have to work an area that flew the pride flag. This was agreed upon between HR, Lifeguard Management, and myself on Monday 6/19 in an IPM. When I began my shift at 1030, I was greeted with three flags being flown on my beach at Dockweiler South Tower, Dockweiler North Tower, and the El Segundo Lifeguard back station. I was informed by my subordinates that Chief Lester had dropped off the flags and he ordered the Lifeguard personnel to fly them on the flag poles. I was confused to why they where flying as I was under the impression that I would not have to deal with working in these conditions as previously agreed upon. I felt like I was being targeted or entrapped by Chief Lester and my religious beliefs were not being taken seriously. He did not notify me of this change and gave me no heads up that the flags would be flying. I took down the flags since they were not in accordance to the current flag policy that was published on 5/25/23. Later that day I had a follow-up IPM that was initiated by HR. I was informed that my request had now been denied and they had changed their mind to granting me an accommodation. Two hours later Chief Lester stopped by my work location and demanded that I put up the flag at Dockweiler South Tower. I stated to him that it violated my deeply held religious beliefs and that I could not in good conscience work under that flag. He told him I don't have a choice in it and that he was ordered to have the flags up. I asked for him to cite the policy and to review the current policy and he refused to answer. He proceeded to put the pride flag on the flag pole that was 10 feet away from my work desk and said he expected the flag to be flown at all the locations in my area and he stormed out of the building.

**3. Why does the Complainant(s) believe the treatment occurred/is occurring?**
I believe I am being targeted for my religious beliefs and that Chief Lester is attempting to intimidate me into flying the pride flag despite my religious convictions. Due to the timing of the events, I believe that the actions by Chief Lester

are retaliatory in nature since I was the first employee in the department to request an accommodation and voice my dissent to flying the pride flag at my work location. His actions brought mental and emotional distress to me and I felt like I couldn't work in that type of hostile environment created by Chief Lester. I completed the shift not wanting to jeopardize public safety.

---

**Section F:** **TO BE COMPLETED BY SUPERVISORS/MANAGERS ONLY**

**Date supervisor/manager observed and/or was notified of the alleged potential violation(s):**

**How was supervisor/manager made aware of the alleged potential violation(s)? (Explain in detail):**

**What action(s), if any, did the supervisor/manager take? (Explain in detail):**

**Did the supervisor/manager ascertain whether Complainant(s) is/are in need of any of the following?**

**Medical Attention:**

**Protection:**

**Separation from Alleged Involved Party(ies):**

**Other Assistance:**

---

**Did the supervisor/manager advise the Complainant(s) that they:**

**May seek confidential counseling or assistance from the County's Employee Assistance Program (EAP) at (213) 738-4200:**

**May contact the County Intake Specialist Unit (CISU) directly at (855) 999-2367, or via email at ceop@bos.lacounty.gov:**

**EXHIBIT 9**



ANTHONY C. MARRONE
FIRE CHIEF
FORESTER & FIRE WARDEN

*"Proud Protectors of Life,
the Environment, and Property"*

# COUNTY OF LOS ANGELES
# FIRE DEPARTMENT

1320 NORTH EASTERN AVENUE
LOS ANGELES, CALIFORNIA 90063-3294
(323) 881-2401
www.fire.lacounty.gov



**BOARD OF SUPERVISORS**

JANICE HAHN, CHAIR
FOURTH DISTRICT

HILDA L. SOLIS          HOLLY J. MITCHELL
FIRST DISTRICT          SECOND DISTRICT

LINDSEY P. HORVATH      KATHRYN BARGER
THIRD DISTRICT          FIFTH DISTRICT

June 27, 2023

Captain Jeffrey Little, Lifeguard Services
**REDACTED**

Dear Captain Jeffrey Little:

**NOTICE TO COMPLAINING PARTY**

Please be advised that the County Intake Specialist Unit (CISU) is in receipt of a County Policy of Equity (CPOE) complaint filed by you or on your behalf, which was assigned ICMS# 2023-120516. The complaint is being initially investigated and assessed by the CISU for appropriate designation under the CPOE. You may be contacted by the CISU regarding the complaint.

During the pendency of this investigation, please do not discuss these allegations with anyone other than the assigned investigator or your representative to ensure accurate collection of information from individuals potentially involved, to safeguard against the destruction of evidence, and/or to protect against a cover up.

Should you have any questions about this process, please feel free to contact the Employee Relations Division at (323) 267-7207.

Sincerely,

*Verzhine Maslakyan*

VERZHINE MASLAKYAN, CIVIL RIGHTS LIAISON
EMPLOYEE RELATIONS DIVISION

VM

c:      Employee Relations Division

SERVING THE UNINCORPORATED AREAS OF LOS ANGELES COUNTY AND THE CITIES OF:

AGOURA HILLS      CARSON          EL MONTE            INGLEWOOD         LAWNDALE          PICO RIVERA           SIGNAL HILL
ARTESIA           CERRITOS        GARDENA             IRWINDALE         LOMITA            POMONA                SOUTH EL MONTE
AZUSA             CLAREMONT       GLENDORA            LA CANADA-FLINTRIDGE  LYNWOOD       RANCHO PALOS VERDES   SOUTH GATE
BALDWIN PARK      COMMERCE        HAWAIIAN GARDENS    LA HABRA          MALIBU            ROLLING HILLS         TEMPLE CITY
BELL              COVINA          HAWTHORNE           LA MIRADA         MAYWOOD           ROLLING HILLS ESTATES VERNON
BELL GARDENS      CUDAHY          HERMOSA BEACH       LA PUENTE         NORWALK           ROSEMEAD              WALNUT
BELLFLOWER        DIAMOND BAR     HIDDEN HILLS        LAKEWOOD          PALMDALE          SAN DIMAS             WEST HOLLYWOOD
BRADBURY          DUARTE          HUNTINGTON PARK     LANCASTER         PALOS VERDES ESTATES  SANTA CLARITA     WESTLAKE VILLAGE
CALABASAS                         INDUSTRY                              PARAMOUNT                               WHITTIER

**EXHIBIT 10**



**ANTHONY C. MARRONE**
FIRE CHIEF
FORESTER & FIRE WARDEN

*"Proud Protectors of Life, the Environment, and Property"*

# COUNTY OF LOS ANGELES
# FIRE DEPARTMENT

1320 NORTH EASTERN AVENUE
LOS ANGELES, CALIFORNIA 90063-3294
(323) 267-7208
www.fire.lacounty.gov



**BOARD OF SUPERVISORS**
JANICE HAHN, CHAIR
FOURTH DISTRICT

HILDA L. SOLIS          HOLLY J. MITCHELL
FIRST DISTRICT          SECOND DISTRICT

LINDSEY P. HORVATH      KATHRYN BARGER
THIRD DISTRICT          FIFTH DISTRICT

June 22, 2023

*I hereby acknowledge receipt of this document*

_____
*Employee's Signature*

TO:        CAPTAIN JEFFREY LITTLE
           WILL ROGERS BEACH

_____
*Date*

*Hand-delivered by:*

FROM:      ACTING DEPUTY CHIEF WILLIAM MAYFIELD     ~~Fernando Cortez~~ FERNANDO BOTELX
           CENTRAL REGIONAL OPERATIONS BUREAU       *Signature*              *Print Name*

                                                    6/22/23
                                                    *Date*

## INTERNAL INVESTIGATION

You are hereby notified that you are the subject of a Fire Department Administrative Investigation. The investigation will focus on alleged misconduct generally concerning the removal of the Progress Pride Flag from County facilities on June 21, 2023. Your behavior may involve actions that could be considered in violation of the Department's <u>Standards of Behavior</u>.

Your interview will be scheduled at a future date by personnel at the Professional Performance Section.

You are being advised that it is against County and Fire Department policy, as well as State and Federal law to retaliate against any individual who participates in this investigation as a witness or complainant. Any act of retaliation can result in a separate administrative action against you, which could result in disciplinary action up to and including termination. This admonition applies to any and all persons who you should reasonably know or suspect would be involved as a witness, complainant, or subject in this investigation. This is a confidential matter and you must not discuss this matter with any person or County employee who does not have a legitimate business reason to know.

SERVING THE UNINCORPORATED AREAS OF LOS ANGELES COUNTY AND THE CITIES OF:

| | | | | | | |
|---|---|---|---|---|---|---|
| AGOURA HILLS | CARSON | EL MONTE | INGLEWOOD | LAWNDALE | PICO RIVERA | SIGNAL HILL |
| ARTESIA | CERRITOS | GARDENA | IRWINDALE | LOMITA | POMONA | SOUTH EL MONTE |
| AZUSA | CLAREMONT | GLENDORA | LA CANADA-FLINTRIDGE | LYNWOOD | RANCHO PALOS VERDES | SOUTH GATE |
| BALDWIN PARK | COMMERCE | HAWAIIAN GARDENS | LA HABRA | MALIBU | ROLLING HILLS | TEMPLE CITY |
| BELL | COVINA | HAWTHORNE | LA MIRADA | MAYWOOD | ROLLING HILLS ESTATES | VERNON |
| BELL GARDENS | CUDAHY | HERMOSA BEACH | LA PUENTE | NORWALK | ROSEMEAD | WALNUT |
| BELLFLOWER | DIAMOND BAR | HIDDEN HILLS | LAKEWOOD | PALMDALE | SAN DIMAS | WEST HOLLYWOOD |
| BRADBURY | DUARTE | HUNTINGTON PARK | LANCASTER | PALOS VERDES ESTATES | SANTA CLARITA | WESTLAKE VILLAGE |
| CALABASAS | | INDUSTRY | | PARAMOUNT | | WHITTIER |

The person in charge of this investigation is Joanne Schaeffer.  As a subject of this investigation, you are entitled to representation during this interview.  If you intend to be represented in this matter, please contact your representative immediately.  Your interview will be audio recorded and you may also audio record the interview if you wish.  If you wish to also audio record your interview, please bring your own audio recording equipment (i.e., recorder and batteries).

If you have any questions, please contact Ms. Schaeffer at 323-267-7208.

WLM:js

cc:     Professional Performance Section

**EXHIBIT 11**





# COUNTY OF LOS ANGELES
# FIRE DEPARTMENT

1320 NORTH EASTERN AVENUE
LOS ANGELES, CALIFORNIA 90063-3294
(323) 267-7208
www.fire.lacounty.gov

**BOARD OF SUPERVISORS**

JANICE HAHN, CHAIR
FOURTH DISTRICT

HILDA L. SOLIS          HOLLY J. MITCHELL
FIRST DISTRICT          SECOND DISTRICT

LINDSEY P. HORVATH       KATHRYN BARGER
THIRD DISTRICT          FIFTH DISTRICT

ANTHONY C. MARRONE
FIRE CHIEF
FORESTER & FIRE WARDEN

*"Proud Protectors of Life,
the Environment, and Property"*

June 22, 2023

TO:     CAPTAIN JEFFREY LITTLE
        WILL ROGERS BEACH

FROM:   CHIEF FERNANDO BOITEUX
        LIFEGUARD DIVISION

I hereby acknowledge receipt of this document

_____
Employee's Signature

_____
Date

Hand-delivered by:

*FERNANDO    BOITEUX*
Print Name

*Fernando Boiteux*  6/22/23
Signature                      Date

## NOTICE OF INSTRUCTION

This Notice of Instruction is being issued to reiterate the Department's expectations regarding compliance with the Board of Supervisors' March 7, 2023 motion to fly the Progress Pride Flag (PPF) at County facilities:

> On June 21, 2023, Ocean Lifeguard Specialist Gottschalk and Ocean Lifeguard Graner informed you that Chief Lester had ordered them to raise the PPF. Despite Chief Lester's instruction, you removed the PPF from three lifeguard facilities. When you removed the PPF from the El Segundo facility, you did so in front of junior lifeguards.

On May 25, 2023, the Department sent out Executive Action–231 (EA-231), which outlines how the PPF shall be flown at Department facilities for the entire month of June, with the exception of Flag Day (June 14th). All Department employees, irrespective of personal beliefs, are expected to comply with EA–231, which includes raising the flag as instructed, refraining from taking the flag down, and ensuring compliance from subordinate staff. As a Captain, you are expected to lead by example, exercise good judgment by refraining from conduct that could discredit the Department and carry out lawful orders from management.

You are expected to comply with the <u>Standards of Behavior</u>, including but not limited to the following:

SERVING THE UNINCORPORATED AREAS OF LOS ANGELES COUNTY AND THE CITIES OF:

| | | | | | | |
|---|---|---|---|---|---|---|
| AGOURA HILLS | CARSON | EL MONTE | INGLEWOOD | LAWNDALE | PICO RIVERA | SIGNAL HILL |
| ARTESIA | CERRITOS | GARDENA | IRWINDALE | LOMITA | POMONA | SOUTH EL MONTE |
| AZUSA | CLAREMONT | GLENDORA | LA CANADA-FLINTRIDGE | LYNWOOD | RANCHO PALOS VERDES | SOUTH GATE |
| BALDWIN PARK | COMMERCE | HAWAIIAN GARDENS | LA HABRA | MALIBU | ROLLING HILLS | TEMPLE CITY |
| BELL | COVINA | HAWTHORNE | LA MIRADA | MAYWOOD | ROLLING HILLS ESTATES | VERNON |
| BELL GARDENS | CUDAHY | HERMOSA BEACH | LA PUENTE | NORWALK | ROSEMEAD | WALNUT |
| BELLFLOWER | DIAMOND BAR | HIDDEN HILLS | LAKEWOOD | PALMDALE | SAN DIMAS | WEST HOLLYWOOD |
| BRADBURY | DUARTE | HUNTINGTON PARK | LANCASTER | PALOS VERDES ESTATES | SANTA CLARITA | WESTLAKE VILLAGE |
| CALABASAS | | INDUSTRY | | PARAMOUNT | | WHITTIER |

Captain Jeffrey Little
June 22, 2023
Page 2 of 2

A.  In carrying out their official duties and responsibilities, all employees shall:

  1.  Abide by and conform to the County's and Department's rules, regulations, policies, and procedures.

  3.  Perform all assigned duties and responsibilities.

    b.  Exercise good judgment.

  5.  Carry out any lawful order issued by a supervisor.

  11.  Treat all persons in a respectful and courteous manner while on duty.

    a.  Not use coarse, profane, or insulting language.

    b.  Not threaten, defame, or demean any individual.

    c.  Not subject any person to any kind of harassing behavior.

  14.  Not engage in political campaigning while on-duty or in uniform.

  15.  Not make public statements or provide information to citizens, community groups or the press regarding Department matters, other than those affecting public policy, without specific authorization.

  22.  Not bring discredit or embarrassment upon the Department through on- or off-duty behavior.

B.  When in an off-duty or non-Department capacity, employees shall not engage in conduct which impairs, or potentially impairs, their performance of Department duties or which brings discredit to the Department.

  2.  Off-duty conduct by other employees may similarly be deemed contrary to this standard dependent upon their duties and responsibilities.

The Department's Standards of Behavior are found in their entirety in Volume 2, Chapter 1, Subject 4.

You are also expected to comply with the County Policy of Equity, which may be found at https://file.lacounty.gov/SDSInter/dhr/163786_PPG812.pdf.

Your attention and compliance with these instructions is important.

FB:js

**EXHIBIT 12**

Jeff—

Fuck you and your vesus.
Your hate won't be tolerated.
We know where you live
and work. You better pay respect
to our pride flag or we will
Fuck you up. We know about
your cute little girls and arn't
afraid to rape the shit out of
them if you don't honor us. You
are a facsits pig and deserve
to die



LOS ANGELES.CA  900

26 JUN 2023  PM 4 L

Jeff Little

REDACTED

93012-517034



**Camarillo
Police Department**

RB#___23-82629___

3701 E. Las Posas Road
Camarillo, CA 93010
T: (805) 388-5100
F: (805) 388-5111
E: camarillo.police@ventura.org

**venturasheriff.org**

Ventura County
**SHERIFF'S OFFICE**
OFFICE OF JIM FRYHOFF, SHERIFF



**Mitchell Peterson
Senior Deputy**

Detective
Camarillo Investigations Bureau

3701 E. Las Posas Road
Camarillo, CA 93010
O: (805) 388-5120
E: Mitchell.Peterson@ventura.org

**venturasheriff.org**

Ventura County
**SHERIFF'S OFFICE**
OFFICE OF JIM FRYHOFF, SHERIFF

**EXHIBIT 13**



ANTHONY C. MARRONE
FIRE CHIEF
FORESTER & FIRE WARDEN

*"Proud Protectors of Life,
the Environment, and Property"*

# COUNTY OF LOS ANGELES
# FIRE DEPARTMENT

1320 NORTH EASTERN AVENUE
LOS ANGELES, CALIFORNIA 90063-3294
(323) 881-2401
www.fire.lacounty.gov



**BOARD OF SUPERVISORS**
JANICE HAHN, CHAIR
FOURTH DISTRICT

HILDA L. SOLIS          HOLLY J. MITCHELL
FIRST DISTRICT          SECOND DISTRICT

LINDSEY P. HORVATH      KATHRYN BARGER
THIRD DISTRICT          FIFTH DISTRICT

June 30, 2023

Captain Jeffrey Little, Lifeguard Services
**REDACTED**

Dear Captain Jeffrey Little:

## NOTICE TO INVOLVED PARTY

Please be advised that the County Intake Specialist Unit (CISU) is in receipt of a County Policy of Equity (CPOE) complaint filed against you, which was assigned ICMS # 2023-120504. The complaint is being initially investigated and assessed by the CISU for appropriate designation under the CPOE.

During the pendency of this investigation, please do not discuss these allegations with anyone other than the assigned investigator or your representative to ensure accurate collection of information from individuals potentially involved, to safeguard against the destruction of evidence, and/or to protect against a cover up.

### Notice Regarding Retaliation

Please also be reminded that as to this matter and any other matters where you are identified as an Involved Party or Subject of Investigation, retaliation is prohibited under the CPOE.

Should you have any questions about this process, please feel free to contact the Employee Relations Division at (323) 267-7207.

Sincerely,

*Verzhine Maslakyan*
VERZHINE MASLAKYAN, CIVIL RIGHTS LIAISON
EMPLOYEE RELATIONS DIVISION

VM

c:      Employee Relations Division

SERVING THE UNINCORPORATED AREAS OF LOS ANGELES COUNTY AND THE CITIES OF:

| | | | | | | |
|---|---|---|---|---|---|---|
| AGOURA HILLS | CARSON | EL MONTE | INGLEWOOD | LAWNDALE | PICO RIVERA | SIGNAL HILL |
| ARTESIA | CERRITOS | GARDENA | IRWINDALE | LOMITA | POMONA | SOUTH EL MONTE |
| AZUSA | CLAREMONT | GLENDORA | LA CANADA-FLINTRIDGE | LYNWOOD | RANCHO PALOS VERDES | SOUTH GATE |
| BALDWIN PARK | COMMERCE | HAWAIIAN GARDENS | LA HABRA | MALIBU | ROLLING HILLS | TEMPLE CITY |
| BELL | COVINA | HAWTHORNE | LA MIRADA | MAYWOOD | ROLLING HILLS ESTATES | VERNON |
| BELL GARDENS | CUDAHY | HERMOSA BEACH | LA PUENTE | NORWALK | ROSEMEAD | WALNUT |
| BELLFLOWER | DIAMOND BAR | HIDDEN HILLS | LAKEWOOD | PALMDALE | SAN DIMAS | WEST HOLLYWOOD |
| BRADBURY | DUARTE | HUNTINGTON PARK | LANCASTER | PALOS VERDES ESTATES | SANTA CLARITA | WESTLAKE VILLAGE |
| CALABASAS | | INDUSTRY | | PARAMOUNT | | WHITTIER |

**EXHIBIT 14**





**COUNTY OF LOS ANGELES**
**FIRE DEPARTMENT**

1320 NORTH EASTERN AVENUE
LOS ANGELES, CALIFORNIA 90063-3294
(323) 881-2401
www.fire.lacounty.gov

ANTHONY C. MARRONE
FIRE CHIEF
FORESTER & FIRE WARDEN

*"Proud Protectors of Life,*
*the Environment, and Property"*

**BOARD OF SUPERVISORS**
JANICE HAHN, CHAIR
FOURTH DISTRICT

HILDA L. SOLIS          HOLLY J. MITCHELL
FIRST DISTRICT          SECOND DISTRICT

LINDSEY P. HORVATH      KATHRYN BARGER
THIRD DISTRICT          FIFTH DISTRICT

June 30, 2023

Captain Jeffrey Little, Lifeguard Services
**REDACTED**

Dear Captain Jeffrey Little:

**NOTICE TO INVOLVED PARTY**

Please be advised that the County Intake Specialist Unit (CISU) is in receipt of a County Policy of Equity (CPOE) complaint filed against you, which was assigned ICMS # 2023-120591. The complaint is being initially investigated and assessed by the CISU for appropriate designation under the CPOE.

During the pendency of this investigation, please do not discuss these allegations with anyone other than the assigned investigator or your representative to ensure accurate collection of information from individuals potentially involved, to safeguard against the destruction of evidence, and/or to protect against a cover up.

Notice Regarding Retaliation

Please also be reminded that as to this matter and any other matters where you are identified as an Involved Party or Subject of Investigation, retaliation is prohibited under the CPOE.

Should you have any questions about this process, please feel free to contact the Employee Relations Division at (323) 267-7207.

Sincerely,

*Verzhine Maslakyan*

VERZHINE MASLAKYAN, CIVIL RIGHTS LIAISON
EMPLOYEE RELATIONS DIVISION

VM

c:      Employee Relations Division

SERVING THE UNINCORPORATED AREAS OF LOS ANGELES COUNTY AND THE CITIES OF:

| | | | | | | |
|---|---|---|---|---|---|---|
| AGOURA HILLS | CARSON | EL MONTE | INGLEWOOD | LAWNDALE | PICO RIVERA | SIGNAL HILL |
| ARTESIA | CERRITOS | GARDENA | IRWINDALE | LOMITA | POMONA | SOUTH EL MONTE |
| AZUSA | CLAREMONT | GLENDORA | LA CANADA-FLINTRIDGE | LYNWOOD | RANCHO PALOS VERDES | SOUTH GATE |
| BALDWIN PARK | COMMERCE | HAWAIIAN GARDENS | LA HABRA | MALIBU | ROLLING HILLS | TEMPLE CITY |
| BELL | COVINA | HAWTHORNE | LA MIRADA | MAYWOOD | ROLLING HILLS ESTATES | VERNON |
| BELL GARDENS | CUDAHY | HERMOSA BEACH | LA PUENTE | NORWALK | ROSEMEAD | WALNUT |
| BELLFLOWER | DIAMOND BAR | HIDDEN HILLS | LAKEWOOD | PALMDALE | SAN DIMAS | WEST HOLLYWOOD |
| BRADBURY | DUARTE | HUNTINGTON PARK | LANCASTER | PALOS VERDES ESTATES | SANTA CLARITA | WESTLAKE VILLAGE |
| CALABASAS | | INDUSTRY | | PARAMOUNT | | WHITTIER |



ANTHONY C. MARRONE
FIRE CHIEF
FORESTER & FIRE WARDEN

*"Proud Protectors of Life, the Environment, and Property"*

# COUNTY OF LOS ANGELES
# FIRE DEPARTMENT

1320 NORTH EASTERN AVENUE
LOS ANGELES, CALIFORNIA 90063-3294
(323) 881-2401
www.fire.lacounty.gov



**BOARD OF SUPERVISORS**
JANICE HAHN, CHAIR
FOURTH DISTRICT

| HILDA L. SOLIS | HOLLY J. MITCHELL |
| FIRST DISTRICT | SECOND DISTRICT |
| LINDSEY P. HORVATH | KATHRYN BARGER |
| THIRD DISTRICT | FIFTH DISTRICT |

June 30, 2023

Captain Jeffrey Little, Lifeguard Services
**REDACTED**

Dear Captain Jeffrey Little:

## DESIGNATION

A County Policy of Equity (CPOE) complaint was filed against you, which was assigned ICMS # 2023-120591 by the County Intake Specialist Unit (CISU).

The CISU has informed us that the complaint has been initially assessed for appropriate designation in accordance with the CPOE. The initial investigation and assessment resulted in your complaint being designated a "C."

## "C" Designation

CISU has concluded that the facts alleged, even if taken as true, are not jurisdictional to the CPOE. This concludes the CPOE investigation.

Notice Regarding Retaliation

If, at any time, you believe you have been retaliated against for having participated in the CPOE process, please report it to the CISU immediately. You may file a complaint with the CISU as follows:

- By phone:    1-855-999-CEOP (2367) or 213-974-9868
- Online at:    https://ceop.bos.lacounty.gov
- In person:    Kenneth Hahn Hall of Administration
                500 W. Temple Street, Room B-26
                Los Angeles, CA 90012

SERVING THE UNINCORPORATED AREAS OF LOS ANGELES COUNTY AND THE CITIES OF:

| | | | | | | |
|---|---|---|---|---|---|---|
| AGOURA HILLS | CARSON | EL MONTE | INGLEWOOD | LAWNDALE | PICO RIVERA | SIGNAL HILL |
| ARTESIA | CERRITOS | GARDENA | IRWINDALE | LOMITA | POMONA | SOUTH EL MONTE |
| AZUSA | CLAREMONT | GLENDORA | LA CANADA-FLINTRIDGE | LYNWOOD | RANCHO PALOS VERDES | SOUTH GATE |
| BALDWIN PARK | COMMERCE | HAWAIIAN GARDENS | LA HABRA | MALIBU | ROLLING HILLS | TEMPLE CITY |
| BELL | COVINA | HAWTHORNE | LA MIRADA | MAYWOOD | ROLLING HILLS ESTATES | VERNON |
| BELL GARDENS | CUDAHY | HERMOSA BEACH | LA PUENTE | NORWALK | ROSEMEAD | WALNUT |
| BELLFLOWER | DIAMOND BAR | HIDDEN HILLS | LAKEWOOD | PALMDALE | SAN DIMAS | WEST HOLLYWOOD |
| BRADBURY | DUARTE | HUNTINGTON PARK | LANCASTER | PALOS VERDES ESTATES | SANTA CLARITA | WESTLAKE VILLAGE |
| CALABASAS | | INDUSTRY | | PARAMOUNT | | WHITTIER |

Captain Jeffrey Little, Lifeguard Services
June 30, 2023
Page 2

The records associated with this matter will be treated as confidential records.  Please do not discuss this matter with anyone other than the assigned investigator, your representative or the Employee Relations Division, Leadership and Professional Standards Bureau to ensure accurate collection of information from individuals potentially involved, to safeguard against the destruction of evidence and/or to protect against a cover up.

If you are dissatisfied with this outcome, you have the right to file your complaint with the U.S. Equal Employment Opportunity Commission (EEOC) or the California State Department of Fair Employment and Housing (DFEH).

Note:  The standards of proof and the rules that govern administrative investigatory processes are different from those used in legal proceedings in courts of law. Consequently, no legal conclusions can or should be drawn from decisions associated with this administrative process.

If you have any questions regarding this matter, you may contact me at (323) 267-7207

Sincerely,

*Verzhine Maslakyan*

VERZHINE MASLAKYAN, CIVIL RIGHTS LIAISON
EMPLOYEE RELATIONS DIVISION

VM

c:      Employee Relations Division

**EXHIBIT 15**



ANTHONY C. MARRONE
FIRE CHIEF
FORESTER & FIRE WARDEN

*"Proud Protectors of Life,
the Environment, and Property"*

## COUNTY OF LOS ANGELES
## FIRE DEPARTMENT

1320 NORTH EASTERN AVENUE
LOS ANGELES, CALIFORNIA 90063-3294
(323) 267-7207
www.fire.lacounty.gov



**BOARD OF SUPERVISORS**

JANICE HAHN, CHAIR
FOURTH DISTRICT

HILDA L. SOLIS          HOLLY J. MITCHELL
FIRST DISTRICT          SECOND DISTRICT

LINDSEY P. HORVATH      KATHRYN BARGER
THIRD DISTRICT          FIFTH DISTRICT

July 28, 2023

Captain Jeffrey Little, Lifeguard Services
**REDACTED**

Dear Captain Jeffrey Little:

## DESIGNATION

Please be advised that the County Intake Specialist Unit (CISU) is in receipt of your County Policy of Equity (CPOE) complaint [a County Policy of Equity complaint filed on your behalf], which was assigned ICMS # 2023-120516.

The CISU has informed us that the complaint has been initially assessed for appropriate designation in accordance with the CPOE. The initial investigation and assessment resulted in your complaint being designated a "B."

## "B" Designation

CISU has concluded that although the situation may involve, or appear to involve, an equity issue, the situation does not rise to the level of a potential violation of the CPOE. This concludes the CPOE investigation.

Notice Regarding Retaliation

If, at any time, you believe you have been retaliated against for having participated in the CPOE process, please report it to the CISU immediately. You may file a complaint with the CISU as follows:

- By phone:    1-855-999-CEOP (2367) or 213-974-9868
- Online at:   https://ceop.bos.lacounty.gov
- In person:   Kenneth Hahn Hall of Administration
               500 Temple Street, Room B-26
               Los Angeles, CA 90012

SERVING THE UNINCORPORATED AREAS OF LOS ANGELES COUNTY AND THE CITIES OF:

| | | | | | | |
|---|---|---|---|---|---|---|
| AGOURA HILLS | CARSON | EL MONTE | INGLEWOOD | LAWNDALE | PICO RIVERA | SIGNAL HILL |
| ARTESIA | CERRITOS | GARDENA | IRWINDALE | LOMITA | POMONA | SOUTH EL MONTE |
| AZUSA | CLAREMONT | GLENDORA | LA CANADA-FLINTRIDGE | LYNWOOD | RANCHO PALOS VERDES | SOUTH GATE |
| BALDWIN PARK | COMMERCE | HAWAIIAN GARDENS | LA HABRA | MALIBU | ROLLING HILLS | TEMPLE CITY |
| BELL | COVINA | HAWTHORNE | LA MIRADA | MAYWOOD | ROLLING HILLS ESTATES | VERNON |
| BELL GARDENS | CUDAHY | HERMOSA BEACH | LA PUENTE | NORWALK | ROSEMEAD | WALNUT |
| BELLFLOWER | DIAMOND BAR | HIDDEN HILLS | LAKEWOOD | PALMDALE | SAN DIMAS | WEST HOLLYWOOD |
| BRADBURY | DUARTE | HUNTINGTON PARK | LANCASTER | PALOS VERDES ESTATES | SANTA CLARITA | WESTLAKE VILLAGE |
| CALABASAS | | INDUSTRY | | PARAMOUNT | | WHITTIER |

Captain Jeffrey Little, Lifeguard Services
July 28, 2023
Page 2

The records associated with this matter will be treated as confidential records.  Please do not discuss this matter with anyone other than the assigned investigator, your representative or the Employee Relations Division, Leadership and Professional Standards Bureau to ensure accurate collection of information from individuals potentially involved, to safeguard against the destruction of evidence and/or to protect against a cover up.

If you are dissatisfied with this outcome, you have the right to file your complaint with the U.S. Equal Employment Opportunity Commission (EEOC) or the California State Department of Fair Employment and Housing (DFEH).

Note:  The standards of proof and the rules that govern administrative investigatory processes are different from those used in legal proceedings in courts of law. Consequently, no legal conclusions can or should be drawn from decisions associated with this administrative process.

If you have any questions regarding this matter, you may contact me at (323) 267-7207.

Sincerely,

*Verzhine Maslakyan*

VERZHINE MASLAKYAN, CIVIL RIGHTS LIAISON
EMPLOYEE RELATIONS DIVISION

VM

c:      Employee Relations Division

**EXHIBIT 16**



ANTHONY C. MARRONE
FIRE CHIEF
FORESTER & FIRE WARDEN

*"Proud Protectors of Life,
the Environment, and Property"*

# COUNTY OF LOS ANGELES
# FIRE DEPARTMENT

1320 NORTH EASTERN AVENUE
LOS ANGELES, CALIFORNIA 90063-3294
(323) 881-2401
www.fire.lacounty.gov



**BOARD OF SUPERVISORS**

JANICE HAHN, CHAIR
FOURTH DISTRICT

HILDA L. SOLIS                HOLLY J. MITCHELL
FIRST DISTRICT                SECOND DISTRICT

LINDSEY P. HORVATH            KATHRYN BARGER
THIRD DISTRICT                FIFTH DISTRICT

*I hereby acknowledge receipt of this document*

_____
*Employee's Signature*

9/15/23
*Date*

*Hand-delivered by:*

_____
*Signature*

Kyle Power                    9/15/23
*Print Name*                  *Date*

September 14, 2023

TO:     CAPTAIN JEFFREY LITTLE, LIFEGUARD SERVICES
        LIFEGUARD DIVISION

FROM:   ACTING DEPUTY FIRE CHIEF WILLIAM L. MAYFIELD JR.
        CENTRAL REGIONAL OPERATIONS BUREAU

**INTERNAL INVESTIGATION**

You are hereby notified that you are the subject of a formal County investigation.  The investigation will focus on alleged misconduct that occurred approximately June 2023 with a subordinate, coworker, and/or the public which could be considered a possible violation(s) of the County's Policy of Equity, County's Non-Discrimination Policy, County/Department Policies and Procedures, and/or the Department's <u>Standards of Behavior</u>.

Your interview has been scheduled to take place as follows:

**September 21, 2023 at 1:00 PM**

**Via Teams and/or Telephone**

The individual in charge of this investigation and interrogating officer is Susan R. Kudo-Lee, Deputy Compliance Officer (DCO), Department of Human Resources.

As a subject of this investigation, you are entitled to representation during this interview.  If you intend to be represented in this matter, please contact your representative immediately.  Your interview will be audio recorded and you may also audio record the interview if you wish.  If you wish to audio record your interview, please bring your own audio recording equipment (i.e., tape recorder and tapes).

If you have any questions, please contact DCO Susan R. Kudo-Lee at (213) 364-5214.

WLM:vm

c:  Employee Relations Division

SERVING THE UNINCORPORATED AREAS OF LOS ANGELES COUNTY AND THE CITIES OF:

| | | | | | | |
|---|---|---|---|---|---|---|
| AGOURA HILLS | CARSON | EL MONTE | INGLEWOOD | LAWNDALE | PICO RIVERA | SIGNAL HILL |
| ARTESIA | CERRITOS | GARDENA | IRWINDALE | LOMITA | POMONA | SOUTH EL MONTE |
| AZUSA | CLAREMONT | GLENDORA | LA CANADA-FLINTRIDGE | LYNWOOD | RANCHO PALOS VERDES | SOUTH GATE |
| BALDWIN PARK | COMMERCE | HAWAIIAN GARDENS | LA HABRA | MALIBU | ROLLING HILLS | TEMPLE CITY |
| BELL | COVINA | HAWTHORNE | LA MIRADA | MAYWOOD | ROLLING HILLS ESTATES | VERNON |
| BELL GARDENS | CUDAHY | HERMOSA BEACH | LA PUENTE | NORWALK | ROSEMEAD | WALNUT |
| BELLFLOWER | DIAMOND BAR | HIDDEN HILLS | LAKEWOOD | PALMDALE | SAN DIMAS | WEST HOLLYWOOD |
| BRADBURY | DUARTE | HUNTINGTON PARK | LANCASTER | PALOS VERDES ESTATES | SANTA CLARITA | WESTLAKE VILLAGE |
| CALABASAS | | INDUSTRY | | PARAMOUNT | | WHITTIER |

**EXHIBIT 17**





**COUNTY OF LOS ANGELES**
**FIRE DEPARTMENT**

1320 NORTH EASTERN AVENUE
LOS ANGELES, CALIFORNIA 90063-3294
(323) 881-2401
www.fire.lacounty.gov

ANTHONY C. MARRONE
FIRE CHIEF
FORESTER & FIRE WARDEN

*"Proud Protectors of Life,*
*the Environment, and Property"*

**BOARD OF SUPERVISORS**
LINDSEY P. HORVATH, CHAIR
THIRD DISTRICT

HILDA L. SOLIS            HOLLY J. MITCHELL
FIRST DISTRICT            SECOND DISTRICT

JANICE HAHN              KATHRYN BARGER
FOURTH DISTRICT          FIFTH DISTRICT

February 7, 2024

Captain Jeffrey Little, Lifeguard Services
**REDACTED**

Dear Captain Little:

**BRIEFING FINDINGS**

This is to notify you that the County Policy of Equity (CPOE) complaint filed against you on or about June 2023 and assigned ICMS # 2023-120504 has been investigated by the Department of Human Resources' County Equity Investigations Unit (CEIU) and has undergone a briefing by the County Equity Oversight Panel (CEOP).

Based thereon, the Department has concluded that the facts in support of the allegations contained in the CPOE complaint were sufficient to substantiate concerning a violation of the CPOE. You will be notified shortly of any administrative action to be taken.

If, at any time, you believe you have been retaliated against for having participated in the CPOE process, please report it to the CISU immediately at:

- By phone:   1-855-999-CEOP (2367), or (213) 974-9868
- By website: https://CEOP.bos.lacounty.gov or
- By mail:    Kenneth Hahn Hall of Administration
             500 West Temple Street, Room #B-26
             Los Angeles, CA 90012

The records associated with this matter will be treated as confidential records. Please do not discuss this matter with anyone other than the assigned investigator or your representative to ensure accurate collection of information from individuals potentially involved, to safeguard against the destruction of evidence, and/or to protect against a cover up.

If you are dissatisfied with the outcome, you have the right to file your complaint with the U.S. Equal Employment Opportunity Commission (EEOC) or the California State Department of Fair Employment and Housing (DFEH).

SERVING THE UNINCORPORATED AREAS OF LOS ANGELES COUNTY AND THE CITIES OF:

| | | | | | | |
|---|---|---|---|---|---|---|
| AGOURA HILLS | CARSON | EL MONTE | INGLEWOOD | LAWNDALE | PICO RIVERA | SIGNAL HILL |
| ARTESIA | CERRITOS | GARDENA | IRWINDALE | LOMITA | POMONA | SOUTH EL MONTE |
| AZUSA | CLAREMONT | GLENDORA | LA CANADA-FLINTRIDGE | LYNWOOD | RANCHO PALOS VERDES | SOUTH GATE |
| BALDWIN PARK | COMMERCE | HAWAIIAN GARDENS | LA HABRA | MALIBU | ROLLING HILLS | TEMPLE CITY |
| BELL | COVINA | HAWTHORNE | LA MIRADA | MAYWOOD | ROLLING HILLS ESTATES | VERNON |
| BELL GARDENS | CUDAHY | HERMOSA BEACH | LA PUENTE | NORWALK | ROSEMEAD | WALNUT |
| BELLFLOWER | DIAMOND BAR | HIDDEN HILLS | LAKEWOOD | PALMDALE | SAN DIMAS | WEST HOLLYWOOD |
| BRADBURY | DUARTE | HUNTINGTON PARK | LANCASTER | PALOS VERDES ESTATES | SANTA CLARITA | WESTLAKE VILLAGE |
| CALABASAS | | INDUSTRY | | PARAMOUNT | | WHITTIER |

Captain Jeffrey Little, Lifeguard Services
February 7, 2024
Page 2


Note: The standards of proof and rules that govern administrative investigatory and disciplinary processes are different from those used in the legal proceedings in courts of law. Consequently, no legal conclusions can or should be drawn from the recommendations and/or decisions associated with this administrative process.

If you have any questions regarding this matter, you may contact me at (323) 267-7207.

Sincerely,


*Verzhine Maslakyan*
VERZHINE MASLAKYAN, CIVIL RIGHTS LIAISON
EMPLOYEE RELATIONS DIVISION

VM

c:      Employee Relations Division

**EXHIBIT 18**



# COUNTY OF LOS ANGELES
# FIRE DEPARTMENT



1320 NORTH EASTERN AVENUE
LOS ANGELES, CALIFORNIA 90063-3294
(323) 881-2401
www.fire.lacounty.gov

**ANTHONY C. MARRONE**
FIRE CHIEF
FORESTER & FIRE WARDEN

*"Proud Protectors of Life,
the Environment, and Property"*

**EMPLOYEE COPY**

**BOARD OF SUPERVISORS**
LINDSEY P. HORVATH, CHAIR
THIRD DISTRICT

HILDA L. SOLIS        HOLLY J. MITCHELL
FIRST DISTRICT        SECOND DISTRICT

JANICE HAHN           KATHRYN BARGER
FOURTH DISTRICT       FIFTH DISTRICT

July 12, 2024

I hereby acknowledge receipt of this document.

**Employee's Signature**

Captain, Lifeguard Services, Jeffrey Little
<span style="color:red">**REDACTED**</span>

**Date**

**Hand-delivered by:**

RoBeRT HARRIS

**Print Name**

07/16/2024

**Signature**                    **Date**

Dear Captain Little:

## INTENT TO SUSPEND

This is to inform you of our intent to suspend you for fifteen (15) eight-hour days without pay from your position of Captain, Lifeguard Services. This proposed suspension is based on (1) your unauthorized removal of the Progress Pride Flag (PPF) from three lifeguard stations, which constituted inappropriate conduct towards others and discrimination based on sexual orientation.

The bases for your proposed suspension are your violations of the below listed sections of the Department's Standards of Behavior:

A.  In carrying out their official duties and responsibilities, all employees shall:

   1.  Abide by and conform to the County's and Department's rules, regulations, policies, and procedures.

   3.  Perform all assigned duties and responsibilities.

       b.  Exercise good judgment.

   11.  Treat all persons in a respectful and courteous manner while on duty.

   22.  Not bring discredit or embarrassment upon the Department through on or off-duty behavior

SERVING THE UNINCORPORATED AREAS OF LOS ANGELES COUNTY AND THE CITIES OF:

AGOURA HILLS      CARSON          EL MONTE           INGLEWOOD           LAWNDALE         PICO RIVERA             SIGNAL HILL
ARTESIA           CERRITOS        GARDENA            IRWINDALE           LOMITA           POMONA                  SOUTH EL MONTE
AZUSA             CLAREMONT       GLENDORA           LA CANADA-FLINTRIDGE LYNWOOD         RANCHO PALOS VERDES     SOUTH GATE
BALDWIN PARK      COMMERCE        HAWAIIAN GARDENS   LA HABRA            MALIBU           ROLLING HILLS           TEMPLE CITY
BELL              COVINA          HAWTHORNE          LA MIRADA           MAYWOOD          ROLLING HILLS ESTATES   VERNON
BELL GARDENS      CUDAHY          HERMOSA BEACH      LA PUENTE           NORWALK          ROSEMEAD                WALNUT
BELLFLOWER        DIAMOND BAR     HIDDEN HILLS       LAKEWOOD            PALMDALE         SAN DIMAS               WEST HOLLYWOOD
BRADBURY          DUARTE          HUNTINGTON PARK    LANCASTER           PALOS VERDES ESTATES  SANTA CLARITA      WESTLAKE VILLAGE
CALABASAS                         INDUSTRY                               PARAMOUNT                                WHITTIER

Captain, Lifeguard Services, Jeffrey Little
July 12, 2024
Page 2

This proposed suspension is also based on your violation of the Department of Human Resources (DHR) Policies, Procedures, and Guidelines (PPG), Policy No. 812 – County Policy of Equity (CPOE), and noncompliance with the Los Angeles County Board of Supervisors (BOS) Policy Manual, Policy 3.100, Flag Policy, September 16, 1997, Modified by Board Order No. 15 on March 7, 2023, and the Department's Executive Action 231 (EA–231), Raising the Progress Pride Flag, which state, in relevant part:

DHR PPG Policy No. 812, County Policy of Equity

Section 1: Discrimination

Discrimination is the disparate or adverse treatment of an individual based on or because of that individual's age (40 and over); ancestry; color; ethnicity; religious creed (including religious dress and grooming practices); denial of family and medical care leave; disability (including mental and physical disability); marital status; medical condition (cancer and genetic characteristics); genetic information; military and veteran status; national origin (including language use restrictions); race; sex (including pregnancy, childbirth, breastfeeding, and medical conditions related to pregnancy, childbirth, or breastfeeding); gender; gender identity; gender expression; sexual orientation; and any other characteristic protected by state or federal law.

Section 5: Inappropriate Conduct Toward Others

Inappropriate conduct toward others is any conduct (based on or because of any of the protected characteristics delineated in this Policy) when such conduct reasonably would be considered inappropriate for the workplace.

This provision is intended to stop inappropriate conduct based on a protected status before it becomes discrimination or unlawful harassment.  As such, the conduct need not meet legally actionable state and/or federal standards of severe or pervasive to violate this Policy.  An isolated derogatory comment, joke, racial slur, sexual innuendo, etc., may constitute conduct that violates this policy and is grounds for discipline, up to and including discharge from County service.  Similarly, the conduct need not be unwelcomed to the party against whom it is directed; if the conduct reasonably would be considered inappropriate by the County for the workplace, it may violate this Policy.

Section 12: Additional Duties of All Supervisors and Managers

Supervisors and managers are also responsible for:

- Being aware of, abiding by, and understanding the Policy and Procedures, as well as any modifications that may be made to them;

- Actively monitoring the work environment to ensure that conduct which potentially violates the County Policy of Equity is not occurring;

Captain, Lifeguard Services, Jeffrey Little
July 12, 2024
Page 2

- Informing County employees under their supervision of the types of prohibitive behavior, and the County's procedures for reporting and resolving complaints arising under the Policy;

- Stopping conduct that potentially violates the Policy and taking immediate and appropriate administrative action whether or not the involved County employees are within their line of supervision;

Supervisors and managers have the foregoing duties whether or not a complaint has been made.

BOS Policy Manual, Policy 3.100, Flag Policy, September 16, 1997, Modified by Board Order No. 15 on March 7, 2023

### DISPLAY OF OTHER FLAGS

Pride Progress Flag

On motion by the Board of Supervisors, March 7, 2023, the Progress Pride Flag shall be flown at full-staff during the month of June in recognition of LGBTQ+ Pride Month. The Pride Progress Flag shall be flown at Los Angeles County facilities where the American and California Flags are displayed.

Department's EA–231, Raising the Progress Pride Flag, May 25, 2023

On March 7, 2023, the Board of Supervisors passed a motion requiring the Progress Pride flag ('PPF') to be flown at County facilities during the month of June, which will now be recognized as LGBTQ+ Pride month moving forward.

With the exception of Flag Day, June 14th, when the Prisoner of War/Missing in Action flag is flown, the PPF shall be flown as follows:

Single Flagpole

- Clasps for one flag: Fly the United States (U.S.) flag alone.

- Clasps for two flags: Fly the U.S. flag at peak and the PPF flag directly below.

### RESPONSIBILITIES

Captains/Site Supervisors shall:

- Ensure flags are received and flown throughout the month of June, as noted above.

Captain, Lifeguard Services, Jeffrey Little
July 12, 2024
Page 2

In addition, this proposed action is taken pursuant to Civil Service Rule (CSR) 18.031, which states:

> Failure of an employee to perform his or her assigned duties so as to meet fully explicitly stated or implied standards of performance may constitute adequate grounds for discharge, reduction or suspension. Where appropriate, such grounds may include, but are not limited to, qualitative as well as quantitative elements of performance, such as failure to exercise sound judgment, failure to report information accurately and completely, failure to deal effectively with the public, and failure to make productive use of human, financial and other assigned resources. Grounds for discharge, reduction or suspension may also include any behavior or pattern of behavior which negatively affects an employee's productivity, or which is unbecoming a county employee; or any behavior or condition which impairs an employee's qualifications for his or her position or for continued county employment.

This proposed suspension is based on the following specific facts[1]:

Background

On March 7, 2023, the BOS issued Board Order No. 15, ordering for the PPF[2] be flown at County facilities where the American and California flags are displayed to show the County's support for LGBTQ+ communities.

On May 25, 2023, the Department issued EA-231, instructing how the PPFs were to be flown, in accordance with the BOS' order, and specified that captains were responsible for ensuring that PPFs were flown as instructed.

Removal of PPFs from Lifeguard Stations without Authorization

On or around June 21, 2023, you reported for work at Area 17 and saw the PPF flying at the lifeguard stations. You asked subordinate Ocean Lifeguard Specialists (OLSs) if they would feel comfortable if you removed the PPF. They responded that management had directed for the PPFs to be flown. However, you removed the PPFs from the flagpoles at the Dockweiler North, Dockweiler South, and El Segundo lifeguard stations, which made staff uncomfortable and prompted beach patrons to question why the PPF was taken down.

Administrative Interviews

During your administrative interview with the DHR Deputy Compliance Officer (DCO) you stated that the PPF had not been flown earlier in June. You also stated that subordinate staff did not object to you taking down the PPF.

---

[1] The Investigation Reports attached to this Intent to Suspend letter are fully incorporated by reference, as if fully set forth in this letter, and provide further facts and evidence for the bases of this proposed action.

Captain, Lifeguard Services, Jeffrey Little
July 12, 2024
Page 2

During your administrative interview with the Department, you admitted taking down the PPFs at the three Area 17 lifeguard stations without authorization, reasoning that the PPFs should not been flying in the first place.

The mission of the Los Angeles County Fire Department is to protect lives, the environment, and property by providing prompt, skillful, and cost-effective fire protection, and life safety services.  Moreover, four of the Department's core values include caring, community, and teamwork.

Caring and community entail committing to show compassion for all members of the community and celebrating diversity. By removing the PPF, you sent a message that sought to diminish the visibility of the LGBTQ+ community, which showed a lack of care for the struggles and identities of that community. Additionally, your removal of the PPFs was nonconductive to teamwork, because it undermined the County's commitment to fostering a diverse and inclusive work environment for all employees.

Your actions were inappropriate and discriminatory, which created an uncomfortable working environment for your staff. Your misconduct set a poor example for your subordinates, who look to you for guidance and leadership. Your actions were also disruptive, as your removal of the PPFs created confusion and discord among people who witnessed the incident.

As a captain, you are expected to lead by example and adhere to County and Department policies and procedures. Removing the PPF in front of staff and the public, without first attempting to seek clarification or approval to do so from your management, demonstrated poor judgment and contradicted the BOS' initiative to show support for and inclusion of the LGBTQ+ community. Instead of leading by example, your removal of the PPF sent a message of disregard for your chain of command. You demonstrated to your subordinates that if they do not agree with management's instructions, they need not comply.

Captain Little, this suspension is being proposed due to the seriousness of your misconduct. Your actions were unacceptable and violated the County Policy of Equity and Department's Standards of Behavior.

You are hereby advised that any further violation of the County's policies and procedures, or the Department's Standards of Behavior, may be grounds for more serious disciplinary action, including discharge.

In deciding to take this proposed action, your record was considered as follows:

- Your continuous service date is September 1, 2013;

- You have been employed with the Department since March 30, 2002;

- You have no prior history of administrative actions;

Captain, Lifeguard Services, Jeffrey Little
July 12, 2024
Page 2

- You signed the <u>Acknowledgement of Employee Responsibilities</u> on February 19, 2020, indicating you received and read that it is the responsibility of every County employee to conduct him/herself in a manner consistent with laws and policies that prohibit unlawful discrimination, including the creation of a hostile work environment based on race, color, gender, disability, sexual orientation, pregnancy, sexual harassment, and retaliation;

- You signed the <u>Employee Acknowledgement and Receipt of County Policy of Equity</u> on February 14, 2020, indicating that you will adhere to the CPOE;

- You signed the <u>Receipt and Employment Acknowledgement of the Countywide Discipline Guidelines, Revised Standards of Behavior, and Supplemental Discipline Guidelines</u> on January 19, 2017; and

- Overall ratings on your three most recently available annual performance evaluations as follows:

  - April 1, 2022 – March 31, 2023.................................... "Very Good"
  - April 1, 2021 – March 31, 2022......................................"Competent"
  - July 16, 2020 – March 31, 2021 ...................................."Competent"

In addition, please be advised that in accordance with the Countywide Discipline Guidelines: For Employees and Department's Supplemental Discipline Guidelines, Volume 2, Chapter 1, Subject 5, the ranges of penalties are as follows:

Countywide Discipline Guidelines

| OFFENSE | FIRST OCCURRENCE | SECOND OCCURRENCE | THIRD OCCURRENCE |
|---|---|---|---|
| **II. DISRESPECTFUL CONDUCT / INSUBORDINATION** | | | |
| B. Failure to follow established rules or regulations | Warning to 10-Day Suspension | 15 to 30-Day Suspension; Discharge | Reduction or Discharge |
| F. Insubordination or refusal to follow instructions of a supervisor or higher ranking agency personnel, including behavior demonstrating disregard or disrespect of supervisor (or higher ranking agency personnel) or directions of supervisor or higher ranking agency personnel | 1 to 15-Day Suspension; Reduction; Discharge | 30-Day Suspension; Reduction; Discharge | Discharge |

Captain, Lifeguard Services, Jeffrey Little
July 12, 2024
Page 2

| IV. INAPPROPRIATE CONDUCT IN VIOLATION OF COUNTY POLICY OF EQUITY | | | | |
|---|---|---|---|---|
| A. | Inappropriate conduct toward others based on protected characteristic(s) when such conduct reasonably would be considered inappropriate for the workplace (See, County Policy of Equity) | Reprimand to 10-Day Suspension | 15 to 30-Day Suspension; Discharge | Discharge |
| B. | Engaging in disparate or adverse treatment of an individual's protected characteristic(s) in violation of the County Policy of Equity (See, County Policy of Equity) | Reprimand to 10-Day Suspension | 20 to 30-Day Suspension; Discharge | Discharge |
| VII. PERFORMANCE TO STANDARDS OR EXPECTATIONS | | | | |
| B. | Discourtesy with fellow employees; may include, but not limited to, disrespectful, insulting, abusive language or conduct | Warning to 10-Day Suspension; Discharge | 15 to 30-Day Suspension; Discharge | Discharge |
| F. | Work performance fails to meet job expectations, standards or requirements - whether implied or explicit | Warning to 10-Day Suspension | 15 to 30-Day Suspension; Reduction | Reduction or Discharge |
| H. | Failure to exercise sound judgment which results in loss of, or injury, or damage to persons or property of the County or of County service | Reprimand to 15-Day Suspension; Reduction; Discharge | 20 to 30-Day Suspension; Reduction; Discharge | Discharge |
| N. | Abuse of supervisory or management authority, or conduct unbecoming a position of authority | Reprimand to 15-Day Suspension; Reduction; Discharge | 20 to 30-Day Suspension; Reduction; Discharge | Discharge |

Captain, Lifeguard Services, Jeffrey Little
July 12, 2024
Page 2

Department's Supplemental Discipline Guidelines

| I.–IX. COUNTYWIDE DISCIPLINE GUIDELINES | | | |
|---|---|---|---|
| X.   Offenses and Ranges of Discipline | | | |
| OFFENSE | FIRST OCCURRENCE | SECOND OCCURRENCE | THIRD OCCURRENCE |
| 2.   FAILURE TO ABIDE BY DEPARTMENTAL STANDARDS | | | |
| F.   Conduct unbecoming or bringing discredit or embarrassment upon the Department through on-duty or off-duty behavior | Reprimand 3-30 days Reduction Discharge | 10-30 days Reduction Discharge | Discharge |
| 3.   PERFORMANCE DEFICIENCIES | | | |
| D.   Failing to exercise good judgment or to take proper action | Reprimand 3-10 days | 3-10 days 15-30 days | Reduction Discharge |

You are hereby advised that any further violation of the Department's Standards of Behavior may be grounds for more serious disciplinary action.

Please note that the Countywide Discipline Guidelines: For Employees specify:

It is imperative that management look at the *totality of the circumstances* surrounding a particular offense, or set of offenses, in order to determine the appropriate administrative response.

Built into these guidelines, is some degree of flexibility in determining the appropriate level of discipline. This may result in an administrative action *more* or less severe than those listed in these guidelines.

These guidelines approach discipline progressively; however, Management reserves the right to impose discipline *based on the totality of the circumstances*, up to discharge from County service.

(Emphasis added.)

Please also note that each offense of the Countywide and Supplemental disciplinary guidelines cited above may—and often will—serve as wholly independent bases for the discipline being proposed.

This proposed action is based on the following supporting materials:

- Tolling of Firefighters Bill of Rights Deadline ................................. August 17, 2023
- DHR County Equity Investigation Unit Investigative Report # 2023 – 120504 ..................................... September 28, 2023
- Investigation Report – Captain, Lifeguard Services, Jeffrey Little ... March 19, 2024

Captain, Lifeguard Services, Jeffrey Little
July 12, 2024
Page 2

Please be advised that the Employee Assistance Program (EAP) offers professional consultation and referral services for a broad range of personal and job-related issues. You may reach EAP at (213) 433-7202.

You have the right to respond to this action orally, in writing, or both. Please be advised that a deputy chief who is not currently in your chain of command will consider your written and/or oral response. If you choose to respond in writing, send your response to Deputy Fire Chief Michael R. Inman, Special Services Bureau, at 1320 N. Eastern Avenue, Room 250-FCCF, Los Angeles, CA 90063. If you wish to respond orally, you may contact Deputy Chief Inman at (323) 881-6152 to schedule a *Skelly* meeting. You have ten business days from the date this letter was mailed or hand-delivered to you to submit a written response or to schedule a meeting with Deputy Chief Inman.

If you request a *Skelly* meeting, the meeting must be conducted within 30 calendar days from the date this letter was mailed or hand-delivered to you. If you have not scheduled a *Skelly* meeting with Deputy Chief Inman or submitted a written response in writing within ten business days from the date this letter was mailed or hand-delivered to you, you will have waived your right to respond at this level.

Sincerely

DEPUTY FIRE CHIEF ROBERT HARRIS
CENTRAL REGIONAL OPERATIONS BUREAU

RH:js:vm

Attachment

c:    Employee Relations Division
      Professional Performance Section

EXHIBIT 19



**ANTHONY C. MARRONE**
FIRE CHIEF
FORESTER & FIRE WARDEN

*"Proud Protectors of Life,
the Environment, and Property"*

# COUNTY OF LOS ANGELES
# FIRE DEPARTMENT

1320 NORTH EASTERN AVENUE
LOS ANGELES, CALIFORNIA 90063-3294
(323) 881-2401
www.fire.lacounty.gov



**BOARD OF SUPERVISORS**
LINDSEY P. HORVATH, CHAIR
THIRD DISTRICT

| | |
|---|---|
| HILDA L. SOLIS | HOLLY J. MITCHELL |
| FIRST DISTRICT | SECOND DISTRICT |
| JANICE HAHN | KATHRYN BARGER |
| FOURTH DISTRICT | FIFTH DISTRICT |

I hereby acknowledge receipt of this document

_____
**Employee's Signature**

**10/24/24**
_____
**Date**

**Hand-delivered by:**

ADAM  UEHARA
_____
**Print Name**

**10/24/24**
_____
**Signature**                              **Date**

October 24, 2024

Captain, Lifeguard Services, Jeffrey Little

████████████

Dear Captain Little:

## NOTICE OF SUSPENSION

You are hereby notified that effective Monday, November 11, 2024, through and including Monday, November 25, 2024, you will be suspended for 15 calendar days without pay from your position of Captain, Lifeguard Services. During this suspension, your work schedule will be converted into a 40-hour workweek, 5 days per week, 8 hours a day. Your work schedule will revert to a 4/40 on Monday, December 2, 2024. During this suspension period (Monday, November 11, 2024, through Monday, November 25, 2024), you are not authorized to work overtime. You are expected to return to work at your regularly scheduled time on Tuesday, November 26, 2024 and work the remainder of the week on a 5/40 schedule. This suspension is due to your unauthorized removal of the Progress Pride Flag (PPF) from three lifeguard stations, which constituted inappropriate conduct towards others and discrimination based on sexual orientation.

By letter dated July 12, 2024, you were advised of our intent to suspend you for 15 eight-hour days and of the grounds for the proposed suspension. You were also advised of your right to respond orally, in writing, or both. For the purpose of your response, you met with Deputy Fire Chief Michael R. Inman on August 8, 2024. Also present were Joanne Schaeffer of the Professional Performance Section and your representatives, Jordan Stephens of the Los Angeles County Lifeguard Association and Joshua Youngkin of Limandri & Jonna LLP.

SERVING THE UNINCORPORATED AREAS OF LOS ANGELES COUNTY AND THE CITIES OF:

| | | | | | | |
|---|---|---|---|---|---|---|
| AGOURA HILLS | CARSON | EL MONTE | INGLEWOOD | LAWNDALE | PICO RIVERA | SIGNAL HILL |
| ARTESIA | CERRITOS | GARDENA | IRWINDALE | LOMITA | POMONA | SOUTH EL MONTE |
| AZUSA | CLAREMONT | GLENDORA | LA CANADA-FLINTRIDGE | LYNWOOD | RANCHO PALOS VERDES | SOUTH GATE |
| BALDWIN PARK | COMMERCE | HAWAIIAN GARDENS | LA HABRA | MALIBU | ROLLING HILLS | TEMPLE CITY |
| BELL | COVINA | HAWTHORNE | LA MIRADA | MAYWOOD | ROLLING HILLS ESTATES | VERNON |
| BELL GARDENS | CUDAHY | HERMOSA BEACH | LA PUENTE | NORWALK | ROSEMEAD | WALNUT |
| BELLFLOWER | DIAMOND BAR | HIDDEN HILLS | LAKEWOOD | PALMDALE | SAN DIMAS | WEST HOLLYWOOD |
| BRADBURY | DUARTE | HUNTINGTON PARK | LANCASTER | PALOS VERDES ESTATES | SANTA CLARITA | WESTLAKE VILLAGE |
| CALABASAS | | INDUSTRY | | PARAMOUNT | | WHITTIER |

Captain, Lifeguard Services, Jeffrey Little
October 24, 2024
Page 2 of 10

Your response was given careful consideration; however, the information provided was insufficient for the Department to alter its decision. Therefore, the Department is proceeding with the intended action to suspend you.

The bases for your suspension are your violations of the below listed sections of the Department's <u>Standards of Behavior</u>:

| A. | | In carrying out their official duties and responsibilities, all employees shall: | |
|---|---|---|---|
| | 1. | Abide by and conform to the County's and Department's rules, regulations, policies, and procedures. | |
| | 3. | Perform all assigned duties and responsibilities. | |
| | | b. | Exercise good judgment. |
| | 11. | Treat all persons in a respectful and courteous manner while on duty. | |
| | 22. | Not bring discredit or embarrassment upon the Department through on or off-duty behavior | |

This suspension is also based on your violation of the Department of Human Resources (DHR) Policies, Procedures, and Guidelines (PPG), <u>Policy No. 812 – County Policy of Equity</u> (CPOE), and noncompliance with the Los Angeles County Board of Supervisors (BOS) Policy Manual, Policy 3.100, <u>Flag Policy</u>, September 16, 1997, Modified by Board Order No. 15 on March 7, 2023, and the Department's Executive Action 231 (EA–231), <u>Raising the Progress Pride Flag</u>, which state, in relevant part:

- DHR PPG Policy No. 812, County Policy of Equity

  Section 1: Discrimination

  Discrimination is the disparate or adverse treatment of an individual based on or because of that individual's age (40 and over); ancestry; color; ethnicity; religious creed (including religious dress and grooming practices); denial of family and medical care leave; disability (including mental and physical disability); marital status; medical condition (cancer and genetic characteristics); genetic information; military and veteran status; national origin (including language use restrictions); race; sex (including pregnancy, childbirth, breastfeeding, and medical conditions related to pregnancy, childbirth, or breastfeeding); gender; gender identity; gender expression; sexual orientation; and any other characteristic protected by state or federal law.

  Section 5: Inappropriate Conduct Toward Others

Captain, Lifeguard Services, Jeffrey Little
October 24, 2024
Page 3 of 10

Inappropriate conduct toward others is any conduct (based on or because of any of the protected characteristics delineated in this Policy) when such conduct reasonably would be considered inappropriate for the workplace. This provision is intended to stop inappropriate conduct based on a protected status before it becomes discrimination or unlawful harassment. As such, the conduct need not meet legally actionable state and/or federal standards of severe or pervasive to violate this Policy. An isolated derogatory comment, joke, racial slur, sexual innuendo, etc., may constitute conduct that violates this policy and is grounds for discipline, up to and including discharge from County service. Similarly, the conduct need not be unwelcomed to the party against whom it is directed; if the conduct reasonably would be considered inappropriate by the County for the workplace, it may violate this Policy.

Section 12: Additional Duties of All Supervisors and Managers

Supervisors and managers are also responsible for:

- Being aware of, abiding by, and understanding the Policy and Procedures, as well as any modifications that may be made to them;

- Actively monitoring the work environment to ensure that conduct which potentially violates the County Policy of Equity is not occurring;

- Informing County employees under their supervision of the types of prohibitive behavior, and the County's procedures for reporting and resolving complaints arising under the Policy;

- Stopping conduct that potentially violates the Policy and taking immediate and appropriate administrative action whether or not the involved County employees are within their line of supervision;

Supervisors and managers have the foregoing duties whether or not a complaint has been made.

- BOS Policy Manual, Policy 3.100, Flag Policy, September 16, 1997, Modified by Board Order No. 15 on March 7, 2023

DISPLAY OF OTHER FLAGS

Pride Progress Flag

Captain, Lifeguard Services, Jeffrey Little
October 24, 2024
Page 4 of 10

On motion by the Board of Supervisors, March 7, 2023, the Progress Pride Flag shall be flown at full-staff during the month of June in recognition of LGBTQ+ Pride Month.  The Pride Progress Flag shall be flown at Los Angeles County facilities where the American and California Flags are displayed.

- Department's EA–231, Raising the Progress Pride Flag, May 25, 2023

On March 7, 2023, the Board of Supervisors passed a motion requiring the Progress Pride flag ('PPF') to be flown at County facilities during the month of June, which will now be recognized as LGBTQ+ Pride month moving forward.

With the exception of Flag Day, June 14th, when the Prisoner of War/Missing in Action flag is flown, the PPF shall be flown as follows:

Single Flagpole

- Clasps for one flag: Fly the United States (U.S.) flag alone.

- Clasps for two flags: Fly the U.S. flag at peak and the PPF flag directly below.

RESPONSIBILITIES

Captains/Site Supervisors shall:

- Ensure flags are received and flown throughout the month of June, as noted above.

In addition, this action is taken pursuant to Civil Service Rule (CSR) 18.031, which states:

Failure of an employee to perform his or her assigned duties so as to meet fully explicitly stated or implied standards of performance may constitute adequate grounds for discharge, reduction or suspension.  Where appropriate, such grounds may include, but are not limited to, qualitative as well as quantitative elements of performance, such as failure to exercise sound judgment, failure to report information accurately and completely, failure to deal effectively with the public, and failure to make productive use of human, financial and other assigned resources.  Grounds for discharge, reduction or suspension may also include any behavior or pattern of behavior which negatively affects an employee's productivity, or which is unbecoming a county employee; or any behavior or condition which impairs an employee's qualifications for his or her position or for continued county employment.

Captain, Lifeguard Services, Jeffrey Little
October 24, 2024
Page 5 of 10

This suspension is based on the following specific facts:[1]

Background

On March 7, 2023, the BOS issued Board Order No. 15, ordering for the PPF be flown at County facilities where the American and California flags are displayed to show the County's support for LGBTQ+ communities.

On May 25, 2023, the Department issued EA-231, instructing how the PPFs were to be flown, in accordance with the BOS' order, and specified that captains were responsible for ensuring that PPFs were flown as instructed.

Removal of PPFs from Lifeguard Stations without Authorization

On or around June 21, 2023, you reported for work at Area 17 and saw the PPF flying at the lifeguard stations. You asked subordinate Ocean Lifeguard Specialists (OLSes) if they would feel comfortable if you removed the PPF. They responded that management had directed for the PPFs to be flown. However, you removed the PPFs from the flagpoles at the Dockweiler North, Dockweiler South, and El Segundo lifeguard stations, which made staff uncomfortable and prompted beach patrons to question why the PPFs were taken down.

Administrative Interviews

During your administrative interview with a DHR Deputy Compliance Officer (DCO), you stated that the PPF had not been flown earlier in June 2023. You also stated that subordinate staff did not object to you taking down the PPFs.

During your administrative interview with the Department, you admitted taking down the PPFs at the three Area 17 lifeguard stations without authorization, reasoning that the PPFs should not have been flying in the first place.

The mission of the Los Angeles County Fire Department is to protect lives, the environment, and property by providing prompt, skillful, and cost-effective fire protection, and life safety services. Moreover, four of the Department's core values include caring, community, and teamwork.

Caring and community entail committing to showing compassion for all members of the community and celebrating diversity. By removing the PPFs, you sent a message that sought to diminish the visibility of the LGBTQ+ community, which showed a lack of care for the struggles and identities of that community. Additionally, your removal of the

---

[1]     The supporting materials attached to the Intent to Suspend dated July 12, 2024 are fully incorporated by reference as if fully set forth in this letter and provides further facts and evidence for the bases of this action.

Captain, Lifeguard Services, Jeffrey Little
October 24, 2024
Page 6 of 10

PPFs was nonconductive to teamwork, because it undermined the County's commitment to fostering a diverse and inclusive work environment for all employees.

Your actions were inappropriate and discriminatory, which created an uncomfortable working environment for your staff. Your misconduct set a poor example for your subordinates, who look to you for guidance and leadership. Your actions were also disruptive, as your removal of the PPFs created confusion and discord among people who witnessed the incident.

As a captain, you are expected to lead by example and adhere to County and Department policies and procedures. Removing the PPFs in front of staff and the public, without first attempting to seek clarification or approval to do so from your management, demonstrated poor judgment and contradicted the BOS' initiative to show support for and inclusion of the LGBTQ+ community. Instead of leading by example, your removal of the PPFs sent a message of disregard for your chain of command. You demonstrated to your subordinates that if they do not agree with management's instructions, they need not comply.

Captain Little, this suspension is due to the seriousness of your misconduct. Your actions were unacceptable and violated the County Policy of Equity and Department's Standards of Behavior.

You are hereby advised that any further violation of the County's policies and procedures, or the Department's Standards of Behavior, may be grounds for more serious disciplinary action, including discharge.

In deciding to take this action, your record was considered as follows:

- Your continuous service date is September 1, 2013;

- You have been employed with the Department since March 30, 2002;

- You have no prior history of administrative actions;

- You signed the Acknowledgement of Employee Responsibilities on February 19, 2020, indicating you received and read that it is the responsibility of every County employee to conduct him/herself in a manner consistent with laws and policies that prohibit unlawful discrimination, including the creation of a hostile work environment based on race, color, gender, disability, sexual orientation, pregnancy, sexual harassment, and retaliation;

- You signed the Employee Acknowledgement and Receipt of County Policy of Equity on February 14, 2020, indicating that you will adhere to the CPOE;

Captain, Lifeguard Services, Jeffrey Little
October 24, 2024
Page 7 of 10

- You signed the Receipt and Employment Acknowledgement of the Countywide Discipline Guidelines, Revised Standards of Behavior, and Supplemental Discipline Guidelines on January 19, 2017; and

- You received overall ratings on your three most recently available annual performance evaluations as follows:

  - April 1, 2022 – March 31, 2023 ...................................... "Very Good"
  - April 1, 2021 – March 31, 2022 ...................................... "Competent"
  - July 16, 2020 – March 31, 2021 ................................... "Competent"

In addition, please be advised that in accordance with the Countywide Discipline Guidelines: For Employees and Department's Supplemental Discipline Guidelines, Volume 2, Chapter 1, Subject 5, the ranges of penalties are as follows:

Countywide Discipline Guidelines: For Employees

| OFFENSE | | FIRST OCCURRENCE | SECOND OCCURRENCE | THIRD OCCURRENCE |
|---|---|---|---|---|
| II. DISRESPECTFUL CONDUCT / INSUBORDINATION | | | | |
| B. | Failure to follow established rules or regulations | Warning to 10-Day Suspension | 15 to 30-Day Suspension; Discharge | Reduction or Discharge |
| F. | Insubordination or refusal to follow instructions of a supervisor or higher ranking agency personnel, including behavior demonstrating disregard or disrespect of supervisor (or higher ranking agency personnel) or directions of supervisor or higher ranking agency personnel | 1 to 15-Day Suspension; Reduction; Discharge | 30-Day Suspension; Reduction; Discharge | Discharge |

Captain, Lifeguard Services, Jeffrey Little
October 24, 2024
Page 8 of 10

| IV. INAPPROPRIATE CONDUCT IN VIOLATION OF COUNTY POLICY OF EQUITY | | | | |
|---|---|---|---|---|
| A. | Inappropriate conduct toward others based on protected characteristic(s) when such conduct reasonably would be considered inappropriate for the workplace (See, County Policy of Equity) | Reprimand to 10-Day Suspension | 15 to 30-Day Suspension; Discharge | Discharge |
| B. | Engaging in disparate or adverse treatment of an individual's protected characteristic(s) in violation of the County Policy of Equity (See, County Policy of Equity) | Reprimand to 10-Day Suspension | 20 to 30-Day Suspension; Discharge | Discharge |
| VII. PERFORMANCE TO STANDARDS OR EXPECTATIONS | | | | |
| B. | Discourtesy with fellow employees; may include, but not limited to, disrespectful, insulting, abusive language or conduct | Warning to 10-Day Suspension; Discharge | 15 to 30-Day Suspension; Discharge | Discharge |
| F. | Work performance fails to meet job expectations, standards or requirements - whether implied or explicit | Warning to 10-Day Suspension | 15 to 30-Day Suspension; Reduction | Reduction or Discharge |
| H. | Failure to exercise sound judgment which results in loss of, or injury, or damage to persons or property of the County or of County service | Reprimand to 15-Day Suspension; Reduction; Discharge | 20 to 30-Day Suspension; Reduction; Discharge | Discharge |
| N. | Abuse of supervisory or management authority, or conduct unbecoming a position of authority | Reprimand to 15-Day Suspension; Reduction; Discharge | 20 to 30-Day Suspension; Reduction; Discharge | Discharge |

Captain, Lifeguard Services, Jeffrey Little
October 24, 2024
Page 9 of 10

Department's Supplemental Discipline Guidelines

| I.–IX. COUNTYWIDE DISCIPLINE GUIDELINES | | | |
|---|---|---|---|
| **X.   Offenses and Ranges of Discipline** | | | |
| OFFENSE | FIRST OCCURRENCE | SECOND OCCURRENCE | THIRD OCCURRENCE |
| **2.   FAILURE TO ABIDE BY DEPARTMENTAL STANDARDS** | | | |
| F.  Conduct unbecoming or bringing discredit or embarrassment upon the Department through on-duty or off-duty behavior | Reprimand 3-30 days Reduction Discharge | 10-30 days Reduction Discharge | Discharge |
| **3.   PERFORMANCE DEFICIENCIES** | | | |
| D.  Failing to exercise good judgment or to take proper action | Reprimand 3-10 days | 3-10 days 15-30 days | Reduction Discharge |

You are hereby advised that any further violation of the Department's Standards of Behavior may be grounds for more serious disciplinary action.

Please note that the Countywide Discipline Guidelines: For Employees specify:

It is imperative that management look at the *totality of the circumstances* surrounding a particular offense, or set of offenses, in order to determine the appropriate administrative response.

Built into these guidelines, is some degree of flexibility in determining the appropriate level of discipline. This may result in an administrative action *more* or *less* severe than those listed in these guidelines.

These guidelines approach discipline progressively; however, Management reserves the right to impose discipline *based on the totality of the circumstances*, up to discharge from County service.

(Emphasis added.)

Please also note that each offense of the Countywide and Supplemental disciplinary guidelines cited above may—and often will—serve as wholly independent bases for the discipline being imposed.

Please be advised that the Employee Assistance Program (EAP) offers professional consultation and referral service for a broad range of personal and job-related issues. You may reach EAP at (213) 433-7202.

Captain, Lifeguard Services, Jeffrey Little
October 24, 2024
Page 10 of 10

Pursuant to Civil Service Rules, you may appeal your suspension and request a hearing on this action from the Civil Service Commission. Your request must be in writing, state the action you are appealing, and describe the facts and reasons upon which you are basing your appeal. Your appeal letter must be received by the Civil Service Commission within 15 business days from the service date of this letter. The Civil Service Commission is located at 500 W. Temple Street, #522, Hall of Administration, Los Angeles, CA 90012. Please send a copy of your appeal letter to: Chief, Professional Performance Section, at 1255 Corporate Center Drive, Suite 405, Monterey Park, CA 91754.

You may also respond in writing to this suspension and have your response placed in your personnel file.  If you wish to do so, please submit your response to the Chief, Professional Performance Section, at the above address, within ten business days.

Sincerely,

DEPUTY FIRE CHIEF ROBERT HARRIS
CENTRAL REGIONAL OPERATIONS BUREAU

RH:js

c:     Official Personnel File – Professional Performance Section

**EXHIBIT 20**

**From:** Joshua Youngkin
**To:** AHudson@bos.lacounty.gov
**Cc:** Paul Jonna
**Subject:** RE: Request to Contact: ICMS No. 2024-125365
**Date:** Thursday, March 21, 2024 5:07:12 PM
**Attachments:** LA County.001 - Ltr Rep - 03-21-24.pdf

Dear Ms. Hudson:

Please see attached for Captain Little's response to your email.

**Joshua Youngkin** | Associate
**LiMANDRI & JONNA LLP** | P.O. Box 9120 | Rancho Santa Fe, CA 92067
Tel: (858) 759-9930 |Direct: (858) 832-8722 |Fax: (858) 759-9938
jyoungkin@limandri.com | www.limandri.com

This communication (including any attachments) contains confidential information protected by the attorney-client privilege and/or attorney work-product privilege intended only for a specific person(s) or entity(ies) named as the recipient(s).  If you are not the intended recipient(s), you should delete this communication and/or shred the materials and any attachments and are hereby notified that any disclosure, copying, use or distribution of this communication, or the taking of any action based in it, is strictly prohibited by law.  If you receive this transmission by error, please notify us by telephone immediately.  Thank you.

_____
From: Hudson, Ashley <AHudson@bos.lacounty.gov>
Sent: Friday, March 15, 2024 12:48 PM
To: Jeffrey Little
Subject: Request to Contact: ICMS No. 2024-125365

Dear Jeffrey Little,

The County Intake Specialist Unit (CISU) is in receipt of a County Policy of Equity complaint that was either filed by you or filed on your behalf.  I would like to speak with you regarding this complaint.

Your participation would assist in the assessment of the complaint.  Please contact me, using the contact information listed below within five (5) business days of the date of this letter so we can schedule a clarifying interview.

If I do not hear from you by that date, I will conclude that you have decided to not participate further, and I will complete the assessment of the complaint absent your participation. Please keep in mind that your decision to not participate at this time does not prevent you from choosing to participate at a later date while this matter remains open or from filing a future complaint

regarding this or another matter.

I can be reached directly at ahudson@bos.lacounty.gov<mailto:ahudson@bos.lacounty.gov> from 7:00 am through 4:00 pm Monday through Friday.

Ashley Victoria Hudson (She/Her)
Assessor
County Equity Oversight Panel
County Intake Specialist Unit
Kenneth Hahn Hall of Administration
500 West Temple Street, Suite B-28
Los Angeles, CA 90012
ahudson@bos.lacounty.gov<mailto:ahudson@bos.lacounty.gov>

[cid:image001.jpg@01DA76D6.4DE91210]      [cid:image002.png@01DA76D6.4DE91210]

EXHIBIT 21



# LIMANDRI & JONNA LLP

CHARLES S. LiMANDRI†*
PAUL M. JONNA†

MARK D. MYERS
JEFFREY M. TRISSELL†
ROBERT WEISENBURGER
JOSHUA A. YOUNGKIN
MILAN L. BRANDON II
JOHANNA DELEISSEGUES

RICHARD SALPIETRA
BRIAN D. MILLER
   Of Counsel

**\*BOARD CERTIFIED CIVIL TRIAL ADVOCATE**
   **ADMITTED TO THE DISTRICT OF COLUMBIA BAR**
   **ADMITTED TO THE NEW YORK BAR**
**†ADMITTED TO THE U.S. SUPREME COURT**

**MAILING ADDRESS:**

POST OFFICE BOX 9120
RANCHO SANTA FE, CALIFORNIA  92067
TELEPHONE:  (858) 759-9930
FACSIMILE:    (858) 759-9938

WEBSITE:  www.limandri.com

PHYSICAL ADDRESS:

16236 SAN DIEGUITO ROAD
BUILDING 3, SUITE 3-15
RANCHO SANTA FE, CA  92091

KATHY DENWORTH
Office Manager

March 21, 2024

**Via E-Mail Only:  AHudson@bos.lacounty.gov**

Ms. Ashley Victoria Hudson, Assessor
County Equity Oversight Panel
County Intake Specialist Unit
COUNTY OF LOS ANGELES
Kenneth Hahn Hall of Administration
500 West Temple Street, Suite B-28
Los Angeles, CA 90012

     **Re:**    **Request to Contact:  ICMS No. 2024-125365**

Dear Ms. Hudson:

     Please be advised that this office has been retained to represent Captain Jeffrey Little of the Los Angeles County Fire Department, Lifeguard Division, in connection with EEOC Charge No: 480-2024-02766, attached hereto as **Exhibit A**, and CRD Matter Number: 202403-23805101, attached hereto as **Exhibit B**. As to the latter, please note that CRD has issued a Right to Sue on state claims. As to the former, EEOC has forwarded the charge to DOJ for processing of a Right to Sue on federal claims. See **Exhibit C** to this letter, attached. In support of the claims and assertions in the EEOC charge, please see **Exhibits D - P** attached hereto, previously included as addenda to the CRD charge.

     We are in receipt of your email dated Friday, March 15, subject Request to Contact: ICMS No. 2024-125365, in which the County Intake Specialist Unit (CISU) has requested of Captain Little his participation in assessment of a County Policy of Equity complaint you claim in your email has been filed by Captain Little or filed by another on Captain Little's behalf. If you would, please forward this letter to legal counsel for Los Angeles County and consider this

Ms. Ashley Victoria Hudson, Assessor
County of Los Angeles, County Equity Oversight Panel
County Intake Specialist Unit
**Re: Request to Contact: ICMS No. 2024-125365**
March 21, 2024
Page 2

_____

letter Captain Little's response to your email. Additionally, please confirm by email response to jyoungkin@limandri.com your receipt of this letter and that you have forwarded this letter to legal counsel for Los Angeles County as requested.

Sincerely,

LiMANDRI & JONNA LLP

Paul M. Jonna

PMJ/jy
Enclosures

**EXHIBIT A**

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | EEOC | **480-2024-02766** |

| | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| I Name *(indicate Mr., Ms., Mrs., Miss, Mx., Dr., Hon., Rev.)* | Home Phone | Year of Birth |
|---|---|---|
| Mr. Jeffrey Little | | |

Street Address

**REDACTED**

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| Los Angeles County Fire Department | 501+ Employees | 323-881-2411 |

Street Address

1320 N. Eastern Ave

Los Angeles, CA 90063

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| | Earliest | Latest |
| Religion, Retaliation | 03/11/2024 | 03/11/2024 |
| | Continuing Action |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

Claimant Cpt. Jeff Little (Cpt. Little) alleges that LA County Lifeguards violated Title VII of the Civil Rights Act of 1964 as follows:

Cpt. Little is a Christian. His religious beliefs are sincere and bear on his views on marriage, sexual relations, and family, among other topics. His religious beliefs inform his work performance, too, which has been excellent. He received uniformly positive performance reviews. He has never been disciplined. Until the incidents described in this complaint, he never received any complaints. He passed the Captain's test on his first attempt. He was promoted to Captain the first time he was eligible for promotion and applied. He had a positive reputation among his peers and those he supervised.

However, on March 7, 2023, the LA County Board of Supervisors unanimously approved Board Motion "AGN. No._____" concerning the Pride Flag. CEO Davenport then directed County Dept.s and Agencies, including the Fire Department ("Dept."), of which LA County Lifeguards is a

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| **Digitally Signed By: Mr. Jeffrey Little** **03/11/2024** | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |
| *Charging Party Signature* | |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | EEOC | 480-2024-02766 |

|  |  | and EEOC |
|---|---|---|
| | *State or local Agency, if any* | |

division, to implement the March 2023 Board Motion. On May 25, 2023, the Dept. issued Dept. Policy EA 231 to carry out the March 2023 Board Motion directives.

EA231 was issued by the Dept. through Acting Chiefs Jon O'Brien and Theresa R. Barrera. EA-231 required "Captains/Site Supervisors" to "ensure flags are received and flown throughout June." Pursuant to EA-231 and EA-231a, the Pride Flag would be flown in areas and sub-areas depending on whether the area had a flagpole, the number of flag poles at site, and the number of clasps (for attaching flags) on each pole. Accordingly, the Pride Flag would not be flown in some areas or sub-areas.

The County Policy of Equity (CPOE) prohibits religious discrimination and harassment based on religion. The pride-related belief statement of "sex, life, healing, sunlight, nature, magic and art, serenity, and spirit" documented in the March 2023 Board Motion is a religious statement and amounts to religious doctrine. Cpt. Little is a Christian whose sincere religious beliefs conflict with and require him to reject the doctrine of "sex, life, healing, sunlight, nature, magic and art, serenity, and spirit." Further, the Pride Flag symbolizes and advances a range of controversial religious and moral views, including about the family, the nature of marriage and human sexuality including the promotion of certain sexual practices, and the identity, nature and purpose of the human person, all of which are in direct conflict with Cpt. Little's bona fide and sincerely held religious beliefs. Cpt. Little's bona fide and sincerely held religious beliefs require him to reject those views.

Thus, on June 18, 2023, Cpt. Little requested a religious accommodation concerning EA-231 because his bona fide and sincerely held religious beliefs prevented him from raising the Pride Flag or ensuring that it was raised. On June 19, 2023, the Dept. initially granted Cpt. Little's request as follows: (1) movement to a site not flying the Pride Flag; (2) no requirement to raise the Pride Flag; and 3) no requirement to ensure raising of the Pride Flag. So, he would be allowed to work the Dockweiler Area, North and South, and El Segundo Lifeguard stations.

On June 21, 2023, before Cpt. Little's shift, Section Chief Lester visited the Dockweiler Area and ordered the lifeguards at each subarea to raise the Pride Flags; they were then raised. This violated EA-231 and EA-231a. At 10:30 a.m. on June 21, 2023, Cpt. Little arrived at work. With the permission of the OLSs, took down the flags because of the prior grant of accommodation because of the violation of EA-231 and EA-231a. That was between 11:30 a.m. and 2:30 p.m. Later that day, at about 2:45 p.m., the Dept. informed Cpt. Little by Microsoft Teams that his accommodation had been revoked. Cpt. Little again informed the Dept. that raising the flag would conflict with his bona fide and sincerely held religious beliefs.

On June 21, 2023, after revocation of the accommodation, Section Chief Lester ordered Cpt. Little to raise the Pride Flag. In his words, language, and tone, Lester's conduct toward Cpt. Little was abusive, inappropriate, harassing, and discriminatory. Section Chief Lester's conduct was motivated by animus toward Cpt. Little's religious beliefs, and his conduct toward Cpt. Little was based on Cpt. Little's religious beliefs and was in retaliation for Cpt. Little seeking a religious accommodation.

On June 21, 2023, Assistant Lifeguard Chief Uehara affirmed the denial of any religious accommodation for Cpt. Little and denied Cpt. Little's right to use work-related benefits, including time off benefits, as a means for Cpt. Little to avoid the conflict between EA-231 and his bona fide and sincerely held religious beliefs.

On June 22, 2023, without justification or notice, the Dept. abruptly ended the interactive process and refused Cpt. Little any religious accommodation, less than two days after granting him an accommodation. This was a violation of FEHA and Title VII: The Dept. could grant Cpt.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| **Digitally Signed By: Mr. Jeffrey Little**<br><br>03/11/2024<br><br>*Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | EEOC | 480-2024-02766 |

and EEOC

_____
*State or local Agency, if any*

Little a religious accommodation to EA-231 without undue burden to itself, including because other Dept. employees were at each area and subarea who could be responsible for raising the Pride Flag or ensuring the Pride Flag is raised.

Since June 22, 2023, the Dept. has refused to engage in the interactive process with Cpt. Little. This violates FEHA and Title VII: The Dept. is legally obliged to engage in the interactive process with Cpt. Little concerning his requested religious accommodation.

On June 22, 2023 Cpt. Little was placed under Direct Order to fly the Pride Flag and ensure that the Pride Flag is flown as instructed in EA-231. The written Direct Order was served on Cpt. Little by Lifeguard Chief Boiteux. Lifeguard Chief Boiteux told Cpt. Little, "You need to stop what you are doing," "You are an LA County employee; that's the only thing that matters," and "Your religious beliefs do not matter; you are an LA County employee." He repeated multiple times, "You are an LA County employee. Your religious beliefs do not matter." Lifeguard Chief Boiteux is 6'5" and 240 lbs. and he delivered this message in a violent and angry manner while standing over Cpt. Little.

On June 22, 2023, Cpt. Little was placed under a Notice of Investigation on pretextual charges. On June 22, 2023, Cpt. Little was placed under a Notice of Instruction: "All Dept. employees, irrespective of personal beliefs, are expected to comply with EA-231, which includes raising the flag as instructed." On June 23, 2023, Cpt. Little was terminated from the background investigation unit for the Dept., resulting in a significant loss of overtime, income and prestige.

On June 27, 2023, the Dept. alleges it received a CPOE complaint against Cpt. Little. This alleged complaint is also pretextual.

On June 28, 2023, Cpt. Little received a death threat against him and his children. The death threat was printed by hand in letters that alternate in color and said: "Jeff Fuck you and your Jesus. Your hate won't be tolerated. We know where you live and work. You better pay respect to our pride flag or we will fuck you up. We know about you cute little girls and aren't afraid to rape the shit out of them if you don't honor us. You are a fascist pig and deserve to die."

Upon information and belief, the Dept. breached Cpt. Little's right to employment-related privacy rights. The Dept., through the persons identified herein, disclosed to unauthorized recipients that Cpt. Little requested religious accommodation to not raise the Pride Flag. This breach of privacy led to (1) his termination from investigative work for the Dept.; (2) a complaint against him on or about June 27, 2023; and, 3) the death threat against him and his family.

On June 30, 2023, the Dept. launched a retaliatory investigation of Cpt. Little, which amounted to retaliation, religious discrimination, and harassment. The Dept.'s investigation of him is pretextual and meant to punish, harass and discriminate against him for (1) requesting religious accommodation; (2) noncompliance with EA-231 because of conflict with his religious beliefs; and (3) filing his own CPOE complaint.

On September 14, 2023, the Dept. notified Cpt. Little that he was under another formal County investigation. This investigation is pretextual and meant to punish, harass and discriminate against Cpt. Little for (1) requesting religious accommodation; (2) noncompliance with EA-231 because of conflict with his religious beliefs; and (3) filing his own CPOE complaint.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| **Digitally Signed By: Mr. Jeffrey Little** **03/11/2024** *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

Page 3 of 5

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | EEOC | 480-2024-02766 |

| | and EEOC |
|---|---|
| *State or local Agency, if any* | |

On February 7, 2024, the Dept. notified Cpt. Little that he violated the CPOE and that administrative action may follow, a retaliatory outcome of the pretextual investigation launched in June 2023.

On June 22, 2023, at 11:58 a.m., Cpt. Little filed a CPOE complaint with the Dept. for religious discrimination and harassment.

On or about July 20, 2023 at 2 p.m., Cpt. Little spoke with investigator Juesta Lopez of the County's CPOE Investigative Unit. During the investigative call, Cpt. Little added to his CPOE complaint the June 22, 2023 Direct Order, the June 22, 2023 Notice of Instruction, the June 22, 2023 Notice of Investigation, the June 22, 2023 actions of Chief Boiteux, and the receipt of the June 28, 2023 death threat. He asked Ms. Lopez whether he was had to supplement his June 22, 2023 CPOE complaint in writing. She told him that was not necessary and she deemed the additional facts part of his CPOE complaint.

On July 28, 2023, the Dept. informed Cpt. Little that the conduct Cpt. Little complained about did not violate the CPOE. The Dept. did not act to protect Cpt. Little from the previous and future religious discrimination, harassment and retaliation.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>**Digitally Signed By: Mr. Jeffrey Little**<br><br>**03/11/2024**<br><br>*Charging Party Signature* | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

2. **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3. **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

**EXHIBIT B**

STATE OF CALIFORNIA  |  Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

## Civil Rights Department

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 (voice) | 800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

February 29, 2024

Paul Jonna
PO BOX 9120
Rancho Santa Fe, CA 92067

RE:   **Notice to Complainant's Attorney**
CRD Matter Number: 202403-23805101
Right to Sue: Little / Los Angeles County Fire Dept

Dear Paul Jonna:

Attached is a copy of your complaint of discrimination filed with the Civil Rights Department (CRD) pursuant to the California Fair Employment and Housing Act, Government Code section 12900 et seq. Also attached is a copy of your Notice of Case Closure and Right to Sue.

**Pursuant to Government Code section 12962, CRD will not serve these documents on the employer.** You must serve the complaint separately, to all named respondents. Please refer to the attached Notice of Case Closure and Right to Sue for information regarding filing a private lawsuit in the State of California. A courtesy "Notice of Filing of Discrimination Complaint" is attached for your convenience.

Be advised that the CRD does not review or edit the complaint form to ensure that it meets procedural or statutory requirements.

Sincerely,

Civil Rights Department

CRD - ENF 80 RS (Revised 02/23)

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

## Civil Rights Department

KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 (voice) | 800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

February 29, 2024

RE:  **Notice of Filing of Discrimination Complaint**
CRD Matter Number: 202403-23805101
Right to Sue: Little / Los Angeles County Fire Dept

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the Civil Rights Department (CRD) in accordance with Government Code section 12960. This constitutes service of the complaint pursuant to Government Code section 12962. The complainant has requested an authorization to file a lawsuit. A copy of the Notice of Case Closure and Right to Sue is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their contact information.

No response to CRD is requested or required.

Sincerely,

Civil Rights Department

CRD - ENF 80 RS (Revised 02/23)

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                                         GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

Civil Rights Department

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 (voice) | 800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

February 29, 2024

Jeffrey Little
**REDACTED**

RE:    **Notice of Case Closure and Right to Sue**
       CRD Matter Number: 202403-23805101
       Right to Sue: Little / Los Angeles County Fire Dept

Dear Jeffrey Little:

This letter informs you that the above-referenced complaint filed with the Civil Rights Department (CRD) has been closed effective February 29, 2024 because an immediate Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this CRD Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,

Civil Rights Department

CRD - ENF 80 RS (Revised 02/23)

**COMPLAINT OF EMPLOYMENT DISCRIMINATION
BEFORE THE STATE OF CALIFORNIA
Civil Rights Department
Under the California Fair Employment and Housing Act
(Gov. Code, § 12900 et seq.)**

**In the Matter of the Complaint of**

Jeffrey Little

CRD No. 202403-23805101

Complainant,

vs.

Los Angeles County Fire Dept
1320 N Eastern Ave
Los Angeles, CA 90063

Respondents

_____

**1.** Respondent **Los Angeles County Fire Dept** is an **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

**2**. Complainant **Jeffrey Little**, resides

**3**. Complainant alleges that on or about **February 29, 2024**, respondent took the following adverse actions:

**Complainant was harassed** because of complainant's religious creed - includes dress and grooming practices.

**Complainant was discriminated against** because of complainant's religious creed - includes dress and grooming practices and as a result of the discrimination was denied any employment benefit or privilege, denied accommodation for religious beliefs, other, denied work opportunities or assignments.

**Complainant experienced retaliation** because complainant requested or used a religious accommodation and as a result was denied any employment benefit or privilege, denied accommodation for religious beliefs, other, denied work opportunities or assignments.

-1-
*Complaint – CRD No. 202403-23805101*

Date Filed: February 29, 2024

CRD-ENF 80 RS (Revised 12/22)

**Additional Complaint Details:** I will upload addendum detailing actions under file name 24.02.28 Addendum for Admin Claims FINAL4FILING

-2-

*Complaint – CRD No. 202403-23805101*

Date Filed: February 29, 2024

CRD-ENF 80 RS (Revised 12/22)

VERIFICATION

I, **Jeffrey Little**, am the **Complainant** in the above-entitled complaint.  I have read the foregoing complaint and know the contents thereof.  The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true.

On February 29, 2024, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

-3-
*Complaint – CRD No. 202403-23805101*

Date Filed: February 29, 2024

CRD-ENF 80 RS (Revised 12/22)

**EXHIBIT C**



## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### Los Angeles District Office

255 E. Temple Street, 4th Floor
Los Angeles, CA 90012
Intake Information Group: (800) 669-4000
Intake Information Group TTY: (800) 669-6820
Los Angeles Direct Dial: (213) 785-3090
FAX (213) 894-1118
Website: www.eeoc.gov

Mr. Jeffrey Little
**REDACTED**

Joshua Younkin
LIMANDRI & JONNA LLP
P.O. Box 9120
Rancho Santa Fe, CA 92067

Letitia Ellison-Cooper, Principal Analyst County Equity Investigations
Los Angeles County Fire Department
County Equity Investigations Unit 500 West Temple Street, Suite 588
Los Angeles, CA 90012

RE:     Charge No: 480-2024-02766

Dear Mr. Jeffrey Little:

The Commission has received your request for a Notice of Right to Sue in the above-referenced charge. Your request has been forwarded to the U. S. Department of Justice for action. That agency will act on your request as soon as possible and issue the Notice directly to you.

If you have any questions, please write:

Karen L. Ferguson, Supervisory Civil Rights Analyst
USDOJ, CRT, Employment Litigation Section
4 Constitution Square
150 M Street, NE, Rm. 9.514
Washington, DC 20530

Your charge alleged discrimination based on violation of one or more of the following laws:

Title VII of the Civil Rights Act of 1964 (Title VII)

If your charge includes an ADEA basis, please note the following: While Title VII and the ADA bases require the issuance of a Right to Sue before you can bring suit under the law, you obtained the right to sue under the ADEA when you filed your charge, subject to a 60-day waiting period. ADEA suits must be brought **within 90 days** of the date of your receipt of this notice. Otherwise, your right to sue on the above-numbered charge will be lost. Individuals filing EPA claims may proceed directly into court. EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible**.
With the issuance of this letter, the Commission is terminating its process with respect to these charges.

On Behalf of the Commission:

Digitally Signed By:Christine Park-Gonzalez

03/13/2024

_____
Christine Park-Gonzalez, District Director
Los Angeles District Office

EXHIBIT 22



# LiMANDRI & JONNA LLP

CHARLES S. LiMANDRI†*
PAUL M. JONNA†

MARK D. MYERS
JEFFREY M. TRISSELL†
ROBERT WEISENBURGER
JOSHUA A. YOUNGKIN
MILAN L. BRANDON II
JOHANNA DELEISSEGUES

RICHARD SALPIETRA
BRIAN D. MILLER
   Of Counsel

**\*BOARD CERTIFIED CIVIL TRIAL ADVOCATE**
   **ADMITTED TO THE DISTRICT OF COLUMBIA BAR**
   **ADMITTED TO THE NEW YORK BAR**
**†ADMITTED TO THE U.S. SUPREME COURT**

**MAILING ADDRESS**:

POST OFFICE BOX 9120
RANCHO SANTA FE, CALIFORNIA  92067
TELEPHONE:  (858) 759-9930
FACSIMILE:   (858) 759-9938

WEBSITE:  www.limandri.com

PHYSICAL ADDRESS:

16236 SAN DIEGUITO ROAD
BUILDING 3, SUITE 3-15
RANCHO SANTA FE, CA  92091

KATHY DENWORTH
Office Manager

April 19, 2024

**Via E-Mail Only:  AHudson@bos.lacounty.gov**

Ms. Ashley Victoria Hudson, Assessor
County Equity Oversight Panel
County Intake Specialist Unit
COUNTY OF LOS ANGELES
Kenneth Hahn Hall of Administration
500 West Temple Street, Suite B-28
Los Angeles, CA 90012

      **Re:**    *Demand for Religious Accommodation and Other Remedies with Factual and Legal Basis for Alleging Violations of State and Federal Discrimination Law*

Dear Ms. Hudson:

      We previously informed you and the County of Los Angeles by letter dated March 21, 2024, that we represent Captain Jeffrey Little of the Los Angeles County Fire Department in connection with EEOC Charge No: 480-2024-02766 and CRD Matter Number: 202403-23805101, attached hereto as **Exhibit A**.

      We had requested that you confirm receipt of the letter by email and that you forward the letter to counsel for the County of Los Angeles. We have not yet received any response, nor any confirmation that you forwarded the letter to counsel for the County of Los Angeles, nor has counsel for the County of Los Angeles engaged with this office. Thus, we ask that you acknowledge receipt of this most recent letter and confirm that you have forwarded it to counsel for the County of Los Angeles.

      Further, please be advised that US DOJ has in the interim issued to Captain Little a Right to Sue letter dated March 26, 2024, attached hereto as **Exhibit B**. Per that letter, the deadline for Captain Little to file a civil action against the County under Title VII of the Civil Rights Act of

Ms. Ashley Victoria Hudson, Assessor, County of Los Angeles
County Equity Oversight Panel, County Intake Specialist Unit
**Re: *Demand for Religious Accommodation and Other Remedies***
April 19, 2024
Page 2

_____

1964, as amended, 42 U.S.C. 2000e, et seq., is 90 days from receipt of the letter, which is Monday, June 24, 2024. On February 29, 2024, Captain Little received a Right to Sue letter from CRD, attached hereto as **Exhibit C**. The deadline to file claims in state court by the terms of that letter under FEHA is one year from the date of the letter, which post-dates the federal discrimination lawsuit deadline of June 24, 2024. Because the deadline to file federal claims predates the deadline to file state claims, Captain Little will act according to the federal deadline, which is fast approaching.

**I.      Demand for Religious Accommodation and Other Remedies.**

In view of the above, and to avoid the inception of litigation prior to the June 24, 2024 deadline, Captain Little hereby demands that the County of Los Angeles ("County") effectively restore him to his pre-discrimination position and that the County accommodate his religious beliefs going forward; this demand may be implemented more particularly as follows:

   **A.      Demand for Religious Accommodation.**

   1. A standing exemption from raising or lowering the Pride Flag or Progress Pride Flag from any work site, or ordering others to do so, no renewal required, whether in the month of June or in another month.

   2. Resume the interactive process with Captain Little, *in good faith*, to discuss, detail, memorialize, and effectuate the religious accommodation demand above.

   **B.      Demand for Other Remedies.**

   1. Remove the notice of instruction and notice of investigation from Captain Little's personnel file;
   2. Terminate disciplinary proceedings, whether under the Memorandum of Understanding or under the County Policy of Equity (CPOE), against Captain Little;
   3. Reinstate Captain Little to his background investigation role with back pay for work missed (including overtime) in that role on account of discrimination and retaliation by the County, inclusive of any pay raise and/or promotion that Captain Little would have received but for same;
   4. Reimburse Captain Little in the amount of $23,046.46, for the value of benefit time Captain Little used during the period of unpaid leave in 2023, vacation hours, sick leave hours, and hours worked at reduced rate, because of discrimination and retaliation by the County, and for out-of-pocket costs of medical care incurred during this period, including mental health care;
   5. Provide back pay to Captain Little in the amount of $37,931.04 to account for the value Captain Little would have received by working approximately 336 overtime hours on background investigation unit (BIU) cases paid at overtime

Ms. Ashley Victoria Hudson, Assessor, County of Los Angeles
County Equity Oversight Panel, County Intake Specialist Unit
**Re:** *Demand for Religious Accommodation and Other Remedies*
April 19, 2024
Page 3

rate over the course of one year (28 hours on average per month multiplied by 12 months), *but for* the discrimination and retaliation by the County;

6. Rescind the Direct Order to Captain Little by Lifeguard Chief Fernando Boiteux implementing EA-231 personally and specifically against Captain Little;

7. Require senior management of the Fire Department, including but not limited to Fernando Boiteux, Adam Uehara, Danielle McMillon, and Arthur Lester, to enroll in and complete certain EEOC and Fair Treatment training programs[1];

8. Issue memoranda clarifying that EA-231 does and cannot not authorize senior management of the Department to require Department employees to violate their religious beliefs; **and**

9. Provide $433,142.50 as reasonable compensation for emotional distress suffered as a direct and proximate result of the County's violations of state and federal employment law and state tort law, which combined with the above monetary demands amounts to $495,020.

## II.    Factual Basis for Demand for Religious Accommodation and Other Remedies.

As detailed in the EEOC Charge of Discrimination attached as **Exhibit A** to the March 21, 2024 letter, the record already indicates that the County discriminated and/or retaliated against Captain Little because of religion in violation of Title VII and FEHA. Key facts from this record include the following:

1. Captain Little is a devout Christian.

2. Captain Little's Christian beliefs about marriage, human sexuality, and family are sincere and held in good faith (bona fide).

3. Captain Little's work performance has been exemplary, as is his reputation at work, neither of which were challenged prior to his request for accommodation of his good faith, sincerely held Christian beliefs about marriage, human sexuality, and family in June of 2023.

4. By its terms, the Fire Department's EA-231 requires the Progress Pride Flag to be flown at sites to which Captain Little has been assigned, was assigned in June 2023, and likely would be assigned in the future.

5. By its terms, the Fire Department's ("Department") EA-231 requires Captain Little as a Captain/Site Supervisor to ensure that the Progress Pride Flag will be flown (i.e., handled, raised, lowered, and stored, etc.) at sites at which he is or would be assigned.

---

[1] These programs should include the following: SHRM: US Employment Law and Compliance, a 5-week live online program; SHRM: Creating an Inclusive Workplace, eLearning; Harassment and Diversity: Respecting Differences, Managers Version, DVD Learning; SHRM: Employee Relations: Creating a Positive Work Environment, two-week Live Online Program; SHRM: Employment Laws: What Supervisors Need to Know- Corporate, eLearning.

Ms. Ashley Victoria Hudson, Assessor, County of Los Angeles
County Equity Oversight Panel, County Intake Specialist Unit
**Re:** *Demand for Religious Accommodation and Other Remedies*
April 19, 2024
Page 4

6. The Progress Pride Flag (PPF or "Pride Flag") symbolizes and advances a range of controversial religious and moral views, including about the family, the nature of marriage and human sexuality, including the promotion of certain sexual practices, and the identity, nature, and purpose of the human person. Additionally, aspects of the Pride Flag represent "sex," "magic," and "spirit", among other notions, according to the County Board of Supervisors' motion that prompted the promulgation of EA-231. The Pride Flag and its public meaning has featured prominently during instances of Drag Queen Story Hour, during which drag queens read books to young children. The Pride Flag and its public meaning has featured prominently during Gay Pride parades around the world, including those at which adults wear little to no clothing while in the presence of children. The views associated with the Pride Flag, and as indicated in the uses above, are in direct conflict with Captain Little's bona fide and sincerely held religious beliefs on the same subjects. Captain Little's bona fide and sincerely held religious beliefs require him to reject those views.

7. On June 18, 2023, Captain Little requested a religious accommodation concerning EA-231 because his bona fide and sincerely held religious beliefs prevented him from raising the Progress Pride Flag or ensuring that it was raised.

8. On June 19, 2023, the Department initially granted Captain Little's request as follows: (1) movement to a site not flying the Pride Flag; (2) no requirement to raise the Pride Flag; and (3) no requirement to ensure raising of the Pride Flag. So, he would be allowed to work in the Dockweiler Area, North and South, and El Segundo Lifeguard stations.

9. On June 21, 2023, before Captain Little's shift, Section Chief Lester visited the Dockweiler Area and ordered the lifeguards at each subarea to raise the Pride Flags; they were then raised. This violated EA-231 and EA-231a. At 10:30 a.m. on June 21, 2023, Captain Little arrived at work. With the permission of the Ocean Lifeguard Specialists then stationed at Dockweiler, Captain Little took down the flags due to the prior grant of accommodation and the violation of EA-231 and EA-231a. That was between 11:30 a.m. and 2:30 p.m. Later that day, at about 2:45 p.m., the Department informed Captain Little by Microsoft Teams that his accommodation had been revoked. Captain Little again informed the Department that raising the flag would conflict with his bona fide and sincerely held religious beliefs.

10. On June 21, 2023, after revocation of the accommodation, Section Chief Lester ordered Captain Little to raise the Pride Flag. In his words, language, and tone, Lester's conduct toward Captain Little was abusive, inappropriate, harassing, and discriminatory. Section Chief Lester's conduct was motivated by animus toward Captain Little's religious beliefs, and his conduct toward Captain Little was based on Captain Little's religious beliefs and was in retaliation for Captain Little seeking a religious accommodation.

11. On June 21, 2023, without justification or notice, the Department abruptly ended the interactive process and refused Captain Little any accommodation, less than two days after granting accommodation. This was a violation of FEHA and Title VII. The

Ms. Ashley Victoria Hudson, Assessor, County of Los Angeles
County Equity Oversight Panel, County Intake Specialist Unit
**Re: *Demand for Religious Accommodation and Other Remedies***
April 19, 2024
Page 5

Department could grant Captain Little a religious accommodation to EA-231 without undue burden to itself, including because other Department employees were at each area and sub-area who could be responsible for raising the Pride Flag or ensuring the Pride Flag is raised.

12. On June 21, 2023, Assistant Lifeguard Chief Uehara affirmed the denial of any religious accommodation for Captain Little and denied Captain Little's right to use work-related benefits, including time off benefits, as a means for Captain Little to avoid the conflict between EA-231 and his bona fide and sincerely held religious beliefs.

13. On June 22, 2023, Captain Little was placed under Direct Order to fly the Pride Flag and ensure that the Pride Flag is flown as instructed in EA-231. The written Direct Order was served on Captain Little by Lifeguard Chief Boiteux. Lifeguard Chief Boiteux told Captain Little, "You need to stop what you are doing," "You are an LA County employee; that's the only thing that matters," and "Your religious beliefs do not matter; you are an LA County employee." He repeated multiple times, "You are an LA County employee. Your religious beliefs do not matter." Lifeguard Chief Boiteux is 6'5 and 240 pounds; he delivered this message in a violent and angry manner while standing over Captain Little.

14. On June 22, 2023, Captain Little was placed under a Notice of Investigation on pretextual charges. On June 22, 2023, Captain Little was placed under a Notice of Instruction: "All Department employees, irrespective of personal beliefs, are expected to comply with EA-231, which includes raising the flag as instructed." On June 23, 2023, Captain Little was suspended from the background investigation unit for the Department, resulting in a significant loss of overtime, income, and prestige. On June 27, 2023, the Department alleges it received a CPOE complaint against Captain Little. This alleged complaint is also pretextual.

15. On June 22, 2023, at 11:58 a.m., Captain Little filed a CPOE complaint with the Department for religious discrimination and harassment.

16. Since June 22, 2023, the Department has refused to engage in the interactive process with Captain Little. This violates FEHA and Title VII. The Department is legally obliged to engage in the interactive process with Captain Little concerning his requested religious accommodation.

17. On June 28, 2023, Captain Little received a death threat against him and his children. The death threat was printed by hand in letters that alternate in color and said: "Jeff Fuck you and your Jesus. Your hate won't be tolerated. We know where you live and work. You better pay respect to our pride flag or we will fuck you up. We know about your cute little girls and aren't afraid to rape the shit out of them if you don't honor us. You are a fascist pig and deserve to die."

18. Upon information and belief, the Department breached Captain Little's right to employment-related privacy rights. The Department, through the persons identified herein, disclosed to unauthorized recipients that Captain Little requested a religious accommodation to not raise the Pride Flag. This breach of privacy led to (1) his

Ms. Ashley Victoria Hudson, Assessor, County of Los Angeles
County Equity Oversight Panel, County Intake Specialist Unit
**Re: *Demand for Religious Accommodation and Other Remedies***
April 19, 2024
Page 6

suspension from investigative work for the Department; (2) a complaint against him on or about June 27, 2023; and (3) the death threat against him and his family.

19. On June 30, 2023, the Department launched a retaliatory investigation of Captain Little, which amounted to retaliation, religious discrimination, and harassment. The Department's investigation of him is pretextual and meant to punish, harass, and discriminate against him for (1) requesting a religious accommodation; (2) non-compliance with EA-231 because of the conflict with his religious beliefs; and (3) filing his own CPOE complaint. On September 14, 2023, the Department notified Captain Little that he was under another formal County investigation. This investigation is pretextual and meant to punish, harass, and discriminate against Captain Little for (1) requesting a religious accommodation; (2) noncompliance with EA-231 because of the conflict with his religious beliefs; and (3) filing his own CPOE complaint.

20. On or about July 20, 2023, at 2:00 p.m., Captain Little spoke with investigator Justa Lopez of the County's CPOE Investigative Unit. During the investigative call, Captain Little added to his CPOE complaint the June 22, 2023, Direct Order, the June 22, 2023, Notice of Instruction, the June 22, 2023, Notice of Investigation, the June 22, 2023, actions of Chief Boiteux, and the receipt of the June 28, 2023, death threat. He asked Ms. Lopez whether he had to supplement his June 22, 2023 CPOE complaint in writing. She told him that was not necessary, and she deemed the additional facts part of his CPOE complaint.

21. On July 28, 2023, the Department informed Captain Little that the conduct Captain Little complained about did not violate the CPOE. The Department did not act to protect Captain Little from previous and future religious discrimination, harassment, and retaliation.

22. On February 7, 2024, the Department notified Captain Little that he violated the CPOE, and that administrative action may follow, a retaliatory outcome of the pretextual investigation launched in June 2023.

## III.    Legal Basis for Demand for Religious Accommodation and Other Remedies.

### A.    Captain Little Can Make Out a *Prima Facie* Case for Discrimination and Retaliation under Title VII and FEHA.

Per the Court in *Burcham v. City of Los Angeles* (C.D. Cal. 2022) 562 F.Supp.3d 694, 708, "Title VII and FEHA make it unlawful for an employer to discriminate against an employee based on their religion." (Citations omitted.) "To plead a prima facie case of religious discrimination, a plaintiff must allege facts that plausibly demonstrate: (1) he holds a 'bona fide religious belief, the practice of which conflicted with an employment duty; (2) he informed the employer of that belief and conflict; and (3) the employer threatened the employee with or subjected him to discriminatory treatment, including discharge, because of an inability to fulfill the job requirements.'" *Id*. (citation omitted). Once a plaintiff has made a *prima facie* showing,

Ms. Ashley Victoria Hudson, Assessor, County of Los Angeles
County Equity Oversight Panel, County Intake Specialist Unit
**Re: *Demand for Religious Accommodation and Other Remedies***
April 19, 2024
Page 7

the burden shifts to the defendant to show that "… it initiated good faith efforts to accommodate reasonably the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship." *Schmidt v. City of Pasadena* (C.D. Cal., Mar. 8, 2023, No. LA CV21-8769) 2023 WL 4291440, at *7 (citation omitted).

As a threshold matter, to make out a claim for violation of Title VII's bar to religious discrimination or retaliation, there must be allegations of a conflict between the work requirement at issue and the bona fide, sincerely held religious belief (and related religious practice) of the employee that is said to be in conflict with the work requirement. The work requirement here as expressed by EA-231 and applied to Captain Little personally and directly by Mr. Boiteux's Direct Order is that Captain Little is to fly the Pride Flag at any station to which he may be assigned and to which EA-231 may apply, because, per Boiteux, Captain Little's religious beliefs on the issue of conflict simply "don't matter," that, more specifically, being an LA County employee means prioritizing County-dictated beliefs and values over against the religious beliefs and values of the employee in the event of conflict between the two. But this position is not the law; quite the opposite.

In *Lawson v. Washington* (9th Cir. 2002) 296 F.3d 799, 804, the United States Court of Appeals for the Ninth Circuit stated that "[i]t is undisputed in this case that as a Jehovah's Witness, Lawson's bona fide religious beliefs conflict with the WSP requirements that he salute the flag and undertake the obligation of a commissioned law enforcement officer before he assumes his office to swear his allegiance to the United States and the State of Washington." (Citation omitted.) In so finding, the Court cited from the earlier United States Supreme Court case of *West Virginia State Bd. of Educ. v. Barnette* (1943) 319 U.S. 624, 643, Justices Black and Douglas' concurrence, for the proposition that "[t]he Jehovah's Witnesses, without any desire to show disrespect for either the flag or the country, interpret the Bible as commanding, at the risk of God's displeasure, that they not go through the form of a pledge of allegiance to any flag." Captain Little's religious beliefs conflict with the public meaning of the Pride Flag in a manner similar to the conflicts at issue in *Lawson* and *Barnette*.

As mentioned above, Captain Little is a Christian. Specifically, he is an evangelical Christian with beliefs on marriage, family, sexual behavior and identity that align with traditional biblical-social teachings on those topics. The sum and substance of these beliefs, and the conflict with these beliefs that would arise as a result of the County's demand for compliance with the work requirements of EA-231, were communicated clearly to the County during the interactive process.[2] This communication led subsequently and directly to discriminatory and retaliatory treatment by the County, as detailed above. (Indeed, for the purpose of satisfaction of pleading requirements, it should not be controversial to say Captain Little informed the County of his religious beliefs and the conflict between same and compliance with EA-231 and that the County

---

[2] Captain Little provided the County during the interactive process the various detailed biblical teachings relevant to the issue of conflict between religious belief of the employee and the work requirement of the employer, to which Captain Little also adheres.

Ms. Ashley Victoria Hudson, Assessor, County of Los Angeles
County Equity Oversight Panel, County Intake Specialist Unit
**Re: *Demand for Religious Accommodation and Other Remedies***
April 19, 2024
Page 8

through its employees, like Mr. Boiteux, for one, subjected Captain Little to discriminatory treatment specifically targeting Captain Little's religious belief as supposed justification for that treatment.) Further, while the County initiated the interactive process as required by law, contrary to law it also terminated that same process prior to explanation of how the accommodation of religious belief that Captain Little requested would amount to an undue hardship for the County.

It is not yet clear why exactly the County terminated the interactive process with Captain Little without granting his demanded religious accommodation, and without offering any explanation for same, but it is clear that the Christian beliefs that Captain Little expressed to the County during the interactive process are sincerely held and genuinely religious in nature. They are not social or political in nature, though there may be social or political implications flowing from Captain Little's religious beliefs and or from his religious worldview in general. However, whatever the implications, and however disagreeable his religious beliefs may be to the County, in view of the authority below, Captain Little's religious beliefs are subject to the full protection of state and federal discrimination law.

Well-established precedent makes clear that religious beliefs need only be sincerely held. They do not need to be understandable to others. They can even be personal to the employee and not recognized by any organization. Further, an employee need not be able to articulate his religious beliefs in a way the employer accepts. See *Thomas v. Review Bd. of Indiana Employment Security Division* (1981) 450 U.S. 707, 714 ("[R]eligious beliefs need not be acceptable, logical, consistent, or comprehensible to others . . . ."); *Philbrook v. Ansonia Bd. of Educ.* (2d Cir. 1985) 757 F.2d 476, 481-488 (courts use same standard for sincerity under Title VII as in free exercise cases). See also *Davis v. Fort Bend County* (5th Cir. 2014) 765 F.3d 480, 485 (a court's task is to decide whether an individual's beliefs "… are, in his own scheme of things, religious"). An employer is directed to use a "light touch" when making this inquiry. *Id.* at 486. See also *Adeyeye v. Heartland Sweeteners, LLC* (7th Cir. 2013) 721 F.3d 444, 452 (emphasizing that Title VII has a "broad and intentionally hands-off definition of religion"); *Cooper v. General Dynamics, Convair Aerospace Division* (5th Cir. 1976) 533 F.2d 163, 168 ("all forms and aspects of religion, however eccentric, are protected").

These and other cases are broadly surveyed and described in detailed guidance published on the EEOC's web page. See https://www.eeoc.gov/laws/guidance/section-12-religious-discrimination (accessed April 19, 2024). "[A] coincidence of religious and secular claims in no way extinguishes the weight appropriately accorded the religious one." *Callahan v. Woods* (9th Cir. 1981) 658 F.2d 679, 684. In short, there is "little room" for an employer to challenge the religious nature of an employee's professed beliefs. *EEOC v. Union Independiente de la Autoridad de Acueductos* (1st Cir. 2002) 279 F.3d 49, 56. Although Captain Little's sincerely held and genuinely religious beliefs have clearly met with the County's disagreement, or with the disagreement of key County employees, such beliefs do not need to be *agreeable* to the County or any of its employees in order to be protected at law. This is the teaching of the authority above.

Ms. Ashley Victoria Hudson, Assessor, County of Los Angeles
County Equity Oversight Panel, County Intake Specialist Unit
**Re:** *Demand for Religious Accommodation and Other Remedies*
April 19, 2024
Page 9

---

On June 19, 2023, the Department acknowledged that Captain Little's religious beliefs were sincerely held and further acknowledged the existence of a conflict between his religious beliefs and his job duties. The Department, therefore, granted his accommodation request. For reasons that are as unclear as they are unsupportable, the Department subsequently revoked his accommodation. It did so based on an obvious mischaracterization of Captain Little's request. From the beginning, Captain Little requested that the Department not require him to raise the pride flag. The Department mischaracterized his request as solely not wanting to work at locations where the pride flag was flown. The Department not only revoked his accommodation but refused to engage in the interactive process further. Both actions by the Department violated Title VII.

> **B.**      **To Properly Deny Captain Little's Demand for Accommodation, the County Must but Cannot Demonstrate that the Accommodation Would Constitute an "Undue Hardship" under *Groff v. Dejoy*.**

In view of the above, the factual record would, at a minimum, allow Captain Little to plead a *prima facie* case of religious discrimination and/or retaliation in view of the County's failure to reasonably accommodate Captain Little's religious beliefs, which accommodation would not amount to an "undue hardship" for the County or Department, as explained below.

In *Groff v. DeJoy* (2023) 600 U.S. 447, the United States Supreme Court clarified what constitutes an "undue hardship" under Title VII. The facts of *Groff* are similar in key respects to the facts of Captain Little's case. As the Court related in its syllabus for the case, Petitioner Gerald Groff, an Evangelical Christian, believed that Sunday should be devoted to worship and rest for religious reasons. In 2012, Groff worked as a mail delivery employee with the United States Postal Service (USPS), a government employer like the County of Los Angeles. Initially, his position did not involve Sunday work, but when USPS began facilitating Sunday deliveries for Amazon, Groff's schedule changed. To avoid Sunday work, Groff transferred to a rural USPS station that did not make Sunday deliveries. However, when Amazon deliveries started at that station too, Groff remained unwilling to work Sundays. USPS redistributed Groff's Sunday deliveries to other staff, and Groff faced "progressive discipline" for not working on Sundays. Eventually, he resigned and sued under Title VII, asserting that USPS could have accommodated his Sunday Sabbath practice *without undue hardship* on its business.

Generally, Title VII prohibits employers from discriminating against employees based on religion and requires reasonable accommodations for religious practices. The Court agreed to review the decision of the lower court in *Groff* to determine whether USPS's denial of Groff's religious accommodation violated Title VII. It determined that Title VII requires an employer denying a religious accommodation to demonstrate that the burden of granting the accommodation would result in *substantial increased costs* relative to the conduct of its specific business. In so deciding, the Court rejected the Third Circuit's interpretation of *Trans World Airlines, Inc. v. Hardison* (1977) 432 U.S. 63, which had set a *de minimis* cost standard for religious accommodations. The Court clarified that employers must, again, show *substantial*

Ms. Ashley Victoria Hudson, Assessor, County of Los Angeles
County Equity Oversight Panel, County Intake Specialist Unit
**Re:** *Demand for Religious Accommodation and Other Remedies*
April 19, 2024
Page 10

---

*increased costs*, not merely minimal ones, to justify denying a religious accommodation. As a result of *Groff*, employers cannot rely on minor inconveniences or minimal costs to deny religious accommodations. Further, the burden is *on the employer* to demonstrate substantial hardship.

As for the factors that count toward a determination of undue hardship, the Court clarified that "[w]hat matters more than a favored synonym for 'undue hardship' (which is the actual text) is that courts must apply the test in a manner that takes into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, 'size and operating cost of [an] employer.'" *Groff v. DeJoy* (2023) 600 U.S. 447, 470-471 (citation omitted). As *Groff* makes clear, the number of employees employed by the Department and its annual budget are both key factors in determination of whether Captain Little's accommodation request would genuinely result in substantially increased expenditure for the Department. Both of these factors support the position of Captain Little on the issue of reasonable accommodation over that of the County.

The Court further clarified that co-worker hostility to the sought after religious accommodation does not count as an undue hardship for the employer, nor can it factor into a finding of undue hardship; the exclusion of coworker animus toward religion is absolute. "[A] coworker's dislike of 'religious practice and expression in the workplace' or 'the mere fact [of] an accommodation' is not 'cognizable to factor into the undue hardship inquiry.'" *Id.* at 472. "An employer who fails to provide an accommodation has a defense only if the hardship is 'undue,' and a hardship that is attributable to employee animosity to a particular religion, to religion in general, or to the very notion of accommodating religious practice cannot be considered 'undue.'" *Id.* Indeed, "[i]f bias or hostility to a religious practice or a religious accommodation provided a defense to a reasonable accommodation claim, Title VII would be at war with itself. *Id.* Moreover, "… it would not be enough for an employer to conclude that forcing other employees to work overtime would constitute an undue hardship," as "[c]onsideration of other options, such as voluntary shift swapping, would also be necessary." *Id.* at 473.

### C.   Request for Response to Demand for Religious Accommodation and Other Remedies.

In view of the overbearing insistence by Mr. Boiteux that Captain Little's sincerely held religious beliefs simply "do not matter," religious animus is clearly at work at the Department and thus at the County. See *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Com.* (2018) 584 U.S. 617, 634 (hostility was shown when "commissioners endorsed the view that religious beliefs cannot legitimately be carried into the public sphere"). This is especially the case in light of the long line of cases holding that the government cannot force an employee to salute a flag. See, e.g., *Russo v. Central School Dist. No. 1* (2d Cir. 1972) 469 F.2d 623, 633.

Ms. Ashley Victoria Hudson, Assessor, County of Los Angeles
County Equity Oversight Panel, County Intake Specialist Unit
**Re:** *Demand for Religious Accommodation and Other Remedies*
April 19, 2024
Page 11

_____

However, in light of *Groff,* such animus is an improper basis for asserting an undue hardship to support denial of Captain Little's request for religious accommodation. Nor could a substantial increase of expenditure support denial, as no such increase would actually occur if the accommodation were granted. Even so, please provide a detailed response to this letter by no later than May 3, 2024. Failure to reply by this date will result in preparation of a complaint against the County that will be timely filed by Captain Little.

Upon filing the complaint, we will be very motivated to fully protect Captain Little's rights. This firm has an extensive practice litigating religious liberty claims and recovering our fees. As the County knows, following a prosecution by the County against a church for refusing to abide by the Public Health Officer's orders, the County and State *each* paid our client $400,000 in attorneys' fees[3]—after we prevailed in another case at the United States Supreme Court. *South Bay United Pentecostal Church v. Newsom* (2021) 141 S.Ct. 716. In another case—a FEHA action—the court awarded our firm a 1.7 multiplier, increasing the fees to $3.6 million. See *Dept. of Fair Employment and Housing v. Cathy's Creations, Inc.* (Cal. Super. Ct., Kern County., No. BCV-18-102633) 2023 WL 4147473.

The County and Department know that the risk of Title VII and FEHA litigation is not limited to an award of compensatory damages to plaintiffs harmed by illegal discrimination, relation, and harassment. Often, in such cases the greater exposure is to an award of attorneys' fees. See *Cash v. Cnty. of Los Angeles* (2023) WL 4492201. Even so, we are open to pre-litigation mediation subject to a tolling agreement, provided that mediation occur before June 1, 2024. However, if we cannot reach a satisfactory pre-litigation resolution, we are prepared to fully litigate this case, as is our client.

Sincerely,

LiMANDRI & JONNA LLP

Paul M. Jonna

PMJ/jy
Enclosures

_____

[3] *See, e.g.,* Jaclyn Cosgrove, *Why L.A. County paid $400,000 to a church that violated coronavirus rules*, L.A. Times (Sep. 2, 2021), https://www.latimes.com/california/story/2021-09-02/why-l-a-county-paid-400-000-to-a-church-that-violated-coronavirus-rules.

**EXHIBIT B**

U.S. Department of Justice

Civil Rights Division

NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

VIA EMAIL

*150 M Street, N.E.*
*Karen Ferguson , EMP, 4CON, Room 9.514*
*Washington, DC 20530*

March 26, 2024

Mr. Jeffrey Little
c/o Joshua Youngkin, Esquire
Law Offices of Limandri & Jonna
PO Box 9120
Rancho Sante Fe, CA  92067

Re:  EEOC Charge Against Los Angeles County Fire Department, et al.
     No. 480202402766

Dear Mr. Little:

Because you filed the above charge with the Equal Employment Opportunity Commission, and the Commission has determined that it will not be able to investigate and conciliate that charge within 180 days of the date the Commission assumed jurisdiction over the charge and the Department has determined that it will not file any lawsuit(s) based thereon within that time, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

The investigative file pertaining to your case is located in the EEOC Los Angeles District Office, Los Angeles, CA.

This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

Sincerely,

Kristen Clarke
Assistant Attorney General
Civil Rights Division

by        /s/ Karen L. Ferguson
          Karen L. Ferguson
    Supervisory Civil Rights Analyst
    Employment Litigation Section

cc: Los Angeles District Office, EEOC
  Los Angeles County Fire Department, et al.

**EXHIBIT 23**

| | |
|---|---|
| **From:** | Jeff Little |
| **To:** | Renee Nuanes-Delgadillo; Power, Kyle |
| **Cc:** | Rachel Lara; Adam Uehara; Gregory Crum; Greg Crum |
| **Subject:** | Re: IPM reply |
| **Date:** | Wednesday, May 8, 2024 3:10:10 PM |

Adding Chief Kyle Power, my immediate supervisor.

On Wed, May 8, 2024 at 3:06 PM Jeff Little **REDACTED** wrote:

Ms. Nuanes-Delgadillo & Lifeguard Chain-of-Command -

As you requested of me in the email below, I hereby make my request to the Department and County of Los Angeles for an accommodation of my religious belief, the grant of which would be applied to my work conditions and assignments this June, deemed by the County of Los Angeles to be Pride Month.

Specifically, to accommodate my religious beliefs concerning marriage, sex, and family that conflict with views on these subjects publicly associated with Pride Month (June) and its various symbols, including the Pride Flag and Progress Pride Flag, I hereby request that:

(1) I be exempt this June from the EA-231 requirement of captains/site supervisors to handle, raise, and lower the Pride Flag or Progress Pride Flag at stations/sites to which they've been assigned or otherwise stationed;

(2) I be exempt this June from the Direct Order directing my specific compliance with this requirement of EA-231; and that;

(3) I be exempt this June from any requirement to order, command, or supervise any other person, including any subordinate, colleague, or coworker, to raise, lower, or otherwise handle the Pride Flag or Progress Pride Flag.

To the extent continuation of the IPM from last year is required to negotiate the details of this request for accommodation, I ask that this process start again as soon as possible, but no later than by next week.

Thank you.

Jeff Little

On Mon, Aug 21, 2023 at 3:45 PM Renee Nuanes-Delgadillo <**REDATED REDATED** @fire.lacounty.gov> wrote:

> Good Afternoon Captain,
>
> Yes, I did receive your email and apologize for not getting back to you sooner. I have noted the responses you provided on your email dated August 6th. I cannot speak on if there will be a board motion, along with an EA, to have the PPF flown every year moving forward; however, as stated during the IPM and my response on July 31st, if you feel that you need a religious accommodation every year, you can request one

through your chain of command and they will being the process.

Thank you,

Renée Nuanes-Delgadillo

She/Her

Risk Management (RM) and Disability Management and Compliance (DMC)

Leadership & Professional Standards Bureau

County of Los Angeles Fire Department

**REDATED** Phone

---

**From:** Jeff Little
**Sent:** Monday, August 21, 2023 10:51 AM
**To:** Renee Nuanes-Delgadillo < **REDATED** @fire.lacounty.gov>
**Cc:** Rachel Lara < **REDATED** @fire.lacounty.gov>; Adam Uehara < **REDATED** @fire.lacounty.gov>; Gregory Crum < **REDATED** fire.lacounty.gov>; Danielle McMillon < **REDATED** @fire.lacounty.gov>
**Subject:** Re: IPM reply

CAUTION: External Email. Proceed Responsibly.

Dear Ms. Nuanes-Delgadillo:

I write to follow up on my email to you dated August 6, below. If you would, please acknowledge by Wednesday, August 23 your receipt of the August 6 email and advise as to when the County intends to reply. Please provide a specific date by which I may expect a response from the County.

Thank you.

Captain Jeff Little

On Sun, Aug 6, 2023 at 9:28 PM Jeff Little **REDATED** wrote:

Thank you for the reply, Ms. Nuanes-Delgadillo. If you would, please clarify the following statement from your July 31 email.

"In regards to your request to have a religious accommodation moving forward every June, and/or, the month that the PPF is flown, you would need to request this through your chain of command the month prior to your need of the accommodation."

This seems to be a rejection of my religious accommodation request for a standing exemption (1) from EA-231 and (2) from Chief Boiteux's direct order dated June 22 (see attachment "Direct Order) that I either fly the PPF myself or ensure it is flown in accordance with EA-231 in the month of June "each year going forward." This is a standing order, thus the request for a standing exemption, meaning an exemption that would not need to be renewed each May, as you direct, since the every-June-going-forward order it applies to is also not in need of renewal each May or at any other point in time.

To be clear, are you saying that this order has been rescinded by virtue of your July 31 email (or by other means) and that that is why the requested religious accommodation would need to be requested each May (or otherwise the month prior to the month of accommodation) going forward? If the direct order and its standing directives are not rescinded, and the request for a standing exemption from the same has been denied, then please provide the legal authority the County relies upon for the denial and any related factual basis in support of the denial. That is, please explain in detail why a standing exemption to the standing direct order has not been granted, if indeed it has not been granted.

If you would, please clarify the following statement.

"However, during the IPM it was noted that you would not be required to put up/take down the PPF flag."

I received the standing direct order from Chief Boiteux after the IPM at which the County said I would not be required to personally, directly raise or lower the PPF. This IPM statement and the standing direct order seem to be inconsistent with one another on the issue of whether I am to be exempt from personally, directly raising/lowering the PPF whenever EA-231 would apply to a site to which I have been assigned. Please clarify whether the two are inconsistent with one another and, if so, which of the two is to be followed, if the County's position is that one or the other must be followed. If the County's position is that the two are not inconsistent with one another, and that they are both to be followed, please explain how this can be so.

Also, unlike the standing direct order, the IPM did not cover the issue of whether I would be required to ensure (e.g., by commanding a subordinate) that the PPF is raised/lowered whenever EA-231 would apply to a site to which I have been assigned. The direct order covered the topic and states that there I am not exempt from the responsibility of ensuring that the PPF is flown whenever EA-231 would apply to a site at which I have been assigned. Is it the County's position that I am exempt or not exempt from the responsibility of ensuring that the PPF is flown whenever EA-231 would apply to a site at which I have been assigned?

In view of the above, please clarify the County's position on my request for religious accommodation in the form of a standing exemption from (1) compliance with EA-231 and (2) compliance with Chief Boiteux's standing direct order. Further, please note that my request for accommodation of my religious beliefs includes a request to be exempt from working at a site at which EA-231 applies (i.e., PPF sites) unless the County can demonstrate how assignment to a non-PPF site each June would amount to an undue hardship for the County under the law. Note that this particular request for exemption is also a request for a standing exemption, since EA-231 is by its terms applicable to every June going forward.

In answering the requests for clarification of position above, please also consider the statements below.

In your letter dated July 13, you state that our second IPM meeting involved a "... discussion on Thursday,

June 22, 2023." My records indicate that the second IPM meeting occurred on June 21, 2022. Would you please confirm the date of the second IPM?

Now, regarding this statement from the July 13 letter:

You stated that you do not agree to this because it is against your will.

To be clear, my will is to do the will of God, to comply with my religious beliefs and my religious duties to God, even when that means I am unable to fly the PPF, whether directly or indirectly, or work under it. Any reference to "my will" in the context of discussion of religious accommodation should be understood in this sense.

Regarding this statement from the July 13 letter:

"You stated that your major issue is that it is the captain's responsibility to ensure that the crew is flying the PPF flag. You were asked to clarify your concern; is it working in a location where the PPF is flown, or the responsibility of ensuring that the PPF is flown. You replied that your main issue is working in a building where the PPF is flown since it goes against your religious beliefs."

To be clear, the issue of raising the PPF and or working under/near a PPF site is one of association with or even the appearance of endorsement of a message contrary to my religious beliefs, as discussed in a prior email. Raising the PPF through another by command of another is no different from raising it myself. What I cannot do directly without violation of my duty to God I cannot do indirectly by command of another. Any exemption that still requires me to ensure the PPF is flown while exempting me from personally, directly raising the PPF would still present a conflict between my duty to God and this new condition of employment/employment practice.

Thank you.

Captain Jeffrey Little


On Mon, Jul 31, 2023 at 10:50 AM Renee Nuanes-Delgadillo < **REDATED REDATED**@fire.lacounty.gov> wrote:

> Good Morning Captain,
>
> Thank you for your email response below. I will attach your email to the follow up discussion document that I sent you. In regards to your request to have a religious accommodation moving forward every June, and/or, the month that the PPF is flown, you would need to request this through your chain of command the month prior to your need of the accommodation. However, during the IPM it was noted that you would not be required to put up/take down the PPF flag.
>
> Please note that I am including Rachel Lara, Chief Uehara, Chief McMillon, and Captain Crum in this response.
>
> Thank you,

*Renée Nuanes-Delgadillo*

*She/Her*

*Risk Management (RM) and Disability Management and Compliance (DMC)*

*Leadership & Professional Standards Bureau*

*County of Los Angeles Fire Department*

**REDATED** Phone

---

**From:** Jeff Little
**Sent:** Sunday, July 23, 2023 6:11 PM
**To:** Renee Nuanes-Delgadillo <   **REDATED** @fire.lacounty.gov>
**Subject:** IPM reply

CAUTION: External Email. Proceed Responsibly.

IPM_6-19-2023_6-21-2023_DiscussionForm.pdf

EA-231.pdf

EA-231a.pdf

386_07.21.23.pdf

Dear Ms. Renée Nuanes-Delgadillo:

I write in response to the attached correspondence dated July 13, 2023. In your correspondence, you state there is a "... right to respond in writing regarding the information provided in this letter," and that the response should be supplied to you "... no later than 10-calendar days from the date of this correspondence." Please accept this email as the timely exercise of the right of response.

My primary purposes in writing this initial response to your July 13 correspondence is to (1) request an extension of the 10 day response period referred to in your correspondence to 24 days, which if granted would change the deadline for response from today, July 23, 2023, to August 6, 2023, and to (2) provide an initial clarifying response to the content of certain statements/descriptions of our prior exchanges in your July 13 correspondence.

The request for extension of the response period is based on the facts that (a) I have been on leave since June 25 with very limited access to work

communications, including your correspondence, which, as a result, I received only on Friday, July 21, and that (b) I have been ordered by Dr. Musher against any return to work prior to September 10, 2023, because of his finding of temporary total disability. See attached Patient Status Report.

In your July 13 correspondence, you describe the following exchange:

> You were informed that although you are not the Area 33 Headquarters Captain, it is every captain's responsibility to ensure that the appropriate flags are flown at locations; therefore, there may be extenuating circumstances when you may have to put up or take down the PPF flag. You stated that you do not agree to this because it is against your will. You stated that your major issue is that it is the captain's responsibility to ensure that the crew is flying the PPF flag. You were asked to clarify your concern; is it working in a location where the PPF is flown, or the responsibility of ensuring that the PPF is flown. You replied that your main issue is working in a building where the PPF is flown since it goes against your religious beliefs.

In response to the above, I hereby offer the following additional clarification: the religious beliefs implicated by working in a building or station near the Progress Pride Flag (or any form of the Pride flag), by raising the PPF, or requiring others to raise the PPF at my command may be partly summarized as follows:

> God intends sexual intimacy to occur only between a man and a woman who are married to each other. God has commanded that no intimate sexual activity be engaged in outside of a marriage between a man and a woman (Heb. 13:4).

> Any form of sexual immorality, such as adultery, fornication, homosexuality, bisexual conduct, bestiality, incest, pedophilia, pornography, any attempt to change one's sex or disagreement with one's biological sex, is sinful and offensive to God (Lev. 18:1–30; Matt. 5:28; Rom. 1:26–29; 1 Cor. 5:1, 6:9; 1 Thess. 4:1–8).

> Homosexuality, in particular, is subject to God's wrath of abandonment; it is a matter of choice and not inherited status, and it epitomizes man's ungrateful rebellion against God (Rom. 1:18–28)

The above statements are excerpted from a church website with doctrinal/religious views very similar to those of the church I regularly attend with my family. The statements above at least generally express my sincerely held religious beliefs on social and behavioral matters implicated by the PPF. That is, these same matters are also addressed by and in conflict with the beliefs of the Pride movement and with the messages communicated by the movement's various symbols, slogans and insignia, including but not limited to the PPF and various other Pride flags.

In your July 13 correspondence, you describe the following exchange:

> "What is it about your religious beliefs that directly impacts your ability to work in a location where the PPF is flown and having to put up and take down the PPF?" You responded that you do not feel comfortable working at a location where the PPF is displayed and that you are not ready to compromise your religious beliefs.

In response to the above, I hereby offer the following additional clarification: I would feel uncomfortable raising and lowering the PPF because of the appearance from the standpoint of the reasonable observer of my endorsement and or celebration of the messages on various sexual behaviors (among other topics) associated with the PPF and similar, which as discussed above conflicts directly with my religious beliefs on the same set of topics.

Further, I would be uncomfortable raising and lowering the PPF because of my sincerely held religious belief that, as a matter of honesty before God and man, I am to avoid even apparent public endorsement of viewpoints on important topics such as sexual morality and identification that I do not in fact endorse, even under threat and duress; raising and lowering the PPF would require my violation of this related but separate additional religious belief. See Acts 5:17-29.

Additionally, my religious accommodation request should not be understood as merely applying to the month of June, 2022, but to every June to which EA-231 may apply. By its terms, and specifically in view of EA-231's omission of any duration term, EA-231 would seemingly apply to every June until it is repealed entirely or is modified to include a duration term. Thus, in determining whether to grant or deny my religious accommodation request, I ask that the County consider the request to apply to June of 2023 *and every June thereafter*. See attached for EA-231.

Due to the short notice of actual receipt of the request to respond to your July 13 correspondence, the above is offered only as illustration of the matters in the correspondence to which I intend to respond. If the request for additional time to respond is granted, I intend to offer additional clarification and elaboration along the lines offered above.

If you would, and as soon as you are able, please let me know of your reply to my requests above by email reply to this email address.

Thank you.

Cpt. Jeff Little

**EXHIBIT 24**

May 30, 2024
EA - 232

TO:                    ALL CHIEF OFFICERS
                       ALL ADMINISTRATIVE SITES

FROM:                  FIRE CHIEF ANTHONY C. MARRONE

SUBJECT:               **PRIDE MONTH AND PROGRESS PRIDE FLAG**

Throughout the month of June, the Department will celebrate Pride month.  Pride serves as a collective reminder of the importance of safety, visibility, and inclusion of the LGBTQ+ community.  Together, we reaffirm our commitment and support of our LGBTQ+ community within our ranks, their families, and the diverse communities we serve.

As a team, we foster a diverse and inclusive work environment and deliver life-safety services with the utmost respect, care, and integrity.  In solidarity and alignment with our County partners, we will fly the Progress Pride Flag (PPF) at all Department facilities where the U.S. and California Flags are displayed during the month of June.  Department members are also encouraged to reflect on and celebrate LGBTQ+ history and community.

**Progress Pride Flag (PPF)**

From June 1 through 30, 2024, the PPF shall be flown at all Department facilities as detailed in Attachment A.  Flying the PPF is both an order from the Board of Supervisors and an expectation for all County of Los Angeles facilities, including fire and lifeguard stations.  Last year we faced challenges with compliance at several Department facilities.  I want to be intentional and clear that compliance is not optional.

**Fire Captains/Unit Supervisors shall:**

- Ensure PPFs are flown throughout the month of June at Department facilities within their respective jurisdiction per Attachment A.

- Ensure clasps are not removed from Department flagpoles.  If clasps or PPFs are damaged or removed, immediately notify your respective battalion chief/section manager via email so replacement clasps and flags may be provided.

- At the end of June, fold and store the PPF for future use.

A separate EMM will be distributed to chief officers and division managers outlining their responsibilities.

**County of Los Angeles Fire Department**
*"Proud Protectors of Life, Property, and the Environment"*

All Chief Officers
All Administrative Sites
May 30, 2024
Page 2

## **Pride Patches**

In partnership with the Women's Fire League, the specially designed Pride patches and pins below may be worn by personnel throughout the month of June.  Pride patches and pins are available for purchase by clicking here.

 

## **Townhall Virtual Session**

As we strive for excellence and serve with compassion to be the best we can be for one another and our communities, it is important that every voice is heard.  A townhall virtual session has been scheduled for Friday, June 7, 2024, from 1:00 p.m. to 2:00 p.m., and may be accessed by clicking here.

Department personnel may share their perspectives or submit questions in advance by clicking here.

There will be no paid overtime to attend.  Personnel assigned to 56 and 40-hour positions are allowed to attend on-duty with their supervisor's approval.

## **Resources**

For frequently asked questions, please refer to Attachment B.  Additional information and resources are available by scanning the QR code below:



As we continue to move the needle forward in our efforts to remain one of the greatest fire departments in the world, we must all remain dedicated and steadfast in fostering a welcoming and inclusive environment for everyone.

**County of Los Angeles Fire Department**
*"Proud Protectors of Life, Property, and the Environment"*

All Chief Officers
All Administrative Sites
May 30, 2024
Page 3


Thank you for your commitment in ensuring everyone is valued and can thrive without fear, regardless of their sexual orientation or gender identity.

If you have any questions, please contact your respective assistant fire chief and/or division manager.

ACM:heo

Attachments

**Attachment A**

## FLYING THE PROGRESS PRIDE FLAG

With the exception of Flag Day, Friday, June 14, 2024, when the Prisoner of War/Missing in Action flag is flown, the Progress Pride Flag (PPF) shall be flown as follows at all Department facilities:

**<u>Proper Orientation for the PPF</u>**

The proper orientation for the PPF is below:



If flagpoles can support three flags safely, clasps shall be added to fly the U.S. flag at peak, followed by the State of California (State) flag, and the PPF.

**Attachment B**

**Progress Pride Flag**
**Frequently Asked Questions**

On May 21, 2024, the Board of Supervisors directed all County of Los Angeles facilities that currently fly the U.S. and California state flags to fly the Progress Pride Flag (PPF) during the month of June, as a way of recognizing the County of Los Angeles' support for LGBTQ+ communities.

The following are some brief responses that you may use if you receive questions from the community about the PPF.

***Why are you flying the PPF?***

On May 21, 2024, the Board of Supervisors voted unanimously that the PPF would be flown at all County of Los Angeles facilities that display the U.S. and California state flags during the month of June in recognition of LGBTQ+ Pride Month.  Flying the PPF demonstrates the County of Los Angeles' support for LGBTQ+ communities.

***Can you fly the ____ flag instead? (flag of other nation or group, confederate flag, "thin red line" flag, etc.)***

The flags flown at County of Los Angeles facilities are set forth by the County of Los Angeles Board of Supervisors Flag policy.  We don't have the authority at this Department facility to fly any flags other than those specified.

***I thought the LGBTQ+ Pride Flag usually has a rainbow with 6 stripes… why does this one have so many colors?***

The PPF is a recent update of the original flag designed in 1978.  This flag combines the iconic rainbow flag of six stripes (red, orange, yellow, green, blue, and violet) with the colors of the Transgender Pride Flag (light blue, pink, and white) to honor the transgender and nonbinary communities, and with black and brown stripes to represent LGBTQ+ communities of color and those living with or lost to HIV/AIDS.  The new stripes are added in a chevron shape like an arrow to show the need for forward movement.

***I see that [neighboring County Fire Department facility] is flying a PPF… why isn't this Fire Department facility flying the PFF?***

Reasons will vary by location, but possible reasons that a Fire Department facility may not be able to participate include:

- The Fire Department facility does not have an exterior flagpole;
- The Fire Department facility is at a leased location where the flagpole is controlled by another entity; or
- The flagpole is too short or not able to accommodate three flags.

1

**Attachment B**

## Progress Pride Flag
## Frequently Asked Questions

**For very vocal or upset residents who don't want to engage in respectful dialogue…**

A small number of residents merely want to register their complaint and will not be convinced otherwise, no matter what you say.  Refer residents to submit complaints/concerns through the Fire Department's Compliment and Complaint webpage or by using the QR code below.



Let them know the Fire Department will respond to them in a timely manner.  If the resident won't leave their information and insists on elevating the complaint, you may provide them the business telephone number of the jurisdictional battalion chief/section manager.  Please remember to notify your respective chain of command as soon as possible.

**Tips for Good Customer Service:**

- Listen to and repeat back and acknowledge their concern.

- Stay calm and don't take it personally.

- Know when to refer the concern/question to your manager/supervisor.  If you find yourself repeating this script more than twice, it's time to refer the concern to your chain of command.

- Let your supervisor/manger know of the interaction as soon as possible (even if you think the matter is resolved).

**EXHIBIT 25**

**LOS ANGELES COUNTY FIRE DEPARTMENT**
**Request for Accommodation**

**Today's Date: 6/20/2024**

| | |
|---|---|
| **Name of Employee:** | Jeffrey Little |
| **Employee Number:** | 482745 |
| **Job Title:** | **Captain, Lifeguard** |
| **UOA:** | Lifeguard |

**ACCOMMDATION REQUESTED**:
Per email sent from EE on 5/8/2025:

(1) I be exempt this June from the EA-231 requirement of captains/site supervisors to handle, raise, and lower the Pride Flag or Progress Pride Flag at stations/sites to which they've been assigned or otherwise stationed;

(2) I be exempt this June from the Direct Order directing my specific compliance with this requirement of EA-231; and that;

(3) I be exempt this June from any requirement to order, command, or supervise any other person, including any subordinate, colleague, or coworker, to raise, lower, or otherwise handle the Pride Flag or Progress Pride Flag.

As part of the Department's policy and practice to engage in good faith and in accordance with the Fair employment Housing Act (FEHA), we met with via Teams, on Wednesday, May 29, 2024, and Friday, May 31, 2024, to discuss your request for a religious accommodation. Present at both Interactive Process Meetings (IPM) were Section Chief, Kyle Power, your attorneys, Joshua Youngkin and Paul Jonna, your union representative, Gregory Crum and me.

**DISCUSSIONS**

During the discussion on May 29, 2024, it was explained that during this meeting we would review your requests and take them back to your chain of command (COC) for them to determine what kind of reasonable accommodation could be provided to you, if any.  We reviewed your email request for a religious accommodation; wherein, you were asked to provide further information regarding your request.  You explained that you received a Direct Order dated June 22, 2023, and then proceeded to read it in its entirety.  It was explained that the purpose of this IPM was to address requests for accommodations and within the IPM forum. It was explained that for this IPM, we will not address Direct Orders or any items pertaining to discipline or what falls into that category.  You also requested that if your request was approved, that it could be a standing accommodation.  I explained that if an employee has a need for a religious accommodation on an annual basis, it must be requested every year.  Your attorney stated that it would be preferred that you be provided a standing accommodation because it would create a hardship for you to request it every year.  It was explained that this is the standard process, per the Department of Human Resources (DHR); however, I would confirm this. You explained that your accommodation request was based on the Direct Order that you received and its verbiage, which was based on last year's Board of Supervisors mandate regarding the progress pride flag (PPF).  Further, you stated that although you are currently working, you did not trust the county and were concerned about coming to work in the month of June with the Direct Order in place.  Your attorney requested that the Direct Order be considered within the IPM forum because the information within it pertains to the accommodation request.

You were asked if your religious beliefs interfere with your ability to perform emergency duties/care for members of the public who are part of the LGBTQIA+ community, and you responded "no, I will perform my duties anywhere, any place, and any time".

It was discussed that although you referenced EA 231 in your email, there would be a new EA coming out for 2024 that would reference guidelines in accordance with the Board of Supervisors motion.

It was agreed that we would put a pin in this meeting so that I could take back your request to your COC and they can determine what accommodation could be provided, if any.  It was agreed that we would have a follow up IPM on Friday, May 31, 2024, at 11:30 am.

Page 2
June 20, 2024

Name:    Jeffrey Little                                    IPM Date:    5/29/2024 and 5/31/2024

There were no further questions; therefore, the IPM ended.

During the discussion on Friday, May 31, 2024, it was reiterated that this follow up meeting was to discuss your religious accommodation request.  Your initial request was reviewed, along with the additional requests that your attorney made.

EA 232 dated and emailed to the department on May 30, 2024, was reviewed and you confirmed that you had received and read it.

It was confirmed that your work schedule was Thursday through Saturday from 10:00 am to 8:00 pm at Area 33 (Point Dune, Malibu, and Nicholas Beach) and Wednesday from 8:00 am to 6:00 pm at Zuma Beach.  It was confirmed that you supervise two Ocean Lifeguard Specialists (OLS) at both locations.  You were informed that at Zuma Beach the PPF would be raised at 7:00 am which is before your shift starts; therefore, you would not be responsible for raising it.  You were informed that the current plan at Malibu was to not fly the PPF per the EA 232 guidelines because that site had a repurposed telephone pole.   You were informed that at Pointe Dune one of the OLS would raise the PPF; therefore, you would be accommodated by not having to raise the PPF.  You stated that you did not think the PPF could be safety flown at Point Dune because the poll was too short and the PPF would lay on the roof.  Chief Power stated that he would confirm this.

You requested a written listing of all the locations where the PPF would be flown.  You stated that you were concerned that staff would not adhere to EA 232.  When asked to clarify, you explained that last year there were lifeguard chiefs (you stated that it was not Chief Power) who went around and put up PPFs outside of the requirements of EA 231. Chief Power stated that there had been meetings regarding which locations would fly the PPF and which ones could not safely fly the PPF in accordance with EA 232.  You and your attorney, Mr. Jonna, requested a written listing of locations that would not fly the PPF.

You asked if you would be responsible for monitoring the PPF.  When asked to clarify, you stated that if someone defies EA 232, what would be your responsibility.  You stated that telling someone to put up the PPF "causes knots in my stomach".  It was explained that an essential job duty of a lifeguard captain is to supervise, which includes ensuring that staff comply with policies, procedures, and directives, which include EAs, and this essential job function cannot be removed as it would be an undue hardship.  Your attorney, Mr. Jonna, stated that he understood the term "undue hardship", but inquired about the financial cost that the undue hardship would create.  It was explained that to remove this essential job function would result in another lifeguard captain having to supervise the staff at Area 33 by having someone come in on their day off or having a lifeguard captain from another area to come to that location, whereas this would result in a safety concern of that lifeguard captain leaving their respective work location to supervise the staff at Area 33.

You inquired what would be the process if the PPF becomes damaged while you are working.  Chief Power explained that his (Chief Power's) responsibility would be to ensure that the PPF was replaced. You would just need to notify him.

You reiterated that you feel unwell when having to tell a subordinate to put up the PPF and that it is not undue hardship to remove this from your responsibility.  Further, you stated, "I feel that the county does not think that my beliefs matter.  I don't want to be disciplined if I don't comply with the Direct Order from last year and I just can't work in that type of environment".  You stated that per EA 232, employees who do not comply will be dealt with very seriously and that is the reason why you are proceeding with this request to prevent being confronted and being "dealt with".

Your attorney, Mr. Jonna, asked if you could be assigned to another location where the PPF would not be flown; he stated, "it really depends on what extent the county wants to work through this request".  Chief Power reiterated that the locations where the PPF would not be flown has not been confirmed.  He also informed you that another option that you had was for you to request a standard practice trade with another captain.  Mr. Jonna asked if you could be moved to a vacant location where the PPF is not being flown.  Chief Power explained that there are no current vacant locations where you could be moved, and the department cannot displace another employee.   Additionally, he stated that each employee's ownership of their schedule cannot be removed by the department. Chief Power reiterated that a trade would be an option.  You thanked Chief Power for his explanation and asked if a mutual trade was sought, would he approve it.  Chief Power replied that he would.  Again, Mr. Jonna requested a list of locations where the PPF would not be flown, and Chief Power replied that the department does not have this information at this time.

Page 3
June 20, 2024

| Name: | Jeffrey Little | IPM Date: | 5/29/2024 and 5/31/2024 |
|---|---|---|---|

You and your attorney, Mr. Jonna, asked if this accommodation could be a standing accommodation moving forward so that you would not have to request it annually.  It was explained that I received confirmation from DHR that the county does not provide standing annual religious accommodations.  Additionally, since the accommodation is only for the month of June, it would need to be requested every year since the determination of how the PPF is flown is based on the Board of Supervisors determination prior to June each year and may change annually.

You were informed that the department could also accommodate you with a leave of absence and allow you to use your leave benefit time.

**CONCLUSION**

The IPM was summarized as follows:

- The department would accommodate you by not requiring you to put up or take down the PPF during the month of June.
- You would be required to supervise staff in adherence with all EAs, department/county policies and directives.
- You can request a mutual transfer on your own and submit the request through the appropriate channels.
- The department can accommodate you by providing you with a leave of absence and allow you to use your leave benefit time.

Mr. Jonna stated that this would not be the final determination since it has been requested to place you in a location where the PPF would not be flown.  Mr. Jonna asked if the IPM was being recorded and he was informed that it was not.

There were no further questions; therefore, the IPM ended.

Subsequent to the IPMs, you sent me an email on June 3, 2024, and stated that Chief Power confirmed that none of the flagpoles in Area 33 currently meet the criteria to fly the PPF, per EA 232; therefore, you would not have to supervise staff to raise and lower the PPF and you would be able to adhere to the compliance set forth in EA 232 for your regularly scheduled shifts from Thursday through Saturday.  For your work shift on Wednesday, you stated that you submitted a request for trade with another captain and Chief Power has approved this trade; therefore, you will not be at a location where the PPF will be flown. Further, you wrote that "this is not a long-term solution and it doesn't address being required to supervise and adhere to the PPF policy while still having an active direct order over my head stating that I can be disciplined/terminated for not ensuring the PPF EA is followed. It also doesn't address recalls if I am forced to work at another location where the PPFs are being flown."

To address your concern regarding ordering others to raise the PPF, please be advised that to ensure the department's compliance with EA-232, you are not required to personally direct anyone to raise the PPF.  Instead, the expectation is that you promptly report noncompliance with EA-232 through your COC.

You have the right to respond in writing regarding the information provided in this letter.  If you choose to do so, your written response should be addressed to Risk Management Division Attn: Renée Nuanes-Delgadillo, 1255 Corporate Center Drive, Suite 402, Monterey Park, CA 91754 no later than 10-calendar days from the date of this correspondence. If you have any questions regarding this letter, please call me at (323) 267-7062, Monday through Friday, 7:30 am to 4:30 pm. Or you may email me at, renee.nuanes-delgadillo@fire.lacounty.gov

**Sincerely,**
*Renée Nuanes-Delgadillo*
*Leadership & Professional Standards Bureau*

## CERTIFICATE OF SERVICE

*Captain Jeffrey Little v. Los Angeles County Fire Department, et al.*
USDC Court - Central District - Case No.: 2:24-cv-04353-JLS-PD

I, the undersigned, declare under penalty of perjury that I am over the age of eighteen years and not a party to this action; my business address is P.O. Box 9120, Rancho Santa Fe, California 92067, and that I served the following document(s):

- **VERIFIED THIRD AMENDED COMPLAINT FOR: 1. Religious Creed Discrimination / Failure to Accommodate in Violation of Title VII of the Civil Rights Act of 1964; 2. Religious Creed Discrimination / Failure to Accommodate in Violation of FEHA; 3. Retaliation in Violation of Title VII of the Civil Rights Act of 1964; 4. Retaliation in Violation of FEHA; 5. Failure to Prevent Discrimination, Harassment, and Retaliation in Violation of FEHA; 6. Violation of Free Exercise Clause of First Amendment to U.S. Constitution: Not Neutral Due to Animus and Hostility Against Religion; 7. Violation of Free Exercise Clause of First Article of California Constitution.**

on the interested parties in this action by placing a true copy in a sealed envelope, addressed as follows:

Dimitri D. Portnoi, Esq.
Kyle M. Grossman, Esq.
Marni B. Robinow, Esq.
O'MELVENY & MYERS LLP
400 South Hope Street, Suite 1900
Los Angeles, CA 90071
Tel: (213) 430 6000; Fax: (213) 430 6407
E-Mail:  dportnoi@omm.com
E-Mail:  kgrossman@omm.com
E-Mail:  mrobinow@omm.com
**Attorneys for Defendants County of Los Angeles, Fernando Boiteux, Arthur Lester, and Adam Uehara**

 X    **(BY ELECTRONIC MAIL)** I served a true copy, electronically on designated recipients via electronic transmission of said documents.

 X    (**BY ELECTRONIC FILING/SERVICE)** I caused such document(s) to be Electronically Filed and/or Service using the ECF/CM System for filing and transmittal of the above documents to the above-referenced ECF/CM registrants.

I declare under penalty of perjury, under the laws of the United States and the State of California, that the above is true and correct.

Executed on November 24, 2025, at Rancho Santa Fe, California.

_____
Kathy Denworth