DIMITRI D. PORTNOI (S.B. # 282871)
dportnoi@omm.com
KYLE M. GROSSMAN (S.B. # 313952)
kgrossman@omm.com
MARNI B. ROBINOW (S.B. # 313412)
mrobinow@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street, Suite 1900
Los Angeles, California 90071
Telephone:   (213) 430 6000
Facsimile:    (213) 430 6407

*Attorneys for Defendants County of
Los Angeles, Fernando Boiteux,
Arthur Lester, and Adam Uehara*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| Jeffrey Little,<br><br>              Plaintiff,<br><br>       v.<br><br>Los Angeles County Fire Department, et al.,<br><br>              Defendants. | Case No. 2:24-cv-04353-JLS-BFM<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>*[Filed concurrently with Notice of Motion and Motion for Summary Judgment; Separate Statement of Uncontroverted Facts; and [Proposed] Order]*<br><br>Hearing Date: April 24, 2026<br>Hearing Time: 10:30 a.m.<br>Judge:  Hon. Josephine L. Staton<br>Courtroom:  8A<br><br>TAC Filed:  October 21, 2025<br>Trial Date:  None set |

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ....................................................................................................6

II.     BACKGROUND ......................................................................................................7

        A.      EA-231 ...........................................................................................................7

        B.      Plaintiff's 2023 Religious Accommodation Request ...........................8

        C.      Plaintiff's Removal of PPFs at Area 17...............................................9

        D.      Plaintiff's Second IPM and Leave from Work ..................................11

        E.      Plaintiff's Discipline and Removal from the BIU ............................13

        F.      Plaintiff's 2024 Religious Accommodation Request .........................13

III.    LEGAL STANDARD .........................................................................................13

IV.     ARGUMENT .........................................................................................................14

        A.      Plaintiff's Title VII and FEHA Claims Fail as a Matter of Law .........14

                1.      The County Did Not Fail to Accommodate Plaintiff ...............14

                        a.      Plaintiff failed to establish a prima facie case................15

                        b.      Plaintiff's accommodation requests were unduly burdensome ..................................................................................18

                2.      The County Did Not Retaliate Against Plaintiff ......................20

                3.      The County Did Not Fail to Protect Plaintiff Against Harassment or Discrimination ....................................................22

        B.      Plaintiff's Free-Exercise Claims Fail as a Matter of Law .................23

        C.      Plaintiff Cannot Recover Certain Categories of Damages .................26

        D.      The Individual Defendants Are Entitled to Qualified Immunity.........27

V.      CONCLUSION .....................................................................................................28

DEFENDANTS' MEMORANDUM ISO
MOTION FOR SUMMARY JUDGMENT
2:24-CV-04353-JLS-BFM

# TABLE OF AUTHORITIES

**Page**

<u>**CASES**</u>

*Bolden-Hardge v. Off. of Cal. State Controller*,
  63 F.4th 1215 (9th Cir. 2023)........................................................................14, 15, 16

*Caldera v. Dep't of Corr. & Rehab.*,
  25 Cal. App. 5th 31 (2018) ..........................................................................................22

*Cameau v. Metro. Atlanta Rapid Transit Auth.*,
  2013 WL 11319425 (N.D. Ga. 2013) ..........................................................................16

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ...............................................................................................13, 14

*Chavez v. S.F. Bay Area Rapid Transit Dist.*,
  723 F. Supp. 3d 805 (N.D. Cal. 2024)........................................................................18

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*,
  508 U.S. 520 (1993) .....................................................................................................24

*City of Newport v. Fact Concerts, Inc.*,
  453 U.S. 247 (1981) .....................................................................................................26

*Cook v. Torres*,
  2013 WL 5946072 (C.D. Cal. 2013) ...........................................................................26

*Cornwell v. Electra Cent. Credit Union*,
  439 F.3d 1018 (9th Cir. 2006)......................................................................................20

*Demma v. Beatport, LLC*,
  2023 WL 8587624 (N.D. Cal. 2023).............................................................................23

*Elrawi v. Burgess*,
  2018 WL 6133416 (C.D. Cal. 2018) ............................................................................27

*Feliciano v. Coca-Cola Refreshments USA, Inc.*,
  281 F. Supp. 3d 585 (E.D. Pa. 2017)......................................................................17, 20

*Fulton v. City of Philadelphia*,
  593 U.S. 522 (2021) .....................................................................................................27

*Galvan v. Dameron Hosp. Ass'n*,
  37 Cal. App. 5th 549 (2019)........................................................................................22

*Gordon v. County of Orange*,
  6 F.4th 961 (9th Cir. 2021)..........................................................................................28

DEFENDANTS' MEMORANDUM ISO
MOTION FOR SUMMARY JUDGMENT
2:24-CV-04353-JLS-BFM

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Graves v. Nordstrom, Inc.*,
1994 WL 721589 (N.D. Cal. 1994) ................................................................. 16

*Groff v. DeJoy*,
600 U.S. 447 (2023) ....................................................................................... 18

*Hall v. Sheppard Pratt Health Sys., Inc.*,
155 F.4th 747 (4th Cir. 2025) ................................................................... 18, 19

*Heller v. EBB Auto Co.*,
8 F.3d 1433 (9th Cir. 1993) ...................................................................... 14, 16

*Jokich v. Rush Univ. Med. Ctr.*,
42 F.4th 626 (7th Cir. 2022) ........................................................................... 21

*Kennedy v. Bremerton Sch. Dist.*,
597 U.S. 507 (2022) ....................................................................................... 27

*Lacey v. Maricopa County*,
693 F.3d 896 (9th Cir. 2012) ......................................................................... 27

*Masterpiece Cakeshop v. Colo. C.R. Comm'n*,
584 U.S. 617 (2018) ................................................................................. 24, 27

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ....................................................................................... 13

*Meriwether v. Hartop*,
992 F.3d 492 (6th Cir. 2021) ......................................................................... 25

*Mid Vt. Christian Sch. v. Saunders*,
151 F.4th 86 (2d Cir. 2025) ........................................................................... 25

*Mitchell v. Dupnik*,
75 F.3d 517 (9th Cir. 1996) ........................................................................... 26

*Moss v. City & County of San Francisco*,
714 F. Supp. 3d 1167 (N.D. Cal. 2024) ......................................................... 23

*Muldrow v. City of St. Louis*,
601 U.S. 346 (2024) ....................................................................................... 21

*Petersen v. Snohomish Reg'l Fire & Rescue*,
150 F.4th 1211 (9th Cir. 2025) ...................................................................... 19

*Reed v. Avis Budget Grp., Inc.*,
472 F. App'x 525 (9th Cir. 2012) .................................................................. 21

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Robinson v. County of Los Angeles*,
2023 WL 7383276 (Cal. Ct. App. Nov. 8, 2023)...............................................23

*Robles v. Agreserves, Inc.*,
158 F. Supp. 3d 952 (E.D. Cal. 2016)........................................................21, 22

*Rosenberger v. Rector & Visitors of Univ. of Va.*,
515 U.S. 819 (1995) ..........................................................................................18

*Santistevan v. Marquez*,
2025 WL 1457705 (C.D. Cal. 2025).................................................................26

*Sides v. NYS Div. of State Police*,
2005 WL 1523557 (N.D.N.Y. 2005)................................................................19

*Tolle v. Rockwell Collins Control Techs., Inc.*,
2020 WL 3316984 (E.D. Va. 2020) ............................................................15, 16

*Trans World Airlines, Inc. v. Hardison*,
432 U.S. 63 (1977) ............................................................................................19

*Vernon v. City of Los Angeles*,
27 F.3d 1385 (9th Cir. 1994)............................................................................24

*Villalobos v. Costco Wholesale Corp.*,
2023 WL 5108499 (E.D. Cal. 2023) .................................................................23

*We the Patriots USA, Inc. v. Conn. Off. of Early Childhood Dev.*,
76 F.4th 130 (2d Cir. 2023)...............................................................................26

*Weiss v. Permanente Med. Grp., Inc.*,
738 F. Supp. 3d 1217 (N.D. Cal. 2024)......................................................15, 17

*Ziglar v. Abbasi*,
528 U.S. 120 (2017) ..........................................................................................28

## OTHER AUTHORITIES

CACI No. 2560....................................................................................................23

## RULES

Fed. R. Civ. P. 56(a) ...........................................................................................13

Fed. R. Civ. P. 56(c) ...........................................................................................13

DEFENDANTS' MEMORANDUM ISO
MOTION FOR SUMMARY JUDGMENT
2:24-CV-04353-JLS-BFM

## I.    **<u>INTRODUCTION</u>**[1]

To support the LGBTQ+ community, L.A. County facilities flew the Progress Pride Flag ("PPF") during June 2023.  On June 20, after receiving reports that the PPF was not being flown consistently at lifeguard and fire stations, the Lifeguard Division chain of command ordered that the PPF be flown at all fixed flagpoles at lifeguard buildings.  The individual Defendants—Lifeguard Chief Fernando Boiteux, Assistant Chief Adam Uehara, and Section Chief Arthur Lester—complied with this order the next morning, on June 21.  That day, Plaintiff Jeffrey Little, a lifeguard captain, arrived at work to find the PPF flying at Dockweiler Beach South.  Plaintiff thought that the PPF would not be flown there due to his belief that he had a religious accommodation to not work under the PPF, so he asked his direct report to lower the PPF.  She declined, explaining that Chief Lester had the PPF raised there earlier that morning.  Plaintiff lowered the PPF anyway, despite having never requested or received a religious accommodation to lower the PPF, then drove to two other lifeguard stations and lowered the PPF in full view of his direct reports, junior lifeguards, and the public.  The County later disciplined Plaintiff for lowering the PPF in violation of County policy.

Plaintiff now alleges that the County retaliated against, harassed, and failed to accommodate him and that all Defendants violated his state and federal free-exercise rights.  These allegations find no support in the evidentiary record.  The undisputed facts show that Plaintiff faced discipline because he removed PPFs—not because the County failed to accommodate his religious beliefs or retaliated against him.  Far from showing that any Defendant acted with animus toward Plaintiff, the record establishes that Defendants acted neutrally toward him and his religious beliefs.  The Court should enter summary judgment for Defendants on all counts.

---

[1] All emphasis is added to, and citations, alterations, and internal quotation marks omitted from, quoted passages unless otherwise noted. Paragraph references are to the Separate Statement of Uncontroverted Facts unless otherwise noted.

DEFENDANTS' MEMORANDUM ISO
MOTION FOR SUMMARY JUDGMENT
2:24-CV-04353-JLS-BFM

## II.    BACKGROUND

### A.    EA-231

In March 2023, the Board of Supervisors passed a motion to fly the PPF, pictured below, during June at County facilities "where the American and California Flags are displayed" and to "explore ways the [PPF] can be flown at all county facilities" to show "support for LGBTQ+ communities" during Pride Month. ¶1.



The Fire Department implemented the motion in May 2023 through a policy memorandum, EA-231, which provided guidance about which facilities with flagpoles should fly the PPF. ¶2. If the flagpole could accommodate only the U.S. flag, the PPF would not be flown; otherwise, it would be. ¶5. Typically, flags are flown using clasps—small metal devices that can be easily added to a flagpole. ¶7.

The Lifeguard Division (a branch of the Fire Department) faced several challenges as it implemented EA-231. The Board motion and EA-231 did not account for realities of lifeguard stations—for example, flags sometimes hit rooftops and clasps sometimes broke due to weather. ¶¶8-9, 13. The motion and EA-231 also did not account for resistance to flying the PPF, which manifested in

clasps going missing, flag lines being cut, and flagpoles being removed. ¶¶10-13. Together, these factors resulted in the PPF not being flown at various Lifeguard Division facilities in early June 2023, even though the flagpoles there could safely fly the PPF. ¶14.

Beachgoers, lifeguards, and even County Supervisors raised concerns about how the PPF was not consistently flying. ¶15. The Board of Supervisors then put extreme pressure on the Fire Chief to comply with the Board's motion. ¶16. He relayed the importance of compliance through the chain of command, with Chief Deputy Jon O'Brien calling for 100% compliance with EA-231 and the motion and Deputy Fire Chief William Mayfield indicating that the absence of clasps is "not an excuse" to not fly the PPF. ¶¶17-22.

The evening of June 20, Chief Boiteux conveyed this directive to Chief Uehara and the lifeguard section chiefs, including Chief Lester. ¶23. He instructed them to ensure that the PPF was raised at all fixed flagpoles under their management, regardless of whether clasps were currently installed, and report to him if any PPFs were missing or could not be flown. *Id.*

At 8:00 a.m. on June 21, Chief Lester began ensuring that the fixed flagpoles at the sites he supervised (all beaches between Mar Vista and San Pedro, and on Catalina Island) were flying the PPF. ¶24. He visited all sites except Catalina Island personally, including Area 17 (which includes Dockweiler North, Dockweiler South, and El Segundo). ¶25. Chief Lester then emailed Chief Boiteux confirming where the PPF was flying. ¶26.

**B.    Plaintiff's 2023 Religious Accommodation Request**

Plaintiff, along with all other Lifeguard Division employees, was sent EA-231 on May 25, 2023. ¶3. On June 18, he emailed Chief Boiteux and his usual supervisors, Section Chiefs Kyle Power and Danielle McMillon, to request to be exempt from EA-231 due to his religious beliefs. ¶¶27-28. His email was forwarded to Renee Nuanes-Delgadillo, who organized an interactive process

meeting ("IPM") the next day. ¶29. Chiefs Uehara and McMillon attended to represent the chain of command and provide an operational perspective on the feasibility of an accommodation; Ms. Nuanes-Delgadillo and Ms. Lara attended as human-resources representatives. ¶¶30-31.

At the June 19 IPM, Plaintiff explained that he had religious objections to raising the PPF and working where he could see the PPF flying. ¶32. Plaintiff requested that he either not have to fly the PPF at Will Rogers Beach, where he was then assigned, or be reassigned to a site where he would not be responsible for flying the PPF. ¶¶33-34. Plaintiff's chain of command determined that it would be operationally feasible for him to work at Area 33. ¶38. Plaintiff was told that a PPF flew nearby and that, while he would not be primarily responsible for flying it, he would still need to ensure it was flown. ¶¶6, 39-40. He objected to instructing others to raise the PPF but ultimately agreed to work at Area 33. ¶¶41-42. At the end of the IPM, Ms. Nuanes-Delgadillo informed those present that she needed to follow up with the County Department of Human Resources ("DHR"), who she had contacted before the June 19 IPM but had not yet heard from, and may reconnect about Plaintiff's request. ¶44. Ms. Nuanes-Delgadillo later emailed Plaintiff an IPM summary, which he did not indicate disagreement with. ¶45.

### C.    Plaintiff's Removal of PPFs at Area 17

Before Plaintiff's IPM, he had been scheduled to work on June 21 due to a recall (which causes an employe to work somewhere the employee is not usually assigned). ¶¶46-47. Chief McMillon had offered to obtain a recall exemption for Plaintiff, but after the IPM, he independently coordinated to swap shifts so that he could work at Area 17 on June 21. ¶¶48-50. Plaintiff's shift that day started at 10:00 a.m., as it did throughout June 2023. ¶54. He parked at Dockweiler HQ (a Beaches and Harbors facility where the PPF was flying) and found the PPF flying at the Dockweiler South and Dockweiler North stations, where Chief Lester ensured it was raised earlier that morning. ¶¶52-53, 56-57.

DEFENDANTS' MEMORANDUM ISO
MOTION FOR SUMMARY JUDGMENT
2:24-CV-04353-JLS-BFM



¶51.

Plaintiff asked Ocean Lifeguard Specialist ("OLS") Lauren Gottschalk, his direct report that day, whether she could remove the PPF at Dockweiler South. ¶¶58-59.  She explained that Chief Lester had ensured the PPF was raised, that she was fine with it up, and that she was concerned about conflicting orders.  ¶60.  So Plaintiff took down the PPF there himself.  ¶61.  Plaintiff then drove to Dockweiler North and El Segundo, removing the PPF at both sites.  ¶62.  When he removed the PPF at El Segundo, he did so in public and surrounded by participants in the County's junior-lifeguard program.  ¶¶63-64.

Chiefs Lester, Uehara, and Boiteux learned of Plaintiff's conduct later that day.  ¶¶65, 113.  Chief Lester had not known until then that Plaintiff had requested a religious accommodation or would be working at Area 17.  ¶¶66-67.  After DHR

DEFENDANTS' MEMORANDUM ISO
MOTION FOR SUMMARY JUDGMENT
2:24-CV-04353-JLS-BFM

weighed in, the Chiefs determined that Plaintiff had no accommodation to work only at sites without a PPF.[2]  ¶68.  Chief Lester went to Area 17 to meet with Plaintiff and re-raise the PPF.  ¶69.

Chief Lester met privately with Plaintiff at Dockweiler North to discuss Plaintiff's lowering of the PPF.  ¶70.  Chief Lester has known Plaintiff since high school, attended Plaintiff's wedding, and considers him a friend.  ¶¶71-74.  Chief Lester asked if Plaintiff would re-raise the PPF; when Plaintiff refused and cited his religious beliefs, Chief Lester said that he would re-raise the PPF himself and ensure that someone else lowered it at the end of the day.  ¶¶75-77.

Chief Lester later spoke with OLS Gottschalk, who informed him that Plaintiff's actions in lowering the PPF had been in full public view.  ¶¶105-06.  Chief Lester believed that Plaintiff's conduct constituted a potential violation of the County Policy of Equity ("CPOE") and, as a mandated reporter, filed a CPOE complaint that evening.  ¶¶107-10.

### D.    Plaintiff's Second IPM and Leave from Work

On June 20, Chief McMillon notified Plaintiff of the need for a second IPM, which occurred later on June 21.  ¶¶79-80.  At the time of this second IPM, Ms. Nuanes-Delgadillo did not know that Plaintiff had lowered the PPFs at Area 17.  ¶¶81-82.  There, the County informed Plaintiff that, pursuant to the guidance Ms. Nuanes-Delgadillo received from DHR, not wanting to work under the PPF—as Plaintiff expressed in the first IPM—did not qualify him for an accommodation because there was no interference between his job duties and religious practice.  ¶¶83-84.  Plaintiff asked to submit time-off requests for the rest of June and was told that such requests would be handled by chain of command, outside the IPM

---

[2] There is some dispute whether the County agreed to an accommodation in the June 19 IPM, whether Plaintiff had a proposed accommodation that the County rejected, or whether he had a temporary agreement that no longer applied.  This dispute is not material, as explained *infra* at 13-16.

DEFENDANTS' MEMORANDUM ISO
MOTION FOR SUMMARY JUDGMENT
2:24-CV-04353-JLS-BFM

process.  ¶¶85-86.

On June 21, after Plaintiff's second IPM, he emailed Chief Uehara asking to use benefit time to take off the rest of June.  ¶89.[3]  Chief Uehara responded that Plaintiff could use benefit time if it did not cause a recall, or he could use a time exchange with another employee.  ¶90.  "Recalls," which force employees to work on days and/or at locations where they were not already assigned, burden the Lifeguard Division's operations—especially in summer months, when public safety demands coverage on the beach for captains and when many employees take preapproved vacation.  ¶¶47, 97-98.  Recalls jeopardize the Lifeguard Division's public-safety mission and impinge on employees' physical and mental health, and cost additional money for overtime.  ¶¶99-104.  The County is also subject to a memorandum of understanding ("MOU") between itself and the L.A. County Lifeguard Association, the lifeguards' collective-bargaining unit.  ¶93.  Under the MOU, lifeguards have certain job protections—*e.g.*, the County cannot unilaterally alter schedules.  ¶¶94-96.

On June 22, Plaintiff returned to Area 33, where he had asked to work for the rest of June.  ¶¶87, 115.  That day, Chief Boiteux received from his chain of command a Direct Order addressed to Plaintiff requiring Plaintiff to comply with EA-231.  ¶¶114-17.  Chief Boiteux delivered the Direct Order to Plaintiff.[4]  ¶119. Plaintiff emailed Chief Uehara stating that he would be leaving work early.  ¶120. He remained on sick leave for the rest of June 2023 and thus never had to raise or lower the PPF.  ¶121.

---

[3] Lifeguards bid on benefit time annually, so schedules are determined far in advance.  ¶91.

[4] Plaintiff contends that Chief Boiteux told him that he was a county employee and that his religious beliefs do not matter.  Portnoi Decl., Ex. B at 163:25-164:2.  Chief Boiteux denies saying this, *id.*, Ex. O at 270:20-271:1; regardless, as described *infra* at 19-21, this does not constitute religious discrimination, retaliation, or harassment.

### E.    Plaintiff's Discipline and Removal from the BIU

The County investigated Chief Lester's CPOE complaint against Plaintiff through its usual channels, consisting of an investigation and interviews, and determined that the allegations were substantiated and constituted a CPOE violation. ¶¶124-27. The Fire Department separately investigated Plaintiff for violating the County's flag policy when he lowered the PPFs, and the Fire Advisory Board approved a suspension. ¶¶128-29. The County issued Plaintiff a notice of 15-day suspension in October 2024. ¶130.

The County also removed Plaintiff from his role on the Background Investigation Unit ("BIU"), which investigates prospective employees, because the BIU handles sensitive applicant and personnel information and Plaintiff was the subject of an investigation. ¶¶122-23.

### F.    Plaintiff's 2024 Religious Accommodation Request

In 2024, Plaintiff requested a religious accommodation on May 8. ¶134. On May 30, the Fire Department issued EA-232, which provided guidance about which Department facilities should fly the PPF, and held IPMs with Plaintiff on May 29 and May 31. ¶¶135-36. The County informed Plaintiff of specific sites that would not be flying the PPF and allowed him to swap shifts to work at those sites. ¶¶137, 140.

## III.   LEGAL STANDARD

The Court must enter summary judgment when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The movant must first identify those portions of record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once it has done so, the nonmovant must cite "particular parts of materials

in the record" to demonstrate the existence of a genuine issue of material fact.  Fed. R. Civ. P. 56(c).  If the nonmoving party cannot do so, "the moving party is entitled to a judgment as a matter of law."  *Celotex*, 477 U.S. at 322.

## IV.    ARGUMENT

### A.    Plaintiff's Title VII and FEHA Claims Fail as a Matter of Law

Most of Plaintiff's surviving claims are Title VII and FEHA claims against only the County: failure-to-accommodate and retaliation claims under both statutes and a failure-to-prevent-harassment claim under FEHA only.  TAC ¶¶ 129-80; *see Bolden-Hardge v. Off. of Cal. State Controller*, 63 F.4th 1215, 1222 (9th Cir. 2023) (same analysis for FEHA and Title VII claims).  Discovery has also clarified the four adverse employment actions: that (1) Plaintiff's "previously granted religious accommodation was revoked"; (2) the Department "disclos[ed] to unauthorized recipients that Plaintiff requested a religious accommodation" (leading to a death threat against him); (3) he "was suspended from the [BIU]"; and (4) the County "launched a retaliatory investigation of Plaintiff," resulting in a 15-day suspension. Portnoi Decl., Ex. S at 12-14.

### 1.    The County Did Not Fail to Accommodate Plaintiff

Plaintiff's failure-to-accommodate claims (Claims I and II) fail because he cannot establish a prima facie case.  Even if he could, the County was justified in not agreeing to his requested accommodations.

To proceed on his failure-to-accommodate claim, Plaintiff must show that (1) he had a "bona fide religious belief, the practice of which conflicted with an employment duty," (2) he "informed [his] employer of the belief and conflict," and (3) his employer "threatened [him] with or subjected [him] to discriminatory treatment, including discharge, because of [his] inability to fulfill the job requirements." *Heller v. EBB Auto Co.*, 8 F.3d 1433, 1438 (9th Cir. 1993).  Even if Plaintiff could establish these elements, the County can rebut Plaintiff's showing by

offering evidence that it could not reasonably accommodate him without undue hardship. *Bolden-Hardge*, 63 F.4th at 1222.

Plaintiff cannot show either that the practice of his religious beliefs conflicted with an employment duty or that any discipline from the County was caused by his inability to fulfill job requirements. Moreover, his requested accommodations would unduly burden the County. The Court should therefore enter summary judgment on Plaintiff's failure-to-accommodate claims.

### a.   Plaintiff failed to establish a prima facie case

**No conflict.** Even after months of discovery, it remains unclear how Plaintiff contends his religious beliefs conflict with his employment duties. This dooms his failure-to-accommodate claim.

A plaintiff must "relay sufficient information about the conflict between the religious belief and the employer's practice or policy, not simply [his] desired accommodation." *Weiss v. Permanente Med. Grp., Inc.*, 738 F. Supp. 3d 1217, 1223 (N.D. Cal. 2024). Even though courts defer to plaintiffs' assertions of their religious beliefs, that "does not mean that courts must take plaintiffs' conclusory assertions of violations of their religious beliefs at face value." *Bolden-Hardge*, 63 F.4th at 1223; *see Tolle v. Rockwell Collins Control Techs., Inc.*, 2020 WL 3316984, at *5 (E.D. Va. 2020) ("merely expecting Plaintiff to attend work in the same location that a Gay Pride flag is generally displayed for one month does not amount to asking him to adhere to a conflicting employment requirement").

Here, while Plaintiff has explained what his religious beliefs are, *see* Portnoi Decl., Ex. S at 21, he has not sufficiently explained any *conflict* between those beliefs and his employment duties. There is no evidence that Plaintiff was ever required to take any affirmative actions with respect to the PPF: Plaintiff states that he believes that "he cannot personally raise, ensure raising, maintain, or fly the [PPF]," *id.*, but he was never required to do so. Plaintiff developed no evidence that he ever had to raise, maintain, or fly the PPF. Plaintiff's shifts in June 2023

DEFENDANTS' MEMORANDUM ISO
MOTION FOR SUMMARY JUDGMENT
2:24-CV-04353-JLS-BFM

started after the PPF would have already been raised.  ¶55.  As for ensuring that the PPF was raised, in June 2023 the County agreed to reassign him to a site (or allow him to use time exchanges to move to a site) where he would likely not be responsible for the PPF, and to allow him to use benefit time where it would not cause a recall.  ¶¶38-42, 86-90.  These are reasonable accommodations.  *Cameau v. Metro. Atlanta Rapid Transit Auth.*, 2013 WL 11319425, at *9 (N.D. Ga. 2013) (benefit time); *Graves v. Nordstrom, Inc.*, 1994 WL 721589, at *3 (N.D. Cal. 1994) (shift swaps).[5]

Plaintiff also testified at his deposition that he would "prefer" not to have "any responsibilities associated with" the PPF.  Portnoi Decl., Ex. B at 37:2-8.  On June 21, 2023, Plaintiff had no work responsibilities associated with PPFs (Chief Lester ensured they were raised), ¶¶57, 75-78; in any case, a preference to not have responsibilities is not a religious practice.  And the only shift that Plaintiff worked the rest of June 2023 was at Area 33, where he had previously agreed to work subject to a time exchange.  ¶¶87, 115.

Plaintiff's beliefs certainly did not translate into a practice of *lowering* the PPF at any of these sites.  Nor did he notify anyone at the County that his religious beliefs would require him to lower a flying PPF.  ¶44.  So even if that were his religious practice, it cannot be the basis for a failure-to-accommodate claim.  *See Heller*, 8 F.3d at 1438 (plaintiff must "inform[] [his] employer of the belief *and conflict*").  His assertion that his beliefs were incompatible with a PPF flying at his worksite is conclusory, and does not give rise to an actionable conflict.  *See Bolden-Hardge*, 63 F.4th at 1223; *Tolle*, 2020 WL 3316984, at *5.

Though Plaintiff asserts that he disagrees on religious grounds with the PPF's message, he identifies no religious *practice*, and thus no religious *conflict*, with his employment duties.  He was never required to take any action that might rise to the

---

[5] To the extent Plaintiff alleges a failure to accommodate in 2024, that is foreclosed by his admission that he received an "effective" accommodation.  ¶138.

DEFENDANTS' MEMORANDUM ISO MOTION FOR SUMMARY JUDGMENT 2:24-CV-04353-JLS-BFM

level of establishing a conflict.  And his preference to avoid all responsibilities associated with the PPF is too generic to identify an actionable conflict, because it could "amount[] to the kind of blanket privilege that would [] result[] in a limitless excuse for avoiding all unwanted obligations." *Weiss*, 738 F. Supp. 3d at 1223 (rejecting failure-to-accommodate claim regarding vaccination policy).

**No inability to fulfill job requirements.**  Plaintiff faced discipline because he lowered the PPF—not because he was unable to fulfill his job requirements related to the PPF.  Indeed, the evidence that Plaintiff's removal of the PPF was the cause of discipline is not just undisputed; it is overwhelming.  Chief Lester, based on his conversation with OLS Gottschalk, believed that Plaintiff's conduct related to lowering the PPF was a potential CPOE violation.  ¶107.  Thus, Chief Lester filed a CPOE complaint, which was not based on Plaintiff's inability to fulfill his job requirements.  ¶¶110-12.  Other lifeguards contacted Chief Lester and Chief Uehara, and one even took a video of Plaintiff lowering the PPF.  ¶¶113-14.  None of them ever complained that Plaintiff requested an accommodation or could not fulfill his job duties.  Their issue was with what Plaintiff actually *did* on June 21— take down the PPF at three different locations in full view of his subordinates, junior lifeguards, and the public.  ¶¶111-14.

Chief Lester's CPOE complaint sparked a County investigation that, in turn, led to Plaintiff's removal from the BIU and his suspension—the discipline that Plaintiff alleges.[6]  No witness testified that Plaintiff faced discipline for engaging in conduct consistent with any accommodation that he sought in his June 19 IPM, including his refusal to raise the PPF, ensure that it was raised, or even work under

---

[6] Plaintiff's other alleged adverse employment actions—revocation of his accommodation and disclosure of his accommodation request—cannot satisfy the discipline requirement for his failure-to-accommodate claim.  The former is circular, as the denial of his request for an accommodation cannot itself be discipline for requesting one, *see Feliciano v. Coca-Cola Refreshments USA, Inc.*, 281 F. Supp. 3d 585, 593 (E.D. Pa. 2017), and the latter has no factual basis.

DEFENDANTS' MEMORANDUM ISO
MOTION FOR SUMMARY JUDGMENT
2:24-CV-04353-JLS-BFM

it.  Even if Plaintiff had an accommodation to work at a location where the PPF was not flying, the County's failure to achieve that accommodation in June 2023 did not cause an adverse employment action.  ¶112.  Rather, Plaintiff's lowering of the PPF—an accommodation that he never requested or discussed, ¶43—is what set the County's disciplinary processes in motion.  ¶111.

### b.    Plaintiff's accommodation requests were unduly burdensome

Any further accommodation efforts would have unduly burdened the County. A burden is undue if it "is substantial in the overall context of an employer's business."  *Groff v. DeJoy*, 600 U.S. 447, 469, 468 (2023).  Undue burden can take the form of "substantial expenditures," but the analysis must also consider nonmonetary burdens, like the impacts on coworkers that "affect the conduct of the business."  *Id.* at 469, 471-73; *see also Chavez v. S.F. Bay Area Rapid Transit Dist.*, 723 F. Supp. 3d 805, 821 (N.D. Cal. 2024) ("*Groff* re-affirmed that the [undue-burden] standard takes into account an accommodation's impact on co-workers where such impact has ramifications for the conduct of the employer's business."); *Hall v. Sheppard Pratt Health Sys., Inc.*, 155 F.4th 747, 753 (4th Cir. 2025) ("[A]fter *Groff*, [] non-economic costs can also include threats to the health and safety of employees and the people they serve.").

Accommodating Plaintiff as requested would have imposed an undue burden. For instance, in 2023 Plaintiff asked to not be required to fly the PPF at Will Rogers Beach.  ¶33.  But Plaintiff cannot demand that the County stifle its message of support for the LGBTQ+ community under the guise of his individual religious-accommodation request.  *See Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 833 (1995) ("[W]hen the government appropriates public funds to promote a particular policy of its own it is entitled to say what it wishes.").

Plaintiff also suggested that the County let him use benefit time or assign him to a different worksite, whether or not doing so would cause a recall or displace

DEFENDANTS' MEMORANDUM ISO
MOTION FOR SUMMARY JUDGMENT
2:24-CV-04353-JLS-BFM

another employee.  ¶¶33, 85, 89-90.  Implementing this suggestion would have significantly affected the operations of the Lifeguard Division.  *First*, the Lifeguard Division has minimum staffing requirements, and understaffing can negatively impact the Department's public-safety mission.  ¶¶97, 99; *see Petersen v. Snohomish Reg'l Fire & Rescue*, 150 F.4th 1211, 1218-20 (9th Cir. 2025) (finding undue hardship where exemption from vaccination requirement would pose safety risks to the public); *Sides v. NYS Div. of State Police*, 2005 WL 1523557, at *6 (N.D.N.Y. 2005) ("[S]afety considerations are highly relevant in determining whether a proposed accommodation would produce an undue hardship[.]").  *Second*, the Department is subject to an MOU and cannot change employees' schedules—which they bid for up to a year in advance—without their consent.  ¶¶92-95; *see Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 79 (1977) (rejecting argument that "the duty to accommodate requires [an employer] to take steps inconsistent with [an] otherwise valid agreement").  *Third*, recalls have detrimental effects on other employees' physical and mental health given the demands of lifeguarding and the limited pool of captains to pull from.  ¶¶100-103; *see Petersen*, 150 F.4th at 1218-20 (considering health risks to coworkers in undue-burden analysis); *Hall*, 155 F.4th at 754 ("even post-*Groff*, such a safety risk to fellow employees is independently a cognizable undue hardship").  Thus, Plaintiff's 2023 request to be reassigned to a different shift or to use his benefit time regardless of triggering recalls was unduly burdensome.[7]

---

[7] To be sure, merely "forcing other employees to work overtime would not constitute an undue hardship *without considering other options*."  *Petersen*, 150 F.4th at 1217.  The County did consider alternatives, though.  In 2023, Plaintiff was told he could use benefit time if it did not cause a recall, or use shift exchanges.  ¶90.  And in 2024, Plaintiff's request came in May, so the County could preemptively ensure adequate staffing.  ¶139.

DEFENDANTS' MEMORANDUM ISO
MOTION FOR SUMMARY JUDGMENT
2:24-CV-04353-JLS-BFM

### 2.     The County Did Not Retaliate Against Plaintiff

Plaintiff fares no better on his retaliation claims (Claims III and IV).  Like above, Plaintiff cannot establish that the County took any adverse employment action against him *because of* his protected activity—namely, his accommodation request.

To succeed on his retaliation claims, Plaintiff must demonstrate "(1) a protected activity; (2) an adverse employment action; and (3) a causal link between the protected activity and the adverse employment action." *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1034-35 (9th Cir. 2006).  Plaintiff alleges that his accommodation request satisfies the first requirement.  TAC ¶¶ 156-57, 169.  As for adverse employment actions, he cannot rely on the denial of his accommodation request, because the denial of a request cannot be retaliation for making the request in the first place.  *Feliciano*, 281 F. Supp. 3d at 593 ("denial of a requested accommodation does not by itself constitute retaliation for the request").  Nor can he rely on his inflammatory and baseless allegation that the County or its employees leaked information about Plaintiff that led to him receiving a death threat.[8]  Thus, Plaintiff's potential adverse employment actions are limited to (1) his removal from the BIU and (2) his suspension that resulted from the CPOE complaint and investigation.

Plaintiff cannot causally link his protected activity to either of these adverse employment actions.  Consistent with the County's past practice, Plaintiff was removed from the BIU—a body that investigates other lifeguards—because he was under investigation himself, not because he engaged in protected activity.  As the undisputed facts show, Chief Lester, a mandated reporter, filed the CPOE

---

[8] Plaintiff speculates that Chiefs Boiteux, Uehara, Lester, and McMillon may have *sent* the death threat, Portnoi Decl., Ex. B at 193:4-13, but he has no basis for that extreme accusation.  Plaintiff's removal of the PPF was public knowledge because Plaintiff publicly removed the PPF.

DEFENDANTS' MEMORANDUM ISO
MOTION FOR SUMMARY JUDGMENT
2:24-CV-04353-JLS-BFM

complaint because he believed that Plaintiff had potentially violated County policy. ¶¶107, 111. Failure to file this complaint could have subjected Chief Lester to discipline himself. ¶109. And filing the complaint triggered an investigation into Plaintiff. ¶124. Plaintiff's temporary removal from the BIU automatically followed from that CPOE complaint as a standard precaution given the sensitive nature of the material reviewed by BIU members. ¶¶122-23. And Plaintiff was ultimately suspended because (1) the alleged CPOE violations were substantiated and (2) the Fire Department found that Plaintiff violated the County's flag policy when he *lowered* the PPFs. ¶¶127, 129-30.

Plaintiff may argue, as he did at the pleading stage, that Chiefs Lester and Boiteux's conduct shows that the County retaliated against him because of his protected activity. But the record is now clear that Chief Lester (1) was ordered to ensure 100% compliance with EA-231 and told that clasps "are not an excuse," ¶¶18-23; (2) carried out this order at every site under his supervision, ¶¶24-25; (3) did not know Plaintiff would be working at Area 17 that day, ¶67; and (4) did not know Plaintiff had requested an accommodation, ¶66. Taken together, these undisputed facts preclude any inference that Chief Lester acted with retaliatory intent to undermine Plaintiff's requested accommodation. *See Reed v. Avis Budget Grp., Inc.*, 472 F. App'x 525, 526 (9th Cir. 2012) (requiring knowledge "that the plaintiff had engaged in the protected activity" to infer causation based on timing); *Jokich v. Rush Univ. Med. Ctr.*, 42 F.4th 626, 634 (7th Cir. 2022) ("any inference of causation supported by temporal proximity may be negated by circumstances providing an alternative explanation for the challenged action").

Nor does Chief Boiteux's conduct create an inference of retaliatory animus. His alleged statement that Plaintiff's "religious beliefs do not matter" is neither an adverse employment action in itself, *see Robles v. Agreserves, Inc.*, 158 F. Supp. 3d 952, 983 (E.D. Cal. 2016) ("FEHA is not a 'civility code,' and it does not outlaw … vulgar conduct that merely offends."); *Muldrow v. City of St. Louis*, 601 U.S. 346,

354-55 (2024) (under Title VII, an employee "must show some harm respecting an identifiable term or condition of employment"), nor is it tied to any actual *discipline* against Plaintiff, as Chief Boiteux was not involved in the CPOE review process, Plaintiff's removal from the BIU, or his ultimate suspension.  ¶131.  So even if Plaintiff is correct that Chief Boiteux harbored some animosity toward him—and the record does not establish this—that is insufficient to causally link Plaintiff's protected conduct to any adverse employment actions.

### 3. The County Did Not Fail to Protect Plaintiff Against Harassment or Discrimination

Claim V—Plaintiff's failure-to-protect claim—is unsupported in the record to the extent it is legally applicable to Plaintiff's allegations at all.

A harassment-based failure-to-protect claim requires Plaintiff to show that harassment in fact occurred, meaning he must show that "the workplace [was] permeated with discriminatory intimidation, ridicule and insult that [was] sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." *Caldera v. Dep't of Corr. & Rehab.*, 25 Cal. App. 5th 31, 38 (2018).  The harassment must be objectively severe, meaning "the defendant's conduct would have interfered with a reasonable employee's work performance and would have seriously affected the psychological well-being of a reasonable employee." *Galvan v. Dameron Hosp. Ass'n*, 37 Cal. App. 5th 549, 565 (2019).

Plaintiff has identified no actionable conduct.  His allegations that his supervisors occasionally spoke sharply to him do not satisfy this standard because they are "occasional, isolated, sporadic, or trivial." *Id.* at 564; *see Robles*, 158 F. Supp. 3d at 983 ("FEHA is not a 'civility code.'").

The same is true of Chief Boiteux allegedly telling Plaintiff his religious beliefs did not matter in connection with explaining that Plaintiff could not take down the PPFs and delivering a Direct Order.  Even if this statement was made

22

(which is contested), and even if it demonstrated anti-religious sentiment (which it did not, as it merely pointed out that Plaintiff's religious beliefs did not give him an excuse to lower the PPF), a "sole derogatory comment does not create a triable issue of fact" on a harassment claim. *Robinson v. County of Los Angeles*, 2023 WL 7383276, at *5 (Cal. Ct. App. Nov. 8, 2023); *see Villalobos v. Costco Wholesale Corp.*, 2023 WL 5108499, at *4 (E.D. Cal. 2023) ("sporadic use of abusive language, gender-related jokes, and occasional teasing [was] not actionable harassment").

As for Plaintiff's allegations that a County employee sent him a threatening letter or leaked information causing someone else to send it, Plaintiff has nothing but speculation. Most of Plaintiff's other allegations (for instance, about the CPOE complaint and investigation) are properly characterized as discrimination claims, not harassment claims, TAC ¶¶ 176-77, and cannot support a claim of harassment. *See Demma v. Beatport, LLC*, 2023 WL 8587624, at *3 (N.D. Cal. 2023) (explaining personnel-management actions must be brought as discrimination claims).

Finally, to the extent that Plaintiff asserts a failure-to-protect-against-discrimination claim, that claim fails because his underlying FEHA discrimination claim (Claim II) fails. *See Moss v. City & County of San Francisco*, 714 F. Supp. 3d 1167, 1185 (N.D. Cal. 2024) ("A failure to prevent discrimination claim is essentially derivative of a discrimination claim.").[9] Accordingly, the Court should enter summary judgment for Defendants on Plaintiff's failure-to-protect claim.

### B.   Plaintiff's Free-Exercise Claims Fail as a Matter of Law

Plaintiff's sole remaining § 1983 claim, which contends that Defendants acted non-neutrally and thereby violated his free-exercise rights under the First

---

[9] A FEHA failure-to-accommodate claim is synonymous with a "discrimination" claim. *See* CACI No. 2560.

DEFENDANTS' MEMORANDUM ISO
MOTION FOR SUMMARY JUDGMENT
2:24-CV-04353-JLS-BFM

Amendment, also fails.[10]  At the pleading stage, Plaintiff abandoned any challenge to the facial neutrality of EA-231 and narrowed his free-exercise claim to assert only that Defendants *applied* EA-231 non-neutrally.  *See* Dkt. 50 at 12.  Discovery has since revealed that no decisionmaker acted with anti-religious animus in applying EA-231 as to Plaintiff.

The First Amendment requires that state actors "proceed in a manner neutral toward and tolerant of [] religious beliefs" and prohibits them from "act[ing] in a manner that passes judgment upon or presupposes the illegitimacy of religious beliefs and practices."  *Masterpiece Cakeshop v. Colo. C.R. Comm'n*, 584 U.S. 617, 638 (2018).  State actors may not object to conduct "*because* it is undertaken for religious reasons."  *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 532 (1993).  Accordingly, the First Amendment guarantees every person "a neutral decisionmaker who would give full and fair consideration to his religious objection" to state policy.  *Masterpiece Cakeshop*, 584 U.S. at 640.

Defendants acted neutrally toward Plaintiff's religious beliefs at every step:

*First*, Defendants tried to work collaboratively with Plaintiff to agree on an outcome that would accommodate his beliefs while not adversely affecting the County's PPF policy.  ¶¶32-44, 85-90.  There is no evidence that anyone at this IPM said or did anything that would suggest hostility toward Plaintiff's religion—then or at any other time.

*Second*, though the order to require 100% compliance with EA-231 came shortly on the heels of Plaintiff's IPM, it was neutral in both origin and application. The directive came from Board of Supervisors members and staff who saw that the PPF was not being consistently flown and went straight to the Fire Chief.  ¶16.

---

[10] So does his free-exercise claim under the California Constitution.  As the Court previously recognized, "'California case law suggests that analysis of a claim of the constitutional right to the free exercise of religion is generally similar under both federal and state constitutional law.'"  Dkt. 50 at 14 (quoting *Vernon v. City of Los Angeles*, 27 F.3d 1385, 1392 (9th Cir. 1994)).

DEFENDANTS' MEMORANDUM ISO
MOTION FOR SUMMARY JUDGMENT
2:24-CV-04353-JLS-BFM

There is no evidence that the Supervisors or Fire Chief knew of Plaintiff's religious beliefs or had anti-religious animus. The testimony of every County employee and their contemporaneous communications show that they took the goal of 100% compliance seriously—neither making exceptions nor targeting specific locations. Chief Boiteux communicated the 100% compliance expectation to all their subordinates, not just those who oversaw Plaintiff. ¶23. Chief Lester personally ensured that every station he oversaw either complied with EA-231 or could become compliant upon delivery of materials. ¶¶24-25. He did not even know that Plaintiff would be stationed at Area 17, ¶67, so his raising of the PPF there has nothing to do with Plaintiff's religious beliefs.

*Third*, Defendants continued to act neutrally toward Plaintiff after he took down the PPF at multiple sites on June 21, 2023. Chief Lester listened to Plaintiff say that he could not raise the PPF due to his religious beliefs and, rather than argue, did not require Plaintiff to re-raise the PPF. ¶¶75-78. When Chief Lester filed a CPOE complaint, he did so because he is a mandated reporter for potential CPOE violations like the one that OLS Gottschalk reported, not because he was hostile toward Plaintiff's religious beliefs. ¶¶107-12. When the County and Plaintiff participated in a second IPM, the County explained that Plaintiff did not qualify for accommodation as part of that process because of case law and preexisting County policies that are neutral vis-à-vis religion. ¶84. And when Chief Boiteux delivered a Direct Order to Plaintiff, it was at the direction of the chain of command to clarify any confusion arising out of the IPM process— including that there was no excuse for taking down the PPFs—not to undercut Plaintiff's religious objections. ¶118. Even if Chief Boiteux told Plaintiff that his "religious beliefs do not matter," that is not the kind of statement that demonstrates anti-religious animus. *Compare Mid Vt. Christian Sch. v. Saunders*, 151 F.4th 86, 94 (2d Cir. 2025) (statement accusing Christian schools of "blatant discrimination under the guise of religious freedom" indicates animus); *Meriwether v. Hartop*, 992

DEFENDANTS' MEMORANDUM ISO
MOTION FOR SUMMARY JUDGMENT
2:24-CV-04353-JLS-BFM

F.3d 492, 512-13 (6th Cir. 2021) (statements that religion's mere "presence" is "counterproductive" indicate animus).  Moreover, that statement (if even made) was true: Plaintiff's religious beliefs are irrelevant to his job responsibilities, including his responsibility to abide by EA-231 and his lifesaving duties as a lifeguard.  ¶4; *see We the Patriots USA, Inc. v. Conn. Off. of Early Childhood Dev.*, 76 F.4th 130, 148 (2d Cir. 2023) (statements that "acknowledge[] the impact" of a policy on religious beliefs do not indicate animus).

Plaintiff cannot identify any County policy—whether EA-231, the 100% enforcement directive, the MOU governing leave benefits, or anything else—that was enforced in this case in a non-neutral way based on his religious beliefs.  Nor can he identify any statement or action by any decisionmaker that would indicate that person's anti-religious animus.  The Court should therefore enter summary judgment for Defendants on Plaintiff's free-exercise claims.

### C.   Plaintiff Cannot Recover Certain Categories of Damages

Plaintiff is barred from recovering punitive damages and damages for his state constitutional claim as a matter of law.

**Punitive Damages.**  Plaintiff's demand for punitive damages, TAC at 49, directly conflicts with well-settled law.  Punitive damages are not recoverable against a municipality for § 1983 suits, *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981), or Title VII or FEHA suits, *Santistevan v. Marquez*, 2025 WL 1457705, at *9 (C.D. Cal. 2025).  Nor can a plaintiff circumvent this rule and seek punitive damages from governmental officers in their official capacity, because a "suit against a governmental officer in his official capacity is equivalent to a suit against the governmental entity itself." *Mitchell v. Dupnik*, 75 F.3d 517, 527 (9th Cir. 1996).  In any event, Plaintiff has not shown that the County acted with the requisite "malice, fraud, or oppression" necessary to justify an award of punitive damages for his statutory claims, or that any Defendant acted with the

DEFENDANTS' MEMORANDUM ISO
MOTION FOR SUMMARY JUDGMENT
2:24-CV-04353-JLS-BFM

"evil motive or intent" necessary for his constitutional claims. *Cook v. Torres*, 2013 WL 5946072, at *10 (C.D. Cal. 2013).

**State Constitutional Claims.** Plaintiff cannot seek damages for his claim under the California constitution, because "violations of fundamental rights guaranteed under the state constitution do not give rise to a private cause of action for damages." *Elrawi v. Burgess*, 2018 WL 6133416, at *6 (C.D. Cal. 2018) (collecting cases).

### D.    The Individual Defendants Are Entitled to Qualified Immunity

Plaintiff's sole federal claim for damages against the Individual Defendants, his free-exercise claim, is barred by qualified immunity. Plaintiff has failed to establish that any Individual Defendant violated his constitutional rights for the basic reason that they applied neutral policies neutrally and without hostility toward Plaintiff's religion. This means that Plaintiff's claims fail and that the Individual Defendants are entitled to qualified immunity. *See Lacey v. Maricopa County*, 693 F.3d 896, 915 (9th Cir. 2012) (en banc).

But even if Plaintiff established a genuine dispute of material fact as to whether EA-231 was applied to him in a non-neutral fashion or by a non-neutral decisionmaker, he has not shown that any Individual Defendant violated a clearly established right. No Individual Defendant acted as a decisionmaker with respect to the 100% compliance mandate; Chiefs Boiteux and Uehara merely conveyed the mandate to their subordinates, and Chief Lester complied by flying the PPF. ¶¶131-33 Expanding liability to these actions taken by individuals with no decision-making authority would venture beyond the Supreme Court's free-exercise jurisprudence, which implicates only final decisions by final decisionmakers. *See, e.g.*, *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 515-20 (2022) (school district decision to fire coach); *Masterpiece Cakeshop*, 584 U.S. at 628-30 (civil rights commission decision to enjoin storekeeper); *Fulton v. City of Philadelphia*, 593

DEFENDANTS' MEMORANDUM ISO
MOTION FOR SUMMARY JUDGMENT
2:24-CV-04353-JLS-BFM

U.S. 522, 530-31 (2021) (Department of Human Services decision to deny contract to foster care agency).

Nor did the Individual Defendants violate any clearly established right in their response to Plaintiff lowering the PPF.  Their conduct must have been clearly "unlawful in the situation [they] confronted"—namely, a captain openly defying explicit direction from the Board of Supervisors in full public view.  *Ziglar v. Abbasi*, 528 U.S. 120, 152 (2017).  Plaintiff can point to no precedent that tied the Individual Defendants' hands such that their conduct violated clearly established law.  *Gordon v. County of Orange*, 6 F.4th 961, 969 (9th Cir. 2021) ("existing precedent must place the lawfulness of the particular action beyond debate and must squarely govern the specific facts at issue").  They are entitled to qualified immunity.

## V.   CONCLUSION

The Court should grant Defendants' motion and enter summary judgment against Plaintiff and in favor of Defendants on all counts.

Dated: March 6, 2026

/s/ *Dimitri D. Portnoi*
Dimitri D. Portnoi
Kyle M. Grossman
Marni B. Robinow
O'MELVENY & MYERS LLP

*Attorneys for Defendants County of Los Angeles, Fernando Boiteux, Adam Uehara, and Arthur Lester*

DEFENDANTS' MEMORANDUM ISO
MOTION FOR SUMMARY JUDGMENT
2:24-CV-04353-JLS-BFM

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants County of Los Angeles, Fernando Boiteux, Adam Uehara, and Arthur Lester, certifies that this brief contains 6,995 words, which complies with the word limit of Local Rule 11-6.1.

Dated:  March 6, 2026          O'MELVENY & MYERS LLP

                              By:     */s/ Dimitri D. Portnoi*
                                     Dimitri D. Portnoi

                              *Attorneys for Defendants County of Los Angeles, Fernando Boiteux, Adam Uehara, and Arthur Lester*

DEFENDANTS' MEMORANDUM ISO
MOTION FOR SUMMARY JUDGMENT
2:24-CV-04353-JLS-BFM