# EXHIBIT D

## INTERACTIVE PROCESS MEETING WORKSHEET

1.

### Employee Information                    IPM Date/Time: 5/29/2024

| Name of Employee | Jeffrey Little |
|---|---|
| Employee Number | 482745 |
| Job Title | Captain, Lifeguard |
| Date of Injury | N/A |
| Claim Number | N/A |
| Work restrictions | Per email sent from EE on 5/8/2025:<br><br>a. (1) I be exempt this June from the EA-231 requirement of captains/site supervisors to handle, raise, and lower the Pride Flag or Progress Pride Flag at stations/sites to which they've been assigned or otherwise stationed;<br><br>(2) I be exempt this June from the Direct Order directing my specific compliance with this requirement of EA-231; and that;<br><br>(3) I be exempt this June from any requirement to order, command, or supervise any other person, including any subordinate, colleague, or coworker, to raise, lower, or otherwise handle the Pride Flag or Progress Pride Flag. |
| Check Mark One:<br>Temporary _____<br><br>Permanent _____ | **Note: All permanent work restrictions are based on Permanent & Stationary (P&S) Maximum Medical Improvement (MMI) findings.** |

**First IPM held on 5/29/2024**

Explained purpose of IPM – in accordance with ADA/FEHA where we engage in a good faith interactive process with employees to determine an accommodation, if appropriate.

The Interactive Process is an ongoing dialogue between the employee and appropriate representatives of the County of Los Angeles Fire Department.

Informed everyone that I am the facilitator of the IPM and the COC are the decision makers. That during this IPM I will write down what his requests are and take them back to COC for determination. Reviewed his email where he requested a religious accommodation.

1. CA Little read the Direct Order that was provided to him by Chief Boiteux on 6/22/2023. He stated that a copy was sent to Employee Relations. I explained that my role is to conduct IPMs and address requests for accommodations for the department and that I do not handle Direct Orders. I informed him that within the IPM forum, we do not discuss items pertaining to discipline or what falls into that forum.

2. CA Little asked if this accommodation can be in place moving forward – a standing accommodation, and I explained that if an employee has the need for an annual religious accommodation, they would request one every year. He said that this request is based on the DO and its verbiage – which is based on the BoS mandate.

3. CA Little stated that he does not trust the county to come to work in June with the DO in place.

                                                                                            LAC-0001483

IPM Date:    5/29/2024 and 5/31/2024                    Employee:    Jeffrey Little

4.  CA Little confirmed that he is currently working
5.  I asked him if his religious beliefs interfere with his ability to perform duties for members of the public who are part of the LGBTQIA + community and he said, "no.  I will perform my duties anywhere, any place, and any time".
6.  His attorney asked "if it is necessary that this religious accommodation be provided on an annual basis moving forward because it would create a hardship and unnecessary?".
7.  I explained the process and purpose of the IPM – which does not include information discussed in DO or any discipline information.  His attorney asked for clarification on the DO being discipline.  I apologize for misspeaking and explained that I do not handle any part of the DO process and it is not something that is discussed in an IPM.  Attorney requested that it be considered in the IPM because the information in the DO pertains to his request.
8.  I explained that although he referenced EA-231 in his initial email request, there should be a new EA coming out soon to reference guidelines in accordance with the Board motions.
9.  I informed all that I would like to put a pin in this IPM so that I can take back what his request is to his COC so that they can determine what type of accommodation can be provided.
10. Agreed to reschedule follow up IPM on 5/31/24 at 11:30 am.
11. His attorney stated that it is vital that the Direct Order be considered as part of the IPM discussion and religious accommodation request due to it referencing the EA-213.
12. IPM ended

**Interactive Process Meeting Verification Sign-in Sheet**

| Attendees | Name | Meeting | Date |
|---|---|---|---|
| Employee | Jeffrey Little | Teams | 5/29/2024 |
| Section Chief, Lifeguard Division | Kyle Power | Teams | 5/29/2024 |
| Employee attorney | Joshua Younking | Teams | 5/29/2024 |
| Employee attorney | Paul Jonna | Teams | 5/29/2024 |
| Employee Representative | Gregory Crum | Teams | 5/29/2024 |
| Risk Management | Renée Nuanes-Delgadillo | Teams | 5/29/2024 |

2

Updated: 3/15/18

Confidential                                                                                                    LAC-0001484

IPM Date:    5/29/2024 and 5/31/2024                    Employee:    Jeffrey Little

**Second IPM held on 5/31/2024**

- I reiterated that the purpose of this second IPM was to discuss, including what his two attorney's requested
- I reviewed EA-232 and CA Little confirmed that he had received and read the EA
- Reviewed his work schedule: Th-Sat 10 am to 8 pm at Area 33, Wed 8am to 6 pm at Zuma
- Reviewed that he supervises 2 OLS at both work locations
- Informed CA Little that at Zuma Beach the flag would be flown prior to his work shift
- Informed CA Little that at Area 33, another staff (OLS) would raise flag so that he would not be required to do so
  - Chief Power informed CA Little that at Pointe Dune a OLS or OL would raise flag
  - Chief Power informed CA Little that the Malibu site would not have a PPF because it is a repurposed telephone poll and would not be able to support the PPF
- CA Little brought up a concern that a flag would be flown at Point Dune – stating that it would have 3 flags total and that would mean that one of the flags would lay on the roof.  Chief Power stated that he would look into this and confirm
- CA Little is requesting in writing the locations where a PPF would be flown
- CA Little stated that last year there was a concern because there were LG Chiefs (not Power) that went around and put up PPFs against the direction of EA -231
- CA Power stated that there have been meetings regarding what locations would be required to fly the PPF based on the EA-232 and that information will be provided once confirmed
  - CA Little reiterated that he would like this in writing.  Paul (CA Little attorney) also requested this information.
- CA Little asked if he would be responsible for monitoring the PPF
  - Asked CA Little to clarify
  - CA Little stated that if someone defies putting up the PPF what is his responsibility.  He stated that this causes "knots in his stomach – telling someone to put up the PPF"
  - Informed CA Little that as a Captain that it is part of his essential job functions to supervise someone, which includes ensuring that they adhere to any EAs that are put out (Chief Power mirrored this).  I explained that it would be undue hardship to remove that essential job function from his duties.
  - CA Little asked what if flag is damaged when he comes to work.
    - Chief Power explained that as part of his own (Chief's) responsibility, if there is an issue that he should be notified so that he can obtain a replacement

3

Updated: 3/15/18

IPM Date:    5/29/2024 and 5/31/2024 _____    Employee:    Jeffrey Little _____

- CA Little and his attorney Paul asked if this could be a standing religious accommodation
  - Explained that per DHR the county does not providing standing religious accommodations.  I also noted and confirmed that this request is only for the month of June (both said yes); therefore, a new request would have to be made every year since it is based upon the determination of the BoS
- CA Little reiterated that he feels unwell having to tell someone to put up flag.  He stated that it is not an undue hardship to remove that part from his responsibility.  He stated that he feels that the County does not think that his beliefs matter.  He stated that he does not want to be disciplined if he does not comply (per the DO that he was provided last year) and he stated that he cannot work in that type of environment.  He said that the EA makes reference that those not in compliance will be dealt with very seriously.  He said that the reason why we are doing this is to prevent this and being confronted
- Joshua (CA Little attorney) stated that he understands the term "undue hardship", but wants to know if I can provide him the financial cost of what this would mean
  - Explained that it would mean the supervisory role would be removed from him and providing it to another Captain, who in turn would have to leave his work location, or have someone come into the office who is off to oversee this part.  I explained that I don't know the actual dollar amount, but it would be the cost of that person's daily salary.  Additionally, I explained that if someone comes from another location to cover, there is a safety concern of them leaving their respective work location and the staff they supervise.
- Attorneys asked if CA Little can be reassigned to other locations where the PPF will not be flown.  Paul stated, it really depends on what extent the county wants to work through this request.
- Chief Power reiterated that they are still determining what locations will be flying the PPF.
- Chief Power informed CA Little that if he wants to switch with another captain via a trade request, he can pursue that but it would be on his own – not through the accommodation.  I agreed.
  - Attorney Paul asked if he can be moved to another spot where there is no PPF
  - Chief Power explained that there are no open vacancies to move him, and we cannot displace another person due to his request.  He stated that it was not realistic.  He explained that his option would be to request a trade
- CA Little thanked Chief Power for his explanation.  He asked if a mutual trade was sought, would it have to be approved by him.  Chief Power said yes.  He explained that the trade would have to be done by him and that the department would not facilitate it – as is standard practice. Further, he

4

Updated: 3/15/18

LAC-0001486

IPM Date:    5/29/2024 and 5/31/2024                Employee:    Jeffrey Little

stated that an employee's ownership of their schedule cannot be removed by the department.
- I informed CA Little that we could also accommodate him with a leave of absence.
  - CA Little asked if he would have to use his own time and I informed him that he would
- Paul requested to have a list of all location where PPF is being flown – by end of day
  - Chief Power explained that at this time we don't have a list
- I summarized the following with the group:
  - The department would accommodate CA Little by not requiring him to put up or take down the PPF during the month of June
  - CA Little would be required to supervise staff in adherence with all EAs, department/county policies and directives
  - CA Little can request a mutual transfer on his own and submit the request through the appropriate channels
  - The department can accommodate CA Little by providing him a leave of absence
- Before we left Paul stated – this is not the final determination.  We need to see if CA Little can be placed in another location where the PPF is flown
- They asked if I was recording the meeting – I stated I was not.
- They asked if follow up documentation would be provided, I informed them that I would send a follow up notice memorializing both IPMs

| Attendees | Name | Meeting | Date |
|---|---|---|---|
| Employee | Jeffrey Little | Teams | 5/31/2024 |
| Section Chief, Lifeguard Division | Kyle Power | Teams | 5/31/2024 |
| Employee attorney | Joshua Younking | Teams | 5/31/2024 |
| Employee attorney | Paul Jonna | Teams | 5/31/2024 |
| Employee Representative | Gregory Crum | Teams | 5/31/2024 |
| Risk Management | Renée Nuanes-Delgadillo | Teams | 5/31/2024 |

5

Updated: 3/15/18

Confidential