Charles S. LiMandri, SBN 110841
 cslimandri@limandri.com
Paul M. Jonna, SBN 265389
 pjonna@limandri.com
Jeffrey M. Trissell, SBN 292480
 jtrissell@limandri.com
Joshua A. Youngkin, SBN 332226
 jyoungkin@limandri.com
William T. Duke, SBN 361823
 wduke@limandri.com
LiMANDRI & JONNA LLP
 *as Special Counsel to*
 THOMAS MORE SOCIETY
P.O. Box 9120
Rancho Santa Fe, CA 92067
Telephone: (858) 759-9930
Facsimile: (858) 759-9938

*Attorneys for Plaintiff*
*Captain Jeffrey Little*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAPTAIN JEFFREY LITTLE,<br><br>Plaintiff,<br><br>v.<br><br>LOS ANGELES COUNTY, et al.<br><br>Defendants. | **Case No.: 2:24-cv-4353-JLS-PD**<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Judge:       Hon. Josephine L. Staton<br>Courtroom:   8A<br>Date:         April 24, 2026<br>Time:         10:30 a.m.<br><br>Action Filed:   May 24, 2024 |

# REDACTED / PUBLIC VERSION

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................8

LEGAL STANDARD............................................................................................8

ARGUMENT..........................................................................................................9

    I.    Plaintiff is Entitled to Summary Judgment on his Title VII and FEHA Failure to Accommodate Claims. ........................................9

        A.    Title VII and FEHA Require Accommodation of Religious Beliefs, Unless Accommodation Would Create Undue Hardship for the Employer. ...............................9

        B.    The Uncontroverted Facts Establish a *Prima Facie* Case of Religious Discrimination Based on Failure to Accommodate. ...................................................10

            1.    Little is a traditional Christian whose beliefs conflict with the message of the PPF. ...........................11

            2.    Little notified his employer about the conflict, requested accommodation, and participated in good faith in the interactive process............................11

            3.    The County threatened and disciplined Captain Little because his beliefs would not allow him to participate in the raising or lower of the PPF. ...............................................................12

        C.    Accommodating Little Would Not Have Been an Undue Hardship. ........................................................14

            1.    The County would not have suffered an undue hardship from granting Little accommodations to the EAs. .................................................................14

            2.    Accommodation would not have created other hardships.................................................................15

    II.    Plaintiff is Entitled to Summary Judgment for Retaliation under Title VII and FEHA. ................................................16

    III.    Plaintiff is Entitled to Summary Judgment on his Claim for Violation of the First Amendment and the California Constitution. ....................................................................19

        A.    The County Substantially Burdened Little's

Religion..................................................................................................20

B.    The County's Policy and Related Actions are Not Neutral, But Rather Demonstrate Hostility and Targeting of Little's Faith...........................................21

C.    The County Fails Strict Scrutiny. .............................................24

D.    Additional Factors Support Injunctive Relief...........................25

IV.    Plaintiff is Entitled to Summary Judgment on Defendants' Affirmative Defense of Sovereign Immunity. ...................................26

V.    Little is also entitled to summary judgment on *Monell* liability. .............................................................................................26

CONCLUSION...................................................................................................29

CERTIFICATE OF COMPLIANCE....................................................................29

# TABLE OF AUTHORITIES

**Cases**

*Am. Postal Workers Union v. Postmaster Gen.*
    781 F.2d 772 (9th Cir. 1986) .................................................................................11

*Anderson v. Liberty Lobby, Inc.*
    477 U.S. 242 (1986) ........................................................................................8, 9

*Bates v. Pakseresht*
    146 F.4th 772 (9th Cir. 2025) ........................................................................20, 22, 23

*Bolden-Hardge v. Off. of Cal. State Controller*
    63 F.4th 1215 (9th Cir. 2023) .........................................................................9, 14

*Bostock v. Clayton Cnty.*
    590 U.S. 644 (2020) .............................................................................................9

*Burlington N. & Santa Fe Ry. Co. v. White*
    548 U.S. 53 (2006) ........................................................................................17, 18

*Burwell v. Hobby Lobby*
    573 U.S. 682 (2014) ...........................................................................................25

*Cal. Fair Emp't & Hous. Comm'n v. Gemini Aluminum Corp.*
    122 Cal. App. 4th 1004 (2004) .............................................................................16

*Campbell v. Hawaii Dep't of Educ.*
    892 F.3d 1005 (9th Cir. 2018) ...............................................................................17

*Christie v. Iopa*
    176 F.3d 1231 (9th Cir. 1999) ........................................................................26, 27, 28

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*
    508 U.S. 520 (1993) .................................................................................21, 23, 24, 25

*Cornwell v. Electra Cent. Credit Union*
    439 F.3d 1018 (9th Cir. 2006) ...............................................................................16

*Creusere v. Bd. of Educ. of City Sch. Dist. of City of Cincinnati*
    88 F. App'x 813 (6th Cir. 2003) ............................................................................17

*Dawson v. Entek Intern*
    630 F.3d 928 (9th Cir. 2011) .................................................................................18

*Enriquez v. Gemini Motor Transp. LP*
    No. 19-cv-4759, 2021 WL 5908208 (D. Ariz. Dec. 14, 2021) ....................................17

4

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Ed.*
   82 F.4th 664 (9th Cir. 2023)................................................................passim

*Fonseca v. Sysco Food Servs. of Arizona, Inc.*
   374 F.3d 840 (9th Cir. 2004)................................................................17

*Free Speech Coalition v. Paxton*
   606 U.S. 461 (2025) ................................................................24

*Fulton v. City of Philadelphia, Pennsylvania*
   593 U.S. 522 (2021) ................................................................24, 25

*Gillette v. Delmore*
   979 F.2d 1342 (9th Cir. 1992) ................................................................27

*Groff v. DeJoy*
   600 U.S. 467 (2023) ................................................................10, 14, 16

*Hallett v. Morgan*
   296 F.3d 732 (9th Cir. 2002) ................................................................27

*Heller v. EBB Auto Co.*
   8 F.3d 1433 (9th Cir. 1993)................................................................10, 14

*Hittle v. City of Stockton*
   101 F.4th 1000 (9th Cir. 2024)................................................................9

*Hollis v. R&R Rests., Inc.*
   159 F.4th 677 (9th Cir. 2025)................................................................9

*In re Slatkin*
   525 F.3d 805 (9th Cir. 2008)................................................................9

*Kama v. Mayorkas*
   107 F.4th 1054 (9th Cir. 2024)................................................................17

*Kennedy v. Bremerton Sch. Dist.*
   597 U.S. 507 (2022) ................................................................20

*Lincoln Cnty. v. Luning*
   133 U.S. 529 (1890) ................................................................26

*Little v. Los Angeles Cnty. Fire Dep't,*
   No. 24-cv-4353, 2025 WL 3190797 (C.D. Cal. May 4, 2025) ....................10

*Masterpiece Cakeshop, Ltd. v. Colorado C. R. Comm'n*
   584 U.S. 617 (2018) ................................................................20, 21, 22, 23, 27

*Mendoza v. Sysco Food Servs. of Arizona, Inc.*
   337 F. Supp. 2d 1172 (D. Ariz. 2004)................................................................17, 18

*N. Ins. Co. of N.Y. v. Chatham Cnty.*
  547 U.S. 189 (2006) ...............................................................................................26

*Obergefell v. Hodges*
  576 U.S. 644 (2015) ...............................................................................................23

*Opara v. Yellen*
  57 F.4th 709 (9th Cir. 2023) .................................................................................16

*Passantino v. Johnson & Johnson Consumer Prods., Inc.*
  212 F.3d 493 (9th Cir. 2000) ................................................................................18

*Petersen v. Snohomish Reg'l Fire & Rescue*
  150 F.4th 1211 (9th Cir. 2025) .............................................................................14

*Peterson v. Hewlett-Packard Co.*
  358 F.3d 599 (9th Cir. 2004) ................................................................................10

*Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*
  130 F.3d 432 (9th Cir. 1997) ................................................................................26

*Ray v. County of Los Angeles*
  935 F.3d 703 (9th Cir. 2019) ................................................................................26

*Ray v. Henderson*
  217 F.3d 1234 (9th Cir. 2000) ..............................................................................17

*Sherbert v. Verner*
  374 U.S. 398 (1963) .........................................................................................20, 21

*Tiano v. Dillard Dep't Stores*
  139 F.3d 679 (9th Cir. 1998) ................................................................................10

*Valov v. Dep't of Motor Vehicles*
  132 Cal. App. 4th 1113 (2005) .............................................................................19

*Vernon v. City of Los Angeles*
  27 F.3d 1385 (9th Cir. 1994) ................................................................................20

*Villiarimo v. Aloha Island Air, Inc.*
  281 F.3d 1054 (9th Cir. 2002) ..............................................................................18

*Weiss v. Permanente Med. Grp., Inc.*
  No. 23-cv-3490, 2023 WL 8420974 (N.D. Cal. Dec. 4, 2023) .....................17

*Yartzoff v. Thomas*
  809 F.2d 1371 (9th Cir.1987) ...............................................................................18

PLAINTIFF'S MEMO. OF POINTS & AUTHS
ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

**Statutes, Regulations & Rules**

42 U.S.C. § 1983 ............................................................................................ 26, 28

42 U.S.C. § 2000e(b)............................................................................................ 9

42 U.S.C. § 2000e(f) ............................................................................................ 9

42 U.S.C. § 2000e(j)........................................................................................... 10

42 U.S.C. § 2000e-2(a)(1)..................................................................................... 9

42 U.S.C. § 2000e-2(m) ....................................................................................... 9

Fed. R. Civ. P. 56 ................................................................................................. 8

Fed. R. Civ. P. 56(a) ............................................................................................ 8

Fed. R. Civ. P. 56(c)(1) ........................................................................................ 9

**Constitutional Provisions**

U.S. Const. amend. XI ........................................................................................ 26

## INTRODUCTION

Plaintiff Jeffrey Little is a Captain in the Los Angeles County Fire Department's Lifeguard Division. (SUF ¶1). He has served with distinction for more than two decades. (SUF ¶¶1-4). He is also a devout Christian with traditional religious beliefs concerning marriage and sexuality. (SUF ¶¶6-10). His religious beliefs first came into conflict with the requirements of his job in 2023 when the County of Los Angeles adopted EA-231 to celebrate Pride Month through display of the Progress Pride Flag ("PPF") on certain county property in the month of June. (SUF ¶¶30-34). Little notified his employer of the conflict and made a request for religious accommodation. (SUF ¶¶35-36). What followed was a series of events in which the County initially granted his request, then withdrew it, and disciplined him when he stood on his religious beliefs. The following year the County again refused to accommodate his religious beliefs in relation to the PPF. (SUF ¶¶38-221).

The material facts are undisputed. The County *twice* failed to accommodate Little's sincerely held religious beliefs, despite contesting neither the sincerity of his beliefs nor the conflict between those beliefs and County PPF policy. Accommodating Little's religious beliefs would not have been an undue hardship on the County. The actions of the County and the other named Defendants violated Title VII of the Civil Rights Act of 1964 ("Title VII"), the California Fair Employment and Housing Act ("FEHA"), and the United States and California constitutions. For the reasons stated, Little is entitled to summary judgment.

## LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At summary judgment, the court asks whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 250 (1986). "[A]ll reasonable inferences are drawn in favor of the non-moving party." *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson*, 477 U.S. at 255); *Hollis v. R&R Rests., Inc.*, 159 F.4th 677, 683 (9th Cir. 2025). A party asserting that a fact is undisputed must support that assertion by citing the record or showing the opposing party cannot produce admissible evidence creating a genuine dispute. Fed. R. Civ. P. 56(c)(1).

## ARGUMENT

### I. Plaintiff is Entitled to Summary Judgment on his Title VII and FEHA Failure to Accommodate Claims.

The undisputed facts establish that the County, as Little's employer, violated Title VII and FEHA when it denied an accommodation for the conflict between his personal responsibility for the PPF and his religious beliefs, even though accommodation would not have caused it undue hardship.[1]

### A. Title VII and FEHA Require Accommodation of Religious Beliefs, Unless Accommodation Would Create Undue Hardship for the Employer.

Title VII prohibits an employer from discriminating against an employee "because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1); *see id.* §§ 2000e(b), (f). An employer violates Title VII if it takes adverse action against an employee because of a protected trait. *Bostock v. Clayton Cnty.*, 590 U.S. 644, 656-60 (2020). An employment practice is unlawful if the plaintiff shows that a protected trait, like religion, was "a motivating factor" for the decision. 42 U.S.C. § 2000e-2(m); *Bostock*, 590 U.S. at 656-57; *Hittle v. City of Stockton*, 101 F.4th 1000, 1013 (9th Cir. 2024).

///

---

[1] FEHA "is interpreted consistently with Title VII, and thus "analysis of the federal and state claims is the same." *Bolden-Hardge v. Office of California Controller*, 63 F.4th 1215, 1222 n.3 (9th Cir. 2023).

Discrimination based on religion includes discrimination based on *any* "aspect[] of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business." *Id.* at § 2000e(j). Assessing what constitutes an "undue hardship" for purposes of religious accommodation requires that courts "take[] into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size and operating cost of [an] employer." *Groff v. DeJoy*, 600 U.S. 467, 470-71 (2023) (cleaned up).

### B.    The Uncontroverted Facts Establish a *Prima Facie* Case of Religious Discrimination Based on Failure to Accommodate.

A *prima facie* case of failure to accommodate requires evidence that: "(1) [the plaintiff] had a bona fide religious belief, the practice of which conflicted with an employment duty; (2) [he] informed [his] employer of the belief and conflict; and (3) the employer threatened [him] with or subjected [him] to discriminatory treatment, including discharge, because of [his] inability to fulfill the job requirements." *Heller v. EBB Auto Co.*, 8 F.3d 1433, 1438 (9th Cir. 1993); *see Tiano v. Dillard Dep't Stores*, 139 F.3d 679, 681 (9th Cir. 1998). If the plaintiff establishes a *prima facie* case, the burden then shifts to the employer to show either that it "initiated good faith efforts to accommodate reasonably the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship." *Little v. Los Angeles Cnty. Fire Dep't*, No. 24-cv-4353, 2025 WL 3190797, at *4 (C.D. Cal. May 4, 2025) (quoting *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 606 (9th Cir. 2004)).

///

///

///

**1.    Little is a traditional Christian whose beliefs conflict with the message of the PPF.**

First, it is uncontroverted that (1) Little is a devout Christian with traditional Christian beliefs regarding marriage, family, and sexual behavior and identity and (2) adoption of EA-231 (and later EA-232) created a conflict with Little's beliefs. (SUF ¶¶6-8; ¶¶11-14; ¶¶29-30). Defendants have not contested the fact that Little's religious beliefs are *bona fide,* and in fact the County has offered him accommodations (though they are inadequate) because of his religious beliefs. (*See* SUF ¶42, ¶¶59-6169). It is equally undisputed that the PPF celebrates LGBTQ+ identity and pride. (SUF ¶17). To Little, this flag promotes sexual expression and ethics that are incompatible with the Bible's plan for sex and marriage. (SUF ¶7, ¶¶11-12, ¶30).

While Little's religious beliefs do not preclude him from working at a facility flying the PPF (SUF ¶29), imposing on him responsibility for raising the PPF or directing another person to do so—as EA-231 (and the later EA-232) specifically required of supervisors, like Little— presents a conflict. (SUF ¶¶29-30; ¶45, ¶¶64-66). Thus, he satisfies the first element of his *prima facie* case.

**2.    Little notified his employer about the conflict, requested accommodation, and participated in good faith in the interactive process.**

Second, because EA-231 created a conflict with Little's sincerely held religious beliefs, on becoming aware that his currently assigned station was flying the PPF, Little promptly informed his superiors and made a request for accommodation to Division Chief Boiteux, by email sent June 18, 2023. (SUF ¶¶35-36). "Title VII is premised on 'bilateral cooperation . . . [A]lthough the statutory burden to accommodate rests with the employer, the employee has a correlative duty to make a good faith attempt to satisfy his needs[.]" *Am. Postal Workers Union v. Postmaster Gen.*, 781 F.2d 772, 777 (9th Cir. 1986) (citation omitted).

In both 2023 and 2024, Little more than satisfied his legal duty by not only notifying the County of the conflict presented by the EAs but also making formal requests for accommodation and offering multiple possibilities for resolving the conflict with his faith. (SUF ¶¶36; ¶¶51-52; ¶¶59-68; ¶¶207-216). He engaged in this process in June 2023 and again in 2024 in anticipation of that year's Pride Month. (SUF ¶¶59-68, ¶¶207-216). The undisputed facts establish that the County was aware of the conflict with his religious beliefs and his accommodation requests.

**3.    The County threatened and disciplined Captain Little because his beliefs would not allow him to participate in the raising or lower of the PPF.**

The County fares no better on the third element of the *prima facie* case: threats and discriminatory treatment. Following an IPM with the County on June 19, 2023, Little was *granted* an accommodation that included working recall assignments at a location where the PPF would not be flying. (SUF ¶¶67-69). Nevertheless, on June 21, 2023, when Little reported to his assignment there, he was surprised to see the PFF flying. ████████████████████████████████████ ████████████████████████████████ (SUF ¶¶97-100). So, in accordance with Little's understanding of EA-231, his accommodation, and his religious beliefs, Little removed the PPFs and stored them. (SUF ¶¶109-15). Little testified (and demonstrated) it was not merely that the PPFs were flying at his worksite, but that as the lead captain for Area 17 that day he was responsible for ensuring the PPFs were flying under the express terms of EA-231—a duty that conflicted with his religious beliefs. (SUF ¶¶50-52; ¶61; ¶¶107-08).

Despite knowing Little had acted based on his faith and his June 19 accommodation, Chief Lester—with the blessing of Chiefs Boiteux and Uehara—reported Little for violation of County policy. (SUF ¶117, ¶¶121-22). At a second IPM on June 21, 2023, Little was informed that his accommodation had been rescinded and he would be responsible for ensuring the flying of the PPF. (SUF

¶¶131-140). During this second meeting, Little was also told by County officials that his accommodation request related to flags was outside the scope of the interactive process and "does not fall under a religious accommodation." (SUF ¶131).

On June 22, Chief Boiteux met with Little in person and provided a Direct Order, a Notice of Instruction, and a Subject of Internal Investigation notice because of his lowering of the PPFs. (SUF ¶162). Chief Boiteux *admitted* in deposition he told Little that his "religious beliefs don't matter" and that he needed to ensure the flag is flown "regardless of [his] beliefs." (SUF ¶¶165-66).

The County then imposed discipline on Captain Little:

- He was suspended from the Background Investigations Unit ("BIU"), resulting in a significant loss of income, overtime, and prestige. (SUF ¶179).

- The Equity Panel sustained allegations against Little, made by Chief Lester, that he had violated the County's Policy of Equity. (SUF ¶90).

-  (SUF ¶185).

- (SUF ¶186).

Beginning March 2024, Captain Little sent the County multiple letters renewing his request to be accommodated from any requirement to ensure PPFs were flying in June 2024, but the County ignored his communications until May 23, 2024, when the Fire Department set another IPM. (SUF ¶201). EA-231 had been revised, and the flag was now governed by EA-232. The County, however, still failed to accommodate Little because it said he would always be responsible for ensuring the PPF is flying, even if excused from personal raising. (SUF ¶210-11).

Denial of his requests in 2023 and 2024, finding that he violated the County's equity policy, and the 15-day unpaid suspension all flowed directly from Little's

traditional religious beliefs and his efforts to not violate them. These acts all easily count as *prima facie* "discriminatory treatment . . . because of [Little's] inability to fulfill the job requirements." *Heller*, 8 F.3d at 1438.

Accordingly, Little states a *prima facie* case for discrimination.

### C.    Accommodating Little Would Not Have Been an Undue Hardship.

An employer cannot establish undue hardship by showing only "more than a *de minimis* cost." *Groff*, 600 U.S. at 468. Instead, the employer must show a burden "substantial in the overall context of [its] business," which turns on "all relevant factors[,]" including the impact of the accommodation "in light of the nature, size and operating cost" of the employer. *Id.* at 468, 470-71.

"All relevant factors" includes managing and deploying employees, but those burdens are relevant to a Title VII undue burden analysis only to the extent they translate into material operational costs or disruptions for the employer. *See id.* at 476 (Sotomayor, J., concurring). Furthermore, Title VII does not treat every coworker objection as hardship. *Id.* And since undue hardship is an affirmative defense, the burden falls on the employer to show that a cognizable undue hardship justified denying the accommodation. *See Petersen v. Snohomish Reg'l Fire & Rescue*, 150 F.4th 1211, 1217 (9th Cir. 2025); *Bolden-Hardge v. Off. of Cal. State Controller*, 63 F.4th 1215, 1225 (9th Cir. 2023).

### 1.    The County would not have suffered an undue hardship from granting Little accommodations to the EAs.

On the undisputed record, no reasonable juror could find the County would have suffered undue hardship from accommodating Little. Operationally, the lack of any burden already was clear by the conclusion of his first IPM on June 19, 2023. It was agreed then that Little would be allowed to serve as captain and refrain from personally raising the Progress Pride Flag so long as another captain at a nearby beach would do so. (SUF ¶140). And the undisputed record reflects that this was a

workable solution. (SUF ¶147, 151). In other words, the County (briefly) accommodated Little simply by reallocating discrete flag tasks within a unified supervisory area, which shows there was no undue hardship.

Defense witnesses have confirmed how operationally easy it would have been to accommodate Captain Little. He could permissibly be assigned to any beach along the coastline, and there were "160 lifeguard towers that flew only one flag" (plus other one-flag facilities) where EA-231's own terms did not necessarily require a PPF. (SUF ¶47). Indeed, even after the Department's "100 percent compliance" push, the record reflects that stations still were not flying the PPF "because they could not," and "relocating Little to an area not flying the Progress Pride Flag remained a way to accommodate him." (SUF ¶¶104-05). Little worked to minimize the necessity of the Department needing to recall another to replace any shifts he might be scheduled for at locations incompatible with his accommodation. (SUF ¶69, ¶¶80-81). And even if he had not made that effort, before Little's second IPM, ███ ████████████████████████████████████████ ████████████████ (SUF ¶150).

### 2. Accommodation would not have created other hardships.

Consideration of potential economic burdens does not help Defendants. The cost estimates in the record—prepared by Little's chain of command and not disputed by the County's corporate representative—place the "full economic cost" of granting the accommodation he requested ███████████ out of a roughly $1.5 *billion* annual Fire Department budget. (SUF ¶142). Barely 1/2000 of 1% of the budget, and less than Chief Boiteux earns in total compensation each week of the year. ██████████████████████████████████████████ ███████████████████████ (SUF ¶142).[1]

---

[1] Even if a recall were needed to cover a month of shifts, the Division Chief estimated the cost at approximately $16,000—still immaterial in the overall context of the

15

Defendants have speculated that someone might suffer mental distress if Little received an accommodation. But that theory collapses on both the facts and the law. Notably absent across nearly two dozen defense depositions is *any* concrete evidence that would tie the requested accommodation to injury to anyone. ███████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████ (SUF ¶144). Mere conjecture does not satisfy *Groff*, but even if it could, *Groff* expressly holds that "a coworker's dislike of the mere fact of an accommodation" is not a cognizable burden. 600 U.S. at 470 (cleaned up).

Defendants have no evidence of substantial operational disruption, and their own witnesses quantify only trivial cost. Under *Groff*'s clarified standard, this evidence, such as it is, cannot carry the "undue hardship" defense as a matter of law, and summary adjudication is warranted. *See Groff*, 600 U.S. at 468, 470.

## II.    Plaintiff is Entitled to Summary Judgment for Retaliation under Title VII and FEHA.

To establish a *prima facie* retaliation claim, a plaintiff must allege: (1) a protected activity; (2) an adverse employment action; and (3) a causal link between the protected activity and the adverse employment action. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1034-35 (9th Cir. 2006) (Title VII); *Cal. Fair Emp't & Hous. Comm'n v. Gemini Aluminum Corp.*, 122 Cal. App. 4th 1004, 1018 (2004) (FEHA). "The requisite degree of proof necessary to establish a prima facie case . . . on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." *Opara v. Yellen*, 57 F.4th 709, 722 (9th Cir. 2023) (cleaned up and citation omitted). This "minimal" burden is justified since those discriminating against a person due to his protected activity might not create direct

Department's operations and resources. (SUF ¶55).

evidence of discrimination when doing so. *Kama v. Mayorkas*, 107 F.4th 1054, 1059 (9th Cir. 2024).

Discovery has confirmed that on June 18, 2023, Little emailed Chief Boiteux requesting an exemption from EA-231, stating it "infringes on my sincere religious beliefs" and is "in conflict with my deep religious faith." (SUF ¶36). ██████ ████████████████ (SUF ¶40). He participated in the IPM the next day, June 19. (SUF ¶59). Multiple courts have held that requesting an accommodation is a protected activity for purposes of Title VII. *See Creusere v. Bd. of Educ. of City Sch. Dist. of City of Cincinnati*, 88 F. App'x 813, 821 (6th Cir. 2003); *Weiss v. Permanente Med. Grp., Inc.*, No. 23-cv-3490, 2023 WL 8420974, at *4 (N.D. Cal. Dec. 4, 2023); *Enriquez v. Gemini Motor Transp. LP*, No. 19-cv-4759, 2021 WL 5908208, at *7 (D. Ariz. Dec. 14, 2021). Further, requests for accommodations are protected activity for purposes of the ADA, and the Ninth Circuit has held that Title VII and the ADA framework for retaliation are the same. *Id.* (citations omitted). Indeed, Defendants have not disputed that Little engaged in a protected activity. (ECF 30-1 at 27).

Immediately after his protected activity, Little began suffering adverse employment action, starting with Chief Boiteux's June 22 decision to investigate Little for removing PPFs on June 21, notwithstanding his accommodation. (SUF ¶162). "[M]erely investigating an employee . . . likely can support a claim for Title VII retaliation." *Campbell v. Hawaii Dep't of Educ.*, 892 F.3d 1005, 1022 (9th Cir. 2018). ████████████████████████ ████████████████████████ (SUF ¶¶179-80). ██████ ████████████████████████ *Ray v. Henderson*, 217 F.3d 1234, 1241 (9th Cir. 2000); *see Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 71 (2006). But Little's suspension also came with loss of income and prestige. (SUF ¶180). *See Fonseca v. Sysco Food Servs. of Arizona, Inc.*, 374 F.3d 840, 847 (9th Cir. 2004) (denial of overtime is adverse action); *Mendoza v. Sysco Food Servs.*

*of Arizona, Inc.*, 337 F. Supp. 2d 1172, 1191 (D. Ariz. 2004) (same). ███████

████████████████████████████████████████████████████████████████

██████████████████████████ (SUF ¶¶186-201). *Burlington*, 548 U.S. at 6 (suspension without pay materially adverse).

Finally, there is a clear causal nexus. "Causation sufficient to establish the third element of the prima facie case may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir.1987).

Take temporal proximity first. Within a single week, Defendants learned of Little's accommodation request, granted it, rescinded it, initiated an investigation, filed a CPOE report, removed him from the BIU, and began a process by which he was ultimately suspended without pay. (SUF ¶36; ¶¶59-68; ¶90; ¶129; ¶¶131-41; ¶179; ¶¶185-98). "Causation can be inferred . . . where [as here] an adverse employment action follows on the heels of protected activity." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002); *see Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 507 (9th Cir. 2000); *Dawson v. Entek Intern*, 630 F.3d 928, 937 (9th Cir. 2011) ("[T]emporal proximity can by itself constitute sufficient circumstantial evidence of retaliation[.]").

Turning to knowledge, Little's superiors knew on June 18 that he requested accommodation. (SUF ¶36). As this Court noted, Little's complaint "presented at least some evidence from which retaliatory motive can be inferred," including Lester's action of bringing clasps to Area 17 immediately after Little's accommodation was granted with the intent to undermine the accommodation and Chief Boiteux's repeated statements to Little that his religious beliefs do not matter. *Little*, 2025 WL 409427, at *5. Later that day, Little explained his accommodation to Lester when Lester requested that he re-raise the PPFs. (SUF ¶117). Even though he watched Little break down emotionally, Lester *still* filed a County Policy of Equity

report against him, which eventually led to a 15-day suspension without pay. (SUF ¶118; ¶121).

And Chief Boiteux himself acknowledges that he told Little that his beliefs do not matter. (SUF ¶¶165-66).

Given Little's exemplary career, it is apparent that Little's request was the but-for cause of these adverse actions. Little was well-known in the department for his laudable work. (SUF ¶¶3-4). His leadership regarded him as a "really talented" lifeguard. (SUF ¶2). ███████████████████████████ (SUF ¶199). His evaluation for March 2023 showed that he exceeded expectations in the BIU. (SUF ¶4). And there was no information or evidence that Little did not perform well at the BIU prior to his removal. (SUF ¶180).

Little's claim meets every element for Title VII and FEHA retaliation, and his excellent work history reveals that any non-retaliatory explanation for the adverse actions is pretextual. The Court should grant summary judgment on Little's retaliation claims, including his corresponding state law claim (see Fifth Claim for Relief ("Failure to Prevent Discrimination, Harassment, and Retaliation in Violation of FEHA")).

### III.    Plaintiff is Entitled to Summary Judgment on his Claim for Violation of the First Amendment and the California Constitution.

The First Amendment's Free Exercise Clause prohibits government from "act[ing] in a manner hostile to religious beliefs or inconsistent with the Free Exercise Clause's bar on even *subtle* departures from neutrality"—unless the government satisfies strict scrutiny. *Fellowship of Christian Athletes (FCA) v. San Jose Unified Sch. Dist. Bd. of Ed.*, 82 F.4th 664, 686 (9th Cir. 2023) (cleaned up) (emphasis added).[1]  Moreover, "government actions coupled with 'official

---

[1] The California Constitution's free exercise protection is even stronger, requiring strict scrutiny for any burden on religious exercise. *See Valov v. Dep't of Motor Vehicles*, 132 Cal. App. 4th 1113, 1126 & n.7 (2005). To the extent some cases

*expressions of hostility . . .* [ are] inconsistent with what the Free Exercise Clause requires . . . [and] must be set aside.'" *Id.* at 690 (quoting *Masterpiece Cakeshop, Ltd. v. Colorado C. R. Comm'n*, 584 U.S. 617, 639 (2018) (emphasis added)).

The County's undisputed treatment of Little plainly lacks religious neutrality and must be set aside entirely or at least undergo strict scrutiny (which it fails).

### A.    The County Substantially Burdened Little's Religion.

There is no genuine dispute the County has burdened Little's religious exercise. His actions regarding the PPF—including his religious accommodation requests and lowering the PPFs in Area 17 on June 21, 2023—are sincerely religiously motivated. (SUF ¶¶6-8; ¶¶10-12; ¶42; ¶135). And the County plainly burdened Little's religious beliefs and practice by withdrawing the accommodation it had originally provided and suspending him without pay in November 2024. *See Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 525-27 (2022) (school's forbidding and suspending coach for praying on football field burdened religious exercise).

The County is also *still* burdening Little's religious exercise by continuing to require that he *ensure others raise the PPF* pursuant to EA-232. (SUF ¶211, ¶216). Though Little has obtained *de facto* tentative relief by working in areas where he is ultimately not responsible for the PPF, (SUF ¶220), he remains vulnerable to being assigned to areas where he would be. *Id.* The County's "policy is unmistakably normative because it is clearly designed to present certain values and beliefs and things to be celebrated and contrary values and beliefs as things to be rejected." *Bates v. Pakseresht*, 146 F.4th 772, 790 (9th Cir. 2025) (finding religious burden in such circumstances).

Accordingly, "the pressure upon [Little] to forego" either his religious beliefs and practice or his livelihood remains "unmistakable." *Sherbert v. Verner*, 374 U.S.

---

construe the two clauses coextensively, Captain Little's the same analysis applies to both. *Vernon v. City of Los Angeles*, 27 F.3d 1385, 1392 (9th Cir. 1994).

398, 404 (1963).[1]

### B. The County's Policy and Related Actions are Not Neutral, But Rather Demonstrate Hostility and Targeting of Little's Faith.

There also is no genuine dispute the County's actions violated—and continue to violate—the Free Exercise Clause's minimum guarantee of religious neutrality, given both the County's hostility toward Little's religious beliefs and its targeting of those beliefs for special disfavor.

Start with hostility. "The Free Exercise Clause protects against governmental hostility which is masked, as well as overt." *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 534 (1993). Accordingly, government may not "act in a manner that passes judgment upon or presupposes the illegitimacy of religious beliefs and practices." *Masterpiece*, 584 U.S. at 638. Its enforcement processes must be "neutral toward and tolerant of [an individual's] religious beliefs," and "upon even *slight suspicion*" the government's actions "stem from animosity to" or "distrust of" religious beliefs or practice, they must be set aside—or at least undergo strict scrutiny. *Id.* at 638-39 (emphasis added); *FCA*, 82 F4th at 693.

The County's actions toward Little manifested just such antireligious hostility. For starters, Chief Boiteux *acknowledges* he told Little that Little's religious beliefs *don't matter*. (SUF ¶166). That is quintessential animus. *See, e.g.*, *FCA*, 82 F.4th at 692 (finding same where plaintiffs were told, *inter alia*, their religious views "had no rightful place on campus").

Additionally, ███████████████████████████████████████████████████ (SUF ¶38). ███████████

---

[1] Little's still-existing "Direct Order" to ensure the PPF flies pursuant to County requirements makes clear that failure to comply may result in discipline up to termination. (Ex. 1086 to Little Dep.).

████████████████████████████████████████

████████████████████████████████████████

████████ (SUF ¶39). Recommending denial based on that predisposed suspicion lacked neutrality. *See Masterpiece*, 508 U.S. at 639 (government may not act based on "distrust of [religious] practices"); *see also* (SUF ¶43, ¶70) (Little explaining difference between sitting in a lifeguard tower and personally raising or ensuring PPF is raised). The same distrust manifested in the County's rescission of Little's religious accommodation, on grounds that Little's accommodation allegedly wasn't related to any "practice [of] religion"—unlike "taking time to attend religious services" or "wear[ing] religious garments" (SUF ¶131)—even though County representatives were aware Little insisted his objections to raising the PPF were sincerely religiously motivated. (SUF ¶36, ¶127). Similar distrust appeared in the Notice of Instruction delivered to Little the following day, stating that all Department employees must comply with EA-231 "irrespective of *personal* beliefs" (SUF ¶164) (emphasis added)—thus assuming Little's objections were not actually *religious*. Such rank "judgment upon or presuppos[ition] [of] the [alleged] illegitimacy of [Little's] religious beliefs and practices" blatantly violate religious neutrality. *Masterpiece*, 584 U.S. at 638.

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████ (SUF ¶191). But, again, those conclusions amounted to an illegitimate presupposition that expressing traditional religious views on marriage and sexuality necessarily discriminate against "people with diverse [sexual orientation and gender identity expression]." *Bates*, 146 F.4th at 793-95 (deeming invalid similar presuppositions about potential adoptive parents whose religious beliefs precluded them from supporting gender transition treatments for minors). The Supreme Court recognizes that such religious views are

held "in good faith by reasonable and sincere people here and throughout the world." *Obergefell v. Hodges*, 576 U.S. 644, 657 (2015). The County's contrary assumption with respect to Little's good-faith and reasonable religious beliefs lacked the baseline neutrality required by the Free Exercise Clause. *See FCA*, 82 F.4th at 674, 692 (finding hostility where school officials viewed religious student group's traditional beliefs on LGBTQ+ issues inherently discriminatory, invalid, and bigoted).

Accordingly, because the undisputed material facts give rise to *at least* a "slight suspicion" the County's actions in this case were (and are) motivated by distrust of Little's religious beliefs, they "must be set aside," *Masterpiece*, 584 U.S. at 625, or at least undergo strict scrutiny.

The County's challenged actions also violate the Free Exercise Clause's bar on "target[ing] religious conduct for distinctive treatment." *Lukumi*, 508 U.S. at 534. Here, the County withdrew Little's religious accommodation precisely based on the County's view of the *nature* of Little's religious objection—comparing his particular religious scruples about the PPF to other kinds of workplace religious beliefs and practices that it believed more legitimate. (SUF ¶131). Thus, the very "object" of withdrawing Little's religious accommodation was to prevent the exercise of what the County acknowledges to be Little's sincere religious beliefs regarding the PPF, without any cognizable secular justification. *Lukumi*, 508 U.S. at 533-34.

Further, in actual practice the County's actions worked to burden Little's "sincere religious beliefs yet almost no others." *Bates*, 146 F.4th at 792 (internal quotes omitted). ███████████████ (SUF ¶¶86-88; ¶¶96-98, ¶¶171-72). ███

PLAINTIFF'S MEMO. OF POINTS & AUTHS
ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

████████████████████████████████████████████

████ (¶¶85-89; ¶171; LAC-0003473-003572; LAC-0003644-0003652). ████

████████████████████████████████████████████

████████████████████████████████████████████

████ (¶88). But no discipline was imposed for any of this conduct. (*Id.*) The County's punishment of Little, which involved no such derogatory or destructive behavior, is thus a classic "religious gerrymander." *Lukumi*, 508 U.S. at 535.

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████ (SUF ¶¶155-56). ████

████████████████████████████████████████████

████████████████████████████ (SUF ¶150). This despite Little's more than 20 years of indisputably commendable service to the Fire Department. (SUF ¶1). *Accord FCA*, 82 F.4th at 692 ("Before the Climate Committee's investigation, FCA had functioned on campus without issue for nearly 20 years. But in a span of less than two weeks after the initial complaint by Glasser, FCA was derecognized without any ability to defend itself—a penalty never before imposed on any [official] student group" at the school.").

Accordingly, both on their face and in operation, the County's actions targeted Little's religious exercise for distinctive treatment and must undergo strict scrutiny.

## C.   The County Fails Strict Scrutiny.

"Strict scrutiny is unforgiving" and, "as a practical matter, is fatal in fact absent truly extraordinary circumstances." *Free Speech Coalition v. Paxton*, 606 U.S. 461, 484-85 (2025) (cleaned up). The government must show its challenged actions are "the least restrictive means of achieving some compelling state interest." *Id.* at 471 (internal quotes omitted). And the government cannot "rely on broadly formulated interests," but rather must demonstrate a compelling "interest in *denying an exception*" to the religious claimant. *Fulton v. City of Philadelphia, Pennsylvania,*

593 U.S. 522, 541 (2021) (emphasis added).

The County easily fails this test. For one, the County demonstrated a less restrictive means by accommodating Little on June 19, 2023, agreeing he could work his normal shifts (during June) at Area 33 where he wouldn't be in charge of the PPF, and otherwise allowed him to work his recall shifts in areas that don't fly the flag. (SUF ¶¶59-68). *See Burwell v. Hobby Lobby*, 573 U.S. 682, 730 (2014) (less restrictive accommodation for other organizations undermined government's ability to show least restrictive means). ███████████████████ (SUF ¶¶49; 57; ¶67; ¶142; ¶150; ¶152; ¶160).

As to compelling interest, government cannot establish "an interest of the highest order . . . when it leaves appreciable damage to that supposedly vital interest unprohibited." *Lukumi*, 508 U.S. at 547 (cleaned up). Here, even under the 100% compliance mandate, there were still lifeguard stations not flying the PPF for various reasons in June 2023; and the terms of the Board of Supervisor's 2023 directive did not require flying the PPF unless both the U.S. and California flags were already being displayed. (SUF ¶18; ¶47; ¶102; ¶103). And today, EA-232 requires flying the PPF only on flagpoles that can fly three flags. (SUF ¶204). As a result, many small stations across the county are not flying the PPF under EA-232. (SUF ¶217). *See Fulton*, 593 U.S. at 542 ("exceptions" to challenged policy "undermine[] the City's contention that its non-discrimination policies can brook no departures"). The County thus lacks any compelling interest in *forcing Little* to raise or ensure the raising of the PPF against his sincerely held religious beliefs.

### D.    Additional Factors Support Injunctive Relief.

Captain Little also meets the irreparable harm and equitable factors for injunctive relief. "It is axiomatic that the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *FCA*, 82 F.4th at 694 (internal quotes omitted). Just so here. As to whether the balance of harms and public interest favor injunctive relief, these factors merge "[w]here, as

here, the party opposing injunctive relief is a government entity." *FCA*, 82 F.4th at 695. And "it is always in the public interest to prevent the violation of a party's constitutional rights." *Id.* (internal quotes omitted).

Accordingly, Captain Little is entitled to summary judgment on his federal and state free exercise claims and should be granted an appropriate award of injunctive relief.

### IV. Plaintiff is Entitled to Summary Judgment on Defendants' Affirmative Defense of Sovereign Immunity.

Defendants' Answer to the Second Amended Complaint pleads as an affirmative defense that "Plaintiff's claims are barred, in whole or in part, by sovereign immunity under the Eleventh Amendment." (Answer, p. 29). That defense fails as a matter of law. The Eleventh Amendment concerns suits "against one of the United States," U.S. Const. amend. XI, and the Supreme Court has "repeatedly refused to extend sovereign immunity to counties." *N. Ins. Co. of N.Y. v. Chatham Cnty.*, 547 U.S. 189, 193 (2006) (collecting cases); *accord Lincoln Cnty. v. Luning*, 133 U.S. 529, 530 (1890). Defendants should know as much because the Ninth Circuit recently held the *County of Los Angeles* is not entitled to sovereign immunity because it is not an arm of the State for Eleventh Amendment immunity purposes. *Ray v. County of Los Angeles*, 935 F.3d 703, 705, 708-11 (9th Cir. 2019).

### V. Little is also entitled to summary judgment on *Monell* liability.

Local governments are subject to municipal liability under § 1983 (*Monell* liability) where (1) the plaintiff was deprived of a constitutional right; (2) the municipality had a policy; (3) the policy "amounts to deliberate indifference to the plaintiff's constitutional rights"; and (4) the policy "is the moving force behind the constitutional violation." *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997). A municipality can also be liable for "an isolated constitutional violation when the person causing the violation has final policymaking authority." *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999). That includes when

a final policymaker ratified a subordinate's unconstitutional decision or action and the basis for it, *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992), as well as when the final policymaker acts with deliberate indifference to the subordinate's constitutional violations, *Christie*, 176 F.3d at 1240.

Here, County policy was the "moving force" behind the deprivation of Little's constitutional rights. Little's obligation to ensure the PPF flies (in violation of his religious beliefs) derived from the County Board of Supervisors' March 2023 directive. (Ex. 3 to 3d Am. Cmplt.). The Fire Department, which has no separate legal existence from the County, *see* 3d Am. Verif. Cmplt. ¶11, implemented that directive via EA-231, which expressly requires "Captains" like Little to "ensure" the PPF flies according to its terms. (Ex. 4 to Am. Cmplt.). After Little lowered PPFs in Area 17, he received a Fire Department Notice of Instruction exhorting him that "[a]ll department employees" must "comply with EA-231," including by "refraining from taking the flag down," "*irrespective of personal beliefs*." (Ex. 11 to 3d Am. Verif. Cmplt. (emphasis added)). ███████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████ ████████████████████████ (Ex. 1089 to Little Dep.). County policy's role in Little's constitutional harms is buttressed by the County's ongoing refusal to accommodate Little under EA-232, which expressly provides that "compliance is not optional." *See* (Ex.24 to 3d Am. Verif. Cmplt.).

Further, by requiring Little to abide by EA-231 "*irrespective of personal beliefs*"—in direct response to his expressly religious objection to being responsible for flying the PPF—and by declaring Little's religiously motivated actions to be *ipso facto* discriminatory, County policy was deliberately indifferent to the First Amendment's requirement that government proceed in a manner *tolerant of* religious beliefs. *Masterpiece*, 584 U.S. at 638; *see also, e.g., Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (intentional interference with an individual's rights is deliberate

indifference). It was also deliberately indifferent to the requirement that government not *directly target* religious exercise for distinctive ███████████████████████████████████████████████████████████████████████████████ ██████████ (SUF ¶¶86-91; ¶¶97-98; ¶171-73).

Finally, Chief Boiteux's overt hostility to Little's religious beliefs triggers *Monell* lability. *Christie*, 176 F.3d at 1237 (municipal liability can attach based on "delegated" final policymaking authority). Here, Fire Department Chief Mayfield delegated his enforcement authority regarding Fire Department policies to Chief Boiteux by directing him to ensure 100% compliance with EA-231. (SUF ¶¶94-98); 3d Am. Verif. Cmplt. ¶12). Chief Boiteux acted pursuant to that authority when he provided Little the notice requiring compliance with EA-231 and concededly telling Little his religious beliefs *don't matter*. (SUF ¶¶165-66). Boiteux, on behalf of Mayfield, also ratified County representatives' targeting Little's religious beliefs when they rescinded his accommodation. Indeed, Boiteux discussed Little's grievance with Mayfield, who directed Boiteux to follow HR's recommendation and rescind Little's accommodation based on the nature of his religious beliefs. (SUF ¶¶130-35). Accordingly, the County is subject to § 1983 liability under *Monell*.

///
///
///
///
///
///
///
///
///
///

28

## CONCLUSION

For the foregoing reasons, Plaintiff Captain Little respectfully requests summary judgment in his favor.

Respectfully submitted,

LiMANDRI & JONNA LLP

Dated: March 6, 2026            By: _____

Charles S. LiMandri
Paul M. Jonna
Jeffrey M. Trissell
Joshua A. Youngkin
William T. Duke
Attorneys for Plaintiff
Captain Jeffrey Little

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff Captain Little, certifies that this brief contains 6,670 words, which complies with the word limit of L.R. 11-6.1. Counsel further certifies that the parties met and conferred regarding the substance of this motion on February 10, 2026, in compliance with the requirements of L.R. 7-3.

Dated: March 6, 2026            By: _____

Paul M. Jonna

PLAINTIFF'S MEMO. OF POINTS & AUTHS
ISO MOTION FOR PARTIAL SUMMARY JUDGMENT