Charles S. LiMandri, SBN 110841
 cslimandri@limandri.com
Paul M. Jonna, SBN 265389
 pjonna@limandri.com
Jeffrey M. Trissell, SBN 292480
 jtrissell@limandri.com
Joshua A. Youngkin, SBN 332226
 jyoungkin@limandri.com
William T. Duke, SBN 361823
 wduke@limandri.com
LiMANDRI & JONNA LLP
 *as Special Counsel to*
 THOMAS MORE SOCIETY
P.O. Box 9120
Rancho Santa Fe, CA 92067
Telephone: (858) 759-9930
Facsimile: (858) 759-9938

*Attorneys for Plaintiff*
*Captain Jeffrey Little*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAPTAIN JEFFREY LITTLE, <br><br> Plaintiff, <br><br> v. <br><br> LOS ANGELES COUNTY, et al. <br><br> Defendants. | **Case No.: 2:24-cv-4353-JLS-PD** <br><br> **PLAINTIFF'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br> Judge: Hon. Josephine L. Staton <br> Courtroom: 8A <br> Date: April 24, 2026 <br> Time: 10:30 a.m. <br><br> Action Filed: May 24, 2024 |

# REDACTED / PUBLIC VERSION

PLAINTIFF'S STATEMENT OF UNCONTROVERTED FACTS &
CONCLUSIONS OF LAW ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| Plaintiff's Uncontroverted Fact | Supporting Evidence |
|---|---|
| 1. Jeff Little has been a Los Angeles County lifeguard for over 22 years. In that role, he has saved numerous lives and risen through the ranks to become a Captain. As a Captain, he was responsible for overseeing his own lifeguard stations and patrols. | 3d Am. Verif. Cmpt. ¶17 & Ex. 2. |
| 2. Becoming a Los Angeles County ocean lifeguard specialist is a significant accomplishment and is also "like winning the lottery"; Captain Little is a "really talented" lifeguard. | Lester Dep. pp.15:21-22, 21:10; Power Dep. pp.15:9-17, 124:23-25. |
| 3. Captain Little has maintained a good reputation and good reviews. He was promoted to ocean lifeguard specialist in 2013, and to captain in 2020. | Little Dep. p.49:14-16; Boiteux Dep. pp.25:13-26:1. |
| 4. Captain Little's performance evaluation for April 2022-March 2023 discussed his laudable work as part of the Background Investigation Unit ("BIU"), and his overall rating for that period was very good and exceeded expectations. | Boiteux Dep. pp.37:19-40:4, 41:4-12. |
| 5. ███████████████ | Lester Dep. pp.92:25-93:1. |
| 6. Captain Little is an Evangelical Christian with traditional, orthodox beliefs on marriage, family, and sexual behavior and identity. | 3d Am. Verif. Cmplt. ¶18. |
| 7. Captain Little professes a Biblical world view holding that marriage is between one man and one woman, and that sexual relations outside those parameters dishonors God. | Little Dep. pp.33:16-34:1; 3d Am. Verif. Cmplt. ¶18(1)-(5). |

| Plaintiff's Uncontroverted Fact | Supporting Evidence |
|---|---|
| 8. Captain Little's sincere religious beliefs regarding marriage and sexuality include (a) that same-sex sexual activity is morally wrong, and that it is equally wrong to celebrate such activity and (b) gender and sex are inherently intertwined, and attempts to separate or change one's sex are morally wrong. | *Id.* |
| 9. Captain Little's sincere religious beliefs also dictate that Christians must demonstrate compassion and love toward all individuals, including those who identify as LGBTQ, while continuing to adhere to biblical truths. | *Id.* |
| 10. Captain Little's faith impacts everything he does. He practices daily prayer and scripture reading; attends prayer and church services; and leads his family in prayer and worship. He prays throughout the day every day. | Little Dep. pp.31:22-32:19. |
| 11. Captain Little understands that the "Progress Pride Flag" "promotes … a sexual expression or sexual ethics that is outside of God's provision for sexual expression in the Bible." | Little Dep. p.34:11-17. |
| 12. He understands the Pride Flag "celebrate[s] the LGBT community, lifestyle, [and] sexual expression," regardless of what other people understand it to mean. | Little Dep. p.39:16-23. |
| 13. The Los Angeles County Board of Supervisors adopted a motion on March 7, 2023, titled "Raising the Progress Pride Flag at Los Angeles County Facilities," which resulted in adoption of EA-231. | 3d Am. Cmplt. Exs. 3 & 4. |
| 14. The motion acknowledged that the Pride flag's original colors "represent[] sex, life, | 3d Am. Cmplt. Ex. 3. |

3

| Plaintiff's Uncontroverted Fact | Supporting Evidence |
|---|---|
| healing, sunlight, nature, magic and art, serenity, and spirit." It also states that in 2019, a new version of the Pride Flag debuted that added light blue, pink, and white stripes to promote "the transgender community." | |
| 15. The motion also stated that "[m]ost recently, the Progress Pride Flag was created by artist Daniel Quasar as a combination and reimaging of the original Pride Flag. The Progress Pride Flag's black and brown stripes represent marginalized LGBTQ+ communities of color, community members lost to HIV/AIDS, and those currently living with HIV/AIDS. The new flag colors are in a chevron shape to represent a need for forward movement." | 3d Am. Cmplt. Ex. 3. |
| 16. ██████████████████ | Lester Dep. p.172:3-11 |
| 17. The Board's motion recognizes that the Progress Pride Flag "celebrate[s] LGBTQ+ Pride Month." | 3d Am. Cmplt. Ex. 3; Boiteux Dep. pp.62:13-63:14, 68:8-13. |
| 18. The Board motion directed the Internal Services Department to raise the PPF at the Kenneth Hahn Hall of Administration, "and Los Angeles County facilities" *only* "where the American and California Flags are displayed during the month of June"; it otherwise directed the County CEO to "work with all County Departments to explore ways the [PPF] can be flown at all county facilities." | 3d Am. Cmplt. Ex. 3; Oliva Dep. p.41:16-20. |

4

| Plaintiff's Uncontroverted Fact | Supporting Evidence |
|---|---|
| 19. In implementing the Board's motion, the Fire Department issued a memorandum titled EA-231 to all employees on May 25, 2023, requiring the Progress Pride Flag be flown at certain locations in June. | 3d Am. Verif. Cmplt. Ex. 4. |
| 20. EA-231 stated that "Captains/Site Supervisors shall:" "[e]nsure flags are received and flown throughout the month of June"; and "[a]t the end of June, ensure the PFF [sic] is folded and stored for use the following year." | 3d Am. Verif. Cmplt. p.85 Ex. 3; Nuanes-Delgadillo Ex. 3 at p. 2. |
| 21. Under EA-231's requirements, if a station had only one flagpole, the PPF was not required to be flown if the pole had "[c]lasps for [only] one flag." But if the single pole had two sets of clasps, the PPF was required to fly beneath the U.S. flag *to the exclusion of the State flag*. | 3d Am. Verif. Cmplt. pp.84, 87, Exs. 4 & 5; Oliva Dep. p.45:12-24. |
| 22. If a station had two flag poles, and "the right pole only has one set of clasps, the PPF flag shall be flown *in place of the State flag*." | 3d Am. Verif. Cmplt. pp.84, 87, Ex. 4 (emphasis added). |
| 23. In effect, EA-231 directed captains to take down the California flag if there were only clasps for two flags—even though the Board motion required the PPF only where both the American and California flags are also displayed. | Boiteux Dep. pp.56:1-25, 78:18-22, Boiteux Ex. 7. |
| 24. Given EA-231's varying requirements for flying (or not flying) the PPF depending on the number of clasps on each pole, and on whether a station had more than one pole, Chief Arthur Lester found EA-231 to be "vague" and "a challenge to implement" in determining "how many of … our poles" along a vast, 35-mile coastline constituting | Lester Dep. pp.40:7-41:19. |

| Plaintiff's Uncontroverted Fact | Supporting Evidence |
|---|---|
| his battalion area (LG Battalion 100) "could actually fly the [PPF]…safely." | |
| 25. Chief Boiteux is responsible for the daily operations of the lifeguard division over 72 miles of coastline, including Catalina Island. Those operations include providing for public safety to beachgoers, maritime rescue, and addressing medical, and any emergencies that might arise within the maritime coast of L.A. County. | Boiteux Dep. pp.18:20-19:3. |
| 26. Chief Boiteux acknowledged that EA-231 left room for interpretation. | Boiteux Dep. p.92:6-14. |
| 27. Chief Boiteux, who is responsible for the entire lifeguard division of the Fire Department, believes people should not be forced to endorse a viewpoint that violates their sincerely held religious beliefs and that people who hold that marriage should be between one man and one woman should be respected. | Boiteux Dep. pp.59:25-60:4, 64:3-8. |
| 28. In 2023, the Fire Department received two requests for exemptions from EA-231, in addition to Captain Little's. | Sturdivant Dep. p.38:5-7. |
| 29. According to Captain Little's religious beliefs, he could "work in a building that had a flagpole that was flying the Progress Pride Flag," "[a]s long as [he] had no responsibilities associated with" it, including raising or ordering others to raise it. He can "work[] in an environment in which" the PPF is "around." | Little Dep. pp.34:24-35:10. |
| 30. Captain Little's religious beliefs prevent him from raising the PPF—primarily because he believes it "would be displeasing to God," | Little Dep. pp.36:4-21, 37:10-16, 38:1:5. |

6

| Plaintiff's Uncontroverted Fact | Supporting Evidence |
|---|---|
| based on "Biblical accounts that" require him "to honor God in everything I do" and thus forbid "participating in activities that dishonor God." | |
| 31.  Captain Little was friends with Chief Arthur Lester and, in years past, had generally discussed his religious beliefs with Lester as "something that's really important to" | Little Dep. p.48:8-25; Lester Dep. pp.131:8-133:8. |
| 32.  When Captain Little received EA-231 in late May 2023, he confirmed that the flagpole at the main location where he worked (Will Rogers) was flying only the American flag and thus, according to EA-231's express terms, was not required to fly a PPF. | Little Dep. p.61:9-19. |
| 33.  Captain Little was on a pre-scheduled vacation from June 4 to June 17, 2023. | Little Dep. p.81:11-15. |
| 34.  Captain Little realized he would have a religious conflict with EA-231 when, while on vacation, he was notified that the Will Rogers location was now flying the PPF. | Little Dep. pp.61:20-63:4; McMillon Dep. p.40:3-20. |
| 35.  While still on vacation, Captain Little contacted his union president, Greg Crum ("Crum"), who is also a licensed California attorney and captain in the lifeguard division, regarding his religious conflict with EA-231. | Little Dep. pp.64:10-66:1, Ex. 1062. |
| 36.  On June 18, 2023, Captain Little emailed Lifeguard Division Chief Boiteux requesting a religious accommodation from EA-231. He stated that "I have always made it a priority to carry out the mission of the department, serve the community, and be an exemplary employee," but he was "requesting to be exempt from adhering to EA-231" because "it infringes on [his] sincere religious | Little Dep. Ex 1068; Nuanes-Delgadillo Dep. p.162:22-25; Kim Dep. Ex. 12 at p.1. |

7

| Plaintiff's Uncontroverted Fact | Supporting Evidence |
|---|---|
| beliefs." Captain Little expressly explained that the "board motion and the responsibilities accompanying it" are "in conflict with my deep religious faith." | |
| 37. Captain Little does not recall reading the Board motion, but he mentioned it in his request because EA-231 expressly referenced and relied on the Board motion. | Little Dep. p.98:16-22. |
| 38. ████████████████████ | Boiteux Dep. pp.23:7-14, 117:19-118:8,<br><br>Uehara Dep. Ex. 15. |
| 39. ████████████████████ | Uehara Dep. pp.109:9-118:22. |
| 40. ████████████████████ | Kim Dep. pp.58:4–58:15;<br><br>Kim Dep. Ex. 12 p.1 (LAC-0000377);<br><br>Nuanes-Delgadillo Dep. p.59:1-19. |
| 41. ████████████████████ | Kim Dep. p.55:8–16;<br><br>Nuanes-Delgadillo Dep. p.117:19–24. |
| 42. Fire Department personnel who facilitated the employee accommodation process did not recall anything during Captain Little's IPMs that caused them to question his | Nuanes-Delgadillo Dep. pp.59:17–60:7. |

8

| Plaintiff's Uncontroverted Fact | Supporting Evidence |
|---|---|
| honesty or sincerity. | |
| 43. With respect to the conflict between his religious beliefs and EA-231, Captain Little explained: "[T]here's Pride Flags, like, all over the place. There's rainbow towers, there's -- this is everywhere, and I didn't object to any of those things because they didn't outline a responsibility for me to participate and, you know, endorse. This is -- this is where it crossed the line, that's where I really felt [the flag policy] -- it conflicted." | Little Dep. p.107:8-21. |
| 44. Captain Little believed that working one of the locations not flying a PPF would be the best and/or easiest way to accommodate his religious conflict with EA-231's requirements for captains, i.e., where "you're not responsible for it," but he "could live with" a less "ideal" scenario of working in the same area as a PPF as long as he was exempt from EA-231. | Little Dep. p.100:1-22. |
| 45. Chief Boiteux acknowledged people should not be forced to endorse a viewpoint that violates their sincerely held religious beliefs and that people who hold that marriage should be between one man and one woman should be respected. | Boiteux Dep. pp.59:25-60:4, 64:3-8. |
| 46. ███████████████████████ | Lester Dep. p.50:5-15. |
| 47. There were 160 lifeguard towers that flew only one flag and a few fixed facilities that also flew only one flag. | Boiteux Dep. p.76:1-21. |
| 48. It is possible for the County to change lifeguards' schedules, which they otherwise | Lester Dep. pp.54:2-55:10, |

9

| Plaintiff's Uncontroverted Fact | Supporting Evidence |
|---|---|
| bid on in advance, when an employee seeks such a change by working with Human Resources—including through the interactive process for an accommodation. | 56:15-57:24;<br><br>Power pp.35:25-37:1;<br><br>Crum Dep. pp.50:20-54:16. |
| 49. On June 18, 2023, Chief Danielle McMillon told Captain Little that she saw his religious accommodation request email to Chief Boiteux. She informed him of an IPM process to try to work out an accommodation, ███████████████ ████████████████████████ ████████████ | Little Dep. pp.102:4-103:2;<br><br>McMillon Dep. Ex. 5 at p.1, pp.89:4-90:12. |
| 50. While speaking with Chief McMillon, Captain Little suggested that he could work in Area 33 on his scheduled days given his understanding that the Area 33 captain was "out on injury" leave. | Little Dep. pp.103:23-104:21. |
| 51. On June 18, 2023, Chief McMillon stated in an email that she spoke with Captain Little at length that day about a possible accommodation, specifically stating she "believe[s] he is willing to work Area 33 in Malibu until July 1" and that "[t]he other possible accommodation would be that he burns his own benefit time until July." | Little Dep. Ex. 1074;<br><br>Boiteux Dep. pp.103:16-105:5;<br><br>McMillon Dep. Ex. 5 at p.1. |
| 52. Even though Area 33 flew a PPF at headquarters, this was acceptable to him "because [he] wouldn't be responsible for it, and that was acceptable to [him] and [he] accepted it." | Little Dep. pp.127:21-128:1. |
| 53. Despite Renee Nuanes-Delgadillo's assertion that Area 33 was suitable to Captain Little because he "would not visibly see the flag," | Little Dep. pp.126:20-128:1; |

10

| Plaintiff's Uncontroverted Fact | Supporting Evidence |
|---|---|
| the flag was visible. Ms. Nuanes-Delgadillo did not grasp that Captain Little's specific objection was responsibility for raising the flag. | Crum Dep. p.110:15-21;<br><br>McMillon Dep. p.100:8-18. |
| 54. Chief Boiteux did not have any concerns about possible accommodations proposed by Chief McMillon. | Boiteux Dep. p.108:18-109:11. |
| 55. Chief Boiteux estimated if a recall was necessary to cover a *month* of shifts, the cost to the County would be approximately $16,000 from its annual $1.5 billion budget. | Boiteux Dep. pp.215:5-216:4. |
| 56. Additionally, Chief Boiteux acknowledged if someone is available to work overtime, "we usually let them take time off when they ask for it." | Boiteux Dep. p.109:12-15. |
| 57. On the morning of June 19, 2023, before the IPM meeting ███ █████ Renee Nuanes-Delgadillo emailed ████████████ ███████ requesting "a quick pre meet to go over how [Captain Little] can be accommodated either at work, or by providing him a leave of absence." | Little Dep. Ex. 1074;<br><br>Nuanes-Delgadillo Dep. pp.115:20-116:3 |
| 58. Chief Uehara, Renee Nuanes-Delgadillo, Chief McMillon, and Chief Mayfield had never previously handled a religious accommodation request. | Boiteux Dep. pp.108:18-109:4, 113:5-16, 113:23-114:1;<br><br>Nuanes-Delgadillo Dep. pp.33:8-34:14; 41:4-10; 42:3-9;<br><br>Uehara Dep. pp.84:20-85:5;<br><br>McMillon Dep. pp.89:24- |

| Plaintiff's Uncontroverted Fact | Supporting Evidence |
|---|---|
| | 90:12;<br><br>Mayfield Dep. p.109:7-22. |
| 59. In the IPM on June 19, 2023—which was attended by Chief Uehara, Chief McMillon, union representative Captain Crum, and human resources representative Nuanes-Delgadillo—Captain Little explained that he had a religious conflict with carrying out the responsibilities of EA-231. "The request was to not be responsible to EA-231." | Little Dep. pp.106:4-107:7, Ex. 1069;<br><br>Nuanes-Delgadillo Dep. pp.126:21-127:3;<br><br>Crum Dep. p.96:8-17. |
| 60. Although Captain Little preferred not to look at the PPF, he was clear that his religious conflict with EA-231 was being "responsib[le]" for flying the PPF as required of captains and site supervisors under EA-231. | Little Dep. p.107:8-21. |
| 61. He explained in the June 19 IPM meeting that his "major issue is that it is the captain's responsibility to ensure that the crew is flying the PPF flag." | Little Dep. Ex. 1069;<br><br>Nuanes-Delgadillo Dep. p.214:15-24. |
| 62. Captain Little stated that, if relocated to Area 33 as an accommodation, the chances of him being responsible for the PPF would be "one-in-a-million," or "one in a thousand," because the Area 30 and 34 captains would still be responsible for the Area 33 headquarters flag before he would. | Little Dep. pp.128:3-129:12, 145:12-22. |
| 63. Nuanes-Delgadillo's contemporaneous notes from the June 19 IPM state that Captain Little understood the PPF might be flown at other locations if he has to work there ███████████████████████████ ████████████████████ and he accepted Area 33 because he would not be | Little Dep. Ex. 1072 at p.1;<br><br>Nuanes-Delgadillo Dep. pp.120:12-121:10. |

12

| Plaintiff's Uncontroverted Fact | Supporting Evidence |
|---|---|
| the Headquarters Captain responsible for "ensuring that the flag is flown." | |
| 64. Chief Boiteux recalled that Captain Little's "objection was he didn't want to raise the flag." | Boiteux Dep. pp.147:23-148:8. |
| 65. Captain Little agreed to work at Area 33 as a religious accommodation from EA-231 despite knowing that it was flying the PPF, because he believed he would not be responsible for ensuring the PPF was flying there. | Little Dep. Ex. 1069, pp.124:1-5. |
| 66. Captain Little may have said during the June 19, 2023 IPM meeting that he "didn't want to look" at the PPF, but his base accommodation request was not to "be responsible for it." | Little Dep. pp.129:23-130:13. |
| 67. During the June 19 IPM meeting, Captain Little and the County also agreed to assign him to Area 33 in lieu of his Redondo Beach recall assignment on June 25, 2023. Chief Uehara stated that he would document the shift swap in Telestaff, and explained that if Captain Little was unable to swap, he would "need to use [his] own leave benefit time." | Kim Dep. Ex. 38 at p.3; Little Dep. Ex. 1069 at p.2. |
| 68. On the 19th, after the IPM, Chief McMillon texted Captain Little and Chief Uehara confirming she independently used Captain Little's "recall exemption" to move shifts for Captain Little to keep him from working at a location flying the PPF. | McMillon Dep. Ex. 7 at p.1, p.132:1-8. |
| 69. Instead of using the recall exemption, forcing a different Captain to be recalled to the site, Captain Little swapped recall shifts with a captain to a site not flying the flag. Captain | Id. |

13

| Plaintiff's Uncontroverted Fact | Supporting Evidence |
|---|---|
| Little expressed his appreciation to Chiefs McMillon and Uehara his for the accommodation and thanked her. | |
| 70. During the June 19 IPM meeting, Captain Little confirmed that he can work in lifeguard towers that are painted/decorated to support LGBTQ+, oversee maintenance of the towers, provide lifeguard assistance to LGBTQ+ patrons, or anything else that is required of him as captain. | Little Dep. Ex. 1069 at p.2. |
| 71. While a tower at the Will Rogers station where Captain Little worked was painted in rainbow colors, and Captain Little understood those colors were intended to convey a similar message as the PPF, Captain Little was not required to paint the rainbow colors himself or to endorse it in any way; he was not "forced to participate in it." | Little Dep. pp.118:9-119:23. |
| 72. Captain Little found EA-231 to be "very unclear" about which locations and flagpoles were required to fly the PPF. | Little Dep. pp.109:11-110:16. |
| 73. Area 17, where Captain Little worked on June 21, 2023, had not flown a PPF from June 2, 2023, up to June 21, 2023. | Little Dep. Ex. 1070; Crum Dep. p.115:3-8. |
| 74. Particularly, on June 1, 2023, Captain Crum began putting up PPFs on Dockweiler Beach in Area 17, but as he was doing so, he "received a call from Chief Lester informing him that Chief Uehara had determined that the flags were not to be flown at flagpoles that do not typically fly more than one flag throughout the rest of the year." As a result of this instruction, Captain Crum removed a PPF that he had previously raised. | Little Dep. Ex. 1070 at p.1; Boiteux Dep. pp.88:11-89:13, 90:4-10, Ex. 65; Crum Dep. pp.202:19-207:23. |



| Plaintiff's Uncontroverted Fact | Supporting Evidence |
|---|---|
| 75. [redacted] | Little Dep. Ex. 1074; Nuanes-Delgadillo Ex. 6; Nuanes-Delgadillo Dep. pp.120:13-121:10; Kim Dep. Ex. 17 p.1. |
| 76. [redacted] | Little Dep. Ex. 1074; Kim Dep. Ex.17. |
| 77. [redacted] | Boiteux Dep. pp.143:22-144:11. |
| 78. Chief Boiteux understood that the agreed-upon religious accommodation could be accomplished with no expense to the Fire Department. | Boiteux Dep. p.213:5-9. |
| 79. Although Captain Little was recalled to Redondo Beach on June 21, 2023, where he would be responsible for ensuring the PPF was flying, he agreed with another captain to switch recalls to work at Area 17, where he knew the PPF wasn't flying at the time. | Little Dep. pp.148:16-149:4, 154:18, Ex. 1075; McMillon Dep. pp.41:24-42:3. |
| 80. Captain Little made the shift swap to work Area 17 on June 21 before Chief McMillon texted him that she able to secure him an exemption from recall duty on June 21, 2023; at that point, Captain Little didn't want to trigger a recall for another lifeguard to have to take his place on June 21, 2023. | Little Dep. pp.150:9-151:16. |

| Plaintiff's Uncontroverted Fact | Supporting Evidence |
|---|---|
| 81. Captain Little responded to Chief McMillon's text by informing her of his schedule swap so he could work Area 17 on June 21, 2023, and Chief McMillon agreed to the switch. | Little Dep. pp.154:24-155:7, Ex. 1075. |
| 82. Chief Uehara was on the same text string and was thus aware of Little's plan to work Area 17 on June 21. | Little Dep. p.155:9-12, Ex. 1075. |
| 83. Chief McMillion finalized the switch in Telestaff on June 19, 2023, which was observable by all lifeguard chiefs on Telestaff between June 19 and June 21. | Little Dep. pp.171:7-172:16. |
| 84. Captain Little is aware that numerous other fire department employees did not comply with the order by "just flat-out" not "[following] it," whereas Captain Little attempted to use proper IPM procedures. | Little Dep. pp.181:11-182:3; Power Dep. pp.54:15-17; McMillon Dep. p.29:12-19. |
| 85. ███████████████████████ | Lester Dep. p.81:15-21. |
| 86. ███████████████████████ | Stormer Dep. Ex. 84. |
| 87. ███████████████████████ | Stormer Dep. Ex. 84; |

PLAINTIFF'S STATEMENT OF UNCONTROVERTED FACTS &
CONCLUSIONS OF LAW ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| Plaintiff's Uncontroverted Fact | Supporting Evidence |
|---|---|
|  | Jonna Decl. Ex. P, 0003494-0003528 |
| 88.  | *Id*.; Kim Dep. p.416:2-16; Jonna Decl. Ex. P, 0003494-0003528 |
| 89. The June 11 CPOE complaint did not involve individuals who had religious accommodations or known religious objections to the PPF. | Stormer Dep. pp.94:1-95:25. |
| 90.  | Stormer Dep. pp.90:15-94:13. |
| 91.  | Stormer Dep. pp.97:23-99:14; Boiteux Dep. p.271:11-22. |
| 92. Boiteux was not aware of any assertions by anyone that Captain Little is a bigot or | Boiteux Dep. pp.195:18- |

17

| Plaintiff's Uncontroverted Fact | Supporting Evidence |
|---|---|
| disrespects people in the LGBTQ community, and Captain Little had worked at Will Rogers Beach, which is frequented by the LGBQT community, but had never received reports that Captain Little did not serve such individuals or had discriminatory feelings towards them. | 197:8. |
| 93. ████████████████████ | Lester Dep. pp.98:7-99:4. |
| 94. The Acting Deputy Chief for the Central Operations Bureau who was responsible for the Lifeguard Division, William Mayfield, sent an email to members of his leadership team, including Chief Boiteux, regarding enforcement of EA-231 on June 20, 2023. In it, he forwarded an email chain from his superiors, and stated that "100 percent compliance" with EA-231 was "to be achieved." In his email, Mayfield directed all battalion chiefs to inspect the flagpoles in their divisions "to ensure the flag is flown." For those locations where the flag was not being flown, Mayfield required an explanation. The email further stated, "Halyard clips are not an excuse." | Mayfield Dep. pp.73:9-19, 138:22-139:16, Ex.15 at p. 1;<br><br>McMillon Depo. p.66:14-25, Ex. 3 at 3. |
| 95. In stating that "Halyard clips are not an excuse," Mayfield intended to prevent "manipulation" with compliance with EA-131, such as removal of clips or clips otherwise being missing from poles on which they were previously present. Mayfield's email was not intended to require that all flagpoles necessarily fly the PPF. | Mayfield Dep. pp.185:24-186:11, 193:21-194:17, 196:16-197:8, 213:14-18. |
| 96. Lifeguard Chief Boiteux viewed the directive as "stop playing games and do what we ask | Boiteux Dep. p.166:2-9. |

18

| Plaintiff's Uncontroverted Fact | Supporting Evidence |
|---|---|
| you from the EA-231." | |
| 97. Chief Boiteux understood that clasps were being stolen and taken off of halyards; he interpreted the directive as "follow EA-231," which the Fire Department understood did not require PPFs where there were clasps for only one flag. | Boiteux Dep. pp.156:9-157:15. |
| 98. ███████████████████████████████████████████████████████████████████████████████████████████████ | Lester Dep. pp.72:16-73:2, Ex 5, at p.12 & Ex. 9 at p.2; McMillon Dep. Ex. 2 at p.1, pp. 43:2-15, 45:18-24, 58:5-14. |
| 99. The directive was not communicated to Captain Little before he arrived at work the next day. | *Id*.; Lester Dep. pp.88:12-90:10, 92:8-16, 94:1-7, 99:13-18; Boiteux Dep. pp.161:12-162:10, 271:23-272:11; McMillon Dep. pp.59:19-60:2. |
| 100. ███████████████████████████████████████████████████████████████████████████████████████████████ | Lester Dep. pp.74:21-84:11. |

19

| Plaintiff's Uncontroverted Fact | Supporting Evidence |
|---|---|
| 101. ███████████████████████████ | Lester Dep. pp.84:12-85:3, Ex. 9 at p.1. |
| 102. Lester "can't really recall" if any of these problems at RCO, Torrance, or Marina were actually solved in time to fly the PPF in 2023, as it was "almost the end of June" anyway. | Lester Dep. p.47:3-12. |
| 103. Indeed, even after the issuance of the 100% compliance mandate, there were still stations not flying the PPF because they could not. | Boiteux Dep. pp.169:12-170:8. |
| 104. Relocating Captain Little to an area not flying the PPF remained a way to accommodate him even after issuance of the directive. | *Id.* |
| 105. Chief Boiteux assumed that Captain Little agreed to work at Area 17 on June 21, 2023, on the expectation that the PPF would not be flying there, and it would have been better for someone in Captain Little's chain of command to inform him that the PPF was now flying in Area 17 before Captain Little arrived to work there that morning. | Boiteux Dep. pp.173:161-174:10, 183:7-13. |
| 106. Despite having knowledge of Captain Little's accepted religious accommodation and scheduled area on June 21, 2023, no chief within Captain Little's chain of command. | Boiteux Dep. pp.161:6-163:18, 181:23-183:13; Lester Dep. pp.88:12-96:22. |
| 107. A PPF was flying near the parking lot at Dockweiler Headquarter Building at Area 17 when Captain Little arrived to work at 10:30 a.m. on June 21, 2023, but Captain Little raised no objection to working in the vicinity of that PPF. | Little Dep. pp.194:8-197:9. |

| Plaintiff's Uncontroverted Fact | Supporting Evidence |
|---|---|
| 108. The PPF flying near the Area 17 Dockweiler Headquarters parking lot was under the direction and control of the Beaches and Harbors Department, not the fire department. | Little Dep. pp.194:8-197:9. |
| 109. However, Captain Little was confused when he saw a PPF flying at the Area 17-2 station, because he knew Area 17 stations hadn't flown PPFs when he worked there on June 19, 2023. As a result, Captain Little checked his phone and email to see if there had been a change in policy, but Captain Little did not see any such change. | Little Dep. pp.201:12-203:5. |
| 110. Ocean Lifeguard Specialist Jake Miller at Area 17-2 informed Captain Little that Chief Lester had dropped off the PPFs and clasps earlier that morning with instructions to raise the PPFs; however, Captain Little understood that Lester did not have authority to change department policies or Captain Little's religious accommodation. | Little Dep. p.203:6-21. |
| 111. Captain Little asked Miller if he would be offended if Captain Little took down the PPF given the sensitivity of the topic; Miller said he would not be offended. | Little Dep. pp.204:22-205:15. |
| 112. Captain Little then went to Area 17-3 and spoke with Ocean Lifeguard Specialist Lauren Gottschalk; Captain Little observed the PPF flying in that area, too, and asked OLS Gottschalk if she would be offended if Captain Little took it down. | Little Dep. pp.205:22-207:10; Gottschalk Dep. p.193:10-18. |
| 113. Captain Little then removed the PPF flag from the Area 17-3 building's flagpole and carefully folded it and placed it on a counter inside. | Little Dep. p. 210:3-8. |

21

| Plaintiff's Uncontroverted Fact | Supporting Evidence |
|---|---|
| 114. Captain Little did not discuss his religious beliefs regarding the PPF with Miller or Gottschalk or attempt to proselytize or lecture them in any way about the same. | Little Dep. pp.204:22-209:9. |
| 115. Captain Little then went to Area 17-1 and saw a PPF flying on an area flagpole that hadn't flown a flag in years. Captain Little asked Ocean Lifeguard Specialist Tenan-Snow and his co- lifeguard if they would be offended if Captain Little took the PPF down, and they said they didn't care; Captain Little then removed the PPF, folded it, and put in in the nearby Area 17-3 building. | Little Dep. pp.210:14-214:15. |
| 116. The County enforced the June 20, 2023, 100% compliance mandate—as directed and implemented by Chief Boiteux in his instructions to Chief Lester—without regard for Captain Little's already-expressed religious conflict with ensuring PPFs were raised pursuant EA-231, and regardless of the religious accommodation he obtained on June 19, 2023. | Little Dep. pp.223:25-224:6, 225:23-226:5. |
| 117. Captain Little informed Lester of his religious accommodation when Lester came to talk to him in person at Area 17 on June 21, 2023; when Lester requested that Captain Little ensure the PPFs went back up, Captain Little stated he has a religious objection to doing so. | Little Dep. pp.239:10-241:9, 242:15-23; |
| 118. Captain Little broke down mentally and emotionally after meeting with Lester and would have gone home for the day if Lester had offered it. | Little Dep. p.246:5-11. |
| 119. ███████████████████████ | Lester Dep. p124:21-127:11, |

22

| Plaintiff's Uncontroverted Fact | Supporting Evidence |
|---|---|
| ███████████████████ | 132:15 |
| 120. While Chief Lester was confused about why Captain Little was so emotional, he also acknowledged that "I get it. **I knew he was religious**. …. And by his emotions, . . . he obviously cared about it." | Lester Dep. p.131:22-23. |
| 121. Chief Lester filed a CPOE complaint against Captain Little upon talking to Lauren Gottschalk, who Chief Lester says was upset and offended by Captain Little asking her that morning to take down the PPF at her stations, before Captain Little himself took it down. Lester says such reports are required when he observes an employee being "offended" or "feeling uncomfortable" at work. | Lester Dep. pp.128:1-130:6; Stormer Dep. pp.46:5-47:19. |
| 122. Lester did not file a CPOE report on Captain Little's behalf despite observing Captain Little being emotional, upset, and uncomfortable with being told his religious accommodation was revoked and asked to ensure PPFs were flying in his area. | Lester Dep. p.138:9-19. |
| 123. ███████████████████ | Gottschalk Dep. p.216:16-23, Ex. 6 at pp.4-5. |
| 124. ███████████████████ | Gottschalk Dep. at p.218: 3- |

23

| Plaintiff's Uncontroverted Fact | Supporting Evidence |
|---|---|
| ████████████████████ | 13, Ex. 6 at p.5. |
| 125. Gottschalk would not have argued about taking the PPF down had she known that Captain Little had a religious accommodation. | Gottschalk Dep. p.221:7-9. |
| 126. After talking with Lauren Gottschalk, Chief Lester called Chiefs Boiteux and Uehara to confirm that he should file a CPOE report about Captain Little, and recounted that he had explained to Captain Little that "**I know he's religious,**" and "**I respect his religious beliefs.**" | Lester Dep. pp.140:10-141:5. |
| 127. The County's decisionmakers were thus aware that Captain Little's actions regarding the PPF were motivated by religious reasons. | Lester Dep. pp.99:21-100:25, 140:10-141:5. |
| 128. Even OLS Gottschalk was aware that Captain Little had a religious concern regarding the PPF. | Gottschalk Dep. p.157:11-14. |
| 129. On June 22, 2023, Captain Little filed a CPOE complaint regarding the aforementioned events at Area 17 on June 21, 2023, further notifying the County that his actions were motivated by religious reasons. | Little Dep. pp.248:22-249:1. |
| 130. Chief Boiteux discussed Captain Little's grievance with Chief Mayfield, who directed Chief Boiteux to follow HR's recommendation. The grievance was denied. | Boiteux Dep. pp.282:8-10, 279:9-281:10, Ex. 31. |
| 131. During the second IPM with Captain Little on June 21, 2023, County representatives informed Captain Little that "the purpose of a religious accommodation is to allow an | Little Dep. Ex. 1069 at pp.2-3;<br><br>Nuanes-Delgadillo Dep. |

24

| Plaintiff's Uncontroverted Fact | Supporting Evidence |
|---|---|
| employee to be able to practice their religion, such as taking time to attend religious services, wear religious garments, or provide them time to pray during the workday"; they said Captain Little's request "does not fall under a religious accommodation"; he was further told his "concerns regarding EA 231 and flying the flag are outside of the interactive process forum." | p.158:10-25. |
| 132. During the second IPM, Fire Department personnel did not discuss whether the religious accommodation that Captain Little sought—to not raise or lower the PPF himself, except under extenuating circumstances—would pose a burden on fire department operations. | Nuanes-Delgadillo Dep. pp.127:3–127:13. |
| 133. Captain Little's religious beliefs do not require him to take down PPFs over which he has "no responsibility" and is "not participating in," including at the Zuma location at Area 33, consistent with the religious accommodation he obtained on June 19, 2023. | Little Dep. pp.259:2-12; 259:14-260:9. |
| 134. Captain Little believed the "easiest way" to avoid having responsibility over the PPF was working in an area where PPFs would not be flying consistent with EA-231 with respect to flagpoles that flew only one flag. | Little Dep. p.260:16-19. |
| 135. Captain Little was motivated by his religious beliefs in taking down the Area 17 PPFs on June 21, 2023. | Little Dep. pp.257:12-259:1, 260:24-261:9 |
| 136. Captain Little testified that what conflicted with his religious beliefs at Area 17 on June 21, 2023, was not merely that the PPF flags were flying at that location, but that as the | Little Dep. pp.261:18-263:23. |

25

| Plaintiff's Uncontroverted Fact | Supporting Evidence |
|---|---|
| lead captain for Area 17 that day he was responsible for ensuring the PPFs were flying under the express terms of EA-231. | |
| 137. Captain Little first learned of the 100% compliance mandate to EA-231 during the IPM meeting of June 21, 2023, when Chief Uehara informed Captain Little "that per the Fire Chief, and effective immediately, the PPF will need to be flown at all locations and an updated EA will be sent out regarding this." | Little Dep. p.266:11-19, Ex. 1069 at p.2; |
| 138. During that second IPM, no one present mentioned Captain Little's lowering of the PPFs in Area 17, which had already occurred. | Little Dep. p.268:3-11. |
| 139. During the second IPM meeting, Nuanes-Delgadillo told Captain Little to reach out to his chain of command about getting time off for the rest of the month. | Little Dep. pp.268:24-269:2; Nuanes-Delgadillo Dep. p.184:7-11. |
| 140. As a result of the June 21, 2023 IPM meeting, Captain Little was again bound by the duties of EA-231 to ensure flagpoles in his respective beach areas were flying the PPFs, even though on June 19 the County allowed Captain Little to serve as captain even if he did not ensure the PPF flew on flagpoles in his respective areas, so long as another captain at a nearby beach would do so. | Little Dep. pp.128:3-129:12, 145:22, 146:1-12. |
| 141. Before, on, and after June 21, 2023, including during the accepted religious accommodation on June 19, 2023, the captain responsible for Zuma Headquarters is the Area 30 headquarters captain, and that captain was ultimately responsible for raising | Little Dep. p.146:1-12. |

26



| Plaintiff's Uncontroverted Fact | Supporting Evidence |
|---|---|
| and flying the PPF in Area 33. | |
| 142. ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████ f its roughly $1.5 billion annual budget. | Kim Dep. pp.130:10–18, 132:17–133: 2; Boiteux Dep. p.24:6-8. |
| 143. ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ | Kim Dep. p.139:21–140:6. |
| 144. ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ | Kim Dep. p.142:18–24. |
| 145. The fire department faced no cost from moving Captain Little through non-recall-triggering shift transfers if the religious accommodation Captain Little sought was granted. | Kim Dep. p.133:8-11; Uehara Dep. pp.250:19-251:8, 253:25-254:5; Boiteux Dep. pp.212:14-213:9. |
| 146. ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ | Kim Dep. p.161:1–14. |

| Plaintiff's Uncontroverted Fact | Supporting Evidence |
|---|---|
| 147. Captain Little's chain of command, being the decision makers as to operational impact of an accommodation, concluded that the accepted accommodation made during the first IPM was operationally feasible. | Boiteux Dep. pp.218:10-219:17;<br><br>Uehara Dep. pp.91:19-92:9, 238:24-239:5. |
| 148. Fire department personnel who facilitate the IPM process and make accommodation decisions jointly with a requester's chain of command typically defer to the requester's chain of command as to its conclusions about the effects of granting an accommodation on operations. | Kim Dep. p.165:2-8;<br><br>Boiteux Dep. pp.114:3-14, 218:10-219:17;<br><br>Uehara Dep. pp.85:14-21, 91:19-92:9, 238:24-239:8;<br><br>McMillon Dep. p.81:2-9. |
| 149. ███████████████████████ | Kim Dep. p.119:15–17;<br><br>Kim Dep. p.143:2–7. |
| 150. ███████████████████████ | Kim Dep. pp.144:13-25, 145:18–146:3. |
| 151. Chief Boiteux understood that the reason Captain Little's original religious accommodation could not continue was *not* an operational feasibility issue, but a direction from human resources and legal counsel that it was not an *appropriate* accommodation. | Boiteux Dep. p.219:8-17. |
| 152. ███████████████████████ | Little Dep. Ex. 1085 at p.4;<br><br>Kim Dep. Ex. 20 at p.2. |

28

| Plaintiff's Uncontroverted Fact | Supporting Evidence |
|---|---|
| ███████████████████████<br>███████████████████████<br>██████████████. | |
| 153. ████████████████████<br>█████████████████████████<br>██████████████ | Boiteux Dep. Ex. 20;<br><br>Kim Dep. Ex. 20 p.1. |
| 154. ████████████████████<br>████████████████████████<br>██████████████ | Boiteux Dep. pp.227:10-228:2, Ex. 20. |
| 155. ████████████████████████<br>████████████████████████<br>████████████████████████<br>████████████████████████<br>██████████████████ | Boiteux Dep. p.228:5-24; Ex. 20. |
| 156. ████████████████████<br>████████████████████████<br>████████████████████ | Little Dep. Ex. 1085 at 3;<br><br>Crum Dep. p.147:8-18. |
| 157. Chief Uehara's response was effectively a denial of Captain Little's request to use benefit time, because at that time of year, taking benefit time would likely cause a recall. | Little Dep. p.282:19-24;<br><br>Crum Dep. 60:25-61:3, 62:19-63:2. |
| 158. Lifeguard time off for sickness is treated differently than time off for other reasons; and when asked whether time off in cases of religious conflict should be treated more like sick time rather than the more restrictive and | Boiteux Dep. pp.229:24-230:14, 233:3-15. |

29

| Plaintiff's Uncontroverted Fact | Supporting Evidence |
|---|---|
| conditional time off allowed for others reasons, Boiteux testified that he relies on HR to make those decisions. | |
| 159. Chief Boiteux agreed that it would have been a good idea for Chief Uehara to talk with Captain Little before unilaterally denying Captain Little's request for time off for the rest of June. | Boiteux Dep. p.250:13-21. |
| 160. ████████████████████████████████ | Lester Dep. pp.161:10-164:15;<br><br>Power Dep. p.35:13-20. |
| 161. ████████████████████████████████ | Little Dep. Ex. 1085 at p.3;<br><br>Boiteux Dep. Ex. 21. |
| 162. On June 22, 2023, Chief Boiteux met with Captain Little in person at the Malibu station and provided Captain Little a Direct Order, a Notice of Instruction, and a Subject of Internal Investigation notice because he lowered the PPFs at Area 17 on June 21, | Little Dep. Ex. 1087 at p.1 ;<br><br>3d Am. Verif. Cmplt. ¶79;<br><br>Kim Dep. Ex. 28 at p.1 & Ex. |

| Plaintiff's Uncontroverted Fact | Supporting Evidence |
|---|---|
| 2023. | 66 at p.1. |
| 163. The decision to issue the Direct Order was made by Chief Mayfield in consultation with Kim and Sturdivant. | Boiteux Dep. pp.254:9-21, 255:1-15, 262:5-8 . |
| 164. The Direct Order and Notice of Instruction specified that Captain Little is responsible for either flying the PPF or ensuring it is flown; the Notice of Instruction also stated that "All Department employees, *irrespective of personal beliefs*, are expected to comply with EA-231, which includes raising the flag as instructed." | 3d Am. Verif. Cmplt. ¶79 (emphasis added), Exs. 10 & 11. |
| 165. While meeting with Captain Little on June 22, 2023, Chief Boiteux told Captain Little several times that Captain Little's "religious beliefs don't matter," and he needed to ensure the PPF flag is flown "regardless of [his] beliefs." | Little Dep. p.288:7-22. |
| 166. Boiteux *acknowledged* that he told Captain Little during this meeting that Captain Little's religious beliefs don't matter. | Boiteux Dep. pp.270:20-271:4. |
| 167. The Notice of Instruction was issued because Captain Little took down the PPFs. | Boiteux Dep. pp.273:16-274:1, 277:9-17. |
| 168. The Notice of instruction stated it was issued "to reiterate the Department's expectations regarding compliance with the Board of Supervisors' March 7, 2023 motion to fly the [PPF] at county facilities. | 3d Am. Verif. Cmplt. Ex. 11. |
| 169. ███████████████████ | Kim Dep. Ex. 28 at p.1 (LAC-0000034). |

31

| Plaintiff's Uncontroverted Fact | Supporting Evidence |
|---|---|
| 170. Boiteux is 6'4" and 220 pounds, whereas Little is 5'9", 150 pounds. Captain Little believes Boiteux's specific intent was to physically intimidate Little. | 3d Am. Verif. Cmplt. ¶194. |
| 171. On June 22, 2023, Chief McMillon learned that a flagpole at the Malibu station in Area 33 had been removed entirely, and an Ocean Lifeguard Specialist (OLS) told Chief McMillon that "he removed the flagpole for 'maintenance' reasons." | Little Dep. pp.268:3-271:20, Ex. 1082. |
| 172. No discipline resulted from the CPOE Complaint relating to the flagpole removed at the Malibu Station. | Jonna Decl., Ex. O, Supp. Resp. to Plaintiff's SROG No. 24. |
| 173. Little was standing near Chief McMillon at the Malibu station when she observed the Malibu flagpole had been removed; Little stated that he was going home sick that day because he was having an emotional breakdown as a result of EA-231; he also notified the other captains working in Area 33's battalion area that day, and those captains were supportive. | Little Dep. pp.273:2-274:12, Ex. 1082 at p.3. |
| 174. Shortly after telling Chief McMillon he needed to go home sick, Little began crying. | Little Dep. pp.273:25-274:5. |
| 175. ███████████████████████████ | Little Dep. Ex. 1085 at p.2. |
| 176. L.A. County lifeguard employees, including Little, can request "benefit days" in addition | Little Dep. pp.278:12-279:3, |

| Plaintiff's Uncontroverted Fact | Supporting Evidence |
|---|---|
| to vacation days; the fire department's memorandum of understanding provides that benefit days must be submitted three days (72 hours) in advance of the date to be filled, but, in practice, benefit days are often requested *within* 72 hours of the date to be filled. | Ex. 1084 at p.4;<br><br>Crum Dep. pp.59:11-60:19. |
| 177. Every benefit day Little had previously requested had been granted, except the benefit day request he made to Chief Uehara regarding EA-231. | Little Dep. p.279:5-8. |
| 178. Little was not disciplined for using his sick time for his remaining shifts in June 2023. | Little Dep. p.283:24-284:11. |
| 179. On June 23, 2023, only two days following the June 20 flag-lowering incident, Captain Little was suspended from his role on the BIU, which conducts investigations of emergency incidents, resulting in a significant loss of overtime, income, and prestige. | 3d Am. Verif. Cmplt. ¶82.A. |
| 180. There is no information or evidence that Little was not performing well at any time period on the BIU, which began during the 2022-2023 rating period. | Sturdivant Dep. p.113:9-12, Ex. 2 at p.79. |
| 181. In late June 2023, after his IPM meetings, Little received a hand-written letter stating: "Jeff – Fuck you and your Jesus. Your hate won't be tolerated. We know where you live and work. You better pay respect to our pride flag or we will fuck you up. We know about your cute little girls and aren't afraid to rape the shit out of them if you don't honor us. You are a facist [sic] pig and you deserve to die[.]"Little reported it to the county police and his family relocated for approximately a | Little Dep. pp.187:12-189:17, Ex. 1077;<br><br>Power Dep. pp.58:5-59:22;<br><br>Kim Dep. pp.278:4-282:4. |

| Plaintiff's Uncontroverted Fact | Supporting Evidence |
|---|---|
| week.  But he was contacted by the police a year later and told the case was closed for being inconclusive. | |
| 182. A security incident report was filed because of the letter. | Sturdivant Dep. p.143:22-23; Kim Dep. pp.279:15-280:13. |
| 183. Sturdivant is unaware of any steps taken to investigate Captain Little's threat except for filing a security incident report. | Sturdivant Dep. p.149:8-13; Crum Dep. pp.162:2-163:12. |
| 184. On July 16, 2024, the Fire Department presented to Captain Little an intent to suspend letter. | 3d Am. Verif. Cmplt. ¶86, Ex. 18; Kim Dep. pp.283:16-284:1, Ex. 85 p.1. |
| 185. ██████████████████████████ | Little Dep. Ex. 1089 at p.1, LAC-0001831; Kim Dep. p.296:10–17, Ex. 58 p.2 (LAC-0000054). |
| 186. ██████████████████████████ | Little Dep. Ex. 1089 at p.2. |
| 187. According to Chief Boiteux, the difference between Captain Little's actions and a similar action taken by Captain Crum, at the request of Chiefs Uehara and Lester, to lower | Boiteux Dep. p.175:4-25. |

34

| Plaintiff's Uncontroverted Fact | Supporting Evidence |
|---|---|
| an already-flying PPF in Area 17 on June 1, 2023, was the number of people upset about Captain Little taking down the PPF. | |
| 188.  | Little Dep. Ex. 1089 at p.5. |
| 189. | Little Dep. Ex. 1089 at p.5. |
| 190. | Little Dep. Ex. 1089 at p.5. |
| 191. | Little Dep. Ex. 1089 at pp.5-6. |
| 192. | Little Dep. Ex. 1089 at p.6. |

35

| Plaintiff's Uncontroverted Fact | Supporting Evidence |
|---|---|
| 193. ███████████████████████████████████████████████████ | Little Dep. Ex. 1089 at p.6. |
| 194. ███████████████████████████████████████████████ | Little Dep. Ex. 1089. |
| 195. ███████████████████████████████████████████████████ | Little Dep. Ex. 1089. |
| 196. The suspension notice made no mention of the religious accommodation agreed to with Captain Little on June 19, 2023, even though the Investigation Reports reference the accommodation 57 times. | 3d Am. Verif. Cmplt. ¶90. |
| 197. ███████████████████████████████████████████████████ | Little Dep. Ex. 1089 at p.5. |
| 198. ███████████████████████████████████████████████████ | Little Dep. Ex. 1089 at pp. 5-6. |



36

| Plaintiff's Uncontroverted Fact | Supporting Evidence |
|---|---|
| ████████████████████ | |
| 199. ████████████████████ | Gottschalk Dep. p.202:12-17, 204:14-17, 206:3, 211:19-212:8. |
| 200. Captain Little dutifully served the 15-day suspension. | 3d Am. Verif. Cmplt. ¶87. |
| 201. Beginning in March 2024, well in advance of June 2024, Captain Little sent the County multiple letters renewing his request to be religiously accommodated from any requirement to ensure PPFs were flying, but the County ignored his communications until May 23, 2024, when the Fire Department suggested holding another IPM. | 3d Am. Verif. Cmplt. ¶¶92-100. |
| 202. On May 29, 2024, Captain Little attended an IPM with Nuanes-Delgadillo, Chief Kyle Power, and union representative Captain Crum; Captain Little explained his continued need for a religious accommodation, and Nuanes-Delgadillo said she would present the information to more senior officials, and scheduled a follow-up IPM for May 31, 2024. | 3d Am. Verif. Cmplt. ¶¶101-02;<br><br>Power Dep. pp.81:17-82:25. |
| 203. EA-231's significant "gray area" sparked "a lot of feedback" from County employees that | Lester Dep. pp.51:21-52:2. |

PLAINTIFF'S STATEMENT OF UNCONTROVERTED FACTS & CONCLUSIONS OF LAW ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| Plaintiff's Uncontroverted Fact | Supporting Evidence |
|---|---|
| led to a revised policy in 2024 (EA-232). | |
| 204. On Thursday, May 30, 2024, the Fire Department issued a new directive relating to Pride Month, titled "EA-232." EA-232 still required captains to "[e]nsure" PPFs are flown, but only on flagpoles able to fly *three* flags. | 3d Am. Verif. Cmplt. ¶¶103-04, Ex. 24;<br><br>Power Dep. pp.30:11-31:7. |
| 205. Insofar as EA-232 requires flying the PPF, it states that "compliance is not optional," without stating how non-optional compliance is consistent with federal and state law requirements to accommodate employees' religious practices absent undue hardship. | 3d Am. Verif. Cmplt., Ex. 24. |
| 206. EA-232 took captains' duties under EA-231, and shared them with section chiefs pursuant to EMM-9. | Boiteux Dep. pp.306:21-307:13, Ex. 75. |
| 207. Upon receiving EA-232 in 2024, Captain Little discussed with his immediate supervisor, Chief Power, his religious conflict with supervising the PPF flown at Zuma headquarters (which Captain Little was responsible for on Wednesdays) and whether flagpoles in Area 33 (which Captain Little was responsible for on Thursdays through Saturdays) were excluded from flying the PPF under EA-232. | Little Dep. pp.74:20-76:1;<br><br>Power Dep. pp.49:19-50:7, 83:6-15. |
| 208. Captain Little also reached to union president Captain Crum on May 31, 2024, in order to find out which locations were would fly all three flags. | Little Dep. pp.76:8-77:20, 82:14-23, Ex. 1065 |
| 209. Captain Little understood that according to EA-232 Attachment A's plain terms, clasps should be added to fly three flags, including the PPF, only if could be done so "safely," | Little Dep. pp.80:8-81:5, Ex. 1066; |

38

| Plaintiff's Uncontroverted Fact | Supporting Evidence |
|---|---|
| that is, without a flag touching another structure, which violates flag etiquette. | Power Dep. p.31:19-22;<br><br>Oliva Dep. p.49:15-50:25. |
| 210. On May 31, 2024, Captain Little attended the follow-up IPM meeting in which Nuanes-Delgadillo explained that the Fire Department would offer Captain Little a partial religious accommodation from the requirement to fly PPFs—i.e., by agreeing that Captain Little did not need to raise or lower the PPFs himself, since that occurred outside the hours of his work shifts. | 3d Am. Verif. Cmplt. ¶107, Ex. 25. |
| 211. However, Nuanes-Delgadillo stated that Captain Little would still be responsible for ensuring the PPF is flying during his work shift—in the same manner as had been required of captains under EA-231, if any flagpole in Captain Little's assigned area could accommodate three flags in accord with EA-232—which Captain Little said he still could not agree to. | *Id.* |
| 212. Because the County's beaches are so large and lifeguards are spaced far from each other, lifeguards—including captains—regularly communicate with each other using cell phones, radios, or other devices. | 3d Am. Verif. Cmplt. ¶110;<br><br>Gottschalk Dep. pp.31:19-32:2. |
| 213. Lifeguards can use Motorola radios, cell phones, or official Department phones to contact their section headquarters on any given day. | Gottschalk Dep. p.35:2-14. |
| 214. The section headquarters for Area 17 is at Hermosa Beach, which is in Area 15. | Gottschalk Dep. pp.34:12-38:19; 46:9. |
| 215. Nuanes-Delgadillo also explained that the Fire Department would not offer Captain | 3d Am. Verif. Cmplt. ¶111. |

PLAINTIFF'S STATEMENT OF UNCONTROVERTED FACTS & CONCLUSIONS OF LAW ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| Plaintiff's Uncontroverted Fact | Supporting Evidence |
|---|---|
| Little a standing religious accommodation, but rather he must renew his request in advance of every June, and go through additional IPMs accordingly. | |
| 216. Nuanes-Delgadillo also denied Captain Little's request to suspend the Direct Order requiring him to ensure the raising of PPFs and Captain Little's request to remove the same from his personnel file—confirming that the County is still denying Captain Little a religious accommodation from the obligation on captains to ensure PPFs are flying when applicable, even though the County has numerous lifeguard areas with flagpoles that *cannot* safely accommodate three flags and thus which are not flying the PPF. | 3d Am. Verif. Cmplt. ¶112. |
| 217. Under EA-232, "many smaller stations" across the county are not flying the PPF. | Lester Dep. pp.53:16-54:2; Power Dep. pp.33:22-34:1. |
| 218. The County is still denying Captain Little's requested religious accommodation even though ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ if HR asked him if he could move a lifeguard captain to a beach or station where the PPF isn't flying, he "would probably say we could move someone to [that] location," though he would need to consider its impact on other employees. | Lester Dep. pp.56:15-57:24, 119:18-19. |
| 219. ▮▮▮▮▮▮▮▮▮▮▮▮ | Lester Dep. p.59:1-11. |
| 220. Over the weekend of June 1-2, 2024, Captain | 3d Am. Verif. Cmplt. ¶¶113- |

40

| Plaintiff's Uncontroverted Fact | Supporting Evidence |
|---|---|
| Little worked with his direct report, Chief Kyle Power to secure an effective accommodation for the month of June 2024 in which he was assigned to two locations: three days per week at Area 33 (comprising Nocholas Beach, Point Dume Beach, and Malibu Beach), and one day per week at Zuma headquarters. Captain Little, working with Chief Power, confirmed that none of the lifeguard stations in Area 33 could fly three flags. And regarding the Zuma Headquarters, Captain Little was able to find another captain who was willing to trade shifts for a location where the PPF would not be flying. | 14;<br><br>Little Dep. pp.294:8-295:9;<br><br>Power Dep. pp.85:2-86:5. |
| 221. Any effective accommodation secured by working with Chief Power is not standing and must be renewed annually. | 3d Am. Verif. Cmplt. ¶115. |
| 222. Chief Boiteux agreed that this accommodation was acceptable from the department's perspective, and there has been no cost to the department resulting from Captain Little's shift trades. | Boiteux Dep. p.315:1-4. |

Respectfully submitted,

LiMANDRI & JONNA LLP

Dated: March 6, 2026          By: _____
Charles S. LiMandri
Paul M. Jonna
Jeffrey M. Trissell
Joshua A. Youngkin
William T. Duke
Attorneys for Plaintiff
Captain Jeffrey Little

41