DIMITRI D. PORTNOI (S.B. # 282871)
dportnoi@omm.com
KYLE M. GROSSMAN (S.B. # 313952)
kgrossman@omm.com
MARNI B. ROBINOW (S.B. # 313412)
mrobinow@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street, Suite 1900
Los Angeles, California 90071
Telephone:   (213) 430 6000
Facsimile:   (213) 430 6407

*Attorneys for Defendants County of
Los Angeles, Fernando Boiteux,
Arthur Lester, and Adam Uehara*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| Jeffrey Little,<br><br>                     Plaintiff,<br><br>     v.<br><br>Los Angeles County Fire Department, et al.,<br><br>                     Defendants. | Case No. 2:24-cv-04353-JLS-BFM<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>*[Filed concurrently with Defendants' Statement of Genuine Disputes of Material Fact and Additional Material Facts; Defendants' Separate Statement of Evidentiary Objections; Declaration of Dimitri D. Portnoi; and [Proposed] Order]*<br><br>Hearing Date: May 8, 2026<br>Hearing Time: 10:30 a.m.<br>Judge:  Hon. Josephine L. Staton<br>Courtroom:  8A<br><br>TAC Filed:  October 21, 2025<br>Trial Date:  None set |

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ........................................................................................... 6

II.   BACKGROUND ............................................................................................ 7

    A.    The County Raises the PPFs .............................................................. 7

    B.    Plaintiff Lowers the PPFs ................................................................. 8

    C.    The County Disciplines Plaintiff for Violating County Policy ............. 9

III.  LEGAL STANDARD .................................................................................. 10

IV.   ARGUMENT .............................................................................................. 10

    A.    Plaintiff Has Not Established His Failure-to-Accommodate
    Claim ............................................................................................... 11

        1.    The Undisputed Facts Do Not Prove a Prima Facie Case
        of Failure to Accommodate ..................................................... 11

        2.    There Is Evidence that Plaintiff's Proposed
        Accommodation Would Unduly Burden the County and
        Other Employees ..................................................................... 15

    B.    Plaintiff Has Not Established His Retaliation Claim Beyond
    Factual Dispute ................................................................................ 18

    C.    Plaintiff Has Not Established His Free Exercise Claim Beyond
    Factual Dispute ................................................................................ 20

        1.    Refusing to Allow Plaintiff to Lower the PPF Did Not
        Substantially Burden His Religion ........................................... 20

        2.    The County's Conduct Has Been Consistently Neutral ............ 21

    D.    Plaintiff Has Not Established Beyond Factual Dispute that
    Municipal Liability Is Appropriate .................................................. 24

V.    CONCLUSION ........................................................................................... 26

DEFS.' OPPOSITION TO PL.'S MOT. FOR
PARTIAL SUMMARY JUDGMENT
2:24-CV-04353-JLS-BFM

# TABLE OF AUTHORITIES

**Page**

## CASES

*Ambat v. City & County of San Francisco,*
757 F.3d 1017 (9th Cir. 2014).......................................................................10

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986).......................................................................................10

*Bates v. Pakseresht,*
146 F.4th 772 (9th Cir. 2025).........................................................................21

*Bolden-Hardge v. Off. of Cal. State Controller,*
63 F.4th 1215 (9th Cir. 2023).........................................................................12

*Bordeaux v. Lions Gate Ent., Inc.,*
703 F. Supp. 3d 1117 (C.D. Cal. 2023)....................................................17, 18

*Castro v. County of Los Angeles,*
833 F.3d 1060 (9th Cir. 2016).........................................................................25

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986).......................................................................................10

*Chavez v. S.F. Bay Area Rapid Transit Dist.,*
723 F. Supp. 3d 805 (N.D. Cal. 2024)............................................................16

*City of Canton v. Harris,*
489 U.S. 378 (1989).......................................................................................25

*Feliciano v. Coca-Cola Refreshments USA, Inc.,*
281 F. Supp. 3d 585 (E.D. Pa. 2017)..............................................................14

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd.
of Educ.,*
82 F.4th 664 (9th Cir. 2023)...........................................................................22

*Fulton v. City of Philadelphia,*
593 U.S. 522 (2021) .......................................................................................21

*Groff v. DeJoy,*
600 U.S. 447 (2023) .......................................................................................16

*Hall v. Sheppard Pratt Health Sys., Inc.,*
155 F.4th 747 (4th Cir. 2025)....................................................................16, 18

*Heller v. EBB Auto Co.,*
8 F.3d 1433 (9th Cir. 1993).......................................................................11, 14

DEFS.' OPPOSITION TO PL.'S MOT. FOR
PARTIAL SUMMARY JUDGMENT
2:24-CV-04353-JLS-BFM

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Jett v. Dall. Indep. Sch. Dist.*,
491 U.S. 701 (1989) ......................................................................................26

*Kennedy v. Bremerton Sch. Dist.*,
597 U.S. 507 (2022) ......................................................................................21

*Lockett v. County of Los Angeles*,
977 F.3d 737 (9th Cir. 2020) ........................................................................25

*Lyng v. Nw. Indian Cemetery Protective Ass'n*,
485 U.S. 439 (1988) ......................................................................................24

*Mahoney v. District of Columbia*,
662 F. Supp. 2d 74 (D.D.C. 2009) ...............................................................24

*Masterpiece Cakeshop v. Colo. C.R. Comm'n*,
584 U.S. 617 (2018) ......................................................................................22

*Meriwether v. Hartop*,
992 F.3d 492 (6th Cir. 2021) ........................................................................22

*Mid Vt. Christian Sch. v. Saunders*,
151 F.4th 86 (2d Cir. 2025) ..........................................................................22

*Monell v. Dep't of Soc. Servs.*,
436 U.S. 658 (1978) ......................................................................................24

*Opara v. Yellen*,
57 F.4th 709 (9th Cir. 2023)..........................................................................18

*Petersen v. Snohomish Reg'l Fire & Rescue*,
150 F.4th 1211 (9th Cir. 2025).........................................................16, 17, 18

*S. Cal. Gas Co. v. City of Santa Ana*,
336 F.3d 885 (9th Cir. 2003).........................................................................10

*Sherbert v. Verner*,
374 U.S. 398 (1963) ......................................................................................20

*Tolle v. Rockwell Collins Control Techs., Inc.*,
2020 WL 3316984 (E.D. Va. 2020).........................................................11, 23

*Trans World Airlines, Inc. v. Hardison*,
432 U.S. 63 (1977) ........................................................................................16

*United States v. Allen*,
760 F.2d 447 (2d Cir. 1985)..........................................................................24

DEFS.' OPPOSITION TO PL.'S MOT. FOR
PARTIAL SUMMARY JUDGMENT
2:24-CV-04353-JLS-BFM

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Valov v. DMV*,
132 Cal. App. 4th 1113 (2005)................................................................21

*Weiss v. Permanente Med. Grp., Inc.*,
738 F. Supp. 3d 1217 (N.D. Cal. 2024)...............................................13

## OTHER AUTHORITIES

*Los Angeles County Board of Supervisors Policy Manual*, County
Policy of Equity, Policy No. 9.015 (July 1, 2011) ..............................14

## RULES

Fed. R. Civ. P. 56(a) ..........................................................................10

DEFS.' OPPOSITION TO PL.'S MOT. FOR
PARTIAL SUMMARY JUDGMENT
2:24-CV-04353-JLS-BFM

## I.     INTRODUCTION[1]

Plaintiff's Motion for Partial Summary Judgment ("Motion") paints a picture of a far-reaching plot at the County of Los Angeles to undermine his request for a religious accommodation related to the Progress Pride Flag and then discipline him for requesting it in the first place.  This case is far more straightforward than that.

***First***, Plaintiff was disciplined because he removed the PPF at three lifeguard stations on June 21, 2023, even though he never requested or obtained an accommodation to lower the PPF.  He was *not* disciplined for requesting an accommodation or for failing to perform his job duties related to his request for an accommodation.  Further, in imposing discipline for Plaintiff's lowering of the PPF, the County acted neutrally toward him, never targeting him because of his religious beliefs or questioning the validity of his beliefs.

***Second***, the reason that the PPF was flying at these stations had nothing to do with Plaintiff.  It was ordered by the highest levels of County leadership—the Board of Supervisors and the Fire Chief—to ensure that the Fire Department fully complied with the Board's motion to fly the PPF at all County facilities in June 2023.  Plaintiff brings forth no evidence to show that the Fire Chief or his deputies (Chief Deputy Jon O'Brien and Deputy Fire Chief William Mayfield) knew of Plaintiff's accommodation request when they ordered 100% compliance with the Board motion and EA-231, the Fire Department's policy memorandum implementing the motion.  Even Section Chief Arthur Lester, who implemented the 100% compliance directive by personally ensuring the PPF flew at lifeguard stations on June 21, knew nothing about Plaintiff's request.

---

[1] All emphasis is added to, and citations, alterations, and internal quotation marks omitted from, quoted passages unless otherwise noted.  All terms are as defined in Defendants' Memorandum of Points and Authorities in Support of Summary Judgment (Dkt. 114-1).  Paragraph references are to Defendants' Statement of Genuine Disputes of Material Fact and Additional Material Facts unless otherwise noted.

DEFS.' OPPOSITION TO PL.'S MOT. FOR
PARTIAL SUMMARY JUDGMENT
2:24-CV-04353-JLS-BFM

Plaintiff's Motion ignores these uncontroverted facts, which are fatal to his claims. Instead, Plaintiff tries to muddy the waters—for instance, with his assertion that he received an accommodation that was revoked or that Lifeguard Chief Fernando Boiteux told him that his religious beliefs do not matter. These and many other propositions on which Plaintiff relies are disputed and therefore cannot form the basis for summary judgment. They are also immaterial, as are the rest of Plaintiff's facts, which do not support his claims. The Court should deny Plaintiff's Motion.

## II.   BACKGROUND[2]

Cutting through the noise of Plaintiff's Motion, the issues in this case are clear. The County raised the PPFs at County facilities, including lifeguard facilities, in June 2023. Plaintiff then lowered PPFs at these facilities even though he never requested or received an accommodation to do so. He was accordingly disciplined for this violation of County policy.

### A.   The County Raises the PPFs

In March 2023, the County Board of Supervisors passed a motion requiring that the PPF be flown at all County facilities that June. ¶223. The Fire Department, which includes the Lifeguard Division, then implemented the Board's resolution through a policy memorandum, EA-231. ¶224. But when the Fire Department faced difficulties complying with the Board's motion and EA-231, County Supervisors and their staff reached out to Department leadership, including the Fire Chief himself, to promote greater compliance. ¶¶226-29.

Thus, on June 20, 2023, the Fire Chief and his deputies issued a 100% compliance mandate through the chain of command. ¶¶229-34. In an email forwarding this 100% compliance mandate to his direct reports, including Chief Boiteux, Chief Mayfield clearly stated that the lack of clasps—small metal devices

---

[2] For a more detailed recitation of the uncontroverted facts of this case, see Dkt. 114-1 at 7-13.

DEFS.' OPPOSITION TO PL.'S MOT. FOR PARTIAL SUMMARY JUDGMENT
2:24-CV-04353-JLS-BFM

typically used to fly flags—was "not an excuse" not to fly the PPF. ¶¶225, 234-35. That same night, Chief Boiteux conveyed the 100% compliance mandate and Chief Mayfield's comment that the lack of clasps is "not an excuse" to Assistant Chief Adam Uehara and the lifeguard section chiefs, including Chief Lester. ¶237. Chief Boiteux instructed the section chiefs to ensure that the PPF was raised at all fixed flagpoles under their management and report to him if any PPFs were missing or could not be flown. *Id.* Plaintiff has not come forward with any evidence that the Fire Chief, Chief O'Brien, or Chief Mayfield knew that Plaintiff would be stationed at Area 17 or that Plaintiff had made a request for a religious accommodation. And the record is undisputed that Chief Boiteux did not know that Plaintiff would be stationed at Area 17 on June 21. ¶264.

The next morning, June 21, Chief Lester did as instructed and ensured that all fixed flagpoles at lifeguard facilities between Mar Vista and San Pedro (and on Catalina Island) were flying the PPF. ¶¶238-39. This included Area 17— Dockweiler North, Dockweiler South, and El Segundo. *Id.* When Chief Lester raised the PPFs the morning of June 21, he did not know that Plaintiff would be stationed at Area 17 that day, nor did he know that Plaintiff had made a request for a religious accommodation to be exempt from EA-231 just three days prior. ¶¶262-63. Indeed, Plaintiff was not one of Chief Lester's usual reports. ¶241.

### B.    Plaintiff Lowers the PPFs

When Plaintiff emailed his usual supervisors (Section Chiefs Kyle Power and Danielle McMillon) and Chief Boiteux on June 18 about his accommodation request, he asked to be exempt from EA-231 due to his religious beliefs. ¶¶240-41. The next day, at an interactive process meeting ("IPM"), Plaintiff explained that he wanted either to not have to fly the PPF at Will Rogers Beach (where he was then assigned) or to be reassigned to a site where he would not be responsible for flying the PPF. ¶242. He never requested an accommodation to lower the PPF at any site where he worked. ¶246. The IPM concluded with an agreement that Plaintiff could

work at Area 33, where a PPF flew nearby but where it was unlikely that he would be responsible for it, for the remainder of June 2023.  ¶¶244-45.

Separately from, and after, the IPM, Plaintiff voluntarily coordinated with another captain to swap shifts so that he would work at Area 17 on June 21.  ¶251. Plaintiff arrived at Area 17 that day to find the PPF flying at Dockweiler South, where Chief Lester had ensured that it was raised pursuant to the 100% compliance mandate.  ¶¶238-39, 253-54.  In response, Plaintiff asked one of his direct reports that day if she could remove the PPF.  ¶¶255-56.  When she did not do so and explained that Chief Lester had ensured the PPF was raised at Area 17 that morning, he lowered it himself and then drove to Dockweiler North and El Segundo, where PPFs were also flying, and lowered them there as well.  ¶¶257-59. Plaintiff did not have an accommodation to lower the PPF at any of these three sites.  ¶260.

### C.    The County Disciplines Plaintiff for Violating County Policy

After Chiefs Boiteux, Uehara, and Lester learned that Plaintiff had lowered PPFs at Area 17, Chief Lester returned to Area 17 to talk with Plaintiff.  ¶¶261, 265-66.  At that time, Chief Lester had been informed by the County's Department of Human Resources that Plaintiff did not have a religious accommodation in place. ¶265.  After talking with Plaintiff and learning of his religious objections, Chief Lester did not require Plaintiff to re-raise the PPF, and instead took it upon himself to ensure that the PPF was flown.  ¶¶267-70.

Chief Lester then learned from other lifeguards that Plaintiff had taken down the PPF in public view, and he believed that Plaintiff's conduct had made other lifeguards uncomfortable.  ¶¶283-84, 286.  This led Chief Lester to conclude that Plaintiff's conduct may have constituted a potential violation of the County Policy of Equity.  ¶286.  So Chief Lester, a mandated reporter of CPOE violations, filed a CPOE complaint regarding Plaintiff's conduct in lowering the PPFs and asking other lifeguards to do the same.  ¶¶287, 290.

DEFS.' OPPOSITION TO PL.'S MOT. FOR
PARTIAL SUMMARY JUDGMENT
2:24-CV-04353-JLS-BFM

The CPOE complaint triggered an investigation into Plaintiff.  ¶¶300-02. Because Plaintiff was subject to an investigation, he was removed from his role on the Background Investigation Unit ("BIU"), which investigates prospective employees and handles sensitive applicant and personnel information.  ¶¶298-99. At the conclusion of the investigation, the County determined that the allegations in the CPOE complaint were substantiated and recommended a 15-day suspension. ¶¶304.  The Fire Department separately investigated Plaintiff for lowering the PPFs and determined that his lowering of the PPFs violated the County's flag policy, so the Fire Advisory Board recommended a 15-day suspension as well.  ¶¶305-07. The County issued Plaintiff a notice of 15-day suspension in October 2024.  ¶308. Plaintiff appealed his suspension to the Civil Service Commission, which denied his appeal; Plaintiff has now taken a further appeal of the Commission's decision to the Los Angeles County Superior Court through a writ of mandate.  Dkt. 74-1 at 9-10.

## III.   LEGAL STANDARD

The Court may enter summary judgment only if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant must identify those portions of record that demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Material facts are those that may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where, as here, Plaintiff will have the burden of proof at trial, he "must establish 'beyond controversy every essential element'" of his claims based on the uncontroverted material facts.  *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003).  Summary judgment is a "heavy burden" for a plaintiff.  *Ambat v. City & County of San Francisco*, 757 F.3d 1017, 1031 (9th Cir. 2014).

## IV.   ARGUMENT

Plaintiff's motion rests not on uncontroverted facts, but instead on his

DEFS.' OPPOSITION TO PL.'S MOT. FOR
PARTIAL SUMMARY JUDGMENT
2:24-CV-04353-JLS-BFM

conclusory assumption that his religious beliefs, not his lowering of the PPF, is what led to discipline.  This assumption is factually flawed, and Plaintiff's attempts to conflate his beliefs with his actions is legally flawed as well.  The Court should deny Plaintiff's Motion.

### A.   Plaintiff Has Not Established His Failure-to-Accommodate Claim

Plaintiff's evidence is insufficient to meet any of the three elements of a prima facie failure-to-accommodate claim: (1) that he had a "bona fide religious belief, the practice of which conflicted with an employment duty," (2) that he "informed [his] employer of the belief and conflict," and (3) that his employer "threatened [him] with or subjected [him] to discriminatory treatment, including discharge, because of [his] inability to fulfill the job requirements." *Heller v. EBB Auto Co.*, 8 F.3d 1433, 1438 (9th Cir. 1993).  Additionally, Defendants have introduced evidence at least sufficient to create a genuine dispute of material fact whether Plaintiff's requested accommodations would have unduly burdened the County and other employees.

### 1.   The Undisputed Facts Do Not Prove a Prima Facie Case of Failure to Accommodate

Plaintiff's evidence does not conclusively establish that there was a conflict between his religious practice and his job requirements, that he notified his employer about the conflict and his requested accommodation, or that the County disciplined him for failing to fulfill his job requirements.

**No Conflict.**  Plaintiff appears to identify two conflicts—that (1) the PPF conflicts with his "traditional Christian beliefs regarding marriage, family, and sexual behavior and identity" and (2) he cannot have "responsibility for raising the PPF or directing another person to do so."  Pl.'s Mem. of P. & A. ("MPA") at 11.  Neither purported conflict supports Plaintiff's failure-to-accommodate claim.  The former is legally unsound, as mere disagreement with the message of the PPF is not a conflict with a religious *practice.  See Tolle v. Rockwell Collins Control Techs.,*

*Inc.*, 2020 WL 3316984, at *5 (E.D. Va. 2020) (plaintiff's allegations that working near the Pride Flag, which he found "unwelcome and offensive because of his religious belief and practices," did not amount to "a conflicting 'employment requirement'"); *Bolden-Hardge v. Off. of Cal. State Controller*, 63 F.4th 1215, 1222 (9th Cir. 2023) (courts need not "take plaintiffs' conclusory assertions of violations of their religious beliefs at face value").  And the latter is factually unsupported, as Plaintiff has introduced no evidence that he was ever required to raise the PPF or direct another person to do so.  To the contrary, the record is clear that in 2023 Plaintiff was reassigned to a site—Area 33—where he would likely not be responsible for flying the PPF (which he agreed to) ¶¶243-45, and that in 2024 he was allowed to use time exchanges and benefit time to not work where the PPF would be flown, ¶¶311-14.  Even on June 21, 2023, Plaintiff was not required to raise the PPF when he arrived at work at 10 a.m., as Chief Lester had raised the flag earlier that morning.  ¶¶252-54.  If Plaintiff had any concern about ensuring that the already-flying PPFs stayed up, he could have called Chief Lester (who Plaintiff knew had ordered the PPFs be flown that morning).  ¶257.  He did not, and instead lowered the PPFs.  Even then no one required Plaintiff to ensure the PPF was re-raised, because Chief Lester took on that responsibility instead.  ¶¶267-70.

**No Notification.**  Plaintiff's own evidence makes clear that he did not notify the County of the conflict that resulted in him lowering the PPF on June 21, 2023.  Plaintiff states that he "notif[ied] the County of the conflict presented by the EAs," MPA at 12, which he clarifies in his Separate Statement of Uncontroverted Facts meant that he had a conflict with being "'responsible' for flying the PPF" and with the "responsibility to ensure that the crew is flying the PPF."  Pl.'s Separate Stmt. of Undisputed Facts ("Pl.'s SSUF") (dkt. 118-2) ¶¶59-60.  The evidence is not clear, however, whether Plaintiff ever notified the County that he had a conflict with a PPF flying at his worksite.  While Plaintiff acknowledges that he "may have said … that he 'didn't want to look' at the PPF," he also agreed to work at Area 33

"[e]ven though Area 33 flew a PPF at headquarters," Pl.'s SSUF ¶¶51, 65. And the record is uncontroverted that Plaintiff *never* notified the County that he would need to take down the PPF in any circumstance if it was flying at his worksite. ¶246.

Indeed, Plaintiff's conduct on June 21 reveals a complete lack of notice to the County. Plaintiff learned that morning that Chief Lester had ordered the PPFs be flown at Area 17, ¶257, but Plaintiff did not reach out to the County to inform them that this would be a conflict or that he needed an accommodation that would extend to Area 17. Based on Chief Lester's conduct later that day, in which he ensured that other lifeguard personnel would handle the PPFs at Area 17 so Plaintiff would not have to, ¶¶267-70, the County likely would have tried to address Plaintiff's concerns cooperatively. But Plaintiff failed to notify the County and took matters into his own hands. That precludes his failure-to-accommodate claim. *Weiss v. Permanente Med. Grp., Inc.*, 738 F. Supp. 3d 1217, 1223 (N.D. Cal. 2024) ("employee must [] relay sufficient information about the conflict between the religious belief and the employer's practice or policy").

**No Resulting Discipline.** Plaintiff was disciplined for his lowering of the PPF—affirmative conduct that violated multiple County policies—not for his inability to fulfill his job duties. As Defendants also explain in their motion, the evidence in support of this is overwhelming: Chief Lester learned that Plaintiff had lowered the PPF in public view, ¶284, and believed that lifeguard employees had been made uncomfortable by Plaintiff's conduct, ¶286. Chief Lester, a CPOE mandated reporter, ¶287, believed that this constituted a CPOE violation, ¶286, and reported it accordingly, ¶290. The Individual Defendants did not investigate the CPOE complaint or decide Plaintiff's discipline. ¶302. Rather, the CPOE complaint was investigated through the typical channels, including an initial screening, interviews, and a full briefing of the County Equity Oversight Panel. ¶¶300-02. The Panel, which is wholly separate from the Fire Department and Lifeguard Division, found that the allegations of CPOE violations were

DEFS.' OPPOSITION TO PL.'S MOT. FOR PARTIAL SUMMARY JUDGMENT
2:24-CV-04353-JLS-BFM

substantiated and recommended a 15-day suspension. ¶¶303-04.[3] Independently, the Fire Department concluded that Plaintiff violated the County's flag policy when he lowered the PPFs and also recommended a 15-day suspension. ¶¶305-07. Plaintiff was ultimately suspended for 15 days. ¶308. Any other discipline that he suffered (e.g., his removal from the BIU) was a result of these investigations. ¶¶298-99.

Plaintiff's attempt to confuse this straightforward discipline process is a sideshow. For instance, he contends that the County "*granted* an accommodation" that it later "rescinded," but whether Plaintiff had an accommodation following the June 19, 2023 IPM is disputed. ¶¶75, 77-78. It also does not matter: Plaintiff admits that he never received an accommodation to *lower* the PPF, and that is what he was disciplined for doing. ¶¶260, 291-92, 303-08.[4] And Plaintiff's attempt to characterize the denial of his accommodation as discipline for requesting the accommodation in the first place, MPA at 13, is circular. A failure-to-accommodate claim must identify "discriminatory treatment … *because of* [the employee's] inability to fulfill the job requirements," *Heller*, 8 F.3d at 1438; were

---

[3] Nothing in the CPOE authorizes County employees to use religious beliefs as a justification for violating the Policy by harassing, discriminating against, or retaliating against others. *Los Angeles County Board of Supervisors Policy Manual*, County Policy of Equity, Policy No. 9.015 (July 1, 2011). Even if it did, or if it was unclear whether Plaintiff's conduct violated the Policy, it would not be appropriate for individual supervisors, rather than the County Equity Oversight Panel, to make that decision. ¶289.

[4] Yet another reason why Plaintiff's insistence that he received an accommodation rings hollow is that this accommodation was allegedly to "work[] recall assignments at a location where the PPF would not be flying." MPA at 12. But *Plaintiff himself* coordinated to work at Area 17 on June 21, 2023, even though Chief McMillon had offered to use a recall exemption so he would not have to. ¶¶247-48, 251. No one granted him an accommodation to work at Area 17, no one assigned him to work at Area 17, and no one represented that the PPF would not fly at Area 17. His accommodation was to *not work* on June 21, 2023, and Plaintiff voluntarily exchanged shifts to work at Area 17.

DEFS.' OPPOSITION TO PL.'S MOT. FOR
PARTIAL SUMMARY JUDGMENT
2:24-CV-04353-JLS-BFM

the denial of an accommodation enough standing alone, then every denial—whether or not it led to any adverse employment action or discipline—would transform into a failure-to-accommodate claim, *Feliciano v. Coca-Cola Refreshments USA, Inc.*, 281 F. Supp. 3d 585, 593 (E.D. Pa. 2017).

Plaintiff also contends that Chief Boiteux "admitted in deposition that he told Little that his 'religious beliefs don't matter' and that he needed to ensure the flag is flown 'regardless of his beliefs.'" MPA at 13. This is false—Chief Boiteux stated that he did not remember making either statement, leaving this fact in dispute. ¶¶165-66; Dkt. 115-14 (Boiteux Dep. Tr.) 270:20-271:4 ("Q: When you delivered the direct order, do you remember telling Captain Little that he's a L.A. County employee and his religious beliefs don't matter? A: I don't remember exactly the words, but it was in reference to the oath that he did back in 2012.").[5] Once again, though, this fact would not even be material to Plaintiff's claim. Plaintiff admits that his conversation with Chief Boiteux occurred in the context of Chief Boiteux delivering a direct order that was issued to Plaintiff *because Plaintiff lowered the PPFs*. Pl.'s SSUF ¶162. It is legally correct, not discriminatory, to state that Plaintiff cannot rely on his religious beliefs to lower the PPF.

### 2. There Is Evidence that Plaintiff's Proposed Accommodation Would Unduly Burden the County and Other Employees

Even if Plaintiff had been able to prove a prima facie case of failure to accommodate with uncontroverted facts, he would still not be entitled to summary judgment on that claim because the record contains evidence that Plaintiff's proposed accommodations would be an undue burden.

At the outset, Plaintiff tries to remake the undue burden inquiry into something that it is not. He asserts that undue burdens must "translate into material

---

[5] The oath that Plaintiff took in 2012 was "to obey the laws, ordinances of … the United States, California, and Los Angeles County, and [to] be faithful to the department." ¶285. It did not reference religion. Plaintiff has introduced no evidence that he objected to the oath on religious grounds.

DEFS.' OPPOSITION TO PL.'S MOT. FOR PARTIAL SUMMARY JUDGMENT
2:24-CV-04353-JLS-BFM

operational costs or disruptions for the employer," MPA at 14, but his only support for that is a concurring opinion that does not even say that. Justice Sotomayor's concurrence in *Groff* actually takes pains to highlight that "the 'conduct of a business' *plainly* includes the management and performance of the business's employees," so "undue hardship on the conduct of a business may include undue hardship on the business's employees." *Groff v. DeJoy*, 600 U.S. 447, 475 (2023) (Sotomayor, J., concurring). Lower courts have interpreted *Groff* in precisely this manner. *See, e.g.*, *Petersen v. Snohomish Reg'l Fire & Rescue*, 150 F.4th 1211, 1220 (9th Cir. 2025) ("*Groff* tells us that we may look to EEOC guidance to determine if [] health and safety costs [to other employees or members of the public] would have imposed an undue hardship."); *Chavez v. S.F. Bay Area Rapid Transit Dist.*, 723 F. Supp. 3d 805, 821 (N.D. Cal. 2024) ("*Groff* re-affirmed that the [undue-burden] standard takes into account an accommodation's impact on co-workers where such impact has ramifications for the conduct of the employer's business."); *Hall v. Sheppard Pratt Health Sys., Inc.*, 155 F.4th 747, 753 (4th Cir. 2025) ("[A]fter *Groff*, [] non-economic costs can also include threats to the health and safety of employees and the people they serve.").

Plaintiff compounds his error by doubling down on his insistence that the County could just unilaterally reassign him to another captain's post, displacing that captain. MPA at 15 ("He could permissibly be assigned to any beach along the coastline."). But the County is subject to a memorandum of understanding with the L.A. County Lifeguard Association ("LACoLA") that restricts the County's ability to unilaterally alter lifeguards' schedules outside of emergency situations. ¶¶273-74; *see Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 79 (1977) (rejecting argument that Title VII requires accommodations that would interfere with an "otherwise valid agreement"). Plaintiff entirely ignores the MOU in his motion.[6]

---

[6] Plaintiff's comment that he could be accommodated "simply by reallocating discrete flag tasks within a unified supervisory area," MPA at 15, begs the question

Plaintiff then tries to handwave away the very real mental and physical health risks to his coworkers and members of the public as "speculat[ive]." MPA at 16. Not so. Lifeguards serve a critical public safety function, requiring constant vigilance and coverage at County beaches. ¶276. Lifeguard staffing, especially in the summer, is therefore closely managed because of minimum staffing requirements necessary to ensure public safety. ¶275. This is further complicated by the fact that many lifeguards take preapproved vacation time in the summer, which they bid on the prior calendar year. ¶¶272, 277. Defendants also provided evidence that recalls in the Fire Department writ large create a hardship for other employees, causing burnout and even violence. ¶¶278-82. For example, Chief Julia Kim testified that recalls—which cause employees to miss time at home with their families—are responsible for significant mental health issues. ¶279. She even cited one particular example of a murder, attempted murder, and suicide by a firefighter, which led the Board of Supervisors to become involved and direct the Department's executive staff to propose ways to reduce recalls. ¶280-81. These issues affect lifeguards too: LACoLA, the lifeguard union, approached the County with concerns that were just as "dire" as those affecting firefighters. ¶282. This evidentiary record is far from speculative.

Plaintiff suggests that these negative effects on the Lifeguard Division's workforce do not matter because they were not "a result of [his] religious accommodation request." MPA at 16. That is not how the undue burden analysis works. In analogous cases involving requests for religious exemptions from vaccine requirements, courts do not ask whether coworkers, the public, or even the plaintiffs themselves actually contracted preventable illnesses. *See, e.g.*, *Petersen*, 150 F.4th at 1220 ("Although Plaintiffs' declarations state they were 'able to safely perform their job' and 'never transmitted COVID to another employee, co-worker,

---

whether he could be reassigned to a "unified supervisory area"—a term that Plaintiff does not define and never developed evidence about.

DEFS.' OPPOSITION TO PL.'S MOT. FOR PARTIAL SUMMARY JUDGMENT
2:24-CV-04353-JLS-BFM

or patient, or member of the public,' these general assertions are unsupported by any medical evidence and would be impossible to prove at trial."); *Bordeaux v. Lions Gate Ent., Inc.*, 703 F. Supp. 3d 1117, 1136 (C.D. Cal. 2023) (collecting cases finding "the *possibility* of an unvaccinated individual getting others sick to be *a non-speculative risk* that a court may consider when performing an undue hardship analysis").  Rather, they ask whether the plaintiff's proposed accommodation would pose a health *risk* to coworkers and the public.  *Petersen*, 150 F.4th at 1220; *Bordeaux*, 703 F. Supp. 3d at 1136; *Hall*, 155 F.4th at 753-54.  The same analysis is appropriate here.

Plaintiff wraps up by insinuating that any mental-health effects stemming from forced recalls to fill his shifts are nothing more than "a coworker's dislike of the mere fact of an accommodation."  MPA at 16.  In light of the evidentiary record showing the burnout and mental-health risks associated with recalls, this accusation of his coworkers' bias rings hollow.

*              *              *

Because the record does not establish that Plaintiff (1) had a conflict between his religious practice and his job responsibilities, (2) notified the County of this conflict, or (3) was disciplined for failing to fulfill his job responsibilities, Plaintiff has thrice over failed to establish his prima facie failure-to-accommodate claim.  Moreover, Defendants have offered substantial evidence of the undue burdens that Plaintiff's proposed accommodations would cause.  Plaintiff's motion should be denied as to his failure-to-accommodate claims.

**B.      Plaintiff Has Not Established His Retaliation Claim Beyond Factual Dispute**

Plaintiff's retaliation claims fail for the fundamental reason that there is no causal connection between his accommodation request and the discipline that he experienced.  Rather, the County disciplined Plaintiff because he lowered PPFs that

DEFS.' OPPOSITION TO PL.'S MOT. FOR PARTIAL SUMMARY JUDGMENT
2:24-CV-04353-JLS-BFM

the County had raised pursuant to directives from the highest levels of County management—the Board of Supervisors and the Fire Chief.[7]

In fact, Plaintiff's Motion almost entirely ignores that Chief Deputy O'Brien and Deputy Fire Chief Mayfield—neither of whom knew any details of Plaintiff's accommodation request, ¶236—ordered 100% compliance with the Board's motion and EA-231 the evening before Plaintiff's shift at Area 17. ¶¶232-35. Plaintiff entirely skips over Chief Boiteux and Chief Lester's efforts to comply with this directive by ensuring that the PPF flew at all fixed flagpoles at lifeguard stations early in the morning on June 21. ¶¶237-39. Indeed, Plaintiff only mentions the 100% compliance mandate twice—once to acknowledge that some flagpoles still were not flying the PPF (because, for example, the flagpoles were under construction, ¶227) and once to point out that the 100% compliance mandate delegated responsibility to Chief Boiteux to ensure that the PPF was flown throughout the Lifeguard Division. MPA at 25, 28. Plaintiff cannot prove causation by ignoring key facts in the narrative that explain why the PPFs were up—a reason that had nothing to do with him.

Plaintiff's remaining arguments are unavailing. Plaintiff claims that Chief Lester retaliated against him by filing the CPOE complaint after he described his accommodation to Chief Lester. MPA at 18-19.[8] But this ignores that Chief Lester, as a mandated reporter, was required to report all potential CPOE violations.

---

[7] Plaintiff cites *Opara v. Yellen*, 57 F.4th 709, 722 (9th Cir. 2023), for the proposition that "'[t]he requisite degree of proof necessary to establish a prima facie case … on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence.'" MPA at 16. That citation reflects the burden on the party *opposing* summary judgment, not the party *seeking* summary judgment, and therefore does not ease Plaintiff's burden.

[8] Plaintiff no longer argues that Chief Lester retaliated against him by raising the PPFs the morning of June 21, presumably because it is undisputed that Chief Lester did not know of Plaintiff's religious accommodation request or his staffing at Area 17 until after Plaintiff lowered the PPFs later that day.

DEFS.' OPPOSITION TO PL.'S MOT. FOR
PARTIAL SUMMARY JUDGMENT
2:24-CV-04353-JLS-BFM

¶¶287-89. Chief Lester's decision to allow the County's processes to take their course rather than risk discipline himself is not retaliation. Plaintiff also repeats his (still disputed) contention that Chief Boiteux told Plaintiff that his beliefs do not matter. MPA at 19. Once again, though, this is no basis for liability. It is not discipline, and Chief Boiteux was not a decisionmaker for any discipline that Plaintiff faced. ¶309. Taken literally, it would actually undercut any assertion of religious animus against Chief Boiteux and show that Chief Boiteux was not concerned about Plaintiff's religious beliefs but instead whether Plaintiff was actively violating County policy by lowering PPFs. It does not prove Plaintiff's retaliation claim beyond any genuine dispute of material fact.

## C. Plaintiff Has Not Established His Free Exercise Claim Beyond Factual Dispute

### 1. Refusing to Allow Plaintiff to Lower the PPF Did Not Substantially Burden His Religion

Plaintiff's free exercise claims rest on the flawed premise that the County has substantially burdened his religion, which once again ignores that all the County's conduct that Plaintiff has complained of in this case can be traced back to his own lowering of the PPFs. To distract from this, Plaintiff once again focuses on various job requirements that he introduced no evidence that he has ever been required to fulfill, let alone been disciplined for not fulfilling—raising, instructing others to raise, or maintaining the PPF. MPA at 20. Plaintiff's citation to *Sherbert v. Verner*, 374 U.S. 398, 404 (1963), a case brought by a plaintiff who was denied unemployment benefits after being fired for refusing to work on a Saturday due to her religion, does not make his claim more persuasive; if anything, it highlights just how weak his claim is. Unlike the plaintiff in *Sherbert*, who was fired for a religious practice (refusing to work on the Sabbath), Plaintiff was disciplined for removing flags. He has not been subject to any adverse employment action for any other conduct—certainly not for any religious practice. Plaintiff claims that the

Direct Order hangs over him, threatening adverse consequences for not fulfilling job requirements regarding the PPF, but that is not credible. For one, the Direct Order was issued because he lowered the PPFs, not because he failed to fulfill any other job duties. ¶295-96. For another, Plaintiff points to no evidence that any of his supervisors or anyone at the County has ever attempted to enforce the Direct Order to force him to engage in certain conduct.[9]

Indeed, this entire claim boils down to whether prohibiting Plaintiff from *lowering* the PPF burdens his religious exercise. It does not. Taking down a PPF is not religious conduct. Plaintiff's case law, which involves core protected conduct under the First Amendment, is therefore inapposite. *See Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 538 (2022) (personal prayer); *Bates v. Pakseresht*, 146 F.4th 772, 785-86 (9th Cir. 2025) (speech regarding gender identity).[10] Because there is no burden, Plaintiff's attempt to invoke strict scrutiny to review Defendants' conduct is unavailing. *Valov v. DMV*, 132 Cal. App. 4th 1113, 1126 (2005) (strict scrutiny implicated when a law "substantially burden[s] a religious belief or practice"); *Fulton v. City of Philadelphia*, 593 U.S. 522, 532-33 (2021).

### 2.    The County's Conduct Has Been Consistently Neutral

Nor has Plaintiff proven beyond any factual dispute that the County's conduct was non-neutral. Plaintiff's reliance on a few isolated statements is

---

[9] The Direct Order, by its terms, applies only to EA-231, and is therefore now moot. ¶295. Plaintiff nonetheless describes the Direct Order as the "still-existing 'Direct Order' to ensure the PPF flies pursuant to County requirements." MPA at 21 n.1. Even if that were true, it would not help Plaintiff, who concedes that he received an effective accommodation in 2024. ¶315. In any case, the lack of evidence that anyone has ever enforced, attempted to enforce, or threatened to enforce the Direct Order against him undercuts any assertion that its mere existence constitutes a failure to accommodate.

[10] As the Court ruled at the pleading stage, Plaintiff did not state any claim under the Speech Clause of the First Amendment. Dkt. 50 at 15-17.

DEFS.' OPPOSITION TO PL.'S MOT. FOR PARTIAL SUMMARY JUDGMENT
2:24-CV-04353-JLS-BFM

nowhere near enough to prove his claim as a matter of law; indeed, none of those statements evince non-neutrality in the first place.

*First*, Plaintiff points, yet again, to Chief Boiteux's alleged statement that Plaintiff's religious beliefs do not matter. MPA at 21. Once again, it is disputed that Chief Boiteux made this statement. ¶¶165-66. And once again, it does not matter. A factually true statement regarding Plaintiff's obligation to carry out his job responsibilities where he does not have an accommodation is a far cry from statements that students' religious views have "no rightful place on campus," *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 686 (9th Cir. 2023); statements accusing Christian schools of "blatant discrimination under the guise of religious freedom," *Mid Vt. Christian Sch. v. Saunders*, 151 F.4th 86, 94 (2d Cir. 2025); or statements that religion's mere "presence" is "counterproductive," *Meriwether v. Hartop*, 992 F.3d 492, 512-13 (6th Cir. 2021). Moreover, all of the above cases involved either statements made *by* or *to* a decisionmaker or members of a decision-making body; that is what triggers First Amendment scrutiny. *Masterpiece Cakeshop v. Colo. C.R. Comm'n*, 584 U.S. 617, 640 (2018) (plaintiff "was entitled to a neutral *decisionmaker*"); *Fellowship of Christian Athletes*, 82 F.4th at 691 (First Amendment implicated when committee of "individuals with positions of importance within the school … made a recommendation that was ratified by the District"). Chief Boiteux, however, was not acting as a decisionmaker, nor was he speaking to one, when he spoke to Plaintiff on June 22, 2023. ¶¶294, 309.

*Second*, Plaintiff accuses Chief Uehara of claiming in an email that Plaintiff's request for a religious accommodation was "orchestrated," MPA at 21, deliberately ignoring Chief Uehara's deposition testimony about that email. In fact, Chief Uehara made two things clear, neither of which is disputed: (1) that he thought a different lifeguard's "acting out" was "orchestrated," and (2) that he was confused why Plaintiff requested a religious accommodation in mid-June 2023

DEFS.' OPPOSITION TO PL.'S MOT. FOR PARTIAL SUMMARY JUDGMENT
2:24-CV-04353-JLS-BFM

from a policy that had been announced in May and foreshadowed in March. ¶¶249-50. Plaintiff's reimagining of Chief Uehara's deposition testimony is not an uncontroverted fact, and Chief Uehara's actual testimony has nothing to do with Plaintiff's religious beliefs.[11] Plaintiff then conflates the above June 18, 2023 email regarding Plaintiff's initial religious accommodation request with an entirely separate email chain from June 21, 2023, in which Chief Uehara recommended denying Plaintiff's request to use benefit time after he lowered the PPFs at Area 17. MPA at 22; *see* ¶153. As Chief Uehara explained both in his deposition and in a follow-up email to Plaintiff, Chief Uehara was concerned that Plaintiff using benefit time might cause recalls, and thus granted Plaintiff's request only to the extent it would not cause a recall.[12] ¶271.

*Third*, Plaintiff points to language in his notice of suspension stating that he "sent a message that sought to diminish the visibility of the LGBTQ+ community," "showed a lack of care for the struggles and identities for that community," and undermined "diversity" by lowering the PPFs. MPA at 22; Pl.'s SSUF ¶191. As with every other aspect of Plaintiff's discipline, this comment is about his lowering of the PPFs, not his religious beliefs. Plaintiff's contention that this language "amount[s] to an illegitimate presupposition that expressing traditional religious views on marriage and sexuality necessarily discriminate against 'people with diverse sexual orientation and gender identity expression,'" MPA at 22, makes no

---

[11] The word "orchestrate" means "to arrange or combine so as to achieve a desired or maximum effect"—not to lie. *Orchestrate, Merriam-Webster*, https://www.merriam-webster.com/dictionary/orchestrate (last visited Apr. 10, 2026). Even if Chief Uehara thought Plaintiff's request was orchestrated, it does not reasonably follow that he thought it was insincere.

[12] Plaintiff states that "the Fire Department had never previously denied any employee a religious accommodation because it could cause a recall." MPA at 24. But Plaintiff's request was denied because he did not show a conflict with a religious practice, not because his request would cause a recall. *Tolle*, 2020 WL 3316984, at *5. How the County treated employees with religious accommodations is irrelevant to whether the County acted neutrally with respect to Plaintiff.

sense. Lowering a flag is not "expressing" anything, let alone "traditional religious views on marriage and sexuality." The Free Exercise Clause protects religious beliefs and practices; it does not give citizens license to interfere with government property. *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 452-53 (1988) ("The First Amendment must apply to all citizens alike, and it can give to none of them a veto over public programs that do not prohibit the free exercise of religion."); *United States v. Allen*, 760 F.2d 447, 452 (2d Cir. 1985) (rejecting free exercise challenge to criminal conviction for attempting to destroy government property at nuclear facility because "the protection of government property" outweighs the interest in free exercise); *Mahoney v. District of Columbia*, 662 F. Supp. 2d 74, 95 (D.D.C. 2009) (anti-defacement statute barring chalk art in front of the White House did not infringe on free exercise rights).

Plaintiff then tries to establish that Defendants acted non-neutrally by comparing his situation to others ▮▮▮▮▮▮▮▮▮▮ But once again, he misses the mark. ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮ But unlike here, where there was literal video evidence of Plaintiff lowering the PPF, ¶293, ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ Accordingly, comparisons between the two cases do not establish—certainly not beyond a factual dispute—that the County acted non-neutrally with respect to Plaintiff.

### D. Plaintiff Has Not Established Beyond Factual Dispute that Municipal Liability Is Appropriate

In addition to moving for summary judgment on six of his seven claims,[13] Plaintiff also seeks summary judgment on the question of municipal liability on his federal free exercise claim under *Monell v. Department of Social Services*, 436 U.S.

---

[13] Plaintiff does not move for summary judgment on Count V, his FEHA failure-to-protect claim.

658 (1978). As with his substantive claims, Plaintiff has not conclusively established that municipal liability is appropriate here, and summary judgment is therefore improper.

To establish municipal liability under *Monell*, Plaintiff "must prove that (1) he was deprived of a constitutional right; (2) the municipality had a policy; (3) the policy amounted to deliberate indifference to [his] constitutional right; and (4) the policy was the moving force behind the constitutional violation." *Lockett v. County of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020). At the outset, for the reasons stated above, Plaintiff has not proven a federal free exercise violation beyond factual dispute. That alone is grounds to deny summary judgment. *See id.* (finding no constitutional violation and, therefore, no municipal liability).

Even if Plaintiff had proven the merits of his free exercise claim, he has not established beyond factual dispute that any County policy implicates *Monell*. Plaintiff already abandoned any claim that the County's policies themselves violated the First Amendment. Dkt. 50 at 12. Further, the Board motion and EA-231 were not the "moving force" behind any violation of his constitutional rights; his own lowering the PPF was. *See City of Canton v. Harris*, 489 U.S. 378, 389-91 (1989) (the "moving force" must have "actually caused" and be "closely related to" the constitutional violation). Incidentally, Plaintiff actually violated (and was punished for violating) two entirely separate County policies: the CPOE and the flag policy. ¶¶303-08. Neither policy is "deliberately indifferent" to a constitutional violation. *See Castro v. County of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016) (en banc) (the "deliberate indifference" standard is an "objective inquiry" as to whether policymakers were on notice).

To the extent that Plaintiff claims that overarching language in EA-231, his notice of instruction, his notice of suspension, or any other documents impose an ongoing obligation with respect to the PPF, MPA at 27, that is belied by the complete lack of evidence that he has ever been required to raise, maintain, or

instruct others to raise the PPF.  Even more confusing is Plaintiff's contention that EA-232, which went into effect in 2024, operates as an "ongoing refusal to accommodate," considering that Plaintiff alleged under oath in his verified complaint and in his deposition that he received an "effective accommodation" from EA-232 in 2024.  ¶315.

Nor has Plaintiff established that there was an isolated constitutional violation by anyone with final policymaking authority.  For now the fourth time in this single Motion, Plaintiff hangs his hat on Chief Boiteux's alleged and disputed statement that Plaintiff's religious beliefs do not matter.  MPA at 28.  But Chief Boiteux had no policymaking authority when he made that statement; he was following orders from his chain of command to deliver the direct order to Plaintiff's hands.  ¶¶294, 297.  Nor did Chief Boiteux have decision-making authority with respect to Plaintiff's discipline at any other time.  ¶309.  His actions cannot impute liability to the County.  *See Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989) (state officials are policymakers if their "decisions represent the official policy of the local governmental unit").

## V.  **CONCLUSION**

The Court should deny Plaintiff's motion for partial summary judgment.

Dated: April 10, 2026

/s/ *Dimitri D. Portnoi*
Dimitri D. Portnoi
Kyle M. Grossman
Marni B. Robinow
O'MELVENY & MYERS LLP

*Attorneys for Defendants County of Los Angeles, Fernando Boiteux, Adam Uehara, and Arthur Lester*

DEFS.' OPPOSITION TO PL.'S MOT. FOR PARTIAL SUMMARY JUDGMENT
2:24-CV-04353-JLS-BFM

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants County of Los Angeles, Fernando Boiteux, Adam Uehara, and Arthur Lester, certifies that this brief contains 6,995 words, which complies with the word limit of Local Rule 11-6.1.

Dated:  April 10, 2026                    O'MELVENY & MYERS LLP

                                          By:    */s/ Dimitri D. Portnoi*
                                                 Dimitri D. Portnoi

                                          *Attorneys for Defendants County of*
                                          *Los Angeles, Fernando Boiteux,*
                                          *Adam Uehara, and Arthur Lester*

DEFS.' OPPOSITION TO PL.'S MOT. FOR
PARTIAL SUMMARY JUDGMENT
2:24-CV-04353-JLS-BFM