# EXHIBIT A

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CAPTAIN JEFFERY LITTLE, an individual,

       Plaintiff,

       vs.               No. 2:24cv-04353-JLS-PD

LOS ANGELES COUNTY FIRE DEPARTMENT,
a public entity, et al,

       Defendants.

_____

REMOTE DEPOSITION OF

CHIEF JON O'BRIEN

DECEMBER 5, 2025

10:00 A.M.-3:35 P.M.

Volume 1

Reported By:

Nikeya C. Coleman

CSR No. 14562

APPEARANCES OF COUNSEL


For Plaintiff:

        LIMANDRI & JONNA
        BY:   ROBERT WEISENBURGER
              JOSHUA YOUNGKIN
              WILLIAM DUKE
        Attorney at Law
        PO BOX 9120
        Rancho Santa Fe CA 92067
        858-759-9930
        Rweisenburger@limandri.com
        jyoungkin@limandri.com

For Defendant:

        O'MELVENY & MYERS
        BY:   MARNI ROBINOW
              BRYAN RODRIQUEZ
        Attorney at Law
        400 South Hope Street, Suite 1900
        Los Angeles CA 90071
        213-430-6000
        mrobinow@omm.com


VIDEOGRAPHER:

        ALEJANDRO COVARRUBIAS

INDEX OF EXAMINATION

WITNESS: CHIEF JON O'BRIEN   Volume 1


EXAMINATION                         PAGE

BY MR. WEISENBURGER                  07



INDEX TO EXHIBITS


| Exhibit | Description | Page |
|---|---|---|
| EXHIBIT 1 | Org-Chart-LaCoFD-Eff-April-4-2025 | 14 |
| EXHIBIT 5 | Board of Supervisors PPF policy | 35 |
| EXHIBIT 6 | 2023.03.07 BOS Flag Policy | 35 |
| EXHIBIT 7 | 2023.06.06 -Michael Samsing e-mail | 51 |
| EXHIBIT 8 | 2023.05.25 PPF Flow Chart | 51 |
| EXHIBIT 9 | 2023.05.25 - EA-231 | NA |
| EXHIBIT 10 | 2023.05.30 EA-231 coordinating e-mail Boituex | 64 |
| EXHIBIT 11 | 2023.06.3-5 - e-mails re public comments | 64 |
| EXHIBIT 23 | Dockweiler Flag Issues O'Brien | 126 |
| EXHIBIT 25 | 2023.06.21 Fernando Text Messages | NA |
| EXHIBIT 26 | 2023.06.21 Josh R Text Messages | NA |
| EXHIBIT 27 | 2023.06.21 O'Brien Text Messages | NA |
| EXHIBIT 28 | 2023.06.22 - Direct Order Boiteu | 140 |
| EXHIBIT 29 | 2023.06.22 - re Pictures of Removed | 144 |

THE SULLIVAN GROUP OF COURT REPORTERS

3

|  |  |  |
|---|---|---|
|  | Malibu Pole - Other OLS Not Supportive of Flag |  |
| EXHIBIT 31 | 2023.06.22 - Little Grievance Form | NA |
| EXHIBIT 32 | 2023.06.23 EA-279 | 145 |
| EXHIBIT 33 | 2023.06.23 Investigation Summary for Flag Pole Incident June 22 | 147 |
| EXHIBIT 35 | 2023.06.27 Complaint re abusing benefit time | NA |
| EXHIBIT 37 | 2023.06.30 - Little Meeting with Power | NA |
| EXHIBIT 38 | 2023.07.13 Delgadillo confirmation of IPM Discussion | NA |
| EXHIBIT 40 | 2023.07.21 - Patient Status Report | NA |
| EXHIBIT 44 | 2023.11.09 CPOE Briefing Pane | NA |
| EXHIBIT 45 | 2024.02.07 CPOE Notice Letter | NA |
| EXHIBIT 46 | 2024.03.15 - re Invitation to Mediate Little's CPOE Complaint | NA |
| EXHIBIT 47a | 2024.03.19 Highlighting Shaeffer Investigation Report to Bennett | 160 |
| EXHIBIT 47b | 2024.03.19 Shaeffer Investigation Report to Bennett | NA |
| EXHIBIT 50 | 2024.05.30 EA-232 w Attachment A | 37 |
| EXHIBIT 51 | 2024.5.30 Marrone to Chiefs re Order to Comply with EA-232 | 172 |
| EXHIBIT 56 | 2024.06.20 - Delgadillo summary of IPM meeting | NA |
| EXHIBIT 58 | 2024.10.24 - 15-day suspension letter | NA |
| EXHIBIT 61 | 2025.05.16 EMM - 6 | NA |
| EXHIBIT 65 | Crum and Uehara e-mail re Dockweiler PPF | NA |

**EXHIBIT 71a**          2021.6.20 Mayfield re 100%
                        Compliance 31-32                            **NA**

**EXHIBIT 71b**          2021.6.20 Mayfield re 100%
                        Compliance 31-32 Highlighting      **NA**

**EXHIBIT 74**           2023.06.15 Supervisor e-mail re
                        PPF at LG Stations                         **NA**


        (Original exhibits have been attached to the original transcript.)

chief deputies typically deal with the chief of staff or the fire/justice deputy.  The deputy fire chiefs typically deal with the justice deputy/fire deputy, and the assistant chiefs typically deal with the constituent service and engagement personnel out in the field offices of the board offices.

Q.   Okay.  So on this organization chart, who would -- where would kind of be the people that would be communicating with the Board of Supervisors offices?

A.   Those were all -- so the divisions, you see, like, Division 3, Division 1, Division 2?

Q.   Yeah.

A.   Those division chiefs would deal with the field offices.

Q.   Okay.

A.   The deputy fire chief's that next level up across the line, would deal with the justice/fire deputy, however you want to call it.  So that's --

Q.   Justice -- I'm sorry to interrupt.

Is that a -- justice/fire deputy, is that somebody in the Board of Supervisors office or someone in the fire department?

A.   Someone in the Board of Supervisors office.

Q.   Okay.  Got it.

A.   They each have a, like, assign someone, hey,

fire/sheriff are yours to work with so --

Q.    Okay.

A.    -- when the board member has an issue, they would generally direct it to the -- that relates to fire, sheriff, probation, et cetera, they will direct that question to their justice deputy who will be the one responsible for working with the department.

Q.    Do you know would that person was in 2023?

A.    Well, each of the offices have a different individual.  There is the fire offices, they each have a fire/justice deputy.

Q.    Oh, I see.  Okay.  So there would have been five, potentially in 2023 that would have worked with the fire department?

A.    From that justice level, yes, and then each board office probably has, I don't know, 10 to 15 field office staff in different areas -- in different areas of their jurisdiction who are out there as well.

Q.    Are you aware of any complaints directly by a Board of Supervisors member regarding the -- the perceived failure to fly Progress Pride Flags in connection with the supervisor's motion?

A.    I don't have any knowledge of a direct inquiry by a board member themselves.

Q.    Did Chief Marrone ever tell you about a

situation like that?

A.    Not that I'm recalling.  I think he did receive inquiries from board offices, but I can't say whether or not that was the board member directly or someone else in the office.

Q.    Did you have any involvement in evaluating Captain Little's religious accommodation request?

A.    I did not.

Q.    Okay.  Did Julia Kim communicate with you at all regarding his religious accommodation request?

A.    If she did, it would have been just that he put in for a religious accommodation request.  The specifics of what that request and outcome, I wouldn't have known. That would have been communicated with his supervisor.

Q.    Okay.  Did you have any involvement in evaluating his removal of the Progress Pride Flag on June 21, 2023?

A.    I was made aware that he did that.

Q.    Okay.  Did you have any other involvement besides being made aware?

A.    I asked the deputy fire chief to work through the issue, determine whether it was an IPM needed or whether there was any performance enhancement that needed to be done.

Q.    Okay.  And who was that fire deputy chief?

A.    At the time, I believe it was Chief Mayfield.

Q.    Okay.  So Mayfield was asked to evaluate whether an IPM was required or whether you said performance was -- what was the other thing you said?

A.    Whether it needed to be investigated, basically.

Q.    Okay.  It needed to be investigated.

Do you know what he concluded?

A.    I do not.  Within the fire department, investigations are initiated at the deputy fire chief level, and they're the decision maker.  Once investigated, the results go back to them and they work with the LPSB and the Professional Standards Bureau to -- or professional performance section to make a determination on the nature of the case.

Q.    Okay.  So Mayfield would have been the decision maker at that point, you wouldn't have had to sign off on his decision?

A.    That's correct.

Q.    You said LPSB, what does that mean?

A.    Leadership Professional Standards Bureau.  On the org chart there, so under the LPSB, the LPSB chief oversees the -- go down, you see professional performance section.  The professional performance section would conduct the investigation, provide a

report, and then that report would be reviewed by the deputy chief as well as the deputy chief of -- the deputy chief of the Leadership Professional Standards Bureau as well as the deputy chief who initiated the investigation from that bureau.

Q.   Okay.  And -- and so at that -- and again, just to go back, so on -- on the org chart, Mayfield was in the deputy chief for central operations bureau where -- where Robert Harris is currently indicated; correct?

A.   He was in there in June of 2023.  I'm not specific as -- don't know the specific date, but Chief Bennett was the acting chief at some point in there when Chief Mayfield transferred over to the EMS bureau -- training in the EMS bureau, sorry.

Q.   Okay.  You're saying investigation.

Is this, like, in personnel investigations or are there other types of investigations than what you you're describing?

A.   Personnel investigation.

Q.   Okay.

A.   So again, I asked him to make the determination as to whether or not this needed to go through interactive process meeting or whether it needed to be investigated or both.

Q.   Okay.  And in terms of the investigation is to

CERTIFICATE

STATE OF California        )
                          )  ss.
COUNTY OF Los Angeles    )

I, Nikeya Coleman, Certified Shorthand Reporter, CSR 14562, for the State California, hereby certify:

The foregoing proceeding were taken before me at the time and place therein set forth, at which time the deponent was placed under oath by me;

The testimony of the deponent and all objections made at the time of the examination were recorded stenographically by me and were thereafter transcribed;

The foregoing transcript is a true and correct transcript of my shorthand notes so taken.

I further certify that I am neither Counsel or related to any party to said action nor in any way interested in the outcome thereof.

I further certify that each witness before examination was by me duly sworn to testify the truth, the whole truth, and nothing but the truth.

IN WITNESS WHEREOF, I have hereunto subscribed my hand this 12th day of  December 2025.

_____

Nikeya C. Coleman, CSR 14562

THE SULLIVAN GROUP OF COURT REPORTERS

177