# EXHIBIT C

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CAPTAIN JEFFREY LITTLE, an individual,          )
                                                )
                                                )
                Plaintiff,                      )
                                                )
        vs.                                     )   Case No. 2:24-CV-04353-JLS-PD
                                                )
LOS ANGELES COUNTY FIRE                         )
DEPARTMENT, a public entity, et                 )
al.,                                            )
                                                )
                Defendants.                     )
_____)

VIDEOTAPED REMOTE VIDEOCONFERENCE DEPOSITION OF

CAPTAIN DANIELLE MCMILLON

NOVEMBER 25, 2025

REPORTED BY:  LEESAH TERAN, CSR NO. 12675

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CAPTAIN JEFFREY LITTLE, an        )
individual,                      )
                                 )
                Plaintiff,       )
                                 )
        vs.                      )   Case No. 2:24-CV-04353-JLS-PD
                                 )
LOS ANGELES COUNTY FIRE          )
DEPARTMENT, a public entity, et  )
al.,                             )
                                 )
                Defendants.      )
_____)

        VIDEOTAPED REMOTE VIDEOCONFERENCE DEPOSITION of

CAPTAIN DANIELLE MCMILLON, taken on behalf of

DEFENDANTS, commencing at 10:01 a.m., Tuesday, November

25, 2025, before Leesah Teran, CSR No. 12675.

APPEARANCES OF COUNSEL:

FOR THE PLAINTIFF:

O'MELVENY & MYERS LLP
BY:   MARNI B. ROBINOW, ESQ.
400 South Hope Street
Suite 1900
Los Angeles, California 90071
213.430.6000
mrobinow@omm.com
(Appearing remotely)


FOR THE DEFENDANTS:

LiMANDRI & JONNA LLP
as Special Counsel to THOMAS MORE SOCIETY
BY: PAUL M. JONNA, ESQ.
P.O. BOX 9120
Rancho Santa Fe, California 92067
858.759.9930
pjonna@limandri.com
(Appearing remotely)

ALSO PRESENT:   JESUS ARELLANO, VIDEOGRAPHER

                ARMANDO PEREZ, VIDEOGRAPHER

                ALEX MEEK, CAPTAIN JEFF LITTLE

```
                         I N D E X


WITNESS:   CAPTAIN DANIELLE MCMILLON

EXAMINATION:                              PAGE

BY MR. JONNA                              6, 220

BY MS. ROBINOW                            220


EXHIBITS:

NUMBER                                    PAGE

Exhibit 1  EA 231                         34

Exhibit 2  LAC1495-1498                   42

Exhibit 3  LAC1965-1967                   65

Exhibit 4  EA 232                         77

Exhibit 5  LAC1391-1392                   87

Exhibit 6  LAC373-376                     107

Exhibit 7  Little481                      130

Exhibit 8  LAC65-66                       110

Exhibit 9  LAC30                          158

Exhibit 10 Area Use Maps                  183

Exhibit 11 LAC1597-1600                   191

Exhibit 13 LAC367                         198

Exhibit 14 LAC232-233                     201

Exhibit 15 LAC671-677                     203

Exhibit 18 Little857                      209
```

we would talk often in terms of, like, Oh, what happened for you this week?  What's going on?  What do I need to know.

Julia Kim, I for sure would not have talked to, because, again, it was a Sunday.  And I definitely didn't talk to Renee.  I just -- because I've been involved in so many of these, know how to start an IPM, and so that's why I sent this e-mail to get it initiated, but I generally don't talk to Fernando or Adam on Sundays, unless there's, like, an emergency incident that's happening; in that case, I will reach out to them, but the majority of the time I try to save my requests or communication with them for when they're at work.

Q.   So, at this point, approximately, how many IPMs had you been a part of at the fire department before dealing with Captain Little's request?  I know you said this was your first religious accommodation request that you had dealt with; is that correct?

A.    Yeah.  I mean, 30, 40.

Q.    And those were all, like, medical accommodation requests?

A.    Well, medical, care of a family member, lactation request.  Yeah, medical in terms of, you know, work accommodations for a medical need for a

work-from-home request, a lot -- a lot of maternity ones. 12:41:24

Q. Okay.

A. Maybe in the 50s is -- I've been through -- I've done them quite a bit. 12:41:35

Q. Okay.

And so, looking at this e-mail again, you said that you believe he's willing to work Area 33 in Malibu until July 1 when the flag is no longer flown. He will then return to Will Rogers on July 1. 12:41:50

Do you see that?

A. Yeah. Can you give me a second to read through this whole e-mail?

Q. Sure. Sorry about that. One second.

Can you see that? 12:42:09

A. Yeah. Yeah. Yeah. I have it on the big screen. Okay. I read through it.

What was the question?

Q. Okay.

So, just focusing on the sentence here. It 12:42:54 says, "You believe he's willing to work Area 33 Malibu until July 1 when the flag is no longer flown. He will then return to Will Rogers on July 1."

Do you see that?

A. Yes. 12:43:10

Q.   And is the reason that you were discussing the option of him working at Area 33 in Malibu, because the flag was not being flown in that location?

A.   I believe when I spoke to him that day, this was one of -- so, when I spoke to him that day -- and, again, this was so long ago, so I just want to clarify that this is my -- my best guess as to what we spoke about, but I do know I brought up an IPM, and that that might be the best way to address whether we could accommodate him or not.  And what I normally do an IPM is be an advocate for the person who's looking for accommodations.  So, I explained to him, When we do the IPM, it's best to know what you're looking for.  So, what actual accommodation are you looking for?  And so, I'm guessing, based off this e-mail, when we talked that day, what he had said was, I'd be willing to work Area 33 as an accommodation, or to burn the rest of my benefit time.

Q.   Right.  I'm just trying to get an understanding of what you recall as to why that was an option that was discussed?  Is it because Area 33 was not flying the flag at that time?

A.   So, that would have been an accommodation that he said to me.  So, he would have recommended that for a specific reason.  We were flying the flag at Zuma, which

12:43:10

12:43:25

12:43:44

12:44:06

12:44:24

12:44:42

Area 33 does report to Zuma.

Q.   What about Malibu?

A.   They -- Malibu did not fly the flag at the time of this IPM, correct.

Q.   Okay.

So, does that sound like that's why Area 33 was discussed as an option, because the flag was not flying there?

MS. ROBINOW:  Objection.  Calls for speculation.

THE WITNESS:  Again, I didn't propose any accommodation options to him.  He proposed them to me.

BY MR. JONNA:

Q.   So, just to clarify for my questions today, I'm definitely not asking you to speculate or guess, but I'm trying to understand what you remember from conversations that, obviously, took place a little while ago, so --

A.   Yeah.

Q.   -- I'm trying to get an understanding of what it was, if you know, I'm not asking you to speculate, why it was suggested or discussed that that would be an option?  Is it your understanding that that was proposed because that's a location that you both knew was not flying the flag that month?

12:44:46

12:45:00

12:45:08

12:45:19

12:45:30

12:45:45

A.    I'm a little confused because my guess is it was the least impactful to him, but I'm kind of speculating as to why he would have picked that, because also there's a bunch of other reasons.  It's close to home for him.  And, again, this is all speculation.  Like, it's an area he likes to work.  It's close to home.  It's the -- it's the days of the week he likes.  The flag was only being flown at Zuma at the time, so the area captain in 33 drives around a lot.  I mean I think there were a lot of reasons he may have had to say that Area 33 would have been the best option, but I think it was, like, the least impactful for him.

BY MR. JONNA:

Q.    Is it your understanding that the responsibility of the PPF at Zuma was the responsibility of the Area 33 -- I'm sorry, the Area 30 headquarter captain, not Area 33?

A.    So, it's the responsibility of the captains to make sure the flag was being flown, and that responsibility was falling on Area 30, but also Area 34 would put it up, or Area 33; but because there's three captains there, and not just one, he wouldn't be the sole captain responsible for making sure it was being flown.

Q.    Okay.

REPORTER'S CERTIFICATION


I, Leesah Teran, a certified shorthand reporter, in and for the State of California, Certificate No. 12675, do hereby certify:


That the foregoing proceedings were reported by me stenographically and later transcribed into typewriting under my direction; that the foregoing is a true record of the proceedings taken at that time.


IN WITNESS WHEREOF, I have subscribed my name this 10th day of December, 2025.

_____

Leesah Teran, CSR No. 12675