# EXHIBIT F

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CAPTAIN JEFFREY LITTLE, an
individual,

   Plaintiff,

  vs.

LOS ANGELES COUNTY FIRE
DEPARTMENT, a public entity,
et al.,

   Defendants.

Case No. 2:24-cv-04353-JLS-PD

VIDEOTAPED DEPOSITION OF

ADAM HIGA UEHARA

VIA ZOOM VIDEOCONFERENCE

DECEMBER 1, 2025

Reported by:
COLLEEN M. PETERMAN
CSR 7882
No. 25-J13744199

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CAPTAIN JEFFREY LITTLE, an            )
individual,                           )
                                      )
              Plaintiff,               )
                                      )
       vs.                            )    Case No. 2:24-
                                      )    cv-04353-JLS-PD
LOS ANGELES COUNTY FIRE               )
DEPARTMENT, a public entity,          )
et al.,                               )
                                      )
              Defendants.              )
_____)

DEPOSITION OF ADAM HIGA UEHARA, a

witness herein, taken on behalf of the

plaintiff via Zoom videoconference at

10:00 a.m. on Monday, December 1, 2025,

before Colleen M. Peterman, CSR 7882.

THE SULLIVAN GROUP OF COURT REPORTERS

2

APPEARANCES (All Participants Appeared Remotely):

For Plaintiff:

      LIMANDRI AND JONNA LLP
      BY PAUL JONNA
         JOSHUA YOUNGKIN
         WILLIAM DUKE
      16236 San Dieguito Road, Suite 3-15
      Rancho Santa Fe, California 92091
      858.759.9930
      858.759.9938 Fax
      pjonna@limandri.com
      jyoungkin@limandri.com
      wduke@limandri.com

For Defendants:

      O'MELVENY & MYERS LLP
      BY RYNE M. CANNON
         KYLE GROSSMAN
      400 South Hope Street, Suite 1900
      Los Angeles, California 90071
      213.430.6000
      rcannon@omm.com
      kgrossman@omm.com

Also Present:

      Jesus Arellano-Ortiz, Videographer

      Jeffrey Little

```
                           I N D E X

WITNESS:  ADAM HIGA UEHARA

EXAMINATION BY                                        PAGE

MR. JONNA                                               9




                         E X H I B I T S

PLAINTIFF'S              DESCRIPTION                  PAGE
```

| PLAINTIFF'S | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 1 | Organizational chart for the Fire Department | 17 |
| Exhibit 2 | Performance reviews | 38 |
| | (Exhibits 3 and 4 not used) | |
| Exhibit 5 | Motion by Supervisor Janice Hahn and Supervisor Lindsey Horvath dated March 7, 2023 | 49 |
| Exhibit 6 | Board of Supervisors' flag policy dated 9-16-97 | 58 |
| Exhibit 7 | Email dated 6-6-2023 to Adam Uehara from Fernando Boiteux | 67 |
| Exhibit 8 | Progress Pride flag flowchart | 73 |
| Exhibit 9 | EA-231 | 76 |
| | (Exhibit 10 not used) | |
| Exhibit 11 | Email dated 6-5-2023 to Arthur Lester from Adam Uehara | 81 |
| Exhibit 12 | Email dated June 18, 2023, to Kazuko Takahashi and Renee Nuanes-Delgadillo from Julia Kim | 83 |
| Exhibit 13 | Email dated June 18, 2023, to Renee Nuanes-Delgadillo from Julia Kim | 102 |

THE SULLIVAN GROUP OF COURT REPORTERS

| PLAINTIFF'S | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 14 | Email dated 6-19-2023 to Renee Nuanes-Delgadillo from Fernando Boiteux | 104 |
| Exhibit 15 | Email dated 6-19-2023 to Adam Uehara and Fernando Boiteux from Julia Kim | 109 |
| Exhibit 16 | Text messages between Adam Uehara, Dani McMillon, and Jeffrey Little | 137 |
| Exhibit 17 | Email dated 6-20-2023 to Julia Kim and Fernando Boiteux from Renee Nuanes-Delgadillo | 134 |
| Exhibit 18 | Email dated 6-21-2023 to various people from Arthur Lester | 147 |
| Exhibit 19 | Text messages between various people | 149 |
| Exhibit 20 | Email dated June 21, 2023, to Adam Uehara from Fernando Boiteux | 255 |
| Exhibit 21 | Email dated 6-22-2023 to Adam Uehara from Jeffrey Little | 263 |
| Exhibit 22 | County policy of equity report/notification form | 269 |
| Exhibit 23 | Email dated 6-21-2023 to Adam Uehara from Jon O'Brien | 278 |
| Exhibit 24 | Teams invite | 287 |
| Exhibit 25 | Text messages with Chief Fernando | 288 |
| Exhibit 26 | Text messages with Josh | 289 |
| | (Exhibit 27 not used) | |
| Exhibit 28 | Direct order dated June 22nd, 2023, to Captain Jeff Little from Fernando Boiteux | 295 |

| PLAINTIFF'S | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 29 | Email dated June 22, 2023, to Julia Kim and Fernando Boiteux from Adam Uehara | 299 |
| Exhibit 30 | CPOE complaint filed by Captain Little | 308 |
| Exhibit 31 | Grievance form filed by Captain Little dated 6-22-23 | 312 |
| | (Exhibit 32 not used) | |
| Exhibit 33 | Deputy chief request for investigation or written statement | 315 |
| Exhibit 34 | Email dated 6-26-2023 to William Mayfield from Fernando Boiteux | 316 |
| | (Exhibits 35 and 36 not used) | |
| Exhibit 37 | Email dated June 30, 2023, to Amber Sturdivant and Julia Kim from Fernando Boiteux | 318 |
| Exhibit 38 | Email dated July 13, 2023, to Jeffrey Little from Renee Nuanes-Delgadillo | 128 |
| | (Exhibit 39 not used) | |
| Exhibit 40 | Patient status report | 322 |
| | (Exhibit 41 not used) | |
| Exhibit 42 | Email dated August 21, 2023, to William Mayfield from Fernando Boiteux | 327 |
| Exhibit 43 | Grievance form filed by Jeffrey Little dated 6-22-23 | 340 |
| | (Exhibit 44 not used) | |
| Exhibit 45 | Briefing findings regarding CPOE complaint | 341 |
| | (Exhibit 46 not used) | |

| PLAINTIFF'S | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 47 | Investigation report dated March 19, 2024 | 342 |
| Exhibit 48 | Email dated May 8, 2024, to Julia Kim and Amber Sturdivant from Renee Nuanes-Delgadillo | 345 |
| Exhibit 49 | Email dated May 23, 2024, to Julia Kim from Adam Uehara | 347 |
| Exhibit 50 | EA-232 | 353 |
| Exhibit 51 | EMM-9 | 360 |
| | (Exhibit 52 not used) | |
| Exhibit 53 | Email dated June 3, 2024, to Renee Nuanes-Delgadillo from Jeff Little | 369 |
| | (Exhibits 54 through 57 not used) | |
| Exhibit 58 | Punitive action letter | 365 |
| Exhibit 59 | Email dated December 3, 2024, to Jeff Little from Greg Crum | 367 |
| | (Exhibits 60 through 64 not used) | |
| Exhibit 65 | Email dated 5-15-2025 to Jeffrey Little from Gregory Crum | 167 |
| Exhibit 66 | Notice of instruction | 305 |
| | (Exhibit 67 not used) | |
| Exhibit 68 | Interactive process meeting worksheet for Jeffrey Little dated 6-19-2023 | 224 |

THE SULLIVAN GROUP OF COURT REPORTERS

the deputy chief, that we would move forward with.

BY MR. JONNA:

Q. So it's not your understanding that someone from -- that Ms. Delgadillo, that Ms. McMillon, someone from the Fire Department told Captain Little yes, we can give you an accommodation; here's your accommodation? That's not your understanding?

MR. CANNON: Objection. Misstates testimony.

THE WITNESS: No. Only the deputy chief has the approval to move personnel. And as you can see in that last line, she even discussed that she's going to discuss with DHR religious accommodations in general and for this particular case.

BY MR. JONNA:

Q. Right. But does it anywhere say in this email that this was a tentative accommodation or a proposed accommodation other than that line that she's going to follow up with DHR and get further guidance? Do you see anything that suggests that this was not a agreed-upon accommodation for Captain Little?

MR. CANNON: Objection. Speculation.

THE WITNESS: It was that Captain Little

is okay with it, but we still had to go through -- do our due diligence with DHR, County Counsel, and get approval from our chain of command of the deputy fire chief.

BY MR. JONNA:

Q.   So it's not your understanding that after this first IPM meeting, the decision was already made to station Captain Little at area 33 through June 30th, 2023?

MR. CANNON:   Objection.   Misstates testimony, foundation, vague.

THE WITNESS:   No.   As I previously stated, that we would need DHR, County Counsel, and the deputy fire chief, who approves movement.   This was the proposed plan, and he was good with the proposed plan.   Now we just needed everyone else on board.

BY MR. JONNA:

Q.   Okay.   I'm going to show you Exhibit 16, which is a text message chain with you, Mr. Uehara, Dani McMillon, and Captain Little.   And the Bates stamp here is LITTLE.1079, and then the second -- sorry.   The first page -- it's a three-page document -- is LITTLE.1079, and then the second two are LITTLE.481 and 482.

(Exhibit 16 referenced)

13:19:24
13:19:36
13:19:48
13:20:01
13:20:17
13:20:38

THE SULLIVAN GROUP OF COURT REPORTERS

137

BY MR. JONNA:

Q.   Starting at the top here -- whoops.   This is dated June 19th, 2023, 5:49 p.m.   And Ms. McMillon states to Captain Little I was able to accommodate moving you to area 33 on both Thursday and Saturday.   Also A15 on Tuesday, 6-27, in place of Sunday, 6-25.   Pulled you out of Wednesday, the 21st, using a recall exemption.

Do you see that?

A.   Yes.

Q.   Would you agree that this actually looks like decisions were made about where to place Captain Little in response to his accommodation request?

MR. CANNON:   Objection.   Vague, foundation, calls for legal opinion.

THE WITNESS:   I necessarily wouldn't come to that conclusion.   There was movements being made to prepare for such approval through the process, but just because we're doing some preplanning and making things happen doesn't mean that it is typically, generally approved.

BY MR. JONNA:

Q.   So your testimony, again, under oath, is that as of June 19th, 2023, when Ms. McMillon sent

13:20:38
13:20:55
13:21:09
13:21:18
13:21:31
13:21:41

this text directly to Captain Little, with you on the chain, that she wasn't already authorized to move him to area 33 and these other assignments discussed in this message.

Is that your testimony?

MR. CANNON:  Objection.  Vague, calls for legal opinion, lacks foundation, asked and answered.

THE WITNESS:  She does not have the authority to accommodate movement.  She's just facilitating movements.  So maybe she used the wrong vernacular on that.

BY MR. JONNA:

Q.  Did you ever respond on this chain, as far as you remember, that no, no, no; hold on, Ms. McMillon; this isn't finalized; we've got to -- we've got to get approval from someone else stating your current assignment, Captain Little?  Did you ever do anything like that?

A.  Can we scroll down.

Q.  Well, do you remember?  I'm going to scroll down, but do you remember if that ever happened?

A.  I don't recall.

Q.  Okay.  So Captain Little responds.  This is his text message chain.  He responds, saying

13:21:46

13:21:59

13:22:10

13:22:21

13:22:29

13:22:37

thanks but Macko was good to switch recalls on 6-21. I can work area 17 to not force a recall.  And then Dani McMillon responds oh, yeah.  Sorry.  I forgot. Switched that.

Again, this seems to me to be the reasonable way to interpret this to me -- but I want to get your interpretation -- is that decisions were made --

THE REPORTER:  I'm sorry.  I'm sorry.  I'm sorry.  Could I get you to slow down a little bit.

MR. JONNA:  Sorry.  What's the last thing you got down?  I'm sorry.

(Record read)

BY MR. JONNA:

Q.  Seems to me that decisions were already being made authorizing transfers in response to Captain Little's accommodation request.

Does this chain refresh your memory about that now, sir?

MR. CANNON:  Objection.  Calls for a legal opinion, calls for speculation, vague.

THE WITNESS:  No.

BY MR. JONNA:

Q.  Okay.  Let me continue down here.  In fact, Ms. McMillon says that she -- she says here

double-check your TeleStaff, but we should be good.          13:23:49

What is TeleStaff?

A.   TeleStaff is the recording of where all the operational people are placed.

Q.   So why would she tell him to check his          13:24:01
TeleStaff?  What would -- what would you know when you check TeleStaff?

MR. CANNON:  Objection.  Calls for speculation, lacks foundation, vague.

THE WITNESS:  Unknown.          13:24:15

BY MR. JONNA:

Q.   Well, I mean --

A.   I don't know.

Q.   Do you have access to TeleStaff?

A.   Yes.          13:24:20

Q.   What does it show when you log in?

A.   Shows the roster and records of all the personnel, the history, and scheduling.

Q.   Okay.  So then would you agree that the          13:24:32
reason she said to check his TeleStaff would be to confirm that the changes that were discussed here are reflected on TeleStaff?

MR. CANNON:  Objection.  Calls for speculation, lacks foundation.

THE WITNESS:  I don't know.          13:24:44

BY MR. JONNA:

Q. Would you agree that it seems pretty clear that Ms. McMillon already made changes to his schedule to accommodate him in response to the accommodation request?

MR. CANNON: Objection. Assumes facts not in evidence, calls for speculation, lacks foundation.

THE WITNESS: I don't know. But Ms. McMillon doesn't have authority to schedule move accommodation.

BY MR. JONNA:

Q. So is it your testimony that this was not authorized, or is it your testimony that you just don't remember as you sit here today?

A. I don't remember exactly the movement. But it wasn't fully authorized because, as that email stated, that Renee would have to check with DHR, County Counsel, and we'd still have the deputy fire chief that needs to ultimately approve this full schedule change.

Q. But you do remember in that same document Renee also referred to an accepted accommodation.

Do you remember that?

MR. CANNON: Objection. Assumes facts not

in evidence, calls for legal opinion.    13:25:48

THE WITNESS:  "Accepted" means that if we were to get approval, that Captain Little would be good with it.

BY MR. JONNA:    13:25:56

Q.  Okay.  Let's see what else is on this chain here.  Dani McMillon, I'm glad we could find a solution.  This is June 19th, 2023.  And then on June 20th, she says we need to schedule another IPM follow-up.  Can you do tomorrow at 2:30, which would    13:26:12 be June 21.

Do you see that?

A.  Yes.

Q.  Okay.  So is this consistent with your recollection that there was an initial agreement and    13:26:21 that there was a follow-up discussion about that agreement after getting input from DHR?

A.  Agreement was never made.  It was a tentative agreement until it was approved by DHR, County Counsel, and the deputy fire chief.  This was    13:26:34 preparatory work to if all those pieces were in place, that it would get approved; that Captain Little would be good --

(Simultaneous speakers)

THE SULLIVAN GROUP OF COURT REPORTERS

BY MR. JONNA:

Q.   I'm sorry.  I didn't mean to interrupt you.  Say that last part again.  I'm sorry.

A.   That Captain Little would be good with these movements.  And we were trying to work forward to try to help Captain Little as if it were to get approved by the chain of command, DHR, and the deputy fire chief and County Counsel, that we could move forward.

Q.   So if it was a tentative agreement, why was Ms. McMillon talking about where he was being moved to and confirming that those moves were actually reflected in TeleStaff?

MR. CANNON:  Objection.  Lacks foundation, calls for speculation, assumes facts not in evidence.

THE WITNESS:  I don't know why Ms. McMillon wrote that, but really she just tried to do her best to help out Captain Little as a preplan once this thing would get approved that we can move forward.

BY MR. JONNA:

Q.   Is it possible that you're just mistaken and that in fact there was an agreement reached and the fact that you're copied on these text messages

**REPORTER'S CERTIFICATE**

I, COLLEEN M. PETERMAN, CSR No. 7882, Certified Shorthand Reporter, certify:

That the foregoing proceedings were taken before me at the time and place therein set forth, at which time the witness was put under oath by me;

That the testimony of the witness, the questions propounded, and all objections and statements made at the time of the examination were recorded stenographically by me and were thereafter transcribed;

That a review of the transcript by the deponent was requested;

That the foregoing is a true and correct transcript of my shorthand notes so taken;

I further certify that I am not a relative or employee of any attorney of the parties, nor financially interested in the action.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct.

Dated this 9th day of December, 2025.

_____

COLLEEN M. PETERMAN, CSR No. 7882