# EXHIBIT G

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA


CAPTAIN JEFFREY LITTLE, AN          )
INDIVIDUAL,                          )
                                     )
          Plaintiff,                 )
                                     )
     vs.                             )    No. 2:24-cv-04353-JLS-PD
                                     )
LOS ANGELES COUNTY FIRE              )
DEPARTMENT, A PUBLIC ENTITY, ET      )
AL.,                                 )
                                     )
          Defendants.                )
_____)


        VIDEOTAPED DEPOSITION OF LAUREN GOTTSCHALK,

taken on behalf of the plaintiff, via videoconference,

commencing at 8:05 a.m., Thursday, December 4, 2025,

before Diana L. Porter, Certified Shorthand Reporter

No. 12729.

APPEARANCES:

FOR PLAINTIFF:

        LIMANDRI & JONNA LLP
        BY:  JOSHUA A. YOUNGKIN, ESQ.
        P.O. Box 9120
        Rancho Santa Fe, California 92067
        (858)759-9930
        jyoungkin@limandri.com

FOR DEFENDANTS AND DEPONENT:

        O'MELVENY & MYERS LLP
        BY:  ALEXANDRA STERLING MEEK, ESQ.
        400 South Hope Street
        Suite 1900
        Los Angeles, California 90071
        (213)430-6000
        ameek@omm.com


ALSO PRESENT:

        MARCELA SANDOVAL, VIDEOGRAPHER

THE SULLIVAN GROUP OF COURT REPORTERS

2

INDEX TO PROCEEDINGS


EXAMINATION(S)

By Mr. Youngkin . . . . . . . . . . . . . . . . . . . . . . . . .6




          INDEX TO INSTRUCTIONS NOT TO ANSWER


          PAGE          LINE
            17            23
           132            19
           160            25

```
                          INDEX TO EXHIBITS


  EXHIBIT              DESCRIPTION                      PAGE

  EXHIBIT 1      Lifeguard area use maps                27

  EXHIBIT 2      EA-231                                 73
                 (BATES STAMPED LAC 36 - 37)

  EXHIBIT 3      El Segundo text message                81
                 (BATES STAMPED LAC 1499)

  EXHIBIT 4      Lester CPOE report                    169
                 (BATES STAMPED LAC 175 - 183)

  EXHIBIT 5      Interview of Lauren Gottschalk July   183
                 5, 2023

  EXHIBIT 6      Interview of Ms. Gottschalk August    208
                 23, 2023

  EXHIBIT 7      Interview of Kevin Graner August 24,  240
                 2023

  EXHIBIT 9      Jeff Little interview September 21,    279
                 2023

  EXHIBIT 10     Document described as death threat    284
                 letter
```

**THE SULLIVAN GROUP OF COURT REPORTERS**

4

THE DEPONENT:  I mean, the ocean lifeguard rank is not guaranteed work in the off time.  So I'm sorry if I assumed what you were asking, but I -- I assumed you were asking about mentors that helped me get to this spot.

I'm just -- I'm not sure.  We don't -- you don't necessarily need a mentor to promote.  You just have to have a good work ethic.

BY MR. YOUNGKIN:

Q   Okay.  So then, again, I do appreciate the clarification, yes.  So the way to go from an ocean lifeguard to an ocean lifeguard specialist, you're saying, is largely, again, by your work ethic; correct?

A   I would say that, yes.

Q   Okay.  And, again, just to be clear, you're saying that there was nobody in particular who took an interest in your career to help you along to become -- to go from ocean lifeguard to ocean lifeguard specialist; correct?

MS. MEEKS:  Vague.  Misstates prior testimony.

THE DEPONENT:  Yeah.  I'm just not sure what you mean by that.

///

BY MR. YOUNGKIN:

Q    Do you recall doing a podcast interview in 2023?

A    Yes.

Q    And what was that podcast interview about?

A    It was about being a lifeguard.

Q    What was the name of the podcast?

A    I don't remember.

Q    Okay.  Do you remember the name of the hosts?

A    Can you just clarify what podcast we're talking about just so I can --

Q    Yes, I can.  This would have been the -- let's see here -- the -- the "Live Learn Survive - Help Yourself - Help Others" podcast.

A    Okay.  Yeah.  The hosts would have been Maxi, Trent Maxwell, and I don't remember Leigh's last name.

Q    Was it Leigh Mason?

A    Yes.

Q    Okay.  Do you recall how you were asked to be on that podcast interview?

A    Yes.

Q    And what -- how was that?

A    They -- those two hosts approached me at

Venice Beach.  I met them.  And then later on, they asked me to be on their podcast.

Q    When they approached you, was that in the year 2023, if you recall?

A    It may have been.  I'm not -- I'm actually not sure.  But, oh, I don't know.

Q    Yeah.  Do you recall discussing with Maxi and Ms. Mason the kinds of things that you do on your job?

A    I'm sure I did discuss it, but I never listened to it back, so I don't remember what was said.

Q    Okay.  Well, we can come back to that later.

Back to the subject of your discussion with Captain Little on June 21, 2023, regarding the Progress Pride Flag.  I think we -- I think you testified that he had said to you that he was going to take them down.  Do you recall that discussion, you and I?

A    Yes.

Q    Okay.  And I believe that you testified that he asked you if you would be offended if he were to take them down and that you said that you would -- you're fine with them.  Does that sound

accurate?

MS. MEEKS:  Misstates prior testimony.

THE DEPONENT:  He did not say would I be offended.

BY MR. YOUNGKIN:

Q    What did he say?

A    I believe he said would I be okay with it.

Q    Okay.  And what did you understand him to mean by that?

A    Well, would you be okay with that is asking if I would be okay with it.

Q    Okay.  But specifically, what did you understand him to mean by okay?

A    I'm not sure.  I'm not him, so I think I'd have to speculate what he meant by that.

Q    I'm just asking you how -- what did you believe he was asking you when you responded to him, "I'm fine with that"?

A    I don't know.  Would I be upset?  I'm not sure.  Again, this is speculative what I'd assume he'd mean, but I guess would I be upset by it.

Q    Okay.  And then by saying you're -- "I'm fine with it up," did you -- did you answer whether you would be upset or not?

A    No.  Because he didn't ask me if I would be

upset.  He said would I be okay.  So I just said, "I'm fine with it up," so it's not really quite answering his question.

Q    Is there a particular reason why you didn't quite answer his question?

A    Yeah, probably to be non-confrontational.

Q    Did you feel that there would be a confrontation if you were to answer differently?

MS. MEEKS:  Hypothetical.

BY MR. YOUNGKIN:

Q    I'm just not sure.  I just don't want to take that chance.

So, to be clear, you felt that there was a chance of confrontation if you answered differently than you did; correct?

MS. MEEKS:  Misstates prior testimony. Calls for speculation.

THE DEPONENT:  I did not say that.

BY MR. YOUNGKIN:

Q    What did you say?

A    I said I didn't want there to be a chance at confrontation.  No opinion if there was a chance or not.

Q    How would there be a chance?

MS. MEEKS:  Calls for speculation.

Incomplete hypothetical.

THE DEPONENT:  I'm not sure.  I just -- I don't know Mr. Little well, so I didn't want there to be any problems.

BY MR. YOUNGKIN:

Q    Did you ask any questions of him in that context about whether there could be a confrontation if you were to answer differently?

A    No.

Q    Do you know why?

A    Why did I not ask any other questions?

Q    Yes.  Yes.

A    No.  I don't know why.

Q    In your experience as an OLS, have you ever before had a confrontation with a work colleague?

MS. MEEKS:  Vague.

THE DEPONENT:  Not that I can remember.

BY MR. YOUNGKIN:

Q    Would you say that that's something you seek to avoid generally, then, as to your work colleagues, is confrontation?

MS. MEEKS:  Vague.

THE DEPONENT:  I suppose.

BY MR. YOUNGKIN:

Q    Have you ever been subject to discipline?

DEPOSITION OFFICER'S CERTIFICATE

STATE OF CALIFORNIA          )
                             )     ss.
COUNTY OF SAN BERNARDINO     )

     I, Diana L. Porter, hereby certify:

     I am a duly qualified Certified Shorthand Reporter in the State of California, holder of Certificate Number CSR 12729 issued by the Court Reporters Board of California and which is in full force and effect.  (Fed. R. Civ. P. 28(a)).

     I am authorized to administer oaths or affirmations pursuant to California Code of Civil Procedure, Section 2093(b) and prior to being examined, the witness was first duly sworn by me.  (Fed. R. Civ. P. 28(a), 30(f)(1)).

     I am not a relative or employee or attorney or counsel of any of the parties, nor am I a relative or employee of such attorney or counsel, nor am I financially interested in this action.  (Fed. R. Civ. P. 28).

     I am the deposition officer that stenographically recorded the testimony in the foregoing deposition and the foregoing transcript is a true record of the testimony given by the witness.  (Fed. R. Civ. P.

30(f)(1)).

Before completion of the deposition, review of the transcript [xx] was [  ] was not requested.  If requested, any changes made by the deponent (and provided to the reporter) during the period allowed, are appended hereto.  (Fed. R. Civ. P. 30(e)).

Dated: December 16, 2025

_____
DIANA L. PORTER, CSR NO. 12729