Charles S. LiMandri, SBN 110841
 cslimandri@limandri.com
Paul M. Jonna, SBN 265389
 pjonna@limandri.com
Jeffrey M. Trissell, SBN 292480
 jtrissell@limandri.com
Joshua A. Youngkin, SBN 332226
 jyoungkin@limandri.com
William T. Duke, SBN 361823
 wduke@limandri.com
LiMANDRI & JONNA LLP
 *as Special Counsel to*
 THOMAS MORE SOCIETY
P.O. Box 9120
Rancho Santa Fe, CA 92067
Telephone: (858) 759-9930
Facsimile: (858) 759-9938

*Attorneys for Plaintiff
Captain Jeffrey Little*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAPTAIN JEFFREY LITTLE, <br><br> Plaintiff, <br><br> v. <br><br> LOS ANGELES COUNTY, et al. <br><br> Defendants. | **Case No.: 2:24-cv-4353-JLS-PD** <br><br> **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** <br><br> Judge: Hon. Josephine L. Staton <br> Courtroom: 8A <br> Date: May 8, 2026 <br> Time: 10:30 a.m. <br><br> Action Filed: May 24, 2024 |

# PUBLIC / REDACTED VERSION

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................7

LEGAL STANDARD..........................................................................................8

ARGUMENT ......................................................................................................8

    I.    Defendants are Not Entitled to Summary Judgment on Little's Title VII And FEHA Claims of Religious Discrimination...................................................................................8

        A.    Little Has Established a Prima Facie Case of Religious Discrimination under Title VII and FEHA. ..............9

            1.    There is no dispute as to the bona fide nature of Little's religious beliefs. The County policy specifically required Captain Little to raise the PPF or ensure another did so, thereby creating a conflict with his religion..............................................10

                a.    No challenge to sincerity of beliefs. ....................10

                b.    The County ordered Little to raise and tend to the PPF, granted and then revoked his accommodation and thereafter refused to accommodate him..............11

                c.    Little neither violated his beliefs, nor are his beliefs conclusory. ...................................12

                d.    Title VII and FEHA protect belief and practice. The County required affirmative action by Little violative of his religion..........................................................13

            2.    The County disciplined Little because of his religion..........................................................14

        B.    Accommodating Little Would Not Have Been an Undue Hardship to the County. ................................15

        C.    The County Failed to Protect Little from Discrimination in Violation of FEHA. ...................18

    II.    The County is Not Entitled to Summary Judgment on Little's Claim for Retaliation. ...........................................18

III.    The County is not Entitled to Summary Judgment on Little's Constitutional Claims. ..........................................21

    A.    Little's Free Exercise Claim. .................................................21

    B.    Qualified Immunity..............................................................25

    C.    *Monell* Liability. ................................................................26

IV.    Plaintiff States a Valid Claim for Punitive Damages. ........................27

CONCLUSION...............................................................................................28

CERTIFICATE OF COMPLIANCE.................................................................28

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ...................................................................................8

*Bates v. Pakseresht*,
146 F.4th 772 (9th Cir. 2025)....................................................................23

*Bolden-Hardge v. Office of Cal. State Controller*,
63 F.4th 1215 (9th Cir. 2023)....................................................12, 13, 15, 16, 17

*Bostock v. Clayton Cty.*,
590 U.S. 644 (2020) ...................................................................................8

*Burwell v. Hobby Lobby Stores, Inc.*,
573 U.S. 682 (2014) .................................................................................13

*Cal. Fair Emp't & Hous. Comm'n v. Gemini Aluminum Corp.*,
122 Cal. App. 4th 1004 (2004)..................................................................19

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ...................................................................................8

*Christie v. Iopa*,
176 F.3d 1231 (9th Cir. 1999)....................................................................27

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*,
508 U.S. 520 (1993) ..............................................................21, 22, 23, 24, 25

*Civil Rights Dep't v. Grimmway Enters., Inc.*,
800 F. Supp. 3d 1084 (E.D. Cal. 2025)......................................................27

*Does 1-11 v. Bd. of Regents of Univ. of Colo.*,
100 F.4th 1251 (10th Cir. 2024).................................................................22

*DPR Const. v. Shire Regenerative Med., Inc.*,
204 F. Supp. 3d 1118 (S.D. Cal. 2016) .......................................................8

*E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*,
575 U.S. 768 (2015) ......................................................................11, 12, 20

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Ed.*,
82 F.4th 664 (9th Cir. 2023).......................................................22, 23, 24, 26

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*,
618 F.3d 1025 (9th Cir. 2010) .....................................................................8

*Groff v. DeJoy*,
   600 U.S. 447 (2023) .............................................................................15, 16, 17

*Hallett v. Morgan*,
   296 F.3d 732 (9th Cir. 2022)....................................................................26

*Hardwick v. Cty. of Orange*,
   844 F.3d 1112 (9th Cir. 2017)..................................................................25

*Heller v. EBB Auto Co.*,
   8 F.3d 1433 (9th Cir. 1993).................................................................14, 16

*In re Caneva*,
   550 F.3d 755 (9th Cir. 2008).......................................................................8

*Masterpiece Cakeshop, Ltd. v. Colo. C.R. Comm'n*,
   584 U.S. 617 (2018) .............................................................21, 22, 23, 25

*Obergefell v. Hodges*,
   576 U.S. 644 (2015) ..................................................................................23

*Petersen v. Snohomish Reg'l Fire & Rescue*,
   150 F.4th 1211 (9th Cir. 2025)..................................................................16

*Plumeau v. Sch. Dist. No. 40 Cty. of Yamhill*,
   130 F.3d 432 (9th Cir. 1997).....................................................................26

*Ray v. Henderson*,
   217 F.3d 1234 (9th Cir. 2000)...................................................................16

*Smith v. Wade*,
   461 U.S. 30 (1983) .....................................................................................27

*Steiner v. Showboat Operating Co.*,
   25 F.3d 1459 (9th Cir. 1994).....................................................................18

*Tandon v. Newsom*,
   593 U.S. 61 (2021) .....................................................................................22

*Thomas v. Rev. Bd. of Ind.*,
   450 U.S. 707 (1981) ...................................................................................22

*Tiano v. Dillard Dep't Stores, Inc.*,
   139 F.3d 679 (9th Cir. 1998)..................................................................9, 15

*Tolle v. Rockwell Collins Control Techs., Inc.*,
   20-cv-174, 2020 WL 3316984 (E.D. Va. 2020)....................................10, 12

*Yartzoff v. Thomas*,
   809 F.2d 1371 (9th Cir. 1987)...................................................................19

PLAINTIFF'S MEMO. OF POINTS & AUTHORITIES
IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

*Ziglar v. Abbasi*,
528 U.S. 120 (2017) ..................................................................................25

**Statutes & Rules**

42 U.S.C. §1983 ......................................................................................27

42 U.S.C. §2000e(b) ................................................................................8

42 U.S.C. §2000e(f) .................................................................................8

42 U.S.C. §2000e(j) ............................................................................13, 15

42 U.S.C. §2000e-2(a)(1) ........................................................................8

42 U.S.C. §2000e-2(m) ...........................................................................8

Cal. Civ. Code §3294(a) .........................................................................27

Cal. Gov. Code §12940(j)(3) ..................................................................27

Cal. Gov. Code §12940(k) .....................................................................18

Fed. R. Civ. P. 56(a) ...............................................................................8

PLAINTIFF'S MEMO. OF POINTS & AUTHORITIES
IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**INTRODUCTION**

Plaintiff Captain Jeffrey moved for summary judgment on March 6, 2026. [ECF Dkt. #118]. Defendants County of Los Angeles ("County") and the individually named defendants Chief Fernando Boiteux, Chief Adam Uehara, and Chief Arthur Lester (collectively, "Defendants") also moved for summary judgment on that date. [ECF Dkt. #114]. Little submits this memorandum in opposition to Defendants' motion for summary judgment.

Little is employed as a Captain in the Lifeguard Division of the County's Fire Department. [Pl.'s SUMF ¶¶1, 3].[1] He has served with distinction for more than two decades. [Pl.'s SUMF ¶¶1-4]. Because of his adherence to traditional Christian beliefs concerning marriage and sexuality, the requirements for his job came into conflict with his religion when the County issued a directive to celebrate Pride Month through the flying of the Progress Pride Flag ("PPF") at most County facilities. [Pl.'s SUMF ¶¶6-8, 11, 13, 19-20, 34]. Little timely notified his employer of the conflict and requested a religious accommodation, but the County—after initially granting him an accommodation on June 19, 2023—revoked the accommodation and refused to grant him any accommodation in June 2024, a denial that continues to the present. [Pl.'s SUMF ¶¶36, 59, 65, 131, 140, 201, 211, 216]. The County then disciplined Little in retaliation. [Pl.'s SUMF ¶¶162, 167, 179, 184, 200]. Little therefore sues Defendants under Title VII of the Civil Rights Act of 1964 ("Title VII"), the California Fair Employment and Housing Act ("FEHA"), and the United States and California constitutions.

///

///

---

[1] "Pl.'s SUMF" refers to Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law in Support of Motion for Partial Summary Judgment appearing at ECF Dkt. #118-2. "Pl.'s Resp. to SUMF" refers to the Plaintiff's response to Defendants' statement of uncontroverted facts filed concurrently with this memorandum.

## LEGAL STANDARD

Summary judgment may only be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1031 (9th Cir. 2010) (quoting *In re Caneva*, 550 F.3d 755, 760 (9th Cir. 2008)). Courts must draw all reasonable inferences in favor of the nonmoving party and may not weigh evidence or assess credibility. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The burden rests on the party seeking summary judgment to demonstrate that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986); *see DPR Const. v. Shire Regenerative Med., Inc.*, 204 F. Supp. 3d 1118, 1124 (S.D. Cal. 2016) ("If the moving party fails to discharge its initial burden, the court must deny summary judgment and need not consider the nonmoving party's evidence.") (citation omitted).

## ARGUMENT

**I.    Defendants are Not Entitled to Summary Judgment on Little's Title VII And FEHA Claims of Religious Discrimination.**

An employer may not discriminate against an employee "because of such individual's … religion." 42 U.S.C. §2000e-2(a)(1); *see id.* §2000e(b), (f). "The term 'religion' includes *all aspects of religious observance and practice, as well as belief*[.]" 42 U.S.C. §2000e(j) (emphasis added). An employer violates Title VII if it takes adverse action against an employee *because of* a protected trait. *Bostock v. Clayton Cty.*, 590 U.S. 644, 656-60 (2020) ("It doesn't matter if other factors … contributed to the decision."). An employment practice is unlawful if the plaintiff shows that religion was "a motivating factor" for the decision. 42 U.S.C. §2000e-2(m); *Bostock*, 590 U.S. at 656-57.

///

**A.    Little Has Established a Prima Facie Case of Religious Discrimination under Title VII and FEHA.**

The undisputed facts demonstrating both Little's sincerely held religious beliefs, and the County's failure to accommodate his religious observance and practice after initiating its policy to fly the PPF in June, present an unrebutted prima facie case of religious discrimination. At the very least, there is a genuine dispute of material fact to the same effect. To establish a prima facie case, the employee must show "(1) [he] had a bona fide religious belief, the practice of which conflicted with an employment duty; (2) [he] informed [his] employer of the belief and conflict; and (3) the employer threatened [him] or subjected [him] to discriminatory treatment, including discharge, because of [his] inability to fulfill the job requirements." *Tiano v. Dillard Dep't Stores, Inc.*, 139 F.3d 679, 681 (9th Cir. 1998).

None of the following facts are subject to valid dispute. Little is a devout Christian with traditional beliefs about marriage and sexuality. [Pl.'s Resp. to SUMF ¶27; *see* Pls.' SUMF ¶¶6-9]. His religion conflicts with the County's policy, as set forth in EA-231 and later EA-232, both of which require flying of the PPF at County facilities. Specifically, Little cannot engage in the expressive conduct of raising the PPF (and thereby implicitly endorsing the PPF's message) or otherwise be responsible for ensuring it is flown without violating the tenets of his faith. [Pl's Resp. to SUMF ¶¶27, 29, 32-33, 35; Pl.'s SUMF ¶¶10-15]. Captain Little notified the County that its policy created a conflict with his religion. [Pl.'s Resp. to SUMF ¶27]. The County initially offered him an accommodation, but almost immediately thereafter revoked it and then refused to provide any further accommodation. [Pl.'s SUMF ¶¶65-69, 78].

///

///

///

///

PLAINTIFF'S MEMO. OF POINTS & AUTHORITIES
IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**1.  There is no dispute as to the bona fide nature of Little's religious beliefs. The County policy specifically required Captain Little to raise the PPF or ensure another did so, thereby creating a conflict with his religion.**

**a.  No challenge to sincerity of beliefs.**

First, there is no evidence in the record to dispute the bona fide nature of Little's religious beliefs, whether as to the sincerity of his Christian faith or that his faith includes traditional beliefs and practices about marriage and sexuality that are at odds with the values expressed by the PPF. Little has not stated his beliefs in any "conclusory fashion." To the contrary, he explained his beliefs at length.[2] [Pl's SUMF ¶¶6-12, 29-30, 36]. The facts establish that, at the time of Little's request, the County accepted the sincerity of his beliefs and that they conflicted with his new duty to raise the PPF or ensure the PPF was raised by a subordinate. The County conducted an IPM at which it offered Little an accommodation he accepted but the County subsequently reneged. [Pl.'s SUMF ¶¶65-69, 78]. At a minimum these facts give rise to an issue of disputed material fact which requires denial of Defendants' motion for summary judgment.

The present case is wholly distinguishable from *Tolle v. Rockwell Collins Control Techs., Inc.*, 20-cv-174, 2020 WL 3316984 (E.D. Va. 2020), despite efforts of the County to make them seem alike. In *Tolle*, the pro se plaintiff alleged—among other things—that his employer violated his religion merely by making him work in a building flying a Pride flag. *Id.* at *5. By contrast, County policy here made Little, as a supervisor in the LAFD, responsible for *raising* the PPF and *ensuring* the PPF remained flying, at his work location during his shifts in the month of June. [Pl.'s SUMF ¶¶19-20, 164, 204]. Accepting responsibility for spreading the message of the PPF—a message contradicting traditional Christian morality on issues of sexuality

_____

[2] Notwithstanding its efforts to recast Little's religious beliefs as only a "preference," Defs.' Mem. at 16-17, the record is clear that Little's opposition to personal involvement with the PPF was a matter of conviction based on sincerely held religious beliefs. [Pl.'s SUMF ¶¶11-12, 30, 36, 43, 59-60].

and marriage to which Captain Little ascribes—conflicted with his religion, which is why he made requests for accommodation from the County. [Pl.'s SUMF ¶¶11-12, 30, 36, 43, 59-60].

### b. The County ordered Little to raise and tend to the PPF, granted and then revoked his accommodation and thereafter refused to accommodate him.

The County errs when it asserts, "Plaintiff states that he believes that 'he cannot personally raise, ensure raising, maintain, or fly the [PPF],' … *but he was never required to do so*." Defs.' Mem. at 15 (emphasis added). In truth, the County repeatedly required Little to ensure the raising and maintenance of the PPF. [Pl.'s SUMF ¶¶20, 164, 211]. Even after his accommodation requests and the County's offer of some adjustments to his shift time, it insisted that Little be responsible either for ensuring the flag was flying (for example, re-raising it if it fell) or ordering another employee to re-raise the PPF. [Pl.'s SUMF ¶¶131, 140, 164, 211]. The County unwaveringly imposed upon Little the requirement that he accept responsibility for the PPF. [Pl.'s SUMF ¶¶131, 140, 151, 211, 216].

Although the County states that in 2023 it offered to allow Little to adjust his schedule or change work locations, it fails to note that Little always remained subject to EA-231 (and later EA-232) and thus responsible for the PPF when on duty. [Pl.'s SUMF ¶¶131, 140, 164, 204, 210-211]. The County has refused to relieve Little from being ultimately tasked with ensuring the PPF is raised and continues to fly throughout his shifts in June. Furthermore, the County wrongly asserts that it allowed him to take benefit leave time. Defs.' Mem. at 16. Rather than permit his use of benefit time, the County *denied* his request to take such a leave during June by conditioning it on whether it will trigger recalls (which it inevitably will during June). [Pl.'s Resp. to SUMF ¶90; Pl.'s SUMF ¶¶157, 177].

///

///

### c.    Little neither violated his beliefs, nor are his beliefs conclusory.

Why the County finds it significant that Little's religious beliefs would permit him to *lower* the PPF so he would not be responsible for it during his shift is a mystery. *See* Defs.' Mem. at 16. Of course, by lowering the PPF, Little relieved himself of the responsibility for monitoring and ensuring the PPF remained flying, a duty that would violate his religion by endorsing the flag's message. He thereby removed the conflict between the duty imposed on him and his beliefs. The County's position ignores the very different messages inherent in raising a flag versus lowering a flag.

It is difficult to understand how the County can call Little's objections to raising and tending the PPF conclusory, and neither of the cases it cites supports its position. In *Tolle*, as noted above, the employee sought to not work at a location with a Pride flag. 2020 WL 3316984 at *5. Here, Little had no objection to working at locations that flew the PPF, provided he was not responsible for the PPF. In *Tolle*, the employee effectively sought a veto of the employer's expression, while Little simply did not wish to actively participate in his employer's expression.

The other case the County cites, *Bolden-Hardge v. Office of California State Controller*, 63 F.4th 1215 (9th Cir. 2023), is even less helpful for its position. As the Ninth Circuit noted in that case, "the burden to allege a conflict with religious beliefs is fairly minimal." *Id.* at 1223 (citation omitted). Moreover, the plaintiff there was held to have adequately alleged a burden on her religious beliefs by asserting the incompatibility of the oath required by the California State Controller for employment and the plaintiff's religious beliefs. *Id.* at 1223-24. Sustaining the plaintiff's assertion of a conflict between the oath and her beliefs required no probing analysis of her rationale, and the Court refused to consider whether the plaintiff was being "reasonable" in asserting a conflict existed. *Id.* at 1223. Intelligibility of a religious objection, not a court's determination of its logical consistency or objective

validity, is all Title VII requires and all the First Amendment permits. *See id.* at 1223 (citing *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 725 (2014)). Little's repeated explanation of his beliefs—pre- and post-litigation—are far more discernible and less conclusory than the (adequate) description of the plaintiff's beliefs in *Bolden-Hardge*. That the County may not like Little's beliefs, or his explanation of those beliefs, is not grounds to deny his accommodation.

### d.    Title VII and FEHA protect belief and practice. The County required affirmative action by Little violative of his religion.

Overlooking that Title VII defines "religion" to include "all aspects of religious observance and practice, as well as belief," 42 U.S.C. §2000e(j), the County denies the existence of a prima facie case by arguing that, "[t]hough Plaintiff asserts that he disagrees on religious grounds with the PPF's message, he identifies no religious *practice*, and thus no religious *conflict*, with his employment duties." Defs. Mem. 16-17 (emphasis in original). But Title VII also protects religious *beliefs*, and there is no dispute that Captain Little's objection to ensuring the PPF flies is rooted in "religious reasons," which is what matters. *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 774 n.3 (2015).

Contrary to the County's assertion that Little "was never required to take any action," Defs. Mem. at 16, taking action with the respect to the PPF is exactly what the County's EAs required. The County issued and implemented EAs in 2023 and 2024 (and continues to do so today) directing the flying of the PPF in June. [Pl.'s SUMF ¶¶19-20, 204]. Supervisors, like Little, were made responsible for ensuring the PPFs flew at lifeguard locations in conformity with the policy. [Pl.'s SUMF ¶¶20, 204]. The message of the PPF contradicts Little's religious beliefs about marriage and sexuality. [Pl.'s SUMF ¶¶7-8, 11-12]. To raise the PPF, or order another to do so, would violate his beliefs by implicating him in endorsement of the flag's message. [Pl.'s SUMF ¶¶30, 43, 60, 136]. So, too, would being responsible for

ensuring it remained flying and either re-raising it or directing another to re-raise it. [Pl.'s SUMF ¶¶30, 43, 60-61, 136]. The County never retreated from the requirement that Little ensure the PPF remained flying once raised. [Pl.'s SUMF ¶¶131, 140, 211, 216]. As such, there was a conflict between the job requirement to "take … action" to monitor and ensure the flying of the PPF and Captain Little's religion, which teaches beliefs and practices contrary to the PPF's message.

While the County attempts to rely on the fact that Little was able to work around the PPF requirements through his own scheduling, *see* Defs.' Mem. at 15-16 & n.5, this alleged "accommodation" ultimately hinges only on Little's independent efforts and mere happenstance. [Pl.'s SUMF ¶220]. After revoking his initial accommodation, the County denied further requests for accommodation, never removing any requirement that Captain Little be responsible for flying the PPF at his worksite. Plaintiff has remained subject to the strictures of the County's EAs and the conflict has persisted, as well as the discrimination against him.

### 2. The County disciplined Little because of his religion.

As long as the "need for an accommodation was a motivating factor in the employer's [adverse] decision," it violates Title VII. *Abercrombie*, 575 U.S. at 772. The County maintains Little was not disciplined because of his beliefs but because he lowered (consistent with his accommodation) three PPFs for which he would have been responsible during his shift. The County's effort to separate two halves of the same coin fails, particularly since the County had granted him an accommodation, and his actions were taken in compliance with it. [Pl.'s SUMF ¶¶65, 67-68, 135]; *see Heller v. EBB Auto Co.*, 8 F.3d 1433, 1440 (9th Cir. 1993) (employer must provide "a good faith reason for rescinding [an accommodation]"). Once the County made its about-face, it then disciplined Little for ensuring he would not have to raise the PPF or direct another to do so in violation of his religion.

The County also seems to overlook that its denial of an accommodation for religious beliefs or practice under Title VII satisfies the third prong of a prima facie

case because the County's insistence on its policy as a basis for requiring Little to participate in flying the PPF meant he could not "fulfill the job requirements." *Tiano*, 139 F.3d at 681; *see Bolden-Hardge*, 63 F.4th at 1222-23. Per the EAs, his supervisory role required ensuring compliance, creating a direct conflict with his religious beliefs. [Pl.'s SUMF ¶¶20, 136, 140]. At minimum, whether such a conflict existed is a question of fact for the jury.

In its discipline of Little, the County, too, invoked his beliefs throughout the process. Boituex told him at the time that his beliefs do not matter and Mayfield echoed this sentiment in his deposition. [Pl.'s SUMF ¶165]. McMillon refused to acknowledge the fundamental rights of employees and took no position on the issue. [McMillon Dep. 161:11-162:22 (ECF Dkt. #115-8 at 83-84)]. And, though opening an investigation and ultimately disciplining Little, Lester did not file a CPOE report on Little's behalf, despite observing Little become emotional, upset, and uncomfortable when told his religious accommodation was revoked and directed to ensure PPFs were flying in his area, thereby evidencing disparate treatment. [Pl.'s SUMF ¶122].

There is thus clear evidence establishing that the motivation for the discipline was Little's religious beliefs and the sentiment that his religious beliefs must yield to the County's irreligious dictates.

### B. Accommodating Little Would Not Have Been an Undue Hardship to the County.

An employer must accommodate religious observance and practices "unless [it] demonstrates that [it] is unable to reasonably accommodate an employee's … religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. §2000e(j). Showing undue hardship requires "more than a *de minimis* cost." *Groff v. DeJoy*, 600 U.S. 447, 468 (2023). The employer must show a burden "substantial in the overall context of [its] business," which turns on "all relevant factors[,]" including the impact of the accommodation "in light of

the nature, size and operating cost" of the employer. *Id.* at 468, 470-71. Being an affirmative defense, the burden of showing undue hardship falls on the employer. *See Petersen v. Snohomish Reg'l Fire & Rescue*, 150 F.4th 1211, 1217 (9th Cir. 2025) (citing *Bolden-Hardge*, 63 F.4th at 1224).

Perhaps the most compelling evidence that accommodating Little would not have been an undue hardship is the fact that the County itself initially granted an accommodation. *See Heller*, 8 F.3d at 1440. The County agreed he would be allowed to serve and refrain from personally raising the PPF so long as another captain at a nearby beach would do so. [Pl.'s SUMF ¶140]. This was a workable accommodation since Little did not seek an exemption from working under the PPF, thereby requiring the County to refrain from flying it, but instead only an accommodation as to being responsible for the PPF. [Pl.'s SUMF ¶¶29, 43-44, 52, 59-61, 65, 70]. It also would not have caused any additional expense to the County. [Pl.'s SUMF ¶¶78, 132]. Even after the "100 percent compliance" mandate, there were still lifeguard stations not flying the PPF "because they could not," and "relocating Little to an area not flying the Progress Pride Flag remained a way to accommodate him." [Pl.'s SUMF ¶¶104-105]. These facts undermine any claim of hardship. At a minimum, these facts make the question whether accommodation would impose undue hardship unsuitable for summary judgment.

Moreover, the evidence adduced in discovery has shown that the County would neither have incurred an undue hardship based on economic considerations, nor would Little's request have had a detrimental effect on public or employee safety. There is no evidence that anyone in Little's chain of command believed his June 19, 2023 accommodation imposed any substantial burden on the County. The cost estimates—prepared by Little's chain of command and not disputed by the County's corporate representative—place the "full economic cost" of granting the accommodation at barely 1/2000 of 1% of the Fire Department's $1.5 billion annual budget. [Pl.'s Resp. to SUMF ¶104; Pl.'s SUMF ¶¶55, 142].

The County does nothing but speculate and make conclusory assertions as to potential hardships from the possibility of making schedule changes and recalls. The evidence in the record does not establish that any *actual* hardship would result. [Pl.'s Resp. to SUMF ¶¶95-101]. Rather, the County's revocation of the accommodation resulted in Little being absent for the remainder of June 2023 on medical leave, a circumstance of the County's own making which itself resulted in recalls and shift changes the County (apparently successfully) managed. [Pl.'s Resp. to SUMF ¶121].

The Memorandum of Understanding between the County and the County Lifeguard's Association cannot salvage the County's argument. The MOU language on which the County relies only applies to employees who are scheduled on a minimum 40-hour work week, not to all lifeguards. Further, the MOU permits temporary assignments to different work locations. [Pl.'s Resp. to SUMF ¶¶95-96]. Furthermore, the County cannot contract out of its obligations under federal civil rights law. *See, e.g., Bolden-Hardge*, 63 F.4th at 1225 (citation omitted).

For both factual and legal reasons, the County also cannot invoke the "100%" compliance mandate. First, as discussed, even after the mandate, there remained lifeguard stations that did not fly the PPF. [Pl.'s SUMF ¶¶103, 217]. And, as the Ninth Circuit wrote in *Bolden-Hardge*, "to exempt [a defendant] from a federal accommodation requirement solely because the requested accommodation would violate state law would essentially permit states to legislate away any federal accommodation obligation, raising Supremacy Clause concerns." *Id.* This irrefutable proposition defeats the County's reliance on its policy for 100% compliance in displaying the PPF, just as it defeats reliance on the MOU.

Ultimately, as Little has demonstrated in his own motion for summary judgment, the County cannot show that accommodating him would have presented an undue hardship, particularly under the post-*Groff* standard. At a minimum, the evidence is conflicting such that the Court cannot hold as a matter of law that the County would have incurred an undue hardship from accommodating Little.

### C. The County Failed to Protect Little from Discrimination in Violation of FEHA.

The record demonstrates facts from which a reasonable jury could find that Little endured discrimination based on his religion. He did not simply face hostile comments from his supervisors, as the County contends. Defs.' Mem. at 22-23. Little's claim is not based on a hostile work environment, but is instead based on Defendants' failure to take reasonable steps necessary to prevent discrimination under California Government Code section 12940(k), which makes it "an unlawful employment practice … for an employer … to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." Cal. Gov. Code §12940(k).

No one involved with Little's IPMs had training or experience on how to handle his request. [Pl.'s SUMF ¶58]. Certainly, an entity as large and ostensibly inclusive as the County should have trained supervisory and HR personnel on this issue. Little was erroneously informed by Defendants that his request did not qualify for a religious accommodation because it did not fall into one of three categories: (1) time to attend religious services, (2) option to wear religious garments, or (3) time to pray during work. [Pl.'s SUMF ¶131].

As a result of Defendants' failure to properly train its employees on religious accommodations, Little faced discrimination, and the claim under FEHA for failure to prevent discrimination and harassment should be resolved in his favor.

## II. The County is Not Entitled to Summary Judgment on Little's Claim for Retaliation.

Establishing a Title VII retaliation claim requires showing that "(1) he engaged in a protected activity; (2) his employer subjected him to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action." *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000) (citing *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1464 (9th Cir. 1994)). Defendants'

brief does not contest that Little engaged in protected activity and concedes that he suffered adverse employment actions. Defs.' Mem. at 20-21. The only question Defendants raise is whether there was a causal link between them. As Little argues in his own motion, the link is established as a matter of law, thereby entitling him to summary judgment in his favor. [ECF Dkt. #118-1]. Even if Little cannot prevail on his claim for summary judgment, the question of a causal link must be submitted to a jury.

As the Court has already recognized, "very little[ ] evidence is necessary to raise a genuine issue of fact regarding an employer's motive; any indication of discriminatory motive … may suffice to raise a question that can only be resolved by a fact-finder." [ECF Dkt. #50, Order Granting in Part Defendants' Motion to Dismiss, at 9-10]. Indeed, the proximity of adverse employment actions to the protected activity can establish a question as to the requisite causal nexus for a fact-finder to decide. *See Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) ("Causation sufficient to establish the third element of the prima facie case may be inferred from circumstantial evidence[.]"); *Cal. Fair Emp't & Hous. Comm'n v. Gemini Aluminum Corp.*, 122 Cal. App. 4th 1004, 1018 (2004) (evidence that an employer had knowledge of an employee's protected activity, and suspended him three days later, was enough to establish a causal link).

On June 22, 2023, the day after the second IPM, Boiteux delivered a Direct Order requiring Little to immediately participate in the very conduct as to which he sought a religious accommodation on threat of severe disciplinary action—including suspension and/or discharge from service. [Pl.'s Resp. to SUMF ¶116-119; Pl.'s SUMF ¶¶162-164, 216]. Lester called Boiteux to ask whether he needed to file a CPOE complaint after Little took down a PPF, and that complaint triggered the CPOE investigation. [Pl.'s SUMF ¶126]. Boiteux's own separate report initiated the Fire Department's investigation into the same incident. [Jonna MSJ Opp Decl., Ex. B, Boiteux Dep. 299:5-300:17]. That same week, Kim relied on the existence of

an investigation to justify her fully discretionary act of removing Little from the BIU. [Pl.'s Resp. to SUMF ¶122]. The investigations resulted in his suspension. [*Id.* at ¶130].

Little's accommodation request initiated the chain of events leading to the Department's retaliatory actions. And Boiteux's contemporaneous statement that Little's religious beliefs did not matter provides "at least some evidence from which retaliatory motive can be inferred," and supports a causal link to be resolved by a fact-finder. [ECF Dkt. #50 at 10].

The County cannot claim that Boiteux was unaware of the accommodation request. So, it is forced to allege that Boiteux was not involved in the CPOE review process, his removal from the BIU, or his ultimate suspension. Defs.' Mem. at 22. But the County also claims that the CPOE complaint was run through "usual channels" including an investigation [Pl.'s Resp. to SUMF ¶¶124-125]; that the BIU removal happened automatically because there was an investigation [*id.* at ¶122]; and that the suspension was the result of the CPOE investigation [*id.* at ¶130]. Even in the County's telling, Boiteux's actions triggered a mechanical bureaucratic process destined to harm Little. And Defendants offer no innocent explanation for why the Fire Department decided to initiate a separate, redundant investigation based on Boiteux's report, which was relied upon to issue Little's suspension. [*Id.* at ¶¶130-131]. As a result of these actions, Little was terminated from the BIU and suffered suspension with a loss of income and prestige. [Pls.' SUMF ¶¶179-180].

The County attempts to neutralize the effect of Boiteux's revealing comment (that Little's religious beliefs "don't matter") by arguing that it is not itself an adverse employment action, but that assertion misses the point. The statement is evidence of animus. Equally ineffectual is the County's effort to disassociate Boiteux from the disciplinary process. [Pl.'s Resp. to SUMF ¶¶116-119, 130-133; Pl.'s SUMF ¶¶162-164, 126, 216]. He initiated the process and provided evidence which supported the discipline. There is no adverse action without Boiteux and his initial

PLAINTIFF'S MEMO. OF POINTS & AUTHORITIES
IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

complaint against Little.

The foregoing facts and circumstances, as well as the rapid succession of action taken against Little by the County and other Defendants, more than meet the low threshold to raise a genuine issue of fact defeating summary judgment.

### III. The County is not Entitled to Summary Judgment on Little's Constitutional Claims.

#### A. Little's Free Exercise Claim.

Discovery has only confirmed Little's Free Exercise claim remains valid. At minimum, there are triable issues of fact as to the County's overt hostility toward Little's religious beliefs and its targeting of his religious exercise for special disfavor.

The Free Exercise Clause prohibits both overt and "masked" government hostility. *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 534 (1993). Government officials may not "pass[] judgment upon or presuppose[] the illegitimacy of religious beliefs and practices." *Masterpiece Cakeshop, Ltd. v. Colo. C.R. Comm'n*, 584 U.S. 617, 638 (2018). Accordingly, government burdens on religious exercise must be "set aside"—or at least undergo strict scrutiny—"upon even *slight suspicion*" that they stem from "animosity to" or "*distrust of*" religious beliefs or practice. *Id.* at 638-39 (emphasis added).

Here, when Boiteux delivered the Order to Little requiring compliance with EA-231 without accommodation, he expressly told him that *his religious beliefs don't matter*. [Pl.'s SUMF ¶165]. The County argues that Boiteux denies saying this. Defs.' Mem. at 12 n.4. But it points only to Boiteux's testimony stating he doesn't remember his "exact" words [*id.* (citing Ex. N, at 270:24-271:1], while omitting Boiteux's *admission* in the *very next line* that it indeed "sound[s] like something [he] said" [*id.* (citing Ex. N, at 271:2-4)]. The County argues that, regardless, telling Little his religious beliefs don't matter is explicit animus. But the Ninth Circuit has recognized otherwise, finding anti-religious animus in part where a single history teacher asserted that students' religious beliefs "had no rightful place on campus."

21

*Fellowship of Christian Athletes (FCA) v. San Jose Unified Sch. Dist. Bd. of Ed.*, 82 F.4th 664, 692 (9th Cir. 2023) (en banc). Moreover, the County itself *doubles down* on Boiteux's statement in its briefing, asserting that Little's religious beliefs indeed are allegedly "irrelevant." Defs.' Mem. at 26. But Title VII requires giving employees' religious practice "*favored treatment*" under otherwise neutral policies unless it would be an "undue hardship." *Abercrombie*, 575 U.S. at 775 (emphasis added). And the First Amendment likewise requires accommodation on par with other "comparable" accommodations. *Tandon v. Newsom*, 593 U.S. 61, 62 (2021). Accordingly, denying Little's accommodation request on grounds that his religious beliefs are "irrelevant" violates the "neutral and respectful consideration to which [he] was entitled" under the Free Exercise Clause. *Masterpiece*, 584 U.S. at 634.

Additionally, discovery revealed the County denied Little's accommodation request based on "distrust" of his religious beliefs. ███████████████ ████████████████████████████████████████████ ███████████████████████ [Pl.'s SUMF ¶¶38-39; *cf. id.* ¶¶43, 70 (Captain Little explaining the difference)]; *cf. Thomas v. Rev. Bd. of Ind.*, 450 U.S. 707, 714 (1981) (religious beliefs need not be "acceptable, logical, consistent, or comprehensible to others in order to merit" protection). The County also rescinded Captain Little's initial accommodation during the second IPM on the basis that his religious objections to ensuring the PPF is raised allegedly does not constitute a qualifying "religious practice" like "attend[ing] religious services" or "wear[ing] religious garments." [Pl.'s SUMF ¶¶36, 127]; *cf. Masterpiece*, 584 U.S. at 638 (government may not "presuppose[] the illegitimacy of religious … practices"); *Lukumi*, 508 U.S. at 536 (government may not prefer some religious practices over others). And the County's Notice of Instruction concluded that Captain Little's religious beliefs were merely "personal" notwithstanding his expressly religious motivation. [Pl.'s SUMF ¶164]; *cf. Does 1-11 v. Bd. of Regents of Univ. of Colo.*, 100 F.4th 1251, 1271 (10th Cir. 2024) (government may not refuse to accommodate sincere religious beliefs

based on its view that request is not "valid[ly]" religious and therefore merely "personal").

The County's suspension notice also expressly concluded that ██████ ████████████████████████████████████████████████████ ████████████████████████████████████████—effectively "pass[ing] judgment upon" and further "presuppos[ing] the illegitimacy" of Captain Little's religious beliefs and actions. *Masterpiece*, 584 U.S. at 638; *Bates v. Pakseresht*, 146 F.4th 772, 793-95 (9th Cir. 2025) (Oregon policy deeming traditional views on sex and gender as discriminatory "pass[ed] judgment upon" or "presuppos[ed] the illegitimacy" of those religious beliefs and practices); *accord FCA*, 82 F.4th at 674, 692 (similar). Indeed, the Supreme Court recognizes that such beliefs are held "in good faith by reasonable and sincere people here and throughout the world." *Obergefell v. Hodges*, 576 U.S. 644, 657 (2015).

The County's actions thus failed to give Little's religious beliefs and practice "sufficient solicitude," thereby violating religious neutrality. *Bates*, 146 F.4th at 794.

The County also ignores evidence confirming that it targeted Little's religious beliefs and practice for special disfavor. *See Lukumi*, 508 U.S. at 534 (Free Exercise prohibits "target[ing] religious conduct for distinctive treatment"). Here, the County rescinded Little's initial accommodation expressly because it believed the *nature* of his (overtly) religious beliefs and practice did not warrant protection—confirming that the very "object" of the County's actions was the "suppression of" Little's "religious conduct." *Lukumi*, 508 U.S. at 533.

Further, in actual practice the County's actions worked to burden Little's "sincere religious beliefs yet almost no others." *Bates*, 146 F.4th at 792 (internal quotes omitted). Little's successful motion to compel confirmed ██████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████

PLAINTIFF'S MEMO. OF POINTS & AUTHORITIES
IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The County alleges it "tried to work collaboratively with" Little "at every step," including by offering the use of benefit time if it did not cause a recall. Defs.' Mem. at 12, 24. The Fire Department, though, had never previously denied any employee a religious accommodation on the grounds it would cause a recall. [Pl.'s SUMF ¶150]. This despite Little's more than 20 years of indisputably commendable service to the Fire Department. *Accord FCA*, 82 F.4th at 691-92 (FCA "had functioned on campus without issue for nearly 20 years" before de-recognition as a result of its traditional religious beliefs—"a penalty never before imposed" on an official student group there).

Accordingly, the County also violated neutrality by targeting Little's religious beliefs and practice for distinctive treatment—and, at minimum, there are triable issues of fact on this issue. Summary judgment should thus be denied for the County on Little's Free Exercise claim.

## B.    Qualified Immunity.

Nor are Defendants entitled to qualified immunity on Little's Free Exercise claim.

The County notes Defendants' conduct must have been clearly "unlawful in the situation [they] confronted." Defs.' Mem. at 28 (quoting *Ziglar v. Abbasi*, 528 U.S. 120, 152 (2017)). But the County ignores that it is not necessary for "the very action in question" to have "previously been held unlawful" to overcome qualified immunity. *Hardwick v. Cty. of Orange*, 844 F.3d 1112, 1117 (9th Cir. 2017) (internal quotes omitted). Indeed, "general statements of the law are not inherently incapable of giving fair and clear warning, and in some instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question." *Id.* (internal quotes and brackets omitted).

That is the case here. It was clearly established by 2023 that government officials must give "neutral and respectful consideration to" others' religious beliefs without "presuppos[ing]" their alleged "illegitimacy" or "pass[ing] judgment upon" them. *Masterpiece*, 584 U.S. at 634, 638. But Defendants did exactly that—including by telling Captain Little his religious beliefs "don't matter"; ███████████ ████████████████████████████████████████████ ████████████████████████████████████████████ stating that his religious actions, and by extension his religious beliefs, were discriminatory to the LGBTQ+ community. *Accord id.* at 635 (government officials' comments deeming petitioner's traditional religious beliefs on marriage as inherently discriminatory violated religious neutrality). It was also clear by 2023 that targeting religious practice "for distinctive treatment"—as squarely happened here—likewise violates religious neutrality. *See Lukumi*, 508 U.S. at 533-34.

The County alternatively alleges that no "final decisionmakers" engaged in any violations. Yet, the Ninth Circuit recognized in *FCA* that anti-religious comments by members of the "Climate Committee" were dispositive evidence of

non-neutrality, even though *the school district—not the Committee*—ultimately stripped the FCA of its official recognition (based in part on the Committee's *non-final recommendation*). *FCA*, 82 F.4th at 675, 691-92. Further, the individual Defendants here are persons "with positions of importance" in the Fire Department, *id.* at 691, including Lifeguard Division Chief (Boiteux), Assistant Lifeguard Chief (Uehara), and Section Chief (Lester). And "[t]here is no indication that any member of the Fire Department's leadership (including Chief Mayfield) "thought otherwise." *Id.* at 691. Indeed, Little's official suspension notice concluded that ███████████ ████████████████████████████████ [Pl.'s SUMF ¶191]. Finally, Defendants nowhere "disavow" any of these "comments" "in the briefs filed in this Court." *Masterpiece*, 584 U.S. at 636. On the contrary, as noted, Defendants' brief *doubles down* on Boiteux' comment that Little's religious beliefs are allegedly "irrelevant." Defs.' Mem. at 26. "[T]hese actions sufficiently show that the [*Department's*] *decisions* were motivated by animosity to religion or distrust of its practices." *FCA*, 82 F.4th at 693 (emphasis added) (internal quotes omitted).

### C.   *Monell* Liability.

Finally, Defendants nowhere argue they are entitled to summary judgment on *Monell* liability and thus have waived it. Regardless, Defendants are subject to *Monell* liability for the reasons already discussed in Little's Memo in Support of Partial Summary Judgment.[3] Pls.' Mem. at 26-28. In short, the County's explicitly anti-religious suspension notice, and the Direct Order deeming Little's religious beliefs merely "personal" rather than "religious," confirm that County policy was "deliberately indifferent" to and the "moving force" behind the deprivation of Little's constitutional rights. *See Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2022); *Plumeau v. Sch. Dist. No. 40 Cty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997). Additionally, Boiteux plainly acted with "delegated" final authority from Mayfield—

---

[3] Little's non-neutrality claim is against "All Defendants" [ECF Dkt. #69 at 43 (Sixth Claim for Relief)], contrary to Defendants' assertion otherwise Defs.' Mem. at 24.

PLAINTIFF'S MEMO. OF POINTS & AUTHORITIES
IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

having discussed Little's grievance with Mayfield *before* rescinding his religious accommodation during the second IPM (based on the *nature* of his allegedly deficient religious practice) and before telling Little that his religious beliefs "don't matter." [Pl.'s SUMF ¶¶130-135]; *see Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999). Accordingly, summary judgment should not issue for the County on *Monell* liability. At minimum, the County has waived the issue at this stage.

## IV. Plaintiff States a Valid Claim for Punitive Damages.

Finally, notwithstanding Defendants' arguments regarding the availability of punitive damages, summary judgment on the claim for punitive damages is not warranted. Though punitive damages may not be available against the County under Title VII, FEHA, or 42 U.S.C. §1983, they are available against the individual defendants under FEHA and §1983. *See, e.g., Smith v. Wade*, 461 U.S. 30, 56 (1983) ("[P]unitive damages in an action under §1983 [are available] when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."); *Civil Rights Dep't v. Grimmway Enters., Inc.*, 800 F. Supp. 3d 1084, 1120 (E.D. Cal. 2025) ("Punitive damages may be recovered under FEHA … 'where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice.'") (quoting Cal. Civ. Code §3294(a)); *see also* Cal. Gov. Code §12940(j)(3) (individual liability under FEHA).

Defendants present no argument at all as to why the standard for punitive damages under FEHA is not met with respect to the individual Defendants in their personal capacities (as opposed to the County). As to liability for punitive damages under §1983, Defendants simply state in a conclusory fashion that there was no "evil motive or intent" behind any actions. Even assuming this mere assertion is enough to present the issue for the Court's consideration, there is ample evidence that the individual Defendants acted intentionally or maliciously, or at least with reckless disregard of Little's civil rights. [*See, e.g.*, Pl.'s SUMF ¶¶131, 164-165].

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion for Summary Judgment in its entirety and grant summary judgment in favor of Plaintiff Jeffrey Little.

Respectfully submitted,

LiMANDRI & JONNA LLP

Dated: April 10, 2026            By: _____

Charles S. LiMandri
Paul M. Jonna
Jeffrey M. Trissell
Joshua A. Youngkin
William T. Duke
Attorneys for Plaintiff
Captain Jeffrey Little

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff Captain Little, certifies that this brief contains 6,929 words, which complies with the word limit of L.R. 11-6.1.

Dated: April 10, 2026            By: _____

Paul M. Jonna

## CERTIFICATE OF SERVICE

*Captain Jeffrey Little v. Los Angeles County Fire Department, et al.*
USDC Court - Central District - Case No.: 2:24-cv-04353-JLS (BFMx)

I, the undersigned, declare under penalty of perjury that I am over the age of eighteen years and not a party to this action; my business address is P.O. Box 9120, Rancho Santa Fe, California 92067, and that I served the following document(s):

1.    **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - REDACTED;**
2.    **PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - REDACTED;**
3.    **DECLARATION OF PAUL M. JONNA, ESQ., IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - REDACTED EXHIBITS;**
4.    **PLAINTIFF'S SEPARATE STATEMENT OF EVIDENTIARY OBJECTIONS IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT;**

on the interested parties in this action by placing a true copy in a sealed envelope, addressed as follows:

Dimitri D. Portnoi, Esq.
Kyle M. Grossman, Esq.
Marni B. Robinow, Esq.
O'MELVENY & MYERS LLP
400 South Hope Street, Suite 1900
Los Angeles, CA 90071
Tel: (213) 430 6000; Fax: (213) 430 6407
E-Mail:  dportnoi@omm.com
E-Mail:  kgrossman@omm.com
E-Mail:  mrobinow@omm.com
**Attorneys for Defendants County of Los Angeles, Fernando Boiteux, Arthur Lester, and Adam Uehara**

  X    **(BY ELECTRONIC MAIL)** I served a true copy, electronically on designated recipients via electronic transmission of said documents.

  X    **(BY ELECTRONIC FILING/SERVICE)** I caused such document(s) to be Electronically Filed and/or Service using the ECF/CM System for filing and transmittal of the above documents to the above-referenced ECF/CM registrants.

I declare under penalty of perjury, under the laws of the United States and the State of California, that the above is true and correct.

Executed on April 10, 2026, at Rancho Santa Fe, California.

Kathy Denworth