Charles S. LiMandri, SBN 110841
 cslimandri@limandri.com
Paul M. Jonna, SBN 265389
 pjonna@limandri.com
Jeffrey M. Trissell, SBN 292480
 jtrissell@limandri.com
Joshua A. Youngkin, SBN 332226
 jyoungkin@limandri.com
William T. Duke, SBN 361823
 wduke@limandri.com
LiMANDRI & JONNA LLP
 *as Special Counsel to*
 THOMAS MORE SOCIETY
P.O. Box 9120
Rancho Santa Fe, CA 92067
Telephone: (858) 759-9930
Facsimile: (858) 759-9938

*Attorneys for Plaintiff*
*Captain Jeffrey Little*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAPTAIN JEFFREY LITTLE, <br><br> Plaintiff, <br><br> v. <br><br> LOS ANGELES COUNTY, et al. <br><br> Defendants. | **Case No.: 2:24-cv-4353-JLS-PD** <br><br> **PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** <br><br> Judge: Hon. Josephine L. Staton <br> Courtroom: 8A <br> Date: May 8, 2026 <br> Time: 10:30 a.m. <br><br> Action Filed: May 24, 2024 |

# PUBLIC / REDACTED VERSION

# TABLE OF CONTENTS

I.      Board of Supervisors Motion and EA-231 (Nos. 1-13) ...................................3

II.     Directive for 100% Compliance with EA-231 (Nos. 14-26) ..........................9

III.    Plaintiff's 2023 Religious Accommodation Request (Nos. 27-49) ..............16

IV.     Plaintiff's June 21, 2023 Shift at Area 17 (Nos. 50-90)...............................27

V.      Effects of Recalls on the County (Nos. 91-104) .........................................42

VI.     Chief Lester's CPOE Complaint Regarding Plaintiff's June 21, 2023 Conduct (Nos. 105-114) ....................................................................53

VII.    Plaintiff's Discipline for His June 21, 2023 Conduct (Nos. 115-133) ..................................................................................................56

VIII.   Plaintiff's 2024 Religious Accommodation Request (Nos. 134-140) ..................................................................................................62

IX.     Plaintiff's Additional Material Facts (Nos. 141-173) ..................................66

## I.    Board of Supervisors Motion and EA-231 (Nos. 1-13)

| | Board of Supervisors Motion and EA-231 | |
|---|---|---|
| **No.** | **Uncontroverted Fact and Supporting Evidence** | **Plaintiff's Response** |
| 1. | In March 2023, the Board of Supervisors ("Board") passed a motion to fly the Progress Pride Flag ("PPF") during June at Los Angeles County ("County") facilities where the American and California flags are displayed and to explore ways the PPF can be flown at all County facilities to show support for LGBTQ+ communities during Pride Month.<br><br>Kim Decl. ¶3, Ex. A (Board of Supervisors resolution)<br><br>Third Amended Complaint ("TAC") ¶19 | **Undisputed** that in March, 2023 the Board of Supervisors passed a motion regarding the Progress Pride Flag.<br><br>**Disputed** as to the accuracy of Defendants' paraphrase of the March, 2023 motion because the motion, directed "the Internal Services Department to *raise* the Progress Pride Flag at the Kenneth Hahn Hall of Administration, and Los Angeles County facilities where the American and California Flags are displayed during the month of June..." [Emphasis added.]<br><br>*See* Kim Decl. ¶3, Ex. A [ECF No. 116-1]<br><br>Undisputed at to the remainder of Paragraph 1. |
| 2. | The County Fire Department implemented the motion in May 2023 through a policy memorandum, EA-231, which provided guidance about which Department facilities with flagpoles should fly the PPF.<br><br>Portnoi Decl. Ex. K (Oliva Dep. Tr.) 32:17-24<br><br>Kim Decl. ¶4, Ex. B (EA-231)<br><br>TAC ¶20 | **Disputed** as to whether the County Fire Department in fact implemented the Board motion through its adoption of EA-231, because EA-231 was inconsistent with the Board motion. The Board motion directed the Internal Services Department to raise the PPF at "Los Angeles County facilities" "where the American and California Flags are displayed during the month of June". *See* Kim Decl. ¶3, Ex. A [ECF No. 116-1] |

3

| Board of Supervisors Motion and EA-231 | | |
|---|---|---|
| **No.** | **Uncontroverted Fact and Supporting Evidence** | **Plaintiff's Response** |
| | | EA-231 provides in relevant part, "[c]lasps for two flags: Fly the U.S. flag at peak and the PPF directly below" and "[c]lasps for three flags: Fly the U.S. flag at peak, State, and then PPF." *See* Kim Decl. ¶4, Ex. B [ECF No. 116-2] <br><br> The Board motion did not dictate the removal of the California state flag in order to fly the PPF. Jonna MSJ Opp. Decl., Ex. B, Boiteux Dep., p. 55:24-56:1-20). <br><br> **Undisputed** as to the assertion that EA-231 provided guidance about which Department flagpoles should fly the PPF. |
| 3. | All Lifeguard Division employees, including Plaintiff, were sent EA-231 on May 25, 2023. <br><br> Portnoi Decl. Ex. B (Little Dep. Tr.) 59:18-60:21 <br><br> Portnoi Decl. Ex. E (Lester Dep. Tr.) 37:8-38:14 <br><br> Portnoi Decl. Ex. I (Uehara Dep. Tr.) 115:18-116:3 <br><br> O'Brien Decl. ¶3, Ex. A (email correspondence attaching EA-231) | **Undisputed**. |
| 4. | As a member of the Fire Department, following County policies is part of Plaintiff's job. | **Undisputed but irrelevant.** <br><br> **See Obj. No. 11.** |

4

| Board of Supervisors Motion and EA-231 | | |
|---|---|---|
| **No.** | **Uncontroverted Fact and Supporting Evidence** | **Plaintiff's Response** |
| | Portnoi Decl. Ex. B (Little Dep. Tr.) 19:4-7<br><br>Portnoi Decl. Ex. O (Crum Dep. Tr.) 117:15-118:6 | |
| 5. | Under EA-231, if a flagpole could accommodate only the U.S. flag, the PPF would not be flown; otherwise, it would be.<br><br>Portnoi Decl. Ex. N (Boiteux Dep. Tr.) 74:21-75:7<br><br>Portnoi Decl. Ex. H (McMillon Dep. Tr.). 37:10-14, 226:4-12<br><br>Portnoi Decl. Ex. L, Mayfield Dep. Tr.. (Vol. II) 192:7-8, 194:4-6, 203:14-16<br><br>Portnoi Decl. Ex. O (Crum Dep. Tr.) 75:25-76:2<br><br>Portnoi Decl. Ex. E (Lester Dep. Tr.) 41:13-20, 48:2-25, 77:12-78:6, 79:23-80:11, 88:15-20<br><br>Portnoi Decl. Ex. I (Uehara Dep. Tr.) 160:22-161:21<br><br>Kim Decl. ¶4, Ex. B (EA-231) | **Undisputed.** |
| 6. | Under EA-231, Lifeguard Captains are responsible for making sure that the PPF is flown.<br><br>Kim Decl. ¶4, Ex. B (EA-231) | **Undisputed.** |

| Board of Supervisors Motion and EA-231 | | |
|---|---|---|
| No. | Uncontroverted Fact and Supporting Evidence | Plaintiff's Response |
| | Portnoi Decl. Ex. O (Crum Dep. Tr.) 76:9-17<br><br>Portnoi Decl. Ex. L (Mayfield Dep. Tr. Vol. II) 233:13-24 | |
| 7. | Typically, flags are flown using clasps, which are small metal devices that can be added to a flagpole.<br><br>Portnoi Decl. Ex. O (Crum Dep. Tr.) 204:19-205:24<br><br>Portnoi Decl. Ex. E (Lester Dep. Tr.) 78:7-19<br><br>Lester Decl. ¶7, Ex. D (halyard clasp) | **Undisputed**. |
| 8. | Large flags will hit the roof when flown at some lifeguard stations.<br><br>Portnoi Decl. Ex. O (Crum Dep. Tr.). 183:23-184:11, 185:2-5<br><br>Portnoi Decl. Ex. L (Mayfield Dep. Tr. Vol. II) 205:23-206:3.<br><br>Portnoi Decl. Ex. F (Power Dep. Tr.) 28:19-29:1<br><br>Portnoi Decl. Ex. E (Lester Dep. Tr.) 40:7-12, 48:10-25, 84:17-23 | **Undisputed**. |
| 9. | Clasps on flagpoles at lifeguard stations sometimes break due to exposure to weather. | **Disputed** because the cited testimony does not support the assertion that flagpole clasps sometimes break through exposure to weather. |

6

| Board of Supervisors Motion and EA-231 | | |
| --- | --- | --- |
| No. | Uncontroverted Fact and Supporting Evidence | Plaintiff's Response |
| | Portnoi Decl. Ex. H (McMillon Dep. Tr.) 224:14-18<br><br>Portnoi Decl. Ex. E (Lester Dep. Tr.) 83:8-15 | Lester testified, "There was several stations, through—how—however you want to say it, that through—through the years, through replacing the flags, through the wear and tear of the—of the ocean, you know, like, ripping the—lines down, that had gone to just having two clasps on a flagpole, just raising the American flag only, and so there was several stations that just had that." Lester Dep., 83:8-15 [ECF No. 110-5 at 64]<br><br>McMillon testified, "So, we put on and take off clasps for flags all the time, is what I'm trying to say. We do not leave them on the flagpole, because of wind and elements, and they will get rusted, and they—they hit against the flagpole." McMillon Dep., 224:14-18 [ECF No. 115-8 at 112] |
| 10. | In June 2023, clasps went missing at lifeguard stations.<br><br>Portnoi Decl. Ex. N (Boiteux Dep. Tr.) 318:2-318:4<br><br>Portnoi Decl. Ex. H (McMillon Dep. Tr.). 38:18-39:1, 226:4-12, 227:1-4<br><br>Portnoi Decl. Ex. E (Lester Dep. Tr.) 79:5-12, 81:11-21, 96:23-97:13<br><br>Portnoi Decl. Ex. I (Uehara Dep. Tr.) 60:15-17, 153:24-154:25, | **Undisputed**. |

| Board of Supervisors Motion and EA-231 | | |
|---|---|---|
| No. | Uncontroverted Fact and Supporting Evidence | Plaintiff's Response |
| | 157:4-16, 160:9-13, 161:10-21, 162:5-16 | |
| 11. | In June 2023, flag lines were cut at lifeguard stations.<br><br>Portnoi Decl. Ex. H (McMillon Dep. Tr.) 64:12-18, 123:21-24<br><br>Portnoi Decl. Ex. F (Power Dep. Tr.) 54:15-16<br><br>Portnoi Decl. Ex. I (Uehara Dep. Tr.) 154:1-3, 154:17-18, 160:9-13, 161:10-21, 162:5-16 | **Undisputed**. |
| 12. | In June 2023, flagpoles were taken down at lifeguard stations.<br><br>Portnoi Decl. Ex. H (McMillon Dep. Tr.) 165:3-10, 196:7-8, 197:21-22, 213:18-214:22<br><br>Portnoi Decl. Ex. F (Power Dep. Tr.) 54:15-16<br><br>Portnoi Decl. Ex. E (Lester Dep. Tr.) 166:2-167:6<br><br>Portnoi Decl. Ex. I (Uehara Dep. Tr.) 160:9-13, 161:10-21 | **Undisputed**. |
| 13. | The Board motion and EA-231 did not account for differences in the size of flags, clasps breaking due to weather, the number of flags not remaining consistent, clasps going missing, flag lines being cut, or flagpoles being taken down. | **Undisputed** as to differences in the size of flags, clasps breaking due to weather, clasps going missing, flags being cut, or flagpoles being taken down.<br><br>**Disputed** as to "clasps breaking due to weather", "the number of flags not |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| Board of Supervisors Motion and EA-231 | | |
|---|---|---|
| No. | Uncontroverted Fact and Supporting Evidence | Plaintiff's Response |
| | Portnoi Decl. Ex. J (O'Brien Dep. Tr.) 53:15-23<br><br>Portnoi Decl. Ex. E (Lester Dep. Tr.) 39:21-41:20<br><br>Portnoi Decl. Ex. I (Uehara Dep. Tr.) 153:24-154:8, 157:4-16 | remaining consistent", "flags being cut" or "flagpoles being taken down" as the cited testimony does not reference those considerations.<br><br>**Disputed** as irrelevant. *See* **Obj. No. 12**. |

## II. Directive for 100% Compliance with EA-231 (Nos. 14-26)

| Directive for 100% Compliance with EA-231 | | |
|---|---|---|
| No. | Uncontroverted Fact and Supporting Evidence | Plaintiff's Response |
| 14. | In early June 2023, the PPF was not flown at some Lifeguard Division facilities where it could safely be flown.<br><br>Portnoi Decl. Ex. J (O'Brien Dep. Tr.) 68:1-4 | **Disputed**. The cited testimony fails to support the assertion for which it is cited. It provides: "During the course of that month, we received phone calls from the board offices inquiring as to why facilities weren't flying the flag in accordance with their approved flag policy."<br><br>Further, even if the cited testimony could be deemed supportive of the fact for which it is cited, it is inadmissible hearsay. *See* **Obj. No. 1**. |
| 15. | Beachgoers, lifeguards, and County Supervisors raised concerns about the PPF not consistently flying.<br><br>Portnoi Decl. Ex. J (O'Brien Dep. Tr.) 68:1-4 | **Undisputed** as to County Supervisors and lifeguards but disputed as to beachgoers because the citations fail to support the assertion that "[b]eachgoers … raised concerns about the PPF not consistently |

9

| Directive for 100% Compliance with EA-231 | | |
|---|---|---|
| **No.** | **Uncontroverted Fact and Supporting Evidence** | **Plaintiff's Response** |
| | Portnoi Decl. Ex. H (McMillon Dep. Tr.). 123:18-124:2, 124:12-21<br><br>Portnoi Decl. Ex. E (Lester Dep. Tr.) 68:9-19<br><br>Boiteux Decl. ¶¶3-4, Ex. A (email correspondence between Chief Boiteux and County Department of Beaches & Harbors) at LAC-0000028, Ex. B (email correspondence between Chief Boiteux and Supervisor Mitchell's Deputy of Constituent Engagement) at LAC-0001357<br><br>O'Brien Decl. ¶¶4-5, Exs. B (June 12, 2023 major incident report), C (June 20, 2023 major incident report) | flying." |
| 16. | The Board put extreme pressure on Fire Chief Anthony Marrone to comply with the Board's motion regarding the flying of the PPF.<br><br>Portnoi Decl. Ex. J (O'Brien Dep. Tr.) 68:1-70:11<br><br>Portnoi Decl. Ex. N (Boiteux Dep. Tr.) 154:14-22<br><br>Portnoi Decl. Ex. H (McMillon Dep. Tr.) 124:12-21<br><br>Portnoi Decl. Ex. L (Mayfield Dep. Tr. Vol. II) 170:14-171:23 | **Disputed**. The only cited testimony which supports the assertion that the Board put "extreme pressure" on the Fire Chief to comply with the Board's motion regarding the flying of the PPF" was Chief Boiteux's inadmissible hearsay testimony. Chief Boiteux testified, "I was not part of any meetings, but I heard there was a meeting at the fire headquarters with all executive team members regarding the Pride flag compliance. The fire chief was under extreme pressure from the Board of Supervisors because the Fire Department was not complying with board direction." Boiteux Dep., |

10

| Directive for 100% Compliance with EA-231 | | |
|---|---|---|
| No. | Uncontroverted Fact and Supporting Evidence | Plaintiff's Response |
| | Portnoi Decl. Ex. E (Lester Dep. Tr.) 68:20-69:22 | 154:14-22 [ECF No. 115-14 at 38]. *See* **Obj. No. 2.**<br><br>The balance of the citations indicate that there were inquiries from Board staff members about compliance but they fail to support the "extreme pressure" assertion and, with the exception of the testimony of Mayfield, who was presented as a 30(b)(6) witness, are in any event similarly inadmissible hearsay. *See* **Obj. Nos. 3-6.** |
| 17. | On June 20, 2023 at 7:23 p.m. Chief Marrone requested an "immediate Teams meeting for all Chief Deputies and Deputy Chiefs."<br><br>Mayfield Decl. ¶4, Ex. B (email correspondence between Chief Marrone, chief deputies, and deputy chiefs) at LAC-0003223 | **Undisputed**. |
| 18. | At the June 20, 2023 meeting that Chief Marrone had with his Chief Deputies and Deputy Chiefs, Chief Marrone relayed the importance of compliance with the Board's motion and EA-231 through the chain of command.<br><br>Portnoi Decl. Ex. N (Boiteux Dep. Tr.) 151:1-154:22<br><br>Portnoi Decl. Ex. J (O'Brien Dep. Tr.) 77:17-25 | **Undisputed** that Chief Marrone had a meeting with his Chief Deputies and Deputy Chiefs regarding compliance with the Board of Supervisor's directive regarding flying the progress flag during the month of June. Mayfield Dep., pp. 170-171. [ECF No 115-12 at 30-31]<br><br>**Disputed** to the extent that the meeting also included discussion of "the *importance* of compliance," as opposed to merely passing on a directive, because the cited testimony |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| Directive for 100% Compliance with EA-231 | | |
|---|---|---|
| No. | Uncontroverted Fact and Supporting Evidence | Plaintiff's Response |
| | Portnoi Decl. Ex. L (Mayfield Dep. Tr. Vol. II) 170:21-171:3, 171:18-25, 172:21-173:9, 180:12-14<br><br>Portnoi Decl. Ex. E (Lester Dep. Tr.) 68:9-69:22 | does not support that assertion. |
| 19. | On June 20, 2023 at 7:14 p.m., Chief Marrone sent an email with "Progress Pride Flag FAQs" attached, asking his Chief Deputies to share it with their managers.<br><br>Portnoi Decl. Ex. J (O'Brien Dep. Tr.) 83:18-84:12<br><br>Mayfield Decl. ¶3, Ex. A (email correspondence between Chief O'Brien, Chief Mayfield, and division chiefs) at LAC-0002035-36 | **Undisputed**. |
| 20. | On June 20, 2023 at 8:20 p.m., Chief Deputy Jon O'Brien forwarded this email to his Deputy Chiefs, calling for 100% compliance with EA-231 and the Board motion.<br><br>Mayfield Decl. ¶3, Ex. A (email correspondence between Chief O'Brien, Chief Mayfield, and division chiefs) at LAC-0002035-36<br><br>O'Brien Decl. ¶6, Ex. D (email correspondence between Chief O'Brien, Chief Mayfield, and division chiefs) at LAC-0002035-36 | **Undisputed** that on June 20, 2023 at 8:20 p.m., Chief Deputy Jon O'Brien forwarded this email to his Deputy Chiefs.<br><br>**Disputed** that Fact No. 20 accurately summarizes the content of the email, which provided, "Informational FAQ to pass along to your A C's as they engage with their stations to achieve 100% compliance with flying the PRIDE Progress Flag as outlined in EA-231." |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| Directive for 100% Compliance with EA-231 | | |
| --- | --- | --- |
| No. | Uncontroverted Fact and Supporting Evidence | Plaintiff's Response |
| | Portnoi Decl. Ex. J (O'Brien Dep. Tr.) 83:18-84:12 | |
| 21. | On June 20, 2023 at 8:34 p.m., Deputy Fire Chief William Mayfield forwarded Chief O'Brien's email to his Assistant Chiefs and indicated that the absence of clasps is "not an excuse" not to fly the PPF.<br><br>Mayfield Decl. ¶3, Ex. A (email correspondence between Chief O'Brien, Chief Mayfield, and division chiefs) at LAC-0002035<br><br>O'Brien Decl. ¶6, Ex. D (email correspondence between Chief O'Brien, Chief Mayfield, and division chiefs) at LAC-0002035 | **Undisputed**. |
| 22. | Deputy Fire Chief Mayfield is the bureau commander for three Fire Department divisions, including the Lifeguard Division, the EMS Division, and all training aspects within the Department.<br><br>Portnoi Decl. Ex. L, (Mayfield Dep. Tr.) 26:7-8, 24:8-16<br><br>Mayfield Decl. ¶2 | **Undisputed**. |
| 23. | The evening of June 20, 2023, Chief Fernando Boiteux conveyed Chief O'Brien's 100% directive to Chief Adam Uehara and the lifeguard section chiefs, including Chief Arthur Lester, instructing them to | **Undisputed**. |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| Directive for 100% Compliance with EA-231 | | |
|---|---|---|
| No. | Uncontroverted Fact and Supporting Evidence | Plaintiff's Response |
| | ensure that the PPF was raised at all fixed flagpoles under their management regardless of whether clasps were currently installed and report to him the next morning if any PPFs were missing or could not be flown.<br><br>Lester Decl. ¶3, Ex. A (email correspondence between Chief Boiteux, Chief Uehara, and section chiefs) at LAC-0001966<br><br>Boiteux Decl. ¶¶5-6, Ex. C (email correspondence between Chief Boiteux, Chief Uehara and section chiefs) at LAC-0001343, Ex. D (text message correspondence between Chief Boiteux, Chief Uehara, and section chiefs) at LAC-0001495<br><br>Portnoi Decl. Ex. L (Mayfield Dep. Tr. Vol. II) 175:13-176:22, 185:24-186:11<br><br>Portnoi Decl. Ex. E (Lester Dep. Tr.) 69:4-22, 73:5-16<br><br>Portnoi Decl. Ex. I (Uehara Dep. Tr.) 148:19-149:19 | |
| 24. | At 8:00 a.m. on June 21, 2023, Chief Lester began ensuring that the fixed flagpoles at the sites he supervised were flying the PPF by either raising them himself or | **Undisputed** in significant part; **disputed** as to "fixed" because the cited deposition testimony does not refer to "fixed flag poles." |

14

| Directive for 100% Compliance with EA-231 | | |
|---|---|---|
| **No.** | **Uncontroverted Fact and Supporting Evidence** | **Plaintiff's Response** |
| | confirming that they were being flown.<br><br>Portnoi Decl. Ex. E (Lester Dep. Tr.). 69:23-70:20, 74:12-77:9<br><br>Portnoi Decl. Ex. M (Gottschalk Dep. Tr.) 197:13-16, 224:3-7 | |
| 25. | Chief Lester visited all sites other than those on Catalina Island personally, including Area 17 (Dockweiler North, Dockweiler South, and El Segundo).<br><br>Portnoi Decl. Ex. E (Lester Dep. Tr.) 75:4-77:9<br><br>Portnoi Decl. Ex. M (Gottschalk Dep. Tr.) 197:13-16, 224:3-7 | **Undisputed**. |
| 26. | At 10:22 a.m. on June 21, 2023, Chief Lester emailed Chief Boiteux confirming where the PPF was flying.<br><br>Lester Decl. ¶3, Ex. A (email correspondence between Chief Boiteux, Chief Uehara, and section chiefs) at LAC-0001965 | **Undisputed**. |

15

## III.    Plaintiff's 2023 Religious Accommodation Request (Nos. 27-49)

| Plaintiff's 2023 Religious Accommodation Request | | |
|---|---|---|
| **No.** | **Uncontroverted Fact and Supporting Evidence** | **Plaintiff's Response** |
| 27. | On June 18, 2023, Plaintiff emailed Chiefs Boiteux, Kyle Power, and Danielle McMillon to request to be exempt from EA-231.<br><br>Portnoi Decl. Ex. H (McMillon Dep. Tr.) 27:4-11<br><br>McMillon Decl. ¶2, Ex. A (email correspondence between Plaintiff, Captain Crum, and Chiefs Boiteux, McMillon, Power, Uehara, and Kim) at LAC-0001549<br><br>TAC ¶¶42-43 | **Undisputed**. |
| 28. | Chiefs Power and McMillon were Plaintiff's usual supervisors in late June 2023.<br><br>Portnoi Decl. Ex. B (Little Dep. Tr.) 26:9-14 | **Undisputed**. |
| 29. | Plaintiff's June 18, 2023 email was forwarded to Renee Nuanes-Delgadillo, who organized an interactive process meeting ("IPM") for June 19, 2023.<br><br>McMillon Decl. ¶2, Ex. A (email correspondence between Plaintiff, Captain Crum, and Chiefs Boiteux, McMillon, Power, Uehara, and Kim) at LAC-0001548-49 | **Undisputed**. |

16

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL
FACT IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| Plaintiff's 2023 Religious Accommodation Request | | |
|---|---|---|
| **No.** | **Uncontroverted Fact and Supporting Evidence** | **Plaintiff's Response** |
| | Portnoi Decl. Ex. G (Nuanes-Delgadillo Dep. Tr.) 100:13-101:18, 116:11-18<br><br>Portnoi Decl. Ex. H, (McMillon Dep. Tr.) 87:25-88:8, 99:10-21 | |
| 30. | Chiefs Uehara and McMillon attended the June 19 IPM to represent the Lifeguard Division chain of command and provide an operational perspective on the feasibility of an accommodation.<br><br>Portnoi Decl. Ex. G (Nuanes-Delgadillo Dep. Tr.) 119:2-6<br><br>Portnoi Decl. Ex. H (McMillon Dep. Tr.) 108:18-22, 109:3-17<br><br>Portnoi Decl. Ex. N (Boiteux Dep. Tr.) 114:3-117:3<br><br>Portnoi Decl. Ex. I (Uehara Dep. Tr.). 47:25-48:5, 48:22-25 | **Undisputed** that Chiefs Uehara and McMillon attended to represent the Lifeguard Division chain of command.<br><br>**Disputed** as to the characterization of their presence as to "provide an operational perspective on the *feasibility* of an accommodation"; rather, they were there to effect options that were already determined to be feasible. *See* McMillon Dep., 108:24-109:17, 115:4-9 [ECF No. 115-8 at 43-44, 50]; Uehara Dep., 48:19-49:1-3 [ECF No. 115-9 at 11-12] |
| 31. | Ms. Nuanes Delgadillo and Rachel Lara attended the June 19 IPM as human resources representatives.<br><br>Portnoi Decl. Ex. G (Nuanes-Delgadillo Dep. Tr.) 18:5-20:6<br><br>Portnoi Decl. Ex. I (Uehara Dep. Tr.). 47:25-49:3 | **Disputed** on the basis that the cited testimony does not support the fact asserted. Nuanes Delgadillo testified:<br><br>"Q. What was -- how would you describe [Rachel Lara's] role in those initial IPM meetings with Captain Little as opposed to your role? A. We both have the same role. We facilitate interactive process meetings or IPMs." Nuanes Delgadillo Dep., 19:11-15 [ECF No. 115-7 at 10] |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| Plaintiff's 2023 Religious Accommodation Request | | |
|---|---|---|
| No. | Uncontroverted Fact and Supporting Evidence | Plaintiff's Response |
| 32. | At the June 19 IPM, Plaintiff explained that he had religious objections to raising the PPF and to working in a place where he could see the PPF flying.<br><br>Portnoi Decl. Ex. G (Nuanes-Delgadillo Dep. Tr.) 170:13-15<br><br>Portnoi Decl. Ex. H (McMillon Dep. Tr.) 107:16-108:1, 118:14-119:1<br><br>Portnoi Decl. Ex. O (Crum Dep. Tr.) 96:21-97:1, 97:7-13, 105:10-106:2, 137:24-138:2<br><br>Portnoi Decl. Ex. I (Uehara Dep. Tr.) 89:2-90:16, 166:15-167:1<br><br>Nuanes-Delgadillo Decl. ¶¶3-4, Ex. A (2023 IPM notes) at LAC-0001488-89, Ex. B (2023 IPM report) at LAC-0000374 | **Undisputed** that Plaintiff explained that he had religious objections to raising the PPF.<br><br>**Disputed** as to the assertion that Plaintiff explained he had religious objections to working in a place where he could see the PPF flying. *See* Jonna MSJ Opp. Decl., Ex. A, Little Dep., 100:17-25, 120:7-12, 120:20-121:4, 121:10-23, 127:3-129:22. |
| 33. | At the June 19 IPM, Plaintiff requested that he either not be required to fly the PPF at Will Rogers Beach or be reassigned to a site where he would not be responsible for flying the PPF.<br><br>Portnoi Decl. Ex. B (Little Dep. Tr.) 120:5-121:4<br><br>Portnoi Decl. Ex. G (Nuanes-Delgadillo Dep. Tr.) 163:18-164:5, 219:3-219:14 | **Undisputed** to the extent Captain Little sought an exemption from personally flying the PPF at Will Rogers Beach.<br><br>**Disputed** that Plaintiff attempted to keep the PPF from being flown to stifle the County's message.<br><br>Captain Little testified that, upon reading EA-231 and the accompanying flow chart, he determined that the flagpole at Will Rogers Beach would not fly a PPF. |

18

| | **Plaintiff's 2023 Religious Accommodation Request** | |
|---|---|---|
| **No.** | **Uncontroverted Fact and Supporting Evidence** | **Plaintiff's Response** |
| | Portnoi Decl. Ex. H (McMillon Dep. Tr.) 118:14-119:1<br><br>Portnoi Decl. Ex. O (Crum Dep. Tr.) 100:13-25, 101:8-16<br><br>Portnoi Decl. Ex. I (Uehara Dep. Tr.) 130:6-12<br><br>Nuanes-Delgadillo Decl. ¶¶3-4, Ex. A (2023 IPM notes) at LAC-0001488, Ex. B (2023 IPM report) at LAC-0000374 | The PPF did not fly at that location for the first three days of June 2023.<br><br>Little Depo., pp.61:5- 63:4<br><br>Kim Decl. ¶3, Ex. B, EA-231 [ECF No. 116-2] |
| 34. | As of June 19, 2023, Plaintiff was assigned to Will Rogers Beach.<br><br>Portnoi Decl. Ex. B (Little Dep. Tr.) 61:13-61:15<br><br>Portnoi Decl. Ex. I (Uehara Dep. Tr.) 110:4-7, 112:18-23, 191:15-19 | **Undisputed**. |
| 35. | Plaintiff did not voice any objections to how two lifeguard towers at Will Rogers Beach were painted with the colors of the Pride Flag.<br><br>Portnoi Decl. Ex. B (Little Dep. Tr.) 118:3-120:4<br><br>Portnoi Decl. Ex. I (Uehara Dep. Tr.) 64:21-23, 110:4-25<br><br>Nuanes-Delgadillo Decl. ¶¶3-4, Ex. A (2023 IPM notes) at LAC-0001489, Ex. B (2023 IPM report) at LAC-0000375 | **Undisputed**.<br><br>**Disputed** as irrelevant. *See* **Obj. No. 13**. |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL
FACT IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| Plaintiff's 2023 Religious Accommodation Request | | |
|---|---|---|
| **No.** | **Uncontroverted Fact and Supporting Evidence** | **Plaintiff's Response** |
| 36. | Plaintiff had previously been assigned to Venice Beach.<br><br>Portnoi Decl. Ex. I (Uehara Dep. Tr.) 110:7-9, 112:18-23 | **Undisputed**. |
| 37. | Plaintiff did not voice any objections to working at Venice Beach, which has had a Pride Flag–painted tower since 2017.<br><br>Portnoi Decl. Ex. I (Uehara Dep. Tr.). 64:14-24, 109:23-110:25, 111:9-15 | **Disputed** that Venice Beach has had a Pride Flag-painted tower since 2017 since that fact is not reflected in any of the citations set forth in support of that assertion.<br><br>**Disputed** as irrelevant. ***See* Obj. No. 14**.<br><br>**Undisputed** as to the remaining allegations of Paragraph 37. |
| 38. | At the June 19 IPM, Plaintiff's chain of command determined that it would be operationally feasible for him to work at Area 33, which covers Malibu Beach, for some dates in June 2023.<br><br>Portnoi Decl. Ex. H (McMillon Dep. Tr.) 98:1-5, 109:18-110:4, 111:20-25, 112:12-17, 126:18-127:8, 187:24-188:6, 190:14-17<br><br>Portnoi Decl. Ex. O (Crum Dep. Tr.) 101:17-102:24, 104:10-105:9<br><br>Portnoi Decl. Ex. I (Uehara Dep. Tr.) 95:3-96:13, 127:12-16, 131:13-133:7<br><br>Nuanes-Delgadillo Decl. ¶¶3-4, Ex. A (2023 IPM notes) at LAC- | **Disputed** as to the characterization of what occurred at the June 19 IPM and what "Plaintiff's chain of command determined" at that meeting as a "determin[ation] that it would be operationally feasible for [Little] to work at Area 33 ... for some dates in June, 2023.<br><br>*See* Nuanes-Delgadillo Decl, Ex. B (2023 IPM report) [ECF No. 116-21]; Uehara Dep., p.95:2-17, pp.126:21-127:22 [ECF No. 115-9 at 36, 55-56]; Nuanes-Delgadillo Dep., p.18:5-8 [ECF No. 115-7 at 9] |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL
FACT IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| | Plaintiff's 2023 Religious Accommodation Request | |
|---|---|---|
| **No.** | **Uncontroverted Fact and Supporting Evidence** | **Plaintiff's Response** |
| | 0001488-89, Ex. B (2023 IPM report) at LAC-0000374-75 | |
| 39. | At the June 19 IPM, Plaintiff was told that there was a PPF flying at Zuma Headquarters, which is near Area 33 and where the Area 33 Captain's office is located, but that he would likely not be responsible for ensuring it was flying it because the Area 30 and Area 34 Captains also work out of that location and could ensure that it was flown.  Portnoi Decl. Ex. B (Little Dep. Tr.) 121:13-121:15, 127:24-127:25  Portnoi Decl. Ex. G (Nuanes-Delgadillo Dep. Tr.) 170:1-170:15  Portnoi Decl. Ex. H (McMillon Dep. Tr.) 109:18-110:4, 111:20-25, 112:12-17, 126:18-127:8, 187:24-188:18, 190:14-17  Portnoi Decl. Ex. O (Crum Dep. Tr.) 101:17-102:24, 104:10-106:2  Portnoi Decl. Ex. I (Uehara Dep. Tr.) 95:2-96:6  Nuanes-Delgadillo Decl. ¶¶3-4, Ex. A (2023 IPM notes) at LAC-0001488-89, Ex. B (2023 IPM report) at LAC-0000374 | **Undisputed.** |
| 40. | At the June 19 IPM, it was explained to Plaintiff that he may | **Undisputed.** |

21

| Plaintiff's 2023 Religious Accommodation Request | | |
|---|---|---|
| **No.** | **Uncontroverted Fact and Supporting Evidence** | **Plaintiff's Response** |
| | still need to ensure that the PPF was flown at Area 33. Portnoi Decl. Ex. B (Little Dep. Tr.) 128:3-129:22. Portnoi Decl. Ex. G (Nuanes-Delgadillo Dep. Tr.) 212:25-213:2 Portnoi Decl. Ex. H (McMillon Dep. Tr.) 109:18-110:4, 111:20-25, 112:12-17, 126:18-127:8, 187:24-188:18, 189:5-14, 190:14-17 Portnoi Decl. Ex. O (Crum Dep. Tr.) 101:17-102:24, 104:10-106:2 Nuanes-Delgadillo Decl. ¶¶3-4, Ex. A (2023 IPM notes) at LAC-0001488-89, Ex. B (2023 IPM report) at LAC-0000374 | |
| 41. | At the June 19 IPM, Plaintiff objected to instructing others to raise the PPF. Portnoi Decl. Ex. H (McMillon Dep. Tr.) 107:15-108:1 Portnoi Decl. Ex. O (Crum Dep. Tr.) 104:20-106:2 Portnoi Decl. Ex. I (Uehara Dep. Tr.) 127:14-16 Nuanes-Delgadillo Decl. ¶¶3-4, Ex. A (2023 IPM notes) at LAC-0001489, Ex. B (2023 IPM report) at LAC-0000374 | **Undisputed**. |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL
FACT IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| Plaintiff's 2023 Religious Accommodation Request | | |
|---|---|---|
| **No.** | **Uncontroverted Fact and Supporting Evidence** | **Plaintiff's Response** |
| 42. | At the June 19 IPM, Plaintiff agreed to work at Area 33.<br><br>Portnoi Decl. Ex. B (Little Dep. Tr.) 127:24-128:1<br><br>Portnoi Decl. Ex. G (Nuanes-Delgadillo Dep. Tr.) 120:13-122:6<br><br>Portnoi Decl. Ex. H (McMillon Dep. Tr.) 126:18-127:8<br><br>Portnoi Decl. Ex. O (Crum Dep. Tr.). 104:10-106:2<br><br>Nuanes-Delgadillo Decl. ¶¶3-4, Ex. A (2023 IPM notes) at LAC-0001488-89, Ex. B (2023 IPM report) at LAC-0000374<br><br>TAC ¶¶49, 52 | **Undisputed**. |
| 43. | At the June 19 IPM, Plaintiff never requested to lower the PPF.<br><br>Portnoi Decl. Ex. B (Little Dep. Tr.) 132:8-16.<br><br>Portnoi Decl. Ex. I (Uehara Dep. Tr.). 285:6-9<br><br>Nuanes-Delgadillo Decl. ¶¶3-4, Ex. A (2023 IPM notes) at LAC-0001488-89, Ex. B (2023 IPM report) at LAC-0000374-75<br><br>Portnoi Decl. Ex. S (Plaintiff's Responses to Requests for Admission) at 6-7 | **Undisputed**.<br><br>**Disputed** as irrelevant. *See* **Obj. No. 15**. |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| Plaintiff's 2023 Religious Accommodation Request | | |
|---|---|---|
| No. | Uncontroverted Fact and Supporting Evidence | Plaintiff's Response |
| 44. | At the end of the June 19 IPM, Ms. Nuanes-Delgadillo informed those present that she needed to follow up with the Department of Human Resources (who she had previously contacted but not yet heard from) and may reconnect regarding Plaintiff's request for a religious accommodation.<br><br>Portnoi Decl. Ex. B (Little Dep. Tr.) 131:22-132:5<br><br>Portnoi Decl. Ex. H (McMillon Dep. Tr.) 109:21-110:4, 111:20-24, 112:12-17<br><br>Portnoi Decl. Ex. O (Crum Dep. Tr.). 112:8-17<br><br>Nuanes-Delgadillo Decl. ¶¶3-4, Ex. A (2023 IPM notes) at LAC-0001489, Ex. B (2023 IPM report) at LAC-0000375 | **Disputed**. The Little and Crum testimony cited in support of the assertion reflects only that they were informed that "if anything changes on either end we would engage again." *See* Little Dep., pp.131:22-132:5 [ECF No. 115-2 at 76-77]; Crum Dep., 112:5-13 [ECF No. 115-15 at 70]; *see also* Jonna MSJ Opp. Decl., Ex. E, McMillon Dep. Ex. 8.<br><br>McMillon testified that after the IPM she sent a June 20, 2023 e-mail because Chief Uehara called her and told her they needed to do a follow-up IPM. McMillon stated she wasn't involved in why the request came to do another follow-up IPM. *See* Jonna MSJ Opp. Decl., Ex. E, McMillon Dep., pp. 136:3-137:20. |
| 45. | Plaintiff did not indicate his disagreement with the characterization of events in Ms. Nuanes-Delgadillo's IPM summary after she emailed it to him on July 13, 2023.<br><br>Portnoi Decl. Ex. B (Little Dep. Tr.) 123:7-14, 126:4-10, 131:9-21 | **Disputed**; Little indicated his disagreement at the time of his deposition.<br><br>At Little's deposition he disputed the statements in the IPM summary that he would like to be placed at a station where the PPF is not flown because "it should read then you would like to be placed at a station where you do not have the responsibilities outlined for the PPF." Little Dep., p.123:12-24 [ECF No. 115-2 at 68] |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| Plaintiff's 2023 Religious Accommodation Request | | |
|---|---|---|
| No. | Uncontroverted Fact and Supporting Evidence | Plaintiff's Response |
| | | He disputed the statement in the IPM summary, "You replied that your main issue is working in a building where the PPF is flown since it goes against your religious beliefs." Nuanes-Delgadillo Decl., Ex. B (2023 IPM report) at LAC-0000374 [ECF No. 116-21 at 2]<br><br>He disputed the statement that it would not be an issue if he was assigned to area 33, where the PPF was flown, because he would not visibly see the flag and the assignment required him to be in the field. Little Dep., p. 126:11-127:4, 131:9-16 [ECF No. 115-2 at 71-72, 76]<br><br>**Disputed** as irrelevant. *See* **Obj. No. 16**. |
| 46. | Prior to Plaintiff's June 18 emailed accommodation request, he had been scheduled for a recall shift on June 21, 2023.<br><br>Portnoi Decl. Ex. B (Little Dep. Tr.) 148:16-149:4<br><br>Portnoi Decl. Ex. H (McMillon Dep. Tr.) 186:13-23, 187:24-188:6<br><br>McMillon Decl. ¶3, Ex. B (text message correspondence between Plaintiff and Chiefs McMillon and Uehara) at LITTLE.00481 | **Disputed** on the basis that the cited materials don't establish the fact that he was scheduled for a recall shift prior to his June 18 religious accommodation request. |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| | Plaintiff's 2023 Religious Accommodation Request | |
|---|---|---|
| **No.** | **Uncontroverted Fact and Supporting Evidence** | **Plaintiff's Response** |
| 47. | Recalls force employees to work on days and/or at locations where they are not already assigned.<br><br>Portnoi Decl. Ex. N (Boiteux Dep. Tr.) 130:22-131:17<br><br>Portnoi Decl. Ex. O (Crum Dep. Tr.) 47:1-10, 68:5-13<br><br>Portnoi Decl. Ex. H (McMillon Dep. Tr.) 105:8-19<br><br>Portnoi Decl. Ex. E (Lester Dep. Tr.) 59:19-60:1<br><br>Portnoi Decl. Ex. I (Uehara Dep. Tr.) 233:24-234:3 | **Undisputed**. |
| 48. | Chief McMillon offered to obtain a recall exemption for Plaintiff for June 21, 2023.<br><br>Portnoi Decl. Ex. H (McMillon Dep. Tr.) 186:17-23, 187:24-188:6<br><br>Portnoi Decl. Ex. M (Gottschalk Dep. Tr.) 25:24-26:1, 42:3-9<br><br>McMillon Decl. ¶3, Ex. B (text message correspondence between Plaintiff and Chiefs McMillon and Uehara) at LITTLE.00481 | **Undisputed**. |
| 49. | Lifeguards have two recall exemptions they can use per year, which allow them to decline a recall shift when they get recalled. | **Undisputed**. |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| Plaintiff's 2023 Religious Accommodation Request | | |
|---|---|---|
| **No.** | **Uncontroverted Fact and Supporting Evidence** | **Plaintiff's Response** |
|  | Portnoi Decl. Ex. O (Crum Dep. Tr.) 107:9-20 |  |

## IV.    Plaintiff's June 21, 2023 Shift at Area 17 (Nos. 50-90)

| Plaintiff's June 21, 2023 Shift at Area 17 | | |
|---|---|---|
| **No.** | **Uncontroverted Fact and Supporting Evidence** | **Plaintiff's Response** |
| 50. | After his June 19 IPM, Plaintiff declined Chief McMillon's recall exemption offer and coordinated to switch shifts with another captain so that he would work at Area 17 on June 21, 2023.<br><br>Portnoi Decl. Ex. B (Little Dep. Tr.) 152:2-153:24, 170:13-170:23<br><br>Portnoi Decl. Ex. H (McMillon Dep. Tr.) 186:17-23, 187:24-188:6<br><br>McMillon Decl. ¶3, Ex. B (text message correspondence between Plaintiff and Chiefs McMillon and Uehara) at LITTLE.00481<br><br>TAC ¶62 | **Disputed** as to the order of events. McMillon testified that she had given Little a Wellness Recall Exemption, but Little declined because he had already agreed to switch shifts so he would work at Area 17. **Otherwise undisputed.** *See* McMillon Dep., 186:18-187:6 [ECF No. 115-9 at 92-93]. |
| 51. | Area 17 encompasses three substation areas, each of which contains multiple lifeguard towers: Dockweiler North ("DWS"), Dockweiler South ("DWS"), and El Segundo. | **Undisputed.** |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| Plaintiff's June 21, 2023 Shift at Area 17 | | |
|---|---|---|
| No. | Uncontroverted Fact and Supporting Evidence | Plaintiff's Response |
| | Lester Decl. ¶6 | |
| 52. | On June 21, 2023, Plaintiff parked at Dockweiler HQ.<br><br>Portnoi Decl. Ex. B (Little Dep. Tr.) 195:5-9 | **Undisputed**. |
| 53. | Dockweiler HQ is a Beaches and Harbors facility, not a Lifeguard Division facility.<br><br>Portnoi Decl. Ex. B (Little Dep. Tr.) 196:16-197:2<br><br>Portnoi Decl. Ex. N (Boiteux Dep. Tr.) 147:10-15<br><br>Portnoi Decl. Ex. O (Crum Dep. Tr.) 115:19-116:17<br><br>Portnoi Decl. Ex. I (Uehara Dep. Tr.) 183:16-22 | **Disputed** on the basis that the Crum testimony lacks foundation, and on the basis that the rest of the cited evidence does not support the proposition. *See* **Obj. No. 7.** |
| 54. | Plaintiff's shifts in June 2023, including on June 21, 2023, started at 10:00 a.m.<br><br>Portnoi Decl. Ex. B (Little Dep. Tr.) 143:4-13, 194:5-12 | **Undisputed** as to the general 10:00 a.m. start time of Plaintiff's shifts in June 2023, but disputed as to a 10:00 a.m. start time on June 21, 2023. *See* Little Dep., p.194:5-12 [ECF No. 115-2 at 122]. |
| 55. | Absent inclement weather, flags are usually raised before 10:00 a.m.<br><br>Portnoi Decl. Ex. B (Little Dep. Tr.) 143:22-144:5 | **Undisputed**. |
| 56. | Plaintiff arrived at the beach on June 21, 2023 to find the PPF flying | **Undisputed** but misleading by omission. *See* Additional Facts. |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| Plaintiff's June 21, 2023 Shift at Area 17 | | |
|---|---|---|
| **No.** | **Uncontroverted Fact and Supporting Evidence** | **Plaintiff's Response** |
| | at Dockweiler South and Dockweiler North. Portnoi Decl. Ex. B (Little Dep. Tr.) 201:12-16 Portnoi Decl. Ex. M (Gottschalk Dep. Tr.) 68:19-21 Gottschalk Decl. ¶¶2-3, Ex. A (July 5, 2023 Gottschalk CPOE interview) at 2:53-3:20, 6:30-38, Ex. B (Aug. 23, 2023 Gottschalk CPOE interview) at 7:30-46 Portnoi Decl. Ex. D (Plaintiff CPOE Interview) at 12:40-52, 17:07-10 Stormer Decl. ¶3, Ex. A (CPOE Investigative Report) at LAC-0000192, LAC-0000196 | |
| 57. | Chief Lester had ensured that the PPF was raised at Dockweiler South and Dockweiler North on June 21 before Plaintiff arrived at work. Portnoi Decl. Ex. B (Little Dep. Tr.) 202:12-18 Portnoi Decl. Ex. M (Gottschalk Dep. Tr.) 111:22-112:18 Portnoi Decl. Ex. E (Lester Dep. Tr.) 69:23-70:7, 75:4-77:9 Portnoi Decl. Ex. I (Uehara Dep. Tr.). 283:23-284:7 | **Undisputed** but misleading by omission. *See* Additional Facts. |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| Plaintiff's June 21, 2023 Shift at Area 17 | | |
|---|---|---|
| No. | Uncontroverted Fact and Supporting Evidence | Plaintiff's Response |
| 58. | OLS Lauren Gottschalk was Plaintiff's direct report on June 21.<br><br>Portnoi Decl. Ex. M (Gottschalk Dep. Tr.) 26:2-5, 171:23-172:3, 187:23-188:5 | **Undisputed.** |
| 59. | Plaintiff asked OLS Gottschalk if she would be okay with him<br><br>removing the PPF at Dockweiler South<br><br>Portnoi Decl. Ex. B (Little Dep. Tr.) 206:14-206:17<br><br>Portnoi Decl. Ex. M (Gottschalk Dep. Tr.) 86:13-15<br><br>Lester Decl. ¶5, Ex. C (CPOE complaint) at LAC-0000180 | **Undisputed.** |
| 60. | OLS Gottschalk told Plaintiff that Chief Lester had ensured the PPF was raised that morning, that she was fine with the PPF up, and that she was concerned about receiving conflicting orders.<br><br>Portnoi Decl. Ex. B (Little Dep. Tr.) 206:5-207:10<br><br>Portnoi Decl. Ex. M (Gottschalk Dep. Tr.) 86:13-15, 87:23-88:24, 101:3-7, 101:22-103:4, 282:2-10<br><br>Portnoi Decl. Ex. E (Lester Dep. Tr.) 144:13-145:2 | **Undisputed** but misleading by omission. *See* Additional Facts.<br><br>To the extent this fact is offered to prove Gottschalk's state of mind and that Gottschalk was actually concerned about conflicting orders (as opposed to merely that she made the statement to Little), the testimony is inadmissible under Fed. R. Evid. 803(3) as a then-existing state of mind. ***See* Obj. No. 8.** |

30

| | Plaintiff's June 21, 2023 Shift at Area 17 | |
|---|---|---|
| **No.** | **Uncontroverted Fact and Supporting Evidence** | **Plaintiff's Response** |
| | Lester Decl. ¶5, Ex. C (CPOE complaint) at LAC-0000180 <br><br> Stormer Decl. ¶3, Ex. A (CPOE Investigative Report) at LAC-0000192, LAC-0000196 | |
| 61. | Plaintiff took down the Dockweiler South PPF himself. <br><br> Portnoi Decl. Ex. B (Little Dep. Tr.) 204:22-205:21 <br><br> Lester Decl. ¶5, Ex. C (CPOE complaint) at LAC-0000180 <br><br> Stormer Decl. ¶3, Ex. A (CPOE Investigative Report) at LAC-0000192, LAC-0000196 | **Undisputed** but misleading by omission. *See* Additional Facts. |
| 62. | Plaintiff then drove to Dockweiler North and El Segundo, removing the PPF at both sites. <br><br> Portnoi Decl. Ex. B (Little Dep. Tr.) 200:2-10, 204:17-205:24, 210:3-13 <br><br> Portnoi Decl. Ex. M (Gottschalk Dep. Tr.) 85:20-22, 86:13-15 <br><br> Stormer Decl. ¶3, Ex. A (CPOE Investigative Report) at LAC-0000196 <br><br> Gottschalk Decl. ¶3, Ex. B (Aug. 23, 2023 Gottschalk CPOE interview) at 12:51-13:18 | **Undisputed** but misleading by omission. *See* Additional Facts. |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| Plaintiff's June 21, 2023 Shift at Area 17 | | |
|---|---|---|
| No. | Uncontroverted Fact and Supporting Evidence | Plaintiff's Response |
| | Portnoi Decl. Ex. D (Plaintiff CPOE interview) at 28:12-49 Hastings Decl. ¶¶4-5, Ex. A (video from El Segundo Beach) | |
| 63. | When Plaintiff removed the PPF at El Segundo, he did so in view of the public and surrounded by participants in the County's junior lifeguard program. Portnoi Decl. Ex. B (Little Dep. Tr.) 214:12-23, 216:1-217:12 Portnoi Decl. Ex. I (Uehara Dep. Tr.) 177:7-14, 290:20-291:4 Hastings Decl. ¶¶4-5, Ex. A (video from El Segundo Beach) | **Disputed as mischaracterizing the record.** The phrase "surrounded by participants in the County's junior lifeguard program" is designed to imply that Little made a spectacle targeting minors. The cited testimony tells a different story. Junior lifeguards happened to be operating in the El Segundo area—as they routinely do during the summer—and Little had no interaction with them. The asserted fact also misstates the cited testimony by exaggerating that Little was "surrounded" by the junior lifeguards. The cited testimony instead says that some junior lifeguards were "in front of" Little. Little Dep. 216:8-217:24 [ECF No. 115-2 at 144-45]; Uehara Dep. 177:7-14, 290:21-23 [ECF No. 115-9 at 96, 168]; Hastings Decl. ¶¶4-5 [ECF No. 115-29]; Lester Dep. 111:22-25 [ECF No. 110-6 at 15] |
| 64. | Junior lifeguard participants are minors. Portnoi Decl. Ex. B (Little Dep. Tr.) 16:12-17 | **Undisputed but irrelevant.** It is undisputed that junior lifeguard participants are 9-17 years old, but this fact is not material to any element of any claim or defense. Defendants pair it with immediately |

| Plaintiff's June 21, 2023 Shift at Area 17 | | |
|---|---|---|
| No. | Uncontroverted Fact and Supporting Evidence | Plaintiff's Response |
| | Portnoi Decl. Ex. M (Gottschalk Dep. Tr.) 13:8-11<br><br>Portnoi Decl. Ex. O (Crum Dep. Tr.) 21:18-20 | preceding Fact 63 solely to create an inflammatory inference that Little's conduct was somehow directed at or harmful to minors. Defendants have offered no evidence into the record that any junior lifeguard was affected by Little's lowering of the PPF. |
| 65. | Chiefs Lester, Uehara, and Boiteux learned of Plaintiff's conduct taking down the PPFs later in the day on June 21, 2023.<br><br>Portnoi Decl. Ex. N (Boiteux Dep. Tr.) 170:9-19<br><br>Portnoi Decl. Ex. E (Lester Dep. Tr.) 105:24-106:11, 108:13-109:18, 111:15-25<br><br>Portnoi Decl. Ex. I (Uehara Dep. Tr.) 172:7-173:1 | **Undisputed** |
| 66. | Chief Lester had not known that Plaintiff requested a religious accommodation until after Plaintiff lowered the PPFs on June 21, 2023.<br><br>Portnoi Decl. Ex. E (Lester Dep. Tr.) 106:13-14 | **Undisputed** |
| 67. | Chief Lester had not known that Plaintiff would be working at Area 17 until after Plaintiff lowered the PPFs on June 21, 2023.<br><br>Portnoi Decl. Ex. E (Lester Dep. Tr.) 102:15-103:3 | **Disputed.**<br><br>Captain Little testified that "a section chief absolutely should know what captains are working in his area. So either [Lester] was incompetent and not doing his job or he did know" in advance that Little would be working |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| Plaintiff's June 21, 2023 Shift at Area 17 | | |
|---|---|---|
| **No.** | **Uncontroverted Fact and Supporting Evidence** | **Plaintiff's Response** |
| | | at Area 17 on June 21, 2023. Jonna MSJ Opp. Decl., Ex. A, Little Dep. 227:9-12. |
| 68. | Chiefs Lester, Uehara, and Boiteux determined, after receiving guidance from the Department of Human Resources, that Plaintiff did not have an accommodation to work only at sites where the PPF was not flown.<br><br>Portnoi Decl. Ex. N (Boiteux Dep. Tr.) 171:7-20<br><br>Portnoi Decl. Ex. E (Lester Dep. Tr.). 114:1-115:16, 117:4-5 | **Disputed.** In collaboration with the Human Resource Department, Chiefs Lester, Uehara, and Boiteux rescinded the prior accommodation offered to Captain Little.<br><br>Jonna MSJ Opp. Decl., Ex. B, Boiteux Dep. pp.143:22-144:11.<br><br>Lester Dep. 114:1-117:5 [ECF No. 110-6 at 18-21] |
| 69. | Chief Lester went to Area 17 to meet with Plaintiff and re-raise the PPF.<br><br>Portnoi Decl. Ex. M (Gottschalk Dep. Tr.) 165:24-166:7, 274:25-275:6<br><br>Portnoi Decl. Ex. E (Lester Dep. Tr.) 118:7-19, 121:23-122:2<br><br>Portnoi Decl. Ex. I (Uehara Dep. Tr.) 177:25-178:3 | **Undisputed.** |
| 70. | On June 21, 2023, after learning that Plaintiff had lowered the PPFs, Chief Lester met privately with Plaintiff at Dockweiler North to discuss Plaintiff's lowering of the PPF. | **Undisputed.** |

| Plaintiff's June 21, 2023 Shift at Area 17 | | |
|---|---|---|
| No. | Uncontroverted Fact and Supporting Evidence | Plaintiff's Response |
| | Portnoi Decl. Ex. B (Little Dep. Tr.) 240:2-5<br><br>Portnoi Decl. Ex. E (Lester Dep. Tr.) 124:14-18 | |
| 71. | Chief Lester has known Plaintiff since high school.<br><br>Portnoi Decl. Ex. B (Little Dep. Tr.) 48:9-15<br><br>Portnoi Decl. Ex. E (Lester Dep. Tr.) 13:11 | **Undisputed but irrelevant.** *See* **Obj. No. 17.** |
| 72. | Chief Lester came up through the lifeguard ranks with Plaintiff.<br><br>Portnoi Decl. Ex. B (Little Dep. Tr.) 48:9-50:9<br><br>Portnoi Decl. Ex. E (Lester Dep. Tr.) 13:11-22:22 | **Undisputed but irrelevant.** *See* **Obj. No. 18.** |
| 73. | Chief Lester considers Plaintiff a friend.<br><br>Portnoi Decl. Ex. E (Lester Dep. Tr.) 13:21-22 | **Undisputed** as to what Lester believes.<br><br>**Disputed** as to whether Lester and Plaintiff Little are actually friends. Little does not consider Lester to be a friend since they have not spoken since 2023.<br><br>Little Depo., p.50:14-18 [ECF No. 115-2 at 30]<br><br>Disputed as irrelevant. *See* **Obj. No. 19**. |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL
FACT IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| Plaintiff's June 21, 2023 Shift at Area 17 | | |
|---|---|---|
| No. | Uncontroverted Fact and Supporting Evidence | Plaintiff's Response |
| 74. | Chief Lester attended Plaintiff's wedding.<br><br>Portnoi Decl. Ex. B (Little Dep. Tr.) 49:12-13<br><br>Portnoi Decl. Ex. E (Lester Dep. Tr.) 20:23-21:1, 25:24-26:3 | **Undisputed but irrelevant.** *See* **Obj. No. 20.** |
| 75. | When they spoke on June 21, 2023, Chief Lester asked if Plaintiff would re-raise the PPF.<br><br>Portnoi Decl. Ex. B (Little Dep. Tr.) 242:15-17<br><br>Portnoi Decl. Ex. E (Lester Dep. Tr.) 125:6-9, 125:17-18, 126:6-15 | **Disputed.** Chief Lester ordered Plaintiff to put the flag up.<br><br>Little Depo., p.242:15-16 [ECF No. 115-2 at 156] |
| 76. | When he spoke with Chief Lester on June 21, 2023, Plaintiff refused to re-raise the PPF, citing his religious beliefs.<br><br>Portnoi Decl. Ex. B (Little Dep. Tr.) 242:15-17<br><br>Portnoi Decl. Ex. E (Lester Dep. Tr.) 126:16-18<br><br>Portnoi Decl. ¶2, Ex. A (text message communications between Plaintiff and Captain Crum) at LITTLE.00257, LITTLE.01083 | **Undisputed** |
| 77. | After Plaintiff refused to re-raise the PPF on June 21, 2023, and cited his religious beliefs, Chief Lester said that he would re-raise it himself and | **Undisputed** |

| Plaintiff's June 21, 2023 Shift at Area 17 | | |
|---|---|---|
| No. | Uncontroverted Fact and Supporting Evidence | Plaintiff's Response |
| | ensure that someone else lowered it at the end of the day. Portnoi Decl. Ex. B (Little Dep. Tr.) 242:24-243:5 Portnoi Decl. Ex. E (Lester Dep. Tr.) 126:19-127:25, 138:16-139:1, 140:8-19 Portnoi Decl. ¶2, Ex. A (text message communications between Plaintiff and Captain Crum) at LITTLE.00257, LITTLE.01083 | |
| 78. | On June 21, 2023, Plaintiff did not re-raise the PPFs in Area 17 after speaking with Chief Lester. Portnoi Decl. Ex. B (Little Dep. Tr.) 243:1-8 Portnoi Decl. Ex. E (Lester Dep. Tr.) 126:23-25, 127:9-10 | **Undisputed** |
| 79. | Chief McMillon had notified Plaintiff of the need for a second IPM on June 20, 2023 at 3:47 p.m. Portnoi Decl. Ex. H (McMillon Dep. Tr.) 132:14-23 McMillon Decl. ¶3, Ex. B (text message correspondence between Plaintiff and Chiefs McMillon and Uehara) at LITTLE.00482 | **Undisputed.** |
| 80. | After Chief Lester spoke with Plaintiff on June 21, 2023, Ms. | **Undisputed** as to the fact that Ms. Nuanes-Delgadillo convened a |

| Plaintiff's June 21, 2023 Shift at Area 17 | | |
|---|---|---|
| **No.** | **Uncontroverted Fact and Supporting Evidence** | **Plaintiff's Response** |
| | Nuanes-Delgadillo convened a second IPM with Plaintiff.<br><br>Portnoi Decl. Ex. G (Nuanes-Delgadillo Dep. Tr.) 154:12-14<br><br>Portnoi Decl. Ex. B (Little Dep. Tr.) 251:2-11 | second IPM with Plaintiff on June 21; **Disputed** as unsupported by the cited evidence as to when it occurred in relation to speaking with Chief Lester. |
| 81. | At the time of Plaintiff's second IPM, Ms. Nuanes-Delgadillo did not know that Plaintiff had lowered the PPFs at Area 17 on June 21, 2023.<br><br>Portnoi Decl. Ex. G (Nuanes-Delgadillo Dep. Tr.) 149:3-151:6 | **Undisputed** |
| 82. | Ms. Nuanes-Delgadillo learned that Plaintiff had lowered the PPFs at Area 17 from Plaintiff in 2024.<br><br>Portnoi Decl. Ex. G (Nuanes-Delgadillo Dep. Tr.) 149:3-151:6 | **Disputed**. Nuanes-Delgadillo testified that she learned of Plaintiff's actions "[r]ecently through counsel," and Plaintiff merely sent her a document in 2024 "referencing" it, but it was not something she would discuss with Little and she didn't know the details of what happened.<br><br>Nuanes-Delgadillo Depo. pp.149:9-150:13 [ECF No. 115-7 at 33-34] |
| 83. | At the June 21 IPM, Plaintiff was informed that not wanting to work under the PPF did not qualify him for an accommodation because there was no interference with a religious practice. | **Undisputed** to the extent that's what Plaintiff was told,<br><br>**Disputed** that Plaintiff's requested accommodation was "not wanting to work under the PPF," and that Defendants' denial of his accommodation request did not |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| Plaintiff's June 21, 2023 Shift at Area 17 | | |
|---|---|---|
| **No.** | **Uncontroverted Fact and Supporting Evidence** | **Plaintiff's Response** |
| | Portnoi Decl. Ex. G (Nuanes-Delgadillo Dep. Tr.) 172:18-173:21<br><br>Portnoi Decl. Ex. O (Crum Dep. Tr.) 141:9-16, 144:7-15<br><br>Portnoi Decl. Ex. H (McMillon Dep. Tr.) 127:25-128:3<br><br>Nuanes-Delgadillo Decl. ¶¶3-4, Ex. A (2023 IPM notes) at LAC-0001490, Ex. B (2023 IPM report) at LAC-0000375 | interfere with his religious practice.<br><br>Jonna MSJ Opp. Decl., Ex. A, Little Depo. pp.34:24-35:10<br><br>Little Depo., pp.107:8-21, 124:1-5, 129:23-130:13 [ECF No. 115-2 at 57, 69, 74-75] |
| 84. | At the June 21 IPM, Plaintiff was informed that case law and County policies did not require the granting of his accommodation request.<br><br>Portnoi Decl. Ex. G (Nuanes-Delgadillo Dep. Tr.) 174:6-9<br><br>Portnoi Decl. Ex. H (McMillon Dep. Tr.) 122:12-22, 142:1-11, 149:19-150:10<br><br>Nuanes-Delgadillo Decl. ¶¶3-4, Ex. A (2023 IPM notes) at LAC-0001490, Ex. B (2023 IPM report) at LAC-0000375 | **Undisputed** to the extent the County informed Plaintiff that, in the County's view, caselaw does not require excusing someone from working in the presence of the PPF.<br><br>**Disputed** to the extent the County did not discuss whether the religious accommodation that Captain Little sought—to not raise the PPF himself—would pose a burden on fire department operations.<br><br>Jonna MSJ Opp. Decl., Ex. F, Nuanes-Delgadillo Depo. p.127:3-13 |
| 85. | At the June 21 IPM, Plaintiff asked to submit time-off requests for the rest of June.<br><br>Portnoi Decl. Ex. G (Nuanes-Delgadillo Dep. Tr.) 184:4-11 | **Undisputed** |

| Plaintiff's June 21, 2023 Shift at Area 17 | | |
|---|---|---|
| No. | Uncontroverted Fact and Supporting Evidence | Plaintiff's Response |
| | Portnoi Decl. Ex. O (Crum Dep. Tr.) 143:21-144:15 <br><br> Nuanes-Delgadillo Decl. ¶¶3-4, Ex. A (2023 IPM notes) at LAC-0001491, Ex. B (2023 IPM report) at LAC-0000376 | |
| 86. | At the June 21 IPM, Plaintiff was told that time-off requests would be handled by chain of command, outside the IPM process. <br><br> Portnoi Decl. Ex. G (Nuanes-Delgadillo Dep. Tr.) 184:4-11 <br><br> Portnoi Decl. Ex. O (Crum Dep. Tr.) 144:7-15 <br><br> Nuanes-Delgadillo Decl. ¶¶3-4, Ex. A (2023 IPM notes) at LAC-0001491, Ex. B (2023 IPM report) at LAC-0000376 | **Undisputed** as to what Plaintiff was told. <br><br> **Disputed** as to whether time-off requests, based on a religious accommodation request, are normally handled outside of the IPM process. <br><br> Jonna MSJ Opp. Decl., Ex. E, McMillon Depo., Ex. 5 at p.1; <br><br> Jonna MSJ Opp. Decl., Ex. D, Lester Depo., pp.54:2-55:10, 56:15-57:24; <br><br> Jonna MSJ Opp. Decl., Ex. G, Power Depo., pp.35:25-37:1; <br><br> Crum Depo., pp.50:20-54:16 [ECF No. 115-15 at 22-26] |
| 87. | At the June 21 IPM, Plaintiff asked whether he could remain at Area 33 for the remainder of June 2023. <br><br> Portnoi Decl. Ex. B (Little Dep. Tr.) 104:9-16 <br><br> Nuanes-Delgadillo Decl. ¶¶3-4, Ex. A (2023 IPM notes) at LAC-0001491, Ex. B (2023 IPM report) at LAC-0000376 | **Undisputed** |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| Plaintiff's June 21, 2023 Shift at Area 17 | | |
|---|---|---|
| No. | Uncontroverted Fact and Supporting Evidence | Plaintiff's Response |
| 88. | At the June 21 IPM, Chief McMillon told Plaintiff that he would return to his normal assignment on either June 29 or 30, 2023.<br><br>Portnoi Decl. Ex. H (McMillon Dep. Tr.) 152:16-23<br><br>Nuanes-Delgadillo Decl. ¶¶3-4, Ex. A (2023 IPM notes) at LAC-0001491, Ex. B (2023 IPM report) at LAC-0000376 | **Undisputed** |
| 89. | On June 21, 2023, Plaintiff emailed Chief Uehara asking to use his benefit time to take off his shifts for the rest of June.<br><br>Uehara Decl. ¶4, Ex. B (email correspondence between Plaintiff and Chief Uehara) | **Undisputed** |
| 90. | On June 21, 2023, Chief Uehara emailed Plaintiff that he could use his benefit time "as long as it did not cause a recall," and that he could use a time exchange with another Captain.<br><br>Portnoi Decl. Ex. I (Uehara Dep. Tr.) 237:24-238:3, 263:14-22<br><br>Uehara Decl. ¶4, Ex. B (email correspondence between Plaintiff and Chief Uehara) | **Undisputed** as to what Chief Uehara emailed Plaintiff Little.<br><br>**Disputed** that allowing benefit time only if it didn't cause a recall was a legitimate accommodation, given that taking benefit time at that time of year would invariably cause a recall; thus, Uehara's email was effectively a denial of Plaintiff Little's accommodation request.<br><br>Little Depo., p.282:19-24 [ECF No. 115-2 at 187]; Crum Depo., pp.60:25-61:3, 62:19-63:2 [ECF No. |

41

| Plaintiff's June 21, 2023 Shift at Area 17 | | |
|---|---|---|
| No. | Uncontroverted Fact and Supporting Evidence | Plaintiff's Response |
| | | 115-15 at 32-35] <br><br> Further, the fire department had never previously denied any employee an accommodation on the basis that granting it could cause a recall. <br><br> Jonna MSJ Opp. Decl., Ex. C, Kim Depo., pp.144:13-25; 145:18-146:3 |

## V.   Effects of Recalls on the County (Nos. 91-104)

| Effects of Recalls on the County | | |
|---|---|---|
| No. | Uncontroverted Fact and Supporting Evidence | Plaintiff's Response |
| 91. | Lifeguards bid on benefit time annually, so their schedules are determined during the preceding calendar year. <br><br> Portnoi Decl. Ex. B (Little Dep. Tr.) 275:16-276:10 <br><br> Portnoi Decl. Ex. N (Boiteux Dep. Tr.) 230:19-231:11 <br><br> Portnoi Decl. Ex. O (Crum Dep. Tr.) 49:6-51:6, 61:12-62:14 <br><br> Portnoi Decl. Ex. E (Lester Dep. Tr.) 55:13-17 | **Undisputed**. |

| Effects of Recalls on the County | | |
|---|---|---|
| No. | Uncontroverted Fact and Supporting Evidence | Plaintiff's Response |
| | Portnoi Decl. Ex. I (Uehara Dep. Tr.) 99:8-14, 234:16-20, 236:22-237:7<br><br>Kim Decl. ¶7, Ex. E ("L Manual") at LAC-0003412 | |
| 92. | Lifeguards have certain job protections, and the County's ability to alter schedules and assignments is circumscribed.<br><br>Portnoi Decl. Ex. O (Crum Dep. Tr.) 51:12-15<br><br>Portnoi Decl. Ex. E (Lester Dep. Tr.) 55:4-8, 55:17-21, 58:8-10, 161:23-162:18<br><br>Portnoi Decl. Ex. I (Uehara Dep. Tr.) 92:17-23, 223:12-19<br><br>Kim Decl. ¶6, Ex. D (Memorandum of Understanding) at LITTLE.00815 | **Disputed.** Lifeguard management retains unilateral power to change work location, workweek or daily shift time with five days' notice, make changes for employees working fewer than 40 hours per week without notice, make changes for emergencies without defining what constitutes an emergency, and make temporary changes to work location without notice.<br><br>Kim Decl. ¶6, Ex. D (Memorandum of Understanding) at LITTLE.00815 [ECF Nos. 116, 116-4] |
| 93. | The County is subject to a memorandum of understanding ("MOU") between itself and the L.A. County Lifeguard Association ("LACoLA"), the County's collective bargaining unit.<br><br>Portnoi Decl. Ex. Q (Kim Dep. Tr.) 129:10-19, 132:4-9<br><br>Portnoi Decl. Ex. J (O'Brien Dep. Tr.) 119:17-19 | **Undisputed.** |

43

| Effects of Recalls on the County | | |
|---|---|---|
| **No.** | **Uncontroverted Fact and Supporting Evidence** | **Plaintiff's Response** |
|  | Portnoi Decl. Ex. O (Crum Dep. Tr.) 42:19-43:6<br><br>Kim Decl. ¶6, Ex. D (Memorandum of Understanding) |  |
| 94. | The MOU is akin to a collective bargaining agreement, signed by the President of LACoLA and the Chief Executive Officer of the County.<br><br>Portnoi Decl. Ex. Q (Kim Dep. Tr.) 129:10-19, 132:4-9<br><br>Portnoi Decl. Ex. F (Power Dep. Tr.) 66:4-10<br><br>Kim Decl. ¶6, Ex. D (Memorandum of Understanding) at LITTLE.00856 | **Undisputed.** |
| 95. | Under the MOU, lifeguards have certain job protections, including that the County generally cannot unilaterally alter schedules and assignments.<br><br>Portnoi Decl. Ex. Q (Kim Dep. Tr.) 132:4-9<br><br>Portnoi Decl. Ex. O (Crum Dep. Tr.) 44:7-45:4, 56:11-14<br><br>Kim Decl. ¶6, Ex. D (Memorandum of Understanding) at LITTLE.00815 | **Disputed.** This provision only applies to employees who are scheduled on a minimum 40-hour workweek, not to all lifeguards, and because the same policy permits temporary assignments to different work locations.<br><br>Kim Decl. ¶6, Ex. D (Memorandum of Understanding) at LITTLE.00815 [ECF Nos. 116, 116-4] |
| 96. | Except in the case of emergencies, the County cannot change a lifeguard's work location, | **Disputed.** This provision only applies to employees who are scheduled on a minimum 40-hour |

44

| No. | Uncontroverted Fact and Supporting Evidence | Plaintiff's Response |
|---|---|---|
| **Effects of Recalls on the County** | | |
| | workweek, or daily shift time less than five days in advance.<br><br>Portnoi Decl. Ex. O (Crum Dep. Tr.) 44:7-45:4, 56:11-14<br><br>Kim Decl. ¶6, Ex. D (Memorandum of Understanding) at LITTLE.00815 | workweek, not to all lifeguards, and because the same policy permits temporary assignments to different work locations.<br><br>Kim Decl. ¶6, Ex. D (Memorandum of Understanding) at LITTLE.00815 [ECF Nos. 116, 116-4]<br><br>Furthermore, the County could presumably change a lifeguard's work location and/or shift time less than five days in advance for the purposes of accommodating in instances where there is a willing swap partner.<br><br>Jonna MSJ Opp. Decl., Ex. G, Power Depo., pp.34:25-37:1 |
| 97. | There are minimum staffing requirements for captains in summer months due to public safety concerns.<br><br>Portnoi Decl. Ex. N (Boiteux Dep. Tr.) 116:20-23<br><br>Portnoi Decl. Ex. H (McMillon Dep. Tr.) 62:16-63:5, 101:12-14, 103:13-104:5, 104:12-17, 105:8-19, 105:25-105:2<br><br>Portnoi Decl. Ex. O (Crum Dep. Tr.) 47:1-10 | **Disputed** on the basis that the cited evidence does not support the statement.<br><br>Boiteux testified that there are general minimum staffing requirements to operate beaches, but did not discuss minimum staffing requirements for captains during summer months.<br><br>Boiteux Depo., p.116:20-23 [ECF No. 115-14 at 19]<br><br>McMillon testified to the recall exemption policy, an unexplained minimum staffing requirement, a maximum amount of time off per rank each week, a need for staffed |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| Effects of Recalls on the County | | |
|---|---|---|
| No. | Uncontroverted Fact and Supporting Evidence | Plaintiff's Response |
| | Portnoi Decl. Ex. L (Mayfield Dep. Tr. Vol. I) 134:21-135:5, 135:25-136:10<br><br>Portnoi Decl. Ex. F (Power Dep. Tr.) 38:3-5<br><br>Portnoi Decl. Ex. I (Uehara Dep. Tr.) 99:15-20, 207:10-22, 243:11-21, 244:7-14 | beaches, how recalls operate to fill shifts, and the existence of minimum staffing, but did not discuss minimum staffing requirements for captains during summer months.<br><br>McMillon Depo., pp.62:16-63:5 [ECF No. 115-8 at 20], 101:12-14 [ECF No. 115-8 at 36], 103:13-104:5 [ECF No. 115-8 at 38-39], 104:12-17 [ECF No. 115-8 at 39], 105:8-19 [ECF No. 115-8 at 40], 106:1-2 [ECF No. 115-8 at 41]<br><br>Crum testified that recalls are how open schedules are backfilled for public safety, but did not discuss minimum staffing requirements for captains during summer months.<br><br>Crum Depo., p.47:1-10 [ECF No. 115-15 at 19]<br><br>Mayfield testified that he did not know a vacancy or vacation schedule for a particular day, and discussed a hypothetical situation involving vacancies, but did not discuss minimum staffing requirements for captains during summer months.<br><br>Mayfield Depo., pp.134:21-135:5 [ECF No. 115-12 at 16-17], 135:25-136:10 [ECF No. 115-12 at 17-18]<br><br>Power mentioned the existence of minimum staffing levels, but did not discuss minimum staffing requirements for captains during |

46

| Effects of Recalls on the County | | |
|---|---|---|
| No. | Uncontroverted Fact and Supporting Evidence | Plaintiff's Response |
| | | summer months. |
| | | Power Depo., p.38:3-5 [ECF No. 115-6 at 15] |
| 98. | Many lifeguard employees take preapproved vacation time in the summer.<br><br>Portnoi Decl. Ex. B (Little Dep. Tr.) 72:25-73:13<br><br>Portnoi Decl. Ex. H (McMillon Dep. Tr.) 62:16-63:5, 103:13-104:5<br><br>Portnoi Decl. Ex. O (Crum Dep. Tr.) 62:19-63:2, 106:20-108:17<br><br>Portnoi Decl. Ex. I (Uehara Dep. Tr.) 204:8-11, 258:9-13 | **Disputed**. Although summer is a popular time for lifeguard employees to *request* vacation time, testimony does not show that many lifeguard employees *in fact* take vacation time in the summer, due to vacation restrictions.<br><br>Little testified that vacations are one factor, alongside injuries, that cause recalls during the summer, but did not state that many lifeguard employees take vacation time during the summer.<br><br>Little Depo., pp.72:25-73:13 [ECF No. 115-2 at 44-45]<br><br>McMillon testified as to how the recall exemption pilot program worked and how benefit time works, but did not discuss summer vacation time at all.<br><br>McMillon Depo., pp.62:16-63:5 [ECF No. 115-8 at 20-21], 103:13-104:5 [ECF No. 115-8 at 38-39]<br><br>Crum testified that vacation is more sought after during the holidays and summer than other times of year, and that recalls are based on seniority, but did not state that many lifeguard employees do in fact take vacation |

| Effects of Recalls on the County | | |
|---|---|---|
| No. | Uncontroverted Fact and Supporting Evidence | Plaintiff's Response |
| | | time during the summer. Crum Depo., pp.62:19-63:2 [ECF No. 115-15 at 34-35], 108:13-17 [ECF No. 115-15 at 66] Uehara testified that employees bid in advance for summertime vacation, and that he wanted to avoid letting many people take time off during the summertime, but did not state that many lifeguard employees do in fact take vacation time during the summer. Uehara Depo., pp.204:8-11 [ECF No. 115-9 at 112], 258:9-13 [ECF No. 115-9 at 150] |
| 99. | Recalls jeopardize the Lifeguard Division's public safety mission. Portnoi Decl. Ex. E (Lester Dep. Tr.) 55:4-8, 59:19-60:1, 163:11-164:13 Portnoi Decl. Ex. I (Uehara Dep. Tr.) 92:23-93:2, 99:15-24, 258:4-258:18 Portnoi Decl. Ex. O (Crum Dep. Tr.) 47:1-10 | **Disputed.** Deponents consistently show that recalls serve, rather than jeopardize, public safety. Lester testified to the need to have someone at every beach, and the need to fill shifts using recalls, but did not state that recalls themselves jeopardize safety. Lester Depo., pp.55:4-8 [ECF No. 110-5 at 39], 59:18-25 [ECF No. 110-5 at 43], 164:11-15 [ECF No. 110-6 at 66] Uehara testified that proposed accommodations are considered in light of how they could affect safety, that captains are necessary during summer, and that captains cannot |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| Effects of Recalls on the County | | |
|---|---|---|
| No. | Uncontroverted Fact and Supporting Evidence | Plaintiff's Response |
| | | take time off during summer and holidays for whatever reason they wanted, but did not state that recalls themselves jeopardize public safety.<br><br>Uehara Depo., pp.92:17-93:2 [ECF No. 115-9 at 33-34], 99:15-20 [ECF No. 115-9 at 40], 258:4-18 [ECF No. 115-9 at 150]<br><br>Crum only testified that recalls are how open schedules are backfilled for public safety, but did not state that recalls themselves jeopardize public safety.<br><br>Crum Depo., p.47:1-10 [ECF No. 115-15 at 19] |
| 100. | Recalls impinge on employees' physical and mental health.<br><br>Portnoi Decl. Ex. I (Uehara Dep. Tr.) 92:23-93:2, 99:15-100:2, 258:4-258:13, 260:17-22<br><br>Portnoi Decl. Ex. E (Lester Dep. Tr.) 158:22-159:5<br><br>Portnoi Decl. Ex. Q (Kim Dep. Tr.) 114:17-116:19<br><br>Kim Decl. ¶8, Ex. F (Wellness Recall Exemption Pilot Program), Ex. G (Addressing Fire Department Workplace Trauma or Potential Workplace Trauma resolution) | **Disputed**. Chief Uehara did not testify to impacts of recalls on physical and mental health. Uehara instead testified regarding consideration of operations and safety issues in granting an accommodation, fairness to other captains that would also like to take time off, and captains not wanting to work more recalls, but did not link recalls with health.<br><br>Uehara Depo., pp.92:23-93:2 [ECF No. 115-9 at 33-34], 99:12-20 [ECF No. 115-9 at 40], 258:4-8 [ECF No. 115-9 at 150], 260:17-22 [ECF No. 115-9 at 152]<br><br>Lester testified that people get frustrated by recalls, but did not link |

| Effects of Recalls on the County | | |
|---|---|---|
| **No.** | **Uncontroverted Fact and Supporting Evidence** | **Plaintiff's Response** |
| | | recalls with health. |
| | | Lester Depo., p.159:4-5 [ECF No. 110-6 at 39] |
| | | Kim's testimony is **disputed** as hearsay, because Kim only testified that "you can ask any firefighter. It always ties back into the recalls." ***See* Obj. No. 9.** |
| | | Kim Depo., pp.114:17-116:19 [ECF No. 115-17 at 10-12] |
| 101. | On June 22, 2021, the Board issued a Board Motion, "Addressing Fire Department Workplace Trauma or Potential Workplace Trauma," in response to a murder and attempted murder, and subsequent suicide, perpetrated by a firefighter against two other firefighters.<br><br>Portnoi Decl. Ex. Q (Kim Dep. Tr.) 114:17-118:20<br><br>Kim Decl. ¶8, Ex. G (Addressing Fire Department Workplace Trauma or Potential Workplace Trauma resolution) | **Undisputed** but misleading by omission. *See* Additional Facts.<br><br>**Disputed** as irrelevant. ***See* Obj. No. 21.** |
| 102. | The Board Motion directed the Fire Department's Executive Staff to draft a report that, in relevant part, addressed how to "[r]educ[e] staff recall due to vacancies and injury vacancies by at least 50% by March 1, 2022." | **Undisputed** but misleading by omission. *See* Additional Facts.<br><br>**Disputed** as irrelevant. ***See* Obj. No. 22.** |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL
FACT IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| Effects of Recalls on the County | | |
|---|---|---|
| **No.** | **Uncontroverted Fact and Supporting Evidence** | **Plaintiff's Response** |
| | Portnoi Decl. Ex. Q (Kim Dep. Tr.) 114:17-118:20<br><br>Kim Decl. ¶8, Ex. G (Addressing Fire Department Workplace Trauma or Potential Workplace Trauma resolution) at LAC-0003272-73 | |
| 103. | The Lifeguard Division's staffing and vacancy issues—particularly at the captain level—contributed to increased recalls in 2023 and, as a result, mental health issues.<br><br>Portnoi Decl. Ex. N (Boiteux Dep. Tr.) 227:21-24<br><br>Portnoi Decl. Ex. Q (Kim Dep. Tr.) 115:9-17<br><br>Portnoi Decl. Ex. I (Uehara Dep. Tr.) 260:17-22 | **Disputed**. Neither Boiteux nor Uehara testified to mental health issues caused by increased recalls among lifeguards in 2023, nor do they testify to vacancies. Boiteux only discussed captain staffing problems due to injuries in 2023. Uehara stated that captains did not want to work additional recalls.<br><br>Further **disputed** because Kim testified to the murder, suicide, and attempted murder in the firefighter community in 2021, but offered no evidence of mental health issues linked to lifeguard captain recalls in 2023. Kim's testimony repeating statements from the LACoLA union in 2021 are hearsay and do not show increased recalls nor a link between increased recalls and mental health issues among lifeguard captains. *See* **Obj. No. 10.**<br><br>Kim Depo., pp.114:7-116:19 [ECF No. 115-17 at 10-12]<br><br>Further **disputed** because the statement ignores the documented mental health issues the Division |

| Effects of Recalls on the County | | |
|---|---|---|
| **No.** | **Uncontroverted Fact and Supporting Evidence** | **Plaintiff's Response** |
| | | created for Captain Little by denying an exemption.<br><br>Boiteux Depo., p.227:21-24 [ECF No. 115-14 at 55]; Uehara Depo., p.260:17-22 [ECF No. 115-9 at 152]; Kim Depo., pp.114:17-25 [ECF No. 115-17 at 114], 117:19-24 [ECF No. 115-17 at 13]; Little Depo., pp.246:4-11 [ECF No. 115-2 at 160], 273:3-274:12 [ECF No. 115-2 at 178-179] |
| 104. | Recalls cost additional money for overtime for recalled staff.<br><br>Portnoi Decl. Ex. I (Uehara Dep. Tr.) 249:8-12, 251:9-21, 252:3-13, 253:15-23, 257:7-257:22<br><br>Portnoi Decl. Ex. N (Boiteux Dep. Tr.) 215:8-215:23 | **Disputed**. "Additional money" lacks context. The fire department budget is $1.5 billion, whereas the cost of an overtime shift is $800.<br><br>Jonna MSJ Opp. Decl., Ex. B, Boiteux Depo., pp.24:6-8,<br><br>Boiteux Dep., p.215:22-23 [ECF No. 115-14 at 50]<br><br>**Undisputed** to the extent that there is a *de minimis* cost associated to recall staff. |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**VI.     Chief Lester's CPOE Complaint Regarding Plaintiff's June 21, 2023 Conduct (Nos. 105-114)**

| Chief Lester's CPOE Complaint Regarding Plaintiff's June 21, 2023 Conduct | | |
|---|---|---|
| **No.** | **Uncontroverted Fact and Supporting Evidence** | **Plaintiff's Response** |
| 105. | Chief Lester spoke with OLS Gottschalk on June 21, 2023 regarding Plaintiff's lowering of the PPFs.<br><br>Portnoi Decl. Ex. M (Gottschalk Dep. Tr.) 165:24-166:7<br><br>Portnoi Decl. Ex. E (Lester Dep. Tr.) 128:1-129:12 | **Undisputed**. |
| 106. | When they spoke, OLS Gottschalk informed Chief Lester that Plaintiff's lowering the PPF had been in public view.<br><br>Portnoi Decl. Ex. M (Gottschalk Dep. Tr.) 144:17-20, 166:12-167:5, 196:13-197:2, 199:10-15, 201:1-12<br><br>Portnoi Decl. Ex. E (Lester Dep. Tr.) 128:12-129:12 | **Undisputed**. |
| 107. | Chief Lester believed that Plaintiff's conduct made OLS Gottschalk uncomfortable and constituted a potential violation of the County Policy of Equity ("CPOE").<br><br>Portnoi Decl. Ex. E (Lester Dep. Tr.) 129:13-130:6, 134:2-19, 134:24-135:7<br><br>Portnoi Decl. Ex. M (Gottschalk Dep. Tr.) 171:15-18 | **Undisputed** to the extent Defendant Chief Lester contends that he believed Plaintiff's conduct made Gottschalk "uncomfortable" and potentially violated the CPOE. |

| Chief Lester's CPOE Complaint Regarding Plaintiff's June 21, 2023 Conduct | | |
|---|---|---|
| No. | Uncontroverted Fact and Supporting Evidence | Plaintiff's Response |
| 108. | Chief Lester is a mandated reporter of violations of the CPOE.<br><br>Portnoi Decl. Ex. P (Stormer Dep. Tr.) 44:6-45:15<br><br>Portnoi Decl. Ex. E (Lester Dep. Tr.) 129:13-20, 130:2-6 , 134:24-135:7 | **Undisputed**. |
| 109. | Failure to file a CPOE complaint as a mandated reporter can lead to discipline.<br><br>Portnoi Decl. Ex. E (Lester Dep. Tr.) 135:4-7<br><br>Portnoi Decl. Ex. P (Stormer Dep. Tr.) 53:4-16 | **Undisputed** to the extent that a given situation gives rise to the duty of a Mandatory Reporter to report. |
| 110. | Chief Lester filed a CPOE complaint the evening of June 21, 2023.<br><br>Portnoi Decl. Ex. E (Lester Dep. Tr.) 130:16-131:1<br><br>Lester Decl. ¶5, Ex. C (CPOE complaint) | **Undisputed** that Chief Lester filed a CPOE complaint against Captain Little on June 21, 2023. |
| 111. | The CPOE complaint that Chief Lester filed related to Plaintiff's request that OLS Gottschalk lower the PPF at Dockweiler South and Plaintiff's subsequent lowering of the PPF.<br><br>Lester Decl. ¶5, Ex. C (CPOE complaint) at LAC-0000180-81 | ■■■■■■■■■■■■■■■■ |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| Chief Lester's CPOE Complaint Regarding Plaintiff's June 21, 2023 Conduct | | |
|---|---|---|
| No. | Uncontroverted Fact and Supporting Evidence | Plaintiff's Response |
| | | ███████████████ |
| 112. | The CPOE complaint that Chief Lester filed did not relate to Plaintiff's inability to fulfill his job requirements.<br><br>Lester Decl. ¶5, Ex. C (CPOE complaint) at LAC-0000180-81 | **Undisputed**. |
| 113. | Lifeguards other than OLS Gottschalk contacted Chief Lester and Chief Uehara regarding Plaintiff's actions lowering the PPF on June 21, 2023.<br><br>Portnoi Decl. Ex. E (Lester Dep. Tr.) 171:4-7<br><br>Portnoi Decl. Ex. I (Uehara Dep. Tr.) 289:17-290:23<br><br>Lester Decl. ¶4, Ex. B (text message correspondence between ocean lifeguard specialist and Chief Lester)<br><br>Uehara Decl. ¶3, Ex. A (text message correspondence between ocean lifeguard and Chief Uehara) | **Undisputed**. |
| 114. | One lifeguard took a video of Plaintiff lowering the PPF at El Segundo on June 21, 2023.<br><br>Portnoi Decl. Ex. I (Uehara Dep. Tr.) 177:2-14, 290:3-23 | **Disputed**. The testimony cited by Defendants refers only to an "employee," not a lifeguard.<br><br>Uehara Depo., p.177:7-14 [ECF No. 115-9 at 96] |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL
FACT IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| | Chief Lester's CPOE Complaint Regarding Plaintiff's June 21, 2023 Conduct | |
|---|---|---|
| **No.** | **Uncontroverted Fact and Supporting Evidence** | **Plaintiff's Response** |
| | Hastings Decl. ¶5, Ex. A (video from El Segundo Beach)<br><br>Uehara Decl. ¶3, Ex. A (text message correspondence between ocean lifeguard and Chief Uehara) | |

## VII.   Plaintiff's Discipline for His June 21, 2023 Conduct (Nos. 115-133)

| | Plaintiff's Discipline for His June 21, 2023 Conduct | |
|---|---|---|
| **No.** | **Uncontroverted Fact and Supporting Evidence** | **Plaintiff's Response** |
| 115. | Plaintiff worked at Area 33 on June 22, 2023.<br><br>Portnoi Decl. Ex. B (Little Dep. Tr.) 269:3-7<br><br>Portnoi Decl. Ex. H (McMillon Dep. Tr.) 163:13-16 | **Undisputed**. |
| 116. | On June 22, 2023, Chief Boiteux received from his chain of command a Direct Order addressed to Plaintiff requiring him to comply with EA-231.<br><br>Portnoi Decl. Ex. N (Boiteux Dep. Tr.) 253:23-256:9<br><br>Boiteux Decl. ¶7, Ex. E (Direct Order) | **Disputed** as mischaracterizing the evidence. The statement implies that Chief Boiteux was not involved in the decision to issue the Direct Order, but he was.<br><br>Boiteux Depo., pp.254:9-256:9 [ECF No. 115-14 at 65-67]<br><br>Julia Kim testified that she was consulted by lifeguard management—probably Uehara or Boiteux. |

| No. | Uncontroverted Fact and Supporting Evidence | Plaintiff's Response |
|---|---|---|
| | **Plaintiff's Discipline for His June 21, 2023 Conduct** | |
| | | Jonna MSJ Opp. Decl., Ex. C, Kim Depo., pp.248:11-249:10<br><br>Further, it is unclear whether Chief Boiteux received the direct order from someone within his chain of command, employee relations, or human resources. Julia Kim instructed that the direct order, among other things, was delivered to Capt. Little on June 22, 2023.<br><br>Jonna MSJ Opp. Decl., Ex. C, Kim Depo., Ex 29 |
| 117. | The Direct Order ordered Plaintiff to either "(1) Fly the [PPF] as instructed in [EA-231] during the month of June OR (2) Ensure that the PPF is flown as instructed in EA-231 during the month of June."<br><br>Boiteux Decl. ¶7, Ex. E (Direct Order) | **Disputed** to the extent "either" implies Captain Little had a choice in complying with the Direct Order or EA-231.<br><br>**Undisputed** that the Direct Order ordered Captain Little to Fly the PPF as instructed in EA-231 or ensure that the PPF is flown as instructed in EA-231 during the month of June for each year going forward. |
| 118. | The Direct Order was prepared because Plaintiff took down the PPFs on June 21, 2023.<br><br>Portnoi Decl. Ex. N (Boiteux Dep. Tr.) 255:16-256:1<br><br>Portnoi Decl. Ex. L (Mayfield Dep. Tr. Vol. II) 263:22-25, 265:24-266:10 | **Disputed** in part because Boiteux testified the Direct Order was caused by a combination of factors which included Captain Little's actions, the report of his actions, and notification of the CPOE complaint filed by Chief Lester.<br><br>Boiteux Dep., pp.255:16-256:1 [ECF No. 115-14 at 66-67]<br><br>Further, Plaintiff objects that this is |

57

| Plaintiff's Discipline for His June 21, 2023 Conduct | | |
|---|---|---|
| **No.** | **Uncontroverted Fact and Supporting Evidence** | **Plaintiff's Response** |
| | | vague. Plaintiff's retaliation claims allege that the issuance of the direct order, among other things, was pretextual and discriminatory because of his religious beliefs regardless of Defendants' purported reasoning. |
| 119. | On June 22, 2023, Chief Boiteux delivered the Direct Order to Plaintiff.<br><br>Portnoi Decl. Ex. B (Little Dep. Tr.) 284:22-285:3 | **Undisputed**. |
| 120. | Also on June 22, 2023, Plaintiff emailed Chief Uehara to state that he would be leaving work early because he was mentally and physically sick.<br><br>Portnoi Decl. Ex. B (Little Dep. Tr.) 274:6-12<br><br>Portnoi Decl. Ex. I (Uehara Dep. Tr.) 263:23-264:20<br><br>Uehara Decl. ¶4, Ex. B (email correspondence between Plaintiff and Chief Uehara) | **Disputed** as mischaracterizing the evidence. Little did not state that he was mentally sick or physically sick. Rather, he stated that his health was deteriorating because his religious convictions were under assault, and he thought it was best to attend to his mental and physical health rather than be a distraction or cause conflict.<br><br>Uehara Decl. ¶4, Ex. B (email correspondence between Plaintiff and Chief Uehara) [ECF Nos. 116-34, 116-36<br><br>Little's cited testimony merely states that he was able to go home sick.<br><br>Little Depo., p.274:6-12 [ECF No. 115-2 at 179] |

| Plaintiff's Discipline for His June 21, 2023 Conduct | | |
|---|---|---|
| **No.** | **Uncontroverted Fact and Supporting Evidence** | **Plaintiff's Response** |
| 121. | Plaintiff remained on sick leave for the remainder of June 2023.<br><br>Portnoi Decl. Ex. B (Little Dep. Tr.) 283:24-284:7 | **Undisputed**. |
| 122. | The County removed Plaintiff from his role on the Background Investigation Unit because Plaintiff was the subject of an investigation.<br><br>Portnoi Decl. Ex. Q (Kim Dep. Tr.) 342:1-342:16, 343:2-21 | **Disputed**, because Kim made the decision to remove Little from the BIU on her own. Kim's claim that the investigation was the reason she made this decision is undermined by the fact that no written policy called for the removal.<br><br>Kim Depo., pp.342:7-9, 343:22-24 [ECF No. 115-17 at 35-36] |
| 123. | The Background Investigation Unit investigates prospective employees and handles sensitive applicant and personnel information.<br><br>Portnoi Decl. Ex. Q (Kim Dep. Tr.) 339:6-340:4, 343:2-21 | **Disputed.** Kim did not testify that Background Investigation Unit investigators handle sensitive applicant and personnel information. She testified regarding the employment structure and overtime hours Little accrued on the Unit, and the need for people of integrity on the Unit.<br><br>Kim Depo., pp.339:6-340:4, 343:2-21 [ECF No. 115-17 at 32-33, 36] |
| 124. | The County investigated the CPOE complaint against Plaintiff through its usual channels.<br><br>Portnoi Decl. Ex. P (Stormer Dep. Tr.) 40:14-43:24, 61:3-62:2, 75:1-78:2 | ██████████████████ |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL
FACT IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| No. | Uncontroverted Fact and Supporting Evidence | Plaintiff's Response |
|---|---|---|
| | **Plaintiff's Discipline for His June 21, 2023 Conduct** | |
| | | ██████████ |
| 125. | The process for investigating a CPOE complaint involves an investigation and interviews.<br><br>Portnoi Decl. Ex. P (Stormer Dep. Tr.) 12:11-13:15, 17:2-18:5, 22:22-24:16, 40:14-43:24, 61:3-62:2, 75:1-78:2 | **Undisputed**. |
| 126. | The CPOE investigation process occurs separate from the specific departments, such as the Fire Department.<br><br>Portnoi Decl. Ex. P (Stormer Dep. Tr.) 27:8-28:18 | **Undisputed**. |
| 127. | The County Equity Oversight Panel determined that the allegations in the CPOE complaint against Plaintiff were substantiated and rose to the level of a CPOE violation.<br><br>Portnoi Decl. Ex. P (Stormer Dep. Tr.) 80:10-22<br><br>Stormer Decl. ¶4, Ex. B (CPOE Briefing Information and Recommendations) at LAC-0000173-74 | **Undisputed**. |
| 128. | The Fire Department investigated Plaintiff for violating the County's flag policy when he lowered the PPFs. | **Disputed** as unsupported by the cited evidence. Kim testified that she did not attend the Fire Advisory Board, and the cited testimony only shows Kim's opinion that two suspensions should have been served sequentially |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| Plaintiff's Discipline for His June 21, 2023 Conduct | | |
|---|---|---|
| No. | Uncontroverted Fact and Supporting Evidence | Plaintiff's Response |
| | Portnoi Decl. Ex. Q (Kim Dep. Tr.) 307:9-308:3 | rather than concurrently. It does not discuss an investigation by the Fire Department.<br><br>Kim Depo., pp.307:9-308:3 [ECF No. 115-17 at 27-28] |
| 129. | The Fire Advisory Board determined based on the Fire Department's investigation that a suspension was appropriate.<br><br>Portnoi Decl. Ex. Q (Kim Dep. Tr.) 307:9-308:3 | **Disputed** as unsupported by the cited evidence. Kim testified that she did not attend the Fire Advisory Board, and the cited testimony only shows Kim's opinion that two suspensions should have been served sequentially rather than concurrently. It does not discuss an investigation by the Fire Department, or why the Fire Advisory Board made any decisions.<br><br>Kim Depo., pp.307:9-308:3 [ECF No. 115-17 at 27-28] |
| 130. | Based on Plaintiff's CPOE violation and the FAB's conclusion, the County issued Plaintiff a notice of 15-day suspension on October 24, 2024.<br><br>Uehara Decl. ¶5, Ex. C (Notice of Suspension) | **Disputed** as unsupported by the cited evidence. The suspension letter does not mention the Fire Advisory Board at all.<br><br>Uehara Decl. ¶5, Ex. C (Notice of Suspension) [ECF Nos. 116-34, 116-37] |
| 131. | Chief Boiteux was not involved in the CPOE review process, including the decision to remove Plaintiff from the Background Investigation Unit or to suspend him.<br><br>Portnoi Decl. Ex. N (Boiteux Dep. Tr.) 293:18-294:24 | **Disputed** as unsupported by the cited evidence. The cited testimony only shows that Boiteux did not participate in the CPOE briefing. It does not show that Boiteux was not involved in a CPOE review process, and does not mention the removal or suspension decisions at all. |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| No. | Uncontroverted Fact and Supporting Evidence | Plaintiff's Response |
|---|---|---|
| Plaintiff's Discipline for His June 21, 2023 Conduct |||
| | | Boiteux Depo., pp.293:18-294:24 [ECF No. 115-14 at 77-78] |
| 132. | Chief Uehara had no knowledge of the briefing findings regarding the CPOE complaint that Chief Lester filed against Plaintiff.<br><br>Portnoi Decl. Ex. I (Uehara Dep. Tr.) 341:15-22 | **Disputed** as unsupported by the cited evidence. Uehara only stated that he had no knowledge of "this", referring to a *document* containing briefing findings. Uehara did not state that he had no knowledge of the briefing findings themselves.<br><br>Uehara Depo., p.341:15-22 [ECF No. 115-9 at 174] |
| 133. | Chief Lester was not involved in the CPOE review process after he filed the CPOE complaint against Plaintiff on June 21, 2023.<br><br>Portnoi Decl. Ex. E (Lester Dep. Tr.) 150:25-151:10 | **Disputed** as unsupported by the cited evidence. Lester merely said he did not remember further involvement, but did not expressly deny it.<br><br>Lester Depo., pp.150:25-151:7 [ECF No. 110-6 at 54-55] |

**VIII.  Plaintiff's 2024 Religious Accommodation Request (Nos. 134-140)**

| No. | Uncontroverted Fact and Supporting Evidence | Plaintiff's Response |
|---|---|---|
| Plaintiff's 2024 Religious Accommodation Request |||
| 134. | In 2024, Plaintiff requested a religious accommodation in advance of Pride Month, on May 8, 2024.<br><br>Nuanes-Delgadillo Decl. ¶5, Ex. C (email correspondence between | **Undisputed**. |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| Plaintiff's 2024 Religious Accommodation Request | | |
|---|---|---|
| No. | Uncontroverted Fact and Supporting Evidence | Plaintiff's Response |
|  | Plaintiff and Ms. Nuanes-Delgadillo) at LAC-0000507-08 |  |
| 135. | The Fire Department issued EA-232, which provided guidance about which Department facilities with flagpoles should fly the PPF in 2024, on May 30, 2024.<br><br>Kim Decl. ¶5, Ex. C (EA-232) | **Disputed** as unsupported by the cited evidence. Ex. C does not contain guidance about which Department facilities with flagpoles should fly the PPF.<br><br>Kim Decl. ¶5, Ex. C (EA-232) [ECF Nos. 116, 116-3]<br><br>**Undisputed** to the extent that attachment A to EA-232 states that the PPF shall be flown at all facilities, illustrates the orientation of the flag, and instructs clasps to be added to poles safely capable of flying three flags, and providing the flag order. |
| 136. | In 2024, the County held IPMs with Plaintiff on both May 29, 2024 and May 31, 2024.<br><br>Portnoi Decl. Ex. O (Crum Dep. Tr.) 179:8-16<br><br>Nuanes-Delgadillo Decl. ¶¶6-7, Ex. D (2024 IPM notes), Ex. E (2024 IPM report) | **Undisputed**. |
| 137. | In the 2024 IPM, the County informed Plaintiff that he could swap with other captains to work where the PPF would not be flown. | **Undisputed** that the County stated it would not interfere with shift swaps. However, **disputed** to the extent it is misleading Power told Little that he could "pursue" a trade request, but stated that it would be "on his own" and "not through [an] |

63

| Plaintiff's 2024 Religious Accommodation Request | | |
|---|---|---|
| **No.** | **Uncontroverted Fact and Supporting Evidence** | **Plaintiff's Response** |
| | Portnoi Decl. Ex. F (Power Dep. Tr.) 82:10-25

Nuanes-Delgadillo Decl. ¶¶6-7, Ex. D (2024 IPM notes) at LAC-0001486, Ex. E (2024 IPM report) at LAC-0002412-13 | accommodation."

Nuanes-Delgadillo Decl. ¶¶6-7, Ex. D (2024 IPM notes) at LAC-0001486 [ECF No. 116-23 at 5] |
| 138. | The County's 2024 proposal for Plaintiff to swap with other captains to work where the PPF would not be flown was an effective accommodation.

Portnoi Decl. Ex. B (Little Dep. Tr.) 294:13-295:9

TAC ¶113 | **Disputed**. Little stated that the 2024 accommodation was only "partly" effective, but he made it work. The cited testimony and complaint paragraph do not discuss swaps and do not show that the County proposed swaps.

Little Depo., pp.294:13-295:9 [ECF No. 115-2 at 195-196]

TAC ¶ 113.

Further **disputed** because the County told Little that he could "pursue" a trade request, but stated that it would be "on his own" and "not through [an] accommodation."

Nuanes-Delgadillo Decl. ¶¶6-7, Ex. D (2024 IPM notes) at LAC-0001486 [ECF No. 116-23 at 5] |
| 139. | The County was able to accommodate Plaintiff's request to use benefit time in 2024 because it had time to ensure adequate staffing beforehand. | **Disputed** as unsupported by the evidence. Power merely testified that he would approve shift trades if Little found a trade partner, that Little had used some benefit time, and discussed an example of an approved trade. Power Depo., pp.83:11-15, 83:21-23, 87:6-17 [ECF No. 115-6 at |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| Plaintiff's 2024 Religious Accommodation Request | | |
|---|---|---|
| **No.** | **Uncontroverted Fact and Supporting Evidence** | **Plaintiff's Response** |
| | Portnoi Decl. Ex. F (Power Dep. Tr.) 83:11-23, 87:6-17<br><br>Portnoi Decl. Ex. I (Uehara Dep. Tr.) 370:16-22 | 31, 35]<br><br>Uehara's testimony regards Little's assignment to area 33 and a swap arrangement for Wednesdays in June. Neither citation discusses benefit time use as an accommodation or why it was approved. Uehara Depo., pp.369:1-370:22 [ECF No. 115-9 at 178-179]<br><br>Further **disputed** to the extent it is misleading and implies that Defendants were not able to accommodate Plaintiff's 2023 request to use benefit time because they lacked adequate time to ensure staffing beforehand. When Plaintiff left his post on sick-leave in 2023, Defendants adequately staffed and filled his role without any operational disruption, beachgoer injuries, or known issues relating to the mental health of individuals recalled by Plaintiff's absence.<br><br>Jonna MSJ Opp. Decl., Ex. C, Kim Depo., pp.133:17-142:24 |
| 140. | At Plaintiff's request, the County enumerated specific sites where the PPF would not be flown in 2024.<br><br>Portnoi Decl. Ex. B (Little Dep. Tr.) 77:1-15<br><br>Nuanes-Delgadillo Decl. ¶¶8, Ex. F (email correspondence between | **Disputed.** Power only confirmed that area 33 stations would not fly the PPF, but did not "enumerate" more than one specific site[]."<br><br>Nuanes-Delgadillo Decl. ¶¶8, Ex. F (email correspondence between Plaintiff and Ms. Nuanes-Delgadillo) at LAC-0002258 [ECF Nos. 116-19, |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL
FACT IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| **Plaintiff's 2024 Religious Accommodation Request** | | |
|---|---|---|
| **No.** | **Uncontroverted Fact and Supporting Evidence** | **Plaintiff's Response** |
| | Plaintiff and Ms. Nuanes-Delgadillo) at LAC-0002258 | 116-25]<br><br>Little testified that he asked Crum for locations where flying the PPF would be a requirement. But Little did not testify that Crum "enumerated specific sites."<br><br>Little Depo., p.77:1-15 [ECF No. 115-2 at 49] |

## IX.    Plaintiff's Additional Material Facts (Nos. 141-173)

| **ADDITIONAL FACTS** | | |
|---|---|---|
| **No.** | **Uncontroverted Fact** | **Supporting Evidence** |
| | *Board of Supervisors Motion and EA-231* | |
| 141. | Although, as a member of the Fire Department, following County policies was part of Plaintiff's job, *see* Fact No. 4, as alleged in the Complaint, pursuant to the U.S. and California Constitution, as well as federal and state laws, the County was prohibited from discriminating against Little because of his religion or retaliating against him for engaging in protected activities. Further the County of Los Angeles was required to provide Little with a reasonable accommodation with respect to job responsibilities which conflicted with his sincerely held | U.S. Const. amend I; 42 U.S.C. § 2000e-2; Cal. Gov. Code § 12940. |

| ADDITIONAL FACTS | | |
|---|---|---|
| **No.** | **Uncontroverted Fact** | **Supporting Evidence** |
| | religious beliefs unless it could demonstrate that providing such an accommodation would constitute an undue burden upon the conduct of its business. | |
| 142. | Under EA-231, if a flagpole could accommodate only the U.S. flag, the PPF would not be flown; otherwise, it would be. *See* Fact No. 5. But EA-231 conflicts with the Board motion directing Internal Services Department to raise the PPF at "Los Angeles County facilities" "where the American and California Flags are displayed during the month of June." <br><br> EA-231 provides in relevant part: "With the exception of Flag Day, June 14th, when the Prisoner of War/Missing in Action flag is flown, the PFF shall be flown as follows: Single Flagpole <br> • Clasps for one flag: Fly the United States (U.S.) flag alone. <br> • Clasps for two flags: Fly the U.S. flag at peak and the PPF directly below. <br> • Clasps for three flags: Fly the U.S. flag at peak, State, and then PPF." | Kim Decl. ¶3, Ex. A, Board Motion [ECF No. 116-1] <br><br> Kim Decl. ¶3, Ex. B, EA-231 [ECF No. 116-2] |
| 143. | ████████████████████ | Jonna MSJ Opp. Decl., Ex. B, Boiteux Dep., pp.75:9-23, 85:2-87:4, 321:4-18. <br><br> Jonna MSJ Opp. Decl., Ex. C; Kim Dep., pp. 414:22-415, 417:6-418:5 & |

| ADDITIONAL FACTS | | |
|---|---|---|
| **No.** | **Uncontroverted Fact** | **Supporting Evidence** |
|  | | Ex. 44<br><br>Jonna MSJ Opp. Decl., Ex. I. |

| ADDITIONAL FACTS | | |
|---|---|---|
| **No.** | **Uncontroverted Fact** | **Supporting Evidence** |
| | ███████████████████ | |
| 144. | In June 2023, flag lines were cut at lifeguard stations and flagpoles were taken down. *See* Fact Nos. 11-12.<br><br>Some of the vandalism of flag lines and flag poles was done by employees. Chief Power testified: "A. People cut flagpole lines. People dismantled flagpoles. I don't know if they were employees. Some were employees. Some were the public possibly. And our lifeguard towers were vandalized extensively."<br><br>██████████ | Power Dep., 54:15-19 [ECF No. 115-6 at 20]<br><br>Jonna MSJ Opp. Decl., Ex. I |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL
FACT IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| ADDITIONAL FACTS | | |
|---|---|---|
| **No.** | **Uncontroverted Fact** | **Supporting Evidence** |
| | ███████████ | |
| | *Plaintiff's 2023 Religious Accommodation Request* | |
| 145. | On June 18, 2023, Plaintiff emailed Chiefs Boiteux, Kyle Power, and Danielle McMillon to request to be exempt from EA-231. *See* Fact No. 27. Plaintiff requested as follows: "I am requesting to be exempt to adhering to EA-231 and am requesting a religious accommodation on grounds that it infringes on my sincere religious beliefs. I have always made it a priority to carry out the mission of the department, serve the community, and be an exemplary employee, but this board motion and the responsibilities accompanying it is in conflict with my deep religious faith." | McMillon Decl., ¶2 and Ex. A [ECF Nos. 116-16, 116-17] |
| 146. | Plaintiff's June 18, 2023 email was forwarded to Renee Nuanes-Delgadillo, who organized an interactive process meeting ("IPM") for June 19, 2023. *See* Fact No. 29.<br><br>The email exchange reflects that Chief McMillon "had spoken at length" with Captain Little regarding his request for a religious accommodation, had recommended an IPM to determine whether he could be accommodated and had already discussed with him possible ways in which he might be accommodated, thereby conceding | McMillon Decl., ¶2-3, Ex. A [ECF Nos. 116-16, 116-17] |

70

| ADDITIONAL FACTS | | |
|---|---|---|
| **No.** | **Uncontroverted Fact** | **Supporting Evidence** |
| | he held a sincere religious belief that required accommodation in the absence of the County demonstrating any "undue hardship" and the existence of a conflict between his sincerely held religious belief and a work requirement.<br><br>Similarly, as part of the same exchange, Nuanes-Delgadillo proposed a meeting with the other individuals on the email (Uehara, Boiteux, Kim, Power and McMillon), in advance of her meeting with Captain Little "to go over how he can be accommodated either at work, or providing him a leave of absence." | |
| 147. | Chiefs Uehara and McMillon attended the June 19 IPM to represent the Lifeguard Division chain of command. *See* Fact No. 130. Concerning her role, Chief McMillon testified:<br><br>"[Q.] Was there any point— is it fair to say that there was never a point where you questioned whether he had sincere religious beliefs, that was never something that you questioned?<br><br>"A. No. I believed him when he said he had religious beliefs. Absolutely, I believed him." | McMillon Dep., pp. 108:24-109:17, 115:4-9 [ECF No. 115-8 at 43-44, 50]<br><br>Uehara Dep., pp. 48:19-49:1-3 [ECF No. 115-9 at 11-13] |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| ADDITIONAL FACTS | | |
|---|---|---|
| **No.** | **Uncontroverted Fact** | **Supporting Evidence** |
| | McMillon further testified that she was present at the June 19, 2023 IPM "to look at" specific accommodation options. She testified:<br><br>"A. I think I was looking at the Area 33 option, and he had also been assigned a recall, maybe, in Torrence/Redondo, or it might have been a relief shift. I—I mean, I'd have to look at a calendar, but I know there was some discussion around he had a shift in Torrance/Redondo, whether it was recall or just his relief day—I think it was a recall, because he had already done his relief day, maybe, and maybe the following week, he was assigned somewhere on a Sunday. Anyway, my discussion was, I was looking at his calendar, and I was looking at shifts, and just talking about, Okay. Can we get you to Area 33? What do we do with the Redondo shift. I think that was mostly my contribution, was trying to look at that accommodation."<br><br>Similarly, Uehara testified that his role in the June 19, 2023 IPM was also to explore potential accommodations:<br><br>"How do you describe what role you played in the handling of [Little's] religious accommodation | |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL
FACT IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| ADDITIONAL FACTS | | |
|---|---|---|
| **No.** | **Uncontroverted Fact** | **Supporting Evidence** |
| | request?<br><br>"A. We met with Captain Little. We met with LACoLA. His union represent, I believe, is Greg Crum at the time. I believe Chief McMillon was the supervisor. And then from HR, it was Rachel Lara. And so he gave his request, and then we came up with recommendations of possible accommodations that we could make for Captain Little at that time." | |
| 148. | At the June 19 IPM, Plaintiff explained that he had religious objections to raising the PPF. *See* Fact No. 32.<br><br>He did not explain that he had an objection to working in a place where he could see the PPF flying. Rather, Nuanes-Delgadillo made that statement, apparently attempting to lead Captain Little into making it his objection, but he disputed it. Captain Little explained he had religious objections to raising the PPF and to being responsible for ensuring that it was raised.<br><br>With regard to *seeing* the PPF flag, Little testified:<br><br>"Q. Did you not want to work where you could see the PPF?<br><br>"A. My request was to be exempt from these responsibilities in EA- | Jonna MSJ Opp. Decl., Ex. A, Little Dep., pp. 100:17-25<br><br>Little Dep., pp.120:7-12, 120:20-121:4, 121:10-23, 127:3-129:22 [ECF No.115-2 at 65-66, 72-74] |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL
FACT IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| ADDITIONAL FACTS | | |
| --- | --- | --- |
| **No.** | **Uncontroverted Fact** | **Supporting Evidence** |
| | 231. I mean, I—and the best way to do that, accommodate, is to work an area where it's—you're not responsible for it.<br><br>"Q. Did you want authority to take down the PPF when you did see it?<br><br>"A. That was never discussed."<br><br>Little further testified that he initially requested just to stay at Will Rogers and not to fly the PPF there, but that wasn't really up for discussion and he would be responsible for the PPF there. So they "entertained other possibilities, and the easiest place was to move somewhere where I wouldn't have those responsibilities. Not necessarily because it wasn't being flown, because I wouldn't have the responsibilities. That's the easiest way to find a solution."<br><br>Little further clarified:<br><br>"A. My—my request was I don't want the responsibilities of it, not to necessarily be placed in, like, in a station where it's not flown. Because, you know, further in this discussion, I got moved into area 33, there was a PPF being flown there. I did not dispute that. I did not ask for an accommodation to, like, not have that being flown. It was still up, I was seeing it every day. I didn't contend that. The | |

| ADDITIONAL FACTS | | |
|---|---|---|
| No. | Uncontroverted Fact | Supporting Evidence |
| | difference was I just wasn't responsible for and that—I was okay with that, that was very acceptable to me. And so, yeah, I don't think—I don't think this is a hundred percent accurate." | |
| 149. | Plaintiff did not voice any objections to working at Will Rogers Beach or Venice Beach which have lifeguard towers painted with the colors of the Pride Flag. *See* Fact Nos. 35, 37.<br><br>Rather, although it was Captain Little's understanding that the rainbow painted towers were intended to promote support for the LGBTQ+ community, which he understood to be along the same lines as the message of endorsement and promotion sought to be conveyed by the PPF, he explained that "I was never required to paint it myself, I was never asked to, like, do anything for it and to endorse it and be part of it. That's the big difference. It's a huge distinction."<br><br>He further explained:<br><br>"Q. Did you state that you did not want to look at the Progress Pride Flag while at work?<br><br>"A. They may have asked me that. And—I mean, to be honest, like, I—I didn't want to look at it. But it wasn't the factor of an acceptable | Little Dep., pp.117:8-21, 118:16-119:14, 119:16-18, 21-23, 119:25-120:4 [ECF No. 115-2 at 62-65] |

75

| ADDITIONAL FACTS | | |
|---|---|---|
| No. | Uncontroverted Fact | Supporting Evidence |
| | accommodation or not. It was—the factor was the responsibilities, and we've mentioned before, like, there's Pride Flags, like, all over the place. There's rainbow towers, there's—this is everywhere, and I didn't object to any of those things because they didn't outline a responsibility for me to participate and, you know, endorse. This is—this is where it crossed the line, that's where I really felt it—it conflicted." | |
| | It was Little's understanding that the rainbow painted towers were meant to promote support for the LGBT community. But he distinguished the rainbow painted towers from his objection to the PPF, explaining, "But I was never required to paint [a rainbow tower] myself, I was never asked to, like, do anything for it and to endorse it and be part of it. That's the big difference." Little explained that although he did not agree with the message conveyed by the Pride painted towers, he was not being forced to participate in it. He acknowledged he had never sought an accommodation "not to look at the painted towers at Will Rogers." | |
| 150. | Following the IPM meeting, Nuanes-Delgadillo sent a written "memorialization of what was discussed during our meetings," dated July 13, 2023. She sent the | Nuanes-Delgadillo Decl, Ex. B (2023 IPM report) [ECF No. 116-21];  Nuanes-Delgadillo Dep., p. 18:5-8 |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL
FACT IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| ADDITIONAL FACTS | | |
|---|---|---|
| **No.** | **Uncontroverted Fact** | **Supporting Evidence** |
| | memorialization to Little, McMillon, Crum, Uehara and Rachel Lara (Nuanes-Delgadillo's "peer" who was also present at Little's IPM). That document reflects:<br><br>"During the discussion on June 19, 2023, we reviewed your request for a religious accommodation; wherein, you were asked to provide further clarification to your request. You responded that you would like a religious accommodation to be exempt of the board motion that was outlined in EA 231: Raising the Progress Pride Flag dated May 25, 2023, which indicates that the Progress Pride Flag (PPF) is to be flown at County facilities during the month of June, which will now be recognized as LGBTQ + Pride month moving forward. You explained that you are assigned to Will Rogers Beach. You stated that you feel that based on EA 231, Will Rogers should be exempt from adhering to flying the PPF based on the flow chart attachment which indicates that only locations where American and State flags are flown need to fly the PPF. Further, you explained that Will Rogers Beach does not fly both. You were informed that I would not be able to address the requirements within this discussion; however, I would address the request for religious | [ECF No. 115-7 at 9]<br><br>Uehara Dep., p. 95:2-17 [ECF No. 115-9 at 36]<br><br>Uehara Dep., pp. 126:21-127:22 [ECF No. 115-9 at 55-56] |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| ADDITIONAL FACTS | | |
|---|---|---|
| No. | Uncontroverted Fact | Supporting Evidence |
| | accommodation. It was confirmed that you are requesting to not fly the PPF at Will Rogers Beach, and if this is not a possibility, then you would like to be placed at a station where the PPF is not flown. You were informed that this request was discussed with your chain of command and the department is able to accommodate you with an assignment at Area 33, which you accepted. It was explained that you would not be the Area 33 Headquarters Captain; therefore, you would not be responsible for ensuring that the PPF is flown."<br><br>Chief Uehara testified:<br><br>"Q. What do you remember?<br><br>"A. That they would move Captain Little to—recommended to move Captain Little to Zuma headquarters, which was called area 33, and that he can— where the flag was being flown, and he would pick up his vehicle and leave and would not have—there's multiple captains in that facility. So he would not be directly responsible for raising the flag, and someone else could order someone to put the flag. But if [there] were to be—if he was to be recalled, we would ask him to do his best to do a personnel exchange to a facility that he felt was granted—or can suffice his deeply held religious beliefs and—if he | |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL
FACT IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| ADDITIONAL FACTS | | |
|---|---|---|
| No. | Uncontroverted Fact | Supporting Evidence |
| | was to get a recall to a specific area." <br><br> Despite the language of IPM memo, Uehara claimed the agreement was "tentative". | |
| 151. | With respect to Area 33, Captain Little explained, "The whole reason being moved there was because I wouldn't be responsible for it [the PPF] and that was acceptable to me and I accepted it." | Little Dep. 127:19-128:1 [ECF No. 115-2 at 72-73] |
| 152. | An email exchange between Delgadillo, Kim and Boiteux, with copies to Uehara, Power and McMillon reflects that on June 19, 2023 at 10:03 a.m., prior to the June 19, 2023 IPM, Nuanes-Delgadillo stated, "Good Morning, I just spoke with Chief Uehara. We discussed the recommendations available and that we will inform CA Little of in the IPM today at 2:00 pm. Once the IPM has been conducted. I will notify you all with his decision." <br><br> After the IPM, on June 20, 2023 at 11:05 a.m., Nuanes-Delgadillo advised as part of the same exchange: "Good Morning, We conducted an IPM with Captain Jeffrey Little yesterday and he accepted the following accommodation: <br> • Stationed at Area 33 through June 30, 2023 <br> • Although the Area 33 HQ Captain | Jonna MSJ Opp. Decl., Ex. E, McMillon Dep. Ex. 8. |

| ADDITIONAL FACTS | | |
|---|---|---|
| **No.** | **Uncontroverted Fact** | **Supporting Evidence** |
| | will be responsible in ensuring that the PPF is town, in extenuating circumstances, Captain Little understands that it will be his responsibility to ensure that it is flown<br>• Recalls were discussed and it was agreed that if he is recalled at a location where the he would be responsible for the PPF, he would try to find someone to switch with.<br>• I am preparing the IPM discussion form and will send to all parties on the IPM<br>Please note that I am meeting with DHR today to discuss Religious Accommodations in general and this particular case for their guidance and if they have encountered this before." | |
| 153. | Defendants' assert that "Dockweiler HQ is a Beaches and Harbors facility, not a Lifeguard Division facility." *See* Fact No. 53. But Chief Uehara testified the Dockweiler facility is shared, with the entrance to the Dockweiler facility parking lot managed by the Department of Beaches and Harbors. | Uehara Dep., p.183:16-22 [ECF No. 115-9 at 102] |
| 154. | Plaintiff's shifts in June 2023 generally started at 10:00 a.m. See Fact No. 54. But on June 21, 2023, his shift started at 10:30 a.m. | Little Dep., p.194:5-12 [ECF No. 115-2 at 122] |
| 155. | Plaintiff arrived at the beach on June 21, 2023 to find the PPF flying | Lester Dep. 84:12-85:3 [ECF No. 110-5 at 65-66] |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL
FACT IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| ADDITIONAL FACTS | | |
|---|---|---|
| **No.** | **Uncontroverted Fact** | **Supporting Evidence** |
| | at Dockweiler South and Dockweiler North. *See* Fact No. 56.<br><br>But the asserted fact strips away critical context. Little arrived under an accommodation that no flags would be flying in his area of responsibility. Little was surprised to find the flag flying because Lester had added clasps to the flagpoles at Dockweiler South and Dockweiler North that very morning.<br><br>Area 17 had not flown the PPF flag during any earlier day in June 2023. By stating only that Little "found" the PPF flying, Defendants omit that no one in the chain of command notified Little of the changed conditions.<br><br>The 100% compliance mandate issued on June 20, 2023, was not communicated to the captains who bore compliance duties under EA-231 prior to the morning of the incident. | Crum Dep. 115:3-8 [ECF No. 115-15 at 73]<br><br>Jonna MSJ Opp. Decl., Ex. B, Boiteux Dep. 161:19-162:10, 163:7-18 |
| 156. | Chief Lester had ensured that the PPF was raised at Dockweiler South and Dockweiler North on June 21 before Plaintiff arrived at work. *See* Fact No. 57.<br><br>But the asserted fact conceals that Lester's actions before Little arrived at work included bringing additional clasps and PPFs to Area 17 sites | Little Dep. 203:6-21 [ECF No. 115-2 at 131]<br><br>Lester Dep. 74:21-84:11 [ECF No. 110-5 at 55-65] |

81

| ADDITIONAL FACTS | | |
|---|---|---|
| **No.** | **Uncontroverted Fact** | **Supporting Evidence** |
| | that had not previously been flying the PPF.<br><br>The asserted fact is framed to make Lester's actions seem like routine compliance with a preexisting practice or policy, omitting that he affirmatively changed the physical conditions at Area 17 to enable the PPF to fly there at the very site where Little had an accommodation to work that day without the PPF. | |
| 157. | OLS Gottschalk told Plaintiff that Chief Lester had ensured the PPF was raised that morning, that she was fine with the PPF up, and that she was concerned about receiving conflicting orders. *See* Fact No. 60.<br><br>But the asserted fact frames Gottschalk as being troubled by Little's question whether she would object to Little lowering the PPF. In fuller context, Gottschalk in fact would not have argued about taking the PPF down had she known that Little had a religious accommodation. | Jonna MSJ Opp. Decl., Ex. H, Gottschalk Dep. 221:7-9 |
| 158. | Plaintiff took down the Dockweiler South PPF himself. *See* Fact No. 61.<br><br>But the bare statement that Little "took down" the PPF "himself" implies disrespect for the PPF and unilateral defiance of his chain of command. In reality, Little carefully folded each PPF and placed it on a | Little Dep., pp.197:13-15, 210:3-8 [ECF No. 115-2 at 125, 138] |

82

| ADDITIONAL FACTS | | |
|---|---|---|
| **No.** | **Uncontroverted Fact** | **Supporting Evidence** |
| | counter inside where it would be protected from the elements, theft, or the kind of vandalism that other PPFs had been subjected to at other county sites—he did not discard or damage the PPFs. Additionally, Little acted in reliance on what he understood to be a valid accommodation granted him two days earlier and never in the interim communicated to him as rescinded. | |
| 159. | Plaintiff then drove to Dockweiler North and El Segundo, removing the PPF at both sites. *See* Fact No. 62.<br><br>But the asserted fact omits that Little consulted with the lifeguards at each site before removing the PPF and received no objections. At Dockweiler North, OLS Miller said he "would not be offended" if Little were to lower the flag there. At El Segundo, the OLS and co-lifeguard said they did not care whether Little lowered the PPF there.<br><br>Additionally, at each site, Little folded the lowered PPF respectfully and stored it inside a building where it would be protected from the elements, theft, and the kind of vandalism that other PPFs in the county had suffered.<br><br>Moreover, the asserted fact omits that Captain Crum had similarly lowered a PPF at Area 17 on June 1, | Little Dep. 204:22-205:15, 210:14-214:15 [ECF No. 115-2 at 132-133, 138-142]<br><br>Jonna MSJ Opp. Decl., Ex. B, Boiteux Dep. 175:4-25 |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| ADDITIONAL FACTS | | |
|---|---|---|
| No. | Uncontroverted Fact | Supporting Evidence |
| | 2023, at the request of Chiefs Uehara and Lester, with no discipline. | |
| 160. | Area 17, where Captain Little worked on June 21, 2023, had not flown a PPF at any time from June 2, 2023, through June 20, 2023. | Jonna MSJ Opp. Decl., Ex. A, Little Dep. Ex. 1070<br><br>Crum Dep. 115:3-8 [ECF No. 115-15 at 73] |
| 161. | On June 1, 2023, Captain Crum began putting up PPFs on Dockweiler Beach in Area 17 but received a call from Chief Lester informing him that Chief Uehara had determined that the flags were not to be flown at flagpoles that do not typically fly more than one flag throughout the rest of the year. As a result of this instruction, Captain Crum removed a PPF that he had previously raised. | Jonna MSJ Opp. Decl., Ex. A, Little Dep. Ex. 1070 at p.1<br><br>Jonna MSJ Opp. Decl., Ex. B, Boiteux Dep. 88:11-89:13, 90:4-10, Ex. 65<br><br>Crum Dep. 202:19-207:23 [ECF No. 115-15 at 102-107] |
| 162. | As of June 19, 2023, none of the Area 17 sites were flying the Progress Pride Flag or were capable of doing so, due to insufficient flag clasps on the halyards of the flagpoles and a lack of Progress Pride Flags at any of the sites. | Little Dep. 203:6-21 [ECF No. 115-2 at 131] |
| 163. | The June 20, 2023 compliance directive was not communicated to Captain Little before he arrived at work the next morning. | Jonna MSJ Opp. Decl., Ex. D, Lester Dep. 88:12-90:10, 92:8-16, 94:1-7, 99:13-18<br><br>Jonna MSJ Opp. Decl., Ex. B, Boiteux Dep. 161:12-162:10,<br><br>Boiteux Dep., pp.271:23-272:11 |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL
FACT IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| ADDITIONAL FACTS | | |
|---|---|---|
| No. | Uncontroverted Fact | Supporting Evidence |
| | | [ECF No. 115-14 at pp.73-74<br><br>Jonna MSJ Opp. Decl., Ex. E, McMillon Dep. 59:19-60:2 |
| 164. | Upon arriving at Area 17, Captain Little was confused to see a PPF flying at the 17-2 station, because he knew Area 17 stations had not flown PPFs when he worked there on June 19, 2023. He checked his phone and email for a policy change but found none. | Little Dep. 201:12-203:5 [ECF No. 115-2 at 129-131] |
| 165. | OLS Jake Miller at Area 17-2 informed Captain Little that Chief Lester had dropped off the PPFs and clasps earlier that morning with instructions to raise them. Captain Little understood that Lester did not have authority to change department policies or Captain Little's religious accommodation. | Little Dep. 203:6-21 [ECF No. 115-2 at 131] |
| 166. | When Captain Little removed PPFs, he carefully folded each flag and placed it on a counter inside the nearest lifeguard building. He did not discard or damage any flag. | Little Dep. 210:3-8 [ECF No. 115-2 at 138] |
| 167. | At Area 17-1 (El Segundo), the flagpole had not flown a flag in years. Captain Little asked OLS Tenan-Snow and his co-lifeguard if they would be offended if he took the PPF down, and they said they didn't care. | Little Dep. 210:14-214:15 [ECF No. 115-2 at 138-142] |
| 168. | Chief Boiteux assumed that Captain Little agreed to work at Area 17 on | Jonna MSJ Opp. Decl., Ex. B, Boiteux Dep. 173:16-174:10, 183:7- |

| ADDITIONAL FACTS | | |
| --- | --- | --- |
| No. | Uncontroverted Fact | Supporting Evidence |
| | June 21, 2023, on the expectation that the PPF would not be flying there, and acknowledged it would have been better for someone in Captain Little's chain of command to inform him that the PPF was now flying in Area 17 before he arrived. | 13 |
| 169. | Captain Little broke down mentally and emotionally after meeting with Chief Lester on June 21, 2023, and would have gone home for the day if Lester had offered it. | Little Dep. 246:5-11 [ECF No. 115-2 at 160] |
| 170. | ███████████████████████████████████████████████████ | Lester Dep. 128:1-130:6, 138:9-19 [ECF No. 110-6 at 32-34, 42] ███████████████████ |
| 171. | On June 1, 2023, Captain Crum lowered a PPF that was already flying at Area 17 at the request of Chiefs Uehara and Lester, and was not disciplined. | Jonna MSJ Opp. Decl., Ex. B, Boiteux Dep. 175:4-25 Crum Dep. 202:19-207:23 [ECF No. 115-15 at 102-107] |
| | *Effects of Recalls on the County* | |
| 172. | On June 22, 2021, the Board issued a Board Motion, "Addressing Fire Department Workplace Trauma or | Kim Depo., pp.114:17-118:20 [ECF No. 115-17 at 10-14] |

86

| ADDITIONAL FACTS | | |
|---|---|---|
| No. | Uncontroverted Fact | Supporting Evidence |
| | Potential Workplace Trauma," in response to a murder and attempted murder, and subsequent suicide, perpetrated by a firefighter against two other firefighters. *See* Fact No. 101.<br><br>However, this statement is misleading and irrelevant because the motive for the violent incident is unexplained and therefore remains unlinked to any burdens imposed by recalls. | |
| 173. | The Board Motion directed the Fire Department's Executive Staff to draft a report that, in relevant part, addressed how to "[r]educ[e] staff recall due to vacancies and injury vacancies by at least 50% by March 1, 2022." *See* Fact No. 102.<br><br>However, this statement is misleading and irrelevant because the Board Motion from 2021 does not provide insight into the burden of recalls in 2023, considering that the Department was tasked with reducing recall by at least 50% by March 2022. Also, the Board Motion also required the Fire Department staff to enhance access to mental health providers and improve hiring standards to reduce injury vacancies. | Kim Decl. ¶8, Ex. G (Addressing Fire Department Workplace Trauma or Potential Workplace Trauma resolution) at LAC-0003273 [ECF Nos. 116, 116-7] |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Respectfully submitted,

LiMANDRI & JONNA LLP

Dated: April 10, 2026              By: _____
Charles S. LiMandri
Paul M. Jonna
Jeffrey M. Trissell
Joshua A. Youngkin
William T. Duke
Attorneys for Plaintiff
Captain Jeffrey Little

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL
FACT IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT