Charles S. LiMandri, SBN 110841
 cslimandri@limandri.com
Paul M. Jonna, SBN 265389
 pjonna@limandri.com
Jeffrey M. Trissell, SBN 292480
 jtrissell@limandri.com
Joshua A. Youngkin, SBN 332226
 jyoungkin@limandri.com
William T. Duke, SBN 361823
 wduke@limandri.com
LiMANDRI & JONNA LLP
 *as Special Counsel to*
 THOMAS MORE SOCIETY
P.O. Box 9120
Rancho Santa Fe, CA 92067
Telephone: (858) 759-9930
Facsimile: (858) 759-9938

*Attorneys for Plaintiff*
*Captain Jeffrey Little*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAPTAIN JEFFREY LITTLE,<br><br>  Plaintiff,<br><br>  v.<br><br>LOS ANGELES COUNTY, et al.<br><br>  Defendants. | **Case No.: 2:24-cv-4353-JLS-PD**<br><br>**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Judge:      Hon. Josephine L. Staton<br>Courtroom:  8A<br>Date:        May 8, 2026<br>Time:        10:30 a.m.<br><br>Action Filed:  May 24, 2024 |

# PUBLIC / REDACTED VERSION

# TABLE OF CONTENTS

REPLY MEMORANDUM ..............................................................................5

    I.    Little's Title VII and FEHA Claims are Supported by Ample Evidence Precluding Summary Judgment for Defendants..........................................................................5

        A.    Undisputed evidence establishes a prima facie case of discrimination. ...............................................5

        B.    Accommodating Little is not an undue burden. ........................6

            1.    Vaccine-mandate cases are categorically disanalogous. ..........................................6

            2.    County's own conduct defeats its MOU argument. ...............................................7

            3.    The recall theory is untethered to this accommodation and too small to matter. ........................8

    II.    Undisputed Evidence Establishes that Defendants Retaliated Against Little. ........................................................8

        A.    O'Brien and Mayfield acted with knowledge of Little's accommodation request.....................................9

        B.    Lester also acted with knowledge of Little's accommodation request. ...................................9

        C.    Boiteux delivered the discipline. ............................................10

        D.    Five days, six disciplinary actions. ..........................................10

    III.    Little's Constitutional Claims Also Survive Summary Judgment. ......................................................11

        A.    Substantial burden..................................................................11

        B.    Neutrality. ................................................................................12

        C.    *Monell* liability..........................................................................16

CONCLUSION..............................................................................................18

CERTIFICATE OF COMPLIANCE................................................................18

PLAINTIFF'S REPLY MEMORANDUM
ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

## TABLE OF AUTHORITIES

**Cases**

*Bates v. Pakseresht,*
146 F.4th 772 (9th Cir. 2025)...............................................................15

*Bordeaux v. Lions Gate Ent., Inc.,*
703 F. Supp. 3d 1117 (C.D. Cal. 2023)..................................................7

*Burwell v. Hobby Lobby Stores, Inc.,*
573 U.S. 682 (2014) ............................................................................15

*Castro v. Cty. of Los Angeles,*
833 F.3d 1060 (9th Cir. 2016)..............................................................17

*Christie v. Iopa,*
176 F.3d 1231 (9th Cir. 1999)..............................................................16

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah,*
508 U.S. 520 (1993) ................................................................13, 15, 16

*Damiano v. Grants Pass Sch. Dist. No. 7,*
140 F.4th 1117 (9th Cir. 2025)..............................................................11

*Dawson v. Entek Int'l,*
630 F.3d 928 (9th Cir. 2011)................................................................10

*Does 1-11 v. Bd. of Regents of Univ. of Colo.,*
100 F.4th 1251 (10th Cir. 2024)............................................................14

*Earl v. Nielsen Media Rsch., Inc.,*
658 F.3d 1108 (9th Cir. 2011)................................................................9

*EEOC v. Abercrombie & Fitch Stores, Inc.,*
575 U.S. 768 (2015) ............................................................................13

*Fellowship of Christian Athletes (FCA) v. San Jose Unified School
District Board of Education,*
82 F.4th 664 (9th Cir. 2023)..........................................................13, 17

*France v. Johnson,*
795 F.3d 1170 (9th Cir. 2015)................................................................9

*Fulton v. City of Philadelphia,*
593 U.S. 522 (2021) ............................................................................15

*Gillette v. Delmore,*
979 F.2d 1342 (9th Cir. 1992)........................................................16, 17

*Groff v. DeJoy*,
 600 U.S. 447 (2023) ...............................................................................6, 7, 8

*Kama v. Mayorkas*,
 107 F.4th 1054 (9th Cir. 2024)................................................................10, 11

*Kennedy v. Bremerton Sch. Dist.*,
 597 U.S. 507 (2022) .........................................................................................11

*Masterpiece Cakeshop v. Colorado C.R. Comm'n*,
 584 U.S. 617 (2018) ....................................................................13, 14, 15, 17

*Opara v. Yellen*,
 57 F.4th 709 (9th Cir. 2023)...........................................................................10

*Pembaur v. City of Cincinnati*,
 475 U.S. 469 (1986) .........................................................................................16

*Petersen v. Snohomish Reg'l Fire & Rescue*,
 150 F.4th 1211 (9th Cir. 2025)..........................................................................7

*Raad v. Fairbanks N. Star Borough Sch. Dist.*,
 323 F.3d 1185 (9th Cir. 2003)......................................................................9, 10

*Sherbert v. Verner*,
 374 U.S. 398 (1963) ...................................................................................11, 12

*Smith v. City of Atlantic City*,
 138 F.4th 759 (3d Cir. 2025).............................................................................7

*Staub v. Proctor Hosp.*,
 562 U.S. 411 (2011) ...........................................................................................9

*Tiano v. Dillard Dep't Stores, Inc.*,
 139 F.3d 679 (9th Cir. 1998)..............................................................................5

*Tolle v. Rockwell Collins Control Techs., Inc.*,
 20-cv-174, 2020 WL 3316984 (E.D. Va. 2020)...............................................6

*Trans World Airlines, Inc. v. Hardison*,
 432 U.S. 63 (1977) .........................................................................................7, 8

*Trinity Lutheran Church of Columbia, Inc. v. Comer*,
 582 U.S. 449 (2017) .........................................................................................15

**Statutes**

42 U.S.C. §2000e-2(h)...................................................................................................8

# REPLY MEMORANDUM

## I.    Little's Title VII and FEHA Claims are Supported by Ample Evidence Precluding Summary Judgment for Defendants.

### A.    Undisputed evidence establishes a prima facie case of discrimination.

Defendants' opposition repackages the same arguments made in support of their own summary judgment motion; they do not create a triable issue. To establish a prima facie religious-discrimination claim, Little must show: (1) a bona fide religious belief that conflicted with an employment duty; (2) that he advised his employer of the conflict; and (3) that his employer subjected him to, or threatened him with, discriminatory treatment because of the conflict. *Tiano v. Dillard Dep't Stores, Inc.*, 139 F.3d 679, 681 (9th Cir. 1998). Little satisfies each element.

The material facts are not disputed. Little is a devout Christian with traditional religious beliefs about marriage and sexuality. [D-SUMF ¶27; P-SUMF ¶¶6-9].[1] Those beliefs conflict with County policy, first set out in EA-231 and later EA-232, because they preclude him from endorsing the PPF's message by raising it or otherwise being responsible for ensuring it is flown. [D-SUMF ¶¶27, 29, 32-33, 35; P-SUMF ¶¶10-15]. Little notified Defendants that the policy conflicts with his religion. [D-SUMF ¶27].

Incredibly, County denies that it initially offered Little an accommodation (that was then quickly revoked), but this is the only reasonable interpretation of the facts. [P-UMF ¶¶65-69, 78]. In granting this accommodation, County confirmed that Little has sincere religious beliefs that conflicted with the requirements of his job under the EAs and that he *could* be accommodated. County's revocation of the accommodation—rather than support County's position—merely evidences animus

---

[1] "P-SUMF" refers to Plaintiff's reply statement filed herewith, including Defendants' additional facts; D-SUMF refers to Defendants' statement, including Plaintiff's response to it located at ECF 157-2.

against Little and his traditional beliefs.

County tries to recast Little's religious conflict as squeamishness at seeing a symbol by invoking an inapposite out-of-circuit case that involved a plaintiff who objected to working in a building where a Pride Flag flew. *Tolle v. Rockwell Collins Control Techs., Inc.*, 20-cv-174, 2020 WL 3316984, at *5 (E.D. Va. 2020). Little's claim is different. County's misrepresentations notwithstanding, Little has never objected to working anywhere a PPF appears but instead narrowly objects to being *responsible for* raising the PPF or keeping it flying. [P-SUMF ¶¶19-20, 164, 204]. That distinction empties *Tolle* of any persuasive authority it might hold.

County relentlessly demanded Little ensure the flag flew at his worksites even though it knew doing so would require Little to betray his religious beliefs. County's recent attempts to feign ignorance of those beliefs is undermined by the record, which shows that Little informed County of them before he took down the PPFs. Indeed, County's initial grant of an accommodation makes no sense unless County knew of a religious belief that needed to be accommodated.

**B.    Accommodating Little is not an undue burden.**

Defendants assert there is evidence that respecting the religious accommodation they revoked would result in undue burden. [Defs' Opp.15]. If so, neither the twenty-six deponents in this case nor Defendants in their opposition have mentioned it. Instead, Defendants try to meet their burden of showing a hardship "substantial in the overall context of [their] business," *Groff v. DeJoy*, 600 U.S. 447, 468 (2023), via disanalogous COVID-19 vaccine-mandate cases, misrepresentation of the MOU, and an ecological fallacy about mental health risks for which their own witnesses admit there is no evidence. None of that establishes undue burden.

**1.    Vaccine-mandate cases are categorically disanalogous.**

Defendants rely on four cases to argue they need not show a burden that is substantial in the overall context of their business. All four involved accommodations to work in person and unvaccinated at the height of a global

pandemic. *E.g.*, *Petersen v. Snohomish Reg'l Fire & Rescue*, 150 F.4th 1211, 1220 (9th Cir. 2025); *Bordeaux v. Lions Gate Ent., Inc.*, 703 F. Supp. 3d 1117, 1135 (C.D. Cal. 2023). Defendants' cherry-picked quotations say the opposite of what Defendants claim they do when read in context and in light of the courts' reasoning. At most, they establish that in times of grave physical peril, analysis of employer burden can account for labor factors of production that fold into the cost of doing business, such as health costs from absenteeism or injury risk.

Defendants pretend an analogous risk accompanies the raising of the PPF. They offer no etiological or epidemiological theory connecting flags to physical health risk or even any psychological or sociological theory as to how presence or absence of a flag can result in mental health harms creating "substantial" business costs. *Groff*, 600 U.S. at 468. Lacking evidence of any harm, they retroactively try to infer it by exploiting a tragedy in another Fire Department division years earlier. But that unsavory move commits at least two different logical fallacies—one cannot infer a present condition from a past condition or a condition in one subunit from an unrelated subunit or even the whole department. *Groff* requires more than logically erroneous inference and musing.[2]

### 2.    County's conduct defeats its MOU argument.

Unable to find evidence of a health burden, Defendants invent an administrative one, arguing that Little could not be accommodated under Title VII given a preexisting MOU regarding workplace assignments. They invoke *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1977), for support but misunderstand the reasoning and holding in that case. *Hardison* rested on a specific statutory

---

[2] Absent from Defendants' survey of inapposite cases is *Smith v. City of Atlantic City*, in which the Third Circuit found no undue hardship even when a plausible theory of physical harm to coworkers existed because the operational risk from accommodating a single, non-frontline employee was "vanishingly small." 138 F.4th 759, 775 (3d Cir. 2025). Thus, undue burden is not met when *no* colorable theory of harm exists.

provision of Title VII that creates a carveout for special treatment for assignments within a seniority-based system. *Id*. at 81-82 (citing 42 U.S.C. §2000e-2(h)). Because the MOU does not create a seniority system, the carveout is inapposite here. Even if it were not, an MOU after *Groff* is just one factor bearing on whether a burden is substantial in context—not a deus ex machina. 600 U.S. at 470-71.

Even against a blank legal slate, Defendants' MOU argument fails on the facts. When Defendants initially granted Little an accommodation, they agreed he would serve as captain while another captain in a unified supervisory area handled the PPF. [P-SUMF ¶¶140, 147, 151]. It was not envisioned that any employee's schedule would be changed unilaterally because Defendants and Plaintiff cooperated to work out coverage, taking a page from *Groff*. *See* 600 U.S. at 471 (voluntary shift swapping). No matter how convenient now, Defendants cannot now retcon an accommodation implemented within the MOU as inconsistent with it.

### 3. The recall theory is untethered to this accommodation and too small to matter.

Defendants state without explanation that Little's argument concerning lack of undue burden from potential recalls "rings hollow." [D-Opp.18]. Not so. *Groff* requires hardship be tied to the practical impact of the accommodation at issue, yet Defendants make the opposite showing. They identify no recall Little's accommodation caused. They concede "merely forcing other employees to work overtime would not constitute an undue hardship." [D-MSJ.19 n.7]. They do not contest they would need to shoulder at most $8,000 marginal cost against a $1.5 billion annual budget. [P-SUMF ¶142]. That is the epitome of the "very small or trifling" expense *Groff* distinguished from "substantial increased costs." 600 U.S. at 469-71.

### II. Undisputed Evidence Establishes that Defendants Retaliated Against Little.

Discovery confirmed that Defendants retaliated against Little, so Defendants

now try to evade the record by shifting blame and misstating the law. Their efforts fail to survive scrutiny.

### A. O'Brien and Mayfield acted with knowledge of Little's accommodation request.

Defendants assert O'Brien and Mayfield ordered 100% compliance before Little lowered the PPFs. [D-Opp.19]. That misses the point. Neither witness denies knowing, before issuing the directive, that Little had requested an accommodation. [P-SUMF ¶236]. Instead, Mayfield's testimony that he thought Little had already *been accommodated* when he lowered the PPFs presupposes Mayfield had prior knowledge of the request. [Mayfield Dep. 213:14-17.]

Even were that not true, Boiteux had participated in Little's IPM and so indisputably knew of Little's request before communicating the directive to Lester. [P-SUMF ¶¶36, 59-67, 237]. Under *Staub*, an employer is liable when a supervisor with retaliatory animus sets into motion a process that culminates in adverse action even if the formal decisionmaker himself or herself lacks animus. *Staub v. Proctor Hosp.*, 562 U.S. 411, 422 (2011); *see France v. Johnson*, 795 F.3d 1170, 1175-76 (9th Cir. 2015).

### B. Lester acted with knowledge of Little's accommodation request.

Lester's supposed mandated reporter status does not help Defendants. Lester had discretion whether to file the CPOE complaint he did: Gottschalk did not ask him to and testified she would not have filed it had she been told about Little's accommodation. Lester chose to file it only after coordinating with Boiteux and Uehara. And then he exercised the same discretion *not* to report two other things: any mention of Little's accommodation in his proxy Gottschalk complaint and an episode that left Little "visibly upset." [Lester Dep. 140:21-25; 142:20-23; 147:11-23; 154:19-25]. Such selective reporting supports a retaliation claim; it does not defeat it. *Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1113 (9th Cir. 2011); *Raad v.*

*Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1194-95 (9th Cir. 2003).[3]

### C.    Boiteux delivered the discipline.

Defendants lastly argue Boiteux's demeaning of Little's religious beliefs as unimportant is "no basis for liability" since Boiteux did not decide what retaliation to mete out. [D-Opp.20]. But it is enough for liability purposes that Boiteux triggered the disciplinary chain reaction. He delivered the Direct Order, the Notice of Instruction, and the Notice of Subject of Internal Investigation. [P-SUMF ¶162]. He prompted HR's revocation of the accommodation by calling to ask if it was still "valid." [P-SUMF ¶119]. And his report launched the investigation that produced the 15-day suspension. [Mayfield Dep., 199:19-20].

### D.    Five days, six disciplinary actions.

The disciplinary deluge itself supports an inference of retaliation. Little was accommodated on June 19. [P-SUMF ¶¶36, 59-67]. On June 20, the Department issued a 100-percent directive irreconcilable with that accommodation. On June 21, Boiteux prompted HR to revoke the accommodation, and Lester filed the CPOE complaint after coordinating with Boiteux and Uehara. [P-SUMF ¶¶232-37; Lester Dep. Tr. 126:1-25, 140:21-25, 142:20-23]. The next day, Boiteux delivered three punitive documents to Little. [P-SUMF ¶162]. The day after that, Little was removed from the BIU despite his prior excellent performance. [P-SUMF ¶179]. Such temporal proximity—six adverse actions in just five days—can by itself suffice as circumstantial evidence of retaliation *Dawson v. Entek Int'l*, 630 F.3d 928, 937 (9th Cir. 2011).[4]

---

[3] Defendants claim Lester did not know Little had requested a religious accommodation until after Little lowered the PPFs. [D-Opp.19 n.8]. Irrelevant. Lester knew of the accommodation before confronting Little and before filing the CPOE complaint. [Lester Dep. Tr. 126:1-25].

[4] Defendants posit without citation that *Opara v. Yellen*, 57 F.4th 709 (9th Cir. 2023), applies only to non-movants. [D-Opp.19 n.7]. Not so. The Ninth Circuit regularly applies *Opara* to movants too. *E.g.*, *Kama v. Mayorkas*, 107 F.4th 1054, 1059 (9th

## III.    Little's Constitutional Claims Survive Summary Judgment.

County's arguments against summary judgment for Little on his Free Exercise claim falter at each turn.

### A.    Substantial burden.

County insists it did not substantially burden Little's religion because it punished him "for removing the flags," not for "any religious practice." [D-Opp.20]. That is a false dichotomy. Little told Lester he removed the PPFs pursuant to his understanding of the religious accommodation he received on June 19, 2023. [P-SUMF ¶¶117-20]. The next day, County issued Little a Notice of Instruction requiring full compliance with EA-231 regardless of his religious beliefs. [P-SUMF ¶164]. Lest that denigration be lost in the writing, when Boiteux delivered the Notice, he told Little his "religious beliefs don't matter." [P-SUMF ¶165].

County's own admissions confirm the belief and burden. County concedes Little "was motivated by his religious beliefs in taking down the Area 17 PPFs on June 21, 2023." [P-SUMF ¶135]. That conduct therefore qualified as "a sincerely motivated religious exercise." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 525 (2022). County then suspended Little without pay and imposed other discipline because of that religious exercise. That is a substantial burden. *Id.* at 525-27; *Sherbert v. Verner*, 374 U.S. 398, 404 (1963) ("a fine imposed" on religious exercise is a cognizable "burden").

Nor has that burden ended even years later. County argues no *ongoing* substantial burden exists because the Direct Order allegedly "applies only to EA-231" and "is therefore now moot." [D-Opp.21 n.9]. The record says otherwise. When Little asked County to suspend the Direct Order and remove it from his personnel file, County refused. [P-SUMF ¶216]. And that Order not only invokes a BOS motion that remains unaltered and therefore implicitly in effect [ECF 115-25], but

Cir. 2024); *Damiano v. Grants Pass Sch. Dist. No. 7*, 140 F.4th 1117, 1143 (9th Cir. 2025).

also expressly states that it "shall remain effective for the entire month of June … each year going forward." (*Id.*) EA-232 imposes the same baseline obligation according to EA-232's updated specifications. [P-SUMF ¶209; ECF 116-3]. And lest that continuing effect be forgotten, the Fire Department Chief admonishes his employees: "I want to be intentional and clear that compliance is not optional." [ECF 116-3 at 2].

County tries to unshoulder its burden by pointing out that Little has proactively worked around the discrimination by coordinating with his direct report to work in areas not required to fly the PPF during June. [D-Opp.21 n.9]. County does not dispute that at the May 31, 2024, IPM meeting, it offered Little only a "partial" religious accommodation to refrain from directly raising the PPF himself, while *denying* his request to be exempt from EA-232's separate requirement that he nonetheless "ensur[e] the PPF is flying during his work shift …, if any flagpole in Captain Little's assigned area could accommodate three flags in accord with EA-232." [P-SUMF ¶¶210-11]. This isn't a permanent solution. It is contingent on the availability of another captain amenable to trading shifts, flagpole conditions that could alter in a moment, and the risk of recall during busy Junes when many lifeguards are on vacation. [P-SUMF ¶¶157, 220, 277]. Any misstep in that high-wire act risks punishment up to termination, exerting unyielding and unmistakable pressure on Little to forego his religious beliefs. *See Sherbert*, 374 U.S. at 404. Accordingly, County is still substantially burdening Little's religion.[5]

### B.    Neutrality.

Nor can County explain away the record of non-neutrality. It is of two minds

---

[5] County nonsensically argues that it has not "enforced, attempted to enforce, or threatened to enforce the Direct Order against" Little. [D-Opp.21 n.9]. The Direct Order is *itself* a threat to enforce the underlying requirement that Little ensure others fly the PPF pursuant to the Board's May 7, 2023 motion, as discussed above. And EA-232 imposes its own obligation and threat, particularly given the Fire Chief's "intentional" and "clear" admonition that "compliance is not optional." [ECF 116-3].

PLAINTIFF'S REPLY MEMORANDUM
ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

whether Boiteux said Little's "religious beliefs don't matter," calling it "disputed" but then "factually true" in service of different arguments. [*Compare* P-SUMF ¶165; Boiteux Dep., 270:20-271:4, *with* D-Opp.22]. In any event, County argues, Little's religious beliefs are "irrelevant" [D-MSJ.26]. That argument defeats itself.

County strives but fails to distinguish this lack of neutrality from *Fellowship of Christian Athletes (FCA) v. San Jose Unified School District Board of Education*, 82 F.4th 664, 686 (9th Cir. 2023) [D-Opp.22]. There, student religious views were said to have "no rightful place" on campus, and the Ninth Circuit found that position unacceptable. That makes sense for at least two reasons. First, Title VII makes clear that employee religious beliefs and practices very much *do* matter not withstanding any "otherwise-neutral policy." *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 775 (2015). Second, the First Amendment requires "neutral and respectful consideration" of religious objections even in (perhaps especially in) the fraught context of sexual ethics and gender ideology. *Masterpiece Cakeshop v. Colorado C.R. Comm'n*, 584 U.S. 617, 634 (2018); *see id.* at 636 (finding non-neutrality where comments were not "disavowed in the briefs filed in this Court").

Cornered by precedent, County retreats to a less ambitious argument that non-neutral statements must be made "by or to a decisionmaker." That is not the law. The First Amendment prohibits non-neutrality that is "masked, as well as overt." *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 534 (1993). The pertinent question is whether the record creates at least "*slight* suspicion" the decision "stem[med] from" anti-religious "distrust." *Masterpiece*, 584 U.S. at 638. *FCA* shows how to apply that principle. There, the Ninth Circuit found dispositive evidence of non-neutrality based on antireligious comments by members of a "Climate Committee" even though the school district—not the Committee—was the relevant decisionmaker and even though the Committee conveyed only its recommendation (*no*t its anti-religious comments) to the district. *FCA*, 82 F.4th at 675, 691-92. The nexus to decisionmakers was much closer, and the suspicion of

non-neutrality much greater, here where County has adopted Boiteux's statement as "true" and agrees Little's religious beliefs are allegedly "irrelevant" [D-Opp.22; D-MSJ.26].[6]

Uehara's email strengthens that inference. County accuses Little of "deliberately ignor[ing]" and "reimagin[ing]" Uehara's testimony, purporting to clarify "that Uehara ███████████████████████████ ████████████████████████ But the email belies that self-serving post-litigation gloss. Uehara sent it ████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████ That admission cuts in favor of Little, not against him. [D-Opp. at 22-23]. ████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████ Taken together, Uehara's statements give rise to further "suspicion" County acted based on "animosity to" or "distrust of" Little's religious practice. *Masterpiece*, 584 U.S. at 638-39.

---

[6] Suspicion arises from County's Notice of Instruction classifying Little's undisputed sincere religious beliefs as merely "personal." [P-SUMF ¶164]; *see Does 1-11 v. Bd. of Regents of Univ. of Colo.*, 100 F.4th 1251, 1271 (10th Cir. 2024) (government may not refuse to accommodate sincerely motivated religious practice based on its view that applicant's underlying beliefs are merely "personal").

The Suspension Notice only compounded that problem. County asks the Court to disregard the Notice's overtly non-neutral language because, in its view, "lowering … the PPFs" had nothing to do with Little's "religious beliefs." [D-Opp.23]. But County now *admits* "Little was motivated by his religious beliefs in taking down the Area 17 PPFs." [P-SUMF ¶135]. County also asserts that "[l]owering a flag is not 'expressing' anything" even though it suspended Little in part because ███████ ██████████████████████████████████████████████████ [P-SUMF ¶191, emphasis added]. County's attempt to have it both ways is absurd.[7]

Finally, County ignores that it "target[ed] [Little's] religious conduct for distinctive treatment," *Lukumi*, 508 U.S. at 534. It admits it told Little his religious objection does not qualify as "religious practice," unlike attending religious services or wearing religious garb. [P-SUMF ¶131]. But the First Amendment prohibits governments from "discriminat[ing] against *some* … religious beliefs," *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 461 (2017) (emphasis added), as well as from "restricting practices because of their religious *nature*," *Fulton v. City of Philadelphia*, 593 U.S. 522, 533 (2021) (emphasis added). The question is whether the person's religious belief and practice "reflects an honest conviction." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 725 (2014) (quotations omitted); *accord Masterpiece*, 584 U.S. at 638 (government may not "presuppose[] the illegitimacy of religious beliefs and practices"); *Bates v. Pakseresht*, 146 F.4th 772, 793-95 (9th Cir. 2025) (same). Here, County admits Little sincerely religiously believes that he may not ensure the PPF is raised. [P-SUMF

---

[7] County's argument that accommodating Little would amount to a "license to interfere with government property" ignores that the First Amendment *never* permits denying a religious accommodation, whatever the subject matter, based on "animosity to religion or distrust of its practices." *Masterpiece*, 584 U.S. at 638-39. County's citations are not the contrary. Besides, County *admits* Little "carefully folded" the PPFs and placed them inside Area 17's stations after he took them down [P-SUMF ¶¶113, 115], and ignores that Little sought only an accommodation from personally raising or ensuring the PPFs are raised. [P-SUMF ¶¶29-30, 52, 60-66].

PLAINTIFF'S REPLY MEMORANDUM
ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

¶30]. Similarly, County ignores Little's distinctive treatment ████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████, while suspending Little 15 days without pay. That is a classic "religious gerrymander" in violation of religious neutrality. *Lukumi*, 508 U.S. at 535. Accordingly, Little is entitled to summary judgment on his Free Exercise claim.[8]

### C.    *Monell* liability.

County claims Little "abandoned" any challenge to its "policies" because he once conceded EA-232 is facially neutral. [D-Opp.25]. That position confuses facial neutrality with municipal liability, the latter of which accrues under *Monell* even from "a single decision by municipal policymakers under appropriate circumstances," *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986), including when "a person causing the violation has final policymaking authority," *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999), or "ratifie[s] a subordinate's unconstitutional decision or action and the basis for it." *Gillette v. Delmore*, 979 F.2d 1342, 1347 (9th Cir. 1992). County's non-neutral *applications* of EA-231 and EA-232 (or any other policy)[9] readily trigger *Monell*.

County asserts without argument that EA-231 and the Board motion were not the "moving force" behind the constitutional violations. But that position ignores how County non-neutrally applied those policies (along with the CPOE and flag policies) to issue its Notice of Instruction, Direct Order, and Suspension Notice. [*See* P-MSJ.27]. Those actions imposed the operative commands and discipline that burdened Little's religious exercise, and County cannot isolate the policies from the

---

[8] County makes no attempt to satisfy strict scrutiny.

[9] Accordingly, County's arguments that Little was punished for violating its "entirely separate" CPOE and flag policies are irrelevant.

PLAINTIFF'S REPLY MEMORANDUM
ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

decisions that gave them legal and practical force.

County argues the deliberate-indifference inquiry is an "objective" one. But an objective inquiry hurts County, not Little. Particularly after *Masterpiece* and *FCA*, a public employer should know it cannot tell an employee his "religious beliefs don't matter" and equate those beliefs to discrimination against the LGBTQ+ community without giving the objection neutral and respectful consideration. Such conduct is so likely to violate constitutional rights, that County's "policymakers … can reasonably be said to have been deliberately indifferent to the need" "for more or different training." *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016).[10]

County again tries to discount Boiteux's anti-religious dismissiveness of Little's religious beliefs because of Boiteux's alleged lack of policymaking authority. That misunderstands the legal standard. County has openly adopted Boiteux's statement as "factually true" and doubled down on the notion that Little's religious beliefs are "irrelevant." *See supra*. That adoption ratified both Boiteux's action and its basis. *Gillette*, 979 F.2d at 1347. The record also shows Boiteux discussed Little's grievance with Mayfield, and that Mayfield directed Boiteux to follow HR's non-neutral rescission of Little's accommodation. [P-SUMF ¶¶130-35]. The same non-neutral policy is likewise reflected in County's Notice of Instruction deeming Little's beliefs merely "personal"; the Suspension Notice ██████████████████ ████████████████; County's targeting of Little's alleged CPOE and flag violations for distinctive treatment (given ████████████████ ██████████████████████████); and denying him an accommodation based on the underlying *nature* of his sincere religious objection. *See supra*. County's opposition addresses none of this, presumably because each factor it

---

[10] County's refrain that no policy has ever required Little to raise, maintain, or instruct others to raise the PPF again rings hollow given the Direct Order's command that he ensure the PPF flies every June and "each year going forward," and EA-232's exhortation that "compliance is not optional," as discussed above.

PLAINTIFF'S REPLY MEMORANDUM
ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

ignores shows County adopted Boiteux's religious animosity. Accordingly, Little is entitled to summary judgment on *Monell* liability, too.

## CONCLUSION

Plaintiff respectfully asks for entry of partial summary judgment in his favor.

Respectfully submitted,

LiMANDRI & JONNA LLP

Dated: April 24, 2026        By: _____

Charles S. LiMandri
Paul M. Jonna
Jeffrey M. Trissell
Joshua A. Youngkin
William T. Duke
Attorneys for Plaintiff
Captain Jeffrey Little

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff Captain Little, certifies that this brief contains 4,195 words, which complies with the word limit of this Court's Chambers Rules.

Dated: April 24, 2026        By: _____

Paul M. Jonna

**CERTIFICATE OF SERVICE**

*Captain Jeffrey Little v. Los Angeles County Fire Department, et al.*
USDC Court - Central District - Case No.: 2:24-cv-04353-JLS (BFMx)

I, the undersigned, declare under penalty of perjury that I am over the age of eighteen years and not a party to this action; my business address is P.O. Box 9120, Rancho Santa Fe, California 92067, and that I served the following document(s):

1.   **PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT- <u>REDACTED</u>;**

2.   **PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT - <u>REDACTED</u>;**

3.   **PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF EVIDENTIARY OBJECTIONS.**

on the interested parties in this action by placing a true copy in a sealed envelope, addressed as follows:

Dimitri D. Portnoi, Esq.
Kyle M. Grossman, Esq.
Marni B. Robinow, Esq.
O'MELVENY & MYERS LLP
400 South Hope Street, Suite 1900
Los Angeles, CA 90071
Tel: (213) 430 6000; Fax: (213) 430 6407
E-Mail: dportnoi@omm.com
E-Mail: kgrossman@omm.com
E-Mail: mrobinow@omm.com
**Attorneys for Defendants County of Los Angeles, Fernando Boiteux, Arthur Lester, and Adam Uehara**

  X   **(BY ELECTRONIC MAIL)** I served a true copy, electronically on designated recipients via electronic transmission of said documents.

  X   **(BY ELECTRONIC FILING/SERVICE)** I caused such document(s) to be Electronically Filed and/or Service using the ECF/CM System for filing and transmittal of the above documents to the above-referenced ECF/CM registrants.

I declare under penalty of perjury, under the laws of the United States and the State of California, that the above is true and correct.

Executed on April 24, 2026, at Rancho Santa Fe, California.

Kathy Denworth