Charles S. LiMandri, SBN 110841
 cslimandri@limandri.com
Paul M. Jonna, SBN 265389
 pjonna@limandri.com
Jeffrey M. Trissell, SBN 292480
 jtrissell@limandri.com
Joshua A. Youngkin, SBN 332226
 jyoungkin@limandri.com
William T. Duke, SBN 361823
 wduke@limandri.com
LiMANDRI & JONNA LLP
 *as Special Counsel to*
 THOMAS MORE SOCIETY
P.O. Box 9120
Rancho Santa Fe, CA 92067
Telephone: (858) 759-9930
Facsimile: (858) 759-9938

*Attorneys for Plaintiff
Captain Jeffrey Little*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAPTAIN JEFFREY LITTLE, <br><br> Plaintiff, <br><br> v. <br><br> LOS ANGELES COUNTY, et al. <br><br> Defendants. | **Case No.: 2:24-cv-4353-JLS-PD** <br><br> **PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br> Judge: Hon. Josephine L. Staton <br> Courtroom: 8A <br> Date: May 8, 2026 <br> Time: 10:30 a.m. <br><br> Action Filed: May 24, 2024 |

# PUBLIC / REDACTED VERSION

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 1. | Jeff Little has been a Los Angeles County lifeguard for over 22 years. In that role, he has saved numerous lives and risen through the ranks to become a Captain. As a Captain, he was responsible for overseeing his own lifeguard stations and patrols. (3d Am. Verif. Cmplt. ¶17 & Ex. 2.) | Undisputed. |
| 2. | Becoming a Los Angeles County ocean lifeguard specialist is a significant accomplishment and is also "like winning the lottery"; Captain Little is a "really talented" lifeguard. (Lester Dep. pp. 15:21-22, 21:10; Power Dep. pp. 15:9-17, 124:23-25.) | Disputed, as only Chief Lester testified that Plaintiff is "really talented." (Dkt. 119-4 (Lester Dep. Tr.) 21:10.) Undisputed as to the remainder of the facts. |

2. Moving Party's Response:

Defendants' response is immaterial. Defendants offer no evidence that Little is not a talented lifeguard as Chief Lester, who has 24 years of service as a lifeguard (Lester Dep. 10:3-10) stated. *See* L.R. 56-4 ("…the Court may assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the Statement of Genuine Disputes and (b) *controverted by declaration or other written evidence filed in opposition to the motion*.") (emphasis added).

| | | |
|---|---|---|
| 3. | Captain Little has maintained a good reputation and good reviews. He was promoted to ocean lifeguard specialist in 2013, and to captain in 2020. (Little Dep. p. 49:14-16; Boiteux Dep. pp.25:13-26: 1.) | Disputed as to the first sentence. Plaintiff "had a good review by the chiefs" and "good reputation" *at the time he was promoted in 2020*. Dkt. 119-2 (Boiteux Dep. Tr) 25:13- 26:1; Dkt. 116-37 (Notice of Suspension).) |

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | | Undisputed as to the second sentence. |
| | 3.  Moving Party's Response: Defendants' response is immaterial. The fact that Little had a good reputation in 2020 does not mean that he had a bad reputation or bad reviews at any point before he requested a religious accommodation. The Fire Department's 30(b)(6) witness testified that Little received a "competent" rating or higher on every annual evaluation since his career started, and a "very good" rating for the one year period ending March 31, 2023. Sturdivant Ex. 2 at 1, 2, 3, 4, 7, 10, 11, 13, 15, 18, 21, 24, 27, 29, 33, 36, 39, 43, 47, 50, 53, 54, 64, 74, 84. Defendants offer no evidence that Little had a bad reputation or bad reviews. | |
| 4. | Captain Little's performance evaluation for April 2022-March 2023 discussed his laudable work as part of the Background Investigation Unit ("BIU"), and his overall rating for that period was very good and exceeded expectations. (Boiteux Dep. pp.37: 19-40:4, 41:4-12.) | Undisputed. |
| 5. | Public safety, including saving lives, is the main priority of L.A. County's elite, talented lifeguards. (Lester Dep. pp.92.25-93.1.) | Undisputed. |
| 6. | Captain Little is an Evangelical Christian with traditional, orthodox beliefs on marriage, family, and sexual behavior and identity. (3d Am. Verif. Cmplt. ¶18.) | Undisputed. |

3

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 7. | Captain Little professes a Biblical world view holding that marriage is between one man and one woman, and that sexual relations outside those parameters dishonors God. (Little pg.33.16-34.1, 3d Am. Verif. Cmplt. ¶18(1)-(5).) | Undisputed. |
| 8. | Captain Little's sincere religious beliefs regarding marriage and sexuality include (a) that same-sex sexual activity is morally wrong, and that it is equally wrong to celebrate such activity and (b) gender and sex are inherently intertwined, and attempts to separate or change one's sex are morally wrong. (*Id.*) | Undisputed. |
| 9. | Captain Little's sincere religious beliefs also dictate that Christians must demonstrate compassion and love toward all individuals, including those who identify as LGBTQ, while continuing to adhere to biblical truths. (*Id.*) | Undisputed. |
| 10. | Captain Little's faith impacts everything he does. He practices daily prayer and scripture reading; attends prayer and church services; and leads his family in prayer and worship. He prays throughout the day every day. (Little Dep. pp.31:22-32:19.) | Undisputed. |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
| --- | --- | --- |
| 11. | Captain Little understands that the "Progress Pride Flag" "promotes ... a sexual expression or sexual ethics that is outside of God's provision for sexual expression in the Bible." (Little Dep. p.34:11- 17.) | Undisputed. |
| 12. | He understands the Pride Flag "celebrate[s ] the LGBT community, lifestyle, [and] sexual expression," regardless of what other people understand it to mean. (Little Dep. p.39:16-23.) | Disputed. It is unclear what Plaintiff means when he represents that this is the PPF's meaning "regardless of what other people understand it to mean." Plaintiff's testimony only describes his view of what the PPF represents. The PPF has a broader meaning than this. It "symbolize[s] the value and dignity of the gay community," and the PPF's various colors "represent[] sex, life, healing, sunlight, nature, magic and art, serenity, and spirit. ... The [PPF's] black and brown stripes represent marginalized LGBTQ+ communities of color, community members lost to HIV/ AIDS, and those currently living with HIV/AIDS." (Dkt. 116-(Board Motion).) The chevron shape "represent[s] a need for forward movement." (*Id.*) |

12. Moving Party's Response:

Defendants' response is immaterial. It merely provides additional characterizations of how nonparties might understand the flag, but ultimately confirms what Little's view of the Pride Flag is. Defendants' reason for the dispute is unclear and, in any event, immaterial.

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 13. | The Los Angeles County Board of Supervisors adopted a motion on March 7, 2023, titled "Raising the Progress Pride Flag at Los Angeles County facilities," which resulted in adoption of EA-231. (3d Am. Cmplt. Exs. 3 & 4.) | Undisputed. |
| 14. | The motion acknowledged that the Pride flag's original colors "represent[] sex, life, healing, sunlight, nature, magic and art, serenity, and spirit." It also states that in 2019, a new version of the Pride Flag debuted that added light blue, pink, and white stripes to promote "the transgender community." (3d Am. Cmplt. Ex. 3.) | Disputed to the extent that Plaintiff mischaracterizes the Board Motion to say that the PPF "added light blue, pink, and white stripes to *promote* "the transgender community." The Board Motion states that the PPF adds these colors "to *embrace* the transgender community. (Dkt. 116-1 (Board Motion) (emphasis added).) |

14. Moving Party's Response:

The dispute is not material. Defendants' response attempts to make a distinction between the word "promote," which fact 14 does not represent as a part of a direct quotation, and the word "embrace."

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 15. | The motion also stated that "[m]ost recently, the Progress Pride Flag was created by artist Daniel Quasar as a combination and reimaging of the original Pride flag. The Progress Pride Flag's black and brown stripes represent marginalized LGBTQ+ communities of color/ community members lost to HIV AIDS, and those currently living with | Undisputed. |

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | HIV/AIDS. The new flag colors are in a chevron shape to represent a need for forward movement." (3d Am. Cmplt. Ex. 3.) | |
| 16. | The PPF "is very controversial within L.A. County" and is "a nationwide controversial topic that's all over the news and media." (Lester Dep. p.172:3-11) | Disputed. This fact requires more context. According to Chief Lester, "people ... have feelings one way or the other" regarding the PPF. (Dkt. 119-4 (Lester Dep. Tr.) 172:8-9.) |

16. Moving Party's Response:

Defendants' dispute is immaterial and based simply on Defendants' additional characterization of Lester's statement, but does not materially dispute Lester's testimony that the PPF is controversial within L.A. county. Defendants offer no evidence that the PPF is uncontroversial.

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 17. | The Board's motion recognizes that the Progress Pride Flag "celebrates LGBTQ+ Pride Month." (3d Am. Cmplt. Ex. 3; Boiteux Dep. pp.62:13-63:14, 68:8-13.) | Disputed. Chief Boiteux's testimony does not support this fact. Chief Boiteux's understanding is that the PPF "show[s] support for the alternate . . community." The PPF has a broader meaning than this. It "symbolize[s] the value and dignity of the gay community," and the PPF's various colors "represent[] sex, life, healing, sunlight, nature, magic, art, serenity, and spirit . . The [PPF's] black and brown stripes Represent marginalized LGBTQ+ communities of color, community members lost to HIV/AIDS, and those currently living with HIV/AIDS." (Dkt. 116-1 (Board |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|-----|------------------------------------|------------------------------|
| | | Motion.) The chevron shape "represents a need for forward movement." (Id.) |

17. Moving Party's Response:

The dispute is not material. Moreover, Defendants' response does not present evidence that the Board motion does not link the PPF with celebrating LGBTQ+ Pride, nor could it, because the motion explicitly says that flying the PPF is one of "several ways our communities celebrate LGBTQ+ Pride Month." 3d Am. Cmplt. Ex. 3 at 2. Boiteux's cited testimony discusses this exhibit. Boiteux Dep. pp. 53:1-68:8-13.

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|-----|------------------------------------|------------------------------|
| 18. | The Board motion directed the Internal Services department to raise the PPF at the Kenneth Hahn Hall of Administration "and Los Angeles County facilities" *only* "where the American and California Flags are displayed during the month of June"; it otherwise directed the County CEO to "work with all County Departments to explore ways the [PPF] can be flown at all county facilities." (3d Am. Cmplt. Ex. 3; Oliva Dep. p.41.16-20.) | Disputed. The Board Motion "directs the chief executive officer to work with all County departments to explore ways the Progress Pride flag can be flown at all county facilities. (Dkt. 119-12 (Oliva Dep. Tr.) 40:21-41:6; Dkt. 116-1 Board Motton).) Thus, the Board Motion did not direct the PPF to be raised "*only* 'where the American and California Flags are displayed during the month of June.'" |

18. Moving Party's Response:

Defendants' response is nonresponsive because it deliberately misstates fact 18. The statement asserts that the Internal Services Department was only instructed to fly the PPF at Los Angeles Count facilities where the American and California Flags are displayed. The Department was not instructed to fly the PPF where the American and California Flags were *not* displayed, nor was any other entity directed to fly the PPF. "Work[ing] to explore ways" to fly a PPF does not equate to actually being required to raise a PPF. Defendants' response includes additional

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | irrelevant information regarding a separate aspect of the Board motion that does not dispute the fact. | |
| 19. | In implementing the Board's motion, the Fire Department issued a memorandum titled EA- 231 to all employees on May 25, 2023, requiring the Progress Pride Flag be flown at certain locations in June. (3d Am. Verif. Cmplt. Ex. 4.) | Undisputed. |
| 20. | EA-231 stated that "Captains/Site Supervisors shall:" "[e]nsure flags are received and flown throughout the month of June"; and '[a]t the end of June, ensure the PFF[sic] is folded and stored for use the following year." (3d Am. Verif. Cmplt. p.85 Ex. 3; Nuanes- Delgadillo Ex. 3 at p. 2.) | Undisputed. |
| 21. | 21. Under EA-231 's requirements, if a station had only one flagpole, the PPF was not required to be flown if the pole had '[c]lasps for [only] one flag." But if the flagpole had two sets of clasps, the PPF was required to fly beneath the U.S. flag *to the exclusion of the State flag.* (3d Am. Verif. Cmplt. pp.84, 87, Exs. 4 & 5; Oliva Dep. p.45:12-24.) | Undisputed. |
| 22. | If a station had two flag poles, and "the right pole only has one set of | Disputed. This fact lacks context. Under EA-231, the California flag |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | clasps, the PPF flag shall be flown *in place of the State flag*." (3d Am. Verif. Cmplt. pp.84, 87, Ex. 4 (emphasis added).) | must also be flown if a station has two flagpoles and the right flagpole has two sets of clasps. (Dkt.11 6-2 (EA-231).) Moreover, nothing in EA-231 prohibits its adding clasps so that there are two sets on a flagpole. (*Id.*) |

22. Moving Party's Response

Defendants' response adds immaterial context and ultimately does not raise a dispute that EA-231 explicitly states that when a location has two flagpoles, "if the right pole only has one set of clasps, the PPF flag shall be flown in place of the State flag." 3d Am. Verif. Cmplt. pp.84, 87, Ex. 4. Moreover, EA-231 does not require or even suggest adding clasps. Id.

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 23. | In effect, EA-231 directed captains to take down the California flag if there were only clasps for two flags- even though the Board motion required the PPF only where both the American and California flags are also displayed. (Boiteux Dep. pg.56:1-25, 78: 18-<br><br>22, Boiteux Ex. 7.) | Disputed. The evidence does not support that EA-231 effectively "directed captains to take down the California flag[.]" EA-231 does not direct Captains to take down the California flag. (Dkt. 116-2 (EA-231).) |

23. Moving Party's Response:

Defendants are incorrect. EA-231 states that the PPF flag "shall be flown *in place of* the State flag." Logically, to put the PPF in place of the State flag, the state flag must be removed from its place. Moreover, EA-231 states that the PPF "shall be" flown, indicating that the requirement is mandatory. Defendants make no dispute regarding the clear conflict between EA-231 and the Board motion.

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 24. | Given EA-231's varying requirements for flying (or not flying) the PPF depending on the number of clasps on each pole, and on whether a station had more than one pole, Chief Arthur Lester found EA-231 to be "vague" and "a challenge to implement" in determining "how many of ... our poles" along a vast 35-mile coastline constituting his battalion area (LG Battalion 100) "could actually fly the [PPF]… safely)." (Lester Dep. pp. 40:7-41:19. | Disputed. Chief Lester found EA-231 "vague" because of the "vast variety of ... flagpoles that we have within the lifeguard division, different sizes, different-sized flags, different stations, small holes, big poles, one pole, two pole, three poles." (Dkt. 119-4 (Lester Dep. Tr.) 40:7-17.) Chief Lester did not mention "EA- 31 's varying requirements for flying (or not flying) the PPF." (*Id.*) |

24. Moving Party's Response:

Defendants' response does not raise a material dispute. Lester testified that EA-231 was vague due to how many variations of flag poles existed within the lifeguard division. One such variation was the number of poles at each location, and the rules for flying the PPF depending, in part, on how many flag poles were at a site. (3d Am. Verif. Cmplt. pp.84, 87, Ex. 4). Defendants do not dispute that Chief Lester regarded EA-231 as a "challenge to implement."

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 25. | Chief Boiteux is responsible for the daily operations of the lifeguard division over 72 miles of coastline including Catalina Island. Those operations include providing for public safety to beachgoers, maritime rescue, and addressing medical, and any emergencies that might arise within the maritime coast of L.A. County. (Boiteux Dep. pp.18:20-19:3.) | Undisputed. |

11

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 26. | Chief Boiteux acknowledged that EA-231 left room for interpretation. (Boiteux Dep. p.92:6-14.) | Undisputed. |
| 27. | Chief Boiteux, who is responsible for the entire lifeguard division of the Fire Department, believes people should not be forced to endorse a viewpoint that violates their sincerely held religious beliefs and that people who hold that marriage should be between one man and one woman should be respected. (Boiteux Dep. pp.59:25-60:4, 64:3-8.) | Undisputed. |
| 28. | In 2023, the Fire Department received two requests for exemptions from EA-231, in addition to Captain Little's. (Sturdivant Dep. p.38:5-7.) | Undisputed. |
| 29. | According to Captain Little's religious beliefs, he could "work in a building that had a flagpole that was flying the Progress Pride Flag," "[a]s long as [he] had no responsibilities associated with" it, including raising or ordering others to raise it. He can "work[] in an environment in which" the PPF is "around." (Little Dep. pp.34:24-35:10.) | Disputed. The evidence cited in Defendants' Separate Statement of Uncontroverted Facts (Dkt. 114-2) ,¶¶32-33 contradicts this fact. This evidence indicates that Plaintiff further objected to working in a place where he could see the PPF flying and requested to not be required to fly the PPF at Will Rogers Beach. (Dkt. 115- 2 (Little Dep. Tr.) 120:5-121:4; Dkt. 115-7 (Nuanes-Delgadillo Dep. Tr.) 163:18-164:5, 170:13:-15, 219:3-219:14; Dkt. 115-8 (McMillon Dep. Tr) 107:16-108:1, 118:14-119:1; Dkt. |

12

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|-----|-----|-----|
| | | 115-15 (Crum Dep. Tr.) 96.21-97.1, 97:7-13, 100:13-25, 101:8-16, 105:10-106:2, 137:24.-138:2; Dkt. 115-9 Uehara Dep. Tr.) 89:2-90:16, 130:6-12, 166:15- 167:1; Dkt. 116-19 (Nuanes-Delgadillo Decl.) ¶¶3-4; Dkt. 116-20 (2023 IPM notes) at LAC- 0001488-89; Dkt. 116-21 (2023 IPM report) at LAC-0000374.) |

29. Moving Party's Response:

Defendants' response does not present a material dispute because it does not assert that Little's religious beliefs prevented him from "working in a place where he could see the PPF flying." At best, Defendants assert that Little objected to doing so, but an objection is not a religious prohibition. Indeed Little had worked and looked at buildings painted in the colors of the pride flag and did not request an accommodation. Little Dep 118:9-120:4.

Defendants' purported fact 32 is itself disputed. See Dkt. 155-1 at ¶ 32, citing Jonna MSJ Opp. Decl., Ex. A, Little Dep., 100:17-25, 120:7-12, 120:20-121:4, 121:10-23, 127:3- 129:22). Defendant cannot rest their dispute on a fact that is itself disputed.

Defendants' purported fact 33 shows the *absence* of a dispute, because it merely asserts that Little "requested that he either not be required to fly the PPF at Will Rogers Beach or be reassigned to a site where he would not be responsible for flying the PPF", which is consistent with his desire to have "no responsibilities associated with" the PPF and does not show a religious belief objection to working where he could see the PPF.

Further, Defendants' cited evidence is simply additional irrelevant information that does not dispute this fact and is no more than a gish gallop:

- Dkt. 115- 2 (Little Dep. Tr.)

    o 120:5-121:4

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|

- Little explained that moving to a location where the PPF was not flown was "the easiest way to find a solution" to his accommodation request.

- Dkt. 115-7 (Nuanes-Delgadillo Dep. Tr.)

  - 163:18-164:5

    - "It was confirmed that you were requesting to not fly the PPF at Will Rogers, and if that is not possible . . . then you would like to be placed at a station where the PPF is not flown."

  - 170:1-23

    - Nuanes-Delgadillo testified to her "understanding" that Little's "main concern" was that "he would not have to see the flag" but admits she has no memory of Little ever putting that desire into writing.

  - 219:3- 219:14

    - Nuanes-Delgadillo stated "[Little] doesn't want to work in a building where the PPF is flown. And then he doesn't also want to be responsible for flying the PPF himself." This is consistent with Little's request to be assigned to a site where PPF was not flown as a means of not being responsible for the flag.

- Dkt. 115-8 (McMillon Dep. Tr)

  - 107:16-108:1

    - McMillon stated that Little "didn't want to look at the Pride Flag, which was outside his window from his office in Area 27" when discussing LAC-373-376, which recorded the IPMs on June 19 and June 22, 2023. LAC-373-376 does not mention seeing a PPF through a window at Area 27. Contemporaneous notes are inconsistent with this testimony. Dkt. 116-20 (2023 IPM notes) at LAC-0001488 ; Dkt. 116-21 (2023 IPM summary). LAC-0000374.)

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|-----|------------------------------------------------------|---------------------------------------------|

- 118:14-119:1

  - McMillon admitted that her recollection did not match the detailed IPM report, which makes no mention of seeing a PPF through a window.

- Dkt. 115-15 (Crum Dep. Tr.)

  - 96.21-97.1

    - Crum states that Little's desire was to not "work in a location in which he was either … required to raise the [PPF] or be in charge of personnel that were charged with raising the [PPF]."

  - 97:7-13

    - Crum states that Little "didn't want to work in a place that was flying that flag."

  - 100:13-25

    - Crum recalls that the accommodation request was either for Will Rogers beach to not fly the PPF or to be placed at a station where the PPF was not flown.

  - 101:8-16

    - Crum recalls that the accommodation request was either for Will Rogers beach to not fly the PPF or to be placed at a station where the PPF was not flown.

  - 105:10-106:2

    - Crum states that Area 33 was a best case scenario because it would be rare that Little would have to ensure the PPF was raised, unlike Will Rogers, where the PPF is flying all the time.

  - 137:24.-138:2

    - Crum recalls that Little wanted to not raise or lower the PPF.

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|

- Dkt. 115-9 Uehara Dep. Tr.

  o 89:2-90:16

    ▪ Uehara says he could not "completely recall" what Little's religious objections were, and only stated that Little "did not want to look at [the PPF] 'cause he said it made him physically ill." Uehara denied knowing whether physical illness was a religious belief.

  o 130:6-12

    ▪ This does not cite testimony, but only a question, and the question regards the PPF flowchart only.

  o 166:15- 167:1

    ▪ Uehara testifies that there were no place where there was no flag being flown. No discussion of Little's religious beliefs.

- Dkt. 116-19 (Nuanes-Delgadillo Decl.) ¶¶3-4

  o Nuanes-Delgadillo only testifies to preparing notes and reports of the IPMs.

- Dkt. 116-20 (2023 IPM notes) at LAC- 0001488-89

  o "[Little] stated that he understands that if he has to work at other locations, the flag may be flown; however, he would prefer to work at a location where the PPF is not flown." This shows that the objection is not a religious prohibition.

  o The same document records that Little had no issue working at towers "decorated/painted to support LGBTQ+".

- Dkt. 116-21 (2023 IPM report) at LAC-0000374.

  o Little was "informed that . . . the department is able to accommodate you with an assignment at Area 33, which you accepted."

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 30. | Captain Little's religious beliefs prevent him from raising the PPF—primarily because he believes it "would be displeasing to God," based on "Biblical accounts that" require him "to honor God in everything I do" and thus forbid "participating in activities that dishonor God." (Little Dep. pp.36:4-21, 37:10-16, 38:1:5.) | Disputed. The evidence provides Plaintiff's religious beliefs that prevent him from ensuring the PPF is raised not necessarily raising the PPF himself. (Dkt. 115-2 (Little Dep. Tr. 37:23-25.) Undisputed only to the extent that this fact describes Plaintiffs religious beliefs. |

30. Moving Party's Response:

Defendants' evidence does not raise a material dispute and misstates testimony. The cited testimony simply asked about ensuring the PPF is raised, and did not exclude Little's own action of raising the PPF, which is one way to "ensur[e] the PPF is raised." Defendants provide no evidence that Little's religious beliefs cited here were unrelated to him personally raising the PPF.

| | | |
|---|---|---|
| 31. | Captain Little was friends with Chief Arthur Lester and, in years past, had generally discussed his religious beliefs with Lester as "something that's really important to" (Little Dep. p.48:8-25; Lester Dep. pp.131:8-133:8.) | Disputed, this is an incomplete sentence. |

31. Moving Party's Response:

Defendants' response does not dispute that Little was friends with Lester and had discussed his religious beliefs with him.

| | | |
|---|---|---|
| 32. | When Captain Little received EA-231 in late May 2023, he confirmed that the flagpole at the main location where he worked (Will Rogers) was | Disputed. Based on the 100 percent compliance directive, Will Rogers was required to fly the PPF. (Dkt. |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | flying only the American flag and thus, according to EA-231's express terms, was not required to fly a PPF. (Little Dep. p.61:9-19.) | 115-5 (Lester Dep. Tr..) 88:5-20.) |

32. Moving Party's Response:

Defendants' response is immaterial because the fact discusses the terms of EA-231, not the compliance directive. The 100 percent compliance directive was issued on June 20, 2023. Lester 73:25-74:10. Defendants offer no evidence that EA-231 requires the Will Rogers location to fly a PPF.

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 33. | Captain Little was on a pre-scheduled vacation from June 4 to June 17, 2023. (Little Dep. p.81:11-15.) | Undisputed. |
| 34. | Captain Little realized he would have a religious conflict with EA-231 when, while on vacation, he was notified that the Will Rogers location was now flying the PPF. (Little Dep. pp.61:20-63:4; McMillon Dep. p.40:3-20.) | Disputed. Plaintiff "became ... concerned" and realized he "had this conflict," but did not specify that he would have a religious conflict or that EA-231 would conflict with his religious practices. (Dkt. 119-1 (Little Dep. Tr.) (62:8-22.) |

34. Moving Party's Response:

Defendants' response is immaterial. Little states that he had a conflict with raising the PPF, which was required by EA-231, "prayed about it on vacation" (Little 62:19-23), researched his options, and learned he could make a religious accommodation request, which he did on his first day back at work. Little 63:1-4. Defendants cannot seriously dispute that Little's conflict with EA-231 was religious.

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 35. | While still on vacation, Captain Little | Disputed. Plaintiff "became ... |

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|-----|--------------------------------------------------------|----------------------------------------------|
|  | contacted his union president, Greg Crum ("Crum"), who is also a licensed California attorney and captain in the lifeguard division, regarding his religious conflict with EA-231. (Little Dep. pp.64:10-66:1, Ex. 1062.) | concerned" and realized he "had this conflict," but did not specify that he would have a religious conflict or that EA-231 would conflict with his religious practices. (Dkt. 119-1 (Little Dep. Tr.) (62:8-22.) |

35. Moving Party's Response:

Defendants' response is immaterial. Little states that he had a conflict with raising the PPF, which was required by EA-231, "prayed about it on vacation" (Little 62:19-23), researched his options, and learned he could make a religious accommodation request, which he did on his first day back at work. Little 63:1-4. Defendants cannot seriously dispute that Little's conflict with EA-231 was religious.

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|-----|--------------------------------------------------------|----------------------------------------------|
| 36. | On June 18, 2023, Captain Little emailed Lifeguard Division Chief Boiteux requesting a religious accommodation from EA-231. He stated that "I have always made it a priority to carry out the mission of the department, serve the community, and be an exemplary employee," but he was "requesting to be exempt from adhering to EA-231" because "it infringes on [his] sincere religious beliefs." Captain Little expressly explained that the "board motion and the responsibilities accompanying it" are "in conflict with my deep religious faith." (Little Dep. Ex 1068; Nuanes-Delgadillo Dep. p.162:22-25; Kim Dep. Ex. 12 at p.1.) | Undisputed. |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 37. | Captain Little does not recall reading the Board motion, but he mentioned it in his request because EA-231 expressly referenced and relied on the Board motion. (Little Dep. p.98:16-22.) | Undisputed. |
| 38. | Chief Boiteux forwarded Captain Little's email to Chief Uehara and Julia Kim (a deputy chief who oversees the administrative side of the department). Chief Uehara quickly responded that Little's religious accommodation request was "orchestrated." (Boiteux Dep. pp.23:7-14, 117:19-118:8, Uehara Dep. Ex. 15.) | Disputed as to the second sentence. Regarding the request being "orchestrated," Chief Uehara testified that the timing of the request "seemed kind of odd" because it hasn't been an issue in the past." (Dkt. 115-9 g Uehara Dep. Tr.) 109:23-110:16.) Disputed as to whether Chief Uehara "quickly responded." Chief Uehara took one hour to respond. Dkt. 121-6 at 21 (Under Seal). Undisputed as to the first sentence. |

38. Moving Party's Response:

Defendants' response is immaterial. Defendants do not dispute that Uehara called the request "orchestrated." Defendants' response quibbles about whether an hour is "quick" but ultimately does not assert that Uehara's response was slow.

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 39. | Chief Uehara doubted the consistency of Little's religious objection since Little had lifeguarded at a Pride-painted lifeguard tower without expressing a religious objection. (Uehara Dep. pp.109:9-118:22.) | Disputed. Chief Uehara testified that the timing of the request "seemed kind of odd" because it hasn't been an issue in the past." (Dkt. 115-9 g Uehara Dep. Tr.) 109:23-110:16.) |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|

39. Moving Party's Response:

Defendants' response is immaterial. Uehara's statement that the timing "seemed kind of odd" (Uehara 109:23) does not contradict that he also discussed Little's work at two Pride towers previously and thought that this was inconsistent with Little's religious objection to flying the PPF. Uehara 110:4-16.

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 40. | On June 18, 2023, Little's request for a religious accommodation was forwarded to Fire Department personnel responsible for facilitating an "Interactive Process Meeting" ("IPM"), which is an interactive, employer-employee process to determine whether an accommodation would be granted and, if granted, what the accommodation would be. (Kim Dep. pp.58:4–58:15; Kim Dep. Ex. 12 p.1 (LAC-0000377); Nuanes-Delgadillo Dep. p.59:1-19.) | Disputed. The evidence does not support that, during an IPM, there is a determination about "whether an accommodation would be granted and, if granted, what the accommodation would be." Typically, that final decision is made by "the chain of command ... as well as counsel." Dkt. 115-7 (Nuanes-Delgadillo Deh. Tr.) 210:12- 16.), Undisputed as to the fact that Plaintiff's request was forwarded on June 18, 2023. |

40. Moving Party's Response:

Defendants' response ignores that the IPM record explicitly states that during the IPM, Little was told that "the purpose of the [IPM] meeting is in accordance with ADA and FEHA, where we engage with employees in a good faith interactive process to determine accommodations, if appropriate" (Dkt. 116-21 (2023 IPM report) at LAC-0000375) and that Little was told *at the IPM* that the "department is able to accommodate [him]." Dkt. 116-21 (2023 IPM report) at LAC-0000374. Defendants' evidence of what "typically" happens is immaterial to what happened at Little's IPM.

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 41. | Fire Department personnel responsible for facilitating the first IPM understood that Captain Little | Disputed. The evidence cited in Defendants' Separate Statement of Uncontroverted Facts (Dkt. 114-2) |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | was requesting an accommodation "from EA-231." (Kim Dep. p.55:8–16; Nuanes-Delgadillo Dep. p.117:19–24.) | ,¶¶32-33 contradicts this fact. This evidence indicates that Plaintiff further objected to working in a place where he could see the PPF flying and requested to not be required to fly the PPF at Will Rogers Beach. (Dkt. 115-2 (Little Dep. Tr..) 120:5-121:4; Dkt. 115-7 ((Nuanes-Delgadillo Dep. Tr.) 163:18-164:5, 170:13-15, 219:3-219:14; Dkt. 115-8 (McMillon Dep. Tr.) 107:16-108:1, 118:14-119:1; Dkt. 115-15 (Crum Dep. Tr.) 96:21-97:1, 97:7-13, 100:13-25, 101:8-16, 105:10- 106:2, 137:24-138:2; Dkt. 115-9 (Uehara Dep. Tr.) 89:2-90:16, 130:6-12, 166:15- 167:1; Dkt. 116-19 (Nuanes-Delgadillo Decl.) ¶¶3-4; Dkt. 116-20 (2023 IPM notes) at LAC-0001488-89; Dkt. 116-21 (2023 IPM report) at LAC-0000374.) |

41. Moving Party's Response:

Defendants' lengthy response ultimately does not dispute that Nuanes-Delgadillo testified that she understood Little's request was "to be exempt to adhering to EA-231," consistent with his initial email. Nuanes-Delgadillo Dep. p.117:19–24.

Defendants' response replicates their response to fact 29. At base, none of Defendants' citations indicate that Little did not ask for an accommodation from EA-231. Plaintiff incorporates his response to fact 29 here.

Moreover, Nuanes-Delgadillo's contemporaneous notes record that Little simply "prefer[ed]" to work at a location where the PPF is not flown. Dkt. 116-20 (2023 IPM notes) at LAC-0001488.

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 42. | Fire Department personnel who facilitated the employee accommodation process did not recall anything during Captain Little's IPMs that caused them to question his honesty or sincerity. (Nuanes-Delgadillo Dep. pp.59:17–60:7.) | Undisputed. |
| 43. | With respect to the conflict between his religious beliefs and EA-231, Captain Little explained: "[T]here's Pride Flags, like, all over the place. There's rainbow towers, there's -- this is everywhere, and I didn't object to any of those things because they didn't outline a responsibility for me to participate and, you know, endorse. This is --this is where it crossed the line, that's where I really felt [the flag policy] -- it conflicted." (Little Dep. p.107:8-21.) | Disputed. This is Plaintiffs deposition testimony over two years after the IPM. Defendants dispute this fact to the extent it implies that he explained this position during his IPM, as the IPM summary and notes are not consistent with this testimony. Dkt. 116-20 (2023 IPM notes) at LAC-0001488 ; Dkt. 116-21 (2023 IPM summary). LAC-0000374.) Moreover, the bracketed reference to "the flag policy" is vague. Undisputed as to the rest of the facts. |

43. Moving Party's Response:

Defendants' response is nonresponsive and immaterial. The fact does not assert that he explained this position during the IPM, and Defendants' proffered counterevidence is therefore irrelevant. Defendants' response is also nonsensical, because it would require that all testimony in this case be ignored for being obtained two years after the IPM. "Flag policy" is clear because Little was discussing EA-231. Little 107:6-7.

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 44. | Captain Little believed that working one of the locations not flying a PPF would be the best and/or easiest way | Disputed. The evidence cited in Defendants' Separate Statement of Uncontroverted Facts (Dkt. 114-2) |

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | to accommodate his religious conflict with EA-231's requirements for captains, i.e., where "you're not responsible for it," but he "could live with" a less "ideal" scenario of working in the same area as a PPF as long as he was exempt from EA-231. (Little Dep. p.100:1-22.) | U32-33 contradicts this fact. Plaintiff further objected to working in a place where he could see the PPF flying. (Dkt. 115-7 (Nuanes-Delgadillo Dep. Tr.) 170:13-15, 219:3-219:14; Dkt. 115-8 (McMillon Dep. Tr.) 107:16-108:1, 118:14-119:1, Dkt. 115-15 (Crum Dep. Tr.) 96:21-97:1, 97:7- 13, 105:10-106:2, 137:24-138:2; Dkt. 115-9 (Uehara Dep. Tr..) 89:2-90:16, 166:15-167:1; Dkt. 116-19 (Nuanes-Delgadillo Decl.) ¶3-4; Dkt. 116-20 (2023 IPM notes) at LAC-0001488-89; Dkt. 116-21 (2023 IPM report) at LAC-0000374.) |

44. Moving Party's Response:

Defendants' response does not present a material dispute. Defendants' response, even if true, at most shows that Little "objected to" working where the PPF was flying. This is immaterially different from fact 44, which states that he regarded working where the PPF was flying as "less than ideal." Even if Little "objected to" seeing the PPF—and the evidence does not prove this—he was still willing to, and did, accept an accommodation requiring him to see the PPF. Moreover, Nuanes-Delgadillo's contemporaneous notes record that Little simply "prefer[red]" to work at a location where the PPF is not flown. Dkt. 116-20 (2023 IPM notes) at LAC-0001488.

Defendants' response replicates their response to fact 29. Plaintiff incorporates his response to fact 29 here.

| 45. | Chief Boiteux acknowledged people should not be forced to endorse a viewpoint that violates their sincerely held religious beliefs and that people | Undisputed. |

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | who hold that marriage should be between one man and one woman should be respected. (Boiteux Dep. pp.59:25-60:4, 64:3-8.) | |
| 46. | As part of his position, Captain Little could be assigned to any beach along the L.A. County coastline. (Lester Dep. p.50:5-15.) | Disputed. Plaintiff could be assigned anywhere, but subject to the Memorandum of Understanding between the County and the Los Angeles County Lifeguard Association and the "L Manual," an internal set of policies and procedures for the Lifeguard Division, which allows lifeguard personnel to bid on their work schedules and provides that assignments will be made based on seniority. (Dkt. 116 (Kim Decl.) ¶¶6-7; Dkt. 116-4 (MOU); Dkt. 116-5 (L Manual).) |

46. Moving Party's Response:

Defendants' response is immaterial. The existence of the MOU does not change the fact that Little could be assigned to any beach along the coastline.

| 47. | There were 160 lifeguard towers that flew only one flag and a few fixed facilities that also flew only one flag. (Boiteux Dep. p.76:1-21.) | Disputed. This fact requires more context. Chief Boiteux 's testimony was regarding facilities as of June 2023. (Dkt. 115-14 (Boiteux Dep. Tr.) 75:9-76:21.) |

47. Moving Party's Response:

Defendants' response does not dispute the accuracy of fact 47 but merely adds

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | additional information. | |
| 48. | It is possible for the County to change lifeguards' schedules, which they otherwise bid on in advance, when an employee seeks such a change by working with Human Resources—including through the interactive process for an accommodation. (Lester Dep. pp. 54:2-55:10, 56:15-57:24; Power pp.35:25-37:1; Crum Dep. pp.50:20-54:16.) | Disputed. The evidence does not support this fact. The Department "do[es] not usually change people's schedules[.]" (Dkt. 115-5 (Lester Dep. Tr.) 55:3-8.) Moreover, the Department "can't just unilaterally move people" through the IPM process. (Dkt. 115- 7 (Kim Dep. Tr.) 130:20-132:11.) Chiefs Lester and Power responded to hypothetical questions and did not testify that this happens in practice. In practice, a "lifeguard shall not be involuntarily replaced in" their base work schedule, although vacancies are filled "based on seniority numbers." (Dkt. 116-5 (L Manual), at LAC-0003412-14; Dkt. 116-4 (MOU), at LITTLE.00815).) Objection, best evidence. (*See* Defendant's Separate Statement of Evidentiary Objections ("Defs.', Stmt. Evid. Objs.") ¶48.) |

48. Moving Party's Response

Defendants' response does not give rise to a material dispute. Fact 48 states that "it is possible" to change schedules. Even assuming that Defendants are correct in their characterization of the evidence, schedule changes being unusual or difficult does not mean that they are impossible.

Additionally, Crum testified that the lifeguard division can unilaterally change a lifeguard's schedule with five days' notice, and has. Crum 54:2-22.

Defendants' reliance on Dkt. 116-4 (MOU), at LITTLE.00815, is misplaced, because this document explicitly states that changes of work location, workweek or

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
| --- | --- | --- |
| | daily shift can be accomplished with a five day notice for employees working 40-hour workweeks. It also does not require notice for emergencies, temporary assignments, or employees working fewer than 40 hours. | |
| 49. | On June 18, 2023, Chief Danielle McMillon told Captain Little that she saw his religious accommodation request email to Chief Boiteux. She informed him of an IPM process to try to work out an accommodation, and that otherwise Captain Little could use his benefit time for the rest of the month if they couldn't find a different solution. (Little Dep. pp.102:4-103:2; McMillon Dep. Ex. 5 at p.1, pp.89:4-90:12.) | Disputed. It was Little's suggestion that he "burn the rest of [his] benefit time." (Declaration of Dimitri D. Portnoi in Support of Defendant's Statement of Genuine Disputes of Material Fact and Additional Material Facts ("Portnoi Decl."), Ex. C (McMillon Dep. Tr.) 94:1-18.) |
| 49. Moving Party's Response<br><br>Defendants' response does not give rise to a genuine dispute. ███████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████ McMillon 94:13-18. Thus, Defendants' countervailing evidence is nothing more than a guess, which does not give rise to a genuine dispute. | | |
| 50. | While speaking with Chief McMillon, Captain Little suggested that he could work in Area 33 on his scheduled days given his understanding that the Area 33 captain was "out on injury" leave. | Undisputed. |

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
|  | (Little Dep. pp.103:23-104:21.) |  |
| 51. | On June 18, 2023, Chief McMillon stated in an email that she spoke with Captain Little at length that day about a possible accommodation, specifically stating she "believe[s] he is willing to work Area 33 in Malibu until July 1" and that "[t]he other possible accommodation would be that he burns his own benefit time until July." (Little Dep. Ex. 1074; Boiteux Dep. pp.103:16-105:5; McMillon Dep. Ex. 5 at p.1.) | Undisputed. |
| 52. | Even though Area 33 flew a PPF at headquarters, this was acceptable to him "because [he] wouldn't be responsible for it, and that was acceptable to [him] and [he] accepted it." (Little Dep. pp.127:21-128:1.) | Disputed. The evidence cited in Defendants' Separate Statement of Uncontroverted Facts (Dkt. 114-2) ¶¶39-40 contradicts this fact. This evidence indicates that Plaintiff was told he would likely not be responsible for ensuring the PPF was flying, but that he may still need to ensure that the PPF was flown at Area 33. (Dkt. 115-2 (Little Dep. Tr.) 121:13-121:15, 127:24-127:25, 128:3-129:22; Dkt. 115-7 (Nuanes-Delgadillo Dep. Tr.) 170:1-170:15, 212:25-213:2; Dkt. 115-8 (McMillon Dep. Tr.) 109:18-110:4 , 111:20-25, 112:12-17, 126:18-127:8, 187:24-188:18, 189:5-14, 190:14-17; Dkt. 115-15 (Crum Dep. Tr.) 101:17-102:24, 104:10-106:2; Dkt. 115-9 |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | | (Uehara Dep. Tr.) 95:2-96:6; Dkt. 116-19 ¶¶3-4; Dkt. 116-20 (2023 IPM notes) at LAC-0001488-89; Dkt. 116-21 (2023 IPM report) at LAC-0000374.) |

52. Moving Party's Response:

Defendants' response is immaterial because fact 52 records why Little thought that working at Area 33 was acceptable. Even if he were mistaken, fact 52 accurately records his reasoning, and none of the cited evidence raises a dispute that Little thought Area 33 was acceptable for any other reason.

Moreover, none of the cited evidence disputes that Little found Area 33 acceptable, and indeed accepted working there.

Finally, Dkt. 116-20 (2023 IPM notes) at LAC-0001488 states "therefore, [Little] would not be responsible for ensuring the flag is flown." Dkt. 116-21 (2023 IPM report) at LAC-0000374 also records that Little was told "you would not be responsible for ensuring that the PPF is flown."

| 53. | Despite Renee Nuanes-Delgadillo's assertion that Area 33 was suitable to Captain Little because he "would not visibly see the flag," the flag was visible. Ms. Nuanes-Delgadillo did not grasp that Captain Little's specific objection was responsibility for raising the flag. (Lester Dep. pp.54:2-55:10, Crum Dep. p.110:15-21; McMillon Dep. p.100:8-18.) | Disputed. This misconstrues both Chief McMillon's and Captain Crum's respective testimony, who each testified that Ms. Nuanes-Delgadillo does not have familiarity with day to day lifeguard operations. They did not testify that Ms. Nuanes-Delgadillo did not grasp Captain Little's specific objection. The evidence indicates that during the IPM it was discussed that Plaintiff did not want to see the PPF from his office window like he could at Will Rogers, and that this would not be an issue at Area 33. The evidence does not support the statement that Ms. |

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|-----|---------------------------------------------------------|----------------------------------------------|
|     |                                                         | Nuanes-Delgadillo asserted that Plaintiff "would not visibly see the flag" at all while working at Area 33. (Dkt. 115-8 (McMillon Dep. Tr.) 100:8-18, 107:15-108:1, 118:14-119:1, 187:6-8, 187:24-188:18; Dkt. 115-15 (Crum Dep. Tr.) 110:15-21.) |

53. Moving Party's Response:

Nuanes-Delgadillo recorded that Little had said Area 33 was not an issue because he "would not visibly see the flag." Dkt. 116-21 (2023 IPM report) at LAC-0000374. Fact 53 does not allege that she said Little would not see the flag "at all", and so Defendants' dispute is nonresponsive. LAC-0000374 also shows that Nuanes Delgadillo was confused about the nature of Little's objection, because she records that Little was asked to clarify whether his concern regarded ensuring the PPF was flown, notwithstanding that his original request was to be exempt to adhering to EA-231.

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|-----|---------------------------------------------------------|----------------------------------------------|
| 54. | Chief Boiteux did not have any concerns about possible accommodations proposed by Chief McMillon. (Boiteux Dep. p.108:18-109:11.) | Disputed. Chief Boiteux "had no concerns if it didn't implicate staffing issues that we were having ... such as recalling people to work." (Dkt. 115-14 (Boiteux ep. Tr.) 108:24-109:4.) |

54. Moving Party's Response:

Boiteux says that he did not have concerns "as long as it didn't cause recalls." Boiteux 109:6-11. Defendants' response does not dispute that Boiteux did not have existing concerns about the accommodations proposed by Chief McMillon, but merely adds that he would become concerned if the accommodations in fact caused recalls. Defendants' response does not proffer evidence that the accommodations did cause recalls, and so Boiteux did not have any concerns.

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
| --- | --- | --- |
| 55. | Chief Boiteux estimated that if a recall was necessary to cover a *month* of shifts, the cost to the County would be approximately $16,000 from its annual $1.5 billion budget. (Boiteux Dep. pp.215:5-216:4.) | Disputed. The evidence does not support that the County has an "annual $1.5 billion budget," or whether the entirety of that figure is available to available for compensation of Lifeguard Division personnel. Further disputed to the extent it positions Boiteux's testimony as providing anything beyond a "rough estimate." (Dkt. 115-14 (Boiteux Dep. Tr.) 215:5-216:5.) Objection, foundation. (*See* Defs.' Stmt. Evid. Objs. ¶55.) |

55. Moving Party's Response:

The court may take judicial notice of facts that are either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). A recent Los Angeles County presentation shows that the Fire Department budget has grown to $1.8 billion for FY 2025-26. See https://file.lacounty.gov/SDSInter/bos/supdocs/213034.pdf

Further, Kim confirmed that the budget for the Fire Department was $1.5 billion. Kim 130:10-18.

Fact 55 specifically states that the cost is "approximately" $16,000, and so Defendants' assertion that this is a "rough estimate" does not give rise to a genuine dispute.

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
| --- | --- | --- |
| 56. | Additionally, Chief Boiteux acknowledged if someone is available to work overtime, "we usually let them take time off when they ask for it." (Boiteux Dep. p.109:12-15.) | Undisputed that Chief Boiteux made this statement in his deposition. However, the citation is not to the correct portion of Chief Boiteux's deposition. (Dkt. 115-14 (Boiteux Dep. Tr.) 216.12-15.) |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 57. | On the morning of June 19, 2023, before the IPM meeting with Captain Little later that day, Renee Nuanes-Delgadillo emailed Julia Kim and Chiefs McMillon, Uehara, Boiteux, and Power, requesting "a quick pre meet to go over how [Captain Little] can be accommodated either at work, or by providing him a leave of absence." (Little Dep. Ex. 1074; Nuanes-Delgadillo Dep. pp.115:20-116:3) | Undisputed. |
| 58. | Chief Uehara, Renee Nuanes-Delgadillo, Chief McMillon, and Chief Mayfield had never previously handled a religious accommodation request. (Boiteux Dep. pp.108:18-109:4, 113:5-16, 113:23-114:1; Nuanes-Delgadillo Dep. pp.33:8-34:14; 41:4-10; 42:3-9; Uehara Dep. pp.84:20-85:5; 90:12; Mayfield Dep. p.109:7-22.) | Disputed. This misconstrues deposition testimony. Chief Boiteux was asked if he was "aware at the time that both Adam Uehara and Renee Delgadillo had never actually dealt with a religious accommodation request," and he was "not aware." (Dkt. 115-14 (Boiteux Dep. Tr.) 113:13-16.)

Ms. Nuanes-Delgadillo had previously sat in on a religious accommodation IPM; this was just the first time she moderated one herself. (Dkt. 121-8 Nuanes-Delgadillo Dep. Tr.) 33:10-15.) While Chief Mayfield did not believe he had dealt with a religious accommodation prior to this one, he was not involved in handling Plaintiff's accommodation request or IPM process. (Dkt. 119-9 (Mayfield Dep. Tr.) 109:12-13 ("I didn't have |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | | anything to do with his accommodation or request."); *see also* Portnoi Decl., Ex. D (Mayfield Dep. Tr.) 107:19-24.) |

58. Moving Party's Response:

Defendants' response is immaterial because it does not present a genuine dispute. The response does not provide any countervailing evidence that Chief Uehara, McMillon, or Mayfield did in fact previously handle a religious accommodation request. Defendants' response concedes that Nuanes-Delgadillo had never before performed the role she played for Little's religious accommodation request.

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 59. | In the IPM on June 19, 2023—which was attended by Chief Uehara, Chief McMillon, union representative Captain Crum, and human resources representative Nuanes-Delgadillo—Captain Little explained that he had a religious conflict with carrying out the responsibilities of EA-231. "The request was to not be responsible to EA-231." (Little Dep. pp.106:4-107:7, Ex. 1069; Nuanes-Delgadillo Dep. pp.126:21-127:3; Crum Dep. p.96:8-17.) | Disputed to the extent this implies Plaintiff's only "request was to not be responsible to EA-231." The evidence cited in Defendants' Separate Statement of Uncontroverted Facts (Dkt. 114-2) ¶32 shows Plaintiff also objected to raising the PPF and working in a place where he could see the PPF flying. Undisputed as to the IPM on June 9, 2023 being attended by Chief Uehara, Chief McMillon, Captain Crum, and Ms. Nuanes-Delgadillo. (Dkt. 115-7 (Nuanes-Delgadillo Dep. Tr.) 170:13-15; Dkt. 115-8 (McMillon Dep. Tr.) 107:16-108.1, 118:14-119:1, Dkt. 115-15 (Crum Dep. Tr.) 96:21-97:l, 97:7-13, 105:10-106:2, 137:24-138:2, Dkt. 115-9 (Uehara Dep. Tr.) 89:2-90:16, 166:15-167:1; Dkt. 116-19 (Nuanes-Delgadillo Decl. ¶¶3-4; Dkt. 116-20 (2023 IPM notes) at LAC-0001488- |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | | 89; Dkt. 116-21 (2023 IPM report) at LAC-0000374.) |

59. Moving Party's Response:

Defendants' response is immaterial. It does not dispute that Little requested to not be responsible [for] EA-231. Contemporaneous notes record that Little merely "prefer[red] to work at a location where the PPF is not flown." Dkt. 116-20 (2023 IPM notes) at LAC- 0001488-89. Defendants' response only proffers irrelevant information which is itself disputed.

Defendants' response substantially replicates their response to fact 29. Plaintiff incorporates his response to fact 29 here.

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 60. | Although Captain Little preferred not to look at the PPF, he was clear that his religious conflict with EA-231 was being "responsib[le]" for flying the PPF as required of captains and site supervisors under EA-231. (Little Dep. p.107:8-21.) | Disputed as to the term "clear." The evidence cited in Defendants' Separate Statement of Uncontroverted Facts (Dkt. 114-2) ¶32, and additional testimony in Ms. Nuanes-Delgadillo's deposition show that Plaintiff was not clear on his specific conflict, and also objected to working in a place where he could see the PPF flying. (Dkt. 115-7 (Nuanes-Delgadillo Dep. Tr.) 170:13-15; Portnoi Decl., Ex. E (Nuanes-Delgadillo Dep. Tr.) 216:4-11; Dkt. 115-8 (McMillon Dep. Tr.) 107:16-108:1, 118:14-119:1; Dkt. 115-15 (Crum Dep. Tr.) 96:21-97:1, 97:7-13, 105:10-106:2, 137:24-138:2; Dkt-115-9 (Uehara Dep. Tr.) 89:2-90:16, 166:15-167:1; Dkt. 116-19 (Nuanes-Delgadillo Decl.) ¶¶3-4; Dkt. 116-20 (2023 IPM notes) at LAC-0001488-89; Dkt. 116-21 |

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | | (2023 IPM report) at LAC-0000374.) |

60. Moving Party's Response:

Defendants' response is nonresponsive and immaterial. It does not dispute that Little requested to not be responsible for flying the PPF as required under EA-231 or that his preference to not look at the PPF was separate from his religious conflict with EA-231. Contemporaneous notes also record that Little merely "prefer[red] to work at a location where the PPF is not flown." Dkt. 116-20 (2023 IPM notes) at LAC- 0001488-89. Nuanes-Delgadillo's inability to understand Little's written request during the first IPM she had handled does not mean that Little was unclear.

Defendants' response substantially replicates their response to fact 29. Plaintiff incorporates his response to fact 29 here.

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 61. | He explained in the June 19 IPM meeting that his "major issue is that it is the captain's responsibility to ensure that the crew is flying the PPF flag." (Little Dep. Ex. 1069; Nuanes-Delgadillo Dep. p.214:15-24.) | Disputed. The evidence cited in Defendants' Separate Statement of Uncontroverted Facts (Dkt. 114-2) ¶32, and testimony in Ms. Nuanes-Delgadillo's deposition show that Plaintiff had many issues and "wasn't very clear." (Dkt. 115-7 Nuanes- Delgadillo Dep. Tr.) 170:13-15; Portnoi Decl., Ex. E (Nuanes- Delgadillo Dep. Tr.) 216:4-11; Dkt. 115-8 (McMillon Dep. Tr.) 107:16- 108:1, 118:14-119:1, Dkt. 115-15 (Crum Dep. Tr.) 96:21-97:l, 97:7-13, 105:10-l06:2, 137:24-138:2; Dkt. 115-9 (Uehara Dep. Tr.) 89:2-90:16, 166:15-167:1; Dkt. 116-19 (Nuanes- Delgadillo Decl.) ¶¶3-4; Dkt. 116-20 (2023 IPM notes) at LAC-0001488- 89; Dkt. 116-21 (2023 IPM report) at LAC-0000374.) |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|-----|-----|-----|
| | 61. Moving Party's Response: Defendants' response is nonresponsive and immaterial. A single witness's characterization of Little's statement as being not very clear does not present a genuine dispute of whether Little explained that his "major issue" regarded <ul><li>Dkt. 116-20 (2023 IPM notes) at LAC-0001488- 89:<ul><li>"The major issue is that it would be the Captains responsibility to ensure that the crew is flying the flag."</li></ul></li><li>Dkt. 116-21 (2023 IPM report) at LAC-0000374.<ul><li>"[Little] stated that [his] major issue is that it is the captain's responsibility to ensure that the crew is flying the PPF flag."</li></ul></li></ul> | |
| 62. | Captain Little stated that, if relocated to Area 33 as an accommodation, the chances of him being responsible for the PPF would be "one-in-a-million," or "one in a thousand," because the Area 30 and 34 captains would still be responsible for the Area 33 headquarters flag before he would. (Little Dep. pp.128:3-129:12, 145:12-22.) | Disputed. The cited excerpts of Plaintiff's deposition transcript are insufficient to show Plaintiff said these exact words in the June 19, 2023 IPM. Rather the quoted language is from Plaintiff discussing his situation generally; he does not state that he said these things during the IPM. The evidence cited in Defendants' Separate Statement of Uncontroverted Facts (Dkt. 114-2) ¶¶39-40 further disputes these statements. Dkt. 115-2 (Little Dep. Tr.) 121:13-121:15, 127:24-127:25, 128:3-129:22; Dkt. 115-7 (Nuanes-Delgadillo Dep. Tr.) 170.1-170:15, 212:25-213:2; Dkt. 115-8 (McMillon Dep. Tr.) 109:18-110:4, 111:20-25, 112:12-17, 126:18-127:8, 187:24-188:18, 189:5-14, 190:14-17; Dkt. 115-15 (Crum Dep. Tr.) 101:17-102:24, 104:10-106:2; Dkt. 115-9 |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | | (Uehara Dep. Tr.) 95:2- 96:6; Dkt. 116-19 ([Nuanes-Delgadillo Decl.) ¶¶3-4; Dkt. 116-20 (2023 IPM notes) at LAC-0001488- 89; Dkt. 116-21 (2023 IPM report) at LAC-0000374.) |

62. Moving Party's Response:

Defendants' response is immaterial. Fact 62 does not assert that Little stated this rationale at the IPM. Further, neither of Defendants' facts ¶¶39-40 contravene fact 62, and so they do not present a genuine dispute.

Defendants' fact 39 states that it was unlikely that Little would be responsible for ensuring the PPF was flying. This is not inconsistent with Little's assessment of how unlikely this was and why, and so does not present a dispute.

Defendants' fact 40 states that Little was told he may need to ensure the PPF was flown at area 33. This is not inconsistent with Little's assessment of how unlikely this was and why, and so does not present a dispute.

Defendants' citations replicate the support Defendants put forth for facts 39 and 40. Plaintiff does not dispute facts 39 and 40.

| 63. | Nuanes-Delgadillo's contemporaneous notes from the June 19 IPM state that Captain Little understood the PPF might be flown at other locations if he has to work there (although his preference would be to work at a location where the PPF isn't flown) and he accepted Area 33 because he would not be the Headquarters Captain responsible for "ensuring that the flag is flown." (Little Dep. Ex. 1072 at p.1; Nuanes-Delgadillo Dep. pp.120:12-121:10.) | Disputed to the extent this implies Plaintiff would never be responsible for ensuring the flag is flown at either Area 33 or Zuma Beach Headquarters. Defendants'' Separate Statement of Uncontroverted Facts (Dkt. 114-2) ¶39; Dkt. 115-2 (Little Dep. Tr.) 121:13-121:15, 127:24- 127:25; Dkt. 115-7 (Nuanes-Delgadillo Dep. Tr.) 170:1-170:15; Dkt. 15-8 (McMillon Dep. Tr.) 109:18-110:4, 111:20-25, 112:12-17, 126:18-127:8, 187:24-188:18, 190:14-17; Dkt.115-15 (Crum Dep. |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | | Tr.) 101:17-102:24, 104:10-106:2; Dkt. 115-9 (Uehara Dep. Tr.) 95:2-96:6; Dkt. 116-19 (Nuanes-Delgadillo Decl.) ¶¶3-4; Dkt. 116-20 (2023 IPM notes) at LAC-0001488-89; Dkt. 116-21 (2023 IPM report) at LAC-0000374.) |
| 63. Moving Party's Response: Defendants' response is nonresponsive and immaterial. It does not dispute the content of the contemporaneous notes. | | |
| 64. | Chief Boiteux recalled that Captain Little's "objection was he didn't want to raise the flag." (Boiteux Dep. pp.147:23-148:8.) | Disputed. The cited evidence does not provide support as to how Chief Boiteux would know Plaintiffs "objection," given that Chief Boiteux was not present at the June 19, 2023 IPM. (Dkt. 116-21 (2023 IPM report) at LAC-0000374.) Objection, foundation. (See Defs.' Stmt. Evid. Objs. ¶64.) |
| 64. Moving Party's Response: Defendants' response is nonresponsive and immaterial. The fact does not state that Boiteux learned this, but only that Boiteux knew about it. | | |
| 65. | Captain Little agreed to work at Area 33 as a religious accommodation from EA-231 despite knowing that it was flying the PPF, because he believed he would not be responsible for ensuring the PPF was flying there. (Little Dep. Ex. 1069, | Disputed. The evidence cited in Defendants' Separate Statement of Uncontroverted Facts (Dkt. 114-2) ¶44 contradict Plaintiff's framing of this as a "religious accommodation." (Dkt. 115-2 (Little Dep. Tr.) 131:22-132:5; Dkt. 115-8 (McMillon Dep. |

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | pp.124:1-5.) | Tr.) 109:21-110:4, 111:20-24, 111:12-17; Dkt. 115-15 (Crum Dep. Tr.) 112:8-17; Dkt. 116-19 ¶¶3-4, Dkt. 116-20 (2023 IPM notes) at LAC-0001488- 89; Dkt. 116-21 (2023 IPM report) at LAC-0000375.)The evidence cited in Defendants' Separate Statement of Uncontroverted Facts (Dkt. 114-2) ¶¶40 and 42 contradicts Plaintiff's belief "he would not be responsible for ensuring the PPF was flying there." (Dkt. 115- 2 (Little Dep. Tr.) 127:24-128:1, 128:3-129:22; Dkt. 115-7 (Nuanes-Delgadillo Dep. Tr.) 120:13-122:6, 212:25-213:2; Dkt. 115-8 (McMillon Dep. Tr.) 109:18-110:4 , 111:20-25, 112:12-17, 126:18-127:8, 187:24-188:18, 189:5-14, 190:14-17; Dkt. 115-15 (Crum Dep. Tr.) 101:17-102:24, 104:10-106:2; Dkt. 116-19 (Nuanes-Delgadillo Decl.) ¶¶3-4; Dkt. 116-20 (2023 IPM notes) at LAC-0001488-89; Dkt. 116-21 (2023 IPM report) at LAC-0000374.); TAC ¶¶49, 52.) Undisputed as to Plaintiff agreeing to work at Area 33. |

65. Moving Party's Response:

Defendants' citations do not give rise to a serious dispute that the accommodation issued for any reason besides Little's religion. Dkt. 116-21 (2023 IPM report) at LAC-0000374 records that Little requested a religious accommodation, and that he was informed at the IPM that "the department is able to accommodate you with an assignment at Area 33." Defendants' citations do not provide contravening

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|-----|--------------------------------------------------------|----------------------------------------------|

evidence because it is either irrelevant and/or immaterial:

- Dkt. 115-2 (Little Dep. Tr.)
    - 131:22- 132:5
        - Records that the IPM record mentions further discussions in the event of a change.

- Dkt. 115-8 (McMillon Dep. Tr.)
    - 109:21-110:4
        - McMillon understood the IPM was a fact finding IPM and then repeats hearsay from Nuanes-Delgadillo.
    - 111:20-24
        - McMillon confirms that the department was accommodating Little by moving him to Area 33.
    - 112:12-17
        - McMillon confirms that she accommodated Little.

- Dkt. 115-15 (Crum Dep. Tr.)
    - 112:8-17
        - Crum understood that "things" (which were never specified) could change "on either end."

- Dkt. 116-19 ¶¶3-4, Dkt. 116-20 (2023 IPM notes) at LAC-0001488- 89; Dkt. 116-21 (2023 IPM report) at LAC-0000375.)
        - Records that Little requested a religious accommodation and was granted one.

Plaintiff does not dispute Defendants' facts ¶¶ 40 and 42, but these facts do not contravene the fact that Little "*believed* he would not be responsible for ensuring the PPF was flying." Plaintiff's fact ¶ 62 establishes the reasonable basis for

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | Plaintiff's belief. Further, Defendants proffer no evidence that Little's accommodation was an ADA accommodation or any other type of accommodation besides religious. | |
| 66. | Captain Little may have said during the June 19, 2023 IPM meeting that he "didn't want to look" at the PPF, but his base accommodation request was not to "be responsible for it." (Little Dep. pp.129:23-130:13.) | Disputed as to the terms "may have," and "base accommodation request." It is unclear how "base accommodation request" differs from Plaintiff's "accommodation request," which is itself unclear. The evidence cited in Defendants' Separate Statement of Uncontroverted Facts (Dkt. 114-2) ¶32, and testimony in Ms. Nuanes-Delgadillo 's deposition contradict these assertions. (Dkt. 115-7 (Nuanes-Delgadillo Dep. Tr.) 170:13-15; Portnoi Decl., Ex. E (Nuanes-Delgadillo Dep. Tr.) 216:4-11; Dkt. 115-8 (McMillon Dep. Tr.) 107:16-108.1, 118:14-119:1, Dkt. 115-15 (Crum Dep. Tr.) 96:21-97:l, 97:7-13, 105.10-106.2, 137.24-138.2; Dkt. 115-9 (Uehara Dep. Tr.) 89:2-90:16, 166:15-167:1; Dkt. 116-19 (Nuanes-Delgadillo Decl.) ¶¶3-4; Dkt. 116-20 (2023 IPM notes) at LAC-0001488- 89; Dkt. 116-21 (2023 IPM report) at LAC-0000374.) |

66. Moving Party's Response:

Defendants' response does not dispute that Little explained that he did not want to be responsible for the PPF. Defendants' cited evidence restates the evidence cited in their fact ¶ 32, which is disputed.

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | Further, none of the cited references actually contravene that Little wanted a religious accommodation to not be responsible for the PPF, and none of the references state that Little's religious accommodation request itself was to not see the flag, even if he preferred not to. | |
| 67. | During the June 19 IPM meeting, Captain Little and the County also agreed to assign him to Area 33 in lieu of his Redondo Beach recall assignment on June 25, 2023. Chief Uehara stated that he would document the shift swap in Telestaff, and explained that if Captain Little was unable to swap, he would "need to use [his] own leave benefit time." (Kim Dep. Ex. 38 at p.3; Little Dep. Ex. 1069 at p.2.) | Disputed. The cited evidence states Plaintiff was scheduled for a relief day on June 25 2023, not a recall. Further, it is unclear from the cited evidence whether Chief Uehara's statement about using benefit time applied to June 25 specifically, a different shift (such as the June 21, 2023 recall), or the process generally. (Dkt. 116-21 (2023 IPM report) at LAC-0000375) |

67. Moving Party's Response:

Defendants' response is immaterial and does not dispute that Uehara stated that he would "ensure that the shift swaps" were documented or that Little would have to use his own leave benefit time if he were unable to swap. Little Dep. Ex. 1069 at p.2.

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 68. | On the 19th, after the IPM, Chief McMillon texted Captain Little and Chief Uehara confirming she independently used Captain Little's "recall exemption" to move shifts for Captain Little to keep him from working at a location flying the PPF. (McMillon Dep. Ex. 7 at p.1, p.132:1-8.) | Disputed to the extent the term "independently" implies Chief McMillon did not discuss the possibility of using a recall exemption with Plaintiff prior to implementing one. (Dkt. 116-21 (2023 IPM report) at LAC-0000374.) |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | 68. Moving Party's Response:<br><br>Defendants' response is nonresponsive. Defendants provide no evidence that McMillon discussed using a recall exemption with Little. Moreover, Defendants' own fact 48 states "Chief McMillon offered to obtain a recall exemption for Plaintiff for June 21, 2023." Dkt 155-1 at ¶ 48. Little does not dispute this fact. | |
| 69. | Instead of using the recall exemption, forcing a different Captain to be recalled to the site, Captain Little swapped recall shifts with a<br><br>captain to a site not flying the flag. Captain Little expressed his appreciation to Chiefs McMillon and Uehara for the accommodation and thanked her. *(Id.)* | Disputed. The cited evidence does not provide support for the statement that using a recall exemption forces another captains to be recalled, or that Area 17 had not been flying the PPF. |
| | 69. Moving Party's Response:<br><br>Defendants' response is immaterial. Defendants provide no countervailing evidence that Little did not swap shifts to avoid using a recall exemption, or that using a recall exemption does not force another captain to be recalled. The statement does not assert that Area 17 had not been flying the PPF. Nonetheless, Little confirmed that they were not. Little Dep. 148:19-149:4. | |
| 70. | During the June 19 IPM meeting, Captain Little confirmed that he can work in lifeguard towers that are painted/decorated to support LGBTQ+, oversee maintenance of the towers, provide lifeguard assistance to LGBTQ+ patrons, or anything else that is required of him as captain. (Little Dep. Ex. 1069 at | Undisputed. |

43

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | p.2.) | |
| 71. | While a tower at the Will Rogers station where Captain Little worked was painted in rainbow colors, and Captain Little understood those colors were intended to convey a similar message as the PPF, Captain Little was not required to paint the rainbow colors himself or to endorse it in any way; he was not "forced to participate in it." (Little Dep. pp.118:9-119:23.) | Disputed. Ms. Nuanes-Delgadillo' s 2023 IPM Report demonstrates Plaintiff did not have an issue with his "responsibility to oversee the maintenance of the towers." (Dkt. 116-21 (2023 IPM report) at LAC-0000375.) |
| 71. Moving Party's Response:<br><br>Defendants' response is immaterial. Defendants' proffered evidence does not contravene fact 71 because Little can both have no responsibility to oversee maintenance and not be required to paint or endorse or participate in it. | | |
| 72. | Captain Little found EA-231 to be "very unclear" about which locations and flagpoles were required to fly the PPF. (Little Dep. pp.109:11-110:16.) | Undisputed. |
| 73. | Area 17, where Captain Little worked on June 21, 2023, had not flown a PPF from June 2, 2023, up to June 21, 2023. (Little Dep. Ex. 1070; Crum Dep. p.115:3-8.) | Undisputed. |
| 74. | Particularly, on June 1, 2023, Captain Crum began putting up PPFs on Dockweiler Beach in Area 17, but as | Undisputed. |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | he was doing so, he "received a call from Chief Lester informing him that Chief Uehara had determined that the flags were not to be flown at flagpoles that do not typically fly more than one flag throughout the rest of the year." As a result of this instruction, Captain Crum removed a PPF that he had previously raised. (Little Dep. Ex. 1070 at p.1; Boiteux Dep. pp.88:11-89:13, 90:4-10, Ex. 65; Crum Dep. pp.202:19-207:23.) | |
| 75. | In an email to Chief Boiteux on June 20, 2023, Nuanes-Delgadillo sent an internal confirmation summarizing Captain Little's accommodation granted to on June 19, including that he would be stationed at Area 33 through June 30, 2023, and that if he is recalled to a location "where he would be responsible for the PPF, he would try to find someone to switch with." (Little Dep. Ex. 1074; Nuanes-Delgadillo Ex. 6; Nuanes-Delgadillo Dep. pp.120:13-121:10; Kim Dep. Ex. 17 p.1.) | Disputed. The evidence cited in Defendants' Separate Statement of Uncontroverted Facts (Dkt. 114-2) ¶¶44-45, and testimony in Chief (Uehara's deposition show Ms. Nuanes-Delgadillo's June 20, 2023 email did not communicate a finalized religious accommodation. (Dkt. 115-2 ( Little Dep. Tr.) 123:7-14, 126:4-10, 131:9-21, 131:22-132:5, Dkt. 115-8 (McMillon Dep. Tr.) 109:21-110:4, 111:20-24, 112.12-17, Dkt. 115-15 (Crum Dep. Tr.) 112:8-17; Dkt. 116-19 (Nuanes-Delgadillo Decl.) ¶¶3-4 Dkt. 116-20 (2023 IPM notes) at LAC-0001488-89; Dkt. 116-21 (2023 IPM report) at LAC-0000374.); Dkt. 115-9 (Uehara Dep. Tr.) 126:9-127:22.) In addition, as Plaintiff's Separate Statement of Uncontroverted Facts (Dkt. 118-2) ¶76 recognizes, Ms. |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | | Nuanes-Delgadillo was still receiving guidance about the accommodation request at this time. |

75. Moving Party's Response:

Defendants' response is nonresponsive because none of the proffered evidence disputes that Nuanes-Delgadillo's email explicitly states that as a result of the IPM, ████████████████████████████████████████████████ ████████████████████████████

Defendants' response relies on two disputed facts, which are disputed because contravening evidence shows that McMillon did not know why a follow-on IPM was necessary (McMillon Dep., pp. 136:3-137:20), showing that she understood the religious accommodation process to be complete, and because Little disputed Nuanes-Delgadillo's characterization in the IPM record. *See* Dkt. 155-1 at ¶¶ 44-45. Defendants cannot deem a fact undisputed by disregarding Little's own testimony wholesale. Defendants proffer no evidence that Little's accommodation was an ADA accommodation or any other type of accommodation besides religious.

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 76. | In the same email, Nuanes-Delgadillo stated that she would be meeting with human resources later that day "to discuss Religious Accommodations in general and this particular case for their guidance…" (Little Dep. Ex. 1074; Kim Dep. Ex.17.) | Undisputed. |
| 77. | Chief Boiteux understood that Captain Little obtained an agreed-upon religious accommodation at the IPM. (Boiteux Dep. pp.143:22-144:11.) | Disputed. The cited evidence shows Chief Boiteux does not testify he understood Plaintiff "obtained an agreed-upon religious accommodation. Instead, Plaintiff's counsel asks Chief Boiteux to confirm language in an exhibit is |

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|-----|------------------------------------|------------------------------------|
|     |                                    | "consistent with [his] understanding that an accommodation was offered to Captain Little during the IPM, and there was an agreement during the IPM about the accommodation." Chief Boiteux responded, "Correct." Plaintiff's counsel does not use the term "religious accommodation" in the questioning. Chief Boiteux also was not present in the June 19, 2023 IPM; the best evidence of the IPM is the IPM summary report itself. Dkt. 116-21 2023 IPM report) at LAC-0000374.) |

77. Moving Party's Response:

Defendants' response is immaterial. It does not show that Boiteux regarded Little's accommodation as anything other than religious. Moreover, the cited evidence explicitly confirms that Little's request for accommodation was a request for a religious accommodation. Dkt. 116-21 2023 IPM report) at LAC- 0000374. Defendants proffer no evidence that this was an ADA accommodation or any other type of accommodation besides religious, and Boiteux confirmed that he understood Little's accommodation request to be a religious accommodation. Boiteux 66:2-7.

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|-----|------------------------------------|------------------------------------|
| 78. | Chief Boiteux understood that the agreed-upon religious accommodation could be accomplished with no expense to the Fire Department. (Boiteux Dep. p.213:5-9.) | Disputed. Chief Boiteux agreed "that there would be no expense to the Fire Department to accomplish the accommodation that was suggested and accepted." Plaintiff's counsel does not use the term "religious accommodation" in the questioning. Dkt. 115-14 (Boiteux Dep. Tr.) 213:5-9. |

47

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|

78. Moving Party's Response:

Defendants' response is immaterial. It does not show that Boiteux regarded Little's accommodation as anything other than religious. Moreover, the cited evidence explicitly confirms that Little's request for accommodation was a request for a religious accommodation. Dkt. 116-21 2023 IPM report at LAC-0000374. Defendants proffer no evidence that this was an ADA accommodation or any other type of accommodation besides religious, and Boiteux confirmed that he understood Little's accommodation request to be a religious accommodation. Boiteux 66:2-7.

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 79. | Although Captain Little was recalled to Redondo Beach on June 21, 2023, where he would be responsible for ensuring the PPF was flying, he agreed with another captain to switch recalls to work at Area 17, where he knew the PPF wasn't flying at the time. (Little Dep. pp.148:16-149:4, 154:18, Ex. 1075; McMillon Dep. pp.41:24-42:3.) | Disputed. Chief McMillon testified "[a]gain, that's Marine Battalion 100, but I'm pretty sure they were not" flying. (Dkt. 121-10 (McMillon Dep. Tr.) 41:4-42:3.) |

79. Moving Party's Response:

Defendants' response is nonresponsive. The response misleadingly excerpts testimony. McMillon was asked, "Area 17 was also an area that was not flying the Pride Flag, is that correct?" to which she responded, "Again, that's Marine Battalion 100, but I'm pretty sure they were not." McMillon Dep. pp.41:24-42:3. Little also testified that the PPF was not flying at Area 17. McMillon's testimony does not contradict Little's.

Defendants do not dispute that Little was recalled, that he switched recalls to work at Area 17, or that Little knew the flag was not flying there.

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 80. | Captain Little made the shift swap to work Area 17 on June 21 before | Undisputed. objection, best evidence. (*See* Defs.' Stmt. Evid. |

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | Chief McMillon texted him that she able to secure him an exemption from recall duty on June 21, 2023; at that point, Captain Little didn't want to trigger a recall for another lifeguard to have to take his place on June 21, 2023. (Little Dep. pp.150:9-151:16.) | Objs. ¶80.) |
| 81. | Captain Little responded to Chief McMillon's text by informing her of his schedule swap so he could work Area 17 on June 21, 2023, and Chief McMillon agreed to the switch. (Little Dep. pp.154:24-155:7, Ex. 1075.) | Disputed. Chief McMillon' s response simply acknowledged that Plaintiff made the switch, and that Telestaff was updated to reflect the switch. Dkt. 116-18 (McMillon Decl. Ex. B) text message correspondence between Plaintiff and Chiefs McMillon and Uehara) at LITTLE.00481-482.) |
| | 81. Moving Party's Response: Defendants' response is immaterial. McMillon agreed to the switch by updating Little's Telestaff schedule. Defendants' suggestion that McMillon made the change despite disagreeing with the switch is nonsensical and does not give rise to a genuine dispute. | |
| 82. | Chief Uehara was on the same text string and was thus aware of Little's plan to work Area 17 on June 21. (Little Dep. p.155:9-12, Ex. 1075.) | Disputed. The cited evidence does not support that Chief Uehara was aware of Plaintiff's plan to work Area 17 on June 21. Chief Uehara does not testify that he recalls participating in the text thread or that he read it. (Portnoi Decl., Ex. F (Uehara Dep. Tr.) 138:2-142:21.) Undisputed that Chief Uehara was on the same text string. Objection, |

49

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | | foundation. (*See* Defs.' Stmt. Evid. Objs. ¶82.) |

82. Moving Party's Response:

Defendants' response is immaterial and does not present a material dispute. Uehara did not need to testify recalling that he participated in the text string to have been aware of it. Moreover, during the deposition, Uehara stated that he did not recall responding to the texts, but never stated he had never seen the texts before. Uehara 139:13-23.

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 83. | Chief McMillon finalized the switch in Telestaff on June 19, 2023, which was observable by all lifeguard chiefs on Telestaff between June 19 and June 21. (Little Dep. pp.171:7-172:16.) | Disputed to the extent that the cited evidence does not provide support for the statement that the switch was finalized in Telestaff on June 19, 2023. Undisputed otherwise. |

83. Moving Party's Response:

Defendants are incorrect. McMillon texted on June 19 telling Little to "double check" his schedule, and Little replied stating "Looks good thanks." (Little Dep. p.155:9-12, Ex. 1075.)

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 84. | Captain Little is aware that numerous other fire department employees did not comply with the order by "just flat-out" not "[following] it," whereas Captain Little attempted to use proper IPM procedures. (Little Dep. pp.181:11-182:3; Power Dep. pp.54:15-17; McMillon Dep. p.29:12-19.) | Disputed. Cited evidence does not support that Plaintiff is aware of the actions of other Fire Department employees generally, or those specifically described in the cited portions of the depositions of Chief Power or Chief McMillon. Further disputed as to the citation of Plaintiff's deposition, in which the quoted language actually says "people just flat-out weren't doing |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | | it." |

84. Moving Party's Response:

Defendants' response is nonresponsive. The fact does not state that Little necessarily knew about others specifically described by Power or McMillon. Little testified that other people were not abiding by the PPF requirements, and he could not have testified to this if he was not aware of it. Defendants' quote is immaterially different from Plaintiff's phrasing and does not give rise to a genuine dispute.

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 85. | Indeed, Chief Lester underst[ood] … that there was [sic] many stations who magically had clasps go disappearing, and that where they used to be able to fly two flags . . . the clasps were disappearing," and "there was [sic] magically only one [set of] clasps." (Lester Dep. p.81:15-21.) | Undisputed. |
| 86. | █████████████████████ | ██████████ |

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 87. |  |  |
| 88. |  |  |
| 89. | The June 11 CPOE complaint did not involve individuals who had religious | Disputed. The cited evidence does not support this statement. Mr. |

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | accommodations or known religious objections to the PPF. (Stormer Dep. pp.94:1-95:25.) | Stormer testifies the complaint "does not appear to" involve individuals with religious objection. (Dkt. 115-16 (Stormer Dep. Tr.) 95:15-20.) Objection, best evidence. (*See* Defs' Stmt. Evid. Objs. ¶89.) |

89. Moving Party's Response:

Defendants misconstrue Stormer's testimony. Stomer initially stated that he did not recall if the complaint involved someone with a religious objection (Stormer 94:14-18), and after reviewing the CPOE complaint form, was asked "Does this complaint involve individuals who had religious objection to the Pride Flag?" At this point, Stormer stated "It does not appear so." Stormer's casual answer does not dispute fact 89.

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 90. | ███████████████████ | ███████████████ |

███████████

███████████████████████████

53

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 91. | ■■■■■■■■■■ | ■■■■ |
| 92. | Boiteux was not aware of any assertions by anyone that Captain Little is a bigot or disrespects people in the LGBTQ community, and Captain Little had worked at Will Rogers Beach, which is frequented by the LGBQT community, but had never received reports that Captain Little did not serve such individuals or had discriminatory feelings towards them. (Boiteux Dep. pp.195:18-197:8) | Undisputed. |
| 93. | It was common for many fire station poles in the County to fly only one flag. (Lester Dep. pp.98:7-99:4.) | Disputed. The cited evidence does not support this statement. Chief Lester testifies as to Battalion 100 only, not the whole County. This statement also lacks context, as Chief Lester testified that flag poles in his Battalion had flown "multiple flags for years" but stopped because some lifeguards "decided that they don't want to put up more than one flag," which Chief Lester thought "felt very lazy." (Dkt. 115-5 (Lester |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
|  |  | Dep. Tr.) 98:7-99:10.) |

93. Moving Party's Response:

Defendants' response is immaterial. It offers a reason for why flags were not flying but ultimately does not dispute that poles were flying only one flag.

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 94. | The Acting Deputy Chief for the Central Operations Bureau who was responsible for the Lifeguard Division, William Mayfield, sent an email to members of his leadership team, including Chief Boiteux, regarding enforcement of EA-231 on June 20, 2023. In it, he forwarded an email chain from his superiors, and stated that "100 percent compliance" with EA-231 was "to be achieved." In his email, Mayfield directed all battalion chiefs to inspect the flagpoles in their divisions "to ensure the flag is flown." For those locations where the flag was not being flown, Mayfield required an explanation. The email further stated, "Halyard clips are not an excuse." (Mayfield Dep. pp.73:9-19, 138:22-139:16, Ex.15 at p. 1; McMillon Depo. p.66:14-25, Ex. 3 at 3.) | Disputed to the extent that the citations to Chief McMillon's deposition and Exhibit 3 to Chief McMillon's deposition do not support this statement because they: do not address the discussed email from Chief Mayfield. Undisputed otherwise. |

94. Moving Party's Response:

Defendants' response does not provide contravening evidence and so this fact is undisputed.

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 95. | In stating that "Halyard clips are not an excuse," Mayfield intended to prevent "manipulation" with compliance with EA-131, such as removal of clips or clips otherwise being missing from poles on which they were previously present. Mayfield's email was not intended to require that all flagpoles necessarily fly the PPF. (Mayfield Dep. pp.185:24-186:11, 193:21-194:17, 196:16-197:8, 213:14-18.) | Disputed. Chief Mayfield refers to "sites that could accommodate" the flag, rather than sites with flagpoles where clasps "were previously present." (Dkt. 115-12, (Mayfield Dep Tr.) 186:6-7, 194:4-5, 196:22-23.) Objection. The term "EA-131" is vague and ambiguous, as there is no "EA-131" at issue in this action. For the purpose of responding to Plaintiff s statement of fact, Defendants interpret "EA-131" to mean "EA-231." |

95. Moving Party's Response:

Defendants' response is nonresponsive and immaterial. Mayfield explained that his intent was to address manipulation. Mayfield 186:4-5. Defendants do not dispute that Mayfield's email was not intended to require that all flagpoles fly the PPF.

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 96. | Lifeguard Chief Boiteux viewed the directive as "stop playing games and do what we ask you from the EA-231." (Boiteux Dep. p.166:2-9.) | Undisputed. |
| 97. | Chief Boiteux understood that clasps were being stolen and taken off of halyards; he interpreted the directive as "follow EA-231," which the Fire Department understood did not require PPFs where there were clasps for only one flag. (Boiteux Dep. pp.156:9-157:15.) | Disputed. The cited evidence does not support this statement. Chief Boiteux was not designated to speak on behalf of the County, and cannot confirm that the Fire Department understood EA-231 to not require PPFs where there were clasps for only one flag. Further disputed to the extent that Plaintiff cites to the incorrect portion of Chief Boiteux's |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
|  |  | deposition for the statement that "Chief Boiteux understood clasps were being stolen and taken off of halyards." Chief Boiteux testifies to this in another portion of the deposition. (Dkt. 121-5 (Boiteux Dep. Tr.) 157:21-25.) |

97. Moving Party's Response:

Defendants' response is immaterial. It confirms Boiteux's understanding of why clasps were being removed. Defendants do not point to any evidence contravening the express language of EA-231, which explains when stations should "fly the United States (U.S.) flag alone," and which Boiteux discussed in the cited testimony. Boiteux Dep. pp.156:9-157:15, Ex. 7 at 1.

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 98. | On June 20, 2023, Chief Boiteux issued a directive requiring that all flag poles in the department fly the PPF by 11 a.m. the next morning, specifying that lack of halyard clasps was no longer an "excuse." Boiteux issued the directive via a text message only to Assistant Chief Uehara and the four section chiefs (including Lester), which he sent at 8:10 p.m.; he reiterated the directive in an email to the same recipients at 9:19 p.m. (Lester Dep. pp.72:16-73:2, Ex 5, at p.12 & Ex. 9 at p.2; McMillon Dep. Ex. 2 at p.1, pp. 43:2-15, 45:18-24, 58:5-14.) | Disputed. Exhibit 2 to the McMillon deposition shows the Section Chiefs were instructed to look at every "fixed facility, with a flag pole," not "all flag poles." (Dkt. 121-10, Ex. 2 at LAC-001495.) |

98. Moving Party's Response:

Defendants' response is immaterial because Defendants do not show evidence that

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | there were any flag poles besides the flag poles at fixed facilities. | |
| 99. | The directive was not communicated to Captain Little before he arrived at work the next day. (Id.; Lester Dep. pp.88:12-90:10, 92:8-16, 94:1-7, 99:13-18; Boiteux Dep. pp.161:12-162:10, 271:23-272:11; McMillon Dep. pp.59:19-60:2.) | Disputed to the extent that the citation to Chief McMillon' s deposition testimony does not support this statement. Chief McMillon testifies she is "not sure" when the directive was conveyed to captains. (Dkt. 121-10 (McMillon Dep. Tr.) 60:4-11.) Undisputed otherwise. |
| | 99. Moving Party's Response:<br><br>Defendants' response is immaterial. McMillon's uncertainty does not give rise to a dispute because it does not contradict this fact. | |
| 100. | Chief Lester knew that "a lot of people were saying they didn't have…enough halyard clasps" to fly the PPF, so he went to the lifeguard administrative building early the next morning, June 21, 2023, picked up a box of clasps, and drove to stations across his 35- to 40-mile battalion area adding clasps and PPFs. (Lester Dep. pp.74:21-84:11.) | Disputed that Chief Lester delivered the halyard clasps on his own accord. Chief Lester "got that order," referring to order to be in "100 percent compliance" with EA-231, and in response to that order, delivered halyard clasps and PPFs to stations in his battalion. (Dkt. 121-7 (Lester Dep. Tr.) 74:21-84: 11.) Undisputed that Chief Lester knew that "a lot of people were saying they didn't have ... enough halyards." |
| | 100. Moving Party's Response:<br><br>Defendants are incorrect. Lester stated that "I kind of came up with my plan the night before" to implement the 100% compliance order, and his plan included | |

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | delivering clasps to certain stations. Lester 75:4-10. | |
| 101. | However, Lester was unable to add PPFs to three of his stations, and he communicated that in an email to Chief Boiteux. (Lester Dep. pp.84:12-85:3, Ex. 9 at p.1.) | Undisputed. |
| 102. | Lester "can't really recall" if any of these problems at RCO, Torrance, or Marina were actually solved in time to fly the PPF in 2023, as it was "almost the end of June" anyway. (Lester Dep. p.47:3-12.) | Disputed to the extent that this fact suggests that those locations could fly the PPF. Chief Lester testified that these locations had certain specific issues with flying the PPF, including that "the pole was a Little bit smaller and it was closer to the building ... and the Pride flag, just based on the size of those flags, was grazing up against the wall and the building. And flag etiquette is a big part ...of our militaristic organization ...." (Dkt. 119-4 (Lester Dep. Tr.) 84:12-85:3.) |

102. Moving Party's Response:

Defendants' response is immaterial because it ignores that Lester stated that Torrance and RCO both could fly the PPF, but needed a smaller one, and that Lester was waiting for a smaller flag from a warehouse. Lester 46:13-18. Defendants improperly cast the "specific issues" as being unsolvable. In truth, Lester had identified a solution but did not implement it in June.

| 103. | Indeed, even after the issuance of the 100% compliance mandate, there were still stations not flying the PPF because they could not. (Boiteux | Disputed to the extent the phrase "issuance of the 100% compliance mandate" implies this was a newly issued mandate, rather than a |

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | Dep. pp.169:12-170:8.) | directive to come into compliance with an existing policy. Undisputed otherwise. |

103. Moving Party's Response:

Defendants' response is nonresponsive because it fails to identify any contravening evidence. *See* L.R. 56-4 ("…the Court may assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the Statement of Genuine Disputes and (b) *controverted by declaration or other written evidence filed in opposition to the motion*.") (emphasis added).

| 104. | Relocating Captain Little to an area not flying the PPF remained a way to accommodate him even after issuance of the directive. *(Id.)* | Disputed. Chief Boiteux testified that moving Plaintiff to Area 33 "remained a theoretical way to accommodate him …. " Further disputed on the basis that Chief Boiteux was not involved in the accommodation process of June 2023 IPMs. (Dkt. 119-2 (Boiteux Dep. Tr.) 169:12-170:8; Dkt. 116-21 (2023 IPM report) at LAC-0000374.) Objection, foundation. (*See* Defs.' Stmt. Evid. Objs. ¶104.) |

104. Moving Party's Response:

Defendants' response is nonresponsive because it fails to provide evidence that relocation was not a way to accommodate Little, and because this fact does not touch on the 2023 IPMs.

| 105. | Chief Boiteux assumed that Captain Little agreed to work at Area 17 on June 21, 2023, on the expectation that | Disputed. Chief Boiteux did not state it would have "been better for someone" to inform Plaintiff, but |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
|  | the PPF would not be flying there, and it would have been better for someone in Captain Little's chain of command to inform him that the PPF was now flying in Area 17 before Captain Little arrived to work there that morning. (Boiteux Dep. pp.173:161-174:10, 183:7-13.) | rather agreed with counsel's line of questioning that it "would have been good for someone" to inform him. (Dkt. 119-2 (Boiteux Dep. Tr.) 183:7-13.) Objection, foundation and personal knowledge. (*See* Defs.' Stmt. Evid. Objs. ¶105.) |

105. Moving Party's Response:

Defendants' response is immaterial. Boiteux agreed that it would have been good to let Little know the PPF would be flying at Area 17. No one let Boiteux know about the PPF flying at Area 17. It therefore would have been better for a good to happen than not happen. Boiteux agreed that it would be "better" as well. Boiteux 181:23-182:5.

Defendants provide no evidence that Little *expected* the PPF to be flying at Area 17 on June 21, 2023, when he agreed to work there.

| 106. | Despite having knowledge of Captain Little's accepted religious accommodation and scheduled area on June 21, 2023, no chief within Captain Little's chain of command. (Boiteux Dep. pp.161:6-163:18, 181:23-183:13; Lester Dep. pp.88:12-96:22.) | Disputed, this sentence is incomplete. Further, disputed because this statement assumes that the religious accommodation was accepted and that all chiefs were aware of the accommodation. (Dkt. 115-5 (Lester Dep. Tr.) 69:4-70:20, 74:12-77:9.) |

106. Moving Party's Response:

Defendants are incorrect that Little did not accept a religious accommodation. Dkt. 116-21 2023 IPM report at LAC-0000374.

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 107. | A PPF was flying near the parking lot at Dockweiler Headquarter Building at Area 17 when Captain Little arrived to work at 10:30a.m. on June 21, 2023, but Captain Little raised no objection to working in the vicinity of that PPF. (Little Dep. pp.194:8-197:9.) | Disputed to the extent that Capt. Little knew that the Dockweiler Headquarters Building was not a Lifeguard Division facility. (Dkt. 119-1 (Little Dep. Tr.) 195:21-23.) |

107. Moving Party's Response:

Defendants' response is immaterial and only adds additional, irrelevant information, because the fact does not discuss Little's knowledge of the facility's ownership.

| | | |
|---|---|---|
| 108. | The PPF flying near the Area 17 Dockweiler Headquarters parking lot was under the direction and control of the Beaches and Harbors Department, not the fire department. (Little Dep. pp.194:8-197:9.) | Undisputed. |
| 109. | However, Captain Little was confused when he saw a PPF flying at the Area 17-2 station, because he knew Area 17 stations hadn't flown PPFs when he worked there on June 19, 2023. As a result, Captain Little checked his phone and email to see if there had been a change in policy, but Captain Little did not see any such change. (Little Dep. pp.201:12-203:5) | Disputed. The cited excerpt does not include support for the following statement: "As a result, Captain Little checked his phone and email to see if there had been a change in policy, but Captain Little did not see any such change." (Dkt. 119-1 (Little Dep. Tr.) 201:12-203:5.) |

109. Moving Party's Response:

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | Defendants are incorrect. Little 202:25-203:5 supports the disputed statement.<br><br>Defendants do not dispute that Little was confused when he saw the PPF flying, that he knew the stations had not been flying the PPFs, or that Little's knowledge was incorrect. | |
| 110. | Ocean Lifeguard Specialist Jake Miller at Area 17-2 informed Captain Little that Chief Lester had dropped off the PPFs and clasps earlier that morning with instructions to raise the PPFs; however, Captain Little understood that Lester did not have authority to change department policies or Captain Little's religious accommodation. (Little Dep. p.203:6-21.) | Undisputed. Objection, foundation. (*See* Defs.' Stmt. Evid. Objs. ¶110.) |
| 111. | Captain Little asked Miller if he would be offended if Captain Little took down the PPF given the sensitivity of the topic; Miller said he would not be offended. (Little Dep. pp.204:22-205:15.) | Disputed. The cited evidence does not support this fact because Mr. Miller has not testified. Objection, hearsay). (*See* Defs.' Stmt. Evid. Objs. ¶111. |
| | 111. Moving Party's Response:<br><br>Defendants offers no evidence other than legal argument to dispute this fact. *See* L.R. 56-4. | |
| 112. | Captain Little then went to Area 17-3 and spoke with Ocean Lifeguard Specialist Lauren Gottschalk; Captain Little observed the PPF flying in that area, too, and asked | Disputed. Plaintiff "asked OLS Gottschalk if she would be offended if Captain Little took it down." Ocean Lifeguard Specialist ("OLS") Gottschalk testified that "he kind of |

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | OLS Gottschalk if she would be offended if Captain Little took it down. (Little Dep. pp.205:22-207:10; Gottschalk Dep. p.193:10-18.) | pseudo-asked our or at least my opinion and then took the flag down anyway," and that he did not say would I be offended." (Dkt. 119-6 (Gottschalk Dep. Tr.) 193:3-9; Portnoi Decl. Ex. G (Gottschalk Dep. Tr.) 100:22-101.4.) |

112. Moving Party's Response:

Defendants are incorrect because they omit testimony five lines later that corroborates Little's own testimony. Gottschalk testified that "the fact is he did ask to some effect if I was okay with it or if I would be offended and I said I'm fine with it up." Gottschalk 193:14-18.

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 113. | Captain Little then removed the PPF flag from the Area 17-3 building's flagpole and carefully folded it and placed it on a counter inside. (Little Dep. p. 210:3-8.) | Undisputed. |
| 114. | Captain Little did not discuss his religious beliefs regarding the PPF with Miller or Gottschalk or attempt to proselytize or lecture them in any way about the same. (Little Dep. pp.204:22-209:9.) | Undisputed. |
| 115. | Captain Little then went to Area 17-1 and saw a PPF flying on an area flagpole that hadn't flown a flag in years. Captain Little asked Ocean Lifeguard Specialist Tenan-Snow and his co- lifeguard if they would be offended if Captain Little took the | Disputed that Plaintiff "then went to Area 17-1." Plaintiff first went to Area 17-2 to do a "quick workout." Undisputed as to the remainder of the Fact. (Dkt. 119-1 (Little Dep. Tr.) 210:14-214:15.) Objection, hearsay, to the extent that the |

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|-----|--------------------------------------------------------|----------------------------------------------|
|     | PPF down, and they said they didn't care; Captain Little then removed the PPF, folded it, and put it in the nearby Area 17-3 building. (Little Dep. pp.210:14-214:15.) | statement that Ocean Lifeguard Specialist Tenan-Snow and his co-lifeguard "said they didn't care" is being used for the truth of the matter asserted. (*See* Defs.' Stmt. Evid. Objs. ¶115.) |

115. Moving Party's Response:

Defendants' response is immaterial. It does not present an actual dispute because the intervening workout does not change that Little went to Area 17-1 after Area 17-3. Moreover, Little only stated that he "may" have done a quick workout. Little 210:16-17.

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|-----|--------------------------------------------------------|----------------------------------------------|
| 116. | The County enforced the June 20, 2023, 100% compliance mandate—as directed and implemented by Chief Boiteux in his instructions to Chief Lester—without regard for Captain Little's already-expressed religious conflict with ensuring PPFs were raised pursuant EA-231, and regardless of the religious accommodation he obtained on June 19, 2023. (Little Dep. pp.223:25-224:6, 225:23-226:5.) | Disputed. The cited excerpt does not include support for the proposition that the "l00 % compliance mandate" was enforced "without regard for Captain Little's already-expressed religious conflict ...." (Dkt. 119-1 (Little Dep. Tr.) 223:25-224:6, 225:23-226:5.) |

116. Moving Party's Response:

Defendants are incorrect. Little testified that Chief Lester did not call him on June 21, which means Lester could not have spoken with Little regarding his religious accommodation. Little 226:4-5. Moreover, Defendants fail to present any evidence that the County enforced the 100% compliance mandate *with regard* for Little's religious accommodation. *See* L.R. 56-4.

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 117. | Captain Little informed Lester of his religious accommodation when Lester came to talk to him in person at Area 17 on June 21, 2023; when Lester requested that Captain Little ensure the PPFs went back up, Captain Little stated he has a religious objection to doing so. (Little Dep. pp.239:10-241:9, 242:15-23) | Disputed to the extent that Plaintiff has obtained a "religious accommodation." (Defendant' s Separate Statement of Uncontroverted Facts, (Dkt. 114-2) ¶¶44-49, 83-90.) |

117. Moving Party's Response:

Defendants' response relies on facts which are themselves disputed. Defendants cannot deem a fact undisputed by disregarding Little's own testimony wholesale. Defendants proffer no evidence that Little's accommodation was an ADA accommodation or any other type of accommodation besides religious.

Moreover, Defendants' facts ¶¶ 44-49 are irrelevant because Defendants' facts regard the IPM summary and recall exemptions. Defendants' facts ¶¶ 83-84 discusses why the County argued Little's religious accommodation request was denied on June 21. Defendants' facts ¶¶ 85-90 regard Little's request for time off and a move.

In sum, none of Defendants' cited facts, even if true, show that Little did not receive a religious accommodation, which he informed Lester of on June 21.

Defendants therefore have not presented contravening evidence and this fact is not in dispute. *See* L.R. 56-4.

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 118. | Captain Little broke down mentally and emotionally after meeting with Lester and would have gone home for the day if Lester had offered it. (Little Dep. p.246:5-11.) | Undisputed. |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 119. | Lester acknowledges that Captain Little was visibly upset, shaken teary-eyed, and emotional, and upset when Lester met with and told him that his accommodation had been nullified, and asked Captain Little to "ensure" the PPF would be flown per the terms of EA-231. (Lester Dep. p124:21-127:11, 132:15) | Disputed to the extent that Chief Lester "told him that his accommodation had been nullified." (Dkt. 119-4 (Lester Dep. Tr.) 124:21-127:11, 132:15.) |

119. Moving Party's Response:

Defendants' response is immaterial. Lester stated "I've been directed to inform you that whatever . . . the result of the IPM where you were able to work in that area without having the flags flown is no longer valid." Lester 125:23-24. Defendants draw an immaterial distinction between the word "nullified" and "is no longer valid" and have not placed this fact in dispute.

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 120. | While Chief Lester was confused about why Captain Little was so emotional, he also acknowledged that "I get it. **I knew he was religious**. …. And by his emotions, . . . he obviously cared about it." (Lester Dep. p.131:22-23.) | Disputed to the extent that the quoted passage does not appear in the cited excerpt. |

120. Moving Party's Response:

Defendants' response is immaterial, because this statement is recited at 131:14-18.

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 121. | Chief Lester filed a CPOE complaint against Captain Little upon talking to Lauren Gottschalk, who Chief Lester says was upset and offended by Captain Little asking her that | Undisputed. |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | morning to take down the PPF at her stations, before Captain Little himself took it down. Lester says such reports are required when he observes an employee being "offended" or "feeling uncomfortable" at work. (Lester Dep. pp.128:1-130:6; Stormer Dep. pp.46:5-47:19.) | |
| 122. | Lester did not file a CPOE report on Captain Little's behalf despite observing Captain Little being emotional, upset, and uncomfortable with being told his religious accommodation was revoked and asked to ensure PPFs were flying in his area. (Lester Dep. p.138:9-19.) | Disputed. The cited excerpt does not include support for the following statement: "Lester did not file a CPOE report on Captain Little's behalf despite observing Captain Little being emotional, upset and uncomfortable with being told his religious accommodation was revoked and asked to ensure PPFs were flying in his area." (Dkt. 119-4 (Lester Dep. Tr.) 138:9-19.) |

122. Moving Party's Response:

Defendants' response is incorrect. Lester was asked if there was anything he could have done to help Little. Lester stated that he asked if Little could finish his shift. Lester did not state that he could, or did, file a CPOE report on Little's behalf, and Defendants point to no contravening evidence that he did. Without contravening evidence, this fact is not in dispute. *See* L.R. 56-4.

| 123. |  | |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT



| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | | |
| | | |
| 124. | | |
| | | |
| 125. | Gottschalk would not have argued about taking the PPF down had she known that Captain Little had a religious accommodation. | Disputed. OLS Gottschalk said that "He didn't even tell me that day that he had a religious accommodation . . . . I don't know that I would have |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|-----|--------------------------------------------------------|----------------------------------------------|
| | (Gottschalk Dep. p.221:7-9.) | really argued it to the soft - even though I was pretty soft with it, wouldn't have argued it to the extent that I did if the county had granted him something that I was aware of. But he did not make me aware of his religious accommodation." (Dkt. 119-6 (Gottschalk Dep. Tr.) 221:2-11.) |

125. Moving Party's Response:

Defendants' response is immaterial and confirms, rather than contravenes, this fact. At most, Defendants' evidence shows that Little did not tell her about his religious accommodation, but fact 125 does not assert that he did.

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|-----|--------------------------------------------------------|----------------------------------------------|
| 126. | After talking with Lauren Gottschalk, Chief Lester called Chiefs Boiteux and Uehara to confirm that he should file a CPOE report about Captain Little, and recounted that he had explained to Captain Little that "**I know he's religious,**" and "**I respect his religious beliefs.**" (Lester Dep. pp.140:10-141:5.) | Undisputed. |
| 127. | The County's decisionmakers were thus aware that Captain Little's actions regarding the PPF were motivated by religious reasons. (Lester Dep. pp.99:21-100:25, 140:10-141:5.) | Disputed, to the extent that this fact asserts that OLS Gottschalk, Chief Lester, Chief Boiteux, and Chief Uehara constitute the "County's decisionmakers." Chiefs Uehara and McMillon attended the June 19 IPM as representatives of his chain of command. (Dkt. 115-7 (Nuanes-Delgadillo Dep. Tr.) 119:2-6; Dkt. |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
|  |  | 115-8 (McMillon Dep. Tr.) 108:18-22, 109:3- 7; Dkt. 115-14 (Boiteux Dep. Tr.) 114:3-117:3, Dkt. 115-9 (Uehara Dep. Tr.) 47:25-48:5, 48:22-25.) However, Ms. Nuanes Delgadillo and Rachel Lara attended the June 19 IPM as human resources representatives. (Dkt. 115-7 (Nuanes-Delgadillo Dep. Tr.) 18:5-20:6.) To the extent that this refers to "decisionmakers" for any discipline, that process is handled separate from the Fire Department. (Dkt 115-16 (Stormer Dep. Tr.) 27:8- 28:18.) Objection, this fact is vague as to who the "decisionmakers" it references are. Further, this fact contains a legal conclusion as to who were the "decisionmakers." Objection, foundation. (*See* Defs.' Stmt. Evid. Objs. ¶127.) |

127. Moving Party's Response:

Defendants' response is immaterial. ██████████████████████████ ████████████████████████████████████ ████████████████████████████ Lester decided to file the CPOE, after Uehara and Boiteux decided he should. Lester 130:20-23.

Defendants' proffered evidence is immaterial because it only discusses events on June 19, two days before Lester, Uehara, and Boiteux decided to file the CPOE complaint.

| 128. | Even OLS Gottschalk was aware that Captain Little had a religious concern | Disputed to the extent this fact implies that OLS Gottschalk was |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | regarding the PPF. (Gottschalk Dep. p.157:11-14.) | "aware" *on June 21, 2023* of a "religious concern regarding the PPF." OLS Gottschalk testified that the "word-on-the-street" was that Plaintiff's "religious values don't align with the flag being up." OLS Gottschalk answered a question about "*later* ... find[ing] out" about Plaintiffs objections to the PPF. (Dkt. 115-6 (Gottschalk Dep. Tr. 157:7-14 (emphasis added).) |

128. Moving Party's Response:

Defendants' response does not give rise to a dispute because Defendants' proffered evidence shows only that she was not aware of Little's religious concern at the time he took the PPF down, but does not show that she was unaware of Little's religious concern when the CPOE complaint was filed. Defendants' cited evidence was in the context of Gottschalk testifying to what Little said to her when he took the flag down at her station. Gottschalk 154:2-157:14.

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 129. | On June 22, 2023, Captain Little filed a CPOE complaint regarding the aforementioned events at Area 17 on June 21, 2023, further notifying the County that his actions were motivated by religious reasons. (Little Dep. pp.248:22-249:1.) | Disputed to the extent that filing the CPOE complaint meant that the County was "notified" that Plaintiff's actions were motivated by religious reasons. (Dkt. 116-11 (CPOE 2023- 120504 Report Notification Form), at LAC-0000175.) Undisputed to the remainder. Objection, best evidence. (*See* Defs.' Stmt. Evid. Objs. ¶129.) |

129. Moving Party's Response:

Defendants' response is nonresponsive because it does not explain how the County was not "notified" by Little's CPOE complaint. Defendants only cite the complaint

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | Lester filed on behalf of Gottschalk. *See* Dkt. 116-11. Defendants have failed to proffer contravening evidence and so fact 129 remains undisputed. | |
| 130. | Chief Boiteux discussed Captain Little's grievance with Chief Mayfield, who directed Chief Boiteux to follow HR's recommendation. The grievance was denied. (Boiteux Dep. pp.282:8-10, 279:9-281:10, Ex. 31.) | Undisputed. |
| 131. | During the second IPM with Captain Little on June 21, 2023, County representatives informed Captain Little that "the purpose of a religious accommodation is to allow an employee to be able to practice their religion, such as taking time to attend religious services, wear religious garments, or provide them time to pray during the workday"; they said Captain Little's request "does not fall under a religious accommodation"; he was further told his "concerns regarding EA 231 and flying the flag are outside of the interactive process forum." (Little Dep. Ex. 1069 at pp.2-3; Nuanes-Delgadillo Dep. p.158:10-25.) | Undisputed. |
| 132. | During the second IPM, Fire Department personnel did not discuss whether the religious accommodation that Captain Little sought—to not raise or lower the PPF himself, | Disputed. The cited evidence does not support the fact, as Ms. Nuanes-Delgadillo was testifying about what was discussed "during the first IPM meeting." (Dkt. 119-5 Nuanes- |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | except under extenuating circumstances—would pose a burden on fire department operations. (Nuanes-Delgadillo Dep. pp.127:3–127:13.) | Delgadillo Dep. Tr.) 127:3-13.) |

132. Moving Party's Response:

Nuanes-Delgadillo's contemporaneous notes of the second IPM do not record a discussion of whether a religious accommodation to raising or lowering the PPF would pose a burden. Dkt. 116-20 at 4-6 (LAC-0001490-LAC0001492). Her summary did not record this either. Dkt. 116-21 at 3-4 (LAC-0000375-LAC-0000376). Instead, both only recorded that the only basis for revoking the religious accommodation was that his request was no longer eligible for a religious accommodation. Id. There is no evidence that a burden analysis was conducted at the second IPM.

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 133. | Captain Little's religious beliefs do not require him to take down PPFs over which he has "no responsibility" and is "not participating in," including at the Zuma location at Area 33, consistent with the religious accommodation he obtained on June 19, 2023. (Little Dep. pp.259:2-12; 259:14-260:9.) | Disputed to the extent that Plaintiff has obtained a "religious accommodation." Defendant' s Separate Statement of Uncontroverted Facts (Dkt. 114-2) ¶¶44-49, 83-90.) |

133. Moving Party's Response:

Defendants' response relies on facts which are themselves disputed. Defendants cannot deem a fact undisputed by disregarding Little's own testimony wholesale. Defendants proffer no evidence that Little's accommodation was an ADA accommodation or any other type of accommodation besides religious.

Moreover, Defendants' facts ¶¶ 44-49 are irrelevant because Defendants' facts regard the IPM summary and recall exemptions. Defendants' facts ¶¶ 83-84

74

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|-----|---------------------------------------------------------|----------------------------------------------|
| | discusses why the County argued Little's religious accommodation request was denied later June 21. Defendants' facts ¶¶ 85-90 regard Little's request for time off and a move. In sum, none of Defendants' cited facts, even if true, show that Little did not receive a religious accommodation. Defendants proffer no evidence that Little's accommodation was an ADA accommodation or any other type of accommodation besides religious. | |
| 134. | Captain Little believed the "easiest way" to avoid having responsibility over the PPF was working in an area where PPFs would not be flying consistent with EA-231 with respect to flagpoles that flew only one flag. (Little Dep. p.260:16-19.) | Undisputed. |
| 135. | Captain Little was motivated by his religious beliefs in taking down the Area 17 PPFs on June 21, 2023. (Little Dep. pp.257:12-259:1, 260:24-261:9) | Undisputed. |
| 136. | Captain Little testified that what conflicted with his religious beliefs at Area 17 on June 21, 2023, was not merely that the PPF flags were flying at that location, but that as the lead captain for Area 17 that day he was responsible for ensuring the PPFs were flying under the express terms of EA-231. (Little Dep. pp.261:18-263:23.) | Disputed. During his first Interactive Process Meeting, Plaintiff said that in certain situations, "it would not be an issue because [he] would not visibly see the [PPF]". notwithstanding that he was the Captain overseeing an Area. (Dkt. 116-20 2023 IPM Worksheet), at LAC-0001488.) |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | 136. Moving Party's Response: Defendants' response is immaterial. Defendants' citation is incorrect, as this quotation came from Dkt. 116-21 (LAC-0000374). Nonetheless, Little's statement during the first IPM is not inconsistent with his explanation of the conflict between his religious beliefs and his duties on June 21, 2023. Little explained that he "underst[ood] that if he has to work at other locations, the flag may be flown; however, he would prefer to work at a location where the PPF is not flown." Dkt. 116-20 2023 at LAC-0001488. Defendants' cited testimony does not contradict this fact 136, since if Little did not visibly see the PPF, he also would not be responsible for ensuring PPFs were flying. | |
| 137. | Captain Little first learned of the 100% compliance mandate to EA-231 during the IPM meeting of June 21, 2023, when Chief Uehara informed Captain Little "that per the Fire Chief, and effective immediately, the PPF will need to be flown at all locations and an updated EA will be sent out regarding this." (Little Dep. p.266:11-19, Ex. 1069 at p.2) | Disputed. The cited material does not support that Plaintiff "first learned of the 100% compliance mandate to EA-231 during the IPM meeting of June 21, 2023 ." (Dkt. 119-1 (Little Dep. Tr.) 266:11-19, Ex. 1069 at 2.) Undisputed as to the remainder of the facts. |
| | 137. Moving Party's Response: Defendants' response fails to provide evidence supporting a dispute. The quote in fact 137 is from Little's deposition at 266:11-15 and Ex. 1069 at 2 (LAC-0000376) , and this is the first time that any documents show Little being told about the 100% compliance mandate. There is no evidence that Little knew about the 100% compliance mandate prior to the IPM meeting of June 21, 2023. | |
| 138. | During that second IPM, no one present mentioned Captain Little's | Undisputed. |

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|-----|---------------------------------------------------------|----------------------------------------------|
|     | lowering of the PPFs in Area 17, which had already occurred. (Little Dep. p.268:3-11.) | |
| 139. | During the second IPM meeting, Nuanes-Delgadillo told Captain Little to reach out to his chain of command about getting time off for the rest of the month. (Little Dep. pp.268:24-269:2; Nuanes-Delgadillo Dep. p.184:7-11.) | Undisputed. |
| 140. | As a result of the June 21, 2023 IPM meeting, Captain Little was again bound by the duties of EA-231 to ensure flagpoles in his respective beach areas were flying the PPFs, even though on June 19 the County allowed Captain Little to serve as captain even if he did not ensure the PPF flew on flagpoles in his respective areas, so long as another captain at a nearby beach would do so. (Little Dep. pp.128:3-129:12, 145:22, 146:1-12.) | Disputed. Plaintiff was never relieved from complying with EA-231. (Dkt. 116-20 (2023 IPM Worksheet), at LAC-0001488.) |

140. Moving Party's Response:

Defendants are incorrect. LAC-0001488 states that Little was "informed that his request [for a religious accommodation] has been discussed with his COC and they are able to accommodate him with an assignment at Area 33. [Little] accepted this work location. It was explained that he would not be the Area 33 Headquarters Captain; therefore, *he would not be responsible for ensuring that the flag is flown*" (emphasis added).

EA-231 required the PPF to be flown. Little was not responsible for ensuring the

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|-----|---------------------------------------------------------|---------------------------------------------|

flag would be flown, and therefore he was not bound by the duties of EA-231. Defendants failed to proffer any contravening evidence and so this fact is not in dispute.

Defendants make no dispute that Little was bound by EA-231 as of June 21, 2023, or that the County allowed Little to serve as captain without ensuring the PPF was flown.

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|-----|---------------------------------------------------------|---------------------------------------------|
| 141. | Before, on, and after June 21, 2023, including during the accepted religious accommodation on June 19, 2023, the captain responsible for Zuma Headquarters is the Area 30 headquarters captain, and that captain was ultimately responsible for raising and flying the PPF in Area 33. (Little Dep. p.146:1-12.) | Disputed to the extent that Plaintiff had obtained a "religious accommodation." Defendant's Separate Statement of Uncontroverted Facts (Dkt. 114-2) ¶¶44-49, 83-90.) Further, under EA-231, Plaintiff was not responsible for "raising and flying the PPF ," but rather, only ensuring that the PPF was raised. (Dkt. 116-2 (EA-231), at LAC-0000036.) |

141. Moving Party's Response:

Defendants' response relies on facts which are themselves disputed. Defendants cannot deem a fact undisputed by disregarding Little's own testimony wholesale. Defendants proffer no evidence that Little's accommodation was an ADA accommodation or any other type of accommodation besides religious.

Moreover, Defendants' facts ¶¶ 44-49 are irrelevant because Defendants' facts regard the IPM summary and recall exemptions. Defendants' facts ¶¶ 83-84 discusses why the County argued Little's religious accommodation request was denied on June 21. Defendants' facts ¶¶ 85-90 regard Little's request for time off and a move.

In sum, none of Defendants' cited facts, even if true, show that Little did not receive a religious accommodation.

Further, Defendants are incorrect. EA-231 requires captains to "[e]nsure flags are

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | received and *flown*." LAC 0000037. Defendants have not presented evidence that Little was only responsible for ensuring the PPF was raised. Defendants therefore have not presented contravening evidence and this fact is not in dispute. *See* L.R. 56-4. | |
| 142. | According to estimates from Captain Little's chain of command, the full economic cost of granting Captain Little the religious accommodation he sought would cost the fire department $3,000 to $8,000 of its roughly $1.5 billion annual budget. (Kim Dep. pp.130:10–18, 132:17–133: 2; Boiteux Dep. p.24:6-8.) | Disputed. Chief Kim could not recall the total annual budget. (Dkt. 119-14 (Kim Dep. Tr.) 130:10-18.) Objection, foundation. (*See* Defs.' Stmt. Evid. Objs. ¶142.) |

142. Moving Party's Response:

Defendants are incorrect. Kim recalled that the budget was $1.5 billion, but she did not recall which year the budget was that much. Kim 130:10-18.

Further, the court may take judicial notice of facts that are either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). A recent Los Angeles County presentation shows that the Fire Department budget has grown to $1.8 billion for FY 2025-26. *See* https://file.lacounty.gov/SDSInter/bos/supdocs/213034.pdf

Defendants offer no contravening evidence showing that the cost of the religious accommodation was $3,000 to $8,000, and so this fact is undisputed. *See* L.R. 56-4.

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 143. | The Fire Department's corporate representative testified that that $3,000 to $8,000 cost, on its own, would not create an undue burden for | Disputed. Chief Kim testified that "if you're just focused on the cost of that financially for that one person," referring to the $3,000 to $8,000 |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | the fire department if it were to grant Captain Little's request for a religious accommodation. (Kim Dep. p.139:21–140:6.) | figure, but that she "place[d] a pretty high value on the cost, you know, that it impacts other folks' mental health by recalling them as well." (Dkt. 119-14 (Kim Dep. Tr.) 139:21-140:6.) |

143. Moving Party's Response:

Defendants' response does not dispute the fact that that the cost was estimated to be between $3,000 and $8,000 and was not an undue burden on its own. Defendants' response includes additional irrelevant information that does not dispute this fact.

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 144. | The fire department knows of no marginal noneconomic costs, such as lifeguards' mental health costs, that the department would incur as a cost of granting Captain Little the religious accommodation he sought. (Kim Dep. p.142:18–24.) | Disputed. The cited excerpt does not include support for the following statement: "The fire department knows of no marginal noneconomic costs such as lifeguards' mental health costs, that the department would incur as a cost of granting Captain Little the religious accommodation he sought." |

144. Moving Party's Response:

Defendants are incorrect. Kim testified that she had no evidence of any fire department employees suffering a mental health impact as a result of Little's religious accommodation request. Kim 142:18-24. Defendants have not proffered contravening evidence of a marginal noneconomic cost, such as an individual who incurred mental health impacts, as a result of Captain Little's religious accommodation request.

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 145. | The fire department faced no cost from moving Captain Little through | Disputed. Chief Kim said that there is "no monetary impact when |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | non-recall-triggering shift transfers if the religious accommodation Captain Little sought was granted. (Kim Dep. p.133:8-11; Uehara Dep. pp.250:19-251:8, 253:25-254:5; Boiteux Dep. pp.212:14-213:9.) | lifeguards ... engage in voluntary trades." (Dkt. 119-14 (Kim Dep. Tr.) 133:8-15.) |

145. Moving Party's Response:

Defendants' response is immaterial because it confirms that there was no cost. Uehara confirmed that shift transfer had no added cost to the department (Uehara 254:3-5), and Boiteux agreed with Uehara (Boiteux 213:5-9). Defendants have not produced contravening evidence showing that there would be a cost, and so this fact is undisputed.

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 146. | To minimize recalls, Los Angeles County permits the fire department to "hire behind" lifeguards who have been off on leave for ninety days or more, moving them to a position that does not exist in the fire department's budget to hire another lifeguard for the position and keep both lifeguards on staff. (Kim Dep. p.161:1–14.) | Undisputed. |
| 147. | Captain Little's chain of command, being the decision makers as to operational impact of an accommodation, concluded that the accepted accommodation made during the first IPM was operationally feasible. (Boiteux Dep. pp.218:10-219:17; Uehara Dep. pp.91:19-92:9, 238:24-239:5.) | Disputed. Chiefs Uehara and McMillon attended the June 19 IPM as representatives of his chain of command. (Dkt. 115-7 (Nuanes-Delgadillo Dep. Tr.) 119:2-6; Dkt. 115-8 (McMillon Dep. Tr.) 108:18-22, 109:3-17; Dkt. 115-14 (Boiteux Dep. Tr.) 114:3-117:3, Dkt. 115-9 (Uehara Dep. Tr.) 47:25-48:5, 48:22-25.) However, Ms. Nuanes |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|-----|------------------------------------------------------------|----------------------------------------------|
|     |                                                            | Delgadillo and Rachel Lara attended the June 19 IPM as human resources representatives. Dkt. 115-7 (Nuanes-Delgadillo Dep. Tr.) 18:5-20:6.) Further, Chief Boiteux responded, "yes and no" to counsel's question that "operationally, the accommodation was feasible." Dkt. 119-2 (Boiteux Dep. Tr.) 218:17-219:1.) Further, Chief Uehara testified that his "entire role" in the IPM process "would be to make sure that we can operationally - it does not negatively affect the operation and if we can operationally make it happen ... " He testified that it "would be highly speculative" to speak to the operational impact of Plaintiff's request now. (Dkt. 119-3 (Uehara Dep. Tr.) 91:19-92:9; 238:24-239:5.) |

147. Moving Party's Response:

Defendants are incorrect.

Boiteux confirmed that his understanding was there was no concern about whether the religious accommodation could work operationally and whether it was feasible. Boiteux 219:8-17.

Uehara described his role at the IPM to be determining "that we can operationally…make it happen." Uehara 92:4-5. Defendants misstate Uehara's testimony, because he said "I don't remember what the precipice was for us allowing him to be at area 33. It would be highly speculative of how that worked out *at that time*." Uehara 239:18-21. Uehara did not dispute that the move was operationally feasible during the first IPM.

Moreover, Little was told during the first IPM that his religious accommodation

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|

request "was discussed with [his] chain of command and the department is able to accommodate you." Dkt. 116-21 at LAC-00000374. If Uehara had an operational concern, he did not use it to reject Little's religious accommodation.

Defendants' remaining evidence regarding the other IPM members is irrelevant, because Defendants do not assert that Nuanes-Delgadillo or Lara were tasked with determining operational impacts.

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 148. | Fire department personnel who facilitate the IPM process and make accommodation decisions jointly with a requester's chain of command typically defer to the requester's chain of command as to its conclusions about the effects of granting an accommodation on operations. (Kim Dep. p.165:2-8; Boiteux Dep. pp.114:3-14, 218:10-219:17; Uehara Dep. pp.85:14-21, 91:19-92:9, 238:24-239:8; McMillon Dep. p.81:2-9.) | Disputed. The cited material does not support the assertion that Fire Department personnel who facilitate the IPM process make accommodation decisions "jointly" with the requester's chain of command. |

148. Moving Party's Response:

Defendants are incorrect.

For instance, Kim testified that she deferred to the chain of command because "they obviously would know best." Kim 165:2-8.

Defendants proffer no contravening evidence that fire department personnel make accommodation decisions without input of the requester's chain of command, and so this fact is undisputed. *See* L.R. 56-4.

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 149. | Captain Little agreed as part of the granted June 19, 2023 religious | Disputed to the extent that Plaintiff has obtained a "religious |

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
|  | accommodation that he would seek to trade shifts with other lifeguards to minimize whatever increase in lifeguard recalls might otherwise occur from the religious accommodation he sought. (Kim Dep. p.119:15–17; Kim Dep. p.143:2–7.) | accommodation." Defendant' s Separate Statement of Uncontroverted Facts (Dkt. 114-2) ¶¶44-49, 83-90.) |

149. Moving Party's Response:

Defendants' response relies on facts which are themselves disputed. Defendants proffer no evidence that Little's accommodation was an ADA accommodation or any other type of accommodation besides religious.

Moreover, Defendants' facts ¶¶ 44-49 are irrelevant because Defendants' facts regard the IPM summary and recall exemptions. Defendants' facts ¶¶ 83-84 discusses why the County argued Little's religious accommodation request was denied on June 21. Defendants' facts ¶¶ 85-90 regard Little's request for time off and a move.

In sum, none of Defendants' cited facts, even if true, show that Little did not receive a religious accommodation. Nor do Defendants even attempt to dispute that Little agreed that he would seek to trade shifts to minimize recalls.

Defendants therefore have not presented contravening evidence and this fact is not in dispute. *See* L.R. 56-4.

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 150. | Before Captain Little's second IPM, the fire department had never denied any employee any kind of accommodation on the basis that granting it could cause a recall. (Kim Dep. pp.144:13-25, 145:18–146:3.) | Disputed. In response to counsel's question Chief Kim responded, "probably not specific to that. I mean, that was part of the - that was definitely part of the conversations we've had subsequently, I, as a whole, looking at it. Solely based on just that it was potentially cause a recall, I don't - I don't think that's |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | | been a *sole reason*. Although I can't remember. And I always know that we- that's part of the conversation that we have when we talk about accommodating." (Dkt. 119-14 (Kim Dep. Tr.) 144:21-145:8.) Chief Kim otherwise said that she could not recall another instance. Dkt. 119-14 (Kim Dep. Tr.) 145:9- 12.) |

150. Moving Party's Response:

Defendants are incorrect. Kim was asked whether a disability accommodation request was denied "in part" on the basis that it would trigger recalls. Kim answered no. Kim 145:18-146:3.

Defendants do not dispute that the fire department denied Little's religious accommodation on the basis that granting it could cause a recall.

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 151. | Chief Boiteux understood that the reason Captain Little's original religious accommodation could not continue was *not* an operational feasibility issue, but a direction from human resources and legal counsel that it was not an *appropriate* accommodation. (Boiteux Dep. p.219:8-17.) | Disputed. This fact lacks context. Ms. Nuanes-Delgadillo explained to Plaintiff that the reason for denying his religious accommodation request was that there was no interference with a religious practice. (Dkt. 115-7 (Nuanes-Delgadillo Tr.) 172:18-173:21; Dkt. 115-15 (Crum Dep. Tr.) 141:9-16, 144:7-15, Dkt. 115-8 (McMillon Dep. Tr.) 127:25-128:3.) Also disputed to the extent that this fact asserts that there was a prior religious accommodation that could "continue." The evidence cited in Defendants' Separate Statement of Uncontroverted Facts (Dkt. 114-2) ¶¶44-45, and testimony in Chief |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|-----|--------------------------------------------------------|---------------------------------------------|
|     |                                                        | Uehara's deposition show Ms. Nuanes-Delgadillo's June 20, 2023 email did not communicate a finalized religious accommodation. (Dkt. 115- 2 (Little Dep. Tr.) 123:7-14, 126:4-10, 131:9-21, 131:22-132:5, Dkt. 115-8 (McMillon Dep. Tr.) 109:21-110:4, 111:20-24, 112.12-17, Dkt. 115-15 (Crum Dep. Tr.) 112:8-17; Dkt. 116-19 (Nuanes-Delgadillo Decl.) ¶¶3-4; Dkt. 116-20 (2023 IPM notes) at LAC-0001489; Dkt. 116-21 2023 IPM report) at LAC-0000375; Dkt. 115-9 (Uehara Dep. Tr.) 126:9- 127:22.) |

151. Moving Party's Response:

Defendants' response does not dispute that Little's religious accommodation did not present an operational feasibility issue.

Defendants' reliance on Nuanes-Delgadillo is misplaced. Nuanes-Delgadillo stated that "it was explained that a religious accommodation does not include allowing an employee to not work in a building where the PPF is flown." Nuanes-Delgadillo 172:22-24.

Crum testified to Little's objection (Crum 141:9-16) and Little's time off request (144:7-15) but not operational feasibility or appropriateness of the religious accommodation.

McMillon testified that in the second IPM, Nuanes-Delgadillo received clarification on "what could and couldn't be accommodated" (McMillon 127:25-128:1). This confirms, rather than disputes, fact 151, because the accommodation was rescinded after Nuanes-Delgadillo determined Little's request could not be accommodated. Further, Nuanes-Delgadillo did not determine operational impact. Further, McMillon did not know why a follow-on IPM was necessary (McMillon Dep., pp. 136:3-137:20), confirming that it was not foreseen that the religious

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | accommodation would be revoked. Defendants' response relies on facts which are themselves disputed. *See* Dkt. 155-1 at ¶¶ 44-45. Further, there is no reason to think Nuanes-Delgadillo communicated a self-expiring religious accommodation, because she documented that Little "accepted the following accommodation: Stationed at Area 33 through June 30, 2023." Little Ex. 1074 at 1. This clearly shows the religious accommodation was intended to last for the entire month. Also, Little was told that the IPM would only reconvene "if" anything changed on either end. Dkt 116-21 at LAC-0000375. This conditional language shows that the religious accommodation was intended to continue indefinitely. | |
| 152. | On June 21, 2023, at 5:57 p.m., Captain Little emailed Chief Uehara stating that in light of the IPM meeting earlier that day rescinding his prior religious accommodation, Captain Little was requesting benefit time for the remainder of the month of June. (Little Dep. Ex. 1085 at p.4; Kim Dep. Ex. 20 at p.2.) | Disputed to the extent that this fact asserts that there was a prior religious accommodation. The evidence cited in Defendants' Separate Statement of Uncontroverted Facts (Dkt. 114-2) ¶¶44-45, and testimony in Chief (Uehara's deposition show Ms. Nuanes-Delgadillo's June 20, 2023 email did not communicate a finalized re1igious accommodation. (Dkt. 115- 2 (Little Dep. Tr.) 123:7-14, 126:4-10, 131:9-21, 131:22-132:5, Dkt. 115-8 (McMillon Dep. Tr.) 109:21-110:4, 111:20-24, 112.12-17, Dkt. 115-15 (Crum Dep. Tr.) 112:8-17; Dkt. 116-19 (Nuanes-Delgadillo Decl.) ¶¶3-4; Dkt. 116-20 (2023 IPM notes) at LAC-0001489; Dkt. 116-21 2023 IPM report) at LAC-0000375; Dkt. 115-9 (Uehara Dep. Tr.) 126:9- 127:22.) |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | | Undisputed as to the rest. |

152. Moving Party's Response:

Defendants' response relies on two disputed facts, which are disputed because contravening evidence shows that McMillon did not know why a follow-on IPM was necessary (McMillon Dep., pp. 136:3-137:20), showing that she understood the religious accommodation process to be complete, and because Little disputed Nuanes-Delgadillo's characterization in the IPM record. *See* Dkt. 155-1 at ¶¶ 44-45. Defendants cannot deem a fact undisputed by disregarding Little's own testimony wholesale. Defendants proffer no evidence that Little's accommodation was an ADA accommodation or any other type of accommodation besides religious.

Defendants' response is also nonresponsive. First, there is no reason to think Nuanes-Delgadillo communicated a self-expiring religious accommodation, because she documented that Little "accepted the following accommodation: Stationed at Area 33 through June 30, 2023." Little Ex. 1074 at 1. This clearly shows the religious accommodation was intended to last for the entire month. Also, Little was told that the IPM would only reconvene "if" anything changed on either end. Dkt 116-21 at LAC-0000375. This conditional language shows that the religious accommodation was intended to continue indefinitely.

But even if the religious accommodation were not a "finalized" religious accommodation, it was still rescinded at the IPM and Little requested benefit time as a result.

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 153. | Chief Uehara forwarded Captain Little's request to Kim and Boiteux, stating: "See the message below from Captain Little. I would like to deny his request." (Boiteux Dep. Ex. 20; Kim Dep. Ex. 20 p.1.) | Undisputed. |
| 154. | Chief Boiteux did not know why Chief Uehara wanted to deny Captain | Disputed. Chief Boiteux's testimony is vague and unclear as to time. |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | Little's request. And Kim responded that it was "the discretion of the lifeguard management." (Boiteux Dep. pp.227:10-228:2, Ex. 20.) | Chief Boiteux said that he "would ask" Chief Uehara why he said that, not that "he did not know why ... ." (Dkt. 119-2 (Boiteux Dep. Tr.) 227:25-228:2.) |

154. Moving Party's Response:

Defendants' response misconstrues Boiteux's testimony. Boiteux was asked if he knew why Uehara said he wanted to deny the request. Boiteux told the attorney, "I would ask him." Boiteux's casual response does not mean that Boiteux would ask Uehara, but that he was suggesting the attorney should ask Uehara. Boiteux 227:25-228:2.

Defendants do not dispute Kim's response.

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 155. | Chief Boiteux recommended to Chief Uehara that Captain Little's request be denied if it will cause a recall, but Captain Little may be permitted to file a time exchange request. Lifeguard management was under pressure from Los Angeles County to reduce recalls even in circumstances involving a religious objection. (Boiteux Dep. p.228:5-24; Ex. 20.) | Undisputed. |
| 156. | Chief Uehara responded via email that he approves time off as long as it does not cause a recall, and otherwise recommended that Captain Little use Time Exchange procedures with other captains. (Little Dep. Ex. 1085 at 3; Crum Dep. p.147:8-18.) | Undisputed. |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|-----|---------------------------------------------------------|----------------------------------------------|
| 157. | Chief Uehara's response was effectively a denial of Captain Little's request to use benefit time, because at that time of year, taking benefit time would likely cause a recall. (Little Dep. p.282:19-24; Crum Dep. 60:25-61:3, 62:19-63:2.) | Disputed. Chief Uehara's response was not "effectively a denial." In fact, he approved the request. (*See* Plf.'s SSUF ¶156.) |

157. Moving Party's Response:

Defendants' response ignores that Uehara's condition made it difficult or even impossible for Little to use benefit time due to summer vacations. Uehara himself described the difficulty of trying to use benefit time for June, in the context of McMillon proposing benefit time early in the process. Uehara 98:16-100:2. Little explained that during "that time of year, we know if someone's taking a day off, that's going to be a recall." Little 282:21-24. Little also knew the voluntary overtime list had been exhausted and that recalls were already happening. Little 283:3-6. Further, policy required that section chiefs must deny benefit days when available personnel cannot fill the position. Little 277:15-18. Uehara therefore had a duty to know whether Little would be able to use benefit time. The fact that Little could not shows that Uehara's ersatz approval was effectively a denial.

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|-----|---------------------------------------------------------|----------------------------------------------|
| 158. | Lifeguard time off for sickness is treated differently than time off for other reasons; and when asked whether time off in cases of religious conflict should be treated more like sick time rather than the more restrictive and conditional time off allowed for others reasons, Boiteux testified that he relies on HR to make those decisions. (Boiteux Dep. pp.229:24-230:14, 233:3-15.) | Disputed to the extent that Boiteux "relies on HR to make those decisions." Chief Boiteux testified that this is "an HR question." (Dkt. 119-2 (Boiteux Dep. Tr.)233:3-15.) He did not indicate that he had ever relied on HR to make this kind of decision. Boiteux also did not indicate that there is a "more restrictive and conditional time off allowed for other reasons" besides sick time. (Dkt. 119-2 (Boiteux Dep. Tr.) 229:24-230:14, 233:3-15.) |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | | Undisputed as to the rest of the facts. |

158. Moving Party's Response:

Defendants' response is nonresponsive. Boiteux stated twice that he would rely on HR for the decision to treat religious conflict time off like sick time off. Boiteux 233:15-233:19. The fact does not assert that Boiteux had actually made this decision before.

Regarding restrictive time off, Defendants are incorrect. Boiteux contrasted benefit time with sick time (Boiteux 230:9-14) and explained that benefit time can be denied if it causes a recall, but sick time is not (Boiteux 231:12-232:10). So Boiteux did indicate that there is a more restrictive form of time off than sick time, and Defendants have not presented any actual contravening evidence showing a dispute.

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 159. | Chief Boiteux agreed that it would have been a good idea for Chief Uehara to talk with Captain Little before unilaterally denying Captain Little's request for time off for the rest of June. (Boiteux Dep. p.250:13-21.) | Disputed. Chief Boiteux did not testify that Chief Uehara "unilaterally den[ied] Captain Little's request for time off for the rest of June." (Dkt. 119-2 (Boiteux Dep. Tr.) 251:13-21.) Undisputed that Chief Boiteux "agreed that it would have been a good idea for Chief Uehara to talk with Captain Little before[.]" |

159. Moving Party's Response:

Defendants' response misleadingly slices the testimony. Boiteux was asked whether "it might have been a good idea for Chief Uehara to have a conversation with Captain Little *before just unilaterally denying the request for time off the rest of the month?*" Boiteux replied yes and did not dispute that Uehara had acted unilaterally. Boiteux 250:13-21.

Further, Defendants proffer no evidence of anyone else involved in Captain Little

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | being unable to use his benefit time for the rest of June. Because Defendants failed to identify contravening evidence, this fact is undisputed. | |
| 160. | Additionally, as someone who regularly participates in IPMs, Chief Lester acknowledged that allowing an employee to use benefit time is generally a possible reasonable accommodation as long as shifts are filled through recall—triggering recalls is usually not a barrier granting an accommodation in the form of benefit time. (Lester Dep. pp.161:10-164:15; Power Dep. p.35:13-20.) | Disputed. Chief Lester stated that whether using benefit time could be an accommodation "would be between an IPM process," and added that "it would cause a bunch of recalls." (Dkt. 119-4 (Lester Dep. Tr.) 161:10-163:20.) Chief Power clarified that this would "be determined between the department [in an IPM] and whether or not we can operationally support it." (Dkt. 119-8 (Power Dep. Tr.) 35:13-20.) Neither testified that "allowing an employee to use benefit time is *generally* a possible reasonable accommodation," or that "triggering recalls is *usually* not a barrier granting (sic) an accommodation in the form of benefit time." (Dkt. 119-4 (Lester Dep. Tr.) 161:10-163:20; Dkt 119-8 (Power Dep. Tr.) 35:13-20.) Neither testifies about frequency ("generally," "usually"), either. (Dkt. 119-4 (Lester Dep. Tr.) 161:10-163:20; Dkt 119-8 (Power Dep. Tr.) 35:13-20.) |

160. Moving Party's Response:

Defendants' response is immaterial because Lester's cited testimony only states that benefit time may cause recalls. The cited testimony does not dispute that the simple fact of triggering recalls does not render an accommodation impossible.

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|-----|----------------------------------------------------------|----------------------------------------------|

Rather, Lester testified that the operational concern centers on "putting public safety at potential jeopardy if we weren't able to fill the shift," and confirmed that recalls do fill the shifts. Lester 164:6-15.

Defendants proffer no testimony showing that the fact of triggering recalls itself is a barrier to granting an accommodation in the form of benefit time. At most, the cited testimony shows that *unfilled* recalls could be an impediment.

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|-----|----------------------------------------------------------|----------------------------------------------|
| 161. | On June 22, 2023, Captain Little responded via email to Chief Uehara stating that he showed up to work to avoid causing a recall, but that "I cannot live with myself should I proceed to work under these conditions and [be] forced to compromise my religious convictions"; further, because his "mental and physical health [were] quickly deteriorating due to [his] religious convictions" and the rescission of his religious accommodation, Captain Little intended to go home sick and would make operational notifications to ensure area captains covered his work location. (Little Dep. Ex. 1085 at p.3; Boiteux Dep. Ex. 21.) | Undisputed. |
| 162. | On June 22, 2023, Chief Boiteux met with Captain Little in person at the Malibu station and provided Captain Little a Direct Order, a Notice of Instruction, and a Subject of Internal Investigation notice because he lowered the PPFs at Area 17 on June 21, 2023. (Little Dep. Ex. 1087 at p.1 | Undisputed. |

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
| --- | --- | --- |
| | ; 3d Am. Verif. Cmplt. ¶79; Kim Dep. Ex. 28 at p.1 & Ex. 66 at p.1.) | |
| 163. | The decision to issue the Direct Order was made by Chief Mayfield in consultation with Kim and Sturdivant. (Boiteux Dep. pp.254:9-21, 255:1-15, 262:5-8 .) | Undisputed. |
| 164. | The Direct Order and Notice of Instruction specified that Captain Little is responsible for either flying the PPF or ensuring it is flown; the Notice of Instruction also stated that "All Department employees, *irrespective of personal beliefs*, are expected to comply with EA-231, which includes raising the flag as instructed." (3d Am. Verif. Cmplt. ¶79 (emphasis added), Exs. 10 & 11.) | Undisputed. |
| 165. | While meeting with Captain Little on June 22, 2023, Chief Boiteux told Captain Little several times that Captain Little's "religious beliefs don't matter," and he needed to ensure the PPF flag is flown "regardless of [his] beliefs." (Little Dep. p.288:7-22.) | Disputed. Chief Boiteux did not remember making either statement. Dkt. 115-14 (Boiteux Dep. Tr.) 270:20-271:1. |

165. Moving Party's Response:

Defendants are incorrect. Boiteux did not state that the did not remember making either statement. Instead, Boiteux did not recall the exact words he said but nonetheless confirmed that it "sound[ed] like something" in the context of

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|

reminding Little of his oath. Boiteux 270:20-271:4.

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 166. | Boiteux *acknowledged* that he told Captain Little during this meeting that Captain Little's religious beliefs don't matter. (Boiteux Dep. pp.270:20-271:4.) | Disputed. Chief Boiteux did not acknowledge that he told Captain Little that Captain Little's religious beliefs don't matter. Boiteux Dep. Tr. 270:20-271 :4. |

166. Moving Party's Response:

Defendants are incorrect. Boiteux did not recall the exact words he said but nonetheless confirmed that it "sound[ed] like something" in the context of reminding Little of his oath. Boiteux 270:20-271:4. Defendants proffer no evidence showing that Boiteux denied saying this.

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 167. | The Notice of Instruction was issued because Captain Little took down the PPFs. (Boiteux Dep. pp.273:16-274:1, 277:9-17.) | Undisputed. Objection, best evidence. (*See* Defs.' Stmt. Evid. Objs. ¶167.) |
| 168. | The Notice of instruction stated it was issued "to reiterate the Department's expectations regarding compliance with the Board of Supervisors' March 7, 2023 motion to fly the [PPF] at county facilities. (3d Am. Verif. Cmplt. Ex. 11.) | Undisputed. |
| 169. | Boiteux issued the Direct Order compelling compliance under threat of discipline, including suspension or termination. (Kim Dep. Ex. 28 at p.1 (LAC-0000034).) | Disputed. Chief Boiteux did not personally threaten discipline, suspension, or termination. (Portnoi Decl., Ex. B (Boiteux Dep. Tr.) 262:25-265:25; Dkt. 115-25 (Direct |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | | Order) at LAC-0000034.) |

169. Moving Party's Response:

Defendants are incorrect. Boiteux's order specifically stated that "[f]ailure to comply with this order will be considered insubordination and subject to disciplinary action, which could include suspension and/or discharge from County service." Kim Dep. Ex. 28 at p.1 (LAC-0000034).

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 170. | Boiteux is 6'4" and 220 pounds, whereas Little is 5'9", 150 pounds. Captain Little believes Boiteux's specific intent was to physically intimidate Little. (3d Am. Verif. Cmplt. ¶194.) | Disputed to the extent Plaintiff contends Chief Boiteux's intent was to physically intimidate Plaintiff. Chief Boiteux testified that he "stepped back,[g]iving [Plaintiff] more room," and "[i]n no way ... was near [Plaintiff]." (Portnoi Decl., Ex. B (Boiteux Dep. Tr.) 264:21-25). Undisputed as to the rest of the fact. |

170. Moving Party's Response:

Defendants' response is immaterial. Boiteux testified that he did not sense that Little felt physically intimidated. Boiteux 265:21-24. Disregarding the inconsistency in Boiteux's testimony that he nonetheless "stepped back" despite allegedly not sensing that Little felt intimidated (*id*.), Defendants' evidence does not disprove that Little believed Boiteux's intent was to intimidate him.

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 171. | On June 22, 2023, Chief McMillon learned that a flagpole at the Malibu station in Area 33 had been removed entirely, and an Ocean Lifeguard Specialist (OLS) told Chief McMillon that "he removed the flagpole for 'maintenance' reasons." (Little Dep. pp.268:3-271:20, Ex. | Undisputed. |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
|  | 1082.) |  |
| 172. | No discipline resulted from the CPOE Complaint relating to the flagpole removed at the Malibu Station. (Jonna Decl., Ex. O, Supp. Resp. to Plaintiff's SROG No. 24.) | Disputed. Defendants' supplemental response to Special Interrogatory No. 24 indicates that "[a]side from Plaintiff, one LAC Fire Department employee was disciplined in connection with violating EA-231 or EA-232." (Dkt. 119-15 (Suppl. Response to Plf. 's SROG No. 24) at 5.) However, Plaintiff has no evidence to support that there was a CPOE complaint filed regarding this incident in the first place or that any individual did or not receive discipline. |

172. Moving Party's Response:

Defendants are incorrect. The answer to SROG No. 24 states that there was one other person disciplined. Kim testified that that the other person who was disciplined was a firefighter, not a lifeguard. Kim 418:3-5. This other person also lowered a PPF. Kim 419:1-3. Kim also testified that this person had an equity investigation and was suspended for 15 days. Kim 419:17-24.

If the flagpole removal at the Malibu station had resulted in discipline, Defendants' answer to SROG No. 24 would have indicated two other employees who were disciplined. But the answer states that there was one, and that person is accounted for in Kim's testimony. Therefore the lifeguard who removed the flagpole at Malibu was not disciplined.

| 173. | Little was standing near Chief McMillon at the Malibu station when she observed the Malibu flagpole had been removed; Little stated that he was going home sick that day | Disputed. No admissible evidence supports the fact that "the other captains working in Area 33's battalion area that day ... were supportive." Further disputed that |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
|  | because he was having an emotional breakdown as a result of EA-231; he also notified the other captains working in Area 33's battalion area that day, and those captains were supportive. (Little Dep. pp.273:2-274:12, Ex. 1082 at p.3.) | Plaintiff stated he "was going home sick that day because he was having an emotional breakdown as a result of EA-231." Chief McMillon testified that Plaintiff told her he was going home sick, but did not communicate further details. (Dkt. 115-8 McMillon Dep. Tr.) 164:3-21, 166:12-22.) Objection, hearsay). (*See* Defs.' Stmt. Evid. Objs. ¶173. |

173. Moving Party's Response:

Defendants' proffered evidence does not give rise to a material dispute because McMillon later clarified that "if [Little's] saying he told me then" that he was sick because of the situation with his religious accommodation, "that's possible." McMillon 164:15-165:15.

The rest of Defendants' response is simply legal argument that does not dispute this fact. *See* L.R. 56-4.

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 174. | Shortly after telling Chief McMillon he needed to go home sick, Little began crying. (Little Dep. pp.273:25-274:5.) | Undisputed. |
| 175. | Chief Uehara forwarded Little's June 22 email regarding his intended sick time to Julia Kim and observed that the flagpole in the Malibu area where Little was working that day had been removed; but Chief Uehara noted he is aware that an OLS then working in Malibu also "doesn't seem to support the flag as well." (Little Dep. Ex. | Undisputed. |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
|  | 1085 at p.2.) |  |
| 176. | L.A. County lifeguard employees, including Little, can request "benefit days" in addition to vacation days; the fire department's memorandum of understanding provides that benefit days must be submitted three days (72 hours) in advance of the date to be filled, but, in practice, benefit days are often requested *within* 72 hours of the date to be filled. (Little Dep. pp.278:12-279:3, Ex. 1084 at p.4; Crum Dep. pp.59:11-60:19.) | Disputed. The evidence cited in Defendants' Separate Statement of Uncontroverted Facts (Dkt. 114-2) ¶¶89-90 contradicts the statement that Chief Uehara did not grant his benefit request. (Dkt. 116-34 (Uehara Decl.) ¶4; Dkt. 116-36 (email correspondence between Plaintiff and Chief Uehara); Dkt. 115-9 (Uehara Dep. Tr.) 237:24-238:3, 263:14-22). |

176. Moving Party's Response:

Defendants' response is nonresponsive. The fact does not assert that Uehara did not grant his benefit request. Defendants appear to be responding to a different fact, but have not asserted contravening evidence. Fact 176 is therefore not in dispute.

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 177. | Every benefit day Little had previously requested had been granted, except the benefit day request he made to Chief Uehara regarding EA-231. (Little Dep. p.279:5-8.) | Disputed. The evidence cited in Defendants' Separate Statement of Uncontroverted Facts (Dkt. 114-2) ¶¶89-90 contradicts the statement that Chief Uehara did not grant his benefit request. (Dkt. 116-34 (Uehara Decl.) ¶4; Dkt. 116-36 (email correspondence between Plaintiff and Chief Uehara); Dkt. 115-9 (Uehara Dep. Tr.) 237:24-238:3, 263:14-22). |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|-----|---------------------------------------------------------|----------------------------------------------|

177. Moving Party's Response:

Defendants' response does not dispute that every benefit day Little had requested previously had been granted.

Defendants' response ignores that Uehara's condition made it difficult or even impossible for Little to use benefit time due to summer vacations. Uehara himself described the difficulty of trying to use benefit time for June, in the context of McMillon proposing benefit time early in the process. Uehara 98:16-100:2. Little explained that during "that time of year, we know if someone's taking a day off, that's going to be a recall." Little 282:21-24. Little also knew the voluntary overtime list had been exhausted and that recalls were already happening. Little 283:3-6. Further, policy required that section chiefs must deny benefit days when available personnel cannot fill the position. Little 277:15-18. Uehara therefore had a duty to know whether Little would be able to use benefit time. The fact that Little could not shows that Uehara's ersatz approval was effectively a denial

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|-----|---------------------------------------------------------|----------------------------------------------|
| 178. | Little was not disciplined for using his sick time for his remaining shifts in June 2023. (Little Dep. p.283:24-284:11.) | Undisputed. |
| 179. | On June 23, 2023, only two days following the June 20 flag-lowering incident, Captain Little was suspended from his role on the BIU, which conducts investigations of emergency incidents, resulting in a significant loss of overtime, income, and prestige. (3d Am. Verif. Cmplt. ¶82.A.) | Disputed as to the statement "resulting in a significant loss of overtime, income, and prestige." This is an improper legal conclusion, and Plaintiff cites no evidence in support of this statement beyond the allegation in his complaint. Objection, foundation. (*See* Defs.' Stmt. Evid. Objs. ¶179.) |

179. Moving Party's Response:

Defendants' proffer no evidence other than legal argument. The fact is therefore not in dispute. Nonetheless, Kim testified that assignment on the BIU does give

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | overtime. Kim 339:6-340:11. Kim quantified Little's overtime as being up to 272 hours. Kim 340:2-4. Kim also testified that not every captain is entitled to be on the BIU, supporting that it is a prestigious position. Kim 340:12-19. | |
| 180. | There is no information or evidence that Little was not performing well at any time period on the BIU, which began during the 2022-2023 rating period. (Sturdivant Dep. p.113:9-12, Ex. 2 at p.79.) | Disputed. This misconstrues Chief Sturdivant's testimony. In the cited testimony, Plaintiff's counsel asks, "So do you have any information or evidence that he was not performing well at any time period on the background investigations unit?" Sturdivant responds, "Not that I'm aware of." (Dkt. 119-11 (Sturdivant Dep. Tr.) 113:9-12.) |

180. Moving Party's Response:

Defendants' proffered evidence does not dispute fact 180. Sturdivant does not say that she was aware of any information or evidence that Little was performing badly. Nonetheless, Kim also testified that Little did his duties on the BIU well and had no negative performance evaluations. 340:20-341:2.

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 181. | In late June 2023, after his IPM meetings, Little received a hand-written letter stating: "Jeff – Fuck you and your Jesus. Your hate won't be tolerated. We know where you live and work. You better pay respect to our pride flag or we will fuck you up. We know about your cute Little girls and aren't afraid to rape the shit out of them if you don't honor us. You are a facist [sic] pig and you deserve to die[.]"Little reported it to the county police and his family | Disputed. This fact lacks context. Plaintiff reported this letter to the Ventura County Sheriff, not any law enforcement agency under the control of the County of Los Angeles. (Dkt. 115-2 (Little Dep. Tr.) 46:22-47:2.) |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | relocated for approximately a week. But he was contacted by the police a year later and told the case was closed for being inconclusive. (Little Dep. pp.187:12-189:17, Ex. 1077; Power Dep. pp.58:5-59:22; Kim Dep. pp.278:4-282:4.) | |

181. Moving Party's Response:

Defendants' response is immaterial. It does not dispute the content of the letter Little received. Fact 181 does not state that Little reported it to a Los Angeles county enforcement agency. Defendants proffer no evidence contravening fact 181 and so fact 181 is not in dispute. *See* L.R. 56-4.

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 182. | A security incident report was filed because of the letter. (Sturdivant Dep. p.143:22-23; Kim Dep. pp.279:15-280:13.) | Undisputed. |
| 183. | Sturdivant is unaware of any steps taken to investigate Captain Little's threat except for filing a security incident report. (Sturdivant Dep. p.149:8-13; Crum Dep. pp.162:2-163:12.) | Disputed. The cited evidence does not support this statement. Sturdivant does not remember if other steps were taken. (Dkt. 115-2 (Little Dep. Tr.) 149:8-13.) Further disputed because Plaintiff improperly cited to Chief Sturdivant and Captain Crum's 30(b)(1) testimony where the County designated Julia Kim to testify as a 30(b)(6) witness about this letter. She provided testimony on the Fire Department's investigation process, explaining that a security incident report was filed, and a copy is sent to the "sheriff's department's special |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
|  |  | operations unit." Among other things, Chief Kim also explained that where the incident is criminal in nature, such as here, law enforcement handles the investigation. Plaintiff instead cited to Chief Sturdivant's 30(b)(1) testimony on her personal recollection of events. (Portnoi Decl., Ex. H (Kim Dep. Tr.) 278:7-286:15.) Objection, foundation, and personal knowledge. (*See* Defs.' Stmt. Evid. Objs. ¶183.) |
| 183. Moving Party's Response: Defendants' response is immaterial because Defendants raise only an immaterial distinction between being Sturdivant being "unaware" and Sturdivant not remembering. Defendants' response is also nonresponsive because fact 183 is limited to Sturdivant's knowledge ||
| 184. | On July 16, 2024, the Fire Department presented to Captain Little an intent to suspend letter. (3d Am. Verif. Cmplt. ¶86, Ex. 18; Kim Dep. pp.283:16-284:1, Ex. 85 p.1.) | Undisputed. |
| 185. | On October 24, 2024, Captain Little was notified that he was being suspended for 15 calendar days without pay, from Nov. 11, 2024 through November 25, 2024, for his "removal of the Progress Pride Flag (PPF) from three lifeguard stations" in Area 17 on June 21, 2023. (Little | Undisputed. |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
|  | Dep. Ex. 1089 at p.1, LAC-0001831; Kim Dep. p.296:10–17, Ex. 58 p.2 (LAC-0000054).) |  |
| 186. | The suspension notice asserted that Captain Little's actions in removing the PPFs constituted inappropriate conduct toward others and discrimination based on sexual orientation, in violation of the Department's Standards of Behavior, the County Policy of Equity, and L.A. County's Flag Policy, including EA-231, and Civil Service Rule 18.031. (Little Dep. Ex. 1089 at p.2.) | Disputed to the extent Plaintiff relies on an incomplete citation. Undisputed otherwise. |

186. Moving Party's Response:

Ex. 1089 p. 2 lists multiple bases for violations, which continue to page 4. Defendants do not raise a material dispute.

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 187. | According to Chief Boiteux, the difference between Captain Little's actions and a similar action taken by Captain Crum, at the request of Chiefs Uehara and Lester, to lower an already-flying PPF in Area 17 on June 1, 2023, was the number of people upset about Captain Little taking down the PPF. (Boiteux Dep. p.175:4-25.) | Disputed. This fact lacks context. Immediately prior to the cited portion of Chief Boiteux's testimony, Chief Boiteux states: "I don't do discipline. Discipline is done through deputy chiefs and above. And that conversation between him and Chief Lester and Chief Uehara, you need to ask them." (Dkt. 121-5 (Boiteux Dep. Tr.) 174:25- 175:3.) Objection, foundation. (*See* Defs.' Stmt. Evid. Objs. ¶187.) |

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 187. Moving Party's Response: Defendants' response only provides immaterial additional information. Further, the immaterial information Defendants do provide is misleading, because Boiteux provided this testimony after being asked "Do you think Greg Crum should have been disciplined for taking down the PPF?" Boiteux 174:23-24. Boiteux has also served with the county full time for nearly 40 years, as a lifeguard, captain, section chief, assistant chief, and chief lifeguard. Boiteux 18:1-19. And so even if Boiteux does not do discipline now, his thoughts on a disciplinary decision are well informed by a long career. Further, Boiteux has the power to threaten disciplinary action, as shown by Boiteux's order to Little that threatened "disciplinary action, which could include suspension and/or discharge from County service." Kim Dep. Ex. 28 at p.1 (LAC-0000034). | | |
| 188. | The suspension notice stated "[T]he mission of the Los Angeles County Fire Department is to protect lives, the environment, and property by providing prompt, skillful, and cost-effective fire protection, and life safety services." (Little Dep. Ex. 1089 at p.5.) | Undisputed. |
| 189. | The suspension notice also stated "four [sic] of the Department's core values include caring, community, and teamwork." (Little Dep. Ex. 1089 at p.5.) | Undisputed. |
| 190. | The suspension notice stated that "[c]aring and community entail committing to showing compassion for all members of the community and celebrating diversity." (Little Dep. Ex. 1089 at p.5.) | Undisputed. |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 191. | The suspension notice asserted that "[b]y removing the PPFs, [Captain Little] sent a message that sought to diminish the visibility of the LGBTQ+ community, which showed a lack of care for the struggles and identities for that community. Additionally, [Captain Little's] removal of the PPFs was nonconductive to teamwork, because it undermined the County's commitment to fostering a diverse and inclusive work environment for all employees." (Little Dep. Ex. 1089 at pp.5-6.) | Undisputed. |
| 192. | The suspension notice asserted that Captain Little's actions "created an uncomfortable working environment for [his] staff," and that Captain Little's "actions were also disruptive, as [his] removal of the PPFs created confusion and discord among people who witnessed the incident." (Little Dep. Ex. 1089 at p.6.) | Undisputed. |
| 193. | The suspension noticed asserted that Captain Little's actions "sent a message of disregard for your chain of command," and "demonstrated to his subordinates that if they do not agree with management's instructions, they need not comply."(Little Dep. Ex. 1089 at p.6.) | Undisputed. |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 194. | The suspension notice made no mention of the fact that Captain Little had made clear his actions were motivated by his sincerely held religious beliefs. (Little Dep. Ex. 1089.) | Disputed. The cited evidence does not support the assertion that Plaintiff had made clear his decision to take down and remove already flying PPFs was motivated by sincerely held religious beliefs. |

194. Moving Party's Response:

Defendants' response confirms the suspension notice does not discuss Little's motivations. This fact is not in dispute.

Further Defendants did not dispute that Little was motivated by his religious beliefs in taking down the Area 17 PPFs. *See* fact 135 herein. ███████

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 195. | The suspension notice did not attempt to explain how enforcement of County policies against Captain Little's actions complied with state- and federal-law requirements (including those of the First Amendment) against religious discrimination, including requirements to accommodate employees' religious practices absent undue hardship. (Little Dep. Ex. 1089.) | Disputed to the extent this misconstrues the purpose of the October 24, 2024 suspension notice and the circumstances of Plaintiff's suspension. |

195. Moving Party's Response:

Defendants' response is limited to legal arguments and does not proffer any contravening evidence. This fact is not in dispute. *See* L.R. 56-4.

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 196. | The suspension notice made no mention of the religious accommodation agreed to with Captain Little on June 19, 2023, even though the Investigation Reports reference the accommodation 57 times. (3d Am. Verif. Cmplt. ¶90.) | Disputed. This misconstrues the cause of Plaintiff's suspension. Plaintiff was suspended for taking down PPFs, which was not discussed as one of his requested religious accommodation requests. Defendants further dispute that a religious accommodation was agreed to on June 19, 2023. (Dkt. 116-21 (2023 IPM report).) Objection, best evidence. (*See* Defs.' Stmt. Evid. Objs. ¶196.) |

196. Moving Party's Response:

Defendants' response is immaterial. It does not provide evidence that the suspension notice did mention the religious accommodation, or that the Investigation Reports did not reference the accommodation 57 times.

Further, Defendants proffer no evidence that Little's accommodation was an ADA accommodation or any other type of accommodation besides religious. Instead, they offer only Dkt. 116-21 (2023 IPM report), which records that the IPM panel "would address the request for religious accommodation" and that Little was "informed that this request was discussed with your chain of command and that the department is able to accommodate you."

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 197. | While asserting that Captain Little "showed a lack of care for the struggles and identities of" the "LGBTQ+ community," the suspension did not explain how the County's actions towards Captain Little showed a "care for the struggles and identities" of religious employees like Captain Little in violation of County policy. (Little | Disputed. This misconstrues the cause of Plaintiffs suspension. Plaintiff was suspended for taking down PPFs. Defendants further dispute that a religious accommodation was agreed to on June 19, 2023. (Dkt. 116-21 (2023 IPM report).) |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | Dep. Ex. 1089 at p.5.) | |

197. Moving Party's Response:

Defendants' response is immaterial. It does not provide evidence that the suspension notice did not make the assertions of fact 197, or did explain how the County cared for religious employees. Defendants only state that Little was suspended for taking down PPFs, but fact 197 does not discuss this.

Further, Defendants proffer no evidence that Little's accommodation was an ADA accommodation or any other type of accommodation besides religious. Instead, they offer only Dkt. 116-21 (2023 IPM report), which records that the IPM panel "would address the request for religious accommodation" and that Little was "informed that this request was discussed with your chain of command and that the department is able to accommodate you."

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 198. | The suspension notice did not explain how disregarding Captain Little's previously granted religious accommodation and <br><br> concerns regarding the requirement that captains "ensure" PPFs were flying in their areas "foster[ed] a diverse and inclusive work environment for" religious employees like Captain Little, as required by County policy. (Little Dep. Ex. 1089 at pp. 5-6.) | Disputed. This misconstrues the cause of Plaintiffs suspension. Plaintiff was suspended for taking down PPFs. Defendants further dispute that a religious accommodation was agreed to on June 19, 2023. (Dkt. 116-21 (2023 IPM report).) |

198. Moving Party's Response:

Defendants' response is immaterial. It does not provide evidence that the suspension notice did explain how the County fostered a diverse or inclusive work environment for religious employees. Defendants only state that Little was

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | suspended for taking down PPFs, but fact 198 does not discuss this. Further, Defendants proffer no evidence that Little's accommodation was an ADA accommodation or any other type of accommodation besides religious. Instead, they offer only Dkt. 116-21 (2023 IPM report), which records that the IPM panel "would address the request for religious accommodation" and that Little was "informed that this request was discussed with your chain of command and that the department is able to accommodate you." | |
| 199. | ████████████ | ██ |
| 200. | Captain Little dutifully served the 15-day suspension. (3d Am. Verif. Cmplt. ¶87.) | Undisputed that Captain Little served the 15-day suspension. (3d Am. Verif. Cmplt. ¶87.) |
| | 200. Moving Party's Response: Defendants' response is immaterial. This fact is not in dispute. | |
| 201. | Beginning in March 2024, well in advance of June 2024, Captain Little sent the County multiple letters renewing his request to be religiously accommodated from any requirement | Disputed that Plaintiff sent multiple "letters" as opposed to emails. (Dkt. 116-22 (2024 E-Mail Thread) at LAC-0000499 .) Further, as that email thread makes clear, the County |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | to ensure PPFs were flying, but the County ignored his communications until May 23, 2024, when the Fire Department suggested holding another IPM. (3d Am. Verif. Cmplt. ¶¶92-100.) | did not "ignore" Plaintiffs communications. Rather, EA-232 was published on May 30, 2024. (Dkt. 116-3 (EA-232), at LAC-0000039.) As the County informed Plaintiff during his May 29, 2024 1PM, there would be a new EA, and the parties agreed to reschedule a follow up IPM accordingly. (Dkt. 116-23 (2024 IPM Notes), at LAC-0001483.) |

201. Moving Party's Response:

Defendants are incorrect because Little did send letters. *See* 3d Am. Verif. Cmplt. at ¶¶ 93-94, Exs. 21-22.

Defendants' response is also nonresponsive. Defendants present no evidence that the County replied to Little prior to May 23, 2024. Defendants' own evidence confirms that the first response on May 23 suggested an IPM. Dkt. 116-22 (2024 E-Mail Thread) at LAC-0000506.

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 202. | On May 29, 2024, Captain Little attended an IPM with Nuanes-Delgadillo, Chief Kyle Power, and union representative Captain Crum; Captain Little explained his continued need for a religious accommodation, and Nuanes-Delgadillo said she would present the information to more senior officials, and scheduled a follow-up IPM for May 31, 2024. (3d Am. Verif. Cmplt. ¶¶101-02; Power Dep. pp.81:17-82:25.) | Undisputed. |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 203. | EA-231's significant "gray area" sparked "a lot of feedback" from County employees that led to a revised policy in 2024 (EA-232). (Lester Dep. pp.51:21-52:2.) | Disputed. Chief Lester did not state that EA-231 had significant gray area. Rather, he stated that "there was a lot of feedback from the first year as far as trying to make it more specific so that it didn't put as much of a gray area to us as managers …." (Dkt. 119-4 (Lester Dep. Tr.) 51:21-52:2.) |

203. Moving Party's Response:

Defendants' response is immaterial. Even Defendants' cited testimony shows that Lester regarded EA-231 to have gray area and needed to be more specific, and that the revised policy was based on feedback. Lester added, "[it] was still, from what I remember, pretty vague." Lester 52:3.

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 204. | On Thursday, May 30, 2024, the Fire Department issued a new directive relating to Pride Month, titled "EA-232." EA-232 still required captains to "[e]nsure" PPFs are flown, but only on flagpoles able to fly three flags. (3d Am. Verif. Cmplt. ¶¶103-04, Ex. 24; Power Dep. pp.30:11-31:7.) | Undisputed. |
| 205. | Insofar as EA-232 requires flying the PPF, it states that "compliance is not optional," without stating how non-optional compliance is consistent with federal and state law requirements to accommodate employees' religious practices absent undue hardship. (3d Am. Verif. | Undisputed. |

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | Cmplt., Ex. 24.) | |
| 206. | EA-232 took captains' duties under EA-231, and shared them with section chiefs pursuant to EMM-9. (Boiteux Dep. pp.306:21-307:13, Ex. 75.) | Disputed. EA-232 provided guidelines for Fire Captains and Unit Supervisors, and noted that "A separate EMM will be distributed to chief officers and division managers outlining, their responsibilities." (Dkt. 116-3 (EA-232), at LAC-0000039.) |

206. Moving Party's Response:

EA-231 required Captains to "[e]nsure flags are received and flown throughout the month of June." Dkt 116-2 (LAC-0000036). EA-232 required Fire Captains to "[e]nsure PPFs are flown throughout the month of June at Department facilities within their respective jurisdiction." Dkt. 116-3 (LAC-0000039). But EMM-9 states that *chiefs* shall "ensure PPFs are flown throughout the month of June at Department facilities." Boiteux Ex. 75. Defendants therefore have not proffered evidence giving rise to a genuine dispute that the duties given to captains under EA-231 were also given to chiefs in EMM-9.

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 207. | Upon receiving EA-232 in 2024, Captain Little discussed with his immediate supervisor, Chief Power, his religious conflict with supervising the PPF flown at Zuma headquarters (which Captain Little was responsible for on Wednesdays) and whether flagpoles in Area 33 (which Captain Little was responsible for on Thursdays through Saturdays) were excluded from flying the PPF under EA-232. (Little Dep. pp.74:20-76:1; | Undisputed. |

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | Power Dep. pp.49:19-50:7, 83:6-15.) | |
| 208. | Captain Little also reached to union president Captain Crum on May 31, 2024, in order to find out which locations were would fly all three flags. | Undisputed. |
| 209. | Captain Little understood that according to EA-232 Attachment A's plain terms, clasps should be added to fly three flags, including the PPF, only if could be done so "safely," that is, without a flag touching another structure, which violates flag etiquette. (Little Dep. pp.80:8-81:5, Ex. 1066; Power Dep. p.31:19-22; Oliva Dep. p.49:15-50:25.) | Undisputed. |
| 210. | On May 31, 2024, Captain Little attended the follow-up IPM meeting in which Nuanes-Delgadillo explained that the Fire Department would offer Captain Little a partial religious accommodation from the requirement to fly PPFs—i.e., by agreeing that Captain Little did not need to raise or lower the PPFs himself, since that occurred outside the hours of his work shifts. (3d Am. Verif. Cmplt. ¶107, Ex. 25.) | Undisputed. |
| 211. | However, Nuanes-Delgadillo stated that Captain Little would still be | Undisputed. |

114

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|-----|---------------------------------------------------------|----------------------------------------------|
|  | responsible for ensuring the PPF is flying during his work shift—in the same manner as had been required of captains under EA-231, if any flagpole in Captain Little's assigned area could accommodate three flags in accord with EA-232—which Captain Little said he still could not agree to. (*Id.*) |  |
| 212. | Because the County's beaches are so large and lifeguards are spaced far from each other, lifeguards—including captains—regularly communicate with each other using cell phones, radios, or other devices. (3d Am. Verif. Cmplt. ¶110; Gottschalk Dep. pp.31:19-32:2.) | Undisputed. |
| 213. | Lifeguards can use Motorola radios, cell phones, or official Department phones to contact their section headquarters on any given day. (Gottschalk Dep. p.35:2-14.) | Undisputed. |
| 214. | The section headquarters for Area 17 is at Hermosa Beach, which is in Area 15. (Gottschalk Dep. pp.34:12-38:19; 46:9.) | Undisputed. |
| 215. | Nuanes-Delgadillo also explained that the Fire Department would not offer Captain Little a standing religious accommodation, but rather | Undisputed. |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | he must renew his request in advance of every June, and go through additional IPMs accordingly. (3d Am. Verif. Cmplt. ¶111.) | |
| 216. | Nuanes-Delgadillo also denied Captain Little's request to suspend the Direct Order requiring him to ensure the raising of PPFs and Captain Little's request to remove the same from his personnel file—confirming that the County is still denying Captain Little a religious accommodation from the obligation on captains to ensure PPFs are flying when applicable, even though the County has numerous lifeguard areas with flagpoles that cannot safely accommodate three flags and thus which are not flying the PPF. (3d Am. Verif. Cmplt. ¶112.) | Disputed. Ms. Nuanes-Delgadillo informed Plaintiff that the direct order "is not something [she] would discuss" in the context of an IPM. (Dkt. 115-13 (Nuanes-Delgadillo Dep. Tr.) 149:13-22, 182:19-25.) |

216. Moving Party's Response:

Defendants' response draws an immaterial distinction between Nuanes-Delgadillo refusing to suspend the order and refusing to discuss the order, because in either phrasing, the IPM did not suspend the Direct Order.

Defendants proffer no evidence that the Direct Order is no longer in effect or has been removed from Little's personnel file, or that Little has a religious accommodation. Fact 216 remains undisputed.

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 217. | Under EA-232, "many smaller stations" across the county are not flying the PPF. (Lester Dep. pp.53:16-54:2; Power Dep. pp.33:22- | Disputed. This fact lacks context. Chief Lester testified that there were "many smaller stations that were not able to accommodate three flags as it |

116

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | 34:1.) | was directed, and that change EA from '23 to '24. So, yes, in 2024, there would not have been as many stations that would have been able to fly it. ..." (Dkt. 119-4 (Lester Dep. Tr.) 53:16-54:1.) |

217. Moving Party's Response:

Defendants' response only provides immaterial context and ultimately does not dispute that there are many smaller stations not flying the PPF—indeed more stations in 2024 than in 2023 "based on the addition of the California flag to the EA." Lester 53:25.

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 218. | The County is still denying Captain Little's requested religious accommodation even though Chief Lester acknowledged that as someone who participates in IPMs "all the time," if HR asked him if he could move a lifeguard captain to a beach or station where the PPF isn't flying, he "would probably say we could move someone to [that] location," though he would need to consider its impact on other employees. (Lester Dep. pp.56:15-57:24, 119:18-19.) | Disputed. Nothing in the cited material supports the notion that "the County is still denying Captain Little's requested religious accommodation." (Dkt. 119-4 (Lester Dep. Tr.) 56:15-57:25, 119:18-19.) |

218. Moving Party's Response:

Defendants do not dispute Lester's testimony. Little's 3d Am. Verif. Cmplt. ¶¶113-115 establish that Little only had an "effective" accommodation from his direct report, not from the County.

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| 219. | As part of the IPM accommodation process, the County can "do a lot of things for operational reasons and for other reasons" in order to accommodate an employee. (Lester Dep. p.59:1-11.) | Undisputed. |
| 220. | Over the weekend of June 1-2, 2024, Captain Little worked with his direct report, Chief Kyle Power to secure an effective accommodation for the month of June 2024 in which he was assigned to two locations: three days per week at Area 33 (comprising Nocholas Beach, Point Dume Beach, and Malibu Beach), and one day per week at Zuma headquarters. Captain Little, working with Chief Power, confirmed that none of the lifeguard stations in Area 33 could fly three flags. And regarding the Zuma Headquarters, Captain Little was able to find another captain who was willing to trade shifts for a location where the PPF would not be flying. (3d Am. Verif. Cmplt. ¶¶113-14; Little Dep. pp.294:8-295:9; Power Dep. pp.85:2-86:5.) | Disputed. The County held IPMs with Plaintiff on both May 29, 2024 and May 31, 2024, and during the 2024 IPM, informed Plaintiff that he could swap with other captains to work where the PPF would not be flown. Defendants' Separate Statement of Uncontroverted Facts ¶¶136-137. |

220. Moving Party's Response:

Defendants' response is nonresponsive because fact 220 does not state anything about the County's actions. Defendants' response does not present any evidence disputing that Little worked with his direct report, where his June 2024 assignments were, how he decided on those assignments, or how he arranged to not

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Uncontroverted Fact and Supporting Evidence | Defendants' Response and Supporting Evidence |
|---|---|---|
| | work at the Zuma Headquarters. Defendants' purported fact 137 is itself disputed. *See* Dkt. 155-1 at ¶ 137. Power told Little that trade requests must be pursued on his own and not through an accommodation. Dkt. 116-23 at 5 (LAC-0001486). Defendant cannot rest their dispute on a fact that is itself disputed. | |
| 221. | Any effective accommodation secured by working with Chief Power is not standing and must be renewed annually. (3d Am. Verif. Cmplt. ¶115.) | Undisputed. |
| 222. | Chief Boiteux agreed that this accommodation was acceptable from the department's perspective, and there has been no cost to the department resulting from Captain Little's shift trades. (Boiteux Dep. p.315:1-4.) | Undisputed. |

119

| No. | Defendant's Additional Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|---|
| 223. | In March 2023, the Board of Supervisors ("Board") passed a motion to fly the Progress Pride Flag ("PPF") during June at Los Angeles County ("County") facilities where the American and California flags are displayed and to explore ways the PPF can be flown at all County facilities to show support for LGBTQ+ communities during Pride Month. **SSUF No. 1**<br><br>Dkt. 116 (Kim Decl.) ¶3, Dkt. 116-1 (Kim Decl. Ex. A) (Board of Supervisors resolution)<br><br>Third Amended Complaint ("TAC") ¶19[1] | Undisputed that in March, 2023 the Board of Supervisors passed a motion regarding the Progress Pride Flag. Disputed as to the accuracy of Defendants' paraphrase of the March, 2023 motion because the motion, directed "the Internal Services Department to raise the Progress Pride Flag at the Kenneth Hahn Hall of Administration, and Los Angeles County facilities where the American and California Flags are displayed during the month of June..." [Emphasis added.] *See* Kim Decl. ¶3, Ex. A [ECF No. 116-1] Undisputed at to the remainder of Paragraph 1. |
| 224. | The County Fire Department implemented the motion in May 2023 through a policy memorandum, EA-231, which provided guidance about which Department facilities with flagpoles should fly the PPF.<br><br>**SSUF No. 2**<br><br>Dkt. 115-11 (Oliva Dep. Tr.) 32:17-24 Dkt. 116 (Kim Decl.) ¶4<br><br>Dkt. 116-2 (Kim Decl. Ex. B) (EA- | Disputed as to whether the County Fire Department in fact implemented the Board motion through its adoption of EA-231, because EA-231 was inconsistent with the Board motion. The Board motion directed the Internal Services Department to raise the PPF at "Los Angeles County facilities" "where the American and California Flags are displayed during the month of June". *See* Kim |

[1] Defendants chose to refile many of their purported facts and supporting evidence as "supplemental" facts. Plaintiff repeats his disputes for these facts here for the court's convenience. For new facts submitted by Defendants, Plaintiff provides new disputes where appropriate.

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Defendant's Additional Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|---|
| | 231)<br><br>TAC¶20 | Decl. ¶3, Ex. A [ECF No. 116-1]<br><br>EA-231 provides in relevant part, "[c]lasps for two flags: Fly the U.S. flag at peak and the PPF directly below" and "[c]lasps for three flags: Fly the U.S. flag at peak, State, and then PPF." *See* Kim Decl. ¶4, Ex. B [ECF No. 116-2] The Board motion did not dictate the removal of the California state flag in order to fly the PPF.<br><br>Jonna MSJ Opp. Decl., Ex. B, Boiteux Dep., p. 55:24- 56:1-20)<br><br>Undisputed as to the assertion that EA-231 provided guidance about which Department flagpoles should fly the PPF. |
| 225. | Typically, flags are flown using clasps, which are small metal devices that can be added to a flagpole. **SSUF No. 7**<br><br>Dkt. 115-8 (McMillon Dep. Tr.) 36:18-19, 224:8-18<br><br>Dkt. 115-15 (Crum Dep. Tr.) 204:19-205:24<br><br>Dkt. 115-5 (Lester Dep. Tr.) 78:7-19 Dkt. 116-8 (Lester Decl.) ¶7, Dkt. 116-12 (Lester Decl. Ex. D) (halyard clasp) | Undisputed. |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Defendant's Additional Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|---|
| 226. | In early June 2023, the PPF was not flown at some Lifeguard Division facilities where it could safely be flown.<br><br>**SSUF No.14**<br><br>Dkt. 115-10 (O'Brien Dep. Tr.) 68:1-4<br>Dkt. 115-8 (McMillon Dep. Tr.) 38:18-39:1, 123:18-124:2, 213:18-214:22<br><br>Dkt. 115-15 (Crum Dep. Tr.). 79:15-24<br><br>Dkt. 115-5 (Lester Dep. Tr.) 49:14-50:2, 68:9-19<br><br>Dkt. 115-9 (Uehara Dep. Tr.) 153:24-154:8, 157:4-16 | Disputed. The cited testimony fails to support the assertion for which it is cited. It provides: "During the course of that month, we received phone calls from the board offices inquiring as to why facilities weren't flying the flag in accordance with their approved flag policy."<br><br>Further, even if the cited testimony could be deemed supportive of the fact for which it is cited, it is inadmissible hearsay. *See* Obj. No. 1 [ECF 155-3]. |
| 227. | The PPF was not flown at some Lifeguard Division facilities because the flagpoles were under construction.<br><br>Dkt. 116-9 (email correspondence between Chiefs Lester and Boiteux) at LAC-0001965. | Disputed, because LAC-0001965 shows that only one facility required maintenance. Two facilities, Torrence Back Station and RCO, did not have flags. Dkt. 116-9 (LAC-0001965). |
| 228. | Beachgoers, lifeguards, and County Supervisors raised concerns about the PPF not consistently flying.<br><br>**SSUF No.15**<br><br>Dkt. 115-10 (O'Brien Dep. Tr.) 68:1-4<br>Dkt. 115-8 (McMillon Dep. Tr.). | Undisputed as to County Supervisors and lifeguards but disputed as to beachgoers because the citations fail to support the assertion that "[b]eachgoers … raised concerns about the PPF not consistently flying." |

122

| No. | Defendant's Additional Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|---|
| | 123:18-124:2, 124:12-21<br><br>Dkt. 115-5 (Lester Dep. Tr.) 68:9-19<br><br>Dkt. 115-20 (Boiteux Decl.) ¶¶3-4, Dkt. 115-21 (Boiteux Decl. Ex. A) (email correspondence between Chief Boiteux and County Department of Beaches & Harbors) at LAC-0000028, Dkt. 115-22; (Boiteux Decl. Ex. B) (email correspondence between Chief Boiteux and Supervisor Mitchell's Deputy of Constituent Engagement) at LAC-0001357<br><br>Dkt. 116-26 (O'Brien Decl.) ¶¶4-5, Dkt. 116-28 (O'Brien Decl. Ex. B) (June 12, 2023 major incident report), Dkt. 116-29 (O'Brien Decl. Ex. C )(June 20, 2023 major incident report) | |
| 229. | The Board put extreme pressure on Fire Chief Anthony Marrone to comply with the Board's motion regarding the flying of the PPF.<br><br>**SSUF No.16**<br><br>Dkt. 115-10 (O'Brien Dep. Tr.) 68:1-70:11<br><br>Dkt. 115-14 (Boiteux Dep. Tr.) 154:14-22<br><br>Dkt. 115-8 (McMillon Dep. Tr.) 124:12-21<br><br>Dkt. 115-12 (Mayfield Dep. Tr. Vol. | Disputed. The only cited testimony which supports the assertion that the Board put "extreme pressure" on the Fire Chief to comply with the Board's motion regarding the flying of the PPF" was Chief Boiteux's inadmissible hearsay testimony. Chief Boiteux testified, "I was not part of any meetings, but I heard there was a meeting at the fire headquarters with all executive team members regarding the Pride flag compliance. The fire chief was under extreme pressure from the Board of Supervisors because the Fire Department was not complying |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Defendant's Additional Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|---|
|  | II) 170:14-171:23<br><br>Dkt. 115-5 (Lester Dep. Tr.) 68:20-69:22 | with board direction." Boiteux Dep., 154:14-22 [ECF No. 115-14 at 38]. *See* Obj. No. 2.<br><br>The balance of the citations indicate that there were inquiries from Board staff members about compliance but they fail to support the "extreme pressure" assertion and, with the exception of the testimony of Mayfield, who was presented as a 30(b)(6) witness, are in any event similarly inadmissible hearsay. *See* Obj. Nos. 3-6. |
| 230. | On June 20, 2023 at 7:23 p.m. Chief Marrone requested an "immediate Teams meeting for all Chief Deputies and Deputy Chiefs."<br><br>**SSUF No.17**<br><br>Dkt. 116-13 (Mayfield Decl.) ¶4<br><br>Dkt. 116-15 (Mayfield Decl. Ex. B) (email correspondence between Chief Marrone, chief deputies, and deputy chiefs) at LAC-0003223 | Undisputed. |
| 231. | At the June 20 2023 meeting that Chief Marrone had with his Chief Deputies and Deputy Chiefs, Chief Marrone relayed the importance of compliance with the Board's motion and EA-231 through the chain of command. | Undisputed that Chief Marrone had a meeting with his Chief Deputies and Deputy Chiefs regarding compliance with the Board of Supervisor's directive regarding flying the progress flag during the month of June. Mayfield Dep., pp. |

124

| No. | Defendant's Additional Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|---|
| | **SSUF No.18**<br><br>Dkt. 115-14 (Boiteux Dep. Tr.) 151:1-154:22<br><br>Dkt. 115-10 (O'Brien Dep. Tr.) 77:17-25<br><br>Dkt. 115-12 (Mayfield Dep. Tr. Vol. II) 170:21-171:3, 171:18-25,172:21-173:9, 180:12-14<br><br>Dkt. 115-5 (Lester Dep. Tr.) 68:9-69:22 | 170-171. [ECF No 115-12 at 30-31]<br><br>Disputed to the extent that the meeting also included discussion of "the importance of compliance," as opposed to merely passing on a directive, because the cited testimony does not support that assertion. |
| 232. | On June 20, 2023 at 7:14 p.m., Chief Marrone sent an email with "Progress Pride Flag FAQs" attached, asking his Chief Deputies to share it with their managers.<br><br>**SSUF No.19**<br><br>Dkt. 115-10 (O'Brien Dep. Tr.) 83:18-84:12<br><br>Dkt. 116-13 (Mayfield Decl.) ¶3, Dkt. 116-14 (Mayfield Decl. Ex. A) (email correspondence between Chief O'Brien, Chief Mayfield, and division chiefs) at LAC-0002035-36<br><br>Dkt. 116-26 (O'Brien Decl.) ¶6, Dkt. 116-30 (O'Brien Decl. Ex. D) (email correspondence between Chief O'Brien, Chief Mayfield, and division chiefs) at LAC-0002036 | Undisputed. |

| No. | Defendant's Additional Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|---|
| 233. | On June 20, 2023 at 8:20 p.m., Chief Deputy Jon O'Brien forwarded this email to his Deputy Chiefs, calling for 100% compliance with EA-231 and the Board motion.<br><br>**SSUF No. 20**<br><br>Dkt. 116-13 (Mayfield Decl.) ¶3, Dkt. 116-14 (Mayfield Decl. Ex. A) (email correspondence between Chief O'Brien, Chief Mayfield, and division chiefs) at LAC-0002035-36<br><br>Dkt. 116-26 (O'Brien Decl.) ¶6, Dkt. 116-30 (O'Brien Decl. Ex. D) (email correspondence between Chief O'Brien, Chief Mayfield, and division chiefs) at LAC-0002036<br><br>Dkt. 115-10 (O'Brien Dep. Tr.) 83:18-84:12 | Undisputed that on June 20, 2023 at 8:20 p.m., Chief Deputy Jon O'Brien forwarded this email to his Deputy Chiefs.<br><br>Disputed that Fact No. 20 accurately summarizes the content of the email, which provided, "Informational FAQ to pass along to your A C's as they engage with their stations to achieve 100% compliance with flying the PRIDE Progress Flag as outlined in EA-231." |
| 234. | On June 20, 2023 at 8:34 p.m., Deputy Fire Chief William Mayfield forwarded Chief O'Brien's email to his Assistant Chiefs and indicated that the absence of clasps is "not an excuse" not to fly the PPF.<br><br>**SSUF No. 21**<br><br>Dkt. 116-13 (Mayfield Decl.) ¶3, Dkt. 116-14 (Mayfield Decl. Ex. A) (email correspondence between Chief O'Brien, Chief Mayfield, and division chiefs) at LAC-0002035-36 | Undisputed. |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Defendant's Additional Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|---|
| | Dkt. 116-26 (O'Brien Decl.) ¶6, Dkt. 116-30 (O'Brien Decl. Ex. D) (email correspondence between Chief O'Brien, Chief Mayfield, and division chiefs) at LAC-0002035 | |
| 235. | Deputy Fire Chief Mayfield is the bureau commander for three Fire Department divisions, including the Lifeguard Division, the EMS Division, and all training aspects within the Department.<br><br>**SSUF No. 22**<br><br>Dkt. 115-12 (Mayfield Dep. Tr.) 26:7-8, 24:8-16<br><br>Dkt. 116-13 (Mayfield Decl.) ¶2 | Undisputed. |
| 236. | Neither Chief O'Brien nor Chief Mayfield knew details about Plaintiff's request for a religious accommodation at the time of the 100% compliance directive.<br><br>Portnoi Decl. Ex. A (O'Brien Dep. Tr.) 73:6-14<br><br>Dkt. 115-12 (Mayfield Dep. Tr.) 122:22-123:15 | Disputed, because O'Brien testified to his involvement in evaluating the religious accommodation request and his communication with Kim, but not his knowledge at the time of the 100% compliance mandate. O'Brien Dep., 73:6-14.<br><br>Mayfield testified to the content of the accommodation request and his conversations with Kim, but not his knowledge at the time of the 100% compliance mandate. Mayfield Dep., 122:22-123:15. |

| No. | Defendant's Additional Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|-----|------------------------------------------------------|---------------------------------------------|
| 237. | The evening of June 20, 2023, Chief Fernando Boiteux conveyed Chief O'Brien's 100% directive to Chief Adam Uehara and the lifeguard section chiefs, including Chief Arthur Lester, instructing them to ensure that the PPF was raised at all fixed flagpoles under their management regardless of whether clasps were currently installed and report to him the next morning if any PPFs were missing or could not be flown. **SSUF No. 23** Dkt. 116-8 (Lester Decl.) ¶3, Dkt 116-9 (Lester Decl. Ex. A) (email correspondence between Chief Boiteux, Chief Uehara, and section chiefs) at LAC-0001966 Dkt. 115-20 (Boiteux Decl.) ¶¶5-6, Dkt. 115-23 (Boiteux Decl. Ex. C) (email correspondence between Chief Boiteux, Chief Uehara and section chiefs) at LAC-0001343, Dkt. 115-24 (Boiteux Decl. Ex. D) (text message correspondence between Chief Boiteux, Chief Uehara, and section chiefs) at LAC-0001495 Dkt. 115-12 (Mayfield Dep. Tr. Vol. II) 175:13-176:22, 185:24-186:11 Dkt. 115-5 (Lester Dep. Tr.) 69:4-22, 73:5-16 Dkt. 115-9 (Uehara Dep. Tr.) 148:19- | Undisputed. |

| No. | Defendant's Additional Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|---|
| | 149:19 | |
| 238. | At 8:00 a.m. on June 21, 2023, Chief Lester began ensuring that the fixed flagpoles at the sites he supervised were flying the PPF by either raising them himself or confirming that they were being flown. **SSUF No. 24** Dkt. 115-5 (Lester Dep. Tr.) 69:23-70:20, 74:12-77:9 Dkt. 115-13 (Gottschalk Dep. Tr.) 197:13-16, 224:3-7 | Undisputed in significant part; disputed as to "fixed" because the cited deposition testimony does not refer to "fixed flag poles." |
| 239. | Chief Lester visited all sites other than those on Catalina Island personally, including Area 17 (Dockweiler North, Dockweiler South, and El Segundo). **SSUF No. 25** Dkt. 115-5 (Lester Dep. Tr.) 75:4-77:9 Dkt. 115-13 (Gottschalk Dep. Tr.) 197:13-16, 224:3-7 | Undisputed. |
| 240. | On June 18, 2023, Plaintiff emailed Chiefs Boiteux, Kyle Power, and Danielle McMillon to request to be exempt from EA-231. **SSUF No. 27** Dkt. 115-8 (McMillon Dep. Tr.) 27:4- | Undisputed. |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Defendant's Additional Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
| --- | --- | --- |
| | 11<br><br>Dkt. 116-16 (McMillon Decl.) ¶2, Dkt. 116-17 (McMillon Decl. Ex. A) (email correspondence between Plaintiff, Captain Crum, and Chiefs Boiteux, McMillon, Power, Uehara, and Kim) at LAC-0001549<br><br>TAC ¶¶42-43 | |
| 241. | Chiefs Power and McMillon were Plaintiff's usual supervisors in late June 2023.<br><br>**SSUF No. 28**<br><br>Dkt. 115-2 (Little Dep. Tr.) 26:9-14 | Undisputed. |
| 242. | At the June 19 IPM, Plaintiff requested that he either not be required to fly the PPF at Will Rogers Beach or be reassigned to a site where he would not be responsible for flying the PPF.<br><br>**SSUF No. 33**<br><br>Dkt. 115-2 (Little Dep. Tr.) 120:5-121:4<br><br>Dkt. 115-7 (Nuanes-Delgadillo; Dep. Tr.) 163:18-164:5, 219:3-219:14<br><br>Dkt. 115-8 (McMillon Dep. Tr.) 118:14-119:1<br><br>Dkt. 115-15 (Crum Dep. Tr.) 100:13- | Undisputed to the extent Captain Little sought an exemption from personally flying the PPF at Will Rogers Beach.<br><br>Disputed that Plaintiff attempted to keep the PPF from being flown to stifle the County's message.<br><br>Captain Little testified that, upon reading EA-231 and the accompanying flow chart, he determined that the flagpole at Will Rogers Beach would not fly a PPF.<br><br>The PPF did not fly at that location for the first three days of June 2023. |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Defendant's Additional Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|---|
| | 25, 101:8-16<br><br>Dkt. 115-9 (Uehara Dep. Tr.) 130:6-12<br><br>Dkt. 116-19 (Nuanes-Delgadillo Decl.) ¶¶3-4, Dkt. 116-20 (Nuanes-Delgadillo Decl. Ex. A) (2023 IPM notes) at LAC-0001488, Dkt. 116-21 (Nuanes-Delgadillo Decl. Ex. B) (2023 IPM report) at LAC-0000374 | Little Dep., pp.61:5- 63:4.<br><br>Kim Decl. ¶3, Ex. B, EA-231 [ECF No. 116-2] |
| 243. | At the June 19 IPM, Plaintiff was told that there was a PPF flying at Zuma Headquarters which is near Area 33 and where the Area 33 Captain's office is located, but that he would likely not be responsible for ensuring it was flying it because the Area 30 and Area 34 Captains also work out of that location and could ensure that it was flown.<br><br>**SSUF No. 39**<br><br>Dkt. 115-2 (Little Dep. Tr.) 121:13-121:15, 127:24-127:25<br><br>Dkt. 115-7 (Nuanes-Delgadillo Dep. Tr.) 170:1-170:15<br><br>Dkt. 115-8 (McMillon Dep. Tr.) 109:18-110:4, 111:20-25, 112:12-17, 126:18-127:8, 187:24-188:18, 190:14-17<br><br>Dkt. 115-15 (Crum Dep. Tr.) 101:17-102:24, 104:10-106:2<br><br>Dkt. 115-9 (Uehara Dep. Tr.) 95:2- | Undisputed. |

| No. | Defendant's Additional Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|---|
| | 96:6<br><br>Dkt. 116-19 (Nuanes-Delgadillo Decl.) ¶¶3-4, Dkt. 116-20 (Nuanes-Delgadillo Decl. Ex. A) (2023 IPM notes) at LAC-0001488-89, Dkt.116-21 (Nuanes-Delgadillo Decl. Ex. B) (2023 IPM report) at LAC-0000374 | |
| 244. | At the June 19 IPM, it was explained to Plaintiff that he may still need to ensure that the PPF was flown at Area 33.<br><br>**SSUF No. 40**<br><br>Dkt. 115-2 (Little Dep. Tr.) 128:3-129:22<br><br>Dkt. 115-7 (Nuanes-Delgadillo Dep. Tr.) 212:25-213:2<br><br>Dkt. 115-8 (McMillon Dep. Tr.) 109:18-110:4, 111:20-25, 112:12-17, 126:18-127:8, 187:24-188:18, 189:5-14, 190:14-17<br><br>Dkt. 115-15 (Crum Dep. Tr.) 101:17-102:24, 104:10-106:2<br><br>Dkt. 116-19 (Nuanes-Delgadillo Decl.) ¶¶3-4, Dkt. 116-20 (Nuanes-Delgadillo Decl. Ex. A) (2023 IPM notes) at LAC-0001488-89, Dkt. 116-21 (Nuanes-Delgadillo Decl. Ex. B) (2023 IPM report) at LAC-0000374 | Undisputed. |

| No. | Defendant's Additional Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
| --- | --- | --- |
| 245. | At the June 19 IPM, Plaintiff agreed to work at Area 33.<br><br>**SSUF No. 42**<br><br>Dkt. 115-2 (Little Dep. Tr.) 127:24-128:1<br><br>Dkt. 115-7 (Nuanes-Delgadillo Dep. Tr.) 120:13-122:6<br><br>Dkt. 115-8 (McMillon Dep. Tr.) 126:18-127:8<br><br>Dkt. 115-15 (Crum Dep. Tr.). 104:10-106:2<br><br>Dkt. 116-19 (Nuanes-Delgadillo Decl.) ¶¶3-4, Dkt. 116-20 (Nuanes-Delgadillo Decl. Ex. A) (2023 IPM notes) at LAC-0001488-89, Dkt.116-21 (Nuanes-Delgadillo Decl. Ex. B) (2023 IPM report) at LAC-0000374<br><br>TAC ¶¶49, 52 | Undisputed. |
| 246. | At the June 19 IPM, Plaintiff never requested to lower the PPF.<br><br>**SSUF No. 43**<br><br>Dkt. 115-2 (Little Dep. Tr.) 132:8-16<br><br>Dkt. 115-9 (Uehara Dep. Tr.). 285:6-9<br><br>Dkt. 116-19 (Nuanes-Delgadillo Decl.) ¶¶3-4, Dkt. 116-20 (Nuanes-Delgadillo Decl. Ex. A) (2023 IPM notes) at LAC-0001488-89, Dkt.116- | Undisputed.<br><br>Disputed as irrelevant. *See* Obj. No. 15. |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Defendant's Additional Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|---|
| | 21 (Nuanes-Delgadillo Decl. Ex. B) (2023 IPM report) at LAC-0000374 <br><br> Dkt. 115-19 (Portnoi MSJ Decl. Ex. S) (Plaintiff's Responses to Requests for Admission) at 6-7 | |
| 247. | Chief McMillon offered to obtain a recall exemption for Plaintiff for June 21, 2023. <br><br> **SSUF No. 48** <br><br> Dkt. 115-8 (McMillon Dep. Tr.) 186:17-23, 187:24-188:6 <br><br> Dkt. 115-13 (Gottschalk Dep. Tr.) 25:24-26:1, 42:3-9 <br><br> Dkt. 116-16 (McMillon Decl.) ¶3, Dkt. 116-18 (McMillon Decl. Ex. B) (text message correspondence between Plaintiff and Chiefs McMillon and Uehara) at LITTLE.00481 | Undisputed. |
| 248. | Lifeguards have two recall exemptions they can use per year, which allow them to decline a recall shift when they get recalled. <br><br> **SSUF No. 49** <br><br> Dkt. 115-15 (Crum Dep. Tr.) 107:9-20 | Undisputed. |
| 249. | Chief Uehara believed that a lifeguard's (other than Plaintiff) | Disputed, because Uehara explained that Little's request for a religious |

134

| No. | Defendant's Additional Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|---|
| | "acting out" regarding the PPF was "orchestrated." Dkt. 115-9 (Uehara Dep. Tr.) 116:14-117:9 | accommodation was orchestrated because it "felt peculiar at that time that it's happening midmonth and not at the beginning of the month." Uehara Dep., 119:21-24. |
| 250. | Chief Uehara was confused why Plaintiff requested a religious accommodation in mid-June 2023 from a policy that had been announced in May 2023 and foreshadowed in March 2023. Dkt. 115-9 (Uehara Dep. Tr.) 109:21-110:16, 115:1-116:3 | Disputed to the extent that Little is presumed to have known about the policy in March 2023, because Uehara stated that "no one was given those documents per se" in March. Uehara Dep., 115:11-16. |
| 251. | After his June 19 IPM, Plaintiff declined Chief McMillon's recall exemption offer and coordinated to switch shifts with another captain so that he would work at Area 17 on June 21, 2023. **SSUF No. 50** Dkt. 115-2 (Little Dep. Tr.) 152:2-153:24 170:13-170:23 Dkt. 115-8 (McMillon Dep. Tr.) 186:17-23, 187:24-188:6 Dkt. 116-16 (McMillon Decl.) ¶3, Dkt. 116-18 (McMillon Decl. Ex. B) (text message correspondence between Plaintiff and Chiefs McMillon and Uehara) at | Disputed as to the order of events. McMillon testified that she had given Little a Wellness Recall Exemption, but Little declined because he had already agreed to switch shifts so he would work at Area 17. Otherwise undisputed. *See* McMillon Dep., 186:18-187:6 [ECF No. 115-9 at 92- 93]. |

135

| No. | Defendant's Additional Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|---|
| | LITTLE.00481<br><br>TAC ¶62 | |
| 252. | Plaintiff's shifts in June 2023, including on June 21, 2023, started at 10:00 a.m.<br><br>**SSUF No. 54**<br><br>Dkt. 115-2 (Little Dep. Tr.) 143:4-13, 194:5-12 | Undisputed as to the general 10:00 a.m. start time of Plaintiff's shifts in June 2023, but disputed as to a 10:00 a.m. start time on June 21, 2023. *See* Little Dep., p.194:5-12 [ECF No. 115-2 at 122]. |
| 253. | Plaintiff arrived at the beach on June 21, 2023 to find the PPF flying at Dockweiler South and Dockweiler North.<br><br>**SSUF No. 56**<br><br>Dkt. 115-2 (Little Dep. Tr.) 201:12-16<br><br>Dkt. 115-13 (Gottschalk Dep. Tr.) 68:19-21<br><br>Dkt. 115-26 (Gottschalk Decl.)¶¶2-3, Dkt. 115-27 (Gottschalk Decl. Ex. A) (July 5, 2023 Gottschalk CPOE interview) at 2:53-3:20, 6:30-38 (Lodged, Under Seal), 115-28 (Gottschalk Decl. Ex. B) (Aug. 23 2023 Gottschalk CPOE interview) at 7:30-46 (Lodged, Under Seal)<br><br>Dkt. 115-4 (Portnoi MSJ Decl. Ex. B) (Plaintiff CPOE Interview) at 12:40-52, 17:07-10 (Lodged, Under Seal) | Undisputed but misleading by omission. *See* Additional Facts [ECF 155-1]. |

| No. | Defendant's Additional Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|---|
| | Dkt. 116-31 (Stormer Decl.) ¶3, Dkt. 133-6 (Stormer Decl. Ex. A) (CPOE Investigative Report) at LAC-0000192, LAC-0000196 (Under Seal) | |
| 254. | Chief Lester had ensured that the PPF was raised at Dockweiler South and Dockweiler North on June 21 before Plaintiff arrived at work. **SSUF No. 57** Dkt. 115-2 (Little Dep. Tr.) 202:12-18 Dkt. 115-13 (Gottschalk Dep. Tr.) 111:22-112: 18 Dkt. 115-5 (Lester Dep. Tr.) 69:23-70:7, 75:4-77:9 Dkt. 115-9 (Uehara Dep. Tr.). 283:23-284:7 | Undisputed but misleading by omission. *See* Additional Facts [ECF 155-1]. |
| 255. | OLS Lauren Gottschalk was Plaintiff's direct report on June 21. **SSUF No. 58** Dkt. 115-13 (Gottschalk Dep. Tr.) 26:2-5, 171:23-172:3, 187:23-188:5 | Undisputed. |
| 256. | Plaintiff asked OLS Gottschalk if she would be okay with him removing the PPF at Dockweiler South **SSUF No. 59** | Undisputed. |

137

| No. | Defendant's Additional Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|-----|------------------------------------------------------|----------------------------------------------|
|     | Dkt. 115-2 (Little Dep. Tr.) 206:14-206:17<br><br>Dkt. 115-13 (Gottschalk Dep. Tr.) 86:13-15<br><br>Dkt. 116-8 (Lester Decl.) ¶5, Dkt. 116-11 (Lester Decl. Ex. C) (CPOE Complaint) at LAC-0000180 | |
| 257. | OLS Gottschalk told Plaintiff that Chief Lester had ensured the PPF was raised that morning, that she was fine with the PPF up, and that she was concerned about receiving conflicting orders.<br><br>**SSUF No. 60**<br><br>Dkt. 115-2 (Little Dep. Tr.) 206:5-207:10<br><br>Dkt. 115-13 (Gottschalk Dep. Tr.) 86:13-15, 87:23-88:24, 101:3-7, 101:22-103:4; Dkt. 133-2 (Gottschalk Dep. Tr.) 282:2-10 (Under Seal)<br><br>Dkt. 115-5 (Lester Dep. Tr.) 144:13-145:2<br><br>Dkt. 116-8 (Lester Decl.) ¶5, Dkt. 116-11 (Lester Decl. Ex. C) (CPOE complaint) at LAC-0000180<br><br>Dkt. 116-31 (Stormer Decl.) ¶3, Dkt. 133-6 (Stormer Decl. Ex. A) (CPOE Investigative Report) at LAC-0000192, LAC-0000196 (Under Seal) | Undisputed but misleading by omission. *See* Additional Facts [ECF 155-1].<br><br>To the extent this fact is offered to prove Gottschalk's state of mind and that Gottschalk was actually concerned about conflicting orders (as opposed to merely that she made the statement to Little), the testimony is inadmissible under Fed. R. Evid. 803(3) as a then-existing state of mind. *See* Obj. No. 8. |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Defendant's Additional Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|---|
| 258. | Plaintiff took down the Dockweiler South PPF himself.<br><br>**SSUF No. 61**<br><br>Dkt. 115-2 (Little Dep. Tr.) 204:22-205:21<br><br>Dkt. 116-8 (Lester Decl.) ¶5,Dkt. 116-11 (Lester Decl. Ex. C) (CPOE complaint) at LAC-0000180<br><br>Dkt. 116-31 (Stormer Decl.) ¶3, Dkt. 133-6 (Stormer Decl. Ex. A) (CPOE Investigative Report) at LAC-0000192, LAC-0000196 (Under Seal) | Undisputed but misleading by omission. *See* Additional Facts [ECF 155-1]. |
| 259. | Plaintiff then drove to Dockweiler North and El Segundo, removing the PPF at both sites.<br><br>**SSUF No. 62**<br><br>Dkt. 115-2 (Little Dep. Tr.) 200:2-10, 204:17-205:24, 210:3-13<br><br>Dkt. 115-13 (Gottschalk Dep. Tr.) 85:20-22, 86:13-15<br><br>Dkt. 116-31 (Stormer Decl.) ¶3, Dkt. 133-6 (Stormer Decl. Ex. A) (CPOE Investigative Report) at, LAC-0000196 (Under Seal)<br><br>Dkt. 115-26 (Gottschalk Decl.) ¶3, 115-28 (Gottschalk Decl. Ex. B) (Aug. 23, 2023 Gottschalk CPOE interview) | Undisputed but misleading by omission. *See* Additional Facts [ECF 155-1]. |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Defendant's Additional Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|---|
| | at 12:51-13:18 (Lodged, Under Seal)<br><br>Dkt. 115-4 (Portnoi MSJ Decl. Ex. B) (Plaintiff CPOE Interview) at 28:12-49<br><br>Dkt. 115-29 (Hastings Decl.) ¶¶4-5, Dkt. 115-30 (Hastings Decl. Ex. A) (video from El Segundo Beach) (Lodged) | |
| 260. | Plaintiff did not have an accommodation to lower the PPF at any of these three sites.<br><br>Dkt. 115-19 (Plaintiff's Responses to Requests for Admission) at 8-9<br><br>Dkt. 115-2 (Little Dep. Tr.) 121:10-18<br><br>Portnoi Decl., Ex. B (Boiteux Dep. Tr.) 260:15-17<br><br>Dkt. 116-21 (Nuanes-Delgadillo Decl. Ex. B) (2023 IPM Summary) at 2-3 | Disputed to the extent that a religious accommodation was necessary to lower the PPF at any site, given that Crum removed a PPF without a religious accommodation.<br><br>Jonna MSJ Opp. Decl., Ex. A, Little Dep. Ex. 1070 at p.1<br><br>Jonna MSJ Opp. Decl., Ex. B, Boiteux Dep. 88:11-89:13, 90:4-10, Ex. 65<br><br>Crum Dep. 202:19-207:23 [ECF No. 115-15 at 102-107] |
| 261. | Chiefs Lester, Uehara, and Boiteux learned of Plaintiffs conduct taking down the PPFs later in the day on June 21, 2023.<br><br>**SSUF No. 65**<br><br>Dkt. 115-14 (Boiteux Dep. Tr.) 170:9-19 | Undisputed. |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Defendant's Additional Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|---|
| | Dkt. 115-5 (Lester Dep. Tr.) 105:24-106:11, 108:13-109:18, 111:15-25<br><br>Dkt. 115-9 (Uehara Dep. Tr.) 172:7-173:1 | |
| 262. | Chief Lester had not known that Plaintiff requested a religious accommodation until after Plaintiff lowered the PPFs on June 21, 2023.<br><br>**SSUF No. 66**<br><br>Dkt. 115-5 (Lester Dep. Tr.) 106:13-14 | Undisputed. |
| 263. | Chief Lester had not known that Plaintiff would be working at Area 17 until after Plaintiff lowered the PPFs on June 21, 2023.<br><br>**SSUF No. 67**<br><br>Dkt. 115-5 (Lester Dep. Tr.) 102:15-103:3 | Disputed. Captain Little testified that "a section chief absolutely should know what captains are working in his area. So either [Lester] was incompetent and not doing his job or he did know" in advance that Little would be working at Area 17 on June 21, 2023. Jonna MSJ Opp. Decl., Ex. A, Little Dep. 227:9-12. |
| 264. | Chief Boiteux had not known that Plaintiff would be working at Area 17 until after Plaintiff lowered the PPFs on June 21, 2023.<br><br>Dkt. 115-14 (Boiteux Dep. Tr.) 128:23-129:3<br><br>Portnoi Decl. Ex. B (Boiteux Dep. Tr.) | Undisputed. |

141

| No. | Defendant's Additional Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|---|
| | 134:19-24 | |
| 265. | Chiefs Lester, Uehara, and Boiteux determined, after receiving guidance from the Department of Human Resources, that Plaintiff did not have an accommodation to work only at sites where the PPF was not flown.<br><br>**SSUF No. 68**<br><br>Dkt. 115-14 (Boiteux Dep. Tr.) 171:7-20<br><br>Dkt. 115-5 (Lester Dep. Tr.). 114:1-115:16, 117:4-5 | Disputed. In collaboration with the Human Resource Department, Chiefs Lester, Uehara, and Boiteux rescinded the prior accommodation offered to Captain Little.<br><br>Jonna MSJ Opp. Decl., Ex. B, Boiteux Dep. pp.143:22-144:11.<br><br>Lester Dep. 114:1-117:5 [ECF No. 110-6 at 18-21] |
| 266. | Chief Lester went to Area 17 to meet with Plaintiff and re-raise the PPF.<br><br>**SSUF No. 69**<br><br>Dkt. 115-13 (Gottschalk Dep. Tr.) 165:24-166:7, 274:25-275:6<br><br>Dkt. 115-5 (Lester Dep. Tr.) 118:7-19, 121:23-122:2<br><br>Dkt. 115-9 (Uehara Dep. Tr.) 177:25-178:3 | Undisputed. |
| 267. | When they spoke on June 21, 2023, Chief Lester asked if Plaintiff would re-raise the PPF.<br><br>**SSUF No. 75** | Disputed. Chief Lester ordered Plaintiff to put the flag up.<br><br>Little Depo., p.242:15-16 [ECF No. 115-2 at 156] |

142

| No. | Defendant's Additional Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|---|
| | Dkt. 115-2 (Little Dep. Tr.) 242:15-17<br><br>Dkt. 115-5 (Lester Dep. Tr.) 125:6-9, 125:17-18, 126:6-15 | |
| 268. | When he spoke with Chief Lester on June 21, 2023, Plaintiff refused to re-raise the PPF, citing his religious beliefs.<br><br>**SSUF No. 76**<br><br>Dkt. 115-2 (Little Dep. Tr.) 242:15-17<br><br>Dkt. 115-5 (Lester Dep. Tr.) 126:16-18<br><br>Dkt. 115 (Portnoi MSJ Decl.) ¶2, Dkt. 115-1 (Portnoi MSJ Decl. Ex. A) (text message communications between Plaintiff and Captain Crum) at LITTLE.00257, LITTLE.01083 | Undisputed. |
| 269. | After Plaintiff refused to re-raise the PPF on June 21, 2023, and cited his religious beliefs, Chief Lester said that he would re-raise it himself and ensure that someone else lowered it at the end of the day.<br><br>**SSUF No. 77**<br><br>Dkt. 115-2 (Little Dep. Tr.) 242:24-243:5<br><br>Dkt. 115-5 (Lester Dep. Tr.) 126:19-127:25, 138:16-139:1, 140:8-19 | Undisputed. |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Defendant's Additional Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|---|
| | Dkt. 115 (Portnoi MSJ Decl.) ¶2, Dkt. 115-1 (Portnoi MSJ Decl. Ex. A) (text message communications between Plaintiff and Captain Crum) at LITTLE.00257, LITTLE.01083 | |
| 270. | On June 21, 2023, Plaintiff did not re-raise the PPFs in Area 17 after speaking with Chief Lester.<br><br>**SSUF No. 78**<br><br>Dkt. 115-2 (Little Dep. Tr.) 243:1-8<br><br>Dkt. 115-5 (Lester Dep. Tr.) 126:23-25, 127:9-10 | Undisputed. |
| 271. | After Plaintiff sent Chief Uehara an email on June 21, 2023, asking to use his benefit time, Chief Uehara was concerned that Plaintiff using benefit time might cause recalls, and thus granted Plaintiff's request only to the extent it would not cause a recall.<br><br>Dkt. 115-9 (Uehara Dep. Tr.) 255:15-257:10 | Disputed to the extent that Uehara meaningfully granted Little's request.<br><br>Uehara's condition made it difficult or even impossible for Little to use benefit time due to summer vacations. Uehara himself described the difficulty of trying to use benefit time for June, in the context of McMillon proposing benefit time early in the process. Uehara Dep., 98:16-100:2. Little explained that during "that time of year, we know if someone's taking a day off, that's going to be a recall." Little Deo., 282:21-24. Little also knew the voluntary overtime list had been exhausted and that recalls were already happening. Little Dep., |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Defendant's Additional Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|---|
| | | 283:3-6. Further, policy required that section chiefs must deny benefit days when available personnel cannot fill the position. Little Dep., 277:15-18. Uehara therefore had a duty to know whether Little would be able to use benefit time. The fact that Little could not shows that Uehara's ersatz approval was effectively a denial. |
| 272. | Lifeguards bid on benefit time annually, so their schedules are determined during the preceding calendar year.<br><br>**SSUF No. 91**<br><br>Dkt. 115-2 (Little Dep. Tr.) 275:16-276:10<br><br>Dkt. 115-14 (Boiteux Dep. Tr.) 230:19-231: 11<br><br>Dkt. 115-15 (Crum Dep. Tr.) 49:6-51:6, 61:12-62:14<br><br>Dkt. 115-5 (Lester Dep. Tr.) 55:13-17<br><br>Dkt. 115-9 (Uehara Dep. Tr.) 99:8-14, 234:16-20, 236:22-237:7<br><br>Dkt. 116 (Kim Decl.) ¶7, Dkt. 116-5 (Kim Decl. Ex. E) ("L Manual") at LAC-0003412 | Undisputed. |
| 273. | The County is subject to a memorandum of understanding | Undisputed. |

145

| No. | Defendant's Additional Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|-----|------------------------------------------------------|----------------------------------------------|
|     | ("MOU") between itself and the L.A. County Lifeguard Association ("LACoLA") the County's collective bargaining unit. **SSUF No. 93** Dkt. 115-17 (Kim Dep. Tr.) 129:10-19, 132:4-9 Dkt. 115-10 (O'Brien Dep. Tr.) 119:17-19 Dkt. 115-15 (Crum Dep. Tr.) 42:19-43:6 Dkt. 116 (Kim Decl.) ¶6, Dkt. 116-4 (Kim Decl. Ex. D) (Memorandum of Understanding) |                                              |
| 274. | The MOU is akin to a collective bargaining agreement, signed by the President of LACoLA and the Chief Executive Officer of the County. **SSUF No. 94** Dkt. 115-17 (Kim Dep. Tr.) 129:10-19, 132:4-9 Dkt. 115-6 (Power Dep. Tr.) 66:4-10 Dkt. 116 (Kim Decl.) ¶6, Dkt. 116-4 (Kim Decl. Ex. D) (Memorandum of Understanding) at LITTLE.00856 | Undisputed. |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Defendant's Additional Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|---|
| 275. | There are minimum staffing requirements for captains in summer months due to public safety concerns.<br><br>**SSUF No. 97**<br><br>Dkt. 115-14 (Boiteux Dep. Tr.) 116:20-23<br><br>Dkt. 115-8 (McMillon Dep. Tr.) 62:16-63:5, 101:12-14, 103:13-104:5, 104:12-17, 105:8-19, 105:25-105:2<br><br>Dkt. 115-15 (Crum Dep. Tr.) 47:1-10<br><br>Dkt. 115-12 (Mayfield Dep. Tr. Vol. I) 134:21-135:5, 135:25-136:10<br><br>Dkt. 115-6 (Power Dep. Tr.) 38:3-5<br><br>Dkt. 115-9 (Uehara Dep. Tr.) 99:15-20, 207:10-22, 243:11-21, 244:7-14 | Disputed on the basis that the cited evidence does not support the statement.<br><br>Boiteux testified that there are general minimum staffing requirements to operate beaches, but did not discuss minimum staffing requirements for captains during summer months.<br><br>Boiteux Depo., p.116:20-23 [ECF No. 115-14 at 19]<br><br>McMillon testified to the recall exemption policy, an unexplained minimum staffing requirement, a maximum amount of time off per rank each week, a need for staffed beaches, how recalls operate to fill shifts, and the existence of minimum staffing, but did not discuss minimum staffing requirements for captains during summer months.<br><br>McMillon Depo., pp.62:16-63:5 [ECF No. 115-8 at 20], 101:12-14 [ECF No. 115-8 at 36], 103:13-104:5 [ECF No. 115-8 at 38-39], 104:12-17 [ECF No. 115-8 at 39], 105:8-19 [ECF No. 115-8 at 40], 106:1-2 [ECF No. 115-8 at 41]<br><br>Crum testified that recalls are how open schedules are backfilled for public safety, but did not discuss minimum staffing requirements for |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Defendant's Additional Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|---|
| | | captains during summer months. Crum Depo., p.47:1-10 [ECF No. 115-15 at 19] Mayfield testified that he did not know a vacancy or vacation schedule for a particular day, and discussed a hypothetical situation involving vacancies, but did not discuss minimum staffing requirements for captains during summer months. Mayfield Depo., pp.134:21-135:5 [ECF No. 115-12 at 16-17], 135:25-136:10 [ECF No. 115-12 at 17-18] Power mentioned the existence of minimum staffing levels, but did not discuss minimum staffing requirements for captains during summer months. Power Depo., p.38:3-5 [ECF No. 115-6 at 15] |
| 276. | Lifeguards serve a critical public safety function, requiring constant vigilance and coverage at County beaches. Dkt. 115-14 (Boiteux Dep. Tr.) 172:2-4 | Disputed because the cited testimony does not support that lifeguards must be "constantly" vigilant, as opposed to "staying" vigilant as Boiteux testified. Boiteux Depo., p.172:2-4 [ECF No. 115-14] |
| 277. | Many lifeguard employees take | Disputed. Although summer is a |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Defendant's Additional Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|---|
| | preapproved vacation time in the summer.<br><br>**SSUF No. 98**<br><br>Dkt. 115-2 (Little Dep. Tr.) 72:25-73:13<br><br>Dkt. 115-8 (McMillon Dep. Tr.) 62:16-63:5, 103:13-104:5<br><br>Dkt. 115-15 (Crum Dep. Tr.) 62:19-63:2, 106:20-108:17<br><br>Dkt. 115-9 (Uehara Dep. Tr.) 204:8-11, 258:9-13 | popular time for lifeguard employees to request vacation time, testimony does not show that many lifeguard employees in fact take vacation time in the summer, due to vacation restrictions.<br><br>Little testified that vacations are one factor, alongside injuries, that cause recalls during the summer, but did not state that many lifeguard employees take vacation time during the summer. Little Depo., pp.72:25-73:13 [ECF No. 115-2 at 44-45]<br><br>McMillon testified as to how the recall exemption pilot program worked and how benefit time works, but did not discuss summer vacation time at all.<br><br>McMillon Depo., pp.62:16-63:5 [ECF No. 115-8 at 20-21], 103:13-104:5 [ECF No. 115-8 at 38-39]<br><br>Crum testified that vacation is more sought after during the holidays and summer than other times of year, and that recalls are based on seniority, but did not state that many lifeguard employees do in fact take vacation time during the summer. Crum Depo., pp.62:19-63:2 [ECF No. 115-15 at 34-35], 108:13-17 [ECF No. 115-15 at 66] Uehara testified that employees bid in advance for summertime vacation, |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Defendant's Additional Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|---|
| | | and that he wanted to avoid letting many people take time off during the summertime, but did not state that many lifeguard employees do in fact take vacation time during the summer. Uehara Depo., pp.204:8-11 [ECF No. 115-9 at 112], 258:9-13 [ECF No. 115-9 at 150] |
| 278. | Recalls impinge on employees' physical and mental health. **SSUF No.100** Dkt. 115-9 (Uehara Dep. Tr.) 92:23-93:2, 99:15-100:2, 258:4-258:13, 260:17-22 Dkt. 115-5 (Lester Dep. Tr.) 158:22-159:5 Dkt. 115-17 (Kim Dep. Tr.) 114:17-116:19 Dkt. 116 (Kim Decl.) ¶8, Dkt. 116-6 (Kim Decl. Ex. F) (Wellness Recall Exemption Pilot Program), Dkt. 116-7 (Kim Decl. Ex. G) (Addressing Fire Department Workplace Trauma or Potential Workplace Trauma resolution) | Disputed. Chief Uehara did not testify to impacts of recalls on physical and mental health. Uehara instead testified regarding consideration of operations and safety issues in granting an accommodation, fairness to other captains that would also like to take time off, and captains not wanting to work more recalls, but did not link recalls with health. Uehara Depo., pp.92:23-93:2 [ECF No. 115-9 at 33-34], 99:12-20 [ECF No. 115-9 at 40], 258:4-8 [ECF No. 115-9 at 150], 260:17-22 [ECF No. 115-9 at 152] Lester testified that people get frustrated by recalls, but did not link recalls with health. Lester Depo., p.159:4-5 [ECF No. 110-6 at 39] Kim's testimony is disputed as hearsay, because Kim only testified that "you can ask any firefighter. It always ties back into the recalls." |

| No. | Defendant's Additional Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|---|
| | | *See* Obj. No. 9.<br><br>Kim Depo., pp.114:17-116:19 [ECF No. 115-17 at 10-12] |
| 279. | Recalls, which cause employees to miss time at home with their families, cause significant mental health issues.<br><br>Dkt. 115-17 (Kim Dep. Tr.) 114:17-116:2 | Disputed to the extent this implies that lifeguards suffer significant mental health issues due exclusively to recalls, since Kim only testified that "you can ask any firefighter. It always ties back into the recalls."<br><br>Kim Depo., pp.114:17-116:19 [ECF No. 115-17 at 10-12].<br><br>Further disputed because Kim testified to the murder, suicide, and attempted murder in the firefighter community in 2021, but offered no evidence of mental health issues linked to lifeguard captain recalls in 2023.<br><br>Kim's testimony repeating statements from the LACoLA union in 2021 are hearsay and do not show increased recalls nor a link between increased recalls and mental health issues among lifeguard captains. *See* Obj. No. 9, 10. |
| 280. | On June 22, 2021, the Board issued a Board Motion, "Addressing Fire Department Workplace Trauma or Potential Workplace Trauma," in response to a murder and attempted murder, and subsequent suicide, | Undisputed but misleading by omission. *See* Additional Facts.<br><br>Disputed as irrelevant. *See* Obj. No. 21. |

151

| No. | Defendant's Additional Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|---|
| | perpetrated by a firefighter against two other firefighters.<br><br>**SSUF No.101**<br><br>Dkt. 115-17 (Kim Dep. Tr.) 114:17-118:20<br><br>Dkt. 116 (Kim Decl.) ¶8, Dkt. 116-7 (Kim Decl. Ex. G) (Addressing Fire Department Workplace Trauma or Potential Workplace Trauma resolution) | |
| 281. | The Board Motion directed the Fire Department's Executive Staff to draft a report that, in relevant part, addressed how to "[r]educ[e] staff recall due to vacancies and injury vacancies by at least 50% by March 1, 2022"<br><br>**SSUF No.102**<br><br>Dkt. 115-17 (Kim Dep. Tr.) 114:17-118:20<br><br>Dkt. 116 (Kim Decl.) ¶8, Dkt. 116-7 (Kim Decl. Ex. G) (Addressing Fire Department Workplace Trauma or Potential Workplace Trauma resolution) at LAC-0003272-73 | Undisputed but misleading by omission. *See* Additional Facts.<br><br>Disputed as irrelevant. *See* Obj. No. 22. |
| 282. | LACoLA, the lifeguard union, approached the County with concerns that were just as dire as those affecting firefighters. | Disputed, because this is inadmissible hearsay. *See* Obj. No. 10 [ECF 155-3]. |

152

| No. | Defendant's Additional Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|---|
| | Dkt. 115-17 (Kim Dep. Tr.) 114:17-116:2 | |
| 283. | Chief Lester spoke with OLS Gottschalk on June 21, 2023 regarding Plaintiff's lowering of the PPFs.<br><br>**SSUF No.105**<br><br>Dkt. 115-13 (Gottschalk Dep. Tr.) 165:24-166:7<br><br>Dkt. 115-5 (Lester Dep. Tr.) 128:1-129:12 | Undisputed. |
| 284. | When they spoke, OLS Gottschalk informed Chief Lester that Plaintiffs lowering the PPF had been in public view.<br><br>**SSUF No.106**<br><br>Dkt. 115-13 (Gottschalk Dep. Tr.) 144:17-20, 166:12-167:5, 196:13-197:2; Dkt. 133-2 (Gottschalk Dep. Tr.) 199:10-15, 201:1-12 (Under Seal)<br><br>Dkt. 115-5 (Lester Dep. Tr.) 128:12-129:12 | Undisputed. |
| 285. | In 2012, Plaintiff took an oath "to obey the laws, ordinances of ... the United States, California, Los Angeles County, and [to] be faithful to the department."<br><br>Dkt. 115-14 (Boiteux Dep. Tr.) 260:2- | Undisputed. |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Defendant's Additional Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|---|
| | 8 | |
| 286. | Chief Lester believed that Plaintiff's conduct made OLS Gottschalk uncomfortable and constituted a potential violation of the County Policy of Equity ("CPOE").<br><br>**SSUF No.107**<br><br>Dkt. 115-5 (Lester Dep. Tr.) 129:13-130:6, 134:2-19, 134:24-135:7<br><br>Dkt. 115-13 (Gottschalk Dep. Tr.) 171:15-18 | Undisputed to the extent Defendant Chief Lester contends that he believed Plaintiff's conduct made Gottschalk "uncomfortable" and potentially violated the CPOE. |
| 287. | Chief Lester is a mandated reporter of violations of the CPOE.<br><br>**SSUF No.108**<br><br>Dkt. 115-16 (Stormer Dep. Tr.) 44:6-45:15<br><br>Dkt. 115-5 (Lester Dep. Tr.) 129:13-20, 130:2-6, 134:24-135:7 | Undisputed. |
| 288. | Failure to file a CPOE complaint as a mandated reporter can lead to discipline.<br><br>**SSUF No.109**<br><br>Dkt. 115-5 (Lester Dep. Tr.) 135:4-7<br><br>Dkt. 115-16 (Stormer Dep. Tr.) 53:4-16 | Undisputed to the extent that a given situation gives rise to the duty of a Mandatory Reporter to report. |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Defendant's Additional Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|---|
| 289. | It is not appropriate for individual supervisors to decide whether religious beliefs justify a violation of the CPOE, as this determination is left to the County Equity Oversight Panel.<br><br>Dkt. 133-3 (Stormer Dep. Tr.) 28:11-18 (Under Seal) | Disputed. The cited testimony does not support this proposition. |
| 290. | Chief Lester filed a CPOE complaint the evening of June 21, 2023.<br><br>**SSUF No.110**<br><br>Dkt. 115-5 (Lester Dep. Tr.) 130:16-131: 1<br><br>Dkt. 116-8 (Lester Decl.) ¶5, Dkt. 116-11 (Lester Decl. Ex. C) (CPOE complaint) | Undisputed that Chief Lester filed a CPOE complaint against Captain Little on June 21, 2023. |
| 291. | The CPOE complaint that Chief Lester filed related to Plaintiffs request that OLS Gottschalk lower the PPF at Dockweiler South and Plaintiffs subsequent lowering of the PPF.<br><br>**SSUF No. 111**<br><br>Dkt. 116-8 (Lester Decl.) ¶5, Dkt. 116-11 (Lester Decl. Ex. C) (CPOE complaint) at LAC-0000180-81 | ███████████████████ |
| 292. | The CPOE complaint that Chief Lester filed did not relate to Plaintiff's inability to fulfill his job | Undisputed. |

155

| No. | Defendant's Additional Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|---|
| | requirements.<br><br>**SSUF No.112**<br><br>Dkt. 116-8 (Lester Decl.) ¶5, Dkt. 116-11 (Lester Decl. Ex. C) (CPOE complaint) at LAC-0000180-81 | |
| 293. | One lifeguard took a video of Plaintiff lowering the PPP at El Segundo on June 21, 2023.<br><br>**SSUF No.114**<br><br>Dkt. 115-9 (Uehara Dep. Tr.) 177:2-14, 290:3-23<br><br>Dkt. 115-29 (Hastings Decl.) ¶5, Dkt. 115-30 (Hastings Decl. Ex. A) (video from El Segundo Beach) (Lodged)<br><br>Dkt. 116-34 (Uehara Decl.) ¶3, Dkt. 116-35 (Uehara Decl. Ex. A) (text message correspondence between ocean lifeguard and Chief Uehara) | Disputed. The testimony cited by Defendants refers only to an "employee," not a lifeguard.<br><br>Uehara Depo., p.177:7-14 [ECF No. 115-9 at 96] |
| 294. | On June 22, 2023, Chief Boiteux received from his chain of command a Direct Order addressed to Plaintiff requiring him to comply with EA-231.<br>**SSUF No.116**<br><br>Dkt. 115-14 (Boiteux Dep. Tr.) 253:23-256:9<br><br>Dkt. 115-20 (Boiteux Decl.) ¶7, Dkt. 115-25 (Boiteux Decl. Ex. E) (Direct | Disputed as mischaracterizing the evidence. The statement implies that Chief Boiteux was not involved in the decision to issue the Direct Order, but he was.<br><br>Boiteux Depo., pp.254:9-256:9 [ECF No. 115-14 at 65-67]<br><br>Julia Kim testified that she was consulted by lifeguard management—probably Uehara or |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Defendant's Additional Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|-----|-------------------------------------------------------|----------------------------------------------|
|     | Order) | Boiteux. Jonna MSJ Opp. Decl., Ex. C, Kim Depo., pp.248:11-249:10 Further, it is unclear whether Chief Boiteux received the direct order from someone within his chain of command, employee relations, or human resources. Julia Kim instructed that the direct order, among other things, was delivered to Capt. Little on June 22, 2023. Jonna MSJ Opp. Decl., Ex. C, Kim Depo., Ex 29 |
| 295. | The Direct Order ordered Plaintiff to either "(1) Fly the[PPF] as instructed in [EA-231] during the month of June OR (2) Ensure that the PPF is flown as instructed in EA-231 during the month of June." **SSUF No.117** Dkt. 115-20 (Boiteux Decl.) ¶7, Dkt. 115-25 (Boiteux Decl. Ex. E) (Direct Order) | Disputed to the extent "either" implies Captain Little had a choice in complying with the Direct Order or EA-231. Undisputed that the Direct Order ordered Captain Little to Fly the PPF as instructed in EA-231 or ensure that the PPF is flown as instructed in EA-231 during the month of June for each year going forward. |
| 296. | The Direct Order was prepared because Plaintiff took down the PPFs on June 21, 2023. **SSUF No.118** Dkt. 115-14 (Boiteux Dep. Tr.) | Disputed in part because Boiteux testified the Direct Order was caused by a combination of factors which included Captain Little's actions, the report of his actions, and notification of the CPOE |

157

| No. | Defendant's Additional Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|---|
| | 255:16-256:1<br><br>Dkt. 115-12 (Mayfield Dep. Tr. Vol. II) 263:22-25, 265:24-266:10 | complaint filed by Chief Lester.<br><br>Boiteux Dep., pp.255:16-256:1 [ECF No. 115-14 at 66-67]<br><br>Further, Plaintiff objects that this is vague. Plaintiff's retaliation claims allege that the issuance of the direct order, among other things, was pretextual and discriminatory because of his religious beliefs regardless of Defendants' purported reasoning. |
| 297. | On June 22, 2023, Chief Boiteux delivered the Direct Order to Plaintiff.<br><br>**SSUF No.119**<br><br>Dkt. 115-2 (Little Dep. Tr.) 284:22-285:3 | Undisputed. |
| 298. | The County removed Plaintiff from his role on the Background Investigation Unit because Plaintiff was the subject of an investigation.<br><br>**SSUF No.122**<br><br>Dkt. 115-17 (Kim Dep. Tr.) 342:1-342:16, 343:2-21 | Disputed, because Kim made the decision to remove Little from the BIU on her own. Kim's claim that the investigation was the reason she made this decision is undermined by the fact that no written policy called for the removal.<br><br>Kim Depo., pp.342:7-9, 343:22-24 [ECF No. 115-17 at 35-36] |
| 299. | The Background Investigation Unit investigates prospective employees and handles sensitive applicant and | Disputed. Kim did not testify that Background Investigation Unit investigators handle sensitive |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Defendant's Additional Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|---|
| | personnel information.<br><br>**SSUF No.123**<br><br>Dkt. 115-17 (Kim Dep. Tr.) 339:6-340:4, 343:2-21 | applicant and personnel information. She testified regarding the employment structure and overtime hours Little accrued on the Unit, and the need for people of integrity on the Unit.<br><br>Kim Depo., pp.339:6-340:4, 343:2-21 [ECF No. 115-17 at 32-33, 36] |
| 300. | The County investigated the CPOE complaint against Plaintiff through its usual channels.<br><br>**SSUF No.124**<br><br>Dkt. 133-3 (Stormer Dep. Tr.) 40:14-43:24, 61:3-62:2, 75:1-78:2 (Under Seal) | ███████████ |
| 301. | The process for investigating a CPOE complaint involves an investigation and interviews.<br><br>**SSUF No.125**<br><br>Dkt. 133-3 (Stormer Dep. Tr.) 12:11-13:15, 17:2-18:5, 22:22-24:16, 40:14-43:24, 61:3-62:2, 75:1-78:2 (Under Seal) | Undisputed. |
| 302. | The CPOE investigation process occurs separate from the specific departments, such as the Fire | Undisputed. |

| No. | Defendant's Additional Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|---|
| | Department.<br><br>**SSUF No.126**<br><br>Dkt. 133-3 (Stormer Dep. Tr.) 27:8-28:18 (Under Seal) | |
| 303. | The County Equity Oversight Panel determined that the allegations in the CPOE complaint against Plaintiff were substantiated and rose to the level of a CPOE violation.<br><br>**SSUF No.127**<br><br>Dkt. 133-3 (Stormer Dep. Tr.) 80:10-22 (Under Seal)<br><br>Dkt. 116-31 (Stormer Decl.) ¶4, Dkt. 133-7 (Stormer Decl. Ex. B) (CPOE Briefing Information and Recommendations) at LAC-0000173-74 (Under Seal) | Undisputed. |
| 304. | The County Equity Oversight Panel recommended that the Fire Department issue Plaintiff a 15-day suspension for violating the CPOE.<br><br>Dkt. 116-31 (Stormer Decl.) ¶4, Dkt. 133-7 (Stormer Decl. Ex. B) (CPOE Briefing Information and Recommendations) at LAC-0000173-74 (Under Seal) | Undisputed. |
| 305. | The Fire Department investigated Plaintiff for violating the County's | Disputed as unsupported by the cited evidence. Kim testified that |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Defendant's Additional Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|---|
| | flag policy when he lowered the PPFs.<br><br>**SSUF No.128**<br><br>Dkt. 115-17 (Kim Dep. Tr.) 307:9-308:3 | she did not attend the Fire Advisory Board, and the cited testimony only shows Kim's opinion that two suspensions should have been served sequentially rather than concurrently. It does not discuss an investigation by the Fire Department.<br><br>Kim Depo., pp.307:9-308:3 [ECF No. 115-17 at 27-28 |
| 306. | The Fire Advisory Board determined based on the Fire Department's investigation that a suspension was appropriate.<br><br>**SSUF No. 12.9**<br><br>Dkt. 115-17 (Kim Dep. Tr.) 307:9-308:3 | Disputed as unsupported by the cited evidence. Kim testified that she did not attend the Fire Advisory Board, and the cited testimony only shows Kim's opinion that two suspensions should have been served sequentially rather than concurrently. It does not discuss an investigation by the Fire Department, or why the Fire Advisory Board made any decisions.<br><br>Kim Depo., pp.307:9-308:3 [ECF No. 115-17 at 27-28] |
| 307. | The FAB recommended that the Fire Department issue Plaintiff a 15-day suspension for violating departmental policies.<br><br>Dkt. 115-17 (Kim Dep. Tr.) 306:20-21 | Disputed as unsupported by the cited evidence. The testimony does not mention a suspension at all.<br><br>Dkt. 115-17 (Kim Dep. Tr.) 306:20-21 |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Defendant's Additional Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|---|
| 308. | Based on Plaintiffs CPOE violation and the FAB's conclusion, the County issued Plaintiff a notice of 15-day suspension on October 24, 2024.<br><br>**SSUF No.130**<br><br>Dkt. 116-34 (Uehara Decl.) ¶5, Dkt. 116-37 (Uehara Decl. Ex. C) (Notice of Suspension) | Disputed as unsupported by the cited evidence. The suspension letter does not mention the Fire Advisory Board at all.<br><br>Uehara Decl. ¶5, Ex. C (Notice of Suspension) [ECF Nos. 116-34, 116- 37] |
| 309. | Chief Boiteux was not involved in the CPOE review process, including the decision to remove Plaintiff from the Background Investigation Unit or to suspend him.<br><br>**SSUF No.131**<br><br>Dkt. 115-14 (Boiteux Dep. Tr.) 293:18-294:24 | Disputed as unsupported by the cited evidence. The cited testimony only shows that Boiteux did not participate in the CPOE briefing. It does not show that Boiteux was not involved in a CPOE review process, and does not mention the removal or suspension decisions at all.<br><br>Boiteux Depo., pp.293:18-294:24 [ECF No. 115-14 at 77-78] |
| 310. | | |

| No. | Defendant's Additional Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|---|
| | ███████████ | ██████████████████████████ ██████████████████████████ ██████████████████████████ ██████████████████████████ ██████████████████████████ ██████████████████████████ |
| 311. | In 2024, Plaintiff requested a religious accommodation in advance of Pride Month, on May 8, 2024.<br><br>**SSUF No. 134**<br><br>Dkt. 116-19 (Nuanes-Delgadillo Decl.) ¶5, Dkt. 116-22 (Nuanes-Delgadillo Decl. Ex. C) (email correspondence between Plaintiff and Ms. Nuanes-Delgadillo) at LAC-0000507-08 | Undisputed. |
| 312. | The Fire Department issued EA-232, which provided guidance about which Department facilities with flagpoles should fly the PPF in 2024, on May 30, 2024.<br><br>**SSUF No.135**<br><br>Dkt. 116 (Kim Decl.) ¶5, Dkt. 116-3 (Kim Decl. Ex. C) (EA-232) | Disputed as unsupported by the cited evidence. Ex. C does not contain guidance about which Department facilities with flagpoles should fly the PPF.<br><br>Kim Decl. ¶5, Ex. C (EA-232) [ECF Nos. 116, 116-3]<br><br>Undisputed to the extent that attachment A to EA-232 states that the PPF shall be flown at all facilities, illustrates the orientation of the flag, and instructs clasps to be |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Defendant's Additional Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|-----|-----|-----|
| | | added to poles safely capable of flying three flags, and providing the flag order |
| 313. | In 2024, the County held IPMs with Plaintiff on both May 29, 2024 and May 31, 2024.<br><br>**SSUF No.136**<br><br>Dkt. 115-15 (Crum Dep. Tr.) 179:8-16<br><br>Dkt. 116-19 (Nuanes-Delgadillo Decl.) ¶¶6-7, Dkt. 116-23 (Nuanes-Delgadillo Decl. Ex. D) (2024 IPM notes), Dkt. 116-24 (Nuanes-Delgadillo Decl. Ex. E) (2024 IPM report) | Undisputed. |
| 314. | In the 2024 IPM, the County informed Plaintiff that he could swap with other captains to work where the PPF would not be flown.<br><br>**SSUF No.137**<br><br>Dkt. 115-6 (Power Dep. Tr.) 82:10-25<br><br>Dkt. 116-19 (Nuanes-Delgadillo Decl.) ¶¶6-7, Dkt. 116-23 (Nuanes-Delgadillo Decl. Ex. D) (2024 IPM notes), Dkt. 116-24 (Nuanes-Delgadillo Decl. Ex. E) (2024 IPM report) | Undisputed that the County stated it would not interfere with shift swaps. However, disputed to the extent it is misleading Power told Little that he could "pursue" a trade request, but stated that it would be "on his own" and "not through [an] accommodation."<br><br>Nuanes-Delgadillo Decl. ¶¶6-7, Ex. D (2024 IPM notes) at LAC-0001486 [ECF No. 116-23 at 5] |
| 315. | The County's 2024 proposal for Plaintiff to swap with other captains to | Disputed. Little stated that the 2024 accommodation was only "partly" |

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Defendant's Additional Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|---|
| | work where the PPF would not be flown was an effective accommodation.<br><br>**SSUF No.138**<br><br>Dkt. 115-2 (Little Dep. Tr.) 294:13-295:9<br><br>TAC ¶1l3 | effective, but he made it work. The cited testimony and complaint paragraph do not discuss swaps and do not show that the County proposed swaps.<br><br>Little Depo., pp.294:13-295:9 [ECF No. 115-2 at 195-196]<br><br>TAC ¶ 113.<br><br>Further disputed because the County told Little that he could "pursue" a trade request, but stated that it would be "on his own" and "not through [an] accommodation."<br><br>Nuanes-Delgadillo Decl. ¶¶6-7, Ex. D (2024 IPM notes) at LAC-0001486 [ECF No. 116-23 at 5] |

Respectfully submitted,

LiMANDRI & JONNA LLP

Dated: April 24, 2026          By: _____

Charles S. LiMandri
Paul M. Jonna
Jeffrey M. Trissell
Joshua A. Youngkin
William T. Duke
Attorneys for Plaintiff
Captain Jeffrey Little

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF GENUINE
DISPUTES OF MATERIAL FACT ISO MOTION FOR PARTIAL SUMMARY JUDGMENT