Charles S. LiMandri, SBN 110841
 cslimandri@limandri.com
Paul M. Jonna, SBN 265389
 pjonna@limandri.com
Jeffrey M. Trissell, SBN 292480
 jtrissell@limandri.com
Joshua A. Youngkin, SBN 332226
 jyoungkin@limandri.com
William T. Duke, SBN 361823
 wduke@limandri.com
LiMANDRI & JONNA LLP
 *as Special Counsel to*
 THOMAS MORE SOCIETY
P.O. Box 9120
Rancho Santa Fe, CA 92067
Telephone: (858) 759-9930
Facsimile: (858) 759-9938

*Attorneys for Plaintiff*
*Captain Jeffrey Little*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAPTAIN JEFFREY LITTLE,<br><br>Plaintiff,<br><br>v.<br><br>LOS ANGELES COUNTY, et al.<br><br>Defendants. | **Case No.: 2:24-cv-4353-JLS-PD**<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF EVIDENTIARY OBJECTIONS**<br><br>Judge:      Hon. Josephine L. Staton<br>Courtroom:  8A<br>Date:       May 8, 2026<br>Time:       10:30 a.m.<br><br>Action Filed:  May 24, 2024 |

| No. | Plaintiff's Statement of Uncontroverted Facts and Supporting Evidence with Defendants' Objections | Plaintiff's Response to Defendants' Objections |
|---|---|---|
| 48. | It is possible for the County to change lifeguards' schedules, which they otherwise bid on in advance when an employee seeks such a change by working with Human Resources-including through the interactive process for an accommodation. (Lester Dep. p.54:2-55:10, 56:15-57:24; Power pp.3:25-37:1; Crum Dep. pp.50:20-54:16.)<br><br>**Objection:** Objection. This statement is not supported by the best evidence. The Memorandum of Understanding for Joint Submission to Board of Supervisors Regarding the Supervisory Beach Lifeguards Employee Representation Unit between the County of Los Angeles and the Los Angeles County Lifeguard Association would be the best evidence of its contents. (Fed. R. Evid. 1002.) | Defendants object to Plaintiff's Statement of Undisputed Material Facts, paras. 48, 80, 89, 129, 167, 196 on the basis that those statements are "not supported by the best evidence." Defendants' objections are unfounded.<br><br>The best evidence rule does not apply in the first instance because the testimony to which defendants object was not offered to prove the contents of the referenced documents. *See Fireman's Fund Ins. Co. v. Stites*, 258 F.3d 1016, 1023, (9th Cir. 2001) ("[T]he 'best evidence' rule embodied in Rule 1002 is inapposite, because the checks and billing records the Insurers submitted were not offered to prove 'the content of a writing' as required by the rule."). "The 'best evidence' rule, embodied in Fed. R. Evid. 1002, comes into play ***only*** when the Terms of a Writing are being established . . . The rule is not applicable when a witness testifies from personal knowledge of the matter, even though the same information is contained in a writing." *D'Angelo v. United States*, 456 F. Supp. 127, 131 (D. Del. 1978), *aff'd*, 605 F.2d 1194 and 605 F.2d 1197 (3d Cir. 1979) (emphasis added); *see also S.S. by and through Stern v. Peloton Interactive, Inc.*, 566 F. Supp. 3d 1019, 1046 (S.D. Cal. |

PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF EVIDENTIARY OBJECTIONS ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Statement of Uncontroverted Facts and Supporting Evidence with Defendants' Objections | Plaintiff's Response to Defendants' Objections |
|---|---|---|
| | | 2021) ("[T]he best evidence rule is not applicable when a witness testifies from personal knowledge of the matter, even though the same information is contained in a writing.") (cleaned up and citations omitted); *see also Mintz v. Bartelstein*, Case No. 2:12-cv-02554-SVW-SS, 2012 WL 12865276 (C.D. Cal. Nov. 15, 2012).<br><br>Further, Fed. R. Civ. P. 56(c)(2) expressly provides that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." (emphasis added); see *Giuliano v. Anchorage Advisors, LLC*, 19 F. Supp. 3d 1087, 1100-01, (D. Or. 2014). As the Ninth Circuit explained in *Fraser v. Goodale*, "At the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents. Because the diary's contents could be presented in an admissible form at trial, we may consider the diary's contents in the Bank's summary judgment motion." 342 F.3d 1032, 1036-37 (9th Cir. 2003) (citations omitted and cleaned up).<br><br>The best evidence rule does not apply where, as here, the documents |

3

PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF EVIDENTIARY OBJECTIONS ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Statement of Uncontroverted Facts and Supporting Evidence with Defendants' Objections | Plaintiff's Response to Defendants' Objections |
|---|---|---|
| | | themselves are also part of the record. Defendants themselves identify those documents in their objections. (*See e.g.*, Defs.' Obj. Nos. 48, 80, 89, 129, 167, 196). In doing so, Defendants concede that, even if the best evidence rule did apply (which it does not), the facts to which they object can nonetheless be presented in a form that would be admissible in evidence by identifying the documents referenced in the testimony to which they object as being the "best evidence." They fail to state any basis as to why those documents are themselves inadmissible. |
| 55. | Chief Boiteux estimated if a recall was necessary to cover a month of shifts, the cost to the County would be approximately $16,000 from its annual $1.5 billion budget. (Boiteux Dep. pp.215:5-216:4.)<br><br>**Objection:** Objection. This fact lacks foundation that Chief Boiteux had any knowledge sufficient to support this fact or these calculations. (Fed. R. Evid. 901.) | Chief Boiteux testified he is responsible for all operations of the lifeguard division. He is the highest level official in the lifeguard division and is responsible for overseeing the 850 people in that division. (Boiteux Dep., pp.19:16-20:1; 21:13-17). Based on his knowledge as the person responsible for all lifeguard operations and oversight over all persons in the lifeguard division, he testified regarding the Fire Department's approximately $1.5 billion dollar budget (Boiteux Dep., p. 24:6-8). He also testified, based on that same operational knowledge, that the cost of covering a lifeguard |

4

| No. | Plaintiff's Statement of Uncontroverted Facts and Supporting Evidence with Defendants' Objections | Plaintiff's Response to Defendants' Objections |
|---|---|---|
| | | shift is approximately $800/day. To calculate the cost of a recall, he performed a mathematical calculation based on the cost of single lifeguard shift ($800) multiplied by the number of shifts per month (20) to estimate $16,000 as the cost of covering a month of shifts. This information was based not on speculation but on information as to which he possessed actual knowledge due to his position. (Boiteux Dep., pp. 130:22-131:14, 215:22-216:4). |
| 64. | Chief Boiteux recalled that Captain Little's "objection was he didn't want to raise the flag." (Boiteux Dep. pp.147:23-148:8.)  **Objection:** Objection. This fact lacks foundation as to how Chief Boiteux would know Plaintiff's "objection." (Fed. R. Evid. 901.) | Little addressed his emailed request for an accommodation to Chief Boiteux. (Boiteux Ex. 12). In that request Little stated, "I am requesting to be exempt to adhering to EA-231 and am requesting a religious accommodation on grounds that it infringes on my sincere religious beliefs. I have always made it a priority to carry out the mission of the department, serve the community, and be an exemplary employee, but this board motion and the responsibilities accompanying it is in conflict with my deep religious faith."  Chief Boiteux testified that, as part of the chain of command within the Lifeguard Division. he was copied on documents relating to Little's request for an accommodation. (Boiteux |

5

| No. | Plaintiff's Statement of Uncontroverted Facts and Supporting Evidence with Defendants' Objections | Plaintiff's Response to Defendants' Objections |
| --- | --- | --- |
| | | Dep., pp. 102:10-105:5. See also, e.g., Boiteux Exs. 13, 14, 15, 17, 20). Chief Boiteux was the sender, direct recipient or copied on almost all of the emails relating to Little's request for an accommodation. (Boiteux Dep. Exs. 12, 14, 15, 17, 20) Those emails included Chief Uehara's email stating Little's request was "acting out" and "probably orchestrated". (Boiteux Ex. 15). In another of those emails (Ex. LAC000065-66), an email from Chief McMillon dated June 18, 2023, on which Chief Boiteux was copied, Chief McMillon advised: "FYI this is the letter from Captain Little. I spoke with him at length this afternoon about this accommodation and recommended we do an IPM to see if he can be accommodated. I believe he is willing to work Area 33 in Malibu until July 1when the flag no longer is flown. He would then return to Will Rogers on July 1. The other possible accommodation would be that he burns his own benefit time until July. Chief Uehara can be on the IPM with us. *We may also have a second employee who is requesting accommodation for* |

PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF EVIDENTIARY OBJECTIONS ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Statement of Uncontroverted Facts and Supporting Evidence with Defendants' Objections | Plaintiff's Response to Defendants' Objections |
|---|---|---|
| | | *not wanting to fly the flag because it interferes with his religious beliefs.* I offered him and IPM also and I'm waiting to hear if he would like to do that." |
| | | (Boiteux Ex. 17; emphasis added). |
| | | Those emails also included a June 20, 2023 email addressed to Chief Boiteux from Nuanes-Delgadillo which stated in part: |
| | | "We conducted an IPM with Captain Jeffrey Little yesterday and he accepted the following accommodation: |
| | | • Stationed at Area 33 through June 30, 2023 |
| | | • Although the Area 33 I-1Q Captain will be responsible in ensuring that the PPF is flown, in extenuating circumstances, Captain Little understands that it will be his responsibility to ensure that it is flown |
| | | • Recalls were discussed and it was agreed that if he is recalled at a location where the he would be responsible for the PPF, he would try to find someone to switch with." |
| | | (Ex. 17 at LAC0000065) |
| | | In another email, sent on June 21, |

PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF EVIDENTIARY OBJECTIONS ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Statement of Uncontroverted Facts and Supporting Evidence with Defendants' Objections | Plaintiff's Response to Defendants' Objections |
|---|---|---|
| | | 2023, after Nuanues-Delgadillo announced an agreement on Little's accommodation, Chief Boiteux stated, "'My recommendation is to deny time off if it will cause a recall. He is welcome to arrange a TX [time exchange]." (Boiteux Ex. 20). |
| 80. | Captain Little made the shift swap to work Area 17 on June 21 before Chief McMillon texted him that she was able to secure him an exemption from recall duty on June 1, 2023; at that point, Captain Little didn't want to trigger a recall for another lifeguard to have to take his place on June 21, 2023. (Little Dep. pp.150:9-151:16.)\n\n**Objection:** Objection. This statement is not supported by the best evidence. The text message thread including Plaintiff, Chief McMillon, and Chief Uehara would be the best evidence of its contents. (Fed. R. Evid. 1002.) | See *supra*, Response to Defendants' Separate Statement Of Evidentiary Objections to Paragraph 48. |
| 82. | Chief Uehara was on the same text string and was thus aware of Little's plan to work Area 17 on June 21. (Little Dep. p.155:9-12, Ex. 1075.)\n\n**Objection.** This fact lacks foundation that Chief Uehara read or participated in the cited text | When asked at his deposition about the email, which indicated on its face that Chief Uehara was included in the exchange, Chief Uehara did not disclaim receiving the text but instead acknowledged, consistent with the text of the message, that it indicated Little had reported to Area |

PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF EVIDENTIARY OBJECTIONS ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Statement of Uncontroverted Facts and Supporting Evidence with Defendants' Objections | Plaintiff's Response to Defendants' Objections |
|---|---|---|
| | message thread, or was aware of Plaintiff's plan to work Area 17 on June 2l. (Fed. R. Evid. 901; Declaration of Dimitri D. Portnoi in Support of Defendants' Statement of Genuine Disputes of Material Fact and Additional Material Facts, Ex. F (Uehara Dep. Tr.) 138:2-142:21.) | 17 on a time exchange. However, despite the language of the text stating Chief McMillon had been able to accommodate Little as set forth in the text, Chief Uehara maintained that there was no accommodation, that "they were just setting it up".<br><br>(Uehara Ex. 16; Uehara Dep., pp. 213:4-215:8).<br><br>Further, Chief Boiteux testified:<br><br>Q.  And Adam Uehara, who's on this thread, was made aware of that as well; correct?<br><br>A.  That's correct. (Boiteux Dep., p. 125:13-16). |
| 89. | The June 11 CPOE complaint did not involve individuals who had religious accommodations or known religious objections to the PPF. (Stormer Dep. pp.94: 1-95:25.)<br><br>**Objection.** This statement is not supported by the best evidence. The CPOE Investigations Unit Investigative report for the June 11, 2023, CPOE complaint would be the best evidence of its contents. (Fed. R. Evid. 1002.) | See *supra*, Response to Defendants' Separate Statement Of Evidentiary Objections to Paragraph 48. |

PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF EVIDENTIARY OBJECTIONS ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Statement of Uncontroverted Facts and Supporting Evidence with Defendants' Objections | Plaintiff's Response to Defendants' Objections |
|---|---|---|
| 104. | Relocating Captain Little to an area not flying the PPF remained a way to accommodate him even after issuance of the directive. (*Id.*)<br><br>**Objection.** This fact lacks foundation because Chief Boiteux was not involved in Plaintiff's accommodation request process. (Fed. R. Evid. 901.) | Defendants fail to support their assertion that Chief Boiteux "was not involved in Plaintiffs' accommodation request process" with any citation to the factual record. Contrary to Defendants' assertion, the record demonstrates that Chief Boiteux was involved throughout Plaintiff's accommodation request process. See *supra*, Plaintiff's Response To Defendants' Objections, para. 64. |
| 105. | Chief Boiteux assumed that Captain Little agreed to work at Area 17 on June 21, 2023, on the expectation that the PPF would not be flying there, and it would have been better for someone in Captain Little's chain of command to inform him that the PPF was now flying in Area 17 before Captain Little arrived to work there that morning. (Boiteux Dep. pp.173:161[sic]-174:10, 183:7-13.)<br><br>**Objection.** This fact lacks foundation and personal knowledge. Chief Boiteux did not know whether Plaintiff agreed to work at Area 17. (Fed. R. Evid. 901; Fed. R. Evid. 602.) | Chief Boiteux' testimony was based the text messages between Chief McMillon and Little (a text exchange on which Chief Uehara was also included), and his prior experience as a Section Chief like Chief McMillon. He testified that, in the context of the conversation, when Chief McMillon said "she switched that" she meant, "Whatever the location that -- whatever location that Captain Little was recalled for, the way I interpret, you know, she moved whatever the location was to area 17." (Boiteux Dep., pp. 123:13-124:25).<br><br>Chief Boiteux further testified, confirming his understanding:<br><br>Q. Well, he [Little] asked to be moved to area 33 because it wasn't going to be flying the PPF, and that accommodation was granted; |

PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF EVIDENTIARY OBJECTIONS ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Statement of Uncontroverted Facts and Supporting Evidence with Defendants' Objections | Plaintiff's Response to Defendants' Objections |
|---|---|---|
| | | correct?<br><br>A. Correct.<br><br>Q. And then he was -- later, he worked with his section chief and with Adam Uehara to relocate to area 17 as part of that same accommodation; correct?<br><br>A. Correct. (Boiteux Dep., pp. 173:16-24. |
| 110. | Ocean Lifeguard specialist Jake Miller at Area 17-2 informed Captain Little that Chief Lester had dropped off the PPFs and clasps earlier that morning with instructions to raise the PPFs; however, Captain Little understood that Lester did not have authority to change department policies or Captain Little's religious accommodation. (Little Dep. p.203:6-21.)<br><br>**Objection.** This fact lacks foundation as Plaintiff stated that Chief Lester "did not have the authority to change policies and change my IPM," but did not establish foundation for this statement. (Fed. R. Evid. 901.) | Defendants' foundation objection is without merit. Plaintiff's assertion concerns what he *understood* and he testified to his understanding of various matters including those at issue in this statement. See Fed. R. Evid. 601. Apparently, Defendants challenge Little's basis for his understanding that Chief Lester "did not have the authority to change policies and change my IPM". But that is not the fact which is asserted or the fact which Plaintiff seeks to establish. The fact as stated relates to Little's reaction to Chief Lester's dropping off the PPFs and clasps with instructions to raise the PPFs at a location where Little was specifically assigned. He was assigned there as part of a negotiated religious accommodation, so that he would not be required to raise or responsible for directing another to |

| No. | Plaintiff's Statement of Uncontroverted Facts and Supporting Evidence with Defendants' Objections | Plaintiff's Response to Defendants' Objections |
|---|---|---|
| | | raise the PPF. The fact which is uncontroverted and for which there is a foundation is that Captain Little understood that Lester did not have authority to change department policies or Captain Little's religious accommodation. |
| 111. | Captain Little asked Miller if he would be offended if Captain Little took down the PPF given the sensitivity of the topic; Miller said he would not be offended. (Little Dep. pp.204:22-205:15.)<br><br>**Objection**. Hearsay as to Ocean Lifeguard Specialist "OLS" Miller's statements. (Fed. R. Evid. 801; Fed. R. Evid. 802.) | Miller's statement that he would not be offended is excepted from the hearsay rule pursuant to FRE 803(3) as it is a statement of Miller's then existing state of mind and because it is admissible as evidence of what Miller stated to Little, irrespective of whether he was being truthful when he stated it. Moreover, the fact that the statement was made is probative irrespective of the truth of Miller's statement (that he didn't care if Little took down the PPF). Evidence that the statement was made, irrespective of its truth, is probative of the fact that Captain Little sought to avoid and believed he was not offending Miller when he took down the PPF. |
| 115. | Captain Little then went to Area 17-1 and saw a PPF flying on an area flagpole that hadn't flown a flag in years. Captain Little asked Ocean Lifeguard Specialist Tenan-Snow and his co-lifeguard if they would be offended if Captain Little took the PPF down, and they said they | Defendants assert a hearsay objection to Little's testimony that Tenan-Snow said they didn't care if Little took the PPF down. But the statement is excepted from the hearsay rule pursuant to FRE 803(3) as a statement of Tenan-Snow's then existing state of mind and because it |

12

| No. | Plaintiff's Statement of Uncontroverted Facts and Supporting Evidence with Defendants' Objections | Plaintiff's Response to Defendants' Objections |
| --- | --- | --- |
|  | didn't care; Captain Little then removed the PPF, folded it, and put in in the nearby Area 17-3 building. (Little Dep. pp.210.14-214.15.)  **Objection.** Hearsay as to Ocean Lifeguard Specialist Tenan-Snow's statements. (Fed. R. Evid. 801; Fed. R. Evid. 802.) | is admissible of what they stated to Little irrespective of whether they were being truthful when it was said. Moreover, the statement is probative irrespective of the truth of Tenan-Snow's statement as evidence of the fact that Captain Little sought to avoid and believed he was not offending Tenan-Snow when he took down the PPF. |
| 127. | The County's decisionmakers were thus aware that Captain Little's actions regarding the PPF were motivated by religious reasons. (Lester Dep. p.99:21-100:25, 140:10-141:5.)  **Objection.** This fact lacks foundation to support any conclusion as to who were the "decisionmakers." (Fed. R. Evid. 901.) | Defendants' foundation objection is meritless; the cited testimony reflects discussions among Chiefs Boiteux, Lester, McMillon and Uehara (pp. 99:21-100:25), as well as discussions between between Chief Lester, Chief Boiteux and Chief Uehara. Chiefs Boiteux, Chief Uehara, and Chief McMillon were all involved in the communications relating to Little's accommodation request. See *supra*, Plaintiff's Response To Defendants' Objections, para. 64. |
| 129. | On June 22, 2023, Captain Little filed a CPOE complaint regarding the aforementioned events at Area 17 on June 21, 2023, further notifying the County that his actions were motivated by religious reasons. (Little Dep. pp.248.22-249:1.)  **Objection.** This statement is not | See *supra*, Response to Defendants' Separate Statement Of Evidentiary Objections to Paragraph 48. |

| No. | Plaintiff's Statement of Uncontroverted Facts and Supporting Evidence with Defendants' Objections | Plaintiff's Response to Defendants' Objections |
|---|---|---|
| | supported by the best evidence. The CPOE Report Notification Form Plaintiff filed on June 22, 2023 would be the best evidence of its contents. (Fed. R. Evid. 1002.) | |
| 142. | According to estimates from Captain Little's chain of command, the full economic cost of granting Captain Little the religious accommodation he sought would cost the fire department $3,000 to $8,000 of its roughly $1.5 billion annual budget. (Kim Dep. p.130:10-18, 132:17-133:2; Boiteux Dep. p.24:6-8.)<br><br>**Objection.** This fact lacks foundation Chief Kim testified she could not recall the total annual budget. (Fed. R. Evid. 901; Dkt. 119-14 (Kim Dep. Tr.) 130:10-18.) | Chief Boiteux testified to the annual $1.5 billion budget. (Boiteux Dep., p. 24:6-8). Kim testified, consistent with Chief Boiteux' testimony, "I remember it was, like, 1.5.  I just don't remember if it was -- like, what year, because our budget changes every year.) (Kim Dep., p. 130:10-18). |
| 167. | The Notice of Instruction was issued because Captain Little took down the PPFs (Boiteux Dep. pp.273:16-274:1, 277:9-17.)<br><br>**Objection.** This statement is not supported by the best evidence. The Notice of Instruction issued to Plaintiff would be the best evidence of its contents. (Fed. R. Evid. 1002.) | See *supra*, Response to Defendants' Separate Statement Of Evidentiary Objections to Paragraph 48. |

PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF EVIDENTIARY OBJECTIONS ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Statement of Uncontroverted Facts and Supporting Evidence with Defendants' Objections | Plaintiff's Response to Defendants' Objections |
|---|---|---|
| 173. | Little was standing near Chief McMillon at the Malibu station when she observed the Malibu flagpole had been removed; Little stated that he was going home sick that day because he was having an emotional breakdown as a result of EA-231; he also notified the other captains working in Area 33's battalion area that day, and those captains were supportive. (Little Dep. pp.273.2-274.12, Ex. 1082 at p.3.)<br><br>**Objection.** Hearsay, Plaintiff states that "the other captains working in that battalion ... were supportive of" Plaintiff going home sick on June 22, 2023. (Dkt. 119-1 (Little Dep. Tr.) 273:6-12.) This is an out of court statement offered for the truth of the matter asserted, and no hearsay exception applies. (Fed. R. Evid. 801; Fed. R. Evid. 802.) | Defendants have failed to demonstrate in the first instance that the testimony is hearsay. On its face, Little's testimony that the other captains were supportive did not purport to recount a conversation with the other captains. Little was not asked the basis for his testimony and they could have indicated support non-verbally.<br><br>In any event, even if Little's testimony was based on verbal statements by the other captains, those statements would fall within the exception set forth in Federal Rule of Evidence 803(3), as "[a] statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health)...."<br><br>Further, the fact is probative irrespective of the truth of the matter asserted (*i.e.*, irrespective of whether "those captains" were actually "supportive") as evidence of the failure of the other captains working in Area 33 to object to Little going home sick. |
| 179. | On June 23, 2023, only two days following the June 20 flag-lowering incident, Captain Little was | Defendants' objection is wholly untenable. Plaintiffs' Third Amended Complaint, which was verified by |

PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF EVIDENTIARY OBJECTIONS ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Statement of Uncontroverted Facts and Supporting Evidence with Defendants' Objections | Plaintiff's Response to Defendants' Objections |
|---|---|---|
| | suspended from his role on the BIU, which conducts investigations of emergency incidents, resulting in a significant loss of overtime, income, and prestige.) (3d Am. Verif. Cmplt. ¶82.A.)<br><br>**Objection.** This fact lacks foundation as to the statement "resulting in a significant loss of overtime, income, and prestige." (Fed. R. Evid. 901.) | Plaintiff, expressly alleges: "On June 23, 2023, Captain Little was suspended from his role on the background investigation unit, which conducts investigations of emergency incidents, resulting in a significant loss of overtime, income, and prestige." These are facts of which Plaintiff has knowledge - mainly his removal from the BIU as well as the consequences he suffered as a result. |
| 183. | Sturdivant is unaware of any steps taken to investigate Captain Little's threat except for filing a security incident report. (Sturdivant Dep. p.149:8-13; Crum Dep. pp.162:2-163.12.)<br><br>**Objection.** This fact lacks foundation and relies on testimony from witnesses who lack personal knowledge sufficient to provide these facts. Plaintiff improperly cited to Chief Sturdivant and Captain Crum's 30(b)(1) testimony where the County designated Julia Kim to testify as a 30(b)(6) witness about this letter. She provided testimony on the Fire Department's investigation process, explaining that a security incident report was filed, and a copy is sent to the "sheriff s department's special operations unit." Among other | Defendants' objection is meritless. Chief Sturdivant testified to her personal knowledge of these facts.<br><br>Notably, Sturdivant sat for a single deposition which, at the request of her counsel, was designated a combined Rule 30(b)(1) and 30(b)(6) deposition. See Sturdivant Dep., p. 167:6-16).<br><br>Crum testified at his 30(b)(1) deposition to the extent of his personal knowledge regarding what did and did not occur after Little was threatened. That included attending a meeting with Captain Little and Captain Mayfield. (Crum Dep., pp. 161:10, 163:12). |

PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF
EVIDENTIARY OBJECTIONS ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

| No. | Plaintiff's Statement of Uncontroverted Facts and Supporting Evidence with Defendants' Objections | Plaintiff's Response to Defendants' Objections |
|---|---|---|
|  | things, Chief Kim also explained that where the incident is criminal in nature, such as here, law enforcement handles the investigation. Plaintiff instead cited to Chief Sturdivant's 30(b)(1) testimony on her personal recollection of events. (Fed. R. Evid. 901: Fed. R. Evid. 602; Declaration of Dimitri D. Portnoi in Support of Defendants' Statement of Genuine Disputes of Material Fact and Additional Material Facts, Ex. H (Kim Dep. Tr.) 278:7-286:15.) |  |
| 187. | According to Chief Boiteux, the difference between Captain Little's actions and a similar action taken by Captain Crum, the request of Chiefs Uehara and Lester, to lower an already-flying PPF in Area 17 on June 1, 2023, was the number of people upset about Captain Little taking down the PPF. (Boiteux Dep. p. 75:4-25.)<br><br>**Objection.** This fact lacks foundation because Chief Boiteux testified that he is not involved in discipline. (Fed. R. Evid. 901; Dkt. 121-5 (Boiteux Dep. Tr.) 174:25-175:3.) | As discussed supra, Chief Boiteux was responsible for all operations of the lifeguard division. He is the highest level in that division and is responsible for overseeing the 850 people in the lifeguard division. (Boiteux Dep., pp.19:16-20:1; 21:13-17). His assertion, "I don't do discipline" in response to a question about whether Crum should have been disciplined for taking down the PPF (Boiteux Dep., p. 174:23-174:3) did not indicate he had no knowledge regarding discipline. Moreover, Chief Boiteux's "I don't do discipline" did not indicate he lacked a foundation for his testimony regarding why Captain Little was more harshly than Captain Crum. |

17

| No. | Plaintiff's Statement of Uncontroverted Facts and Supporting Evidence with Defendants' Objections | Plaintiff's Response to Defendants' Objections |
|---|---|---|
| 196. | The suspension notice made no mention of the religious accommodation agreed to with Captain Little on June 19, 2023, even though the Investigation Reports reference to the accommodation 57 times. (3d Am. Verif. Cmplt. ¶90.)<br><br>**Objection.** This statement is not supported by the best evidence. The Notice of Suspension and Investigation Reports would be the best evidence of their contents. (Fed. R. Evid. 1002.) | See *supra*, Response to Defendants' Separate Statement Of Evidentiary Objections to Paragraph 48.<br><br>In any event, defendants should be deemed to have already admitted the fact, by failing to either admit or deny Paragraph 90 of the Third Amended Verified Complaint and instead answering, "Paragraph 90 contains reference to documents, which require no response because the referenced documents speak for themselves." (Defendants' Answer And Affirmative Defenses To Plaintiffs' Verified Second Amended Complaint, para. 90, Dkt. 61; Joint Stipulation To File Third Amended Complaint, Dkt , p. 2 ("The Defendants waive notice and service of the Third Amended Complaint and shall not be required to answer the amendment, and that all denials, responses, and affirmative defenses contained in the answer filed by Defendants to the Second Amended Complaint shall be deemed responsive to the Third Amended Complaint.")<br><br>See Fed. R. Civ. P. 8(b)(6) ("An allegation ... is admitted if a responsive pleading is required and the allegation is not denied.") |

18

PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF EVIDENTIARY OBJECTIONS ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

Respectfully submitted,

LiMANDRI & JONNA LLP

Dated: April 24, 2026          By: _____
                                   Charles S. LiMandri
                                   Paul M. Jonna
                                   Jeffrey M. Trissell
                                   Joshua A. Youngkin
                                   William T. Duke
                                   Attorneys for Plaintiff
                                   Captain Jeffrey Little

19

PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF EVIDENTIARY OBJECTIONS ISO MOTION FOR PARTIAL SUMMARY JUDGMENT