DIMITRI D. PORTNOI (S.B. # 282871)
dportnoi@omm.com
KYLE M. GROSSMAN (S.B. # 313952)
kgrossman@omm.com
MARNI B. ROBINOW (S.B. # 313412)
mrobinow@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street, Suite 1900
Los Angeles, California 90071
Telephone:   (213) 430 6000
Facsimile:   (213) 430 6407

*Attorneys for Defendants County of
Los Angeles, Fernando Boiteux,
Arthur Lester, and Adam Uehara*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| Jeffrey Little,<br><br>              Plaintiff,<br><br>    v.<br><br>Los Angeles County Fire Department, et al.,<br><br>              Defendants. | Case No. 2:24-cv-04353-JLS-BFM<br><br>**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>*[Filed concurrently with Defendants' Response to Plaintiff's Statement of Genuine Disputes of Material Fact; Response to Plaintiff's Separate Statement of Evidentiary Objections; Separate Statement of Additional Evidentiary Objections; and Supplemental Declaration of Dimitri D. Portnoi]*<br><br>Hearing Date: May 8, 2026<br>Hearing Time: 10:30 a.m.<br>Judge:  Hon. Josephine L. Staton<br>Courtroom:  8A<br><br>TAC Filed:  October 21, 2025<br>Trial Date:  None set |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................5

II.   ARGUMENT ........................................................................................................5

    A.    Plaintiff Cannot Establish His Failure-to-Accommodate Claims..........5

        1.    There Is No Conflict Between Plaintiff's Religious Practices and His Job Duties ......................................................6

        2.    Plaintiff Was Disciplined for Violating County Policy by Lowering the PPF, Not Failing to Meet Job Requirements ........8

        3.    Plaintiff Misconstrues the Undue-Burden Inquiry and Ignores the Burden of His Requested Accommodations...........10

    B.    Plaintiff Cannot Establish His Failure-to-Protect Claim .....................11

    C.    Plaintiff Cannot Establish His Retaliation Claims...............................12

    D.    Plaintiff Cannot Establish His Free-Exercise Claims ..........................13

        1.    Plaintiff's Free-Exercise Claims Fail on the Merits..................13

        2.    The Individual Defendants Are Entitled to Qualified Immunity....................................................................................15

        3.    Plaintiff's Punitive Damages Demand Must Be Stricken .........16

III.  CONCLUSION ...................................................................................................17

DEFS.' REPLY BRIEF IN SUPP. OF
MOT. FOR SUMMARY JUDGMENT
2:24-CV-04353-JLS-BFM

**TABLE OF AUTHORITIES**

**Page**

<u>**CASES**</u>

*Acosta v. Brain*,
910 F.3d 502 (9th Cir. 2018)...............................................................................12

*Ballentine v. Tucker*,
28 F.4th 54 (9th Cir. 2022)...................................................................................16

*Bates v. Pakseresht*,
146 F.4th 772 (9th Cir. 2025)...............................................................................14

*Bolden-Hardge v. Off. of Cal. State Controller*,
63 F.4th 1215 (9th Cir. 2023).....................................................................6, 10, 11

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*,
508 U.S. 520 (1993) .............................................................................................14

*Evans v. Tex. Dep't of Transp.*,
547 F. Supp. 2d 626 (E.D. Tex. 2007) .................................................................13

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd.*
*of Educ.*,
82 F.4th 664 (9th Cir. 2023)............................................................................14, 16

*Hardwick v. County of Orange*,
844 F.3d 1112 (9th Cir. 2017)..............................................................................16

*Masterpiece Cakeshop v. Colo. C.R. Comm'n*,
584 U.S. 617 (2018) .............................................................................................14

*Mendelson v. Country Coach, Inc.*,
2007 WL 4811927 (C.D. Cal. 2007) ....................................................................13

*Smith v. Wade*,
461 U.S. 30 (1983) ...............................................................................................16

*Tolle v. Rockwell Collins Control Techs., Inc.*,
2020 WL 3316984 (E.D. Va. 2020) ...................................................................6, 9

*Trans World Airlines v. Hardison*,
432 U.S. 63 (1977) ...............................................................................................10

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*,
570 U.S. 338 (2013) .............................................................................................12

*Ziglar v. Abbasi*,
582 U.S. 120 (2017) .............................................................................................15

DEFS.' REPLY BRIEF IN SUPP. OF
MOT. FOR SUMMARY JUDGMENT
2:24-CV-04353-JLS-BFM

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

**STATUTES**

Cal. Gov't Code § 12926(d) ........................................................................11

Cal. Gov't Code § 12940(k) ........................................................................12

DEFS.' REPLY BRIEF IN SUPP. OF
MOT. FOR SUMMARY JUDGMENT
2:24-CV-04353-JLS-BFM

## I.    INTRODUCTION[1]

On June 21, 2023, Plaintiff lowered three PPFs at Dockweiler and El Segundo Beaches in violation of County policy, even though he never sought nor obtained an accommodation to do so.  Other lifeguards saw him and reported his conduct.  The flags were re-raised, and Plaintiff was investigated and ultimately disciplined for violating the County's Policy of Equity and its flag policy.

Plaintiff tries to complicate this case by assuming bad motives on the part of the County and its employees.  Plaintiff contends that his accommodation request was maliciously revoked, when it was actually denied after a run-of-the-mill review by DHR because he never articulated a conflict between his religious practices and his job duties.  He plucks isolated statements by two Individual Defendants out of context, wrongly suggesting that Chief Uehara labeled Plaintiff's religious beliefs as insincere (rather than merely expressing confusion) and that Chief Boiteux intended to intimidate Plaintiff out of his religious convictions (rather than reminding Plaintiff of his job duties and oath).  And he makes unfounded comparisons to inapposite case law and differently situated County investigations.

Plaintiff's distractions are just that, though.  They do not excuse his violations of County policy or make his discipline about anything else.  Because Plaintiff fails to draw this core causal link—and fails to establish other elements of his claims—the Court should grant Defendants' motion for summary judgment.

## II.    ARGUMENT

### A.    Plaintiff Cannot Establish His Failure-to-Accommodate Claims

The record is clear: Plaintiff lacks evidence to support his failure-to-accommodate claims, and his attempt to twist the evidence and law does not change

---

[1] All emphasis is added to, and citations, alterations, and internal quotation marks omitted from, quoted passages unless otherwise noted.  All terms are as defined in Defendants' Memorandum of Points and Authorities in Support of Summary Judgment (Dkt. 114-1).  Paragraph references are to Defendants' Separate Statement of Uncontroverted Facts (Dkt. 114-2) unless otherwise noted.

DEFS.' REPLY BRIEF IN SUPP. OF
MOT. FOR SUMMARY JUDGMENT
2:24-CV-04353-JLS-BFM

that basic fact.

### 1. There Is No Conflict Between Plaintiff's Religious Practices and His Job Duties

To manufacture a conflict where none exists, Plaintiff tries to muddy the waters as to the nature of his religious practices and the nature of his job duties. But there is no conflict.

***Religious Practice.*** Contrary to Plaintiff's assertions, Opp. 10 & n.2, the County has never disputed the sincerity of his beliefs. But Plaintiff cannot simply refer to his beliefs about marriage, sex, and gender, and his assumptions about the PPF's message, to baldly assert a conflict between his religious *practices* and his flag-related job duties. Courts reject such conclusory assertions of a conflict. *Bolden-Hardge v. Off. of Cal. State Controller*, 63 F.4th 1215, 1223 (9th Cir. 2023) (principle that courts should not second-guess reasonableness of religious *beliefs* "does not mean that courts must take plaintiffs' conclusory assertions of *violations* of their religious beliefs at face value").

Plaintiff tries to avoid this deficiency by blurring the line between his religious *beliefs* and his religious *practices*. It is Plaintiff's religious practices, though, that must conflict with his job duties to state a failure-to-accommodate claim. Plaintiff cites nothing to the contrary. He claims that *Bolden-Hardge* held courts should not consider whether an assertion of a conflict is reasonable, Opp. 12, but that is inaccurate. *Bolden-Hardge* actually explained that courts should avoid inquiry into whether a plaintiff's religious *beliefs* are reasonable. 63 F.4th at 1223. Moreover, in finding that Bolden-Hardge had asserted a non-conclusory conflict, the Ninth Circuit pointed to a lengthy line of cases establishing the legitimacy of the very conflict she asserted. *Id.* at 1223 n.5. Plaintiff points to no such precedent here, nor can he; the only case law on the issue makes clear that there is no conflict. *Tolle v. Rockwell Collins Control Techs., Inc.*, 2020 WL 3316984, at *4 (E.D. Va. 2020) ("merely expecting Plaintiff to attend work in the same location that a Gay

Pride flag is generally displayed for one month does not amount to asking him to adhere to a conflicting employment requirement").[2]

*Job Duties.* Plaintiff's various articulations of his PPF-related job duties lack factual support. He contends that he would be required to "engage in the expressive conduct of raising the PPF," "spread[] the message of the PPF," and "endors[e] the flag's message," Opp. 9-10, 12, but he points to nothing in EA-231 or anywhere else that imposes these requirements. Indeed, these mischaracterizations of his job duties contradict this Court's rulings: in granting the County's motion to dismiss on his speech claims, the Court held that nothing about the flying of the PPF "involves a form of personal expression." Dkt. 50 at 16. Plaintiff's non-speech-based characterizations of his job duties—that he must "[a]ccept[] responsibility for," "to," and "monitor[]" the PPF, Opp. 10-12—are just as divorced from the text of EA-231, which requires only that he "ensure" that it be flown.

Moreover, Plaintiff was never actually required to raise the PPF or even ensure that it was raised; he certainly was never punished on that basis. Plaintiff concedes he was not required to raise the PPF on or before June 20, 2023. Defs.' Stmt. of Genuine Disputes of Material Fact and Additional Material Facts ("SGD"), dkt. 153-1 ¶141. Then, on June 21, Chief Lester ensured PPFs were raised at Area 17 before Plaintiff arrived at work, eliminating any need for Plaintiff to do so. ¶¶24-25, 54-56. Even after Plaintiff lowered the PPFs, Chief Lester personally ensured the PPFs were re-raised; he did not require Plaintiff to do anything, including lower the PPFs at the end of the day. ¶¶75-78. As for June 22, Plaintiff worked at Area 33, where he agreed to work and where he was not responsible for

---

[2] Plaintiff tries to distinguish *Tolle* on the basis that Tolle's employer "merely [] ma[de] him work in a building flying a Pride flag," while Plaintiff was "responsible for raising the PPF and ensuring the PPF remained flying" and for "spreading the message of the PPF." Opp. 10. As explained below, this misrepresents Plaintiff's job duties: he was never required to raise the PPF, ensure that it was flown, or spread its message.

raising the PPF or ensuring it was flown. ¶¶42, 115.  With only a few shifts left in June, Plaintiff took sick time for the rest of the month.[3]  ¶121.  Then, in 2024, Plaintiff secured an "effective accommodation" from EA-232.  ¶138.

Plaintiff's factual citations about his alleged job duties do not describe events that actually happened.  *See* Opp. 11 (citing ¶¶131, 140, 151, 164, 211, and 216 of Plaintiff's separate statement of uncontroverted facts).  Rather, they reflect Plaintiff's interpretation of statements and documents that he feared (and apparently still fears) will be enforced against him.  *E.g.*, SGD ¶164 (describing the June 22, 2023 Direct Order).  Yet Plaintiff's fears never materialized and are purely speculative.  For instance, the Direct Order, by its terms, applied only to EA-231, which is no longer operative.  Portnoi Supp. Decl. Ex. A (Kim Dep. Tr. Vol. I) 251:11-24.  Plaintiff's unfounded concerns do not establish his job duties for purposes of identifying a conflict with his religious practices.

### 2. Plaintiff Was Disciplined for Violating County Policy by Lowering the PPF, Not Failing to Meet Job Requirements

To be clear, not only was Plaintiff never required to raise the PPF or ensure it was raised, he was not disciplined for failing to do so.  The County took no disciplinary action against Plaintiff for refusing to re-raise the PPFs at Area 17 on June 21, 2023, or for taking sick time later that month.  SGD ¶178.  Rather, Plaintiff's 15-day suspension was for actively lowering the flag.  Plaintiff attempts to minimize this fact, but he cannot escape it.

For instance, Plaintiff claims that lowering the PPF was "consistent with his accommodation." Opp. 14.  This is false.  Plaintiff admitted that he "never stated that [his] religious beliefs would require [him] to take down the [PPF] while at work" and that he was "not told that [he] could remove the [PPF] from any flagpole

---

[3]  Plaintiff wrongly suggests that the County forced him to take sick leave due to the lack of an accommodation.  Opp. 17.  In fact, Plaintiff remained on sick leave until *September*—well after the end of Pride Month.  Power Dep. Tr. (dkt. 115-6) 64:15-65:12.

on which it was flying." Dkt. 115-19 at 6-8.

Plaintiff then takes a different tack, claiming that he only "relieved himself of the responsibility for monitoring and ensuring the PPF remained flying" and "ensur[ed] he would not have to raise the PPF or direct another to do so." Opp. 12, 14. This is beside the point. For one, Plaintiff could have engaged in many forms of conduct to "relieve himself of" PPF-related responsibilities, including removing or altering the flagpole or permanently destroying the PPF; the mere fact that these actions would tangentially relate back to his request to have no PPF-related responsibilities would not shield him from adverse consequences. Plaintiff alternatively could have taken (but did not take) less drastic measures, such as calling Chief Lester to confirm whether he had any flag-related responsibilities. Little Dep. Tr. (dkt. 115-2) 203:11-24, 207:11-208:18. For another, Plaintiff continues to assume he would have had to take action to ensure the PPF remained flying. As explained above, he was never required to take such action. No matter how Plaintiff recharacterizes his actions on June 21, the simple fact remains that he lowered three PPFs without any authorization and in violation of multiple County policies. ¶¶61-64, 124-29.

Plaintiff argues that the County "ignores the very different messages inherent in raising a flag versus lowering a flag." Opp. 12. But Plaintiff ignores that his lowering of the PPF, a symbol of tolerance and acceptance, ¶1, sent a very clear message. Multiple lifeguards complained about Plaintiff's conduct, which was in public view and in front of junior lifeguards. ¶113. Plaintiff even hypothesized that "[m]aybe some of the youth supported" his actions, Little Dep. Tr. (dkt. 115-2) 220:3, thus acknowledging that he sent a message by lowering the PPF. Plaintiff again tries to distinguish *Tolle* (involving a plaintiff who wanted an accommodation to not see a Pride Flag at work), 2020 WL 3316984, at *5, as a case in which "the employee effectively sought a veto of the employer's expression, while [Plaintiff] simply did not wish to actively participate in his employer's expression." Opp. 12.

Plaintiff's own actions undermine this argument: his lowering of the PPFs was not just a veto of the County's message of inclusion; it was a rebuke of it.

Finally, Plaintiff confusingly states that the County invoked his religious beliefs throughout the disciplinary process. Opp. 15. Plaintiff's only support from the relevant time frame is Chief Boiteux's June 22 statement that Plaintiff's beliefs do not matter, but Chief Boiteux was not part of the disciplinary process. ¶131; SGD ¶309.[4] Moreover, the County acknowledging the religious nature of Plaintiff's accommodation request is not evidence that he was disciplined *because of* the accommodation. If anything, acknowledging an employee's religious beliefs and practices is part of the accommodation process.

### 3. Plaintiff Misconstrues the Undue-Burden Inquiry and Ignores the Burden of His Requested Accommodations

Plaintiff's requested accommodations would have caused recalls or shift changes—a fact Plaintiff does not even contest. He argues the County cannot rely solely on state law to avoid its federal obligations under Title VII, Opp. 17, but that is not what happened here. Rather, the County (1) abided by the MOU,[5] a valid collective-bargaining agreement relevant to the undue-burden analysis, *Trans World Airlines v. Hardison*, 432 U.S. 63, 79 (1977); and (2) sought to protect its employees from the detrimental health consequences of recalls and shift exchanges, including burnout, ¶¶100-04, SGD ¶¶279, 282. Thus, the County does not rely "solely" on state law to assert an undue-burden defense, rendering Plaintiff's cite to *Bolden-Hardge* inapplicable. Opp. 17 (citing 63 F.4th at 1225). The *Bolden-*

---

[4] Plaintiff also cites deposition testimony from other County witnesses about their current opinions on the interaction between Plaintiff's religious beliefs and job duties, Opp. 15, but these post hoc statements (none of which disapprove of Plaintiff's beliefs) are even further removed from the disciplinary process.

[5] Plaintiff's remark that the MOU applies only to 40-hour-per-week employees ignores that captains and other lifeguards are not interchangeable; there are minimum staffing requirements *for captains* during the summer. ¶97.

DEFS.' REPLY BRIEF IN SUPP. OF
MOT. FOR SUMMARY JUDGMENT
2:24-CV-04353-JLS-BFM

*Hardge* court's concerns that a state might "enact a law for the sole purpose of evading federal accommodation requirements, even without any intent to enforce the law or otherwise give it effect," 63 F.4th at 1225, are not at issue here. There is ample evidence—despite Plaintiff's attempt to label it as "speculat[ive]" and "conclusory," Opp. 17—that the limits on the County's ability to unilaterally reschedule lifeguards' shifts are motivated by legitimate concerns about mental and physical health, as well as public safety. ¶¶100-04, SGD ¶¶279, 282.

Nor can Plaintiff point to his reassignment to Area 33 after the first IPM as evidence that there is no undue burden associated with allowing him to take benefit time or to be reassigned somewhere that the PPF was not flying. As Plaintiff himself testified, the Area 33 captain was "out on injury" leave in June 2023, SGD ¶50, meaning that Plaintiff's reassignment would not result in an additional recall, as the County would either need to recall a captain to cover at Area 33 or to cover for Plaintiff at Will Rogers. But if Plaintiff were reassigned to one of the few sites where the PPF was not flown after the 100% compliance directive came down, or if he were to take benefit time, that would cause a recall or reassignment of another captain and thereby burden the County and its employees.

### B.    Plaintiff Cannot Establish His Failure-to-Protect Claim

Plaintiff focuses his entire argument in opposition on one premise—that no one involved with his IPMs had the training or experience necessary to handle his request. Opp. 18. This is factually inaccurate. Ms. Nuanes-Delgadillo, who facilitated both of Plaintiff's IPMs, had participated in other IPMs for religious accommodations. SGD ¶58.

It is also legally irrelevant, for multiple reasons. *First*, Plaintiff identifies no authority interpreting FEHA (which applies to businesses with as few as five employees, Cal. Gov't Code § 12926(d)) as requiring human-resources staff that are trained on every potential kind of accommodation request. To the contrary, FEHA requires only "reasonable steps" to prevent discrimination and harassment. *Id.*

§ 12940(k).  *Second*, Plaintiff's accommodation request was denied not because of what anyone at the IPM said or did—Plaintiff identified no comments from any IPM participant that were hostile or unaccommodating toward religion—but because DHR ultimately decided that Plaintiff's request did not merit an accommodation.  ¶¶83-84.  It was DHR's further review of the applicable standards that resulted in Plaintiff's request being denied.  *Id.*  No additional experience or training for Ms. Nuanes-Delgadillo or anyone else in the IPM would have led to a different result—indeed, Plaintiff has pointed to no other captain who received a wholesale exemption from EA-231 (let alone an accommodation to lower the PPF) on religious grounds.  Thus, the County did not fail to protect Plaintiff from discrimination.

### C.    Plaintiff Cannot Establish His Retaliation Claims

Plaintiff's opposition makes clear that his theory of retaliation hinges entirely on Chief Boiteux's role in this case, and specifically on the single (disputed) allegation that Chief Boiteux told Plaintiff that his religious beliefs do not matter.  Opp. 19-21.  But Plaintiff has no meritorious response to the fact that Chief Boiteux was never a decisionmaker in any relevant respect—for instance, he did not play a role in the investigation of the CPOE complaint against Plaintiff, which occurred outside the Fire Department.  ¶126.  This is particularly salient as to Plaintiff's retaliation claims, because Plaintiff must show that Chief Boiteux's retaliatory animus (or others', though he does not identify anyone else who allegedly harbored retaliatory animus against him) was the but-for cause of the adverse employment action.  *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

Plaintiff appears to attempt a cat's paw theory of liability to get around Chief Boiteux's lack of involvement, but the theory does not fit these facts.  To prove retaliation on such a theory, Plaintiff must show that Chief Boiteux had "strong enough" influence over the relevant decisionmakers "to actually have caused the adverse employment action."  *Acosta v. Brain*, 910 F.3d 502, 515 (9th Cir. 2018).

Plaintiff fails to provide any evidence that meets this standard.  He argues that Chief Boiteux's "actions triggered a mechanical bureaucratic process designed to harm" him; that Chief Boiteux "initiated the process and provided evidence which supported the discipline"; and that "[t]here is no adverse action without Boiteux and his initial complaint against Little." Opp. 20-21.  These various allegations are unsupported.  ███████████████████████████████████████████████ ██████████████████████████████████████████████████ ███████████████████████████████████████████████████ ████████████████████████████████████████ ██████████████████████████████  Furthermore, "if the decision maker conducted an independent investigation rather than 'rubber stamping' or relying on the recommendation of the person with retaliatory animus, any causal link between the alleged retaliatory intent and the adverse employment action is severed." *Evans v. Tex. Dep't of Transp.*, 547 F. Supp. 2d 626, 656 (E.D. Tex. 2007).  Here, the County conducted its own independent investigation and came to an independent conclusion.  ¶¶124-26, 131.  Plaintiff's unfounded speculation therefore fails to meet his burden of proving causation for his retaliation claims.  *See Mendelson v. Country Coach, Inc.*, 2007 WL 4811927, at *2 n.1 (C.D. Cal. 2007) ("summary judgment is the 'put up or shut up' moment in a lawsuit, when the nonmoving party must show what evidence it has that would convince a trier of fact to accept its version of events").

### D. **Plaintiff Cannot Establish His Free-Exercise Claims**

Plaintiff fails to show either that Defendants substantially burdened his religion or that they acted non-neutrally vis-à-vis his religion, and thus fails to state a free-exercise claim.  Even if there were a failure, though, it would not give rise to individual liability or punitive damages for the Individual Defendants.

#### 1. **Plaintiff's Free-Exercise Claims Fail on the Merits**

First, Plaintiff cannot show that Defendants substantially burdened his

DEFS.' REPLY BRIEF IN SUPP. OF
MOT. FOR SUMMARY JUDGMENT
2:24-CV-04353-JLS-BFM

religion by not allowing him to lower the PPF. The fundamental error that Plaintiff makes in these claims is assuming that lowering the PPF is itself a religious practice. It is not. Thus, Plaintiff's cite to *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah* for the proposition that the government cannot prefer some religious practices over others is inapposite. Opp. 22 (citing 508 U.S. 520, 536 (1993)). He identifies no disfavored religious practice—let alone as compared to another such practice.

Second, Plaintiff cannot point to any evidence that the County acted non-neutrally toward him based on his religious beliefs. Plaintiff contends with no citation that the County "rescinded [his] initial accommodation expressly because it believed the *nature* of his (overtly) religious beliefs and practices did not warrant protection." Opp. 23. Not only does this lack evidentiary support; it is directly contrary to the record, which is clear that the denial was due to Plaintiff's *failure* to identify a religious practice that conflicted with his job duties, as described in Section II.A, *supra*. Plaintiff tries to point to his suspension notice as evidence that the County disapproved of his religious beliefs, *id.*, but the suspension notice never mentions or even hints at his beliefs. Rather, it explains that Plaintiff's conduct on June 21, 2023 "sent a message that sought to diminish the visibility of the LGBTQ+ community" and "undermined the County's commitment to fostering a diverse and inclusive work environment for all employees." SGD ¶191. Plaintiff's reliance on *Fellowship of Christian Athletes v. San Jose Unified School District Board of Education* and *Masterpiece Cakeshop v. Colorado Civil Rights Commission* is therefore misplaced, as both cases involved official expressions of disapproval of religious *beliefs*, not secular *conduct*. 82 F.4th 664, 692 (9th Cir. 2023) (en banc) (committee told students "that the *views* embodied in their Statement of Faith were … hurtful and had no rightful place on campus"); 584 U.S. 617, 635 (2018) (state commission described petitioner's "faith as 'one of the most despicable pieces of

rhetoric that people can use'").[6]

Plaintiff tries to show non-neutrality by comparing his case to a separate CPOE investigation ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

### 2. The Individual Defendants Are Entitled to Qualified Immunity[7]

Plaintiff argues that the Supreme Court's decision in *Masterpiece Cakeshop* was sufficiently clear that the Individual Defendants should have been on notice that their conduct in this case was "unlawful in the situation [they] confronted," as required by Supreme Court precedent. *Ziglar v. Abbasi*, 582 U.S. 120, 152 (2017); *see* Opp. 25. Not so. The gap is too wide from the generalized language in *Masterpiece Cakeshop*—that decisionmakers must give "neutral and respectful consideration" to religious beliefs—to the stray statements by Chief Boiteux (that Plaintiff must fulfill his job responsibilities per the oath that he took, SGD ¶285) and Chief Uehara (expressing confusion with the timing of Plaintiff's accommodation request, SGD ¶250). While Plaintiff is correct that "it is not necessary for 'the very action in question' to have 'previously been held unlawful,'" Opp. 25, that principle does not apply here. *Masterpiece Cakeshop* did

---

[6] Plaintiff's citation to *Bates v. Pakseresht*, 146 F.4th 772 (9th Cir. 2025), is even further afield, as there was no official expression of disapproval at issue.

[7] Plaintiff argues that Defendants waived any argument against municipal liability, Opp. 26, but his failure to establish a genuine dispute of material fact is sufficient for summary judgment on his free-exercise claims as to the County.

DEFS.' REPLY BRIEF IN SUPP. OF
MOT. FOR SUMMARY JUDGMENT
2:24-CV-04353-JLS-BFM

not provide enough guidance to make "apparent" to the Individual Defendants that their conduct violated Plaintiff's free-exercise rights (assuming it even did). *Hardwick v. County of Orange*, 844 F.3d 1112, 1117 (9th Cir. 2017).

Regarding whether non-decisionmakers can be individually liable for free-exercise violations, Plaintiff fails to identify any governing Supreme Court or circuit precedent from before June 2023.  Plaintiff cites to Ninth Circuit precedent from *September* 2023, Opp. 25-26, but that is both insufficient, *see Ballentine v. Tucker*, 28 F.4th 54, 64 (9th Cir. 2022) (law must be clearly established at the time of the alleged violation), and unhelpful to Plaintiff.  The case never addressed whether non-decisionmakers could be held individually liable for free-exercise violations; it only acknowledged that their comments could be relevant to the decisionmaker's liability. *Fellowship of Christian Athletes*, 82 F.4th at 692.

### 3. Plaintiff's Punitive Damages Demand Must Be Stricken

Plaintiff concedes that punitive damages are unavailable against the County or the Individual Defendants in their official capacities.  Opp. at 27.  His demand for punitive damages against the Individual Defendants in their personal capacities fares no better.

To justify an award of punitive damages under § 1983, Plaintiff must establish that the Individual Defendants were "motivated by evil motive or intent" or that their conduct "involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983).[8]  The record shows the opposite.

- ***Chief Lester*** raised the PPFs early in the morning of June 21, 2023, before he knew that Plaintiff would be stationed at Area 17 or that Plaintiff had requested an accommodation.  ¶¶24-25, 66-67.  Moreover, Chief Lester himself ensured the flags were re-raised after talking to

---

[8]  Though Plaintiff cites the standard for recovering punitive damages under FEHA, Opp. 27, he brings no FEHA claim against the Individual Defendants.

DEFS.' REPLY BRIEF IN SUPP. OF
MOT. FOR SUMMARY JUDGMENT
2:24-CV-04353-JLS-BFM

Plaintiff and learning that Plaintiff was upset. ¶¶75-78. Chief Lester, as a mandated reporter, filed a CPOE complaint only because he had a good-faith belief that Plaintiff had violated the CPOE. ¶¶105-10. Chief Lester's conduct was, if anything, thoughtful and considerate; it evinces no evil motive or reckless indifference.

- *Chief Uehara* was at most confused about the timing of Plaintiff's accommodation request. SGD ¶250. He never questioned Plaintiff's religious beliefs or practices, and in recommending that Plaintiff not be allowed to take benefit time (after learning that DHR had denied Plaintiff's accommodation), he was merely trying to avoid recalls for other employees. SGD ¶271. None of this establishes evil motive or reckless indifference to Plaintiff's free-exercise rights.

- *Chief Boiteux* at most made a single comment about Plaintiff's religious beliefs not mattering. When considered in the context of Chief Boiteux delivering the Direct Order (which he did not draft or decide himself to deliver to Plaintiff, ¶¶116, 119), this one-off comment fails to establish evil motive or reckless or callous indifference.

## III.  CONCLUSION

The Court should grant Defendants' motion for summary judgment.

Dated: April 24, 2026

/s/ *Dimitri D. Portnoi*
Dimitri D. Portnoi
Kyle M. Grossman
Marni B. Robinow
O'MELVENY & MYERS LLP

*Attorneys for Defendants County of Los Angeles, Fernando Boiteux, Adam Uehara, and Arthur Lester*

DEFS.' REPLY BRIEF IN SUPP. OF MOT. FOR SUMMARY JUDGMENT
2:24-CV-04353-JLS-BFM

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants County of Los Angeles, Fernando Boiteux, Adam Uehara, and Arthur Lester, certifies that this brief contains 4,190 words, which complies with the word limit of Local Rule 11-6.1.

Dated: April 24, 2026          O'MELVENY & MYERS LLP

By:    */s/ Dimitri D. Portnoi*
        Dimitri D. Portnoi

*Attorneys for Defendants County of Los Angeles, Fernando Boiteux, Adam Uehara, and Arthur Lester*