DIMITRI D. PORTNOI (S.B. #282871)
dportnoi@omm.com
KYLE M. GROSSMAN (S.B. #313952)
kgrossman@omm.com
MARNI B. ROBINOW (S.B. #313412)
mrobinow@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street, Suite 1900
Los Angeles, California 90071
Telephone: (213) 430 6000

*Attorneys for Defendants County of Los Angeles, Fernando Boiteux, and Adam Uehara*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

Jeffrey Little,

Plaintiff,

v.

County of Los Angeles, et al.,

Defendants.

Case No. 2:24-cv-04353-JLS-BFM

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO CERTIFY DEFENDANTS' QUALIFIED IMMUNITY INTERLOCUTORY APPEAL AS FRIVOLOUS OR FORFEITED**

Hearing Date: September 11, 2026
Hearing Time: 10:30 a.m.
Judge: Hon. Josephine L. Staton
Courtroom: 8A

TAC Filed: October 21, 2025
Trial Date: None set

# TABLE OF CONTENTS


**Page**

I. INTRODUCTION .......... 6

II. BACKGROUND .......... 7

A. Factual Background .......... 7

B. Procedural History .......... 8

III. LEGAL STANDARD .......... 9

IV. ARGUMENT .......... 10

A. The Individual Defendants' Appeal Is Not Frivolous Because It Accepts All Disputes of Fact That the Court Identified .......... 10

B. It Is Not Clearly Established That There Can Be a Free Exercise Clause Violation Without a Deprivation .......... 14

1. Overcoming Qualified Immunity Requires That Rights Be Clearly Established and Particularized to the Case at Hand .......... 14

2. No Federal Case Law Clearly Establishes That a Free Exercise Claim Can Be Asserted Without a Deprivation .......... 15

3. Foundational Standing Principles Undermine Any Notion of a Clearly Established Right That Does Not Require a Deprivation .......... 19

V. CONCLUSION .......... 21

# TABLE OF AUTHORITIES

Page

**CASES**

*Apostol v. Gallion*,
870 F.2d 1335 (7th Cir. 1989) .......... 9

*Blixseth v. Yellowstone Mountain Club, LLC*,
796 F.3d 1004 (9th Cir. 2015) .......... 9, 14

*Bus. Leaders in Christ v. Univ. of Iowa*,
991 F.3d 969 (8th Cir. 2021) .......... 18

*California v. Texas*,
593 U.S. 659 (2021) .......... 20

*Carroll v. Carman*,
574 U.S. 12 (2014) .......... 17

*Chuman v. Wright*,
960 F.2d 104 (9th Cir. 1992) .......... 9

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*,
508 U.S. 520 (1993) .......... 16

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) .......... 19

*Cornwell v. Electra Cent. Credit Union*,
439 F.3d 1018 (9th Cir. 2006) .......... 13

*District of Columbia v. Wesby*,
583 U.S. 48 (2018) .......... 14

*Everson v. Bd. of Educ.*,
330 U.S. 1 (1947) .......... 17

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*,
82 F.4th 664 (9th Cir. 2023) .......... 17, 18

*Fulton v. City of Philadelphia*,
593 U.S. 522 (2021) .......... 17

*Griggs v. Provident Consumer Disc. Co.*,
459 U.S. 56 (1982) .......... 9

*Hobbie v. Unemployment Appeals Comm'n of Fla.*,
480 U.S. 136 (1987) .......... 17

## TABLE OF AUTHORITIES (continued)


**Page**

*Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938 (9th Cir. 2017) .......... 9

*James v. City of Los Angeles*, 2024 WL 1135099 (C.D. Cal. Feb. 7, 2024) .......... 9

*Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507 (2022) .......... 15, 16

*Kisela v. Hughes*, 584 U.S. 100 (2018) .......... 14, 15

*Loffman v. Cal. Dep't of Educ.*, 119 F.4th 1147 (9th Cir. 2024) .......... 19, 20

*Masterpiece Cakeshop v. Colo. C.R. Comm'n*, 584 U.S. 617 (2018) .......... 16, 18

*Matsuo v. United States*, 586 F.3d 1180 (9th Cir. 2009) .......... 20

*Mitchell v. Forsyth*, 472 U.S. 511 (1985) .......... 15

*Sherbert v. Verner*, 374 U.S. 398 (1963) .......... 16, 17

*Spell v. Edwards*, 579 F. Supp. 3d 806 (M.D. La. 2022) .......... 18

*Spirit of Aloha Temple v. County of Maui*, 132 F.4th 1148 (9th Cir. 2025) .......... 13, 14

*Tedards v. Ducey*, 951 F.3d 1041 (9th Cir. 2020) .......... 20

*Thomas v. Rev. Bd.*, 450 U.S. 707 (1981) .......... 16, 17

*Tolle v. Rockwell Collins Control Techs., Inc.*, 2020 WL 3316984 (E.D. Va. June 18, 2020) .......... 11

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) .......... 19, 21

*United States v. Kiefer*, 760 F.3d 926 (9th Cir. 2014) .......... 20

## TABLE OF AUTHORITIES
## (continued)

**Page**

*Washington v. Gastelo*,
2025 WL 586362 (9th Cir. Feb. 24, 2025) .......... 18

*White v. Pauly*,
580 U.S. 73 (2017) .......... 15, 18

*Youth 71Five Ministries v. Williams*,
160 F.4th 964 (9th Cir. 2025) .......... 18

## I. INTRODUCTION[1]

In his Motion to Certify Defendants' Qualified Immunity Interlocutory Appeal as Frivolous or Forfeited ("Motion to Certify"), Lifeguard Captain Jeffrey Little contends that federal case law clearly establishes a right to sue individual state officials who may be non-neutral toward or against certain religions *even if* those officials did nothing that deprived him of anything that he was entitled to. None of Plaintiff's cited cases reached that conclusion, or even suggests that it might be correct. They certainly do not clearly establish it, as is necessary to overcome Lifeguard Chief Fernando Boiteux and Assistant Chief Adam Uehara's (the "Individual Defendants") qualified immunity protections. In fact, Plaintiff's arguments would not just dramatically expand the Free Exercise Clause's reach; they would also undermine foundational principles of Article III standing.

To distract from the novelty of his arguments, Plaintiff mischaracterizes the scope of the Individual Defendants' appeal, suggesting that they are trying to relitigate factual disputes that this Court already decided. Not so. The Individual Defendants have accepted for purposes of appeal all of the genuine disputes of fact that this Court found, including the dispute as to whether they acted with anti-religious animus and whether they were decisionmakers at all. They only appeal whether Plaintiff's failure to establish that he suffered any deprivation—he did not put any supporting evidence in the record, and the Court made no factual findings on this front—means that they are entitled to qualified immunity.

Put simply, Plaintiff cannot overcome one, let alone all, of the hurdles he faces in seeking to certify the Individual Defendants' appeal as frivolous. At the most basic level, he is wrong on the facts and the law. Even if he were not, the issue is not sufficiently clear-cut to clearly establish the right that he seeks to enforce. And certainly Defendants' arguments are not so wholly devoid of merit as

[1] All emphasis is added to, and citations, alterations, and internal quotation marks omitted from, quoted passages unless otherwise noted.

to be frivolous. The Court should deny Plaintiff's motion to certify the Individual Defendants' appeal as frivolous and continue to stay further proceedings as to any aspects of the case involved in the appeal.

## II. BACKGROUND

### A. Factual Background

On June 21, 2023, Plaintiff arrived at work to find that the Progress Pride Flag ("PPF") was flying at his worksite. MSJ Order (Dkt. 230) at 5. He was confused why the PPF was flying there, so he took it down and drove to two other locations to take it down there as well. *Id.* at 5-6. Later that day, after he was told by his direct supervisor that the PPF had to remain up (but that he would not be responsible for raising or lowering it), he asked Chief Uehara if he could use his benefit time to take off the rest of his shifts in June. *Id.* at 5-7. He had to ask because he had bid on dates to use his benefit time the previous year—and, indeed, had just returned from vacation earlier that month. *Id.* at 3, 7. Chief Uehara responded that Plaintiff could use his benefit time as long as doing so did not cause a recall (which would require another lifeguard captain to fill his shift). *Id.* at 7. There is no evidence that this policy of conditioning an employee's use of benefit time that they had not previously bid to use on whether it would cause a recall was inconsistently enforced.

The next day at work, Chief Boiteux delivered to Plaintiff a "Direct Order," which instructed him to comply with EA-231. *Id.* at 7-8. EA-231 was the Fire Department[2] policy requiring the PPF to be flown at certain Fire Department flagpoles and requiring captains to "[e]nsure all flags are received and flown throughout the month of June." *Id.* at 2. Plaintiff did not establish, and the Court did not make any findings regarding, whether Direct Orders constitute punishment (they do not) or go in employees' personnel files (they do not).

---

[2] The Lifeguard Division is housed within the Fire Department. *Id.* at 2.

### B. Procedural History

Both parties moved for summary judgment, and the Court denied both motions in large part.[3] As to Plaintiff's free-exercise claim, the Court first addressed the County's arguments against that claim. The Court restated high-level principles about the importance of neutrality toward religion and ultimately concluded that "Defendants failed to act neutrally toward Plaintiff because of his religion." *Id.* at 19-20, 24. The Court did not specify what kind of government action, or what impact on a plaintiff, is necessary for a free-exercise claim.

The Court then turned to the Individual Defendants. The Court concluded that an alleged statement that Chief Boiteux had made—that Plaintiff's "religious beliefs don't matter"—could support a finding that he acted with anti-religious animus when he allegedly issued and delivered the Direct Order to Plaintiff. *Id.* at 25. The Court found that the Direct Order was an "adverse action." *Id.* As to Chief Uehara, the Court held that his statement in an email that Plaintiff's request for a religious accommodation might have been "orchestrated" with another lifeguard's conduct could support a finding that he acted with anti-religious animus when he conditioned Plaintiff's use of benefit time on whether it would cause a recall. *Id.* The Court did not hold that Chief Uehara's statement or later email about benefit time was an "adverse action" or equivalent, simply stating that Plaintiff "has a clearly established right to be free [of] government decisions which target or are otherwise made with animus toward religion." *Id.* at 25-26.

The Individual Defendants filed a timely notice of appeal on June 17, 2026. Notice of Appeal (Dkt. 245). The focus of the appeal is on the Court's qualified immunity ruling on Plaintiff's free-exercise claims, and specifically whether the lack of a deprivation to Plaintiff means that there was no violation of a clearly established right. *Id.*

---

[3] The Court granted Defendants' motion only with respect to qualified immunity to Section Chief Arthur Lester, Plaintiff's supervisor on June 21, 2023. *Id.* at 25.

## III. <u>LEGAL STANDARD</u>

A timely filed notice of appeal "confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) (per curiam). In the context of qualified immunity, that means that the district court may not proceed to trial, since "[w]hether there shall be a trial is precisely the 'aspect[] of the case involved in the appeal.'" *Apostol v. Gallion*, 870 F.2d 1335, 1338 (7th Cir. 1989) (quoting *Griggs*, 459 U.S. at 58); *see also Chuman v. Wright*, 960 F.2d 104, 105 (9th Cir. 1992). "It makes no sense for the trial to go forward while the court of appeals cogitates on whether there should be one." *Apostol*, 870 F.2d at 1338.

There is a narrow exception to this rule, under which a district court "may certify in writing that the appeal is frivolous or waived." *Chuman*, 960 F.2d at 105. To satisfy this standard, the district court must find either (1) that "defendants claim to rely on, but do not actually rely on, the plaintiff's version of the facts"; or (2) that "defendants' legal arguments run afoul of clearly established law." *James v. City of Los Angeles*, 2024 WL 1135099, at *2 (C.D. Cal. Feb. 7, 2024). Under the first approach, an appeal is not frivolous "so long as the appellate court assumes the version of the material facts asserted by the non-moving party to be correct"—"even when the determination of qualified immunity depends upon disputed issues of material fact." *Id.* (cleaned up); *see also Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 945 (9th Cir. 2017) ("We do, however, have jurisdiction to decide whether, taking the facts in the light most favorable to the non-moving party, the defendants are entitled to qualified immunity."). Under the second approach, the court must find that defendants' arguments are "wholly without merit" to certify them as frivolous. *Blixseth v. Yellowstone Mountain Club, LLC*, 796 F.3d 1004, 1007 (9th Cir. 2015).

## IV. ARGUMENT

Plaintiff's motion for the Court to certify the Individual Defendants' appeal as frivolous misconstrues the arguments that the Individual Defendants assert on appeal and misapplies both the frivolity and qualified immunity frameworks. *First*, the Individual Defendants do not dispute on appeal any of the Court's factual findings as to whether there existed a genuine dispute of material fact. Rather, the Individual Defendants challenge the legal significance of these disputed facts—whether, construing all facts in Plaintiff's favor, they show that Plaintiff suffered a deprivation that gives rise to a free-exercise claim. *Second*, it is not wholly without merit to argue that Chief Uehara's and Chief Boiteux's alleged personal conduct (preventing Plaintiff from using benefit time on dates he had not previously bid for and issuing and delivering the Direct Order, respectively) is not a sufficient deprivation to constitute a free-exercise violation. Plaintiff's position would greatly expand the reach of the Free Exercise Clause, meaning that any alleged violation was not of Plaintiff's clearly established rights.

### A. The Individual Defendants' Appeal Is Not Frivolous Because It Accepts All Disputes of Fact That the Court Identified

The Individual Defendants' appeal presents a narrow question for appellate review: whether their conduct vis-à-vis Plaintiff is sufficient to form the basis for a free-exercise claim. The Individual Defendants are arguing this issue without disputing any of the factual determinations that this Court made in its summary judgment order.

For example, Chief Boiteux accepts that there is a factual dispute as to whether he said that Plaintiff's religious beliefs "don't matter," and Chief Uehara accepts that there is a factual dispute as to what he meant when he said that Plaintiff's request for an accommodation was likely "orchestrated." MSJ Order at 3, 7-8. They further accept that these statements could allow a jury to conclude that they acted with anti-religious animus when interacting with Plaintiff. *Id.* at 25.

The Individual Defendants also accept the Court's determinations about their conduct. Though Chief Boiteux disputed that he had any role in issuing the Direct Order that he delivered to Plaintiff—and Plaintiff actually offered the undisputed fact that Julia Kim and Amber Sturdivant, *not* Chief Boiteux, made "[t]he decision to issue the Direct Order," Defs.' Statements of Genuine Dispute (Dkt. 153-1) ¶ 163—his argument on appeal focuses on the Direct Order's impact, not his role in preparing it. Likewise, Chief Uehara does not challenge whether he conditioned Plaintiff's use of benefit time in June 2023 on if it would cause a recall, or even dispute Plaintiff's assertion (which was not adopted by this Court) that this was effectively a denial because of the high likelihood that it would cause a recall. MSJ Order at 7, 24; Defs.' Statements of Genuine Dispute ¶ 157.

Critically, though, the Court did not find certain facts or identify certain disputes. The Court made no findings of fact that the Direct Order constituted discipline or that it imposed any requirements on Plaintiff other than those already set forth in EA-231, which it is undisputed that he was required to follow.[4] MSJ Order at 7-8, 25 (describing the Direct Order as requiring "that Plaintiff comply with EA-231"); Pl.'s Statements of Genuine Dispute (Dkt. 157-2) ¶ 4. That is

---

[4] To the extent that Plaintiff argues that forcing him to comply with EA-231 violated his free-exercise rights, *see* Mot. to Certify (Dkt. 258-1) at 3 (characterizing the Individual Defendants' argument as that "government officials … may order citizens to violate their religious beliefs"), that argument runs into factual and legal problems. Factually, EA-231 required only that he "ensure" the PPF was flown at his worksite—yet Plaintiff failed to develop any evidence in discovery as to what it means to "ensure" the flag was flown. MSJ Order at 2. Whatever the answer to this factual question, it is far from clear as a legal matter that requiring an employee to ensure that a flag is flown would require them "to violate their religious beliefs." *See, e.g.*, *Tolle v. Rockwell Collins Control Techs., Inc.*, 2020 WL 3316984, at *5 (E.D. Va. June 18, 2020) ("merely expecting Plaintiff to attend work in the same location that a Gay Pride flag is generally displayed for one month does not amount to asking him to adhere to a conflicting 'employment requirement'") (cleaned up). The uncertainty on this point means that there is no clearly established right, and qualified immunity should be granted.

because Plaintiff failed to develop any evidence in discovery about what a Direct Order means, the consequences for failing to follow it, or whether it persists in an employee's personnel file (it does not). As such, it is appropriate for the Ninth Circuit to consider whether Plaintiff can establish a free-exercise violation based on a document that he did not show—and that the Court did not find—constituted a deprivation.

Similarly, the Court did not find that Plaintiff was actually entitled to use his benefit time at the end of June 2023 without regard for whether it would cause a recall.[5] This, too, makes sense: Plaintiff did not dispute the fact that lifeguards bid on benefit time annually and have their schedules set during the preceding calendar year. Pl.'s Statements of Genuine Dispute ¶ 91. Nor did Plaintiff establish that Chief Uehara or any decisionmaker ever allowed the use of benefit time despite the risk of recalls. *See* MSJ Order at 7, 24-25 (repeatedly stating that Chief Uehara "informed" Plaintiff that he could not use benefit time if it would cause a recall). Quite the contrary, Plaintiff himself clarified in his summary judgment briefing that, "due to vacation restrictions," lifeguards who request to use benefit time during the summer are routinely unable to do so. Pl.'s Statements of Genuine Dispute ¶ 98. As a result, it is proper for the Ninth Circuit to address whether Chief Uehara's conduct in informing Plaintiff that he could not use benefit time if it would cause a recall, where there is no evidence that Plaintiff could otherwise have used his benefit time, deprived Plaintiff of anything.

Plaintiff nevertheless contends that the Individual Defendants' arguments

---

[5] The Court noted that Defendants failed to "definitively show that the MOU [that governs the County's employment relationship with the Los Angeles County Lifeguard Association] expressly precluded Plaintiff from using his benefit time even if it triggered recalls." MSJ Order at 15. But finding that Defendants failed to offer definitive proof is not the same as finding a genuine dispute of fact, and the Court never found a genuine dispute as to whether Plaintiff should have been allowed to use his benefit time even if it caused a recall.

"rest[] on a false factual premise"—that Plaintiff was not deprived of anything. Mot. to Certify at 8. In support, Plaintiff points to the Court's conclusion that Chief Boiteux's alleged issuance and delivery of the Direct Order was an "adverse action," even though that is a term that applies to Title VII and FEHA claims, not free-exercise claims. *See, e.g.*, *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1034-35 (9th Cir. 2006). He also interprets the Court's order as finding that Chief Uehara's conditioning of his use of benefit time on whether it would cause a recall as an adverse action (though the Court never used that term or made that finding). Mot. to Certify at 8; *see also* MSJ Order at 25-26.

Even accepting Plaintiff's framing that the Court concluded that he had suffered a sufficient deprivation to state a free-exercise claim, the statements he cites from the Court's summary judgment order are not findings of fact or genuine disputes of fact that affect appellate jurisdiction. Line-drawing questions about whether a plaintiff's religious exercise has been burdened—i.e., whether the plaintiff has suffered a deprivation—are questions of law. *Spirit of Aloha Temple v. County of Maui*, 132 F.4th 1148, 1155-56 (9th Cir. 2025). As the Ninth Circuit explained, even though such questions "often involve[] factual considerations … because the ultimate question … involves weighing many factors, considering legal concepts, and 'exercising judgment about the values that animate legal principles,' the inquiry is best suited for the court." *Id.* The court further noted that "[t]his is especially true … 'in the constitutional realm'" where courts are "marking out the limits of a standard." *Id.* (cleaned up). For these reasons, in *Spirit of Aloha Temple*, the Ninth Circuit found that the substantial-burden inquiry under the Religious Land Use and Institutionalized Persons Act was a legal inquiry.

All the same considerations apply here in the free-exercise context, and show why the Court's conclusions are legal, not factual, in nature. The Court's findings about the Individual Defendants' statements and motivations, and their conduct and the consequences thereof, are factual determinations that the Individual Defendants

cannot and do not challenge on appeal. But the Court's ultimate conclusion as to whether that conduct rises to the level of a deprivation necessary to state a free-exercise violation requires "considering legal concepts" and "exercising judgment about the values that animate legal principles," and so it is a question of law that can properly be challenged through an interlocutory appeal. *Spirit of Aloha Temple*, 132 F.4th at 1157. Put simply, the Individual Defendants do not ask the Ninth Circuit to "reassess[] the facts," Mot. to Certify at 9, but rather to reassess the legal significance of the facts. Appellate jurisdiction is therefore proper.

**B. It Is Not Clearly Established That There Can Be a Free Exercise Clause Violation Without a Deprivation**

Plaintiff's free-exercise claim against the Individual Defendants would stretch federal precedent applying the Free Exercise Clause beyond recognition. No federal case has ever held that a free-exercise violation exists where there is no violation. Any language in free-exercise case law that so much as suggests that such a violation could exist is too high-level to clearly establish law for purposes of summary judgment. And long-established principles of standing further cast doubt on the propriety of a violation-less free-exercise claim. For these reasons, there is no violation of a clearly established right, and the Individual Defendants' appeal on this issue is far from being "wholly without merit." *See Blixseth*, 796 F.3d at 1007.

**1. Overcoming Qualified Immunity Requires That Rights Be Clearly Established and Particularized to the Case at Hand**

Qualified immunity protects individual state actors from liability "when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018). To overcome qualified immunity, "[t]he precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). As long as there is a "legitimate question" about the

constitutionality of particular conduct, "it cannot be said that [such conduct] violates clearly established law." *Mitchell v. Forsyth*, 472 U.S. 511, 535 n.12 (1985). Further, an official "cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Kisela*, 584 U.S. at 105. So "the clearly established law must be 'particularized' to the facts of the case" and "should not be defined 'at a high level of generality.'" *White v. Pauly*, 580 U.S. 73, 79 (2017) (reversing denial of qualified immunity); *see also Kisela*, 584 U.S. at 104 ("[The Supreme] Court has repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality.").

Within this framework, it is clear that Plaintiff's characterization of the issues raised on appeal is misleading at best. Plaintiff claims that, "[t]o prevail, Defendants must persuade the Ninth Circuit that there is no clearly established right to be free from anti-religious government decisionmaking." Mot. to Certify at 6. But that is too high a level of generality. The proper issue on appeal is whether the Free Exercise Clause clearly establishes a right to sue any state actor who has anti-religious animus, even if that actor's conduct has not deprived the plaintiff of anything.

**2. No Federal Case Law Clearly Establishes That a Free Exercise Claim Can Be Asserted Without a Deprivation**

Start with *Kennedy v. Bremerton School District*, 597 U.S. 507 (2022), which illustrates the issue with Plaintiff's argument most clearly. A school district that employed a high school football coach "forbid[]" him from praying on the field and "disciplined" him after he did so. *Id.* at 525-26. The school district "sought to *restrict* Mr. Kennedy's actions at least in part because of their religious character." *Id.* at 526. The Court found that these *restrictions* of the coach's prayer—and his resulting discipline—were not neutral and, as a result, violated the Free Exercise

Clause. *Id.* If anything, *Kennedy* shows that an actual deprivation or restriction on religious activity is central to stating a free-exercise claim.

The same is true of the cases that Plaintiff labels "foundational holdings" of free-exercise jurisprudence: *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993), and *Masterpiece Cakeshop v. Colorado Civil Rights Commission*, 584 U.S. 617 (2018). In *Church of Lukumi Babalu Aye*, a Florida city passed ordinances prohibiting religious animal sacrifice—a practice of a local Santeria church. 508 U.S. at 527-28. The Supreme Court underscored that "the protections of the Free Exercise Clause pertain if the law at issue discriminates against some or all religious beliefs or *regulates or prohibits conduct* because it is undertaken for religious reasons." *Id.* at 532; *see also id.* at 533 ("if the object of a law is to *infringe upon or restrict practices* because of their religious motivation, the law is not neutral"). The Court even explained that "the effect of a law in its real operation is strong evidence of its object," emphasizing the link between a law's effect (i.e., a deprivation) and whether it violates the Free Exercise Clause. *Id.* at 535. And in *Masterpiece Cakeshop*, the plaintiff was actually subjected to a cease-and-desist that required him to bake wedding cakes for same-sex couples and prepare quarterly compliance reports documenting the number of people he denied service and the reasons why—even though state law provided storekeepers a right to "decline to create specific messages the storekeeper considered offensive." 584 U.S. at 630, 633. In short, the plaintiffs in both cases suffered a deprivation as a result of non-neutral government conduct, so the cases do not stand for the claim that the Free Exercise Clause is violated where there is no deprivation.

Plaintiff next cites *Thomas v. Review Board*, 450 U.S. 707 (1981), and *Sherbert v. Verner*, 374 U.S. 398 (1963), for the proposition that "the government burdens religion when it forces an adherent to choose between following the precepts of her religion and forfeiting benefits." Mot. to Certify at 6. This overstates the case law once again. In *Thomas*, the plaintiff quit his job for

religious reasons (he had been transferred to a department that produced turrets for military tanks) and then was denied unemployment benefits. 450 U.S. at 709. *Sherbert*, too, involved a plaintiff who was denied unemployment benefits; she had refused to work on Saturdays. 374 U.S. at 403. In both cases, the Court explained that the government could not force a person "to choose between the exercise of a First Amendment right and participation in an *otherwise available public program*." *Thomas*, 450 U.S. at 716 (citing *Everson v. Bd. of Educ.*, 330 U.S. 1, 16 (1947)); *see also Sherbert*, 374 U.S. at 403 (observing that "the disqualification for benefits imposes [a] *burden* on [] free exercise" and "*impede*[*s*] the observance of one or all religions"). Certainly neither case states, as Plaintiff claims, that "a 'substantial' infringement of First Amendment rights exists wherever the government pressures 'an adherent to modify his behavior and to violate his beliefs.'" Mot. to Certify at 6. It is the deprivation that the plaintiffs in *Thomas* and *Sherbert* suffered, not some abstract "pressure," that implicates the Free Exercise Clause. *Hobbie v. Unemployment Appeals Commission of Florida*, 480 U.S. 136 (1987), is exactly the same. *Id.* at 141 ("We see no meaningful distinction among the situations of Sherbert, Thomas, and Hobbie.").

Plaintiff's remaining cases do not move the needle. In *Fulton v. City of Philadelphia*, 593 U.S. 522 (2021), Philadelphia's department of human services refused to enter a foster care contract with Catholic Social Services, a foster care agency, thus depriving it of a contractual relationship. *Id.* at 530-31.[6] In *Fellowship of Christian Athletes v. San Jose Unified School District Board of Education*, 82 F.4th 664 (9th Cir. 2023) (en banc),[7] a student group was stripped of its status as an authorized school club, which entitled it to access to school financial

---

[6] The *Fulton* decision was also based on whether Philadelphia's ordinances were generally applicable, rather than whether the city acted non-neutrally. *Id.* at 533.

[7] The Supreme Court has left open the question whether circuit authority can clearly establish law for purposes of qualified immunity analysis. *See Carroll v. Carman*, 574 U.S. 12, 17 (2014) (per curiam).

accounts and fundraisers, an official campus faculty advisor, and priority for on-campus meeting spaces. *Id.* at 673. The Ninth Circuit even described this as a "penalty." *Id.* at 692.

To the extent that any of these cases includes expansive language—such as *Masterpiece Cakeshop*'s comments that the government "cannot act in a manner that passes judgment upon or presupposes the illegitimacy of religious beliefs and practices," and that "upon even slight suspicion that proposals for state intervention stem from animosity to religion or distrust of its practices, all officials must pause to remember their own high duty to the Constitution and to the rights it secures," 584 U.S. at 638-39—that language is far too general to clearly establish any right. *Pauly*, 580 U.S. at 79 ("the clearly established law must be 'particularized' to the facts of the case" and "not be defined 'at a high level of generality'"). Indeed, courts routinely grant qualified immunity in free-exercise claims where there is no deprivation or where plaintiffs seek to expand the Supreme Court's free-exercise jurisprudence beyond its bounds. *See, e.g.*, *Washington v. Gastelo*, 2025 WL 586362, at *2 (9th Cir. Feb. 24, 2025) ("no caselaw clearly established at the time of the alleged misconduct that inmates are *deprived* of a reasonable opportunity to freely exercise their faith when, as alleged here, prison officials facilitated inmates' access to religious services on some occasions and were attempting to obtain the staffing to facilitate more services"); *Youth 71Five Ministries v. Williams*, 160 F.4th 964 (9th Cir. 2025) (granting qualified immunity where there was no "comparable secular conduct" that was prohibited, and thus no deprivation of a clearly established right); *Spell v. Edwards*, 579 F. Supp. 3d 806, 822-23 n.6 (M.D. La. 2022) (granting qualified immunity where there was no showing of "an *unrestricted* constitutional 'right'" that plaintiffs were deprived of); *cf. Bus. Leaders in Christ v. Univ. of Iowa*, 991 F.3d 969, 987-88 (8th Cir. 2021) (rejecting plaintiff's attempt to use *Church of Lukumi Babalu Aye* to clearly establish free-exercise rights and refusing to "apply the general principles derived from [that case]").

In short, every canonical free-exercise decision involves a deprivation of some kind—whether being deprived of the ability to participate in a program that plaintiffs were otherwise entitled to, being deprived of the ability to freely exercise religion, or being disciplined or subject to a cease-and-desist.

**3. Foundational Standing Principles Undermine Any Notion of a Clearly Established Right That Does Not Require a Deprivation**

If there were any question about whether a deprivation is required to make out a free-exercise claim, core tenets of Article III standing illustrate why that is the case. A federal plaintiff "must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). These requirements ensure "that federal courts exercise their proper function in a limited and separated government," as "[f]ederal courts do not exercise general legal oversight … of private entities." *Id.* at 423-24. Plaintiff's articulation of a free-exercise right that does not require a showing of a deprivation contravenes at least two of these elements: injury in fact and traceability.

*First*, "an injury must be concrete, particularized, and actual or imminent," and "threatened injury must be *certainly impending* to constitute injury in fact." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). In the free-exercise context, where there is no deprivation of a plaintiff's right to practice their religion, a plaintiff's standing is highly dubious. In *Loffman v. California Department of Education*, 119 F.4th 1147 (9th Cir. 2024), parents challenged a California law requiring that nonpublic schools be nonsectarian in order to contract with the state to provide students with disabilities a free appropriate public education under the Individuals with Disabilities Education Act. *Id.* at 1152. In assessing whether the plaintiffs had standing, the Ninth Circuit rigorously inquired into whether the

parents and their children had actually suffered a deprivation. *Id.* at 1162-64. The court did this by looking into whether the children had disabilities that meant they would be eligible for placement in a nonpublic school. *Id.* at 1163. Ultimately, the court found that the parents of children who would be eligible had standing to challenge the law, while the parents of children who had insufficiently alleged that their children would be eligible for placement lacked standing because California's law did not deprive them of anything they were otherwise entitled to. *Id.* at 1163-64.

*Second*, a plaintiff must show "that the injury they will suffer or have suffered is 'fairly traceable' to the 'allegedly unlawful conduct' of which they complain." *California v. Texas*, 593 U.S. 659, 669 (2021). This principle means that a plaintiff cannot challenge state conduct as improperly motivated where the state actor would have engaged in the same conduct regardless of their motivation. The plaintiffs in *Tedards v. Ducey*, 951 F.3d 1041 (9th Cir. 2020), for example, lacked standing to challenge an Arizona law requiring the governor to appoint a temporary replacement from the same political party as the senator who created the vacancy because the governor would have made the same appointment regardless of the statute. *Id.* at 1068-69. The Ninth Circuit explained that the alleged injury (his appointment decision) was not traceable to the challenged conduct (the allegedly unconstitutional state statute), so there was no standing. *Id.* at 1069. Courts apply similar analysis to find that plaintiffs lack standing to challenge government conduct that did not cause their deprivation. *See, e.g.*, *United States v. Kiefer*, 760 F.3d 926, 933 (9th Cir. 2014) (no standing to challenge five-year mandatory minimum sentence because it "had no effect on Kiefer's sentence"); *Matsuo v. United States*, 586 F.3d 1180, 1183 (9th Cir. 2009) (federal employees in Alaska and Hawaii lacked standing to challenge pay scale offering lower compensation to Alaskan and Hawaiian federal employees on right-to-travel

grounds, because challenged policy if anything would benefit them if they chose to travel).

These principles confirm what was already clear: there is no free-exercise violation without a deprivation caused by the state actor's alleged non-neutrality. Where a plaintiff has not been deprived of anything by the conduct of a state actor, they have not suffered an injury in the first place. And where the state actor's conduct was pursuant to some preexisting policy, there is no deprivation that is traceable to any alleged lack of neutrality. To interpret the Free Exercise Clause otherwise would be to ask federal courts adjudicating free-exercise claims to "exercise general legal oversight" of state actors' conduct. *See TransUnion*, 594 U.S. at 423-24. That would conflict with core principles of standing.

* * *

The Supreme Court has made clear that the government cannot act non-neutrally toward or against religions in making decisions that actually deprive individuals of something or provide discriminatory treatment. What it has never done is decide, or even suggest, that the Free Exercise Clause provides a fount of liability for any state actor who harbors any anti-religious sentiment, even if that never leads to an individual being deprived of anything. That law is not clearly established, and the Individual Defendants thus should be entitled to qualified immunity. Certainly, it is not frivolous or wholly without merit to highlight that distinction between Plaintiff's claims and what the case law actually says.

## V. <u>CONCLUSION</u>

For the above reasons, the Court should deny Plaintiff's motion to certify the Individual Defendants' appeal as frivolous or forfeited.

Dated: August 21, 2026

/s/ *Dimitri D. Portnoi*
Dimitri D. Portnoi
Kyle M. Grossman
Marni B. Robinow
O'MELVENY & MYERS LLP

*Attorneys for Defendants County of Los Angeles, Fernando Boiteux, and Adam Uehara*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants County of Los Angeles, Fernando Boiteux, and Adam Uehara, certifies that this brief contains 5,868 words, which complies with the word limit of Local Rule 11-6.1.

Dated: August 21, 2026

O'MELVENY & MYERS LLP

By: */s/ Dimitri D. Portnoi*
Dimitri D. Portnoi

*Attorneys for Defendants County of Los Angeles, Fernando Boiteux, and Adam Uehara*