Charles S. LiMandri, SBN 110841
cslimandri@limandri.com
Paul M. Jonna, SBN 265389
pjonna@limandri.com
Jeffrey M. Trissell, SBN 292480
jtrissell@limandri.com
Joshua A. Youngkin, SBN 332226
jyoungkin@limandri.com
William T. Duke, SBN 361823
wduke@limandri.com
LiMANDRI & JONNA LLP
*as Special Counsel to*
THOMAS MORE SOCIETY
P.O. Box 9120
Rancho Santa Fe, CA 92067
Telephone: (858) 759-9930
Facsimile: (858) 759-9938

Nathan Loyd, *pro hac vice*
nloyd@thomasmoresociety.org
THOMAS MORE SOCIETY
121 West Wacker Drive, Suite 650
Chicago, IL 60601
Telephone: (312) 782-1680

*Attorneys for Plaintiff*
*Captain Jeffrey Little*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CAPTAIN JEFFREY LITTLE,

Plaintiff,

v.

LOS ANGELES COUNTY, et al.

Defendants.

Case No.: 2:24-cv-4353-JLS-BFM

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO CERTIFY DEFENDANTS' QUALIFIED IMMUNITY INTERLOCUTORY APPEAL AS FRIVOLOUS OR FORFEITED**

| | |
|---|---|
| Judge: | Hon. Josephine L. Staton |
| Courtroom: | 8A |
| Date: | October 9, 2026 |
| Time: | 10:30 a.m. |
| Action Filed: | May 24, 2024 |

## TABLE OF CONTENTS

I. INTRODUCTION .......... 5

II. ARGUMENT .......... 6

A. Defendants Identify No Authority Making the Law on Religious Exercise Rights Unclear, Because the Law Has Been Clear for Decades. .......... 6

B. Defendants' Own Opposition Confirms that Their Appeal Rests on Recharacterized Facts and Forbidden Inferences. .......... 11

C. Defendants' Standing Arguments Misread Precedent. .......... 14

III. CONCLUSION .......... 16

CERTIFICATE OF COMPLIANCE .......... 16

## TABLE OF AUTHORITIES

**Cases**

*303 Creative LLC v. Elenis*, 600 U.S. 570 (2023) .......... 14

*Bus. Leaders in Christ v. Univ. of Iowa*, 991 F.3d 969 (8th Cir. 2021) .......... 10

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993) .......... 6, 7, 8, 10

*Eng v. Cooley*, 552 F.3d 1062 (9th Cir. 2009) .......... 11

*Est. of Anderson v. Marsh*, 985 F.3d 726 (9th Cir. 2021) .......... 11

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 672 (9th Cir. 2023) .......... 9

*Fulton v. City of Philadelphia*,
593 U.S. 522 (2021) ........................................................................ 9

*George v. Morris*,
736 F.3d 829 (9th Cir. 2013) ........................................................ 12

*Hobbie v. Unemployment Appeals Comm'n of Fla.*,
480 U.S. 136 (1987) ........................................................................ 8

*James v. City of Los Angeles*,
No. 21-cv-4525, 2024 WL 1135099 (C.D. Cal. Feb. 7, 2024) ...................... 5

*Johnson v. Jones*,
515 U.S. 304 (1995) ........................................................ 5, 11, 13

*Jones v. Williams*,
791 F.3d 1023 (9th Cir. 2015) ........................................................ 13

*Kennedy v. Bremerton Sch. Dist.*,
597 U.S. 507 (2022) ........................................................................ 8

*Loffman v. Cal. Dep't of Educ.*,
119 F.4th 1147 (9th Cir. 2024) .............................................. 14, 15

*Mack v. Yost*,
63 F.4th 211 (3d Cir. 2023) ............................................................ 10

*Masterpiece Cakeshop v. Colo. Civ. Rts. Comm'n*,
584 U.S. 617 (2018) ................................................................ 7, 8, 9, 10

*Matsuo v. United States*,
586 F.3d 1180 (9th Cir. 2009) ........................................................ 15

*Oklevueha Native Am. Church of Haw., Inc. v. Holder*,
676 F.3d 829 (9th Cir. 2012) ........................................................ 14

*Polk v. Montgomery Cty. Pub. Schs.*,
166 F.4th 400 (4th Cir. 2026) .......................................................... 9

*Rodriguez v. Cty. of Los Angeles*,
891 F.3d 776 (9th Cir. 2018) .......................................................... 5

*Spell v. Edwards*,
579 F. Supp. 3d 806 (M.D. La. 2022) ............................................ 10

*Spirit of Aloha Temple v. County of Maui*,
132 F.4th 1148 (9th Cir. 2025) .......... 13

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) .......... 14

*Tedards v. Ducey*,
951 F.3d 1041 (9th Cir. 2020) .......... 15

*Thomas v. Review Board*,
450 U.S. 707 (1981) .......... 8, 9

*Tolle v. Rockwell Collins Control Techs., Inc.*,
No. 20-cv-174, 2020 WL 3316984 (E.D. Va. June 18, 2020) .......... 12

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 6, 7

*United States v. Kiefer*,
760 F.3d 926 (9th Cir. 2014) .......... 15

*Washington v. Gastelo*,
No. 23-55296, 2025 WL 586362 (9th Cir. Feb. 24, 2025) .......... 10

*Youth 71Five Ministries v. Williams*,
160 F.4th 964 (9th Cir. 2025) .......... 10

**Statutes**

42 U.S.C. § 1983 .......... 6

**Other Authorities**

Bryan Lammon, *Assumed Facts and Blatant Contradictions in Qualified-Immunity Appeals*, 55 Ga. L. Rev. 959 (2021) .......... 14

# I. INTRODUCTION

Defendants' Opposition opens by assuring the Court that Chiefs Boiteux and Uehara "have accepted for purposes of appeal all of the genuine disputes of fact that this Court found." Opp. at 6. It then spends roughly five pages—nearly a third of the Opposition's text, and close to half of its argument—explaining why Defendants dispute Plaintiff's version of the facts and this Court's identification of factual disputes. Defendants wish to relitigate what a Direct Order "means," *id.* at 12, assert that Direct Orders do not "constitute punishment," *id.* at 7, and do not "persist[] in an employee's personnel file," *id.* at 12, and insist that Captain Little was never "actually entitled" to use his accrued benefit time. *Id.* at 12.

In doing so, Defendants primarily rely on differences between the parties' respective Statements of Genuine Dispute. *Id.* at 10-14. That is the signature of an appeal that "claim[s] to rely on, but do[es] not actually rely on, the plaintiff's version of the facts." *James v. City of Los Angeles*, No. 21-cv-4525, 2024 WL 1135099, at *2 (C.D. Cal. Feb. 7, 2024). Appellate jurisdiction does not exist to redetermine whether or not genuine issues of fact exist, *Johnson v. Jones*, 515 U.S. 304, 319–20 (1995), and an appeal that needs recharacterized facts to survive is frivolous. *See Rodriguez v. County of Los Angeles*, 891 F.3d 776, 791 (9th Cir. 2018) (confirming that a qualified immunity appeal was frivolous because defendants "either relied on disputed facts or made conclusory assertions" regarding them).

The Opposition's legal theory fares no better. Defendants argue that the Free Exercise Clause is not implicated unless an official's animus-driven decision "deprived" its target of something more than a right, by which Defendants appear to mean a consummated financial loss. In their attempt to muddy clear precedent, Defendants only muster an unpublished memorandum disposition that the Ninth Circuit itself forbade citing as precedent, an inapplicable decision on the statutory meaning of "substantial burden" for religious land use, and a handful of standing cases having nothing to do with religion.

But as this Court held, Little has "a clearly established right to be free [from] government decisions which target or are otherwise made with animus toward religion." Dkt. 230 at 25-26 ("MSJ Order") (citing *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 541–42 (1993)). A deprivation of that right—even without monetary loss—is a deprivation all the same.

Defendants cannot escape the facts without exceeding the Ninth Circuit's jurisdiction, and cannot escape the law without contradicting the Supreme Court. Their appeal's only value is delay and cost. The Court should certify the appeal as frivolous, retain jurisdiction, and set this case for trial.

## II. ARGUMENT

### A. Defendants Identify No Authority Making the Law on Religious Exercise Rights Unclear, Because the Law Has Been Clear for Decades.

Defendants' entire appeal hangs on the premise that their conduct "has not deprived the plaintiff of anything." Opp. at 15. The premise is false as a matter of record. *See infra*. But it also is on a collision course with decades of foundational precedent that the Ninth Circuit must ignore to find in Defendants' favor.

Section 1983 imposes liability for the "deprivation of any rights . . . secured by the Constitution"—not for the deprivation of money or contracts. 42 U.S.C. § 1983. The right this Court identified is Little's "clearly established right to be free [from] government decisions which target or are otherwise made with animus toward religion." MSJ Order at 25–26 (citing *Lukumi*, 508 U.S. at 541–42). Here, the Court found that there were two decisions—issuing a Direct Order and denying access to leave—both of which were made with an assumed animus. Both were deprivations of the clearly established right.

The Supreme Court has said as much in Defendants' own lead standing case: "infringement of free exercise" is among the "harms specified by the Constitution itself" that qualify as concrete injuries. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) (citing *Lukumi*). Defendants' own summation that "every canonical free-

exercise decision involves a deprivation of some kind," Opp. at 19, points in the right direction, because a deprivation of the right to be free from animus-driven decision making is a deprivation nonetheless, and the pressure such decisions impose is a deprivation of its own. Where Defendants go astray is in their supposition that a supernumerary deprivation, such as money loss or contract cancellation, must accompany the deprivation of the right itself before the First Amendment awakens.

This much is certain from *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993), and *Masterpiece Cakeshop v. Colorado Civil Rights Commission*, 584 U.S. 617 (2018). Defendants' own citations are so supportive of Little's position that one wonders why they bothered to cite them.

In *Lukumi,* the Supreme Court held that "the protections of the Free Exercise Clause pertain if the law at issue discriminates against some or all religious beliefs or *regulates or prohibits conduct* because it is undertaken for religious reasons." Opp. at 16 (citing *Lukumi,* 508 U.S. at 532) (emphasis added). In fact, "[t]he principle that government may not enact laws that suppress religious belief or practice *is so well understood* that few violations are recorded in our opinions." *Lukumi*, 508 U.S. at 523 (emphasis added).

As must be assumed for this appeal, Boiteux prohibited Little's conduct of abstaining from ensuring the PPF was raised by issuing the Direct Order because Little's conduct was religiously motivated. Uehara prohibited Little from accessing leave because that conduct was religiously motivated too. And *Masterpiece* said that *Lukumi* "made clear that the government, if it is to respect the Constitution's guarantee of free exercise, cannot impose regulations that are hostile to the religious beliefs of affected citizens." *Masterpiece*, 584 U.S. at 638. The First Amendment entitles plaintiffs "to a neutral decisionmaker who would give full and fair consideration to his religious objection." *Id.* at 640. It's true that the plaintiff in *Masterpiece* was "subjected to a cease-and-desist that required him [to violate his

religious beliefs].” Opp. at 16. Just like it’s true that Plaintiff here was subjected to a Direct Order that required him to violate his religious beliefs, as well as a leave determination that led to Little receiving that order. MSJ Order at 7–8. *Masterpiece* and *Lukumi* both show that Little has a right to be free from anti-religious government actions, and that deprivation of that right itself is enough to trigger First Amendment protections.

So does *Kennedy v. Bremerton School District*, 597 U.S. 507 (2022). In that case a school district forbade a coach from religiously-motivated activity of praying on a football field. *Id.* at 526. The Supreme Court found that the district “sought to restrict” Kennedy’s actions “at least in part because of their religious character.” *Id.* at 526. That’s hardly different from Boiteux’s and Uehara’s actions here. And at no point did the Supreme Court require proof of a “deprivation” of anything more than the right to be free from anti-religious government decisions. The Supreme Court only required Kennedy to “show[] that a government entity has burdened his sincere religious practice,” *id.* at 525—not that there was a supernumerary deprivation beyond his rights alone.

*Thomas v. Review Board*, 450 U.S. 707 (1981), is in accord too. The Opposition claims that *Thomas* doesn’t stand for what it says, namely, that:

> Where the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs, a burden upon religion exists. While the compulsion may be indirect, the infringement upon free exercise is nonetheless substantial.

*Thomas*, 450 U.S. at 717–18. The Supreme Court reaffirmed the passage verbatim in *Hobbie v. Unemployment Appeals Commission of Florida*, 480 U.S. 136, 141 (1987). Defendants think this language is somehow unclear. But the claimed lack of clarity is their own creation. They mistake a condition sufficient to show a First Amendment violation—actual denial of benefits—to be a necessary one. In doing

so, they miss that the plain text of *Thomas* applies precisely to the facts of this case: Boiteux and Uehara both "condition[ed] receipt of an important benefit" upon Little ensuring the PPF was raised, conduct which is "proscribed by [his] religious faith." Placing a condition that "put[s] substantial pressure on an adherent to modify his behavior" is all that the First Amendment requires. *Accord Polk v. Montgomery Cty. Pub. Schs.*, 166 F.4th 400, 413 (4th Cir. 2026) (citing *Thomas*, and holding that "the Supreme Court has observed that pressure from a governmental policy to change or modify one's actions, which would otherwise violate a person's sincerely held religious beliefs, qualifies as a cognizable burden.").

That's why *Fulton v. City of Philadelphia*, 593 U.S. 522 (2021), supports Little as well. In *Fulton*, plaintiff foster care agency brought the case after the defendant conditioned receipt of a new foster care contract on a Catholic agency's willingness to certify same-sex couples as foster parents. *Fulton*, 593 U.S. at 526. It's true that the City had already stopped referring children to the agency, but *Fulton* arose in the context of a temporary restraining order and preliminary injunction. *Id.* at 526, 531. *Fellowship of Christian Athletes v. San Jose Unified School District Board of Education*, 82 F.4th 664, 672 (9th Cir. 2023) (en banc), also arose in a preliminary injunction posture. *Fulton* and *FCA* both show that material deprivation need only be threatened, not necessarily consummated, for the First Amendment to apply. This makes sense, because government actions can burden religious exercise by "pressur[ing] an adherent to modify his behavior." *Thomas*, 450 U.S. at 718. Indeed, the contrary proposition is illogical, because a past deprivation is unlikely to cause a future behavior modification in the absence of that threat persisting as well.

Defendants contend that these cases have "expansive" language unsuitable for a qualified immunity denial. Opp. at 18. Defendants are wrong because the Supreme Court itself has stated that it's "clear that the government . . . cannot impose regulations that are hostile to the religious beliefs of affected citizens." *Masterpiece*,

584 U.S. at 638. The Supreme Court did not mince words: "*all officials*" must pause "upon even slight suspicion" that state action "stem[s] from animosity to religion." *Id.* at 639 (emphasis added) (citing *Lukumi,* 508 U.S. at 547).

Undeterred by this unhesitating proscription, Defendants offer a string of inapplicable cases they think undermine the Supreme Court's clarity:

First, they cite *Washington v. Gastelo*, No. 23-55296, 2025 WL 586362 (9th Cir. Feb. 24, 2025). Never mind that the Ninth Circuit explicitly states that decision "is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3." *Id.* at *3. Even so, that case involved prison officials who tried, but were unable to, fill a lapsed imam position. *Id.* at *2. It's inapplicable because officials there were *helping* the pro se prisoner practice his faith, not pressuring him to forfeit it. Likewise, none of the other cases—*Youth 71Five Ministries v. Williams*, 160 F.4th 964 (9th Cir. 2025), *Spell v. Edwards*, 579 F. Supp. 3d 806 (M.D. La. 2022), *Business Leaders in Christ v. University of Iowa*, 991 F.3d 969 (8th Cir. 2021)—found government animus either.

Little has a right to be free from government decisions made with anti-religious animus. MSJ Order at 26. This right is clearly established. *Id*. *See Mack v. Yost*, 63 F.4th 211, 233 (3d Cir. 2023) (denying qualified immunity in religious animus case, because "government actions intentionally discriminating against religious exercise serve no legitimate purpose" and "not surprisingly . . . are rare") (citations omitted). Boiteux and Uehara deprived him of this right. That's all the deprivation necessary to assert a First Amendment claim. Their attempt to persuade the Ninth Circuit that Boiteux and Uehara could not have known to refrain from making decisions with anti-religious animus is doomed for failure. Their appeal is frivolous as a result.

///

///

///

**B. Defendants' Own Opposition Confirms that Their Appeal Rests on Recharacterized Facts and Forbidden Inferences.**

On interlocutory review of a qualified-immunity denial, the court of appeals' jurisdiction extends only to the purely legal question whether defendants are entitled to qualified immunity "assuming all factual disputes are resolved, and all reasonable inferences are drawn, in plaintiff's favor." *Eng v. Cooley*, 552 F.3d 1062, 1067 (9th Cir. 2009). What the court of appeals may not entertain is "a fact-related dispute about the pretrial record, namely, whether or not the evidence in the pretrial record was sufficient to show a genuine issue of fact for trial." *Johnson*, 515 U.S. at 307; *accord Estate of Anderson v. Marsh*, 985 F.3d 726, 730–31 (9th Cir. 2021) (dismissing, for lack of appellate jurisdiction, a qualified-immunity appeal raising a "question of evidence sufficiency").

This Court correctly held that Boiteux's Direct Order was the "adverse action taken against Plaintiff," and that Uehara was "a non-neutral decisionmaker when he informed Plaintiff that he could not use his benefit time if it triggered a recall." MSJ Order at 25. Defendants' Janus-faced Opposition claims to accept this Court's factual findings, Opp. at 10, but then spends five pages questioning them. And in questioning them, Defendants rely on the parties' respective Statements of Genuine Dispute, Dkt. 157-2, 153-1—apparently forgetting that Plaintiff's version of facts controls in the appeal.

Start with Boiteux's role in issuing the Direct Order. Defendants suggest that Boiteux had no role in issuing the Direct Order, Opp. at 11, contrary to this Court's conclusion that he did. MSJ Order at 8. They also argue that the Direct Order was not disciplinary, Opp. at 11, contrary to this Court's conclusion that it was an adverse action. MSJ Order at 25. They further argue that the Direct Order did not impose any new requirements, Opp. at 11, had no meaning, *id.* at 12, had no consequence, *id.*, and does not "persist in an employee's personnel file." *Id.* These are new factual issues Defendants want the Ninth Circuit to determine. And they're

irrelevant to boot: this Court has already determined that Boiteux's statement that "religious beliefs don't matter" coupled with the Direct Order itself, "[c]onstru[ed] in a light most favorable to Plaintiff . . . could support a claim that Chief Boiteux was a non-neutral decisionmaker whose biases against Plaintiff's religion influenced the adverse action taken against Plaintiff: the issuance of the Direct Order." MSJ Order at 25. Defendants' appeal is therefore premised on questioning this Court's factual determination and demanding that the Ninth Circuit make new ones. And since the Ninth Circuit "lacks the power to reassess facts on interlocutory review," *George v. Morris*, 736 F.3d 829, 836 n.9 (9th Cir. 2013), winning on appeal is a jurisdictional impossibility.[1]

Turning to Uehara's denial of leave, this Court already determined that Uehara's denigration of Little's religious accommodation request as "probably orchestrated" "could give rise to an inference that Chief Uehara was a non-neutral decisionmaker" when he restricted Little's leave. MSJ Order at 25. Rather than accept the Court's factual determination, Defendants raise new disputes on leave availability. Opp. at 12. But this Court has already determined that "the facts do not definitively show" that Little was precluded from using his benefit time. MSJ Order at 15.[2] Defendants' two-faced argument again requires the Ninth Circuit to reassess this Court's factual determinations.

---

[1] Defendants also resurrect their failed argument that EA-231 did not violate Little's free exercise rights because it didn't require him to do anything, on the basis of an out-of-circuit district case that is clearly distinguishable. Opp. at 11, n.4 (citing *Tolle v. Rockwell Collins Control Techs., Inc.*, No. 20-cv-174, 2020 WL 3316984, at *5 (E.D. Va. June 18, 2020)). This argument has been raised (*see* Defendants' Motion for Summary Judgment, Dkt. 114-1 at 15, 16), and refuted (*see* Plaintiff's Opposition, Dkt. 157-1 at 10), and this Court found that the facts supported the conclusion that a religious conflict existed for Little without reference to *Tolle*. MSJ Order at 12. This is yet another example of Defendants hoping to relitigate a factual conclusion under the façade of a legal one.

[2] To be sure, the Court made this determination in its undue hardship analysis for

The facts here—which Defendants claim to, but don't actually, accept—show that Boiteux and Uehara burdened Little's "clearly established right to be free [from] government decisions which target or are otherwise made with animus toward religion." MSJ Order at 26. Quibbles over the Direct Order's severity and Little's leave availability don't matter, because the First Amendment prohibits government actions that "have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Jones v. Williams*, 791 F.3d 1023, 1031–32 (9th Cir. 2015) (citations omitted).

That's why Defendants cannot rely on *Spirit of Aloha Temple v. County of Maui*, 132 F.4th 1148 (9th Cir. 2025), here. There, the Ninth Circuit examined whether the Maui Planning Commission "substantially burdened" plaintiff's religious land use by denying a special activity permit. *Id.* at 1152. It determined that "whether a land use regulation imposes a substantial burden on a party's exercise of religion under RLUIPA is a question of law for the court to decide." *Id.* at 1156. In doing so, the court noted that under RLUIPA, a "substantial burden" exists when a land use regulation is "oppressive to a significantly great extent" and thus "impose[s] a significantly great restriction or onus upon [religious] exercise." *Id.* at 1156. The inapplicability of this standard to the present case is obvious. Not to mention, the Ninth Circuit was exceedingly circumspect in that case, stating, "we limit our analysis to RLUIPA." *Id.* at 1154 n.3.

And even taken entirely on its own terms, *Spirit of Aloha* would at most permit the Ninth Circuit to assess the legal significance of the facts this Court assumed. It would not permit what Defendants do throughout their Opposition: question this Court's facts and add new disputed ones.

---

Little's Title VII claim. It is unreasonable to expect that these facts, which are indeterminate for the Title VII analysis and favor Little on appeal, would suddenly become determinate and disfavor Little when viewed under a Free Exercise lens.

None of this is a novel maneuver. Commentators have observed that "defendants regularly flout *Johnson's* jurisdictional limits, taking improper appeals that create extra work and impose wholly unnecessary costs and delays on civil rights plaintiffs." Bryan Lammon, *Assumed Facts and Blatant Contradictions in Qualified-Immunity Appeals*, 55 Ga. L. Rev. 959 (2021). The frivolous certification process *Chuman* provides exists for exactly this case.

**C. Defendants' Standing Arguments Misread Precedent.**

Surprisingly, Defendants now raise an argument implying that Little did not have standing to bring this case. Opp. at 19. But this argument attempts to manufacture an issue that does not exist. Little's injuries are concrete and particularized under any standard: he was denied the use of his accrued benefit time, compelled to report for duty, and subjected to a written order—delivered with the admonition that his "religious beliefs don't matter"—to perform an act his faith forbade. A completed violation of a constitutional right supports standing even without any financial loss, as discussed above.

Defendants' contrary rule—no consummated material deprivation, no Article III injury—would abolish pre-enforcement First Amendment litigation altogether. But plaintiffs routinely have standing to challenge coercive government pressure before any penalty falls. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) ("an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law"); *303 Creative LLC v. Elenis*, 600 U.S. 570 (2023) (pre-enforcement First Amendment challenge); *Oklevueha Native Am. Church of Haw., Inc. v. Holder*, 676 F.3d 829 (9th Cir. 2012) (free-exercise plaintiffs had standing to sue over threatened future enforcement). If a credible threat of future enforcement is injury enough, a consummated order backed by the threat of discipline—and a consummated denial of leave—certainly are.

*Loffman v. California Department of Education*, 119 F.4th 1147 (9th Cir. 2024), is not to the contrary. The parents found to lack standing there had not

alleged that their children were even eligible for placement in a nonpublic school—so nothing they could have done, including sacrificing their religious commitments, would have changed the State's treatment of them. *Id.* at 1162–64. The pressure, in other words, was not operative on them. Here, in contrast, the coercion was aimed at Little and operative upon him. Had he forfeited his religious practice, Defendants' demands would have been satisfied—the flag flown, the shift covered, the leave question mooted—and the pressure relieved.

*Tedards v. Ducey*, 951 F.3d 1041 (9th Cir. 2020), *United States v. Kiefer*, 760 F.3d 926, 933 (9th Cir. 2014), and *Matsuo v. United States*, 586 F.3d 1180, 1183 (9th Cir. 2009), are further afield still. None involved religion, and none involved coercion or coercive pressure. Here, by contrast, the challenged decisions are themselves the injury, and on the facts taken in Plaintiff's favor, they were made because of Little's religion. Traceability could not be more direct.

* * *

As Defendants put it, "The Supreme Court has made clear that the government cannot act non-neutrally toward or against religions in making decisions that actually deprive individuals of something or provide discriminatory treatment." Opp. at 21. They apparently forget that a right is "something." But decades of Supreme Court precedent have not forgotten. Defendants have embarked on a novel and ultimately doomed course in their appeal—Jeffrey Little should not have to join them.

///

///

///

///

///

///

///

## III. CONCLUSION

The Court should certify Defendants' appeal as frivolous, retain jurisdiction over Plaintiff's claims against Chiefs Boiteux and Uehara, and set this action for trial.

Respectfully submitted,

LiMANDRI & JONNA LLP

Dated: August 28, 2026 By: ____________________

Charles S. LiMandri
Paul M. Jonna
Jeffrey M. Trissell
Joshua A. Youngkin
William T. Duke
Attorneys for Plaintiff
Captain Jeffrey Little

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff Captain Little, certifies that this brief contains 3,661 words, which complies with the word limit of L.R. 11-6.1 and this Court's chambers rules.

Dated: August 28, 2026 By: ____________________

Paul M. Jonna

# CERTIFICATE OF SERVICE

*Captain Jeffrey Little v. Los Angeles County Fire Department, et al.*
USDC Court - Central District - Case No.: 2:24-cv-04353-JLS (BFMx)

I, the undersigned, declare under penalty of perjury that I am over the age of eighteen years and not a party to this action; my business address is P.O. Box 9120, Rancho Santa Fe, California 92067, and that I served the following document(s):

- **PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO CERTIFY DEFENDANTS' QUALIFIED IMMUNITY INTERLOCUTORY APPEAL AS FRIVOLOUS OR FORFEITED.**

on the interested parties in this action by placing a true copy in a sealed envelope, addressed as follows:

Dimitri D. Portnoi, Esq.
Kyle M. Grossman, Esq.
Marni B. Robinow, Esq.
O'MELVENY & MYERS LLP
400 South Hope Street, Suite 1900
Los Angeles, CA 90071
Tel: (213) 430 6000; Fax: (213) 430 6407
E-Mail: dportnoi@omm.com
E-Mail: kgrossman@omm.com
E-Mail: mrobinow@omm.com
**Attorneys for Defendants County of Los Angeles, Fernando Boiteux, Arthur Lester, and Adam Uehara**

__X__ **(BY ELECTRONIC MAIL)** I served a true copy, electronically on designated recipients via electronic transmission of said documents.

__X__ **(BY ELECTRONIC FILING/SERVICE)** I caused such document(s) to be Electronically Filed and/or Service using the ECF/CM System for filing and transmittal of the above documents to the above-referenced ECF/CM registrants.

I declare under penalty of perjury, under the laws of the United States and the State of California, that the above is true and correct.

Executed on August 28, 2026, at Rancho Santa Fe, California.

Kathy Denworth